MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice pending)
Matthew I. Kreeger (pro hac vice pending)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Paul Goldstein (pro hac vice pending)
559 Nathan Abbot Way
Stanford, CA 94305
Telephone: (650) 723-0313

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Novell, Inc.**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>    Defendant. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Defendant Novell, Inc. submits this Memorandum in Support of its Motion to Dismiss The SCO Group, Inc.'s ("SCO") Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The crux of SCO's slander of title claim is its assertion that pursuant to an agreement attached to its Complaint, it owns the copyrights to UNIX and UnixWare; that Novell's statements that SCO does not hold such title are false; and that these statements have left SCO's customers and potential customers unable to ascertain the truth about its copyright ownership.

The Complaint fails, however, to allege facts sufficient to support two necessary elements of slander of title: falsity and special damages. As to falsity, the documents SCO relies upon to establish ownership of the copyrights fail on their face to meet the federal copyright law requirements for such an instrument. Without conclusively establishing that it owns the UNIX and UnixWare copyrights, SCO cannot show that Novell's statements to the contrary are false, and cannot prevail. As to special damages, SCO has not set forth its alleged special damages sufficiently to state a claim.

Because SCO's Complaint fails as a matter of law, the motion to dismiss should be granted.

## STATEMENT OF FACTS

SCO alleges that "[t]hrough an Asset Purchase Agreement dated September 19, 1995, as amended," SCO, "through its predecessor in interest, acquired from Novell all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, and all copyrights rights related thereto. . . ." (Compl. ¶ 1.)

1

The operative language from the Asset Purchase Agreement (sometimes, the "APA") is as follows:

> On the terms and subject to the conditions set forth in this Agreement, Seller will sell, convey, transfer, assign and deliver to Buyer and Buyer will purchase and acquire from Seller on the Closing Date (as defined in Section 1.7), all of Seller's right, title and interest in and to the assets and properties of Seller relating to the Business (collectively the "Assets") identified on Schedule 1.1(a) hereto. Notwithstanding the foregoing, the Assets to be so purchased shall not included those assets (the "Excluded Assets") set forth on Schedule 1.1(b).

(APA § 1.1(a), attached at Compl. Ex. A.)

Schedule 1.1(b) sets forth—as Excluded Assets—"[a]ny asset not listed on Schedule 1.1(a)" and "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare." (APA Schedule 1.1(b) §§ I, V.A., attached at Compl. Ex. A.) Thus, the Asset Purchase Agreement specifically excludes all copyrights from the assets to be transferred to the buyer.

On October 16, 1996, Novell and SCO's alleged predecessor, The Santa Cruz Operation, Inc. ("Santa Cruz"), executed Amendment No. 2 to the APA. (*See* Compl. ¶ 15; APA Amendment No. 2, attached at Compl. Ex. A.) APA Amendment No. 2 contains the following language:

> With respect to Schedule 1.1(b) of the [Asset Purchase Agreement], titled 'Excluded Assets,' Section V, Subsection A shall be revised to read:
>
> ***All copyrights*** and trademarks, ***except for the copyrights*** and trademarks owned by Novell as of the date of the [Asset Purchase Agreement] ***required for [Santa Cruz] to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies.*** However, in no event shall Novell be liable to [Santa Cruz] for any claim brought by any third party pertaining to said copyrights and trademarks.

(APA Amendment No. 2, attached at Compl. Ex. A (emphasis added).) Thus, APA Amendment No. 2 continues to exclude copyrights from the assets to be transferred, except those that SCO can demonstrate are "required . . . to exercise its rights with respect to the acquisition of UNIX and UnixWare."

SCO's Complaint is silent as to any particular loss it alleges it suffered as a result of Novell's statements. The only allegations relating to the harm SCO supposedly suffered are the vague assertions that "[c]ustomers and potential customers of SCO are unable to ascertain the truth of ownership in UNIX and UnixWare," and that there is a "cloud of ownership" created by Novell. (Compl. ¶ 21.)

