FILED
U.S. DISTRICT COURT

2005 MAR 04 PM 4:25

DISTRICT OF UTAH

BY: _____
   DEPUTY CLERK

Brent O. Hatch (5715)  
Mark R. Clements (7172)  
HATCH, JAMES & DODGE, P.C.  
10 West Broadway, Suite 400  
Salt Lake City, Utah 84101  
Telephone: (801) 363-6363  
Facsimile: (801) 363-6666  

Stephen N. Zack (pro hac vice)  
Mark J. Heise (pro hac vice)  
BOIES, SCHILLER & FLEXNER LLP  
100 Southeast Second Street, Suite 2800  
Miami, Florida 33131  
Telephone: (305) 539-8400  
Facsimile: (305) 539-1307  

Attorneys for Plaintiff The SCO Group, Inc.

---

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, Plaintiff, vs. NOVELL, INC., a Delaware corporation, Defendant. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Civil No.: 2:04CV00139 <br><br> Judge Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |

Plaintiff The SCO Group, Inc. ("SCO") respectfully submits this Memorandum in Opposition to Defendant's Motion to Dismiss.[1]

---

[1] SCO has filed a Motion to Remand this case to state court on the basis that this Court lacks subject matter jurisdiction. This Court should not address Novell's Motion to Dismiss until it has addressed and ruled on SCO's Motion to Remand. *See In re Bear River Drainage District*, 267 F.2d 849 (10th Cir. 1959) (when a district court is faced with a motion to remand and a motion to dismiss, the court should "rule first on the motion to remand" and if granted send "the motion to dismiss back to state court"). While SCO may in fact prefer having its claim heard in federal court, it is obligated to raise the issues that SCO believes preclude this Court from exercising jurisdiction over this case

13

Dockets.Justia.com

## INTRODUCTION

Through an Asset Purchase Agreement dated September 19, 1995, as amended, SCO, through its predecessor in interest, paid Novell, Inc. ("Novell") 6.1 million shares of SCO common stock to acquire from Novell:

> I.   ***All rights and ownership of UNIX and UnixWare***, including but not limited to all versions of UNIX and UnixWare and copies of UNIX and UnixWare (including revisions and updates in process), and all technical, design, development, installation, operations and maintenance information concerning UNIX and UnixWare, ***including source code, source documentation, source listings and annotations, appropriate engineering notebooks, test data and test results***, as well as all reference manuals and support materials normally distributed by [Novell] to end-users and potential end-users in connection with the distribution of UNIX and UnixWare…
>
> II.   All of [Novell's] claims arising after the Closing Date against any parties relating to any right, property or asset included in the Business.
>
> III.   All of [Novell's] rights pertaining to UNIX and UnixWare under any software development contracts, licenses and any other contracts to which [Novell] is a party or by which it is bound and which pertains to the Business…

[Asset Purchase Agreement at Schedule 1.1(a) (emphasis added).]

Subsequent to the Asset Purchase Agreement, on October 16, 1996, the parties executed Amendment No. 2 to the Asset Purchase Agreement which clarified that SCO owned all "copyrights and trademarks owned by Novell as of the date of the [Asset Purchase Agreement] required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies." In Attachment E of Novell's Disclosure Schedule to the Asset Purchase Agreement, Novell listed 106 separate copyright registrations filed with the United States Copyright Office at the time of the Asset Purchase Agreement covering products and materials relating to the UNIX and UnixWare business transferred to SCO. As set forth in the Asset Purchase Agreement and as alleged in SCO's Complaint, SCO is the exclusive owner of all of the subsequently or previously registered copyrights

and all non-registered copyrights fixed by operation of law in the UNIX and UnixWare source code, object code and documentation.

SCO has exercised exclusive and unchallenged control over the UNIX and UnixWare technologies for the entire period since execution of the Asset Purchase Agreement – a period in excess of eight years. Notwithstanding the clear language of the Asset Purchase Agreement, Amendment No. 2 and the eight-plus years SCO has exercised exclusive control over the copyrights in UNIX and UnixWare, Novell's new management[2] has recently begun a malicious campaign to slander SCO's ownership rights in UNIX and UnixWare. Not coincidentally, Novell's slander campaign was directly timed to its change of senior executive management and its decision to embrace Linux-related business activities in partnership with IBM. As alleged in SCO's Complaint, Novell has repeatedly represented both publicly and directly to customers and potential customers of SCO that Novell and not SCO owns the UNIX and UnixWare copyrights. Novell has also recently filed several false copyright registration applications with respect to the very UNIX and UnixWare technologies it indisputably transferred to SCO through the Asset Purchase Agreement.

