MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice pending)
Matthew I. Kreeger (pro hac vice pending)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Paul Goldstein (pro hac vice pending)
559 Nathan Abbot Way
Stanford, CA 94305
Telephone: (650) 723-0313

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

## INTRODUCTION

SCO's opposition to Novell's motion to dismiss concedes that its slander of title claim turns on whether the Asset Purchase Agreement (the "APA") assigned the copyrights from Novell. SCO also concedes that section 204(a) of the Copyright Act sets the applicable legal standard. The principal issue in this motion to dismiss, therefore, is whether the APA constitutes a written instrument of conveyance of the copyrights, as the statute requires.

SCO's opposition brief largely ignores the text of the APA. SCO does not rebut Novell's textual analysis that the APA, even as amended by Amendment No. 2, constitutes, *at most,* a contractual promise to assign, under certain conditions, certain rights falling under the rubric of "copyright." Notwithstanding its appeal to some divined "intent of the parties" based on facts outside the complaint, SCO is unable to show that the APA as amended actually conveyed copyright ownership to SCO's alleged predecessor, and hence its complaint must fail.[1]

SCO's reliance on its claim for attorneys' fees in this action for its required pleading of special damages is also unavailing, as Utah courts have rejected this very theory. SCO's complaint should be dismissed for this reason as well.

## I. SCO'S COMPLAINT SHOULD BE DISMISSED BECAUSE NOVELL'S STATEMENTS REGARDING COPYRIGHT OWNERSHIP ARE TRUE.

In its opposition, SCO does not dispute core propositions in Novell's opening brief:

- In order to survive a motion to dismiss, SCO must plead facts sufficient to show the falsity of Novell's statements that copyrights were not transferred. (Memorandum in Support of Motion to Dismiss ("Opening Br.") at 4.)

- Where allegations of fact are at variance with the terms of documents attached to the complaint, the documents control. (*Id.* at 3-4.)

---

[1] SCO's reference to "facts" outside of the complaint is not limited to the intent of the parties as to the APA, but also includes that Novell's management has changed and that "Novell's slander campaign was directly timed to its change of senior executive management and its decision to embrace Linux-related business activities in partnership with IBM." (Opp'n at 3). The latter statement is simply untrue. More to the point, statements outside of the complaint are not to be considered in deciding a motion to dismiss. *MacArthur v. San Juan County,* 309 F.3d 1216, 1221 (10th Cir. 2002), *cert. denied,* 123 S. Ct. 2246 (2003).

1

- Section 204(a) of the Copyright Act mandates a written instrument of conveyance in order to effect a transfer of copyright ownership and governs the determination whether a particular writing constitutes such an instrument. (*Id.* at 5.)

Thus, despite SCO's references to its ownership allegations in the complaint (Opp'n at 5), unless the APA and/or Amendment No. 2 constitute a written instrument of conveyance of all UNIX and UnixWare copyrights, the motion to dismiss should be granted.

SCO, by failing to rebut, also concedes key points as to how the APA and Amendment No. 2 must be understood. SCO does not dispute that a purported assignment must be construed in favor of the copyright holder and against a transfer of any copyrights. (Opening Br. at 10.) SCO does not contest that Section 1.1(a), with its language promising to transfer certain assets and excluding specifically the Excluded Assets, is the operative portion of the agreement specifying which assets are to be transferred. (*Id.* at 5-6.) SCO also does not contest that Schedule 1.1(b) excluded copyrights from the APA. (*Id.* at 6.) SCO does not rebut Novell's point that Attachment E of the Seller Disclosure Statement, which contains a list of copyrights, is not relevant to the issue of copyright ownership. (*Id.* at 9 n.3.) In sum, SCO does not dispute that the UNIX and UnixWare copyrights were excluded from the assets to be transferred under the APA when it was executed.

SCO also fails to contest that Amendment No. 2, standing alone, does not constitute a written instrument of conveyance sufficient to transfer copyright ownership. (*Id.* at 6.)

The only remaining question, therefore, is whether the APA as amended meets the requirements of section 204(a), as SCO contends. (Opp'n at 7.) Because it constitutes only a promise to assign, and not an instrument of conveyance, and because it is so vague as to be indeterminate on the issue of which copyright rights to which works were supposedly transferred, the amended APA does not meet the requirements of section 204(a) and SCO is unable to demonstrate ownership.

