```
                                    FILED

                             26 MAR 04 PM 4:09
                             DISTRICT OF UTAH

                             BY:_____
                                DEPUTY CLERK
```

MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Matthew I. Kreeger (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Paul Goldstein (pro hac vice)
559 Nathan Abbot Way
Stanford, CA 94305
Telephone: (650) 723-0313

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Novell, Inc.**

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO MOTION TO REMAND**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |



Dockets.Justia.com

## INTRODUCTION

This Court has jurisdiction over SCO's slander of title action because in order for SCO to prevail, it must prove it owns the copyrights at issue, and its claim of ownership turns on an issue of federal law. SCO claims it owns these copyrights through assignment from Novell. Therefore, in order to prove its case, SCO must point to documents that transferred the copyrights from Novell. Federal copyright law determines the adequacy or inadequacy of documents as a legal instrument to transfer copyrights. For that reason, this Court has jurisdiction.

SCO would have this Court believe that the issue of the transfer of ownership in a copyright is predominantly a matter of contract interpretation under state law. SCO has not cited, however, even one contract interpretation case under state law that supports its position, and its argument ignores the relevant provisions of the Copyright Act.

The leading case on federal jurisdiction in copyright ownership disputes is the *Jasper* decision from the Second Circuit. In its motion to remand, SCO tries and fails to distinguish *Jasper* from this case. *Jasper* is directly on point, and confirms that this Court has jurisdiction.

## I. SCO'S COMPLAINT PRESENTS A SUBSTANTIAL ISSUE WHETHER SCO IS THE OWNER OF THE COPYRIGHTS AT ISSUE.

SCO's complaint alleges a single cause of action for slander of title. (Complaint at ¶¶ 22-27.) Its allegations include that "SCO is the sole and exclusive owner of all copyrights related to UNIX and UnixWare source code" and that "Novell has slandered SCO's title and rights to its UNIX and UnixWare copyrights . . . ." (*Id.* at ¶¶ 23-24.) SCO also alleges that it "has filed for copyright protection [for UNIX and UnixWare source code] with the United States Copyright Office." (*Id.* ¶ 3.) It then alleges that Novell "falsely asserted ownership of UNIX copyrights by submitting twelve certifications . . . to the United States Copyright Office." (*Id.* at ¶ 19(g).) It also alleges that Novell filed "four different iterations of a 'Declaration Regarding Ownership'" of registered UNIX copyrights. (*Id.* at ¶ 19(h).) Finally, it seeks an injunction "requiring Novell

1

to assign to SCO any and all copyrights Novell has registered in UNIX and UnixWare." (*Id.* at ¶ 8.)

SCO's claim to ownership of the copyrights turns on SCO's alleged predecessor obtaining ownership through assignment from Novell. According to SCO's complaint (including the documents attached to it), on September 19, 1995, Novell and SCO's alleged predecessor, Santa Cruz Operations, Inc., entered into the Asset Purchase Agreement (the "APA").[1] Pursuant to the APA, Santa Cruz agreed to purchase UNIX and UnixWare technologies, with Novell to retain many interests in UNIX and UnixWare, including the UNIX and UnixWare copyrights. (Complaint at 1, APA Schedule 1.1(b) § V.A.) The relevant provisions of the APA include Section 1.1(a), which states that Novell "will sell, convey, transfer, assign and deliver" to Santa Cruz, and Santa Cruz "will purchase and acquire" the assets listed on Schedule 1.1(a) but that "the Assets to be so purchased shall not include" the assets listed on Schedule 1.1(b). (APA § 1.1(a).) Schedule 1.1(b) excludes from the promised transfer "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare." (APA, Schedule 1.1(b) § V.A.)[2]

Ten months later, Novell and Santa Cruz entered into Amendment No. 2 to the APA. (Complaint at 5.) Amendment No. 2 revised Schedule 1.1(b), the Excluded Assets schedule, as follows:

> <u>All copyrights</u> and trademarks, <u>except for the copyrights</u> and trademarks owned by Novell as of the date of the Agreement <u>required for SCO to exercise its rights</u> with respect to the acquisition of UNIX and UnixWare technologies.

