FILED
CLERK U.S. DISTRICT COURT

-9 JUN 04 PH 6: 20
DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| NOVELL, INC., | |
| Defendant. | Civil Case No. 2:04CV139DAK |

Defendant Novell, Inc. ("Novell") removed this case from Utah state court and then filed a motion to dismiss. In response to Novell's motion to dismiss, Plaintiff The SCO Group, Inc. ("SCO") filed a motion to remand the case to state court and opposed Novell's motion to dismiss. After the motions were fully briefed, the court held a hearing on both motions on May 11, 2004. At the hearing, Defendant was represented by Michael A. Jacobs and John P. Mullen, and Plaintiff was represented by Brent O. Hatch and Mark R. Clements. The court took both motions under advisement. The court has considered carefully the memoranda and other materials submitted by the parties as well as law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

In its Complaint, SCO brought a single cause of action against Novell for slander of title. SCO alleges that Novell has publicly and falsely represented that it owns the UNIX and UnixWare copyrights and that such false representations have caused it damage.

1

**29.**

SCO's predecessor in interest, Santa Cruz Operations Inc., and Novell entered into an Asset Purchase Agreement ("APA") dated September 19, 1995.  Under the APA, SCO alleges that its predecessor paid Novell 6.1 million shares of SCO common stock, valued at over $100 million at that time, to acquire from Novell "all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, and all copyrights related thereto."  Compl. ¶ 1.  Novell disputes that any copyrights were transferred.

The relevant language from the APA states:

> On the terms and subject to the conditions set forth in this Agreement, Seller will sell, convey, transfer, assign and deliver to Buyer and Buyer will purchase and acquire from Seller on the Closing Date (as defined in Section 1.7) all of Seller's right, title, and interest in and to the assets and properties of Seller relating to the Business (collectively the "Assets") identified on Schedule 1.1(a) hereto.  Notwithstanding the foregoing, the Assets to be so purchased shall not include those assets (the "Excluded Assets") set forth on Schedule 1.1(b).

Compl. Ex. A, APA § 1.1(a).  Schedule 1.1(b) sets forth as Excluded Assets "[a]ll copyrights and trademarks, except for the trademarks UNIX and Unixware."  *Id.*, APA Schedule 1.1(B) § V.A. Therefore, the APA specifically excluded all copyrights from the assets transferred from Novell to SCO's predecessor.

Approximately a year later, on October 16, 1996, Novell and SCO's predecessor executed Amendment No. 2 to the APA.  APA Amendment No. 2 amends the Schedule of Excluded Assets to exclude "[a]ll copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the [APA] required for [SCO's predecessor] to exercise its rights with respect to the acquisition of UNIX and Unixware technologies."  *Id.*, APA Amendment No. 2.

2

Because SCO claims that it owns the copyrights to UNIX and UnixWare, it alleges in its

Complaint that

> Novell's wrongful claims of copyrights and ownership in UNIX
> and UnixWare have caused, and continue to cause, irreparable
> harm to SCO, in the following particulars:
>
> a) Customers and potential customers of SCO are unable to
> ascertain the truth of ownership in UNIX and UnixWare, and make
> decisions based thereon; and
>
> b) SCO's efforts to protect its ownership of UNIX and UnixWare,
> and copyrights therein, are subject to a false cloud of ownership
> created by Novell.

Compl. ¶ 21.

Before this action was filed, the parties publicly disputed whether the copyrights were

transferred.  On June 6, 2003, Novell issued a press release stating as follows:

> In a May 28th letter to SCO, Novell challenged SCO's claims to
> UNIX patent and copyright ownership and demanded that SCO
> substantiate its allegations that Linux infringes SCO's intellectual
> property rights. [APA Amendment No. 2] was sent to Novell last
> night by SCO.  To Novell's knowledge, this amendment is not
> present in Novell's files.  The amendment appears to support
> SCO's claim that ownership of certain copyrights for UNIX did
> transfer to SCO in 1996.  The amendment does not address
> ownership of patents, however, which clearly remain with Novell.

Pl.'s Reply Mem. Supp. Mot. Remand, Ex. 1.  However, in this action, Novell argues that the

language of the APA Amendment No. 2 does not automatically convey the copyrights but

required SCO to identify which copyrights were required before an actual transfer occurred.

## DISCUSSION

When a district court is faced with a motion to remand and a motion to dismiss, the court

should "rule first on the motion to remand," and, if granted, send "the motion to dismiss back to

state court." *Bear River Drainage District*, 267 F.2d 849 (10th Cir. 1959).

