FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

AUG - 9 2004

MARKUS B. ZIMMER, CLERK

BY_____
DEPUTY CLERK

RCVD

2004 AUG -6  P 3: 43

MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Matthew I. Kreeger (pro hac vice)
David E. Melaugh (pro hac vice)
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF NOVELL, INC.'S MOTION TO DISMISS**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

40

Dockets.Justia.com

## TABLE OF CONTENTS

STATEMENT OF ISSUES ........................................................................................1

STATEMENT OF FACTS ........................................................................................2

    A.    SCO's Amended Complaint and Attached Documents...........................2

    B.    The Public Controversy Surrounding SCO's Claim to the UNIX
Copyrights. ........................................................................................3

    C.    Novell Statements Identified in SCO's Amended Complaint. ................5

        1.    Initial Press Releases .................................................................6

        2.    Subsequent Private Correspondence on Copyright
Ownership...............................................................................8

        3.    Novell's Public Response to SCO's Copyright
Registrations .........................................................................10

SUMMARY OF ARGUMENT ................................................................................13

ARGUMENT ........................................................................................................14

I.    DISMISSAL IS APPROPRIATE BECAUSE NOVELL'S
STATEMENTS ARE PRIVILEGED........................................................14

    A.    Novell's Privileges and SCO's Inability to Overcome Them Are
Appropriate for Adjudication on a Motion To Dismiss. .....................15

        1.    Novell Has a Privilege to Publicly Assert a Rival Claim to
the UNIX Copyrights...............................................................16

        2.    Novell Has a Privilege to Publish Its Rival Claim to
Parties With a Common Interest in the UNIX Copyrights.........20

    B.    In Light of the Court's June 9 Order, SCO Cannot Allege Malice
Sufficient to Ground a Claim for Slander of Title, Let Alone
Sufficient to Overcome Novell's Privileges. ......................................22

        1.    This Court's June 9 Order Indicates That Novell Has a
Meritorious Claim to the UNIX Copyrights...............................23

        2.    The Statements Identified in the Complaint Do Not
Evidence Malice. ....................................................................25

II.    DISMISSAL WITH PREJUDICE IS WARRANTED. ....................................27

CONCLUSION ....................................................................................................28

## STATEMENT OF ISSUES

Notwithstanding the Court's ruling that this case presents a significant copyright ownership issue, SCO continues to assert as an unassailable fact that it owns the UNIX copyrights and that Novell has "slandered" its title by asserting Novell's competing ownership position. To proceed, however, SCO must adequately plead the element of malice and must overcome the privileges the law accords to Novell. As the Court noted in its ruling, "in order for [a] statement regarding copyright ownership to be malicious, it would have to be knowingly false." (Mem. Decision and Order, issued June 9, 2004 ("Order"), at 5.) In light of the Court's ruling, and in view of the substantial record available to the Court even at this early stage of the litigation, SCO's Amended Complaint cannot surmount these hurdles.

What we really have here — and what the Court can take cognizance of even on a motion to dismiss — is a legal issue of considerable industry and public interest. The dispute is public because SCO made it so, bringing suit against IBM and other parties, threatening 1,500 major corporate users of Linux with a copyright claim, and making broad accusations in the press.

Under these circumstances, the law permits Novell to assert its "rival claim" and to share its legal position with interested parties without facing the chilling threat of litigation. The only way SCO can overcome such a privilege, even on a motion to dismiss, is to adequately plead that Novell acted with the requisite level of malice. But no pleading can be sustained when the Court (by its own analysis and ruling) has before it the existence of a genuine property dispute in which the alleged slanderer is simply asserting its claim to the disputed property. Nor can SCO cure these flaws in its claim by amendment. It is therefore appropriate, as a matter of law, to dismiss SCO's Amended Complaint with prejudice.

## STATEMENT OF FACTS

On this motion to dismiss, the Court properly has before it:

(i)     SCO's Amended Complaint and the attached documents;

(ii)    The existence of a public controversy concerning the UNIX copyrights, including

SCO's suits against other parties brought based on its claim to own those

copyrights; and

(iii)   The full text of the Novell statements identified in the Amended Complaint.

When this record is taken into consideration, dismissal is required.

### A.     SCO's Amended Complaint and Attached Documents.

SCO's Amended Complaint contains no request for declaratory judgment that SCO owns

the UNIX copyrights.  SCO presses only a claim that Novell has slandered SCO's purported title

to these copyrights.   SCO claims title to these copyrights by way of the Asset Purchase

Agreement and "Amendment No. 2," which are attached to SCO's complaint.

The Court has already conducted a detailed evaluation of these documents in denying

SCO's motion to remand this case to state court.  Citing the Second Circuit's decision in *Jasper*

*v. Bovina Music, Inc.*, 314 F.3d 42, 47 (2d Cir. 2002), the Court noted that "the determination of

copyright ownership controls necessary elements of [SCO's] claim" and that "federal law

standards created to further the federal interest established in [17 U.S.C. § 204(a)] control the

disposition of whether Section 204(a)'s requirements" to effectuate a transfer have been met.

(Order at 13.)  The Court examined the documents to determine whether they gave rise to

"substantial Section 204(a) issues." (*Id.* at 8.)  The Court concluded that they did, holding that

"the agreements raise substantial doubt as to whether the [Asset Purchase Agreement] as

amended by Amendment No. 2 qualifies as a Section 204(a) writing." (*Id.* at 10.)

The Court emphasized its "substantial doubt" over whether Novell had transferred copyright ownership to SCO in adjudicating Novell's motion to dismiss. Novell moved to dismiss on the ground that SCO had not properly pled that Novell's statements were false and that it had not properly pled special damages. Though the Court elected to grant Novell's motion only on the latter ground, the Court nevertheless noted that "Novell has raised persuasive arguments as to whether a sufficient writing exists and whether there was any intent to transfer copyrights under the [Asset Purchase Agreement] as amended or under a separate agreement." (*Id.* at 15.)

**B.    The Public Controversy Surrounding SCO's Claim to the UNIX Copyrights.**

In March 2003, SCO sued IBM, claiming "SCO is the present owner of both UNIX and SCO/UNIX software." (*The SCO Group, Inc. v. Int'l Bus. Machines Corp.*, Compl. filed Mar. 6, 2003, ¶ 2, attached as Ex. A to Decl. of David E. Melaugh in Support of Novell's Mot. to Dismiss ("Melaugh Decl."), filed with this motion.) SCO subsequently clarified its complaint to make explicit its claim to the UNIX copyrights: "SCO presently owns all right, title and interest in and to UNIX and UnixWare operating system source code, software and sublicensing agreements, together with copyrights [and] additional licensing rights in and to UNIX and UnixWare . . . ." (*Id.*, Am. Compl., filed July 22, 2003, ¶ 2, attached as Ex. B to Melaugh Decl.; *see also id.*, ¶ 29.) SCO claimed to have acquired these rights from Novell. (*Id.* at ¶ 49.)

