FILED
CLERK, U.S. DISTRICT COURT

2004 NOV -8  P 4: 20

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK

**MORRISON & FOERSTER LLP**
Michael A. Jacobs (pro hac vice)
David E. Melaugh (pro hac vice)
Maame A.F. Ewusi-Mensah (pro hac vice)
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

**ANDERSON & KARRENBERG**
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Novell, Inc.**

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>        Defendant. | **REPLY IN SUPPORT OF NOVELL'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

*56*

Dockets.Justia.com

## TABLE OF CONTENTS

STATEMENT OF ISSUES ...................................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

ARGUMENT.........................................................................................................3

I.     SCO HAS INVITED THE COURT TO CONVERT NOVELL'S
       MOTION INTO A MOTION FOR SUMMARY JUDGMENT.........................................3

II.    ON SUMMARY JUDGMENT, THE COURT SHOULD FIND FOR
       NOVELL BECAUSE SCO HAS NOT SHOWN A GENUINE ISSUE OF
       MATERIAL FACT ON NOVELL'S PRIVILEGES. ........................................................5

       A.     There Is No Triable Issue Whether Novell's Statements Are
              Privileged.....................................................................................................5

       B.     SCO Has Not Shown a Triable Issue Whether Novell Made
              Statements With Malice Or Excessively Published Its Statements. .........................7

              1.     Novell's Uncontroverted Facts Demonstrate the Absence
                     of a Knowing Falsehood.............................................................................9

              2.     The Asset Purchase Agreement Does Not Demonstrate a
                     Knowing Falsehood. ................................................................................10

              3.     The Bill of Sale Does Not Modify the APA.............................................11

              4.     The TLA and Paragraph 1.6 of the APA Are Consistent
                     With Novell's Ownership Position...........................................................12

              5.     SCO Has Retreated From Arguing That Amendment No. 2
                     Evidences Malice.....................................................................................13

              6.     Novell's Post-Sale Conduct Does Not Evidence Malice...........................14

              7.     The Chatlos Declaration Does Not Support SCO's Theory. .....................15

       C.     SCO Has Not Shown a Triable Issue of Fact on Excessive
              Publication .................................................................................................17

              1.     SCO Misstates the Law Applicable to Excessive
                     Publication in the Context of Slander of Title. .........................................17

              2.     Undisputed Facts Preclude SCO From Carrying its Burden
                     to Show Excessive Publication.................................................................18

III.   EVEN IF THE COURT DOES NOT CONVERT THE MOTION,
       NOVELL IS NEVERTHELESS ENTITLED TO DISMISSAL. ....................................19

CONCLUSION ...................................................................................................25

i

sf-1805054

## STATEMENT OF ISSUES

SCO's citation to material outside the record invites the Court to convert Novell's motion to dismiss into a motion for summary judgment. In the event the Court does so, the issues presented are:

(i)    Has Novell established that there is no triable issue of fact that its statements were protected by conditional privileges?

(ii)   Has SCO demonstrated the existence of a triable issue of fact whether Novell made its statements with actual malice or excessively published its statements, which would overcome Novell's privileges?

If the Court declines to consider any of SCO's material outside the record and any argument based upon it, Novell's motion will remain a motion to dismiss. As a motion to dismiss, the issue presented is:

(i)    In light of the record available to the Court establishing Novell's privileges and the merits of Novell's rival claim of ownership, can SCO sustain its claim that Novell acted with malice sufficient to overcome those privileges?

## SUMMARY OF ARGUMENT

On Novell's earlier motion to dismiss, the Court found that while Novell had "persuasive arguments" that the APA as amended by Amendment No. 2 did not transfer ownership of the UNIX copyrights, a final determination awaited further litigation. (Memorandum and Decision Order filed June 9, 2004, at 15, "Order".) The Court concluded, however, that it was "undisputed" that the Asset Purchase Agreement ("APA"), standing alone, did not transfer the UNIX copyrights to SCO's alleged predecessor. (Order at 8.)

SCO's Opposition Memorandum nonetheless argues that the APA itself transferred the copyrights to its alleged predecessor, that Amendment No. 2 was merely confirmatory, that Novell knew all of this to be so, and that Novell therefore acted with malice in stating that it owns the UNIX copyrights.

1

In rearguing the intent and effect of the APA, SCO has submitted evidence outside the pleadings, including a six-page declaration from a former Novell employee.[1]  Under well-settled law, SCO has thereby invited the Court to consider Novell's motion as a motion for summary judgment.  In view of the parties' respective burdens of proof, Novell's motion therefore should be evaluated as follows:

- Has Novell established that there is no triable issue of fact that its statements were protected by conditional privileges?
- Has SCO demonstrated the existence of a triable issue of fact whether Novell made its statements with actual malice or excessively published its statements, which would overcome Novell's privileges?

SCO must have thought that its additional evidence would not only overcome the weight of the Court's earlier findings on the merits of Novell's ownership position, but also would create a jury issue on the factual predicate for Novell's defense.  Even with its additional evidence, however, SCO has not created a jury issue.  The Court therefore should enter summary judgment in favor of Novell.

Alternatively, if the Court declines to convert Novell's motion (and thus declines to consider SCO's additional evidence and the argument based on it), SCO's complaint should nonetheless be dismissed.  Novell's statements demonstrate the absence of malice, and Novell's ownership position is meritorious.  Any further inquiry into Novell's subjective state of mind— especially on the very legal issue the Court has already evaluated—is unnecessary and irrelevant.  Novell's motion invited SCO to file a claim for a declaratory judgment of copyright ownership, but SCO has declined to do so.  SCO should not be given yet another chance to file a complaint stating the proper cause of action, and its case should be dismissed with prejudice.

---

[1] SCO also refers to ownership of "SVRX source code licenses" and "IBM and Sequent license agreements."  (Memorandum in Opposition to Novell, Inc.'s Motion to Dismiss SCO's Amended Complaint, filed October 1, 2004 ("Opp."), at 10 n.6 & 17 n.7.)  These matters are not at issue in this motion.

sf-1805054

# ARGUMENT

## I.    SCO HAS INVITED THE COURT TO CONVERT NOVELL'S MOTION INTO A MOTION FOR SUMMARY JUDGMENT.

SCO's Opposition Brief relies on material outside the scope of the complaint and thereby invites the Court to convert this motion for summary judgment. SCO submitted or cites:

- A declaration from a former Novell employee attesting to his understanding of the intent of the parties to the APA (Opp. at 14-16; Ex. 4 to Opp.);

- The Bill of Sale between Novell and The Santa Cruz Operation, Inc. (Opp. at 9; Ex. 1 to Opp.);

- A "Technology License Agreement" (Opp. at 11-13; Ex. 2 to Opp.);

- Additional documents that are cited in the brief but not attached as exhibits: an "Intellectual Property Assignment" between The Santa Cruz Operation, Inc. and Caldera and "hundreds of license agreements for UNIX products" (Opp. at 14.);

- Public statements allegedly made by Novell executives that are not cited in the Amended Complaint (Opp. at 11-12; Ex. 3 to Opp.); and

- Copyright notices in "countless UNIX-related products" (Opp. at 14.).

