# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **THE SCO GROUP, INC.,**<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>**NOVELL, INC.,**<br><br>　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Civil Case No. 2:04CV139DAK |

　　　　　This matter is before the court on Defendant Novell, Inc. ("Novell")'s motion to dismiss. The court held a hearing on the motion on May 25, 2005. At the hearing, Defendant was represented by Michael A. Jacobs, Thomas R. Karrenberg, and John P. Mullen, and Plaintiff was represented by Edward Normand, Brent O. Hatch and Sean Escovitz. The court took the motion under advisement. The court has considered the memoranda submitted by the parties as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

　　　In its Complaint, SCO brought a single cause of action against Novell for slander of title. SCO alleges that Novell has publicly and falsely represented that it owns the UNIX and UnixWare copyrights and that such false representations have caused it damage.

　　　SCO's predecessor in interest, Santa Cruz Operations Inc., and Novell entered into an Asset Purchase Agreement ("APA") dated September 19, 1995. Under the APA, SCO alleges

1

that its predecessor paid Novell 6.1 million shares of SCO common stock, valued at over $100 million at that time, to acquire from Novell "all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, and all copyrights related thereto."  Compl. ¶ 1.  However, it is unclear under the language of the APA whether the copyrights were transferred.  The court's previous order stated that the APA did not transfer copyrights and that there were serious doubts as to whether any transfer of copyright ownership had occurred.  SCO appeared to acknowledge that during the briefing of the previous motion to dismiss.  However, SCO now appears to argue that copyrights may have transferred under the APA.  In any event, approximately a year later, on October 16, 1996, Novell and SCO's predecessor executed Amendment No. 2 to the APA.  APA Amendment No. 2 amends the Schedule of Excluded Assets to exclude "[a]ll copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the [APA] required for [SCO's predecessor] to exercise its rights with respect to the acquisition of UNIX and Unixware technologies."  *Id.* APA Amendment No. 2.

On May 28, 2003, Jack Messman, Novell's Chairman, President, and CEO issued a press release stating:

> Defending its interests in developing services to operate on the Linux platform, Novell today issued a dual challenge to the SCO Group over its recent statements regarding its UNIX ownership and potential intellectual property rights claims over Linux.
>
> First, Novell challenged SCO's assertion that it owns the copyrights and patents to UNIX System V, pointing out that the asset purchase agreement entered into between Novell and SCO in 1995 did not transfer these rights to SCO.  Second, Novell sought from SCO facts to back up its assertion that certain UNIX System V code has been copied into Linux.  Novell communicated these concerns to SCO via a letter (text below) from Novell Chairman

2

and CEO Jack Messman in response to SCO making these claims. Am. Compl. ¶ 19(a). The letter included the following text: "Importantly, and contrary to SCO's assertions, SCO is not the owner of the UNIX copyrights. Not only would a quick check of U.S. Copyright Office records reveal this fact, but a review of the asset transfer agreement between Novell and SCO confirms it. To Novell's knowledge, the 1995 agreement governing SCO's purchase of UNIX from Novell does not convey to SCO the associated copyrights." The letter also stated that "[w]e believe it unlikely that SCO can demonstrate that it has any ownership interest whatsoever in those copyrights. Apparently, you share this view since over the last few months you have repeatedly asked Novell to transfer copyrights to SCO, requests that Novell has rejected. Finally, we find it telling that SCO failed to assert a claim for copyright or patent infringement against IBM." Finally, the letter stated that "we demand that SCO retract its false and unsupported assertions of ownership in UNIX patents and copyrights or provide us with conclusive information regarding SCO's ownership claims."

On June 6, 2003, SCO sent Novell a letter in which it "brought to Novell's attention Amendment No. 2 to the Asset Purchase Agreement." Am. Compl. ¶ 19(b). SCO threatened to sue Novell for federal securities fraud and demanded an immediate response.

On June 6, 2003, Novell issued a press release stating as follows:

> In a May 28th letter to SCO, Novell challenged SCO's claims to UNIX patent and copyright ownership and demanded that SCO substantiate its allegations that Linux infringes SCO's intellectual property rights. [APA Amendment No. 2] was sent to Novell last night by SCO. To Novell's knowledge, this amendment is not present in Novell's files. The amendment appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996. The amendment does not address ownership of patents, however, which clearly remain with Novell.

Am. Compl. 19(c).

Novell also sent a letter to SCO on June 6, 2003 responding that "[y]our letter contains absurd and unfounded accusations against Novell and others, coupled with a veiled threat to publicly state those allegations in a SCO press call. Novell continues to demand that SCO cease and desist its practice of making unsubstantiated allegations, including the allegations contained in your letter of June 6, 2003."

