FILED
ORIGINAL

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NOVELL, INC., <br><br> Defendant. | **SCO'S ANSWER TO NOVELL'S COUNTERCLAIMS** <br><br> Case No. 2:04CV00139 <br> Honorable Dale A. Kimball |

Dockets.Justia.com

Plaintiff and counterclaim-defendant, The SCO Group, Inc. ("SCO"), by and through its

counsel, answers the counterclaims of defendant and counterclaim-plaintiff, Novell, Inc.

("Novell"), as follows:

## PARTIES

1.  Admits the allegations of ¶ 1, except denies knowledge sufficient to form a belief as to
    the truth of the allegations of the third sentence of ¶ 1.

2.  Admits the allegations of ¶ 2.

## JURISDICTION

3.  Admits, based on the Court's Order dated June 9, 2004, that the Court has jurisdiction
    over SCO's Amended Complaint.

4.  Admits, based on the Court's Order dated June 9, 2004, that the Court has jurisdiction
    over Novell's counterclaims.

## VENUE

5.  Admits the allegations of ¶ 5.

## FACTS

**A. UNIX**

6.  Admits the allegations of ¶ 6.

7.  Admits the allegations of ¶ 7, except denies the allegation that AT&T transferred to
    Novell only "active" UNIX licensing agreements.

**B. Linux**

8.  Admits that Linus Torvalds purportedly developed the Linux operating system by
    consulting and referring to other materials; admits that numerous other parties have also

contributed to Linux, including parties who wrongfully contributed SCO's UNIX intellectual property; but denies information or knowledge sufficient to form a belief as to the truth of each and every other allegation of ¶ 8.

9. Admits the allegations of the first sentence of ¶ 9, but denies the second sentence of ¶ 9 to the extent it alleges that SCO intellectual property in Linux is legally and properly available to the public.

**C. The Asset Purchase Agreement Between Novell and The Santa Cruz Operation, Inc.**

10. Admits that in 1995, Novell ("Seller") and The Santa Cruz Operation, Inc. ("Santa Cruz") entered into negotiations resulting in the transfer to Santa Cruz of "all of Seller's right, title and interest in and to the assets and properties of Seller relating to the [UNIX and Unixware] Business," including the copyrights in UNIX and Unixware; but denies each and every other allegation of ¶ 10.

11. Admits that Santa Cruz was founded and operated as a UNIX development, porting, distribution, support, and consulting company; and admits the other allegations of ¶ 11.

12. Admits the allegations of ¶ 12.

13. Admits the allegations of ¶ 13.

14. Admits that the APA transferred to Santa Cruz "all of Seller's right, title and interest in and to the assets and properties of Seller relating to the [UNIX and Unixware] Business," including (among other things) the copyrights in UNIX and Unixware, the assignment of thousands of contracts and licenses, and the other assets listed in ¶ 14.

15. Admits that, to help bridge the gap between the purchase price of the UNIX business and the price Santa Cruz could afford, the parties agreed to a narrow exception to the

complete transfer of the UNIX business; that pursuant to this exception Novell retained

the right to continue receiving royalties that SCO collected from then-existing SVRX

licensees for their distribution of binary (object) code versions of System V products

pursuant to sublicensing agreements; and that Novell retained the right to conduct

audits, and direct Santa Cruz to take certain actions, to protect that future binary royalty

stream. SCO, however, denies each and every other allegation of ¶ 15; and to the

extent ¶ 15 purports to state a legal conclusion, states that no response is required.

16.    Admits the allegations of the first three sentences of ¶ 16 to the extent those allegations

refer only to the SVRX binary royalty stream (as described in ¶ 15, above); and admits

the allegations of the last sentence of ¶ 16.

17.    Admits the allegations of ¶ 17, except denies the allegation that Novell retained, or that

the parties to the APA intended for Novell to retain, the copyrights in UNIX and

Unixware under Schedule 1.1(b) or any other schedule or provision of the APA.

18.    Admits that Novell retained certain rights to audit Santa Cruz's administration of the

SVRX binary royalty stream; denies each and every other allegation of ¶ 18; and to the

extent ¶ 18 purports to state a legal conclusion, states that no response is required.

19.    Admits the allegations of ¶ 19 only to the extent they refer to the rights and obligations

of the parties with respect to the SVRX binary royalty stream (as described in ¶ 15,

above).

