RECEIVED CLERK
FILED
2005 DEC 30 P 12: 16
**ORIGINAL**

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, <br><br> *Plaintiff,* <br><br> vs. <br><br> NOVELL, INC., a Delaware corporation, <br><br> Defendant. | **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** <br><br> Civil No.: 2:04CV00139 <br><br> Judge: Dale A. Kimball |

Plaintiff, The SCO Group, Inc., respectfully moves for leave to file a Second Amended Complaint (attached hereto as Exhibit A) pursuant to Federal Rule of Civil Procedure 15(a).

Under Rule 15, which governs the amendment of pleadings, "leave shall be freely given when justice so requires." "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." Calderon v. Kansas Dep't of Soc. and Rehab. Servs., 181 F.3d 1180, 1185-86 (10th Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182-83 (1962)). The liberal standard governing amendments is intended to "safeguard a plaintiff's opportunity to test" its "claims on the merits." Bauchman v. W. High Sch., 132 F.3d 542, 559 (10th Cir. 1997) (citing Foman, 371 U.S. at 182). The Court should grant leave to amend unless the non-moving party shows that the proposed amendment is unduly and inexplicably delayed, prompted by bad faith, would unduly prejudice the opposing party, or would be futile." Foman, 371 U.S. at 182; accord Las Vegas Ice and Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990).

Where, as here, the motion to amend is filed even before any discovery has been produced, there is no undue delay, bad faith, or undue prejudice to the other side. See, e.g., FDIC v. Grant, 8 F. Supp. 2d 1275, 1288 (N.D. Okla. 1998) (granting motion to file second amended complaint "at a time when no discovery had taken place"); Mask v. Johnson, No. 96 Civ. 6167 (DC), 1997 WL 662337, at *2 (S.D.N.Y. Oct. 22, 1997) (attached hereto as Exhibit B) (granting motion where "no discovery has yet been commenced in the case"); Taylor v. Florida State Fair Auth., 875 F. Supp. 812, 815 (M.D. Fla. 1995) (granting motion to amend where "[a]lthough the parties have completed the case management report, discovery has not commenced" and trial was not scheduled for over a year). See generally Atiya v. Salt Lake County, 988 F.2d 1013, 1018 (10th

Cir. 1993) (affirming district court's decision granting leave to amend where the amendment "did not occur on the eve of trial and did not delay a determination of the dispute").

In addition, during the course of their negotiation of the Attorneys' Planning Report that the parties submitted to the Court and which provided the basis for the Magistrate Judge's Case Management Order (Dec. 6, 2005) (attached hereto as Exhibit C), counsel for SCO informed counsel for Novell that SCO intended to file a second amended complaint (and counsel for Novell did not object). Indeed, the parties agreed in their Attorneys' Planning Meeting Report (Dec. 1, 2005) (attached hereto as Exhibit D) that "the cutoff date for amending pleadings is March 7, 2006." The Case Management Order provides that each party shall have until March 7, 2006, to file a motion to amend pleadings. Trial is scheduled for June 2007 – almost eighteen (18) months from now.

SCO seeks leave to file a Second Amended Complaint in significant part in consideration of the counterclaims that Novell asserted in its Answer and Counterclaims (July 29, 2005) (attached hereto as Exhibit E). In that pleading, Novell brings seven causes of action: a claim for slander of title, two claims for breach of the Asset Purchase Agreement ("APA") between the parties, two claims for declaratory relief pursuant to the APA, a claim for restitution/unjust enrichment relating to the APA, and a claim for accounting under the APA. Novell's counterclaims thus significantly expand the scope of the litigation, such that it is sensible for SCO to add the new claims in the Second Amended Complaint, relating primarily to the APA and to Novell's conduct in connection with the parties' differing interpretations of that Agreement.

SCO's proposed Second Amended Complaint reasserts SCO's slander-of-title claim. In addition, in keeping with the expanded scope of the litigation, the Second Amended Complaint asserts the following claims:

3

- Breach of contract based on Novell's violation of the non-compete provisions and covenant of good faith and fair dealing in the APA and related agreement with SCO, by, among other things, making unauthorized distributions of SCO's UNIX technology in competition with SCO's own UNIX offerings.

- An alternative breach-of-contract claim seeking specific performance of Novell's obligations under the APA (which transferred the UNIX business and technology to SCO, including the associated copyrights) to take any action necessary to effectuate the purposes of that Agreement and consummate the transactions contemplated therein.

- Copyright infringement based on, among other things, Novell's unauthorized distribution, in its Linux offerings, of UNIX technology outside of the limited license by which SCO's predecessor licensed back to Novell the UNIX technology it transferred to SCO pursuant to the APA.

- Unfair competition based on, among other things, Novell's false claims of copyrights and ownership in UNIX; misappropriation of UNIX technology in Linux; and wrongful attempts to thwart SCO's claims and rights to enforce its UNIX intellectual property.

These claims thus essentially relate to the same subject matter as Novell's counterclaims. See, e.g., LeaseAmerica Corp. v. Eckel, 710 F.2d 1470, 1474 (10th Cir. 1983) (no prejudice where te amended complaint referred "to the same chattels, the same consideration, and the same transaction" already at issue in the case); Kreinik v. Showbran Photo, Inc., No. 02 Civ. 1172 (RMB)(DF), 2003 WL 22339268, at *10 (S.D.N.Y. Oct. 14, 2003) (attached hereto as Exhibit F) (plaintiff's amendment would not cause the defendant any prejudice where those claims relate to the defendant's counterclaims). SCO respectfully submits, moreover, that all of the previous and new claims in its Second Amended Complaint are well pleaded, not futile.

SCO respectfully submits that, under the circumstances, the Court should grant SCO's motion for leave to file the Second Amended Complaint.

Dated this 30th day of December, 2005.

By:

HATCH JAMES & DODGE
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Stephen N. Zack
Robert Silver
Stuart Singer
Edward Normand

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December, 2005, I caused to be mailed a

true and correct copy of the foregoing via first class U.S. Mail, postage prepaid, to the following:


Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Ken W. Brakebill
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

# EXHIBIT A

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NOVELL, INC.,<br><br>    Defendant. | **SECOND AMENDED COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:04CV00139<br>Honorable Dale A. Kimball |

Plaintiff, The SCO Group, Inc. ("SCO"), sues Defendant, Novell, Inc. ("Novell"), and alleges as follows:

## I.    NATURE OF THIS ACTION

1.    Through an Asset Purchase Agreement between Novell and The Santa Cruz Operation ("Santa Cruz") dated September 19, 1995, as amended, (the "APA"), and SCO's subsequent acquisition of two divisions from Santa Cruz through a transaction closing on or about May 7, 2001, SCO acquired all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, license agreements, and copyrights, as well as the right to bring actions for infringement or other violations relating to said assets (collectively, the "business" or the "UNIX and UnixWare business").

2.    The intent of the parties to the APA and the purpose of the APA, as well as the intent and purpose of the subsequent Santa Cruz-to-SCO transaction, were to transfer the UNIX and UnixWare business to SCO, including the copyrights in UNIX, UnixWare, and supporting materials ("the copyrights").

3.    This lawsuit stems from Novell's willful infringement of the copyrights and from its false and bad-faith claims that it owns the copyrights and UNIX itself and that it has the authority under the APA to destroy the value of the business by waiving, revoking, or otherwise controlling SCO's rights and claims related to the business.

4.    In consideration for its sale of the business under the APA, Novell received, among other consideration, 6.1 million shares of Santa Cruz common stock, in a transaction valued at the time at over $100 million, as well as an equitable interest in 95% of certain binary royalties as described below.

2

5.      In Attachment E of Novell's Disclosure Schedule to the APA, Novell provided a list of

approximately 106 copyright registrations (encompassing eight pages) covering products

relating to the business transferred to SCO.

6.      In the course of exercising its rights with respect to UNIX and UnixWare, SCO has filed

for copyright protection with the United States Copyright Office.

7.      In an effort to interfere with SCO's exercise of its rights with respect to UNIX and

UnixWare technologies, Novell has, in disregard of its obligations under the APA, filed

for copyright protection in the same UNIX technology covered by SCO's copyrights.

8.      Novell has falsely and repeatedly claimed in public that it, and not SCO, owns the

copyrights.

9.      Novell has made such statements with the intent to cause customers and potential

customers of SCO to refrain from doing business with SCO; to slander and impugn

SCO's ownership rights in UNIX and UnixWare; and to attempt, in bad faith, to block

SCO's ability to enforce the copyrights and its rights under UNIX licenses.

10.     Novell's false and misleading representations that it owns the copyrights have directly

caused and continue to cause significant irreparable harm to SCO's valuable UNIX and

UnixWare copyrights, its business, and its reputation, and has caused third parties to

refuse to enter into license agreements with SCO relating to SCO's UNIX and UnixWare

business.

11.     In connection with the closing of the transaction set forth in the APA, Novell and Santa

Cruz entered into a Technology License Agreement (the "TLA"), which licensed back to

3

Novell all technology included in the transferred assets, including all modifications of that technology, for certain limited purposes.

12.    The APA and TLA each contained a non-compete provision, whereby Novell covenanted not to distribute the licensed-back technology in (a) any operating system in competition with SCO's core server products or (b) in any product in which that technology constitutes a primary portion of the value of the product.

13.    In 2003, Novell became a distributor of the Linux operating system by purchasing SuSE Linux. As SCO has alleged in its suit against International Business Machines ("IBM") pending in this Court, IBM has wrongfully contributed SCO's UNIX technology to Linux, and that technology constitutes a primary portion of the value of Linux. Consequently, by distributing Linux in competition with SCO's core products, Novell has materially breached the non-compete provisions of the APA and TLA.

