**MORRISON & FOERSTER LLP**
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

**ANDERSON & KARRENBERG**
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Novell, Inc.**

FILED
DISTRICT COURT

2006 APR 10  P 4: 17

DIST.  OF UTAH

BY:
DEPUTY CLERK

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>      Plaintiff and Counterclaim-<br>      Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>      Defendant and Counterclaim-<br>      Plaintiff. | **DECLARATION OF MICHAEL A. JACOBS IN SUPPORT OF NOVELL'S MOTION TO STAY**<br><br>*[REDACTED pursuant to this Court's April 10, 2006 Order]*<br><br>Case No. 2:04-CV-00139<br><br>Judge Dale A. Kimball |

I, Michael A. Jacobs, declare as follows:

1.    I am an attorney duly licensed to practice law in the State of California and a partner in the law firm of Morrison & Foerster LLP, counsel of record for Defendant and Counterclaim-Plaintiff Novell, Inc. ("Novell") in this action.  I was admitted to practice before this Court *pro hac vice* by this Court's Order of February 10, 2004.  I submit this declaration in support of Novell's Motion to Stay.  The statements made herein are based on my personal knowledge.

2.    As discussed below, some of the exhibits attached hereto include information that may be subject to a confidentiality clause.  Accordingly, the complete version of this declaration, which includes full and unredacted copies of all exhibits, is being submitted under seal.  A public version of this declaration, which deletes or redacts confidential documents and information, is also being submitted.

3.    Attached hereto are true and correct copies of the following documents:

(a)    Exhibit 1 is a true and correct copy of the Second Amended Complaint filed on February 3, 2006 by Plaintiff SCO in this action, *The SCO Group, Inc.  v. Novell*, Case No. 2:04-CV-0139, United States District Court for the District of Utah.

(b)    Exhibit 2 is a true and correct copy of the executed Master Transaction Agreement for the UnitedLinux project, dated May 29, 2002, received from Novell.  This Exhibit is being filed under seal due to a confidentiality clause in the Master Transaction Agreement.  Thus, the public version of this declaration does not include this document.

(c)    Exhibit 3 is a true and correct copy of the executed UnitedLinux Joint Development Contract, dated May 29, 2002, received from Novell.  This Exhibit is being filed under seal due to a confidentiality clause in the Joint Development Agreement.  Thus, the public version of this declaration does not include this document.

(d)    Exhibit 4 is a true and correct copy of relevant excerpts of Novell's Answer and Counterclaims (specifically, pages 1, 17, and 45), filed in this action on July 29, 2005.

(e)    Exhibit 5 is a true and correct copy of relevant excerpts from SCO's Answer to Novell's Counterclaims (specifically, pages 1, 6, and 25), filed in this action on September 12, 2005.

(f)    Exhibit 6 is a true and correct copy of the Request for Arbitration filed on April 10, 2006 by SuSE Linux, GmbH with The Secretariat of the ICC International Court of Arbitration, 38, Cours Albert 1er, 75008 Paris, France. The Request for Arbitration is being been filed under seal because it contains quotations of the terms of the Master Transaction Agreement and the Joint Development Agreement, which have confidentiality clauses. The public version of this declaration contains a redacted version of this Exhibit, which deletes quotations of the contents of the Master Transaction Agreement and the Joint Development Agreement. Exhibit 6 does not include a complete set of the exhibits submitted to the ICC with the Request for Arbitration. However, most of the other documents attached hereto (specifically, Exhibits 1, 2, 3, and 7 to 13) have been submitted to the ICC as exhibits to the Request for Arbitration.

(g)    Exhibit 7 is a true and correct copy of the UnitedLinux press release titled "Caldera, Conectiva, SuSE, Turbolinux Partner to Create UnitedLinux and Produce a Uniform Version of Linux For Business" dated May 30, 2002, available at http://www.unitedlinux.com/en/press/pr053002.html.

(h)    Exhibit 8 hereto is a true and correct copy of the UnitedLinux press release titled "United Linux Releases Version 1.0" dated November 19, 2002, available at http://www.unitedlinux.com/en/press/pr111902.html.

(i)    Exhibit 9 hereto is a true and correct copy of the SCO press release titled "SCO Unveils SCO Linux 4, Powered by UnitedLinux" dated November 19, 2002, available at http://ir.sco.com/releasedetail.cfm?ReleaseID=95573.

(j)    Exhibit 10 is a true and correct copy of the SuSE press release titled "SUSE LINUX Unveils the Next Generation of SUSE Linux Enterprise Server" dated November 19, 2002, available at http://www.novell.com/news/press/archive/2002/suse_archive/sles_8.html.

(k)    Exhibit 11 is a true and correct copy of a letter from Darl McBride to Jack Messman dated May 12, 2003.

(l)    Exhibit 12 is a true and correct copy an article by S. Shankland titled "SuSE Sheltered by SCO Pact" dated May 5, 2003, available at http://news.com.com/SuSE+sheltered+by+SCO+pact/2100-1016_3-999620.html.

(m)    Exhibit 13 is a true and correct copy of an article by John Blau titled "Q&A: SCO's Chris Sontag on how Unix plus Linux equals trouble" dated May 13, 2003, available at http://www.computerworld.com/printthis/2003/0,4814,81191,00.html.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 7th day of April, 2006 in San Francisco, California.


_____
Michael A. Jacobs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _10th_ day of April, 2006, I caused a true and correct

copy of the foregoing **DECLARATION OF MICHAEL A. JACOBS IN SUPPORT OF**

**NOVELL'S MOTION TO STAY [*REDACTED pursuant to this Court's April 10, 2006***

***Order*]** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101


Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California  90401


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131


Robert Silver
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504

4

# EXHIBIT 1

FILED
U.S. DISTRICT COURT

2006 FEB -3  P 1: 02

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NOVELL, INC.,<br><br>    Defendant. | **SECOND AMENDED COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:04CV00139<br>Honorable Dale A. Kimball |

Plaintiff, The SCO Group, Inc. ("SCO"), sues Defendant, Novell, Inc. ("Novell"), and alleges as follows:

## I.    NATURE OF THIS ACTION

1.    Through an Asset Purchase Agreement between Novell and The Santa Cruz Operation ("Santa Cruz") dated September 19, 1995, as amended, (the "APA"), and SCO's subsequent acquisition of two divisions from Santa Cruz through a transaction closing on or about May 7, 2001, SCO acquired all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, license agreements, and copyrights, as well as the right to bring actions for infringement or other violations relating to said assets (collectively, the "business" or the "UNIX and UnixWare business").

2.    The intent of the parties to the APA and the purpose of the APA, as well as the intent and purpose of the subsequent Santa Cruz-to-SCO transaction, were to transfer the UNIX and UnixWare business to SCO, including the copyrights in UNIX, UnixWare, and supporting materials ("the copyrights").

3.    This lawsuit stems from Novell's willful infringement of the copyrights and from its false and bad-faith claims that it owns the copyrights and UNIX itself and that it has the authority under the APA to destroy the value of the business by waiving, revoking, or otherwise controlling SCO's rights and claims related to the business.

4.    In consideration for its sale of the business under the APA, Novell received, among other consideration, 6.1 million shares of Santa Cruz common stock, in a transaction valued at the time at over $100 million, as well as an equitable interest in 95% of certain binary royalties as described below.

2

5.   In Attachment E of Novell's Disclosure Schedule to the APA, Novell provided a list of
     approximately 106 copyright registrations (encompassing eight pages) covering products
     relating to the business transferred to SCO.

6.   In the course of exercising its rights with respect to UNIX and UnixWare, SCO has filed
     for copyright protection with the United States Copyright Office.

7.   In an effort to interfere with SCO's exercise of its rights with respect to UNIX and
     UnixWare technologies, Novell has, in disregard of its obligations under the APA, filed
     for copyright protection in the same UNIX technology covered by SCO's copyrights.

8.   Novell has falsely and repeatedly claimed in public that it, and not SCO, owns the
     copyrights.

9.   Novell has made such statements with the intent to cause customers and potential
     customers of SCO to refrain from doing business with SCO; to slander and impugn
     SCO's ownership rights in UNIX and UnixWare; and to attempt, in bad faith, to block
     SCO's ability to enforce the copyrights and its rights under UNIX licenses.

10.  Novell's false and misleading representations that it owns the copyrights have directly
     caused and continue to cause significant irreparable harm to SCO's valuable UNIX and
     UnixWare copyrights, its business, and its reputation, and has caused third parties to
     refuse to enter into license agreements with SCO relating to SCO's UNIX and UnixWare
     business.

11.  In connection with the closing of the transaction set forth in the APA, Novell and Santa
     Cruz entered into a Technology License Agreement (the "TLA"), which licensed back to

3

Novell all technology included in the transferred assets, including all modifications of

that technology, for certain limited purposes.

12.    The APA and TLA each contained a non-compete provision, whereby Novell covenanted

not to distribute the licensed-back technology in (a) any operating system in competition

with SCO's core server products or (b) in any product in which that technology

constitutes a primary portion of the value of the product.

13.    In 2003, Novell became a distributor of the Linux operating system by purchasing SuSE

Linux.  As SCO has alleged in its suit against International Business Machines ("IBM")

pending in this Court, IBM has wrongfully contributed SCO's UNIX technology to

Linux, and that technology constitutes a primary portion of the value of Linux.

Consequently, by distributing Linux in competition with SCO's core products, Novell has

materially breached the non-compete provisions of the APA and TLA.

14.    Furthermore, Novell has infringed and continues to infringe SCO's copyrights by

copying, reproducing, modifying, sublicensing, and/or distributing the licensed-back

technology, contrary to the express terms of the TLA.  In addition, through its Linux

business, Novell has also infringed and continues to infringe SCO's copyrights in UNIX,

by copying, reproducing, modifying, sublicensing, and/or distributing UNIX intellectual

property without authority to do so.

15.    Under Section 4.16 of the APA, Novell retained the right to continue receiving certain

product royalties that Santa Cruz collected from then-existing SVRX licensees for their

distribution of binary-code versions of System V pursuant to sublicensing agreements .

Under Sections 4.16, 1.2(b), and 1.2(f) of the APA, Novell also retained the right to

4

direct or take certain actions to protect those SVRX royalties. Novell has erroneously and in bad faith attempted to extend those rights to matters unrelated to Novell's protected binary royalty stream. In particular, Novell has purported, among other things, to waive SCO's rights and claims against IBM for its wrongful contributions to Linux, even though those rights and claims were transferred to SCO under the APA and the Santa Cruz-to-SCO transaction.

16.     Under the APA, Novell did not retain the rights to take or direct any actions with respect to any source-code licenses or fees, other SVRX royalties, or any claims arising after the closing date against any parties relating to any right, property, or asset included in the business. The APA intended and did transfer such rights exclusively to SCO.

17.     Novell's retaining such rights would have subverted the stated purpose of the APA and rendered Santa Cruz's ownership of the UNIX and UnixWare business illusory. Similarly, Novell's retaining the copyrights would have made Santa Cruz's ownership of UNIX and UnixWare technologies without value or meaning.

18.     Novell's newly concocted claims that Santa Cruz intended and did pay over $100 million for intellectual property without the copyrights to protect and exploit it, all while abdicating to Novell the right to control and destroy the value of that property, defies commercial reason and common sense and contradicts conduct during the years that followed that APA.

19.     Novell has interfered with SCO's UNIX license agreements with IBM and Silicon Graphics, Inc. ("SGI"), by asserting falsely and in bad faith that Novell owns the

copyrights and by purporting in bad faith to waive and revoke SCO's claims against IBM and SGI that arose after the closing date and are related to those agreements.

20.    Several provisions of the APA require the parties to take the actions necessary to effectuate the purposes of the APA and consummate the transactions contemplated therein. If it were true (contrary to the intent of the parties to the APA) that Novell retained the copyrights and SCO received mere phantom rights to the business, then Novell has breached those provisions by failing to take the actions necessary to convey the business to SCO as contemplated by APA.

21.    Through this action against Novell, SCO seeks the following:

a)    a preliminary and permanent injunction (i) requiring Novell to assign to SCO all copyrights that Novell has improperly registered in UNIX and UnixWare following Novell's transfer of all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, license agreements, and all copyrights related thereto to SCO pursuant to the APA; (ii) preventing Novell from representing in any forum that it has any ownership interest whatsoever in the copyrights or UNIX itself; (iii) requiring Novell to retract or withdraw all its representations of its purported ownership of the copyrights;

b)    a preliminary and permanent injunction preventing Novell from copying, reproducing, modifying, sublicensing, and distributing SCO's copyrighted UNIX and UnixWare technology, except as provided by the TLA;

c)    actual, special, enhanced, statutory, and punitive damages in amounts to be proved at trial; and

6

d) as an alternative claim, an order directing Novell specifically to perform its

obligations under the APA by taking the actions necessary to transfer to SCO the

UNIX and UnixWare business, including the copyrights.

## II.    PARTIES, JURISDICTION, AND VENUE

22.    Plaintiff SCO is a Delaware corporation with its principal place of business in Utah

County, Utah.

23.    Defendant Novell is a Delaware corporation with its executive offices and headquarters

in Waltham, Massachusetts, that does business in Utah.

24.    This Court has concluded that it has subject matter jurisdiction over SCO's slander-of-

title claim pursuant to 28 U.S.C. § 1331 and § 1338(a).

25.    The Court has jurisdiction over SCO's copyright claim pursuant to 28 U.S.C. § 1331 and

§ 1338(a).

26.    Based on its jurisdiction over the slander-of-title and copyright claims, the Court also has

supplemental jurisdiction over SCO's state-law claims.

27.    This Court has personal jurisdiction over Novell because Novell transacts substantial

business in the State of Utah.

28.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III.    FACTUAL BACKGROUND

## A. The APA's Transfer of the Copyrights in UNIX and UnixWare

29.    Schedule 1.1(a) to the APA provides that SCO, through its predecessor in interest,

acquired from Novell:

> l. All rights and ownership of UNIX and UnixWare, including
> but not limited to all versions of UNIX and UnixWare and all

7

> copies of UNIX and UnixWare (including revisions and updates in process), and all technical, design, development, installation, operation and maintenance information concerning UNIX and UnixWare, including source code, source documentation, source listings and annotations, appropriate engineering notebooks, test data and test results, as well as all reference manuals and support materials normally distributed by [Novell] to end-users and potential end-users in connection with the distribution of UNIX and UnixWare . . . .
>
> II. All of [Novell's] claims arising after the Closing Date against any parties relating to any right, property or asset included in the Business.

30. On December 19, 1995 ("the closing date"), the parties closed the transaction set forth in

the APA. In connection with the closing, the parties executed the TLA and a Bill of Sale.

31. The TLA was originally called for by Section 1.6 of the APA, which provides in part:

> 1.6 License Back of Assets.  Concurrent with the Closing Buyer [SCO] shall execute a license agreement under which it shall grant to Seller [Novell] a royalty-free, perpetual, worldwide license to (i) all of the technology included in the Assets and (ii) all derivatives of the technology included in the Assets, including the "Eiger" product release (such licensed back technology to be referred to collectively as "Licensed Technology").

Through the TLA, Santa Cruz granted to Novell the license specified in Section 1.6, with

certain modifications.

32. As of the closing date, both Novell and SCO, including executives for both parties who

negotiated and closed the transaction, intended and believed that the copyrights had been

transferred to SCO. Because Novell would not have required a license-back had it

retained the copyrights, the TLA evidences the parties' shared intent and belief that, as of

the closing date, SCO owned the copyrights.

8

33.     In Amendment No. 2 to the APA, Novell and SCO reiterated and clarified that SCO

owned all "copyrights and trademarks owned by Novell as of the date of the [APA]

required for SCO to exercise its rights with respect to the acquisition of UNIX and

UnixWare technologies," and that Novell would no longer be liable should any third

party bring a claim against SCO "pertaining to said copyrights and trademarks."

**B. Novell's Slander of SCO's Title to the Copyrights in UNIX and UnixWare**

34.     Software technology is valuable only insofar as the intellectual property contained therein

is protected from unlawful misappropriation. Copyrights provide critical protection

against misappropriation as established by the United States Congress under the

Copyright Act. SCO requires the full copyright protection it purchased from Novell to

enforce its rights in its proprietary UNIX and UnixWare source code and related

technology against infringing third parties. A transfer of source code without the

associated copyrights is for all intents and purposes meaningless and worthless.

35.     Based on the APA and Amendment No. 2, SCO is the sole and exclusive owner of all

copyrights related to the UNIX and UnixWare source code and all documentation and

peripheral code and systems related thereto.

36.     Novell, with full knowledge of SCO's exclusive ownership of the copyrights related to

UNIX and UnixWare, has embarked on a malicious campaign to damage SCO's ability to

protect its valuable copyrights in UNIX and UnixWare. In particular, Novell has

wrongfully asserted ownership over UNIX and UnixWare technologies by filing for

copyright protection in its own name, and has made numerous false and misleading

9

public representations disparaging SCO's ownership of the copyrights and claiming that
it, and not SCO, owns the copyrights.

