MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Novell, Inc.**

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, <br><br> Plaintiff and Counterclaim-Defendant, <br><br> vs. <br><br> NOVELL, INC., a Delaware corporation, <br><br> Defendant and Counterclaim-Plaintiff. | **DECLARATION OF KENNETH W. BRAKEBILL IN SUPPORT OF NOVELL, INC.'S MOTION FOR A MORE DEFINITE STATEMENT** <br><br> Case No. 2:04-CV-00139 <br><br> Judge Dale A. Kimball |

Dockets.Justia.com

Kenneth W. Brakebill, under penalty of perjury, declares the following:

1.    I am an attorney duly licensed to practice law in the State of California and a partner in the law firm of Morrison & Foerster LLP, counsel of record for Defendant and Counterclaim-Plaintiff Novell, Inc. ("Novell") in this action.  I was admitted to practice before this Court *pro hac vice* by this Court's February 10, 2004 order.  I submit this declaration in support of Novell's Motion for a More Definite Statement.

2.    Attached hereto are true and correct copies of the following documents:

(a)    Exhibit 1 is a true and correct copy of SCO's Second Amended Complaint filed on February 3, 2006 by Plaintiff and Counterclaim-Defendant SCO in this action, *The SCO Group, Inc. v. Novell*, Case No. 2:04-CV-0139, United States District Court for the District of Utah.

(b)    Exhibit 2 is a true and correct copy of a letter from Kenneth Brakebill to Edward Normand dated January 24, 2006.

(c)    Exhibit 3 is a true and correct copy of a letter from Kenneth Brakebill to Edward Normand dated February 8, 2006.

(d)    Exhibit 4 is a true and correct copy of an e-mail message from Edward Normand to Kenneth Brakebill dated February 19, 2006.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 10th day of April, 2006 in San Francisco, California.

_____
Kenneth W. Brakebill

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _10th_ day of April, 2006, I caused a true and correct copy of the foregoing **DECLARATION OF KENNETH W. BRAKEBILL IN SUPPORT OF NOVELL, INC.'S MOTION FOR A MORE DEFINITE STATEMENT** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101


Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California  90401


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131


Robert Silver
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504

EXHIBIT 1

FILED
U.S. DISTRICT COURT

2006 FEB -3  P 1: 02

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone:  (305) 539-8400
Facsimile:  (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>NOVELL, INC.,<br><br>   Defendant. | **SECOND AMENDED COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:04CV00139<br>Honorable Dale A. Kimball |

Plaintiff, The SCO Group, Inc. ("SCO"), sues Defendant, Novell, Inc. ("Novell"), and alleges as follows:

## I.    NATURE OF THIS ACTION

1.    Through an Asset Purchase Agreement between Novell and The Santa Cruz Operation ("Santa Cruz") dated September 19, 1995, as amended, (the "APA"), and SCO's subsequent acquisition of two divisions from Santa Cruz through a transaction closing on or about May 7, 2001, SCO acquired all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, license agreements, and copyrights, as well as the right to bring actions for infringement or other violations relating to said assets (collectively, the "business" or the "UNIX and UnixWare business").

2.    The intent of the parties to the APA and the purpose of the APA, as well as the intent and purpose of the subsequent Santa Cruz-to-SCO transaction, were to transfer the UNIX and UnixWare business to SCO, including the copyrights in UNIX, UnixWare, and supporting materials ("the copyrights").

3.    This lawsuit stems from Novell's willful infringement of the copyrights and from its false and bad-faith claims that it owns the copyrights and UNIX itself and that it has the authority under the APA to destroy the value of the business by waiving, revoking, or otherwise controlling SCO's rights and claims related to the business.

4.    In consideration for its sale of the business under the APA, Novell received, among other consideration, 6.1 million shares of Santa Cruz common stock, in a transaction valued at the time at over $100 million, as well as an equitable interest in 95% of certain binary royalties as described below.

2

5.    In Attachment E of Novell's Disclosure Schedule to the APA, Novell provided a list of approximately 106 copyright registrations (encompassing eight pages) covering products relating to the business transferred to SCO.

6.    In the course of exercising its rights with respect to UNIX and UnixWare, SCO has filed for copyright protection with the United States Copyright Office.

7.    In an effort to interfere with SCO's exercise of its rights with respect to UNIX and UnixWare technologies, Novell has, in disregard of its obligations under the APA, filed for copyright protection in the same UNIX technology covered by SCO's copyrights.

8.    Novell has falsely and repeatedly claimed in public that it, and not SCO, owns the copyrights.

9.    Novell has made such statements with the intent to cause customers and potential customers of SCO to refrain from doing business with SCO; to slander and impugn SCO's ownership rights in UNIX and UnixWare; and to attempt, in bad faith, to block SCO's ability to enforce the copyrights and its rights under UNIX licenses.

10.   Novell's false and misleading representations that it owns the copyrights have directly caused and continue to cause significant irreparable harm to SCO's valuable UNIX and UnixWare copyrights, its business, and its reputation, and has caused third parties to refuse to enter into license agreements with SCO relating to SCO's UNIX and UnixWare business.

11.   In connection with the closing of the transaction set forth in the APA, Novell and Santa Cruz entered into a Technology License Agreement (the "TLA"), which licensed back to

3

Novell all technology included in the transferred assets, including all modifications of that technology, for certain limited purposes.

12.    The APA and TLA each contained a non-compete provision, whereby Novell covenanted not to distribute the licensed-back technology in (a) any operating system in competition with SCO's core server products or (b) in any product in which that technology constitutes a primary portion of the value of the product.

13.    In 2003, Novell became a distributor of the Linux operating system by purchasing SuSE Linux.  As SCO has alleged in its suit against International Business Machines ("IBM") pending in this Court, IBM has wrongfully contributed SCO's UNIX technology to Linux, and that technology constitutes a primary portion of the value of Linux. Consequently, by distributing Linux in competition with SCO's core products, Novell has materially breached the non-compete provisions of the APA and TLA.

14.    Furthermore, Novell has infringed and continues to infringe SCO's copyrights by copying, reproducing, modifying, sublicensing, and/or distributing the licensed-back technology, contrary to the express terms of the TLA.  In addition, through its Linux business, Novell has also infringed and continues to infringe SCO's copyrights in UNIX, by copying, reproducing, modifying, sublicensing, and/or distributing UNIX intellectual property without authority to do so.

15.    Under Section 4.16 of the APA, Novell retained the right to continue receiving certain product royalties that Santa Cruz collected from then-existing SVRX licensees for their distribution of binary-code versions of System V pursuant to sublicensing agreements . Under Sections 4.16, 1.2(b), and 1.2(f) of the APA, Novell also retained the right to

4

direct or take certain actions to protect those SVRX royalties. Novell has erroneously and in bad faith attempted to extend those rights to matters unrelated to Novell's protected binary royalty stream. In particular, Novell has purported, among other things, to waive SCO's rights and claims against IBM for its wrongful contributions to Linux, even though those rights and claims were transferred to SCO under the APA and the Santa Cruz-to-SCO transaction.

