MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT  84101
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697

**Attorneys for Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>      Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>      Defendant and Counterclaim-Plaintiff. | **NOVELL, INC.'S ANSWER TO SCO'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Dockets.Justia.com

**ANSWER**

In response to Plaintiff Counterclaim-Defendant The SCO Group, Inc.'s ("SCO") Second Amended Complaint filed February 3, 2006, Defendant Counterclaim-Plaintiff Novell, Inc. ("Novell") pleads as follows:

1.      Novell admits that it entered into an Asset Purchase Agreement with SCO's alleged predecessor in interest, The Santa Cruz Operation ("Santa Cruz"), dated September 19, 1995. Each and every other allegation in paragraph 1 is denied.

2.      Denied.

3.      Denied.

4.      Novell admits that it sold certain business assets relating to its UNIX and UnixWare software products to Santa Cruz. In consideration for this sale, Novell received 6.1 million shares of Santa Cruz common stock and retained significant rights relating to Novell's UNIX business, including but not limited to, certain intellectual property rights, the right to receive royalties, fees, and amounts due under SVRX license agreements, prior approval right relating to new SVRX licenses and amended licenses, the right to take certain actions relating to SVRX licenses, and the right to conduct audits of the SVRX license program. Each and every other allegation in paragraph 4 is denied.

5.      Novell admits that Attachment E to the Asset Purchase Agreement provided a list of approximately 106 copyright registrations. Novell denies that Attachment E, alone or in connection with the Asset Purchase Agreement, transferred any UNIX or UnixWare copyrights to SCO. Each and every other allegation in paragraph 5 is denied.

6.      Novell admits that SCO has registered a claim to UNIX and UnixWare copyrights with the United States Copyright Office. Each and every other allegation in paragraph 6 is denied.

7.     Novell admits that Novell has registered its claim to UNIX and UnixWare copyrights with the United States Copyright Office.  Each and every other allegation in paragraph 7 is denied.

8.     Novell admits that it has, in good faith, publicly stated its belief that it owns UNIX and UnixWare copyrights.  Each and every other allegation in paragraph 8 is denied.

9.     Denied.

10.     Denied.

11.     Novell admits that Novell and Santa Cruz entered into a Technology License Agreement ("TLA") at the time of the APA's closing.  Each and every other allegation in paragraph 11 is denied.

12.     Denied.

13.     Novell admits that it entered into an agreement to acquire SuSE Linux in 2003 and that it completed this acquisition in 2004, thereby becoming a distributor of SuSE Linux. Each and every other allegation in paragraph 13 is denied.

14.     Denied.

15.     Novell admits that it retained significant rights under Section 4.16 of the APA, including the right to receive royalties, fees, and amounts due under SVRX license agreements, but denies that that any of its 4.16 rights are limited to "then-existing SVRX licensees for their distribution of binary-code versions of System V pursuant to sublicensing agreements."  Novell admits that, under APA Sections 4.16, 1.2(b) and 1.2(f), it retained the right to direct or take certain actions to protect this royalty stream.  Each and every other allegation in paragraph 15 is denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.    Denied.

20.    Novell admits that the APA includes a provision providing that the parties will take any further action necessary or desirable to carry out the purposes of the APA. Novell denies that this provision, or any other provision in the APA, operates to support a transfer of the UNIX or UnixWare copyrights to SCO. Novell denies each and every other allegation in paragraph 20.

21.    Novell denies that SCO is entitled to any relief under its Second Amended Complaint, and each and every other allegation in paragraph 21 is therefore denied.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Novell admits that the Court has jurisdiction over SCO's copyright claim pursuant to 28 U.S.C. §§ 1331 and 1338(a). However, SCO's copyright claim raises issues subject to arbitration under the contracts that SCO's alleged predecessor-in-interest, Caldera, signed in May 2002 in becoming a member of UnitedLinux (the "UnitedLinux agreements"). The Court should not exercise its jurisdiction until after these issues are finally adjudicated by arbitration. In this regard, Novell has simultaneously filed a motion to stay these proceedings, pursuant to the Federal Arbitration Act.

26.    Admitted.

27.    Admitted.

28.    Admitted, except that venue is not proper for those SCO claims that raise issues subject to arbitration under the UnitedLinux agreements signed by Caldera in May 2002.

29.    Novell admits that Schedule 1.1(a) to the APA contains the text quoted by the Second Amended Complaint. Novell denies that this text acted to transfer UNIX or UnixWare copyrights to SCO. Each and every other allegation in paragraph 29 is denied.

30.    Novell admits that the TLA and a Bill of Sale were executed in connection with the closing of the APA. Each and every other allegation in paragraph 30 is denied.

31.    Novell admits that Section 1.6 of the APA contains the text quoted by the Second Amended Complaint and that this text granted Novell a broad license. Novell denies that this text acted to transfer UNIX or UnixWare copyrights to SCO. Each and every other allegation in paragraph 31 is denied.

32.    Denied.

33.    Denied.

34.    Novell states that these averments purport to characterize the laws of the United States and do not require a response. Each and every other allegation in paragraph 34 is denied.

35.    Denied.

36.    Denied.

37.    Novell denies that it has made any false oath, misleading public representation, or wrongful assertion of ownership rights, and on that basis denies each and every other allegation in paragraph 37, except as set forth below:

a)    Novell admits that on May 28, 2003 Jack Messman sent a letter to Darl McBride of SCO in order to assert Novell's claim to the UNIX and UnixWare copyrights and to protect Novell's interests and the interests of its customers. This letter contained the following text:

> Importantly, and contrary to SCO's assertions, SCO is not the owner of the UNIX copyrights. Not only would a quick check of U.S. Copyright Office records reveal this fact, but a review of the asset transfer agreement between Novell and SCO confirms it. To Novell's knowledge, the 1995 agreement governing SCO's purchase of UNIX from Novell does not convey to SCO the associated copyrights. We believe it unlikely that SCO can demonstrate that it has any ownership interest whatsoever in those copyrights. Apparently, you share this view, since over the last few months you have repeatedly asked Novell to transfer the copyrights to SCO, requests that Novell has rejected. Finally, we

4

> find it telling that SCO failed to assert a claim for copyright or patent infringement against IBM.
>
> . . .
>
> [W]e demand that SCO retract its false and unsupported assertions of ownership in UNIX patents and copyrights or provide us with conclusive information regarding SCO's ownership claims.

On January 13, 2004, Novell made a copy of this letter available on its website at http://www.novell.com/licensing/indemnity/legal.html. Novell is without further knowledge as to details of other publication and therefore denies each and every other allegation related thereto. Each and every other allegation in paragraph 37(a) is denied.

b)  Novell admits that on June 6, 2003, SCO sent Novell a letter pertaining to Amendment 2 and the Asset Purchase Agreement. Each and every other allegation in paragraph 37(b) is denied.

c)  Novell admits that on June 6, 2003, it issued a press release containing the following text:

> In a May 28th letter to SCO, Novell challenged SCO's claims to UNIX patent and copyright ownership and demanded that SCO substantiate its allegations that Linux infringes SCO's intellectual property rights. Amendment #2 to the 1995 SCO-Novell Asset Purchase Agreement was sent to Novell last night by SCO. To Novell's knowledge, this amendment is not present in Novell's files. The amendment appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996. The amendment does not address ownership of patents, however, which clearly remain with Novell.

Each and every other allegation in paragraph 37(c) is denied.

d)  Responding to a threat by SCO to sue Novell for federal securities fraud conveyed in SCO's June 6, 2003 letter, Novell admits that Joseph LaSala sent a letter to Darl McBride on June 6, 2003, containing the following text:

> Your letter contains absurd and unfounded accusations against Novell and others, coupled with a veiled threat to publicly state

those allegations in a SCO press call to be held today at 11:00 am EST. Novell continues to demand that SCO cease and desist its practice of making unsubstantiated allegations, including the allegations contained in your letter of June 6, 2003.

Each and every other allegation in paragraph 37(d) is denied.

e)      Responding to a subsequent press release issued by SCO, Novell admits that Joseph LaSala sent a letter to Darl McBride on June 26, 2003, containing the following text:

> SCO's statements [claiming to own "the patents, copyrights, and core technology associated with the UNIX system"] are simply wrong. We acknowledge, as noted in our June 6 public statement, that Amendment No. 2 to the Asset Purchase Agreement appears to support a claim that Santa Cruz Operation had the right to acquire some copyrights from Novell. Upon closer scrutiny, however, Amendment No. 2 raises as many questions as it answers. Indeed, what is most certainly *not* the case is that "any question of whether UNIX copyrights were transferred to SCO as part of the Asset Purchase Agreement was clarified in Amendment No. 2" (as SCO stated in its June 6 press release). And there is no indication whatsoever that SCO owns all the *patents* associated with UNIX or UnixWare.
>
> We are still reviewing the Asset Purchase Agreement and other materials to determine the actual scope of rights transferred to SCO. In the meantime, we wish to make clear that we do not agree with SCO's public statement on this matter.

Each and every other allegation in paragraph 37(e) is denied.

f)      SCO subsequently registered claims to the UNIX and UnixWare copyrights with the United States Copyright Office. Responding to that registration, Novell admits that Joseph LaSala sent a letter to Darl McBride on August 4, 2003, containing the following text:

> We dispute SCO's claim to ownership of these copyrights. The Asset Purchase Agreement, in Schedule 1.1(b), contains a general exclusion of copyrights from the assets transferred to Santa Cruz Operation. Amendment No. 2 provides an exception to that exclusion, but only for "copyrights...required for [Santa Cruz Operation] to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies."

