Brent O. Hatch (5715)                    Robert Silver (admitted pro hac vice)
Mark F. James (5295)                     Edward Normand (admitted pro hac vice)
HATCH, JAMES & DODGE                     BOIES, SCHILLER & FLEXNER LLP
10 West Broadway, Suite 400              333 Main Street
Salt Lake City, Utah  84101              Armonk, New York 10504
Telephone: (801) 363-6363                Telephone: (914) 749-8200
Facsimile:  (801) 363-6666               Facsimile:  (914) 749-8300


Stuart H. Singer (admitted pro hac vice)   Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP              BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200   Bank of America Tower – Suite 2800
Ft. Lauderdale, Florida 33301             100 Southeast Second Street
Telephone:  (954) 356-0011                Miami, Florida  33131
Facsimile:   (954) 356-0022               Telephone:  (305) 539-8400
                                          Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NOVELL, INC.,<br><br>    Defendant. | **SCO'S MEMORANDUM IN OPPOSITION TO NOVELL'S MOTION TO STAY CLAIMS RAISING ISSUES SUBJECT TO ARBITRATION**<br><br>Case No. 2:04CV00139<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................ 3

    A.    Course of Proceedings ........................................................................ 3

    B.    UnitedLinux and the UL Agreements ................................................ 6

ARGUMENT ..................................................................................................................... 9

I.     NOVELL HAS WAIVED ANY RIGHT TO THE STAY IT SEEKS ................................ 9

II.    SCO'S CLAIMS ARE NOT ARBITRABLE AND ARE NOT
      BROUGHT UPON ANY ISSUE REFERABLE TO ARBITRATION ........................... 16

    A.    Applicable Legal Standards ............................................................... 16

    B.    The UL Arbitration Clause is Narrow, and SCO's Claims
        On Their Face Are Not Within the Purview of the Clause ................... 18

    C.    SCO's Claims Are Also Not Arbitrable Because
        They Are Not Even "Collateral" to the UL Contracts and
        Are Plainly Not Intended To Be Arbitrable ........................................ 19

III.   THE COURT SHOULD NOT STAY THE NON-ARBITRABLE
      CLAIMS PENDING ARBITRATION ..................................................................... 21

CONCLUSION .................................................................................................................. 26

# TABLE OF AUTHORITIES

## CASES

Page(s)

Aetna Health Inc. v. Davila,
    542 U.S. 200 (2004).................................................................................22

Altresco Philippines, Inc. v. CMS Generation Co.,
    No. 96-1080, 1997 WL 186257, at *3 (10th Cir. April 17, 1997)................................16, 17

Chang v. Lin,
    824 F.2d 219 (2d Cir. 1987)...............................................................22, 23

Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S,
    943 F.2d 220 (2d Cir. 1991).....................................................................8

Coffman v. Provost Umphrey Law Firm, L.L.P.,
    161 F. Supp. 2d 720 (E.D. Texas 2001)........................................................18

Coors Brewing Co. v. Molson Breweries,
    51 F.3d 1511 (10th Cir. 1995) ................................................................23

CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.,
    381 F.3d 131(3d Cir. 2004)..............................................................22, 23

Cummings v. Fedex Ground Package Sys., Inc.,
    404 F.3d 1258 (10th Cir. 2005) ...........................................16, 17, 18, 19, 20

Dean Witter Reynolds, Inc. v. Byrd,
    470 U.S. 213 (1985)....................................................................22, 24

Howsam v. Dean Witter Reynolds,
    537 U.S. 79 (2002)......................................................................17

Kafka v. Bellevue Corp.,
    No. 90 C 6709, 1991 WL 246520, at *3 (N.D. Ill. Nov. 13, 1991) ...................16

Klay v. United Healthgroup,
    376 F.3d 1092 (11th Cir. 2004) ...........................................................24

Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,
    67 F.3d 20 (2d Cir. 1995)................................................................13

Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.,
 179 F.3d 1095 (8th Cir. 1999) .......................................................................18

Long v. Silver,
 248 F.3d 209 (4th Cir. 2001) .........................................................................22

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,
 252 F.3d 218 (2d Cir. 2001)............................................................................15

Mediterranean Enters., Inc. v. Ssangyong Corp.,
 708 F.2d 1458 (9th Cir. 1983) .......................................................................18

Metz v. Merril Lynch, Pierce, Fenner & Smith, Inc.,
 39 F.3d 1482 (10th Cir. 1994) ...................................................................9, 14

Meyer v. Doerge,
 No. 02 C 8182, 2003 WL 21696998, at *4 (N.D.Ill. July 17, 2003) ................23

Microchip Tech. Inc. v. U.S. Philips Corp.,
 367 F.3d 1350 (Fed. Cir. 2004).....................................................................17

MidAmerica Federal Sav. and Loan Ass'n v. Shearson/American Exp.,
 886 F.2d 1249 (10th Cir. 1989) .................................................................9, 15

Miller Brewing Co. v. Fort Worth Distrib. Co.,
 781 F.2d 494 (5th Cir. 1986) .........................................................................13

Nederlandse Erts-Tankermaatschappij v. Isbrandtsen Co.,
 339 F.2d 440 (2d Cir. 1964)...........................................................................9

O'Connor v. R.F. Lafferty & Co.,
 965 F.2d 893 (10th Cir.1992) .........................................................................9

Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.,
 698 F. Supp. 504 (S.D.N.Y. 1988) .................................................................23

Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,
 139 F.3d 1061 (5th Cir. 1998) .......................................................................18

Prudential Lines, Inc. v. Exxon Corp.,
 704 F.2d 59 (2d Cir. 1983)........................................................................18, 20

Radiator Specialty Co. v. Cannon Mills,
 97 F.2d 318 (4th Cir. 1938) ...........................................................................14

Reid Burton Const., Inc. v. Carpenters Dist. Council of Southern Colorado,
        614 F.2d 698 (10th Cir. 1980) ...............................................................................12, 13, 14

Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.,
        157 F.3d 775 (10th Cir. 1998) .......................................................................................23

Robinson v. Food Serv. of Belton,
        415 F. Supp. 2d 1221 (D. Kan. 2005) ...........................................................................13

S & H Contractors, Inc. v. A.J. Taft Coal Co.,
        906 F.2d 1507 (11th Cir. 1990) .....................................................................................13

