

76 F.3d 393 (Table)                                                                      Page 1
76 F.3d 393 (Table), 1996 WL 55657 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 76 F.3d 393, 1996 WL 55657 (10th Cir.(Colo.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
UNITED INTERNATIONAL HOLDINGS, INC., a Delaware corporation, and UIH Asia Investment Co., a Colorado general partnership, Plaintiffs-Appellees,
v.
WHARF (HOLDINGS) LIMITED, a Hong Kong Company; Wharf Communications Investments Limited, a Hong Kong company; Wharf Cable Limited, a Hong Kong company; and Stephen NG, a Hong Kong citizen, Defendants-Appellants.
**No. 95-1184.**

Feb. 9, 1996.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before ANDERSON and McWILLIAMS, Circuit Judges, and HOLMES, [FN**] District Judge.

FN** The Honorable Sven E. Holmes, United States District Court for the Northern District of Oklahoma, sitting by designation.

**1 We must decide in this case whether an arbitration clause in a technical cooperation agreement mandates arbitration of a dispute between plaintiffs/appellees United International Holdings, Inc. ("UIHI") and UIH Asia Investment Co. ("UIH Asia"), a Colorado general partnership of which UIHI is the majority owner and managing partner, and defendants/appellants The Wharf (Holdings) Limited ("Wharf Holdings"), Wharf Communications Investments Limited ("Wharf Communications"), Wharf Cable Limited ("Wharf Cable"), and Stephen Ng, an officer in each of the defendant Wharf companies. The district court held it did not, and summarily denied defendant Wharf Cable's motion to compel arbitration. Defendants have filed a motion to expedite this appeal, which has been referred to this panel. A jury trial is set to commence in this case in the federal district court in Colorado on February 17, 1997. The Final Trial Preparation Conference is set for January 17, 1997. The motion to expedite this appeal is now moot. We affirm the district court's order denying Wharf Cable's motion to compel arbitration.

BACKGROUND

UIHI is a Delaware company based in Denver which provides technical services to cable television systems outside the United States. UIH Asia is a Colorado general partnership of which UIHI is the majority owner and managing partner.

In 1991, Wharf Holdings and its 100% owned subsidiary, Wharf Communications, both Hong Kong companies, explored the possibility of applying for a cable television franchise in Hong Kong. The deadline for submitting the franchise application to the Hong Kong government was September 30, 1992. From late 1991 through the fall of 1992, the Wharf companies and UIHI discussed the possibility of engaging in a cooperative venture between those companies and a subsidiary of NYNEX, one of the "Baby Bell" telephone companies. As the deadline for the submission of the application approached, and the parties were unable to agree on the terms of the venture, they entered into two separate Technical Cooperation Agreements, one between Wharf Cable and UIHI and one between Wharf Cable and NYNEX. The Technical Cooperation Agreement between Wharf Cable and UIHI ("TCA") is directly relevant to this case.

The TCA provided that, if Wharf Cable got the Hong Kong cable franchise, UIHI would provide a variety of technical services in exchange for quarterly fees. It further provided that written notice had to be given of "any additional or supplemental agreements to this Agreement" and that "[a]dditional oral agreements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dockets.Justia.com

Case 2:04-cv-00139-DAK-BCW   Document 122-10   Filed 05/26/2006   Page 2 of 4

76 F.3d 393 (Table)                                                                                                                  Page 2
76 F.3d 393 (Table), 1996 WL 55657 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 76 F.3d 393, 1996 WL 55657 (10th Cir.(Colo.)))**

are invalid." Agreement ¶ ¶ 14.3, 14.8, 14.9, Appellants' App. Vol. II at 497-98. It also contained the following clauses relating to arbitration of disputes:

> 13.1 If any dispute, controversy or difference arises between the parties out of, or in relation to, this Agreement or for the breach thereof, the parties shall first attempt in good faith to resolve amicably such dispute, controversy or difference.
>
> **\*\*2** 13.2 If such attempt is unsuccessful, such dispute, controversy or difference shall be resolved by arbitration in [sic] or any other place agreed upon by the parties. Notwithstanding the first sentence, any disputes arising from, or in connection with this Agreement shall be arbitrated in Hong Kong. Such arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce....

