LEXSEE 2002 U.S. DIST. LEXIS 22284

J.M. THIES, et al., Plaintiffs, v. LIFEMINDERS, INC., et al., Defendants.

CIVIL ACTION No. 02–2119–KHV

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

2002 U.S. Dist. LEXIS 22284

November 6, 2002, Decided

**DISPOSITION:** [*1] Defendants' motion to dismiss individual defendants and to compel arbitration and stay action, or alternatively dismiss the complaint sustained in part; individual defendants dismissed; claims stayed.

**COUNSEL:** For J M THIES, JOHN MINNICK, WILLIAM SHARP, plaintiffs: Danne W. Webb, Miller Law Firm, P.C., Kansas City, MO.

For LIFEMINDERS, INC., STEPHEN R CHAPIN, JR, JOSEPH GRABIAS, DOUGLAS A LINDGRIN, PHILIP D BLACK, JONATHAN B BULKELEY, GENE RIECHERS, SUNIL PAUL, JOHN CHAPIN, ALLISON ABRAHAM, defendants: W. Robert King, Couch Pierce King & Hoffmeister, Chtd, Overland Park, KS.

For defendant: Timothy D. Katsiff, James Reynolds, Alexander D. Bono, Blank, Rome, Comisky & McCauley LLP, Philadelphia, PA.

**JUDGES:** Kathryn H. Vratil, United States District Judge.

**OPINIONBY:** Kathryn H. Vratil

**OPINION:**

MEMORANDUM AND ORDER

Plaintiffs bring suit against LifeMinders, Inc. and nine individual defendants, n1 alleging securities fraud in violation of Section 10(b) of the Securities [*2] Exchange Act of 1934, *15 U.S.C. § 78j*(b), violation of the Kansas Securities Act, *K.S.A. § 17–1252* et seq., and state common law claims of fraudulent inducement, intentional misrepresentation and negligent misrepresentation. All claims relate to a merger agreement between LifeMinders, and eCoupons, a company in which plaintiffs were stockholders. This matter comes before the Court on Defendants' Motion To Dismiss The Individual Defendants Pursuant To Rule 12(b)(2) For Lack Of Personal Jurisdiction And To Compel Arbitration And Stay This Action, Or Alternatively Dismiss The Complaint Pursuant To Rule 12(b)(6) (Doc. # 6) filed June 4, 2002. For reasons set forth below, the Court sustains defendants' motion to dismiss individual defendants for lack of personal jurisdiction, compel arbitration and stay the case pending arbitration.

> n1 The nine individual defendants include Stephen R. Chapin, CEO and chairman of the board of directors for LifeMinders from mid 2000 until January 30, 2001; Joseph Grabias, vice president and chief financial officer for LifeMinders "during a portion of the relevant time period" and the following individuals each of whom "at all relevant times is or was an officer or director" of LifeMinders: Douglas A. Lindgrin, Philip D. Black, Jonathan B. Bulkeley, Gene Reichers, Sunil Paul, John Chapin and Allison Abraham. Complaint (Doc. # 1) filed March 14, 2002, at 2–3.

[*3]

Legal Standards

The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under *Rule 12 (b)(2), Fed. R. Civ. P.*, based on affidavits and other written material. *Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984).* If the Court chooses, plaintiffs must make only a prima facie showing of jurisdiction to avoid dismissal. *Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995); Behagen, 744 F.2d at 733.* Of course plaintiffs eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. A prima facie showing suffices until such a hearing, notwithstanding any contrary presentation by the moving party. *Kuenzle v. HTM Sport–Und Freizeitgerte AG, 102 F.3d 453, 456 (10th Cir. 1996).* Plaintiffs have "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by

an appropriate pleading." *Pytlik v. Prof'l Res., 887 F.2d 1371, 1376 (10th Cir. 1989).* Conclusory allegations that defendants [*4] have minimum contacts are insufficient to establish personal jurisdiction. Id. All factual disputes, however, are resolved in plaintiffs' favor. Id.

