# IBA Rules on the Taking of Evidence in International Commercial Arbitration

*Adopted by a resolution of
the IBA Council
1 June 1999*

International Bar Association



International Bar Association
271 Regent Street
London W1R 7PA
England
Tel: +44 171 629 1206
Fax: +44 171 409 0456
www.ibanet.org

ISBN: 0 948711 54 X

All Rights Reserved

© International Bar Association 1999

No part of the material protected by this copyright notice may be
reproduced or utilized in any form or by any means, electronic or
mechanical, including photocopying, recording, or by any
information storage and retrieval system, without written
permission from the copyright owner.

# Contents

Members of the Working Party
**iv**

About the Arbitration and
ADR Committee
**v**

Foreword
**1**

THE RULES
**2**



# Members of the Working Party

David W Rivkin
*Chair, SBL Committee D (Arbitration and ADR); Debevoise & Plimpton, New York, USA*

Wolfgang Kühn
*Former Chair, SBL Committee D; Heuking Kühn Lüer Heussen Wojtek, Düsseldorf, Germany*

Giovanni M Ughi
*Chair, SBL Committee D Working Party; Studio Legale Ughi e Nunziante, Milan, Italy*

Hans Bagner
*Vinge, Stockholm, Sweden*

John Beechey
*Clifford Chance, London, England*

Jacques Buhart
*Coudert Frères, Paris, France*

Peter S Caldwell
*Hong Kong*

Bernardo M Cremades
*B Cremades y Asociados, Madrid, Spain*

Emmanuel Gaillard
*Shearman & Sterling, Paris, France*

Paul A Gelinas
*Paris, France*

Hans van Houtte
*Stibbe Simont Monahan Duhot, Brussels, Belgium*

Pierre A Karrer
*Pestalozzi Gmuer & Patry, Zurich, Switzerland*

Jan Paulsson
*Freshfields, Paris, France*

Hilmar Raeschke-Kessler
*Rechtsanwaelte Beim Bundesgerichtshof, Karlsruhe-Ettlingen, Germany*

Van Vechten Veeder QC
*Essex Court Chambers, London, England*

O L O de Witt Wijnen
*Nauta Dutilh, Rotterdam, Netherlands*

# About the Arbitration and ADR Committee (D)

Established as the Committee in the International Bar Association's Section on Business Law (SBL) which contributes to the development of the law and practice of international arbitration and other forms of dispute resolution, the Committee currently has over 1,500 members in 115 countries, and membership is increasing steadily.

**Links**

Relations are maintained with all of the prominent international Arbitration institutions worldwide.

**Activities**

- The Committee provides programmes at IBA and SBL Conferences. Conference programmes are discussed in advance with members, who are encouraged to suggest topics for discussion and debate.
- Members may be appointed to attend law-making sessions such as those which led to the UNCITRAL Model Law on International Commercial Arbitration.
- The Committee produces regular newsletters giving news of members and updates on topics in this field of law. Contributions from members are essential for the continuing success of these newsletters.
- Any member of the Committee who wishes to pursue a line of private enquiry, or to encourage public debate of an issue within the Committee's remit, should ask the Committee Officers to circulate enquiries amongst the membership and to encourage co-operative endeavour.

**Subcommittee on Recognition and Enforcement of Arbitral Awards (D1)**

The Convention on the Recognition and Enforcement of Foreign Arbitration Awards made in New York in 1958 to which more than 100 countries have acceded has demanded the establishment of a special Subcommittee. Practitioners attend the annual workshop of this Subcommittee in order to learn of the experience of various countries with this Convention.

**Subcommittee on Alternative Dispute Resolution Systems (D2)**

This Subcommittee is devoted to the procedures and development of ADR. The subject has demanded far more attention from lawyers in recent years, and the Subcommittee provides a forum for studying and sharing experience of practitioners in various jurisdictions.

