Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:  (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NOVELL, INC.,<br><br>    Defendant. | **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES**<br><br>Case No. 2:04CV00139<br>Honorable Dale A. Kimball |

Dockets.Justia.com

Defendant is directed to give answers to the written interrogatories separately, fully, in writing, under oath, and in accordance with the following definitions and instructions. Defendant is requested to produce the documents and things in its possession, custody, or control pursuant to the document requests.

Answers to the interrogatories and all documents and things responsive to the document requests must be served on the undersigned attorneys for The SCO Group, Inc., at the offices of Boies, Schiller & Flexner LLP, 333 Main Street, Armonk, New York 10504, within 30 days of service of these interrogatories and document requests.

<u>DEFINITIONS AND INSTRUCTIONS</u>

Plaintiff incorporates by reference all instructions, definitions, and rules contained in the Federal Rules of Civil Procedure. In addition, for purposes of these requests for production and these interrogatories, the following definitions and instructions apply:

A.  <u>Definitions</u>

1.  The terms "Novell," "Defendant," "you," "your," and any synonyms or derivatives thereof are intended to and shall embrace, collectively, and/or individually, Novell, Inc., and its parents, subsidiaries, divisions, or affiliates, and any corporate predecessor or successor of them, and in addition, all of Novell's attorneys and accountants, and all of its respective current or former agents, servants, associates, employees, representatives, investigators, officers, directors, and others who are or have been in possession of or may have obtained information for or on behalf of Novell in any manner with respect to any matter referred to in the pleadings in the

above-styled case. These terms shall include SuSE, both before and after its acquisition by Novell.

2. The terms "SCO," "Plaintiff," and any synonyms and derivatives thereof are intended to and shall embrace, collectively, and/or individually, The SCO Group, Inc., and its parents, subsidiaries, divisions, or affiliates, and any corporate predecessor or successor of them, and in addition, all of its attorneys and accountants, and all of its respective current or former agents, servants, associates, employees, representatives, investigators, officers, and directors.

3. A reference to a corporate entity by name, including without limitation Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, International Business Machines Corporation ("IBM"), Oracle Corporation, Silicon Graphics, Inc., and Cray Computers shall include that entity's parents, subsidiaries, divisions, or affiliates, and any corporate predecessor or successor of them, and in addition, all of its attorneys and accountants, and all of its respective current or former agents, servants, associates, employees, representatives, investigators, officers, and directors.

4. The term "APA" shall mean the Asset Purchase Agreement by and between SCO's predecessor-in-interest, The Santa Cruz Operation, Inc. ("Santa Cruz"), and Novell, dated September 19, 1995, and any amendments and schedules thereto.

5. The term "Amendment No. X" shall mean the agreement by and among IBM, Santa Cruz, and Novell, dated October 16, 1996, concerning certain license agreements related to UNIX System V, including Software Agreement SOFT-00015 as amended,

Sublicensing Agreement SUB-00015A as amended, Software Agreement SOFT-00015 Supplement No. 170 as amended, and Substitution Agreement XFER-00015B.

6.  The term "IBM Litigation" refers to *The SCO Group, Inc. v. International Business Machines Corp.*, Case No. 03-CV-0294, in the United States District Court for the District of Utah.

7.  The terms "UNIX license agreement" includes any UNIX System V software license agreement (such as IBM's Software Agreement SOFT-00015 as amended), sublicensing agreement (such as IBM's Sublicensing Agreement SUB-00015A as amended), related agreement, and any license by which UNIX System V licensees have distributed UNIX System V products in binary-code form.

8.  The term "concerning" shall mean without limitation:  about, relating to, referring to, reflecting, describing, evidencing, referencing, discussing, commenting on, constituting, connected with, or touching upon in any way.

9.  The term "document" shall be given the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and precedent, and shall include every record of every type including, without limitation, information stored on any electromagnetic storage device, or computer; any written, printed, typed, recorded, stored, or graphic matter, however produced, reproduced, or existing in the possession, custody, or control of Defendant, or any agent, employee, or attorney of the Defendant; and all drafts, notes, or preparatory material concerned with said document, and every additional copy of such record or document where such copy contains any commentary, notation, or other change whatsoever that does not appear

4

on the original or other copy of the document produced.  The terms "document" shall include any summary of a document or documents called for hereafter.

