Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> NOVELL, INC., <br><br> Defendant/Counterclaim-Plaintiff. | **SCO'S REPLY TO NOVELL'S AMENDED COUNTERCLAIMS** <br><br><br> Case No. 2:04CV00139 <br> Honorable Dale A. Kimball |

Plaintiff and counterclaim-defendant, The SCO Group, Inc. ("SCO"), by and through its counsel, replies to the amended counterclaims of defendant and counterclaim-plaintiff, Novell, Inc. ("Novell"), as follows:

## PARTIES

1.  Admits the allegations of ¶ 1, except denies knowledge sufficient to form a belief as to the truth of the allegations of the third sentence of ¶ 1.

2.  Admits the allegations of ¶ 2.

## JURISDICTION

3.  Admits, based on the Court's Order dated June 9, 2004, that the Court has jurisdiction over SCO's Second Amended Complaint.

4.  Admits, based on the Court's Order dated June 9, 2004, that the Court has jurisdiction over Novell's counterclaims.

## VENUE

5.  Admits the allegations of ¶ 5.

## FACTS

### A. UNIX

6.  Admits the allegations of ¶ 6.

7.  Admits the allegations of ¶ 7, except denies the allegation that AT&T transferred to Novell only "active" UNIX licensing agreements.

### B. Linux

8.  Admits that Linus Torvalds purportedly developed the Linux operating system by consulting and referring to other materials; admits that numerous other parties have also

contributed to Linux, including parties who wrongfully contributed SCO's UNIX intellectual property; but denies information or knowledge sufficient to form a belief as to the truth of each and every other allegation of ¶ 8.

9.  Admits the allegations of the first sentence of ¶ 9, but denies the second sentence of ¶ 9 to the extent it alleges that SCO intellectual property in Linux is legally and properly available to the public.

**C. The Asset Purchase Agreement Between Novell and The Santa Cruz Operation, Inc.**

10. Admits that in 1995, Novell ("Seller") and The Santa Cruz Operation, Inc. ("Santa Cruz") entered into negotiations resulting in the transfer to Santa Cruz of "all of Seller's right, title and interest in and to the assets and properties of Seller relating to the [UNIX and UnixWare] Business" (the "UNIX business"), including the copyrights in UNIX and UnixWare; but denies each and every other allegation of ¶ 10.

11. Admits that Santa Cruz was founded and operated as a UNIX development, porting, distribution, support, and consulting company; and admits the other allegations of ¶ 11.

12. Admits the allegations of ¶ 12.

13. Admits the allegations of ¶ 13.

14. Admits that the APA transferred to Santa Cruz "all of Seller's right, title and interest in and to the assets and properties of Seller relating to the [UNIX and UnixWare] Business," including (among other things) the copyrights in UNIX and UnixWare, the assignment of thousands of contracts and licenses, source code and binary code to UNIX and UnixWare, and the other assets listed in the first sentence of ¶ 14; admits that Santa Cruz agreed to complete (subsequent to the transaction set forth in the APA)

a "Merged Product" for the Intel platform; but denies each and every other allegation of ¶ 14.

15. Admits that, to help bridge the gap between the purchase price of the UNIX business and the price Santa Cruz could afford, the parties agreed to a narrow exception to the complete transfer of the UNIX business; that pursuant to this exception Novell retained the right to continue receiving royalties that SCO then collected from then-existing SVRX licensees for their distribution of binary (object) code versions of System V products pursuant to sublicensing agreements; and that Novell retained the right to conduct audits, and direct Santa Cruz to take certain actions, to protect that binary royalty stream. SCO, however, denies each and every other allegation of ¶ 15; and to the extent ¶ 15 purports to state a legal conclusion, states that no response is required.

16. Admits the allegations of the first three sentences of ¶ 16 to the extent those allegations refer only to the SVRX binary royalty stream (as described in ¶ 15, above); and admits the allegations of the last sentence of ¶ 16.

17. Admits the allegations of ¶ 17, except denies the allegation that Novell retained, or that the parties to the APA intended for Novell to retain, the copyrights in UNIX and UnixWare under Schedule 1.1(b) or any other schedule or provision of the APA.

18. Admits that Novell retained certain rights to audit Santa Cruz's administration of the SVRX binary royalty stream; denies each and every other allegation of ¶ 18; and to the extent ¶ 18 purports to state a legal conclusion, states that no response is required.

19. Admits the allegations of ¶ 19 only to the extent they refer to the rights and obligations of the parties with respect to the SVRX binary royalty stream (as described in ¶ 15, above).

