MORRISON & FOERSTER LLP
Michael A. Jacobs (*pro hac vice*)
Kenneth W. Brakebill (*pro hac vice*)
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT  84101
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697

**Attorneys for Defendant & Counterclaim-Plaintiff Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff & Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant & Counterclaim-Plaintiff. | **OPPOSITION TO SCO'S MOTION FOR EXPEDITED STAY OR CONTINUANCE**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

SCO presents an extraordinary request for delay. It seeks to defer this case for many months while it burns through the scant remaining cash assets on its balance sheet. SCO proposes to stay the entire *SCO v. Novell* litigation until completion of the *SCO v. IBM* case or, in the alternative, to postpone for up to six months the resolution of Novell's currently-pending petition for dispositive or injunctive relief and the upcoming year-old fact discovery deadline.[1] Because SCO's proposals lack good cause and would unfairly prejudice Novell, they should be denied. At most, the Court should adopt the counterproposal offered by Novell and rejected by SCO during the meet and confer process.

Among other things, SCO effectively asks the Court to deny Novell's injunction motion by delaying briefing and hearing on Novell's September 29, 2006 Motion for Partial Summary Judgment or Preliminary Injunction ("Novell's Motion") — a motion that concerns the narrow issue of whether Novell is entitled to a constructive trust comprising the monies SCO collected from its 2003 licenses with Sun and Microsoft.[2] In doing so, however, SCO noticeably fails to address the very issues that would inform the Court's decision on injunctive relief. For example, SCO brushes aside its dire financial condition, overlooking that the constructive trust proceeds sought through Novell's Motion will be substantially depleted (or possibly gone) after the duration of SCO's proposed stay. Moreover, SCO neglects to offer even a hint as to how it is likely to succeed on the merits of the claims at issue in Novell's Motion.

Finally, SCO's eleventh-hour attempt to prolong fact discovery for six months — and thereby impose new discovery obligations on Novell — is unwarranted. SCO has known of the November 1, 2006 fact discovery deadline in this case for nearly a year. During this time, SCO had a full and fair opportunity to conduct discovery. SCO's admitted decision to conduct little

---

[1] During the parties' meet and confer concerning SCO's motion, SCO's counsel proposed to stay the entire District Court litigation between SCO and Novell.

[2] In its public filings, SCO valued the amounts it received from the Sun and Microsoft licenses at $25,846,000. (Jacobs Declaration in Support of Novell's Motion ("Jacobs Decl."), PACER Nos. 150-151, Ex. 7 at 9.)

2

discovery from April 2006 to August 2006 and SCO's apparent inability to sufficiently plan for its long-known deadlines in the IBM case are inadequate reasons to impose these new discovery burdens on Novell and substantially delay resolution of this case.

      A.    **Novell's Motion for Partial Summary Judgment or Preliminary Injunction Is Timely and Should Be Adjudicated Immediately.**

Eschewing the merits of Novell's Motion and superficially dismissing any urgency in light of SCO's financial state, SCO argues that delay of Novell's Motion is acceptable because Novell "waited for years" to file its injunction request and because Novell's summary judgment request is "premature." On the contrary, Novell's Motion is a timely-filed response to SCO's production of previously-undisclosed discovery and Novell's recent amendment of its pleadings to clarify its legal theories concerning this discovery.

For almost three years, SCO hid the Sun and Microsoft licenses that are the basis of Novell's Motion. Indeed, beginning in 2003, Novell repeatedly requested information concerning these licenses so that Novell could verify SCO's compliance with its obligations to administer collection of SVRX Royalties under the 1995 Asset Purchase Agreement, as amended. SCO refused. Although SCO finally produced these two licenses in February of this year (among 650,000 other pages of documents), SCO simultaneously filed a Second Amended Complaint that raised new issues that were subject to arbitration. When Novell then moved to stay the arbitrable issues, SCO argued that Novell had waived its right to seek a stay by making "substantial use of the Court's resources" — including by filing motions with this Court.[3] SCO also specifically pointed to Novell's receipt of SCO's voluminous production containing the Sun and Microsoft licenses (*i.e.*, the licenses at issue in Novell's Motion) as proof that Novell was

---

[3] *See* SCO's Memorandum in Opposition to Novell's Motion to Stay ("SCO's Opp. Mem."), PACER No. 156, at 2 ("[B]y virtue of its lengthy and substantial participation in this litigation, including its numerous requests for and receipt of substantial discovery, Novell has waived any purported right to its requested stay."), and 12 ("[T]he litigation machinery has been substantially invoked. The parties, particularly Novell, have made <u>substantial</u> use of the Court's resources. They have briefed and litigated, and the Court has adjudicated, [various motions].")

substantially using the litigation process and had thereby waived any right to stay. (SCO's Opp. Mem. at 12 n.5.)

