# EXHIBIT 2

Dockets.Justia.com

## OPERATING AGREEMENT

· This OPERATING AGREEMENT (the "Operating Agreement") is made by and between The Santa Cruz Operation, Inc., a California corporation ("SCO") and Novell, Inc., a Delaware corporation ("Novell"), SCO and Novell being referred to herein collectively as the "Parties." The effective date of this Operating Agreement shall be the Closing Date as defined in the September 19, 1995 Asset Purchase Agreement between the parties.

### RECITALS

A.    The Parties have executed an Asset Purchase Agreement providing for the transfer of certain assets from Novell to SCO relating to the UNIX operating system as more specifically described therein (the "Asset Purchase Agreement").

B.    In connection with the entering into of the Asset Purchase Agreement, the Parties each deem it to be in their respective best interests to provide for an orderly transition of the Business (as such term is defined in the Asset Purchase Agreement), and to set out their mutual understanding as to how that business is to be transferred.

NOW, THEREFORE, in consideration of foregoing and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    OBJECTIVES.  The Parties objectives in entering into this Operating Agreement are as follows:

a.    Provide seamless UnixWare and OpenServer customer migration.

b.    Provide a clear migration path for customers to a P7 based 64-bit UNIX system product.

c.    Facilitate a rationalization and unification of Intel-based UNIX systems that is endorsed by SCO and Novell customers and the industry.

d.    Obtain SCO and Novell customer industry endorsement and support.

e.    Endorsement by SCO of NetWare and NetWare Services.

f.    Create a consolidated Intel UNIX product that will provide world class applications services and integration with NetWare and NetWare services.

AJAC EDS-STUF-FINAL:OASCI203 WPD

**001**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010141

2.    PRODUCT DEFINITION AND MIGRATION STRATEGY.  For purposes of this Operating Agreement, "Merged Product" shall have the meaning set forth in Exhibit A hereto.  Exhibit B sets out a Product Road Map for the Merged Product.  Exhibit C sets out the Merged Product Road Map Policies and Actions.  In order to achieve the objectives set forth in Section 1. above, the Parties hereby agree that the product migration strategy should be as follows:

a.    Major subsystems of the Merged Product should be based primarily on one existing product (i.e., UnixWare or OpenServer) in order to minimize costs to produce the product.

b.    UnixWare 2.1 ("Eiger") and OpenServer Release 5.1 ("Comet") will be used as the basis of the Merged Product.

c.    Work on enhancements to existing products after the second quarter of 1996 should be subordinated to the creation and development of the Merged Product.

d.    Both Eiger and Comet must be viable migration paths to the Merged Product offering.

e.    The Merged Product must provide functionality above that of Eiger and Comet appropriate to the time frame of its release.

f.    The Merged Product will be offered in both source form and binary form.

g.    Maintenance releases on existing OpenServer and UnixWare products will continue as long as there is customer demand.

h.    The target release date of the Merged Product shall be within the first six months of 1997.

I.    SCO has stated it's intention to migrate to the 64 bit UNIX developed by HP in a timely manner.

3.    IMPLEMENTATION OF MIGRATION STRATEGY.  The Parties agree to take the following actions to implement the foregoing migration strategy:

a.    Include NetWare hooks and core technology into the Merged Product to support Novell's NetWare services.

b.    SCO and Novell shall take such steps as shall be reasonably necessary to ensure an integration of Novell Networking Services into SCO's UNIX System products.  SCO and Novell agree that the technology strategies and architectures of their relationship will be guided by the following four principles:

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK                    NOV 000010142

(i)    SCO and Novell shall exploit the core competencies of each company and delegate responsibility to the developers of each component.

(ii)    Reasonable access will be provided by each party to the other to information and processes in order to specify requirements for APIs and product evolution.

(iii)    SCO and Novell components must fit together into a single coherent system that delivers value to each of Novell's and SCO's customers.

(iv)    Decisions must be made in a timely manner.

c.    While the Parties shall seek to reach consensus in developing technology components of mutual interest, it is agreed by both SCO and Novell that there be one final arbiter for each component. To achieve this, leadership and responsibility for development of each system component shall be allocated as follows:

(i)    UNIX system APIs: SCO

(ii)    Networking APIs: Novell

Development responsibilities for the UNIX system APIs lies with SCO and Novell owns development of the Networking APIs.

d.    To support the evolution of interfaces in support of integrated Networking Services in UNIX system releases, SCO and Novell agree to form an Architecture Board and appoint two Chief Architects, one each for the UNIX system and Networked Computing, and identify a charter, by the end of the Transition Period. The Unix Chief Architect will be named by SCO, with the advice and consent of Novell, and the Networked Computing Chief Architect will be named by Novell, with the advice and consent of SCO. The Chief Architects will be charged with assuring architectural consistency and being final arbiters for technical decisions. In the event that either SCO or Novell disagrees with the decision of the Chief Architects or that the Chief Architects disagree, issues may be escalated to senior executives of SCO and Novell for resolution. The Architecture Board will be responsible for articulating and assuring the architectural integrity and system coherency of any API changes needed to support future SCO UNIX System offerings and future Novell Networking Services offerings. Additional members of the Architectural Board will include key technical team leaders (or delegates) and membership selection is expected to be made by the Chief Architects. SCO and Novell may form sub-groups of the Architecture Board in order to facilitate architectural consistency and ease of migration between SCO's UNIX system offerings and Novell's NetWare and Networking Services offerings.

003

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010143

(iv)    Why is this good for the customers?

    A.    A clear and compelling migration path from the present to the future being cooperatively implemented by multiple companies.

    B.    A single UNIX System with NetWare services will be supported by both existing and new OEMs, ISVs, IHVs and VARs.

    C.    Novell is the most successful networking company and SCO is the most successful packaged UNIX System company.

b.    <u>Product and Channel Strategy.</u>

(i)    As of the Closing Date, SCO will begin to distribute, offer, promote and market UnixWare through existing UnixWare distributor and reseller channels as well as through SCO's existing reseller channels. Novell will cease distributing all UnixWare product through its indirect channel and will also cease signing any new distribution agreements the day after the Closing Date, and will begin a migration of OEM and MLA/VLA/CLA UnixWare contracts to SCO to be completed by the end of the Transition Period. However, it is expected that certain governmental contracts and certain MLA/VLA/CLA contracts bundled with other Novell products will require additional time beyond the Transition Period.

(ii)    For any UnixWare stock in the Novell channel that is desired to be returned to Novell, Novell shall accept the return and credit the channel in accordance with the terms of Novell's existing distribution agreements.

(iii)    For the duration of the Transition Period, Novell agrees to allow SCO to use the Novell logo on UnixWare products subject to Novell's standard logo usage guidelines (which include prior Novell approval of any usage) until the products can be transferred to appropriate SCO trade dress.

(iv)    SCO will continue to offer OpenServer Release 5 in conjunction with UnixWare 2.x after the Closing Date. Additionally, SCO will begin offering Eiger binary and source offerings when it becomes available. SCO will also offer a binary and source offering of the Merged Product sometime within the first half of 1997. SCO shall have discretion to name and market this product as SCO deems appropriate.

(v)    SCO shall honor all existing Novell commitments to supply UnixWare 1.1.