## LEGAL STANDARD

A motion to dismiss must be granted where a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), the trial court is to accept the well-pleaded factual allegations in the complaint as true and construe them most favorably to the plaintiff. *Hayes v. Whitman*, 264 F.3d 1017, 1022 (10th Cir. 2001).

All documents attached as exhibits to the complaint are properly considered in ruling on a motion to dismiss. *Issa v. COMP USA*, No. 03-4024, 2003 U.S. App. Lexis 26280, at *10 (10th Cir. Dec. 24, 2003). The trial court need not accept as true "allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made a part thereof." *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972). In such instances, the instrument controls. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997); *Jackson*, 465 F.2d at 1390. Therefore, the Court should ignore any

3

allegations in the Complaint that are contradicted by the Asset Purchase Agreement and Amendment No. 2.

## ARGUMENT

In order to prevail in a slander of title action, SCO must establish:

> (1) there was a publication of a slanderous statement disparaging claimant's title,
> (2) the statement was false,
> (3) the statement was made with malice, and
> (4) the statement caused actual or special damages.

*First Sec. Bank of Utah v. Banberry Crossing*, 780 P.2d 1253, 1256-67 (Utah 1989). SCO's Complaint fails on two grounds.

First, SCO has not pled sufficient facts demonstrating falsity. Indeed, the very documents SCO relies upon fail to meet the requirements of the Copyright Act for a valid transfer of copyright ownership. In the absence of such a transfer, SCO cannot show that it is the owner of the copyrights at issue and cannot show Novell's statements to be false.

Second, SCO has not adequately pled special damages. SCO is required to plead with specificity its alleged realized or liquidated pecuniary damages, and instead has pled speculative damages of a general nature. SCO's alleged damages, as pled, cannot sustain its slander of title action.

### I. SCO HAS NOT SHOWN A VALID TRANSFER OF COPYRIGHT OWNERSHIP UNDER THE COPYRIGHT ACT, AND THEREFORE IT HAS NOT PROPERLY PLED THAT NOVELL'S STATEMENTS ARE FALSE.

SCO's Complaint is premised on the theory that the Asset Purchase Agreement and Amendment No. 2 transferred ownership of the copyrights in UNIX and UnixWare to its alleged predecessor, Santa Cruz. (Compl. ¶¶ 1, 14, 15, 17.) Therefore, SCO claims, Novell's statements that Novell still owns the copyrights are false.

4

The Copyright Act, however, imposes very strict requirements on purported transfers of copyright ownership. Under section 204(a) of the Act, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a); *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 926 (9th Cir. 1999).[1] Here, the documents relied upon by SCO do not constitute such an instrument of conveyance.

Indeed, SCO admits in its own Complaint that it does not own the copyrights at issue, and that it remains for Novell to transfer them. (*See* Compl. p. 10, ¶ 3) (SCO requests that the Court issue an injunction "requiring Novell to assign to SCO any and all copyrights Novell has registered in UNIX and UnixWare.")

Because the Complaint fails to establish the falsity of Novell's purportedly slanderous statements, it should be dismissed.

**A.   The Asset Purchase Agreement and Amendment No. 2 Are Merely a Promise to Assign and Therefore Do Not Evidence a Valid Transfer of Copyright Ownership Under the Copyright Act.**

The Asset Purchase Agreement, standing alone, does not constitute a written instrument of conveyance under the Copyright Act sufficient to transfer copyright ownership. SCO alleges that Schedule 1.1(a) of the APA sets forth the assets transferred from Novell to Santa Cruz. (Compl. ¶ 14.) The operative portion of the agreement, however, is Section 1.1(a), not Schedule

---

[1] The question of whether a purported copyright assignment constitutes a written instrument of conveyance under the Copyright Act requires interpretation of the Copyright Act and is sufficient to render this action within the original jurisdiction of the federal courts. *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46-47 (2d Cir. 2002).

1.1(a). Section 1.1(a) is merely a promise to transfer, upon closing, all of the assets listed in Schedule 1.1(a), and also states:

> Notwithstanding the foregoing, the Assets to be so purchased shall not include those assets (the "Excluded Assets") set forth on Schedule 1.1(b).