Now Novell, through its Motion to Dismiss, asks this Court to find that SCO has no ownership interest in the UNIX and UnixWare copyrights because Novell claims the writing it negotiated and executed transferring those valuable rights to SCO was not technically sufficient under the Copyright Act. Novell's Motion must be denied. Novell misrepresents the applicable law and entirely ignores the allegations in SCO's Complaint and the plain language and the intent of the parties as set forth in the Asset Purchase Agreement. As set forth below and as alleged in SCO's Complaint, SCO owns UNIX and UnixWare and all copyrights related thereto.

---

[2] Novell's management at the time of the Asset Purchase Agreement that transferred the copyrights to SCO is largely no longer at Novell.

3

## STANDARD OF REVIEW

In considering a motion to dismiss, a court must take the allegations of the complaint at face value and must construe them favorably to the plaintiff. The allegations in the plaintiff's complaint are presumed true. *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991). A court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff could prove no set of facts supporting the claim which would entitle plaintiff to relief. *Huxall v. First State Bank,* 842 F.2d 249, 250- 51 (10th Cir.1988). The court's function on a Rule 12(b)(6) motion is merely "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller,* 948 F.2d at 1565.

## ARGUMENT

Novell claims in its Motion to Dismiss that the nearly 50-page Asset Purchase Agreement between Novell and SCO, together with its numerous schedules and amendments, was not a sufficient "writing", "note", or "memorandum" under Section 204(a) of the Copyright Act to transfer the UNIX and UnixWare copyrights from Novell to SCO. Novell then claims that because it purportedly owns the UNIX and UnixWare copyrights, Novell's public representations of ownership are not false and therefore SCO has not alleged a claim for slander of title.

As support for its position, Novell claims that Section 204(a) imposes "very strict requirements on purported transfers of copyright ownership" and that SCO has not alleged a writing sufficient to meet those strict requirements. [Novell's Mem. at 5.] Novell grossly overstates the law and mischaracterizes both the terms of the Asset Purchase Agreement, as amended, and the allegations in SCO's Complaint. As the Ninth Circuit has held in a leading case on the subject, "[t]he [§204(a)] rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to

4

be the Magna Charta; a one-line pro forma statement will do." *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). The Asset Purchase Agreement as amended and as alleged in SCO's Complaint clearly meets the requirements of a Section 204(a) writing.

Novell also claims that SCO has not alleged special damages with sufficient particularity under Rule 9(g) of the Federal Rules of Civil Procedure to support its slander of title claim. Again, Novell has attempted to elevate a simple standard to something it is not. Rule 9(g) only requires a plaintiff to plead damages in a manner that apprises the defendant of the claims at issue and the damages alleged to flow from those claims. Moreover, attorneys' fees are recoverable as special damages under Utah law for a claim of slander of title and SCO has obviously incurred attorneys' fees in protecting its valuable ownership rights in UNIX and UnixWare and has specifically sought attorneys' fees in its Complaint.

**I.   SCO IS THE OWNER OF THE UNIX AND UNIXWARE COPYRIGHTS PURSUANT TO THE ASSET PURCHASE AGREEMENT AND NOVELL'S PUBLIC STATEMENTS TO THE CONTRARY ARE FALSE.**

In its Complaint, SCO alleges in several places that it is the sole and exclusive owner of all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, all copyrights related thereto, and all claims relating to any right, property, or asset included in the business. [Compl. at ¶¶ 1, 16-17, and 23.] SCO's allegations, together with the plain language of the Asset Purchase Agreement, as amended, are sufficient to establish SCO's ownership of the UNIX and UnixWare copyrights and the falsity of Novell's public representations to the contrary. Novell asks this Court to ignore the allegations in SCO's Complaint and declare that Novell owns the UNIX and UnixWare copyrights because Novell claims the Asset Purchase Agreement as amended is not a sufficient writing to transfer the UNIX and UnixWare copyrights to SCO under Section 204(a) of the Copyright Act. Novell is wrong and has misstated the law regarding Section 204(a).