2


### A. The Amended APA Constitutes At Most a Promise to Transfer Copyrights.

Having conceded that the APA before Amendment No. 2 excluded all copyrights from transfer, and that Amendment No. 2 is not a stand-alone instrument of conveyance, SCO's lead argument is that lurking in the 50-page APA as amended there *must* be an instrument of conveyance *somewhere* that satisfies section 204(a)'s requirements. SCO cannot point, however, to any language of assignment anywhere in the amended APA. Indeed, SCO ignores that in its own complaint it seeks a court order transferring the copyrights from Novell, a request that is at odds with its position that it already owns the copyrights. (*See* Opening Br. at 5.)[2] Instead, it challenges Novell's reading of the case law and asserts that the issue here is the parties' intent. (Opp'n at 6-7.) SCO's argument does not withstand analysis.

The fundamental problem with SCO's opposition is its failure to reckon with section 204(a)'s requirement of a written instrument "of conveyance." What SCO must do is show that there is some instrument, in writing, in which an actual transfer of ownership occurs. *See Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1581 (Fed. Cir. 1991) (agreement containing only a promise to assign distinguished from case in which the contract read "seller 'hereby sells' the patent and buyer 'hereby purchases.'") (distinguishing *Sims v. Mack Trucks, Inc.*, 407 F. Supp. 742 (E.D. Pa. 1976)). SCO has not identified that written instrument. Absent such a written instrument, ownership could not have transferred. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("[S]ection 204 of the Copyright Act invalidates a purported transfer of ownership unless it is in writing.")

Seeking to avoid the basic distinction between a promise to assign and an instrument of conveyance, SCO states that authority cited by Novell is not "remotely comparable to this case" and attempts to distinguish *Li'l Red Barn* because it concerned only "an agreement that a

---

[2] One court relied upon a plaintiff's request for a "confirmatory assignment" as further support for its determination that no assignment of trademarks and copyrights had taken place. *Monarch Licensing, Ltd. v. Ritam Int'l, Ltd.*, 24 U.S.P.Q.2d (BNA) 1456, 1459 (S.D.N.Y. 1992). Here, SCO is not merely seeking a confirmatory assignment, but instead an injunction "requiring Novell to assign to SCO any and all copyrights Novell has registered in UNIX and UnixWare." (Compl. p. 10, ¶ 3.)

3

trademark could be reassigned upon the occurrence of a breach." (Opp'n at 9 n.4.) That case, however, like the others cited by Novell and ignored by SCO, recognizes the general proposition that an agreement of future assignment does not constitute an actual assignment. *Li'l Red Barn, Inc. v. The Red Barn Sys., Inc.*, 322 F. Supp. 98, 107 (N.D. Ind. 1970), *aff'd* 174 U.S.P.Q. (BNA) 193 (7th Cir. 1972) (applying general rule in connection with assignment of trademarks); *see also Arachnid, Inc.*, 939 F.2d at 1580-81 (same in connection with patents); *Monarch Licensing, Ltd. v. Ritam Int'l, Ltd.*, 24 U.S.P.Q.2d (BNA) 1456, 1459 (S.D.N.Y. 1992) (same in connection with trademarks and copyrights). SCO cites no case that holds that a promise to assign constitutes an actual assignment, and thus has no support for its attempt to blur the well-recognized distinction between the two.

SCO's argument that the copyrights were transferred because the time to assign has come and gone (Opp'n at 9) is contradicted by the documents. The APA was signed on September 19, 1995. In that document, Novell agreed that on the Closing Date (December 6, 1995) it would assign all assets on Schedule 1.1(a) but that it would transfer no assets listed on Schedule 1.1(b), the Excluded Assets schedule. (APA § 1.1(a).)[3] There is no dispute that copyrights were expressly listed on the "Excluded Assets" schedule. Thus, even if, as SCO maintains, the assignment of something was self-executing on the Closing Date, no copyrights were transferred to SCO's alleged predecessor on that date. SCO's observation that Novell received 6.1 million shares of stock from SCO is irrelevant to the issues at hand and does nothing to alter the fact that no copyright transfer occurred. (Opp'n at 9.)