(Amendment No. 2 at 1, revising APA Schedule 1.1(b) § V.A (emphasis added).) As the amended section still begins "All copyrights . . . ", the parties agreed that the general rule that

---

[1] The APA, amendments, and schedules referenced here are attached as Exhibit A to the Complaint.

[2] Thus, SCO's assertion in its motion to remand that "through an Asset Purchase Agreement dated September 19, 1995, as amended, SCO . . . acquired from Novell all right, title and interest in and to the UNIX and UnixWare business, operating system, source code, and *all copyrights related thereto*" is patently false. (Plaintiff's Memorandum in Support of Motion to Remand ("Remand Mot.") at 2 (emphasis added).)

2

copyrights were excluded from the sale remained in force. (*Id.*) The parties then agreed on an exception to the universe of excluded copyrights: those that are "required" for Santa Cruz to exercise its rights with respect to its acquisition of UNIX and UnixWare technologies. (*Id.*) The agreements contain no identification of which copyrights are "required" and which are not. (*Id.*) Amendment No. 2 contains no transfer language (language of the form, for example, "Seller hereby conveys to Buyer . . .") and was not retroactive to the date of the APA. Instead, it reads, "As of the 16th day of October, 1996, the [APA] is amended in the following respects." (*Id.* at 1.)

In its notice of removal, Novell contends that resolution of the ownership issue in this case (and thus the slander of title claim) raises a substantial issue of interpretation of the Copyright Act, namely, whether the APA as amended satisfies the requirements of "an instrument of conveyance" in writing necessary to transfer ownership of a copyright. (Notice of Removal of Civil Action under 28 U.S.C. §§ 1441 and 1446 ("Notice") at 3, citing 17 U.S.C. § 204(a).) *See, e.g., Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) (in order to suffice as a written instrument of conveyance under section 204(a), assignment must state "precisely what rights are being transferred"); *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 563-64 (2d Cir. 1995) (legend acknowledging payment in full for assignment of "all right, title and interest in and to" drawing was insufficient to satisfy section 204(a)), *cert. denied*, 516 U.S. 1010. The section 204(a) issue here arises because there is no instrument that, on its face, purports to convey copyrights, and the only instrument SCO contends is an instrument of conveyance is so indeterminate as to fail the requirements of section 204(a).

In its motion to remand, SCO does not dispute that ownership of the copyrights is a central issue that needs to be resolved in its favor in order for it to prevail in its slander of title action. Instead, SCO argues that resolution of the ownership issue turns only on state law because it involves interpretation of a contract. (Remand Mot. at 2.) As demonstrated below, SCO's argument is unavailing.

3

II.   **BECAUSE SCO'S OWNERSHIP CLAIM REQUIRES RESOLUTION OF A SUBSTANTIAL COPYRIGHT LAW QUESTION, FEDERAL JURISDICTION IS PROPER.**

Federal jurisdiction is proper in this case because SCO's complaint raises a substantial federal law question regarding section 204(a) of the Copyright Act. Contrary to SCO's argument, the two leading cases in the area, *Harms* and *Jasper*, strongly support a finding of federal jurisdiction.

A.   **Federal Jurisdiction Over a State Law Claim Is Proper Where, As Here, the Complaint Asserts a Claim Requiring Construction of the Copyright Act.**

A case may be validly removed from state to federal court if a claim "arising under" federal law appears on the face of the well-pleaded complaint. *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 64 (10th Cir. 1957). Even where state law creates plaintiff's cause of action, the case still arises under federal law if the plaintiff's right to relief requires resolution of a substantial federal question. *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1381 (10th Cir. 1978).