## SCO's Motion to Remand

SCO moves this court to remand this action to state court, arguing that this court lacks subject matter jurisdiction because its slander of title claim is a state common law action that involves only the interpretation of the parties' contractual agreements. Novell argues that this court has subject matter jurisdiction over SCO's slander of title action because in order for SCO to prevail SCO must prove it owns the copyrights at issue, and the determination of copyright ownership in this case requires the application and interpretation of federal copyright law.

The burden of establishing federal jurisdiction lies with the removing defendant, who must establish jurisdiction based on a preponderance of the evidence. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001). There is no assertion in this case that there is diversity jurisdiction. Therefore, the only basis for jurisdiction is federal question jurisdiction under 28 U.S.C. § 1331 and § 1338(a). A case may be validly removed from state to federal court if a claim "arising under" federal law appears on the face of the well pleaded complaint. *Greeshileds v. Warren Petroleum Corp.*, 248 F.2d 61, 64 (10th Cir. 1957). "It is fundamental that the action is not one arising under federal law where the federal question is supplied by way of defense." *Warner Bros. Recors, Inc. v. R.A. Ridges Dist. Co., Inc.*, 475 F.2d 262, 264 (1973).

SCO's Complaint alleges a state law cause of action for slander of title based on Novell's allegations of ownership of the copyrights to UNIX and Unixware. "Even though the claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965). A slander of title

4

cause of action requires a plaintiff to establish that "(1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages." *First Sec. Bank of Utah v. Banberry Crossing*, 780 P.2d 1253, 1256-57 (Utah 1989). Therefore, to establish a claim for slander of title, SCO must establish that Novell's claims of copyright ownership are false. Falsity also pervades the malice element because in order for the statement regarding copyright ownership to be malicious, it would have to be knowingly false. *First Sec. Bank*, 780 P.2d at 1257. Moreover, the issue of copyright ownership is relevant to the first element as well because in order to demonstrate that the statement was slanderous, the statement must be "injurious to the legal validity of an owner's title." *Bass v. Planned Mgt Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988). Therefore, there appears to be no dispute that the question of copyright ownership is a central dispute that will control the outcome of the claim.

Federal courts have exclusive original jurisdiction over actions "arising under" the federal copyright laws. *See* 28 U.S.C. § 1338(a). However, "the fact that a case concerns a copyright does not necessarily mean that it is within the jurisdiction of a federal district court." *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46 (2d Cir. 2002). "[T]he federal grant of a . . . copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." *T.B. Harms*, 339 F.2d at 826.

The Tenth Circuit has no specific test for determining whether a case arises under the federal Copyright Act. However, the Second Circuit established a test in *T.B. Harms* that has been adopted by several courts across the country, including at least one other district court in

this Circuit. *See Gerig v. Krause Publications, Inc.*, 58 F. Supp. 2d 1261, 1267 & n.5 (D. Kan. 1999). The *T.B. Harms* court determined that "[a]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g. a suit for infringement or for the statutory royalties for record reproduction, or asserts a claim requiring construction of the Act . . . or . . . presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *T.B. Harms*, 339 F.2d at 828. SCO's slander of title claim does not seek a remedy expressly granted by the Copyright Act. Therefore, for federal question jurisdiction to exist, SCO's claim must require construction of the Copyright Act or present a question with respect to a distinctive policy of the Act that requires federal principles to control the disposition of the claim.

Determining whether a claim requires construction or interpretation of the Copyright Act rather than just contract interpretation may be a discrete issue but it is not a simple task. "Whether a complaint asserting factually related copyright and contract claims 'arises under' the federal copyright laws for purposes of Section 1338(a) 'poses among the knottiest procedural problems in copyright jurisprudence." *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A], at 12-4 (1999)); *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 931 (2d Cir. 1992) ("The question of whether the breach of a contract licensing or assigning a copyright gives rise to a federal cause of action under the Copyright Act is a complex issue in a 'murky' area.").

Novell argues that in order to determine copyright ownership in this case the court must determine whether the APA as amended by Amendment No. 2 satisfies the requirements of a writing to transfer ownership of a copyright under Section 204(a) of the Copyright Act. Section

204(a) of the Copyright Act provides that "[a] transfer of ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204(a).