In its suit against IBM, SCO claimed that IBM had conspired with others to misappropriate intellectual property owned by SCO and to include it in the Linux operating system. (*See generally id.* at ¶¶ 87-103.) SCO's broadside attack against IBM and the Linux community started a firestorm of controversy. Since its filing, thousands of articles have been

written about the suit. (Melaugh Decl. ¶ 4 & Ex. C.)[1]  Indeed, between the filing of the suit and

the first public statement alleged in SCO's Amended Complaint against Novell, over 300 articles

were written about the suit.  (*Id.* ¶ 5 & Ex. D.)  SCO has done everything it can to stoke that

firestorm.  In total, SCO has initiated or is defending itself in at least six lawsuits before five

judges in four states and two countries.[2]    SCO's Amended Complaint against Novell

affirmatively asserts the relationship between this suit and SCO's other litigation.  When ordered

by this Court to state its special damages more precisely, the principal allegation SCO added is

that parties in SCO's other lawsuits have relied on Novell's rival claim to the UNIX copyrights

to SCO's alleged detriment. (Am. Compl. ¶ 21(c).)

Beyond the cases it has already filed, SCO has threatened 1,500 "of the world's largest

corporations" with liability. (*See* SCO's Answer to IBM's Am. Countercl., filed Oct. 24, 2003,

¶ 55 (admitting having sent "letters to 1500 of the world's largest corporations"), attached as

---

[1] Novell asks that the Court "not look to the substance of the articles to resolve any disputed issue on defendant's motion, but [instead to] consider the fact of the publication of these articles as evidence of the media frenzy, and thus [take] judicial notice of the widespread publicity . . . ." *See Condit v. Dunne*, No. 02 Civ. 9910 (PKL), 2004 U.S. Dist. LEXIS 7247, *30-31 (S.D.N.Y. Apr. 27, 2004) (taking judicial notice of publicity in defamation case, citing additional cases); *see also Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3 (S.D.N.Y. 1998) (taking judicial notice of "widespread newspaper coverage"); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 n.5 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (taking judicial notice of "the overwhelming deluge of publicity attendant to and extensive public discussion of the O.J. Simpson criminal trial").  It also bears noting that SCO's suit against IBM has been classified as a "high profile" case on the Court's website.  *See* http://www.utd.uscourts.gov/documents/ibm.html.

[2] In addition to IBM and Novell, SCO has sued AutoZone and DaimlerChrysler. *See The SCO Group, Inc. v. AutoZone, Inc.*, No. CV-S-04-0237-RCJ-LRL (D. Nev.); *The SCO Group, Inc. v. DaimlerChrysler Corp.*, No. 04-056587-CKB (Mich. Cir. Ct.).  In response to threats of suit, Red Hat Inc. brought a preemptive declaratory judgment action against SCO. *See Red Hat Inc. v. The SCO Group, Inc.*, No. 03-772-SLR (D. Del.).  Tarent GmbH brought a similar action against SCO in Germany, and obtained a preliminary injunction preventing SCO from claiming that Linux contains SCO intellectual property. *See Tarent v. SCO-Germany*, No. 12-0247/03, LG 1 (Dist. Ct. Munich).

Ex. E to Melaugh Decl.; *see also* SCO July 21, 2004 Press Release (indicating that SCO sent letters to all "Fortune 1000 and Global 500" companies informing them that they "could face liability for running [Linux] in their organization.").)[3]  SCO has implied that *all* Linux users infringe on SCO's ownership rights.  (*Id.*, stating that "[w]ith more than 2.4 million Linux servers running our software, and thousands more running Linux every day, we expect SCO to be compensated for the benefits realized by tens of thousands of customers.").

It is against this backdrop that Novell made the statements alleged in the Amended Complaint.

### C.    Novell Statements Identified in SCO's Amended Complaint.

As discussed above, in the course of denying SCO's motion to remand and granting Novell's motion to dismiss, the court noted that "[f]alsity also pervades the malice element because in order for the statement regarding copyright ownership to be malicious, it would have to be knowingly false."  (Order at 5.)  Presented with this requirement of pleading and proof, SCO has not even attempted to strengthen its allegations of malice.

The Amended Complaint alleges that Novell made ten "false oaths," "misleading public representations," and "wrongful assertions of ownership rights."  (Am. Compl. ¶ 19.)  As the Amended Complaint quotes selectively and misleadingly from the statements, we detail below the full text and context for each statement, and attach complete copies of the statements to an accompanying declaration.  *See* Declaration of Bruce Lowry in Support of Novell's Motion to Dismiss ("Lowry Decl."), filed with this motion, Exs. A - I; *see also GFF Corp. v. Associated*

---

[3] SCO's July 21, 2004 press release is attached as Ex. F to Melaugh Decl. and available at: http://ir.sco.com/ReleaseDetail.cfm?ReleaseID=114170.

*Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (allowing reference to and attachment

of documents cited by plaintiff's complaint)

### 1.    Initial Press Releases

#### a)    Novell's May 28, 2003 Press Release

In the wake of the public controversy discussed above, Jack Messman, Novell's

Chairman, President, and CEO, issued a press release stating:

> Defending its interests in developing services to operate on the
> Linux platform, Novell today issued a dual challenge to The SCO
> Group over its recent statements regarding its UNIX ownership
> and potential intellectual property rights claims over Linux.
>
> First, Novell challenged SCO's assertion that it owns the
> copyrights and patents to UNIX System V, pointing out that the
> asset purchase agreement entered into between Novell and SCO in
> 1995 did not transfer these rights to SCO.  Second, Novell sought
> from SCO facts to back up its assertion that certain UNIX System
> V code has been copied into Linux.  Novell communicated these
> concerns to SCO via a letter (text below) from Novell® Chairman
> and CEO Jack Messman in response to SCO making these claims.