By relying on material outside the pleadings, SCO has invited the Court to convert Novell's motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b); *David v. City of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996); *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986); *Jane L. v. Bangerter*, 794 F. Supp. 1537, 1539 (D. Utah 1992), *rev'd in part on other grounds*, 61 F.3d 1493 (10th Cir. 1995); Wright & Miller, *Federal Practice and Procedure* (2004) § 1366 at 153-55 (noting that it is a tactical mistake for plaintiff to introduce material beyond the pleadings in response to motion to dismiss, as motion "will be converted into a motion for summary judgment and may result in a binding final determination against [the plaintiff]").

SCO's decision to go outside the pleadings permits conversion of this motion even though SCO is not the moving party. *See, e.g., Arnold v. Air Midwest, Inc.*, No. 93-2426-JWL,

1994 WL 247442, at *4 (D. Kan. May 24, 1994) (applying summary judgment standard even though movant relied solely on pleadings because non-movant attached outside materials to its response) (attached hereto as Ex. 1), *aff'd by* 100 F.3d 857, 859 (10th Cir. 1996) (upholding conversion of defendant's motion to dismiss into motion for summary judgment based on plaintiff's reliance in opposition to motion on materials outside complaint). *See also Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492 n.4 (10th Cir. 1993). SCO's decision also places it on constructive notice that Novell's motion may be converted into a motion for summary judgment and obviates the need for any further notice to SCO. *See Rockwell*, 7 F.3d at 1495-96 (explaining that the notice requirements of Rules 12(b) and 56(c) are met where party attaches outside materials to its brief and triggers conversion of motion). SCO therefore has no basis for claiming "unfair surprise." *See Arnold*, 100 F.3d at 859 n.2; *Nichols*, 796 F.2d at 364.

Accordingly, the Court may and should resolve Novell's motion by applying the summary judgment standard. Alternatively, the Court is within its discretion to exclude the extensive material outside the record that SCO cited, in which case this motion will remain a motion to dismiss. Novell will nevertheless be entitled to dismissal.[2]

---

[2]    SCO's assertion that Novell waived its right to move for dismissal based on the absence of malice is contradicted even by the case SCO cited. (Opp. at 21-24.) District courts frequently hear subsequent Rule 12 motions where such motions are not interposed for delay or harassment. *See Thorn v. N.Y. City Dep't of Social Servs.*, 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y. 1981) (cited by SCO in Opp. at 23) (stating that despite the consolidation language of Rule 12(g), "the court will entertain the [second motion to dismiss] because it was not interposed for delay, and its consideration will expedite the disposition of the case on the merits"); *Donnelli v. Peters Secs., LLC*, No. 02-C-0691, 2002 WL 2003217, at *3-4 (N.D. Ill. Aug. 29, 2002) (attached hereto as Ex. 2); *Steele v. Stephan*, 633 F. Supp. 950 (D. Kan. 1986).

As its moving papers make clear, Novell did not undertake this motion for purposes of delay. Novell's motion was triggered by the Court's conclusions that Novell's ownership position had legal merit, and its observation that the ownership issue also affected the question of malice. Novell's motion links these two concepts together, and asks the Court to conclude that Novell cannot have acted with malice where, among other things, the Court has concluded that Novell's legal position is meritorious.

Of course, if the Court converts Novell's motion to dismiss into a motion for summary judgment, waiver is a non-issue. *See, e.g., Robben v. Runyon*, No. 96-1154-JTM, 1998 WL 92237, at *5 (D. Kan. Feb. 25, 1998) (Rule 56 motion may be heard on issues omitted from a Rule 12 motion) (attached hereto as Ex. 3).

4

sf-1805054

## II. ON SUMMARY JUDGMENT, THE COURT SHOULD FIND FOR NOVELL BECAUSE SCO HAS NOT SHOWN A GENUINE ISSUE OF MATERIAL FACT ON NOVELL'S PRIVILEGES.

Upon conversion of Novell's motion into a motion for summary judgment, SCO's unsupported assertions of fact in its pleadings and briefing are to be given no weight. A triable issue can be created only from admissible evidence, not from conclusory allegations contained in pleadings and briefs. Fed. R. Civ. P. 56(e); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002); *Bruce v. Martin-Marietta*, 544 F.2d 442, 445 (10th Cir. 1976).

SCO's evidence is insufficient to create a triable issue of fact whether Novell is protected by the rival claimant and common interest privileges, and whether Novell acted with malice or excessively published its statements.

### A. There Is No Triable Issue Whether Novell's Statements Are Privileged.

Novell's Motion to Dismiss set forth the following factual basis for its contention that it is protected by the rival claimant and common interest privileges:

- SCO publicly claimed ownership of the UNIX copyrights in its suit against IBM. (Declaration of David E. Melaugh In Support of Novell, Inc.'s Motion to Dismiss filed August 8, 2004 ("Melaugh Decl."), Exs. A-B.) Thousands of articles have been written about this controversy. (Melaugh Decl. ¶¶ 4-5 & Exs. C-D.)

- SCO has initiated or is defending itself in at least six lawsuits before five judges in four states and two countries, has threatened 1,500 "of the world's largest corporations" with liability, and has implied that *all* Linux users infringe on SCO's ownership rights. (*See* Novell, Inc.'s Motion to Dismiss filed on August 8, 2004 ("Mot. to Dismiss"), at 4.)

- In its May 28, 2003, press release, Novell stated that SCO had asked Novell to transfer the copyrights to it and that to its knowledge the APA did not transfer the UNIX copyrights to SCO. (Amended Complaint filed July 9, 2004 ("Am. Compl."), ¶ 19(a); Declaration of Bruce Lowry In Support of Novell, Inc.'s Motion to Dismiss Filed August 8, 2004 ("Lowry Decl."), Ex. A.)