On June 26, 2003, Novell wrote to SCO stating that SCO's statements regarding the ownership of copyrights "are simply wrong." The Letter further stated that although Amendment No. 2 to the APA appears to support that SCO had the right to acquire some copyrights from Novell, "Amendment No. 2 raises as many questions as it answers" and the copyright transfer question was not clarified by Amendment No. 2 as SCO claimed in it previous press release and as Novell may have appeared to have conceded in its previous press release. The letter states that Novell is "still reviewing the Asset Purchase Agreement and other materials to determine the actual scope of rights transferred to SCO." However, during such review, Novell "wish[ed] to make clear that [it] do[es] not agree with SCO's public statement on this matter." Am. Compl. ¶ 19(e).

SCO subsequently registered its claim to the UNIX copyrights with the United States Copyright Office. Novell responded to this action in a letter dated August 4, 2003. The Letter states that

> We dispute SCO's claim to ownership of these copyrights. The Asset Purchase Agreement, in Schedule 1.1(b), contains general exclusion of copyrights from the assets transferred to Santa Cruz Operation. Amendment No. 2 provides an exception to that exclusion, but only for "copyrights . . . required for [Santa Cruz Operation] to exercise its rights with respect to the acquisition of

4

> UNIX and UnixWare technologies."
>
> In other words, under the Asset Purchase Agreement and Amendment No. 2, copyrights were not transferred to Santa Cruz Operation unless SCO could demonstrate that such a right was "required for [Santa Cruz Operation]" to exercise the rights granted to it in the APA. Santa Cruz Operation has never made such a demonstration, and we certainly see no reason why Santa Cruz Operation would have needed ownership of copyrights in UNIX System V in order to exercise the limited rights granted SCO under the APA. Nor is there any reason to think that a transfer of the copyrights required for SCO to exercise its APA rights necessarily entails transfer of the entire set of exclusive rights associated with a particular copyrighted computer program.
>
> Unless and until SCO is able to establish that some particular copyright is "required" for SCO to exercise its rights under the APA, SCO's claim to ownership of any copyrights in UNIX technologies must be rejected, and ownership of such rights instead remains with Novell.

Am. Compl. ¶ 19(f).

After SCO filed copyright registrations asserting ownership over the UNIX copyrights, Novell then filed applications for its own copyright registrations. Competing registration is allowed by copyright regulations and are filed in circumstances in which a party disputes a prior copyright registration filed by another party. 37 C.F.R. § 202.3(b)(10)(iii). Novell submitted declarations to the Copyright Office for recordation against SCO's UNIX copyright registrations averring that Novell "retains all or substantially all of the ownership of the copyrights in UNIX, including the U.S. Copyright Registration referenced above." Am. Compl. ¶ 19(h).

The declarations stated that Novell became the owner of "all right, title, and interest, including all copyrights" in UNIX, that pursuant to the APA between Novell and SCO "SCO acquired certain rights to carry out the business of licensing of UNIX," that all copyrights were excluded from the assets purchased by SCO in the APA, that pursuant to Amendment No. 2 SCO

5

had a right to designate which copyrights it required to exercise its rights under the APA, and that as of the date of the declaration SCO had not demonstrated that any of the UNIX copyrights owned by Novell were required for it to exercise its rights. Am. Compl. ¶ 19(h). Therefore, Novell declared that it "retains all or substantially all of the ownership of copyrights in UNIX." *Id.*

Once the Copyright Office issued Novell's copyright registrations, Novell made the following press release:

> Novell believes it owns the copyrights in UNIX and has applied for and received copyright registrations pertaining to UNIX consistent with that position. Novell detailed the basis for its ownership position in correspondence with SCO. Copies of our correspondence, and SCO's reply, are available here. Contrary to SCO's public statements, as demonstrated by this correspondence, SCO has been well aware that Novell continues to assert ownership of the UNIX copyrights.

Am. Compl. ¶ 19(i).