20.    Admits the allegations of the first three sentences of ¶ 20, but denies each and every

other allegation of ¶ 20.

**D. Novell's Alleged Ownership of the UNIX Copyrights**

21.  Admits that the APA transferred to Santa Cruz all of Novell's right, title, and interest in and to Novell's assets and properties relating to the UNIX and Unixware business; admits that certain limited assets were excluded from the transfer; but denies each and every other allegation of ¶ 21, including the allegation that the APA did not transfer to Santa Cruz the copyrights in UNIX and Unixware.

22.  Denies the allegations of ¶ 22; and to the extent ¶ 22 purports to state a legal conclusion, states that no response is required.

23.  Admits that Novell and Santa Cruz executed Amendment No. 2 to the APA; and to the extent ¶ 23 purports to state a legal conclusion, states that no response is required.

24.  Denies the allegations of ¶ 24; and to extent ¶ 24 purports to state a legal conclusion, states that no response is required.

25.  Denies the allegations of ¶ 25 (including subparagraphs a-d); and to the extent ¶ 25 (including subparagraphs a-d) purports to state a legal conclusion, states that no response is required.

26.  Denies the allegations of ¶ 26; and to the extent ¶ 26 purports to state a legal conclusion, states that no response is required.

27.  Denies the allegations of ¶ 27.

**E. Sale of the UNIX Business to Caldera**

28.  Admits the allegations of ¶ 28.

29.  Admits the allegations of the first sentence of ¶ 29, but denies each and every other allegation of ¶ 29.

30.  Admits the allegations of ¶ 30.

**F. Caldera's Financial Position and Business Strategy**

31.  Admits that Caldera (like, on information and belief, Novell and nearly all other companies) did not produce a profitable Linux business; and admits the other allegations of ¶ 31.

32.  Admits that, after Caldera's acquisition of Santa Cruz's Server Software and Professional Services divisions, most of Caldera's revenue came from UNIX products and services, including approximately 90% of its total revenues at the end of fiscal year 2001 and 95% of its total revenues at the end of fiscal year 2002; admits that (at least in part because of the unauthorized use of SCO's proprietary UNIX code and other protected materials in Linux) Caldera's actual and forecasted revenues from the sale of UNIX-based products declined in the fiscal quarters following the acquisition; but denies each and every other allegation of ¶ 32.

33.  Admits the allegations of ¶ 33.

34.  Admits that Caldera hired Darl McBride as its President and Chief Executive Officer in June 2002 and that Mr. McBride was responsible for Caldera's strategic direction, with input from other executives of the company; but denies each and every other allegation of ¶ 34.

35.  Admits the allegations of ¶ 35.

36.  Admits the allegations of ¶ 36.

37.  Admits that SCO launched the SCOsource initiative to review, enforce, and defend SCO's ownership of its UNIX intellectual property (including copyrights); admits that

SCO announced that initiative in January 2003 but did not enter into a SCOsource

agreement until August 2003; and denies each and every other allegation of ¶ 37.

## G. Communications Between SCO and Novell in Late 2002 and Early 2003

38.   Admits that in late 2002, as part of the review of its intellectual property, SCO

contacted Novell to confirm SCO's understanding that the UNIX and Unixware

copyrights had been transferred under the APA and to ask if Novell had documents

concerning the APA; admits that Novell counsel and other employees repeatedly and

successively asked SCO to call again at a later time after Novell had had the

opportunity to research the matter; admits that in early 2003, Novell counsel agreed to

sign a letter stating that the APA transferred all right, title, and interest in and to the

copyrights associated with the AT&T SVRX software agreements; admits that SCO

sent Novell counsel a draft of that letter but Novell responded that it was no longer

interested in UNIX and would not sign; admits that Novell did not sign the letter and

ceased communications with SCO; further admits that during the aforementioned

conversations Novell never asserted its purported, or challenged SCO's, ownership of

the UNIX and Unixware copyrights; but denies each and every other allegation of ¶ 38.

39.   Admits that (at Novell's request, as described in ¶ 38 above) SCO contacted Novell on

multiple occasions in early 2003; but denies each and every other allegation of ¶ 39.