14.    Furthermore, Novell has infringed and continues to infringe SCO's copyrights by copying, reproducing, modifying, sublicensing, and/or distributing the licensed-back technology, contrary to the express terms of the TLA. In addition, through its Linux business, Novell has also infringed and continues to infringe SCO's copyrights in UNIX, by copying, reproducing, modifying, sublicensing, and/or distributing UNIX intellectual property without authority to do so.

15.    Under Section 4.16 of the APA, Novell retained the right to continue receiving certain product royalties that Santa Cruz collected from then-existing SVRX licensees for their distribution of binary-code versions of System V pursuant to sublicensing agreements . Under Sections 4.16, 1.2(b), and 1.2(f) of the APA, Novell also retained the right to

4

direct or take certain actions to protect those SVRX royalties. Novell has erroneously and in bad faith attempted to extend those rights to matters unrelated to Novell's protected binary royalty stream. In particular, Novell has purported, among other things, to waive SCO's rights and claims against IBM for its wrongful contributions to Linux, even though those rights and claims were transferred to SCO under the APA and the Santa Cruz-to-SCO transaction.

16.     Under the APA, Novell did not retain the rights to take or direct any actions with respect to any source-code licenses or fees, other SVRX royalties, or any claims arising after the closing date against any parties relating to any right, property, or asset included in the business. The APA intended and did transfer such rights exclusively to SCO.

17.     Novell's retaining such rights would have subverted the stated purpose of the APA and rendered Santa Cruz's ownership of the UNIX and UnixWare business illusory. Similarly, Novell's retaining the copyrights would have made Santa Cruz's ownership of UNIX and UnixWare technologies without value or meaning.

18.     Novell's newly concocted claims that Santa Cruz intended and did pay over $100 million for intellectual property without the copyrights to protect and exploit it, all while abdicating to Novell the right to control and destroy the value of that property, defies commercial reason and common sense and contradicts conduct during the years that followed that APA.

19.     Novell has interfered with SCO's UNIX license agreements with IBM and Silicon Graphics, Inc. ("SGI"), by asserting falsely and in bad faith that Novell owns the

copyrights and by purporting in bad faith to waive and revoke SCO's claims against IBM and SGI that arose after the closing date and are related to those agreements.

20.    Several provisions of the APA require the parties to take the actions necessary to effectuate the purposes of the APA and consummate the transactions contemplated therein. If it were true (contrary to the intent of the parties to the APA) that Novell retained the copyrights and SCO received mere phantom rights to the business, then Novell has breached those provisions by failing to take the actions necessary to convey the business to SCO as contemplated by APA.

21.    Through this action against Novell, SCO seeks the following:

a)  a preliminary and permanent injunction (i) requiring Novell to assign to SCO all copyrights that Novell has improperly registered in UNIX and UnixWare following Novell's transfer of all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, license agreements, and all copyrights related thereto to SCO pursuant to the APA; (ii) preventing Novell from representing in any forum that it has any ownership interest whatsoever in the copyrights or UNIX itself; (iii) requiring Novell to retract or withdraw all its representations of its purported ownership of the copyrights;

b)  a preliminary and permanent injunction preventing Novell from copying, reproducing, modifying, sublicensing, and distributing SCO's copyrighted UNIX and UnixWare technology, except as provided by the TLA;

c)  actual, special, enhanced, statutory, and punitive damages in amounts to be proved at trial; and

6

d) as an alternative claim, an order directing Novell specifically to perform its

obligations under the APA by taking the actions necessary to transfer to SCO the

UNIX and UnixWare business, including the copyrights.

## II. PARTIES, JURISDICTION, AND VENUE

22. Plaintiff SCO is a Delaware corporation with its principal place of business in Utah

County, Utah.

23. Defendant Novell is a Delaware corporation with its executive offices and headquarters

in Waltham, Massachusetts, that does business in Utah.

24. This Court has concluded that it has subject matter jurisdiction over SCO's slander-of-

title claim pursuant to 28 U.S.C. § 1331 and § 1338(a).

25. The Court has jurisdiction over SCO's copyright claim pursuant to 28 U.S.C. § 1331 and

§ 1338(a).

26. Based on its jurisdiction over the slander-of-title and copyright claims, the Court also has

supplemental jurisdiction over SCO's state-law claims.

27. This Court has personal jurisdiction over Novell because Novell transacts substantial

business in the State of Utah.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III. FACTUAL BACKGROUND

### A. The APA's Transfer of the Copyrights in UNIX and UnixWare

29. Schedule 1.1(a) to the APA provides that SCO, through its predecessor in interest,

acquired from Novell:

> 1. All rights and ownership of UNIX and UnixWare, including
> but not limited to all versions of UNIX and UnixWare and all

7

> copies of UNIX and UnixWare (including revisions and updates
> in process), and all technical, design, development, installation,
> operation and maintenance information concerning UNIX and
> UnixWare, including source code, source documentation, source
> listings and annotations, appropriate engineering notebooks, test
> data and test results, as well as all reference manuals and support
> materials normally distributed by [Novell] to end-users and
> potential end-users in connection with the distribution of UNIX
> and UnixWare . . . .
>
> II. All of [Novell's] claims arising after the Closing Date against
> any parties relating to any right, property or asset included in the
> Business.

30.    On December 19, 1995 ("the closing date"), the parties closed the transaction set forth in

the APA.  In connection with the closing, the parties executed the TLA and a Bill of Sale.

31.    The TLA was originally called for by Section 1.6 of the APA, which provides in part:

> 1.6 License Back of Assets.  Concurrent with the Closing
> Buyer [SCO] shall execute a license agreement under which it
> shall grant to Seller [Novell] a royalty-free, perpetual, worldwide
> license to (i) all of the technology included in the Assets and
> (ii) all derivatives of the technology included in the Assets,
> including the "Eiger" product release (such licensed back
> technology to be referred to collectively as "Licensed
> Technology").

Through the TLA, Santa Cruz granted to Novell the license specified in Section 1.6, with

certain modifications.

32.    As of the closing date, both Novell and SCO, including executives for both parties who

negotiated and closed the transaction, intended and believed that the copyrights had been

transferred to SCO.  Because Novell would not have required a license-back had it

retained the copyrights, the TLA evidences the parties' shared intent and belief that, as of

the closing date, SCO owned the copyrights.

8

33.    In Amendment No. 2 to the APA, Novell and SCO reiterated and clarified that SCO owned all "copyrights and trademarks owned by Novell as of the date of the [APA] required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies," and that Novell would no longer be liable should any third party bring a claim against SCO "pertaining to said copyrights and trademarks."

**B. Novell's Slander of SCO's Title to the Copyrights in UNIX and UnixWare**

34.    Software technology is valuable only insofar as the intellectual property contained therein is protected from unlawful misappropriation. Copyrights provide critical protection against misappropriation as established by the United States Congress under the Copyright Act. SCO requires the full copyright protection it purchased from Novell to enforce its rights in its proprietary UNIX and UnixWare source code and related technology against infringing third parties. A transfer of source code without the associated copyrights is for all intents and purposes meaningless and worthless.

35.    Based on the APA and Amendment No. 2, SCO is the sole and exclusive owner of all copyrights related to the UNIX and UnixWare source code and all documentation and peripheral code and systems related thereto.

36.    Novell, with full knowledge of SCO's exclusive ownership of the copyrights related to UNIX and UnixWare, has embarked on a malicious campaign to damage SCO's ability to protect its valuable copyrights in UNIX and UnixWare. In particular, Novell has wrongfully asserted ownership over UNIX and UnixWare technologies by filing for copyright protection in its own name, and has made numerous false and misleading

public representations disparaging SCO's ownership of the copyrights and claiming that
it, and not SCO, owns the copyrights.

37.    Novell's false oaths and misleading public representations and wrongful assertions of
ownership rights in UNIX and/or UnixWare include, but are not limited to, the following:

a)    On May 28, 2003, Novell's Chairman, President, and CEO Jack Messman based
at Novell's headquarters in Waltham, Massachusetts, publicly claimed that Novell
did not transfer the UNIX and UnixWare copyrights to SCO and that "SCO is not
the owner of the UNIX copyrights." Mr. Messman's statement was published in
several newspapers and other publications, and he and Novell timed the statement
to be released on the eve of SCO's positive quarterly earnings announcement. As
a result of Novell's announcement, SCO's stock price dropped over twenty
percent.

b)    In a letter dated June 6, 2003, directed from SCO to Novell, SCO brought to
Novell's attention Amendment No. 2 to the APA.

c)    Following Novell's receipt of SCO's letter dated June 6, 2003, Novell issued a
press release dated that same date which recanted Mr. Messman's prior statement
claiming Novell owned UNIX copyrights, stating "[t]he amendment [to the Asset
Purchase Agreement] appears to support SCO's claim that ownership of certain
copyrights for UNIX did transfer to SCO in 1996."

d)    In a letter of the same day, June 6, 2003, directed to SCO, Joseph Lasala, Novell's
General Counsel, continued to call SCO's claims of copyright ownership
"absurd" and "unsubstantiated."

e) In a letter dated June 26, 2003, from Mr. Lasala to SCO, Novell acknowledged that Amendment No. 2 "appears to support a claim" by SCO to "some copyrights," but at the same time, Novell called SCO's claims of ownership of UNIX and UnixWare "simply wrong" and declared "that we do not agree with SCO's public statements on this matter."