37.    Novell's false oaths and misleading public representations and wrongful assertions of

ownership rights in UNIX and/or UnixWare include, but are not limited to, the following:

a)    On May 28, 2003, Novell's Chairman, President, and CEO Jack Messman based

at Novell's headquarters in Waltham, Massachusetts, publicly claimed that Novell

did not transfer the UNIX and UnixWare copyrights to SCO and that "SCO is not

the owner of the UNIX copyrights." Mr. Messman's statement was published in

several newspapers and other publications, and he and Novell timed the statement

to be released on the eve of SCO's positive quarterly earnings announcement. As

a result of Novell's announcement, SCO's stock price dropped over twenty

percent.

b)    In a letter dated June 6, 2003, directed from SCO to Novell, SCO brought to

Novell's attention Amendment No. 2 to the APA.

c)    Following Novell's receipt of SCO's letter dated June 6, 2003, Novell issued a

press release dated that same date which recanted Mr. Messman's prior statement

claiming Novell owned UNIX copyrights, stating "[t]he amendment [to the Asset

Purchase Agreement] appears to support SCO's claim that ownership of certain

copyrights for UNIX did transfer to SCO in 1996."

d)    In a letter of the same day, June 6, 2003, directed to SCO, Joseph Lasala, Novell's

General Counsel, continued to call SCO's claims of copyright ownership

"absurd" and "unsubstantiated."

10

e)    In a letter dated June 26, 2003, from Mr. Lasala to SCO, Novell acknowledged that Amendment No. 2 "appears to support a claim" by SCO to "some copyrights," but at the same time, Novell called SCO's claims of ownership of UNIX and UnixWare "simply wrong" and declared "that we do not agree with SCO's public statements on this matter."

f)    In a letter from Mr. Lasala dated August 4, 2003, Novell responded to SCO's registration of UNIX System V copyrights with the United States Copyright Office and explicitly "dispute[d] SCO's claim to ownership of these copyrights."

g)    *Despite Amendment No. 2, Novell continued with its unfounded and malicious campaign to slander SCO's ownership of the copyrights.* In fact, Novell, again falsely asserted ownership of UNIX copyrights by submitting twelve certifications beginning on September 22, 2003, through October 14, 2003, to the United States Copyright Office. In these certifications, Novell publicly claimed to be the copyright owner of several versions of UNIX, including the following: (1) UNIX System V/386 Release 4 Version 3; (2) UNIX System V/386 Release 4 2; (3) UNIX System V/386 Release 4 Version 4; (4) UNIX System V/386 Release 3 2; (5) UNIX System V/386 Release 3 0; (6) UNIX System V/386 Release 4 0; (7) UNIX System V/386 Release 4 1ES; (8) UNIX System V Release 3 2/386; (9) UNIX System V Release 3/386; (10) UNIX System V Release 4 2MP; (11) UNIX System V Release 2; and (12) UNIX System V Release 4 1ES/386. Novell published its false certifications to the world by placing them online at Novell's website.

11

h)      Also on October 10, 2003, Novell publicly filed under oath with the United States
        Copyright Office four different iterations of a "Declaration Regarding
        Ownership" of UNIX copyrights TXU-510-028, TXU-511-236, TXU-516-704,
        and TXU-516-705. In each of those sworn documents, Novell declared "that it
        retains all or substantially all of the ownership of the copyrights in UNIX,
        including the U.S. Copyright Registration referenced above."

i)      In a press release dated December 22, 2003, Novell, despite its June 2003
        statement that SCO owns the copyrights, stated that "it owns the copyrights in
        UNIX, and has applied for and received copyright registrations pertaining to
        UNIX consistent with that position."

j)      In a press release dated January 13, 2004, Novell again knowingly and wrongfully
        made the false claim that "it retained ownership of [UNIX] copyrights."

k)      At the March 2004 Open Source Business Conference in San Francisco, Novell's
        Vice Chairman Chris Stone proclaimed during his keynote address that Novell
        "still own[s] UNIX."

38.   Novell's false oaths and wrongful claims of copyrights and ownership in UNIX and
      UnixWare were made in bad faith and constitute a knowing and intentional disregard for
      the truth.

39.   Novell's wrongful claims of copyrights and ownership in UNIX and UnixWare have
      caused and continue to cause damage to SCO in the following particulars:

a)      Customers and potential customers of SCO are unable to ascertain the truth of
        ownership in UNIX and UnixWare, and make decisions based thereon;

12

    b)     *Potential customers have informed SCO that they will not enter into agreements to license SCO's UNIX technologies because of the cloud surrounding SCO's ownership of UNIX created by Novell's false public representations that it, and not SCO, owns UNIX.*

    c)     SCO's efforts to protect its ownership of UNIX and UnixWare, and copyrights therein, are subject to a false cloud of ownership created by Novell. At the present time, SCO is pursuing claims against third parties for infringement of SCO's intellectual property and contractual rights in UNIX. Defendants in those cases have relied on Novell's claims of ownership in UNIX as a defense to SCO's claims, thereby hindering SCO's ability to protect its copyrights and other rights and causing SCO to incur significant additional attorneys' fees and costs litigating issues resulting from the cloud Novell has placed on SCO's title to UNIX and UnixWare.

**C. Novell's Unauthorized Use of SCO's Technology**

40.    At the time of the execution of the APA, Novell was a leading networking software company. Because it had developed its flagship networking product, Netware, to work on the UNIX operating system, Novell needed and requested the right to distribute trivial portions of the UNIX source code embedded in Netware.

41.    Accordingly, with the sole intent of accommodating these requests by Novell, the parties to the APA agreed that Santa Cruz would license back to Novell "all the technology included in the Assets" transferred by the APA, as well as "all derivatives of the

technology included in the Assets" (collectively, "the Licensed Technology"), subject to

certain broad limitations.

42.     To protect the value to Santa Cruz of the transferred UNIX and UnixWare assets, the

APA and TLA each contained a non-compete provision, whereby Novell covenanted not

to use the Licensed Technology to compete with SCO's core operating-system products.

43.     Section 1.6 of the APA provides in part:

> Seller agrees that it shall use the Licensed Technology only
> (i) for internal purposes without restriction or (ii) for resale in
> bundled or integrated products sold by Seller which are not
> directly competitive with the core products of Buyer and in which
> the Licensed Technology does not constitute a primary portion of
> the value of the total bundled or integrated product.

44.     Similarly, under Section II.A.(2) of the TLA, Novell is permitted to distribute and

sublicense "such Licensed Technology and modifications thereof," provided that

> (i) such technology and modifications may be sublicensed and/or
> distributed by NOVELL solely as part of a bundled or integrated
> offering ("Composite Offering"); (ii) such Composite Offering
> shall not be directly competitive with core application server
> offerings of SCO, and (iii) the Licensed Technology shall not
> constitute a primary portion of the value of such Composite
> Offering.

45.     The "core products" and "core application server offerings" referenced in the APA and

TLA, respectively, refer to the UNIX and UnixWare operating systems owned by Santa

Cruz upon the closing date.  Even before acquiring the UNIX source code, Santa Cruz

had been primarily involved in the business of distributing UNIX in binary form, so that

with the acquisition of the UNIX and UnixWare source code and copyrights, the UNIX

and UnixWare operating systems undoubtedly represented Santa Cruz's "core products."

14

In addition, as of the closing date, Santa Cruz had no "application server offering" other than UNIX and UnixWare operating systems.

46.    On November 4, 2003, Novell announced its acquisition of SuSE Linux, one of the world's leading distributors of Linux. Since that time, Novell began distributing Linux worldwide.

47.    On December 22, 2005, SCO filed with the Court in the SCO v. IBM case a compilation of 293 disclosures of technology which IBM has made to enhance Linux (in violation of its agreements with SCO) with the stated objective of making Linux a more enterprise-hardened operating system.

48.    Linux contains SCO's UNIX technology, including unauthorized UNIX System V source code, derivatives and modifications, and methods and concepts contributed to Linux by IBM in violation of its license agreements with SCO. Thus, Linux contains the Licensed Technology which, pursuant to Section 1.6 of the APA and Section II.A.(2) of the TLA, Novell covenanted not to distribute in an operating system.

49.    As a general-purpose operating system, Linux is "directly competitive" with SCO's core application server offerings.

50.    Furthermore, the measure of UNIX technology in Linux far exceeds the trivial portions that the parties intended Novell was authorized to use, in Netware, pursuant to the TLA. Whereas UNIX became enterprise-ready after decades of development, Linux matured into a powerful enterprise-ready operating system in a few years, due primarily to the UNIX technology wrongly contributed by IBM to Linux.

51.    Novell therefore breached Section 1.6 of the APA and Section II.A.(2) of the TLA.

52.    Novell has also infringed and continues to infringe SCO's copyrights in UNIX by
copying, reproducing, modifying, sublicensing, and/or distributing UNIX intellectual
property as part of its Linux business.

**D. Novell's Wrongful Attempts to Expand Its Rights Under the APA**

53.    Under Section 4.16 of the APA, Novell retained the right to continue receiving royalties
that SCO collected from then-existing SVRX licensees for their distribution of binary-
code versions of System V products pursuant to sublicensing agreements. Novell also
retained the right to direct SCO to take certain actions, or in the event it failed to take
those actions, to take those actions on its behalf, for the sole purpose of protecting that
same binary royalty stream. Since 1996 until 2003, Novell operated in accordance with
this procedure and understanding.

54.    Under Sections 1.2(b) and 1.2(f) of the APA, Novell also retained the right to conduct
audits to protect the same binary royalties.

55.    Under the APA, however, Novell did not retain any right to conduct audits, direct SCO to
take any actions, or take actions on SCO's behalf with respect to matters other than the
SVRX binary royalty stream.

56.    On information and belief, IBM invested $50 million in Novell stock to help finance
Novell's purchase of SuSE, and Novell and IBM have continued and expanded product
and marketing arrangements that existed between IBM and SuSE. As Mr. Messman
declared in a letter to SCO dated, May 28, 2003, "Novell is an ardent supporter of Linux
and the open source development community." Novell is one of IBM's major Linux
partners. Both companies were acknowledged members of the so-called Chicago 7,

16

which was formed at least in part to address and/or oppose SCO's efforts to protect its

intellectual property.

57.    In an effort, among other things, to protect its Linux partnership with IBM, Novell has

erroneously and in bad faith attempted to extend its rights under Sections 4.16, 1.2(b),

and 1.2(f) to agreements and matters not subject to those provisions.

58.    On June 9, 2003, for example, Novell purported to direct SCO to waive its right to

terminate its Software License Agreement with IBM, even though that source-code

agreement by definition was not for binary royalties and therefore did not come under the

purview of Sections 4.16, 1.2(b), and 1.2(f), and even though Novell had no ongoing

royalty stream from IBM that it needed to protect. On June 12, 2003, Novell invoked its

purported right under Section 4.16(b) to waive and revoke SCO's proper termination of

IBM's UNIX license agreements.

59.    Similarly, on October 10, 2003, Novell purported to waive and revoke for SCO its claims

against IBM for breach of its Sequent Software License Agreement with SCO.

60.    Novell has alleged that its rights under Sections 4.16, 1.2(b), and 1.2(f) extend to SCO's

2003 agreements with Sun and Microsoft, as well as SCO's SCOsource intellectual

property agreements, even though those agreements did not involve the SVRX binary

royalty stream and were not even in existence at the time the APA was executed.

61.    Such actions by Novell are contrary to its agreements with SCO and were calculated to

interfere with SCO's agreements with IBM and others, block SCO's efforts to enforce its

claims and rights related to UNIX, and misrepresent to the marketplace that Novell, and

not SCO, owns UNIX.

17

62.    Novell's wrongful conduct is also willful and in bad faith in light of its previous attempt
to expand its rights under Section 4.16 in collaboration with IBM.

63.    On April 26, 1996, without the consent of Santa Cruz, Novell attempted to enlarge IBM's
rights to the UNIX source code and grant IBM a buyout of its SVRX binary royalty
obligations, by entering with IBM into a purported amendment to the IBM UNIX license
agreements transferred to SCO by the APA.

64.    In a letter to Novell dated April 23, 1996, SCO intervened by explaining, among other
things, that the APA and related agreements provided SCO "ownership and exclusive
rights to license the UNIX source code."

65.    After SCO further disputed Novell's authority to grant IBM the buyout, the parties
entered into Amendment X to IBM's software and sublicensing agreements in UNIX.  As
compared with Novell's thwarted amendment, Amendment X, among other things:

a)    replaced Novell with SCO as the party to the bargained-for exchange with IBM;

b)    more than quadrupled the monetary consideration, from $2,375,000 to $10,125,000;

c)    contracted IBM's source-code rights; and

d)    set forth SCO's exclusive right to audit IBM's compliance with the restrictions on its
use of the licensed source code.

66.    In addition, Amendment X voided Novell's unauthorized amendment, by providing: "The
Amendment dated April 26, 1996 between IBM, and Novell, on behalf of itself and SCO,
is hereby replaced in its entirety."

67.    Had Novell owned the copyrights or possessed the authority to waive, revoke, or
otherwise control the rights to the source code, it would have stood by its April 26, 1996

18

purported amendment; SCO would have had no right to, in effect, veto that unauthorized amendment; and IBM would not have acquiesced to that veto.

68.    Amendment X is thus contemporaneous evidence that Novell considered Santa Cruz the sole and exclusive owner of the copyrights and source code and that Novell recognized that it lacked the authority to waive, revoke, or otherwise control claims or rights related to the UNIX source code, generally and with regard to IBM specifically.

69.    To prevent a recurrence of the events leading to Amendment X, the parties decided to clarify Section 4.16 of the APA by entering into Amendment No. 2 to the APA on the same date they executed Amendment X. Paragraph B.5 of Amendment No. 2 provides:

> This Amendment does not give Novell the right to increase any SVRX licensee's rights to SVRX source code, nor does it give Novell the right to grant new SVRX source code licenses. In addition, Novell may not prevent SCO from exercising its rights with respect to SVRX source code in accordance with the [APA].

70.    Thus, Amendment No. 2 made it redundantly clear that Novell had retained no rights to control SCO's sole exclusive ownership of the source code and associated license agreements. In fact, Amendment No. 2 made clear that Novell could not unilaterally agree to a buyout even of SVRX royalties. Even with respect to its interest in the binary royalty stream, therefore, Novell lacked the authority to waste or forego the royalties, or to grant a licensee a buyout of its relationship with SCO.

71.    Despite plain language to the contrary in Paragraph B.5, Novell has attempted to increase a "SVRX licensee's rights to SVRX source code," "prevent SCO from exercising its rights with respect to SVRX source code," and effectively "grant new SVRX source code licenses," by purporting to waive and revoke SCO's claims and rights against IBM.

**F. Novell's Prior Conduct Belies Claims**

72.    During the years between the signing of the APA (in September 1995) and about May

2003, the parties' dealings and course of conduct evidenced their understanding that the

APA had transferred the business to Santa Cruz, including the copyrights.

73.    As stated, Novell and Santa Cruz entered into the TLA, which licensed back to Novell

the UNIX and UnixWare technology transferred under the APA.  Had Novell retained the

copyrights under the APA, it would have been irrational for Novell to execute a license-

back agreement for technology already covered by the copyrights it purportedly owned.

Thus, the TLA, without more, evidences Novell's understanding that the APA had

transferred the copyrights to SCO.

74.    Though, at the time they executed Amendment No. 2, the parties shared the

understanding that APA intended to and did transfer the copyrights to Santa Cruz, they

decided to take advantage of the opportunity afforded them by Amendment No. 2 to

further clarify the APA by reiterating the transfer of the copyrights.

75.    Amendment No. 2 made clear that Novell had transferred to SCO the "copyrights and

trademarks owned by Novell as of the date of the [APA] required for SCO to exercise its

rights with respect to the acquisition of UNIX and UnixWare technologies," and that

Novell would no longer be liable to any party bringing a claim "pertaining to said

copyrights and trademarks."

76.    During the seven-plus years between the signing of the APA and about May 2003, Novell

also did not question, much less challenge, SCO's open and public conduct as the sole

and exclusive owner of the UNIX and UnixWare business, including the copyrights.

77.   As an obvious example, SCO distributed its UNIX and UnixWare source-code and binary products widely, with copyright notices in its name. During those years, Novell did not allege that SCO's use and distribution of those products infringed Novell's copyrights. Nor did Novell dispute SCO's public claims of copyright ownership in any way.

78.   In a reported transaction consummated in 2001, Santa Cruz transferred the UNIX and Unixware business to SCO (then operating as Caldera). Despite the public nature of that transaction, Novell again did not dispute Santa Cruz's claim of ownership, or transfer, of the business, including the copyrights.

79.   During those years, Novell conducted one audit pursuant to Section 1.2(b) of the APA. Novell limited that audit to a review of SCO's administration of the SVRX binary royalty stream. Novell did not request or receive other information concerning the UNIX and UnixWare business, including any accounting of source-code licenses or fees.

80.   As a result of these and other examples of the parties' shared understanding of the meaning and intent of the APA, it was widely known in the software industry (including by IBM) that SCO owned and freely exercised its copyrights in UNIX and UnixWare.

81.   Indeed, the law firms that represented Novell and Santa Cruz in negotiating and executing the APA, Wilson, Sonsini, Goodrich & Rosati ("WSGR") and Brobeck, Phleger & Harrison LLP ("Brobeck"), respectively, also represented Santa Cruz and Caldera, respectively, during the subsequent transfer of the business to Caldera.