16.     Under the APA, Novell did not retain the rights to take or direct any actions with respect to any source-code licenses or fees, other SVRX royalties, or any claims arising after the closing date against any parties relating to any right, property, or asset included in the business. The APA intended and did transfer such rights exclusively to SCO.

17.     Novell's retaining such rights would have subverted the stated purpose of the APA and rendered Santa Cruz's ownership of the UNIX and UnixWare business illusory. Similarly, Novell's retaining the copyrights would have made Santa Cruz's ownership of UNIX and UnixWare technologies without value or meaning.

18.     Novell's newly concocted claims that Santa Cruz intended and did pay over $100 million for intellectual property without the copyrights to protect and exploit it, all while abdicating to Novell the right to control and destroy the value of that property, defies commercial reason and common sense and contradicts conduct during the years that followed that APA.

19.     Novell has interfered with SCO's UNIX license agreements with IBM and Silicon Graphics, Inc. ("SGI"), by asserting falsely and in bad faith that Novell owns the

copyrights and by purporting in bad faith to waive and revoke SCO's claims against IBM and SGI that arose after the closing date and are related to those agreements.

20. Several provisions of the APA require the parties to take the actions necessary to effectuate the purposes of the APA and consummate the transactions contemplated therein. If it were true (contrary to the intent of the parties to the APA) that Novell retained the copyrights and SCO received mere phantom rights to the business, then Novell has breached those provisions by failing to take the actions necessary to convey the business to SCO as contemplated by APA.

21. Through this action against Novell, SCO seeks the following:

   a) a preliminary and permanent injunction (i) requiring Novell to assign to SCO all copyrights that Novell has improperly registered in UNIX and UnixWare following Novell's transfer of all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, license agreements, and all copyrights related thereto to SCO pursuant to the APA; (ii) preventing Novell from representing in any forum that it has any ownership interest whatsoever in the copyrights or UNIX itself; (iii) requiring Novell to retract or withdraw all its representations of its purported ownership of the copyrights;

   b) a preliminary and permanent injunction preventing Novell from copying, reproducing, modifying, sublicensing, and distributing SCO's copyrighted UNIX and UnixWare technology, except as provided by the TLA;

   c) actual, special, enhanced, statutory, and punitive damages in amounts to be proved at trial; and

6

d) as an alternative claim, an order directing Novell specifically to perform its

obligations under the APA by taking the actions necessary to transfer to SCO the

UNIX and UnixWare business, including the copyrights.

## II. PARTIES, JURISDICTION, AND VENUE

22. Plaintiff SCO is a Delaware corporation with its principal place of business in Utah

County, Utah.

23. Defendant Novell is a Delaware corporation with its executive offices and headquarters

in Waltham, Massachusetts, that does business in Utah.

24. This Court has concluded that it has subject matter jurisdiction over SCO's slander-of-

title claim pursuant to 28 U.S.C. § 1331 and § 1338(a).

25. The Court has jurisdiction over SCO's copyright claim pursuant to 28 U.S.C. § 1331 and

§ 1338(a).

26. Based on its jurisdiction over the slander-of-title and copyright claims, the Court also has

supplemental jurisdiction over SCO's state-law claims.

27. This Court has personal jurisdiction over Novell because Novell transacts substantial

business in the State of Utah.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III. FACTUAL BACKGROUND

## A. The APA's Transfer of the Copyrights in UNIX and UnixWare

29. *Schedule 1.1(a) to the APA provides that SCO, through its predecessor in interest,*

*acquired from Novell:*

> I. All rights and ownership of UNIX and UnixWare, including
> but not limited to all versions of UNIX and UnixWare and all

copies of UNIX and UnixWare (including revisions and updates in process), and all technical, design, development, installation, operation and maintenance information concerning UNIX and UnixWare, including source code, source documentation, source listings and annotations, appropriate engineering notebooks, test data and test results, as well as all reference manuals and support materials normally distributed by [Novell] to end-users and potential end-users in connection with the distribution of UNIX and UnixWare . . . .

II. All of [Novell's] claims arising after the Closing Date against any parties relating to any right, property or asset included in the Business.

30.     On December 19, 1995 ("the closing date"), the parties closed the transaction set forth in

the APA.  In connection with the closing, the parties executed the TLA and a Bill of Sale.

31.     The TLA was originally called for by Section 1.6 of the APA, which provides in part:

1.6 License Back of Assets.  Concurrent with the Closing Buyer [SCO] shall execute a license agreement under which it shall grant to Seller [Novell] a royalty-free, perpetual, worldwide license to (i) all of the technology included in the Assets and (ii) all derivatives of the technology included in the Assets, including the "Eiger" product release (such licensed back technology to be referred to collectively as "Licensed Technology").

Through the TLA, Santa Cruz granted to Novell the license specified in Section 1.6, with

certain modifications.

32.     As of the closing date, both Novell and SCO, including executives for both parties who

negotiated and closed the transaction, intended and believed that the copyrights had been

transferred to SCO.  Because Novell would not have required a license-back had it

retained the copyrights, the TLA evidences the parties' shared intent and belief that, as of

the closing date, SCO owned the copyrights.

8

33.  In Amendment No. 2 to the APA, Novell and SCO reiterated and clarified that SCO

owned all "copyrights and trademarks owned by Novell as of the date of the [APA]

required for SCO to exercise its rights with respect to the acquisition of UNIX and

UnixWare technologies," and that Novell would no longer be liable should any third

party bring a claim against SCO "pertaining to said copyrights and trademarks."

**B. Novell's Slander of SCO's Title to the Copyrights in UNIX and UnixWare**

34.  Software technology is valuable only insofar as the intellectual property contained therein

is protected from unlawful misappropriation. Copyrights provide critical protection

against misappropriation as established by the United States Congress under the

Copyright Act. SCO requires the full copyright protection it purchased from Novell to

enforce its rights in its proprietary UNIX and UnixWare source code and related

technology against infringing third parties. A transfer of source code without the

associated copyrights is for all intents and purposes meaningless and worthless.

35.  Based on the APA and Amendment No. 2, SCO is the sole and exclusive owner of all

copyrights related to the UNIX and UnixWare source code and all documentation and

peripheral code and systems related thereto.

36.  Novell, with full knowledge of SCO's exclusive ownership of the copyrights related to

UNIX and UnixWare, has embarked on a malicious campaign to damage SCO's ability to

protect its valuable copyrights in UNIX and UnixWare. In particular, Novell has

wrongfully asserted ownership over UNIX and UnixWare technologies by filing for

copyright protection in its own name, and has made numerous false and misleading

9

public representations disparaging SCO's ownership of the copyrights and claiming that
it, and not SCO, owns the copyrights.