> In other words, under the Asset Purchase Agreement and Amendment No. 2, copyrights were not transferred to Santa Cruz Operation unless SCO could demonstrate that such a right was "required for [Santa Cruz Operation]" to exercise the rights granted to it in the APA. Santa Cruz Operation has never made such a demonstration, and we certainly see no reason why Santa Cruz Operation would have needed ownership of copyrights in UNIX System V in order to exercise the limited rights granted SCO under the APA. Nor is there any reason to think that a transfer of the copyrights required for SCO to exercise its APA rights necessarily entails transfer of the entire set of exclusive rights associated with a particular copyrighted computer program.
>
> Unless and until SCO is able to establish that some particular copyright right is "required" for SCO to exercise its rights under the APA, SCO's claim to ownership of any copyrights in UNIX technologies must be rejected, and ownership of such rights instead remains with Novell.

Each and every other allegation in paragraph 37(f) is denied.

g)   Responding to SCO's copyright registrations, Novell admits that it has registered its claim to the UNIX and UnixWare copyrights enumerated in paragraph 19(g).

Each and every other allegation in paragraph 37(g) is denied.

h)   Admitted.

i)   In response to a public claim by SCO that Novell had conceded the superiority of SCO's claim to the UNIX and UnixWare copyrights, Novell admits it issued a press release on December 22, 2003, containing the following text:

> Novell believes it owns the copyrights in UNIX, and has applied for and received copyright registrations pertaining to UNIX consistent with that position. Novell detailed the basis for its ownership position in correspondence with SCO. Copies of our correspondence, and SCO's reply, are available here. Contrary to SCO's public statements, as demonstrated by this correspondence, SCO has been well aware that Novell continues to assert ownership of the UNIX copyrights.

Each and every other allegation in paragraph 37(i) is denied.

j)   On January 13, 2004 Novell announced a Linux Indemnification Program. In connection with this offer, Novell issued a press release clarifying its beliefs as to

its legal rights concerning the UNIX and UnixWare copyrights. The press release contained the following:

> Novell also made available today additional information on the unique contractual and intellectual property rights it holds because of its position in the historical ownership chain of UNIX and UnixWare. These rights include:
>
> • Novell's rights to license UNIX technology pursuant to a Technology License Agreement between SCO and Novell, including Novell's right to authorize its customers to use that UNIX technology in their internal business operations.
>
> • Novell's rights to take action on behalf of SCO under legacy UNIX SVRX licenses pursuant to the Asset Purchase Agreement between SCO and Novell.
>
> • As previously confirmed by Novell, copyright registrations on UNIX SVRX releases, consistent with Novell's position that it retained ownership of these copyrights.
>
> Copies of relevant correspondence between Novell and SCO are available at http://www.novell.com/licensing/indemnity/legal.html. The rights reflected in these documents are part of the foundation for the indemnification program Novell is announcing today.

Each and every other allegation in paragraph 37(j) is denied.

k)    Admitted.

38.    Denied.

39.    Novell denies that it has made any wrongful claims of copyrights and ownership in UNIX and UnixWare and that SCO is entitled to any relief under its Second Amended Complaint, and each and every other allegation in paragraph 39 is therefore denied.

40.    Novell admits that it was a leading provider of networking and application software when the APA was executed. Novell further admits that it developed its Netware product to provide integrated client support for UNIX, DOS, MS Windows, Macintosh, and OS/2 operating systems. Each and every other allegation in paragraph 40 is denied.

41.    Denied.

42.    Denied.

43.    Novell admits that Section 1.6 of the APA contains the text quoted by the Second Amended Complaint, in addition to other language not quoted by SCO.

44.    Novell admits that Section II.A.(2) of the Technology License Agreement contains the text quoted by the Second Amended Complaint, in addition to other language not quoted by SCO.

45.    Novell is without sufficient information to form a belief as to the truth of the averment that "as of the closing date, Santa Cruz had no 'application server offering' other than UNIX and UnixWare operating systems." Each and every other allegation in paragraph 45 is denied.

46.    Novell admits that it announced its agreement to acquire SuSE Linux, a leading distributor of Linux, on November 4, 2003. Each and every other allegation in paragraph 46 is denied.

47.    Novell admits that on December 22, 2005 SCO filed a Disclosure of Material Misused by IBM in the *SCO v. IBM* litigation. Novell is without sufficient information to form a belief as to the truth of the remaining averments of paragraph 47.

48.    Denied.

49.    Denied.

50.    Novell admits that Linux has matured due to the independent, collaborative efforts of a devoted Linux development community. Each and every other allegation in paragraph 50 is denied.

51.    Denied.

52.    Denied.

53.    Novell admits that it retained significant rights under Section 4.16 of the APA, including the right to receive royalties, fees, and amounts due under SVRX license agreements, but denies that that any of its 4.16 rights are limited to "then-existing SVRX licensees for their

9

distribution of binary-code versions of System V pursuant to sublicensing agreements." Each and every other allegation in paragraph 53 is denied.

54.    Novell admits that it retained significant audit rights under APA Sections 1.2(b) and 1.2(f). Each and every other allegation in paragraph 54 is denied.

55.    Denied.

56.    Novell admits that in conjunction with Novell's offer to acquire SuSE Linux AG, on March 23, 2004, it entered into a definitive agreement with IBM in which IBM purchased 1,000 shares of Novell Series B redeemable preferred shares convertible into 8 million shares of Novell common stock at a price of $6.25 per share, with the Series B shares being entitled to a dividend of 2% per annum, payable quarterly in cash. Novell admits that the quoted text appears in Jack Messman's letter to Darl McBride dated May 28, 2003. Novell further admits that it is one of IBM's Linux distributors. Each and every other allegation in paragraph 56 is denied.

57.    Denied.

58.    Denied.

59.    Novell admits that, on October 10, 2003, following SCO's failure to take the actions directed in Novell's June 9, 2003 and June 12, 2003 letters to SCO, Novell elected to take actions on SCO's behalf, as Novell is empowered to do under § 4.16(b) of the APA. Each and every other allegation in paragraph 59 is denied.

60.    Novell admits that it alleges SCO failed to comply with its royalty obligations under §§ 1.2(b), 1.2(f) & 4.16 of the APA in connection with SCO's 2003 agreements with Sun Microsystems and Microsoft and its SCOsource intellectual property agreements. Each and every other allegation in paragraph 60 is denied.

61.    Denied.

62.    Denied.

63.    Novell admits that pursuant to its APA rights, Novell, acting on its behalf and on behalf of Santa Cruz, entered into an agreement with IBM on April 26, 1996, amending various license agreements between IBM and AT&T (the "IBM-AT&T Agreements"), pertaining to certain releases of UNIX System V software. Each and every other allegation in paragraph 63 is denied.

64.    Novell admits that Alok Mohan of SCO sent a letter to Bob Frankenberg of Novell on April 23, 1996, containing the quoted text. Each and every other allegation in paragraph 64 is denied.

65.    Novell admits that Novell, Santa Cruz, and IBM executed an agreement referred to as "Amendment X" that replaced and was substantially similar to the April 26, 1996 Agreement. Like the April 26, 1996 Agreement, Amendment X provided that IBM's rights under the IBM-AT&T Agreements (including relating to source code) are irrevocable, fully paid-up, and perpetual, such that Novell and Santa Cruz no longer had any termination right with respect IBM's rights under these agreements. Amendment X also provided that, under the APA, Novell retained certain rights relating to the IBM-AT&T Agreements. SCO received a qualified right to have an independent accounting firm audit IBM's pertinent records. IBM agreed to pay $10,125,000 as consideration for Amendment X. Novell denies each and every other allegation in paragraph 65.

66.    Novell admits that Amendment X contains the quoted text. Each and every other allegation in paragraph 66 is denied.

67.    Denied.

68.    Denied.

69.    Novell admits that Novell and Santa Cruz executed Amendment No. 2 to the APA on the same day they executed Amendment X. Section B of Amendment No. 2, which was to govern potential buy-outs of an SVRX licensee's royalty obligations occurring after the

execution of Amendment X, contains the quoted text. Novell denies each and every other allegation in paragraph 69.

72. Denied.

71. Denied.

72. Denied.

73. Novell admits that Novell and Santa Cruz entered into the TLA at the time of the APA closings. Each and every other allegation in paragraph 73 is denied.

74. Denied.

75. Denied.

76. Denied.

77. Novell admits that during the years between the signing of the APA and May 2003, it retained (and still does retain) ownership of the UNIX and UnixWare copyrights. SCO acknowledged Novell's copyright ownership during this time period of time, as SCO repeatedly requested in 2002 and 2003 that Novell amend the APA and transfer the UNIX and UnixWare copyrights to SCO. Novell is without sufficient information to form a belief as to the truth of the remaining averments of paragraph 77.

78. Novell admits that in 2000, Santa Cruz entered into an agreement with Caldera Systems whereby Caldera acquired Santa Cruz's UNIX server solutions and services divisions. Novell further admits that in 2001, Caldera International was formed as a holding company to own Caldera Systems, including the former Santa Cruz UNIX Server Solutions and Services Assets. Novell denies each and every other allegation in paragraph 78.

79. Novell admits that between the signing of the APA and May 2003, Novell conducted one audit pursuant to section 1.2(b) of the APA. Novell denies each and every other allegation in paragraph 79.

80. Denied.

81.     Novell admits that the law firms that represented Novell and Santa Cruz in negotiating and executing the APA, Wilson, Sonsini, Goodrich & Rosati and Brobeck, Phleger & Harrison LLP, respectively, also represented Santa Cruz and Caldera, respectively, during the subsequent transfer of certain Santa Cruz assets to Caldera. Novell denies each and every other allegation in paragraph 81 to the extent they purport to evidence an understanding by or knowledge of the parties to the APA or in the software industry that SCO owned and freely exercised copyrights in UNIX and UnixWare.