S & R Co. of Kingston v. Latona Trucking,
        159 F.3d 80 (2d Cir. 1998) .............................................................................................13

Smith v. Pay-Fone Systems,
        627 F. Supp. 121 (N.D. Ga. 1985) .................................................................................23

Steinberg v. Illinois Co.,
        635 F. Supp. 615 (N.D. Ill. 1986) ..................................................................................23

Summit Contractors, Inc. v. Legacy Corner, L.L.C.,
        147 Fed. Appx. 798 (10th Cir. 2005) .............................................................................21

Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,
        1 F.3d 639 (7th Cir. 1993) .............................................................................................20

Tracer Research Corp. v. Nat'l Envtl. Servs. Co.,
        42 F.3d 1292 (9th Cir. 1995) ..............................................................................18, 19, 23

Turner v. Bain & Co.,
        No. 97 C 4755, 1997 WL 638521, at *11 (N.D. Ill. Oct. 8, 1997) .................................22

United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,
        No. 95-1184, 1996 WL 55657, at *3-4 (10th Cir. February 9, 1996)...........................9, 17

Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,
        372 F.3d 339 (5th Cir. 2004) .........................................................................................20

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this Memorandum in

Opposition to the Motion of Novell, Inc. ("Novell") to Stay Claims Raising Issues Subject to

Arbitration, dated April 10, 2006.

## PRELIMINARY STATEMENT

Over twenty-six months after SCO commenced this action in state court by filing a claim

that Novell says "raises arbitrable issues," and following Novell's removal of the action to this

Court, the substantial motion practice on Novell's two motions to dismiss, the production of

nearly a million pages of documents in discovery, and Novell's decision not even to oppose the

filing of SCO's second amended complaint, Novell now asks this Court to stay all of SCO's

claims (but not its own counterclaims) in favor of an arbitration, brought by a Novell-controlled

subsidiary, that may bear on <u>one</u> of Novell's <u>secondary defenses</u> to a <u>part</u> of SCO's claims.

The request comes after Novell's motions to dismiss (including its request to convert one

of the motions into a pre-discovery motion for summary judgment) failed to end the litigation,

after Novell filed an answer and multiple counterclaims (without even mentioning any

arbitrability defenses), after a trial date has been set, and after this Court has become extensively

familiar with the relevant issues, based both on this litigation and the <u>SCO v. IBM</u> case.  The

request is also made even though Novell has not assumed the obligations that its subsidiary,

SuSE, had as a member of UnitedLinux ("UL") under the agreements purportedly providing the

basis for the arbitration.  By SuSE's own admission, it stopped being a member of UL months

before Novell even acquired SuSE.

In seeking the stay, moreover, Novell concedes that any arbitrable "issues" that may be

part of Novell's secondary defenses to SCO's claims are "closely related" to SCO's original

claim and that SCO's new claims are also "closely related" to SCO's original claim.  In addition, Novell could have had SuSE request arbitration regarding SCO's copyright ownership over two years ago.  Under both the controlling and directly analogous precedent, Novell's effort to preclude SCO from litigating its claims should fail for at least the following reasons:

First, by virtue of its lengthy and substantial participation in this litigation, including its numerous requests for and receipt of substantial discovery, Novell has waived any purported right to its requested stay.  Novell claims that SCO's second amended complaint created a new landscape, but by Novell's own admission that complaint arises out of both SCO's original complaint and Novell's counterclaims.  Indeed, Novell did not even oppose SCO's motion to file the second amended complaint, where if Novell believed that SCO's claims raised arbitrable issues, Novell could have opposed the filing on those grounds.  Novell's conduct clearly evidences an intent to have those issues litigated in this Court.

Second, none of SCO's claims is arbitrable or, as required under the statute Novell invokes, is brought upon any issue referable to arbitration.  The claims do not even remotely "arise from" the UL contracts.  SCO's claims arise from contracts that were signed years prior to the UL agreements and from federal copyright law and state law.  A non-arbitrable claim does not become arbitrable and is not deemed to have been brought upon an arbitrable issue just because a defendant may have a defense to the claim based on a contract with an arbitration clause.  Novell argues that it would be more efficient for this Court to await the resolution of the arbitration.  That is not true (given, among other things, the two years of litigation that have already taken place in this Court), and is irrelevant.  Under the well-established precedent, the arbitration and federal litigation should proceed concurrently.

2

Third, where SCO's claims are not arbitrable, there is no basis to stay them. Novell has not rebutted the "heavy presumption" against a stay of non-arbitrable claims pending arbitration of related claims or shown any "compelling reasons" why SCO should be deprived of its right to litigate the non-arbitrable claims. Consistent with the precedent regarding the concurrent procedure of arbitration and federal litigation, non-arbitrable claims may not be stayed merely to avoid "piecemeal litigation." That is especially true where even if an arbitration award in SuSE's favor were given full estoppel effect, all five of SCO's claims would nevertheless remain for adjudication in this case.

## BACKGROUND

A.    Course of Proceedings

SCO filed this suit in Utah state court in January 2004, alleging that Novell had slandered SCO's title to its UNIX and UnixWare copyrights and damaged SCO's business reputation and relationships by falsely claiming ownership of these copyrights. The claim was based on the fact that, although SCO purchased the copyrights and the UNIX business from Novell under a 1995 Asset Purchase Agreement ("APA"), as amended, Novell had publicly claimed to continue to own all of those copyrights. Novell says in its brief (at 14) that SCO's slander-of-title claim raised "arbitrable issues," at a time when Novell had already acquired SuSE.

Specifically invoking this Court's jurisdiction, Novell removed SCO's suit to this Court and then moved for dismissal. In its motion, Novell argued that as a matter of law the APA did not transfer the copyrights to SCO and that SCO failed to plead special damages with sufficient specificity. In June 2004, this Court denied the motion with respect to the APA issue. On

special damages, the Court agreed that further detail was required and gave SCO thirty days to provide it. SCO filed its first amended complaint in July 2004.

Novell then filed a second motion to dismiss, on the purported grounds of privilege to make public claims to the subject copyrights and on the supposed lack of malice. In its reply brief in support of that motion, notwithstanding that no discovery had been taken at that time, Novell asked the Court to convert the motion into one for summary judgment. This Court rejected Novell's request and denied Novell's motion in June 2005.