Agreement ¶ ¶ 13.1, 13.2, *id.* at 497. Most provisions of the TCA, but not the paragraph concerning arbitration, were "conditional" upon the award of the franchise. Agreement ¶ 2, *id.* at 488.

Wharf Cable submitted its franchise application, including the TCA, on September 30, 1992, and was awarded the franchise by the Hong Kong government on June 1, 1993. Apparently, throughout their negotiations, UIHI had always expressed an interest in investing in the Wharf Cable project, thereby becoming an equity participant in the Hong Kong cable television venture. [FN1] While there were early discussions concerning an investment in Wharf Cable, the parties eventually resolved, as they indicated at oral argument of this case, that the investment would be through Wharf Cable's newly formed parent, Cable Network Communications Limited ("CNCL"). [FN2] They were never, however, able to agree and reduce to a written agreement the terms of such an investment. A major disputed factual question in this case is whether the parties nonetheless entered into an oral contract concerning UIHI's acquisition of a 10% interest in CNCL.

> FN1. UIHI and UIH Asia claim that they always seek an ownership interest in international cable television systems for which they provide technical assistance: "UIHI lends its unique expertise in international [cable television systems] *only* to cable projects in which it is an investor or in which it owns the right to invest." Appellees' Br. at 8. Thus, they assert that it was clear all along that an ownership interest by UIHI in a Wharf company was essential to the relationship.

> FN2. The final structure of the Wharf group was as follows: Wharf Holdings was the 100% owner of Wharf Communications, which was the 100% owner of CNCL, which was the 100% owner of Wharf Cable.

When the Wharf group continued to refuse to permit UIHI's 10% investment, UIHI and UIH Asia filed a twelve-count complaint in the federal district court in Colorado, against Wharf Cable, Wharf Communications, Wharf Holdings, and Stephen Ng, claiming that they had breached an oral contract giving plaintiffs an option to purchase a 10% interest in CNCL, Wharf Cable's parent, in exchange for various services performed in connection with the development and implementation of the Hong Kong cable television franchise. Plaintiffs' averred in their complaint that, pursuant to this oral contract, they provided a variety of technical services, including designing cable and information systems, assisting with the negotiation of contracts, consulting on business strategies, and assisting with the hiring of employees and the arrangement of financing. UIHI apparently provided these services over a period of time, commencing before the franchise application was made and continuing beyond the time when the franchise was awarded. Among the claimed violations were violations of the federal and Colorado securities laws, breach of contract, breach of fiduciary duty, fraud and negligent misrepresentation, promissory estoppel, unjust enrichment, and civil conspiracy. Wharf Holdings and Wharf Communications are parties to all of these claims. Wharf Cable was a named defendant in four claims-- promissory estoppel and unjust enrichment, brought alternatively to the breach of contract claim, and common law fraud and conspiracy. Stephen Ng was named in his individual capacity in five claims, including securities and common law fraud and promissory estoppel. At oral argument, plaintiffs stated that only one claim--for unjust enrichment, brought alternatively to their main claims--now remains against Wharf Cable.

**\*\*3** Defendant Wharf Cable moved to compel arbitration under the arbitration clause of the TCA. The other Wharf companies did not join in the motion. The district court denied the motion, and Wharf Cable brought this appeal, seeking interlocutory review pursuant to the Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

76 F.3d 393 (Table) Page 3
76 F.3d 393 (Table), 1996 WL 55657 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 76 F.3d 393, 1996 WL 55657 (10th Cir.(Colo.)))**

Arbitration Act, 9 U.S.C. § 16(a). The other Wharf defendants also initially appealed the district court's denial of their motion to dismiss plaintiffs' claims on forum non conveniens grounds. They have now voluntarily withdrawn the forum non conveniens issue from this appeal. *See* Appellants' Br. at 3 n. 1.