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must assume as true all well pleaded facts in plaintiffs' complaint and view them in a light most favorable to plaintiffs. *Zinermon v. Burch, 494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).* The Court must make all reasonable inferences in favor of plaintiffs, and must liberally construe the pleadings. *Swanson, 750 F.2d at 813; Fed.R.Civ.P. 8(a); Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993).* The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their theory of recovery that would entitle them to relief. *Jacobs, Visconsi & Jacobs, Co. v. City Of Lawrence, 927 F.2d 1111, 1115 (10th Cir. 1991).* Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual [*5] allegations on those material elements that must be proved. *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).*

Factual Background

Plaintiffs assert that the Court has subject matter jurisdiction under the Securities Exchange Act of 1934, *15 U.S.C. § 78aa, 28 U.S.C. § 1331,* and principles of supplemental jurisdiction, *28 U.S.C. § 1367*(a). Plaintiffs assert that the Court has personal jurisdiction over defendants "because each has committed tortious acts that have caused injury to plaintiffs within Kansas." Complaint (Doc. # 1) at p. 3.

Plaintiffs' complaint alleges the following facts: All plaintiffs are residents of Kansas and former shareholders in eCoupons. n2 eCoupons was a Delaware corporation with a principal place of business in California, which distributed coupons and promotional offers through a network of internet sites and services. LifeMinders is a Delaware corporation with a principal place of business in Virginia. LifeMinders is a direct marketing infrastructure that provides personalized information and advertisements to members through e-mail. In 2000, LifeMinders [*6] and eCoupons discussed and negotiated a merger. Allison Abraham, LifeMinders president, and Joseph Grabias, then LifeMinders chief financial officer, led the LifeMinders negotiation team. On December 4, 2000, eCoupons and LifeMinders executed a merger agreement which provided that stockholders in eCoupons would receive shares of LifeMinders stock. n3

   n2 Although plaintiffs assert that they represent interests of others, the complaint includes no information concerning these other persons or their contacts with defendants.

   n3 The formula was the quotient of $5,162,561.00 divided by the average of the closing per share price of LifeMinders common stock for the ten trading days before the date of the Merger Agreement. The average per-share closing price was approximately $8.65, which represented the price-per-share that each eCoupons stockholder invested in LifeMinders.

Before the merger, LifeMinders falsely represented to eCoupons and its stockholders that LifeMinders would meet or exceed [*7] its projected earnings and revenues for the quarter ending December 31, 2000. LifeMinders, however, did not meet projected earnings for that quarter. Plaintiffs allege that LifeMinders purposefully and deliberately withheld from eCoupons and its shareholders key information regarding the dramatic deterioration of its business in the months before the merger. n4

   n4 LifeMinders had a history of making projections for earnings and revenues and falling far short of those projections.

Before December 4, 2000, LifeMinders knew that it intended to eliminate its wireless operations and not further pursue or develop the wireless segment. It withheld this information from eCoupons and its shareholders. In a 10K report filed on April 2, 2001, LifeMinders disclosed its decision to eliminate the wireless segment "based on changes in market conditions and a determination that we could not generate positive cash flows from the wireless segment in the foreseeable future." Complaint (Doc. # 1) at 6. The April 10K [*8] report also revealed that LifeMinders had been evaluating its operations for each strategic unit, including the wireless unit, since the third quarter of 2000. Before the merger on December 4, 2000, LifeMinders never mentioned the decision to eliminate the wireless segment to eCoupons or its shareholders.

On January 30, 2001, as a result of its decision to abandon the wireless operation, LifeMinders reported a write-off of $49,020,000.00 which it attributed to the three-month period ending December 31, 2000. If LifeMinders had advised plaintiffs of its decision to abandon the wire-

less operations and its intent to take a loss of nearly $50,000,000.00 in the very quarter that LifeMinders was courting eCoupons and plaintiffs, plaintiffs would not have agreed to the merger. In publicly-filed documents including the SEC form 10-Q filed on November 14, 2000 for the quarter ending September 30, 2000, LifeMinders expressed confidence in its management and leadership and, in particular, Stephen Chapin. The report notes that "we believe that our future success is highly dependent upon Stephen R. Chapin, our founder, Chief Executive Officer, and Chairman of the Board of Directors ... to [*9] provide continuity in the execution of our growth plans." In January 2001, however, just weeks after the merger, LifeMinders fired Chapin. At that time LifeMinders significantly reduced its workforce and reported a substantial decline in earnings. Before the merger LifeMinders never disclosed to eCoupons or plaintiffs the underlying facts which gave rise to these drastic actions.