# Foreword

These IBA Rules on the Taking of Evidence in International Commercial Arbitration ('IBA Rules of Evidence') have been prepared by a Working Party of Committee D (Arbitration and ADR) of the Section on Business Law of the International Bar Association. The IBA has issued these Rules as a resource to parties and to arbitrators in order to enable them to conduct the evidence phase of international arbitration proceedings in an efficient and economical manner. The Rules provide mechanisms for the presentation of documents, witnesses of fact, expert witnesses and inspections, as well as for the conduct of evidentiary hearings. The Rules are designed to be used in conjunction with, and adopted together with, institutional or *ad hoc* rules or procedures governing international commercial arbitrations.

These IBA Rules of Evidence replace the IBA Supplementary Rules Governing the Presentation and Reception of Evidence in International Commercial Arbitration, originally issued in 1983. The IBA Rules of Evidence reflect procedures in use in many different legal systems, and they may be particularly useful when the parties come from different legal cultures.

If the parties wish to adopt the IBA Rules of Evidence in their arbitration clause, it is recommended that they add the following additional language to the clause:

'In addition to the [institutional or *ad hoc* rules chosen by the parties], the parties agree that the arbitration shall be conducted according to the IBA Rules of Evidence.'

In addition, parties and Arbitral Tribunals may adopt the IBA Rules of Evidence, in whole or in part, at the time in conduct of the arbitration, or they may vary them or use them as guidelines in developing their own procedures.

The IBA Rules of Evidence were adopted by the resolution of the IBA Council on 1 June 1999.

**David W Rivkin**
*Chair, Committee on Arbitration and ADR*
*Section on Business Law*

August 1999

# The Rules

**Preamble**

1. These IBA Rules on the Taking of Evidence in International Commercial Arbitration (the "IBA Rules of Evidence") are intended to govern in an efficient and economical manner the taking of evidence in international commercial arbitrations, particularly those between Parties from different legal traditions. They are designed to supplement the legal provisions and the institutional or *ad hoc* rules according to which the Parties are conducting their arbitration.

2. Parties and Arbitral Tribunals may adopt the IBA Rules of Evidence, in whole or in part, to govern arbitration proceedings, or they may vary them or use them as guidelines in developing their own procedures. The Rules are not intended to limit the flexibility that is inherent in, and an advantage of, international arbitration, and Parties and Arbitral Tribunals are free to adapt them to the particular circumstances of each arbitration.

3. Each Arbitral Tribunal is encouraged to identify to the Parties, as soon as it considers it to be appropriate, the issues that it may regard as relevant and material to the outcome of the case, including issues where a preliminary determination may be appropriate.

4. The taking of evidence shall be conducted on the principle that each Party shall be entitled to know, reasonably in advance of any Evidentiary Hearing, the evidence on which the other Parties rely.

# The Rules

### *Article 1* **Definitions**

In the IBA Rules of Evidence:

"*Arbitral Tribunal*" means a sole arbitrator or a panel of arbitrators validly deciding by majority or otherwise;

"*Claimant*" means the Party or Parties who commenced the arbitration and any Party who, through joinder or otherwise, becomes aligned with such Party or Parties;

"*Document*" means a writing of any kind, whether recorded on paper, electronic means, audio or visual recordings or any other mechanical or electronic means of storing or recording information;

"*Evidentiary Hearing*" means any hearing, whether or not held on consecutive days, at which the Arbitral Tribunal receives oral evidence;

"*Expert Report*" means a written statement by a Tribunal-Appointed Expert or a Party-Appointed Expert submitted pursuant to the IBA Rules of Evidence;

"*General Rules*" mean the institutional or *ad hoc* rules according to which the Parties are conducting their arbitration;

"*Party*" means a party to the arbitration;

"*Party-Appointed Expert*" means an expert witness presented by a Party;

"*Request to Produce*" means a request by a Party for a procedural order by which the Arbitral Tribunal would direct another Party to produce documents;

"*Respondent*" means the Party or Parties against whom the Claimant made its claim, and any Party who, through joinder or otherwise, becomes aligned with such Party or Parties, and includes a Respondent making a counter-claim;

"*Tribunal-Appointed Expert*" means a person or organization appointed by the Arbitral Tribunal in order to report to it on specific issues determined by the Arbitral Tribunal.

*Article 2* **Scope of Application**

1. Whenever the Parties have agreed or the Arbitral Tribunal has determined to apply the IBA Rules of Evidence, the Rules shall govern the taking of evidence, except to the extent that any specific provision of them may be found to be in conflict with any mandatory provision of law determined to be applicable to the case by the Parties or by the Arbitral Tribunal.