10. The term "communication" shall mean any transmission, conveyance, or exchange of information, whether by written, oral, or other means.  It shall include without limitation any meeting, discussion, contact, conference, telephone conversation, letter, e-mail transaction, Internet posting, memorandum, document, message, telegram, telefax, mailgram, billing statement, electronic recording, or other form of written or oral information transmission or exchange.

11. The term "person" shall be deemed to include natural persons, partnerships, firms, and corporations, and all of their subsidiaries or divisions, and, in the case of partnerships, firms, and corporations, the individual members or agents thereof.

12. With respect to any transaction, occurrence, or circumstance, the term "describe" shall mean, among other things, to set forth in detail the date, time, place, and persons involved in, and context, content, and substance of the transaction, occurrence, or circumstance.

13. The term "identify," when referring to any person, shall mean to (a) state that person's full name and current or last known address, home telephone number, work telephone number, and electronic mail address, and (b) indicate the basis for that person's knowledge of any allegation in the pleadings, including but not limited to the identification of documents and communications and a description of his or her personal involvement in any transaction, occurrence, or other activity relating to any allegation in the pleadings.

14. References to the singular include the plural, and references to the plural include the singular.

15. The term "any" includes "all," and the term "all" includes "any" and "each and every."

16. The term "and" includes "or," and vice versa.

B. Instructions

1. Information requested in these interrogatories shall include information within the knowledge or possession of any of Defendant's agents, employees, attorneys, investigators, or any other persons, firms, or entities directly or indirectly subject to Defendant's control in any way whatsoever.

2. Each interrogatory shall be answered in its entirety. If any interrogatory or subsection thereof cannot be answered in full, it shall be answered to the fullest extent possible with an explanation as to why a complete answer is not provided.

3. If there is a claim of privilege as to any communication concerning information requested by these interrogatories, specify the privilege claimed, the communication and/or answer to which that claim is made, the topic discussed in the communication and/or answer to which that claim is made, and the basis upon which the claim is asserted.

4. These interrogatories are continuing in nature and require supplemental or additional responses in accordance with Rule 33 of the Federal Rules of Civil Procedure.

5. All documents produced in response to these requests shall be produced in the same order as they are kept or maintained in the ordinary course of business and, where

multiple pages or documents are assembled, collated, grouped, or otherwise attached, shall not be separated or disassembled.

6.  If there are no documents responsive to any paragraph or subparagraph set forth in the requests, please provide a written response so stating.

7.  With respect to any document responsive to this request that is withheld from production based upon a claim of privilege, please provide the information required pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

8.  If, for reasons other than a claim of privilege, you refuse to produce any document requested herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

9.  These requests are continuing and, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, require further and supplemental production by Defendant whenever Defendant acquires, makes, or locates additional documents or information between the time of the initial production hereunder and the time of the trial in this action.

10. Documents responsive to more than one document request need not be produced more than once.

## REQUESTED DOCUMENTS

### Ownership of UNIX Copyrights

1.  All documents concerning the APA.

2.  All documents concerning the transaction set forth in the APA.

3.  All documents (not included in the document requests above) concerning the transfer of copyrights from Novell to Santa Cruz as part of the APA.

4. All documents concerning Santa Cruz's transfer of its Server Software Division and Professional Services Division to SCO.

5. All documents (not included in the document requests above) concerning the transfer of copyrights from Santa Cruz to SCO.

6. All documents concerning any statement by SCO that it owns copyrights in UNIX and/or UnixWare.

7. All documents (not included in the requests above) concerning SCO's registration of copyrights in UNIX and/or UnixWare with the United States Copyright Office.

8. All documents concerning any alleged injury or damage to Novell as a result of any statement by SCO that it owns copyrights in UNIX and/or UnixWare.

9. All documents concerning any statement by Novell that it owns or does not own copyrights in UNIX and/or UnixWare.

10. All documents (not included in the document requests above) concerning Novell's registration of copyrights in UNIX and/or UnixWare with the United States Copyright Office.

11. All documents (not included in the document requests above) concerning Novell's press release of June 6, 2003, stating in part that Amendment No. 2 to the APA "appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996."

12. All documents concerning the communications between Novell and SCO referenced at Paragraphs 38-39 of Novell's Counterclaims and Paragraphs 38-39 of SCO's Answer to Novell's Counterclaims.

13. All documents (not included in the document requests above) concerning the ownership of copyrights in UNIX and/or UnixWare.