20. Admits the allegations of the first three sentences of ¶ 20, but denies each and every other allegation of ¶ 20.

**D. Novell's Alleged Ownership of the UNIX Copyrights**

21. Admits that the APA transferred to Santa Cruz all of Novell's right, title, and interest in and to Novell's assets and properties relating to the UNIX business; admits that certain limited assets were excluded from the transfer; but denies each and every other allegation of ¶ 21, including the allegation that the APA did not transfer to Santa Cruz the copyrights in UNIX and UnixWare.

22. Denies the allegations of ¶ 22; and to the extent ¶ 22 purports to state a legal conclusion, states that no response is required.

23. Admits that Novell and Santa Cruz executed Amendment No. 2 to the APA; and to the extent ¶ 23 purports to state a legal conclusion, states that no response is required.

24. Denies the allegations of ¶ 24; and to extent ¶ 24 purports to state a legal conclusion, states that no response is required.

25. Denies the allegations of ¶ 25 (including subparagraphs a-d); and to the extent ¶ 25 (including subparagraphs a-d) purports to state a legal conclusion, states that no response is required.

26. Denies the allegations of ¶ 26; and to the extent ¶ 26 purports to state a legal conclusion, states that no response is required.

27.   Denies the allegations of ¶ 27.

**E.  Sale of the UNIX Business to Caldera**

28.   Admits the allegations of ¶ 28.

29.   Admits the allegations of the first sentence of ¶ 29, but denies each and every other allegation of ¶ 29.

30.   Admits the allegations of ¶ 30.

**F.  Caldera's Financial Position and Business Strategy**

31.   Admits that Caldera (like, on information and belief, Novell and nearly all other companies) did not produce a profitable Linux business; and admits the other allegations of ¶ 31.

32.   Admits that, after Caldera's acquisition of Santa Cruz's Server Software and Professional Services divisions, most of Caldera's revenue came from UNIX products and services, including approximately 90% of its total revenues at the end of fiscal year 2001 and 95% of its total revenues at the end of fiscal year 2002; admits that (at least in part because of the unauthorized use of SCO's proprietary UNIX code and other protected materials in Linux) Caldera's actual and forecasted revenues from the sale of UNIX-based products declined in the fiscal quarters following the acquisition; but denies each and every other allegation of ¶ 32.

33.   Admits the allegations of ¶ 33.

34.   Admits that Caldera hired Darl McBride as its President and Chief Executive Officer in June 2002 and that Mr. McBride was responsible for Caldera's strategic direction, with

input from other executives of the company; but denies each and every other allegation of ¶ 34.

35.    Admits the allegations of ¶ 35.

36.    Admits the allegations of ¶ 36.

37.    Admits that SCO launched the SCOsource initiative to review, enforce, and defend SCO's ownership of its UNIX intellectual property (including copyrights); admits that SCO announced the SCOsource initiative in January 2003 but did not enter into an agreement under its licensing program until August 2003; and denies each and every other allegation of ¶ 37.

**G. Communications Between SCO and Novell in Late 2002 and Early 2003**

38.    Admits that in late 2002, as part of the review of its intellectual property, SCO contacted Novell to confirm SCO's understanding that the UNIX and UnixWare copyrights had been transferred under the APA and to ask if Novell had documents concerning the APA; admits that Novell counsel and other employees repeatedly and successively asked SCO to call again at a later time after Novell had had the opportunity to research the matter; admits that in early 2003, Novell counsel agreed to sign a letter stating that the APA transferred all right, title, and interest in and to the copyrights associated with the AT&T SVRX software agreements; admits that SCO sent Novell counsel a draft of that letter but Novell responded that it was no longer interested in UNIX and would not sign; admits that Novell did not sign the letter and ceased communications with SCO; further admits that during the aforementioned

conversations Novell never asserted its purported, or challenged SCO's, ownership of the UNIX and UnixWare copyrights; but denies each and every other allegation of ¶ 38.

39.   Admits that (at Novell's request, as described in ¶ 38 above) SCO contacted Novell on multiple occasions in early 2003; but denies each and every other allegation of ¶ 39.