Once the Court issued its stay order in late August, thereby disposing of SCO's waiver argument, Novell moved quickly to get its Motion on file. Novell's counsel contacted counsel for SCO with Novell's proposed counterclaims relating to the Sun and Microsoft licenses. (Ex. 1 at 9/7/06 Brakebill e-mail to Normand.) Two weeks later, after Novell diligently attempted to procure SCO's stipulation, SCO agreed not to oppose the filing of Novell's amended counterclaims. (*Id*. at 9/19/06 Normand e-mail to Brakebill.) Three days later, this Court approved the filing of those counterclaims. (9/22/06 Order Granting Motion for Leave to File Amended Counterclaims, PACER No. 141.) Novell served them on SCO the following business day. Novell filed its Motion four days thereafter.[4] The timing of Novell's Motion is thus not, as SCO claims, the product of Novell's unnecessary delay in seeking preliminary relief — much less part of any nefarious plan by Novell (contrived with IBM's assistance) to "bind SCO's hands" in the IBM litigation by filing around the time of summary judgment deadlines in the IBM case.

In addition, Novell's request for summary judgment is not premature. Rather, it is ripe for consideration. Novell's dispositive motion seeks relief based on two new causes of action (*i.e.*, breach of fiduciary duty and conversion) and two previously-existing causes of action (*i.e.*, accounting and restitution). Each of these causes of action concern (1) the <u>same</u> transactions and occurrences that were pled in Novell's original counterclaims — namely, SCO's 2003 licenses with Sun and Microsoft and SCO's failure to remit to Novell the monies SCO collected from these licenses, and (2) the <u>same</u> contractual provisions that were pled in Novell's original

---

[4] As discussed, Novell's motion for preliminary relief concerns only the non-stayed issue of whether SCO improperly breached its fiduciary duties to Novell by wrongfully converting the monies SCO collected from its 2003 licenses with Sun and Microsoft instead of passing them through to Novell. This motion does not entail consideration of any stayed issues such as Novell's Linux-related activities or Novell's alleged infringement of SCO's purported copyrights, as SCO suggests. (*See* SCO's Mot. for Expedited Stay, PACER No. 156, at 3-4.)

counterclaims as the basis for SCO's obligations to remit to Novell — that is, sections 1.2 and 4.16 of the Asset Purchase Agreement.  Indeed, contrary to SCO's statement that there has been "no discovery specific to" the new causes of action at issue in Novell's Motion, months ago both parties propounded written discovery on the Sun and Microsoft facts at issue.  (*See, e.g*., Ex. 2, SCO's 1/11/06 Request for Production Nos. 27, 29-30; Ex. 3, Novell's 12/14/05 Requests for Production Nos. 6-15; Ex. 4, Novell's 12/30/05 Interrogatories 1-2.)  Moreover, Novell's September 2006 discovery requests do not make Novell's summary judgment motion premature.  Aside from a limited numbers of Requests for Admission asking SCO to admit undisputed terms in the Sun and Microsoft licenses and the undisputed fact that SCO did not give Novell those licenses until this litigation, Sun and Microsoft are not the focus of these requests.

Finally, SCO's quick dismissal of its deteriorating financial condition highlights SCO's failure to understand the need for immediate adjudication of Novell's Motion.  SCO's financial position is more tenuous now than ever.  Although SCO's liquid assets (*i.e.*, cash, cash equivalents, and available-for-sale marketable securities) were somewhat higher on July 31, 2006, as compared to October 31, 2005, SCO fails to put this fact into proper context.[5]  Immediately following October 31, 2005, SCO raised over $10 million in cash from existing investors and a member of SCO's Board of Directors.  (Jacobs Decl., PACER Nos. 150-151, Ex. 23 at 13.)  Thus, SCO's cash position as of July 31, 2005 is not a reflection of growing revenues, increased profitability, or a bright financial future for SCO.