**004**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010144

e.    Given the strategic importance of a unified set of APIs between the Merged Product and the 64-bit UNIX System product being developed by Hewlett Packard (the "White Box Product"), through the Hewlett Packard White Box Organization ("WBO"), SCO will work with Hewlett Packard ("HP"), and Novell will use commercially reasonable efforts to facilitate such interaction, to set up a process to ensure the definition of common interfaces between the Merged Product and the White Box Product as well as identification of compatibility interfaces required in the White Box Product.

f.    SCO understands that Novell has a similar relationship with HP where HP leads the 64-bit UNIX System technology activities and Novell leads the Networking activities. SCO agrees to work with HP to provide a migration path from the existing UNIX system to the 64-bit UNIX System technologies.

4.    <u>CONTINUING DEVELOPMENT OF UNIXWARE PRODUCTS BY NOVELL.</u> Effective as of the Closing Date, Novell will stop all UnixWare work except for products and activities SCO has contracted with Novell to continue, as defined in mutually agreed to Statements of Work defined in a separately executed Service Agreement.

5.    <u>TRANSITION PLAN.</u> The parties have established a transition team to transition the UNIX System and UnixWare business to SCO. The transition will be completed by February 29, 1996 (the "Transition Period").

If the transition is not fully complete by February 29, 1996 SCO can negotiate with Novell, which terms are to be defined, to perform services SCO is not yet prepared to undertake.

6.    <u>MARKETING MATTERS.</u>

a.    <u>Messages to Customers.</u> The Parties agree that the following key marketing messages will be the basis for the messages that are conveyed to the Parties' respective customers after announcement of the transactions contemplated by the Asset Purchase Agreement (including OEMs, Resellers, Small End-Users, Enterprise End-Users, Replicated Site End-Users, ISVs/IHVs, and Partners).

(i)    Creation of a standardized Intel UNIX business-critical application platform.

(ii)    SCO's endorsement of current NetWare products, and continued endorsement and commitment to Novell Network Services as the standard for next generation distributed OS.

(iii)    SCO and Novell will outline a road map for merging OpenServer 5, UnixWare, and Novell Network Services.

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK                    NOV 000010145

c.    Product Packaging.

    (i)    Commencing after the Closing Date. SCO plans to sell the UnixWare 1.1 and UnixWare 2.x product and may use existing Novell inventory with a SCO sticker on it. Once this stock is exhausted, SCO will be responsible for manufacturing all products in the UnixWare 1.1 and UnixWare 2.x product family and when SCO distributes the UnixWare 1.1 and UnixWare 2.x product that has been manufacturing by SCO, the SCO UnixWare 1.1 and UnixWare 2.x products will use the term "UnixWare" prominently on its product packaging, with a potential product naming scheme of "SCO UnixWare". For the SCO manufactured UnixWare 1.1 and UnixWare 2.x product. the Parties intend to change the Novell installation screen GIF file to a SCO file.

    (ii)    When SCO distributes Eiger, the SCO UnixWare 2.1 product will use the term "UnixWare" prominently on its product packaging, but since it is to be solely an SCO product. SCO will cease using the Novell name or logo in conjunction with marketing this product after the Transition Period.

d.    Product Positioning.  The Parties agree that general product positioning for SCO OpenServer 5. UnixWare 2.x. and NetWare is essential to reduce market confusion and ensure success of the respective SCO and Novell products. The Parties agree that the UNIX and NetWare product positioning is as described in existing Novell. UnixWare and NetWare sales tools such as the UnixWare 2 Sales Kit.

e.    Customer Support.  Novell and SCO agree that a primary objective is to provide UnixWare source and binary customer support at least at the same level of service as is presently provided by Novell. Commencing on the Closing Date. UnixWare Tier 1/2/3 and 4 customer support will be provided by SCO and be staffed by the current worldwide (Provo, Dusseldorf, Sydney. Tokyo and Florham Park tier 4 support) UnixWare support personnel on loan to SCO during the Transition Period) at SCO's cost. Commencing on the Closing Date. the UnixWare support phone lines will be answered as if the support is provided by SCO.  Commencing after the Transition Period. SCO will fully provide its own UnixWare support.  Details of this transition of support functions are included in the Service Agreement Support Statement of Work.

f.    Marketing Transition.

    Prior to the end of the Transition Period:

    (i)    Novell agrees to train an agreed upon number of SCO Marketing and Systems Engineering personnel in Santa Cruz. California on the current UnixWare

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010146

products (including, if desired by SCO, the UnixWare CNE classes) and provide "Train the Trainer" materials to SCO marketing and systems engineering.

(ii)     Novell agrees to transfer all UnixWare related electronic collateral (in Quark Express format if available), customer lists from product registration, advertising response, direct mail response or tradeshow leads, and WWW pages (in HTML format) to SCO.

(iii)    Novell agrees to administer the UnixWare Eiger beta program as currently planned from October 1, 1995 through the Closing Date, with the expectation that SCO will become increasingly involved throughout the Eiger beta period. Beta support will be supplied through the standard UnixWare support channel used by SCO.

(iv)     Novell agrees to provide "Train the Trainer" sessions to an agreed upon number of SCO Marketing and Systems Engineering and Technical Support for any features in UnixWare Eiger that are not part of UnixWare 2.0, including but not limited to new NetWare networking technologies.

(v)      Novell agrees to transfer all active UnixWare fulfillment contracts in effect as of the Closing Date to SCO and SCO agrees to use best efforts to keep the phone numbers "active" for at least one year since the current UnixWare fulfillment phone numbers will be present in advertisements and placed on the product packaging and will continue to generate customer interest in the UnixWare product.

(vi)     SCO agrees to work with UTG on UTG's administration of the UnixWare Eiger Source Code Early Access program.

(vii)    SCO agrees to continue the UnixWare branding program and transition this program in it's entirety from Novell to SCO.

(viii)   SCO agrees to consider establishing a publishing source for the "UnixWare" books published as part of the Novell Press series.

g.     <u>Joint Marketing Programs for UnixWare.</u>  With respect to joint marketing programs as they relate to UnixWare 2.0 and the UnixWare 2.0 OEMs and ISVs, the Parties agree as follows:

UAC EDS-STUF/FINAL OASCI203 WPD                    -7-

007

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010147

(i)   To continue on-going joint and cooperative marketing/technical support, including but not limited to training of sales force, technical support and systems engineering.

(ii)   To jointly undertake ISV recruiting activities as appropriate.

(iii)   To jointly undertake joint trade show activities as applicable.

Notwithstanding anything herein to the contrary, Novell's obligations pursuant to this Section 7(g) shall not exceed $100,000, and Novell's efforts shall not extend beyond the end of the Transition Period.

h.   Joint Marketing Programs for NetWare Networking Services. With respect to joint marketing programs as they relate to NetWare Networking Services that are provided as part of SCO's UNIX Products, the Parties mutually agree as follows:

(i)   To jointly undertake ISV recruiting activities as appropriate.

(ii)   To jointly undertake joint trade show activities as applicable.

(iii)   To investigate cooperative marketing with other Novell UNIX based products (i.e. GroupWise, TUXEDO, NetWare Connect Services, etc.) that may be provided as layered products for UnixWare 2.1 and the Merged Product.

i.   Industry Group Representations. SCO will replace Novell in participating on UNIX System related activities. Novell will continue its membership and representation in the various industry groups relating to networking activities.

k.   UnixWare Technology Group ("UTG"). SCO's intent is that there will be no significant restructuring of UTG's charter other than inclusion of OpenServer and related marketing activities for one (1) year from the date hereof.

7.   TRANSFER OF CONTRACTS AND BUSINESS RELATIONSHIPS. It is the intent of the Parties to transfer the agreements and associated rights and obligations which relate to Novell's UNIX System business to SCO. Novell will use commercially reasonable efforts to assist SCO in effecting such transfers or, if not transferable, to assist in finding alternative solutions.