(APA Section 1.1(a), attached at Compl. Ex. A.) Schedule 1.1(b) lists "all copyrights" as being excluded. (APA Schedule 1.1(b) §V.A., attached at Compl. Ex. A.) Thus, on its face, the Asset Purchase Agreement did not transfer any copyrights to Santa Cruz.

Likewise, APA Amendment No. 2, standing alone, does not constitute a written instrument of conveyance under the Copyright Act sufficient to transfer copyright ownership. Where a document makes no mention of a grant, transfer, or assignment of copyrights, it is not an instrument of conveyance under the Copyright Act. *Radio TV*, 183 F.3d at 927. In *Radio TV*, one of the documents claimed to constitute a section 204(a) instrument referred to delivery of certain television episodes but did not mention a grant of an exclusive license or other assignment. *Id.* at 927-28. The court found that this document did not, therefore, constitute a written instrument of conveyance under section 204(a). *Id.* APA Amendment No. 2 similarly does not purport to transfer anything in and of itself; it merely amends a section of the "Excluded Assets" section of the Asset Purchase Agreement.

Finally, read together, the Asset Purchase Agreement and Amendment No. 2 do not constitute an instrument that transfers copyright ownership. Instead, the two documents at most constitute a mere promise to assign certain unidentified copyrights if those copyrights are "required." A review of the first substantive clause of the Asset Purchase Agreement makes this fact clear:

> On the terms and subject to the conditions set forth in this Agreement, Seller *will* sell, convey, transfer, assign and deliver to Buyer and Buyer *will* purchase and acquire from Seller on the Closing Date (as defined in Section 1.7), all of Seller's right, title and interest in and to the assets and properties of Seller relating to the Business (collectively, the "Assets") identified on Schedule 1.1(a) hereto. Notwithstanding the foregoing, the Assets to be so purchased shall not include those assets (the "Excluded Assets") set forth on Schedule 1.1(b).

(APA § 1.1(a), attached at Compl. Ex. A (emphasis added).) Neither this clause nor any other clause in the Agreement states that the Seller "hereby" assigns, or that the Buyer "hereby" acquires.

The Asset Purchase Agreement and Amendment No. 2 therefore constitute solely a *promise* to assign in the future. A mere promise to assign in the future, however, is not an actual assignment. This sharp distinction between a promise to assign and an actual assignment is well-recognized. *See, e.g., Monarch Licensing, Ltd. v. Ritam Int'l, Ltd.*, 24 U.S.P.Q.2d (BNA) 1456, 1459 (S.D.N.Y. 1992) (distinguishing between promise to assign trademarks and copyrights and actual execution of assignment of trademarks and copyrights); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-1581 (Fed. Cir. 1991) (distinguishing between agreement to assign patents and actual assignment of patents); *Li'l Red Barn, Inc. v. The Red Barn Sys., Inc.*, 322 F. Supp. 98, 107 (N.D. Ind. 1970), *aff'd* at 174 U.S.P.Q. (BNA) 193 (7th Cir. 1972) (distinguishing between agreement to assign trademarks and actual assignment of trademarks).

In the absence of an actual assignment, a promise to assign is insufficient to satisfy the requirements of a written instrument of conveyance established by section 204(a). Therefore, the Asset Purchase Agreement and Amendment No. 2, even when read together, do not constitute an instrument under the Copyright Act sufficient to transfer copyright ownership. Absent an actual

transfer of copyright ownership, Novell continues to be the owner of copyrights at issue, and SCO has accordingly failed to properly allege the falsity of Novell's ownership assertions.[2]

### B. Assuming *Arguendo* that the Asset Purchase Agreement and Amendment No. 2 Purport to Transfer Copyright Ownership, They Fail to Meet the Copyright Act Requirement That Purported Transfers Specify What Copyrights Are Being Transferred.