The purpose of Section 204(a) is to "protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." *Imperial Residential Design, Inc. v. The Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995). "No magic words must be included in a document to satisfy § 204(a)." *Radio Television Espanola S.A. v. New World Entertainment, LTD.*, 183 F.3d 922, 927 (9th Cir. 1999). Courts have held that the document need not even include the word "copyright" to constitute a valid transfer. *See, e.g., Schiller & Schmidt v. Nordisco Corporation*, 969 F.2d 410, 413 (7th Cir. 1992). As set forth above, the rule is simple and requires as little as a "one-line" signed note reflecting the parties' intent to transfer copyrights. *Effects Assoc.*, 908 F.2d at 557. *See also Radio Television Espanola*, 183 F.3d at 927 (holding that the Section 204(a) requirement is "simple"); *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, 690 F.Supp. 298, 300 (S.D.N.Y. 1988) (finding that a short letter transferring ownership of certain products but never mentioning copyrights and an invoice showing payment was a sufficient writing under Section 204(a) to defeat a motion for summary judgment).

Contrary to the above law, Novell claims in its Memorandum that Section 204(a) provides draconian requirements of specificity and clarity, and that written agreements that do not meet Novell's proposed heightened standard are invalid. Novell has not, however, cited a single case where a writing even remotely as detailed as the Asset Purchase Agreement as amended has been found insufficient under Section 204(a). In fact, of the three cases Novell cites in support of its supposed heightened standard, two did not involve written agreements. *See Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) (holding that **oral** agreement did not meet Section 204(a) requirement of a "writing") and *Konigsberg Intl., Inc. v. Rice*, 16 F.3d 355, 356 (9th Cir. 1994) (same). In the third case Novell cites, *Schiller & Schmidt, Incorporated v. Nordisco Corporation*, 969 F.2d 410, 412 (7th Cir. 1992), the Seventh Circuit held that a basic sales agreement that did not

6

mention the word "copyright" was sufficient to meet the requirements of Section 204(a). The court's opinion in *Schiller & Schmidt* actually **supports** SCO's position.

The Asset Purchase Agreement, as amended, is clearly sufficient to meet Section 204(a)'s requirement of a "writing," "note" or "memorandum." The issue, if any, is an interpretation of the Asset Purchase Agreement as amended – not whether a writing exists transferring assets and copyrights. Schedule 1.1(a) to the Asset Purchase Agreement provides that SCO acquired from Novell "all rights and ownership" of **all** versions of UNIX and UnixWare, its source code, and all related materials. *See* p. 2 *infra*. Amendment 2 to the Asset Purchase Agreement specifically set forth that SCO owned all "copyrights and trademarks owned by Novell as of the date of the [Asset Purchase Agreement] required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies." Novell, of course, ignores the contract language in its Motion.

Because SCO obtained "all rights and ownership of UNIX and UnixWare," SCO obviously has the exclusive right to market and distribute products using its UNIX and UnixWare technologies or license others to do the same, and to create and distribute new products and derivative works using its UNIX and UnixWare technologies. *SCO could not exercise its those rights without ownership of the UNIX and UnixWare copyrights as specifically set forth in Amendment 2*. Novell's claim that SCO has all rights and ownership of UNIX and UnixWare including all source code but somehow not all of the copyrights required to exercise those rights contradicts both the plain language of the Asset Purchase Agreement as amended and the intent of the parties as expressed in the agreement. Novell's Motion also asks the Court to ignore SCO's allegations in its Complaint that must be taken as true for purposes of Novell's Motion to Dismiss.[3]

---

[3] Novell also claims that the Asset Purchase Agreement as amended fails to meet the requirements of Section 204(a) because UNIX and UnixWare "had many versions and releases" and Amendment 2 does not specifically state which copyrights to which versions of UNIX and UnixWare were transferred to SCO. [Novell's Mem. at 8-9.] Novell's