Over *ten months later*, the parties entered into Amendment No. 2. By its terms, the amendment was not retroactive to the date of the APA, but instead was effective only as of October 16, 1996, and thus could not have effected (or affected) a transfer that supposedly occurred on a self-executing basis ten months earlier. (Amendment No. 2 at 1 ("As of the 16th day of October 16, 1996 the [APA] is amended in the following respects.").)

---

[3] The APA, schedules, and amendments are attached as Exhibit A to the complaint.

4

SCO's argument that the assignment was self-executing is also contrary to the law. In the *Monarch Licensing* case, the contract stated that "upon termination [Licensee] agrees to assign all rights, title and interest in the trademarks and/or copyrights to [Licensor.]" *Monarch Licensing, Ltd.*, 24 U.S.P.Q.2d at 1459. It was undisputed that the agreement had terminated but that the Licensee had not executed an assignment following termination. Although the time to assign had passed, the court did not convert the promise to assign into an actual assignment and instead found that "[n]othing in the Agreement suggests that the assignment of trademark and copyrights provision is self-executing." *Id.* As such, the "most Monarch has is a contractual right to receive assignment of those rights." *Id.*

*Monarch Licensing* is on all fours with the facts here. It confirms that transfer of copyright ownership (as in the case of any ownership transaction, such as a purchase of a home) requires an actual assignment as opposed to a promise to assign, and it undermines SCO's claim that one may stretch the proper interpretation of a contract to find a self-executing assignment where none exists.

### B. The APA as Amended Is Too Indeterminate to Meet Statutory Requirements for an Instrument of Transfer.

Having conceded by its silence the law that copyright law construes a purported assignment in favor of the copyright holder and against a transfer of any copyrights, SCO fails to explain how an instrument framed in terms of copyrights that are "required" in order to exercise other rights can satisfy section 204(a) and effect a transfer of copyright ownership to it. SCO argues that because "no magic words" are required and a transfer agreement can be a "one-line" statement, the fifty-page APA is sufficient. (Opp'n at 6.) While a simple writing of conveyance may satisfy section 204(a) in some circumstances ("I hereby transfer the copyright in the attached manuscript to Publisher" would probably be sufficient), the instrument of conveyance must be clear in defining the copyrights that are transferred.

Thus, in *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, there were numerous

5

written documents that plaintiff argued transferred the copyrights, but the court found that none of the documents, read individually or together, had the clarity required to constitute a valid instrument of conveyance under section 204(a). 183 F.3d 922, 927-28 (9th Cir. 1999). The court observed that "the writing should 'serve as a guidepost for the parties.'" *Id.*[4] Where the written documents fail to do so adequately, they do not satisfy section 204(a).

Likewise, in *Playboy Enters., Inc. v. Dumas, Inc.*, the plaintiff argued that the endorsement of a legend acknowledging "payment in full for the assignment to Playboy Enterprises, Inc. of all right, title and interest in and to" the listed item was sufficient to satisfy section 204(a). 53 F.3d 549, 563-64 (2d Cir. 1995), *cert. denied*, 516 U.S. 1010. The court examined the written document and circumstances and found, contrary to plaintiff's assertions, that the written document was ambiguous as to whether copyrights were included. Hence, section 204(a) was not satisfied. *Id.*

SCO relies heavily on *Schiller & Schmidt v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992). In that case, an agreement to transfer all of the assets of a business without specifically mentioning copyrights was held to comply with section 204(a). According to SCO, the APA "is significantly more detailed" than the agreement in *Schiller*, and therefore must satisfy section 204(a). (Opp'n at 8.) SCO's argument misses the crucial fact that in the present case, the APA as originally executed was not silent as to copyrights; it specifically *excluded* them.[5]

---

[4] SCO omits a critical clause when it quotes *Imperial Residential Design, Inc. v. The Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995). (Opp'n at 6.) The entire quotation is as follows: "[T]he chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." 70 F.3d at 99 (omitted portions emphasized).