An action "arises under" the federal Copyright Act not only (as SCO notes) if the complaint "is for a remedy expressly granted by the Act," but also (as SCO ignores) if the complaint "asserts a claim requiring construction of the Act" or "presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964).[3] In arguing that an action arises under the Copyright Act *only* if it is for a remedy expressly granted by the Act, SCO selectively quotes from *Harms*. (*See* Remand Mot. at 3.) The omitted portion of *Harms* makes clear,

---

[3] Courts in this circuit frequently look to the Second Circuit for guidance on issues of copyright law. *See, e.g., TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs.*, 133 F.3d 773, 777 (10th Cir. 1998) (adopting Second Circuit's test for copyright infringement); *Gerig v. Krause Publ'ns, Inc.*, 58 F. Supp. 2d 1261, 1267 & n.5 (D. Kan. 1999) (adopting Second Circuit's *Harms* criteria for determining whether case arises under Copyright Act); *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 384 (D. Utah 1991) (adopting Second Circuit's approach to determinations of copyrightability). The Fifth Circuit has called the Second Circuit the *"de facto* copyright court of the United States." *Easter Seal Soc'y for Crippled Children and Adults of Louisiana v. Playboy Enters.*, 815 F.2d 323, 325 (5th Cir. 1987).

4

however, that SCO's view is incorrect. Under *Harms*, federal jurisdiction is proper where the complaint asserts a claim requiring construction of the Copyright Act.[4] Because SCO's complaint asserts such a claim, "the federal courts have exclusive jurisdiction." *Harms*, 339 F.2d at 824.

### B. Federal Jurisdiction Is Proper Here Because the Complaint Presents a Substantial Issue Under Section 204(a) of the Copyright Act.

Under the *Jasper* case, federal jurisdiction over SCO's complaint is proper because SCO's claim of copyright ownership presents a substantial issue of interpretation of section 204(a) of the Copyright Act. *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46-47 (2d Cir. 2002) (citing *Harms*, and concluding that federal jurisdiction exists where there is "a substantial issue as to whether the contract qualifies as a section 204(a) writing").[5]

In its notice of removal, Novell cited *Jasper* for the rule stated above. (Notice at ¶ 16 (citing *Jasper*, 314 F.3d at 46-47).) SCO acknowledges the rule from *Jasper* but seeks to avoid its application here. SCO argues that "the 'rare' issue in *Jasper* was whether an assignment of copyrights made separately from the contract by defendants to a third party and signed only after the fact by the copyright owner was a 'writing' under the Copyright Act." (Remand Mot. at 5.) While the *Jasper* court indeed referred to its factual scenario as "rare," the facts of the instant case raise an equally, or even more, substantial question whether section 204(a) has been satisfied.

---

[4] SCO cites two cases for the proposition that federal jurisdiction is determined by the complaint, not the defenses. (Remand Mot. at 5, citing *Warner Bros. Records, Inc. v. R.A. Ridges Distrib. Co., Inc.*, 475 F.2d 262, 264 (10th Cir. 1973), *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996), *aff'd* at 335 F.3d 1161.) Jurisdiction here, however, rests on the cause of action in the complaint, not a defense, so those cases lend SCO no support.

[5] Federal jurisdiction also extends to disputes involving the ownership of copyrights where provisions of the Copyright Act other than section 204(a) require interpretation or application. *See Harms*, 339 F.2d at 827 (the "Supreme Court decided on the merits a claim to partial ownership of copyright renewal terms" where interpretation of a term in the Copyright Act was necessary), citing *DeSylva v. Ballentine*, 351 U.S. 570 (1956); *Merchant v. Levy*, 92 F.3d 51, 55 (2d Cir. 1996) (determination of ownership rights due to status as "co-author," as defined in Copyright Act, arises under Copyright Act and federal court has exclusive jurisdiction).