In *Jasper*, the Second Circuit recognized that "[t]he difficulty is that almost every case involving contract interpretation, appropriate for state court determination, could be recharacterized as a case appropriate for a federal court simply by framing the issue to be whether the disputed contract qualified as a writing within the meaning of section 204(a)." 314 F.3d at 47. However, "[t]he need for interpretation of a contract does not necessarily mean there is a bona fide issue as to whether the contract is a writing for purposes of section 204(a)." *Id.* The *Jasper* court analyzed the *Harms* criteria as follows:

> Specifically, if the case concerns a dispute as to ownership of a copyright, and the issue of ownership turns on the interpretation of a contract, the case presents only a state law issue, and, unless the complaint asserts a remedy expressly granted by the Copyright Act, federal jurisdiction is lacking. . . . On the other hand, if interpretation of the Copyright Act is required (or if a remedy available under the Act, such as damages for infringement, is sought) then federal jurisdiction is available.

*Id.* at 46. The *Jasper* court acknowledged that "the line between contract interpretation and statutory interpretation is not always clear." *Id.*

In *Japser*, the court was faced with an agreement transferring ownership of the copyrights in a musical group's songs that was signed by three of the six co-authors of the songs through a corporation owned by the three signatories. *Id.* at 45. An addendum was later attached to the agreement signed by all six co-authors in which each "assented to the execution of [the] agreement and agreed to be bound by the terms and conditions thereof." *Id.* The *Jasper* court concluded that the issue "as to whether an addendum agreeing to a contract that purports to

transfer a copyright owner's rights is a section 204(a) writing . . . suffices to render this case within federal court jurisdiction." *Id.* at 47.  The court found that it was "the rare contract interpretation case that does present a substantial issue as to whether the contract qualifies as a section 204(a) writing." *Id.*[1]

Novell argues that this case presents more substantial Section 204(a) issues than *Jasper*. Novell argues that on its face, there is no instrument that purports to convey copyrights, and the only instrument that SCO contends is an instrument of conveyance, the APA Amendment No. 2, is so indeterminate as to fail the requirements of Section 204(a).  SCO, however, asserts that Amendment No. 2 is clearly a section 204(a) writing and the only issue for the court is contract interpretation as to which copyrights were conveyed.

It is undisputed that the APA did not transfer any copyrights.  Under the APA, Novell agreed that on the Closing Date (December 6, 1995) it would assign all assets on Schedule 1.1(a) but that it would transfer no assets listed on the Excluded Assets schedule, Schedule 1.1(b). There is no dispute that all copyrights were excluded on Schedule 1.1(b) and, therefore, no copyrights transferred on the Closing Date under the terms of the APA.  Also, Amendment No. 2 merely amends the schedule of excluded assets and does not constitute a transfer of copyrights on its own.  Therefore, the issue raised by Novell is whether the APA as amended by Amendment No. 2 is a sufficient writing under Section 204(a) to transfer ownership of

---

[1]     SCO argues that the *Jasper* court had an incentive to find federal jurisdiction because a full bench trial on the merits had occurred below.  However, there is no reason to believe that the court would have raised the issue and analyzed it as it did in order to merely affirm jurisdiction.  Moreover, this court does not believe that on an issue that can be raised and decided at any time, a court of appeals would be so influenced by the circumstances at the district court level that it would render a decision analyzing the issue incorrectly.

copyrights.  For purposes of SCO's motion to remand, the issue is not whether copyrights were in fact transferred under the APA as amended, but whether the Section 204(a) determination raises a federal question sufficient for this court to exercise jurisdiction over the case.

The APA Amendment No. 2 excludes from transfer  "[a]ll copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the [APA] required for [SCO's predecessor] to exercise its rights with respect to the acquisition of UNIX and Unixware technologies."  The Amendment does not identify which copyrights are required for SCO to exercise its rights with respect to the acquisition of UNIX and Unixware and provides no date for the transfer.  The Amendment mentions copyrights owned by Novell as of the date of the APA but it is not retroactive to the date of the APA.  Furthermore, although Amendment No. 2 states that its effective date is the date of the amendment, the language of Amendment No. 2 does not state that a transfer of the copyrights is to occur as of the date of the amendment.