(Am. Compl. ¶ 19(a); Lowry Decl. Ex. A.)  The press release continued with the text of a letter

sent by Mr. Messman to SCO on the same day.  The letter included the following text:

> Importantly, and contrary to SCO's assertions, SCO is not the
> owner of the UNIX copyrights.  Not only would a quick check of
> U.S. Copyright Office records reveal this fact, but a review of the
> asset transfer agreement between Novell and SCO confirms it.  To
> Novell's knowledge, the 1995 agreement governing SCO's
> purchase of UNIX from Novell does not convey to SCO the
> associated copyrights.

The letter noted that SCO itself had repeatedly asked Novell to transfer the UNIX copyrights to

SCO:

> We believe it unlikely that SCO can demonstrate that it has any
> ownership interest whatsoever in those copyrights.  Apparently,
> you share this view, since over the last few months you have
> repeatedly asked Novell to transfer the copyrights to SCO, requests

that Novell has rejected.  Finally, we find it telling that SCO failed
to assert a claim for copyright or patent infringement against IBM.

The letter concluded:

> [W]e demand that SCO retract its false and unsupported assertions
> of ownership in UNIX patents and copyrights or provide us with
> conclusive information regarding SCO's ownership claims.

### b)    SCO's June 6, 2003 Letter

As the Amended Complaint alleges, on June 6, 2003, SCO sent Novell a letter in which it

"brought to Novell's attention Amendment No. 2 to the Asset Purchase Agreement."  (Am.

Compl. ¶ 19(b); *see also* Lowry Decl. Ex. B.)  In the letter, SCO threatened to sue Novell for

federal securities fraud and demanded an immediate response.

### c)    Novell's June 6, 2003 Press Release

Novell immediately issued the following press release:

> In a May 28th letter to SCO, Novell challenged SCO's claims to
> UNIX patent and copyright ownership and demanded that SCO
> substantiate its allegations that Linux infringes SCO's intellectual
> property rights.  Amendment #2 to the 1995 SCO-Novell Asset
> Purchase Agreement was sent to Novell last night by SCO.  To
> Novell's knowledge, this amendment is not present in Novell's
> files.  The amendment appears to support SCO's claim that
> ownership of certain copyrights for UNIX did transfer to SCO in
> 1996.  The amendment does not address ownership of patents,
> however, which clearly remain with Novell.

(Am. Compl. ¶ 19(c); *see also* Lowry Decl. Ex. C.)

### d)    Novell's June 6, 2003 Letter

In a letter sent June 6, Novell responded to certain accusations in SCO's June 6 letter:

> Your letter contains absurd and unfounded accusations against
> Novell and others, coupled with a veiled threat to publicly state
> those allegations in a SCO press call to be held today at 11:00 am
> EST.  Novell continues to demand that SCO cease and desist its
> practice of making unsubstantiated allegations, including the
> allegations contained in your letter of June 6, 2003.

(Am. Compl. ¶ 19(d); *see also* Lowry Decl. Ex. D.)   Contrary to the characterization in the Amended Complaint, the phrase "absurd and unfounded accusations" does not refer to "SCO's claims of copyright ownership," but rather to the only "accusation" included in SCO's June 6 letter:  that Novell had engaged in federal securities fraud by asserting its rival claim to the UNIX copyrights.  Novell found, and continues to find, such an accusation absurd, but in any case, it is irrelevant to the slander of title claim.

### 2.    Subsequent Private Correspondence on Copyright Ownership

After the two initial press releases, in private correspondence between the parties, Novell continued to assert its claim to the UNIX copyrights and sought to elicit the basis for SCO's assertion of a contrary claim .

#### a)    Novell's June 26, 2003 Letter

On June 26, 2003, Novell wrote to SCO:

> SCO's statements [claiming to own "the patents, copyrights, and core technology associated with the UNIX system"] are simply wrong.  We acknowledge, as noted in our June 6 public statement, that Amendment No. 2 to the Asset Purchase Agreement appears to support a claim that Santa Cruz Operation had the right to acquire some copyrights from Novell.   Upon closer scrutiny, however, Amendment No. 2 raises as many questions as it answers.  Indeed, what is most certainly *not* the case is that "any question of whether UNIX copyrights were transferred to SCO as part of the Asset Purchase Agreement was clarified in Amendment No. 2" (as SCO stated in its June 6 press release).  And there is no indication whatsoever that SCO owns all the *patents* associated with UNIX or UnixWare.
>
> We are still reviewing the Asset Purchase Agreement and other materials to determine the actual scope of rights transferred to SCO. In the meantime, we wish to make clear that we do not agree with SCO's public statement on this matter.

(Am. Compl. ¶ 19(e); *see also* Lowry Decl. Ex. E.)[4]

### b)    Novell's August 4, 2003 Letter

As the Amended Complaint acknowledges, SCO subsequently registered its claim to the

UNIX copyrights with the United States Copyright Office.  (Am. Compl. ¶ 3.)  Responding by

letter, Novell stated:

> This ... follows your recent announcement that SCO has
> registered its claim to copyrights in UNIX System V with the U.S.
> Copyright Office.
>
> We dispute SCO's claim to ownership of these copyrights.  The
> Asset Purchase Agreement, in Schedule 1.1(b), contains a general
> exclusion of copyrights from the assets transferred to Santa Cruz
> Operation.   Amendment No. 2 provides an exception to that
> exclusion, but only for "copyrights...required for [Santa Cruz
> Operation] to exercise its rights with respect to the acquisition of
> UNIX and UnixWare technologies."
>
> In other words, under the Asset Purchase Agreement and
> Amendment No. 2, copyrights were not transferred to Santa Cruz
> Operation unless SCO could demonstrate that such a right was
> "required for [Santa Cruz Operation]" to exercise the rights
> granted to it in the APA.  Santa Cruz Operation has never made
> such a demonstration, and we certainly see no reason why Santa
> Cruz Operation would have needed ownership of copyrights in
> UNIX System V in order to exercise the limited rights granted

---

[4] Notwithstanding this letter, SCO continued to stoke the fires of the ownership controversy, going so far as to suggest that Novell had acquiesced in SCO's claim of ownership. For example, SCO CEO Darl McBride conducted an interview in which he stated:

> Interviewer:    Well, Novell would say that you actually don't own
>                 those copyrights fully.
>
> McBride:        Yeah, well, the Novell thing, they, they came out and
>                 made a claim that held up for about four days and then
>                 we put that one to bed.  **If you go talk to Novell today,
>                 I'll guarantee you what they'll say, which is they
>                 don't have a claim on those copyrights.**

The full video is available at http://news.com.com/1606-2-740902.html (emphasis added).  *See also* http://www.eweek.com/article2/0,1759,1496552,00.asp ("In regard to Novell's recent claim that it still owns the copyright to Unix, McBride said it took SCO just four days to press the eject button on that claim.").