- Shortly thereafter, SCO sent Novell a copy of Amendment No. 2. (Am. Compl. ¶ 19(b); Lowry Decl. Ex. B.)

- On June 6, 2003, Novell issued a statement saying that Amendment No. 2 "appears to support" SCO's claim of ownership. (Am. Compl. ¶ 19(c); Lowry Decl. Ex. C.)

- The parties then exchanged private correspondence in which Novell asserted that Amendment No. 2 had not effected a transfer and invited SCO to articulate its ownership position. (Am. Compl. ¶¶ 19(d)-(f); Lowry Decl. Exs. D-F.) The record is devoid of any meaningful response from SCO.

- SCO publicly claimed that Novell was no longer asserting ownership of the UNIX copyrights. (*See* Mot. to Dismiss at 9 n.4.)

- SCO registered its claims to the UNIX copyrights with the U.S. Copyright Office. (Am. Compl. ¶ 3.)

- Novell registered its claims to the UNIX copyrights with the U.S. Copyright Office. (Am. Compl. ¶ 19(g).)

- Novell publicly announced that it still believed that it owned the UNIX copyrights. (Am. Compl. ¶ 19(i); Lowry Decl. Ex. H.)

These facts, which SCO's Opposition did not controvert, demonstrate that Novell was a rival claimant to the UNIX copyrights and that Novell directed its statements at the wide community that was interested in SCO's claims. (Mot. to Dismiss at 15-21.) Accordingly, there is no triable issue whether Novell qualifies for the rival claimant and common interest privileges.

Instead of contesting Novell's factual showing, SCO's Opposition argues that the privilege does not exist under Utah's slander of title law. (Opp. at 37.) SCO says its argument "derive[s] from the Restatement of the Law on Torts." (*Id.*)

In fact, as our opening brief explains, the Restatement explicitly provides for these privileges and applies them to slander of title claims. *Restatement (Second) of Torts* at §§ 594-96, 646A, 647, 650 (1977); *see* Mot. to Dismiss at 16-17, 20-21. To accept SCO's

6

argument, the Court would have to find that in this area Utah would not adopt the Restatement, even though Utah courts generally look to the Restatement and have applied other privileges detailed in the Restatement to slander of title claims. *See, e.g., Hansen v. Kohler*, 550 P.2d 186, 189-190 (Utah 1976) (citing Restatement and finding absolute privilege to slander title during judicial proceedings). SCO advances no argument why Utah would depart from the Restatement in this particular instance.

Even *Dowse*, the Utah case on which SCO relies most heavily, does not say what SCO contends—that a privilege can never defeat a slander of title claim because malice is an element of a slander of a title claim, or that "the absence of privilege" is simply "the existence of malice." (Opp. at 37.) Instead, in a portion not quoted by SCO, *Dowse* states that there *is* a privilege in slander of title law: "[T]he fact that an act [of publication] will necessarily result in harm to another and is not done for a purpose of sufficient importance to give the [publisher] a privilege to do it is expressed in the Restatement by saying that the act is done without a privilege to do it." *Dowse v. Doris Trust Co.*, 208 P.2d 956, 958 (Utah 1949). Thus, under *Dowse*, a privilege exists where the publisher is making the statement for a purpose of sufficient importance.

SCO advances no argument why, if the Restatement's view of the privileges applies, Novell has not demonstrated these privileges' initial applicability to Novell's statements. The uncontroverted facts demonstrate that Novell was conditionally privileged in communicating its ownership position to the community that shared its interest in the ownership issue. *See, e.g., Fischer v. Bar Harbor Banking & Trust Co.*, 857 F.2d 4 (1st Cir. 1988); *Restatement (Second) of Torts* §§ 596, 647 (1977).

### B.    SCO Has Not Shown a Triable Issue Whether Novell Made Statements With Malice Or Excessively Published Its Statements.

In order to overcome Novell's conditional privileges, SCO must show that there is a triable issue whether Novell made its statements with malice or that Novell excessively published these statements.

7

Having argued that the conditional privileges do not exist in Utah, SCO does not address what level of malice—"actual malice," that is, spite, ill-will or hatred, or merely a knowing falsehood—is required to overcome the privileges.[3] The logical corollary to the existence of the privileges as affirmative defenses to a claim of slander of title is that the level of malice required to overcome the privileges should be higher than a mere knowing falsehood, which, as the Court noted, is required to state a slander of title claim. (Order at 5.)

As we noted in our opening brief, however, the Court need not decide this issue, as SCO cannot meet its burden under either standard. (Mot. to Dismiss at 22 n.8.) SCO has failed to present sufficient evidence to create a genuine issue of material fact with respect to either level of malice. The same is true for excessive publication.

SCO's Opposition does not present any evidence that creates a genuine issue of material fact on ill will, spite, or hatred. SCO does not dispute that the allegedly slanderous statements themselves are, as we said in our opening brief, "a model of equanimity" and evidence no malice. (*Id.* at 25.)

SCO instead expends considerable effort rehashing its argument that Novell transferred the UNIX copyrights, and thereby acted based on a knowing falsehood. The question Novell's motion presents, however, is not who owns the UNIX copyrights, but whether, in light of the apparent strength of Novell's legal arguments on ownership, Novell can be said to have acted

---

[3]    SCO's discussion of the types of malice is directed to a different question: which level of malice is required to make out a claim of slander of title in the first instance. (*See* Opp. at 26 n.13.) SCO cites *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 155 & n.5 (S.D.N.Y. 1983), for the proposition that ill will, spite or hatred can be inferred from a knowing falsehood. *Charles Atlas* does not so hold; rather, after a lengthy discussion of the difficulty of the actual question facing the court, the court opines in *dicta* on a related question and states, "It also seems that, if the plaintiff proved that the defendant knew the falsity of the statements or if it proved that the statements were made with recklessness, malice, and intent to injure the plaintiff, ill will, spite, or hostility could be inferred." *Id.* at 150 n.5. Moreover, *Charles Atlas* is a slander case, not a slander of title case.

When discussing overcoming a conditional privilege, SCO does not distinguish among the various levels of malice or the interplay between the malice necessary to make out a slander of title claim in the first instance and the malice necessary to overcome a conditional privilege. (*See* Opp. at 37 n.20.)

8

with malice. In order to prevail on this motion, SCO must come forward with some evidence showing that there is a genuine issue of material fact on *this* question. As discussed in more detail below, SCO also has not presented such evidence.