Novell also issued a press release on January 13, 2004 in connection with its announcement of a Linux Indemnification Program. The press release states:

> Novell also made available today additional information on the unique contractual and intellectual property rights it holds because of its position in the historical ownership chain of UNIX and UnixWare. These rights include:
>
> • Novell's rights to license UNIX technology pursuant to a Technology License Agreement between SCO and Novell, including Novell's right to authorize its customers to use that UNIX technology in their internal business operations.
>
> • Novell's rights to take action on behalf of SCO under legacy UNIX SVRX licenses pursuant to the Asset Purchase Agreement between SCO and Novell.
>
> • As previously confirmed by Novell, copyright registrations

6

> on UNIX SVRX releases, consistent with Novell's position that it retained ownership of these copyrights.
>
> Copies of relevant correspondence between Novell and SCO are available at http://www.novell.com/licensing/indemnity/legal.html. The rights reflected in these documents are part of the foundation for the indemnification program Novell is announcing today.

Am. Compl. ¶ 19(j).

The Amended Complaint further alleges that at the March 2004 Open Source Business Conference, Novell's Vice Chairman Chris Stone stated that Novell still owns Unix.

## DISCUSSION

### Novell's Motion to Dismiss

This is Novell's second motion to dismiss. The court's Order on Novell's first motion to dismiss required SCO to amend its Complaint to more fully state special damages and denied Novell's motion to dismiss as to the remainder of the elements relating to the slander of title claim. Before analyzing the merits of Novell's motion to dismiss, the court must address two procedural issues raised by the parties. SCO asserts that Novell's motion to dismiss is a successive motion to dismiss which is prohibited by Rule 12(g) of the Federal Rules of Civil Procedure. And, Novell argues that if the court considers the additional materials submitted by SCO, the court must treat its motion as a motion for summary judgment under Rule 12(b) of the Federal Rules of Civil Procedure. If the motion should be converted into a motion for summary judgment then it would not be considered a successive motion to dismiss. Therefore, the court will first determine Novell's argument that the motion to dismiss should be converted to a motion for summary judgment.

1. **Procedural Issues**

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Although the materials submitted by SCO are arguably relevant to the ownership issue, the court concludes that they are not relevant to the court's determination of whether the privileges which Novell asserts apply in this case. The court has already determined that there appear to be valid arguments by both parties and that discovery will need to proceed before the ownership issue could be decided. Therefore, the additional materials submitted by Novell are not dispositive of the ownership issue at this stage of the litigation. Furthermore, the ownership issue does not necessarily need to be decided in order for the court to analyze the privilege issues presented in Novell's motion to dismiss. Because the materials submitted by SCO do not relate to the present motion, the court will not consider them at this time and will not convert the motion to dismiss into a motion for summary judgment. Therefore, the court must address whether Novell's motion to dismiss is an improper successive motion to dismiss.

Under Rule 12(g) of the Federal Rules of Civil Procedure, after filing a motion to dismiss, a party "shall not thereafter make a motion based on the defense or objection so omitted" from its first motion. Rule 12(g) requires that "a party who raises a defense by motion prior to an answer must raise all possible defenses in a single motion. Omitted defenses cannot be raised in a second pre-answer motion." *United States Fidelity & Guar. Co. v. Jepsen*, 1991 WL 249706 at *2 (N.D. Ill. Nov. 14, 1991). Furthermore, under Rule 12(g), "the filing of an amended complaint will not revive the right to present by motion defenses that were available

but were not asserted in a timely fashion prior to amendment." 5A Charles A. Wright, et al. Federal Practice and Procedure § 1388 (3d ed. 1998).

SCO asserts that none of the defenses Novell now alleges became available because of a new matter in the Amended Complaint because its allegations with respect to malice remained the same. A slander of title cause of action requires a plaintiff to establish that "(1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages." *First Sec. Bank of Utah v. Banberry Crossing*, 780 P.2d 1253, 1256-57 (Utah 1989). Novell's present motion involves different elements of the slander of title claim than those addressed in its previous motion. Novell's previous motion to dismiss dealt with falsity and special damages. However, the present motion asserts that dismissal is appropriate because Novell's statements are privileged and because SCO cannot allege malice as a matter of law.

Novell claims that its second motion to dismiss was triggered by the Court's conclusions that Novell's ownership position had legal merit and its observations that the parties' positions regarding ownership also affected the question of malice. Novell's motion links these two concepts together and asks the court to conclude that Novell cannot have acted with malice where the court has concluded that its legal position has merit. Novell also asserts that district courts frequently hear subsequent Rule 12 motions where such motions are not interposed for delay or harassment. In *Thorn v. N.Y. City Dep't of Social Servs.*, 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y. 1981), the court determined that despite the consolidation language of Rule 12(g), "the court will entertain the [second motion to dismiss] because it was not interposed for delay, and its consideration will expedite the disposition of the case on the merits."