## H. SCO's Efforts to Protect Its Intellectual Property

40.   Denies the allegations of ¶ 40.

41.   Denies the allegations of the introductory sentence of ¶ 41.

   a.   Admits the allegations of subparagraph 41(a).

b.  Admits the allegations of subparagraph 41(b).

c.  Admits the allegations of subparagraph 41(c).

d.  Admits that in 2003 and 2004, SCO properly registered its copyrights in UNIX and Unixware, including its copyrights in the UNIX and Unixware releases listed in subparagraph 41(d); denies each and every other allegation of subparagraph 41(d); and to the extent subparagraph 41(d) purports to state a legal conclusion, states that no response is required.

e.  Admits the allegations of subparagraph 41(e).

f.  Admits the allegations of subparagraph 41(f).

42.  Admits that on or about July 21, 2003, Darl McBride made the statement quoted in part in ¶ 42; but denies each and every other allegation of ¶ 42.

43.  Denies that Novell did not acquiesce to SCO's ownership claims during the years between the execution of the APA (in September 1995) and about May 2003; further denies, as described below in SCO's response to subparagraph 43(b), that Novell did not acquiesce to SCO's ownership claims in June 2003.

a.  Admits that on May 12, 2003, Darl McBride sent Novell a letter setting forth the statements therein.

b.  Admits that, in response to Mr. McBride's May 2003 letter, Novell CEO Jack Messman sent SCO a May 28, 2003 letter (published in several newspapers and other publications) stating that "SCO is not the owner of the UNIX copyrights" – a statement that Novell recanted in a June 6, 2003 press release stating that

Amendment No. 2 to the APA "appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996."

    c.  Admits the allegations of ¶ 43(c), including the fact that Mr. LaSala's August 4, 2003 letter to SCO purported to recant the recantation in Novell's June 6, 2003 press release.

44.  Admits that in September and October 2003, Novell (wrongfully) obtained copyright registrations for UNIX-related products; denies each and every other allegation and the characterizations in ¶ 44; and to the extent ¶ 44 purports to state a legal conclusion, states that no response is required.

## I. The SCOsource Initiative

45.  Denies the allegations of ¶ 45; and to the extent ¶ 45 purports to state a legal conclusion, states that no response is required.

46.  Admits that SCO announced its SCOsource initiative on January 22, 2003, and that in connection with that announcement, Darl McBride made the statement quoted in part in ¶ 46; but denies each and every other allegation and the characterizations in ¶ 46.

47.  Admits that the SCOsource licensing program allows Linux end-users to enter into intellectual property agreements that properly compensate SCO for its UNIX intellectual property found in Linux; admits that the terms of the SCOsource agreements are as stated therein; but denies each and every other allegation of ¶ 47.

48.  Admits that SCO charges market price (including appropriate discounts) for its intellectual property licenses, but denies each and every other allegation and the characterization in ¶ 48.

49.    Admits that on March 7, 2003, SCO filed a lawsuit against IBM based on the
allegations set forth in SCO's pleadings in that lawsuit; denies each and every other
allegation of ¶ 49; and to the extent ¶ 49 purports to state a legal conclusion, states that
no response is required.

50.    Admits that SCO, through its SCOsource division, entered into agreements related to
UNIX and Unixware with Sun Microsystems, Inc., and Microsoft Corporation (in that
order) and that the Microsoft agreement covered UNIX compatibility products; but
denies each and every other allegation of ¶ 50, including the allegation that the Sun and
Microsoft agreements were part of the SCOsource licensing program.

51.    Admits that the Sun and Microsoft agreements in part produced the profitable quarter;
admits the allegations of the second sentence of ¶ 51; but denies each and every other
allegation and the characterizations in ¶ 51.

52.    Admits that in May 2003, SCO sent 1,500 end-user corporations (including IBM and
Novell) a letter setting forth the statements therein; denies each and every other
allegation of ¶ 52; and to the extent ¶ 52 purports to state a legal conclusion, states that
no response is required.

53.    Admits that SCO made statements (correctly quoted in part in ¶ 53) in the May 2003
letters; denies each and every other allegation of ¶ 53; and to the extent ¶ 53 purports to
state a legal conclusion, states that no response is required.

54.    Admits that SCO made statements (correctly quoted in part in ¶ 54) in the May 2003
letters; denies each and every other allegation of ¶ 54; and to the extent ¶ 54 purports to
state a legal conclusion, states that no response is required.

55. Admits that SCO made statements (correctly quoted in part in ¶ 55) in its May 2003 letters to end-users; denies each and every other allegation and the characterizations in ¶ 55; and to the extent ¶ 55 purports to state a legal conclusion, states that no response is required.