f) In a letter from Mr. Lasala dated August 4, 2003, Novell responded to SCO's registration of UNIX System V copyrights with the United States Copyright Office and explicitly "dispute[d] SCO's claim to ownership of these copyrights."

g) Despite Amendment No. 2, Novell continued with its unfounded and malicious campaign to slander SCO's ownership of the copyrights. In fact, Novell, again falsely asserted ownership of UNIX copyrights by submitting twelve certifications beginning on September 22, 2003, through October 14, 2003, to the United States Copyright Office. In these certifications, Novell publicly claimed to be the copyright owner of several versions of UNIX, including the following: (1) UNIX System V/386 Release 4 Version 3; (2) UNIX System V/386 Release 4 2; (3) UNIX System V/386 Release 4 Version 4; (4) UNIX System V/386 Release 3 2; (5) UNIX System V/386 Release 3 0; (6) UNIX System V/386 Release 4 0; (7) UNIX System V/386 Release 4 1ES; (8) UNIX System V Release 3 2/386; (9) UNIX System V Release 3/386; (10) UNIX System V Release 4 2MP; (11) UNIX System V Release 2; and (12) UNIX System V Release 4 1ES/386. Novell published its false certifications to the world by placing them online at Novell's website.

h)    Also on October 10, 2003, Novell publicly filed under oath with the United States Copyright Office four different iterations of a "Declaration Regarding Ownership" of UNIX copyrights TXU-510-028, TXU-511-236, TXU-516-704, and TXU-516-705. In each of those sworn documents, Novell declared "that it retains all or substantially all of the ownership of the copyrights in UNIX, including the U.S. Copyright Registration referenced above."

i)    In a press release dated December 22, 2003, Novell, despite its June 2003 statement that SCO owns the copyrights, stated that "it owns the copyrights in UNIX, and has applied for and received copyright registrations pertaining to UNIX consistent with that position."

j)    In a press release dated January 13, 2004, Novell again knowingly and wrongfully made the false claim that "it retained ownership of [UNIX] copyrights."

k)    At the March 2004 Open Source Business Conference in San Francisco, Novell's Vice Chairman Chris Stone proclaimed during his keynote address that Novell "still own[s] UNIX."

38.    Novell's false oaths and wrongful claims of copyrights and ownership in UNIX and UnixWare were made in bad faith and constitute a knowing and intentional disregard for the truth.

39.    Novell's wrongful claims of copyrights and ownership in UNIX and UnixWare have caused and continue to cause damage to SCO in the following particulars:

a)    Customers and potential customers of SCO are unable to ascertain the truth of ownership in UNIX and UnixWare, and make decisions based thereon;

b)    Potential customers have informed SCO that they will not enter into agreements to license SCO's UNIX technologies because of the cloud surrounding SCO's ownership of UNIX created by Novell's false public representations that it, and not SCO, owns UNIX.

c)    SCO's efforts to protect its ownership of UNIX and UnixWare, and copyrights therein, are subject to a false cloud of ownership created by Novell. At the present time, SCO is pursuing claims against third parties for infringement of SCO's intellectual property and contractual rights in UNIX. Defendants in those cases have relied on Novell's claims of ownership in UNIX as a defense to SCO's claims, thereby hindering SCO's ability to protect its copyrights and other rights and causing SCO to incur significant additional attorneys' fees and costs litigating issues resulting from the cloud Novell has placed on SCO's title to UNIX and UnixWare.

**C.  Novell's Unauthorized Use of SCO's Technology**

40.    At the time of the execution of the APA, Novell was a leading networking software company. Because it had developed its flagship networking product, Netware, to work on the UNIX operating system, Novell needed and requested the right to distribute trivial portions of the UNIX source code embedded in Netware.

41.    Accordingly, with the sole intent of accommodating these requests by Novell, the parties to the APA agreed that Santa Cruz would license back to Novell "all the technology included in the Assets" transferred by the APA, as well as "all derivatives of the

13

technology included in the Assets" (collectively, "the Licensed Technology"), subject to

certain broad limitations.

42.    To protect the value to Santa Cruz of the transferred UNIX and UnixWare assets, the

APA and TLA each contained a non-compete provision, whereby Novell covenanted not

to use the Licensed Technology to compete with SCO's core operating-system products.

43.    Section 1.6 of the APA provides in part:

> Seller agrees that it shall use the Licensed Technology only
> (i) for internal purposes without restriction or (ii) for resale in
> bundled or integrated products sold by Seller which are not
> directly competitive with the core products of Buyer and in which
> the Licensed Technology does not constitute a primary portion of
> the value of the total bundled or integrated product.

44.    Similarly, under Section II.A.(2) of the TLA, Novell is permitted to distribute and

sublicense "such Licensed Technology and modifications thereof," provided that

> (i) such technology and modifications may be sublicensed and/or
> distributed by NOVELL solely as part of a bundled or integrated
> offering ("Composite Offering"); (ii) such Composite Offering
> shall not be directly competitive with core application server
> offerings of SCO, and (iii) the Licensed Technology shall not
> constitute a primary portion of the value of such Composite
> Offering.

45.    The "core products" and "core application server offerings" referenced in the APA and

TLA, respectively, refer to the UNIX and UnixWare operating systems owned by Santa

Cruz upon the closing date. Even before acquiring the UNIX source code, Santa Cruz

had been primarily involved in the business of distributing UNIX in binary form, so that

with the acquisition of the UNIX and UnixWare source code and copyrights, the UNIX

and UnixWare operating systems undoubtedly represented Santa Cruz's "core products."

In addition, as of the closing date, Santa Cruz had no "application server offering" other than UNIX and UnixWare operating systems.

46.    On November 4, 2003, Novell announced its acquisition of SuSE Linux, one of the world's leading distributors of Linux. Since that time, Novell began distributing Linux worldwide.

47.    On December 22, 2005, SCO filed with the Court in the SCO v. IBM case a compilation of 293 disclosures of technology which IBM has made to enhance Linux (in violation of its agreements with SCO) with the stated objective of making Linux a more enterprise-hardened operating system.

48.    Linux contains SCO's UNIX technology, including unauthorized UNIX System V source code, derivatives and modifications, and methods and concepts contributed to Linux by IBM in violation of its license agreements with SCO. Thus, Linux contains the Licensed Technology which, pursuant to Section 1.6 of the APA and Section II.A.(2) of the TLA, Novell covenanted not to distribute in an operating system.

49.    As a general-purpose operating system, Linux is "directly competitive" with SCO's core application server offerings.

50.    Furthermore, the measure of UNIX technology in Linux far exceeds the trivial portions that the parties intended Novell was authorized to use, in Netware, pursuant to the TLA. Whereas UNIX became enterprise-ready after decades of development, Linux matured into a powerful enterprise-ready operating system in a few years, due primarily to the UNIX technology wrongly contributed by IBM to Linux.

51.    Novell therefore breached Section 1.6 of the APA and Section II.A.(2) of the TLA.

.

52.    Novell has also infringed and continues to infringe SCO's copyrights in UNIX by

copying, reproducing, modifying, sublicensing, and/or distributing UNIX intellectual

property as part of its Linux business.

**D. Novell's Wrongful Attempts to Expand Its Rights Under the APA**

53.    Under Section 4.16 of the APA, Novell retained the right to continue receiving royalties

that SCO collected from then-existing SVRX licensees for their distribution of binary-

code versions of System V products pursuant to sublicensing agreements. Novell also

retained the right to direct SCO to take certain actions, or in the event it failed to take

those actions, to take those actions on its behalf, for the sole purpose of protecting that

same binary royalty stream. Since 1996 until 2003, Novell operated in accordance with

this procedure and understanding.

54.    Under Sections 1.2(b) and 1.2(f) of the APA, Novell also retained the right to conduct

audits to protect the same binary royalties.

55.    Under the APA, however, Novell did not retain any right to conduct audits, direct SCO to

take any actions, or take actions on SCO's behalf with respect to matters other than the

SVRX binary royalty stream.

56.    On information and belief, IBM invested $50 million in Novell stock to help finance

Novell's purchase of SuSE, and Novell and IBM have continued and expanded product

and marketing arrangements that existed between IBM and SuSE. As Mr. Messman

declared in a letter to SCO dated, May 28, 2003, "Novell is an ardent supporter of Linux

and the open source development community." Novell is one of IBM's major Linux

partners. Both companies were acknowledged members of the so-called Chicago 7,

which was formed at least in part to address and/or oppose SCO's efforts to protect its intellectual property.

57.   In an effort, among other things, to protect its Linux partnership with IBM, Novell has erroneously and in bad faith attempted to extend its rights under Sections 4.16, 1.2(b), and 1.2(f) to agreements and matters not subject to those provisions.

58.   On June 9, 2003, for example, Novell purported to direct SCO to waive its right to terminate its Software License Agreement with IBM, even though that source-code agreement by definition was not for binary royalties and therefore did not come under the purview of Sections 4.16, 1.2(b), and 1.2(f), and even though Novell had no ongoing royalty stream from IBM that it needed to protect.   On June 12, 2003, Novell invoked its purported right under Section 4.16(b) to waive and revoke SCO's proper termination of IBM's UNIX license agreements.

59.   Similarly, on October 10, 2003, Novell purported to waive and revoke for SCO its claims against IBM for breach of its Sequent Software License Agreement with SCO.

60.   Novell has alleged that its rights under Sections 4.16, 1.2(b), and 1.2(f) extend to SCO's 2003 agreements with Sun and Microsoft, as well as SCO's SCOsource intellectual property agreements, even though those agreements did not involve the SVRX binary royalty stream and were not even in existence at the time the APA was executed.