82.   It was not until about May 2003 (only weeks after SCO filed its lawsuit against IBM and just months before Novell announced its Linux partnership with IBM) that Novell suddenly reversed its conduct of seven-plus years.

**G. In the Alternative, Novell Should be Ordered to Effectuate the Transfer**

83.    In its public statements, Novell has alleged that the APA (even together with Amendment

No. 2) is a writing insufficient to have transferred the copyrights under Section 204(a) of

the Copyright Act. Even if (contrary to precedent) this were true, SCO would be entitled

to a transfer of the copyrights under the terms of the APA.

84.    The parties to the APA repeatedly covenanted to take further actions necessary to

consummate the transfer of the business to SCO.

85.    Section 1.7(c) of the APA provides:

>    (c)    Taking of Necessary Action; Further Action.  If, at any
> time after the Closing Date, any further action is necessary or
> desirable to carry out the purposes of this Agreement the parties
> agree to take, and will take, all such lawful and necessary and/or
> desirable action.

86.    Section 4.9 of the APA provides in part:

>    4.9    Commercially Reasonable Efforts.  Subject to the terms
> and conditions provided in this Agreement, each of the parties
> hereto shall use its commercially reasonable efforts to take
> promptly, or cause to be taken all actions, and to do promptly, or
> cause to be done, all things necessary, proper or advisable under
> applicable laws and regulations to consummate and make
> effective the transactions contemplated hereby. . . .

87.    Section 4.12 of the APA provides:

>    4.12    Additional Documents and Further Assurances.  Each
> party hereto, at the request of another party hereto, shall execute
> and deliver such other instruments and do and perform such other
> acts and things as may be necessary or desirable for effecting
> completely the consummation of this Agreement and the
> transactions contemplated hereby.

88.    The parties to the APA intended for the APA to transfer the business, including the

copyrights, to Santa Cruz.  As the successor-in-interest to Santa Cruz, SCO alleges that it

22

is the current owner of the business, including the copyrights. In the alternative, if it is

determined that the APA did not effectuate the transfer intended by the parties to the

APA, Novell must take the actions necessary to effectuate that transaction in order to

comply with Sections 1.7(c), 4.9, and 4.12 of the APA.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Slander of Title)

89.    SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

90.    SCO is the sole and exclusive owner of all copyrights related to UNIX and UnixWare

      source code and all documentation and peripheral code and systems related thereto.

91.    Novell has slandered SCO's title and rights to its UNIX and UnixWare copyrights and

      damaged SCO's business reputation and potential contractual relationships with potential

      customers by making false oaths of ownership to public officials, and by repeatedly

      representing both to the public in general and directly to several of SCO's customers and

      potential customers that Novell, and not SCO, owns UNIX and UnixWare and the

      copyrights.

92.    Novell's representations regarding its purported ownership of UNIX and UnixWare

      copyrights are patently false, and Novell made such representations intentionally,

      maliciously, and with the utter disregard for the truthfulness thereof.

93.    As a consequence of Novell's conduct as alleged herein, SCO has incurred actual and

      special damages in an amount to be proved at trial.

94.    SCO has also incurred significant attorneys' fees and costs in attempting to remove the

      cloud Novell has placed on SCO's title to UNIX and UnixWare, including but not limited

to attorneys' fees incurred in researching and reviewing Novell's improper copyright registrations; attempting to mitigate damages by correcting and responding to Novell's false representations made to third parties; and in prosecuting this and other actions to protect SCO's title to UNIX and UnixWare and related rights.

95.    Novell's conduct as alleged herein was intentionally and maliciously designed to destroy SCO's valuable rights to the UNIX and UnixWare copyrights and further destroy SCO's business livelihood and damage its shareholders.  As such, this Court should impose an award of punitive damages against Novell in an amount to be proved at trial.

### SECOND CLAIM FOR RELIEF
### (Breach of the APA and TLA)

96.    SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

97.    Novell has materially breached Section 1.6 of the APA and Section II.A.(2) of the TLA by distributing the Licensed Technology as part of a product (Linux) that is directly competitive with SCO's core server operating systems.

98.    Novell has materially breached Section 1.6 of the APA and Section II.A.(2) of the TLA by distributing the Licensed Technology as part of a product (Linux) wherein that technology constitutes a primary portion of the value of that product.

99.    Novell has also breached the covenant of good faith and fair dealing under the APA and TLA by affirmatively seeking to deprive SCO of the benefits to which it is entitled under those agreements, through numerous acts of bad faith, including without limitation:  (a) making false and misleading statements denying SCO's ownership of the copyrights in UNIX and UnixWare; (b) undermining the business that it sold to SCO by distributing

24

UNIX technology in Linux, in violation of the APA's and TLA's non-compete provisions; and (c) purporting to waive and revoke SCO's rights and claims against IBM.

100.    Novell's breaches of the APA and TLA have caused SCO damage in an amount to be proved at trial. Those breaches have also caused SCO special damages, including without limitation the costs of prosecuting this action.

### THIRD CLAIM FOR RELIEF
### (Alternative Breach-of-Contract Claim Seeking Specific Performance)

101.    SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

102.    UNIX and UnixWare, as well as the copyrights in UNIX and UnixWare, are unique and possess special value.

103.    The intent of the parties to the APA, and the purpose and effect of the APA, were to transfer the UNIX and UnixWare business, including all copyrights, to SCO's predecessor in interest, Santa Cruz.

104.    Under Sections 1.7(c), 4.9, and 4.12 of the APA, Novell is obligated to take all actions necessary to effectuate the purposes of the APA and consummate the transactions contemplated therein.

105.    In its public statements, including its pleadings in this lawsuit, Novell has repeatedly claimed that the APA (even as amended) did not transfer the copyrights to SCO.

106.    In its public statements, including its pleadings in this lawsuit, Novell has repeatedly claimed that, under the APA, it retained the right to take, or direct SCO to take, certain actions (such as waiving SCO's claims against IBM) that extinguish the value of the UNIX and UnixWare business.

25

107.  In light of these continuing claims by Novell, SCO is entitled (as an alternative to its
      other claims for relief) to an order directing Novell to specifically perform its obligations
      under Sections 1.7(c), 4.9, and 4.12, by taking the actions necessary to effectuate the
      intended purposes of the APA and consummate the transactions contemplated therein.

108.  In particular, SCO is entitled to an order directing Novell to execute documents (and take
      any other actions) necessary to transfer to SCO (a) the copyrights, and (b) the UNIX and
      UnixWare business, without subjecting any portion of that business, other than the SVRX
      binary royalty stream, to Sections 4.16, 1.2(b), and 1.2(f) of the APA.

### FOURTH CLAIM FOR RELIEF
#### (Copyright Infringement)

109.  SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

110.  The APA transferred all right, title, and interest to and in the copyrights in UNIX,
      UnixWare, and various supporting documents to SCO, through its predecessor in interest.

111.  SCO is the sole and exclusive owner of the copyrights in UNIX, UnixWare, and the
      associated supporting materials.

112.  As shown on Exhibit A, SCO and its predecessors properly registered, at a minimum,
      copyrights in UNIX, UnixWare, and the associated supporting materials describing the
      UNIX system.

113.  Pursuant to 17 U.S.C. § 410(c), SCO's certificates of copyright registrations constitute
      prima facie evidence of the validity of the copyrights and the facts stated in the
      certificates.  SCO's registrations of its copyrights in UNIX and UnixWare are entitled to
      that statutory presumption.

26

114.   SCO and its predecessors created and developed the intellectual property covered by the

copyrights as original works of authorship, and as such, those materials automatically

became subject to copyright protection under 17 U.S.C. § 102(a) when they were fixed in

a tangible medium of expression.

115.   Copyright protection under 17 U.S.C. § 106 extends to derivative works, which are

defined in 17 U.S.C. § 101 to include works based on the original work and any other

form in which the original work may be recast, transformed, modified, or adapted.

116.   Novell has infringed and continues to infringe SCO's copyrights by copying,

reproducing, modifying, sublicensing, and/or distributing Linux products containing

unauthorized contributions of SCO's copyrighted intellectual property.

117.   Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is

not limited to the appropriation of numerous data structures and algorithms contained in

or derived from SCO's copyrighted material.  A partial listing of these data structures and

algorithms is provided at Exhibit B.

118.   In addition, under the specific terms and conditions set forth in the TLA and for the

limited purpose of the TLA, SCO granted Novell a non-exclusive license to the

technologies covered by SCO's copyrights in UNIX and UnixWare.  Novell expressly

covenanted not to use those technologies in a general-purpose operating system that

competes with SCO's core application server products or in a product wherein that

intellectual property constitutes a primary portion of the value of the product.  Novell has

infringed and is infringing SCO's copyrights by using, copying, reproducing, modifying,

sublicensing, and distributing SCO's copyrighted intellectual property outside of the limited license provided by the TLA.

119.    As a result of Novell's infringing acts, SCO has been damaged and is entitled to actual damages and Novell's profits resulting from those acts, pursuant to 17 U.S.C. § 504(a); statutory damages, pursuant to 17 U.S.C. § 504(b); and enhanced damages, costs, and attorney's fees pursuant to 17 U.S.C. § 505.

120.    In addition, because Novell's conduct has caused, and if not enjoined, will continue to cause irreparable harm to SCO without an adequate remedy at law, SCO is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

### FIFTH CLAIM FOR RELIEF
### (Unfair Competition)

121.    SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

122.    Novell has knowingly, intentionally, and in bad faith engaged in a pattern of conduct aimed at depriving SCO of the value of its UNIX technology. Among other things, Novell has falsely claimed ownership of SCO's copyrights in UNIX and UnixWare, misappropriated SCO's UNIX technology in Linux and forced SCO to compete in the marketplace against its own intellectual property, and has wrongfully attempted to thwart SCO's rights and efforts to bring legal claims in defense of its UNIX intellectual property.

123.    Novell's misconduct is likely to result in confusion, and in fact has resulted in confusion, in the marketplace concerning UNIX, Linux, and other products.

124.    As a direct result of Novell's unfair competition, SCO has and will continue to suffer damage to its business, reputation, and goodwill in an amount to be proved at trial.

125.    Because Novell's misconduct is intentionally and maliciously designed to destroy SCO's
        valuable rights to the copyrights and further destroy SCO's business livelihood, this
        Court should impose punitive damages against Novell in an amount to be determined at
        trial.

126.    SCO is entitled to and seeks restitutionary, injunctive, and other remedies as may be
        available under the applicable unfair-competition law.

## V.    PRAYER FOR RELIEF

        WHEREFORE, Plaintiff SCO prays this Court enter judgment for SCO and against

Novell:

1.      awarding SCO actual, special, enhanced, and statutory damages;

2.      awarding punitive damages for Novell's malicious and willful conduct as alleged herein;

3.      granting preliminary and permanent injunctive relief (a) requiring Novell to assign to
        SCO any and all copyrights Novell improperly registered in UNIX and UnixWare
        following the Asset Purchase Agreement; (b) preventing Novell from representing in any
        forum that it has any ownership interest whatsoever in those copyrights; and (c) requiring
        Novell to retract or withdraw all representations it has made regarding its purported
        ownership of the copyrights;

4.      granting preliminary and permanent injunctive relief preventing Novell from copying,
        reproducing, modifying, sublicensing, and/or distributing SCO's UNIX and UnixWare
        technology except as expressly provided by the TLA;

29

5.    ordering Novell, as an alternative, to specifically perform its obligations under the APA

by taking the actions necessary to effectuate the purposes of the APA and consummate

the transactions contemplated therein;

6.    awarding attorneys' fees, costs, and pre- and post-judgment interest; and

7.    granting all other legal and equitable relief deemed just and proper by this Court.

## VI.   JURY TRIAL DEMAND

SCO demands trial by jury on all issues so triable.

DATED this 3rd day of February, 2006.

Respectfully submitted,


HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand


By _____

*Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that on the 3rd day of February, 2006, a

true and correct copy of the foregoing Second Amended Complaint was served on Defendant

Novell, Inc., by U.S. Mail to:

> Thomas R. Karrenberg
> John P. Mullen
> Heather M. Sneddon
> ANDERSON & KARRENBERG
> 700 Bank One Tower
> 50 West Broadway
> Salt Lake City, UT 84101

> Michael A. Jacobs
> Matthew I. Kreeger
> MORRISON & FOERSTER
> 425 Market Street
> San Francisco, CA 94105-2482

*Laura Chaves.*

31

**EXHIBIT A**

| TITLE | REGISTRATION NO. |
|---|---|
| UNIX | Txu-510-028 |
| UNIX Version 6 | Txu-511-236 |
| UNIX V32 | Txu-516-704 |
| UNIX Version 7 | Txu-516-705 |
| UNIXWARE 7.1.3 | TX 5-787-679 |
| UNIX SYSTEM V RELEASE 3.0 | TX 5-750-270 |
| UNIX SYSTEM V RELEASE 3.1 | TX 5-750-269 |
| UNIX SYSTEM V RELEASE 3.2 | TX 5-750-271 |
| UNIX SYSTEM V RELEASE 3.2 | TX 5-750-268 |
| UNIX SYSTEM V RELEASE 4.0 | TX 5-776-217 |
| UNIX SYSTEM V RELEASE 4.1ES | TX 5-705-356 |
| UNIX SYSTEM V RELEASE 4.2 | TX 5-762-235 |
| UNIX SYSTEM V RELEASE 4.1 | TX 5-762-234 |
| UNIX SYSTEM V RELEASE 4 Integrated Software Development Guide | TX 2 931-646 |
| UNIX SYSTEM V RELEASE 4 Reference Manual For Intel Processor Commands m-z | TX 3 221-656 |
| UNIX SYSTEM V RELEASE 4 Reference Manual for Intel Processors Commands a-l | TX 3 227-639 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface reference Manual for Intel Processors | TX 3 232-578 |
| UNIX SYSTEM V RELEASE 4 Programmer's Guide: Streams for Intel Processors | TX 3 218-286 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface Reference Manual for Motorola Processors | TX 220-500 |
| UNIX SYSTEM V RELEASE 4 Reference Manual for Motorola Processors Commands a-l | TX 3 220-331 |
| UNIX SYSTEM V RELEASE 4 PROGRAMMER'S GUIDE | TX 2 120-502 |
| UNIX SYSTEM V/386 RELEASE 4 Transport Application Interface Guide | TX 2 881-542 |
| UNIX SYSTEM V/386 RELEASE 4 Device Interface/Driver Kernel Interface (DDI/DKI) reference Manual | TX 2 883-235 |
| UNIX SYSTEM V/386 RELEASE 4 Programmer's Guide: SCSI Driver Interface | TX 2 902-863 |
| UNIX SYSTEM V/386 RELEASE 4 System Administrator's Reference Manual | TX 2 881-543 |

| | |
|---|---|
| UNIX SYSTEM V/386 RELEASE 4 Programmer's Reference Manual | TX 2 853-760 |
| UNIX SYSTEM V/386 RELEASE 4 User's Reference Manual | TX 2 890-471 |
| UNIX SYSTEM V/386 RELEASE 4 User's reference Manual | TX 2 820-791 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface (DDI/DKI) Reference Manual | TX 3 820-792 |
| UNIX SYSTEM V RELEASE 4 Programmer's Guide: Streams | TX 2 833-114 |
| UNIX SYSTEM V RELEASE 4 Programmer's Reference Manual | TX 2 832-009 |
| UNIX SYSTEM V RELEASE 4 System Administrator's Reference Manual | TX 2 830-989 |
| UNIX SYSTEM V/386 Programmer's Guide Vol. II | TX 2 454-884 |
| UNIX SYSTEM V/386 RELEASE 3.2 Programmer's Reference Manual | TX 2 494-658 |
| UNIX SYSTEM V/386 Programmer's Reference Manual | TX 2 373-759 |
| UNIX SYSTEM V/386 System Administrator's Reference Manual | TX 2 371-952 |
| UNIX SYSTEM V/386 Streams Programmer's Guide | TX 2 367-657 |
| UNIX SYSTEM V/386 Streams Primer | TX 2 366-532 |
| UNIX SYSTEM V RELEASE 3.2 System Administrator's Reference Manual | TX 2 611-860 |
| UNIX SYSTEM V RELEASE 3.2 Programmer's Reference Manual | TX 2 605-292 |
| UNIX SYSTEM V Documentor's Workbench Reference Manual | TX 2 986-119 |
| UNIX SYSTEM V RELEASE 4 User's Reference Manual/System Administrator's Reference Manual for Motorola Processors Commands m-z | TX 3 218-267 |
| UNIX SYSTEM V RELEASE 4 System Files and Devices reference Manual for Motorola Processors | TX 3 221-654 |

33

**EXHIBIT B**

Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is not limited to the appropriation of the following data structures and algorithms contained in or derived from SCO's copyrighted material:

1. SuSE's implementation of the "Read/Copy/Update" algorithm
2. SuSE's implementation of NUMA Aware Locks
3. SuSE's implementation of the distributed lock manager
4. SuSE's implementation of reference counters
5. SuSE's implementation of asynchronous I/O
6. SuSE's implementation of the *kmalloc* data structure
7. SuSE's implementation of the console subsystem
8. SuSE's implementation of IRQs
9. SuSE's implementation of shared memory locking
10. SuSE's implementation of semaphores
11. SuSE's implementation of virtual memory
12. SuSE's implementation of IPCs
13. SuSE's implementation of load balancing
14. SuSE's implementation of PIDs
15. SuSE's implementation of numerous kernel internals and APIs
16. SuSE's implementation of ELF
17. SuSE's implementation of STREAMS
18. SuSE's implementation of dynamic linking
19. SuSE's implementation of kernel pre-emption
20. SuSE's implementation of memory mapping
21. SuSE's implementation of ESR
22. SuSE's implementation of buffer structures
23. SuSE's implementation of process blocking
24. SuSE's implementation of numerous header files
25. SuSE's implementation of Multi-path I/O

# EXHIBIT 2

*[FILED UNDER SEAL pursuant to this Court's
April 10, 2006 Order]*

# EXHIBIT 3

*[FILED UNDER SEAL pursuant to this Court's
April 10, 2006 Order]*

# EXHIBIT 4

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUL 2 9 2005

MARKUS B. ZIMMER, CLERK
BY
_____
DEPUTY CLERK

MORRISON & FOERSTER LLP
Michael A. Jacobs (*pro hac vice*)
Kenneth W. Brakebill (*pro hac vice*)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>     Defendant. | **NOVELL, INC.'S ANSWER AND COUNTERCLAIMS**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

## ANSWER

In response to Plaintiff The SCO Group, Inc.'s ("SCO") Amended Complaint filed July 9, 2004, Defendant Novell, Inc. ("Novell") pleads as follows:

1.     Novell admits that it entered into an Asset Purchase Agreement with SCO's alleged predecessor in interest dated September 19, 1995.  Each and every other allegation in paragraph 1 is denied.