37.    Novell's false oaths and misleading public representations and wrongful assertions of
ownership rights in UNIX and/or UnixWare include, but are not limited to, the following:

a)    On May 28, 2003, Novell's Chairman, President, and CEO Jack Messman based
at Novell's headquarters in Waltham, Massachusetts, publicly claimed that Novell
did not transfer the UNIX and UnixWare copyrights to SCO and that "SCO is not
the owner of the UNIX copyrights." Mr. Messman's statement was published in
several newspapers and other publications, and he and Novell timed the statement
to be released on the eve of SCO's positive quarterly earnings announcement. As
a result of Novell's announcement, SCO's stock price dropped over twenty
percent.

b)    In a letter dated June 6, 2003, directed from SCO to Novell, SCO brought to
Novell's attention Amendment No. 2 to the APA.

c)    Following Novell's receipt of SCO's letter dated June 6, 2003, Novell issued a
press release dated that same date which recanted Mr. Messman's prior statement
claiming Novell owned UNIX copyrights, stating "[t]he amendment [to the Asset
Purchase Agreement] appears to support SCO's claim that ownership of certain
copyrights for UNIX did transfer to SCO in 1996."

d)    In a letter of the same day, June 6, 2003, directed to SCO, Joseph Lasala, Novell's
General Counsel, continued to call SCO's claims of copyright ownership
"absurd" and "unsubstantiated."

10

e)   In a letter dated June 26, 2003, from Mr. Lasala to SCO, Novell acknowledged

that Amendment No. 2 "appears to support a claim" by SCO to "some

copyrights," but at the same time, Novell called SCO's claims of ownership of

UNIX and UnixWare "simply wrong" and declared "that we do not agree with

SCO's public statements on this matter."

f)   In a letter from Mr. Lasala dated August 4, 2003, Novell responded to SCO's

registration of UNIX System V copyrights with the United States Copyright

Office and explicitly "dispute[d] SCO's claim to ownership of these copyrights."

g)   Despite Amendment No. 2, Novell continued with its unfounded and malicious

campaign to slander SCO's ownership of the copyrights.  In fact, Novell, again

falsely asserted ownership of UNIX copyrights by submitting twelve

certifications beginning on September 22, 2003, through October 14, 2003, to the

United States Copyright Office.  In these certifications, Novell publicly claimed

to be the copyright owner of several versions of UNIX, including the following:

(1) UNIX System V/386 Release 4 Version 3; (2) UNIX System V/386 Release 4

2; (3) UNIX System V/386 Release 4 Version 4; (4) UNIX System V/386 Release

3 2; (5) UNIX System V/386 Release 3 0; (6) UNIX System V/386 Release 4 0;

(7) UNIX System V/386 Release 4 1ES; (8) UNIX System V Release 3 2/386; (9)

UNIX System V Release 3/386; (10) UNIX System V Release 4 2MP; (11) UNIX

System V Release 2; and (12) UNIX System V Release 4 1ES/386.  Novell

published its false certifications to the world by placing them online at Novell's

website.

11

h)   Also on October 10, 2003, Novell publicly filed under oath with the United States Copyright Office four different iterations of a "Declaration Regarding Ownership" of UNIX copyrights TXU-510-028, TXU-511-236, TXU-516-704, and TXU-516-705. In each of those sworn documents, Novell declared "that it retains all or substantially all of the ownership of the copyrights in UNIX, including the U.S. Copyright Registration referenced above."

i)   In a press release dated December 22, 2003, Novell, despite its June 2003 statement that SCO owns the copyrights, stated that "it owns the copyrights in UNIX, and has applied for and received copyright registrations pertaining to UNIX consistent with that position."

j)   In a press release dated January 13, 2004, Novell again knowingly and wrongfully made the false claim that "it retained ownership of [UNIX] copyrights."

k)   At the March 2004 Open Source Business Conference in San Francisco, Novell's Vice Chairman Chris Stone proclaimed during his keynote address that Novell "still own[s] UNIX."

38.   Novell's false oaths and wrongful claims of copyrights and ownership in UNIX and UnixWare were made in bad faith and constitute a knowing and intentional disregard for the truth.

39.   Novell's wrongful claims of copyrights and ownership in UNIX and UnixWare have caused and continue to cause damage to SCO in the following particulars:

a)   Customers and potential customers of SCO are unable to ascertain the truth of ownership in UNIX and UnixWare, and make decisions based thereon;

12

  b)  Potential customers have informed SCO that they will not enter into agreements

to license SCO's UNIX technologies because of the cloud surrounding SCO's

ownership of UNIX created by Novell's false public representations that it, and

not SCO, owns UNIX.

  c)  SCO's efforts to protect its ownership of UNIX and UnixWare, and copyrights

therein, are subject to a false cloud of ownership created by Novell.  At the

present time, SCO is pursuing claims against third parties for infringement of

SCO's intellectual property and contractual rights in UNIX.  Defendants in those

cases have relied on Novell's claims of ownership in UNIX as a defense to SCO's

claims, thereby hindering SCO's ability to protect its copyrights and other rights

and causing SCO to incur significant additional attorneys' fees and costs litigating

issues resulting from the cloud Novell has placed on SCO's title to UNIX and

UnixWare.

**C.  Novell's Unauthorized Use of SCO's Technology**

40.  At the time of the execution of the APA, Novell was a leading networking software

company.  Because it had developed its flagship networking product, Netware, to work

on the UNIX operating system, Novell needed and requested the right to distribute trivial

portions of the UNIX source code embedded in Netware.

41.  Accordingly, with the sole intent of accommodating these requests by Novell, the parties

to the APA agreed that Santa Cruz would license back to Novell "all the technology

included in the Assets" transferred by the APA, as well as "all derivatives of the

13

technology included in the Assets" (collectively, "the Licensed Technology"), subject to certain broad limitations.

42.    To protect the value to Santa Cruz of the transferred UNIX and UnixWare assets, the APA and TLA each contained a non-compete provision, whereby Novell covenanted not to use the Licensed Technology to compete with SCO's core operating-system products.

43.    Section 1.6 of the APA provides in part:

> Seller agrees that it shall use the Licensed Technology only (i) for internal purposes without restriction or (ii) for resale in bundled or integrated products sold by Seller which are not directly competitive with the core products of Buyer and in which the Licensed Technology does not constitute a primary portion of the value of the total bundled or integrated product.

44.    Similarly, under Section II.A.(2) of the TLA, Novell is permitted to distribute and sublicense "such Licensed Technology and modifications thereof," provided that

> (i) such technology and modifications may be sublicensed and/or distributed by NOVELL solely as part of a bundled or integrated offering ("Composite Offering"); (ii) such Composite Offering shall not be directly competitive with core application server offerings of SCO, and (iii) the Licensed Technology shall not constitute a primary portion of the value of such Composite Offering.

45.    The "core products" and "core application server offerings" referenced in the APA and TLA, respectively, refer to the UNIX and UnixWare operating systems owned by Santa Cruz upon the closing date. Even before acquiring the UNIX source code, Santa Cruz had been primarily involved in the business of distributing UNIX in binary form, so that with the acquisition of the UNIX and UnixWare source code and copyrights, the UNIX and UnixWare operating systems undoubtedly represented Santa Cruz's "core products."

14

In addition, as of the closing date, Santa Cruz had no "application server offering" other than UNIX and UnixWare operating systems.

46.    On November 4, 2003, Novell announced its acquisition of SuSE Linux, one of the world's leading distributors of Linux. Since that time, Novell began distributing Linux worldwide.

47.    On December 22, 2005, SCO filed with the Court in the SCO v. IBM case a compilation of 293 disclosures of technology which IBM has made to enhance Linux (in violation of its agreements with SCO) with the stated objective of making Linux a more enterprise-hardened operating system.