82.     Denied.

83.     Novell admits that it has alleged in this lawsuit that the APA and its Amendments do not constitute writings sufficient to have transferred copyrights under section 204(a) of the Copyright Act. Each and every other allegation in paragraph 83 is denied.

84.     Novell admits that Novell and Santa Cruz agreed to the provisions set forth in sections 1.7(c), 4.9, and 4.12 of the APA. To the extent that SCO believes these provisions support a transfer of the UNIX and UnixWare copyrights from Novell to SCO, each and every other allegation in paragraph 84 is denied.

85.     Novell admits that the APA contains the quoted text in Paragraph 85.

86.     Novell admits that the APA contains the quoted text in Paragraph 86.

87.     Novell admits that the APA contains the quoted text in Paragraph 87.

88.     Denied.

89.     Novell re-incorporates its answers to all prior paragraphs as if fully set forth here in full.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.    Denied.

95.    Denied.

96.    Novell re-incorporates its answers to all prior paragraphs as if fully set forth here in full.

97.    Denied.

98.    Denied.

99.    Denied.

100.    Denied.

101.    Novell re-incorporates its answers to all prior paragraphs as if fully set forth here in full.

102.    Denied.

103.    Denied.

104.    Denied, to the extent that SCO alleges that APA sections 1.7(c), 4.9 and 4.12 support a transfer of the UNIX and UnixWare copyrights from Novell to SCO.

105.    Admitted.

106.    Novell admits that, under the APA, it retained the right to take, or direct SCO to take, certain actions, such as waiving SCO's claim to terminate the IBM SVRX Licenses. Each and every other allegation in paragraph 106 is denied.

107.    Denied.

108.    Denied.

109.    Novell re-incorporates its answer to all prior paragraphs as if fully set forth here in full.

110.    Denied.

111.    Denied.

112.    Denied.

14

113.    Denied.

114.    Denied.

115.    Novell cannot admit or deny this statement because it purports to characterize the law of the United States.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Novell re-incorporates its answers to all prior paragraphs as if fully set forth here in full.

122.    SCO does not sufficiently plead its Fifth Claim for Relief for Unfair Competition, having failed to specify the "applicable unfair-competition law" that Novell is alleged to violate. Therefore, Novell is without sufficient information to reasonably frame a response to this averment.  Novell has simultaneously filed a Motion for More Definite Statement of SCO's Unfair Competition Cause of Action.

123.    SCO does not sufficiently plead its Fifth Claim for Relief for Unfair Competition, having failed to specify the "applicable unfair-competition law" that Novell is alleged to violate. Therefore, Novell is without sufficient information to reasonably frame a response to this averment.  Novell has simultaneously filed a Motion for More Definite Statement of SCO's Unfair Competition Cause of Action.

124.    SCO does not sufficiently plead its Fifth Claim for Relief for Unfair Competition, having failed to specify the "applicable unfair-competition law" that Novell is alleged to violate. Therefore, Novell is without sufficient information to reasonably frame a response to this

averment. Novell has simultaneously filed a Motion for More Definite Statement of SCO's Unfair Competition Cause of Action.

125. SCO does not sufficiently plead its Fifth Claim for Relief for Unfair Competition, having failed to specify the "applicable unfair-competition law" that Novell is alleged to violate. Therefore, Novell is without sufficient information to reasonably frame a response to this averment. Novell has simultaneously filed a Motion for More Definite Statement of SCO's Unfair Competition Cause of Action.

126. SCO does not sufficiently plead its Fifth Claim for Relief for Unfair Competition, having failed to specify the "applicable unfair-competition law" that Novell is alleged to violate. Therefore, Novell is without sufficient information to reasonably frame a response to this averment. Novell has simultaneously filed a Motion for More Definite Statement of SCO's Unfair Competition Cause of Action.

**PRAYER FOR RELIEF**

127. Novell states that the enumerated paragraphs 1-7 following SCO's Prayer for Relief include requests for relief as to which no response is required. To the extent a response is required, Novell denies that SCO is entitled to the requested or any relief.

**AFFIRMATIVE DEFENSES**

128. Novell also hereby asserts the following separate defenses to the Second Amended Complaint, and each of its purported causes of action, without assuming any burden of proof on such defenses that would otherwise rest with SCO:

**FIRST AFFIRMATIVE DEFENSE**
**(Privilege)**

129. SCO's First Claim for Relief is barred due to absolute and conditional privileges enjoyed by Novell.

## SECOND AFFIRMATIVE DEFENSE
### (Estoppel)

130.    SCO's Second Amended Complaint, and each of its purported causes of action, is barred, in whole or in part, by the equitable doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE
### (Unclean Hands)

131.    SCO's Second Amended Complaint, and each of its purported causes of action, is barred by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE
### (Laches)

132.    SCO's Second Amended Complaint, and each of its purported causes of action, is barred, in whole or in part, by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE
### (Comparative Fault)

133.    To the extent that SCO did sustain any damages, which Novell denies, such damages were caused, in whole or in part, by the comparative fault of SCO and/or third parties, which thus bars SCO's recovery for said damages or diminishes such recovery by the amount of fault attributable to SCO and/or those third parties.

## SIXTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

134.    To the extent that SCO did sustain any damages, which Novell denies, such damages were caused, in whole or in part, by SCO's failure to mitigate any damages it may have suffered, which failure to mitigate bars and/or diminishes SCO's right to any relief against Novell.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Causation)

135.    To the extent SCO has suffered any injury or damage, which Novell denies, such injury or damage was not proximately caused by any conduct or inaction of Novell, or was not foreseeable, or both.

## EIGHTH AFFIRMATIVE DEFENSE
### (U.S. Const. Amend. I)

136.    SCO's First and Fifth Claims for Relief are barred, in whole or in part, by the First Amendment to the United States Constitution.

## NINTH AFFIRMATIVE DEFENSE
### (Misuse of Copyright)

137.    SCO's Fourth Claim for Relief is barred, in whole or in part, by the doctrine of copyright misuse.

## TENTH AFFIRMATIVE DEFENSE
### (Fraud on the Copyright Office)

138.    SCO has engaged in fraud on the copyright office in that it intentionally made false, material representations in its applications for registration of copyrights involving UNIX and UnixWare.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Independent Creation)

139.    SCO's Fourth Claim for Relief is barred, in whole or in part, by the doctrine of independent creation.

## TWELFTH AFFIRMATIVE DEFENSE
### (Fair Use)

140.    SCO's Fourth Claim for Relief is barred, in whole or in part, by the doctrine of fair use.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (License)

141.    SCO's Second Amended Complaint, and each of its purported causes of action, is barred, in whole or in part, by the doctrine of license, including but not limited to the licenses created by the UnitedLinux agreements, the General Public License, and the TLA.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Implied License)

142.    SCO's Second Amended Complaint, and each of its purported causes of action, is barred, in whole or in part, by the doctrine of implied license.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Waiver)

143.    SCO's Second Amended Complaint, and each of its purported causes of action, is barred, in whole or in part, by the doctrine of waiver.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Abandonment and Forfeiture)

144.    SCO's Fourth Claim for Relief is barred by the doctrines of copyright abandonment and forfeiture.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Obligation to Arbitrate)

145.    SCO's Second Amended Complaint, and each of its purported causes of action, raises arbitrable issues under the UnitedLinux agreements that SCO is obligated to arbitrate.

**WHEREFORE**, Novell prays for judgment as follows:

146.    That SCO take nothing by the Second Amended Complaint;

147.    That the Court enter judgment in favor of Novell and against SCO, dismissing with prejudice the Second Amended Complaint and each of its causes of action;

148.    That the Court award Novell its reasonable expenses and costs incurred, including without limitation attorneys' fees, in defending against the Second Amended Complaint; and

149.    That the Court grant Novell such other and further relief to which Novell may be entitled as a matter of law or which the Court deems just and proper.

## COUNTERCLAIMS

Novell re-alleges those counterclaims it previously pled on July 29, 2005 against SCO, as follows:

### PARTIES

1.    Counterclaim-plaintiff Novell, Inc. ("Novell") is a Delaware corporation that was incorporated in 1983. Its headquarters and principal executive offices are located in Waltham, Massachusetts. Novell's principal product development facility is located in Provo, Utah. Novell also has offices in numerous cities worldwide.

2.    Counterclaim-defendant The SCO Group, Inc. ("SCO") is a Delaware corporation with its principal place of business in Utah County, State of Utah.

### JURISDICTION

3.    This Court has original jurisdiction over SCO's Second Amended Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a). However, SCO's copyright claim raises issues subject to arbitration under the contracts that SCO's alleged predecessor-in-interest, Caldera, signed in May 2002 in becoming a member of UnitedLinux (the "UnitedLinux agreements"). The Court should not exercise its jurisdiction until after these issues are finally adjudicated by arbitration. In this regard, Novell has simultaneously filed a motion to stay these proceedings, pursuant to the Federal Arbitration Act.

4.    This Court has jurisdiction over Novell's counterclaims pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (arising under the Federal Copyright Act), 28 U.S.C. § 1367(a) (supplemental jurisdiction) and 28 U.S.C. §§ 2201(a) and 2202 (declaratory judgment). Novell's slander of title claim involves questions of, and arises under, federal law.

This Court has supplemental jurisdiction over Novell's state law claims of breach of contract, accounting, restitution and slander of title.

## VENUE

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(a), in that SCO resides or may be found in this district and is subject to personal jurisdiction in this district, except that venue is not proper for those SCO claims that raise issues subject to arbitration under the UnitedLinux agreements signed by Caldera in May 2002.