After the denial of its second motion to dismiss, in July 2005, Novell answered SCO's first amended complaint. Novell specially pleaded eight affirmative defenses; nowhere did Novell contend -- even as a secondary defense, as it does now – that the UL agreements "divested" SCO of any copyrights transferred under the APA or that SCO's claims raised arbitrable issues in whole or in part. Quite the contrary, Novell plainly manifested an intent for judicial resolution of the issues between the parties by filing a seven-count counterclaim, which included a rival slander-of-title claim on the very same copyrights.

After Novell filed its answer and counterclaims, the parties agreed to a proposed discovery schedule (with the exception of the trial date), and the Court thereafter set discovery deadlines and a June 2007 trial date. (Exh. 1.) Novell then contacted SCO about the timing of the production of initial disclosures and began propounding extensive interrogatories and document-production requests on SCO, as well as third-party subpoenas. (Exh. 2.) SCO also propounded discovery requests on Novell. (Exh. 3.) SCO responded to Novell's requests by providing hundreds of thousands of pages of documents, including almost all of SCO's production in the IBM case and transcripts of witnesses deposed in the IBM case (including the

chief negotiators of the APA, who corroborate SCO's claim of copyright ownership).  (Exh. 4.)
Novell recently confirmed its repeated representations to SCO at that time that it would make a
significant production of documents.[1]  (Exh. 5.)

Without opposition from Novell, and in consideration of the increased scope of the
lawsuit by virtue of Novell's counterclaims, SCO moved for leave to file its second amended
complaint in December 2005.  The second amendment complaint restated the original slander-of-
title claim and also asserted:

- A claim for breach of the non-compete provisions and the implied covenant of
  good faith and fair dealing of the APA and a related 1995 agreement, the
  Technology License Agreement ("TLA");

- An alternative claim for specific performance of Novell's obligations under the
  APA to transfer the UNIX business (if deemed not to have been already
  transferred), including the UNIX copyrights;

- A claim for copyright infringement on the grounds that Novell/SuSE have been
  distributing versions of Linux that violate SCO's copyrights in UNIX; and

- A claim for unfair competition, on the grounds of Novell's misconduct aimed at
  hurting SCO in the relevant market for operating systems.

The large majority of the allegations and claims in the second amended complaint concern
Novell's misconduct in claiming that the APA did not transfer the copyrights to SCO and in
purporting to "waive" IBM's violations of its UNIX licensing agreements.  The complaint also

---

[1] On the afternoon of May 26, 2006, the date of this memorandum, SCO received from Novell a small
production comprising approximately 7500 pages of documents.  (Exh. 6.)

raises Novell's distribution of SUSE Linux, but the major focus remains on Novell's conduct relating to the APA.

Asserting (as noted) that SCO's original slander-of-title claim "raises arbitrable issues" and citing SCO's second amended complaint for its failure to make that argument until now, Novell here raises the UL agreements as a <u>secondary defense</u> to portions of some of SCO's claims – including the original slander-of-title claim. That is, the filing of the arbitration itself directly conflicts with Novell's current, repeated, and central defense that SCO supposedly never owned the UNIX copyrights at all; if Novell's position were correct, its wholly owned subsidiary could not allege in arbitration that SCO assigned a portion of those same copyrights to the UnitedLinux LLC in 2002. Although the UL agreements provide for arbitration only of claims "arising from" those agreements (and not for defenses or even for claims "relating to" the agreements), Novell asserts that the arbitration filed in SuSE's name on the same day that Novell filed this motion will affect Novell's UL defense and seeks a stay of all of SCO's claims, but not its own counterclaims, until the conclusion of the arbitration.

B.     <u>UnitedLinux and the UL Agreements</u>

Novell correctly states that, before SCO discovered that IBM had misappropriated SCO's proprietary technology into Linux or that the then-latest version of Linux violated SCO's UNIX copyrights, SCO and SuSE and two other companies entered into the UnitedLinux project to develop a standardized Linux product, called UnitedLinux 1.0, that each of the four members would sell under its own brand name. Novell fails to note, however, that the parties abandoned the project years ago, and Novell misquotes the pertinent agreements.

At the inception of the project, in 2002, the parties entered into three agreements: a Master Transaction Agreement ("MTA"), a Joint Development Contract ("JDC"), and the Limited Liability Company Agreement (the "LLC Agreement"). At IBM's urging, SuSE sought to expel SCO from the group after SCO sued IBM, and the project soon thereafter died, although the agreements were never formally terminated.[2] The last board meeting was in January 2004 (even though the LLC Agreement requires four meetings each year), no annual report was filed for 2005, and SuSE's own CEO admitted with respect to UL that SuSE stopped being a member months before Novell purchased SuSE.[3]

Novell contends that SCO assigned or licensed to SuSE all UNIX technology (including misappropriated technology) contained in UnitedLinux 1.0, but the JDC says nothing of the sort. Under Article 8.1 of the JDC, each of the parties agreed to contribute to the LLC certain pre-existing technology that was listed on an attached schedule. The UNIX technology at issue in this case, which was in existence when the JDC was signed, is not on the list of items that SCO agreed to contribute. Under Article 8.2 of the JDC, the parties further agreed that their intellectual property rights in the software "developed pursuant to the JDC" (the new, jointly developed technology; not pre-existing technology, which was addressed in Article 8.1) would be assigned to the LLC, which in turn would license such rights to the members. Novell and SuSE thus assert that, pursuant to Article 8.2, SCO was "divested" of ownership of any rights in any proprietary UNIX technology contained in the UnitedLinux 1.0 software – even if such

---

[2] SCO refused to consent to the improper expulsion, knowing that IBM was behind it.

[3] "UnitedLinux, RIP," Linux & Open Source, <http://www.eweek.com/article2/0,1895,1457065,00.asp>.

technology was put into that software illegally, and without SCO's knowledge or consent, and even though no Article 8.2 assignment was ever given by or even requested from SCO.