DISCUSSION

"We review a district court's grant or denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court." *Armijo v. Prudential Ins. Co.,* Nos. 94-2131, 94-2132, 94-2257, 1995 WL 743860l, at *2 (10th Cir.Dec.15, 1995); *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1513 (10th Cir.1995).

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 3, a district court must stay judicial proceedings where a written agreement provides that the subject of the litigation must be submitted to arbitration. " 'There is a strong federal policy favoring arbitration for dispute resolution.' " *Coors Brewing Co.,* 51 F.3d at 1514 (quoting *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 465 (10th Cir.1988)). This policy is "particularly strong in the context of international transactions." *Id.* If there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.' " *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co.,* 528 F.2d 252, 254 (10th Cir.1976)).

However, arbitration is a contractual matter, and parties may not be required to submit to arbitration claims which they have not contractually agreed to submit. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986); *see Coors Brewing Co.,* 51 F.3d at 1516. Thus, as we stated in *Coors Brewing Co.,* only claims having "a reasonable factual connection to the contract" are arbitrable. *Id.; cf. Bridgestone/Firestone, Inc. v. Local Union No. 998,* 4 F.3d 918, 922 (10th Cir.1993) (holding a dispute not subject to arbitration where there was "no way in which the arbitration clause ... [could] be stretched to cover" the subject matter of the dispute). However, we have also held that a nonsignatory to an arbitration agreement may nonetheless enforce the agreement if he is a third party beneficiary. *O'Connor v. R.F. Lafferty & Co.,* 965 F.2d 893, 901 (10th Cir.1992). "An intent to benefit the third party must be apparent from the construction of the contract in light of all surrounding circumstances to qualify that party as a third party beneficiary." *Id.*

Additionally, the Supreme Court has specifically held that courts may separate claims which are subject to arbitration from those which are not. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985) (observing that "the preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation"); *Coors Brewing Co.,* 51 F.3d at 1517 (noting that "the Supreme Court has held that litigation must proceed in a 'piecemeal' fashion if the parties intended that some matters, but not others, be arbitrated").

**\*\*4** Appellant Wharf Cable argues that the broad language of the arbitration clause in the TCA, interpreted in light of the strong federal policy favoring arbitration, encompasses the dispute between the parties in this case, including any allegations based upon the claimed oral contract involving the 10% investment in CNCL, because they "involve matters related to" the TCA-- i.e., technical services to be provided for Wharf Cable by UIHI in exchange for some kind of compensation. They further argue that, even though only one of the two plaintiffs in this litigation (UIHI) and one of the four defendants (Wharf Cable) were signatories to the TCA, "UIHI and Wharf Cable were the central players and all other parties simply affiliates." Appellants' Br. at 27. They also argue that "basic principles of contract and agency law" mandate that all the named parties in the litigation are bound by the TCA.

Plaintiffs/appellees, UIHI and UIH Asia, respond that the TCA was signed only by Wharf Cable and UIHI, whereas the litigation in this case is "primarily" against Wharf Holdings and Wharf Communications, nonsignatories to the TCA. Appellees' Br. at 1. They also assert that plaintiffs/appellees' claims "arise from events that began before the alleged arbitration agreement was drafted, continued long after that 'agreement' even theoretically could have become operative, and did not conclude until after the parties rejected 'activating' that agreement." *Id.*

We hold that, notwithstanding the policy favoring broad interpretation of arbitration clauses, we simply cannot stretch the arbitration clause contained in the TCA to encompass the claims asserted in this litigation. The claims are outside the scope of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

76 F.3d 393 (Table)   Page 4
76 F.3d 393 (Table), 1996 WL 55657 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 76 F.3d 393, 1996 WL 55657 (10th Cir.(Colo.)))**

TCA, and they are primarily against parent companies of Wharf Cable, not against Wharf Cable itself, the only signatory to the TCA. We therefore affirm the district court's denial of Wharf Cable's motion to compel arbitration.