On January 31, 2001, the Washington Post reported that LifeMinders had suffered a loss of $70,500,000.00 in the fourth quarter of 2000. According to the newspaper, $54,000,000.00 of that loss was due to the wireless unit. Within months after the merger, the value of plaintiffs' stock fell from approximately $8.35 per share to approximately $.50 per share, resulting in a loss of millions of dollars.

In sum, defendants misstated, concealed and declined to disclose to eCoupons and its shareholders material facts about the deteriorating value of LifeMinders and its stock. Defendants made these misstatements, concealments and omissions with intent to deceive, manipulate or defraud eCoupons and its shareholders, or with reckless disregard of the truth. Plaintiffs reasonably relied on these representations [*10] in negotiating the terms of the Merger Agreement. If defendants had made full disclosure, plaintiffs would not have agreed to merge eCoupons with LifeMinders.

In Count I, plaintiffs assert that defendants violated Section 10(b) of the Securities Exchange Act, *15 U.S.C. § 78j*(b) and SEC Rule 10b-5. In Count II, plaintiffs assert that defendants' conduct violated *K.S.A. § 17-1252* et seq. In Count III, plaintiffs assert that defendants fraudulently induced them to enter the Merger Agreement. In Count IV, plaintiffs assert a common law claim of intentional misrepresentation. In Count V, plaintiffs assert a common law claim of negligent misrepresentation. Each count alleges that plaintiffs suffered actual damages of no less than $4,200,000.00, plus interest, costs and expenses including legal fees. In the alternative, plaintiffs seek to rescind the Merger Agreement or recover recissionary damages. In Counts I through IV, plaintiffs also seek punitive damages of not less than $5,000,000.00.

Analysis

. Motion To Dismiss Pursuant to *Fed. R. Civ. P. 12(b)(2)* For Lack Of Personal Jurisdiction

The individual defendants move to dismiss under [*11] Rule 12(b)(2), Fed. R. Civ. P., arguing that they lack sufficient contacts with Kansas to establish personal jurisdiction under the Kansas long-arm statute and that subjecting them to such jurisdiction would offend the due process of law. In support of their motion, they submit affidavits that they do not regularly conduct business in Kansas, reside in Kansas or own property in Kansas. The affidavits further state that no individual defendant ever met with any plaintiff in Kansas concerning the merger, never spoke on the telephone with any individual or corporation in Kansas concerning eCoupons or the merger, or directed any letter or e-mail to plaintiffs or anyone else in Kansas concerning the merger. See Defendants' Exhibits (Doc. # 8) filed June 4, 2002, E through K. Plaintiffs assert that each individual defendant committed tortious acts that injured them in Kansas, that the Kansas long-arm statute authorizes the personal jurisdiction over defendants and that exercise of such jurisdiction does not offend due process.

Kansas Long-Arm Statute

Under the Kansas long-arm statute, a person submits to the jurisdiction of the courts of Kansas for any cause of action arising [*12] from certain acts, including commission of a tortious act within the state, *K.S.A. § 60-308(b)(2)*. Plaintiffs assert that under *K.S.A. § 60-308(b)(2)*, personal jurisdiction is proper because defendants committed tortious acts that injured them in Kansas. n5

> n5 Plaintiffs do not argue that personal jurisdiction is proper under Section 27 of the Securities Exchange Act of 1934, *15 U.S.C. § 78aa,* which authorizes nation-wide service of process. See *Shefner v. Ill. Farmers Ins. Co., 243 Ill. App. 3d 683, 611 N.E.2d 626, 183 Ill. Dec. 363 (Ill. App. 1993)* (in federal securities fraud action with pendent state law claims, state long-arm statute does not apply); see also *Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1210 (10th Cir. 2000)* (when federal statute provides for nationwide service of process, it becomes statutory basis for personal jurisdiction provided that due process is satisfied).