2. In case of conflict between any provisions of the IBA Rules of Evidence and the General Rules, the Arbitral Tribunal shall apply the IBA Rules of Evidence in the manner that it determines best in order to accomplish the purposes of both the General Rules and the IBA Rules of Evidence, unless the Parties agree to the contrary.

3. In the event of any dispute regarding the meaning of the IBA Rules of Evidence, the Arbitral Tribunal shall interpret them according to their purpose and in the manner most appropriate for the particular arbitration.

4. Insofar as the IBA Rules of Evidence and the General Rules are silent on any matter concerning the taking of evidence and the Parties have not agreed otherwise, the Arbitral Tribunal may conduct the taking of evidence as it deems appropriate, in accordance with the general principles of the IBA Rules of Evidence.

*Article 3* **Documents**

1. Within the time ordered by the Arbitral Tribunal, each Party shall submit to the Arbitral Tribunal and to the other Parties all documents available to it on which it relies, including public documents and those in the public domain, except for any documents that have already been submitted by another Party.

2. Within the time ordered by the Arbitral Tribunal, any Party may submit to the Arbitral Tribunal a Request to Produce.

3. A Request to Produce shall contain:
   (a) (*i*) a description of a requested document sufficient to identify it, or (*ii*) a description in sufficient detail (including subject matter) of a narrow and specific requested category of documents that are reasonably believed to exist;
   (b) a description of how the documents requested are relevant and material to the outcome of the case; and
   (c) a statement that the documents requested are not in the possession, custody or control of the requesting Party, and of the reason why that Party assumes the documents requested to be in the possession, custody or control of the other Party.

4. Within the time ordered by the Arbitral Tribunal, the Party to whom the Request to Produce is addressed shall produce to the Arbitral Tribunal and to the other Parties all the documents requested in its possession, custody or control as to which no objection is made.

5. If the Party to whom the Request to Produce is addressed has objections to some or all of the documents requested, it shall state them in writing to the Arbitral Tribunal within the time ordered by the Arbitral Tribunal. The reasons for such objections shall be any of those set forth in Article 9.2.

6. The Arbitral Tribunal shall, in consultation with the Parties and in timely fashion, consider the Request to Produce and the objections. The Arbitral Tribunal may order the Party to whom such Request is addressed to produce to the Arbitral Tribunal and to the other Parties those requested documents in its possession, custody or control as to which the Arbitral Tribunal determines that (*i*) the issues that the requesting Party wishes to prove are relevant and material to the outcome of the case, and (*ii*) none of the reasons for objection set forth in Article 9.2 apply.

7. In exceptional circumstances, if the propriety of an objection can only be determined by review of the document, the Arbitral Tribunal may determine

that it should not review the document. In that event, the Arbitral Tribunal may, after consultation with the Parties, appoint an independent and impartial expert, bound to confidentiality, to review any such document and to report on the objection. To the extent that the objection is upheld by the Arbitral Tribunal, the expert shall not disclose to the Arbitral Tribunal and to the other Parties the contents of the document reviewed.

8. If a Party wishes to obtain the production of documents from a person or organization who is not a Party to the arbitration and from whom the Party cannot obtain the documents on its own, the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps are legally available to obtain the requested documents. The Party shall identify the documents in sufficient detail and state why such documents are relevant and material to the outcome of the case. The Arbitral Tribunal shall decide on this request and shall take the necessary steps if in its discretion it determines that the documents would be relevant and material.

9. The Arbitral Tribunal, at any time before the arbitration is concluded, may request a Party to produce to the Arbitral Tribunal and to the other Parties any documents that it believes to be relevant and material to the outcome of the case. A Party may object to such a request based on any of the reasons set forth in Article 9.2. If a Party raises such an objection, the Arbitral Tribunal shall decide whether to order the production of such documents based upon the considerations set forth in Article 3.6 and, if the Arbitral Tribunal considers it appropriate, through the use of the procedures set forth in Article 3.7.