14. All documents (not included in the document requests above) concerning the copyrights in UNIX and/or UnixWare.

Novell's Audit Rights

15. All documents concerning any audit by Novell of SCO pursuant to Section 1.2 of the APA.

16. All documents concerning Novell's audit rights under Section 1.2 of the APA.

17. All documents concerning Novell's right to royalties under Sections 1.2 and 4.16 of the APA.

18. All documents concerning SCO's obligations under Sections 1.2 and 4.16 of the APA.

19. All documents concerning SCO's compliance with its obligations under Sections 1.2 and 4.16 of the APA.

20. All documents concerning SCO's remittance of royalties to Novell pursuant Sections 1.2 and 4.16 of the APA.

21. All documents concerning SCO's administration of royalties referenced in Sections 1.2 and 4.16 of the APA.

22. All documents concerning Novell's requests for "information and documentation" referenced in Paragraphs 67-73 of its Counterclaims, including but not limited to all communications leading to or relating to such requests.

<u>UNIX License Agreements and Other Agreements</u>

23. All documents concerning SCO's rights or claims under any UNIX license agreement, including but not limited to SCO's alleged right to terminate its UNIX license agreements with IBM, Sequent, or any other licensee, and SCO's alleged right to revoke any licensee's rights under its UNIX license agreements.

24. All documents concerning SCO's alleged termination of any UNIX license agreement.

25. All documents concerning SCO's alleged revocation of any licensee's rights under its UNIX license agreements.

26. All documents concerning Novell's purported rights under Section 4.16 of the APA, including but not limited to Novell's purported "prior approval" and "veto" rights and right to waive, or to direct SCO to waive, any of SCO's rights or claims under any UNIX license agreement.

27. All documents concerning SCO's agreements with Sun and Microsoft referenced in Paragraph 50 of Novell's Counterclaims and Paragraph 50 of SCO's Answer to Novell's Counterclaims.

28. All documents concerning the SCOsource program, including but not limited to documents concerning SCO's intellectual property licenses with Linux end-users.

29. All documents (not included in the document requests above) concerning Novell's rights and obligations under Section 4.16 of the APA.

30. All documents (not included in the document request above) concerning SCO's rights and obligations under Section 4.16 of the APA.

31. All documents (not included in the document requests above) concerning Section 4.16 of the APA.

32. All documents concerning the "Linux Indemnification Program" identified in Paragraph 19(j) of Novell's Answer dated July 29, 2005.

APA Amendments, Amendment No. X, TLA

33. All documents (not included in Document Request No. 1 above) concerning Amendment No. 1 to the APA, including but not limited to all communications concerning that Amendment.

34. All documents (not included in Document Request No. 1 above) concerning Amendment No. 2 to the APA, including but not limited to all communications concerning that Amendment.

35. All documents concerning the "Amendment" executed by Novell and IBM on April 26, 1996, related to IBM's UNIX Software Agreement and related agreements, including but not limited to all communications concerning that "Amendment."

36. All documents concerning the transaction set forth in the "Amendment" referenced in Document Request 35 above, including but not limited to all communications concerning that transaction.

37. All documents concerning Amendment No. X, including all communications concerning that Amendment.

38. All documents concerning the transaction set forth in Amendment No. X, including all communications concerning that transaction.

11

39. All documents concerning any buyout granted to any UNIX licensee after April 26, 1996, of its royalty obligations under its UNIX license agreements, including but not limited to all documents concerning any such buyout granted to Hewlett-Packard Company, Silicon Graphics, Inc., or Cray Computers.

40. All documents concerning the Technology License Agreement between Novell and Santa Cruz executed on December 6, 1995 (the "TLA").

41. All documents concerning the transaction set forth in the TLA.

Other Relevant Topics

42. All communications concerning the IBM litigation and/or this litigation, including but not limited to all communications involving Novell and any one or more of the following parties: Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, IBM, Oracle Corporation, and Silicon Graphics, Inc.

43. All communications concerning copyrights in UNIX and/or UnixWare subsequent to the execution of the APA, including but not limited to all communications involving Novell and any one or more of the following parties: Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, IBM, Oracle Corporation, and Silicon Graphics, Inc.

44. All communications involving Novell and any one or more of the following parties concerning Novell's alleged rights to waive, or direct SCO to waive, SCO's rights or claims under any UNIX license agreement: Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, IBM, Oracle Corporation, and Silicon Graphics, Inc.