## H.  SCO's Efforts to Protect Its Intellectual Property

40.   Denies the allegations of ¶ 40.

41.   Denies the allegations of the introductory sentence of ¶ 41.

    a.   Admits the allegations of subparagraph 41(a).

    b.   Admits the allegations of subparagraph 41(b).

    c.   Admits the allegations of subparagraph 41(c).

    d.   Admits that in 2003 and 2004, SCO properly registered its copyrights in UNIX and UnixWare, including its copyrights in the UNIX and UnixWare releases listed in subparagraph 41(d); denies each and every other allegation of subparagraph 41(d); and to the extent subparagraph 41(d) purports to state a legal conclusion, states that no response is required.

    e.   Admits the allegations of subparagraph 41(e).

    f.   Admits the allegations of subparagraph 41(f).

42.   Admits that on or about July 21, 2003, Darl McBride made the statement quoted in part in ¶ 42; but denies each and every other allegation of ¶ 42.

43.   Denies that Novell did not acquiesce to SCO's ownership claims during the years between the execution of the APA (in September 1995) and about May 2003; further

denies, as described below in SCO's response to subparagraph 43(b), that Novell did not acquiesce to SCO's ownership claims in June 2003.

    a.  Admits that on May 12, 2003, Darl McBride sent Novell a letter setting forth the statements therein.

    b.  Admits that, in response to Mr. McBride's May 2003 letter, Novell CEO Jack Messman sent SCO a May 28, 2003 letter (published in several newspapers and other publications) stating that "SCO is not the owner of the UNIX copyrights" – a statement that Novell recanted in a June 6, 2003 press release stating that Amendment No. 2 to the APA "appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996."

    c.  Admits the allegations of ¶ 43(c), including the fact that Mr. LaSala's August 4, 2003 letter to SCO purported to recant the recantation in Novell's June 6, 2003 press release.

44.  Admits that in September and October 2003, Novell (wrongfully) obtained copyright registrations for UNIX-related products; denies each and every other allegation and the characterizations in ¶ 44; and to the extent ¶ 44 purports to state a legal conclusion, states that no response is required.

## I. The SCOsource Initiative

45.  Denies the allegations of ¶ 45; and to the extent ¶ 45 purports to state a legal conclusion, states that no response is required.

46. Admits that SCO announced its SCOsource initiative on January 22, 2003, and that in connection with that announcement, Darl McBride made the statement quoted in part in ¶ 46; but denies each and every other allegation and the characterizations in ¶ 46.

47. Admits that the SCOsource licensing program allows Linux end-users to enter into intellectual property agreements that properly compensate SCO for its UNIX intellectual property found in Linux; admits that the terms of the SCOsource agreements are as stated therein; but denies each and every other allegation of ¶ 47.

48. Admits that SCO charges market price (including appropriate discounts) for its intellectual property licenses; but denies each and every other allegation and the characterization in ¶ 48.

49. Admits that on March 7, 2003, SCO filed a lawsuit against IBM based on the allegations set forth in SCO's pleadings in that lawsuit; denies each and every other allegation of ¶ 49; and to the extent ¶ 49 purports to state a legal conclusion, states that no response is required.

50. Admits that SCO, through its SCOsource division, entered into agreements related to UNIX and UnixWare with Sun Microsystems, Inc., and Microsoft Corporation (in that order) and that the Microsoft agreement covered UNIX compatibility products; but denies each and every other allegation of ¶ 50, including the allegation that the Sun and Microsoft agreements were part of the SCOsource licensing program.

51. Admits that the Sun and Microsoft agreements in part produced the profitable quarter; admits the allegations of the second sentence of ¶ 51; but denies each and every other allegation and the characterizations in ¶ 51.

52. Admits that, in May 2003, SCO sent 1,500 end-user corporations (including IBM and Novell) a letter setting forth the statements therein; denies each and every other allegation of ¶ 52; and to the extent ¶ 52 purports to state a legal conclusion, states that no response is required.

53. Admits that SCO made statements (correctly quoted in part in ¶ 53) in the May 2003 letters; denies each and every other allegation of ¶ 53; and to the extent ¶ 53 purports to state a legal conclusion, states that no response is required.

54. Admits that SCO made statements (correctly quoted in part in ¶ 54) in the May 2003 letters; denies each and every other allegation of ¶ 54; and to the extent ¶ 54 purports to state a legal conclusion, states that no response is required.

55. Admits that SCO made statements (correctly quoted in part in ¶ 55) in its May 2003 letters to end-users; denies each and every other allegation and the characterizations in ¶ 55; and to the extent ¶ 55 purports to state a legal conclusion, states that no response is required.