A more detailed examination of SCO's overall financial position reveals that SCO's financial picture has been steadily darkening since October 31, 2005.  Over the ensuing nine months, its total assets plummeted, from $28,948,000 to $23,472,000 — a sum less than the total monies SCO collected from the 2003 licenses with Sun and Microsoft.  (*Id*. at 3, 41.)  Over this

---

[5] SCO's liquid asset amounts at both points in time constitute a mere portion (40% and 54%, respectively) of the $25,846,000 in Sun and Microsoft revenues for which Novell seeks a constructive trust.  (Jacobs Decl., PACER Nos. 150-151, Ex. 23 at 3.)

same period, SCO's revenues declined 20% (to just $21,890,000) as compared to the same period in SCO's prior fiscal year. (*Id*. at 4.) In this period SCO also devoured nearly 65% of its restricted cash supply, which dropped to just $2,010,000 as of July 31, 2006, and burned cash on an operating basis at a rate of nearly $800,000 a month. (*Id*. at 3-5.) Absent an immediate hearing on Novell's Motion, Novell will be irreparably prejudiced in that SCO will have little to no cash assets left to satisfy Novell's claims for relief.

      **B.    There Is No Good Cause to Impose New Discovery Obligations On Novell By Extending Fact Discovery Six Months.**

SCO's proposal to extend the fact discovery period in this case lacks good cause. The fact that SCO may be busy with deadlines relating to "the impending IBM trial" does not excuse the fact that SCO has known of its competing demands in the two cases for a long period of time. SCO has known of the November 1, 2006 fact discovery cutoff in this case for nearly a year, when it negotiated and agreed on this deadline. (12/1/05 Attorney's Planning Meeting Report, PACER No. 84, at 3.) It has known of the trial schedule in the IBM case for nearly 15 months. (*SCO v. IBM* 7/1/05 Order, PACER No. 466, at 4-6.) SCO also has been aware of its ongoing summary judgment deadlines in the IBM case for at least four months. (*SCO v. IBM* 6/8/06 Stipulation Re Amendment to Scheduling Order, PACER No. 694, at 2.) Yet, SCO failed to seek an extension until days before the discovery cutoff. Extending the fact discovery cutoff at this late stage will have the prejudicial impact of imposing new discovery burdens on Novell as SCO seeks to serve new discovery to which Novell would not otherwise be obliged to respond.

Novell also should not be penalized for SCO's failure to conduct timely discovery over the last year. For example, after SCO filed its Second Amended Complaint in February of this year, it inexplicably waited until the final days of discovery to (untimely) serve numerous discovery requests and interrogatories relating, in part, to that new pleading. *See Bolden v. City of Topeka*, 441 F.3d 1129, 1149-51 (10th Cir. 2006) (affirming district court's denial of motion to extend discovery deadline where lower court had found untimely and "null" the written discovery requests served by Plaintiff during the thirty-day window preceding the court-ordered

6

deadline to complete discovery). The fact that Novell's stay motion was pending from April to August 2006 does not excuse SCO's dilatory conduct. Like Novell, SCO could have served new discovery at any time between the Court's entry of its stay order on August 21, 2006 and the 30-day window preceding discovery's close on November 1, 2006. SCO chose not to. SCO's apparent neglect should not be rewarded by effectively reopening discovery, and thereby imposing new obligations on Novell, for another six months.

Finally, Novell's recent amended counterclaims do not open the door to extending the fact discovery period, either generally or for the more limited purpose of discovery on the new causes of action. The changes in Novell's new counterclaims are limited in nature. Although Novell added two causes of action and clarified two existing claims, these modifications concerned previously-pled transactions in 2003 between SCO, Sun and Microsoft. The parties engaged in fact discovery on these underlying transactions months ago.

### C. Novell Would Agree to the Limited Time Extension Set Forth in its Counterproposal Rejected By SCO.

During the parties' meet and confer on SCO's motion, Novell offered SCO a good faith counterproposal providing for certain extensions of time. (Ex. 5 at 10/10/06 Brakebill e-mail to Normand.) For example, Novell extended SCO the professional courtesy of an approximate 2-week time extension to file its opposition to Novell's Motion, provided that the extension would not be used against Novell in its petition for preliminary relief. (*Id*.) SCO refused Novell's offer.

Novell also offered to extend the deadline to complete fact discovery concerning discovery requests that were timely served under the Court's December 6, 2005 Scheduling Order and Order Vacating Hearing to January 17, 2007. This would include accommodation for the parties to complete their noticed depositions by the same date. SCO again refused.

Novell's counterproposal is fair and reasonable and the Court should adopt Novell's counterproposal if it is inclined to grant any scheduling extensions at all.

DATED: October 18, 2006

                                                  ANDERSON & KARRENBERG

                                                  /s/  Heather M. Sneddon
                                                Thomas R. Karrenberg
                                                John P. Mullen
                                                Heather M. Sneddon

                                                -and-

                                                MORRISON & FOERSTER LLP
                                                Michael A. Jacobs (*pro hac vice*)
                                                Kenneth W. Brakebill (*pro hac vice*)

                                                **Attorneys for Novell, Inc.**