Confidential - Subject to Protective Order,                                        NOV 000010148
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

a. <u>Channel Structure and Relationship.</u> In the cases where a channel partner relationship is integrated with NetWare, only the UNIX System aspect of these relationships will be transferred. These channels include:

      (i)     OEMs

      (ii)    Distributors

      (iii)   VARs

      (iv)   Direct

b. <u>Human Resource and Staff Transition Issues, Including Facilities.</u> The Parties agree that the staff associated with the UNIX System and UnixWare business are a valuable part of the UNIX System business. It is also agreed that there will be a need for SCO to have access to the UNIX System staff for some period of time during the Transition Period.

A process will be established for SCO to evaluate its UnixWare staffing needs. This process should include:

      (i)     SCO evaluation period of Novell staff.

      (ii)    SCO offer period for Novell staff.

There will be no commitment from Novell on the permanent transfer of staff to SCO.

c. <u>Subsidiary and Joint Venture Relationships.</u>

      (i)     UST- China. Novell will be transferring its equity in UST-China to Dascom (Holdings) Ltd. ("Dascom"), one of the joint venture parties in UST-China. SCO acknowledges and agrees that it may negotiate with Dascom and the other parties in UST-China for the purchase of equity in that joint venture.

           UnixWare 1.1/CE is included as a tranferred asset in Schedule 1.1(a). The UNIX System V, Release 4.2 license with UST-China is being tranferred to SCO as part of the SVRx license transfer. After the Closing Date, SCO may want to create a distribution agreement wit UST-China directly for UnixWare.

           SCO may contract with Novell's Asia-Pacific Support Center to provide support during the Transition Period.

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010149

(ii)    Novell-Japan ("Novell-KK"). Novell Japan will work with SCO in establishing a stronger presence in Japan. Novell Japan will cooperate with SCO Japan following the same conditions as set forth in this Operating Agreement. Due to the joint venture status of both Novell Inc. and SCO in Japan, both Japanese-based companies will enter into a contract based upon the US agreements to maintain the intent of the US agreement and define responsibilities in the future.

(iii)    Onward Novell. Onward Novell will not be transitioning to SCO.

d.    Contract Services Between Novell and SCO. Both Parties acknowledge that either company may contract with the other for development, support, service, administration, licensing administration, hardware and/or software certification, finance, education, legal, information services and marketing/product management during the Transition Period. The terms of these contracting services will be detailed in a "Services Agreement" Statement of Work to be completed by the Closing Date or as mutually agreed to by both Parties during the Transition Period.

8.    GENERAL PROVISIONS.

a.    Notices. All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by commercial delivery service, or mailed by registered or certified mail (return receipt requested) or sent via telecopy (with acknowledgment of complete transmission) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(i)    if to SCO, to:
The Santa Cruz Operation, Inc.
400 Encinal Street
Santa Cruz, CA
Attention: Steve Sabbath
Telecopy No.: (408) 425-7222

with a copy to:
Brobeck, Phleger and Harrison
2200 Geng Road
Two Embarcadero Place
Palo Alto, CA 94303
Attention: Ed Leonard

AJAC EDS-STUFFINAL.OASC1295 WPD                    -10-

**010**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010150

(ii)    if to Novell. to:

Novell, Inc.
122 East 1700 South
Provo, UT 84606
Attention: David Bradford
Telecopy No.: (801) 222-4441

with a copy to:

Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304
Attention: Larry W. Sonsini
Telecopy No.: (415) 496-4084

b.    <u>Term</u>. This Agreement shall commence on its Effective Date and shall terminate on the date of general release of the commercial version of the Merged Product.

c.    <u>Interpretation</u>. When a reference is made in this Agreement to Exhibits, such reference shall be to an Exhibit to this Agreement unless otherwise indicated. The words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation." Any table of contents and headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

d.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Party, it being understood that all Parties need not sign the same counterpart.

e.    <u>Entire Agreement</u>. This Agreement and the Exhibits hereto: (a) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings. both written and oral. among the parties with respect to the subject matter hereof; (b) are not intended to confer upon any other person any rights or remedies hereunder. unless expressly provided otherwise; and (c) shall not be assigned by operation of law or otherwise except as otherwise specifically provided.

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010151

f.    <u>Severability</u>.  In the event that any provision of this Agreement or the application thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect and the application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the parties hereto.  The parties further agree to replace such void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such void or unenforceable provision.

g.    <u>Other Remedies</u>.  The Asset Purchase Agreement contains certain remedies for non-performance hereunder.  Except as otherwise provided herein or therein, any and all remedies herein and therein expressly conferred upon a party will be deemed cumulative with and not exclusive of any other remedy conferred hereby, or by law or equity upon such party, and the exercise by a party of any one remedy will not preclude the exercise of any other remedy.

h.  .    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

i.    <u>Rules of Construction</u>.  The parties hereto agree that they have been represented by counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

AJAC EDS-STUFFINAL OASC1203 WPD                    -12-

**012**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010152

IN WITNESS WHEREOF, SCO and Novell have caused this Agreement to be signed by their duly authorized respective officers, all as of the date first written above.

THE SANTA CRUZ OPERATION, INC.

By: _____

Name: Alok Mohan

Title: Chief Executive Officer

NOVELL, INC.

By: _____

Name: R. Duff Thompson

Title: Senior Vice President Corporate Development

**013**

Confidential - Subject to Protective Order, SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010153

## EXHIBIT A

### Definition of Merged Product

The Merged Product will have the following attributes:

| Product Area | Technology Source |
|---|---|
| Application Interfaces | OpenServer and UnixWare applications will be supported |
| End User Interface/Sysadm Functionality | OpenServer GUI and framework with functionality for Sysadm being a superset of the Sysadm capabilities of OpenServer and UnixWare |
| NetWare Services | UnixWare based, updated, as appropriate, to most current version of NetWare |
| Base Operating System | UnixWare 2.1 base operating System with the addition of OpenServer compatibility and functionality |

The following describes the software base for areas of the Merged Product agreed to by SCO and Novell.

1. **Platform Support:**
   a. UnixWare's platform support will be used as the base in the Merged Product.
   b. Includes Platform Support Modules/Interfaces, MMU, process control, interrupts, etc.

2. **Virtual Memory:**
   a. UnixWare's Virtual Memory subsystem will be used as the base in the Merged Product.

3. **I/O Management:**
   a. UnixWare's I/O Management will be used as the base, i.e., UnixWare driver subsystems and interfaces will be used in the Merged Product.
   b. UnixWare binary driver compatibility will be maintained in the Merged Product.
   c. No SCO binary kernel driver compatibility will be provided.
   d. Need to develop source migration and porting guides to facilitate moving existing SCO drivers to UnixWare base. Developer programs will also need to be offered.
   e. SCO drivers or interfaces that will need to be moved to the Merged Product are those where no existing UnixWare driver with equivalent functionality exists.

AJAC  EDS-STUFF:FINAL:OASC1205.WPD

**014**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010154

    f.  The existing UnixWare product can be used between now and the availability of the Merged
        Product for driver porting.

    g.  UnixWare's disk partitioning scheme will be used as the base with support to enable reading
        of SCO filesystem partition information.

4.  **Volume Management:**
    a.  Veritas will be used for Volume Management providing:
       •  SCO can agree on suitable business terms with Veritas and ProLogic Corporation; and
       •  Novell does not disclose this direction prior to SCO finalizing their agreements with
          Veritas and ProLogic.