Even if the documents SCO cited facially purported to constitute an actual transfer rather than merely a promise to transfer, the agreements would still fail to satisfy the Copyright Act's conveyancy requirements. In order to suffice as a written instrument of conveyance under the Copyright Act, the purported assignment must state "precisely what rights are being transferred." *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990); *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994). The terms of the transfer must be clear and definite in order to fulfill the purposes of the statute, to "enhance predictability" in copyright ownership and to make intellectual property "readily marketable." *Effects Assoc.*, 908 F.2d at 557; *Konigsberg*, 16 F.3d at 357. *See also Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 749-50 (1989) ("Congress' paramount goal in revising the 1976 [Copyright] Act [was that of] enhancing predictability and certainty of copyright ownership."); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412 (7th Cir. 1992) (explaining that the purpose of the analogous writing requirement in § 101(2) of the act was "to make the ownership of property rights in intellectual property clear and definite").

Particularly when a purported assignment seeks to transfer something less than "all rights," definiteness is required. Here, there are multiple works potentially at issue, as UNIX and

---

[2] Nor can SCO successfully amend its Complaint by referring to an acquisition closing document that transferred the assets promised to the buyer under the APA. This document merely incorporated the APA's definition of included and excluded assets, and the APA excluded copyrights from the assets to be transferred.

8

UnixWare had many versions and releases. Moreover, as to any particular work, copyright ownership is comprised of a bundle of rights, which can be transferred in whole or in part. *Effects Assoc.*, 908 F.2d at 559. Without specificity as to which particular copyrighted works and which rights within each copyrighted work's bundle of rights were purportedly transferred, the purported assignment fails.

Amendment No. 2's vagueness as to which copyrights are at issue is glaring. It merely amends the schedule of excluded assets as follows:

> All copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the [Asset Purchase Agreement] required for [Santa Cruz] to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies.

(APA Amendment No. 2, attached at Compl. Ex. A.) Amendment No. 2 does not identify which, if any, particular rights associated with which, if any, copyrighted works are "required." It thus fails as a written instrument of conveyance due to its vagueness, and it is insufficient to satisfy section 204(a) of the Copyright Act.[3]

Contrary to SCO's assertions, Amendment No. 2 does not purport to concern "all copyrights pertaining to the UNIX and UnixWare technologies." Instead, it concerns only the unidentified rights that make up the copyrights required for Santa Cruz to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies. Not only are those rights not identified, but SCO's "rights with respect to the acquisition of UNIX and UnixWare

---

[3] In its Complaint, SCO also refers to the copyrights listed in Attachment E to the Seller Disclosure Schedule of the Asset Purchase Agreement. (Compl. ¶ 2.) A review of the Asset Purchase Agreement demonstrates that Attachment E is unrelated to the assets transferred under the Asset Purchase Agreement. (APA § 1.1(a), attached at Compl. Ex. A; APA Schedule 1.1(a), attached at Compl. Ex. A; APA Schedule 1.1(b), attached at Compl. A.) Moreover, nowhere in its Complaint does SCO reference Attachment E in connection with its claim of ownership. (Compl. ¶¶ 14-17.) Hence, Attachment E is irrelevant to the question of copyright ownership.

technologies" are unidentified. In the face of such vague and ambiguous language, the governing authority is clear: the purported assignment must be construed in favor of the copyright holder and against a transfer of any copyrights. *Bieg v. Hovnanian Entes., Inc.*, 157 F. Supp. 2d 475, 480 (E.D. Pa. 2001). *See Effects Assoc.*, 908 F.2d at 557 (stating that the writing requirement avoids inadvertent transfers of copyright ownership by copyright holders).

Because the documents SCO relies upon contradict its allegation that it owns the copyrights, SCO has failed to adequately plead the element of falsity in its slander of title cause of action. Without pleading falsity, there is no theory upon which SCO can recover for slander of title. Accordingly, SCO's Complaint should be dismissed.

## II. SCO HAS MADE ONLY VAGUE ALLEGATIONS OF YET UNREALIZED LOSSES AND THEREFORE HAS NOT PLED SPECIAL DAMAGES SUFFICIENT TO STATE A CLAIM FOR SLANDER OF TITLE.