7

In *Schiller & Schmidt, Incorporated v. Nordisco Corporation*, 969 F.2d 410 (7th Cir. 1992), the court addressed the issue of a transfer of copyrights under Section 204(a). In *Schiller*, the plaintiff sued the defendant for copyright infringement based on the use of 18 photographs. The defendant claimed that the plaintiff did not own the copyrights to the photographs because the original owner of the photographs had transferred them to a third party before he had purportedly transferred them to the plaintiff. The Seventh Circuit reviewed the "sale agreement" between the original owner of the photographs and the third party to determine whether the sale agreement was a writing sufficient to transfer the copyrights under Section 204(a): "Although the agreement does not mention the word "copyright," its wording leaves little doubt that [the original owner] sold all the assets of [his business], tangible and intangible alike." *Id.* at 413. The court noted that if the third party had not obtained the copyrights, he would not have obtained the right to use the negatives to make prints. The original owner also would have been unable to make prints because he no longer owned the negatives. Recognizing this absurd result, the court determined that the intent of the original owner and the third party was to transfer all ownership – including ownership of copyrights – to the third party and that the sale agreement was sufficient to transfer the copyrights under Section 204(a) even though it did not specifically mention or refer to "copyrights." *Id.*

The Asset Purchase Agreement as amended is significantly more detailed regarding the transfer of copyrights than the agreement the court found sufficient in *Schiller*. SCO acquired, pursuant to the Asset Purchase Agreement as amended, "*[a]ll rights and ownership* in UNIX and UnixWare" and ownership of all copyrights required for SCO to exercise *"all rights and ownership"* in UNIX and UnixWare. SCO could not exercise its rights as the exclusive owner of UNIX and UnixWare without the copyrights it purchased as specifically set forth in Amendment 2. Likewise,

---

position is meritless. As set forth in the Asset Purchase Agreement, SCO acquired from Novell "all rights and ownership" in "all versions of UNIX and UnixWare" and all copyrights related thereto.

the copyrights to UNIX and UnixWare would have no use to Novell because Novell has no ownership rights whatsoever in any of the UNIX and UnixWare products to which the copyrights apply. The Asset Purchase Agreement as amended clearly complies with Section 204(a).

Novell also claims that because the Asset Purchase Agreement states that Novell "will sell, convey, transfer, assign, and deliver" UNIX and UnixWare to SCO "on the Closing Date," the Asset Purchase Agreement was merely a promise to assign assets in the future (at the Closing Date) and therefore does not meet the requirements of Section 204(a). Again, Novell's argument is meritless. The Closing occurred in December 1995. Novell received 6.1 million shares of stock from SCO and SCO received all rights and ownership in UNIX and UnixWare and the copyrights related thereto from Novell and has exercised those rights enfettered for more than eight years. The allegations in the Complaint make this clear and must be accepted as true for purposes of Novell's Motion. The cases Novell cites do not involve Section 204(a) and are not remotely comparable to this case.[4] As stated, the purpose of Section 204(a) is to prevent the inadvertent transfer of copyrights by requiring a writing signed by both parties. Reading Section 204(a) in the hyper-technical manner Novell suggests would not serve this purpose and is contrary to law. Novell's Motion should be denied.

## II.   SCO HAS SUFFICIENTLY ALLEGED DAMAGES.

Novell also claims SCO's Complaint should be dismissed because SCO has not sufficiently alleged damages. In order to state a claim under Utah law for slander of title, a plaintiff must plead that the false statement caused actual or special damages. *See First Security Bank of Utah, N.A. v. Banberry Crossing,* 780 P.2d 1253, 1257 (Utah 1989). Unlike general damages which "naturally and necessarily result from the harm done," special damages "are a particular type of damages which are

---

[4] For example, Novell cites *Li'l Red Barn, Inc. v. The Red Barn System, Inc.*, 322 F.Supp. 98 (N.D. Ind. 1970). In that case, the parties entered into an agreement providing that a trademark would be reassigned if the purchasing party defaulted in the performance of the terms of a purchase agreement. The court merely held that an agreement that a trademark could be reassigned upon the occurrence of a breach was not an actual assignment. *Id.* at 107. That case does not support Novell's motion.

9

a natural consequence of the injury caused but are not the type of damages that necessarily flow from the harmful act." *Hodges v. Gibson Products Co.*, 811 P.2d 151, 162 (Utah 1991).