[5] SCO's reliance on *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, 690 F. Supp. 298, 300 (S.D.N.Y. 1988) is also misplaced. SCO argues that the combination of a short letter that did not mention copyrights and an invoice showing payment "was a sufficient writing under Section 204(a) to defeat a summary judgment motion." (Opp'n at 6). The court denied summary judgment because it found an issue of fact as to authority of the person who signed one of the documents and because the challenge as to the transfer was made by a third party. 690 F. Supp. at 301. The court found that "where the 'copyright holder appears to have no dispute with its licensee' on the issue of ownership, 'it would be anomalous to permit a third party infringer to invoke this provision against the licensee.'" *Id.* Following trial, however, the same court dismissed plaintiff's copyright infringement claim because the documents

6

SCO's repeated citation to the "all rights and ownership of UNIX and UnixWare" language from the APA is therefore beside the point. That language is found in an agreement which, when executed, expressly excluded copyrights from the assets to be transferred.

Nor does Amendment No. 2, signed ten months later, clearly specify the copyrights to be transferred. Rather, it contemplates a future assignment if SCO demonstrates that there are copyrights owned by Novell that are *"required for SCO to exercise its rights* with respect to the acquisition of UNIX and UnixWare technologies." (Amendment No. 2 (emphasis added).)

SCO maintains that *all* copyrights are covered by this provision, because it "could not exercise its those [sic] rights without ownership of the UNIX and UnixWare copyrights as specifically set forth in Amendment No. 2." (Opp'n at 7.) SCO thus tries to rewrite Amendment No. 2 to read "all copyrights except those copyrights in UNIX and UnixWare," but that formulation is not what the parties chose, and it is not open to SCO to elide the "required for" from Amendment No. 2.

Indeed, "required" is a strong word, and the overall structure of the APA does not support the idea that SCO needed outright ownership of all of the UNIX and UnixWare copyrights. The APA drew a sharp distinction between the existing Novell UNIX "SVRX" products and new products that SCO was expected to develop in the future. Novell was entitled to a 100% interest in on-going royalties from existing UNIX licenses (with a 5% administrative fee paid back to SCO), and had the power to prohibit SCO from entering into new licenses for SVRX products. (*See e.g.*, APA, Sections 1.2(b), 1.6, 4.16(b).) New products that SCO developed over time, by contrast, would carry much reduced royalty obligations. (*See* APA at Schedule 1.2(b).)

The copyright ownership rights provided by the APA follow this same division. Schedule 1.1(b) explicitly excludes all UNIX and UnixWare copyrights from the transfer, leaving Novell as the owner.[6] To the extent that SCO authored new copyrightable software after

---

did not contain any reference to copyrights and were, therefore, insufficient to satisfy the requirements of section 204(a). 13 U.S.P.Q.2d (BNA) 1472 (S.D.N.Y. 1989).

[6] Such an arrangement is not unusual and is expressly contemplated in the Copyright Act. "Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership

7

the acquisition, SCO would own the copyrights. Amendment No. 2, far from altering this balance by transferring "all" copyrights to SCO, at most transferred rights which SCO "required" to exercise its rights in the technology. As Novell has shown, SCO required far less than total ownership of the entire bundle of rights included within all of "the copyrights." (Opening Br. at 8-9.) SCO offers no argument in response. Thus, SCO's assertion that "[a]s set forth in the Asset Purchase Agreement, SCO acquired from Novell 'all rights and ownership' in 'all versions of UNIX and UnixWare' *and all copyrights related thereto*" must fail. (Opp'n at 8 n.3 (emphasis added).)

Because the amended APA does not identify the copyrights that are "required," there is no "guidepost" for the parties or the Court meeting the requirements of section 204(a). Prevailing copyright doctrine, which SCO does not dispute, is that close calls go to the copyright owner against the purported transferee. (*See* Opening Br. at 10.) SCO has not demonstrated that the question is even close. Even if the APA as amended was a purported transfer of copyright ownership (as opposed to a promise of future assignment), SCO has not shown that these instruments are sufficiently clear to meet the requirements of the statute, and its claim of ownership transfer must therefore fail. Under section 204(a), SCO has failed to demonstrate that it is the owner of the copyrights in question and its slander of title complaint must therefore be dismissed.