In *Jasper*, an agreement transferring ownership of the copyrights in a musical group's songs was signed by three of the six co-authors of the songs through a corporation ("Bovina") owned by the three. *Jasper*, 314 F.3d at 45. An addendum was later attached to the agreement signed by all six co-authors in which each "assented to the execution of [the] agreement and agreed to be bound by the terms and conditions thereof." *Id.* On these facts, the court found that it had to determine whether the agreement (the "Bovina/April Agreement") in combination with the addendum satisfied the requirements of section 204(a) of the Copyright Act:

> This case, however, is the rare contract interpretation case that does present a substantial issue as to whether the contract qualifies as a section 204(a) writing. The reason stems from the fact that appellants signed the Bovina/April Agreement after it was executed by Bovina. Prior to signing by the appellants, it would have been clear that the Bovina/April Agreement was not a section 204(a) writing, as far as appellants were concerned, because they (the alleged assignors) had not signed it. Once the appellants signed the addendum and agreed to the terms of the contract, the issue arose as to whether an addendum agreeing to a contract that purports to transfer a copyright owner's rights is a section 204(a) writing. *Although this is not an especially difficult issue, it suffices to render this case within federal court jurisdiction.*

*Id.* at 47 (emphasis added). Even though the court noted that the section 204(a) issue was not difficult, and even though it concluded that section 204(a) was satisfied, because the court had to interpret and apply section 204(a), federal jurisdiction was proper.[6]

The instant case presents major section 204(a) issues. Here, like *Jasper*, there are two documents, the APA and Amendment No. 2, neither of which by itself satisfies the requirements of section 204(a). Unlike *Jasper*, however, the APA does not purport to effect an assignment, and contains no language of the form "Seller hereby conveys to Buyer . . . ." Rather, it merely represents a promise to assign, and it expressly excludes all copyrights from the assets to be transferred. (APA, Schedule 1.1(b).) Amendment No. 2, moreover, also contains no language purporting to effect a transfer of assets and merely modifies the Excluded Assets schedule of the

---

[6] SCO argues that the existence of a third party (April) was a factor. (Remand Mot. at 5 ("There are only two parties in interest, and no third parties or assignees to complicate the matter.").) The existence of the third party, however, played no part in the court's analysis.

6

APA. And it still provides that "all copyrights" are generally excluded, and then merely provides an exception for those that are "required" for certain reasons. (Amendment No. 2.) There is no listing of which copyrights continue to be excluded from the sale and which are "required."

At most, the documents add up to an agreement to assign certain copyright rights once SCO's alleged predecessor identified them and showed them to be "required." The agreements thus do not satisfy section 204(a). For purposes of this motion, however, the Court need not decide the issue of what, if any, copyrights were or should be transferred. Rather, the Court need only conclude that there is a substantial issue as to whether the documents satisfy section 204(a) in order to find that federal jurisdiction is proper.

SCO's other efforts to distinguish *Jasper* are equally unavailing. SCO argues, "the issue of federal court jurisdiction in *Jasper* was first raised by plaintiff on appeal following a full bench trial on the merits." (Remand Mot. at 4 n.2.) This is not so. The court raised the issue on its own initiative. *Jasper*, 314 F.3d at 46 ("In the District Court, all parties appear to have assumed that federal jurisdiction existed . . . ."). There is no suggestion that the Second Circuit, having identified the issue, improvidently found jurisdiction where none existed merely because a trial had taken place.

SCO states that the plaintiff in *Jasper* "alleged its claim under the Copyright Act and sought remedies under federal law." (Remand Mot. at 5.) *Jasper* was not a copyright infringement action; instead, it concerned the right to royalties from copyrighted songs. *Jasper*, 314 F.3d at 44 (the "lawsuit concerns claims for two broad categories of music royalties"). A claim for royalties is a state law claim. *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996). The court did not find that jurisdiction existed for any reason other than that there was "a substantial issue as to whether the contract qualifies as a section 204(a) writing." *Jasper*, 314 F.3d at 47. SCO's suggestion that federal jurisdiction was based on anything other than the application of section 204(a) is simply wrong.