The Amendment also contains no transfer language in the form of "seller hereby conveys to buyer."  Given the similarly ambiguous language in the APA with respect to the transfer of assets–seller "will" sell, convey, assign, and buyer "will" purchase and acquire–it is questionable on the face of the documents whether there was any intention to transfer the copyrights as of the date the amendment was executed.  Moreover, the use of the term "required" in Amendment No. 2 without any accompanying list or definition of which copyrights would be required for SCO to exercise its rights in the technology is troublesome given the number of copyrighted works involved in the transaction.  There is enough ambiguity in the language of Amendment No. 2 that, at this point in the litigation, it is questionable whether Amendment No. 2 was meant to convey the required copyrights or whether the parties contemplated a separate writing to

actually transfer the copyrights after the "required" copyrights were identified. Therefore, this is not a case where the court can immediately conclude that there is a writing under Section 204(a).

Although the case will obviously require contract interpretation, at this stage of the litigation, the agreements raise substantial doubt as to whether the APA as amended by Amendment No. 2 qualifies as a Section 204(a) writing. This court will be required to analyze the requirements of Section 204(a) and the cases interpreting that law in order to determine whether the Amendment No. 2 qualifies as a writing under Section 204(a). In this regard, the case presents an issue that does not turn solely on regular contract principles. Because there is a substantial issue as to whether Amendment No. 2 is a Section 204(a) writing, this case is similar to *Jasper*. Here, like *Jasper*, there are two documents but neither alone appear to satisfy the requirements of Section 204(a). The facts of the instant case raise an equally, or even more, substantial question of whether Section 204(a) has been satisfied. Therefore, this court finds *Jasper*'s finding of federal jurisdiction persuasive.

SCO claims that there is no question as to whether a sufficient writing exists because Novell's June 6, 2003 Press Release stating that Amendment No. 2 "appears to support" SCO's claim of ownership acknowledged that Amendment No. 2 transferred the copyrights to SCO. Although the press release may argue in favor of a finding that the copyrights were in fact transferred under Amendment No. 2, this argument focuses on the merits of the action rather than the threshold question of whether Section 204(a) is sufficiently implicated such that federal jurisdiction exists. The press release may indicate that Novell initially believed that the APA as amended appeared to be a sufficient Section 204(a) writing, but the press release, alone, does not clearly establish that a Section 204(a) writing exists or dispose of the Section 204(a) issue that

10

Novell has subsequently raised in this case.

SCO also cites to several cases that it claims supports its position that the issue presented is only based on state law. However, the cases relied on by SCO involve agreements that were undoubtedly a Section 204(a) writing and only required the court to determine the terms of the agreement. *Yount v. Acuff Rose-Opryland,* 103 F.3d 830, 835 (9th Cir. 1996)(finding that royalty interests in contract assigning copyright arose out of the contract itself and are governed by state law); *Dolch v. United California Bank*, 702 F.2d 178, (9th Cir. 1983) (finding determination of whether consideration existed in an otherwise valid assignment of renewal rights was a contract question that depends on common law). Determining specific royalty rights or renewal rights under a contract that has clearly transferred rights is not the same as determining whether an agreement intended to transfer any rights and is a sufficient Section 204(a) writing.

SCO also cites to *Noble v. Great Brands of Europe, Inc.*, 949 F. Supp. 183, 185 (S.D.N.Y. 1996) for the proposition that "federal jurisdiction does not attach to a claim involving only the breach of a copyright agreement or the ownership of a copyright." However, the *Noble* case did not involve a copyright ownership dispute and the court did not do an in-depth analysis of that area of the law or discuss section 204(a) of the Copyright Act. The *Noble* court concluded that the copyright infringement action before it was a cause of action arising under the Copyright Act and found the Defendant's arguments that the infringement dispute was merely a contractual dispute without merit. *Id.* at 186. The court's preliminary statement as to the state law basis for copyright ownership cases appears to be a truncated summary of the rule from *T.B. Harms* that was focused only on whether a remedy was sought under the Copyright Act. *See id.* at 185. *Noble*'s lack of analysis on the issue before this court makes its truncated statement

as to copyright ownership causes of action unpersuasive.

SCO has not cited to this court any state law contract cases that would govern the issue in this case. Rather, SCO cites to Section 204(a) cases holding that the requirements for section 204(a) are quite simple. *See Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). Although these cases may be relevant once the court must decide the Section 204(a) issue, they do not address the threshold issue of whether this court must look to Section 204(a)'s requirements rather than state law to address the issue before it. Moreover, the fact that SCO cites federal case law, rather than state case law, to give this court the proper standard underscores that the issue turns on federal law.