> SCO under the APA. Nor is there any reason to think that a transfer of the copyrights required for SCO to exercise its APA rights necessarily entails transfer of the entire set of exclusive rights associated with a particular copyrighted computer program.
>
> Unless and until SCO is able to establish that some particular copyright right is "required" for SCO to exercise its rights under the APA, SCO's claim to ownership of any copyrights in UNIX technologies must be rejected, and ownership of such rights instead remains with Novell.

(Am. Compl. ¶ 19(f); *see also* Lowry Decl. Ex. F.)

### 3.    Novell's Public Response to SCO's Copyright Registrations

#### a)    Novell's Copyright Registrations and Declarations

After SCO filed copyright registrations asserting ownership over the UNIX copyrights, Novell filed applications for its own such registrations. (Am. Compl. ¶ 19(g).) Such competing registrations are specifically contemplated by copyright regulations and are filed in circumstances in which a party disputes a prior copyright registration filed by another party. *See* 37 C.F.R. § 202.3(b)(10)(iii).

In addition, Novell submitted declarations to the Copyright Office for recordation against SCO's UNIX copyright registrations averring that Novell "retains all or substantially all of the ownership of the copyrights in UNIX, including the U.S. Copyright Registration referenced above." (Am. Compl. ¶ 19(h); *see also* Lowry Decl. Ex. G.) Such declarations are also specifically allowed by copyright regulations and are typically filed when a registration is disputed. *See Compendium II: Copyright Office Practices*, § 1603.02 (*available at* http://www.copyright.gov/compendium/1600.htm.). The declarations each stated:

> WHEREAS, pursuant to an Agreement and Plan of Reorganization entered into between UNIX System Laboratories, Inc., a Delaware corporation, American Telephone and Telegraph Company, a New York corporation, Novell Acquisition Corp., a Delaware corporation, and Novell, Inc. ("Novell"), a Delaware corporation, Novell became the owner of all right, title, and interest, including

all copyrights, in that certain computer operating system and related systems software known as UNIX;

WHEREAS, pursuant to an Asset Purchase Agreement (the "Asset Purchase Agreement") between Novell and the Santa Cruz Operation, Inc., a California corporation ("SCO, Inc."), SCO, Inc. acquired certain rights to, *inter alia*, carry out the business of licensing of UNIX, subject to various obligations to Novell;

WHEREAS, pursuant to Section 1.1(a) and Schedule 1.1(b), Excluded Assets, to the Asset Purchase Agreement, "[a]ll copyrights" were excluded from the assets purchased by SCO, Inc.

WHEREAS, pursuant to Amendment No. 2 to the Asset Purchase Agreement, Schedule 1.1(b) was revised to read, in relevant part, "All copyrights . . . except for the copyrights . . . owned by Novell as of the date of the [Asset Purchase] Agreement required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies" and

WHEREAS, The SCO Group, Inc. ("SCO"), the successor to SCO, Inc., has failed as of the date of this Declaration to demonstrate that any of the UNIX copyrights owned by Novell are required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies, despite Novell's request that SCO do so.

NOW, THEREFORE, Novell hereby declares that it retains all or substantially all of the ownership of the copyrights in UNIX, including the U.S. Copyright Registration referenced above.

(Am. Compl. ¶ 19(h); *see also* Lowry Decl. Ex. G.)

### b)    Novell's December 22, 2003 Press Release

Upon the Copyright Office's issuance of Novell's copyright registrations, Novell made the following press release:

Novell believes it owns the copyrights in UNIX, and has applied for and received copyright registrations pertaining to UNIX consistent with that position. Novell detailed the basis for its ownership position in correspondence with SCO. Copies of our correspondence, and SCO's reply, are available here. Contrary to SCO's public statements, as demonstrated by this correspondence, SCO has been well aware that Novell continues to assert ownership of the UNIX copyrights.

(Am. Compl. ¶ 19(i); *see also* Lowry Decl. Ex. H.)  As the press release indicates, Novell was responding to SCO's public assertions that Novell had acquiesced to SCO's claim to the UNIX copyrights.  (*See supra*, n.4.)  As also noted in the press release, Novell simultaneously made available correspondence between Novell and SCO, including that quoted above, which made clear that Novell continued to contest SCO's claims and set forth Novell's copyright ownership position and the basis therefor.

### c)    Novell's January 13, 2004 Press Release

To promote public confidence in Novell's SUSE Linux Enterprise Server product and address accusations that the use of that product might give rise to liability on a customer's part, Novell announced a Linux Indemnification Program.  In connection with this offer, Novell set forth its view of its legal rights regarding UNIX, including its claim of ownership of UNIX copyrights:

> Novell also made available today additional information on the unique contractual and intellectual property rights it holds because of its position in the historical ownership chain of UNIX and UnixWare.  These rights include:
>
> - Novell's rights to license UNIX technology pursuant to a Technology License Agreement between SCO and Novell, including Novell's right to authorize its customers to use that UNIX technology in their internal business operations.
>
> - Novell's rights to take action on behalf of SCO under legacy UNIX SVRX licenses pursuant to the Asset Purchase Agreement between SCO and Novell.
>
> - As previously confirmed by Novell, copyright registrations on UNIX SVRX releases, consistent with Novell's position that it retained ownership of these copyrights.
>
> Copies of relevant correspondence between Novell and SCO are available at http://www.novell.com/licensing/indemnity/legal.html.  The rights reflected in these documents are part of the foundation for the indemnification program Novell is announcing today.

(Am. Compl. ¶ 19(j); *see also* Lowry Decl. Ex. I.)

           **d)**      **Novell's March 2004 Statement**

The Amended Complaint alleges that at the March 2004 Open Source Business Conference, Novell's Vice Chairman Chris Stone stated, Novell "still own[s] UNIX.'" (Am. Compl. ¶ 19(k).)