### 1.  Novell's Uncontroverted Facts Demonstrate the Absence of a Knowing Falsehood.

Aside from the text of the APA and Amendment No. 2, discussed below, several facts Novell presented in its opening papers—facts that are uncontroverted by SCO—demonstrate that Novell could not have disseminated a knowing falsehood:

- In its May 28, 2003, press release, and in correspondence with SCO that Novell included in the release, Novell confirmed that SCO had recently asked Novell to transfer the copyrights to SCO. (Lowry Decl. Ex. A.)

- In its correspondence with SCO, Novell asserted its position that Amendment No. 2 did not effect a transfer of the UNIX copyrights, and asked SCO to explain how Amendment No. 2 could have effected such a transfer. (Lowry Decl. Exs. A & F.) The record is devoid of any response from SCO providing such an explanation.

These facts, even standing alone, are sufficiently powerful to defeat a claim of knowing falsehood. SCO's then-recent request to Novell to transfer the UNIX copyrights to SCO represented an acknowledgement by SCO that Novell owned the copyrights. Obviously, SCO did not have some document in its files or other proof that established that it owned the copyrights; otherwise, it never would have asked Novell to transfer.

For SCO now to claim that Novell perpetrated a knowing falsehood actually points the finger in the wrong direction. SCO asked for a transfer, Novell refused, and then SCO asserted that it owns the copyrights anyway. It thus is more likely that SCO made a knowingly false claim than Novell.

Novell's correspondence with SCO and the absence of a meaningful response from SCO also negate an inference of knowing falsehood. Novell conducted due diligence on its ownership claim by inviting SCO to lay out the basis for SCO's ownership. If SCO held incontrovertible

sf-1805054

evidence of ownership, it could have and should have come forward with it during that period of time. Novell did what *it* should have done: it engaged SCO and sought the basis of its claim to the UNIX copyrights. SCO can claim no misconduct in the face of this factual record.

### 2. The Asset Purchase Agreement Does Not Demonstrate a Knowing Falsehood.

SCO has retreated from the position, advanced in its briefing on the Motion to Remand and the first Motion to Dismiss as well as in its Amended Complaint, that the APA, *as amended*, transferred the UNIX copyrights from Novell to SCO's predecessor. (Plaintiff's Mem. in Opp. to Def.'s Mot. to Dismiss, filed March 4, 2004, at 7, 8 (repeatedly referring only to "Asset Purchase Agreement, as amended"); Am. Compl. ¶ 1 (claiming that APA "as amended" transfers copyrights).) SCO's main argument in opposition to this motion is now that the APA, *standing on its own*, acted to transfer the UNIX copyrights from Novell to The Santa Cruz Operation, Inc., and that this should have been so clear to Novell as to give rise to an inference of malice. (Opp. at 7-9.)

As the Court has already observed, however, SCO cannot overcome the actual language of the APA:

> Under the APA, Novell agreed that on the Closing Date (December 6, 1995) it would assign all assets on Schedule 1.1(a) but that it would transfer no assets listed on the Excluded Assets schedule, Schedule 1.1(b). There is no dispute that all copyrights were excluded on Schedule 1.1(b) and, therefore, no copyrights transferred on the Closing Date under the terms of the APA.

(Order at 8.) This language is unambiguous, and leaves no room for SCO's argument that the APA transferred ownership, and certainly not for SCO's argument that Novell knew that the APA had transferred ownership when Novell made its ownership claim. Indeed, in the Order, the Court drew precisely the opposite conclusion, observing that "[i]t is undisputed that the APA did not transfer any copyrights." (*Id.*)[4]

---

[4] In an apparent effort to argue that the Court's Order was without legal support, SCO cites nearly a dozen cases that, SCO argues, compel the conclusion that the APA, standing alone,

(Footnote continues on next page.)

sf-1805054

SCO evidently has not yet settled on what legal theory to advance in claiming ownership of the UNIX copyrights. Novell cannot be charged with making a knowingly false statement when SCO's legal theories change from month to month.

### 3.    The Bill of Sale Does Not Modify the APA.

The Bill of Sale does not alter the conclusion that the APA effected no copyright transfer. Rather, the Bill of Sale incorporates by reference the APA provisions the Court has already evaluated in favor of Novell.[5]

The Bill of Sale addresses the transfer of "Assets" and specifies that this capitalized term takes its definition from the APA. (Opp. Ex. 1 at ¶ 1.) The APA defines "Assets" as those properties set forth in Schedule 1.1(a) and not excluded on Schedule 1.1(b). (APA § 1.1(a).) As the Court has already correctly found, Schedule 1.1(b) excludes all copyrights. (Order at 8.) The Bill of Sale also expressly provides that "Nothing in this Bill of Sale shall limit, expand or otherwise affect any of the representations, warranties, *agreements* or covenants contained in the [APA]." (Opp. Ex. 1 at ¶ 5 (emphasis added).) Thus, the Bill of Sale has no effect on the ownership issue underlying SCO's slander of title claim.

Hence, as with the APA, the Bill of Sale does not constitute evidence of malice on Novell's part. Indeed, as Novell explained in its earlier briefing on ownership, the opposite is true. Relying on Section 204(a) of the Copyright Act, Novell points to the absence of a post-Amendment No. 2 bill of sale in support of its legal position that no transfer of copyrights

---

(Footnote continued from previous page.)

transfers the UNIX copyrights. (Opp. at 7-9.) Individual rebuttal of these cases is unnecessary, as none hold that a contract transferring assets that explicitly excludes copyrights can somehow act to transfer such rights.

[5] SCO notes that the Bill of Sale document was not before the Court on Novell's initial motion, but overlooks Novell's reference to it in the briefing. (Opp. at 9.) Novell's motion to dismiss noted the existence of a "closing document that transferred the assets promised to the buyer under the APA," and reported that this document (the Bill of Sale) takes its definition of assets from the APA. (Mem. in Supp. of Mot. to Dismiss, filed February 9, 2004, at 8 n.2.)

sf-1805054

occurred pursuant to Amendment No. 2. Section 204(a) requires a *post-Amendment No. 2* bill of sale or similar "instrument of conveyance," and SCO has not produced such a document.

### 4.    The TLA and Paragraph 1.6 of the APA Are Consistent With Novell's Ownership Position.

SCO claims that the "license back of assets" contemplated by a provision in the APA and by a separate Technology Licensing Agreement (Opp. Ex. 2, "TLA") support its ownership claims and demonstrate malice on Novell's part. Neither the relevant provision of the APA nor the TLA refer to "copyrights," however, let alone "UNIX copyrights." Instead, like the Bill of Sale, these documents refer to "Assets" or "Licensed Technology"—terms that are defined by the inclusions and exclusions of Schedules 1.1(a)-(b) and that therefore cannot act to convey the UNIX copyrights.