The court's previous order on Novell's first motion to dismiss and SCO's motion to remand obviously triggered the filing of Novell's present motion because it acknowledged that there was a substantial question regarding copyright ownership. Even if there was some factual basis for the motion when the prior motion was brought, the motion does not appear to be brought for purposes of delay. In fact, Novell appears to be asserting these issues so that they can be ruled on before further time and money need be spent on other issues in the case. Therefore, whether or not the court's previous order may have triggered the present motion, the court concludes it can properly analyze the merit's of Novell's motion.

**2. Merits of Motion**

Novell moves to dismiss SCO's slander of title claim arguing that certain privileges preclude a slander of title of claim and that SCO cannot demonstrate malice as a matter of law.

**A. Privileges**

Novell argues that two privileges warrant dismissal of this action: (1) a privilege to publicly assert a rival claim to the UNIX copyrights; and (2) a privilege to publish its rival claim to parties with a common interest in the UNIX copyrights. As to the first privilege, Novell asserts that "[t]he law has long recognized that a publication is conditionally privileged if made to protect a legitimate interest of the publisher." *Brehany*, 812 P.2d at 58.[1] This privilege allows "[a] rival claimant . . . to disparage another's property . . . by an assertion of an inconsistent legally protected interest in himself." Restatement (Second) Torts, § 647. This privilege exists so that a rival claimant will not be deemed to have waived his claim by silence. *Id.* Cmt. f. As

---

[1] Novell recognizes that no Utah court has recognized this section of the Restatement, but it argues that Utah courts have adopted other portions of the Restatement applicable to conditional privileges. *See Brehany*, 812 P.2d at 58.

to the second privilege asserted by Novell, Novell claims that "a publication [is] conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know." Restatement (Second) of Torts § 596. Although this section of the Restatement has not been cited by Utah courts, the *Brehany* court acknowledged that "[a] conditional privilege may also protect a legitimate interest of . . . a third person." 812 P.2d at 58. Novell claims that this privilege is applicable because SCO has threatened the open source community with lawsuits based on its claim of ownership in the UNIX copyrights and the Amended Complaint acknowledges that Novell directed its statements to the open source community. Accordingly, Novell argues that it is privileged to inform third parties threatened by SCO of Novell's competing property claim.

SCO argues that Novell cannot cite to any case in which the court considered the application of any privilege to a claim for slander of title. SCO claims that the absence of any such case law correctly reflects the elements of the claim for slander of title under Utah law, which provide that the defendant must have published the matter "without privilege to do so." *Dowse v. Doris Trust Co.*, 208 P.2d 956, 958 (Utah 1049). "The idea expressed . . . by the phrase 'without privilege to do so' is in common legal speech often expressed by the statement that the disparaging matter was published maliciously." *Id.*

The existence of a privilege is a matter of law. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991). "Whether a publication is conditionally privileged is a question of law to be determined by the trial court, unless a genuine factual issue exists regarding whether the scope of the qualified privilege has been transcended or the defendant acted with malice." *Id.* These

11

privileges may be overcome if "the plaintiff pleads and proves facts which indicate actual malice in that the utterances were made from spite, ill will, or hatred toward him." *Combes v. Montgomery Ward & Co.*, 119 Utah 407, 416 (Utah 1951). Because both parties admit that the privileges do not apply if there is a question of fact regarding malice, the court must determine the whether SCO has properly alleged malice.

Under Utah law, the malice element of a slander of title claim may be affirmatively proved or implied by law. *First Security Bank of Utah v. Banberry Crossing*, 780 P.2d 1253, 1257 (Utah 1989). The plaintiff may prove "that the wrong was done with an intent to injure, vex, or annoy," or "because of hatred, spite or ill will." Or, "malice may be implied where a party knowingly and wrongfully records or publishes something untrue or spurious or which gives a false or misleading impression adverse to one's title under circumstances that it should reasonably foresee might result in damage to the owner of the property." *Id.* at 1257.

Novell contends that although SCO's Amended Complaint alleges that Novell's statements were made maliciously and in bad faith, in light of the court's prior order, SCO cannot demonstrate that Novell's statements were knowingly false or that they were made from spite, ill will, or hatred. Novell relies on a defamation case that found a privilege as a matter of law because "conclusory allegations do not state a claim for malice if the facts as alleged cannot otherwise support a finding of malice." *Id.* at 1061-62.. *Echtenkamp v. Loudon County Pub. Schs.*, 263 F. Supp. 2d 1043, 1061-62 (E. D. Va. 2003). Additionally, Novell relies on *Timpanogas Highlands, Inc. v. Harper*, 544 P.2d 481, 486 (Utah 1975), in which the court found that where a party "had sufficient basis for believing that it had rights under the contract . . . there is no foundation upon which it could be found that it willfully and knowingly recorded a

false or fraudulent instrument for the purpose of slandering the defendant's title." Furthermore, in *Fischer v. Bar Harbor Banking & Trust Co.*, 857 F.2d 4 (1st Cir. 1988), the court held that the privilege protects a defendant even when the defendant's assertion of rival ownership is adjudicated to be incorrect if the issue was not so obvious that it can be found that the defendant acted with malice. *Id.* at 8-9.