56. Admits that SCO has publicly stated that it owns the UNIX copyrights and that Linux end-users may be liable for infringement of those copyrights; admits that it has stated on its website that "only SCO is in a position to license the use of this infringing intellectual property"; admits that the Court's February 8, 2005 Order in the SCO v. IBM case sets forth the statements therein; denies each and every other allegation and the characterizations in ¶ 56; and to the extent ¶ 56 purports to state a legal conclusion, states that no response is required.

57. Admits that SCO has filed lawsuits against Autozone, Inc., and Daimler Chrysler Corporation, based on the allegations set forth in its pleadings in those lawsuits; but denies each and every other allegation and the characterizations in ¶ 57.

58. Admits that Novell has established an indemnification program with numerous restrictions (including, for example, the requirement that the Linux customer buy a new upgrade) and limitations (including, for example, on the dollar amount of the indemnification); but denies information or knowledge sufficient to form a belief as to the truth of the other allegations of ¶ 58.

59. Admits that, in an effort to protect its UNIX copyrights, SCO has negotiated and continues to negotiate intellectual property agreements with Linux end-users; admits

that such agreements generated revenue in fiscal years 2004 and 2005; and denies each

and every other allegation and the characterizations in ¶ 59.

**J.    Novell's Allegations that SCO Breached the Asset Purchase Agreement**

60.    Denies the allegations of ¶ 60; and to the extent ¶ 60 purports to state a legal

conclusion, states that no response is required.

61.    Denies the allegations of ¶ 61; and to the extent ¶ 61 purports to state a legal

conclusion, states that no response is required.

62.    Denies the allegations of ¶ 62; and to the extent ¶ 62 purports to state a legal

conclusion, states that no response is required.

63.    Admits that Section 1.2(b) of the APA provides in part:

> Seller shall be entitled to conduct periodic audits of Buyer
> concerning all royalties and payment due to Seller hereunder or
> under the SVRX Licenses, provided that Seller shall conduct such
> audits after reasonable notice to Buyer and during normal business
> hours and shall not be entitled to more than two (2) such audits per
> year.

SCO denies each and every other allegation and the characterization in ¶ 63,

including that under the APA, Novell had audit rights other than with respect to the

administration of the SVRX binary royalty stream; and to the extent ¶ 63 purports to

state a legal conclusion, states that no response is required.

64.    Admits that Section 1.2(f) of the APA provides in part:

> Within one (1) calendar month following each calendar month in
> which SVRX Royalties [and royalties from Royalty-Bearing
> Products as contemplated in Schedule 1.2(b) hereof] are received
> by Buyer, Buyer shall provide to Seller, in electronic file format, a
> report detailing all such royalties.

SCO denies each and every other allegation of ¶ 64.

65.   Admits the allegations of ¶ 65.

66.   Admits the allegations of ¶ 66.

67.   Admits that Novell sent SCO a November 21, 2003 letter (correctly quoted in part in ¶ 67) requesting the information set forth therein; denies each and every other allegation of ¶ 67 (including subparagraphs a-d); and to the extent ¶ 67 (including subparagraphs a-d) purports to state a legal conclusion, states that no response is required.

68.   Admits that Novell sent letters to SCO on December 29, 2003, and on February 4, 2004, referencing Novell's November 21, 2003 letter.

69.   Admits that SCO responded to Novell's letters as set forth in SCO's letter dated February 5, 2004; but denies each and every other allegation of ¶ 69.

70.   Admits that Novell sent SCO a March 1, 2004 letter (correctly quoted in part in ¶ 70), requesting the information set forth therein; denies each and every other allegation of ¶ 70; and to the extent ¶ 70 purports to state a legal conclusion, states that no response is required.

71.   Admits that Novell sent a letter to SCO on April 2, 2004, requesting the information set forth therein.

72.   Admits that Novell sent SCO a November 17, 2004 letter (correctly quoted in part in ¶ 72) requesting the information set forth therein.

73.   Admits that SCO responded to Novell as set forth in SCO's letters; but denies each and every other allegation and the characterizations in ¶ 73; and to the extent ¶ 73 purports to state a legal conclusion, states that no response is required.