61.   Such actions by Novell are contrary to its agreements with SCO and were calculated to interfere with SCO's agreements with IBM and others, block SCO's efforts to enforce its claims and rights related to UNIX, and misrepresent to the marketplace that Novell, and not SCO, owns UNIX.

17

62.   Novell's wrongful conduct is also willful and in bad faith in light of its previous attempt
      to expand its rights under Section 4.16 in collaboration with IBM.

63.   On April 26, 1996, without the consent of Santa Cruz, Novell attempted to enlarge IBM's
      rights to the UNIX source code and grant IBM a buyout of its SVRX binary royalty
      obligations, by entering with IBM into a purported amendment to the IBM UNIX license
      agreements transferred to SCO by the APA.

64.   In a letter to Novell dated April 23, 1996, SCO intervened by explaining, among other
      things, that the APA and related agreements provided SCO "ownership and exclusive
      rights to license the UNIX source code."

65.   After SCO further disputed Novell's authority to grant IBM the buyout, the parties
      entered into Amendment X to IBM's software and sublicensing agreements in UNIX. As
      compared with Novell's thwarted amendment, Amendment X, among other things:

      a) replaced Novell with SCO as the party to the bargained-for exchange with IBM;

      b) more than quadrupled the monetary consideration, from $2,375,000 to $10,125,000;

      c) contracted IBM's source-code rights; and

      d) set forth SCO's exclusive right to audit IBM's compliance with the restrictions on its
         use of the licensed source code.

66.   In addition, Amendment X voided Novell's unauthorized amendment, by providing: "The
      Amendment dated April 26, 1996 between IBM, and Novell, on behalf of itself and SCO,
      is hereby replaced in its entirety."

67.   Had Novell owned the copyrights or possessed the authority to waive, revoke, or
      otherwise control the rights to the source code, it would have stood by its April 26, 1996

18

purported amendment; SCO would have had no right to, in effect, veto that unauthorized amendment; and IBM would not have acquiesced to that veto.

68. Amendment X is thus contemporaneous evidence that Novell considered Santa Cruz the sole and exclusive owner of the copyrights and source code and that Novell recognized that it lacked the authority to waive, revoke, or otherwise control claims or rights related to the UNIX source code, generally and with regard to IBM specifically.

69. To prevent a recurrence of the events leading to Amendment X, the parties decided to clarify Section 4.16 of the APA by entering into Amendment No. 2 to the APA on the same date they executed Amendment X. Paragraph B.5 of Amendment No. 2 provides:

> This Amendment does not give Novell the right to increase any SVRX licensee's rights to SVRX source code, nor does it give Novell the right to grant new SVRX source code licenses. In addition, Novell may not prevent SCO from exercising its rights with respect to SVRX source code in accordance with the [APA].

70. Thus, Amendment No. 2 made it redundantly clear that Novell had retained no rights to control SCO's sole exclusive ownership of the source code and associated license agreements. In fact, Amendment No. 2 made clear that Novell could not unilaterally agree to a buyout even of SVRX royalties. Even with respect to its interest in the binary royalty stream, therefore, Novell lacked the authority to waste or forego the royalties, or to grant a licensee a buyout of its relationship with SCO.

71. Despite plain language to the contrary in Paragraph B.5, Novell has attempted to increase a "SVRX licensee's rights to SVRX source code," "prevent SCO from exercising its rights with respect to SVRX source code," and effectively "grant new SVRX source code licenses," by purporting to waive and revoke SCO's claims and rights against IBM.

## F. Novell's Prior Conduct Belies Claims

72.    During the years between the signing of the APA (in September 1995) and about May 2003, the parties' dealings and course of conduct evidenced their understanding that the APA had transferred the business to Santa Cruz, including the copyrights.

73.    As stated, Novell and Santa Cruz entered into the TLA, which licensed back to Novell the UNIX and UnixWare technology transferred under the APA. Had Novell retained the copyrights under the APA, it would have been irrational for Novell to execute a license-back agreement for technology already covered by the copyrights it purportedly owned. Thus, the TLA, without more, evidences Novell's understanding that the APA had transferred the copyrights to SCO.

74.    Though, at the time they executed Amendment No. 2, the parties shared the understanding that APA intended to and did transfer the copyrights to Santa Cruz, they decided to take advantage of the opportunity afforded them by Amendment No. 2 to further clarify the APA by reiterating the transfer of the copyrights.

75.    Amendment No. 2 made clear that Novell had transferred to SCO the "copyrights and trademarks owned by Novell as of the date of the [APA] required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies," and that Novell would no longer be liable to any party bringing a claim "pertaining to said copyrights and trademarks."

76.    During the seven-plus years between the signing of the APA and about May 2003, Novell also did not question, much less challenge, SCO's open and public conduct as the sole and exclusive owner of the UNIX and UnixWare business, including the copyrights.

20

77.   As an obvious example, SCO distributed its UNIX and UnixWare source-code and binary products widely, with copyright notices in its name. During those years, Novell did not allege that SCO's use and distribution of those products infringed Novell's copyrights. Nor did Novell dispute SCO's public claims of copyright ownership in any way.

78.   In a reported transaction consummated in 2001, Santa Cruz transferred the UNIX and Unixware business to SCO (then operating as Caldera). Despite the public nature of that transaction, Novell again did not dispute Santa Cruz's claim of ownership, or transfer, of the business, including the copyrights.

79.   During those years, Novell conducted one audit pursuant to Section 1.2(b) of the APA. Novell limited that audit to a review of SCO's administration of the SVRX binary royalty stream. Novell did not request or receive other information concerning the UNIX and UnixWare business, including any accounting of source-code licenses or fees.

80.   As a result of these and other examples of the parties' shared understanding of the meaning and intent of the APA, it was widely known in the software industry (including by IBM) that SCO owned and freely exercised its copyrights in UNIX and UnixWare.

81.   Indeed, the law firms that represented Novell and Santa Cruz in negotiating and executing the APA, Wilson, Sonsini, Goodrich & Rosati ("WSGR") and Brobeck, Phleger & Harrison LLP ("Brobeck"), respectively, also represented Santa Cruz and Caldera, respectively, during the subsequent transfer of the business to Caldera.

82.   It was not until about May 2003 (only weeks after SCO filed its lawsuit against IBM and just months before Novell announced its Linux partnership with IBM) that Novell suddenly reversed its conduct of seven-plus years.

**G. In the Alternative, Novell Should be Ordered to Effectuate the Transfer**

83.     In its public statements, Novell has alleged that the APA (even together with Amendment

No. 2) is a writing insufficient to have transferred the copyrights under Section 204(a) of

the Copyright Act. Even if (contrary to precedent) this were true, SCO would be entitled

to a transfer of the copyrights under the terms of the APA.

84.     The parties to the APA repeatedly covenanted to take further actions necessary to

consummate the transfer of the business to SCO.

85.     Section 1.7(c) of the APA provides:

>       (c)     <u>Taking of Necessary Action: Further Action</u>. If, at any
>       time after the Closing Date, any further action is necessary or
>       desirable to carry out the purposes of this Agreement the parties
>       agree to take, and will take, all such lawful and necessary and/or
>       desirable action.

86.     Section 4.9 of the APA provides in part:

>       4.9     <u>Commercially Reasonable Efforts</u>. Subject to the terms
>       and conditions provided in this Agreement, each of the parties
>       hereto shall use its commercially reasonable efforts to take
>       promptly, or cause to be taken all actions, and to do promptly, or
>       cause to be done, all things necessary, proper or advisable under
>       applicable laws and regulations to consummate and make
>       effective the transactions contemplated hereby. . . .

87.     Section 4.12 of the APA provides:

>       4.12    <u>Additional Documents and Further Assurances</u>. Each
>       party hereto, at the request of another party hereto, shall execute
>       and deliver such other instruments and do and perform such other
>       acts and things as may be necessary or desirable for effecting
>       completely the consummation of this Agreement and the
>       transactions contemplated hereby.

88.     The parties to the APA intended for the APA to transfer the business, including the

copyrights, to Santa Cruz. As the successor-in-interest to Santa Cruz, SCO alleges that it

22

is the current owner of the business, including the copyrights.  In the alternative, if it is determined that the APA did not effectuate the transfer intended by the parties to the APA, Novell must take the actions necessary to effectuate that transaction in order to comply with Sections 1.7(c), 4.9, and 4.12 of the APA.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Slander of Title)

89.   SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

90.   SCO is the sole and exclusive owner of all copyrights related to UNIX and UnixWare source code and all documentation and peripheral code and systems related thereto.

91.   Novell has slandered SCO's title and rights to its UNIX and UnixWare copyrights and damaged SCO's business reputation and potential contractual relationships with potential customers by making false oaths of ownership to public officials, and by repeatedly representing both to the public in general and directly to several of SCO's customers and potential customers that Novell, and not SCO, owns UNIX and UnixWare and the copyrights.

92.   Novell's representations regarding its purported ownership of UNIX and UnixWare copyrights are patently false, and Novell made such representations intentionally, maliciously, and with the utter disregard for the truthfulness thereof.

93.   As a consequence of Novell's conduct as alleged herein, SCO has incurred actual and special damages in an amount to be proved at trial.

94.   SCO has also incurred significant attorneys' fees and costs in attempting to remove the cloud Novell has placed on SCO's title to UNIX and UnixWare, including but not limited

23

to attorneys' fees incurred in researching and reviewing Novell's improper copyright registrations; attempting to mitigate damages by correcting and responding to Novell's false representations made to third parties; and in prosecuting this and other actions to protect SCO's title to UNIX and UnixWare and related rights.