2.     Novell admits that Attachment E to the Asset Purchase Agreement provided a list of approximately 106 copyright registrations.  Novell denies that Attachment E, alone or in connection with the Asset Purchase Agreement, transferred any UNIX or UnixWare copyrights to SCO.  Each and every other allegation in paragraph 2 is denied.

3.     Novell admits that SCO has registered a claim to UNIX and UnixWare copyrights with the United States Copyright Office.  Each and every other allegation in paragraph 3 is denied.

4.     Novell admits that Novell has registered its claim to UNIX and UnixWare copyrights with the United States Copyright Office.  Each and every other allegation in paragraph 4 is denied.

5.     Novell admits that it has, in good faith, publicly stated its belief that it owns UNIX and UnixWare copyrights.  Each and every other allegation in paragraph 5 is denied.

6.     Denied.

7.     Denied.

8.     Novell denies that SCO is entitled to any relief under its Amended Complaint, and each and every allegation in paragraph 8 is therefore denied.

9.     Admitted.

1

Caldera's total revenue at the end of fiscal year 2001 and 95% of Caldera's total revenue at the end of fiscal year 2002. But Caldera's revenue from the sale of UNIX-based products declined in the fiscal quarters following the acquisition. Caldera experienced significant decreases in actual and forecasted revenue of the acquired Santa Cruz operations.

33.    Caldera incurred significant financial losses during its fiscal years 2000, 2001 and 2002. Caldera suffered losses from operations totaling $32 million in 2000, $133 million in 2001 and $24 million in 2002.

34.    In June 2002, Caldera hired Darl McBride as its President and Chief Executive Officer. Mr. McBride was responsible for the company's strategic direction and planning.

35.    On our about the time of Mr. McBride's arrival at Caldera, Caldera began to pursue a new business strategy for the company, launching a rebranding effort of its products and services as well as its corporate image.

36.    On August 26, 2002, Caldera announced that it would change its name to The SCO Group, Inc. ("SCO"), pending shareholder approval. On or about that time, Caldera then began doing business as SCO. Caldera soon thereafter changed its trading symbol on the NASDAQ Stock Exchange from "CALD" to "SCOX." Caldera's name change was formalized on May 16, 2003, when Caldera's shareholders approved an amendment to Caldera's certificate of incorporation that changed the company's name to SCO.

37.    As part of Caldera's rebranding efforts and shift in business strategy, Caldera purportedly initiated a review of its intellectual property rights. This effort culminated in the launching of a licensing initiative, which it called SCOsource, in January 2003. SCOsource, as described in further detail below, was an effort by Caldera to expand the revenue base of a company that had never before been profitable.

## JURY TRIAL DEMAND

Counterclaim-plaintiff Novell hereby demands a trial by jury of any and all issues triable by a jury.

DATED:     July 29, 2005.

ANDERSON & KARRENBERG

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

MORRISON & FOERSTER LLP

Michael A. Jacobs
Kenneth W. Brakebill

45

# EXHIBIT 5

FILED
ORIGINAL

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NOVELL, INC., <br><br> Defendant. | **SCO'S ANSWER TO NOVELL'S COUNTERCLAIMS** <br><br> Case No. 2:04CV00139 <br> Honorable Dale A. Kimball |

30.   Admits the allegations of ¶ 30.

**F. Caldera's Financial Position and Business Strategy**

31.   Admits that Caldera (like, on information and belief, Novell and nearly all other companies) did not produce a profitable Linux business; and admits the other allegations of ¶ 31.

32.   Admits that, after Caldera's acquisition of Santa Cruz's Server Software and Professional Services divisions, most of Caldera's revenue came from UNIX products and services, including approximately 90% of its total revenues at the end of fiscal year 2001 and 95% of its total revenues at the end of fiscal year 2002; admits that (at least in part because of the unauthorized use of SCO's proprietary UNIX code and other protected materials in Linux) Caldera's actual and forecasted revenues from the sale of UNIX-based products declined in the fiscal quarters following the acquisition; but denies each and every other allegation of ¶ 32.

33.   Admits the allegations of ¶ 33.

34.   Admits that Caldera hired Darl McBride as its President and Chief Executive Officer in June 2002 and that Mr. McBride was responsible for Caldera's strategic direction, with input from other executives of the company; but denies each and every other allegation of ¶ 34.

35.   Admits the allegations of ¶ 35.

36.   Admits the allegations of ¶ 36.

37.   Admits that SCO launched the SCOsource initiative to review, enforce, and defend SCO's ownership of its UNIX intellectual property (including copyrights); admits that

WHEREFORE, plaintiff and counterclaim-defendant SCO demands judgment dismissing

Novell's counterclaims with prejudice, along with such other and further relief as the Court

deems just and proper.

DATED this 12th day of September, 2005.

<div style="margin-left:40%">

Respectfully submitted,

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Stephen N. Zack
Robert Silver
Stuart H. Singer
Edward Normand

By _____

*Counsel for The SCO Group, Inc.*

</div>

# EXHIBIT 6

*[REDACTED pursuant to this Court's*
*April 10, 2006 Order]*

**HOMBURGER**

**BY FAX AND COURIER | FIVE COPIES**

The Secretariat of the
ICC International Court of Arbitration
38, Cours Albert 1er
75008 Paris
France

April 10, 2006  DAF | RAG | ROD | LUE
309729 | RAG | 000015.doc

## Request for Arbitration

Homburger Rechtsanwälte
Weinbergstrasse 56 | 58
CH-8006 Zürich
Postfach 338 | CH-8035 Zürich

Telefon +41 43 222 10 00
Fax +41 43 222 15 00
lawyers@homburger.ch

Ladies and Gentlemen

In the matter of

**SUSE Linux GmbH**
Maxfeldstr. 5, 90409 Nürnberg, Germany                    **Claimant**

represented by Michael A. Jacobs and|or Grant L. Kim and|or Kenneth
W. Brakebill, Morrison & Foerster LLP, 425 Market Street, San
Francisco, California 94105-2482, USA, and|or

Georg Rauber and|or Felix Dasser and|or David Rosenthal,
Homburger Rechtsanwälte, Weinbergstrasse 56-58, P.O. Box 338,
8035 Zürich, Switzerland

vs.

**The SCO Group, Inc.**
355 South 520 West, Suite 100, Lindon, Utah 84042,
USA                                                      **Respondent**

2 | 25

In the name and on behalf of Claimant the undersigned respectfully submit this

## Request for Arbitration

pursuant to Article 4 of the ICC Rules of International Arbitration (the **ICC Rules**) and request the Arbitral Tribunal to grant the following

## Prayers for Relief:

1. Declare that Respondent is precluded under the Master Transaction Agreement (MTA) and the UnitedLinux Joint Development Contract (JDC) from asserting any copyright infringement claims related to SUSE Linux;

2. Declare, in particular, that the MTA and JDC divest Respondent of ownership of any alleged intellectual property rights in any part of software included in the UnitedLinux Software (other than Pre-Existing Technology and Enhancements);

3. Order Respondent to refrain from alleging publicly or against third parties that the use and distribution of SUSE Linux infringes upon Claimant's copyrights, as precluded by the MTA and JDC;

4. Order Respondent to pay damages in an amount to be determined for breach of the MTA and JDC by improperly asserting claims against Claimant and its licensees, and by attacking and withdrawing support for the UnitedLinux project;

5. Order Respondent to bear all costs of the arbitration proceeding, including the costs and expenses of the ICC and of the arbitrators, as well as attorneys' fees, cost of lost executive time and expert's costs, if any; and

6. Award any further relief that the Tribunal deems necessary to effectuate the relief requested above.

# Table of Contents:

I.     **Introduction** ................................................................................ 4

II.    **Procedural Issues** ..................................................................... 5

A.    Preliminary Remarks ................................................................... 5

B.    Jurisdiction and Place of Arbitration ......................................... 5

C.    Law Applicable to the Merits ..................................................... 6

D.    Appointment of Arbitrator ........................................................... 7

E.    Language of the Proceedings ..................................................... 7

F.    Amount In Dispute ....................................................................... 7

G.    Scope of Present Submission ..................................................... 7

III.   **The Parties** ................................................................................ 8

A.    Claimant ....................................................................................... 8

B.    Respondent .................................................................................. 9

IV.   **Summary Statement of Facts** ................................................ 10

A.    The Linux Operating System and the "Open Source" General Public
     License ...................................................................................... 10

B.    The Contracts at Issue ............................................................. 13

C.    The Development and Release of UnitedLinux 1.0 .................. 16

D.    Respondent's Support for UnitedLinux and Release of SCO Linux 4.0,
     "Powered by United Linux" ....................................................... 17

E.    Respondent's Sudden Change in Position and Assertion of Claims Against
     Linux ......................................................................................... 19

F.    Respondent's Threats Against Claimant and Copyright Infringement Claim
     Based on Novell's Distribution of SUSE Linux ........................ 21

V.    **Prayers for Relief** ................................................................... 24

4 | 26

## I.  Introduction

1    The present dispute arises from the "UnitedLinux" project of Claimant, Respondent and two other vendors of the Linux computer operating system. The purpose of the project was to jointly develop and promote, through a jointly held Limited Liability Company, a version of Linux called UnitedLinux (including future enhancements and amendments thereto), with a view to encourage the widespread adoption of UnitedLinux as a standard for the information technology industry.

2    Consistent with this purpose, the UnitedLinux members agreed that each member would have the right to commercialize the UnitedLinux technology independently, free from claims that the other members had any proprietary rights to such technology. In particular, the UnitedLinux members agreed that each member would have broad licenses to exploit and distribute Linux products that include UnitedLinux technology. Consequently, in November 2002, Respondent and Claimant both announced the release of UnitedLinux-based products, called "SCO Linux" and "SUSE Linux", respectively. Respondent actively promoted SCO Linux as *"powered by UnitedLinux"*.

3    However, shortly thereafter, Respondent fundamentally changed its business strategy to the detriment of the agreements to which it is a party. Respondent abandoned its Linux business and is now attempting to undermine the very business that it had promised to promote. Contrary to its commitments in the agreements in place, Respondent is now asserting that it has proprietary rights to the technology in UnitedLinux that are not licensed to its partners. Respondent publicly claimed that SUSE Linux infringes copyrights allegedly owned by Respondent, it sent threatening letters to numerous Linux users and it also *initiated lawsuits against alleged infringers of Respondent's supposed proprietary rights.*

4    In particular, Respondent recently filed a claim in the United States District Court for the District of Utah against Claimant's parent and licensee, Novell, alleging that Novell's distribution of SUSE Linux infringes Respondent's supposed copyrights. Respondent's infringement claim against Novell threatens the Linux

business of Claimant. Claimant has initiated the present arbitration to protect its interests and to hold Respondent to the promises in the agreements that Respondent has willfully chosen to ignore.

## II.   Procedural Issues

### A.   Preliminary Remarks

5    The advance payment on administrative expenses required by Article 4.4 of the ICC Rules and Article 1.1 of Appendix III to the ICC Rules has been transferred by wire to the International Court of Arbitration as of today.

6    The undersigned are duly authorized to act on behalf of Claimant.

     Evidence:
     -   Powers of attorney                                              Exhibit C-1 a|b

7    All evidence presented by Claimant in the course of the present arbitration proceedings will be identified as "**Exhibit C-#**" and numbered consecutively throughout all briefs of Claimant.

8    A glossary of special terms and abbreviations used in this Request for Arbitration is set forth in Exhibit C-2, which will be amended in the further course of the proceedings from time to time.

     Enclosure:
     -   Glossary of Special Terms And Abbreviations                      Exhibit C-2

### B.   Jurisdiction and Place of Arbitration

9    This arbitration arises from the agreement of Claimant, Respondent, and two other companies to jointly develop and promote, through the jointly held United Linux LLC, a standard version of the Linux computer operating system, referred to as **UnitedLinux**. As further discussed below, the arbitration concerns the rights and obligations of Claimant and Respondent under two contracts related to the UnitedLinux project:

6 | 26

   &minus;    Master Transaction Agreement (**MTA**) by and between Respondent (then
           known as Caldera International, Inc.), Claimant (then known as SuSE Linux
           AG), Conectiva Inc., and Turbolinux, Inc., dated May 29, 2002;

   &minus;    UnitedLinux Joint Development Contract (**JDC**) by and between the same
           parties and, in addition, UnitedLinux, LLC, dated May 29, 2002.

Evidence:
- Master Transaction Agreement, dated May 29, 2002         Exhibit C-3
- UnitedLinux Joint Development Contract, dated May 29, 2002     Exhibit C-4

10

## REDACTED

11    Respondent has already filed claims in a U.S. court against the licensee of
Claimant directed against Claimant's SUSE Linux product and has, thus,
decidedly moved beyond the stage of attempting to resolve any dispute
concerning copyrights to Linux amicably. As discussed below, Respondent's
claims are completely inconsistent with, and precluded by, the terms of the MTA
and JDC. Therefore, this dispute should be resolved by ICC arbitration as laid
out in the arbitration clause in said contracts.

12                                      **REDACTED**

## C.   Law Applicable to the Merits

13

## REDACTED

## D.    Appointment of Arbitrator                     REDACTED

14                                                        Pursuant to Articles 4.3 and 8.4 of
the ICC Rules, each party shall nominate an arbitrator. Claimant hereby
nominates the following arbitrator as a member of the three person Arbitral
Tribunal:

> Dr. Roberto Dallafior
> Hess Dallafior Rechtsanwälte
> Rämistrasse 5
> CH-8024 Zurich
> Switzerland
>
> Tel:   +41 44 250-4950
> Fax:  +41 44 250-4900
>
> E-mail:    dallafior@hdlegal.ch

## E.    Language of the Proceedings

15                                            REDACTED

## F.    Amount in Dispute

16    For the purpose of determining the applicable ICC fees, Claimant believes that it
would be appropriate to assign a value to this arbitration of between USD 50
million and 100 million.

## G.    Scope of Present Submission

17    The present submission is limited to the essential facts, statement of claims and
exhibits as required by Article 4.3 of the ICC Rules. Claimant expressly reserves
the right to further substantiate its factual and legal statements and to bring new
or amended claims related to the matter in dispute and to provide supporting
evidence at a later stage of the proceedings.

## III.  The Parties

### A.   Claimant

18    Claimant SUSE Linux GmbH is a German corporation specializing in the Linux operating system business. It is the legal successor of the signatory SUSE Linux AG to the MTA and JDC. The terms SUSE Linux GmbH and Claimant are used herein to refer to both companies, as appropriate.

Evidence:
- Excerpts of Commercial Register for SUSE Linux GmbH, dated October 19 and December 20, 2004, the latter with General Assembly's resolution attached                    Exhibit C-5 a|b

19    Claimant is an indirectly owned subsidiary of Novell, Inc. (**Novell**), a Delaware corporation headquartered in Massachusetts, USA. Novell became the owner of Claimant in January 2004.