48.    Linux contains SCO's UNIX technology, including unauthorized UNIX System V source code, derivatives and modifications, and methods and concepts contributed to Linux by IBM in violation of its license agreements with SCO. Thus, Linux contains the Licensed Technology which, pursuant to Section 1.6 of the APA and Section II.A.(2) of the TLA, Novell covenanted not to distribute in an operating system.

49.    As a general-purpose operating system, Linux is "directly competitive" with SCO's core application server offerings.

50.    Furthermore, the measure of UNIX technology in Linux far exceeds the trivial portions that the parties intended Novell was authorized to use, in Netware, pursuant to the TLA. Whereas UNIX became enterprise-ready after decades of development, Linux matured into a powerful enterprise-ready operating system in a few years, due primarily to the UNIX technology wrongly contributed by IBM to Linux.

51.    Novell therefore breached Section 1.6 of the APA and Section II.A.(2) of the TLA.

15

52.  Novell has also infringed and continues to infringe SCO's copyrights in UNIX by copying, reproducing, modifying, sublicensing, and/or distributing UNIX intellectual property as part of its Linux business.

**D. Novell's Wrongful Attempts to Expand Its Rights Under the APA**

53.  Under Section 4.16 of the APA, Novell retained the right to continue receiving royalties that SCO collected from then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements. Novell also retained the right to direct SCO to take certain actions, or in the event it failed to take those actions, to take those actions on its behalf, for the sole purpose of protecting that same binary royalty stream. Since 1996 until 2003, Novell operated in accordance with this procedure and understanding.

54.  Under Sections 1.2(b) and 1.2(f) of the APA, Novell also retained the right to conduct audits to protect the same binary royalties.

55.  Under the APA, however, Novell did not retain any right to conduct audits, direct SCO to take any actions, or take actions on SCO's behalf with respect to matters other than the SVRX binary royalty stream.

56.  On information and belief, IBM invested $50 million in Novell stock to help finance Novell's purchase of SuSE, and Novell and IBM have continued and expanded product and marketing arrangements that existed between IBM and SuSE. As Mr. Messman declared in a letter to SCO dated, May 28, 2003, "Novell is an ardent supporter of Linux and the open source development community." Novell is one of IBM's major Linux partners. Both companies were acknowledged members of the so-called Chicago 7,

16

which was formed at least in part to address and/or oppose SCO's efforts to protect its intellectual property.

57.   In an effort, among other things, to protect its Linux partnership with IBM, Novell has erroneously and in bad faith attempted to extend its rights under Sections 4.16, 1.2(b), and 1.2(f) to agreements and matters not subject to those provisions.

58.   On June 9, 2003, for example, Novell purported to direct SCO to waive its right to terminate its Software License Agreement with IBM, even though that source-code agreement by definition was not for binary royalties and therefore did not come under the purview of Sections 4.16, 1.2(b), and 1.2(f), and even though Novell had no ongoing royalty stream from IBM that it needed to protect. On June 12, 2003, Novell invoked its purported right under Section 4.16(b) to waive and revoke SCO's proper termination of IBM's UNIX license agreements.

59.   Similarly, on October 10, 2003, Novell purported to waive and revoke for SCO its claims against IBM for breach of its Sequent Software License Agreement with SCO.

60.   Novell has alleged that its rights under Sections 4.16, 1.2(b), and 1.2(f) extend to SCO's 2003 agreements with Sun and Microsoft, as well as SCO's SCOsource intellectual property agreements, even though those agreements did not involve the SVRX binary royalty stream and were not even in existence at the time the APA was executed.

61.   Such actions by Novell are contrary to its agreements with SCO and were calculated to interfere with SCO's agreements with IBM and others, block SCO's efforts to enforce its claims and rights related to UNIX, and misrepresent to the marketplace that Novell, and not SCO, owns UNIX.

62.  Novell's wrongful conduct is also willful and in bad faith in light of its previous attempt
to expand its rights under Section 4.16 in collaboration with IBM.

63.  On April 26, 1996, without the consent of Santa Cruz, Novell attempted to enlarge IBM's
rights to the UNIX source code and grant IBM a buyout of its SVRX binary royalty
obligations, by entering with IBM into a purported amendment to the IBM UNIX license
agreements transferred to SCO by the APA.

64.  In a letter to Novell dated April 23, 1996, SCO intervened by explaining, among other
things, that the APA and related agreements provided SCO "ownership and exclusive
rights to license the UNIX source code."

65.  After SCO further disputed Novell's authority to grant IBM the buyout, the parties
entered into Amendment X to IBM's software and sublicensing agreements in UNIX.  As
compared with Novell's thwarted amendment, Amendment X, among other things:

a)  replaced Novell with SCO as the party to the bargained-for exchange with IBM;

b)  more than quadrupled the monetary consideration, from $2,375,000 to $10,125,000;

c)  contracted IBM's source-code rights; and

d)  set forth SCO's exclusive right to audit IBM's compliance with the restrictions on its
use of the licensed source code.

66.  In addition, Amendment X voided Novell's unauthorized amendment, by providing: "The
Amendment dated April 26, 1996 between IBM, and Novell, on behalf of itself and SCO,
is hereby replaced in its entirety."

67.  Had Novell owned the copyrights or possessed the authority to waive, revoke, or
otherwise control the rights to the source code, it would have stood by its April 26, 1996

purported amendment; SCO would have had no right to, in effect, veto that unauthorized

amendment; and IBM would not have acquiesced to that veto.

68.      Amendment X is thus contemporaneous evidence that Novell considered Santa Cruz the

sole and exclusive owner of the copyrights and source code and that Novell recognized

that it lacked the authority to waive, revoke, or otherwise control claims or rights related

to the UNIX source code, generally and with regard to IBM specifically.

69.      To prevent a recurrence of the events leading to Amendment X, the parties decided to

clarify Section 4.16 of the APA by entering into Amendment No. 2 to the APA on the

same date they executed Amendment X. Paragraph B.5 of Amendment No. 2 provides:

> This Amendment does not give Novell the right to increase any SVRX licensee's
> rights to SVRX source code, nor does it give Novell the right to grant new SVRX
> source code licenses. In addition, Novell may not prevent SCO from exercising
> its rights with respect to SVRX source code in accordance with the [APA].

70.      Thus, Amendment No. 2 made it redundantly clear that Novell had retained no rights to

control SCO's sole exclusive ownership of the source code and associated license

agreements. In fact, Amendment No. 2 made clear that Novell could not unilaterally

agree to a buyout even of SVRX royalties. Even with respect to its interest in the binary

royalty stream, therefore, Novell lacked the authority to waste or forego the royalties, or

to grant a licensee a buyout of its relationship with SCO.

71.      Despite plain language to the contrary in Paragraph B.5, Novell has attempted to increase

a "SVRX licensee's rights to SVRX source code," "prevent SCO from exercising its

rights with respect to SVRX source code," and effectively "grant new SVRX source code

licenses," by purporting to waive and revoke SCO's claims and rights against IBM.