## FACTS

**A.    UNIX**

6.    UNIX is the name of a computer operating system originally developed beginning in the late 1960s by a group of software engineers at AT&T's Bell Laboratories. Over time, AT&T licensed its UNIX family of operating systems to universities, corporations, other entities and individuals.

7.    In 1993 AT&T sold its UNIX assets, held by its subsidiary UNIX System Laboratories ("USL"), to Novell. This transfer of assets to Novell included UNIX copyrights, trademarks and all active UNIX licensing agreements, including contracts relating to the most recent version of the UNIX operating system called UNIX System V. At the time there had been several major releases of System V, including Releases 1, 2, 3 and 4, also referred to as SVR1, SVR2, SVR3 and SVR4, or generically as SVRx.

**B.    Linux**

8.    Linux is the name of a computer operating system, originally developed beginning in the early 1990s when Linus Torvalds, an undergraduate student at the University of Helsinki, began writing the Linux kernel, or the core of the Linux operating system. He released the first version of the Linux kernel on the Internet in 1991. Since then, thousands of software programmers around the world have engaged in a collaborative effort to further develop Linux.

9.    Linux was developed as open-source software and has become a popular alternative to proprietary operating systems.  Unlike with other major operating systems, the underlying source code of Linux is available to the public.

**C.    The Asset Purchase Agreement Between Novell and The Santa Cruz Operation, Inc.**

10.    In 1995, Novell and a company called The Santa Cruz Operation, Inc. ("Santa Cruz") entered into negotiations over the sale of certain business assets of Novell relating to its UNIX and UnixWare software products.

11.    Santa Cruz was a California corporation that was incorporated in 1979.  It was founded as a UNIX system porting and consulting company and began to ship its first product, a packaged version of the UNIX operating system, in 1983.  In 1993 Santa Cruz completed an initial public offering and became a publicly-listed company on the NASDAQ Stock Exchange.

12.    On September 19, 1995, Novell and Santa Cruz executed an Asset Purchase Agreement ("APA").  The APA provided each party with certain rights and obligations.

13.    The parties entered into two Amendments to the APA.  On December 6, 1995, Novell and Santa Cruz executed "Amendment No. 1."  Novell and Santa Cruz subsequently executed "Amendment No. 2" on October 16, 1996.

14.    Under the APA and its Amendments, Santa Cruz obtained a variety of assets, including assignment of tens of thousands of contracts and licenses, various trademarks, source code and binaries to UnixWare products, and physical assets such as furniture and personal computers.  Santa Cruz also obtained the right to develop a "Merged Product," a derivative work that would run on Intel platforms.

15.    Santa Cruz did not have the financial capacity to pay the purchase price contemplated by Novell for these acquired assets and rights.  In order to bridge the price gap and consummate the transaction, Novell and Santa Cruz agreed that Novell would receive Santa Cruz stock and retain certain rights as protection.  For example (and as discussed further below),

Novell retained the right to receive royalty payments under SVRX licenses, prior approval rights relating to new SVRX licenses and amended SVRX licenses, the right to direct Santa Cruz to take certain actions relating to SVRX licenses and the right to conduct audits of the SVRX license program. Santa Cruz assumed several related obligations.

16.    One such obligation that Santa Cruz assumed under the APA was responsibility for administering the collection of royalty payments from SVRX licenses. The APA provided that Santa Cruz shall collect and pass through to Novell 100% of the SVRX royalties. In return, Novell agreed to pay Santa Cruz an administrative fee of 5% of those royalty amounts. Santa Cruz also agreed to pay additional royalties relating to other products.

17.    Novell retained certain assets under the APA. Schedule 1.1(b), which lists "Excluded Assets" under the agreement, specifies that Novell retained "all copyrights and trademarks, except for the trademarks UNIX and UnixWare," "all patents," and "all right, title and interest to the SVRX Royalties, less the 5% fee for administering the collection thereof."

18.    Novell also retained rights to supervise Santa Cruz's administration of SVRX licenses. Novell retained the "sole discretion" to direct Santa Cruz to amend, supplement, modify, waive or assign any rights under or to the SVRX licenses; if Santa Cruz fails to take any such action, the APA specifically granted Novell the right to take these actions on behalf of Santa Cruz. Novell retained the right to veto Santa Cruz's attempts to amend SVRX licenses, subject to two exceptions, as noted below. Novell also retained the right to veto Santa Cruz's attempts to enter into new SVRX licenses, subject to one exception, as noted below.

19.    The APA gave Novell the right to confirm Santa Cruz's compliance with its contractual obligations under the SVRX licensing program. The APA explicitly provided that Novell "shall be entitled to conduct periodic audits" of Santa Cruz "concerning all royalties and payments due to Seller hereunder or under the SVRX Licenses." The APA required Santa Cruz to "diligently seek to collect all such royalties, funds and other amounts when due" and to

23

"investigate and perform appropriate auditing and enforcement." The APA also required Santa Cruz to provide Novell monthly reports detailing the SVRX royalties it received.

20.    Novell and Santa Cruz were the only parties to the APA and its Amendments. SCO was not a party to the APA or its Amendments. SCO was originally incorporated on August 21, 1998 as a company called Caldera Systems, a developer and provider of Linux-based business solutions. SCO purports to be the successor in interest to Santa Cruz under the APA and its Amendments. This dispute is about Novell's rights under the APA and whether SCO breached its obligations as the alleged successor of Santa Cruz.

**D.    Novell's Ownership of the UNIX Copyrights**

21.    The APA transferred certain assets from Novell to Santa Cruz. However, as specified by Section V.A of Schedule 1.1(b) to the APA, certain assets were excluded from the transfer. Among the "Excluded Assets" from the APA asset transfer were "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare."

22.    The APA as executed on September 19, 1995 therefore does not transfer any copyrights.

23.    Novell and Santa Cruz later executed Amendment No. 2 to the APA. Amendment No. 2 modifies Section V.A of Schedule 1.1(b) to provide that Excluded Assets include:

> All copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the Agreement required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies.

24.    Neither Amendment No. 2 nor the APA as modified by Amendment No. 2 were intended to, nor do they actually, transfer ownership of the UNIX or UnixWare copyrights owned by Novell at the time of the APA and its Amendments ("UNIX Copyrights").

25.    Neither Amendment No. 2 nor the APA as modified by Amendment No. 2 qualify as "an instrument of conveyance, or a note or memorandum of the transfer" under 17 U.S.C. § 204(a) for at least the following reasons:

      a.    Amendment No. 2 merely amends the schedule of excluded assets and therefore does not, itself, constitute a transfer of any asset.

      b.    Neither Amendment No. 2 nor the modified APA identifies "the copyrights and trademarks owned by [Novell] as of the date of the Agreement required for Santa Cruz to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies."

      c.    Neither Amendment No. 2 nor the modified APA contains any language suggesting a contemporaneous transfer of any copyright. To the contrary, the APA provides only that certain assets "will" be transferred.

      d.    Neither Amendment No. 2 nor the modified APA provides a date for any purported transfer of copyrights.

26.    Title to the UNIX Copyrights therefore remains with Novell.

27.    By and during early 2003, SCO repeatedly asked Novell to transfer the UNIX Copyrights to SCO. In doing so, SCO conceded that title to the UNIX Copyrights remains exclusively with Novell. Novell rejected all of SCO's requests.

**E.    The Sale of Certain Santa Cruz Assets to Caldera Systems**

28.    During the second quarter of its fiscal year 2000, Santa Cruz restructured its business into three divisions:  the Server Software division, the Professional Services division and the Tarantella division.  The Server Software division included Santa Cruz's UNIX-related business.

29.    On August 1, 2000, Santa Cruz entered into an agreement with Caldera Systems, under which Caldera Systems acquired Santa Cruz's Server Software and Professional Services

divisions.  With the acquisition, Caldera Systems planned to add Santa Cruz's UNIX server solutions and services to its Linux business.

  30. On May 7, 2001, pursuant to an amendment to the agreement between Santa Cruz and Caldera Systems, Caldera International ("Caldera") was formed as a holding company to own Caldera Systems, including the assets, liabilities and operations of Santa Cruz's Server Software and Professional Services divisions.

**F. Caldera's Financial Woes and Its Shift in Business Strategy Under New Leadership**

  31. Prior to Caldera's acquisition of Santa Cruz's Server Software and Professional Services divisions, substantially all of Caldera's revenue was derived from sales of Linux products and services.  However, Caldera had been unsuccessful in creating a profitable Linux business.

  32. After the acquisition of Santa Cruz's Server Software and Professional Services divisions, most of Caldera's total revenue came from UNIX products and services, ranging from 90 to 95% of Caldera's revenue during fiscal years 2001 and 2002.  But Caldera's revenue from the sale of UNIX-based products declined in the fiscal quarters following the acquisition. Caldera experienced significant decreases in actual and forecasted revenue of the acquired Santa Cruz operations.

  33. Caldera incurred substantial financial losses during its fiscal years 2000, 2001 and 2002.  Caldera suffered losses from operations totaling $32 million in 2000, $133 million in 2001 and $24 million in 2002.

  34. In June 2002, Caldera hired Darl McBride as its President and Chief Executive Officer.  Mr. McBride was responsible for the company's strategic direction and planning.

  35. On our about the time of Mr. McBride's arrival at Caldera, Caldera began to pursue a new business strategy for the company, launching a rebranding effort of its products and services as well as its corporate image.

36.    On August 26, 2002, Caldera announced that it would change its name to The SCO Group, Inc. ("SCO"), pending shareholder approval. On or about that time, Caldera then began doing business as SCO. Caldera soon thereafter changed its trading symbol on the NASDAQ Stock Exchange from "CALD" to "SCOX." Caldera's name change was formalized on May 16, 2003, when Caldera's shareholders approved an amendment to Caldera's certificate of incorporation that changed the company's name to SCO.