Novell (at 7) and SuSE (in the arbitration request) admit that as early as May 2003, SCO publicly declared that the UL agreements did not protect against the use of SCO's misappropriated UNIX technology in SUSE Linux.  In the first part of 2003, moreover, SCO put Novell and others on notice that it believed Linux violated SCO's copyrights and that SCO intended to enforce those copyrights.  (Exh. 7.)  Yet until April 10, 2006, the day Novell filed this motion, Novell never had SuSE seek arbitration or pursue the dispute-resolution procedures set forth in Article 12 of the JDC and Article 9 of the MTA.  In fact, even after moving to stay SCO's claims, Novell filed for additional third-party discovery in this litigation.

## ARGUMENT

### I.    NOVELL HAS WAIVED ANY RIGHT TO THE STAY IT SEEKS

If (contrary to fact) SCO's claims were even arbitrable or brought upon issues referable

to arbitration (Part II, below), Novell has nevertheless waived any right to the stay it seeks.[4] The

Tenth Circuit has established a six-part test. <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith,</u>

<u>Inc.</u>, 39 F.3d 1482, 1489 (10th Cir. 1994):

> (1) whether the party's actions are inconsistent with the right to arbitrate;
> (2) whether the litigation machinery has been substantially invoked and the
> parties were well into preparation of a lawsuit before the party notified the
> opposing party of an intent to arbitrate; (3) whether a party either requested
> arbitration enforcement close to the trial date or delayed for a long period before
> seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim
> without asking for a stay of the proceedings; (5) whether important intervening
> steps had taken place; and (6) whether the delay affected, misled, or prejudiced
> the opposing party.

<u>Id.</u> (quotations omitted); <u>accord</u> <u>MidAmerica Federal Sav. and Loan Ass'n v. Shearson/American</u>

<u>Exp.</u>, 886 F.2d 1249, 1260-61 (10th Cir. 1989).  The multi-factor test on its face applies where

the party seeking a stay is the party seeking arbitration, and should apply to Novell's motion

---

[4] Novell could have moved for a stay years ago, but that is not to say it even has standing to do so.  To the
extent Novell asserts (at 13-14) that its right to file this motion turns on its supposed status as a
"third-party beneficiary" of the UL agreements, Novell is incorrect.  An "intent to benefit the third party
must be apparent from the construction of the contract in light of all surrounding circumstances to qualify
that party as a third party beneficiary."  <u>United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.</u>, No. 95-
1184, 1996 WL 55657, at *3 (10th Cir. Feb. 9, 1996) (Exh. A); <u>accord</u> <u>O'Connor v. R.F. Lafferty & Co.</u>,
965 F.2d 893, 901 (10th Cir. 1992).  The UL agreements do not mention Novell or confer a right to sue
on non-parties, so Novell is not a third-party beneficiary.  To the extent Novell might argue some other
basis for standing under 9 U.S.C. § 3, the precedent makes equally clear that Novell has no right to bring
this motion.  <u>See</u> <u>Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S</u>, 943 F.2d 220, 225 (2d Cir. 1991)
(holding that a nonparty to the agreement that provided for arbitration was not entitled to a § 3 stay);
<u>Nederlandse Erts-Tankermaatschappij v. Isbrandtsen Co.</u>, 339 F.2d 440, 441 (2d Cir. 1964) ("Granting of
the stay cannot be justified under the terms of the Arbitration Act.  Defendants are not parties to the
arbitration agreement.").

given Novell's undisputed ownership and control of SuSE since the commencement of this litigation. Under each factor, the facts counsel strongly against Novell's request for a stay.

Although Novell declines even to acknowledge the foregoing multi-factor test (and therefore does not address the individual factors), it seems clear from Novell's brief (at 2-3) that Novell will say that only when SCO filed its second amended complaint could the asserted arbitrability of the issues have been raised for Novell/SuSE. That is incorrect, and the argument should fail for these initial reasons and the other reasons asserted further below with respect to the Tenth Circuit's six-part text:

- Novell itself belies any such argument, asserting (at 14) that "SCO's slander of title claim raises arbitrable issues." While SCO disagrees with Novell's position that the SuSE arbitration could dispose of any of SCO's claims, by Novell's own admission its motion is more than two years late. The fact is that instead of raising any even secondary UL defense or having SuSE file for arbitration, Novell repeatedly, and unsuccessfully, sought to end this litigation on the basis of its primary defense that SCO has never owned any of the UNIX copyrights.

- Novell responded to SCO's complaint by filing a seven-count counterclaim almost a year ago. By filing those counterclaims, which Novell says (at 3) "are closely related to" SCO's slander-of-title claim, Novell again evidenced its intent to proceed with the litigation about the UNIX copyrights in this forum, without ever suggesting that there was a predicate issue subject to arbitration.

10

- Novell compounded its filing of those counterclaims concerning the very subjects it now claims to be subject to arbitration by expressly requesting a jury trial in this Court based on those counterclaims.

- Novell failed even to oppose SCO's motion to file the second amended complaint <u>after</u> Novell had seen the proposed claims.  The context in which Novell made that decision, moreover, is telling:  If Novell thought SCO's claims raised issues that could be mooted by arbitration, then Novell could have opposed the proposed filing on those grounds, instead of allowing SCO to amend its claims and months later asking the Court to stay the entire litigation.  Where Novell believes that SCO's claims raise arbitrable issues, there could be no clearer evidence of Novell's agreement to litigate those claims in this Court.

In short, for these reasons and the other reasons set forth below, Novell has waived any purported right to the stay it seeks under the Tenth Circuit's six-part text.

<u>First</u>, Novell's actions have been totally inconsistent with any right to arbitrate.  Almost a year ago – over a year after SCO had brought what Novell says is a claim that "raises arbitrable issues" – Novell explicitly requested "a trial by jury of any and all issues triable by a jury," without any hint that it intended to pursue arbitration of any issue.  (Answer and Counterclaims (7/29/05) at 45.)  Indeed, since the outset of this litigation and Novell's acquisition of SuSE well over two years ago, Novell has ignored the UL arbitration clauses, filed counterclaims, sought and received extensive discovery, and expressly argued that "the real dispute between the parties" was whether the APA transferred ownership of the copyrights to SCO.  (Reply Mem. in Support of Mot. to Dismiss (11/08/04) at 25.)  Seeking to stay SCO's slander-of-title claim,

11

which request Novell could have pursued from day one, Novell cannot use SCO's second amended complaint to justify its long delay. Novell's "duty" was to have SuSE insist upon or demand enforcement of any pertinent clause if it wanted arbitration. Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo., 614 F.2d 698, 703 (10th Cir. 1980).