The TCA was a specific agreement under which UIHI would provide a variety of technical services to Wharf Cable upon its receipt of the Hong Kong cable television franchise. In exchange for these technical services, UIHI was to receive quarterly fees. The TCA specifically provided that the relationship of UIHI to Wharf Cable was that of an independent contractor and UIHI was to have "no right or interest" in Wharf Cable. Agreement ¶ 7, Appellants' App. Vol. II at 493-94. The arbitration clause covered disputes between the parties to the TCA (UIHI and Wharf Cable) arising out of or in relation to the TCA. The TCA contains no reference to Wharf Cable's parent companies. The allegations in this litigation, by contrast, are by UIHI and its subsidiary, UIH Asia, against Wharf Cable, two of its parent companies, and an individual who was an officer in each Wharf company, and involve alleged fraud, misrepresentations, securities violations, contractual violations, breach of fiduciary duties, conspiracy, unjust enrichment, and promissory estoppel in connection with a claimed oral contract permitting plaintiffs to obtain an ownership interest in Wharf Cable's parent, CNCL. They do *not* involve the performance by UIHI of technical services under the TCA. The mere fact that UIHI provided services to Wharf Cable of the same general type as were contemplated under the TCA, on its claimed expectation of receiving an ownership interest in Wharf Cable's parent, does not, by itself, provide the requisite "factual connection to the contract." *Coors Brewing,* 51 F.3d at 1516. [FN3] The Supreme Court has said that allegations must "touch matters" covered by the arbitration agreement in order to be subject to arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 624 n. 13 (1985). The array of claims asserted against the Wharf group in this case are substantially different from claims relating to technical services provided under the TCA.

> FN3. Furthermore, only Wharf Cable sought to compel arbitration of plaintiffs' claims. The other Wharf companies, non-signatories to the TCA, did not seek to compel arbitration. Repeated references to the other Wharf companies as "affiliates" does not change the fact that they neither signed, nor were referred to in, the TCA.

**\*5** Moreover, the vast majority of the claims are against defendants *other* than Wharf Cable. At oral argument, Wharf Cable argued strenuously that it, Wharf Cable, was the key player throughout the entire relationship, even though it was a named defendant in only a few claims, and now is a named defendant in only one, and even though it is a subsidiary of other Wharf group companies. They relied in part on a letter dated November 5, 1993 addressed to Stephen Ng at Wharf Cable, and which referred to UIHI's relationship with Wharf Cable and the "Wharf Cable project." *See* Appellants' App. at 324-25. They overlook the fundamental point, however, that Wharf Cable was a separate legal entity from the other Wharf companies, and Wharf Cable alone, not its affiliates or parent companies, signed the TCA. *Cf. ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1461 (10th Cir.1995) ("Courts do not lightly pierce the corporate veil 'even in deference to the strong policy favoring arbitration.' ") (quoting *Califano v. Shearson Lehman Bros., Inc.,* 690 F.Supp. 1354, 1355 (S.D.N.Y.1988)). [FN4]

> FN4. The Wharf group has provided no evidence suggesting that Wharf Cable should *not* be treated as a separate legal entity.

In sum, we will not, in effect, rewrite the TCA and its arbitration clause to encompass claims wholly unrelated to the TCA and involving parties who did not sign the TCA, and were never mentioned in that agreement. Those claims are too remote, in substance and in distance, from the TCA to compel their arbitration pursuant to that agreement. The policy favoring broad interpretation of arbitration clauses does not permit wholesale redrafting of such clauses.

For the foregoing reasons, the decision of the district court denying the motion to compel arbitration is AFFIRMED.

76 F.3d 393 (Table), 1996 WL 55657 (10th Cir.(Colo.)), Unpublished Disposition

END OF DOCUMENT