*Thermal Components Co. v. Griffith, 98 F. Supp.2d 1224, 1227-28 (D. Kan. 2000)* **[*13]** (injury which occurs in Kansas as result of tortious act outside state amounts to "tortious act within the state" within Section 60-308(b)(2)) (citing *Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990))*. If the injury attributable to the tortious activity is felt by a Kansas complainant, Section 60-308(b)(2) does not require the nonresident defendant's physical presence within the forum state. *Thermal Components Co., 98 F. Supp.2d at 1227-28;* see also *Ling v. Jan's Liquors, 237 Kan. 629, 633, 703 P.2d 731 (1985)* (even if defendant never did business in Kansas, tort deemed to have occurred there where defendant's conduct allegedly caused injury in Kansas); *Wegerer v. First Commodity Corp., 744 F.2d 719 (10th Cir. 1984);* see also *Ammon v. Kaplow, 468 F. Supp. 1304, 1309 (D. Kan. 1979)* (allegedly false advertisement in national publication, causing financial injury to Kansas resident, satisfies tortious act provision of Section 60-308(b)(2)); *Dazey Corp. v. Wolfman, 948 F. Supp. 969, 973 (D. Kan. 1996)* (fraudulent conduct which caused financial loss in Kansas satisfied tortious act **[*14]** provision of Section 60-308(b)(2)); *Wilson v. Olathe Bank, 1998 U.S. Dist. LEXIS 5509, 1998 WL 184470, *3,* Case No. 97-2458-KHV (D. Kan. Mar. 2, 1998)* (long-arm statute met where defendants allegedly committed tortious acts causing injury in Kansas by contracting to serve as trade reference to potential distributors, giving false positive references to Kansas residents who lost thousands of dollars in reliance on those references, and mailing false financial statements to persons in Kansas).

Defendants argue that the complaint does not allege specific tortious acts by individual defendants, but alleges only acts by LifeMinders. In allegations specific to each count, however, the complaint alleges that "defendants, and each of them, misstated, concealed, and declined to disclose materials facts to eCoupons and its shareholders about the deteriorating value of LifeMinders and its stock." n6 See Complaint (Doc. # 1) at PP 53, 62, 70, 78, 85. As noted above, this Court has broadly construed Section 60-308(b)(2)to include economic injuries sustained by a Kansas plaintiff as a result of an out-of-state tort. The Court therefore finds that plaintiffs have set forth a prima facie case **[*15]** of jurisdiction over individual defendants under Section 60-308 (b)(2).

> n6 The complaint names each individual defendant and states that each is an officer or director of LifeMinders, that Chapin was the CEO and chairman of the board, that Grabias was vice president and chief financial officer, and that Abraham was president. The complaint then lists background facts common to all claims, including acts by LifeMinders and the fact that Abraham and Grabias led the LifeMinders negotiation team during merger discussions between LifeMinders and eCoupons.

B. Due Process

The individual defendants argue that even if their alleged conduct falls within the reach of the Kansas long-arm statute, the exercise of personal jurisdiction by this Court does not comport with due process. See Defendants' Reply Brief In Further Support Of Their Motion To Dismiss (Doc. # 21) filed August 29, 2002 (citing *Equifax Servs, Inc., v. Hitz, 905 F.2d 1355 (10th Cir. 1990))*.

Due process requires **[*16]** "minimum contacts" between the nonresident defendant and the forum state. *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. This standard may be satisfied in one of two ways. First, a court may exercise specific jurisdiction over a nonresident defendant if the defendant "purposely directed" his activities at residents of the forum state and the litigation results from injuries that "arise out of or relate to" those activities. *OMI Holdings v. Royal Ins. Co., 149 F.3d 1086, 1090-91 (10th Cir. 1998);* see also *Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958))*. Second, even if the suit is not related to defendant's contacts with the state, a court may exercise general jurisdiction if defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over defendant. *Trierweiler, 90 F.3d at 1533* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16, 80 L. Ed. 2d 404, 104 S. Ct. 1868 & n.9, 466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984))*. **[*17]**

In this case plaintiffs do not allege that defendants' contacts with the State of Kansas are so "continuous and systematic" that general jurisdiction is proper. See Plaintiff's Opposition To Defendants' Motion To Dismiss (Doc. # 18) filed July 29, 2002, at 8. Plaintiffs instead assert that defendants purposefully directed their activities at residents of Kansas, and that the litigation results from injuries that arise out of or relate to those activities. Therefore, the Court addresses only specific jurisdiction.