10. Within the time ordered by the Arbitral Tribunal, the Parties may submit to the Arbitral Tribunal and to the other Parties any additional documents which they believe have become relevant and material as a consequence of the issues raised in documents, Witness Statements or Expert Reports submitted or produced by another Party or in other submissions of the Parties.

11. If copies are submitted or produced, they must conform fully to the originals. At the request of the Arbitral Tribunal, any original must be presented for inspection.

12. All documents produced by a Party pursuant to the IBA Rules of Evidence (or by a non-Party pursuant to Article 3.8) shall be kept confidential by the Arbitral Tribunal and by the other Parties, and they shall be used only in connection with the arbitration. The Arbitral Tribunal may issue orders to set forth the terms of this confidentiality. This requirement is without prejudice to all other obligations of confidentiality in arbitration.

## *Article 4* **Witnesses of Fact**

1. Within the time ordered by the Arbitral Tribunal, each Party shall identify the witnesses on whose testimony it relies and the subject matter of that testimony.

2. Any person may present evidence as a witness, including a Party or a Party's officer, employee or other representative.

3. It shall not be improper for a Party, its officers, employees, legal advisors or other representatives to interview its witnesses or potential witnesses.

4. The Arbitral Tribunal may order each Party to submit within a specified time to the Arbitral Tribunal and to the other Parties a written statement by each witness on whose testimony it relies, except for those witnesses whose testimony is sought pursuant to Article 4.10 (the "Witness Statement"). If Evidentiary Hearings are organized on separate issues (such as liability and damages), the Arbitral Tribunal or the Parties by agreement may schedule the submission of Witness Statements separately for each Evidentiary Hearing.

5. Each Witness Statement shall contain:
   (a) the full name and address of the witness, his or her present and past relationship (if any) with any of the Parties, and a description of his or her background, qualifications, training and experience, if such a description may be

      relevant and material to the dispute or to the contents of the statement;

  (b) a full and detailed description of the facts, and the source of the witness's information as to those facts, sufficient to serve as that witness's evidence in the matter in dispute;

  (c) an affirmation of the truth of the statement; and

  (d) the signature of the witness and its date and place.

6. If Witness Statements are submitted, any Party may, within the time ordered by the Arbitral Tribunal, submit to the Arbitral Tribunal and to the other Parties revised or additional Witness Statements, including statements from persons not previously named as witnesses, so long as any such revisions or additions only respond to matters contained in another Party's Witness Statement or Expert Report and such matters have not been previously presented in the arbitration.

7. Each witness who has submitted a Witness Statement shall appear for testimony at an Evidentiary Hearing, unless the Parties agree otherwise.

8. If a witness who has submitted a Witness Statement does not appear without a valid reason for testimony at an Evidentiary Hearing, except by agreement of the Parties, the Arbitral Tribunal shall disregard that Witness Statement unless, in exceptional circumstances, the Arbitral Tribunal determines otherwise.

9. If the Parties agree that a witness who has submitted a Witness Statement does not need to appear for testimony at an Evidentiary Hearing, such an agreement shall not be considered to reflect an agreement as to the correctness of the content of the Witness Statement.

10. If a Party wishes to present evidence from a person who will not appear voluntarily at its request, the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps are legally available to obtain the testimony of that person. The Party shall identify the intended witness, shall describe the subjects on which the witness's testimony

is sought and shall state why such subjects are relevant and material to the outcome of the case. The Arbitral Tribunal shall decide on this request and shall take the necessary steps if in its discretion it determines that the testimony of that witness would be relevant and material.

11. The Arbitral Tribunal may, at any time before the arbitration is concluded, order any Party to provide, or to use its best efforts to provide, the appearance for testimony at an Evidentiary Hearing of any person, including one whose testimony has not yet been offered.

### *Article 5* **Party-Appointed Experts**

1. A Party may rely on a Party-Appointed Expert as a means of evidence on specific issues. Within the time ordered by the Arbitral Tribunal, a Party-Appointed Expert shall submit an Expert Report.