45. All communications involving Novell and any one or more of the following parties concerning Novell's alleged right to amend, supplement, modify, or waive rights under any UNIX license agreement, or Novell's alleged right to direct SCO to amend, supplement, modify, or waive rights under any UNIX license agreement:  Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, IBM, Oracle Corporation, and Silicon Graphics, Inc.

46. All communications involving Novell and any one or more of the following parties concerning SCO, Linux, AIX, or Dynix:  Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, IBM, Oracle Corporation, and Silicon Graphics, Inc.

47. All communications involving Novell and one or more of the following parties concerning the APA:  Computer Associates International, Inc., Dell, Inc., Hewlett-Packard Company, Intel Corporation, IBM, Oracle Corporation, and Silicon Graphics, Inc.

48. All documents (not included in the document requests above) concerning the IBM litigation.

49. All documents (not included in the document requests above) concerning this litigation.

50. All documents concerning any investment by IBM in Novell's Linux business, including IBM's $50 million investment in Novell's purchase of SuSE Linux.

51. All documents concerning both Novell's acquisition of SuSE Linux and any one or more of the following:  UNIX, UnixWare, the copyrights in UNIX and/or UnixWare, the APA (including without limitation its Amendments and the rights and obligations under

Section 1.2 or Section 4.16 of the APA), the "Amendment" referenced in Document Request No. 35 above, Amendment No. X, the TLA, SCO, IBM, the IBM litigation, and this litigation.

52. All documents concerning any one or more of Novell's Affirmative Defenses set forth in its Answer dated July 29, 2005 (Privilege, Estoppel, Unclean Hands, Laches, Comparative Fault, Failure to Mitigate, Absence of Causation, and the First Amendment).

53. All documents used, referred to, identified, and/or relied upon in responding to SCO's First Set of Interrogatories (below).

<u>INTERROGATORIES</u>

1. State all bases for and evidence (including extrinsic) in support of Novell's allegation in Paragraphs 24 and 25 of its Counterclaims that Amendment No. 2 "merely amends" or "modified" the APA.

2. State all bases for and evidence (including extrinsic) in support of your view that the term "SVRX Licenses," as used in Section 4.16 of the APA, includes "all contracts relating to the various UNIX system releases and auxiliary products enumerated at Schedule 1.1(a)(VI) and Attachment A to Amendment No. 1," including without limitation your definition, as well as any binding definition found anywhere, for that term.

3. Further to Novell's statement in Paragraph 43 of its Counterclaims that "Novell has not acquiesced to SCO's claims" of ownership of the UNIX copyrights, identify any instances between the date of the execution of the APA and late 2002 when (a) Novell

asserted ownership of copyrights in UNIX and/or UnixWare, and/or (b) contested SCO's claims of ownership of those copyrights or open and public conduct as the purported owner of those copyrights, including SCO's claims and conduct identified in Paragraphs 72-82 of its proposed Second Amended Complaint. Describe each such instance, if any, in detail, including without limitation the name of each person asserting or contesting ownership; the nature and substance of Novell's claim; SCO's claim or conduct to which Novell's claim responded, if any; the means by which Novell's claim was communicated and to whom; the identity of any documents (by Bates range or filename) concerning Novell's claim; and the date of each instance.

4. State all bases for and evidence in support of Novell's allegations in its Counterclaims that between late 2002 and early 2003, SCO "repeatedly asked Novell to transfer the [UNIX] copyrights to SCO," "repeatedly contacted Novell and asked Novell to amend the Novell-Santa Cruz agreement to give SCO the UNIX Copyrights," and requested that Novell participate in an alleged "scheme" to "extract licenses from the UNIX and Linux communities." Among other things, identify and describe each communication in which SCO made any such request, including without limitation the persons involved in each communication; the date, means, and substance of each communication; and any documents (by Bates number of file name) concerning that communication.

5. Identify all current or former Novell employees, representatives, and/or agents who may have or may have had any knowledge concerning SCO's compliance with Section 1.2 and/or Section 4.16 of the APA, including persons responsible for or involved in

auditing, monitoring, reviewing, evaluating, recording, communicating, or reporting on

SCO's compliance or lack thereof with those provisions.

DATED this 11th day of January, 2006.

>                    HATCH, JAMES & DODGE, P.C.
>                    Brent O. Hatch
>                    Mark F. James
>
>                    BOIES, SCHILLER & FLEXNER LLP
>                    Robert Silver
>                    Stuart H. Singer
>                    Stephen N. Zack
>                    Edward Normand
>
>                    By _____
>
>                    *Counsel for The SCO Group, Inc.*