56. Admits that SCO has publicly stated that it owns the UNIX copyrights and that Linux end-users may be liable for infringement of those copyrights; admits that it has stated on its website that "only SCO is in a position to license the use of this infringing intellectual property"; admits that the Court's February 8, 2005 Order in the <u>SCO v. IBM</u> case sets forth the statements therein; denies each and every other allegation and the characterizations in ¶ 56; and to the extent ¶ 56 purports to state a legal conclusion, states that no response is required.

11

57.  Admits that SCO has filed lawsuits against Autozone, Inc., and Daimler Chrysler Corporation, based on the allegations set forth in its pleadings in those lawsuits; but denies each and every other allegation and the characterizations in ¶ 57.

58.  Admits that Novell has established an indemnification program with numerous restrictions (including, for example, the requirement that the Linux customer buy a new upgrade) and limitations (including, for example, on the dollar amount of the indemnification); but denies information or knowledge sufficient to form a belief as to the truth of the other allegations of ¶ 58.

59.  Admits that, in an effort to protect its UNIX copyrights, SCO has negotiated intellectual property agreements with Linux end-users; admits that such agreements generated revenue in fiscal year 2004; and denies each and every other allegation and the characterizations in ¶ 59.

**J.  Novell's Allegations that SCO Breached the Asset Purchase Agreement**

60.  Denies the allegations of ¶ 60; and to the extent ¶ 60 purports to state a legal conclusion, states that no response is required.

61.  Denies the allegations of ¶ 61; and to the extent ¶ 61 purports to state a legal conclusion, states that no response is required.

62.  Denies the allegations of ¶ 62; and to the extent ¶ 62 purports to state a legal conclusion, states that no response is required.

**Alleged Breach of the Audit Provisions**

63.  Admits that Section 1.2(b) of the APA provides in part:

> Seller shall be entitled to conduct periodic audits of Buyer concerning all royalties and payment due to Seller hereunder or

12

under the SVRX Licenses, provided that Seller shall conduct such audits after reasonable notice to Buyer and during normal business hours and shall not be entitled to more than two (2) such audits per year.

SCO denies each and every other allegation and the characterization in ¶ 63, including that under the APA, Novell had audit rights other than with respect to the administration of the SVRX binary royalty stream; and to the extent ¶ 63 purports to state a legal conclusion, states that no response is required.

64.    Admits that Section 1.2(f) of the APA provides in part:

Within one (1) calendar month following each calendar month in which SVRX Royalties [and royalties from Royalty-Bearing Products as contemplated in Schedule 1.2(b) hereof] are received by Buyer, Buyer shall provide to Seller, in electronic file format, a report detailing all such royalties.

SCO denies each and every other allegation of ¶ 64.

65.    Admits the allegations of ¶ 65.

66.    Admits the allegations of ¶ 66.

67.    Admits that Novell sent SCO a November 21, 2003 letter (correctly quoted in part in ¶ 67) requesting the information set forth therein; denies each and every other allegation of ¶ 67 (including subparagraphs a-d); and to the extent ¶ 67 (including subparagraphs a-d) purports to state a legal conclusion, states that no response is required.

68.    Admits that Novell sent letters to SCO on December 29, 2003, and on February 4, 2004, referencing Novell's November 21, 2003 letter.

69.    Admits that SCO responded to Novell's letters as set forth in SCO's letter dated February 5, 2004; but denies each and every other allegation of ¶ 69.

70.    Admits that Novell sent SCO a March 1, 2004 letter (correctly quoted in part in ¶ 70),

       requesting the information set forth therein; denies each and every other allegation of

       ¶ 70; and to the extent ¶ 70 purports to state a legal conclusion, states that no response

       is required.

71.    Admits that Novell sent a letter to SCO on April 2, 2004, requesting the information

       set forth therein.

72.    Admits that Novell sent SCO a November 17, 2004 letter (correctly quoted in part in

       ¶ 72) requesting the information set forth therein.

73.    Admits that SCO responded to Novell as set forth in SCO's letters; but denies each

       and every other allegation and the characterizations in ¶ 73; and to the extent ¶ 73

       purports to state a legal conclusion, states that no response is required.

**Alleged Breach of the Obligation to Pass Through Royalties**

74.    Admits that SCO was obligated to remit "all royalties, fees and other amounts due

       under all SVRX Licenses (as listed in detail under item VI of Schedule 1.1(a) hereof

       and referred to herein as 'SVRX Royalties')"; admits that the term "SVRX Licenses"

       is not listed in a "Definitions" or "Recitals" section of the APA.  SCO denies each

       and every other allegation of ¶ 74, including any attempt by Novell to define the term

       "SVRX Licenses" to include anything other than royalties that SCO collected from

       then-existing SVRX licensees for their distribution of binary-code versions of System

       V products pursuant to sublicensing agreements.