5.  **File Management:**
    a.  UnixWare's File Management will be used as the base in the Merged Product (vfs interfaces).
    b.  All existing UnixWare filesystem types will be provided in the Merged Product.
    c.  Vfs versions of the ProLogic HTFS and Compression file systems need to be added.
    d.  The Veritas filesystem will be used as the root filesystem providing:
       •  SCO can agree on suitable business terms with Veritas and ProLogic Corporation; and
       •  Novell does not disclose this direction prior to SCO finalizing their agreements with
          Veritas and ProLogic.
    e.  Novell and SCO will work out vfs++ extensions required to support NAFS.
    f.  Modifications to the UnixWare s5 file system might be needed to include SCO compatibility
        changes (bitmap freelist and clustering algorithms. long file names, symbolic links?).

6.  **Network/Communications Management:**
    a.  The UnixWare streams and tty subsystems will be used in the Merged Product.
    b.  No support will be provided for clist based drivers.
    c.  The version of tcp/ip used in the Merged Product will be the one that exhibits the best
        performance,  has the latest functionality level and the best business terms.
    d.  The NFS filesystem used in the Merged Product will be the UnixWare version.
    e.  The version of ipx/spx used will be need to be the latest and greatest version.
    f.  SCO's LAN Manager client and LAN Manager client needs to be ported to VFS: No
        requirement for internal SCO layered products to work unchanged on the Merged Product.
        (Note: Olivetti has ported LAN Manager to UnixWare).

7.  **Access Control:**
    a.  UnixWare's Access Control will be used as the base in the Merged Product.
    b.  The Merged Product will include UnixWare Access Control Lists.
    c.  The UnixWare Audit tools will be used in the Merged Product. providing a significant
        reduction in resource consumption on quiescent systems relative to OpenServer.
    d.  An application compatibility library will be provided in the Merged Product to map
        commonly used OpenServer security APIs onto underlying UnixWare functions.

**015**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010155

    e.  UnixWare authentication technology will be extended to support OpenServer functionality.
    f.  NDS integration and end-user administration will be included in the Merged Product.

8.  **Process Management:**
    a.  UnixWare's process management will be used as the base in the Merged Product.
    b.  Existing UnixWare scheduling policies are assumed to meet SCO needs.

9.  **Application Interface – System Calls:**
    a.  UnixWare's system calls will be used as the base in the Merged Product.
    b.  The Merged product will support compatibility with:
       •  Open DeskTop Release 3 COFF binaries;
       •  OpenServer Release 5 ELF binaries;
       •  UnixWare Release 2.1 ELF binaries.
    c.  Compatibility with XENIX 386 and pre-Open DeskTop Release 3 COFF binaries will be left as it currently exists in UnixWare 2.1.

10. **Libraries:**
    a.  The Merged Product will have a unified set of Libraries that provide OpenServer and UnixWare compatibility.
    b.  UnixWare's libraries will be used as the base in the Merged Product.

11. **Commands:**
    a.  UnixWare's command set will be used as the base in the Merged Product.
    b.  Additional OpenServer commands and command options will be provided for compatibility.
    c.  Level of Xenix compatibility that currently exists in UnixWare will be the same level included in the Merged Product.

12. **NetWare Services:**
    a.  UnixWare's NetWare services (NWS. NDS. NUC. ipx/spx stacks. ODI drivers, etc.) will be used in the Merged Product.
    b.  The "most current" version of NetWare Services will be provided for use in the Merged Product.

13. **SysAdm:**
    a.  OpenServer's SysAdm framework will be used as the base in the Merged Product.
    b.  The OpenServer and UnixWare SysAdm functionality will be merged into the OpenServer SysAdm framework in the Merged Product.

14. **GUI:**
    a.  OpenServer's GUI framework will be used as the base in the Merged Product.

**016**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010156

b. The Desktop Clients provided in the Merged Product will be a merge of the functionality of OpenServer and UnixWare clients.

c. The latest release of X11 Release 6.0 from the X Consortium (currently assumed to be R6.1, due in early 1996) will be used as the base software in the Merged Product.

d. The X-server used in the Merged Product will be based on the X11R6.1 version with a union of the existing extensions currently available in OpenServer and UnixWare.

e. The OpenServer video driver interfaces (NFB) will be used in the Merged Product. Existing drivers will be converted to use UnixWare's DLL mechanisms. OpenServer's Video Configuration Manager will be used with UnixWare's test mode extension.

f. Binary compatibility for UnixWare SI modules will not be provided in the Merged Product. Documentation will be provided in the AHDK to port UnixWare SI modules to NFB.

## 15. Development Environment:

a. UnixWare's development environment/kit will be used as the base in the Merged Product.

b. Cross-development environments that need to be included in the Merged Product development environment include:
- OpenServer Release 5 ELF (part of the Merged Product SDK)
- Open DeskTop Release 3 COFF (provided as a separate layered product?)
- UnixWare Release 2.1 ELF.

c. The ARGUS debugger will be provided as a separate layered product for use with the Merged Product.

## 16. Internationalization and Localization:

a. UnixWare's I18N/L10N framework will be used for I18N/L10N in the Merged Product.

b. Compatibility for UnixWare Release 2.1, OpenServer Release 5 and Open DeskTop Release 3 binaries will be included in the Merged Product.

## 17. Software Management:

a. OpenServer's custom command and UnixWare's pkg* commands will be provided in the Merged Product for compatibility.

b. A decision on the recommended tool set that should be used for package installation needs to be made. The decision should be based on feedback from current SCO and Novell ISVs and OEMs and support the directions needed in the evolution of the Intel binary standard.

## 18. License Management:

a. OpenServer's License Manager will be used as the base in the Merged Product.

## 19. Documentation:

a. The Merged Product will use the SCO help software for on-line documentation (modified Mosaic) and use documentation delivered in HTML format.

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010157

b. The documentation interchange format will be SGML using the DocBook DTD. This will apply to both documentation received from partners and to the source code delivered to OEMs.

c. The internal format of documentation will be flexible and driven by editing technology, conversion utilities and development cost considerations.

d. Migration tools for ISVs and OEMs will be provided to convert documentation formats.

e. Compatibility for any APIs advertised for use for on-line help or other documentation related interfaces will be provided in the Merged Product for both OpenServer and UnixWare.

20. **System and Product Installation:**

a. UnixWare's boot code and driver installation will be used as the base in the Merged Product.

b. The base for the Merged Product operating system installation will be the one that provides the lowest cost implementation path that meets the following requirements:

- uses the UnixWare utilities for base operating system setup and hardware configuration (i.e., disk setup, hardware autodetection etc.);
- supports compatibility with existing UnixWare 1.x, and 2.x HBA diskettes and Network installation;
- supports functionality that exists in both OpenServer and UnixWare implemented in response to customer needs (i.e., diskless support, replicated system install, factory production kit, OEM hardware differences etc.)
- provides the best end-user interface and ease of use.

c. Compaq SmartStart installation will be supported in the Merged Product.

d. The Merged Product installation will provide functionality and ease of use that is a superset of the existing OpenServer and UnixWare installation processes.