In order to state a claim for slander of title, a plaintiff must plead special damages with particularity. *Valley Colour, Inc. v. Beuchert Builders, Inc.*, 944 P.2d 361, 364 (Utah 1997) ("A slander of title action requires proof of actual or special damages.")(quoting *Banberry Crossing*, 780 P.2d at 1257); *Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988) ("Slander of title actions are based only on palpable economic injury and require a plaintiff to prove special damages . . . . There are no general or presumed damages in slander of title actions."). Utah Rule of Civil Procedure 9(g) ("When items of special damage are claimed, they shall be specifically stated."). They must be pled specifically "so that the opposing party has an adequate opportunity to defend against the plaintiff's claims." *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 162 (Utah 1991); *see Cohn v. J.C. Penney Co., Inc.*, 537 P.2d 306, 311 (Utah 1975) ("It is a question of whether or not the pleadings contain such information as will apprise the defendant of such damages as must of necessity flow from that which is alleged.").

In a slander of title action, the special damages alleged must consist of a "realized" or "liquidated" pecuniary loss. *Valley Colour*, 944 P.2d at 364; W. Page Keeton, PROSSER AND KEETON ON THE LAW OF TORTS 971 (1984) ("The special damage rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales."); RESTATEMENT (SECOND) OF TORTS §§ 624, 633. Merely alleging that the value of the property at issue has dropped is insufficient to state a claim for slander of title. *Valley Colour*, 944 P.2d at 364. Similarly, where a plaintiff has simply alleged a loss of market capitalization and a negative impact on its dealings with third parties, it has insufficiently pled special damages in a slander of title action. *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1299 (10th Cir. 2002) (applying Utah substantive law regarding claim of libel *per quod*, a claim that requires pleading of special damages). Finally, the plaintiff must allege that the specific, realized pecuniary loss alleged is directly caused by the actions of the defendant. *Dowse v. Doris Trust Co.*, 208 P.2d 956, 958 (Utah 1949). Where a plaintiff fails to allege "a pecuniary loss resulting from the act of the defendant," the plaintiff cannot prevail. *Id.*

SCO does not meet the pleading standard. The Complaint contains allegations relating to harm in three paragraphs, but does not set forth with particularity a realized pecuniary loss. SCO generally alleges that Novell "has caused and is continuing to cause [SCO] to incur significant irreparable harm to its valuable UNIX and UnixWare copyrights, to its business, and its reputation." (Compl. ¶ 7.) It also states that "[a]s a consequence of Novell's conduct alleged herein, SCO has incurred actual and special damages in an amount to be proven at trial." (Compl. ¶ 26.) Finally, it provides the following general description of its alleged injuries:

> Novell's wrongful claims of copyrights and ownership in UNIX
> and UnixWare have caused, and continue to cause, irreparable
> harm to SCO, in the following particulars:

11

     a.     Customers and potential customers of SCO are unable to ascertain the truth of ownership in UNIX and UnixWare, and make decisions based thereon; and

     b.     SCO's efforts to protect its ownership of UNIX and UnixWare, and copyrights therein, are subject to a false cloud of ownership created by Novell.

(Compl. ¶ 21.) This is the sum total of SCO's damages allegations.

SCO's allegations are plainly insufficient. The alleged injuries are not a "realized" or "liquidated" loss. Instead, they are precisely the type of general allegations of some speculative injury that the special damages pleading requirements for a slander of title action are meant to avoid. Ordinarily, special damages are alleged by "evidence of a lost sale or the loss of some other pecuniary advantage." *Bass*, 761 P.2d at 568. SCO has not alleged anything of the sort. SCO did not adequately plead special damages, and thus its claim for slander of title must be dismissed.

## CONCLUSION

For the foregoing reasons, SCO's Complaint should be dismissed.

DATED:     February 9, 2004.

                        ANDERSON & KARRENBERG

                        */s/ Heather M. Sneddon*
                        Thomas R. Karrenberg
                        John P. Mullen
                        Heather M. Sneddon
                        **Attorneys for Defendant Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___9th___ day of February, 2004, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101


Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_____/s/ Timothy K. Madden_____