In Utah slander of title cases, special damages are proved by "evidence of a lost sale or the loss of some other pecuniary advantage." *Bass v. Planned Management Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988). In its complaint, SCO has pled precisely such a loss of pecuniary advantage. Paragraph 21 of SCO's complaint reads:

> Novell's wrongful claims of copyrights and ownership in UNIX and UnixWare have caused, and continue to cause, irreparable harm to SCO, in the following particulars:
>
> a.   Customers and potential customers of SCO are unable to ascertain the truth of ownership in UNIX and UnixWare, and make decisions based thereon; and
> b.   SCO's efforts to protect its ownership of UNIX and UnixWare, and copyrights therein, are subject to a false cloud of ownership created by Novell.
>
> \* \* \* \*
>
> As a consequence of Novell's conduct as alleged herein, SCO has incurred actual and special damages in an amount to be proven with at trial.

Complaint at ¶¶ 21, 26.

Moreover, it is well-settled that attorneys' fees are recoverable as "special damages" if incurred "to clear title or to undo any harm created by whatever slander of title occurred." *Bass*, 761 P.2d at 569. SCO has obviously incurred attorneys' fees in protecting its rights and clearing its title to UNIX and UnixWare and SCO seeks the recovery of such fees in its Complaint at ¶ 4 of the Prayer for Relief.

In its Memorandum, Novell has substantially overstated the Rule 9(g) pleading requirement. The Utah Supreme Court held in *Cohn v. J.C. Penny Co., Inc.*, 537 P.2d 306 (Utah 1975) that in Utah there is no "inflexible rule" regarding the pleading of special damages. 537 P.2d at 311. Rather, it is simply "a question of whether or not the pleadings contain such information as ***will apprise the defendant of such damages*** as must of necessity flow from that which is alleged." *Id.* (emphasis added); *see also Simmons v. Wilkin*, 15 P.2d 321, 322 (Utah 1932) ("The purpose of the rule is to

10

avoid surprise to the defendant."). Thus, while special damages must be specifically plead, "the law does not require that the exact dollar amount of special damages be specifically pleaded." *Hodges*, 811 P.2d at 162 (holding that general allegations of "lost wages, medical expenses, and severe emotional distress" contained in a complaint are sufficient "to satisfy the requirement of Rule 9(g)").

SCO has pled with sufficient particularity the damage it incurred and is continuing to incur as a result of Novell's slander of SCO's title to the UNIX and UnixWare copyrights. It has set forth the specific loss of pecuniary advantage that SCO's customers are unable to ascertain the truth of ownership in UNIX and UnixWare because of Novell's wrongful acts. SCO has also incurred legal fees protecting its valuable ownership rights in UNIX and UnixWare. SCO's allegations are sufficiently particular to "apprise" Novell of SCO's claims. Indeed, Novell knows exactly what is at issue in this case and, as alleged in SCO's Complaint, Novell has acted with the specific intent of causing SCO the precise type of damages SCO has alleged. SCO has met the pleading requirements for its claim of slander of title in this action. Novell's Motion to Dismiss should be denied.[5]

## CONCLUSION

For all of the foregoing reasons, Novell's Motion to Dismiss should be denied. SCO has properly alleged a claim for slander of title under Utah law.

DATED this 5th day of March, 2004.

By: _/s/ Brent O. Hatch_

HATCH JAMES & DODGE
Brent O. Hatch
Mark R. Clements

BOIES, SCHILLER & FLEXNER LLP
Stephen N. Zack
Mark J. Heise
*Attorneys for Plaintiff*

---

[5] Even if the Court determined that SCO did not allege damages with sufficient particularity to apprise Novell of SCO's claim, SCO should be granted leave to amend its Complaint. This case is in its initial stage and Novell would not suffer any prejudice if SCO were granted leave to amend.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March 2004, I caused to be mailed a true and correct copy of the foregoing to the following by the method described below:

*By Hand Delivery:*

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

*BY U.S. Mail, postage prepaid:*

Paul Goldstein
559 Nathan Abbot Way
Stanford, CA 94305

Michael A. Jacobs
Matthew I. Kreeger
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

*[signature]*