## II. NOTWITHSTANDING ITS PRAYER FOR ATTORNEYS FEES, SCO HAS NOT ADEQUATELY PLED SPECIAL DAMAGES.

SCO concedes that an appropriate allegation of special damages must "apprise the defendant of such damages as must of necessity flow from that which is alleged." (Opp'n at 10, citing *Cohn v. J.C. Penney Co., Inc.*, 537 P.2d 306, 311 (Utah 1975).) SCO also acknowledges that absent its general prayer for attorneys' fees, its damages allegations consist only of the

---

of any material object in which the work is embodied . . . ." 17 U.S.C. § 202; 3-10 Nimmer on Copyright § 10.09.

following two items:

> Customers and potential customers of SCO are unable to ascertain the truth of ownership in UNIX and UnixWare, and make decisions based thereon; and
>
> SCO's efforts to protect its ownership of UNIX and UnixWare, and copyrights therein, are subject to a false cloud of ownership created by Novell.

(Opp'n at 10.) As these are not realized pecuniary losses, they are insufficient. *Valley Colour, Inc. v. Beuchert Builders, Inc.*, 944 P.2d 361, 364 (Utah 1997) ("The special damages rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated."). SCO half-heartedly argues that these allegations suffice. (Opp'n at 10.) But the very cases upon which SCO relies show that SCO's allegations are insufficient. *See Cohn*, 537 P.2d at 310-11 (specifically pled that plaintiff could not work which resulted in loss of earnings, as well as medical expenses incurred); *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 162 (Utah 1991) (same). In those circumstances, defendants were apprised of the damages. Here, SCO's allegations do not identify any specific or actual loss.

SCO goes on to argue that its general prayer for attorneys' fees incurred in this action satisfies the special damages pleading requirement. (Opp'n at 10-11.) That is insufficient. Attorneys' fees constitute special damages for purposes of a slander of title action only where they were incurred to clear plaintiff's title and undo the harm of slander of title. *First Sec. Bank of Utah v. Banberry Crossing*, 780 P.2d 1253, 1258 (Utah 1989); *Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988).

The precise argument advanced by SCO in its opposition, namely that attorneys' fees incurred in a slander of title action itself constitute special damages, was squarely rejected in *First Sec. Bank of Utah*. 780 P.2d at 1258. There, the plaintiff alleged slander of title based upon the defendant placing a notice of default on the plaintiff's property. The court found that the notice of default was false, but refused to give any weight to plaintiff's argument that the attorneys' fees it had incurred in the slander of title action constituted special damages. *Id.* To

9

the contrary, it held, "[plaintiff] did not incur attorney fees to clear its title or undo harm caused by the original notice of default and therefore did not establish special damages." *Id.*

Crediting SCO's argument would eviscerate the special damages pleading requirement. If an allegation that "uncertainty about title exists" combined with a general prayer for attorneys' fees were sufficient, plaintiffs could meet the special damages pleading requirement simply by asserting that slander of title has occurred. The law requires that plaintiffs do more in order to state a claim for relief.

Finally, SCO includes in a footnote a request for leave to amend to include additional allegations of special damages. (Opp'n at 11 n.5.) The Court should deny this request where SCO has failed to exercise its right to amend and where it has failed to indicate what facts, if any, it believes it could add to show special damages. *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989) (a request in an opposition to motion to dismiss for leave to amend "does not rise to the status of a motion" and can properly be denied).

## CONCLUSION

No amount of hand waving can rescue SCO's complaint from its infirmities. Importantly, SCO has not proposed to amend its complaint to assert additional allegations of copyright ownership. Its slander of title claim therefore rises or falls with the contents of the APA and Amendment No. 2 attached to its complaint. These documents do not meet the copyright law's standards for an instrument of conveyance. Similarly, SCO's allegations of special damages fail when assessed against Utah's pleading requirements. For these reasons, SCO's complaint should be dismissed.

DATED:   March 19, 2004.

ANDERSON & KARRENBERG

*/s/ Thomas R. Karrenberg*
Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
**Attorneys for Defendant Novell, Inc.**

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __19th__ day of March, 2004, I caused a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_____