7

### C. Cases That Do Not Present Substantial Section 204(a) Issues Are Irrelevant to This Motion.

SCO argues that its complaint presents only a state law issue as its slander of title claim turns on the interpretation of a contract. (Remand Mot. at 1, 4.) But in its motion to remand SCO does not cite a single state law contract case as relevant to the issue.[7] Moreover, the federal cases SCO cited in support of its motion (Remand Mot. at 4) do not demonstrate that the ownership issue here is solely a state law issue because those cases did not raise a substantial section 204(a) question.

For example, *Yount v. Acuff Rose-Opryland* concerned only a contractual right to royalties where the transfer of ownership of the copyrights was not in dispute:

> When Yount transferred the underlying copyright, he obtained a contractual right to royalties. He no longer had a copyright; he had a mere contractual right – a promise by 4-Star that it would make royalty payments. At that point federal copyright law essentially ceased to be concerned with how that contractual royalty right or assignments of it would be enforced.

103 F.3d at 835. That state law governed the resolution of the contractual dispute in *Yount* says nothing about jurisdiction in this case where section 204(a) of the Copyright Act is so substantially implicated.

Similarly, the issue in *Dolch v. United California Bank* was whether assignments of renewal rights were invalid because they were gifts and lacked consideration. 702 F.2d 178, 180 (9th Cir. 1983). There was no issue whether the assignments complied with section 204(a); the only issue was the state law question of the validity of an otherwise adequate assignment that lacked consideration, which plainly did not confer federal jurisdiction.

Finally, SCO quotes from *Noble v. Great Brands of Europe, Inc.*, 949 F. Supp. 183, 185 (S.D.N.Y. 1996), which cited *Harms* for the proposition that "federal jurisdiction does not attach to a claim involving only . . . ownership of a copyright, because such a claim does not 'arise

---

[7] The parties' briefing on the motion to dismiss provides further support that the central issue here is section 204(a), not state law contract interpretation. There too, the briefs contain no citation to any contract interpretation cases and instead focus on the section 204(a) ownership issues.

8

under' the Copyright Act." (Remand Mot. at 4.) The issue in *Noble* was whether a claim for copyright infringement arose under the Copyright Act or instead was properly viewed as a breach of contract action. The case did not concern ownership of a copyright and did not implicate section 204(a); instead, in dicta, the court recited a truncated portion of the rule in *Harms* for the proposition that a court must scrutinize a claim to ensure that it arises under the Copyright Act. *Noble*, 949 F. Supp. at 186. *Noble* did not, and could not, narrow the holding of *Harms*.

As SCO properly observes, the court in *Jasper* noted that not all copyright ownership disputes raise substantial issues under the Copyright Act. (Remand Mot. at 4 (citing *Jasper*, 314 F.3d at 47).) *Dolch* is an example of such a dispute. *See Dolch*, 702 F.2d at 180. SCO's slander of title claim, however, does raise substantial issues under the Copyright Act, and thus arises under federal law and falls within the exclusive jurisdiction of the federal courts.

## CONCLUSION

SCO cannot avoid the federal copyright law issue that is central to its claim against Novell. Resolution of its claim requires a determination of whether the APA as amended satisfies section 204(a)'s requirement of a written instrument of conveyance to transfer ownership. Because this determination requires the interpretation and application of section 204(a) of the Copyright Act, this case should not be left to the state court to decide. As the court noted in *Harms*, federal courts, and not state courts, should decide cases where "a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Harms*, 339 F.2d at 828. By establishing federal law standards to govern the validity of copyright assignments, Congress has articulated a distinctive federal policy of enhancing predictability in copyright assignments. *Effects Assocs.*, 908 F.2d at 557. Accordingly, this Court should assert jurisdiction over SCO's complaint and deny SCO's motion to remand.

DATED:     March 26, 2004.

                ANDERSON & KARRENBERG

                */s/ Thomas R. Karrenberg*
                Thomas R. Karrenberg
                John P. Mullen
                Heather M. Sneddon

                MORRISON & FOERSTER LLP

                */s/ Michael A. Jacobs*
                Michael A. Jacobs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of March, 2004, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO REMAND** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101


Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_____