None of the cases cited by SCO present a section 204(a) issue similar to the issue in the present case. The *Jasper* court specifically found federal jurisdiction exists where there is "a substantial issue as to whether the contract qualifies as a section 204(a) writing." 314 F.3d at 46-47. To determine whether the APA as amended by Amendment No. 2 qualifies as a Section 204(a) writing will require this court to apply the standards of Section 204(a) and federal case law interpreting Section 204(a). Therefore, this case does not turn merely on ordinary principles of contract law, but presents "a need for determining the . . . application of [federal] law" sufficient for this court to retain jurisdiction. *See T.B. Harms*, 339 F.2d at 827.

Moreover, the *T.B. Harms* court also acknowledged that federal jurisdiction exists when "a distinctive policy of the [Copyright] Act requires that federal principles control the disposition of the claim." 339 F.2d at 828. Section 204(a)'s writing requirement is to "ensure that the creator of a work will not give away his copyright inadvertently and [to] force[] a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what

rights are being transferred and at what price." *Effects Associates, Inc.*, 908 F.2d at 557.
Although SCO's slander of title claim is a state law claim, the determination of copyright
ownership controls necessary elements of the claim. The federal law standards created to further
the federal interest established in section 204(a) control the disposition of whether Section
204(a)'s requirements have been met. SCO has failed to cite any relevant state common law that
would control the disposition of this issue. Accordingly, this court concludes that it has subject
matter jurisdiction over SCO's slander of title action. SCO's motion to remand the case to state
court is, therefore, denied.

### Novell's Motion to Dismiss

Because this court finds that it has subject matter jurisdiction over this action, it may now
properly consider Novell's pending motion to dismiss. *See Bear River Drainage District*, 267
F.2d 849 (10th Cir. 1959). Novell argues that SCO's slander of title claim should be dismissed
because SCO has not pleaded sufficient facts demonstrating falsity and has not adequately
pleaded special damages.

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the
court must accept all well pleaded facts as true and construe them in the light most favorable to
the non-moving party. *Cotrell v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999);
*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997). In this context,
dismissal is appropriate only when it appears that the plaintiff can prove no set of facts in
support of the claims asserted. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997).
The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings
for failure to state a claim." *Cotrell*, 191 F.3d at 1251.

### A. Falsity

Novell argues that as a matter of law the APA as amended fails to meet the requirements for a valid transfer of copyright ownership under Section 204(a) of the Copyright Act. Because, Novell contends, the APA as amended constitutes only a promise to transfer the copyrights, SCO cannot prove ownership of the copyrights at issue and the case should be dismissed. A mere promise to assign rights in the future is not an actual assignment and is insufficient under Section 204(a). *Monarch Licensing Ltd. v. Ritam Int'l Ltd.*, 24 U.S.P.Q.2d 1456, 1459 (S.D.N.Y. 1992); *Arachnid Inc v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991); *Li'l Red Barn, Inc. v. The Red Barn Sys., Inc.*, 322 F. Supp. 98, 107 (N.D. Ind. 1970). SCO, however, argues that the allegations in its Complaint that it is the sole owner of the copyrights along with the language of the APA stating that the assets will transfer on the date of the closing are enough under the standards of notice pleading to establish SCO's ownership of UNIX and UnixWare copyrights and the falsity of Novell's statements to the contrary.

As discussed above, Section 204(a) has certain standards that must be met. Even though the standards may be quite simple, the parties' writing must at least clarify to the parties what, in fact, is being transferred. *See Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990). In *Radio Television Espanola S.A. v. New World Entertainment, Ltd.*, the court analyzed the issue of whether writings were sufficient under Section 204(a) and observed that "the writing should 'serve as a guidepost for the parties to resolve their disputes.'" 183 F.3d 922, 927-28 (9th Cir. 1999).

Novell contends that the written documents in this case do not serve as guideposts and because of such failure they do not satisfy Section 204(a) as a matter of law. Despite the court's

analysis above that the ambiguities of the APA as amended raise questions as to whether a

Section 204(a) writing exists, the court cannot conclude at this point in the litigation that those

ambiguities warrant a dismissal of the claim.  Novell has raised persuasive arguments as to

whether a sufficient writing exists and whether there was any intent to transfer copyrights under

the APA as amended or under a separate agreement.  Although questions exist as to whether the

APA as amended is indeed a proper guidepost, the agreement in this case appears on its face to

be a  more substantial attempt at conveyance than the facsimiles involved in *Radio Television*

that merely negotiated terms.