## SUMMARY OF ARGUMENT

Novell has a privilege to assert a rival claim to the UNIX copyrights. Novell also has a privilege to inform interested parties of its claim of ownership, especially in light of the considerable public controversy SCO has generated surrounding its claim to these copyrights. To state a claim for slander of title, SCO must plead and prove that Novell's statements were "knowingly false." To overcome Novell's privileges, SCO must plead and prove that Novell's statements were "made from spite, ill will or hatred." In the course of ruling on SCO's motion for remand and Novell's motion to dismiss on the ground that SCO had not adequately pled falsity, this Court evaluated Novell's claim to the UNIX copyrights and the documents upon which that claim is based. Though it declined to grant either motion, the Court concluded that the documents SCO claims transfers title to the UNIX copyrights are ambiguous, that there is "substantial doubt" as to whether they qualify as Section 204(a) writings, and that Novell offered "persuasive arguments" in support of its claim. Examination of the statements themselves makes clear they are not evidence of any malice. This precludes a finding that Novell acted with the requisite malice. This fatal flaw cannot be cured by amendment. Dismissal with prejudice is therefore appropriate.

# ARGUMENT

## I.    DISMISSAL IS APPROPRIATE BECAUSE NOVELL'S STATEMENTS ARE PRIVILEGED.

On this motion, the Court has available the content of Novell's statements, the highly charged public context in which they were made, and the underlying legal basis for Novell's assertion of copyright ownership. Having already determined that "persuasive" arguments support Novell's claims of copyright ownership, the Court is well-positioned to review the remainder of the record even at this early stage and determine whether SCO can possibly overcome its pleading burden.

In this regard, SCO's slander of title claim is similar to defamation suits, which are unusual in their susceptibility to evaluation at the pleading stage. As one commentator notes:

> Dismissal of defamation suits for failure of the complaint to state a cause of action or to state a claim upon which relief may be granted occurs with relative frequency. One substantial factor is that the communication complained of is usually before the court at the outset. . . . Thus, unlike most litigation, in a libel suit the central event — the communication about which suit has been brought — is literally before the judge at the pleading stage. He or she may assess it upon a motion to dismiss, firsthand and in context. . . . The trial court may therefore at the earliest stages make sound determinations as to issues relating to the communication of which complaint is made. Thus courts routinely consider, on motions to dismiss . . . issues such as whether the statement at bar is capable of bearing a defamatory meaning, . . . and whether the suit is barred by privilege . . . and they frequently grant motions on these grounds and others.

Robert D. Sack, *Sack on Defamation* (Practicing Law Institute, 3d ed.) (2004), 16-3 - 16-4.[5]

---

[5] This brief relies on both slander of title and defamation case law. Some courts have noted distinctions between the two. *See, e.g., Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988). However, the primary differences are not relevant on this motion. *See id.* (noting main difference is requirement to prove special damages in slander of title action). Indeed, the Restatement of Torts, when discussing conditional privileges applicable to slander of title actions, simply refers generally to the privileges applicable to defamation actions. *See*

(Footnote continues on next page.)

On the basis of the record before the Court, Novell contends that it cannot be liable for slander of title because Novell has a legal privilege to make a good-faith assertion of a rival property claim and to protect the legitimate interests of Novell's potential and actual Linux customers. In addition, SCO cannot show that Novell acted with malice, let alone malice sufficient to overcome these privileges.

### A.    Novell's Privileges and SCO's Inability to Overcome Them Are Appropriate for Adjudication on a Motion To Dismiss.

The existence of a privilege is a matter of law. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991) ("Whether a publication is conditionally privileged is a question of law to be determined by the trial court, unless a genuine factual issue exists regarding whether the scope of the qualified privilege has been transcended or the defendant acted with malice."). Where, as here, a privilege appears on the face of the pleadings and the plaintiff presents only conclusory allegations in an effort to overcome that privilege, dismissal is appropriate. SCO's Amended Complaint baldly asserts that Novell's statements were made "intentionally, maliciously, and with utter disregard for the truthfulness thereof" (¶ 25), and in "bad faith" with "the intent to cause customers and potential customers of SCO to not do business with SCO" (¶ 6), but SCO cannot sustain these allegations.

The court in *Echtenkamp v. Loudon County Pub. Schs.*, 263 F. Supp. 2d 1043 (E.D. Va. 2003), was faced with similarly superficial allegations. The plaintiff brought a defamation claim against her employer concerning a series of damaging statements she alleged were made in the course of her evaluations. *Id.* at 1052 (plaintiff complained of statements that she was

---

(Footnote continued from previous page.)

Restatement (Second) of Torts § 646A ("Under any circumstance that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the publication of [a slander of title].").

"abrasive," "unprofessional," "rude," "insulting," and "inept"). The court first found that

statements identified in plaintiff's complaint were privileged because they were made by "co-

employees and employers in the course of employee disciplinary or discharge matters." The

court then found that dismissal was appropriate because plaintiff had failed to overcome this

privilege, even though she had alleged malice:

> [T]his privilege is qualified and is lost if a plaintiff proves by clear
> and convincing evidence that the defamatory words were spoken
> with common-law malice. . . . Thus, in order to state a claim for
> defamation, plaintiff must allege facts sufficient ultimately to
> support a finding by clear and convincing evidence that the
> statements of her supervisors and co-workers were made with
> actual, common-law malice.
>
> In considering whether [plaintiff's] complaint meets that burden, it
> must first be noted that plaintiff's repeated assertions that each
> defendant charged with defamation acted "with malice" and with a
> "motive of personal spite and revenge" are not, by themselves,
> sufficient to state a claim of malice sufficient to overcome the
> qualified privilege. Although the facts as alleged in the complaint
> must be taken as true for the purpose of this motion to dismiss,
> such conclusory allegations do not state a claim for malice if the
> facts as alleged cannot otherwise support a finding of malice. . . .
> Were such bare allegations sufficient to state a claim of malice,
> virtually every claim of defamation . . . would survive a motion to
> dismiss. Neither precedent nor common sense approve of such a
> result.

*Id.* at 1061-62. Because SCO's Amended Complaint cannot overcome Novell's privileges, it

fails to state a claim and should therefore be dismissed.

### 1.    Novell Has a Privilege to Publicly Assert a Rival Claim to the UNIX Copyrights.

Novell is protected from SCO's slander claim by a legal privilege to assert its rival claim

to the UNIX copyrights. "The law has long recognized that a publication is conditionally

privileged if made to protect a legitimate interest of the publisher." *Brehany*, 812 P.2d at 58

(*citing Restatement (Second) of Torts* § 594); *see also Thomas v. Pacificorp*, 324 F.3d 1176,

1181 (10th Cir. 2003) (quoting same language from *Brehany*). In the context of slander of title, this privilege allows "[a] rival claimant . . . to disparage another's property . . . by an assertion of an inconsistent legally protected interest in himself." *Restatement (Second) Torts*, § 647.[6]  All that is required to assert this privilege is a belief in "good-faith that there is a substantial chance of [the rival claim] being sustained." *Id.*, Cmt. d.  This privilege exists so that a rival claimant will not be deemed to have waived his claim by his silence. *Id.*, Cmt f.