Section 1.6 of the APA contemplates an agreement licensing back to Novell not only "all of the technology included in the Assets" (which does not include the UNIX copyrights but does, under the definition of "Assets" in Schedule 1.1(a), include "technical . . . information concerning UNIX, including source code") but also "all derivatives of the technology included in the Assets." The APA then defines that "licensed back technology" as the "Licensed Technology." (APA § 1.6.)

The TLA, in turn, incorporates by reference the APA's definition of "Licensed Technology." (TLA § I ("The term[] . . . 'Licensed Technology' . . . shall have the respective meanings attributed to such terms in the Asset Purchase Agreement.").) It provides that Novell "retains" certain licenses to the Licensed Technology. (TLA § II.A.) It states that, as between Santa Cruz and Novell, ownership of Licensed Technology shall reside in Santa Cruz. (TLA § III.)

In its Opposition, SCO inquires as to the purpose of such provisions if not to license back the UNIX copyrights that, therefore, must have been assigned to Santa Cruz. (Opp. at 11-12.) Implicit in this inquiry is the assumption that the only relevant form of intellectual property is the UNIX copyrights. This assumption is wrong on two fronts. First, the APA transferred a variety

12

of assets that can be licensed back, including technical information and the UNIX source code. Second, Section 4.18 of the APA conveys to Santa Cruz the right and duty to develop a "Merged Product." Santa Cruz was thus to undertake additional development work; as the author of that additional work, Santa Cruz would own intellectual property rights—including copyrights—in the derivative work. Under the TLA, Santa Cruz licensed all of those rights back to Novell with certain limitations. Providing for such a "grant back" license is in no way inconsistent with Novell retaining ownership of UNIX copyrights; indeed, the two mesh perfectly: Novell retained ownership of the UNIX copyrights, and retained a grant back license of all other rights it transferred to SCO, including those rights that arose from SCO's creation of derivative works.

To sum up: under the APA and the TLA, Novell retained ownership of the UNIX copyrights but transferred ownership of UNIX technology such as source code to Santa Cruz; under the TLA, Novell retained a grant back license of the UNIX technology it sold to Santa Cruz and the derivative works that Santa Cruz created. Far from reinforcing SCO's claim that the APA transferred to Santa Cruz the UNIX copyrights, and that Novell is maliciously arguing to the contrary, the TLA reinforces the basic ownership structure of the APA and buttresses Novell's position that it retained UNIX copyright ownership.

### 5. SCO Has Retreated From Arguing That Amendment No. 2 Evidences Malice.

SCO's Opposition says little about Amendment No. 2. Mr. Chatlos does not mention it. Instead, SCO merely recites the language of the Amendment, asserting that it "reaffirms" the transfer effected by the APA. (Opp. at 10.) As the Court has already found, the APA alone did not transfer any copyrights. SCO's assertion that Amendment No. 2 "reaffirmed" that the APA transferred the UNIX copyrights therefore must also fail, and cannot be given any weight here.[6]

---

[6] Even if SCO had not retreated from its original position that the APA *as amended* transferred the copyrights, SCO would not survive summary judgment. The most SCO can muster from the amended APA is ambiguity. (*See, e.g.,* Order at 9-10 ("There is enough ambiguity in the language of Amendment No. 2 that . . . it is questionable whether [it] was meant to convey the required copyrights or whether the parties contemplated a separate writing to actually transfer the

(Footnote continues on next page.)

SCO's Opposition also relies heavily on a supposed admission of SCO's ownership in Novell's June 6, 2003, press release, but in doing so SCO ignores the careful wording of the release. (Opp. at 33-34.) In the release, Novell stated merely that Amendment No. 2 *"appears to support"* SCO's view that certain copyrights transferred to Santa Cruz. Stating that a document "appears to support" a claim is not an admission of the claim. Rather, "appears to support" means that, on its face, the document may favor SCO, but that Novell reserved judgment about whether there is other evidence or analysis that goes the other way. What Novell did *not* say in the press release is that it now agreed with SCO's claim of ownership; Novell merely commented on this particular piece of evidence and noted that it appeared to favor SCO's view. In response to SCO's demand for immediate comment, Novell provided a conditional, preliminary evaluation of the Amendment, and did not admit SCO's ownership.

### 6.    Novell's Post-Sale Conduct Does Not Evidence Malice.

SCO's Opposition cites a variety of post-sale conduct that SCO argues supports its claim to the UNIX copyrights. (Opp. at 13-14.) Of the five items SCO cited, however, three are conduct by *SCO.* (*Id.* (citing SCO's shipment of products, its entry into license agreements and the alleged transfer of copyrights between various entities).) SCO provides no explanation as to how its unilateral conduct can act to transfer Novell's rights.

Of the remaining two, one is an alleged transfer of the "physical possession of UNIX copyrights." (Opp. at 14.) It is unclear what SCO means by this. Because SCO has presented no admissible evidence in support of this statement, it must be disregarded for the purposes of summary judgment.

The remaining item of "post-sale conduct" is Novell's alleged silence. As SCO well recognizes, Novell was not silent regarding the issue of ownership of the copyrights.   As

---

(Footnote continued from previous page.)

copyrights after the 'required' copyrights were identified.").)   While ambiguity was enough to survive a motion to dismiss on falsity, it is not enough to ground a claim that Novell acted with malice in asserting its rights.

mentioned above, Novell stated in its May 28, 2003, press release that SCO requested that Novell transfer the copyrights to it, and Novell refused to do so.

Besides ignoring that Novell refused SCO's requests for transfer of the copyrights, SCO does not allege or show that Novell had, until recently, any reason to contest copyright ownership. During much of this alleged silence, Santa Cruz was apparently directing its energies toward the activities contemplated under the APA—developing and licensing a "Merged Product." SCO then bought UNIX assets from Santa Cruz and changed the focus of the company: from developing products to launching its well-publicized lawsuits and licensing demands. It is the change of ownership of the UNIX business and the associated change in strategy that brought the UNIX copyright ownership issues to the fore. Under these circumstances, no triable issue of fact arises from Novell's alleged "silence."