SCO argues that its Amended Complaint precludes the application of any such privilege because it sufficiently pleads malice and alleges that Novell has exceeded the scope of any otherwise applicable privilege. Under Rule 9(b) of the Federal Rules of Civil Procedure, SCO need only aver a state of mind such as malice generally. Fed. R. Civ. P. 9(b); *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269-70 (10th Cir. 1989) ("In evaluating the sufficiency of plaintiff's allegations, we cannot ignore the plain language of Rule 9(b) of the Federal Rules of Civil Procedure, which permits 'malice, intent, knowledge, and other condition of mind of a person' to be 'averred generally.'").

In this Circuit, a party need not aver any specific facts in support of its general allegations of malice. SCO has alleged that Novell's false public statements regarding ownership of UNIX copyrights were made "intentionally," "maliciously," and "with utter disregard for the truthfulness thereof." Am. Compl. ¶ 25. SCO further alleges Novell's purpose and motivation for making its public statements. For example, SCO's June 6, 2003 letter to Novell stated that SCO had a direct statement from an executive employee at Novell that the timing of Novell's May 28, 2003 press release was intended to coincide with SCO's earnings announcement that occurred later that day. Novell also admitted in its June 6, 2003 press release that Amendment No. 2 was not in its files, but it had been willing to opine on the ownership

issue before it fully investigated the issue. SCO claims that Novell has engaged in this course of conduct because of its new ties to the Linux community and its attempt to cause SCO to lose business.

Unlike claims for slander of title, courts may routinely resolve defamation claims at the motion to dismiss stage because a court can glean from the statement and context itself whether the statement at bar is capable of a defamatory meaning. A court cannot determine from a defendant's public statement of ownership itself whether the claim is false or whether the statement is made maliciously. "[M]alice calls in question a defendant's state of mind and does not lend itself readily to summary judgment." *Lawrence v. Moss*, 639 F.2d 634, 639 (10th Cir. 1981); *see also Church of Scientology In'l*, 238 F.3d 168, 173 (2d Cir. 2001) (noting that even on a claim of defamation that "resolution of the falsity and actual malice inquiries typically requires discovery").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). SCO has made general and specific allegations of malice. Even though Novell argues that it has evidence to support its alleged good faith basis for claiming ownership of the UNIX copyrights, the proper place to introduce that evidence and argue its significance is not on a motion dismiss. Novell argues that based on the court's prior ruling, the issue of who owns the UNIX copyrights is not obvious and Novell therefore cannot be held to have acted with malice in asserting its opinion on that issue. However, the court's prior order would not preclude a finding of malice after fact discovery is complete. The court's prior order was necessarily

limited to the allegations of the Complaint and the attached documents. The court cannot rule as a matter of law on Novell's intent at the motion to dismiss stage before any discovery is considered in the case. Unlike the court's ability to determine the ambiguities of a written contract, the court cannot opine on a party's state of mind when it was advancing certain legal positions. While it may be true that the plausibility of Novell's legal arguments regarding ownership is relevant to its state of mind, the court cannot draw inferences in favor of Novell at the motion to dismiss stage.

Furthermore, the court notes that even if the asserted privileges were applicable, there is an issue regarding whether excessive publication would defeat application of the privileges. "Statements that are otherwise privileged lose their privilege if they are excessively published, that is, 'published to more persons than the scope of the privilege requires to effectuate its purpose.'" *Krouse v. Bower*, 20 P.3d 895, 900 (Utah 2001). The issue of whether there has been excessive publication is a question of fact. *See Brehany*, 812 P.2d at 58. Therefore, the court cannot conclude as a matter of law that any qualified privilege applies to Novell's statements. Accordingly, Novell's motion to dismiss is denied.

## CONCLUSION

For the reasons stated above, Novell's Motion to Dismiss is DENIED.

DATED this 27th day of June, 2005.

                        BY THE COURT:

                        _____
                        DALE A. KIMBALL,
                        United States District Judge