74. Admits that SCO was obligated to remit "all royalties, fees and other amounts due under all SVRX Licenses (as listed in detail under item VI of Schedule 1.1(a) hereof and referred to herein as 'SVRX Royalties')"; admits that the term "SVRX Licenses" is not listed in a "Definitions" or "Recitals" section of the APA. SCO denies each and every other allegation of ¶ 74, including any attempt by Novell to define the term "SVRX Licenses" to include anything other than royalties that SCO collected from then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements.

75. Denies the allegations of ¶ 75; and to the extent ¶ 75 purports to state a legal conclusion, states that no response is required.

76. Admits that SCO entered into agreements with Sun and Microsoft, but denies each and every other allegation and the characterizations in ¶ 76.

77. Denies the allegations of ¶ 77; and to the extent ¶ 77 purports to state a legal conclusion, states that no response is required.

78. Admits that SCO has not remitted royalties from its licenses with Sun and Microsoft; denies each and every other allegation of ¶ 78, including the allegation that SCO entered into "SVRX Licenses" with Sun or Microsoft; and to the extent ¶ 78 purports to state a legal conclusion, states that no response is required.

79. Admits that SCO has entered into intellectual property agreements, the terms of which are set forth therein; but denies each and every other allegation of ¶ 79.

80. Denies the allegations of ¶ 80; and to the extent ¶ 80 purports to state a legal conclusion, states that no response is required.

81.  Admits that Amendment No. 1 to the APA added Section 1.2(e) (correctly quoted in part in ¶ 81); but denies each and every other allegation of ¶ 81; and to the extent ¶ 81 purports to state a legal conclusion, states that no response is required.

82.  Admits the allegations of the first sentence of ¶ 82; but denies the second sentence of ¶ 82 to the extent it alleges that the intellectual property licenses and Sun and Microsoft agreements required Novell's prior approval or were "SVRX Licenses"; and to the extent ¶ 82 purports to state a legal conclusion, states that no response is required.

83.  Admits that Novell correctly quotes in part Section 4.16(b) of the APA, but denies that this is the only pertinent part of that section.

84.  Admits that SCO sent letters to various companies, including IBM and Sequent, setting forth the statements therein; but denies each and every other allegation in ¶ 84, including the allegation that the licenses referenced in those agreements were "SVRX Licenses."

85.  Admits that SCO terminated its software license agreements with IBM and Sequent; admits that it sent Sequent an August 11, 2003 letter of termination; but denies each and every other allegation in ¶ 85, including especially the allegation that the terminated licenses were "SVRX Licenses."

86.  Admits that SCO did not seek Novell's prior written consent to terminate the IBM and Sequent licenses; admits that Novell sent letters to SCO on June 9, 2003 and October 7, 2003, setting forth the statements therein; but denies each and every other

allegation of ¶ 86, including especially the allegation that the terminated licenses were "SVRX Licenses."

87. Admits that Novell correctly quotes in part Section 4.16(b) of the APA, but denies *that this is the only pertinent part of that section; denies each and every other* allegation of ¶ 87; and to the extent ¶ 87 purports to state a legal conclusion, states that no response is required.

88. Denies the allegations of ¶ 88; and to the extent ¶ 88 purports to state a legal conclusion, states that no response is required.

89. Admits that SCO refuses to acknowledge Novell's purported right to take certain actions on behalf of SCO; denies the allegation that Novell has that right; and to the extent ¶ 89 purports to state a legal conclusion, states that no response is required.

90. Admits that Section 4.16(b) of the APA (correctly quoted in part in ¶ 90) sets forth the terms therein; but denies each and every allegation of ¶ 90, including any attempt by Novell to define the term "SVRX Licenses" to include anything other than royalties that SCO collected from then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements.

91. Admits that SCO entered into agreements with Linux end-users, Sun, Microsoft, and others; but denies each and every other allegation in ¶ 91, including the allegation that those agreements are "SVRX Licenses."

92. Admits that SCO never sought approval from Novell to enter into the intellectual property licenses or Sun and Microsoft agreements; denies each and every other

allegation of ¶ 92; and to the extent ¶ 92 purports to state a legal conclusion, states that no response is required.

93.  Denies the allegations of ¶ 93; and to the extent ¶ 93 purports to state a legal conclusion, states that no response is required.

## FIRST CLAIM FOR RELIEF

94.  Repeats and re-alleges its answers to the allegations of ¶¶ 1-93 as if fully set forth herein.

95.  Denies the allegations of ¶ 95; and to the extent ¶ 95 purports to state a legal conclusion, states that no response is required.