95.    Novell's conduct as alleged herein was intentionally and maliciously designed to destroy SCO's valuable rights to the UNIX and UnixWare copyrights and further destroy SCO's business livelihood and damage its shareholders. As such, this Court should impose an award of punitive damages against Novell in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of the APA and TLA)**

96.    *SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.*

97.    Novell has materially breached Section 1.6 of the APA and Section II.A.(2) of the TLA by distributing the Licensed Technology as part of a product (Linux) that is directly competitive with SCO's core server operating systems.

98.    Novell has materially breached Section 1.6 of the APA and Section II.A.(2) of the TLA by distributing the Licensed Technology as part of a product (Linux) wherein that technology constitutes a primary portion of the value of that product.

99.    Novell has also breached the covenant of good faith and fair dealing under the APA and TLA by affirmatively seeking to deprive SCO of the benefits to which it is entitled under those agreements, through numerous acts of bad faith, including without limitation: (a) making false and misleading statements denying SCO's ownership of the copyrights in UNIX and UnixWare; (b) undermining the business that it sold to SCO by distributing

24

UNIX technology in Linux, in violation of the APA's and TLA's non-compete provisions; and (c) purporting to waive and revoke SCO's rights and claims against IBM.

100. Novell's breaches of the APA and TLA have caused SCO damage in an amount to be proved at trial. Those breaches have also caused SCO special damages, including without limitation the costs of prosecuting this action.

### THIRD CLAIM FOR RELIEF
**(Alternative Breach-of-Contract Claim Seeking Specific Performance)**

101. SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

102. UNIX and UnixWare, as well as the copyrights in UNIX and UnixWare, are unique and possess special value.

103. The intent of the parties to the APA, and the purpose and effect of the APA, were to transfer the UNIX and UnixWare business, including all copyrights, to SCO's predecessor in interest, Santa Cruz.

104. Under Sections 1.7(c), 4.9, and 4.12 of the APA, Novell is obligated to take all actions necessary to effectuate the purposes of the APA and consummate the transactions contemplated therein.

105. In its public statements, including its pleadings in this lawsuit, Novell has repeatedly claimed that the APA (even as amended) did not transfer the copyrights to SCO.

106. In its public statements, including its pleadings in this lawsuit, Novell has repeatedly claimed that, under the APA, it retained the right to take, or direct SCO to take, certain actions (such as waiving SCO's claims against IBM) that extinguish the value of the UNIX and UnixWare business.

107.　In light of these continuing claims by Novell, SCO is entitled (as an alternative to its other claims for relief) to an order directing Novell to specifically perform its obligations under Sections 1.7(c), 4.9, and 4.12, by taking the actions necessary to effectuate the intended purposes of the APA and consummate the transactions contemplated therein.

108.　In particular, SCO is entitled to an order directing Novell to execute documents (and take any other actions) necessary to transfer to SCO (a) the copyrights, and (b) the UNIX and UnixWare business, without subjecting any portion of that business, other than the SVRX binary royalty stream, to Sections 4.16, 1.2(b), and 1.2(f) of the APA.

### FOURTH CLAIM FOR RELIEF
### (Copyright Infringement)

109.　SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

110.　The APA transferred all right, title, and interest to and in the copyrights in UNIX, UnixWare, and various supporting documents to SCO, through its predecessor in interest.

111.　SCO is the sole and exclusive owner of the copyrights in UNIX, UnixWare, and the associated supporting materials.

112.　As shown on Exhibit A, SCO and its predecessors properly registered, at a minimum, copyrights in UNIX, UnixWare, and the associated supporting materials describing the UNIX system.

113.　Pursuant to 17 U.S.C. § 410(c), SCO's certificates of copyright registrations constitute prima facie evidence of the validity of the copyrights and the facts stated in the certificates. SCO's registrations of its copyrights in UNIX and UnixWare are entitled to that statutory presumption.

26

114. SCO and its predecessors created and developed the intellectual property covered by the copyrights as original works of authorship, and as such, those materials automatically became subject to copyright protection under 17 U.S.C. § 102(a) when they were fixed in a tangible medium of expression.

115. Copyright protection under 17 U.S.C. § 106 extends to derivative works, which are defined in 17 U.S.C. § 101 to include works based on the original work and any other form in which the original work may be recast, transformed, modified, or adapted.

116. Novell has infringed and continues to infringe SCO's copyrights by copying, reproducing, modifying, sublicensing, and/or distributing Linux products containing unauthorized contributions of SCO's copyrighted intellectual property.

117. Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is not limited to the appropriation of numerous data structures and algorithms contained in or derived from SCO's copyrighted material. A partial listing of these data structures and algorithms is provided at Exhibit B.

118. In addition, under the specific terms and conditions set forth in the TLA and for the limited purpose of the TLA, SCO granted Novell a non-exclusive license to the technologies covered by SCO's copyrights in UNIX and UnixWare. Novell expressly covenanted not to use those technologies in a general-purpose operating system that competes with SCO's core application server products or in a product wherein that intellectual property constitutes a primary portion of the value of the product. Novell has infringed and is infringing SCO's copyrights by using, copying, reproducing, modifying,

27

sublicensing, and distributing SCO's copyrighted intellectual property outside of the limited license provided by the TLA.

119. As a result of Novell's infringing acts, SCO has been damaged and is entitled to actual damages and Novell's profits resulting from those acts, pursuant to 17 U.S.C. § 504(a); statutory damages, pursuant to 17 U.S.C. § 504(b); and enhanced damages, costs, and attorney's fees pursuant to 17 U.S.C. § 505.

120. In addition, because Novell's conduct has caused, and if not enjoined, will continue to cause irreparable harm to SCO without an adequate remedy at law, SCO is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

### FIFTH CLAIM FOR RELIEF
### (Unfair Competition)

121. SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

122. Novell has knowingly, intentionally, and in bad faith engaged in a pattern of conduct aimed at depriving SCO of the value of its UNIX technology. Among other things, Novell has falsely claimed ownership of SCO's copyrights in UNIX and UnixWare, misappropriated SCO's UNIX technology in Linux and forced SCO to compete in the marketplace against its own intellectual property, and has wrongfully attempted to thwart SCO's rights and efforts to bring legal claims in defense of its UNIX intellectual property.

123. Novell's misconduct is likely to result in confusion, and in fact has resulted in confusion, in the marketplace concerning UNIX, Linux, and other products.

124. As a direct result of Novell's unfair competition, SCO has and will continue to suffer damage to its business, reputation, and goodwill in an amount to be proved at trial.

28

125.    Because Novell's misconduct is intentionally and maliciously designed to destroy SCO's

valuable rights to the copyrights and further destroy SCO's business livelihood, this

Court should impose punitive damages against Novell in an amount to be determined at

trial.

126.    SCO is entitled to and seeks restitutionary, injunctive, and other remedies as may be

available under the applicable unfair-competition law.

### V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff SCO prays this Court enter judgment for SCO and against

Novell:

1.    awarding SCO actual, special, enhanced, and statutory damages;

2.    awarding punitive damages for Novell's malicious and willful conduct as alleged herein;

3.    granting preliminary and permanent injunctive relief (a) requiring Novell to assign to

SCO any and all copyrights Novell improperly registered in UNIX and UnixWare

following the Asset Purchase Agreement; (b) preventing Novell from representing in any

forum that it has any ownership interest whatsoever in those copyrights; and (c) requiring

Novell to retract or withdraw all representations it has made regarding its purported

ownership of the copyrights;

4.    granting preliminary and permanent injunctive relief preventing Novell from copying,

reproducing, modifying, sublicensing, and/or distributing SCO's UNIX and UnixWare

technology except as expressly provided by the TLA;

29

5.      ordering Novell, as an alternative, to specifically perform its obligations under the APA
        by taking the actions necessary to effectuate the purposes of the APA and consummate
        the transactions contemplated therein;

6.      awarding attorneys' fees, costs, and pre- and post-judgment interest; and

7.      granting all other legal and equitable relief deemed just and proper by this Court.

## VI.    JURY TRIAL DEMAND

SCO demands trial by jury on all issues so triable.

DATED this 30th day of December, 2005.