20    Claimant is represented in this arbitration by the following counsel:

Michael A. Jacobs, Grant L. Kim, Kenneth W. Brakebill
Morrison & Foerster LLP
425 Market Street, San Francisco
California 94105-2482, USA

Tel:   +1-415-268-7000
Fax:   +1-415-268-7522

E-mail:    mjacobs@mofo.com
           gkim@mofo.com
           kbrakebill@mofo.com

and|or

Georg Rauber, Felix Dasser, David Rosenthal
Homburger Rechtsanwälte
Weinbergstrasse 56 | 58
Postfach 338, CH-8006 Zürich
Switzerland

Tel:   +41 43 222-1000
Fax:  +41 43 222-1500

E-mail:      georg.rauber@homburger.ch
             felix.dasser@homburger.ch
             david.rosenthal@homburger.ch

## B.   Respondent

21    Respondent The SCO Group, Inc. is a Delaware corporation, based in Utah.
      Respondent's address, as specified in the MTA and JDC for the purpose of
      giving notices, is as follows:

          355 South 520 West, Suite 100
          Lindon, Utah 84042
          USA
          Attention: Mr. Benoy Tamang

          Tel: 1-801-765-4999
          Fax: 1-801-765-1313

          E-mail: benoy.tamang@caldera.com

      Respondent later notified Claimant that Mr. Tamang had left the company and
      that Mr. Andy Nagle had assumed responsibility for the UnitedLinux project.
      Accordingly, Claimant suggests that the ICC send any notices to Mr. Andy Nagle
      at the address above, with a copy to Mr. Darl McBride, Respondent's current
      CEO.

22    Respondent is the legal successor to Caldera International, Inc., which signed
      the MTA and JDC. The terms The SCO Group, Inc. and Respondent are used
      herein to refer to both companies, as appropriate.

      Evidence:
      -   *Respondent's Press Release, Caldera to Change Name to The*
          *SCO Group, August 26, 2002*                          Exhibit C-6

## IV.  Summary Statement of Facts

### A.    The Linux Operating System and the "Open Source" General Public License

23    Linux is a computer operating system. An operating system is computer software that controls basic operations of the computer. An operating system works together with application programs that provide additional functions, such as word processing, e-mail, and accounting.

24    Unlike proprietary operating systems such as Microsoft Windows, Linux has been released as open source, meaning that the source code for Linux is available to the general public.

25    Source code refers to the series of instructions in which a computer program is written, which can be read, understood, and modified by an experienced programmer. Source code is subsequently converted into object code, which is a series of bytes (symbols) that are required to run the program, but which are effectively unintelligible to anyone other than the computer.

26    Because proprietary operating systems such as Windows are normally distributed as object code only, users cannot read or modify the source code for proprietary operating systems. Moreover, proprietary operating systems are normally distributed with restrictive licenses that prohibit users from modifying the code.

27    Linus Torvalds, a student at the University of Helsinki, developed the earliest version of the Linux kernel in 1991. The kernel provides certain core functions of an operating system related to control and management of the Central Processing Unit or CPU (the chip at the heart of the computer) and other computer hardware (e.g., disk drives, monitor, keyboard, and printers); control and management of computer memory (RAM); and control and management of files used by the computer.

28    In addition to the kernel, a computer operating system generally includes software related to other functions, such as the installation, testing, and use of the operating system. The Linux kernel has been combined with other software to create what is commonly referred to as the Linux operating system.

29   All versions of the Linux kernel have been released under the General Public License (the **GPL**) for at least the past 13 years. The GPL is a widely used open source license published by the GNU Project, whose principal sponsor is the Free Software Foundation. A copy of the General Public License that is included with the Linux kernel is submitted herewith as Exhibit C-7.

Evidence:
- GNU General Public License, Version 2                                    Exhibit C-7

30   As explained in the preamble, the GPL takes a very different approach than that of restrictive, proprietary licenses:

> *"The licenses for most software are designed to take away your freedom to share and change it. By contrast, the GNU General Public License is intended to guarantee your freedom to share and change free software—to make sure that the software is free for all its users."*
> (Exhibit C-7, Preamble, page 1)

31   The GPL authorizes any third party to distribute modified versions of a computer program subject to the GPL, but only if such modified program is *"licensed as a whole at no charge to all third parties under the terms of this License"* (Section 2(b)). In addition, the GPL requires the source code for any modified program to be made available to the public, *"for a charge no more than [the] cost of physically performing source distribution"* (Section 3(b)).

32   Publication of the Linux kernel under the GPL effectively laid the foundation for the worldwide success of Linux, as it allowed anyone to use and modify the source code, but only on the condition that any distributed modifications were made freely available under the same conditions.

33   Numerous individuals and companies around the world have contributed code to the Linux operating system as open source under the GPL. As a result, Linux has evolved into a viable alternative to proprietary operating systems such as Microsoft Windows.

34   The Linux open source model offers several important benefits to users. First, the existence of competitive open source alternatives to proprietary operating

systems gives users more options, and hence more bargaining leverage in dealing with vendors.

35   Second, because the GPL requires any published modifications to be made freely available to the public, no individual or company has exclusive, proprietary rights to the Linux kernel or to other Linux software that is covered by the GPL. Thus, unlike proprietary operating systems, Linux is not under the control of a single company or individual.

36   Third, the open source policy empowers the user, by enabling the user to read and modify the source code. This is particularly important for users such as governments, who can check open source software for possible security flaws and modify the software without the permission or involvement of the software vendor.

Evidence:
- The Economist, Microsoft at the power point, September 11, 2003          Exhibit C-8

37   Fourth, because the Linux source code is freely available, patches that enhance or add features are frequently created by developers around the world and then made available to the public through the internet.

38   Several companies have built businesses around the development, distribution and support of Linux and associated programs. One such company is Claimant, which was founded in 1993 and acquired by Novell in 2004. Linux vendors focus on providing services that go beyond the publicly available Linux operating system, such as additional software and technical support.

39   Although all versions of Linux include certain common functions and features, the Linux product (also called "distribution") provided by one company may vary from another company's distribution. For example, a particular distribution may include additional language support, other additional functions, and additional application programs that are packaged with the operating system. Linux distributions thus come in different flavors. This lack of standardization was perceived as one hindrance to the broader adoption of Linux.

## B.    The Contracts at Issue

40    To promote the adoption of Linux, Claimant, Respondent and two other Linux vendors (Conectiva, Inc. and Turbolinux, Inc.) agreed in May 2002 to develop a standard version of Linux called "UnitedLinux". The four UnitedLinux members were based in four different countries from four different continents, thus providing global coverage: Germany (SUSE), the U.S. (SCO), Brazil (Conectiva), and Japan (Turbolinux).

41    The purpose of the UnitedLinux project was

(i)    to develop a standard version of Linux containing those Linux components and features set forth in the JDC;

(ii)    *to encourage each member to include UnitedLinux technology in their own* Linux products, to be promoted under the common UnitedLinux brand;

(iii)    to encourage widespread adoption of UnitedLinux as the standard for the information technology industry, through the jointly formed and controlled UnitedLinux LLC (the **LLC**); and

(iv)    to have the LLC own and license to the members all IP rights the members may have in the UnitedLinux technology for the members' independent inclusion in, and marketing of, their own Linux products.

42    The Preamble of the MTA describes this purpose as follows:

REDACTED

**REDACTED**

43   Pursuant to this agreed purpose, each of the members was free to use the UnitedLinux technology in its own Linux products, which would hopefully gain widespread industry acceptance through the successful, though independent, exploitation of the jointly developed software by each of the members.

44   Thus, the UnitedLinux members agreed to pool their resources for the mutual benefit of all members. This was particularly important because at that time, in 2002, the Linux market was dominated by Red Hat, a U.S. based Linux vendor that was not a member of UnitedLinux. By combining their respective expertise, intellectual property, and other resources to jointly develop and promote UnitedLinux, the UnitedLinux members sought to achieve greater market recognition than they could obtain through separate marketing of their separate Linux distributions.

45   Consistent with this purpose, the MTA and JDC made clear that each member was entitled to distribute its own Linux products free from claims that any of the other members had any proprietary rights in the UnitedLinux Software as used in the members' Linux products.

46   In particular, the UnitedLinux members agreed that each member would have an irrevocable, perpetual, and worldwide license to use and unlimitedly exploit any intellectual property rights of the other members in the UnitedLinux Software, which would be transferred to the LLC for this very purpose. Thus, the MTA and JDC contain identical provisions in Sections 3.2.2 and 8.2, respectively, stating that:

16 | 26

47

REDACTED

48

49

50

REDACTED

51

52

C.  The Development and Release of UnitedLinux 1.0

53

REDACTED

54

55                          REDACTED

56

57    The UnitedLinux project proceeded on schedule. UnitedLinux Version 1.0 was
      released to the public in November 2002, or less than six months after the
      contracts were signed in May 2002. The UnitedLinux press release stated:

          *"UnitedLinux is the result of an industry initiative to streamline Linux
          development and certification around a global, uniform distribution of
          Linux. Founding companies of UnitedLinux are Linux industry leaders
          Conectiva S.A., The SCO Group (NASDAQ:SCOX), SuSE Linux AG,
          and Turbolinux, Inc. UnitedLinux Version 1.0 is the engine that
          powers products to be sold by the four companies, each with its own
          local language support, value-add[ed] features, and pricing."*

      Evidence:
      -   UnitedLinux Press Release, UnitedLinux Releases Version 1.0,
          November 19, 2002                                        Exhibit C-9

## D.    Respondent's Support for UnitedLinux and Release of SCO
##       Linux 4.0, "Powered by United Linux"

58    Respondent was initially a strong supporter of UnitedLinux and the open source
      model associated therewith. For example, Ransom Love, then the Chairman and
      CEO of Respondent (then called "Caldera") announced in May 2002 that:

          *"Caldera sees the formation of UnitedLinux as a tremendous benefit
          to the industry, to our customers, to our 16,000-member reseller*

*channel, and to our IHV and ISV partners. Linux and Open Source have already changed the way software is developed in the new online world. UnitedLinux now offers a viable business model and creates a unified environment that will attract many more global business solutions to Linux enabling far greater adoption and use. Caldera plans to make Linux not just an alternative OS, but the dominant choice for businesses worldwide who are wanting to take advantage of the benefits of online services."*

Evidence:
- UnitedLinux Press Release, Caldera, Conectiva, SuSE, Turbolinux
  Partner To Create UnitedLinux, And Produce A Uniform Version Of
  Linux For Business, May 30, 2002                                   Exhibit C-10

59    Darl McBride, Respondent's current CEO, confirmed upon his appointment in June 2002 that *"UnitedLinux will be critical to the success of [Respondent]"* and that Respondent sought to make *"UnitedLinux a standard in our industry"*.

Evidence:
- Respondent's Press Release, Caldera Names Darl McBride as
  New CEO, June 27, 2002                                              Exhibit C-11

60    In November 2002, Respondent proudly announced the release of SCO Linux 4.0, *"powered by UnitedLinux"*. Respondent emphasized that:

> *"SCO Linux 4.0 is based on UnitedLinux 1.0, the core standards-based Linux operating system co-developed in an industry initiative to streamline Linux development and certification around a global, uniform distribution of Linux."*

Respondent further stated that UnitedLinux is

> *"an enterprise-class, industry-standard Linux operating system"*, which *"provides a <u>Single, Uniform Platform</u> for application development, certification and deployment, and allows Linux vendors, Independent Software Vendors (ISVs) and Independent Hardware Vendors (IHVs) to support a single Linux offering rather than many different versions"* (emphasis in the original).

Evidence:
- Respondent's Press Release, SCO Unveils SCO Linux 4, Powered
  by UnitedLinux, November 19, 2002                          Exhibit C-12

61    UnitedLinux 1.0 included a modified form of Linux kernel version 2.4.19, which
      was subject to the GPL. Thus, Respondent's November 2002 release of its
      product *powered by UnitedLinux 1.0"* triggered Respondent's obligation under
      the MTA and JDC to make the source code for the modified Linux kernel freely
      available to the public under the terms of the GPL.

62    Also in November 2002, Claimant announced its release of SUSE Linux, *"[b]ased
      on the joint industry standard, UnitedLinux 1.0"*.

      Evidence:
      - Claimant's Press Release, SUSE LINUX Unveils the Next
        *Generation of SUSE Linux Enterprise Server, November 19, 2002*     Exhibit C-13

## E.    Respondent's Sudden Change in Position and Assertion of Claims Against Linux

63    Although Respondent continued to distribute its Linux product for a number of
      months, Respondent suddenly changed its position and began attacking the
      Linux operating system and the UnitedLinux project.

64    In March 2003, Respondent filed a lawsuit in the U.S. against IBM, alleging that
      (a) Respondent owned proprietary rights to the UNIX operating system; and
      (b) *IBM had infringed on these rights by contributing UNIX code, methods, and
      concepts to the Linux operating system*. Respondent initially asserted claims for
      misappropriation of trade secrets and unfair competition (as well as other
      theories), and later added a claim for copyright infringement. Respondent has
      demanded over USD 1 billion in damages.

65    Even after suing IBM in March 2003, Respondent continued to market and
      distribute SCO Linux 4.0, *"powered by UnitedLinux"*. Indeed, in April 2003,
      Respondent announced the release of SCO Linux Server 4.0 for the Intel Itanium
      64-bit processor, which included the base UnitedLinux operating system.

      Evidence:
      - Respondent's Press Release, SCO Ships SCO Linux Server 4.0
        for the Itanium Processor Family, April 15, 2003                Exhibit C-14

66    However, in May 2003, Respondent announced that it would cease distribution of Linux. Respondent asserted that it had only recently discovered that Linux included code that infringed on Respondent's alleged proprietary rights, even though Respondent had been distributing Linux since 2001, and had participated in the development of UnitedLinux in 2002.

Evidence:
- Respondent's Press Release, SCO Suspends Distribution of Linux Pending Intellectual Property Clarification; Announces Greater Focus on UNIX and SCOx Strategy, May 14, 2003                  Exhibit C-15

67    Also in May 2003, Respondent sent letters to about 1'500 major corporations, asserting that portions of the UNIX operating system had been improperly copied into Linux, and that the use of Linux infringed Respondent's alleged intellectual property rights in UNIX.

Evidence:
- Respondent's Letter to Novell of May 12, 2003                  Exhibit C-16

68    At the same time that it threatened Linux users, Respondent stated that it would grant licenses to Respondent's alleged intellectual property rights in return for payment of royalties, under a licensing program called "SCOSource". Respondent sought to undermine confidence in Linux and to persuade users to take intellectual property licenses from Respondent through a widely-reported campaign of threats and lawsuits against both Linux users and vendors.

69    In addition to its USD 1 billion lawsuit against IBM and its demand letters to 1'500 Linux users, Respondent took the following actions:

–    Respondent filed a lawsuit against a U.S. automobile parts company, Autozone, in Nevada, asserting that Autozone's adoption of Linux to run its computer systems infringed Respondent's alleged copyrights.

–    Respondent filed a lawsuit against DaimlerChrysler, in Michigan, alleging that DaimlerChrysler had not complied with certification requirements in its UNIX license when it adopted Linux.

–    Respondent repeatedly asserted in software and information technology industry magazines and conferences that Respondent would prevail in its

lawsuits and that companies that deployed Linux without taking SCOSource licenses did so at their legal peril.

70    Respondent's allegations have been vigorously disputed. IBM denied that any copyrightable UNIX code was included in Linux. Linux developers made similar denials and called on Respondent to specify the technical basis for its claims, including the specific Linux code at issue.

71    Despite widespread requests to identify the specific technical basis for its claims, Respondent failed to publicly identify the specific Linux code at issue. Respondent's failure to provide support for its claims led to litigation in Germany that resulted in Respondent being enjoined from asserting that Linux violated Respondent's intellectual property rights.

Evidence:
- Computerworld Article, SCO fined USD 10,800 in Germany for
  Linux claims, September 3, 2003                                    Exhibit C-17

## F.    Respondent's Threats Against Claimant and Copyright Infringement Claim Based on Novell's Distribution of SUSE Linux

72    Respondent's campaign targeted at Linux was a direct threat to Claimant, whose business was based on Linux. Claimant responded by stating that Claimant and its customers were protected against Respondent's intellectual property claims by virtue of the licenses granted in the MTA and JDC.

Evidence:
- CNET News.com Article, SuSE sheltered by SCO pact, May 5,
  2003                                                               Exhibit C-18

73    Respondent publicly disputed Claimant's position regarding the contracts. Chris Sontag, Senior Vice President and General Manager of Respondent's "SCOSource" licensing program, stated:

> "Regarding contracts we have with SuSE and UnitedLinux, I would unequivocally state that there is nothing in those contracts that provides them with any protection or shelter in the way they are

*characterizing this in the press. If I were them, I would not be making those kinds of statements."*

Evidence:
- John Blau Interview with Chris Sontag in Computerworld, May 13, 2003                                                                              Exhibit C-19

74    In the same interview, Respondent's Chris Sontag stated that Respondent had no legal action planned against Claimant "*at this time*", but might take action in the future (Exhibit C-19).

75    On January 13, 2004, Novell purchased 100% of the shares of Claimant. At the same time, Claimant granted an exclusive license to Novell to all of Claimant's intellectual property rights, including any rights under agreements and licenses with other parties. Claimant's license to Novell included Claimant's rights under the MTA and JDC,

**REDACTED**

76    One week after Novell completed its acquisition of Claimant, Respondent filed a lawsuit against Novell in Utah state court. Several weeks later, Novell removed the Respondent lawsuit to the U.S. District Court for the District of Utah, which is the same court in which Respondent's lawsuit against IBM is pending.