**F. Novell's Prior Conduct Belies Claims**

72.    During the years between the signing of the APA (in September 1995) and about May

2003, the parties' dealings and course of conduct evidenced their understanding that the

APA had transferred the business to Santa Cruz, including the copyrights.

73.    As stated, Novell and Santa Cruz entered into the TLA, which licensed back to Novell

the UNIX and UnixWare technology transferred under the APA. Had Novell retained the

copyrights under the APA, it would have been irrational for Novell to execute a license-

back agreement for technology already covered by the copyrights it purportedly owned.

Thus, the TLA, without more, evidences Novell's understanding that the APA had

transferred the copyrights to SCO.

74.    Though, at the time they executed Amendment No. 2, the parties shared the

understanding that APA intended to and did transfer the copyrights to Santa Cruz, they

decided to take advantage of the opportunity afforded them by Amendment No. 2 to

further clarify the APA by reiterating the transfer of the copyrights.

75.    Amendment No. 2 made clear that Novell had transferred to SCO the "copyrights and

trademarks owned by Novell as of the date of the [APA] required for SCO to exercise its

rights with respect to the acquisition of UNIX and UnixWare technologies," and that

Novell would no longer be liable to any party bringing a claim "pertaining to said

copyrights and trademarks."

76.    During the seven-plus years between the signing of the APA and about May 2003, Novell

also did not question, much less challenge, SCO's open and public conduct as the sole

and exclusive owner of the UNIX and UnixWare business, including the copyrights.

20

77.    As an obvious example, SCO distributed its UNIX and UnixWare source-code and binary

products widely, with copyright notices in its name.  During those years, Novell did not

allege that SCO's use and distribution of those products infringed Novell's copyrights.

Nor did Novell dispute SCO's public claims of copyright ownership in any way.

78.    In a reported transaction consummated in 2001, Santa Cruz transferred the UNIX and

Unixware business to SCO (then operating as Caldera).  Despite the public nature of that

transaction, Novell again did not dispute Santa Cruz's claim of ownership, or transfer, of

the business, including the copyrights.

79.    During those years, Novell conducted one audit pursuant to Section 1.2(b) of the APA.

Novell limited that audit to a review of SCO's administration of the SVRX binary royalty

stream.  Novell did not request or receive other information concerning the UNIX and

UnixWare business, including any accounting of source-code licenses or fees.

80.    As a result of these and other examples of the parties' shared understanding of the

meaning and intent of the APA, it was widely known in the software industry (including

by IBM) that SCO owned and freely exercised its copyrights in UNIX and UnixWare.

81.    Indeed, the law firms that represented Novell and Santa Cruz in negotiating and

executing the APA, Wilson, Sonsini, Goodrich & Rosati ("WSGR") and Brobeck,

Phleger & Harrison LLP ("Brobeck"), respectively, also represented Santa Cruz and

Caldera, respectively, during the subsequent transfer of the business to Caldera.

82.    It was not until about May 2003 (only weeks after SCO filed its lawsuit against IBM and

just months before Novell announced its Linux partnership with IBM) that Novell

suddenly reversed its conduct of seven-plus years.

**G. In the Alternative, Novell Should be Ordered to Effectuate the Transfer**

83.    In its public statements, Novell has alleged that the APA (even together with Amendment No. 2) is a writing insufficient to have transferred the copyrights under Section 204(a) of the Copyright Act. Even if (contrary to precedent) this were true, SCO would be entitled to a transfer of the copyrights under the terms of the APA.

84.    The parties to the APA repeatedly covenanted to take further actions necessary to consummate the transfer of the business to SCO.

85.    Section 1.7(c) of the APA provides:

>    (c)    Taking of Necessary Action: Further Action. If, at any time after the Closing Date, any further action is necessary or desirable to carry out the purposes of this Agreement the parties agree to take, and will take, all such lawful and necessary and/or desirable action.

86.    Section 4.9 of the APA provides in part:

>    4.9    Commercially Reasonable Efforts. Subject to the terms and conditions provided in this Agreement, each of the parties hereto shall use its commercially reasonable efforts to take promptly, or cause to be taken all actions, and to do promptly, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated hereby. . . .

87.    Section 4.12 of the APA provides:

>    4.12    Additional Documents and Further Assurances. Each party hereto, at the request of another party hereto, shall execute and deliver such other instruments and do and perform such other acts and things as may be necessary or desirable for effecting completely the consummation of this Agreement and the transactions contemplated hereby.

88.    The parties to the APA intended for the APA to transfer the business, including the copyrights, to Santa Cruz. As the successor-in-interest to Santa Cruz, SCO alleges that it

22

is the current owner of the business, including the copyrights. In the alternative, if it is determined that the APA did not effectuate the transfer intended by the parties to the APA, Novell must take the actions necessary to effectuate that transaction in order to comply with Sections 1.7(c), 4.9, and 4.12 of the APA.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Slander of Title)**

89.   SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

90.   SCO is the sole and exclusive owner of all copyrights related to UNIX and UnixWare source code and all documentation and peripheral code and systems related thereto.

91.   Novell has slandered SCO's title and rights to its UNIX and UnixWare copyrights and damaged SCO's business reputation and potential contractual relationships with potential customers by making false oaths of ownership to public officials, and by repeatedly representing both to the public in general and directly to several of SCO's customers and potential customers that Novell, and not SCO, owns UNIX and UnixWare and the copyrights.

92.   Novell's representations regarding its purported ownership of UNIX and UnixWare copyrights are patently false, and Novell made such representations intentionally, maliciously, and with the utter disregard for the truthfulness thereof.

93.   As a consequence of Novell's conduct as alleged herein, SCO has incurred actual and special damages in an amount to be proved at trial.

94.   SCO has also incurred significant attorneys' fees and costs in attempting to remove the cloud Novell has placed on SCO's title to UNIX and UnixWare, including but not limited

to attorneys' fees incurred in researching and reviewing Novell's improper copyright registrations; attempting to mitigate damages by correcting and responding to Novell's false representations made to third parties; and in prosecuting this and other actions to protect SCO's title to UNIX and UnixWare and related rights.

95.    Novell's conduct as alleged herein was intentionally and maliciously designed to destroy SCO's valuable rights to the UNIX and UnixWare copyrights and further destroy SCO's business livelihood and damage its shareholders. As such, this Court should impose an award of punitive damages against Novell in an amount to be proved at trial.

### SECOND CLAIM FOR RELIEF
### (Breach of the APA and TLA)

96.    SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

97.    Novell has materially breached Section 1.6 of the APA and Section II.A.(2) of the TLA by distributing the Licensed Technology as part of a product (Linux) that is directly competitive with SCO's core server operating systems.

98.    Novell has materially breached Section 1.6 of the APA and Section II.A.(2) of the TLA by distributing the Licensed Technology as part of a product (Linux) wherein that technology constitutes a primary portion of the value of that product.

99.    Novell has also breached the covenant of good faith and fair dealing under the APA and TLA by affirmatively seeking to deprive SCO of the benefits to which it is entitled under those agreements, through numerous acts of bad faith, including without limitation: (a) making false and misleading statements denying SCO's ownership of the copyrights in UNIX and UnixWare; (b) undermining the business that it sold to SCO by distributing

24

UNIX technology in Linux, in violation of the APA's and TLA's non-compete provisions; and (c) purporting to waive and revoke SCO's rights and claims against IBM.