37.    As part of Caldera's rebranding efforts and shift in business strategy, Caldera purportedly initiated a review of its intellectual property rights. This effort culminated in the launching of a licensing initiative, which it called SCOsource, in January 2003. SCOsource, as described in further detail below, was an effort by Caldera to expand the revenue base of a company that had never before been profitable.

**G.    SCO's Requests to Novell To Participate in a Licensing Scheme and To Transfer the UNIX Copyrights**

38.    In late 2002, SCO repeatedly contacted Novell in connection with SCO's soon-to-be- announced SCOsource campaign. SCO requested copies of certain documentation concerning rights to UNIX, including the agreement between Novell and Santa Cruz. SCO also expressed its interest in a campaign to assert UNIX infringement claims against users of Linux. SCO asked Novell to partner with SCO in a Linux licensing program, under which SCO contemplated extracting a license fee from Linux end users to use the UNIX intellectual property purportedly contained in Linux. Novell refused to participate.

39.    In aid of its scheme, SCO requested that Novell transfer its UNIX Copyrights to SCO and thereby acknowledged that it did not own the UNIX Copyrights. SCO contacted Novell on multiple occasions by and during early 2003. For example, SCO's CEO, Darl McBride, repeatedly contacted Novell and asked Novell to amend the Novell-Santa Cruz agreement to give SCO the UNIX Copyrights. Novell rejected all of these requests.

**H.    SCO's Scheme To Claim Ownership of the UNIX Copyrights**

40.    Notwithstanding Novell's rejections, SCO embarked on an aggressive campaign in which it falsely asserted ownership over these same copyrights via public statements, a series of letters to Linux end users, several lawsuits against Linux distributors and end users, and a licensing program purporting to offer SCO's Intellectual Property Licenses for Linux.

41.    SCO's misleading and wrongful public assertions of ownership include the following:

a.    On March 7, 2003, SCO stated in a press release, "In 1995, SCO purchased the rights and ownership of UNIX and UnixWare that had been originally owned by AT&T.    This included source code, source documentation, software development contracts, licenses and other intellectual property that pertained to UNIX-related business. . . . 'SCO is in the enviable position of owning the UNIX operating system,' said Darl McBride, president and CEO, SCO."

b.    On May 14, 2003, SCO stated in a press release, "[SCO], the owner of the UNIX operating system, today warned that Linux is an unauthorized derivative of UNIX and that legal liability for the use of Linux may extend to commercial users."

c.    On June 6, 2003, SCO stated in a press release, "[SCO], the owner of the UNIX® operating system, today confirmed its previously stated ownership of UNIX copyrights. As SCO has consistently maintained, all rights to the UNIX and UnixWare technology, including the copyrights, were transferred to SCO as part of the Asset Purchase Agreement between Novell and SCO dated September 19, 1995. Any question of whether the UNIX copyrights were transferred to SCO under the Asset Purchase

28

Agreement was clarified in Amendment No. 2 to the Asset Purchase Agreement dated October 16, 1996. 'This amendment simply confirms SCO's long stated position that it owns all copyrights associated with the UNIX and UnixWare businesses,' said Chris Sontag, senior vice president and general manager, SCOsource intellectual property division, SCO.

. . .

'SCO is the owner of the UNIX operating system, as well as all of the UNIX contracts, claims and copyrights necessary to conduct that business,' said Sontag. 'None of the litigation we are currently involved with asserts claims based on copyrights. Because others have called into question SCO's ownership of the UNIX and UnixWare copyrights, we are satisfied that we have now proven without a doubt that SCO owns those copyrights.'"

d.    During at least June and July, 2003, SCO wrongfully registered copyrights in UNIX and UnixWare releases owned by Novell. These registrations related to UNIX System V release 3.0, UNIX System V release 3.1, UNIX System V release 3.2, UNIX System V release 3.2/386, UNIX System V release 4.0, UNIX System V release 4.1, UNIX System V release 4.1ES, UNIX System V release 4.2, UNIX System V release 4.2MP, and UnixWare 7.1.3.

e.    On January 13, 2004, SCO stated, "[SCO] today reiterated its ownership of UNIX intellectual property, source code, claims and copyrights and has made all of the documents surrounding the companies' ownership of UNIX and UnixWare available for public viewing at www.sco.com/novell."

29

f.    On January 28, 2004, in its Form 10-K filed with the United States Securities and Exchange Commission, SCO stated, "We own the UNIX operating system and are a provider of UNIX-based products and services.

. . .

We acquired our rights to the UNIX source code and derivative works and other intellectual property rights when we purchased substantially all of the assets and operations of the server and professional services groups of The Santa Cruz Operation, Inc., in May 2001. The Santa Cruz Operation (now known as Tarantella, Inc.) had previously acquired such UNIX source code and other intellectual property rights from Novell in September 1995, which were initially developed by AT&T Bell Labs. Through this process, we acquired all UNIX source code, source code license agreements with thousands of UNIX vendors, all UNIX copyrights, all claims for violation of the above mentioned UNIX licenses and copyrights and other claims, and the control over UNIX derivative works . . . ."

42.    As part of SCO's scheme to claim ownership of the UNIX copyrights, SCO has falsely claimed that Novell acquiesced to SCO's claims. For example, on July 21, 2003, Darl McBride stated in a public interview:

Interviewer:    Well, Novell would say that you actually don't own those copyrights fully.

McBride:    Yeah, well, the Novell thing, they, they came out and made a claim that held up for about four days and then we put that one to bed. If you go talk to Novell today, I'll guarantee you what they'll say, which is they don't have a claim on those copyrights.

43.     Novell has not acquiesced to SCO's claims, as recited in SCO's own Amended Complaint.    (Amended Complaint ¶ 19(d)-(e).)    To the contrary, Novell was vigorously contesting those claims in private correspondence with SCO at the very same time SCO was publicly claiming otherwise.    For example:

      a.    On May 12, 2003, SCO's CEO Darl McBride sent Novell a letter asserting that it owned the UNIX copyrights and that Linux end users were infringing those copyrights.

      b.    On May 28, 2003, Novell's CEO, Jack Messman, responded by letter, asserting in no uncertain terms that "SCO is not the owner of the UNIX copyrights."

      c.    After SCO registered its claim to the UNIX copyrights with the U.S. Copyright Office, Novell's General Counsel, Joseph LaSala wrote to SCO, again disputing its claim to ownership of the copyrights.    In his August 4, 2003, letter, LaSala stated, "We dispute SCO's claim to ownership of these copyrights."

44.     In September and October 2003, Novell attempted to protect its rightful ownership of the UNIX Copyrights, and to correct SCO's erroneous registrations claiming ownership, by filing its own copyright registrations.

## I.     SCO's Scheme To Extract Licensing Fees from Novell, the Linux Community and UNIX Vendors

45.     A significant aspect of SCO's rebranding efforts and new business strategy was its adoption of a scheme to extract "licenses" from the UNIX and Linux communities based on claims to own intellectual property specifically reserved to Novell, i.e., the UNIX Copyrights. SCO proceeded on its own in this scheme after Novell rebuffed SCO's overtures to participate.

46.     On January 22, 2003, SCO publicly announced its licensing scheme as part of its "SCOsource" program.  In connection with this announcement, SCO's CEO, Darl McBride, commented that "SCO owns much of the core UNIX intellectual property, and has full rights to license this technology and enforce the associated patents and copyrights."

47.     Under the SCOsource licensing program, SCO seeks to enter into license agreements with UNIX vendors and offers Intellectual Property Licenses to Linux end users ("Intellectual Property Licenses").  The purported purpose of these licenses is to allow UNIX vendors to use SCO's UNIX intellectual property and to permit Linux end users to "properly compensate us for our UNIX intellectual property as currently found in Linux."  One term of SCO's Intellectual Property Licenses for Linux is that licensees "will be held harmless against past and future copyright violations based on their use of SCO's intellectual property . . . in Linux distributions . . . ."

48.     SCO charges a sizeable licensing fee for SCO's Intellectual Property Licenses for Linux.  For example, for a server with 8 CPUs, the initial licensing fee is $4,999, with $1,079 payable every year after that.

49.     As part of its SCOsource initiative, SCO filed a lawsuit against IBM on March 7, 2003, asserting, among other things, UNIX Copyrights that SCO does not own.  SCO has alleged that it owns the UNIX Copyrights and that IBM's contributions to Linux and use of Linux infringe these copyrights.

50.     As part of the SCOsource program, SCO entered into at least two license agreements.  These licenses related to the use of UNIX technology by the licensees.  The first of these licenses was with Sun Microsystems, Inc. ("Sun").  The second license was with Microsoft Corporation ("Microsoft") and purportedly covers Microsoft's UNIX compatibility products.  On information and belief, through these licenses SCO broadened the rights of Sun and Microsoft to use SVRX code.

51.    The Sun and Microsoft licenses resulted in significant revenue for SCO and produced the first profitable quarter in SCO's history.  During the fiscal quarter ended April 30, 2003, SCO recognized $8,250,000 in revenue from these two new licenses.  In addition, these licenses accounted for $25,846,000 of SCO's revenue in fiscal year 2003.

52.    As part of the SCOsource program, in May 2003, SCO sent letters to 1,500 of the world's largest corporations threatening suit based on its alleged ownership of the UNIX Copyrights ("End User Letters").  On May 12, 2003, SCO sent one of these letters to IBM, and sent another letter to Novell.  On information and belief, all of the End User Letters were nearly identical in content to the IBM and Novell letters.