Second, the litigation machinery has been substantially invoked. The parties, particularly Novell, have made substantial use of the Court's resources. They have briefed and litigated, and the Court has adjudicated, SCO's motion to remand, Novell's first motion to dismiss, Novell's second motion to dismiss, and Novell's request to convert the second motion to dismiss into a motion for summary judgment. The Court has twice entertained lengthy oral arguments on Novell's motions. After the Court resolved the second of Novell's two motions to dismiss and/or for summary judgment, the parties developed and filed the Attorneys' Planning Report, and the Court set deadlines and a June 2007 trial date. In addition, there has been extensive discovery. SCO has produced substantially all documents in its possession potentially relevant to the claims and defenses in this litigation, including those related to the copyright-ownership dispute.[5] SCO

---

[5] In its First Set of Requests for Production of Documents (the "First Request"), dated December 6, 2005, Novell requested "all SCO document productions" in the IBM Litigation "concerning the claims and defenses at issue in this litigation." (First Request, Exh. 2, at 3-4.) In January 2006, SCO produced to Novell substantially all documents in its possession responsive to that request (the vast majority of documents in its possession related to the claims and defenses in the Novell litigation). On February 8 and 9, SCO resent those documents in a different format, as per Novell's request, along with additional supplemental documents SCO had produced to IBM in the interim.

In December 2005, SCO had moved for leave to file its second amended complaint, based in part on the parties' agreement in the Attorneys' Planning Report of December 1, 2005, that "the cutoff date for amending pleadings is March 7, 2006." On February 3, SCO filed its second amended complaint with leave of the Court. Thus, by any account, by the time Novell received SCO's productions from the IBM Litigation on February 8 and 9, Novell was well aware of the new claims in SCO's second amended complaint. Novell had nearly three months from the date of SCO's original production, and over two months from the re-production, to review those documents before turning to arbitration.

also produced its Disclosure of Material Misused by IBM, as well as transcripts of the depositions of the APA's chief negotiators. Novell thus demands arbitration after having the opportunity to review the core evidence available for dispositive motions and trial.

Novell's foregoing invocation of the "judicial machinery" is more than sufficient to establish waiver. See, e.g., S & R Co. of Kingston v. Latona Trucking, 159 F.3d 80, 85 (2d Cir. 1998) (waiver on the basis of discovery, motion practice, and attorney conferences); Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 26 (2d Cir. 1995) (waiver where party filed numerous pleadings, none of which asserted the defense of arbitration); S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (same, parties filed motions and took discovery); Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497-98 (5th Cir. 1986) (same, discovery taken); Robinson v. Food Serv. of Belton, 415 F. Supp. 2d 1221, 1225 (D. Kan. 2005) (same, counterclaim filed, discovery taken).

Third, Novell delayed for well over two years before having SuSE assert its purported right to arbitration and then asserting a secondary defense that Novell could have asserted when the action was brought. Waiver lies for far shorter delays. See, e.g., Leadertex, 67 F.3d at 26 (seven months); S & H Contractors, 906 F.2d at 1514 (eight months); Miller Brewing, 781 F.2d at 497-98 (eight months); Robinson, 415 F. Supp. 2d at 1225 (ten months). Indeed, waiver can lie even where, unlike here, the defendant does raise arbitrability as an affirmative defense in his answer, if a motion for stay is not filed promptly. Reid Burton, 614 F.2d at 703; Robinson, 415 F. Supp. 2d at 1226.

Fourth, in July 2005, without even raising an arbitration defense in its answer, Novell filed a seven-count counterclaim against SCO without asking for a stay of the proceedings.

Novell's slander-of-title claim is a mirror of SCO's original slander claim. "The counterclaim, at best, indicates defendants' intent to litigate this case in federal court. At worst, it indicates a waste of the court's resources if defendants intended to eventually compel arbitration. Either way, the counterclaim is strong evidence defendants intended to waive their right to compel arbitration." Id. at 1226; see also Radiator Specialty Co. v. Cannon Mills, 97 F.2d 318, 319 (4th Cir. 1938) (assertion of counterclaim constitutes not only submission to but also express invocation of the court's jurisdiction) (cited with approval by the Tenth Circuit in Reid Burton, 614 F.2d at 703). Novell's counterclaims constitute an unmistakable decision to invoke and accept this Court's jurisdiction to hear all of the issues raised therein.

Fifth, numerous important intervening steps have taken place in this case. This factor includes a party's decision to take advantage of judicial discovery procedures not available in arbitration. Metz, 39 F.3d at 1489. In response to Novell's production requests, and despite Novell's failure to reciprocate other than by its small production on the date of this memorandum, SCO has produced substantially all documents in its possession relevant to the claims and defenses in this litigation. Such extensive discovery is not available in arbitration. Importantly, at Novell's request, SCO produced to Novell almost all of the documents it has produced in the IBM case – which materials Novell would not be entitled to in the arbitration. Novell has also subpoenaed documents from third parties, even after moving to stay SCO's claims. As set forth in the foregoing cases addressing the use of the "judicial machinery," waiver lies where substantial discovery has been taken before a demand for arbitration is made.

This factor takes on particular significance in this case, because Novell expressly seeks to use all of the discovery SCO has produced in this case in the arbitration – a forum in which (as

noted) Novell/SuSE could not obtain from SCO even a fraction of the discovery SCO has

produced to Novell.  Before Novell filed its motion to stay, counsel for Novell and SCO had

agreed to the terms of a protective order for this case.  Shortly after filing the motion to stay –

and without having produced any documents to SCO – counsel for Novell proposed to modify

the protective order to say that the parties could use any of the documents produced in this case

in the Swiss arbitration.  (Exh. 8.)  The request confirms (if the simultaneous filing of Novell's

motion and the arbitration were not sufficient confirmation) that Novell controls SuSE.  The

request exemplifies a party seeking to take advantage of the judicial discovery procedures in

federal court that would not be available to that party in the arbitration.  On the basis of the

request alone, this Court should find that this factor weighs entirely in favor of SCO.[6]

Sixth, Novell's substantial delay has prejudiced SCO.  A party suffers prejudice if, before

a stay motion is filed, his opponent utilizes "procedures not available in arbitration, such as

common discovery steps," and forces expenditure of "the time and effort necessary to participate

in full litigation."  MidAmerica, 886 F.2d at 1261; see also Louis Dreyfus Negoce S.A. v.