To determine whether specific jurisdiction is appropriate, the Court must engage in a two-part inquiry. *Thermal Components, 98 F. Supp.2d at 1229*. First, the Court must determine whether "sufficient minimum contacts exist be-

tween the nonresident defendants and the forum state." Id. (citing *OMI, 149 F.3d at 1091).* If the Court finds such minimum contacts, the Court must then determine whether the exercise of personal jurisdiction is reasonable in the particular circumstances of this case. *OMI, 149 F.3d at 1091.*

. Minimum Contacts

In order to establish due process "minimum contacts," plaintiffs must show [*18] that the non-resident defendants have purposefully availed themselves of the privilege of conducting activities in Kansas. *Burger King v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).* The "purposeful availment" requirement protects non-residents from the burdens of defending themselves in a forum with which they have only "random, fortuitous, or attenuated" contacts. Id. Defendants must have engaged in such contact with the forum that they should "reasonably anticipate being haled into court there." *World-Wide Volkswagen, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559.*

The mere allegation that out-of-state defendants committed business torts that injured forum residents does not necessarily establish that defendants possess the constitutionally required contacts. Rather, the Court must undertake a particularized inquiry concerning the extent to which defendants have purposefully availed themselves of the benefits of the forum's laws. *Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1079 (10th Cir. 1995).*

Each individual defendant has produced uncontested affidavit testimony that he/ she does not regularly conduct business in Kansas [*19] and does not reside or own property in Kansas. As to the alleged wrongdoing on which plaintiffs base this lawsuit, defendants point to uncontested affidavit testimony that they never met with any plaintiff in Kansas concerning the transaction by which LifeMinders acquired eCoupons. Further, the individual defendants never had telephone conversations with any individual or corporation in Kansas concerning eCoupons or the eCoupons transaction, and never directed any letter or e-mail to plaintiffs or anyone else in Kansas concerning the eCoupons transaction. n7

> n7 Two of defendants state that they wrote a letter to a plaintiff in Kansas after the merger transaction, and one of the defendants had a phone conversation with a plaintiff in Kansas after the transaction. Such contacts are not relevant, however, to the inquiry here.

Plaintiffs respond that the individual defendants have committed tortious acts that caused foreseeable injury to plaintiffs in Kansas, and that it is "at the very least, presumptively [*20] reasonable for [the defendants] to be called to account there for such injuries." *Equifax, Inc., v. Hitz, 905 F.2d 1355, 1358 (10th Cir. 1990)* (quoting *Burger King Corp., 471 U.S. at 480).* Plaintiffs assert that defendants entered into a merger agreement with various investors from all over the United States and that they purposely availed themselves of the privileges of conducting business in the forum states of all individual investors. See *Burger King Corp., 471 U.S. at 475.* Plaintiffs' argument, however, glosses over the fact that only LifeMinders is a party to the Merger Agreement. Plaintiffs have not set forth facts which support a finding that the individual defendants purposefully availed themselves of the privilege of conducting activities in Kansas. Cf. *Dazey Corp., 948 F. Supp. 969 (D. Kan. 1996)* (defendant initiated at least one call to Kansas to negotiate contract, signed contract and sent purchase orders to Kansas: court found jurisdiction comported with due process).

C. Fiduciary Shield Doctrine

Defendants alternatively assert that because they are agents of a foreign state corporation [*21] transacting business in the forum state on behalf of the corporation, the fiduciary shield doctrine prohibits the exercise of personal jurisdiction over them. See *Wilshire Oil Co. v. L.E. Riffe, 409 F.2d 1277, 1281 n.8 (10th Cir. 1969)* ("unless the agents transact business on their own account and not on behalf of the corporation, the agents are not engaged in business so as to sustain an application of the long-arm statute to them as individuals"). Defendants point out that a plaintiff cannot obtain jurisdiction over individual officers of a corporation merely by accomplishing jurisdiction over the corporation. See *Ten Mile Indus. Park v. W. Plains Serv., 810 F.2d 1518, 1527 (10th Cir. 1987); Wegerer., 744 F.2d at727; Wilshire Oil Co., 409 F.2d at 1281-82; Key Indus. v. O'Doski, Sellers & Clark, Inc., 872 F. Supp. 858 (D. Kan. 1994)* (jurisdiction over corporate officer cannot be predicated only on actions undertaken as an officer or employee of corporation, but must be based on his or her own personal contacts with forum state). In this case, however, the basis for asserting personal jurisdiction [*22] over defendants is not the "transacting business" provision of the long-arm statute but the "tortious act" provision. The Court therefore questions whether the fiduciary shield doctrine applies in this case.