2. The Expert Report shall contain:
   (a) the full name and address of the Party-Appointed Expert, his or her present and past relationship (if any) with any of the Parties, and a description of his or her background, qualifications, training and experience;
   (b) a statement of the facts on which he or she is basing his or her expert opinions and conclusions;
   (c) his or her expert opinions and conclusions, including a description of the method, evidence and information used in arriving at the conclusions;
   (d) an affirmation of the truth of the Expert Report; and
   (e) the signature of the Party-Appointed Expert and its date and place.

3. The Arbitral Tribunal in its discretion may order that any Party-Appointed Experts who have submitted Expert Reports on the same or related issues meet and confer on such issues. At such meeting, the Party-Appointed Experts shall attempt to reach agreement on those issues as to which they had differences of opinion in their Expert Reports, and they shall record in writing any such issues on which they reach agreement.

4. Each Party-Appointed Expert shall appear for testimony at an Evidentiary Hearing, unless the Parties agree otherwise and the Arbitral Tribunal accepts this agreement.

5. If a Party-Appointed Expert does not appear without a valid reason for testimony at an Evidentiary Hearing, except by agreement of the Parties accepted by the Arbitral Tribunal, the Arbitral Tribunal shall disregard his or her Expert Report unless, in exceptional circumstances, the Arbitral Tribunal determines otherwise.

6. If the Parties agree that a Party-Appointed Expert does not need to appear for testimony at an Evidentiary Hearing, such an agreement shall not be considered to reflect an agreement as to the correctness of the content of the Expert Report.

## *Article* 6  **Tribunal-Appointed Experts**

1. The Arbitral Tribunal, after having consulted with the Parties, may appoint one or more independent Tribunal-Appointed Experts to report to it on specific issues designated by the Arbitral Tribunal. The Arbitral Tribunal shall establish the terms of reference for any Tribunal-Appointed Expert report after having consulted with the Parties. A copy of the final terms of reference shall be sent by the Arbitral Tribunal to the Parties.

2. The Tribunal-Appointed Expert shall, before accepting appointment, submit to the Arbitral Tribunal and to the Parties a statement of his or her independence from the Parties and the Arbitral Tribunal. Within the time ordered by the Arbitral Tribunal, the Parties shall inform the Arbitral Tribunal whether they have any objections to the Tribunal-Appointed Expert's independence. The Arbitral Tribunal shall decide promptly whether to accept any such objection.

3. Subject to the provisions of Article 9.2, the Tribunal-Appointed Expert may request a Party to provide any relevant and material information or to provide access to any relevant documents, goods, samples, property or site for inspection.

The authority of a Tribunal-Appointed Expert to request such information or access shall be the same as the authority of the Arbitral Tribunal. The Parties and their representatives shall have the right to receive any such information and to attend any such inspection. Any disagreement between a Tribunal-Appointed Expert and a Party as to the relevance, materiality or appropriateness of such a request shall be decided by the Arbitral Tribunal, in the manner provided in Articles 3.5 through 3.7. The Tribunal-Appointed Expert shall record in the report any non-compliance by a Party with an appropriate request or decision by the Arbitral Tribunal and shall describe its effects on the determination of the specific issue.

4. The Tribunal-Appointed Expert shall report in writing to the Arbitral Tribunal. The Tribunal-Appointed Expert shall describe in the report the method, evidence and information used in arriving at the conclusions.

5. The Arbitral Tribunal shall send a copy of such Expert Report to the Parties. The Parties may examine any document that the Tribunal-Appointed Expert has examined and any correspondence between the Arbitral Tribunal and the Tribunal-Appointed Expert. Within the time ordered by the Arbitral Tribunal, any Party shall have the opportunity to respond to the report in a submission by the Party or through an Expert Report by a Party-Appointed Expert. The Arbitral Tribunal shall send the submission or Expert Report to the Tribunal-Appointed Expert and to the other Parties.

6. At the request of a Party or of the Arbitral Tribunal, the Tribunal-Appointed Expert shall be present at an Evidentiary Hearing. The Arbitral Tribunal may question the Tribunal-Appointed Expert, and he or she may be questioned by the Parties or by any Party-Appointed Expert on issues raised in the Parties' submissions or in the Expert Reports made by the Party-Appointed Experts pursuant to Article 6.5.

7. Any Expert Report made by a Tribunal-Appointed Expert and its conclusions shall be assessed by the Arbitral Tribunal with due regard to all circumstances of the case.