75.    Denies the allegations of ¶ 75; and to the extent ¶ 75 purports to state a legal

       conclusion, states that no response is required.

76.   Admits that SCO entered into agreements with Sun and Microsoft, but denies each
      and every other allegation and the characterizations in ¶ 76.

77.   Denies the allegations of ¶ 77; and to the extent ¶ 77 purports to state a legal
      conclusion, states that no response is required.

78.   Admits that SCO has not remitted royalties from its licenses with Sun and Microsoft;
      denies each and every other allegation of ¶ 78, including the allegation that SCO
      entered into "SVRX Licenses" with Sun or Microsoft; and to the extent ¶ 78 purports
      to state a legal conclusion, states that no response is required.

79.   Admits that SCO has entered into intellectual property agreements, the terms of
      which are set forth therein; but denies each and every other allegation of ¶ 79.

80.   Denies the allegations of ¶ 80; and to the extent ¶ 80 purports to state a legal
      conclusion, states that no response is required.

81.   Admits that Amendment No. 1 to the APA added Section 1.2(e) (correctly quoted in
      part in ¶ 81); but denies each and every other allegation of ¶ 81; and to the extent ¶ 81
      purports to state a legal conclusion, states that no response is required.

82.   Admits the allegations of the first sentence of ¶ 82; but denies the second sentence of
      ¶ 82 to the extent it alleges that the intellectual property licenses and Sun and
      Microsoft agreements required Novell's prior approval or were "SVRX Licenses";
      and to the extent ¶ 82 purports to state a legal conclusion, states that no response is
      required.

**Alleged Breach of Amendment No. 2**

83.    Admits that, without quoting any part of Subsection B5 of Amendment No. 2 to the APA, Novell correctly and selectively quotes in part the other four Subsections; denies each and every other allegation of ¶ 83; and to the extent ¶ 83 purports to state a legal conclusion, states that no response is required.

84.    Admits that Novell accurately quotes in part Subsection B4 of Amendment No. 2 to the APA; and to the extent ¶ 84 purports to state a legal conclusion, states that no response is required.

85.    Admits the allegations of the first sentence of ¶ 85; admits that the second sentence of ¶ 85 correctly quotes in part the 1994 Sun Agreement; admits that, through that agreement, Unix Systems Laboratories (USL) granted Sun Microsystems certain rights to UNIX System V technology that Sun had previously licensed through UNIX software and sublicensing agreements with USL's predecessor, AT&T; denies each and every other allegation of ¶ 85; and to the extent ¶ 85 purports to state a legal conclusion, states that no response is required.

86.    Admits that ¶ 86 correctly quotes in part a letter from SCO to Novell dated February 5, 2004; but denies each and every other allegation and the characterizations of ¶ 86.

87.    SCO admits that the first sentence of ¶ 87 correctly quotes in part a selected phrase in the 2003 Sun Agreement; denies each and every other allegation of ¶ 87; and to the extent ¶ 87 purports to state a legal conclusion, states that no response is required.

88.    Admits that SCO did not notify, consult with, or seek the prior approval of Novell prior to concluding the transaction with Sun set forth in the 2003 Sun Agreement; but

denies each and every other allegation and the characterizations of ¶ 88, including the
allegation that that transaction was a "potential buy-out" under Amendment No. 2 to
the APA.

**Alleged Breach of Section 4.16(b) of the APA**

89.    Admits that Novell correctly quotes in part Section 4.16(b) of the APA, but denies
that this is the only pertinent part of that section.

90.    Admits that SCO sent letters to various companies, including IBM and Sequent,
setting forth the statements therein; but denies each and every other allegation in ¶ 90,
including the allegation that the licenses referenced in those agreements were "SVRX
Licenses."

91.    Admits that SCO terminated its software license agreements with IBM and Sequent;
admits that it sent Sequent an August 11, 2003 letter of termination; but denies each
and every other allegation in ¶ 91, including especially the allegation that the
terminated licenses were "SVRX Licenses."

92.    Admits that SCO did not seek Novell's prior written consent to terminate the IBM
and Sequent licenses; admits that Novell sent letters to SCO on June 9, 2003 and
October 7, 2003, setting forth the statements therein; but denies each and every other
allegation of ¶ 92, including especially the allegation that the terminated licenses
were "SVRX Licenses."