**018**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010158

EXHIBIT B
PRODUCT ROADMAP

| PRODUCT LINE | 4Q95 | 1Q96 | 2Q96 | 3Q96 |
|---|---|---|---|---|
| **OpenServer** | OpenServer Release 5<br>• French, German<br>Enhanced Merge<br>OpenServer Release 5.01 | OpenServer Release 5<br>• Japanese, Chinese | OpenServer Release 5.1<br>• Maintenance<br>• Unix '95 | Advanced Hardware Supp.<br>• ODI Driver Support<br>ISV Package<br>• Runtime/install support for<br>UnixWare Apps |
| **UnixWare** | UnixWare Release 2.03 | UnixWare Release 2.1<br>• EFIGSJ<br>• Compaq SmartStart<br>On-Line Data Manager<br>Enhanced Merge (2.0x,2.1) | UNIX '95 Add-on | Oracle Parallel Server Add-on |
| **Merged Product** | | | | Alpha Release: AHDK<br>• Existing UW/IHV Kit plus<br>OpenServer Driver Migration<br>Information<br>Alpha Release: SDK<br>• Merged Prod Software Dev Kit |

NOTES:

AHC\NB55.SFUPRINNALDJASC\2B3.WPD

019

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010159

EXHIBIT B
PRODUCT ROADMAP

| PRODUCT LINE | 4Q96 | 1Q97 | 2Q97 | 3Q97 |
|---|---|---|---|---|
| OpenServer | | | | |
| UnixWare | | | | |
| Merged Product | Beta Release: • Merged Product • AHDK • Software Dev Kit | | Merged Product Release 1 | |

| PRODUCT LINE | 4Q97 | 1Q98 | 2Q98 | 3Q98 |
|---|---|---|---|---|
| OpenServer | | | | |
| UnixWare | | | | |
| Merged Product | | | | Merged Product Release 2 • Features |

| PRODUCT LINE | 4Q98 | 1Q99 | 2Q99 | 3Q99 |
|---|---|---|---|---|
| Merged Product | | | | |
| White Box Product | WBO Release 1 | | | |

-2-

020

Confidential – Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010160

## EXHIBIT C
## MERGED PRODUCT ROAD MAP POLICIES

The following list documents policies and actions that have been agreed to by SCO and Novell regarding the Merged Product Road Map.

1. Maintenance updates will be provided for both OpenServer and UnixWare current products as long as there is customer demand.

2. 1Q96: The current plan is for Novell to complete UnixWare 2.1 for distribution only by SCO in 1Q96.

3. 2Q96: In order to focus on migration to the Merged Product, OpenServer Release 5.1 is being redefined to include only maintenance (i.e., no new major features).

4. 3Q96: Given the agreement that the Merged Product will not provide binary driver compatibility with existing OpenServer drivers and the proposed 1Q97 availability of the Merged Product, SCO marketing expressed the concern of the viability of the OpenServer product in terms of its hardware support through year end 1996. We agreed that it is not possible to technically solve this issue in the Merged Product, and agreed it is not necessary to solve it in areas where OpenServer already has a full complement of drivers (e.g., storage subsystem drivers). The only areas where it might be possible to allow a forward migration (with binary compatibility) are:

- Video drivers: If we agree to define the Merged Product to include the SCO X-environment and video driver interfaces/driver support. Closed: SCO and Novell are in agreement.
- Networking drivers: If it is possible to provide "transmogrified" ODI drivers for use on OpenServer in 2Q96.

Novell will provide information on UnixWare's ODI Driver transmogrification to SCO. SCO will investigate the technical feasibility and costs associated with providing transmogrified ODI driver for use on OpenServer.

5. 3Q96: Currently, ELF binaries created on OpenServer Release 5 are not compatible with SVR4 and UnixWare ELF binaries. The ISV Package described in the Road Map would provide a set of run-time libraries for use on OpenServer and the UnixWare packaging tool set that would allow binary applications developed on UnixWare to install and run on OpenServer 5. This would facilitate OpenServer ISVs' migration to the Merged Product by allowing them to create one "ELF based" version of their application that could be used on the "modified" (via installation of the ISV package) OpenServer product, the current UnixWare product and the ultimate target, the Merged Product. (I.e., ISVs could migrate to one ELF-based application sooner than the availability of the Merged Product).

We agreed that this package makes sense if it is:

- Technically achievable (might only be able to provide compatibility for 80% of the UW interfaces);
- Costs no more than 5 staff years
- Can be made available in 6 months
- If ISVs agree there is a need i.e.. the concern is based on major ISVs wanting to move to one ELF-based application prior to availability of the Merged Product. SCO will investigate if those ISVs already have UnixWare versions of their applications (in which case they can continue to use their COFF based

AJAC:\EDS-STUF\FINAL\OASC1203.WPD          -3-

**021**

**EXHIBIT C**
**MERGED PRODUCT ROAD MAP POLICIES**

application on OpenServer) and if they would really be moving away from their existing COFF based versions of the application (given the installed base of Open Desktop and OpenServer products) prior to the availability of the Merged Product.

6. 3Q96: SCO and Novell agree that work towards the 3Q96 ODM and OPS products should be continued.

7. 2Q96: SCO and Novell agree that an add-on UNIX '95 product should be provided for use with UnixWare 2.1 prior to the availability of the Merged Product.

AJAC:EDS-STUF:FINAL:OASC1203.WPD

**022**

Confidential - Subject to Protective Order,
SCO v. Novell, Civil Case No. 2:04CV00139 DAK

NOV 000010162

# EXHIBIT 3

Execution Copy

AMENDMENT NO 1

TO ASSET PURCHASE AGREEMENT

As of the effective date indicated below, the September 19, 1995 Asset Purchase Agreement (the "Agreement") between Novell, Inc. ("NOVELL") and The Santa Cruz Operation, Inc. ("SCO") is amended in the following respects.

A.      In the Recitals, Paragraph A, line 4 is amended to read as follows:

    - - other products ("Auxiliary Products") which are directly related to UNIX and UnixWare (collectively, the - -

B      In Section 1.1, the following new paragraph (d) is added:

    - - (d) Right of First Refusal.  The parties agree that, within a reasonable time after the Closing Date, they will enter into a separate agreement whereby Buyer will have a right of first refusal to purchase from Seller (i) all appropriate copies of publications relating to the Business and in the possession, custody or control of Seller's technical library located at its facility in Florham Park, New Jersey and (ii) physical assets, including lab equipment and financial accounting server(s), owned by Seller and used in the Business. Each such item will be valued at net book value as of November 1, 1995.  Such right of first refusal shall be exercisable until (1) February 29, 1996 as to the financial accounting server(s) and (2) January 31, 1996 as to all other items. - -

C.      In Section 1.2, paragraph (b):

    (1)      The following clause is added at the beginning of the first sentence ("Buyer agrees ... Section 4.16 hereof"):

    - - Except as otherwise provided in paragraph (e) of this Section 1.2 - -

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Page 1

(2)     Lines 14-15 are amended to read as follows:

-- The amounts of additional royalties to be paid in connection with Buyer's sale of the UnixWare products are identified in detail in Schedule 1.2(b) hereto.  Seller --

D.     Section 1.2(d), is amended in its entirety to read as follows:

-- (d)  Asset Transfer and Transfer Taxes.  Notwithstanding any other provision of this Agreement, the Assets shall remain the property of Seller until expeditiously delivered to Buyer in the manner and at the locations prescribed as follows in this Section 1.2(d), or as subsequently agreed in writing.

Seller shall deliver and Buyer shall accept source code, object code, related documentation and other software assets described in Schedule 1.1(a) (collectively referred to as "Software Assets") only at Seller's facility in Florham Park, New Jersey.