The court recognizes that in this case there are multiple works potentially at issue

because UNIX and UnixWare had many versions and releases and that without specificity as to

which copyrighted works and which rights within each copyrighted work were purportedly

transferred, the purported assignment may be insufficient under Section 204(a).  However,

because there are conflicting arguments as to the parties understandings with respect to the

agreements, this court cannot conclude as a matter of law at the motion to dismiss stage that the

APA as amended is too vague to act as a guidepost as to what rights were transferred.  The

parties each have their own divergent interpretations of the agreements at issue in this case.

However, the court agrees with SCO and concludes that all of these arguments as to the parties'

understandings and interpretations of the agreements would more properly be before the court on

motions for summary judgment or trial. Drawing all inferences in favor of SCO as this court

must do on a motion to dismiss, this court cannot conclude that SCO can present no set of facts

that would prove its claim.  Accordingly, Novell's motion to dismiss as to SCO's pleading of

falsity is denied.

**B. Special Damages**

Novell also argues that SCO's slander of title claim should be dismissed because SCO

has pleaded only general damages and has failed to plead special damages with specificity as is

required under Rule 9(g) of the Federal Rules of Civil Procedure. *Valley Colour, Inc. v.*

*Beuchert Builders, Inc.*, 944 P.2d 361, 364 (Utah 1997). Because special damages are an

essential element to a slander of title claim, Novell asserts that SCO has failed to state a cause of

action and asks this court to dismiss the claim. SCO argues that Novell has overstated the Rule

9(g) pleading requirement and that it has specifically pleaded special damages by setting forth its

loss of pecuniary advantage resulting from customer confusion as to copyright ownership and

from its accrual of legal fees.

Rule 9(g) of the Federal Rules of Civil Procedure states that "when items of special

damage are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g). Special damages

"are a particular type of damages which are a natural consequence of the injury caused but are

not the type of damages that necessarily flow from the harmful act." *Hodges v. Gibson Products*

*Co.*, 811 P.2d 151, 162 (Utah 1991). In *Bass v. Planned Mgt Servs. Inc.*, 761 P.2d 586, 568

(Utah 1981), the court explained the difference between a slander of title claim and a slander or

defamation claim as they relate to damages. The court distinguished the types of claims by

recognizing that the tort of slander of title is "based on an intentional interference with economic

relations. They are not personal torts; unlike slander of the person, they do not protect a person's

reputation." *Id.* The court further explained that "[s]lander of title actions are based only on

palpable economic injury and require a plaintiff to prove special damages, whereas injury to

personal reputation may be based on both tangible and intangible losses and give rise to

16

presumed and general damages. There are no general or presumed damages in slander of title actions." *Id.*

A slander of title action requires a plaintiff to establish special damages that consist of "a realized or liquidated" pecuniary loss. *Hodges*, 811 P.2d at 162. "Special damages are ordinarily proved in a slander of title action by evidence of a lost sale or the loss of some other pecuniary advantage. Absent a specific monetary loss flowing from a slander affecting the saleability or use of the property, there is no damage." *See Bass*, 761 P.2d at 569. "It is not sufficient to show that the [property]'s value has dropped on the market, as this is general damage, not a realized or liquidated loss." *Valley Colour*, 944 P.2d at 364.

Although a realized or liquidated pecuniary loss must be established at trial, that does not necessarily answer the question as to the amount of detail a plaintiff must use in pleading such loss in its Complaint. "In Utah there does not seem to be an inflexible rule regarding the pleading of special damages." *Cohn v. J.C. Penney Co.*, 537 P.2d 306, 311 (Utah 1975). Rather, it is simply "a question of whether the pleadings contain such information as will apprise the defendant of such damages as must of necessity flow from that which is alleged." *Id.* Therefore, "the law does not require that the exact dollar amount of special damages be specifically pleaded." *Hodges*, 811 P.2d at 162.

However, a "plaintiff must present the circumstances giving rise to the special damages and the elements of injury [it] allegedly suffered." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1311, at 706 (2d ed. 1990). Commentators have noted that there is no reducible formula for the requirements of Rule 9(g), rather "it will depend upon the nature of the claim, the type of injury sustained, and the causal connection between defendant's

17

conduct and the damage." *Id.*

SCO alleges in its Complaint that

> Novell's wrongful claims of copyrights and ownership in UNIX
> and UnixWare have caused, and continue to cause, irreparable
> harm to SCO, in the following particulars:
>
> a)  Customers and potential customers of SCO are unable to
> ascertain the truth of ownership in UNIX and UnixWare, and make
> decisions based thereon; and
>
> b) SCO's efforts to protect its ownership of UNIX and UnixWare,
> and copyrights therein, are subject to a false cloud of ownership
> created by Novell.