    *Fischer v. Bar Harbor Banking & Trust Co.*, 857 F.2d 4 (1st Cir. 1988), illustrates the application of this privilege. *Fischer* holds that the privilege still protects a defendant even where, unlike here, the defendant's assertion of a rival ownership interest has been adjudicated to have been incorrect. In *Fischer*, the plaintiff sued a bank for mistakenly filing a lien against property the plaintiff had bought from a debtor in ordinary course. The bank responded that its lien was protected because it "possessed the conditional privilege of a rival claimant." *Id.* at 6. The court held that even though the bank ultimately conceded that it was not entitled to a lien, the bank's original claims were nevertheless privileged:

> Whether Fischer is a buyer in ordinary course is not the issue. The issue is whether the answer to that question was so obvious as to constitute a finding that the Bank acted with actual malice. For both legal and factual reasons, the answer to this inquiry is no. Though a review of the authorities cited in the district court opinion indicates that in a contest for possession of the [property] Fischer could have won on the merits, there is support for the Bank's position. . . . What existed [when the Bank filed its lien] were competing claims to a superior interest between the two

---

[6] Novell could not locate a Utah case citing this Restatement section, but Utah courts have adopted other portions of the Restatement applicable to conditional privileges. *See, e.g., Brehany*, 812 P.2d at 58 (recognizing conditional privilege to make statements protecting third parties, citing Restatement § 595). Other courts have adopted this section; indeed, the First Circuit has noted that there is "no real debate in the law" over the privilege described in § 647. *Fischer v. Bar Harbor Banking & Trust Co.*, 857 F.2d 4, 7 (1st Cir. 1988).

parties. The Bank, like Fischer, was at least entitled to press its
right to superiority before relinquishing it in the judicial setting.

*Id.* at 8-9.

Just as the bank in *Fischer*, Novell has a good-faith basis to assert its rival claim, and the

Court can sustain this motion to dismiss even without making an ultimate determination of

whether Novell or SCO owns the UNIX copyrights. As discussed in more detail below, this

Court has already determined that there are significant legal questions about who owns the

copyrights, and thus has made an objective determination that Novell's statements were made in

good-faith. Nor can there be any serious question about the context for Novell's statements and

whether they are protected by the "rival claim" privilege: each of the statements was made in

direct furtherance of Novell's belief that it owns UNIX and that SCO's contrary claim called for

rebuttal, not silence.

SCO began this controversy by publicly claiming to own the UNIX copyrights, asserting

them in its suit against IBM. Novell's response — the May 28, 2003 press release — stated

Novell's belief that the Asset Purchase Agreement did not transfer the UNIX copyrights, a

position this Court characterizes as "undisputed." (Order at 8.) Novell's release noted that SCO

had itself asked Novell to transfer the copyrights to SCO, thereby lending strong support to

Novell's view that no transfer had previously occurred.

SCO then informed Novell of its belief that Amendment No. 2 acted to transfer the

copyrights and demanded a retraction of the May 28 press release. (Am. Compl. ¶ 19(b).)

Novell immediately responded that Amendment No. 2 "appears to support SCO's claim." (Am.

Compl. ¶ 19(c); Lowry Decl. Ex. C.) SCO's Amended Complaint acknowledges that Novell's

June 6 release amounted to a retraction, characterizing the release as "recant[ing]" its prior statements. (*Id.* at ¶ 19(c).)

The sequence in this initial phase, therefore, is:

- SCO creates a public dispute about UNIX copyrights and copyright ownership as it relates, in particular, to Linux.

- Novell, "[d]efending its interests in developing services to operate on the Linux platform," notes that SCO had asked Novell to transfer the copyrights to it, and asserts that, "to its knowledge" the Asset Purchase Agreement did not transfer ownership to SCO. (Am. Compl. ¶ 19(a); Lowry Decl. Ex. A.)

- SCO sends Novell a copy of Amendment No. 2. (Am. Compl. ¶ 19(b); Lowry Decl. Ex. B.)

- By SCO's own characterization, Novell "recants" its prior release. (Am. Compl. ¶ 19(c); Lowry Decl. Ex. C.)

The parties then exchanged private correspondence in which Novell expressed its belief that Amendment No. 2 had not necessarily effected a transfer, particularly because SCO had not demonstrated that it had met the "required for" standard necessary to trigger Novell's alleged obligation to transfer the copyrights. In the face of this ambiguity, SCO nevertheless persisted, registering its purported claims to the UNIX copyrights with the United States Copyright Office. In order to protect its rights, Novell responded by registering its own claim. Novell then publicized its letters, SCO's responses, and Novell's copyright registrations, noting that SCO had publicly claimed that Novell was no longer asserting that it owned the UNIX copyrights:

> Contrary to SCO's public statements, as demonstrated by this
> correspondence, SCO has been well aware that Novell continues to
> assert ownership of the UNIX copyrights.

(Am. Compl. ¶ 19(i); Lowry Decl. Ex. H.) Novell has also made limited public statements

confirming that it continues to claim an ownership interest in the UNIX copyrights. (Am.

Compl. ¶ 19(j)-(k); Lowry Decl. Exs. H - I.)

This sequence of events demonstrates that Novell's statements fall squarely within the

privilege to assert a rival claim of ownership. Indeed, the policy behind this privilege — to

protect a party concerned about a finding of waiver by silence — is directly applicable here,

where Novell was responding first to SCO's public claim of ownership, and then to SCO's claim

that Novell had acquiesced in SCO's claim of ownership. That Novell went the extra distance

first to write to SCO privately and then published not only its own letters but SCO's responses,

demonstrates that Novell was seeking only to ensure that the full picture was before the relevant

public and that SCO's claims were not left unaddressed.