Finally, the evidence SCO offers is legally irrelevant. In *Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933 (N.D. Cal. 1992), the plaintiff, presented with a contract that on its face transferred no copyrights, attempted to resort to allegedly corroborating documents and conduct to save its claim. *Id.* at 936-37. The Court held that Section 204(a) of the Copyright Act precludes such an effort. *Id.* at 938.

SCO's citation to Novell's purported silence does serve, however, to justify the very Novell statements SCO claims are slanderous. If, as SCO appears to claim, silence should be read as an affirmation of SCO's property claims, Novell's statements were appropriate to avoid a claim of waiver.

### 7.    The Chatlos Declaration Does Not Support SCO's Theory.

SCO submits the declaration of Mr. Ed Chatlos to show that Novell is now maliciously claiming UNIX copyright ownership, when supposedly it never thought at the time of the APA that it was retaining such ownership. SCO's effort is unavailing.

First, as discussed above, the APA is clear on its face and is therefore in no need of Mr. Chatlos's testimony on the parties' intent. Indeed, the California parol evidence rule would bar

consideration of the Chatlos Declaration to support SCO's interpretation of the APA because the agreement is not susceptible to the interpretation SCO offers.[7]

Second, even if the parties' intent were relevant, Mr. Chatlos does not claim that he had a role in actually drafting any of the language of the APA, let alone the provisions currently under dispute. It is not clear from Mr. Chatlos' declaration whether he even read the APA at the time of the transaction. Moreover, contemporaneous, authoritative documentary evidence shows that at the highest levels of the organization, Novell approved the transaction on the understanding that "Novell will retain all of its . . . copyrights." (September 18, 1995, Minutes of the Meeting of the Board of Directors of Novell, Inc. at 2, attached as Ex. A to Declaration of Kellie Carlton in Support of Novell, Inc.'s Motion to Dismiss.) This renders Mr. Chatlos' "belief" as to what he would have known (Chatlos Decl. ¶ 10) of no evidentiary impact.

———————————————

Far from showing malice, the foregoing evidence negates any showing of malice, whether of the ill will, spite, or hatred or knowing falsehood varieties. This is an ownership dispute, and all the evidence shows that Novell was more than reasonable in asserting its ownership position. Indeed, reviewing the record, one single uncontroverted fact is enough to defeat SCO's claim: that SCO asked Novell to transfer the copyrights to it. Novell cannot have acted with malice when SCO's request would lead Novell reasonably to believe that Novell—and not SCO—owned the UNIX copyrights.

———————————————

[7] The APA is an integrated agreement governed by California law. (APA §§ 9.5 & 9.8.) Under the California parol evidence rule, extrinsic evidence is inadmissible to contradict the written terms of the agreement. Cal. Civ. Proc. Code § 1856 (parol evidence inadmissible to contradict written contract). Though such evidence may be "offered to prove a meaning to which the language of the instrument is *reasonably susceptible*," here there is no way to interpret "[a]ll copyrights" in the Excluded Assets schedule as "only Netware copyrights," as SCO urges. (Opp. at 10; *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37 (1968) (emphasis added).)

sf-1805054

C.    **SCO Has Not Shown a Triable Issue of Fact on Excessive Publication.**

Novell does not dispute that excessive publication may overcome the privileges it has asserted. SCO has failed, however, to present admissible evidence on the issue of excessive publication sufficient to negate Novell's privileges.

1.    **SCO Misstates the Law Applicable to Excessive Publication in the Context of Slander of Title.**

SCO argues that no qualified privilege is available to Novell where Novell (even together with SCO) made its statements publicly. SCO cites several cases for the general proposition that "the defense of a qualified privilege does not extend to a publication to the general public." (Opp. at 39 (citing *Knudsen v. Kansas Gas & Elec. Co.*, 807 P.2d 71, 79 (Kan. 1991); *Thomas v. St. Luke's Health Sys., Inc.*, 869 F. Supp. 1413, 1443 (N.D. Iowa 1994); *Adserv Corp. v. Lincecum*, 385 So.2d 432, 435 (La. Ct. App. 1980); *Owens v. Scott Publ'g Co.*, 284 P.2d 296, 304 (Wash. 1955)).)

These are not slander of title cases, however, and they thus concern the elements of different privileges in different contexts. The extent of publication is not an *element* of the privileges asserted by Novell; it is relevant only to the question of *abuse* of the privileges. *See Restatement (Second) of Torts* § 604 (1977). Moreover, none of these cases involved the fact pattern here, where Novell, the defendant, responded publicly concerning a dispute that SCO, the plaintiff, had first made public. In fact, SCO cites to no cases that are on all fours with the current dispute over UNIX copyright ownership.

The issue, therefore, is whether through excessive publication Novell lost the protection of its conditional privileges. Under Utah law, whether or not a publisher has abused the conditional privileges by excessive publication necessarily depends on the level of publication of the claim to which it responds. Excessive publication is defined as publication to "more persons than the scope of the privilege requires *to effectuate its purpose*." *DeBry v. Godbe*, 992 P.2d 979, 985 (Utah 1999) (*citing Brehany v. Nordstrom*, 812 P.2d 49, 58 (Utah 1991) (emphasis added)). The Restatement puts it as follows:

17

> One who, upon an occasion giving rise to a conditional privilege
> for the publication of defamatory matter to a particular person or
> persons, knowingly publishes the matter to a person to whom its
> publication is not otherwise privileged, abuses the privilege *unless
> he reasonably believes that the publication is a proper means of
> communicating the defamatory matter to the person to whom its
> publication is privileged.*

*Restatement (Second) of Torts* § 604 (1977) (emphasis added). In other words, if a party chooses

a means of publication that he reasonably believes is the proper means of communicating his

privileged statement to those who need to know it, the statement is privileged. This is so even if

the statement reaches people other than those who need to know it. The law thus protects Novell

if it acted reasonably under the circumstances.

### 2. Undisputed Facts Preclude SCO From Carrying its Burden to Show Excessive Publication.

SCO bears the burden of showing that there is a triable issue of fact on the excessive

publication issue. In order to do so, it must adduce some evidence in its favor. As Novell

discussed at length in its Memorandum, SCO began this public controversy by suing IBM based

on SCO's claims to the UNIX copyrights. (Melaugh Decl. Ex. A (*SCO v. IBM* complaint).)

SCO has done nothing but stir that controversy since its inception. (Mot. to Dismiss at 3-5.)

In its Opposition, SCO makes no effort to contest these facts, and has therefore conceded

that: (i) this controversy is public; and (ii) the public nature of this controversy is SCO's own

doing.