96.  Denies the allegations of ¶ 96; and to the extent ¶ 96 purports to state a legal conclusion, states that no response is required.

97.  Denies the allegations of ¶ 97; and to the extent ¶ 97 purports to state a legal conclusion, states that no response is required.

98.  Denies the allegations of ¶ 98; and to the extent ¶ 98 purports to state a legal conclusion, states that no response is required.

## SECOND CLAIM FOR RELIEF

99.  Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

100. Admits that Novell sent SCO a November 21, 2003 letter requesting the information set forth therein, but denies each and every other allegation in ¶ 100 (including subparagraphs a-d).

101. *Denies the allegations of ¶ 101; and to the extent ¶ 101 purports to state a legal* conclusion, states that no response is required.

102. Denies the allegations of ¶ 102; and to the extent ¶ 102 purports to state a legal conclusion, states that no response is required.

103. Denies the allegations of ¶ 103; to the extent ¶ 103 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 103.

## THIRD CLAIM FOR RELIEF

104. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

105. Denies the allegations of ¶ 105; and to the extent ¶ 105 purports to state a legal conclusion, states that no response is required.

106. Denies the allegations of ¶ 106; and to the extent ¶ 106 purports to state a legal conclusion, states that no response is required.

107. Denies the allegations of ¶ 107; to the extent ¶ 107 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 107.

108. Denies the allegations of ¶ 108; to the extent ¶ 108 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 108.

109. Admits that SCO expects to have at least $11 million in cash designated for its business operations in 2006; denies each and every other allegation in ¶ 109; to the extent ¶ 109

purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 109.

110. Denies the allegations of ¶ 110; to the extent ¶ 110 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 110.

## FOURTH CLAIM FOR RELIEF

111. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

112. Denies the allegations of ¶ 112; and to the extent ¶ 112 purports to state a legal conclusion, states that no response is required.

113. Denies the allegations of ¶ 113; to the extent ¶ 113 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 113.

114. Denies the allegations of ¶ 114; and to the extent ¶ 114 purports to state a legal conclusion, states that no response is required.

115. Denies the allegations of ¶ 115; to the extent ¶ 115 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 115.

116. Denies the allegations of ¶ 116; to the extent ¶ 116 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 116.

## FIFTH CLAIM FOR RELIEF

117. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

118. Admits the allegation of ¶ 118.

119. *Denies the allegations of ¶ 119; and to the extent ¶ 119 purports to state a legal conclusion, states that no response is required.*

120. Admits that, under the APA, SCO was obligated to administer the intended binary royalty stream described in ¶ 15, above; denies each and every other allegation of ¶ 120; and to the extent ¶ 120 purports to state a legal conclusion, states that no response is required.

121. Denies the allegations of ¶ 121; to the extent ¶ 121 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 121.

## SIXTH CLAIM FOR RELIEF

122. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

123. Denies the allegations of ¶ 123; and to the extent ¶ 123 purports to state a legal conclusion, states that no response is required.

124. Denies the allegations of ¶ 124; and to the extent ¶ 124 purports to state a legal conclusion, states that no response is required.

125. To the extent ¶ 125 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 125.

126. Denies the allegations of ¶ 126; to the extent ¶ 126 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 126.

### SEVENTH CLAIM FOR RELIEF

127. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

128. Admits that, under Section 4.16 of the APA, SCO agreed to collect and pass through to Novell 100% of the royalties paid by then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements; admits that, under Section 4.16, Novell agreed to pay SCO 5% of such binary royalties as an administrative fee; admits that SCO was responsible for making additional payments to Novell for products unrelated to the SVRX licenses and this litigation; denies each and every other allegation of ¶ 128; and to the extent ¶ 128 purports to state a legal conclusion, states that no response is required.

129. Admits the allegations of ¶ 129 to the extent the terms "SVRX royalties" or "SVRX licenses" refer only to the intended binary royalty stream described in ¶ 15 and ¶ 128, above; and to the extent ¶ 129 purports to state a legal conclusion, states that no response is required.

130. Admits the allegations of the first sentence of ¶ 130 to the extent they refer to the intended binary royalty stream described in ¶ 15 and ¶ 128, above, and to payments for products unrelated to the SVRX licenses and this litigation; denies each and every

other allegation of ¶ 130; and to the extent ¶ 130 purports to state a legal conclusion, states that no response is required.