                            Respectfully submitted,


                            HATCH, JAMES & DODGE, P.C.
                            Brent O. Hatch
                            Mark F. James

                            BOIES, SCHILLER & FLEXNER LLP
                            Robert Silver
                            Stuart H. Singer
                            Stephen N. Zack
                            Edward Normand

                            By

                            *Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that on the 30th day of December, 2005,

a true and correct copy of the foregoing Second Amended Complaint was served on Defendant

Novell, Inc., by U.S. Mail to:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

**EXHIBIT A**

| TITLE | REGISTRATION NO. |
|---|---|
| UNIX | Txu-510-028 |
| UNIX Version 6 | Txu-511-236 |
| UNIX V32 | Txu-516-704 |
| UNIX Version 7 | Txu-516-705 |
| UNIXWARE 7.1.3 | TX 5-787-679 |
| UNIX SYSTEM V RELEASE 3.0 | TX 5-750-270 |
| UNIX SYSTEM V RELEASE 3.1 | TX 5-750-269 |
| UNIX SYSTEM V RELEASE 3.2 | TX 5-750-271 |
| UNIX SYSTEM V RELEASE 3.2 | TX 5-750-268 |
| UNIX SYSTEM V RELEASE 4.0 | TX 5-776-217 |
| UNIX SYSTEM V RELEASE 4.1ES | TX 5-705-356 |
| UNIX SYSTEM V RELEASE 4.2 | TX 5-762-235 |
| UNIX SYSTEM V RELEASE 4.1 | TX 5-762-234 |
| UNIX SYSTEM V RELEASE 4 Integrated Software Development Guide | TX 2 931-646 |
| UNIX SYSTEM V RELEASE 4 Reference Manual For Intel Processor Commands m-z | TX 3 221-656 |
| UNIX SYSTEM V RELEASE 4 Reference Manual for Intel Processors Commands a-l | TX 3 227-639 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface reference Manual for Intel Processors | TX 3 232-578 |
| UNIX SYSTEM V RELEASE 4 Programmer's Guide: Streams for Intel Processors | TX 3 218-286 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface Reference Manual for Motorola Processors | TX 220-500 |
| UNIX SYSTEM V RELEASE 4 Reference Manual for Motorola Processors Commands a-l | TX 3 220-331 |
| UNIX SYSTEM V RELEASE 4 PROGRAMMER'S GUIDE | TX 2 120-502 |
| UNIX SYSTEM V/386 RELEASE 4 Transport Application Interface Guide | TX 2 881-542 |
| UNIX SYSTEM V/386 RELEASE 4 Device Interface/Driver Kernel Interface (DDI/DKI) reference Manual | TX 2 883-235 |
| UNIX SYSTEM V/386 RELEASE 4 Programmer's Guide: SCSI Driver Interface | TX 2 902-863 |
| UNIX SYSTEM V/386 RELEASE 4 System Administrator's Reference Manual | TX 2 881-543 |

32

| | |
|---|---|
| UNIX SYSTEM V/386 RELEASE 4 Programmer's Reference Manual | TX 2 853-760 |
| UNIX SYSTEM V/386 RELEASE 4 User's Reference Manual | TX 2 890-471 |
| UNIX SYSTEM V/386 RELEASE 4 User's reference Manual | TX 2 820-791 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface (DDI/DKI) Reference Manual | TX 3 820-792 |
| UNIX SYSTEM V RELEASE 4 Programmer's Guide: Streams | TX 2 833-114 |
| UNIX SYSTEM V RELEASE 4 Programmer's Reference Manual | TX 2 832-009 |
| UNIX SYSTEM V RELEASE 4 System Administrator's Reference Manual | TX 2 830-989 |
| UNIX SYSTEM V/386 Programmer's Guide Vol. II | TX 2 454-884 |
| UNIX SYSTEM V/386 RELEASE 3.2 Programmer's Reference Manual | TX 2 494-658 |
| UNIX SYSTEM V/386 Programmer's Reference Manual | TX 2 373-759 |
| UNIX SYSTEM V/386 System Administrator's Reference Manual | TX 2 371-952 |
| UNIX SYSTEM V/386 Streams Programmer's Guide | TX 2 367-657 |
| UNIX SYSTEM V/386 Streams Primer | TX 2 366-532 |
| UNIX SYSTEM V RELEASE 3.2 System Administrator's Reference Manual | TX 2 611-860 |
| UNIX SYSTEM V RELEASE 3.2 Programmer's Reference Manual | TX 2 605-292 |
| UNIX SYSTEM V Documentor's Workbench Reference Manual | TX 2 986-119 |
| UNIX SYSTEM V RELEASE 4 User's Reference Manual/System Administrator's Reference Manual for Motorola Processors Commands m-z | TX 3 218-267 |
| UNIX SYSTEM V RELEASE 4 System Files and Devices reference Manual for Motorola Processors | TX 3 221-654 |

**EXHIBIT B**

Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is not limited to the appropriation of the following data structures and algorithms contained in or derived from SCO's copyrighted material:

1. SuSE's implementation of the "Read/Copy/Update" algorithm
2. SuSE's implementation of NUMA Aware Locks
3. SuSE's implementation of the distributed lock manager
4. SuSE's implementation of reference counters
5. SuSE's implementation of asynchronous I/O
6. SuSE's implementation of the *kmalloc* data structure
7. SuSE's implementation of the console subsystem
8. SuSE's implementation of IRQs
9. SuSE's implementation of shared memory locking
10. SuSE's implementation of semaphores
11. SuSE's implementation of virtual memory
12. SuSE's implementation of IPCs
13. SuSE's implementation of load balancing
14. SuSE's implementation of PIDs
15. SuSE's implementation of numerous kernel internals and APIs
16. SuSE's implementation of ELF
17. SuSE's implementation of STREAMS
18. SuSE's implementation of dynamic linking
19. SuSE's implementation of kernel pre-emption
20. SuSE's implementation of memory mapping
21. SuSE's implementation of ESR
22. SuSE's implementation of buffer structures
23. SuSE's implementation of process blocking
24. SuSE's implementation of numerous header files
25. SuSE's implementation of Multi-path I/O

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1997 WL 662337 (S.D.N.Y.)
**(Cite as: 1997 WL 662337 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Ronald MASK, Plaintiff,
v.
Roger JOHNSON, Douglas Brophy, Jerome
Shipman, Andrew Phoenix, and James Bird,
Defendants.
Douglas BROPHY, Third-Party Plaintiff,
v.
City of New York, Third-Party Defendant.
**No. 96 CIV. 6167(DC).**

Oct. 22, 1997.
Menken & Dean, By Bruce E. Menken, Esq., New
York, New York, for Plaintiff.

Maurice H. Sercarz, Esq., Roger Johnson, New
York, New York, for Defendant.

Dienst & Serrins, Douglas Brophy, By James M.
Moschella, Esq., New York, New York, for
Defendant/Third-Party Plaintiff.

Garber, Klein & Nelson, Jerome Shipman, By
Mitchell S. Garber, Esq., Lake Success, New York,
for Defendant.

The Corporation Counsel, Attorney for Defendants,
Andrew Phoenix and James Bird, Attorney for Third-
Party Defendant, The City of New York, By Dineen
E. McDonald Garcia, Esq., New York, New York.

MEMORANDUM DECISION AND ORDER

CHIN, D.J.

*1 *In this civil rights case brought against defendant*
corrections officers for use of excessive force,
plaintiff Ronald Mask seeks to amend his complaint
for the second time to (1) name third-party defendant,
the City of New York (the "City"), as a defendant in
the main action, (2) assert a *Monell* claim against the
City, and (3) withdraw his conspiracy claims under
42 U.S.C. § § 1985(2) and 1986 and assert instead a
conspiracy claim under 42 U.S.C. § 1983. For the
following reasons, plaintiff's motion for leave to

amend is granted. [FN1]

> FN1. I had previously denied a request by
> plaintiff to add the City as a defendant and
> to assert additional claims because plaintiff's
> prior counsel had missed a deadline that I
> had set for filing an amended complaint. I
> have now reconsidered the matter.

DISCUSSION
Rule 15(a) of the Federal Rules of Civil Procedure
permits a party to amend a pleading after a
responsive pleading has been served "only by leave
of court or by written consent of the adverse party."
Fed.R.Civ.P. 15(a). This Rule also provides,
however, that "leave shall be freely given when
justice so requires," *id.,* and determining when
"justice so requires" rests within the sound discretion
of the trial court. *Zenith Radio Corp. v. Hazeltine
Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28
L.Ed.2d 77 (1971). Absent a showing of undue
prejudice to the opposing party or bad faith on the
part of the movant, amendments are generally
permitted. *See Litton Indus., Inc. v. Lehman Bros.
Kuhn Loeb Inc.,* 734 F.Supp. 1071, 1078
(S.D.N.Y.1990).

A second hurdle that the moving party must clear in
seeking to amend a pleading is the statute of
limitations. When the statute of limitations on a
plaintiff's claims has expired, Rule 15(c) permits
amendment of a pleading if the amended pleading
"relates back" to the date of filing of the original
pleading. Fed.R.Civ.P. 15(c). Where the amended
pleading seeks to add new *claims,* the amendment
relates back to the date of the original pleading when
"the claim ... asserted in the amended pleading arose
out of the conduct, transaction, or occurrence set
forth or attempted to be set forth in the original
pleading." *Id.* R. 15(c)(2).

Where the amended pleading seeks to name new
*parties* to the action, the amendment relates back to
the date of the original pleading when the above
"transaction or occurrence" test is met, and if, within
120 days of filing of the original pleading, "the party
to be brought in by amendment (A) has received such
notice of the institution of the action that the party
will not be prejudiced in maintaining a defense on the
merits, and (B) knew or should have known that, but
for a mistake concerning the identity of the proper

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 662337 (S.D.N.Y.)
**(Cite as: 1997 WL 662337 (S.D.N.Y.))**

party, the action would have been brought against the party." *Id.* R. 15(c)(3). The Second Circuit has held that 'mistake' under Rule 15(c)(3) requires a showing of either factual mistake as to the name of the party to be joined or a narrowly defined class of legal mistake, "*i.e.,* that [the plaintiff] misapprehended the identities of the individuals [he] wished to sue ... [or] misunderstood the legal requirements of [his] cause of action." *Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 36 (2d Cir.1996) (citing *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994)).

*2 Here, the defendants would suffer no prejudice were the plaintiff to be permitted to make the proposed amendments to his complaint. Defendant/third-party plaintiff Brophy has already asserted third party claims for indemnification against the City, based on the City's alleged involvement in, knowledge of, and acquiescence in the physical abuse of plaintiff. Plaintiff's *Monell* claim against the City is based on the same facts underlying the claim for indemnification asserted by Brophy against the City. Therefore, the City would not be prejudiced by the plaintiff's assertion of a *Monell* claim directly against it. Furthermore, any delay resulting from the plaintiff's attempt to amend his complaint for the second time will not prejudice defendants in any way because most of the defendants did not appear in the action until very recently, and no discovery has yet been commenced in the case. Thus, amendment of the complaint would be proper under Rule 15(a).