77    Respondent's claims against Novell initially focused on whether Novell had "*slandered*" Respondent's alleged title to the UNIX copyrights by asserting that Novell had not transferred such copyrights to Respondent. Novell has denied and continues to deny that it transferred any copyrights to Respondent. Nevertheless, Respondent recently amended its complaint to add a claim that the distribution of SUSE Linux infringes Respondent's alleged UNIX copyrights.

Evidence:
- Respondent's Second Amended Complaint, February 3, 2006                                          Exhibit C-20

78    The Second Amended Complaint of Respondent (Exhibit C-20) alleges that:

   —    "*On November 4, 2003, Novell announced its acquisition of SuSE Linux, one of the world's leading distributors of Linux. Since that time, Novell*

*began distributing Linux worldwide."* (cf. Respondent's Second Amended Complaint, para. 46);

– *"Novell has infringed and continues to infringe SCO's copyrights by copying, reproducing, modifying, sublicensing, and/or distributing Linux products containing unauthorized contributions of SCO's copyrighted intellectual property."* (cf. Respondent's Second Amended Complaint, para. 116); and

– *"Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is not limited to the appropriation of numerous data structures and algorithms contained in or derived from SCO's copyrighted material. A partial listing of these data structures and algorithms is provided at Exhibit B."* (cf. Respondent's Second Amended Complaint, para. 117).

79     Respondent is requesting an award of damages related to Novell's distribution of SUSE Linux, as well as an injunction prohibiting Novell from continuing to distribute SUSE Linux.

80     Respondent has remained vague about the specific portions of SUSE Linux that supposedly infringe Respondent's copyrights. However, all or virtually all of the allegedly infringing items identified in Exhibit B to Respondent's Second Amended Complaint (Exhibit C-20) appear to be part of the Linux kernel that was included with UnitedLinux. Indeed, Respondent has asserted that the allegedly improper code is included in any product that includes the Linux kernel 2.4 or above.

81     As noted above, the Pre-Existing Technology contributed by Respondent to UnitedLinux does not involve the Linux kernel. In contrast, Respondent's infringement claim appears to be limited to certain items in the Linux kernel included in both UnitedLinux and SUSE Linux.

82     The MTA and JDC preclude Respondent from asserting infringement claims against any technology included in the UnitedLinux kernel for multiple reasons, including: (a) the MTA and JDC divest Respondent of ownership of any copyrights it may have claimed in any technology included in the UnitedLinux Software (except for Pre-Existing Technology, which is not at issue); (b) Claimant has a broad royalty-free license to use any intellectual property rights associated

with the UnitedLinux technology, including the right to sublicense such rights to Novell and to end-users; and (c) the MTA and JDC require the source code for the UnitedLinux kernel to be made available for free use and distribution under the GPL license terms.

83    Respondent's new claim in its Second Amended Complaint has created an actual controversy between Respondent and Claimant, as the developer of SUSE Linux and licensor of this product to Novell. On the one hand, Respondent alleges that Novell's distribution of SUSE Linux infringes Respondent's alleged copyrights. On the other hand, Claimant's position is that the MTA and JDC bar Respondent from asserting any copyright infringement claims based on the distribution of SUSE Linux.

84    Respondent's improper assertion of infringement claims against SUSE Linux is a breach of the MTA and JDC. Respondent also breached the MTA by publicly attacking the Linux operating system shortly after UnitedLinux was released and by withdrawing support for the UnitedLinux project. By doing so, Respondent impeded the very purpose of the common UnitedLinux project. Instead of advancing the enhancement and distribution of Linux as open source software and joining Claimant and the other partners in increasing their market shares for the benefit of al the partners and the open source community at large, Respondent turned against Claimant and the other partners and is now on a campaign to destroy the formerly common business.

85    Respondent's claim against Claimant and its exclusive licensee Novell has caused considerable damage and threatens to cause further and irreparable damage to Claimant to be further substantiated.

## V.    Prayers for Relief

86    It is, therefore, of utmost importance for Claimant that Respondent is found in breach of the MTA and JDC and, amongst others, prevented from further interfering with the distribution of SUSE Linux and that this is done before the Linux business and the open source project has been damaged even more seriously.

87    Claimant has a legal interest in declaratory judgment by the Arbitral Tribunal and in an order preventing Respondent from further directly or indirectly interfering with Claimant's business.

88    Claimant is also entitled to damages in an amount to be determined.

89    Accordingly, Claimant requests that the Arbitral Tribunal award the following relief:

1. Declare that Respondent is precluded under the Master Transaction Agreement (MTA) and the UnitedLinux Joint Development Contract (JDC) from asserting any copyright infringement claims related to SUSE Linux;

2. Declare, in particular, that the MTA and JDC divest Respondent of ownership of any alleged intellectual property rights in any part of software included in the UnitedLinux Software (other than Pre-Existing Technology and Enhancements);

3. Order Respondent to refrain from alleging publicly or against third parties that the use and distribution of SUSE Linux infringes upon Claimant's copyrights, as precluded by the MTA and JDC;

4. Order Respondent to pay damages in an amount to be determined for breach of the MTA and JDC by improperly asserting claims against Claimant and its licensees, and by attacking and withdrawing support for the UnitedLinux project;

5. *Order Respondent to bear all costs of the arbitration proceeding, including the costs and expenses of the ICC and of the arbitrators, as well as attorneys' fees, cost of lost executive time and expert's costs, if any; and*

6. Award any further relief that the Tribunal deems necessary to *effectuate the relief requested above.*

26 | 26

For facts and reasons set out above, we kindly request the Arbitral Tribunal to uphold Claimant's Prayers for Relief.

Respectfully submitted,

Michael A. Jacobs          Grant L. Kim          Kenneth W. Brakebill

Georg Rauber               Felix Dasser          David Rosenthal

**Exhibits** as per separate list

## List of Claimant's Exhibits

### In the Arbitration Proceeding of

**SuSE Linux GmbH**
**vs.**
**The SCO Group, Inc.**

---

### Exhibits filed with Respondent's Request for Arbitration
of April 10, 2006

**Exhibit C-1**    Power of Attorney, dated April 7, 2006
    Power of Attorney, dated April 6, 2006

**Exhibit C-2**    Glossary of Special Terms And Abbreviations

**Exhibit C-3**    Master Transaction Agreement, dated May 29, 2002

**Exhibit C-4**    UnitedLinux Joint Development Contract, dated May 29, 2002

**Exhibit C-5**    Excerpts of Commercial Register for SUSE Linux GmbH, dated October 19 and December 20, 2004, the latter with General Assembly's resolution attached

**Exhibit C-6**    Respondent's Press Release, Caldera to Change Name to The SCO Group, August 26, 2002

**Exhibit C-7**    GNU General Public License, Version 2

**Exhibit C-8**    The Economist, Microsoft at the power point, September 11, 2003

**Exhibit C-9**    UnitedLinux Press Release, UnitedLinux Releases Version 1.0, November 19, 2002

**Exhibit C-10**    UnitedLinux Press Release, Caldera, Conectiva, SuSE, Turbolinux Partner To Create UnitedLinux, And Produce A Uniform Version Of Linux For Business, May 30, 2002

2|2

**Exhibit C-11**   Respondent's Press Release, Caldera Names Darl McBride as New CEO, June 27, 2002

**Exhibit C-12**   Respondent's Press Release, SCO Unveils SCO Linux 4, Powered by UnitedLinux, November 19, 2002

**Exhibit C-13**   Claimant's Press Release, SUSE LINUX Unveils the Next Generation of SUSE Linux Enterprise Server, November 19, 2002

**Exhibit C-14**   Respondent's Press Release, SCO Ships SCO Linux Server 4.0 for the Itanium Processor Family, April 15, 2003

**Exhibit C-15**   Respondent's Press Release, SCO Suspends Distribution of Linux Pending Intellectual Property Clarification; Announces Greater Focus on UNIX and SCOx Strategy, May 14, 2003

**Exhibit C-16**   Respondent's Letter to Novell of May 12, 2003

**Exhibit C-17**   Computerworld Article, SCO fined USD 10,800 in Germany for Linux claims, September 3, 2003

**Exhibit C-18**   CNET News.com Article, SuSE sheltered by SCO pact, May 5, 2003

**Exhibit C-19**   John Blau Interview with Chris Sontag in Computerworld, May 13, 2003

**Exhibit C-20**   Respondent's Second Amended Complaint, February 3, 2006

# EXHIBIT 7



*FOR IMMEDIATE RELEASE*

*For additional information:*
*UnitedLinux*
*Margot Rodger*
*mrodger@virtualmgmt.com*
*781-876-6299*

## Caldera, Conectiva, SuSE, Turbolinux Partner To Create UnitedLinux, And Produce A Uniform Version Of Linux For Business;

**Majority of enterprise system and software vendors including AMD, Borland Software Corporation, Computer Associates, Fujitsu Siemens, Fujitsu Japan, Hewlett-Packard, IBM, Intel, NEC, Progress Software, and SAP, support effort to create standard Linux platform.**

LINDON, Utah; CURITIBA, Brazil; NUREMBERG, Germany; & BRISBANE, Calif.; May 30, 2002 -- Linux Industry leaders Caldera International, Inc. (Nasdaq:CALD), Conectiva S.A., SuSE Linux AG, and Turbolinux, Inc., today announced the organization of UnitedLinux, a new initiative that will streamline Linux development and certification around a global, uniform distribution of Linux designed for business. UnitedLinux addresses enterprise customers' need for a standard, business-focused Linux distribution that is certified to work across hardware and software platforms, accelerating the adoption of Linux in the enterprise. Under terms of the agreement, the four companies will collaborate on the development of one common core Linux operating environment, called UnitedLinux software. The four partners will each bundle value added products and services with the UnitedLinux operating system and the resulting offering will be marketed and sold by each of the four partners under their own brands.

Nearly every vendor supplying a piece of the technology infrastructure used by businesses has expressed support for UnitedLinux, including systems and software vendors AMD, Borland Software Corporation, Computer Associates, Fujitsu Siemens, Fujitsu Japan, Hewlett-Packard, IBM, Intel, NEC, Progress Software, and SAP. Independent hardware and software vendors spend considerable effort certifying their products and services on individual Linux distributions to ensure product compatibility for their customers. UnitedLinux will significantly diminish the number of distributions that vendors are asked to certify and will provide a true standards-based Linux operating environment.

### Customers Benefit Through Unity

According to research firm IDC, a 2001 survey of 800 North American and Western European companies found that 40% of the respondents were either using or testing Linux in their organizations. UnitedLinux will help further speed enterprise adoption of Linux by providing businesses with a greater choice in the number of applications and hardware certified to work on the uniform version of Linux. Customers will also benefit from the global sales, localization, education, support and services that all four UnitedLinux vendors will collectively provide.

The collaboration of the four leading Linux companies will result in an enterprise Linux offering, which is truly global by virtue of the companies' ability to provide local language support, training and professional services, in addition to the support of strategic partners. UnitedLinux will provide one unified Linux code base for IBM's complete eServer product line, AMD's current 32-bit and forthcoming 64-bit AMD Athlon(TM) and AMD Opteron (TM) processor-based platforms, and Intel's x86 32-bit and Itanium(TM) processor family platforms. UnitedLinux supports LSB, Li18nux, and GB18030 standards, as well as enabling installations in English, German, French, Italian, Japanese, Korean, Portuguese, Spanish, Simplified Chinese and Traditional Chinese languages.

In addition, UnitedLinux unleashes a massive research and development organization for Linux in the enterprise. Effectively, the four companies involved in this process will shift dollars and resources once allocated to creating and maintaining custom Linux operating environments and divert them to new R&D on Linux enterprise software. UnitedLinux is dedicated to bolstering the enterprise readiness of the platform, but in the same collaborative spirit from which Linux was founded and continues to flourish.

**Participation and Availability**

While today's announcement outlines the founding members of UnitedLinux, the initiative is open for additional Linux companies to participate. The four partners currently plan to each offer their own server products based on UnitedLinux by the end of 2002. For additional information on UnitedLinux, contact Caldera, Conectiva, SuSE or Turbolinux or go to www.unitedlinux.com.

**About UnitedLinux**
UnitedLinux is a standards-based, worldwide Linux solution targeted at the business user and developed by Caldera, Conectiva, SuSE, and Turbolinux. Designed to be an enterprise-class, industry-standard Linux operating system, UnitedLinux provides a single stable, uniform platform for application development, certification, and deployment, and allows Linux vendors, Independent Software Vendors, Independent Hardware Vendors, and Original Equipment Makers to support a single high value Linux offering. For more information, go to www.unitedlinux.com.

*ADDENDUM*

**AMD**
AMD looks forward to working with UnitedLinux. Innovating within open standards is a basic tenet at both AMD and UnitedLinux. The combination of an enterprise-ready standard Linux, and high-volume, industry standard 32-bit and 64-bit server platforms from AMD will provide shared customers with a high-performance platform for enterprise computing.
    -- Rich Heye, Vice President Platform and Infrastructure, AMD

**Borland**
As a leading provider of Linux development environments, Borland supports the efforts around UnitedLinux. This organization should help in making it easier for Borland to offer our technology running on Linux from more vendors and help to open up new opportunities and channels for Borland.
    -- Simon Thornhill, VP and General Manager of rapid application solutions at Borland

**Caldera**
Caldera sees the formation of UnitedLinux as a tremendous benefit to the industry, to our customers, to our 16,000-member reseller channel, and to our IHV and ISV partners. Linux and Open Source have already changed the way software is developed in the new online world. UnitedLinux now offers a viable business model and creates a unified environment that will attract many more global business solutions to Linux enabling far greater adoption and use. Caldera plans to make Linux not just an alternative OS, but the dominant choice for businesses worldwide who are wanting to take advantage of the benefits of online services.
    -- Ransom Love, Chairman and CEO, Caldera International

**Computer Associates**
As a company that has demonstrated unmatched commitment to Linux as an enterprise-computing platform, CA is extremely supportive of the UnitedLinux initiative. We believe that this broad-based cooperative effort will further accelerate the embrace of Linux by customers across all market segments and will enable them to realize the significant technical and business benefits that Linux offers in their distributed and mainframe implementations.
    -- John Pincomb, VP of Marketing at Computer Associates

**Conectiva**
UnitedLinux represents the addition of the best qualification of each of these companies. As they are in different places, they can add qualifications that each one has developed in order to answer to the challenges of the local markets, creating a product that increases the number of answers to the technical demand. It would be very difficult for an individual company to get such a wide coverage in so many aspects. In addition, the organization model we are adopting, an alliance with the cooperation and contribution of best practices, is in accordance with the cooperative spirit Linux has wrought.
    -- Jaques Rosenzvaig, CEO of Conectiva

**Free Standards Group**
UnitedLinux's commitment to LSB certification is a natural. I look forward to the further growth of the Linux market acceptance of open source methodologies and wider certification of Linux products.

-- Scott McNeil, Executive Director of the Free Standards Group

**Fujitsu**
*Linux is one of the most important strategic platforms for Fujitsu, and we have been actively developing hardware and software products, services and solutions based on Linux. We welcome UnitedLinux and commend its efforts to create a common and stable Linux distribution environment for system vendors like Fujitsu and business customers as well. Fujitsu is pleased to lend its fullest support to UnitedLinux's activities.*
    -- Masaharu Kitaoka, General Manager of Linux Division, Fujitsu Limited.

**Fujitsu Siemens Computers**
UnitedLinux transforms Linux into a business operating system par excellence. The level of performance, scalability and availability will be extraordinary. Combined with our PRIMERGY servers, UnitedLinux will provide a platform for business-critical computing solutions.
    -- Dr. Joseph Reger, Chief Technology Officer Fujitsu Siemens Computers

**HP**
*As the #1 vendor of Linux solutions and the leading proponent of standards-based computing, HP believes UnitedLinux represents an important milestone that will accelerate the use of Linux by enterprises around the world. Businesses of all sizes that are deploying Linux now have the additional benefit of this unified platform.*
    -- Martin Fink, general manager, HP Linux Systems Division

**IBM**
The formation of UnitedLinux offers multiple benefits to the industry, proving yet again that cooperation on standards simplifies application development and deployment for vendors thereby providing our mutual customers with new applications more quickly. Ultimately, UnitedLinux will accelerate Linux adoption in the industry.
    -- Steve Solazzo, General Manager, Linux, IBM.

**Linux International**
Open Source licensing leads to each vendor having the same functionality in the base system over time. This *effort shows forethought in making that effort a planned, cooperative event. Rather than spend their money re-engineering the basic underlying functionalities of reliability, scalability and availability, these vendors will be able* to build a common platform with which to innovate new features that their customers desire. I wish the old Unix vendors had learned that lesson.

For many years the analysts have been saying that the marketplace could not support so many distributions of Linux, hinting that only one or two might survive. Once again the Linux community has come back with a unique answer that may prove the analysts both right and wrong. This bold step should give a strong base distribution that will satisfy the needs of the software vendor for consistency and the hardware vendor for support, yet allow differentiation at the upper levels to meet the needs of diverse customers.
    -- Jon "maddog" Hall, Executive Director of Linux International.