100. Novell's breaches of the APA and TLA have caused SCO damage in an amount to be proved at trial. Those breaches have also caused SCO special damages, including without limitation the costs of prosecuting this action.

**THIRD CLAIM FOR RELIEF**
**(Alternative Breach-of-Contract Claim Seeking Specific Performance)**

101. SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

102. UNIX and UnixWare, as well as the copyrights in UNIX and UnixWare, are unique and possess special value.

103. The intent of the parties to the APA, and the purpose and effect of the APA, were to transfer the UNIX and UnixWare business, including all copyrights, to SCO's predecessor in interest, Santa Cruz.

104. Under Sections 1.7(c), 4.9, and 4.12 of the APA, Novell is obligated to take all actions necessary to effectuate the purposes of the APA and consummate the transactions contemplated therein.

105. In its public statements, including its pleadings in this lawsuit, Novell has repeatedly claimed that the APA (even as amended) *did not transfer the copyrights to SCO.*

106. In its public statements, including its pleadings in this lawsuit, Novell has repeatedly claimed that, under the APA, it retained the right to take, or direct SCO to take, certain actions (such as waiving SCO's claims against IBM) that extinguish the value of the UNIX and UnixWare business.

107.  In light of these continuing claims by Novell, SCO is entitled (as an alternative to its other claims for relief) to an order directing Novell to specifically perform its obligations under Sections 1.7(c), 4.9, and 4.12, by taking the actions necessary to effectuate the intended purposes of the APA and consummate the transactions contemplated therein.

108.  In particular, SCO is entitled to an order directing Novell to execute documents (and take any other actions) necessary to transfer to SCO (a) the copyrights, and (b) the UNIX and UnixWare business, without subjecting any portion of that business, other than the SVRX binary royalty stream, to Sections 4.16, 1.2(b), and 1.2(f) of the APA.

### FOURTH CLAIM FOR RELIEF
### (Copyright Infringement)

109.  SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

110.  The APA transferred all right, title, and interest to and in the copyrights in UNIX, UnixWare, and various supporting documents to SCO, through its predecessor in interest.

111.  SCO is the sole and exclusive owner of the copyrights in UNIX, UnixWare, and the associated supporting materials.

112.  As shown on Exhibit A, SCO and its predecessors properly registered, at a minimum, copyrights in UNIX, UnixWare, and the associated supporting materials describing the UNIX system.

113.  Pursuant to 17 U.S.C. § 410(c), SCO's certificates of copyright registrations constitute prima facie evidence of the validity of the copyrights and the facts stated in the certificates. SCO's registrations of its copyrights in UNIX and UnixWare are entitled to that statutory presumption.

26

114.    SCO and its predecessors created and developed the intellectual property covered by the copyrights as original works of authorship, and as such, those materials automatically became subject to copyright protection under 17 U.S.C. § 102(a) when they were fixed in a tangible medium of expression.

115.    Copyright protection under 17 U.S.C. § 106 extends to derivative works, which are defined in 17 U.S.C. § 101 to include works based on the original work and any other form in which the original work may be recast, transformed, modified, or adapted.

116.    Novell has infringed and continues to infringe SCO's copyrights by copying, reproducing, modifying, sublicensing, and/or distributing Linux products containing unauthorized contributions of SCO's copyrighted intellectual property.

117.    Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is not limited to the appropriation of numerous data structures and algorithms contained in or derived from SCO's copyrighted material. A partial listing of these data structures and algorithms is provided at Exhibit B.

118.    In addition, under the specific terms and conditions set forth in the TLA and for the limited purpose of the TLA, SCO granted Novell a non-exclusive license to the technologies covered by SCO's copyrights in UNIX and UnixWare. Novell expressly covenanted not to use those technologies in a general-purpose operating system that competes with SCO's core application server products or in a product wherein that intellectual property constitutes a primary portion of the value of the product. Novell has infringed and is infringing SCO's copyrights by using, copying, reproducing, modifying,

sublicensing, and distributing SCO's copyrighted intellectual property outside of the limited license provided by the TLA.

119. As a result of Novell's infringing acts, SCO has been damaged and is entitled to actual damages and Novell's profits resulting from those acts, pursuant to 17 U.S.C. § 504(a); statutory damages, pursuant to 17 U.S.C. § 504(b); and enhanced damages, costs, and attorney's fees pursuant to 17 U.S.C. § 505.

120. In addition, because Novell's conduct has caused, and if not enjoined, will continue to cause irreparable harm to SCO without an adequate remedy at law, SCO is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

### FIFTH CLAIM FOR RELIEF
### (Unfair Competition)

121. SCO re-alleges and incorporates all prior paragraphs as if fully set forth herein.

122. Novell has knowingly, intentionally, and in bad faith engaged in a pattern of conduct aimed at depriving SCO of the value of its UNIX technology. Among other things, Novell has falsely claimed ownership of SCO's copyrights in UNIX and UnixWare, misappropriated SCO's UNIX technology in Linux and forced SCO to compete in the marketplace against its own intellectual property, and has wrongfully attempted to thwart SCO's rights and efforts to bring legal claims in defense of its UNIX intellectual property.

123. Novell's misconduct is likely to result in confusion, and in fact has resulted in confusion, in the marketplace concerning UNIX, Linux, and other products.

124. As a direct result of Novell's unfair competition, SCO has and will continue to suffer damage to its business, reputation, and goodwill in an amount to be proved at trial.

125.    Because Novell's misconduct is intentionally and maliciously designed to destroy SCO's
       valuable rights to the copyrights and further destroy SCO's business livelihood, this
       Court should impose punitive damages against Novell in an amount to be determined at
       trial.

126.    SCO is entitled to and seeks restitutionary, injunctive, and other remedies as may be
       available under the applicable unfair-competition law.

### V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff SCO prays this Court enter judgment for SCO and against
Novell:

1.    awarding SCO actual, special, enhanced, and statutory damages;

2.    awarding punitive damages for Novell's malicious and willful conduct as alleged herein;

3.    granting preliminary and permanent injunctive relief (a) requiring Novell to assign to
     SCO any and all copyrights Novell improperly registered in UNIX and UnixWare
     following the Asset Purchase Agreement; (b) preventing Novell from representing in any
     forum that it has any ownership interest whatsoever in those copyrights; and (c) requiring
     Novell to retract or withdraw all representations it has made regarding its purported
     ownership of the copyrights;

4.    granting preliminary and permanent injunctive relief preventing Novell from copying,
     reproducing, modifying, sublicensing, and/or distributing SCO's UNIX and UnixWare
     technology except as expressly provided by the TLA;

5.      ordering Novell, as an alternative, to specifically perform its obligations under the APA

by taking the actions necessary to effectuate the purposes of the APA and consummate

the transactions contemplated therein;

6.      awarding attorneys' fees, costs, and pre- and post-judgment interest; and

7.      granting all other legal and equitable relief deemed just and proper by this Court.

## VI.    JURY TRIAL DEMAND

SCO demands trial by jury on all issues so triable.