53.    In the End User Letters, SCO made the false and misleading statement that "SCO holds the rights to the UNIX operating system software originally licensed by AT&T to approximately 6,000 companies and institutions worldwide (the 'UNIX Licenses')."

54.    In the End User Letters, SCO also made the unsupported assertion that "We [SCO] have evidence that portions of UNIX System V software code have been copied into Linux and that additional other portions of UNIX System V software code have been modified and copied into Linux, seemingly for the purposes of obfuscating their original source."

55.    After setting forth these alleged facts in the End User Letters, SCO erroneously concluded that "Linux infringes on our UNIX intellectual property and other rights."  According to SCO, end users of Linux were liable for this alleged infringement whether or not they participated in any contribution of UNIX System V software code into Linux.

56.    As set forth in detail above, besides sending the End User Letters, SCO has made numerous public statements that it owns the UNIX Copyrights and that end users of Linux are liable for infringement of those copyrights.  For instance, contrary to the express terms of the APA, SCO has stated on its website that "only SCO is in a position to license the use of this infringing intellectual property."  The Court itself has noted SCO's "barrage of public statements

about pursuing alleged infringers of its alleged intellectual property." *The SCO Group Inc. v. Int'l Bus. Machs.*, Case No. 2:03CV294 DAK, Memorandum Decision and Order at 5 (Feb. 9, 2004).

57.    Shortly after the inception of its letter writing campaign, SCO brought suit against Autozone and Daimler Chrysler, both Linux end users.    In these lawsuits, SCO has made substantially the same allegations as set forth in its letters.    In the Autozone lawsuit, SCO has alleged that "[Autozone] uses one or more versions of the Linux operating system that infringe on SCO's exclusive rights in its proprietary UNIX System V operating system technology."    In the Daimler-Chrysler lawsuit, SCO has alleged that Daimler-Chrysler's use of the Linux operating system violates the UNIX license between Daimler-Chrysler and SCO.

58.    Novell has established a Linux Indemnification Program under which it offers indemnification for copyright infringement claims made by third parties against qualifying, registered Novell customers of the SUSE LINUX Enterprise Server 8, SUSE LINUX Enterprise Server 9, SUSE LINUX Retail Solution, and Novell Linux Desktop products.

59.    SCO has continued to pursue its SCO source initiative with other industry participants that it believes will lead to additional licensing agreements.    On information and belief, via this campaign, SCO has convinced several Linux end users to participate in its licensing program, obtain purported licenses to use "SCO's intellectual property contained in Linux," and thereby avoid suit by SCO.    In fiscal year 2004, SCO generated additional revenue from sales of its SCOsource Intellectual Property Licenses.

**J.    SCO's Breaches of the Asset Purchase Agreement**

60.    SCO's misguided campaign has led SCO to breach various obligations that Santa Cruz assumed under the APA and its Amendments.

61.    Novell has performed its obligations under the APA and its Amendments.

62.    SCO or Santa Cruz has received adequate consideration for its duties under the APA and its Amendments.

### Breach of Section 1.2(b)'s and 1.2(f)'s Audit Provisions

63.    Section 1.2(b) of the APA gives Novell broad audit rights relating to the administration of the SVRX licensing program. It reads in pertinent part:

> [Novell] shall be entitled to conduct periodic audits of [SCO] concerning all royalties and payments due to [Novell] hereunder or under the SVRX Licenses, provided that [Novell] shall conduct such audits after reasonable notice to [SCO] and during normal business hours and shall not be entitled to more than two (2) such audits per year.

64.    Further, section 1.2(f) of the APA obligates SCO to provide Novell monthly reports detailing the SVRX royalties that SCO received.

65.    On July 11, 2003 Novell notified SCO that it intended to conduct an audit beginning on August 18, 2003 covering the period beginning January 1, 1998 through June 30, 2003.

66.    By reply correspondence dated July 17, 2003, SCO accepted Novell's right to an audit. Novell's audit began during the week of August 25, 2003.

67.    As part of Novell's aforementioned audit rights, on November 21, 2003, Novell sought the following categories of information and documentation relating to:

> a.    Any amendments and modifications to SVRX licenses, and in particular the amendments to the Sun and Microsoft SVRX licenses. Novell specifically requested (1) "copies of the Sun and Microsoft amendments to verify SCO's compliance" with the APA and (2) "a detailed explanation of SCO's position" if SCO contends that either of the two exceptions to the prohibition on unilateral amendments by SCO were applicable.
>
> b.    Any buy-out of SVRX licenses, and in particular any information concerning any buy-out of Sun's and Microsoft's royalty obligations

under their SVRX licenses. Novell specifically requested that SCO identify any potential buy-out transactions so that Novell could verify SCO's compliance with the APA.

c.    Any new SVRX licenses, and in particular SCO's Intellectual Property Licenses for Linux. Novell specifically requested (1) "copies of all SCO Intellectual Property Licenses for Linux, and any other agreements connected with attempts by SCO to enter into new SVRX Licenses, so Novell can verify SCO's compliance" with the APA and (2) "a detailed explanation of SCO's position" if SCO contends that the exception to the prohibition on new SVRX licenses by SCO was applicable.

d.    Any SVRX to UnixWare Conversions. Novell specifically requested that SCO (1) identify and provide documentation for any allegedly valid conversions and (2) "explain in detail" how the alleged conversion complies with the APA and (3) provide "a detailed explanation of SCO's position" if SCO contends that any of the exceptions to the prohibition on conversion by SCO were triggered.

68.    Novell renewed its November 21, 2003 demand on December 29, 2003 and again on February 4, 2004.

69.    On February 5, 2004, SCO conveyed its refusal to provide the information identified in Paragraph 68.

70.    On March 1, 2004, Novell again contacted SCO for the above categories of information: "In order to complete our audit, we need the Sun, Microsoft and any other Intellectual Property Licenses for Linux. Stated more categorically, we need all agreements in which SCO purported to grant rights with respect to Unix System V." Novell noted that SCO's

Intellectual Property Licenses for Linux appeared to be SVRX Licenses since they purported to grant rights relating to UNIX System V or UnixWare.

71.    Novell again sent a letter to SCO on April 2, 2004 urging a response.

72.    On November 17, 2004, Novell contacted SCO yet again:

> We have communicated with SCO several times about our concerns with SCO's handling of UNIX licenses, including the license with Sun. In these communications, we have noted that our audit rights under the Asset Purchase Agreement require SCO to provide Novell with copies of any UNIX agreements (including amendments) SCO has reached with Sun. We have sent you letters twice on this issue (in March and April 2004), and have not received an adequate response.
>
> . . .
>
> Accordingly, we must once again insist that you provide us with copies of any agreements with Sun (including amendments) that relate to UNIX. We would appreciate a response by Friday, December 3, 2004.

73.    Despite Novell's repeated requests, SCO has never provided copies of the Sun and Microsoft licenses, or amendments, or copies of SCO's Intellectual Property Licenses for Linux or other agreements connected with attempts by SCO to enter into new or amended SVRX licenses. SCO also never provided any explanation why SCO was not obligated under the APA to seek Novell's consent to amend or otherwise enter into new SVRX agreements. As a result, Novell has been unable to verify SCO's compliance with the APA, as Novell is entitled under the APA.

### Breach of Obligation To Remit Royalties Under Sections 1.2(b) and 4.16(a)

74.    Sections 1.2(b) and 4.16(a) of the APA obligate SCO to remit 100% of "all royalties, fees and other amounts due under all SVRX Licenses" to Novell. "SVRX Licenses" are in turn defined to include "[a]ll contracts relating to" the various UNIX System releases and auxiliary products enumerated at Schedule 1.1(a)(VI) and Attachment A to Amendment No. 1.

Under the APA, Novell has "all right, title and interest to the SVRX Royalties, less the 5% fee for administering the collection thereof."

75.    SCO has failed to remit to Novell all royalties owed under §§ 1.2(b) and 4.16(a) of the APA.

76.    As SCO admitted in its February 5, 2004 letter to Novell, SCO has entered into "new" agreements with Sun and Microsoft.

77.    On information and belief, these new agreements are "contracts relating to" the various UNIX System releases and auxiliary products enumerated at Schedule 1.1(a)(VI) and Attachment A to Amendment No. 1. The new agreements are therefore SVRX Licenses under the APA.

78.    SCO has not remitted any royalties from its new SVRX Licenses with Sun or Microsoft.

79.    In addition, SCO has entered into Intellectual Property Licenses with a variety of parties. For example, on March 1, 2004, SCO announced an intellectual property licensing agreement with "EV1Servers.Net" that purportedly grants that company a site license to use SCO's intellectual property on all Linux servers managed by EV1Servers.Net in its hosting facilities.

80.    On information and belief, SCO's Intellectual Property Licenses are "contracts relating to" the various UNIX System releases and auxiliary products enumerated at Schedule 1.1(a)(VI) and Attachment A to Amendment No. 1. The Intellectual Property Licenses are therefore SVRX Licenses under the APA. SCO has not remitted any royalties from these SVRX Licenses.

81.    Among other changes to the APA, Amendment No. 1 added § 1.2(e), which provides that SCO has a right to retain all "source code right to use fees attributable to new SVRX Licenses approved by [Novell] pursuant to Section 4.16(b)."

82.    SCO has neither sought nor obtained Novell's approval to enter into any new SVRX license.  Therefore, none of SCO's new SVRX Licenses fall within § 1.2(e)'s exception to SCO's general duty to remit 100% of SVRX royalties to Novell.

### Breach of Section 4.16(b)'s Obligations

83.    Section 4.16(b) of the APA reads in pertinent part:

> In addition, at [Novell's] sole discretion and direction, [SCO] shall amend, supplement, modify or waive any rights under, or shall assign any rights to, any SVRX License to the extent so directed in any manner or respect by [Novell].