Blystad Shipping & Trading Inc., 252 F.3d 218, 229-30 (2d Cir. 2001) (stating that "prejudice as

defined by our cases refers to the inherent unfairness – in terms of delay, expense, or damage to a

party's legal position – that occurs when a party's opponent forces it to litigate an issue and later

seeks to arbitrate that same issue").  Novell has fought and lost two dismissal motions, obtained

nearly a million pages of documents, answered and counterclaimed, demanded a jury trial,

---

[6] When counsel for SCO initially responded to the e-mail request by pointing out that Novell had not
produced any documents in the litigation, counsel for Novell promised an imminent production of
documents.  (Exh. 5.)  Novell's promised production serves to underscore the discovery produced by
SCO in the case to date, and does nothing to diminish Novell's effort to use this litigation to obtain a
wealth of material it could not have obtained discovery of in the Swiss arbitration.

obtained a trial date, and actively participated in all proceedings. This "litigation has progressed too far," at significant expense, to "shift part of the responsibility for resolution elsewhere"; "after a tardy change of tactics," Novell may not "further complicate and delay the controversy by partially changing the forum and the rules." Kafka v. Bellevue Corp., No. 90 C 6709, 1991 WL 246520, at *3 (N.D. Ill. Nov. 13, 1991) (Exh. B). In addition, although Novell cannot use the documents produced in this case in the arbitration, there is of course no way to prevent the use of the substantial information therein in the arbitration.

## II.    SCO'S CLAIMS ARE NOT ARBITRABLE AND ARE NOT BROUGHT UPON ANY ISSUE REFERABLE TO ARBITRATION

SCO's claims are outside the scope of the arbitration clause and the relevant section of the FAA. That is relevant because there is no basis in the precedent for Novell to obtain its requested stay of claims that are not arbitrable and not brought upon any issue referable to arbitration. (See Part III, below.)

A.    Applicable Legal Standards

Arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Cummings v. Fedex Ground Package Sys., Inc., 404 F.3d 1258, 1262 (10th Cir. 2005). "Because arbitration is a matter of contract, in evaluating whether a claim is subject to arbitration, the language of the arbitration clause dictates whether a particular claim is subject to arbitration." Altresco Philippines, Inc. v. CMS Generation Co., No. 96-1080, 1997 WL 186257, at *3 (10th Cir. April 17, 1997) (Exh. C). In the absence of explicit contractual language to the contrary (and there is none in the UL

agreements), issues of arbitrability are decided by the court, not by the arbitrators. Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002).

Novell cites the MTA and the JDC, which both provide for arbitration of "disputes arising from this [agreement] or from contracts regarding its performance." Neither contract contains the broader "relating to" arbitration clause. Novell seeks relief under the Federal Arbitration Act, 9 U.S.C. § 3, which requires a stay if a suit is "brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing." None of SCO's claims "arises from" the MTA or the JDC or from any contract "regarding the performance" of the MTA or JDC; nor did SCO bring its claims "upon an issue referable to arbitration." SCO's claims arise under federal law, state law, and/or the APA and TLA, which are 1995 agreements between different parties, with different applicable law, with no connection at all to UnitedLinux or the UL agreements, and with no arbitration clause.[7]

In the Tenth Circuit, to "determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a Court should undertake a three-part inquiry." Cummings, 404 F.3d at 1261.

> First, recognizing there is some range in the breadth of arbitration clauses, the court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will

---

[7] See Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1358-59 (Fed. Cir. 2004) (affirming district court's denial of motion to compel arbitration under ICC because court was required to determine whether agreement had expired); Altresco, 1997 WL 186257, at *5 (denying motion to stay pending ICC arbitration with respect claims of intentional interference with contract and unfair competition because those claims were not "related to" or "connected with" contracts with arbitration clauses); United Int'l Holdings, 1996 WL 55657, at *4 (where claims were "outside the scope" of the agreement in question, motion to compel ICC arbitration was appropriately denied).

<u>generally be ruled beyond its purview</u>.  Where the arbitration clauses is broad,
there arises a presumption of arbitrability and arbitration of even a collateral
matter will be ordered if the claim alleged implicates issues of contract
interpretation or the parties' rights and obligations under it.

<u>Id.</u> (emphasis in original).  Under this analysis, SCO's claims clearly are not arbitrable.  Where

SCO's claims are not arbitrable, the asserted basis for Novell's motion reduces to its contention

that this Court should stay this case on grounds of efficiency – an argument that the relevant case

law plainly rejects.  (<u>See</u> Part III, below.)

       B.     The UL Arbitration Clause is Narrow, and SCO's Claims
             <u>On Their Face Are Not Within the Purview of the Clause</u>

The arbitration clause at issue here is narrow.  <u>See, e.g.</u> <u>Lebanon Chem. Corp. v. United</u>

<u>Farmers Plant Food, Inc.</u>, 179 F.3d 1095, 1100-01 (8th Cir. 1999) ("arising from" was "not a

broad arbitration clause" due to absence of "the additional and more general phrase '*relating to*'"

(emphasis in original)); <u>Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.</u>, 139 F.3d

1061, 1067 (5th Cir. 1998) ("courts distinguish 'narrow' arbitration clauses that only require

arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing

disputes that 'relate to' or 'are connected with' the contract"); <u>Tracer Research Corp. v. Nat'l</u>

<u>Envtl. Servs. Co.</u>, 42 F.3d 1292, 1295 (9th Cir. 1994) (clause that covers disputes "arising under"

an agreement, but omits "relating to" language, is "narrowly circumscribe[d]" to cover only

disputes "relating to the interpretation and performance of the contract itself"); <u>Mediterranean</u>

<u>Enters., Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1464 (9th Cir. 1983) ("arising hereunder" and

"arising under" were "relatively narrow as arbitration clauses go"); <u>Prudential Lines, Inc. v.</u>

<u>Exxon Corp.</u>, 704 F.2d 59, 64 (2d Cir. 1983) ("arise under" contained "sufficient words of

limitation so that [it] must be construed to be 'narrow'"); <u>Coffman v. Provost Umphrey Law</u>

Firm, L.L.P., 161 F. Supp. 2d 720, 725 (E.D. Texas 2001) ("arising under" was "a narrow clause, only requiring the arbitration of Plaintiff's claims which literally arise under the contract").