The fiduciary shield rule does not apply if the corporation is not a viable one and the individuals are conduct-

ing personal activities and using the corporate form as a shield. See *Ten Mile Indus. Park, 810 F.2d at 1527*; see *Meredith v. Health Care Prods., Inc., 777 F. Supp. 923, 926 (D. Wyo. 1991)* (jurisdiction appropriate where individual defendants were sole owners of corporation transacting business in forum, when individual defendants allegedly converted assets of corporation, which served as "mere shell to defraud creditors."). In this case, however, plaintiffs' contentions center on the merger between LifeMinders and eCoupons. The only complaint as to individual defendants is that they misstated, concealed and declined to disclose material facts to eCoupons and its shareholders about the value of LifeMinders and its stock. Defendants assert that this conduct did not necessarily involve the personal interests or motives of the individual [*23] defendants, and thus the fiduciary shield doctrine applies. By contrast, in *Dodson Int'l Parts, Inc. v. Altendorf,, 181 F. Supp.2d 1248, 1255 (10th Cir. 2001)* the verified complaint alleged that the defendant was the sole shareholder of the corporate defendant and a member of an alleged conspiracy who thus had a personal motive or interest in activities that profited the corporation. The Dodson court exercised jurisdiction over an individual defendant who was the primary participant in a conspiracy and who acted in furtherance of his own interests and those of company. See also *Wempe v. Sunrise Med. HHG, Inc., 61 F. Supp.2d 1165, 1171 n.2 (D. Kan. 1999)* ( personal jurisdiction over corporate agent as primary participant); *Calder v. Jones, 465 U.S. 783, 789-90, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984)* (employees of corporation which is subject to personal jurisdiction may themselves be subject to jurisdiction if the employees were primary participants in activities which formed basis for exercising jurisdiction over corporation). Because the Court has found that the individual defendants lack minimum contacts with Kansas to meet [*24] due process standards, however, it need not address the question whether the fiduciary shield doctrine applies in this case.

. Motion To Stay Action Pending Arbitration

LifeMinders, the sole remaining defendant, asks the Court to stay this action because plaintiffs agreed to arbitrate the claims contained in their complaint. Defendants contend that plaintiffs' claims are subject to arbitration because they arise out of and relate to the Merger Agreement and thus are covered by the arbitration provision of that agreement. Plaintiffs oppose the motion to stay, asserting that (1) their arbitration agreement applies only to disputes that arise after the closing of the Merger Agreement and (2) their agreement allows them to seek injunctive or other equitable relief without resort to arbitration.

The Federal Arbitration Act, *9 U.S.C. § 1* et seq., ("FFA") ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." *9 U.S.C. § 2*. Federal policy favors arbitration agreements and requires that the courts "rigorously enforce" them. *Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226, 96 L. Ed. 2d 185, 107 S. Ct. 2332 (1987)* [*25] (quoting *Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985))*. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)*.

FAA Section 3 states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

 *9 U.S.C. § 3*.

The question of arbitrability--whether the parties agreed to arbitrate a particular dispute--is an issue for judicial determination. *AT& T Techs., Inc. v. Communication Workers Of Am., 475 U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)*. [*26] Before granting a stay or dismissing a case pending arbitration, however, the Court must determine that the parties have a written agreement to arbitrate. See *9 U.S.C. §§ 3* and *4*; *Avedon Eng'r, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997)*. The existence of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Avedon, 126 F.3d at 1283* (quoting *Kaplan, 514 U.S. 938, 943-45, 131 L. Ed. 2d 985, 115 S. Ct. 1920))*; see *PaineWebber Inc. v. Elahi, 87 F.3d 589, 594 (1st Cir. 1996)* (arbitration is matter of contract law and party can only be made to submit to arbitration those disputes which he has so agreed to submit).

The parties agree that the Merger Agreement contains the following arbitration clause:

Arbitration. Any unresolved dispute or controversy arising under or in connection with this Agreement arising

after the Closing shall be settled exclusively by a three (3) person arbitration panel, which such arbitration proceeding conducted in accordance with the **[*27]** rules of the American Arbitration Association then in effect.

\*\*\*

A decision by a majority of the arbitration panel shall be final and binding. Judgment may be entered on the arbitrators' award in any court having jurisdiction. The arbitration proceeding shall be held in Fairfax County, Virginia. Notwithstanding the foregoing, the Parties shall be entitled to seek injunctive or other equitable relief from any court of competent jurisdiction, without the need to resort to arbitration.