8. The fees and expenses of a Tribunal-Appointed Expert, to be funded in a manner determined by the Arbitral Tribunal, shall form part of the costs of the arbitration.

## *Article 7* **On Site Inspection**

Subject to the provisions of Article 9.2, the Arbitral Tribunal may, at the request of a Party or on its own motion, inspect or require the inspection by a Tribunal-Appointed Expert of any site, property, machinery or any other goods or process, or documents, as it deems appropriate. The Arbitral Tribunal shall, in consultation with the Parties, determine the timing and arrangement for the inspection. The Parties and their representatives shall have the right to attend any such inspection.

## *Article 8* **Evidentiary Hearing**

1. The Arbitral Tribunal shall at all times have complete control over the Evidentiary Hearing. The Arbitral Tribunal may limit or exclude any question to, answer by or appearance of a witness (which term includes, for the purposes of this Article, witnesses of fact and any Experts), if it considers such question, answer or appearance to be irrelevant, immaterial, burdensome, duplicative or covered by a reason for objection set forth in Article 9.2. Questions to a witness during direct and re-direct testimony may not be unreasonably leading.

2. The Claimant shall ordinarily first present the testimony of its witnesses, followed by the Respondent presenting testimony of its witnesses, and then by the presentation by Claimant of rebuttal witnesses, if any. Following direct testimony, any other Party may question such witness, in an order to be determined by the Arbitral Tribunal. The Party who initially presented the witness shall subsequently have the opportunity to ask additional questions on the matters raised in the other Parties' questioning. The Arbitral Tribunal, upon request of a Party or on its own motion, may vary this order of proceeding, including the arrangement of testimony by particular issues or in such a manner

12

that witnesses presented by different Parties be questioned at the same time and in confrontation with each other. The Arbitral Tribunal may ask questions to a witness at any time.

3. Any witness providing testimony shall first affirm, in a manner determined appropriate by the Arbitral Tribunal, that he or she is telling the truth. If the witness has submitted a Witness Statement or an Expert Report, the witness shall confirm it. The Parties may agree or the Arbitral Tribunal may order that the Witness Statement or Expert Report shall serve as that witness's direct testimony.

4. Subject to the provisions of Article 9.2, the Arbitral Tribunal may request any person to give oral or written evidence on any issue that the Arbitral Tribunal considers to be relevant and material. Any witness called and questioned by the Arbitral Tribunal may also be questioned by the Parties.

### *Article 9* **Admissibility and Assessment of Evidence**

1. The Arbitral Tribunal shall determine the admissibility, relevance, materiality and weight of evidence.

2. The Arbitral Tribunal shall, at the request of a Party or on its own motion, exclude from evidence or production any document, statement, oral testimony or inspection for any of the following reasons:
   (a) lack of sufficient relevance or materiality;
   (b) legal impediment or privilege under the legal or ethical rules determined by the Arbitral Tribunal to be applicable;
   (c) unreasonable burden to produce the requested evidence;
   (d) loss or destruction of the document that has been reasonably shown to have occurred;
   (e) grounds of commercial or technical confidentiality that the Arbitral Tribunal determines to be compelling;
   (f) grounds of special political or institutional sensitivity (including evidence that has been

13

      classified as secret by a government or a public international institution) that the Arbitral Tribunal determines to be compelling; or

    (g) considerations of fairness or equality of the Parties that the Arbitral Tribunal determines to be compelling.

3. The Arbitral Tribunal may, where appropriate, make necessary arrangements to permit evidence to be considered subject to suitable confidentiality protection.

4. If a Party fails without satisfactory explanation to produce any document requested in a Request to Produce to which it has not objected in due time or fails to produce any document ordered to be produced by the Arbitral Tribunal, the Arbitral Tribunal may infer that such document would be adverse to the interests of that Party.

5. If a Party fails without satisfactory explanation to make available any other relevant evidence, including testimony, sought by one Party to which the Party to whom the request was addressed has not objected in due time or fails to make available any evidence, including testimony, ordered by the Arbitral Tribunal to be produced, the Arbitral Tribunal may infer that such evidence would be adverse to the interests of that Party.