93.    Admits that Novell correctly quotes in part Section 4.16(b) of the APA, but denies
that this is the only pertinent part of that section; denies each and every other

allegation of ¶ 93; and to the extent ¶ 93 purports to state a legal conclusion, states that no response is required.

94.     Denies the allegations of ¶ 94; and to the extent ¶ 94 purports to state a legal conclusion, states that no response is required.

95.     Admits that SCO refuses to acknowledge Novell's purported right to take certain actions on "its own behalf"; denies the allegation that Novell has that right; and to the extent ¶ 95 purports to state a legal conclusion, states that no response is required.

96.     Admits that Section 4.16(b) of the APA (correctly quoted in part in ¶ 96) sets forth the terms therein; but denies each and every allegation of ¶ 96, including any attempt by Novell to define the term "SVRX Licenses" to include anything other than royalties that SCO collected from then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements.

97.     Admits that SCO entered into agreements with Linux end-users, Sun, Microsoft, and others; but denies each and every other allegation in ¶ 97, including the allegation that those agreements are "SVRX Licenses."

98.     Admits that SCO never sought approval from Novell to enter into the intellectual property licenses or Sun and Microsoft agreements; denies each and every other allegation of ¶ 98; and to the extent ¶ 98 purports to state a legal conclusion, states that no response is required.

99.     Denies the allegations of ¶ 99; and to the extent ¶ 99 purports to state a legal conclusion, states that no response is required.

## FIRST CLAIM FOR RELIEF

100. Repeats and re-alleges its answers to the allegations of all prior paragraphs as if fully set forth herein.

101. Denies the allegations of ¶ 101; and to the extent ¶ 101 purports to state a legal conclusion, states that no response is required.

102. Denies the allegations of ¶ 102; and to the extent ¶ 102 purports to state a legal conclusion, states that no response is required.

103. Denies the allegations of ¶ 103; and to the extent ¶ 103 purports to state a legal conclusion, states that no response is required.

104. Denies the allegations of ¶ 104; and to the extent ¶ 104 purports to state a legal conclusion, states that no response is required.

## SECOND CLAIM FOR RELIEF

105. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

106. Admits that Novell sent SCO a November 21, 2003 letter requesting the information set forth therein, but denies each and every other allegation in ¶ 106 (including subparagraphs a-d).

107. Denies the allegations of ¶ 107; and to the extent ¶ 107 purports to state a legal conclusion, states that no response is required.

108. Denies the allegations of ¶ 108; and to the extent ¶ 108 purports to state a legal conclusion, states that no response is required.

109. Denies the allegations of ¶ 109; to the extent ¶ 109 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 109.

## THIRD CLAIM FOR RELIEF

110. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

111. Denies the allegations of ¶ 111; and to the extent ¶ 111 purports to state a legal conclusion, states that no response is required.

112. Denies the allegations of ¶ 112; and to the extent ¶ 112 purports to state a legal conclusion, states that no response is required.

113. Denies the allegations of ¶ 113; to the extent ¶ 113 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 113.

114. Denies the allegations of ¶ 114; to the extent ¶ 114 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 114.

115. Admits that, as of April 30, 2006, SCO had a total of $9,524,000 in cash and cash equivalents, $9,100,000 in available-for-sale marketable securities, and $3,340,000 in restricted cash, of which $140,000 is designated to pay for experts, consultants, and other litigation expenses, and the remaining $3,200,000 of restricted cash is payable to Novell for its retained binary royalty stream; denies each and every other allegation in

¶ 115; to the extent ¶ 115 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 115.

116. Denies the allegations of ¶ 116; to the extent ¶ 116 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 116.

## FOURTH CLAIM FOR RELIEF

117. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

118. Denies the allegations of ¶ 118; and to the extent ¶ 118 purports to state a legal conclusion, states that no response is required.

119. Denies the allegations of ¶ 119; to the extent ¶ 119 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 119.

120. Denies the allegations of ¶ 120; and to the extent ¶ 120 purports to state a legal conclusion, states that no response is required.

121. Denies the allegations of ¶ 121; to the extent ¶ 121 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 121.

122. Admits that, after Santa Cruz thwarted Novell's unauthorized unilateral attempt in April 1996 to give IBM a buyout of its UNIX binary-royalty obligations and expand IBM's UNIX source code rights, Novell agreed to certain mutual obligations set forth in Amendment No. 2 concerning future potential buyouts by SVRX licensees of the

binary royalties described in ¶¶ 15 and 152 above; denies each and every other allegation of ¶ 122; and to the extent ¶ 122 purports to state a legal conclusion, states that no response is required.