In the event that Seller subsequently discovers Software Assets outside of New Jersey contemplated by this Agreement which have not heretofore been delivered to Buyer in New Jersey, Seller shall consult with Buyer to determine if Seller may destroy such assets in place without delivery to Buyer, or transport them to New Jersey or another location specified by Buyer for delivery to Buyer.

Seller represents that to its knowledge software documentation previously delivered to Buyer for the purpose of due diligence is the property of Seller, and Buyer agrees that it will destroy or return possession to Seller in New Jersey before title passes to Buyer.

Seller and Buyer agree that the license that Seller is entitled to exercise after Closing pursuant to Section 1.6 hereof is a right not sold to Buyer and as such is a right retained by Seller.

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

Buyer shall pay and promptly discharge when due the entire amount of any and all sales and use taxes ("Sales Taxes") imposed or levied by reason of the sale of the Assets to Buyer. The parties shall cooperate with each other to the extent reasonably requested and legally permitted to minimize any such Sales Taxes. If Seller is obligated to pay any of such Sales Taxes, Buyer shall reimburse Seller on demand for the amount of such payment. --

E.    In section 1.2, the following new paragraphs (e) and (f) are added:

-- (e) <u>Revenues to be Retained by Buyer</u>. Subject to the last sentence of paragraph (a) of Section 4.16 hereof, Buyer shall be entitled to retain 100% of the following categories of SVRX Royalties collected by Buyer:

(i)    fees attributable to stand-alone contracts for maintenance and support of SVRX products listed under Item VI of Schedule 1.1(a) hereof;

(ii)    source code right to use fees under existing SVRX Licenses from the licensing of additional CPU's and from the distribution by Buyer of additional source code copies;

(iii)    source code right to use fees attributable to new SVRX licenses approved by Seller pursuant to Section 4.16(b) hereof; and

(iv)    royalties attributable to the distribution by Buyer and its distributors of binary copies of SVRX products, to the extent such copies are made by or for Buyer pursuant to Buyer's own licenses from Seller acquired before the Closing Date through Software Agreement No. SOFT-000302 and Sublicensing Agreement No. SUB-000302A.

Execution Copy

(f) _Monthly Reports._ Within one (1) calendar month following each calendar month in which SVRX Royalties [and royalties from Royalty-Bearing Products as contemplated in Schedule 1.2(b) hereof] are received by Buyer, Buyer shall provide to Seller, in electronic file format, a report detailing all such royalties. Such monthly reports shall be separately broken down by revenue type (i.e., source code right to use fees, gross and net binary per copy fees, and support fees), by product, by customer, by quarterly period by which distribution occurs, and by country (if provided by customer) of distribution. Each such report shall also detail, with respect to the revenues reported, any third party payments attributable to such revenues, broken down by the identity of such third parties and the applicable payments to each. Buyer shall provide Seller with a single point of contact to discuss specific additional revenue and unit information (by customer) which, in Seller's judgment, are appropriate to supplement such monthly reports. Buyer shall also provide to Seller, on a monthly basis, a report that reconciles monthly revenues reported (and accounts receivable) to cash remittances actually made to Seller by Buyer. – –

E.    In Section 1.4, line 8 is amended to read as follows:

– – in the loss or diminution thereof: provided, however, that Seller shall, as soon as practicable after the Closing Date and at its own expense, – –

G.    In Section 1.6, lines 1-2 are amended to read as follows:

– – 1.6 _Seller's Licenses to Assets._ Concurrent with the Closing, Buyer and Seller shall enter into a license agreement providing Seller with a royalty free, perpetual – –

H.    In Section 4.13:

(1)    In the first paragraph, lines 5-6 are amended to read as follows:

– – is comparable to that offered by Seller. The Benefits Package – –

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

(2)     The following new paragraphs are added at the end of the section:

- - For purposes of this Section 4.13, the term "Type 1 employee" means a person who (1) as of the effective date of this Agreement was employed by Seller in any technical, business or financial (but not sales) capacity in Seller's Operating System Division in Florham Park, New Jersey, Provo, Utah or San Jose, California or otherwise in connection with the Business and/or the Assets and (2) whose employment with Seller thereafter terminates under circumstances under which such employee is given severance benefits from Seller including payment ("Severance Payment") calculated for a prescribed interval ("Severance Period").

Buyer agrees that it will not knowingly offer employment to, or offer to hire as a contractor, any Type 1 employee until the Severance Period for such employee is completed.

In the event that for any reason Buyer offers employment to, or offers to hire as a contractor, any such employee before the end of the period contemplated in the preceding sentence, Buyer shall remit to Seller a prorated portion of such Severance Payment applicable to the period between February 1, 1996 and the date of such offer. Such remittance shall be made to Seller within ten (10) days after such employee commences work on behalf of Buyer.

Seller agrees that prior to February 1, 1996, it will provide to Buyer a list of persons who are Type 1 employees.

Notwithstanding the above and except for normal attrition of previously hired employees, Buyer agrees not to hire any Type 1 employee for a period of 150 days from February 1, 1996. If Buyer does then Buyer will remit to Seller the full Severance Payment made to such Type 1 employees. - -

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

I.    In Section 4.16, paragraph (a):

   1.    The second sentence ("Within 45 days . . . preceding quarter") is amended to read as follows:

   - - Within one (1) calendar month following each calendar month in which SVRX royalties (and royalties from Royalty-Bearing Products) are received by Buyer [except for those SVRX Royalties to be retained in their entirety by Buyer pursuant to paragraph (e) of Section 1.2 hereof] Buyer shall remit 100% of all such royalties to Seller or Seller's assignee. Buyer shall also provide to Seller, within six (6) days following the calendar month in which such royalties are received, and estimate of the total amount of such royalties. - -

   2.    In the last sentence ("In consideration . . . SVRX Royalties") the following is added at the end before the period:

   - - together with a remittance sufficient to cover applicable third party payments, (if any) which are attributable to distributions giving rise to such SVRX Royalties (and royalties from Royalty-Bearing Products) and for which Buyer has assumed Seller's obligation of payment to such third party. - -

J.    In Section 4.16, paragraph (b), the last sentence ("Buyer shall not . . . Merged Product") is amended to read as follows:

   - - Notwithstanding the foregoing, Buyer shall have the right to enter into amendments of the SVRX Licenses (i) as may be incidentally involved through its rights to sell and license UnixWare software or the Merged Product [as such latter term is defined in a separate Operating Agreement between the parties to be effective as of the Closing Date, a copy of which is attached hereto as Exhibit 5.1(c)], or future versions of the Merged Product, or (ii) to allow a licensee under a particular SVRX License to use the source

code of the relevant SVRX product(s) on additional CPU's or to receive an additional distribution, from Buyer, of such source code. In addition, Buyer shall not, and shall have no right to, enter into new SVRX Licenses except in the situation specified in (i) of the preceding sentence or as otherwise approved in writing in advance by Seller on a case by case basis. - -

K.    In Schedule 1.1(a):

1.    In Item I:

(i)    each occurrence of "UNIX and "UnixWare" is changed to read  - - UNIX, UnixWare and Auxiliary Products - -.

(ii)    line 3, before "technical" the word "appropriate" is added.

(iii)    line 5, before "engineering" the word "appropriate" is deleted.