Compl. ¶ 21. The Complaint then states that as a consequence of Novell's conduct, SCO has

incurred special damages in an amount to be proven at trial. Compl. ¶ 26.

Although the Complaint alleges harm, it does not specifically set forth any type of

realized pecuniary loss. To the extent that SCO's Complaint can be read to allege that Novell

has caused irreparable harm to SCO's reputation, such damages are general damages. At the oral

argument on this motion, SCO argued that because of the alleged customer confusion, customers

did not want to enter into license agreements with it. This is a natural consequence of the

alleged cloud of ownership and customer confusion and would amount to a realized pecuniary

loss. However, SCO did not make such allegations of special damages in its Complaint. In

addition, SCO has argued that it is entitled to attorney fees as special damages. However,

regardless of whether attorney fees would be available as special damages in this case, SCO did

not allege attorney fees as special damages in its Complaint. Rather, SCO alleged only generally

that there is a cloud of confusion and that "as a consequence of Novell's conduct alleged herein,

SCO has incurred actual and special damages in an amount to be proven at trial."

If this court were to find SCO's pleading of special damages sufficient, it would turn Rule 9(g)'s requirements into mere notice pleading. This court cannot conclude that SCO has given Novell enough information to apprise Novell of the types of damages that flow from the alleged cloud of confusion--such as lost sales, lost licenses, attorney fees, or any other it may be seeking. Although a specific amount of damages is not necessary and a specific identification of customers may be impossible, SCO has not given Novell or this court any information as to the scope of customer confusion, its lost business, or made any allegation that there, in fact, has been a realized pecuniary loss as a result of Novell's statements. Accordingly, Novell's motion to dismiss SCO's slander of title claim for failure to specifically plead special damages is granted without prejudice. The court grants SCO thirty days leave to amend its Complaint to plead special damages specifically in accord with Rule 9(g) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand is DENIED, and Defendant's Motion to Dismiss is DENIED as to Plaintiff's pleading of falsity and GRANTED as to Plaintiff's pleading of special damages. Plaintiff is granted 30 days from the date of this Order to amend its Complaint to more specifically plead special damages.

DATED this 9th day of June, 2004.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge

blk

United States District Court
for the
District of Utah
June 10, 2004


* * CERTIFICATE OF SERVICE OF CLERK * *

Re:  2:04-cv-00139


**True and correct copies of the attached were either mailed, faxed or e-mailed
by the clerk to the following:**

    Brent O. Hatch, Esq.
    HATCH JAMES & DODGE
    10 W BROADWAY STE 400
    SALT LAKE CITY, UT  84101
    EMAIL

    Mr. Kevin P McBride, Esq.
    1299 OCEAN AVE STE 900
    SANTA MONICA, CA  90401
    EMAIL

    Stephen Neal Zack, Esq.
    BOIES SCHILLER & FLEXNER
    100 SE 2ND ST STE 2800
    MIAMI, FL  33131
    EMAIL

    Mr. Thomas R Karrenberg, Esq.
    ANDERSON & KARRENBERG
    50 W BROADWAY STE 700
    SALT LAKE CITY, UT  84101
    EMAIL

    Mr. John P. Mullen, Esq.
    ANDERSON & KARRENBERG
    50 W BROADWAY STE 700
    SALT LAKE CITY, UT  84101
    EMAIL

    Heather M. Sneddon, Esq.
    ANDERSON & KARRENBERG
    50 W BROADWAY STE 700
    SALT LAKE CITY, UT  84101

    Paul Goldstein, Esq.
    559 NATHAN ABBOTT WY
    STANFORD, CA  94305

    Michael A. Jacobs, Esq.
    MORRISON & FOERSTER LLP

425 MARKET ST
SAN FRANCISCO, CA  94105-2482
EMAIL

Matthew I. Kreeger, Esq.
MORRISON & FOERSTER LLP
425 MARKET ST
SAN FRANCISCO, CA  94105-2482

Jim F Lundberg, Esq.
NOVELL INC
LEGAL DEPARTMENT
1800 S NOVELL PLACE
PROVO, UT  84606
EMAIL