### 2. Novell Has a Privilege to Publish Its Rival Claim to Parties With a Common Interest in the UNIX Copyrights.

Novell is also protected from SCO's slander claim by the privilege to inform interested

parties of its claim of ownership. "[A] publication [is] conditionally privileged if the

circumstances lead any one of several persons having a common interest in a particular subject

matter correctly or reasonably to believe that there is information that another sharing the

common interest is entitled to know." *See Restatement (Second) of Torts* § 596; *see also*

*Brehany*, 812 P.2d at 58 ("A conditional privilege may also protect a legitimate interest of . . . a third person," *citing Restatement (Second) of Torts* § 595)).[7]

As discussed above, SCO has threatened a wide community with suit based on its claim of ownership. These threats are not idle; invoking various theories, SCO has filed suit against three companies, and has admitted to sending letters threatening an additional 1,500 major corporations with liability. (*See* Melaugh Decl. Ex. E at ¶ 55 (SCO's Answer to IBM's Amended Countercl.).) The Amended Complaint acknowledges that Novell directed its statements at this community. In fact, when pressed to amend its complaint specifically to allege the harm Novell's statements have purportedly caused, SCO added only that parties sued by SCO have relied upon Novell's statements. (*Compare* SCO's original Complaint, ¶ 21, *with* Am. Compl. ¶ 21.)

SCO bases its threats in part on its claim to own the UNIX copyrights. As this Court has recognized, Novell has good arguments supporting its dispute of this claim. Novell is therefore privileged to inform the third parties threatened by SCO of Novell's competing property claim. The breadth and number of parties interested in this dispute, coupled with SCO's decision to make this dispute very public, permits Novell to choose means such as press releases and its website to inform interested parties of Novell's competing claim.

---

[7] Restatement (Second) of Torts §§ 595-96 are explicitly incorporated into the Restatement's treatment of slander of title. *See* Restatement (Second) of Torts §§ 646A & 650. Section 596 has not been cited yet in Utah but has been cited favorably by other courts. *See, e.g., Kennedy v. Children's Serv. Soc'y*, 17 F.3d 980, 985 (7th Cir. 1994); *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 922-23 (1989).

**B.    In Light of the Court's June 9 Order, SCO Cannot Allege Malice Sufficient to Ground a Claim for Slander of Title, Let Alone Sufficient to Overcome Novell's Privileges.**

Malice is a necessary element in any action for slander of title. *See First Sec. Bank, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1257 (Utah 1989) ("A published false statement . . . does not constitute slander of title without the element of malice."). As this Court recognized in its June 9 Order, "in order for [a] statement regarding copyright ownership to be malicious, it would have to be knowingly false." (Order at 5 (citing *First Sec. Bank*, 780 P.2d at 1257).)

Malice also figures in the privileges that protect Novell from SCO's claim.[8] These privileges may be overcome if "the plaintiff pleads and proves facts which indicate actual malice in that the utterances were made from spite, ill will or hatred toward him . . . ." *Combes v. Montgomery Ward & Co.*, 119 Utah 407, 416 (Utah 1951) (upholding directed verdict because the plaintiff had not pled or proven malice sufficient to overcome the defendant's privilege). In light of this Court's Order, SCO cannot possibly demonstrate that Novell's statements were "knowingly false" or that they "were made from spite, ill will or hatred."

---

[8] *Sack on Defamation* discusses the interaction between malice as an element of the cause of action and malice as an additional requirement to overcome a conditional privilege at 13-25, noting that this overlap can cause confusion in slander of title actions. He goes on to note that the distinction is irrelevant where a state resorts to the same standard for both applications of malice, but that it is appropriate to apply both standards where a state has chosen to define them differently. Here, it appears that Utah requires a plaintiff to demonstrate that the statement was "knowingly false" to state a cause of action, and "made from spite, ill will or hatred" to defeat a conditional privilege. (*Compare* Order at 5 *with Combes v. Montgomery Ward & Co.*, 119 Utah 407, 416 (Utah 1951).) However, cases discussing the fair reporting privilege afforded by Utah statute have held that that privilege can be overcome by a showing that the defendant did not reasonably believe his or her statements were true, a standard similar to the standard this Court articulated when describing the malice necessary to state a cause of action. *See, e.g., Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 905 (Utah 1992). It is unnecessary here to conclusively determine the precise standard of malice a Utah court would apply, as under any applicable standard, SCO has not and cannot state a claim.

1.    **This Court's June 9 Order Indicates That Novell Has a Meritorious Claim to the UNIX Copyrights.**

SCO's Motion for Remand and Novell's Motion to Dismiss both addressed SCO's claim that Novell transferred the UNIX copyrights. In support of its Motion and in opposition to Novell's motion, SCO argued that the Asset Purchase Agreement and Amendment No. 2 transferred the copyrights. Novell responded that an examination of the actual language of those documents does not support SCO's claim. In its June 9 Order, this Court stated:

- "It is undisputed that the [Asset Purchase Agreement] did not transfer any copyrights." (Order at 8.)

- "Amendment No. 2 . . . does not constitute a transfer of copyrights on its own." (*Id.*)

- "There is enough ambiguity in the language of Amendment No. 2 that . . . it is questionable whether [it] was meant to convey the required copyrights or whether the parties contemplated a separate writing to actually transfer the copyrights after the 'required' copyrights were identified." (*Id.* at 9-10.)

- "The agreements raise substantial doubt as to whether the [Asset Purchase Agreement] as amended by Amendment No. 2 qualifies as a Section 204(a) writing." (*Id.* at 10.)

- "Novell has raised persuasive arguments as to whether a sufficient writing exists and whether there was any intent to transfer copyrights under the [Asset Purchase Agreement] as amended or under a separate agreement." (*Id.* at 15.)

The sum of these findings is that Novell's claims of ownership to the UNIX copyrights have merit, even when weighed against the most persuasive arguments SCO could advance on its behalf. Novell's public assertion of such claims cannot represent the sort of knowing falsehood sufficient to constitute malice. Because this Court has indicated that Novell has meritorious

legal arguments, it has made a sufficient determination to reject any claim that Novell lacked a good-faith basis to make its rival claim to the UNIX copyrights. *See, e.g., Timpanogos Highlands, Inc. v. Harper*, 544 P.2d 481, 486 (Utah 1975) ("[Where a party] had sufficient basis for believing that it had rights under the contract . . . there is no foundation upon which it could be found that it willfully and knowingly recorded a false or fraudulent instrument for the purpose of slandering the defendants' title.").