Novell's Motion also made clear that SCO has taken public actions directly adverse to

Novell's property interests. On June 26, 2004, in a private letter to SCO, Novell stated, "SCO's

statements [claiming to own 'the patents, copyrights, and core technology associated with the

UNIX system'] are simply wrong." (Am. Compl. ¶ 19(e); *see also* Lowry Decl. Ex. E.)

Notwithstanding this and other private communications asserting Novell's rival claim,

SCO's CEO stated in an interview on July 21, "If you go talk to Novell today, I'll guarantee you

what they'll say, which is they don't have a claim on those copyrights." (Mot. to Dismiss at 9

n.4.) SCO does not dispute the text of Novell's private correspondence or the contradictory

18

public statements of its CEO. SCO falsely told the world Novell had acceded to SCO's position; Novell really had no choice but to tell its side of the story.

SCO has presented no evidence to counter Novell's evidence showing that SCO's assertion of its rival claim was itself widely public. All SCO has presented is the argument that "Novell could have preserved its claim . . . simply through its filings with the U.S. Copyright Office." (Opp. at 40.) This is a concession that Novell's filings with the Copyright Office—which SCO alleges constitutes several of the allegedly slanderous statements—were not excessively published. (Am. Compl. ¶ 19(g)-(h).)

That aside, whether or not Novell "could have preserved its claim" in a manner other than the one it chose is not an element of *abuse* of the conditional privileges Novell has asserted. *See Restatement (Second) of Torts* § 604 (1977). Where public statements of ownership are made in response to equally public rival claims of ownership, those public statements cannot be said to have been excessively published. *See, e.g., Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1563 (4th Cir. 1994) ("The reply must reasonably focus on the audience which heard the attack. . . . [W]here the original attack was widespread, the response can be widely disseminated as well.").

Novell has conclusively established that the ownership of the UNIX copyrights was a public issue, that SCO made public its assertions of ownership of the UNIX copyrights, and that Novell was a rival claimant to those copyrights. Applicable law permits Novell to make a rival public claim to counter an equally public contrary claim.

Given these facts and this governing law, there can be no genuine issue of material fact whether Novell excessively published its assertions of ownership of the UNIX copyrights.

III.    **EVEN IF THE COURT DOES NOT CONVERT THE MOTION, NOVELL IS NEVERTHELESS ENTITLED TO DISMISSAL.**

The Court is within its discretion to exclude the extensive material outside the record that SCO cited, in which case this motion will remain a motion to dismiss. Novell is nevertheless entitled to dismissal. After ignoring SCO's extraneous material, its related argument, and the

19

Board of Directors meeting minutes Novell has presented in the summary judgment context, the Court is left with the following record properly before it:

- The APA, which on its face excludes copyrights from any transfer of assets. (Order at 8.)

- Amendment No. 2, which itself transfers no copyrights, but which when combined with the APA creates "enough ambiguity" that "it is questionable whether [it] was meant to convey the required copyrights or whether the parties contemplated a separate writing to actually transfer the copyrights after the 'required' copyrights were identified." (Order at 9-10.)

- The text of Novell's statements. (Am. Compl. ¶ 19; Lowry Decl. Exs. A-I.)

- Novell's public statement that SCO contacted Novell seeking a transfer of the UNIX copyrights, and SCO's failure to deny this. (Am. Compl. ¶ 19(a); Lowry Decl. Ex. A.)

- Novell's request that SCO articulate its ownership position, and SCO's failure to meaningfully respond. (Am. Compl. ¶¶ 19(d)-(f); Lowry Decl. Exs. D-F.)

- The existence of a public controversy of SCO's own making. (*See above*, Section II.C.)

- SCO's involvement in other lawsuits, its explicit threats against 1,500 of the world's largest companies, and its implicit threats against the Linux community as a whole. (*Id.*)

This record supports Novell's interposition of the conditional privileges described in Novell's Motion to Dismiss, against which SCO offers only the legal argument disposed of above at Section II. (*See also* Mot. to Dismiss at 15-21.) The burden therefore lies on SCO to overcome these privileges through its mere allegations of "malice."

Once again, the record defeats SCO's pleading. SCO does not dispute that Novell's statements regarding its ownership of the UNIX copyrights are "a model of equanimity." (Opp.

20

at 28.) SCO further acknowledges that a court can sometimes determine from a defendant's public assertion of ownership whether the defendant made the statement maliciously. (Opp. at 28 n.14.) Courts in slander of title cases routinely look to the statements at issue to determine if they were made maliciously. *See, e.g., First Sec. Bank, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1257 (Utah 1989) (after reviewing statements that allegedly slandered plaintiff's title, court found that they "did not malign" plaintiff).

The question Novell's motion to dismiss presents is whether, in view of this record, further inquiry into Novell's subjective intent is necessary. As discussed in more detail below, the persuasive answer is "no."

As noted in our opening brief, SCO advanced the same position when defending against a similar claim brought by Red Hat. (Mot. to Dismiss at 24.) In its Opposition, SCO claims that because its statements were made in the context of a Lanham Act claim, they are irrelevant. (Opp. at 35 n.18.) A more complete examination of that briefing contradicts that characterization.

Red Hat sued SCO, *inter alia*, for trade libel and disparagement based on public statements made by SCO. SCO moved to dismiss all counts. SCO characterized its allegedly disparaging statements as pertaining to "issues of ownership of intellectual property rights [and] public statements of ownership in those rights." (Melaugh Decl. Ex. G at 19 (SCO's Motion to Dismiss Red Hat's Complaint, filed July 22, 2003).) SCO noted, "[T]he press has taken a keen interest in the issues raised in the *SCO v. IBM* case," and described its statements as "part of a wider debate . . . about the scope of intellectual property protection in a digital age." (*Id.* at 27.) SCO cited a string of cases for the proposition that its speech was protected and that dismissal was appropriate. SCO acknowledged that the cases it cited "were decided on motions for summary judgment," but maintained that "based on the facts as presented in Red Hat's Complaint . . . this Court is likewise in a position to rule on the issues of the protected speech as a matter of law on this Motion to Dismiss." (*Id.* at 22 n.18.)

sf-1805054

SCO's effort to distinguish the case law cited in the Motion to Dismiss is similarly unpersuasive. Contrary to SCO's claim, the only Utah slander of title case either party was able to locate on this question—*Timpanogos Highlands, Inc. v. Harper*, 544 P.2d 481, 486 (Utah 1975)—supports Novell's position.