131. Denies the allegations of ¶ 131; and to the extent ¶ 131 purports to state a legal conclusion, states that no response is required.

132. Admits the allegations of ¶ 132 only to the extent the phrase "royalty payments to SCO under the SVRX Licenses" is limited to the binary royalties described in ¶ 128, above.

133. Admits the allegations of ¶ 133 only to the extent the phrase "royalty payments under the SVRX licenses" refers only to the binary royalty stream described in ¶¶ 15 and 128, above.

134. Admits that SCO did not seek Novell's approval before entering into the intellectual property agreements or Sun and Microsoft agreements; admits that SCO did not report those agreements to Novell because they are not "SVRX Licenses" as intended under the APA; denies each and every other allegation and the characterizations in ¶ 134; and to the extent ¶ 134 purports to state a legal conclusion, states that no response is required.

135. Denies the allegations of ¶ 135; and to the extent ¶ 135 purports to state a legal conclusion, states that no response is required.

136. Denies the allegations of ¶ 136; and to the extent ¶ 136 purports to state a legal conclusion, states that no response is required.

137. Admits that the binary royalty payments due to Novell under the APA are calculated by formula and that SCO directly receives those payments; denies each and every other

allegation and the characterizations in ¶ 137; and to the extent ¶ 137 purports to state a

legal conclusion, states that no response is required.

138.  *Denies the allegation that SCO owes Novell monies under the APA, and states that*

*Novell is not entitled to an accounting.*

## PRAYER FOR RELIEF

139.  States that the enumerated ¶¶ 139-43 following Novell's Prayer for Relief include

requests for relief as to which no response is required.  To the extent a response is

required, SCO denies that Novell is entitled to the requested or any relief.

## GENERAL DENIAL

SCO denies each and every allegation in Novell's Counterclaims that is not specifically

admitted herein.

## AFFIRMATIVE DEFENSES

*SCO hereby asserts the following separate defenses to the purported causes of action in*

Novell's Counterclaims, without assuming any burden of proof that rests with Novell with

respect to such defenses.

### First Defense

Novell's slander-of-title counterclaim is barred by the absolute and conditional privileges

*enjoyed by SCO.*

### Second Defense

Novell's slander-of-title counterclaim is barred by the First Amendment to the United

States Constitution.

### Third Defense

Novell's counterclaims are barred, in whole or in part, by the doctrine of waiver.

### Fourth Defense

Novell's counterclaims are barred, in whole or in part, by the doctrines of laches and delay.

### Fifth Defense

Novell's counterclaims are barred, in whole or in part, by the doctrine of estoppel.

### Sixth Defense

Novell's counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

### Seventh Defense

Novell's counterclaims are barred, in whole or in part, by the applicable statute of limitations.

### Eighth Defense

Novell has failed to mitigate its alleged damages, and accordingly, any damages awarded to Novell should be reduced to the extent of its failure to mitigate.

### Ninth Defense

Novell's counterclaims are barred, in whole or in part, by lack of causation. To the extent that Novell alleges (contrary to fact) that it has suffered damages, such damages were not proximately caused by any act or omission of SCO, or were not reasonably foreseeable, or both.

### Tenth Defense

Novell's Answer and Counterclaims fails to state a claim upon which relief can be granted.

WHEREFORE, plaintiff and counterclaim-defendant SCO demands judgment dismissing

Novell's counterclaims with prejudice, along with such other and further relief as the Court

deems just and proper.

DATED this 12th day of September, 2005.

       Respectfully submitted,

       HATCH, JAMES & DODGE, P.C.
       Brent O. Hatch
       Mark F. James

       BOIES, SCHILLER & FLEXNER LLP
       Stephen N. Zack
       Robert Silver
       Stuart H. Singer
       Edward Normand

       By _____

       *Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that on the 12th day of September, 2005,

a true and correct copy of the foregoing SCO's Answer to Novell's Counterclaims was served on

Defendant Novell, Inc., by U.S. Mail to:

    Thomas R. Karrenberg
    John P. Mullen
    Heather M. Sneddon
    ANDERSON & KARRENBERG
    700 Bank One Tower
    50 West Broadway
    Salt Lake City, UT 84101

    Michael A. Jacobs
    Matthew I. Kreeger
    MORRISON & FOERSTER
    425 Market Street
    San Francisco, CA 94105-2482