Moreover, plaintiff's proposed amendments to his complaint are proper under Rule 15(c). Plaintiff's *Monell* claim against the City and his § 1983 conspiracy claim against the individual defendants are not time-barred because they "relate back" to the filing date of his original complaint. The parties agree that the limitations period for these claims expired on July 3, 1996; however, the facts supporting plaintiff's § 1983 conspiracy claim are based on the individual defendants' alleged physical abuse of plaintiff while incarcerated in the Central Punitive Segregation Unit on Riker's Island, and, as discussed above, plaintiff's *Monell* claim against the City is based on the City's alleged role in the individual defendants' alleged misconduct. This alleged misconduct itself formed the basis of plaintiff's original *pro se* complaint. Therefore, plaintiff's *Monell* and § 1983 claims clearly arise out of the "conduct, transaction, or occurrence" set forth in plaintiff's original complaint. *See* Fed.R.Civ.P. 15(c)(2). Accordingly, plaintiff may amend his complaint to add these claims.

Furthermore, plaintiff's proposed addition of the City as a defendant in the main action satisfies the "relation back" test of Rule 15(c)(3). Because the Corporation Counsel represents both the City and two of the individual defendants, the City had constructive knowledge of the pending lawsuit through its attorney. The Corporation Counsel was served with the summons and complaint in this action on September 10, 1996, and therefore the City was indirectly notified of the suit well within 120 days of June 27, 1996, the date that plaintiff's original *pro se* complaint was filed with the Court's Pro Se Clerk's Office. Such service should have put the City on notice that it might be brought into the action, and, in fact, the City was impleaded as a third-party defendant, without objection, on June 3, 1997. Thus, because the City has been involved in this case essentially since its inception, it will not be prejudiced in maintaining a defense on the merits by being added as a defendant in the main action. *See id.* R. 15(c)(3)(A).

*3 Finally, plaintiff's original *pro se* complaint contains language such as "regularly beat," "pattern of brutality," "practice," and "informal policy," which is highly suggestive of a *Monell*-type claim. Such language has no legal significance unless plaintiff intended to assert a *Monell*-type claim. Thus, it is reasonable for the Court to conclude that plaintiff's omission of the City as a defendant in this action was due to lack of familiarity with the nuances of constitutional tort law rather than a conscious decision for strategic purposes. Accordingly, plaintiff's failure to name the City as a defendant in his earlier complaints can be deemed a legal mistake sufficient to satisfy the "relation back" test of Rule 15(c). *See id.* R. 15(c)(3)(B); *see also Soto,* 80 F.3d at 37 (permitting plaintiff to name individual defendants after the expiration of the statute of limitations on his § 1983 claims because his error in alleging constitutional violations without naming the individual defendants responsible was deemed to be a mistake of law sufficient to satisfy the "relation back" test of Rule 15(c)). Accordingly, plaintiff may also amend his complaint to add the City as a defendant in the main action.

For the foregoing reasons, plaintiff's motion for leave to amend the complaint is granted.

SO ORDERED.

Not Reported in F.Supp., 1997 WL 662337 (S.D.N.Y.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3
Not Reported in F.Supp., 1997 WL 662337 (S.D.N.Y.)
**(Cite as: 1997 WL 662337 (S.D.N.Y.))**


   **Motions, Pleadings and Filings (Back to top)**

• 1:96cv06167 (Docket) (Aug. 15, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

Central Division for the District of Utah

---

| | |
|---|---|
| THE SCO GROUP, INC., | **SCHEDULING ORDER AND ORDER VACATING HEARING** |
| Plaintiff, | **Case No.** 2:04-CV-139 DAK |
| vs. | **District Judge Dale A. Kimball** |
| NOVELL, INC., | |
| Defendant. | |

---

Pursuant to Fed. R. Civ. P. 16(b), the Magistrate Judge[1] received the Attorneys' Planning Report filed by counsel. The following matters are scheduled. The times and deadlines set forth herein may not be modified without the approval of the Court and on a showing of good cause.

IT IS ORDERED that the Initial Pretrial Hearing set for *December 20, 2005*, at *1:30 p.m.* is VACATED.

Counsel are directed to contact the district judge to discuss trial scheduling relative to *The SCO Group Inc. v. International Business Machines Corp.,* Case No. 2:03CV294 DAK, D. Utah *("SCO v. IBM case")*.

## **\*\*ALL TIMES 4:30 PM UNLESS INDICATED\*\***

| 1. | **PRELIMINARY MATTERS** | **DATE** |
|---|---|---|
| | Nature of claim(s) and any affirmative defenses: | |
| a. | **Was Rule 26(f)(1) Conference held?** | *Yes* |
| b. | **Has Attorney Planning Meeting Form been submitted?** | *Yes* |
| c. | **Was 26(a)(1) initial disclosure completed?** | *2/28/05* |
| 2. | **DISCOVERY LIMITATIONS** | **NUMBER** |
| a. | **Maximum Number of Depositions by Plaintiff(s)** | *25* |
| b. | **Maximum Number of Depositions by Defendant(s)** | *25* |
| c. | **Maximum Number of Hours for Each Deposition** (except for two depositions per party which may extend to 14 hours and as otherwise extended by agreement of parties) | *7* |

d.　　Maximum Interrogatories by any Party to any Party　　　　_25_

e.　　Maximum requests for admissions by any Party to any Party

f.　　Maximum requests for production by any Party to any Party

g.　　For purposes of calculating the number of depositions a side has taken, Rule 30(b)(6) depositions shall be counted based on the total time of the deposition(s) (where every seven (7) hours of 30(b)(6) testimony constitutes one deposition), not the number of notices or subpoenas, the number of categories within a notice or subpoena, or the number of designees offered in response thereto.

h.　　All deposition exhibits will be numbered sequentially, regardless of the identity of the deponent or the side introducing the exhibit. The same numbers will be used in pretrial motions and at trial.

i.　　The parties agree that there will be no discovery of drafts of expert reports or other communications with experts.

j.　　Where practicable, the parties will produce documents electronically or via CD to avoid unnecessary expense and effort. Where possible, originals will be made available for inspection upon request.

k.　　The parties anticipate that documents produced in this case may contain confidential information. The parties agree promptly to enter into an appropriate confidentiality agreement and submit a proposed protective order before the exchange of such documents.

l.　　The parties recognize that efficient resolution of this case will be aided by permitting Novell access to certain materials in the *SCO* v. *IBM* case. Pending the execution of an appropriate protective order, SCO authorizes Novell to have attorneys-eyes only access to those confidential materials in the *SCO v. IBM* case, including document productions, depositions, under-seal briefings, and discovery responses, that reasonably relate to a claim or defense in this litigation.

m.　　Documents that a party claims as privileged, including all copies made, will be returned immediately upon the request of the disclosing party without the need to show the production was inadvertent.

|   |   |   | DATE |
|---|---|---|---|

3.   **AMENDMENT OF PLEADINGS/ADDING PARTIES**[2]

    a.   **Last Day to File Motion to Amend Pleadings**     *3/7/06*

    b.   **Last Day to File  Motion to Add Parties**     *3/7/06*

4.   **RULE 26(a)(2) REPORTS FROM EXPERTS**[3]

    a.   **Party with Burden of Proof**     *11/17/06*

    b.   **Opposing Reports**     *12/8/06*

    c.   **Rebuttal Reports**     *12/22/06*

5.   **OTHER DEADLINES**

    a.   **Discovery to be completed by:**

        **Fact discovery**     *11/1/06*

        **Expert discovery** (Expert depositions will be taken where expert resides unless otherwise agreed.)     *1/12/07*

    b.   *(optional)* **Final date for supplementation of disclosures and discovery under Rule 26 (e)**

    c.   **Deadline for filing dispositive or potentially dispositive motions**     *1/26/07*

6.   **SETTLEMENT/ ALTERNATIVE DISPUTE RESOLUTION**

    a.   **Referral to Court-Annexed Mediation**     *N*

    b.   **Referral to Court-Annexed Arbitration**     *N*

    c.   **Evaluate case for Settlement/ADR on**

    d.   **Settlement probability:**

7.   **TRIAL AND PREPARATION FOR TRIAL:**

    a.   **Rule 26(a)(3) Pretrial Disclosures**[4]

        **Plaintiffs**     4/27/07

        **Defendants**     5/11/07

    b.   **Objections to Rule 26(a)(3) Disclosures** (if different than 14 days provided in Rule)

    c.   **Special Attorney Conference**[5] **on or before**     5/25/07

    d.   **Settlement Conference**[6] **on or before**     5/25/07

Case 2:04-cv-00139-DAK   Document 85   Filed 12/06/2005   Page 4 of 5

| | | | Time | Date |
|---|---|---|---|---|
| e. | Final Pretrial Conference | | 2:30 p.m. | 6/6/07 |
| f. | Trial | _Length_ | _Time_ | _Date_ |
| | i. Bench Trial | | | |
| | ii. Jury Trial | _21 days_ | _8:30 a.m._ | _6/25/07_ |

8.  **OTHER MATTERS:**

Counsel should contact chambers staff of the District Judge regarding Daubert and Markman motions to determine the desired process for filing and hearing of such motions. All such motions, including Motions in Limine should be filed well in advance of the Final Pre Trial. Unless otherwise directed by the court, any challenge to the qualifications of an expert or the reliability of expert testimony under Daubert must be raised by written motion before the final pre-trial conference.