**Open Forum Europe**
*OpenForum Europe was formed to accelerate and broaden the use of Linux and Open Source Software in* business, breaking down the perceived business blockers that our research has shown may slow down its adoption by business. The announcement of UnitedLinux is very welcome, tackling potential duplication of effort and via the partner collaboration will boost confidence of CIOs in selecting Linux. UnitedLinux is a future-oriented step that has the full support of OpenForum Europe.
    -- Graham Taylor, Programme Director, OpenForum Europe

**NEC**
NEC believes that any activities of the UnitedLinux will be useful for all of us -- Linux users, developers and system integrators -- related to the enterprise systems. NEC welcomes such activities and will contribute development of future Linux market for enterprise.
    -- Chieko Takahashi, Senior Manager of Open Source Software Solution Center, NEC Solutions, NEC

**Progress Software**
We are encouraged by the announcement of a UnitedLinux Operating System and look forward to its first release. We see the collaboration between Caldera, SuSE, Turbolinux and Conectiva as being a most effective way of integrating several Linux distributions into one standard based Linux Operating System that is specifically targeted

for business implementations. This is an essential step in the evolution of the Linux OS, which will provide notable economical and technological benefits to business customers and software companies like Progress.
   -- Maggie Alexander, Vice President of Product Planning at Progress Software

**SAP**
UnitedLinux will assist SAP in extending our Linux reach while maintaining the clear and simple structure of the distributions and databases supported by SAP solutions. Throughout the world, UnitedLinux will help to make SAP solutions on Linux an even more compelling offering with respect to service, support, reliability and performance to price ratio.
   -- SAP AG, Karl-Heinz Hess, Member of the Extended Executive Board

**SuSE Linux AG**
UnitedLinux provides our customers a business Linux that can truly be called the "best of the best". Global accounts will especially welcome the worldwide availability of one unified product combined with a set of services delivered either by a local Linux player or an international acting partner like IBM Global Services.
-- Gerhard Burtscher, CEO SuSE Linux AG

**Turbolinux**
Asia Pacific is one of the fastest growing markets for Linux and UnitedLinux will only accelerate that rapid growth. Turbolinux has market leadership in Asia Pacific with major enterprise customers, hardware and software partners throughout the region, as well as aiding in China's massive undertaking to select a technology infrastructure for the entire country. UnitedLinux will benefit these customers, especially those in the largest enterprises that use Linux across their global infrastructures. With today's announcement, there are no credible arguments left against Linux in the enterprise. Linux will take its deserved place alongside every other enterprise operating environment.
   -- Ly-Huong Pham, CEO of Turbolinux

**Back**



**Conectiva S.A**



**The SCO Group**



**SuSE Linux AG**



**Turbolinux, Inc.**

**Home | Press | Partners | Info | Developers | Contact**

® 2003-2004 UNITEDLINUX

# EXHIBIT 8

# UNITEDLINUX

**Home** **Press** **Partners** **Info** **Developers** **Contact**

*For additional information:*
*UnitedLinux*
*Margot Benoit*
mbenoit@virtualmgmt.com
781-876-6299

**FOR IMMEDIATE RELEASE**

## UnitedLinux Releases Version 1.0

### Industry Leading Technology Providers Sponsor Launch Event

LAS VEGAS - Nov. 19, 2002 - Today the UnitedLinux group announced the release of Version 1.0 of its UnitedLinux product, a standards-based Linux operating system targeted at the business user. UnitedLinux is the result of an industry initiative to streamline Linux development and certification around a global, uniform distribution of Linux. Founding companies of UnitedLinux are Linux industry leaders Conectiva S.A., The SCO Group (NASDAQ:SCOX), SuSE Linux AG, and Turbolinux, Inc. UnitedLinux Version 1.0 is the engine that powers products to be sold by the four companies, each with its own local language support, value-add features, and pricing.

Sponsors of the UnitedLinux 1.0 launch event are HP (NYSE:HPQ) and IBM (NYSE:IBM). Today's announcement was made during the UnitedLinux press conference at the COMDEX event in Las Vegas.

"UnitedLinux has successfully reached its first major milestone by delivering Version 1.0 according to the schedule laid out last spring when the group was formed," said Paula Hunter, general manager of UnitedLinux. "Today's launch of UnitedLinux Version 1.0 is a tribute to the collaborative skills and technical expertise of the four founding companies, as well as to the vision that brought the UnitedLinux organization into being."

Built on top of a solid and tested foundation, UnitedLinux 1.0 is an enterprise-class operating system with exceptional stability, scalability and reliability, and its high level of quality has been previously available only in expensive proprietary operating systems. Distributed virtually everywhere in the world and supported by leading global ISVs and IHVs, UnitedLinux Version 1.0 will initially be available in English, Japanese, Simplified Chinese, Korean, Portuguese, Spanish, Italian, German, French and Hungarian. UnitedLinux Version 1.0 will have local language and local time zone support for customers around the world, with access to a channel of more than

UnitedLinux Releases Version 1.0

16,000 resellers and a global pre- and post-sales support team. Details of global training and certification programs will be made public in the near future.

"As the leading provider of industry-standard Linux hardware and a long time proponent of open-source computing, HP believes in offering our customers the choice to deploy Linux across the platforms that best meet their individual computing needs," said Rick Becker, HP Vice President, Software CTO, Industry Standard Servers. "With the delivery of UnitedLinux Version 1.0 we are able to offer our customers, across the world, additional choice and flexibility, enabling them to deploy the best Linux solution for their business."

"Customers want to rapidly deploy Linux-based applications to realize business value, and ISVs want a common, reliable, standards based platform upon which to build their applications," said Steve Solazzo, General Manager, Linux, IBM. "Today's delivery of UnitedLinux Version 1.0, right on schedule, simplifies the tasks for application providers and customers alike, allowing them to more rapidly deploy Linux solutions with confidence."

UnitedLinux Version 1.0 incorporates a wide range of features that enhance its usefulness for enterprise environments. Details are contained in a UnitedLinux white paper at www.unitedlinux.com. Some highlights are:

- **Standards compliance:** UnitedLinux support for key community standards, such as LSB 1.2 and OpenI18N from the Free Standards group, allows broader hardware and software vendor support as well as adoption by large enterprises with heterogeneous IT shops. UnitedLinux Version 1.0 has met the stringent requirements of LSB certification.
- **Scalability:** Enterprise server configurations continue to grow, with larger, more powerful multi-processors handling more users, tasks and threads. Enhancements in UnitedLinux improve Linux's ability to take advantage of larger and more complex systems and thus handle new categories of applications. Specifics include:
  - ○ Complete set of software and tools to build server farms, for workloads that would otherwise be unmanageable for a single machine
  - ○ Scheduler enhancements to improve process scheduling on SMPs and avoid the scheduler becoming a bottleneck
  - ○ Asynchronous Input/Output, to minimize waiting on I/O in large, busy systems
- **High Availability:** As Linux has grown from early applications into more business-critical areas, the availability expectations of users have grown as well. UnitedLinux Version 1.0 bolsters Linux's capabilities in avoiding downtime and in diagnosing and fixing problems when they do occur. New capabilities include:
  - ○ A flexible and powerful POSIX-compliant event logging and notification capability
  - ○ Dynamic probes that greatly enhance profiling and debugging, and allow dynamic insertion of breakpoints in code
  - ○ Non-disruptive and tailored dumping of system data
  - ○ Toolkit that significantly improves Linux's ability to record and trace system events
  - ○ Hotplug PCI support, enabling the addition or removal of attached devices without system restart

http://www.unitedlinux.com/en/press/pr111902.html

Seite 3 von 4

- **Security:** UnitedLinux 1.0 improves Linux's suitability for sectors where security is critical, by offering support for Kerberos, a strong network authentication protocol; basic firewall support to separate secure areas of the system from less restricted areas; and a consolidated set of community security enhancements known as Bastille.

- **File Systems:** As the data needs of enterprise users continue to grow, the demands on the underlying file system(s) have grown as well. UnitedLinux addresses this issue by including support for the Journaling File System (JFS), which is an extremely scalable, stable, and high throughput filesystem, and the popular community filesystems Reiser File System (ReiserFS), XFS, and the ext3 filesystem.

- **Network/storage/device management:** As Linux becomes more widely used, the numbers and types of devices that users need continue to grow. In addition, enterprise customers expect their device drivers to be robust, and network protocols continue to evolve. In addition to basic IPv6 support, UnitedLinux 1.0 meets these challenges by supporting Logical Volume Manager (LVM), a popular community volume manager, and Enterprise Volume Management System (EVMS), a layered, plug-in means of providing exceptional flexibility and extensibility in managing storage. Device drivers supported include Ethernet, Fibre Channel, Token Ring, ODBC, Tape, SCSI, among others.

- **Platform support and interoperability:** For the foreseeable future, enterprises will depend on a heterogeneous computing environment. UnitedLinux Version 1.0 takes advantage of hardware capability across all relevant platforms and architectures, including Intel (32 and 64-bit), AMD, PowerPC (IBM eServer iSeries and pSeries), and IBM eServer zSeries mainframe. Hardware functionality is exploited through advanced features such as large memory support for up to 64 GB of RAM, hardware technology for compressing main memory contents called Memory Expansion Technology (MXT), and graphical connection support.

- **Development Environment:** UnitedLinux 1.0 provides a development environment for ISVs that includes all the compilers, includes, libraries, sources, text editors, graphical user interface support and other tools to enable the building of applications for UnitedLinux.

Products powered by UnitedLinux are being offered by the four founding companies. Details are available on request from Conectiva S. A. - unitedlinux@conectiva.com; The SCO Group - unitedlinux@sco.com; SuSE Linux AG - unitedlinux@suse.com; Turbolinux, Inc. - unitedlinux@turbolinux.com.

**About UnitedLinux**
UnitedLinux is a partnership of industry-leading Linux companies combining their intellectual property, geographic mind share, sales, support and marketing expertise to produce a uniform distribution of Linux designed for business. UnitedLinux applies the collaborative development model of open source to the business model to enable a one-stop shop for developers, partners and customers to install, support and maintain quality business solutions based on Linux anywhere in the world. UnitedLinux is actively recruiting membership for both industry software developers and those who provide Linux as an integral part of their business solutions. For more information, visit http://www.unitedlinux.com or call UnitedLinux at +1-781-876-8989.

07.04.2006

UnitedLinux Releases Version 1.0

Linux is a registered trademark of Linus Torvalds. All other trademarks and service marks are the property of their respective owners.

### 

▓▓▓ **Back**

Conectiva S.A          The SCO Group          **SuSE Linux AG**          Turbolinux, Inc.

**Home** | **Press** | **Partners** | **Info** | **Developers** | **Contact**

® 2002-2004 UNITEDLINUX

07.04.2006

EXHIBIT 9



# SCO Unveils SCO Linux 4, Powered by UnitedLinux

## Stable, Reliable Linux Platform Backed with Guaranteed Support from Trusted Operating System Vendor

LAS VEGAS—Comdex—November 19, 2002—The SCO® Group (SCO)(Nasdaq: SCOX), in coordination with the UnitedLinux 1.0 launch at Comdex, today announced the release of SCO Linux 4.0, powered by UnitedLinux. SCO Linux 4.0 is a high-quality Linux operating system designed for mission-critical business applications, with guaranteed stability, security and worldwide support from SCO. SCO Linux 4.0 is based on UnitedLinux 1.0, the core standards-based Linux operating system co-developed in an industry initiative to streamline Linux development and certification around a global, uniform distribution of Linux. SCO Linux 4.0, powered by UnitedLinux provides customers with the base UnitedLinux operating system as well as the additional software, support and services from SCO that customers need to successfully run Linux in business environments.

"SCO understands that for any operating system to be commercially viable, especially Linux, it needs a well-defined roadmap from a trusted supplier, who is committed to and capable of supporting it," said Andy Nagle, director of SCO Linux products. "SCO is uniquely qualified to make the UnitedLinux platform viable for business because of its proven track record in successfully building, deploying and supporting stable operating platforms for more than 23 years. SCO Linux 4.0 is built upon SCO's traditional combination of top OS platform technology, and support and service features that customers can rely on to support critical business environments."

"Because Linux is built on ideas and components from so many parties and is so widely distributed, the issue of support and reliability is still a key concern of customer and vendors," said Judy Chavis, worldwide Linux director, HP industry standard servers. "Built on a secure set of unified LSB compliant standards by UnitedLinux and with full support offerings from SCO, SCO 4.0 offers our customers another strong Linux platform choice for their worldwide Linux deployments."

"For hardware and software vendors, it has become an increasingly difficult task to certify their products across the many distributions of Linux. SCO Linux 4.0, powered by UnitedLinux can help vendors overcome that obstacle by providing widespread application support across the base of UnitedLinux distributions," said Bill Claybrook, Research Director for Linux and Unix at Aberdeen Group. "This in turn benefits IT departments by providing them with greater choice and support as they deploy Linux."

SCO Linux 4.0 is an ideal platform to support small to medium businesses and replicated branch sites such as retail store operations, hotel chains and banks. In these environments, operational efficiency and flexibility to respond to new customer demands are essential. SCO Linux 4.0 provides these qualities with the support and experience of a trusted supplier.

### SCO Linux 4.0 Features and Support
SCO Linux 4.0, powered by UnitedLinux adds several features and support services:

- As an enterprise-class, industry-standard Linux operating system, UnitedLinux provides a *Single, Uniform Platform* for application development, certification and deployment, and allows Linux vendors, Independent Software Vendors (ISVs) and Independent Hardware Vendors (IHVs) to support a single Linux offering rather than many different versions. SCO offers certification services that will be accepted as support across all distributions of the "powered by UnitedLinux" family.

- *Stability* with SCO's commitment to operating system quality and continuous operating system uptime, worldwide support and 12-18 month release cycles. This stable, predictable maintenance and support schedule makes SCO Linux 4.0 a smart choice for business IT needs.
- *Award-winning Support Services* are available from SCO for tasks including install, configuration support and 24x7 emergency response. SCO has a presence in more than 82 countries and can provide local language support worldwide. SCO's dedicated engineering services organization provides experienced support for UNIX, all other Linux platforms powered by UnitedLinux, as well as all RPM-based Linux distributions.

- *Maintenance* is guaranteed with every copy of SCO Linux 4.0. Each release of SCO Linux will be maintained

for a minimum of two years, and SCO has a dedicated team of escalations engineers to work on fixes for the UnitedLinux platform. Maintenance includes notification of security patches and other critical upgrade information.

● *Customized Linux Solutions* are available through SCO's channel of more than 16,000 resellers. SCO's partners and resellers are willing to partner with OEMs to sell SCO-based solutions. SCO can incorporate the support of UnitedLinux into existing Engineering Services agreements providing a one-stop-shop for OEM customers requiring representation with SCO and the UnitedLinux development teams.

● *Certified Training* on UnitedLinux is available from SCO and SCO authorized education partners using award-winning SCO education materials.

To read what the industry is saying about SCO Linux, please visit www.sco.com/company/press/quotes/scolinux.html.

**Pricing and Availability**
SCO Linux 4.0 is available today in four different editions:

SCO Linux 4.0 Server, powered by UnitedLinux **Base** Edition—$599

● Includes SCO Update maintenance service

SCO Linux 4.0 Server, powered by UnitedLinux **Classic** Edition—$699

● Includes unlimited installation and configuration technical support incidents via phone, Web or email for one year; SCO Update Service; five business hour response; designated technical support contacts; and Online Service Manager which includes access to current product technical articles and patches, ability to submit service requests online, and online support activity and status

SCO Linux 4.0 Server, powered by UnitedLinux **Business** Edition—$1249

● Includes unlimited technical support incidents via phone, Web or email for one year; SCO Update Service; three business hour response; designated technical support contacts; Online Service Manager (same access as Classic Edition)

SCO Linux 4.0 Server, powered by UnitedLinux **Enterprise** Edition—$2199

● Includes unlimited technical support incidents via phone, Web or email for one year; SCO Update Service; one business hour response during regular business hours; designated technical support contacts; 24x7 after-hours emergency service telephone support; Administrative Account Manager; Office Service Manager (same access as Classic Edition)

**About SCO**
The SCO Group (Nasdaq: SCOX), formerly called Caldera International, provides "Powerful Choices" for businesses through its UNIX, Linux and Volution product lines and services. Based in Lindon, UT, SCO has representation in 82 countries and 16,000+ resellers worldwide. SCO Global Services provides reliable localized support and services to partners and customers. For more information on SCO products and services, visit http://www.sco.com.

SCO and the associated SCO logo are trademarks or registered trademarks of Caldera International, Inc. in the U.S. and other countries. UNIX and UnixWare, used under an exclusive license, are registered trademarks of The Open Group in the United States and other countries. Linux is a registered trademark of Linus Torvalds. All other brand or product names are or may be trademarks of, and are used to identify products or services of, their respective owners.