DATED this 3rd day of February, 2006.

                                        Respectfully submitted,


                                        HATCH, JAMES & DODGE, P.C.
                                        Brent O. Hatch
                                        Mark F. James

                                        BOIES, SCHILLER & FLEXNER LLP
                                        Robert Silver
                                        Stuart H. Singer
                                        Stephen N. Zack
                                        Edward Normand


                                        By

                                        *Counsel for The SCO Group, Inc.*


30

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that on the 3rd day of February, 2006, a

true and correct copy of the foregoing Second Amended Complaint was served on Defendant

Novell, Inc., by U.S. Mail to:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

*Laura Chaves.*

**EXHIBIT A**

| TITLE | REGISTRATION NO. |
|---|---|
| UNIX | Txu-510-028 |
| UNIX Version 6 | Txu-511-236 |
| UNIX V32 | Txu-516-704 |
| UNIX Version 7 | Txu-516-705 |
| UNIXWARE 7.1.3 | TX 5-787-679 |
| UNIX SYSTEM V RELEASE 3.0 | TX 5-750-270 |
| UNIX SYSTEM V RELEASE 3.1 | TX 5-750-269 |
| UNIX SYSTEM V RELEASE 3.2 | TX 5-750-271 |
| UNIX SYSTEM V RELEASE 3.2 | TX 5-750-268 |
| UNIX SYSTEM V RELEASE 4.0 | TX 5-776-217 |
| UNIX SYSTEM V RELEASE 4.1ES | TX 5-705-356 |
| UNIX SYSTEM V RELEASE 4.2 | TX 5-762-235 |
| UNIX SYSTEM V RELEASE 4.1 | TX 5-762-234 |
| UNIX SYSTEM V RELEASE 4 Integrated Software Development Guide | TX 2 931-646 |
| UNIX SYSTEM V RELEASE 4 Reference Manual For Intel Processor Commands m-z | TX 3 221-656 |
| UNIX SYSTEM V RELEASE 4 Reference Manual for Intel Processors Commands a-l | TX 3 227-639 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface reference Manual for Intel Processors | TX 3 232-578 |
| UNIX SYSTEM V RELEASE 4 Programmer's Guide: Streams for Intel Processors | TX 3 218-286 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface Reference Manual for Motorola Processors | TX 220-500 |
| UNIX SYSTEM V RELEASE 4 Reference Manual for Motorola Processors Commands a-l | TX 3 220-331 |
| UNIX SYSTEM V RELEASE 4 PROGRAMMER'S GUIDE | TX 2 120-502 |
| UNIX SYSTEM V/386 RELEASE 4 Transport Application Interface Guide | TX 2 881-542 |
| UNIX SYSTEM V/386 RELEASE 4 Device Interface/Driver Kernel Interface (DDI/DKI) reference Manual | TX 2 883-235 |
| UNIX SYSTEM V/386 RELEASE 4 Programmer's Guide: SCSI Driver Interface | TX 2 902-863 |
| UNIX SYSTEM V/386 RELEASE 4 System Administrator's Reference Manual | TX 2 881-543 |

| | |
|---|---|
| UNIX SYSTEM V/386 RELEASE 4 Programmer's Reference Manual | TX 2 853-760 |
| UNIX SYSTEM V/386 RELEASE 4 User's Reference Manual | TX 2 890-471 |
| UNIX SYSTEM V/386 RELEASE 4 User's reference Manual | TX 2 820-791 |
| UNIX SYSTEM V RELEASE 4 Device Driver Interface/Driver Kernel Interface (DDI/DKI) Reference Manual | TX 3 820-792 |
| UNIX SYSTEM V RELEASE 4 Programmer's Guide: Streams | TX 2 833-114 |
| UNIX SYSTEM V RELEASE 4 Programmer's Reference Manual | TX 2 832-009 |
| UNIX SYSTEM V RELEASE 4 System Administrator's Reference Manual | TX 2 830-989 |
| UNIX SYSTEM V/386 Programmer's Guide Vol. II | TX 2 454-884 |
| UNIX SYSTEM V/386 RELEASE 3.2 Programmer's Reference Manual | TX 2 494-658 |
| UNIX SYSTEM V/386 Programmer's Reference Manual | TX 2 373-759 |
| UNIX SYSTEM V/386 System Administrator's Reference Manual | TX 2 371-952 |
| UNIX SYSTEM V/386 Streams Programmer's Guide | TX 2 367-657 |
| UNIX SYSTEM V/386 Streams Primer | TX 2 366-532 |
| UNIX SYSTEM V RELEASE 3.2 System Administrator's Reference Manual | TX 2 611-860 |
| UNIX SYSTEM V RELEASE 3.2 Programmer's Reference Manual | TX 2 605-292 |
| UNIX SYSTEM V Documentor's Workbench Reference Manual | TX 2 986-119 |
| UNIX SYSTEM V RELEASE 4 User's Reference Manual/System Administrator's Reference Manual for Motorola Processors Commands m-z | TX 3 218-267 |
| UNIX SYSTEM V RELEASE 4 System Files and Devices reference Manual for Motorola Processors | TX 3 221-654 |

**EXHIBIT B**

Novell's unauthorized copying in its use and distribution of SuSE Linux includes but is not limited to the appropriation of the following data structures and algorithms contained in or derived from SCO's copyrighted material:

1. SuSE's implementation of the "Read/Copy/Update" algorithm
2. SuSE's implementation of NUMA Aware Locks
3. SuSE's implementation of the distributed lock manager
4. SuSE's implementation of reference counters
5. SuSE's implementation of asynchronous I/O
6. SuSE's implementation of the *kmalloc* data structure
7. SuSE's implementation of the console subsystem
8. SuSE's implementation of IRQs
9. SuSE's implementation of shared memory locking
10. SuSE's implementation of semaphores
11. SuSE's implementation of virtual memory
12. SuSE's implementation of IPCs
13. SuSE's implementation of load balancing
14. SuSE's implementation of PIDs
15. SuSE's implementation of numerous kernel internals and APIs
16. SuSE's implementation of ELF
17. SuSE's implementation of STREAMS
18. SuSE's implementation of dynamic linking
19. SuSE's implementation of kernel pre-emption
20. SuSE's implementation of memory mapping
21. SuSE's implementation of ESR
22. SuSE's implementation of buffer structures
23. SuSE's implementation of process blocking
24. SuSE's implementation of numerous header files
25. SuSE's implementation of Multi-path I/O

EXHIBIT 2

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

January 24, 2006

Writer's Direct Contact
415/268-6943
KBrakebill@mofo.com

*By Facsimile*

Edward J. Normand, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Re:     *The SCO Group, Inc. v. Novell, Inc.,*
        Case No. 2:04 CV 00139 DAK

Dear Ted:

We cannot tell from SCO's newest complaint what unfair competition law SCO is asserting against Novell. Paragraph 126, for example, simply references "the applicable unfair-competition law." Could you please clarify this so that Novell can avoid seeking such clarification through court briefing? Thanks.