84.    SCO has threatened to cancel or terminate various parties' SVRX licenses and has purported to cancel or terminate certain parties' SVRX licenses.  For example, on March 6, 2003, SCO sent a letter to IBM threatening to cancel or terminate IBM's SVRX license.  On May 29, 2003, SCO sent a similar letter to Sequent Computer Systems ("Sequent").

85.    SCO subsequently purported to cancel or terminate IBM's SVRX licenses as of June 13, 2003.  On August 11, 2003, SCO sent a letter to Sequent similarly purporting to terminate Sequent's SVRX licenses.

86.    SCO did not obtain Novell's prior written consent to cancel or terminate either SVRX license.  Accordingly, on June 9, 2003, and again on October 7, 2003, Novell directed SCO to waive any purported right SCO claimed to have to terminate IBM's SVRX licenses.  On February 6, 2004, Novell similarly directed SCO to waive certain of its purported rights under the IBM and Sequent SVRX licenses.

87.    Following SCO's failure to take the actions identified in the preceding paragraphs, Novell elected to take actions on SCO's behalf, as Novell is empowered to do by § 4.16(b).  Section 4.16(b) of the APA provides in pertinent part:

> In the event that [SCO] shall fail to take any such action concerning the SVRX Licenses as required herein, [Novell] shall be authorized, and hereby is granted, the rights to take any action on [SCO's] own behalf.

39

88.    After SCO conveyed its refusal on February 11, 2004 to waive its purported rights against Sequent, Novell on the same day waived SCO's purported right to revoke any rights under Sequent's SVRX licenses.  Similarly, on October 11, 2003, Novell waived certain of SCO's purported rights under IBM's SVRX licenses.

89.    SCO refuses to acknowledge Novell's right to take such actions on its own behalf.

90.    Under Section 4.16(b) of the APA, SCO shall not amend or modify any SVRX license "without the prior written consent of [Novell]."  As modified by Amendment 1, Section 4.16(b) of the APA provides further that:

> Notwithstanding the foregoing, [SCO] shall have the right to enter into amendments of the SVRX Licenses (i) as may be incidentally involved through its rights to sell and license UnixWare software or the Merged Product .. or future versions of the Merged Product, or (ii) to allow a licensee under a particular SVRX License to use the source code of the relevant SVRX product(s) on additional CPU's or to receive an additional distribution, from [SCO], of such source code.
>
> In addition, [SCO] shall not, and shall have no right to, enter into new SVRX Licenses except in the situation specified in (i) of the preceding sentence as otherwise approved in writing in advance by [Novell] on a case by case basis.

91.    On information and belief, SCO has entered into new SVRX Licenses with Sun, Microsoft and others (through, for example, SCO's Intellectual Property Licenses with Linux end users or UNIX vendors), or otherwise amended the Sun and Microsoft SVRX licenses.

92.    SCO never sought advance approval from Novell to enter into these new SVRX Licenses or amendments thereof.  SCO also never explained why under the APA it was not obligated to obtain Novell's advance approval.

93.    Under the APA, SCO also had no authority to enter into the Sun and Microsoft SVRX Licenses, or the Intellectual Property Licenses with Linux end users and UNIX vendors.

## FIRST CLAIM FOR RELIEF
### (Slander of Title)

94.     Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

95.     SCO made its public statements claiming ownership of the UNIX Copyrights, and improperly registered its claim to UNIX Copyrights, with knowledge that title to these copyrights remains with Novell.

96.     SCO made such statements maliciously, in bad faith, and with intentional disregard for the truth.

97.     SCO made such statements with the intent to cause customers and potential customers of Novell not to do business with Novell, to slander and impugn the ownership rights of Novell in UNIX and UnixWare, and to attempt, in bad faith, to block Novell's ability to exercise its copyrights therein.

98.     SCO's slander of Novell's title has resulted in special damages including, *inter alia*, Novell's costs and fees in preparing and filing copyright registrations and declarations correcting SCO's erroneous registrations claiming ownership of Novell's intellectual property and in prosecuting this action.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract: §§ 1.2(b) and 1.2(f) of the Asset Purchase Agreement)

99.     Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

100.    Pursuant to its audit rights under the APA, Novell requested certain information from SCO to verify SCO's compliance with the APA, including:

        a.     Any amendments and modifications to SVRX licenses, and in particular the amendments to the Sun and Microsoft SVRX licenses, including a copy of these amendments and a detailed explanation of SCO's position if

SCO contends that either of the two exceptions to the prohibition on unilateral amendments by SCO was applicable;

b.    Any buy-out or potential buy-out of SVRX licenses, and in particular any information concerning any buy-out of Sun and Microsoft's royalty obligations under their SVRX licenses;

c.    Any new SVRX licenses, and in particular SCO's new SVRX agreements with Sun and Microsoft and SCO's Intellectual Property Licenses with Linux end users or UNIX vendors, including copies of these agreements and a detailed explanation of SCO's position if SCO contends that the exception to the prohibition on new SVRX Licenses by SCO was applicable; and

d.    Any SVRX to UnixWare Conversions, including documentation for any allegedly valid conversions, a detailed explanation of how the alleged conversion complies with the APA and a detailed explanation of SCO's position if SCO contends that any of the exceptions to the prohibition on conversion by SCO were triggered.

101.    Under the APA, SCO was obligated to provide this information.    SCO substantially and materially breached §§ 1.2(b) and 1.2(f) of the APA by refusing to do so.

102.    On information and belief, SCO's breaches of §§ 1.2(b) and 1.2(f) of the APA have caused Novell damage in an amount to be later proven.  In addition, these breaches have caused Novell special damages, including, *inter alia*, the costs associated with making repeated requests for information necessary to confirm SCO's compliance with its contractual obligations to administer SVRX licensing program, conducting further reviews of the limited information provided by SCO, and attempting to estimate royalties owing based upon incomplete information provided.

103.    The legal remedies available to Novell for future failures by SCO to comply with its audit obligations under §§1.2(b) and 1.2(f) of the APA may be inadequate. Therefore, Novell seeks an order from this Court compelling SCO's specific performance of its aforementioned audit obligations under §§1.2(b) and 1.2(f).

### THIRD CLAIM FOR RELIEF
### (Breach of Contract: §§ 1.2(b) & 4.16(a) of the Asset Purchase Agreement)

104.    Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

105.    SCO has substantially and materially breached §§ 1.2(b) and 4.16(a) of the APA by failing to remit all royalties owed to Novell, including any royalties SCO obtained from its new SVRX Licenses with Sun or Microsoft or from its Intellectual Property Licenses with Linux end users or UNIX vendors.

106.    On information and belief, SCO's breaches of §§ 1.2(b) & 4.16(a) of the APA have caused Novell damage in an amount to be later proven. These breaches have caused Novell special damages, including, *inter alia*, the costs associated with attempting to ascertain from SCO the royalty amounts due to Novell and the unpaid royalty amounts.

107.    The legal remedies available to Novell for future failures by SCO to comply with its royalty obligations under §§ 1.2(b) & 4.16(a) of the APA may be inadequate. Therefore, Novell seeks an order from this Court compelling SCO's specific performance of its remittance obligations under §§ 1.2(b) & 4.16(a) of the APA.

108.    In addition, Novell seeks an order from this Court imposing a constructive trust on revenues received by SCO from its new SVRX Licenses with Sun and Microsoft and from its Intellectual Property Licenses with Linux end users and UNIX vendors. Creation of this trust is necessary to protect Novell from SCO's wrongful retention of monies owing Novell due to SCO's failure to perform its remittance obligations under §§ 1.2(b) & 4.16(a) of the APA. As set

forth above, Novell owns "all right, title and interest" to these royalties, less SCO's 5% administrative fee.

109.    This trust should be imposed for the additional reason that SCO is quickly dissipating its assets. On information and belief, SCO's revenues are declining, its operational losses are increasing and its cash is dwindling quickly. SCO expects to have only $11 million in cash remaining for its business operations as of October 31, 2005, just a fraction of the revenue it purportedly generated as a result of the Sun and Microsoft licenses.

110.    Novell also seeks an order from the Court attaching SCO's assets pending adjudication of this claim because SCO is quickly dissipating its assets.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief: Rights and Duties under § 4.16(b) of the**
**Asset Purchase Agreement)**

111.    Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

112.    Under § 4.16(b) of the APA, Novell has the right, at its sole discretion, to direct SCO to waive any rights under any SVRX Licenses. In the event that SCO fails to take any such action at Novell's direction, § 4.16(b) gives Novell the right to take any action on SCO's own behalf. SCO refused to perform its corresponding duties under § 4.16(b) and substantially and materially breached § 4.16(b) by:

a.    Purporting to cancel or terminate SVRX licenses, including the IBM and Sequent SVRX licenses, and then refusing to waive these purported rights as directed by Novell; and

b.    Refusing to recognize actions taken by Novell on SCO's behalf pursuant to § 4.16(b), including Novell's waiver of SCO's purported claims against IBM and Sequent.

113.    Novell seeks a declaration pursuant to 28 U.S.C. § 2201 that:

a.    Under § 4.16(b) of the APA, Novell is entitled, at its sole discretion, to direct SCO to waive its purported claims against IBM, Sequent and other SVRX licensees; and

b.    Under § 4.16(b) of the APA, Novell is entitled to waive on SCO's behalf SCO's purported claims against IBM, Sequent and other SVRX licensees, when SCO refuses to act as directed by Novell; and

c.    SCO is obligated to recognize Novell's waiver of SCO's purported claims against IBM and Sequent.