Accordingly, under the first and second steps of the Cummings analysis, SCO's claims on their face are not within the purview of the arbitration clause. Each claim arises from the parties' rights and obligations under unrelated contracts, the copyright laws, or state laws – not from the UL contracts.

In Tracer Research, for example, a licensor brought a misappropriation claim alleging that its former licensee continued to use secrets obtained under a terminated licensing agreement. 42 F.3d at 1293. The court rejected the licensee's contention that the claim was arbitrable because it would not have arisen "but for" the agreement. Id. at 1295. The court reasoned that the claim "does not require interpretation of the contract and is not arbitrable" because, if proved, the former licensee's "continuing use of the [licensor's] trade secrets would constitute an independent wrong from any breach of the licensing and non-disclosure agreements." Id. Similarly, none of SCO's claims requires an interpretation of the UL contracts. Each claim alleges wrongs independent of any breach of the UL contracts.

C.    SCO's Claims Are Also Not Arbitrable Because
       They Are Not Even "Collateral" to the UL Contracts and
       Are Plainly Not Intended To Be Arbitrable

SCO's claims are not subject to arbitration or brought upon any issue referable to arbitration, even if the arbitration clause at issue were construed as broad. In that circumstance, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and

obligations under it." <u>Cummings</u>, 404 F.3d at 1261. SCO's claims, however, overcome this presumption in at least two ways.

<u>First</u>, SCO's claims are not "collateral" to the UL contracts. A collateral matter arises from a collateral agreement. "A collateral agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause." <u>Prudential Lines</u>, 704 F.2d at 64. It is undisputed that the agreements that give rise to SCO's claims, the APA and TLA, are not side agreements to, or otherwise connected with, the UL contracts. The APA and TLA governed transactions entirely unrelated to UnitedLinux.

<u>Second</u>, SCO's claims are not referable to arbitration. Despite the presumption in favor of arbitration, "the duty to arbitrate remains one assumed by contract," and the courts "will not compel parties to arbitrate disputes unless they have agreed to do so." <u>Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l., Ltd.</u>, 1 F.3d 639, 641 (7th Cir. 1993). Only Novell's defense, <u>not</u> SCO's claims, arises from the UL contracts. Novell cites <u>Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.</u>, 372 F.3d 339 (5th Cir. 2004), but in that case the Fifth Circuit specifically refused to analyze the <u>defenses</u> the defendants had invoked, noting that their "<u>defenses</u> do not influence a determination of whether [plaintiff's] <u>claims</u> against [defendants] are based on the same operative facts" as the arbitration agreement. <u>Id.</u> at 345 (emphasis added).

The APA and the TLA, moreover, have their own dispute-resolution language. The APA contains a merger clause in which the parties agreed that the APA constituted "the entire agreement among the parties with respect to the subject matter hereof." (APA § 9.5.) The merger clause evidences the parties' intent not to include any terms not expressly incorporated

into the APA, especially terms of a subsequent unrelated contract that waive the parties' right to litigate disputes about the APA in court.

The Tenth Circuit's decision in <u>Summit Contractors, Inc. v. Legacy Corner, L.L.C.</u>, 147 Fed. Appx. 798 (10th Cir. 2005), reinforces the foregoing conclusion. Summit agreed to build an apartment complex for Legacy under a construction contract (the "Contract"), which incorporated an arbitration clause. On the very same day, the same parties also signed an agreement (the "Agreement") containing a forum-selection clause for Oklahoma. Even though the two agreements were entered into at the same time and related to the same subject matter, the court concluded that the "clear and unambiguous language indicates that the parties did not intend to arbitrate issues arising under the Agreement." 147 Fed. Appx. at 801. The Agreement's forum-selection clause was "compelling evidence against an intent to arbitrate breaches of the Agreement." <u>Id.</u> at 802. It follows that the arbitration clause of the 2002 UL agreements, signed years later between different parties on unrelated subject matter, cannot affect the parties' right to litigate in court breaches of the APA and TLA.


## III. THE COURT SHOULD NOT STAY THE NON-ARBITRABLE CLAIMS PENDING ARBITRATION

SCO's claims are not arbitrable and are not brought upon any issue referable to arbitration. At most Novell can claim only a <u>partial</u>, <u>secondary</u> <u>defense</u> to <u>parts</u> of SCO's claims on the basis of the UL agreements. But Novell does not (and, based on SCO's research, cannot) cite any authority for the proposition that a potential <u>defense</u> requires a stay of a non-arbitrable claim.

Novell cites <u>Turner v. Bain & Co.</u>, No. 97 C 4755, 1997 WL 638521, at *5, but in that case the court actually grounded its decision to stay litigation in the fact that plaintiff's <u>claims</u> each "have their origin in the agreement itself" and those claims "depend on the validity" of the contract that was the subject of the arbitration. <u>Id.</u> at *5 (N.D. Ill. Oct. 8, 1997) (Exh. E); <u>cf.</u> <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 207 (2004) (suit does not "arise under" federal law because defendant has a defense based on federal law); <u>see also</u> <u>Long v. Silver</u>, 248 F.3d 309, 319 (4th Cir. 2001) (citing precedent holding that "when the <u>proof of the claim</u> is rooted in the existence or terms of the agreement, the agreement is significantly related to the claim." (emphasis added)). In short, Novell cites no case that would justify a stay (let alone mandate a stay) where none of SCO's claims is rooted in the UnitedLinux contracts.

As to any claims that (contrary to SCO's views) are "brought upon" arbitrable issues, moreover, "the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 225 (1985) (White, J., concurring). Because a stay deprives the plaintiff of his "contracted for day in court," it is an abuse of discretion to stay non-arbitrable claims on grounds of "judicial efficiency." <u>CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.</u>, 381 F.3d 131, 138-39 (3d Cir. 2004).