Merger Agreement, Section 12.9, Defendants' Exhibit A at 45.

Plaintiffs acknowledge that where (as here) an agreement contains an arbitration provision, "a presumption of arbitrability arises." See *AT & T Techs, Inc., 475 U.S. at 650*. Plaintiffs point out that a party can overcome this presumption in two ways: (1) where an express provision excludes a particular grievance from arbitration or (2) where the agreement lacks an express exception but the court nonetheless concludes with "positive assurance" that the agreement does not cover the disputed issue. *Denhardt v. Trailways, Inc., 767 F.2d 687, 689 (10th Cir. 1985)*. Plaintiffs argue that the second exception **[*28]** applies because the arbitration agreement includes only disputes or controversies that arise after the closing of the Merger Agreement.

Plaintiffs contend that because their claims arise from alleged pre–merger conduct by defendants, they are beyond the scope of the arbitration clause. Plaintiffs assert that the arbitration clause is silent on whether pre-closing issues are subject to arbitration, and that the Court therefore cannot find that the parties agreed to arbitrate disputes regarding those issues. In support of their argument, plaintiffs cite *McNeer v Thomson McKinnon Secs, Inc., 731 F. Supp. 1021, 1022 (D. Kan. 1990)*. In McNeer, Judge Dale E. Saffels found that an arbitration clause rendered it ambiguous, and therefore refused to compel arbitration. See id. (arbitration clause susceptible to interpretation that disputes shall be arbitrated at either customer's election or at mutual election of customer and defendant). Plaintiffs fail to note, however, that in McNeer, Judge Saffels stated as follows:

The court notes that the cases cited by defendant, including *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941-42, 74 L. Ed. 2d 765 (1983)* **[*29]** and *Eureka Fed. Sav. & Loan Ass'n v. George K. Baum & Co., 1989 U.S. Dist. LEXIS 11727, No. S, 1989 WL 11732489–2157–(D. Kan., unpublished, Sept. 5, 1989)*, stand for the proposition that when the scope of an arbitration clause is ambiguous, any ambiguity regarding whether a particular issue is arbitrable should be resolved in favor of arbitration. These cases, however, presuppose the existence of a valid arbitration agreement, which the court finds lacking in the present case.

*731 F. Supp. at 1022 n.1*. Plaintiffs do not assert that the arbitration agreement in this case is invalid. Further, the Court finds that the arbitration agreement in this case is akin to the broad arbitration clauses–those which contain language submitting to arbitration all disputes "arising under" or "relating to" an agreement–which courts have found apply to even extra–contractual claims. See, e.g., *Brown v. Coleman Co., Inc, 220 F.3d 1180, 1184 (10th Cir. 2000); ( McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988); Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)*. Here, **[*30]** plaintiffs assert claims for federal and state securities fraud, common law fraud and negligent misrepresentation in connection with the Merger Agreement. Under the plain language of the arbitration clause of the Merger Agreement, these claims constitute "unresolved disputes[s] or controvers[ies] arising under or in connection with this Agreement arising after the Closing." See *Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)* (broad arbitration clause compelled arbitration of fraudulent inducement claim); *Shearson/Am. Express, Inc., 482 U.S. at 223* (claims under Section 10(b) of Securities Exchange Act of 1934 arbitrable under agreement that "any controversy arising out of or relating to" agreement shall be settled by arbitration); *Black & Veatch Int'l Co. v. Wartsila NSD N. Am., Inc., 1998 U.S. Dist. LEXIS 20732, 1998 WL 953966*(D. Kan. Dec. 17, 1998) (breach of contract, negligence, negligent misrepresentation and fraud claims subject to arbitration agreement which provided that disputes arising between parties "from or in connection with" contract shall ultimately be submitted to arbitration).

Plaintiffs **[*31]** claim that defendants made fraudulent or negligent misrepresentations which induced them to enter the Merger Agreement. These claims thus constitute an unresolved dispute or controversy arising under or in connection with the Merger Agreement arising after the closing, and they are therefore subject to arbitration.