123. Denies the allegations of ¶ 123; to the extent ¶ 123 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 123.

## FIFTH CLAIM FOR RELIEF

124. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

125. Admits the allegation of ¶ 125.

126. Denies the allegations of ¶ 126; and to the extent ¶ 126 purports to state a legal conclusion, states that no response is required.

127. Admits that, under the APA, SCO was obligated to administer the intended binary royalty stream described in ¶ 15, above; denies each and every other allegation of ¶ 127; and to the extent ¶ 127 purports to state a legal conclusion, states that no response is required.

128. Denies the allegations of ¶ 128; and to the extent ¶ 128 purports to state a legal conclusion, states that no response is required.

129. Denies the allegations of ¶ 129; to the extent ¶ 129 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 129.

130. Denies the allegations of ¶ 130; to the extent ¶ 130 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 130.

## SIXTH CLAIM FOR RELIEF

131. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

132. Denies the allegations of ¶ 132; and to the extent ¶ 132 purports to state a legal conclusion, states that no response is required.

133. Denies the allegations of ¶ 133; and to the extent ¶ 133 purports to state a legal conclusion, states that no response is required.

134. Denies the allegations of ¶ 134; and to the extent ¶ 134 purports to state a legal conclusion, states that no response is required.

135. Denies the allegations of ¶ 135; to the extent ¶ 135 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 135.

136. Denies the allegations of ¶ 136; to the extent ¶ 136 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 136.

## SEVENTH CLAIM FOR RELIEF

137. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

138. Admits that, under Sections 1.2 and 4.16 of the APA, SCO agreed to collect and pass through to Novell 100% of the royalties that SCO then collected from then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements; admits that, under Section 4.16, Novell agreed to pay SCO 5% of such binary royalties as an administrative fee; admits that ¶ 138 correctly (and once redundantly) quotes in part selected portions of Sections 1.2(b) and 4.16(a) of the APA; denies each and every other allegation of ¶ 138; and to the extent ¶ 138 purports to state a legal conclusion, states that no response is required.

139. Denies the allegations of ¶ 139; and to the extent ¶ 139 purports to state a legal conclusion, states that no response is required.

140. Denies the allegations of ¶ 140; and to the extent ¶ 140 purports to state a legal conclusion, states that no response is required.

141. Denies the allegations of ¶ 141; and to the extent ¶ 141 purports to state a legal conclusion, states that no response is required.

142. Denies the allegations of ¶ 142; and to the extent ¶ 142 purports to state a legal conclusion, states that no response is required.

143. Denies the allegations of ¶ 143; to the extent ¶ 143 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 143.

## EIGHTH CLAIM FOR RELIEF

144. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

145. Denies the allegations of ¶ 145; and to the extent ¶ 145 purports to state a legal conclusion, states that no response is required.

146. Denies the allegations of ¶ 146; and to the extent ¶ 146 purports to state a legal conclusion, states that no response is required.

147. Denies the allegations of ¶ 147; and to the extent ¶ 147 purports to state a legal conclusion, states that no response is required.

148. Denies the allegations of ¶ 148; and to the extent ¶ 148 purports to state a legal conclusion, states that no response is required.

149. Denies the allegations of ¶ 149; to the extent ¶ 149 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 149.

150. Denies the allegations of ¶ 150; to the extent ¶ 150 purports to state a legal conclusion, states that no response is required; and states that Novell is not entitled to the relief it seeks in ¶ 150.

## NINTH CLAIM FOR RELIEF

151. Repeats and re-alleges its answers to all prior paragraphs as if those answers were fully set forth herein.

152. Admits that, under Sections 1.2 and 4.16 of the APA, SCO agreed to collect and pass through to Novell 100% of the royalties that SCO then collected from then-existing SVRX licensees for their distribution of binary-code versions of System V products pursuant to sublicensing agreements; admits that, under Section 4.16, Novell agreed to pay SCO 5% of such binary royalties as an administrative fee; admits that SCO was

responsible for making additional payments to Novell for products unrelated to the SVRX licenses and this litigation; denies each and every other allegation of ¶ 152; and to the extent ¶ 152 purports to state a legal conclusion, states that no response is required.