(iv)    in the UNIX Source Code Products listing, the title is changed to "UNIX and UnixWare Source Code Products" and item D is amended to read as follows:

    - - The following foreign versions of UnixWare software :
    UnixWare 1.0 French
    UnixWare 1.0 German
    UnixWare 1.0 Italian
    UnixWare 1.0 Spanish

    UnixWare 1.1 French
    UnixWare 1.1 German
    UnixWare 1.1 Italian
    UnixWare 1.1 Spanish

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

UnixWare 1.1 Japanese
UnixWare 1.1. Chinese

UnixWare 2.01 French
UnixWare 2.01 German
UnixWare 2.01 Italian
UnixWare 2.01 Spanish
UnixWare 2.01 Japanese

(v)     in the Products Under Development listing, the following is added at the end:
-- F.   Amadeus Software --

(vi)     the following new listing is inserted between the Products Under Development listing and the Other Technology listing:

-- Auxiliary Products
[as listed in Attachment 1 to this Schedule 1.1(a)] --

2.     The following is added at the end of Item III:

-- N.   Agreements for development and licensing of Amadeus Software. --

3.     Item IV is changed to read:

-- All master copies of UNIX, UnixWare and Auxiliary Software owned by Seller, except as retained by Seller in connection with seller's licenses specified in Section 1.6 hereof. --

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Page 5

Execution Copy

4.    In Item VI:

(i)    The first line is amended in its entirety to read as follows:

– – All contracts relating to the SVRX Licenses and Auxiliary Product Licenses (collectively "SVRX Licenses") listed below: – –

(ii)    The following is added to the list of SVR4 Licenses:

– – Auxiliary Products – –

L.    In Schedule 1.1(b), Item VII is amended to read as follows:

– – VII.  All accounts receivable or rights to payment concerning the Assets arising prior to the Closing Date, subject to appropriate payments to Buyer in several situations involving (a) prepayments received by Seller prior to the Closing Date under its customer agreements which cover orders for licenses to and/or support for UnixWare products that remain unfulfilled as of the Closing Date or (b) any other rights to payments which accrued to Seller prior to the Closing Date under such agreements for such unfulfilled orders for UnixWare Products.  Such situations are described in Attachment 1 to this Schedule 1.1(b).  The parties agree to adapt more detailed procedures, where appropriate, to deal with such payments in each of such situations within ninety (90) days after the Closing Date.

M.    In Schedule 1.2(b), paragraph (b), the first sentence is amended to read as follows:

– – (b) Amount of Royalties.  Attachment 1 to this Schedule 1.2(b) represents Seller's annual forecast, as of the Closing Date, of the potential estimated market for units of Unix System V, UnixWare, Eiger, MXU and White Box software (the "Plan" or "Unit Plan"). – –

NOVELL-SCO-Proprietary (Restricted)                     Page 9
Not for Disclosure to Third Parties

Execution Copy

N.    In Exhibit 5.1(c) paragraph (b) is rewritten in its entirety as follows:

- - Commencing November 1, 1995, Seller shall be responsible for bearing a certain amount of the reasonable, auditable and fully burdened costs incurred on a combined basis by Buyer and Seller for the completion of the GA version of the Eiger product, as follows:

    (i)    100% of such costs incurred by SELLER from November 1, 1995 up to the Closing Date (estimated to be about $2,600,000);

    (ii)    50% of the first $5,000,000 of such costs incurred by both Companies after the Closing Date;

    (iii)    25% of the next $10,000,000 of such costs incurred by both Companies after the Closing Date.

Buyer and Seller will separately maintain records of such costs incurred. On a calendar month basis after the Closing Date, Buyer and Seller will exchange information as to such development costs incurred in that month. Each party ("first party") will render payment to the other party for any amounts such first party is responsible for which are in excess of all amounts such first party has incurred. Each such payment shall be remitted by such first party within thirty (30) days after receipt from the other party of an invoice for such excess amount.

O.    Attachments A, B and C to this Amendment No. 1 are incorporated as Attachment 1 to Schedule 1.1(a), Attachment 1 to Schedule 1.1(b), and Attachment 1 to Schedule 1.2(b), respectively.

All other terms and conditions of the Agreement shall remain in full force and effect.

NOVELL-SCO-Proprietary/Restricted)
Not for Disclosure to Third Parties                    Page 10

Execution Copy

The parties have executed this Amendment No. 1 through their duly authorized representatives on the respective dates indicated below. The effective date of this Amendment No. 1 shall be the later of such respective dates.

THE SANTA CRUZ OPERATION, INC.

By: _____

Printed Name: Alok Mohan

Title: Chief Executive Officer

Date: December 6, 1995

NOVELL, INC.

By: _____

Printed Name: R. Duff Thompson

Title: Senior Vice President – Corporate Development

Date: December 6, 1995

Execution Copy

## ATTACHMENT A

### Listing of Auxiliary Products

Open Network Computing+
386 Implementation of UNIX System V Release 4
Multi-National Language Supplement
386 Implementation of UNIX System V Release 4
Multi-National Language Supplement
3B2 Implementation of UNIX System V Release 4
Multi-National Language Supplement
Application Source Verifier Release 2.0
Artus
C Compilation System for Motorola 68000
C Optimized Compilation System for UNIX System V
386/486
C++ Documents
C++ Language System Release 2.1
C++ Language System Release 3.0 and 3.0.1
C++ Language System Release 3.0.2
C++ Language System Release 3.0.3
C++ Object Interface Library Release 1.1
C++ Standard Components Release 2.0
C++ Standard Components Release 2.0.1
C++ Standard Components Release 3.0
C++ Standard Libraries Release 2.0
C++ Standard Libraries Release 3.0
C++ Standard Library Extension Release 1.0
C++LS 2.0
C++Translator
CFRONT Release 1.2
Chinese System Messages Implementation of UNIX
System V Release 4 System Messages
Distributed Manager/Framework & Host Manager
Release 1.0
Distributed Manager/Framework & Host Manager
Technology Licensing Program 1
Distributed Manager/Framework & Host Manager U.I.
Early Access
Distributed Manager/Print Manager Release 1.0
Distributed Manager/Print Manager Technology

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

Licensing Program 1
Distributed Manager/Print Manager Technology
Licensing Program 1
Distributed Manager/Print Manager U.I. Early
Access
DM/SM-TLP1
Documentation Reproduction Provision - UNIX System
V Handbook
Documentation Reproduction Provision - UNIX System
V Programming Books
Documentation Reproduction Provision - UNIX System
V Reference Books
Documentation Reproduction Provision - UNIX System
V User_s and Administrator_s Books
European Supplement Release 3.2
European System Messages Release 3.2
French Application Environment1.0/3b2
French System Messages Implementation of UNIX
System V Release 4 System Messages
French System Messages Implementation of UNIX
System V Release 4.1 Enhanced Security System
Messages
German Application Environment
German System Messages Implementation of UNIX
System V Release 4 System Messages
German System Messages Implementation of UNIX
System V Release 4.1 Enhanced Security System
Messages
Hindi System Messages Implementation of UNIX
System V Release 4 System Messages
Intel386 Microprocessor Implementation of VERITAS
File System (VxFS) Release 1.0
Intel386 Microprocessor Implementation of VERITAS
Visual Administrator Release 1.01
Intel386 Microprocessor Implementation of VERITAS
Volume Manager (VxVM) Release 1.01
Intel386 Microprocessor Implementation of VERITAS
Volume Manager (VxVM) Release 1.1
Intel386 Microprocessor Implementation of VERITAS
Volume Manager (VxVM) Release 1.1.1
Italian System Messages Implementation of UNIX
System V Release 4.1 Enhanced Security System
Messages
Italian System Messages Implementation Of UNIX
System V Release 4 System Messages