Indeed, SCO itself has asserted likewise when faced with a similar accusation made against it in other proceedings. On August 4, 2003, Red Hat filed a complaint in the United States District Court for the District of Delaware alleging, *inter alia*, that SCO committed trade libel and disparagement by publicly asserting an ownership interest in certain intellectual property. SCO moved to dismiss this count, arguing that it had a good-faith basis to make its ownership claims because "bad faith is not supported when the information is objectively accurate" and that inquiry into any subjective motivation SCO might have had was unnecessary. (Melaugh Decl. Ex. G at 20, *quoting Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).)[9]

Caselaw from a variety of analogous circumstances supports the proposition that a meritorious legal position precludes liability and obviates the need for further inquiry. For example, in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-62 (1993), the Court considered whether the defendants' ultimately unsuccessful copyright suit could give rise to liability as an antitrust violation. The Court held that an

---

[9] The court did not address this portion of SCO's motion to dismiss, holding only that Red Hat had stated a claim for declaratory relief and that it was appropriate to stay the case pending the outcome of SCO's litigation with IBM.

objectively reasonable belief in the validity of the suit precluded liability and that in such circumstances inquiry into the litigant's subjective intent was unnecessary. *Id.* at 60. Similarly, communications pertaining to copyright or patent infringement are not actionable if objectively reasonable. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("[B]ad faith is not supported when the information is objectively accurate."); *see also Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004); *On Command Video Corp. v. Columbia Pictures Indus., Inc.*, 764 F. Supp. 1372, 1374 (N.D. Cal. 1991) (approving notification letter without inquiry into subjective intent of drafter, examining only tenor of letter's text). Here, this Court's findings lead to the conclusion that the "answer to [the] question" whether SCO owns the UNIX copyrights is not "obvious," and therefore Novell cannot be held to have acted with malice in asserting its opinion on that question. *Fischer*, 857 F.2d at 8-9.

### 2.     The Statements Identified in the Complaint Do Not Evidence Malice.

Lest there be any remaining doubt that Novell lacked malice, the Court need look no further than the statements themselves. If anything, they are a model of equanimity. SCO began this controversy by suing IBM based, *inter alia*, on SCO's claim to own UNIX. In its initial May 28 press release, Novell responded to this controversy by stating its belief that the 1995 Asset Purchase Agreement did not transfer copyrights to SCO, a point that SCO now acknowledges and that this Court has conclusively confirmed. (Order at 8 ("It is undisputed that the [Asset Purchase Agreement] did not transfer any copyrights.").) SCO replied by letter on June 6, claiming that, "Any question of whether the UNIX copyrights were transferred under the [Asset Purchase Agreement] was clarified in Amendment No. 2." (Am. Compl. ¶ 19(b); Lowry

Decl. Ex. B.)   SCO demanded an immediate response and suggested that it would sue for securities fraud if Novell continued to assert its rival claim to the UNIX copyrights.

In response to SCO's request for an immediate reply, Novell issued a press release stating that same day, "Amendment No. 2 . . . appears to support a claim that Santa Cruz Operation had the right to acquire some copyrights from Novell." (Am. Compl. ¶ 19(c); Lowry Decl. Ex. C.)

After further investigation, however, Novell noted, "Amendment No. 2 raises as many questions about copyright transfers as it answers," and indicated that:

> We are still reviewing the Asset Purchase Agreement and other materials to determine the actual scope of rights transferred to SCO. In the meantime, we wish to make clear that we do not agree with SCO's public statement on this matter.

(Am. Compl. ¶ 19(d); Lowry Decl. Ex. D.)  On August 4, 2004, following its promised review of Amendment No. 2, Novell responded that, at most, the Amendment was a promise of a future transfer of copyrights "required for [Santa Cruz Operation]" to exercise the rights otherwise granted to it in the Asset Purchase Agreement.   Novell invited SCO to provide evidence "establish[ing] that some particular copyright is 'required' for SCO to exercise its rights under the [Asset Purchase Agreement]." (Am. Compl. ¶ 19(f); Lowry Decl. Ex. F.)

SCO does not allege it provided any such evidence to Novell.  Instead, SCO registered its claim to the UNIX copyrights with the United States Copyright Office.  (Am. Compl. ¶ 3.) Novell filed its own registration and, contradicting SCO's claim that Novell now agreed with SCO as to UNIX ownership, publicly stated that "Novell believes it owns the copyrights in UNIX, and has applied for and received copyright registrations pertaining to UNIX consistent with that position." (Am. Compl. ¶ 19(g)-(i); Lowry Decl. Exs. H - I.)

Novell's statements demonstrate its good-faith belief in the validity of its claim. During the course of these exchanges, Novell inquired into the basis for SCO's claim to the UNIX copyrights. Even facing a motion to dismiss, SCO never alleged anything more but instead pointed only to the Asset Purchase Agreement and Amendment No. 2 — documents this Court has already concluded are ambiguous and arguably support Novell's claims of ownership. Given the Court's finding, Novell's statements cannot possibly be said to be "knowingly false" or made with "spite, ill will or hatred."[10]

## II.    DISMISSAL WITH PREJUDICE IS WARRANTED.

As discussed above, the record establishes that meritorious arguments support Novell's claim to the UNIX copyrights. The assertion of this claim is privileged, and this Court's conclusion that Novell has raised "persuasive arguments" in favor of its claim precludes a finding of malice sufficient to state a cause of action for slander or to overcome Novell's privileges. No amount of amendment will save SCO's complaint from these fatal flaws, as case law holds that the assertion of a meritorious claim — even one later proven mistaken — is not slander. Dismissal with prejudice is therefore appropriate, as "it is patently obvious that the plaintiff [cannot] prevail on the facts alleged," and therefore allowing SCO "an opportunity to amend [its] complaint would be futile." *McKinney v. Oklahoma Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991); *see also Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000) (affirming dismissal with prejudice where facts

---

[10] As SCO recites in its Amended Complaint, one of the letters did use the phrase "absurd." (Am. Compl. ¶ 19(d); Lowry Decl. Ex. D.) The full sentence makes clear that this phrase pertained to SCO's claim that Novell has engaged in securities fraud by asserting its rival copyright claims, something SCO has chosen to omit from its Complaint and Amended Complaint, and which Novell continues to find absurd. (*See* discussion *supra* p.6.)

alleged in complaint made clear that defendant school was entitled to qualified privilege shielding it from defamation claim).

## CONCLUSION

For the foregoing reasons, Novell respectfully requests that this Court dismiss SCO's Amended Complaint with prejudice.

DATED:      August 6, 2004.

ANDERSON & KARRENBERG

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
**Attorneys for Defendant Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____ 6th _____ day of August, 2004, I caused a true and

correct copy of the foregoing **MEMORANDUM IN SUPPORT OF NOVELL, INC.'S**

**MOTION TO DISMISS** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101


Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131