In *Timpanogos*, the plaintiff sought to enforce a contract for the sale of land, and the defendant counterclaimed that the contract had been abandoned and that the plaintiff had slandered the defendant's title. The Utah Supreme Court affirmed the trial court's holding that the contract was abandoned and that the plaintiff therefore had no claim to the property. Nevertheless, the court also affirmed the trial court's dismissal of the slander claim, holding that because the plaintiff "had sufficient basis for believing that it had rights under the contract . . . there is no foundation upon which it could be found that [the plaintiff] willfully and knowingly recorded a false or fraudulent instrument for the purpose of slandering the defendants' title."

The First Circuit in *Fischer*, 857 F.2d at 8, came to a similar conclusion, holding that a defendant was not liable for filing an eventually abandoned lien because it was not "obvious" that the defendant's position was baseless.

SCO attempts to distinguish these cases by pointing out that both decisions came after discovery and were based on the evidence the parties put before the courts. SCO's implication—that the Court's Order finding Novell's position meritorious was based on anything less than sufficient evidence—is erroneous.

The Court has before it a considerable record: all of the documents alleged to have transferred the copyrights and all of the statements alleged to slander. The contracts say what they say, and after reviewing them the Court concluded that the APA alone did not transfer any copyright, that at most the APA as amended may do so, but that Novell has marshaled good arguments in support of the position that the amended APA does not do so. Even assuming that SCO could ultimately convince the trier of fact that any ambiguities in the amended APA should be resolved in its favor, Novell has a legitimate argument that no transfer took place.

22

As Novell also noted in its Motion to Dismiss, courts in analogous circumstances have also held that a plaintiff must demonstrate that the defendant's statements were "objectively baseless" before liability attaches. (Mot. to Dismiss at 24-25.) SCO attempts to distinguish these cases by pointing out that they are merely analogous cases. (Opp. at 35 n.19 (noting that *Professional Real Estate Investors* is not a slander of title case and is instead part of a separate line of federal authority).)[8]

That is not enough. SCO must provide some reason why the analogy does not have persuasive power.

In *Professional Real Estate Investors*, for example, the U.S. Supreme Court found that where a litigant is found to have "probable cause" to assert a claim, no antitrust liability can attach, and that a litigant's "motivations in bringing suit [are] rendered irrelevant by the objective legal reasonableness of the litigation." *Professional Real Estate Investors,* 508 U.S. at 61, 65 (holding that no antitrust liability attaches if "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome").

To hold otherwise would be to permit inquiry into subjective intent in every case and to promote efforts to apply liability, *ex post*, to any unsuccessful litigant. Novell submits that the Court, though declining to dispositively rule on the merits of Novell's rival claim, has essentially found that Novell has "probable cause" to assert such a claim and that the same logic that led the *Professional Real Estate Investors* Court to cut off inquiry into subjective intent applies here.

SCO's effort to distinguish *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002), *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004), and *On Command Video Corp. v. Columbia Pictures Indus., Inc.*, 764 F. Supp. 1372, 1374 (N.D. Cal. 1991), is no more persuasive. Though these cases employ standards like "bad

---

[8] SCO's suggestion that "objectively baseless" is simply another way of saying "false" is incorrect. (Opp. at 35 n.19.) *See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993) (cautioning that ultimately unsuccessful claims—*i.e.*, claims that are proven false—are not automatically objectively baseless).

faith" that suggest the need to inquire into the hearts and minds of the defendants, each court nevertheless found that an objective evaluation of the merits of the defendant's claim was sufficient and declined to inquire into the defendant's subjective motivation.[9]

In the end, SCO claims that all it needs to do in the face of Novell's privileges, the text of the documents, and the Court's interpretation of those documents is utter the word "malice." If SCO's position advocating easy availability of a claim for slander of title is accepted, however, then any party to a property dispute holds such a claim, a point that SCO's Opposition ignores. Indeed, one natural consequence of SCO's view is that *Novell* has a viable claim of slander of title against *SCO*.[10]

The proper way to have resolved this dispute was not with accusations of slander, but rather with a declaratory judgment action, which Novell's Opening Memorandum invited SCO to file. The difference between a declaratory judgment action and dueling slander claims is not trivial. Should the latter progress to discovery—something Novell argues is unnecessary here— both parties will seek material concerning each other's "state of mind," a topic that may implicate complex issues of privilege. As the cases SCO cites in its Opposition illustrate, SCO might even attempt to disqualify opposing counsel. (*See* Opp. at 32 n.17 & Ex. F (*citing Miller v. Colorado Farms*, No. Civ. A 97 WY 2015WD, 2001 WL 629463 (D. Colo. Jan. 16, 2001) (disqualifying counsel in slander of title action because of discovery into party's reliance on

---

[9] *Golan* and *Globetrotter* are, moreover, part of the same line of cases SCO cited for the principle that its motion to dismiss in the Red Hat case should be granted. *See* Melaugh Decl. Ex. G at 20-21 (*citing Mikohn Gaming Corp. v. Acros Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1988)); *Golan*, 310 F.3d at 1370-71 (citing same).

[10] Novell perhaps has a better claim. After all, as shown above, before SCO sued IBM, SCO called Novell to ask for a transfer of the UNIX copyrights. Novell refused, but SCO nevertheless went on to claim that it owns those copyrights. Novell repeatedly advised SCO of its position that SCO did not have the rights it claimed, but SCO persisted in asserting such rights to all who would listen, even falsely claiming that Novell had acknowledged the superiority of SCO's rights.

24

advice of counsel)).[11]   None of this would arise were SCO to have focused on the real dispute between the parties:  who owns the UNIX copyrights.

## CONCLUSION

SCO has had ample opportunity to reframe this dispute properly, but it has failed to do so.  If the Court grants Novell summary judgment, it will end SCO's case.  If the Court declines to convert Novell's motion and treats it as a motion to dismiss, Novell requests that the Court dismiss SCO's Amended Complaint with prejudice.

DATED:        November 8, 2004.

ANDERSON & KARRENBERG

_Thomas R. Karrenberg_
John P. Mullen
Heather M. Sneddon
**Attorneys for Defendant Novell, Inc.**

---

[11] SCO cites these cases to defeat an argument that reliance upon the advice of counsel *alone* would permit Novell to prevail.  (Opp. at 32 n.17.)  Novell never advanced this proposition.

sf-1805054

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _8th_ day of November, 2004, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF NOVELL'S MOTION TO DISMISS AMENDED COMPLAINT** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131


Robert Silver
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504

26

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.