The parties may serve papers upon designated counsel for each party, either by hand, by overnight mail, by facsimile, or by e-mail with a PDF attachment. When service is effectuated by any method other than by hand delivery, three additional calendar days shall be added to the response time, if any, pursuant to Rule 6(e).

The parties have reserves their rights to stipulate (subject to the Court's power to approve such stipulation), to amendments to their discovery plan, and to seek to amend this Scheduling Order, in the event that the pleadings are amended to add new claims and/or defenses.

Dated this 6th day of December, 2005.

BY THE COURT:

_____
**David Nuffer
U.S. Magistrate Judge**

1.     The Magistrate Judge completed Initial Pretrial Scheduling under DUCivR 16-1(b) and DUCivR 72-2(a)(5). The name of the Magistrate Judge who completed this order should NOT appear on the caption of future pleadings, unless the case is separately referred to that Magistrate Judge. A separate order may refer this case to a *Magistrate Judge under DUCivR 72-2 (b) and 28 USC 636 (b)(1)(A) or DUCivR 72-2 (c) and 28 USC 636 (b)(1)(B).* The name of any Magistrate Judge to whom the matter is referred under DUCivR 72-2 (b) or (c) should appear on the caption as required under DUCivR10-1(a).

2.     Counsel must still comply with the requirements of Fed. R. Civ. P. 15(a).

Case 2:04-cv-00139-DAK   Document 85   Filed 12/06/2005   Page 3 of 5

3.      The identity of experts and the subject of their testimony shall be disclosed as soon as an expert is retained or, in the case of an employee-expert, as soon as directed to prepare a report.

4.      Any demonstrative exhibits or animations must be disclosed and exchanged with the 26(a)(3) disclosures.

5.      The Special Attorneys Conference does not involve the Court. Counsel will agree on voir dire questions, jury instructions, a pre-trial order and discuss the presentation of the case. Witnesses will be scheduled to avoid gaps and disruptions. Exhibits will be marked in a way that does not result in duplication of documents. Any special equipment or courtroom arrangement requirements will be included in the pre-trial order.

6.      Counsel must ensure that a person or representative with full settlement authority or otherwise authorized to make decisions regarding settlement is available in person or by telephone during the Settlement Conference.

I:\LAW\IPT\2005\SCO v Novell 2 04 cv 139 DAK.wpd

# EXHIBIT D



Brent O. Hatch (5715)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Plaintiff-Counterclaim
Defendant, The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>    Defendant-Counterclaim Plaintiff. | **ATTORNEYS' PLANNING MEETING REPORT**<br><br>Civil No.: 2:04CV00139<br><br>Judge: Dale A. Kimball |

Plaintiff-Counterclaim Defendant, The SCO Group, Inc. ("SCO"), and Defendant-Counterclaim Plaintiff, Novell, Inc. ("Novell"), hereby jointly submit this Attorneys' Planning Report, pursuant to Federal Rule of Civil Procedure 26(f).

1.    **ATTORNEYS' MEETING:** Pursuant to Federal Rule of Civil Procedure 26(f), a meeting was held by telephone conference on November 17, 2005, between the parties to discuss the schedule in this matter.

   a.    Counsel for SCO, Edward Normand, and counsel for Novell, Ken W. Brakebill, were in attendance. Counsel also engaged in further discussions, after November 17, 2005, in an effort to agree to a discovery plan and case schedule in this matter.

   b.    The parties have discussed the nature and basis of their claims and defenses.

2.    **INITIAL DISCLOSURES:** The parties will exchange the information required by Rule 26(a)(1) by February 28, 2005.

3.    **DISCOVERY PLAN:** Based on the claims and defenses currently pled, the parties propose to the Court the following discovery plan:

   (a)    Discovery is necessary on all of the claims, defenses and counterclaims raised in this suit, both directly or indirectly, and on the damages the parties assert.

   (b)    The parties expect to utilize interrogatories, requests for production, requests for admission and oral depositions in conducting discovery. The parties agree that the Federal Rules of Civil Procedure should control the timing and scope of discovery except as provided below.

   (c)    The parties agree to no more than twenty-five (25) non-expert depositions per party. For purposes of calculating the number of depositions a side has taken, Rule 30(b)(6) depositions shall be counted based on the total time of the deposition(s) (where every seven (7) hours of 30(b)(6) testimony constitutes one deposition), not the number of notices or subpoenas,

the number of categories within a notice or subpoena, or the number of designees offered in response thereto. The parties shall be allowed to exceed the time limitations for depositions for two witnesses of the opposing party; this enlargement would allow depositions to last up to two days. The parties agree to no more than twenty-five (25) interrogatories per party.

(d)    The parties agree that all fact discovery will be completed no later than November 1, 2006.

(e)    The parties agree that the parties bearing the burden of proof on issues will designate and submit the reports of its expert witnesses on these issues, if any, by November 17, 2006. The deadline for submitting any opposing expert reports will be December 8, 2006. Any rebuttal expert reports must be served by December 22, 2006. The parties shall make their respective experts available for deposition by January 12, 2007. Expert depositions will be taken where the expert resides unless otherwise agreed. The parties agree that there will be no discovery of drafts of expert reports or other communications with experts.

(f)    The parties agree that expert discovery in this matter will be completed no later than January 12, 2007.

(g)    The parties may serve papers upon designated counsel for each party, either by hand, by overnight mail, by facsimile, or by e-mail with a PDF attachment. When service is effectuated by any method other than by hand delivery, three additional calendar days shall be added to the response time, if any, pursuant to Rule 6(e).

(h)    All deposition exhibits will be numbered sequentially, regardless of the identity of the deponent or the side introducing the exhibit. The same numbers will be used in pretrial motions and at trial.

3

(i)      Where practicable, the parties will produce documents electronically or via CD to avoid unnecessary expense and effort. Where possible, originals will be made available for inspection upon request.

(j)      The parties anticipate that documents produced in this case may contain confidential information. The parties agree promptly to enter into an appropriate confidentiality agreement and submit a proposed protective order before the exchange of such documents.

(k)      The parties recognize that efficient resolution of this case will be aided by permitting Novell access to certain materials in *The SCO Group Inc. v. International Business Machines Corp.*, Case No. 2:03CV294 DAK, D. Utah ("*SCO v. IBM* case"). Pending the execution of an appropriate protective order, SCO authorizes Novell to have attorneys-eyes only access to those confidential materials in the *SCO v. IBM* case, including document productions, depositions, under-seal briefings, and discovery responses, that reasonably relate to a claim or defense in this litigation.

(l)      Documents that a party claims as privileged, including all copies made, will be returned immediately upon the request of the disclosing party without the need to show the production was inadvertent.

(m)      The parties reserve their rights to stipulate (subject to the Court's power to approve such stipulation), to amendments to, and to seek to amend, this discovery plan, in the event that the pleadings are amended to add new claims and/or defenses.

## 4.   OTHER ITEMS:

(a)      The parties believe that a conference with the Court is necessary prior to entry of this Attorneys' Planning Report and a Scheduling Order, at least with respect to the issue of the timing of the trial in this case, as discussed in subparagraph (h) below. Counsel for Novell

requests that the Court permit telephone appearances by counsel since counsel for Novell would otherwise be traveling a substantial distance (principal counsel for SCO is scheduled to argue a motion in the District of Utah, in the *SCO v. IBM* case, on the same day as the currently scheduled pretrial conference).

(b)     The parties agree and stipulate that the cutoff date for joining additional parties is March 7, 2006.

(c)     The parties agree and stipulate that the cutoff date for amending pleadings is March 7, 2006.

(d)     The parties agree and stipulate that the cutoff date for filing dispositive motions is January 26, 2007.

(e)     The parties believe that the potential for settlement is low.

(f)     The potential for resolution of this matter through the Court's alternative dispute resolution program is poor.

(g)     Final lists of witnesses, exhibits and objections thereto pursuant to Federal Rule of Civil Procedure 26(a)(3) are due on the dates specified by that rule.

(h)     The parties agree that the pretrial conference in this case should be held approximately one month before trial. However, as discussed below, the parties differ with respect to the timing of the trial in this case.

**SCO's Position:** SCO believes that this case should be scheduled for trial beginning June 1, 2007, in consideration of the currently scheduled, multi-week trial in the *SCO v. IBM* case that currently is scheduled to begin on February 26, 2007.

**Novell's Position:** It is Novell's position that this case will be ready for trial a few months before June 1, 2007. In addition, Novell believes that an earlier trial date in this case is

appropriate so as to reflect the fact that certain claims and defenses in this case relate to, and could

affect, resolution of certain claims and defenses currently being litigated in the *SCO v. IBM* case.

    (i)      The estimated length of the trial is twenty-one (21) days.  Trial will be to a jury.

Dated this 1st day of December, 2005.        Dated this 1st day of December, 2005.

By: _____      By: _____
    ANDERSON & KARRENBERG        HATCH JAMES & DODGE
    Thomas R. Karrenberg            Brent O. Hatch

    MORRISON & FOERSTER         BOIES, SCHILLER & FLEXNER LLP
    Michael A. Jacobs               Stephen N. Zack
    Ken W. Brakebill               Robert Silver
                                          Stuart Singer

    *Attorneys for Defendant-Counterclaim*    Edward Normand
    *Plaintiff*

                                          *Attorneys for Plaintiff-Counterclaim*
                                        *Defendant*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of December, 2005, I caused to be mailed a true

and correct copy of the foregoing via first class U.S. Mail, postage prepaid, to the following:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Ken W. Brakebill
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482