EXHIBIT 10

BW0432  NOV 19,2002        13:05 PACIFIC        16:05 EASTERN


# ( BW)(CA-SUSE-LINUX) SuSE Linux Unveils the Next Generation of SuSE Linux Enterprise Server

Business Editors/High-Tech Writers

OAKLAND, Calif.--(BUSINESS WIRE)--Nov. 19, 2002--

Powered by UnitedLinux, SuSE Linux Enterprise Server 8 Delivers
Efficient, Secure, and Reliable Future-proof Operating System
Available Across All Significant Platforms

   SuSE Linux, the international Open Source technology leader and solutions provider, today announced the next generation of SuSE Linux Enterprise Server.
   Based on the joint industry standard, UnitedLinux 1.0, SuSE Enterprise Server 8 delivers increased security, scalability, reliability, standard-compliance, software maintenance, and support. Available in December, SuSE Linux Enterprise Server 8 combines maximum reliability and performance with an unprecedented scalability across all significant hardware borders. SuSE Linux Enterprise Server is also certified and validated for central enterprise applications such as mySAP.com and IBM DB2.
   "IT experts worldwide aim to reduce costs as well as increase the performance, security and flexibility of their IT infrastructure," said Boris Nalbach, CTO of SuSE Linux. "SuSE Linux Enterprise Server is the product of choice for corporate deployment. It offers decision makers financial planning security and eases administrators' duties through its technical maturity and continuous maintenance."
   "SuSE has broken new ground with this continuum of enterprise offerings," said Bob Butler, Business Unit Executive, Linux Distributors, IBM. "Using a common Linux source code, applications can quickly span heterogeneous environments -- from micro to mainframe, small business to Fortune 500. Coupled with full IBM middleware certification and worldwide IBM Global Services support, SuSE Linux Enterprise Server 8 will offer customers a compelling value proposition."
   "Based on unified LSB-compliant standards by UnitedLinux, SuSE Enterprise Server 8 enables HP to offer our customers another strong Linux platform choice for their enterprise-level Linux deployments," said Judy Chavis, Worldwide Linux Director, HP Industry Standard Servers. "Running on industry-standard HP ProLiant servers or our Itanium 2-based server family, SuSE Linux Enterprise Server 8 offers customers a secure, reliable, and well supported Linux platform."

Only Server with Complete Cross-Platform Availability

   SuSE Linux Enterprise Server 8 is the only server system worldwide that boasts a uniform code basis for all significant hardware platforms. SuSE Linux Enterprise Server 8 is available on industry-standard HP ProLiant servers and HP Itanium 2-based servers for 32-bit and 64-bit Intel platforms, respectively. In addition, SuSE Linux Enterprise is available on AMD 32-bit and 64-bit processors, Fujitsu Siemens Primergy servers and the entire IBM eServer series (xSeries, iSeries, pSeries, zSeries), making it the perfect platform for consolidating heterogeneous server structures and providing significantly reduced system administration costs.
   SuSE Linux Enterprise Server 8 delivers powerful and mature tools for all mission-critical server applications, such as file, print, Web, and security services. In addition, it is highly suitable as a server for applications and middleware solutions such as databases, e-commerce, and storage, as well as for clustering and ThinClient systems.

Unique: The SuSE Linux Maintenance Program Expands

A new expanded portfolio of system maintenance and support services ensures that businesses get qualified assistance from SuSE for the running system. Installation support is now valid for the entire maintenance term. In the SuSE Linux Maintenance Web, users can access well-documented fixes, patches, and updates, ensuring optimum system availability. Various support services specifically designed for SuSE Linux Enterprise Server 8 are available at fixed rates, with guaranteed turnaround times, and around the clock.

Maximum Convenience: Easy Installation and System Configuration

SuSE Linux Enterprise Server 8 also improves administration and configuration efficiency with the new installation tool AutoYaST. AutoYaST enables automated installation of a user-defined SuSE Linux Enterprise Server configuration in a distributed network, greatly reducing installation time and administration costs and guaranteeing a global quality-assured software rollout. Using the graphical YaST2 frontend in SuSE Linux Enterprise Server 8, hardware components and server services can comfortably be configured in the running system. YaST's remote administration by way of a secure encrypted connection provides security and efficiency.

Globally Standardized Base Technology: UnitedLinux 1.0

SuSE Linux Enterprise Server 8 is based on the uniform global Linux business infrastructure, UnitedLinux 1.0. Jointly developed by Conectiva, SuSE, The SCO Group, and Turbolinux, and supported by leading hardware and software providers, UnitedLinux 1.0 provides multiple language support and compliance with the main Linux standards (LSB, FHS, OpenI18N).

Product Scope and Availability

SuSE Linux Enterprise Server 8 for x86 will be available in December from SuSE Linux resellers. In addition, other versions of SuSE Linux Enterprise Server 8 for S/390 and zSeries (31-bit and 64-bit), iSeries, pSeries and for Itanium 2-based servers will be available in December. SuSE Linux Enterprise Server 8 will also support AMD's x86 64-bit architecture, which will be available beginning 2003.
The recommended retail price of US$ 749.00 for SuSE Linux Enterprise Server 8 for x86 includes four CDs, detailed manuals, and the SuSE Linux Maintenance Program for one server for 12 months. For the benefit of users of SuSE Linux Enterprise Server 7 who participate in the Maintenance Program, SuSE offers an upgrade to SuSE Linux Enterprise Server 8 together with the documentation at the price of US$ 129.00.
For further information, please visit www.suse.com/sles/

About SuSE

SuSE Linux is the international technology leader and solutions provider in Open Source operating system software. SuSE's unique expertise in Linux and its largest development team worldwide dedicated to Open Source software has contributed to the recognition of SuSE as the most complete Linux solution available today. SuSE Linux is a privately held company focused entirely on supporting the Linux community and Open Source development. For more information, please visit www.suse.com.

Note to Editors: SuSE is a registered trademark of SuSE Linux AG. Linux is a registered trademark of Linus Torvalds. All other trademarks mentioned herein are the property of their respective owners.

```
          --30--kt/sf*

          CONTACT: The Terpin Group (for SuSE Linux)
                   Eunice Kim and Xenia von Wedel, 650/344-4944 x105
                   ekim@terpin.com

          KEYWORD: CALIFORNIA
```

```
INDUSTRY KEYWORD: SOFTWARE HARDWARE COMPUTERS/ELECTRONICS
SOURCE: SuSE Linux
```

EXHIBIT 11



May 12, 2003



Mr. Jack L. Messman
Chairman & CEO
Novell, Inc.
1800 South Novell Place
Provo, UT 84606

Dear Jack:

SCO holds the rights to the UNIX operating system software originally licensed by AT&T to approximately 6,000 companies and institutions worldwide (the "UNIX Licenses"). The vast majority of UNIX software used in enterprise applications today is a derivative work of the software originally distributed under our UNIX Licenses. Like you, we have an obligation to our shareholders to protect our intellectual property and other valuable rights.

In recent years, a UNIX-like operating system has emerged and has been distributed in the enterprise marketplace by various software vendors. This system is called Linux. We believe that Linux is, in material part, an unauthorized derivative of UNIX.

As you may know, the development process for Linux has differed substantially from the development process for other enterprise operating systems. Commercial software is built by carefully selected and screened teams of programmers working to build proprietary, secure software. This process is designed to monitor the security and ownership of intellectual property rights associated with the code.

By contrast, much of Linux has been built from contributions by numerous unrelated and unknown software developers, each contributing a small section of code. There is no mechanism inherent in the Linux development process to assure that intellectual property rights, confidentiality or security are protected. The Linux process does not prevent inclusion of code that has been stolen outright, or developed by improper use of proprietary methods and concepts.

Many Linux contributors were originally UNIX developers who had access to UNIX source code distributed by AT&T and were subject to confidentiality agreements, including confidentiality of the methods and concepts involved in software design. We have evidence that portions of UNIX System V software code have been copied into Linux and that additional other portions of UNIX System V software code have been modified and copied into Linux, seemingly for the purposes of obfuscating their original source.

2

As a consequence of Linux's unrestricted authoring process, it is not surprising that Linux distributors do not warrant the legal integrity of the Linux code provided to customers. Therefore legal liability that may arise from the Linux development process may also rest with the end user.

We believe that Linux infringes on our UNIX intellectual property and other rights. We intend to aggressively protect and enforce these rights. Consistent with this effort, on March 7, we initiated legal action against IBM for alleged unfair competition and breach of contract with respect to our UNIX rights. This case is pending in Utah Federal District Court. As you are aware, this case has been widely reported and commented upon in the press. If you would like additional information, a copy of the complaint and response may be viewed at our web site at www.sco.com/scosource.

For the reasons explained above, we have also announced the suspension of our own Linux-related activities until the issues surrounding Linux intellectual property and the attendant risks are better understood and properly resolved.

Similar to analogous efforts underway in the music industry, we are prepared to take all actions necessary to stop the ongoing violation of our intellectual property or other rights.

SCO's actions may prove unpopular with those who wish to advance or otherwise benefit from Linux as a free software system for use in enterprise applications. However, our property and contract rights are important and valuable; not only to us, but to every individual and every company whose livelihood depends on the continued viability of intellectual and intangible property rights in a digital age.


Yours truly,


THE SCO GROUP


By: _____
    Darl McBride
    President and CEO

# EXHIBIT 12

print version) SuSE sheltered by SCO pact | CNET News.com                    Seite 1 von 2

 **NEWS.COM**   http://www.news.com/

## SuSE sheltered by SCO pact

By Stephen Shankland
http://news.com.com/SuSE+sheltered+by+SCO+pact/2100-1016_3-999620.html

Story last modified Mon May 05 08:37:52 PDT 2003

**An agreement with SCO Group protects Linux seller SuSE from legal action stemming from SCO's accusation that Unix software was copied into Linux, SuSE said.**

"We have a joint development agreement with them, which includes appropriate cross-licensing arrangements," said SuSE spokesman Joe Eckert on Friday. "Our lawyers feel that covers us from any actions that SCO may take."

SCO on Thursday said it had found cases in which source code underlying the proprietary Unix operating system--the rights to which the Lindon, Utah-based company owns--had been copied into Linux, an open-source clone of Unix. If SCO can prove its allegation, resulting copyright infringement issues could pose a challenge to companies that sell Linux, legal experts have said.

Asked if SCO planned legal action against Red Hat and SuSE, SCO Chief Executive Darl McBride told CNET News.com, "There's a point in time that has to be resolved with those guys, too." However, he said such action isn't currently part of SCO's legal proceedings, which are concentrated on a billion-dollar lawsuit alleging that IBM misappropriated SCO's Unix trade secrets and moved them into Linux.

Proving that code was copied will require that SCO show the instructions aren't just an independent recreation of a particular method, said Illuminata analyst Jonathan Eunice.

"There are certain structures that are very idiomatic to a language like C," in which both Unix and Linux are programmed. "You would have to show the supposed equivalent snippets are not just someone programming in the idiom," Eunice said. And SCO will have to show extensive sections were copied, not just a handful of lines here and there.

Red Hat, the top seller of Linux, said its efforts to make sure it doesn't violate others' intellectual property rights mean that it's not concerned about SCO's accusations.

SuSE has in a different relationship with SCO, however. It hired about 15 SCO programmers when the two companies, along with Brazilian Linux seller Conectiva and Japanese Turbolinux, formed the UnitedLinux consortium.

Conectiva and Turbolinux also have a technology cross-license agreement with SCO that was signed as a part of that deal, Eckert said.

Copyright ©1995-2006 CNET Networks, Inc. All rights reserved.

[print version] SuSE sheltered by SCO pact | CNET News.com          Seite 2 von 2

EXHIBIT 13

IDG Network:   Login  Register



**Get enterprise IT news headlines in your inbox** ▶ FREE Newsletters

**COMPUTERWORLD** An IDG company    QuickLink [      ] ● Search [Computerworld ▼]

| Home | News | Topics | Subscribe | Events | White Papers | Briefings | Webcasts | Blogs |

> Return to story

# Q&A: SCO's Chris Sontag on how Unix plus Linux equals trouble

News Story by John Blau, IDG News Service

MAY 13, 2003
(IDG NEWS SERVICE) - The SCO Group, arguably, isn't making many friends in the Linux camp these days. Last month, it filed a $1 billion lawsuit against IBM for allegedly misusing Unix code to bolster Linux efforts (see story). SCO owns Unix System V code, which IBM had licensed to build AIX. SCO now acknowledges that it may extend its legal activities to Linux distributors SuSE Linux AG and Red Hat Inc., and doesn't rule out action against users of the open-source operating system.



**EMC²**
where information lives®

When information
comes together,

The move wouldn't be so unusual if not for the fact that SCO is a founding member of UnitedLinux, a group of companies that have united to distribute Linux software worldwide.

Chris Sontag, senior vice president and general manager of SCOsource, the SCO division in charge of managing and protecting the company's Unix intellectual property, spoke with IDG News Service about SuSE, UnitedLinux, IBM and Linux users. His overall message is that Linux developers, distributors and customers are using code that doesn't belong to them and that if they don't settle up with the Lindon, Utah, software company, they can expect to see their day in court.

**SuSE feels protected against any legal action you may consider because of contracts with SCO and with UnitedLinux in which you are a member. Do SuSE and other Linux distributors including Red Hat have reason to be worried?** Regarding contracts we have with SuSE and UnitedLinux, I would unequivocally state that there is nothing in those contracts that provides them with any protection or shelter in the way they are characterizing this in the press. If I were them, I would not be making those kinds of statements.

**Are you planning any legal action against SuSE or Red Hat?** We have no action planned at this time. Our focus is on the IBM lawsuit. This does not mean, however, that we will not initiate other actions to protect our intellectual property at a future point.

**You're a member of UnitedLinux. Would you say that your lawsuit has caused some friction within that group?** Yes, there is some friction. But we've been doing our best to have open dialogues with the other participants and members in UnitedLinux. Darl McBride, the CEO of SCO, has had numerous conversations with the other CEOs within UnitedLinux. We've been doing everything we can to keep the dialogue open and are trying to work to conclusions that will be amicable for all the parties involved. We haven't come to a good conclusion yet. But we're always hopeful.

**Wouldn't you agree that your legal action is causing uncertainty in the Linux community and that this uncertainty is undermining the marketing efforts of UnitedLinux?** There is definitely uncertainty and doubt. And there are problems identified within the Linux community. We were not the first ones to raise the intellectual property issue, but we certainly have a major issue now. Since digging into the lawsuit with IBM, we've become very aware of issues related to Linux and other areas.

**So what's your goal?** Our hope is that we can bring this to a full conclusion so that everyone has a final understanding in terms of intellectual property issues.

**Some people are beginning to question if SCO isn't more focused on Unix these days than on Linux. Are you still committed to Linux?** Our primary focus has always been on Unix. Our efforts related to Linux have been to provide choices and multiple solutions to our customers. This hasn't changed.

**Could you imagine pulling out of UnitedLinux if there is some continued friction in the group?** We're evaluating all our initiatives related to Linux right now. We have no announcements to make regarding what we may or may not be doing at this point. But certainly we will have to reassess the businesses, opportunities and issues in the marketplace and make appropriate adjustments as we go along.

**So abandoning UnitedLinux is a possibility?** I'd prefer to defer that question for now.

**What prompted you to initiate the IBM lawsuit when you did? Why now and not a year ago?** We had started working on SCO source-related initiatives late last year. We began digging into a lot of issues and started having some concerns. Then we went to LinuxWorld early this year and heard statements from Steve Mills, a senior executive at IBM responsible for the company's overall software strategy. Basically, he said that IBM will exploit its expertise in AIX to bring Linux up to par with Unix and went on to say a lot of other things, like trying to help obliterate Unix. IBM is a licensee of Unix technology from SCO, originating back to contracts with AT&T Corp. So IBM's position became a big problem for us.

**IBM is a big company with deep pockets and plenty of political clout. Do you think you can win the case?** We're very confident about the case. We believe we have significant evidence to present at the appropriate time in court.

**What is the next step?** SCO made its initial filing. IBM was supposed to respond within 30 days. They requested an extension of 30 days, which we granted them. So after 60 days, they responded with basically nothing -- a very vanilla law school 101-type level response, which was rather surprising. This month, we will have meetings that will occur between attorneys on both sides and some scheduling hearings with the judge. Then we will move into the phase of gathering documents, evidence and depositions from all parties we believe are appropriate to this lawsuit. The steps beyond that are up to the judge.

**Could this go on for months, even years?** A complex legal issue like this could take years. However, we think we'll be able to have the issue expedited more quickly due to the damages that it is causing SCO. We also have contractual obligations to IBM related to our license of Unix System V source code, which IBM has used for AIX. We have the ability to withdraw or pull the AIX license on June 13, which should cause IBM to expedite this issue as well.

**What about SuSE and Red Hat customers and other Linux users? Could they face litigation or be affected in any way?** Certainly, as the evidence mounts, there could be concerns and issues for end customers. When you're talking about copyrighted materials or trade secrets being inappropriately obtained and released, even the recipients of that information have to have concerns.

**Linux - Recent Headlines**

> OSDL to finance open-source software developers

> Novell Touts Integrated Suite at BrainShare

> OpenVZ to release kernel for SUSE Linux Enterprise 10

> Novell CEO opens up road map

**View our Linux special coverage page**
Computerworld news and feature coverage of the Linux operating system.

Reprinted with permission from



For more news from IDG visit *IDG.net*
Story copyright 2005 International Data Group. All rights reserved.





Get enterprise **IT news headlines**
in your inbox  [▶] **FREE Newsletters**

Copyright © 2005 Computerworld Inc. All rights reserved. Reproduction in whole or in part in any form or medium without express written
Computerworld Inc. is prohibited. Computerworld and Computerworld.com and the respective logos are trademarks of International Data