Sincerely,

Kenneth W. Brakebill

cc:  Brent O. Hatch, Esq.

sf-2069004

**MORRISON | FOERSTER**



425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

**To:**

| NAME: | FACSIMILE: | TELEPHONE: |
|---|---|---|
| Edward J. Normand<br>Boies, Schiller & Flexner LLP | (914) 749-8300 | (914) 749-8200 |
| CC: | FACSIMILE: | TELEPHONE: |
| Brent O. Hatch<br>Hatch, James & Dodge, P.C. | (801) 363-6666 | (801) 363-6363 |

**FROM:**  Kenneth W. Brakebill      **DATE:**      January 24, 2006

| Number of pages<br>with cover page: | 2 | |
|---|---|---|

Preparer of this slip has confirmed that facsimile number given is   **8642/MPE1**
correct:

## CAUTION - CONFIDENTIAL

This facsimile contains confidential information which may also be privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not copy, use, or distribute it.  If you have received it in error, please advise Morrison & Foerster LLP immediately by telephone or facsimile and return it promptly by mail.

**Comments:**

```
*  *  *  COMMUNICATION RESULT REPORT ( JAN. 24. 2006  6:24PM ) *  *  *

                                      TTI    (415)268-7522 MOFO/SF FAX CTR.

TRANSMITTED/STORED JAN. 24, 2006   6:14PM
FILE MODE        OPTION            ADDRESS                    RESULT       PAGE
-----------------------------------------------------------------------------
3595 MEMORY TX                     8624#15905#23#19147498300#---   E-3) 3)     0/2
                                   8642#15905#23#18013636666#----  OK          2/2


---------------------------------------------------------------------------------
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                        E-2) BUSY
E-3) NO ANSWER                                   E-4) NO FACSIMILE CONNECTION
```

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

**To:**

| NAME: | FACSIMILE: | TELEPHONE: |
|-------|-----------|-----------|
| Edward J. Normand<br>Boies, Schiller & Flexner LLP | (914) 749-8300 | (914) 749-8200 |
| CC: | FACSIMILE: | TELEPHONE: |
| Brent O. Hatch<br>Hatch, James & Dodge, P.C. | (801) 363-6666 | (801) 363-6363 |

**FROM:**   Kenneth W. Brakebill   .   **DATE:**   January 24, 2006

| Number of pages<br>with cover page: | 2 | |
|---|---|---|

Preparer of this slip has confirmed that facsimile number given is   **8642/MPE1**
correct:

**CAUTION - CONFIDENTIAL**

This facsimile contains confidential information which may also be privileged. Unless you are the
addressee (or authorized to receive for the addressee), you may not copy, use, or distribute it. If
you have received it in error, please advise Morrison & Foerster LLP immediately by telephone or
facsimile and return it promptly by mail.

**Comments:**

sf-1961702

**✱ ✱ ✱ TRANSMISSION RESULT REPORT(IMMEDIATE TX) ( JAN. 24. 2006  6:18PM ) ✱ ✱ ✱**

TTI  (415) 268-7522 MOFO/SF FAX CTR

| DATE | TIME | ADDRESS | MODE | TIME | PAGE | RESULT | PERSONAL NAME | FILE |
|------|------|---------|------|------|------|--------|---------------|------|
| JAN. 24. | 6:17PM | BSFLLP | G3ES | 0'34" | P.  2 | OK | | 5619 |

| | | | |
|---|---|---|---|
| # :BATCH | C :CONFIDENTIAL | $ :TRANSFER | P :POLLING |
| M :MEMORY TX | L :SEND LATER | ⊕ :FORWARDING | E :ECM |
| S :STANDARD | D :DETAIL | F :FINE | ) :REDUCTION |
| !$:REMOTE TRANSFER | B :FAX ON DEMAND | ✱ :PC | % :PC DIRECT |
| + :ROUTING | | | |

# EXHIBIT 3

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

February 8, 2006

Writer's Direct Contact
415/268-6943
KBrakebill@mofo.com

*By Facsimile*

Edward J. Normand, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Re:    *The SCO Group, Inc. v. Novell, Inc.,*
       Case No. 2:04 CV 00139 DAK

Dear Ted:

This is a follow-up to my January 24th letter to you (attached) concerning SCO's unfair competition claim in its Second Amended Complaint. We cannot tell what unfair competition law SCO is asserting against Novell and request that you clarify this as soon as possible so that we do not have to seek such clarification through briefing.

Thanks.

Sincerely,

Kenneth W. Brakebill

cc: Brent O. Hatch, Esq.

Enclosure

sf-2077394

**MORRISON | FOERSTER**

Edward J. Normand
February 8, 2006
Page Two


bcc:    Morrison & Foerster Novell team (via e-mail)
        Anderson & Karrenberg (via e-mail)

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

January 24, 2006

Writer's Direct Contact
415/268-6943
KBrakebill@mofo.com

*By Facsimile*

Edward J. Normand, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Re:    *The SCO Group, Inc. v. Novell, Inc.,*
        Case No. 2:04 CV 00139 DAK

Dear Ted:

We cannot tell from SCO's newest complaint what unfair competition law SCO is asserting against Novell. Paragraph 126, for example, simply references "the applicable unfair-competition law." Could you please clarify this so that Novell can avoid seeking such clarification through court briefing? Thanks.

Sincerely,

Kenneth W. Brakebill

cc:  Brent O. Hatch, Esq.

sf-2069004

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

**To:**

| NAME: | FACSIMILE: | TELEPHONE: |
|---|---|---|
| **Edward J. Normand**<br>**Boies, Schiller & Flexner LLP** | **(914) 749-8300** | **(914) 749-8200** |
| CC: | FACSIMILE: | TELEPHONE: |
| **Brent O. Hatch**<br>**Hatch, James & Dodge, P.C.** | **(801) 363-6666** | **(801) 363-6363** |

**FROM:**    Kenneth W. Brakebill      **DATE:**        February 8, 2006

| Number of pages with cover page: | **3** | |
|---|---|---|

Preparer of this slip has confirmed that facsimile number given is correct:    **8642/MPE1**

## CAUTION - CONFIDENTIAL

This facsimile contains confidential information which may also be privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not copy, use, or distribute it.  If you have received it in error, please advise Morrison & Foerster LLP immediately by telephone or facsimile and return it promptly by mail.

**Comments:**

sf-1961702

# EXHIBIT 4

## Nazzal, Sandra B.

**From:** Ted Normand [TNormand@BSFLLP.com]
**Sent:** February 19, 2006 9:35 AM
**To:**   Brakebill, Ken W.

Ken --

With respect to your question regarding choice of law, generally SCO had in mind the common law
and statutory law of Utah with respect to unfair competition in its Second Amended Complaint, but
in SCO's view the decision of which jurisdiction's law applies is a legal question for the Court
to resolve, and therefore I cannot say that SCO has taken a position on the issue.  If you are
asking me now which jurisdiction's law of unfair competition SCO believes "should" apply to the
claim, that is a different question and one the parties would address in any briefing in which
the issue arises.  If you are asking me your question in consideration of Novell's Answer, SCO's
view is that Novell need not take a position in its Answer with respect to which jurisdiction's
law applies.  If Novell wants to take such a position, moreover, it can do so independent of any
views SCO has on the issue.  Please call me to discuss if you would like.  Regards,

Ted