114.    Under § 4.16(b) of the APA, SCO is obligated to seek Novell's prior approval to enter into new SVRX Licenses or amendments of SVRX Licenses, subject to limited exception. SCO did not perform its corresponding duties under § 4.16(b) and substantially and materially breached § 4.16(b) by:

a.    Purporting to enter into new SVRX licenses without Novell's prior approval, including agreements with Sun, Microsoft and other licensees of SCO's Intellectual Property Licenses, without demonstrating that either of two limited exceptions was applicable; and

b.    Purporting to enter into amendments of SVRX Licenses without Novell's prior approval, including agreements with Sun, Microsoft and other licensees of SCO's Intellectual Property Licenses, without demonstrating that a limited exception was applicable.

115. Novell seeks a declaration pursuant to 28 U.S.C. § 2201 that:

a.    Under § 4.16(b) of the APA, SCO was obligated to seek Novell's prior approval to enter into new SVRX licenses or amendments to SVRX licenses, including SCO's agreements with Sun, Microsoft and other licensees of SCO's Intellectual Property Licenses; and

     b.     Under § 4.16(b) of the APA, SCO is obligated to seek Novell's prior approval to enter into new SVRX licenses or amendments to SVRX licenses, unless SCO can demonstrate to Novell that any exceptions to the prohibitions against new licenses and amendments by SCO are applicable.

116.    Novell pleads in the alternative for a declaration pursuant to 28 U.S.C. § 2201 that SCO had no authority to enter into the Sun and Microsoft SVRX Licenses, as well as the Intellectual Property Licenses with Linux end users and UNIX vendors.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Relief: Rights and Obligations Under APA's Covenant of Good Faith and Fair Dealing)

117.    Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

118.    The APA incorporates a covenant of good faith and fair dealing whereby each party agrees to work with the other to fulfill the purposes of the contract.

119.    The APA granted Novell broad audit rights to verify SCO's compliance with the APA, as well as rights to approve (subject to limited exception) new SVRX licenses and amendments to SVRX licenses. The APA also granted Novell the right to direct SCO to amend, supplement, modify or waive any rights under any SVRX license, and to act on SCO's behalf if SCO fails to take such direction.

120.    Under the APA, SCO was obligated to administer the SVRX License Program, subject to the additional duties provided in §§ 1.2(b), 1.2(f) and 4.16.

121.    SCO failed to abide by these obligations under the APA and therefore substantially and materially breached the APA's covenant of good faith and fair dealing.

122.    Novell seeks a declaration pursuant to 28 U.S.C. § 2201 that SCO is obligated under the APA to:

a.    Comply with Novell's exercise of its audit rights under §§ 1.2(b) and 1.2(f) by providing information requested concerning new SVRX licenses and amendments to SVRX licenses;

b.    Seek Novell's prior approval before entering into new SVRX licenses or amendments to SVRX licenses, or otherwise demonstrate that an exception to the prohibition against new licenses or amendments by SCO is applicable;

c.    Amend, supplement, modify or waive any rights under any SVRX License to the extent so directed in any manner or respect by Novell in its sole discretion; and

d.    Accept actions taken by Novell on SCO's behalf when SCO fails to take such action in (c) above as directed by Novell.

**SIXTH CLAIM FOR RELIEF**
**(Restitution/Unjust Enrichment)**

123.    Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

124.    SCO has been unjustly enriched by retaining in part or in full portions of all SVRX Royalties to which Novell was entitled under the APA.

125.    In addition, SCO has been unjustly enriched by retaining a 5% administrative fee for administering the SVRX License Program but having failed to fulfill its administrative auditing duties under the APA.

126.    Novell seeks restitution of all monies constituting SCO's unjust enrichment.

127.    Novell seeks an order from this Court imposing a constructive trust on revenues SCO unjustly received by failing to perform its administrative auditing and remittance obligations under the APA.

## SEVENTH CLAIM FOR RELIEF
### (Accounting)

128. Novell incorporates by reference all prior paragraphs as if they were set forth here in full.

129. Under the APA, Novell and SCO shared the stream of revenues from the SVRX licenses. In particular, SCO agreed to collect and pass through to Novell 100% of the SVRX royalties as defined and described in Section 4.16 hereof, while Novell agreed to pay an administrative fee of 5% of the SVRX Royalties. SCO was also responsible for making additional royalties and payments to Novell.

130. Under section 1.2(b) of the APA, Novell was entitled to "periodic audits" of SCO concerning "all royalties and payments due to [Novell] . . . ." Under section 4.16(a), SCO was required to "diligently seek to collect all [SVRX] royalties . . . and [to] investigate and perform appropriate auditing and enforcement under [the SVRX] licenses." SCO was also required to provide regular audit reports to Novell regarding the SVRX royalties and the other royalties under section 1.2(f) of the APA.

131. Under the APA, the amounts due Novell were determined and verified on the basis of the audits required under the APA. The right to an accounting of the royalties and payments due to Novell under the SVRX licenses and other provisions of the APA was inherent in the APA.

132. SCO has failed to fulfill its duties under the audit provisions of the APA, and substantially and materially breached those provisions.

133. Between the time the APA was concluded and the present, there have been hundreds of customers responsible for making royalty payments to SCO under the SVRX Licenses or under other agreements relating to royalty bearing products. SCO was obligated under the APA to receive and administer these royalty payments and share them with Novell.

134.    Under the APA, royalty payments under the SVRX licenses or other agreements relating to royalty bearing products were to be paid to Novell through SCO.    The amount of royalties was calculated through a specified formula.

135.    On information and belief, SCO has entered into new and/or amendments of the SVRX licenses with Sun and Microsoft, as well as with Linux end users under SCO's Intellectual Property Licenses.    SCO failed to seek approval to enter into these licenses, and explain why it was not obligated to obtain Novell's advance approval.    Despite repeated requests by Novell to SCO to obtain the underlying information and documentation to verify SCO's APA compliance as part of the audit, SCO failed to report these licenses.    This failure to report constitutes a substantial and material breach of the APA.

136.    On information and belief, SCO has received royalties under the SVRX licenses which it consummated with Sun and Microsoft, as well as from Linux end users under SCO's Intellectual Property Licenses.    SCO has not passed on to Novell the required 100% of the royalties it has received under these licenses.    This failure to pay royalties also constitutes a substantial and material breach of the APA.

137.    Because SCO has refused to provide Novell with a copy of these licenses, Novell is unable to allege with particularity the precise payment terms of the licenses or the corresponding amounts payable to Novell under these licenses pursuant to the APA.    Without an accounting, it is therefore impracticable for Novell to name a fixed sum that is owing with respect to these licenses.

138.    Given the large number of customers currently responsible for making royalty payments to SCO under the SVRX licenses or under other agreements relating to royalty bearing products, the complexity of the formulas by which these royalty payments are calculated, and the fact that SCO receives directly all these royalty payments without immediate notice to Novell, it

is impracticable for Novell to name a fixed sum that is owing with respect to these royalty payments without an accounting.

139.    Novell therefore seeks an accounting for monies owed to Novell under the APA.

## PRAYER FOR RELIEF

**WHEREFORE**, Novell prays for judgment as follows:

140.    For actual and special damages, in an amount to be proven at trial, caused by SCO's slander of Novell's title to the UNIX Copyrights;

141.    For punitive damages in an amount to be proven at trial for SCO's malicious and willful conduct in slandering Novell's title to the UNIX Copyrights as alleged herein;

142.    For preliminary and permanent injunctive relief requiring SCO to withdraw its improperly registered claims to UNIX Copyrights;

143.    For actual and special damages, in an amount to be proven at trial, caused by SCO's breaches of §§ 1.2(b), 1.2(f) and 4.16 of the APA;

144.    For specific performance of future compliance with SCO's audit obligations under §§ 1.2(b) and 1.2(f) of the APA;

145.    For specific performance of future compliance with SCO's royalty obligations under §§ 1.2(b) and 4.16(a) of the APA;

146.    For an order imposing a constructive trust on the revenues remitted to SCO under new or amended SVRX Licenses;

147.    For an order attaching SCO's assets pending adjudication of Novell's contract claims;

148.    For declaratory relief pursuant to 28 U.S.C. § 2201 establishing Novell's rights and SCO's obligations under § 4.16(b), as well as SCO's authority to undertake certain actions under § 4.16(b);

149.    For preliminary and permanent injunctive relief enforcing Novell's contractual rights under the APA, including injunctive relief barring SCO from taking actions inconsistent with or in violation of §§ 1.2(b), 1.2(f), 4.16(a) and 4.16(b);

150.    For declaratory relief pursuant to 28 U.S.C. § 2001 establishing Novell's rights and SCO's obligations under the covenant of good faith and fair dealing in the APA;

151.    For an order of restitution of all monies constituting SCO's unjust enrichment;

152.    For an accounting of the royalties remitted to SCO under the SVRX licenses and the monies owing to Novell under the APA;

153.    For pre-judgment interest on any monetary recovery;

154.    For Novell's reasonable expenses and costs incurred, including without limitation attorneys' fees, in defending against the Second Amended Complaint; and

155.    For such other and further relief as the Court deems just and proper.

<strong>JURY TRIAL DEMAND</strong>

Counterclaim-plaintiff Novell hereby demands a trial by jury of any and all issues triable by a jury.

DATED:        April 10, 2006

ANDERSON & KARRENBERG

_Thomas R. Karrenberg_
Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

- and -

MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)

**Attorneys for Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of April, 2006, I caused a true and correct copy of the foregoing **NOVELL, INC.'S ANSWER TO SCO'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS** to be served via first class mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
Mark R. Clements
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101


Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California  90401


Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131


Robert Silver
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504