The courts have adopted Justice White's rationale and imposed a "heavy presumption" against a stay, a presumption that can only be overcome by proof of "compelling reasons" for delaying litigation of the non-arbitrable claims. <u>Chang v. Lin</u>, 824 F.2d 219, 223 (2d Cir. 1987). As the Third Circuit has explained:

> We recognize the potential for judicial efficiency that lies in possible collateral estoppel because the arbitrator could make determinations relevant to CTF's federal claims. However, we have already explained that staying litigation for that reason effectively denies CTF its contracted for day in court. The right to

> litigate would mean little if the substance of the litigation, when CTF's day in court finally dawns, may be driven by something that may have occurred during arbitration.

CTF Hotel, 381 F.3d at 138-39; accord Chang, 824 F.2d 219 at 223 (stay was abuse of discretion because there was no evidence to rebut heavy presumption); Tracer Research, 42 F.3d at 1294 (court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency"); Meyer v. Doerge, No. 02 C 8182, 2003 WL 21696998, at *4 (N.D. Ill. July 17, 2003) (Exh. D) (no rebuttal of "heavy presumption" and no "compelling reasons" for stay); Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., 698 F. Supp. 504, 520 (S.D.N.Y. 1988) ("There are no 'compelling reasons' to stay the litigation; the non-arbitrable claims will proceed in this Court."); Steinberg v. Illinois Co., 635 F. Supp. 615, 620 (N.D. Ill. 1986) (following Justice White); Smith v. Pay-Fone Systems, 627 F. Supp. 121, 126 (N.D. Ga. 1985) (same).

Novell's cases, to the extent they suggest that non-arbitrable claims may be stayed simply to avoid overlapping proceedings (such as where an arbitral ruling may "influence" the judicial decision or if the resolution of non-arbitrable issues may "depend on" an arbitral award), are not in accord with the law of the Tenth Circuit and the weight of authority from other circuits. A plaintiff has the right to judicial determination of non-arbitrable claims, and "the mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case." Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 785 (10th Cir. 1998). The "litigation must proceed in a 'piecemeal' fashion if the parties intended that some matters, but not others, be arbitrated." Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1517 (10th Cir. 1995) (emphasis added).

Novell's sole basis for requesting a stay is thus to say that some issues in this case may be rendered "moot" if the arbitral decision favors SuSE and is given collateral estoppel effect here.[8] This is merely the "judicial efficiency" argument rejected in the foregoing cases. The argument is particularly attenuated because the arbitration concerns only one of Novell's secondary defenses to SCO's claims – that is (as noted above), the asserted basis for the arbitration directly undercuts Novell's central defense that SCO supposedly never owned any UNIX copyrights. And, unlike the cases cited by Novell, where the defendants moved for a stay promptly after suit was filed and thus had an actual judicial efficiency argument, here the parties have been in litigation for over two years, there has already been substantial discovery and motion practice, and this Court is familiar with the issues. (See Part I, above.)

It bears emphasis, moreover, that a ruling in favor of Novell in this case (such as a ruling that SCO did not acquire the UNIX copyrights under the APA) would moot the Swiss arbitration; and that even if SuSE were to prevail in the arbitration, and even if the arbitral ruling were to be given the maximum conceivable collateral-estoppel effect, all five of SCO's claims would remain for adjudication on the merits, as summarized in the following table.

---

[8] It is far from certain that any arbitral ruling from the ICC will have such effect. See Dean Witter, 470 U.S. at 223 ("[A]rbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings."); Klay v. United Healthgroup, 376 F.3d 1092, 1110 (11th Cir. 2004) (courts use "case-by-case approach to determining the collateral estoppel effects of arbitration on federal claims").

| SCO Claim | Claim Remaining If SuSE Prevails |
|---|---|
| Count I – Slander of Title | SCO claims that Novell has slandered SCO's title in all of the UNIX copyrights. The UNIX-copyrighted material in UnitedLinux 1.0 is only a part of those copyrights. Accordingly, however the arbitration is resolved, SCO's claim properly will remain based on SCO's ownership of all of the UNIX copyrights and technology not included in UnitedLinux 1.0. |
| Count II – Breach of Contract | Even if SCO were (as SuSE requests) "divested" of ownership of some of the Licensed Technology (as defined in the APA and TLA) by its inclusion in UnitedLinux 1.0, Novell still is in breach of its obligation not to use such technology in a "directly competitive" product or in a product wherein such technology "constitute[s] a primary portion of the value" of that product. APA §1.6; TLA § II.A.(2). |
| Count III – Alternative Claim for Specific Performance | Even if SCO were (as SuSE requests) "divested" of its ownership of some copyrighted material by its inclusion in UnitedLinux 1.0, SCO is still entitled to transfer of copyrights and other rights in material not included in UnitedLinux 1.0. |
| Count IV – Copyright Infringement | Even if SCO were (as SuSE requests) "divested" of its ownership of some copyrighted material by its inclusion in UnitedLinux 1.0, released in December 2002 and based on Linux Kernel 2.4, SCO's infringement claim properly will remain based on improper contributions to post-2002 versions of Linux distributed by Novell. Linux kernel 2.6, for example, contains misappropriated UNIX technology that was not in pre-2003 versions of the 2.4 kernel. |

| Count V – Unfair Competition | Even if SCO were (as SuSE requests) "divested" of its ownership of some copyrighted material by its inclusion in UnitedLinux 1.0, SCO's claim would properly and primarily remain based on Novell's false claims that it retained ownership of the copyrights, its improper effort to "waive" IBM's violations of SCO's rights, and other conduct unrelated to UnitedLinux 1.0. |
| --- | --- |

Accordingly, the Court should proceed with resolution of claims and issues the parties did not agree to arbitrate, in accordance with the agreed-upon scheduling order. Because Novell has offered no compelling reason to overcome the heavy presumption against a stay of non-arbitrable issues, and because a stay would be contrary to the interest of judicial efficiency and unfairly prejudicial to SCO, there is no valid reason for any stay.

## CONCLUSION

SCO respectfully submits, for the foregoing reasons, that the Court should deny Novell's Motion to Stay Claims Raising Issues Subject to Arbitration.

DATED this 26th day of May, 2006.

By:  /s/ Brent O. Hatch

HATCH JAMES & DODGE
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Edward Normand

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of May, 2006, I caused to be served a true

and correct copy of the foregoing by CM/ECF to the following:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482


/s/ Brent O. Hatch
_____