Plaintiffs point out that the plain language of the arbitration agreement entitles them to seek injunctive or eq-

uitable relief without resort to arbitration. See Merger Agreement, Section 12.9. ("the Parties shall be entitled to seek injunctive or other equitable relief from any court of competent jurisdiction, without the need to resort to arbitration"). Plaintiffs assert that even if the arbitration agreement applies to their damage claims, they may bring alternative claims for equitable rescission without resort to arbitration. Defendants attempt to limit the language of Section 12.9 based on Section 12.3 of the Merger Agreement, which provides:

Specific Enforcement. All of the Parties hereto acknowledge that the Parties will be irreparably damaged in the event that this Agreement is not specifically enforced. Upon a breach or threatened breach of the terms, [*32] covenants or conditions of this Agreement by any of the Parties hereto, the other Parties shall, in addition to all other remedies, be entitled to a temporary or permanent injunction, without showing any actual damage, or a degree for specific performance, in accordance with provisions herein.

Merger Agreement, Section 12.3, Defendants' Exhibit A at 42. Defendants assert that Section 12.3 describes what Section 12.9 intended by the terms "injunction or other equitable relief," i.e. that the parties could seek an injunction or specific performance without resort to arbitration, but no other equitable relief. Defendants note that the Merger Agreement does not authorize the remedy of rescission, and argue that Section 12.3 reveals the parties' intent to preclude a rescission remedy in court. Defendants argue that this conclusion is bolstered by Delaware law, which provides that rescission is an alternative remedy to damages for fraud. See *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage, 744 A.2d 457, 458 (Del. 1999)*. The Court rejects this argument. The Merger Agreement clearly provides that the parties may seek a preliminary injunction or other equitable [*33] remedy, and does not limit the type of equitable remedy that they may seek.

As set forth above, however, the Court finds that the parties agreed to arbitrate plaintiffs' claims for legal damages. Defendants assert that pending arbitration, the Court should stay the proceedings as to the non-arbitrable claims. The decision whether to stay the balance of the proceedings pending arbitration is a matter within the Court's discretion. In addressing that issue, the Court determines whether a resolution of plaintiffs' arbitrable claims will have a preclusive effect on their non-arbitrable claims. See *Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 784 (10th Cir. 1998)*. Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit. See *id. at 785*. The mere fact that piecemeal litigation results from the combination of arbitrable and non-arbitrable issues, however, does not justify a stay. *Id. at 784.*

In this case, the arbitrable claims for monetary damages on the state law claims will have a preclusive effect on the equitable claims [*34] for rescission of the Merger Agreement. Allowing the arbitrable and non-arbitrable claims to proceed in different forums creates a substantial risk of inconsistent results, as well as the potential for duplicative awards. Also, the arbitrable issues predominate over the non-arbitrable issues, particularly in view of the fact that rescission is not available as a remedy for the Rule 10(b) claim under the Securities Exchange Act of 1934, on which federal jurisdiction is based in this case. Finally, it appears that under the heightened pleading standards for federal securities fraud claims and state law fraud claims, plaintiffs may not have adequately pleaded their claims. In these circumstances, the Court finds that a stay of plaintiffs' equitable claims is appropriate pending arbitration of their legal claims.

IT IS THEREFORE ORDERED that Defendants' Motion To Dismiss The Individual Defendants Pursuant To Rule 12(b)(2) For Lack Of Personal Jurisdiction And To Compel Arbitration And Stay This Action, Or Alternatively Dismiss The Complaint Pursuant To Rule 12(b)(6) (Doc. # 6) filed June 4, 2002 be and hereby is SUSTAINED IN PART, in that the Court finds that it lacks personal [*35] jurisdiction over the individual defendants. The individual defendants therefore are DISMISSED.

IT IS FURTHER ORDERED that Defendants' Motion To Dismiss The Individual Defendants Pursuant To Rule 12(b)(2) For Lack Of Personal Jurisdiction And To Compel Arbitration And Stay This Action, Or Alternatively Dismiss The Complaint Pursuant To Rule 12(b)(6) (Doc. # 6) filed June 4, 2002 be and hereby is SUSTAINED IN PART in that the Court finds that each of plaintiffs' claims for legal remedies is subject to arbitration.

IT IS FURTHER ORDERED that plaintiffs' claims against LifeMinders be and hereby are STAYED pending the outcome of arbitration.

Dated this 6th day of November, 2002, at Kansas City, Kansas.

Kathryn H. Vratil

United States District Judge