153. Admits the allegations of the first two sentences and the main clause of the third sentence of ¶ 153 to the extent the terms "SVRX royalties" and "SVRX licenses" refer only to the intended binary royalty stream described in ¶¶ 15 and 152, above; denies the each and every allegation of ¶ 153; and to the extent ¶ 153 purports to state a legal conclusion, states that no response is required.

154. Admits the allegations of the first sentence of ¶ 154 to the extent they refer to the intended binary royalty stream described in ¶ 15 and ¶ 152, above, and to payments for products unrelated to the SVRX licenses and this litigation; denies each and every other allegation of ¶ 154; and to the extent ¶ 154 purports to state a legal conclusion, states that no response is required.

155. Denies the allegations of ¶ 155; and to the extent ¶ 155 purports to state a legal conclusion, states that no response is required.

156. Admits the allegations of ¶ 156 only to the extent the phrase "royalty payments to SCO under the SVRX Licenses" is limited to the binary royalties described in ¶¶ 15 and 152, above.

157. Admits the allegations of ¶ 157 only to the extent the phrase "royalty payments under the SVRX licenses" refers only to the binary royalty stream described in ¶¶ 15 and 152, above.

158. Admits that SCO did not seek Novell's approval before entering into the intellectual property agreements or Sun and Microsoft agreements; admits that, because those agreements are not "SVRX Licenses" as intended under the APA, SCO did not report those agreements to Novell, did not provide Novell with documentation related to them, and did not pass through to Novell payments corresponding to them; denies each and every other allegation and the characterizations of ¶ 158; and to the extent ¶ 158 purports to state a legal conclusion, states that no response is required.

159. Admits that the binary royalty payments due to Novell under the APA are calculated by formula and that SCO directly receives those payments; denies each and every other allegation and the characterizations in ¶ 159; and to the extent ¶ 159 purports to state a legal conclusion, states that no response is required.

160. Denies the allegation that SCO owes Novell monies under the APA, and states that Novell is not entitled to an accounting.

### PRAYER FOR RELIEF

161. States that the enumerated ¶¶ 161-178 of Novell's Prayer for Relief include requests for relief as to which no response is required. To the extent a response is required, SCO denies that Novell is entitled to the requested or any relief.

### GENERAL DENIAL

SCO denies each and every allegation in Novell's Amended Counterclaims that is not specifically admitted herein.

## AFFIRMATIVE DEFENSES

SCO hereby asserts the following separate defenses to the purported causes of action in Novell's Counterclaims, without assuming any burden of proof that rests with Novell with respect to such defenses.

### First Defense

Novell's slander-of-title counterclaim is barred by the absolute and conditional privileges enjoyed by SCO.

### Second Defense

Novell's slander-of-title counterclaim is barred by the First Amendment to the United States Constitution.

### Third Defense

Novell's counterclaims are barred, in whole or in part, by the doctrine of waiver.

### Fourth Defense

Novell's counterclaims are barred, in whole or in part, by the doctrines of laches and delay.

### Fifth Defense

Novell's counterclaims are barred, in whole or in part, by the doctrine of estoppel.

### Sixth Defense

Novell's counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

### Seventh Defense

Novell's counterclaims are barred, in whole or in part, by the applicable statute of limitations.

**Eighth Defense**

Novell has failed to mitigate its alleged damages, and accordingly, any damages awarded to Novell should be reduced to the extent of its failure to mitigate.

**Ninth Defense**

Novell's counterclaims are barred, in whole or in part, by lack of causation. To the extent that Novell alleges (contrary to fact) that it has suffered damages, such damages were not proximately caused by any act or omission of SCO, or were not reasonably foreseeable, or both.

**Tenth Defense**

Novell's Amended Counterclaims fails to state a claim upon which relief can be granted.

WHEREFORE, plaintiff and counterclaim-defendant SCO demands judgment dismissing Novell's counterclaims with prejudice, along with such other and further relief as the Court deems just and proper.

DATED this 16th day of October, 2006.

<div style="margin-left:40%">

Respectfully submitted,

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Stephen N. Zack
Robert Silver
Stuart H. Singer
Edward Normand


By    /s/ Brent O. Hatch

*Counsel for The SCO Group, Inc.*

</div>

29

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that on the 16th day of October, 2006, a

true and correct copy of the foregoing SCO's Reply to Novell's Amended Counterclaims was

served on Defendant Novell, Inc., by CM/ECF to:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482


_____/s/ Brent O. Hatch_____