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

Japanese Application Environment I/O Rel 1.0
Japanese Application Environment Release 2.0
Japanese Application Environment Release 2.0
Japanese Application Environment Release 2.1
Japanese Environment for SVR4.2
Japanese Extension Implementation of UNIX System V
Release 4.2
Japanese I/O Release 1.0
Japanese System Messages Implementation of UNIX
System V Release 4 System Messages
Japanese System Messages Implementation of UNIX
System V Release 4.1 Enhanced Security System
Messages
Japanese System Messages Release 3.2
Korean System Messages Implementation of UNIX
System V Release 4 System Messages
Optimizing C Compiler for Intel, Release 3.0
Spanish System Messages Implementation of UNIX
System V Release 4 System Messages
Spanish System Messages Implementation of UNIX
System V Release 4.1 Enhanced Security System
Messages
System V Release 2.0 Machine Readable
Documentation
System V Release 3.0 Documentation Reproduction
Provision
System V Release 3.1 Documentation Reproduction
Provision
System V Release 3.2 Documentation Reproduction
Provision
System V Verification Suite Release 2
System V Verification Suite Release 3
System V Verification Suite Release 4
UNIX System V French System Messages Release 3.2
UNIX System V German System Messages Release 3.2
UNIX System V Release 1.0 for 3B2 Multi-National
Language Supplement
UNIX System V Release 1.0 for Intel 386 Multi-
National Language Supplement
UNIX System V Release 3.2 386 Doc. Reproduction
Provision
UNIX System V Release 3.2 for Intel 386 Multi-
National Language Supplement
UNIX System V Release 3.2 for Intel 386 Multi-
National Language Supplement

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

UNIX System V Release 3.2 Multi-National Language
Supplement
UNIX System V Release 4 European Language
Supplement
UNIX System V Release 4 STREAMS-Based Korean
Input/Output Subsystem
UNIX System V Release 4.0 386 Doc. Reproduction
Provision
UNIX System V Release 4.0 3B2 Doc. Reproduction
Provision
UNIX System V Release 4.0 i860 Doc. Reproduction
Provision
UNIX System V Release 4.2 European Language
Supplement, Version 1
UNIX System V Release 4.2 MP Japanese Extension
UNIX Time Sharing Operating System Phototypesetter
and C Compiler Edition #7
USL Standard C Development Environment for the 860
Implementation of UNIX System V Release 4.0
Veritas File System (VxFS) Release 1.3 for UNIX
System V Release 4.2
XWIN Graphical Windowing System Release 3.0
XWIN Graphical Windowing System Release 4.0.
XWIN Graphical Windowing System Release 4.0i

ATTACHMENT B

Treatment of Certain Prepayments and Rights

to Payment Specified in Item VII of Schedule 1.1(b)

Situation 1 - where the Seller customer contract (other than in Situation 3) involves a prepayment
and/or an accrued right to payment (collectively "prepayment") that applies to a mix of
UnixWare and non-UnixWare products.

Seller will send a notice requiring the customer to specify in writing (i) whether it wants any of
the prepayment to be allocated to the UnixWare products and (ii) if so, how much of such
prepayment should be so allocated. The notice shall state that if the customer does not respond

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

within 30 days after the date of transmission by Seller. none of such prepayment shall apply to the UnixWare products. The notice shall also specify that any future prepayment under the contract in question will not apply to UnixWare products. and that orders for UnixWare products after the prepayment allocation is used up must be directed to Buyer.

If the customer elects a UnixWare allocation of $100,000 or more, or makes a UnixWare allocation of an unspecified amount. Buyer will fulfill all of such customer's orders of UnixWare products against the unused prepayment allocation (or prepayment. if no allocation is made). Buyer will receive from Seller a payment reflecting a pro-rated portion of such prepayment allocation (or such prepayment). Such payment shall be deemed to be royalties received by Buyer for the UnixWare products in question.

If the customer allocates less than $100,000 of the prepayment to UnixWare products in response to such notice, Buyer will fulfill all of such customer's orders for UnixWare products against the prepayment and will receive from Seller its actual and reasonable costs (including third party royalties assumed by Buyer under this Agreement) of such fulfillment plus a markup of five percent (5%).

Situation 2 - where Seller's customer's contract (other than in Situation 3) calls for prepayments applicable to UnixWare products only.

If the prepayment is $100,000 or more, the roles of Seller and Buyer set forth in Situation 1 for an allocation of $100,000 or more shall apply.

If the prepayment is less than $100,000, the roles of Seller and Buyer set forth in Situation 1 for an allocation of less than $100,000 shall apply.

Situation 3 - Seller's customer contracts with Siemens-Rolm. TMAC. Microport. Tatung and Sysorex.

These contracts involve prepayments that may apply either to a mix of UnixWare and non-UnixWare products (TMAC and Sysorex) or to UnixWare products alone. Irrespective of the type of allocation. the roles of Seller and Buyer set forth for a UnixWare allocation of $100,000 or greater shall apply.

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Execution Copy

For a period of up to sixty (60) days after the Closing Date Buyer and Seller will cooperate to attempt to identify additional ones of Seller's customers who have prepayments which could be allocated to UnixWare products in the amount of $100,000 or more. For each of such additional customers so identified, the roles of Buyer and Seller shall be as mutually agreed.

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties

Page 17

Execution Copy

## ATTACHMENT C

### Unit Plan

Table A below represents Seller's forecast of the rates of shipments, through all appropriate channels, of units of the following offerings of Unix System V, UnixWare, Eiger, MXU and White Box software:

◊  Single user and multi-user versions
◊  Upgrades to existing units
◊  Processor upgrades
◊  Other components, specifically:
  • Software developers kit
  • OnLine Data Manager
  • Locus Merge
◊  All Units which Buyer receives payment for, directly or indirectly

### Table A
### Units (in thousands)

|                           | 1995    | 1996    | 1997    | 1998    | 1999    | 2000    | 2001    | 2002    |
|---------------------------|---------|---------|---------|---------|---------|---------|---------|---------|
| SCO Shipments             | 216.40  | 216.40  | 216.40  | 216.40  | 216.40  | 216.40  | 216.40  | 216.40  |
| UnixWare Binary - Indirect | 57.50   | 99.10   | 131.50  | 107.00  | 39.20   | 0.00    | 0.00    | 0.00    |
| UnixWare - OEM            | 10.10   | 35.50   | 55.60   | 68.10   | 58.10   | 49.30   | 34.50   | 0.00    |
| MXU Binary - Indirect     | 0.00    | 0.00    | 43.80   | 160.40  | 282.60  | 334.40  | 305.30  | 201.30  |
| MXU - OEM                 | 0.00    | 0.00    | 13.90   | 45.40   | 91.90   | 148.00  | 186.50  | 233.20  |
| WBOS Binary - Indirect    | 0.00    | 0.00    | 0.00    | 0.00    | 70.60   | 222.90  | 467.90  | 805.40  |
| WBOS - OEM                | 0.00    | 0.00    | 0.00    | 0.00    | 10.20   | 49.30   | 124.40  | 233.20  |
| SVRX converted units      | 0.00    | 33.80   | 69.80   | 106.40  | 149.50  | 193.30  | 239.90  | 289.60  |
| SVRX remaining            | 1072.00 | 1091.80 | 1112.00 | 1132.60 | 1153.60 | 1174.90 | 1196.60 | 1218.80 |
| Total Unix Software Units | 1255.00 | 1476.60 | 1643.00 | 1238.30 | 2082.10 | 2388.50 | 2761.50 | 3197.90 |

NOVELL-SCO-Proprietary (Restricted)
Not for Disclosure to Third Parties