# EXHIBIT 28

Dockets.Justia.com



June 11, 2003

**CONFIDENTIAL**

**VIA FACSIMILE AND FEDERAL EXPRESS**

Mr. Jack L. Messman
Chairman and CEO
Novell, Inc.
404 Wyman Street, Suite 500
Waltham, MA 02451

Dear Jack:

This letter is in response to yours of June 9, 2003. In your June 9 letter, you attempt to assert claims on behalf of IBM with respect to its SVRX License with SCO. Specifically, your June 9 letter states, in pertinent part, as follows:

> [P]ursuant to Section 4.16(b) of the [September 19, 1995] Asset Purchase Agreement Novell hereby directs SCO to waive any purported right SCO may claim to terminate IBM's SVRX Licenses enumerated in Amendment X or to revoke any right thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM. Novell directs SCO to take this action by noon, MDT, June 12, 2003, and to notify Novell that it has done so by that time.

As with your May 28 false statement that SCO does not own the copyrights to UNIX, your "direction" in the June 9 letter is also without legal or factual basis.

SCO received from Novell under the September 19, 1995 Asset Purchase Agreement the following:

> *[A]ll of Seller's right, title and interest* in and to the assets and properties of Seller relating to the Business (collectively the "Assets") identified on Schedule 1.1(a) hereto. (Asset Purchase Agreement, Para. 1.1)

The "Assets" are identified in Schedule 1.1(a) of the Asset Purchase Agreement to include the following:

> a. "[A]ll *rights and ownership of UNIX and UnixWare, including...source code...*" (Schedule 1.1(a), Para. I)

Mr. Jack L. Messman
June 11, 2003
Page 2 of 5

      b.   "*Software and Sublicensing Agreements*-this includes the source code and sublicensing agreements that Seller has with its OEM, End User and Educational customers. The total number of these agreements is approximately 30,000." (Schedule 1.1(a), Para. III-L)

      c.   "[A]ll *claims against any parties* relating to any right or asset included in the Business." (Schedule 1.1(a), Para. II)

As set out above, SCO acquired all of *Novell's right, title and interest*: (a) to the AT&T *Software and Sublicensing Agreements*, including the AT&T/IBM Software Agreement, and (b) to all *claims against any parties*. SCO therefore acquired all right, title and interest to enforce the Software and Sublicensing Agreements against IBM, without answering to Novell.

Furthermore, the contract provision you rely on in your June 9, 2003 letter (Para. 4.16(b)) is not even arguably applicable in the case of IBM because IBM completed a royalty buyout on October 16, 1996. Amendment No. 2 to the Asset Purchase Agreement specifically eliminates any rights Novell might otherwise have under Para. 4.16(b) with respect to an SVRX licensee who completes a buy-out of its royalty obligation. The pertinent language of Amendment No. 2 is as follows:

      Except as provided in Section C below, and *notwithstanding the provisions of Article 4.16 Sections (b)* and (c) of the Agreement, any potential transaction with an SVRX licensee which concerns a buy-out of any such licensee's royalty obligation shall be managed as follows:

                         * * *

      *This Amendment does not give Novell the right to increase any SVRX licensee's rights to SVRX source code,* nor does it give Novell the right to grant new SVRX source code licenses. In addition, *Novell may not prevent SCO from exercising its rights with respect to SVRX source code in accordance with the Agreement.* (Amendment No. 2 Para. B.5)

Amendment No. 2 applies to IBM as a royalty buy-out customer. Novell has no contractual right to either increase IBM's source code rights, or prevent SCO from exercising its rights with respect to SVRX source code. As set forth above, SCO has already acquired all of Novell's right, title and interest in and to the Software and Sublicensing Agreements that are designed to contractually protect the source code.

Mr. Jack L. Messman
June 11, 2003
Page 3 of 5

Novell has no rights whatsoever to "direct" SCO to waive its claims against IBM under the AT&T/IBM Software and Sublicensing Agreements, the very agreements designed to protect the *integrity and confidentiality of the UNIX source code.*

SCO's claims against IBM for breach of the AT&T/IBM Software and Sublicensing Agreements go to the very core of protecting the UNIX source code and Software and Sublicensing Agreements that SCO acquired from Novell. IBM is transferring the UNIX code, derivative works and methods for use in Linux in violation of the Software Agreement. IBM is making UNIX available for others and for use by others in violation of the Software Agreement. IBM is breaching confidentiality of UNIX protected under the Software Agreement in a concerted effort to destroy the entire economic value of the UNIX source code. SCO will not let IBM's egregious breaches of contract and other misconduct continue any further. Novell is powerless to aid IBM's ongoing breach of the AT&T/IBM Software and Sublicensing Agreements. Neither Novell nor you should even *want* to engage in further improper activity with IBM. Any further actions by you or Novell will simply be added to the following improper actions taken thus far:

1. You issued the May 28, 2003 press release that contained false and misleading statements regarding ownership of the UNIX copyrights on the very day of SCO's earnings announcement. These statements were later retracted, but only after SCO suffered a 30% decrease in its market capitalization on May 28 and the morning of May 29, notwithstanding record earnings announced by SCO in its earnings announcement.

2. An industry reporter was informed by a senior Novell executive that your May 28 press release was timed to coincide with SCO's May 28 earnings announcement. In fact, 443 investors, media and analysts called into the SCO May 28 earnings announcement. We were forced to deal with the false and misleading press release issued by Novell earlier that morning in an apparent attempt to undermine investor confidence in SCO. As stated above, SCO suffered a 30% decrease in market capitalization as a result of your press release, and the timing thereof.

3. On June 9, 2003 you attempted to "direct" SCO to waive any contract claims it has against IBM. You included Ron Lauderdale, Assistant General Counsel at IBM, as a copied recipient of the June 9 letter. In case there was any question about the concerted actions between you and IBM against SCO, this letter including Mr. Lauderdale as a recipient removed all doubt. But your efforts to "direct" SCO on behalf of IBM are again without factual or legal basis. The Asset Purchase Agreement does not support your assertion, and the paragraph you rely upon was rendered moot with respect to IBM upon its royalty buyout on October 16, 1996. Your efforts are exposed as nothing more than a heavy-handed attempt to interfere with the AT&T/IBM Software and Sublicensing Agreement that SCO holds the sole power to enforce.

Mr. Jack L. Messman
June 11, 2003
Page 4 of 5

4.  The fact that Mr. Lauderdale was directly involved in your decision to issue the June 9, 2003 letter further confirms your reluctant admission to me on June 5, 2003 that IBM may have been involved in your press release of May 28, 2003, with the resulting adverse impact on SCO and its shareholders.

For the reasons outlined above and for other reasons, we have no intention of waiving our rights against IBM for destroying the value of UNIX and UnixWare by ignoring the restrictions on use, transfer and confidentiality of source code, derivative works and methods.

Rather than continue to take a hostile stance against SCO in concert with IBM, it seems that you would be better served to extract yourself from this situation and do everything in your power to mitigate further damages by you and Novell. To that end, we suggest that you consult with your Board of Directors to decide how the company wishes to proceed. From SCO's standpoint, Novell and you have two options:

1.  Formally retract your baseless demand on IBM's behalf with respect to the AT&T/IBM Software and Sublicensing Agreements, and disavow any legal or factual basis to make such a demand. If you do this by June 12 at 12:00 Noon, MDT, you may advise your Board that SCO will release and forego any and all claims against you, Jack Messman, all other Novell executives and Novell, arising from the violations identified above. We will agree to a release of claims with respect to all such matters that may, at your election, contain appropriate confidentiality and other customary provisions.

2.  Fail to retract your demand on IBM's behalf with respect to the AT&T/IBM Software and Sublicensing Agreements and otherwise continue to issue false statements and unsubstantiated demands in concert with IBM. In such event, we will proceed to protect SCO's interests in the ways we deem necessary.

The choice is yours to make, Jack. I urge you to take the appropriate steps to disengage Novell and you from SCO's conflict with IBM. If you and your Board choose the option we have suggested, you can respond to this offer on or before June 12, 2003, by 12:00 Noon, MDT by stating in writing that you accept our offer set forth. Upon receipt of your acceptance of SCO's offer, we will take all necessary steps to maintain the confidentiality of your communication pending the execution of final release documents.

Mr. Jack L. Messman
June 11, 2003
Page 5 of 5


If you and your Board choose to do something other than what I have outlined, the offer will be revoked as of June 12, 2003 at 12:01 PM MDT and will not be renewed.

Sincerely yours,

Darl McBride
President and CEO
The SCO Group, Inc.

# EXHIBIT 29

CONFIDENTIAL

Page 1

Volume:  I
Pages:  1 - 268
Exhibits:  1677 - 1696
Job No.:  6281

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

- - - - - - - - - - - - - - x

**CONFIDENTIAL**

THE SCO GROUP,

        Plaintiff,

                                Civil Action
VS.                             No. 302-CV-0294 (EAK)

INTERNATIONAL BUSINESS MACHINES
CORPORATION,                    
        Defendant.
- - - - - - - - - - - - - - x

    AUDIOVISUAL DEPOSITION OF JACK L. MESSMAN,
a witness called by counsel for the Plaintiff,
taken pursuant to the Federal Rules of Civil
Procedure, before Helana Eve Kline, a
Massachusetts Certified Shorthand Reporter &
National Registered Professional Reporter &
Notary Public in and for the State of Rhode
Island & the Commonwealth of Massachusetts,
at the Law Offices of Ropes & Gray, One
International Place, Boston, Massachusetts,
on Friday, April 14, 2006, commencing at
9:05 a.m.

Job No. 183531

CONFIDENTIAL

Page 203

1  why did Novell tell us to do that or not to do

2  that?

3 A. They -- we think they exceeded their

4  authority.  They had the right to administer

5  these contracts.  They had the responsibility

6  to get permission in writing in advance.

7    We did not get any such written

8  notification; and, therefore, our view is

9  that -- and they did not give us any evidence

10  of a violation, so that's why we waived.

11  We asked them to waive and they said no so

12  we waived for them, which we had the right

13  to do.

14 Q. Why did Novell direct SCO not to terminate

15  the SVRX license with IBM, in particular, as

16  opposed to the SVRX license with any other

17  licensee?

18 A. Well, I think that we had to -- we took the

19  same position on all of them; that they didn't

20  have the right to do that, and the ones that

21  I'm familiar with I think we'd got a

22  significant royalty payment that we were

23  worried about; that if the licenses were

24  terminated, we might have to pay back; and

CONFIDENTIAL

Page 204

1    **it was a big risk to Novell.**

2    Q.  Was it, in your view, a business decision to

3        direct SCO not to terminate the IBM SVRX

4        license?

5    A.  **Well, I think it was a business decision and**

6        **a legal decision ... so, I mean, in our view**

7        **they violated the contract.**

8    Q.  Is it a decision that, to the best of your

9        knowledge, Novell reached in conjunction

10       with IBM?

11   A.  **No, we reached that on our own; it's our**

12       **conclusion.**

13   Q.  I know I've asked you about particular dates

14       and ranges of time, but let me ask you

15       generally:  were there any discussions with

16       IBM on your part regarding this business

17       decision to direct SCO not to terminate the

18       SVRX license with IBM?

19           MR. JACOBS:  Objection, asked and

20       answered.

21   A.  **I think I said that we, earlier on June the**

22       **9th, but I think I'd have to go back and look**

23       **at the things here, that we informed IBM;**

24       **and then we made an announcement the same**

CONFIDENTIAL

Page 268

1              C E R T I F I C A T E

2    COMMONWEALTH OF MASSACHUSETTS

3    PLYMOUTH, SS.

4          I, Helana Eve Kline, a Massachusetts

5    Certified Shorthand Reporter & Registered

6    Professional Reporter and Notary Public in

7    and for the Commonwealth of Massachusetts,

8    do hereby certify that:

9          Jack L. Messman, the witness whose

10   testimony is hereinbefore set forth, was

11   duly sworn by me and that the foregoing

12   transcript, Volume I, Pages 1 - 268, is a

13   true and accurate transcription of my

14   stenographic notes to the best of my

15   knowledge, skill, and ability.

16         IN WITNESS WHEREOF, I have hereunto set

17   my hand and Notarial Seal this _16_ day of

18   April, 2006.

19

20                    *Helana Eve Kline*

21              Helana Eve Kline

22         Mass. Certified Shorthand Reporter

              Registered Professional Reporter

23                   Notary Public

24   My Commission Expires:

     January 4, 2013

# EXHIBIT 30

Jack Messman
*Chairman and CEO*

# Novell.

*VIA FACSIMILE AND CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

June 12, 2003

Mr. Darl McBride
President and Chief Executive Officer
The SCO Group
355 South 520 West
Lindon, UT 84042

      Re:    Asset Purchase Agreement between the Santa Cruz Operation, Inc. and
             Novell, Inc., September 19, 1995

Dear Darl:

     This is in response to your letter of June 11, 2003. Your letter repeats many
allegations you have made before. You know that we think they are baseless.

     As to the direction we gave SCO, I have looked over the contractual provisions
you cite, and have concluded that once again you are engaging in implausible readings
of the relevant documents. We continue to believe that your actions are without
foundation, and remain concerned about the impact your legal strategy is having on
Novell, Novell's customers and the computer industry.

     To begin with, your letter in no way addresses the fact that IBM obtained
"irrevocable" rights when it signed Amendment No. X. As we stated earlier, we believe
that "irrevocable" means irrevocable, and that your threatened termination is for that
reason alone in bad faith.

     Second, your letter effectively reads out of the Asset Purchase Agreement the
rights Novell retained under Section 4.16, particularly Section 4.16(b). All of the
assignments of rights referenced in your letter (including the rights to UNIX and
UNIXWare, related source code and software agreements, and claims) were made as
part of the same document that provided Novell with the rights in Section 4.16. Those
rights were and are critical to protecting the interests that Novell retained as part of the
Asset Purchase Agreement (including its interests in royalty payments and the
contractual commitments Novell made in return for royalty payments). In fact, the
agreement provides Novell with the broad right to act in its "sole discretion" in
protecting its interests. Yet you act as if Section 4.16(b) does not exist.

Novell, Inc. • 404 Wyman Street, Suite 500 • Waltham, MA 02451 • Tel: 781 464 8038 • Fax: 781 464 8058 • jack.messman@novell.com • www.novell.com

Darl McBride
June 12, 2003
Page Two

Third, you completely misread the effect of Amendment No. 2 on Section 4.16. The introductory language you quoted in your letter makes it clear that the provisions that follow relate only to a "potential transaction with an SVRX licensee which concerns a buyout." None of the provisions that follow has any impact on other SVRX licenses, including (as is pertinent to the IBM transaction) buyout transactions that had already been completed. This is reinforced by the language providing that the terms you cite relate to how such a potential buyout transaction "shall be managed."

Finally, and perhaps most importantly, as of the date of Amendment No. 2, when the IBM buyout had been completed, the parties were looking at Section 4.16(b) and did nothing to cut back on its general applicability. In fact, I read Amendment No. 2 as reinforcing the ongoing applicability of Section 4.16(b) to SVRX licenses (including the post-buyout IBM license), because the parties had a clear and conscious opportunity to, but did not, alter the applicability of Section 4.16(b), including the right of Novell to direct SCO to take action as to those licenses.

Darl, I don't think this is even a close call. You and I both understand the Asset Purchase Agreement deal: SCO acquired certain assets from Novell but acquired those assets subject to certain rights of Novell. You can't have one without the other.

In fact, you refer in your letter to a "choice" that "is [o]urs to make." We believe, however, that this is a matter of responsibility. Novell takes its contractual commitments seriously. When we enter into or amend a license to make it "irrevocable," we mean what we say, and we expect our customers to be able to rely on what we say. We ask you to do the same.

Sincerely,

Jack L. Messman

EXHIBIT 31

Jack Messman
*Chairman and CEO*

# Novell

*VIA FACSIMILE AND CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

June 12, 2003

Darl McBride
President and Chief Executive Officer
The SCO Group
355 South 520 West
Lindon, UT 84042

Ronald A. Lauderdale, Esq.
Vice-President, Assistant General Counsel
International Business Machines Corporation
Maildrop 4201
Route 100
Somers, N.Y. 10589

Re:     IBM SVRX Licenses

Gentlemen:

Reference is made to the following:

- Asset Purchase Agreement by and between The Santa Cruz Operation, Inc. and Novell, Inc. dated as of September 19, 1995, and more particularly to Section 4.16(b) of that agreement;
- Amendment No. X to Software Agreement SOFT-00015, *et seq.*, between International Business Machines Corporation, The Santa Cruz Operation, Inc., and Novell, Inc;
- Letter dated March 6, 2003 from The SCO Group to International Business Machines Corporation; and
- Letter dated June 9, 2003 from Novell to The SCO Group regarding IBM SVRX Licenses.

In its June 9 letter to The SCO Group, Novell directed "SCO to waive any purported right SCO may claim to terminate IBM's SVRX Licenses enumerated in Amendment X or to revoke any rights thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM." Novell directed SCO "to take this action by noon, MDT, June 12, 2003."

SCO has failed to take the action directed by Novell.

Darl McBride
June 12, 2003
Page Two

Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell, on behalf of The SCO Group, hereby waives any purported right SCO may claim to terminate IBM's SVRX Licenses enumerated in Amendment X or to revoke any rights thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM.

Sincerely,

Jack L. Messman

EXHIBIT 32

**FOR IMMEDIATE RELEASE**

Contact:
Blake Stowell                          David Close/Laura Sexton
The SCO Group                          Schwartz Communications
bstowell@sco.com                       sco@schwartz-pr.com
Tel: (801) 932-5811                    Tel: (781) 684-0770
www.sco.com

### SCO® ANNOUNCES IMMEDIATE TERMINATION OF IBM'S RIGHT TO USE AND DISTRIBUTE AIX SOFTWARE AND FILES FOR PERMANENT INJUNCTION

*SCO terminates IBM's right to use or distribute AIX software, and files amended complaint against IBM, including a permanent injunction against IBM for destruction or return of all copies of UNIX® System V Source Code and permanent cessation of AIX distribution*

**LINDON, Utah—June 16, 2003**—The SCO® Group (SCO)(Nasdaq: SCOX), a leading provider of business software solutions, today announced that it has terminated IBM's right to use or distribute any software product that is a modification of or based on UNIX® System V source code. In terminating IBM's right to use and distribute AIX, SCO is exercising the right of termination granted under the original 1985 UNIX Software and Sublicensing Agreements between IBM and AT&T. SCO notified IBM on March 6, 2003 that it intended to terminate in 100 days, as required under the Software Agreement, as modified by a side letter, if IBM did not correct certain actions that violate the agreement. As of the deadline – 12:00 midnight, June 13, 2003 – IBM had not complied with SCO's request, which triggered the termination. The termination is self-effectuating.

"The Software and Sublicensing Agreements and related agreements that SCO has with IBM includes clear provisions that deal with the protection of source code, derivative works and methods," said Mark J. Heise, Boies Schiller, & Flexner, LLP. "Through contributing AIX source code to Linux and using UNIX methods to accelerate and improve Linux as a free operating system, with the resulting destruction of UNIX, IBM has clearly demonstrated its misuse of UNIX source code and has violated the terms of its contract with SCO. SCO has the right to terminate IBM's right to use and distribute AIX. Today AIX is an unauthorized derivative of the UNIX System V operating system source code and its users are, as of this date, using AIX without a valid basis to do so."

*–more–*

SCO1556043

SCO is also today filing an amendment to the complaint against IBM for a permanent injunction requiring IBM to cease and desist all use and distribution of AIX and to destroy or return all copies of UNIX System V source code. In the amended complaint, SCO is seeking additional damages from IBM's multi-billion dollar AIX-related businesses that began accruing Friday, June 13th at midnight. This amended complaint was filed today with the United States District Court of Utah where SCO's court case against IBM is currently pending.

"IBM has chosen to continue the actions that violate our source code and distribution agreements," said Darl McBride, President and CEO of The SCO Group. "Over the last several months, SCO has taken all of the steps outlined in the UNIX licensing agreements to protect its rights. Today SCO is requesting that the court enforce its rights with a permanent injunction. IBM no longer has the authority to sell or distribute AIX and customers no longer have the right to use AIX software."

**About SCO**
The SCO Group (NASDAQ: SCOX) helps millions of customers in more than 82 countries to grow their businesses everyday. Headquartered in Lindon, Utah, SCO has a worldwide network of more than 11,000 resellers and 8,000 developers. SCO Global Services provides reliable localized support and services to partners and customers. For more information on SCO products and services, visit http://www.sco.com.

SCO, and the associated SCO logo are trademarks or registered trademarks of The SCO Group, Inc. in the U.S. and other countries. UNIX is a registered trademark of The Open Group. All other brand or product names are or may be trademarks of, and are used to identify products or services of, their respective owners.

# # #

SCO1556044

# EXHIBIT 33

Joseph A. LaSala, Jr.
*Senior Vice President,*
*General Counsel and Secretary*

# Novell.

VIA FACSIMILE AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Ryan Tibbitts
General Counsel
The SCO Group
355 South 520 West
Lindon, UT 84042

*Re: IBM Code Contributed to AIX*

Dear Mr. Tibbitts:

I write further to the exchange of correspondence between Novell and SCO concerning SCO's campaign directed against the Linux community.

SCO appears to be taking the position that code developed by IBM, or licensed by IBM from a third party, which IBM incorporated in AIX but which itself does not contain proprietary UNIX code supplied by AT&T under the license agreements between AT&T and IBM ("IBM Code"), must nevertheless be maintained as confidential and may not be contributed to Linux.

For instance, at Forum 2003, SCO gave a presentation in which it asserted that particular code modules constitute "examples of significant infringing derivative works contributions to Linux 2.4/2.5 kernels." SCO concluded that over 1,500 files and more than a million lines of code were unlawfully copied from UNIX into Linux. It appears that SCO included IBM Code in its calculation.

The position that IBM Code must be maintained as confidential and subject to use restrictions is contrary to the agreements between AT&T and IBM, including Amendment X, to which Novell is a party. Section 2.01 of the Software Agreement, dated February 1, 1985, between AT&T Technologies, Inc. and IBM, states that:

> AT&T grants to LICENSEE a personal, nontransferable and nonexclusive right to use in the United States each SOFTWARE PRODUCT identified in the one or more Supplements hereto, solely for LICENSEE'S own internal business purposes and solely on or in conjunction with DESIGNATED CPUs for such SOFTWARE PRODUCT. Such right to use includes the right to modify such SOFTWARE PRODUCT and to prepare derivative works based on such SOFTWARE PRODUCT; provided the resulting materials are treated hereunder as part of the original SOFTWARE PRODUCT.

Novell, Inc. • 404 Wyman Street, Suite 500 • Waltham, MA 02451 • Tel 781.464.8000 • Fax 781.464.8002 • www.novell.com

SCON0024157

Mr. Ryan Tibbitts
IBM
Page 2 of 3
October 7, 2003

A side letter clarifying the parties' understanding of the Software Agreement, also dated February 1, 1985, states (in paragraph A.2) that:

> Regarding Section 2.01, we [AT&T] agree that modifications and derivative works prepared by or for you [IBM] are owned by you. However, ownership of any portion or portions of SOFTWARE PRODUCTS included in any such modification or derivative work remains with us.

The agreements between AT&T and IBM, as amended, including the side letter (the "Agreements"), thus provide for a straightforward allocation of rights: (1) AT&T retained ownership of its code from the Software Products ("AT&T Code"), and the Agreements' restrictions on confidentiality and use apply to the AT&T Code, whether in its original form or as incorporated in a modification or derivative work, but (2) IBM retained ownership of its own code, and the Agreements' restrictions on confidentiality and use do not apply to that code so long as it does not embody any AT&T Code.

To be sure, to the extent that a modification or derivative work embodies AT&T Code, the combined work consisting of AT&T Code and IBM Code constitutes "resulting material" that is subject to the Agreements. The IBM Code itself is, however, not "resulting material." Therefore, the IBM Code is not subject to the confidentiality obligations or use restrictions of the Agreements.

This outcome is consistent with other provisions of the Agreements. For example, the side letter (as amended by Amendment X) further provides (in paragraph 9) that:

> Nothing in this agreement shall prevent LICENSEE from developing or marketing products or services employing ideas, concepts, know-how or techniques relating to data processing embodied in SOFTWARE PRODUCTS subject to this Agreement, provided that LICENSEE shall not copy any code from such SOFTWARE PRODUCTS into any such product or in connection with any such service.

As reflected in this language, the focus of the Agreements was on protecting AT&T Code, not on restricting IBM Code just because it happened to be combined with AT&T Code in a modification or derivative work. Any other result would defy logic as well as the intent of the parties.

SCON0024158

Mr. Ryan Tibbitts
IBM
Page 3 of 3
October 7, 2003

As you know, under Section 4.16(b) of the Asset Purchase Agreement Novell retains the right, at Novell's "sole discretion and direction," to require SCO to "amend, supplement, modify or waive any rights under, or . . . assign any rights to, any SVRX License to the extent so directed in any manner or respect by [Novell]." That section further provides that to the extent SCO "shall fail to take any action concerning the SVRX Licenses" as directed by Novell, Novell "shall be authorized, and hereby is granted, the rights to take any action on [SCO's] own behalf."

Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell hereby directs SCO to waive any purported right SCO may claim to require IBM to treat IBM Code itself as subject to the confidentiality obligations or use restrictions of the Agreements. Novell directs SCO to take this action by noon, MST, on October 10, 2003, and to notify Novell that it has done so by that time.

Sincerely,

Joseph A. LaSala, Jr.

cc:    Mr. Darl McBride
       Mr. Ron Lauderdale
        Vice President, Assistant General Counsel
        IBM

SCON0024159

# EXHIBIT 34

**SCO**

Via Telecopy 781-464-8062 and
UPS Delivery

October 9, 2003

Mr. Joseph A. LaSala, Jr.
Senior Vice President,
General Counsel and Secretary
Novell, Inc.
404 Wyman Street, Suite 500
Waltham, MA 02451

Re:   Technology License Agreement,
      Silicon Graphics, Inc.
      IBM Code Contributed to AIX

Dear Mr. LaSala,

We write in response to your series of letters to The SCO Group dated October 7, 2003. Your analysis of the obligations that IBM and SGI owe to SCO pursuant to the relevant Software Agreements is incorrect. However, we need not debate the incorrectness of your views, particularly Novell's purported ability to waive any and all licensees' obligations under the Software Agreements, because, as you are well aware, we are currently litigating these issues with IBM .

Nevertheless, having said that, we remind you that Novell sold the UNIX business, source code and copyrights to SCO for approximately $150 million. SCO also obtained the right to enforce the copyrights, as well as the contract rights with roughly 6000 licensees of UNIX. Although Novell now appears to wish it had not accepted payment of many millions of dollars for this business, which is what transpired. You claim that any result other than your selective interpretation of the agreements would "defy logic." We submit that your position that SCO received basically nothing for the many millions it paid Novell or that Novell has the unfettered right to simply declare that all SCO license rights have been waived defies logic.

Likewise, your analysis of the Technology License Agreement is not a supportable interpretation of the transaction between Novell and SCO. Moreover, your alleged concern about SCO's purported harassment of Linux users ignores SGI's recent public admission that it, in fact, improperly contributed System V Unix code into Linux. As a result, it is now undisputed that millions of Linux servers have been operating for years making use of System V Unix code in violation of the Software Agreements. This confirms the very position SCO has taken with the Linux Community, i.e., Linux

October 9, 2003
Page 2

contains misappropriated UNIX code. This is not harassment, but is instead a statement of fact.

As we have alleged in the IBM case, IBM has breached its agreements with us in many particulars. Our Amended Complaint is publicly available and we encourage you to read it again. Further, as we suggested to you in our last letter, rather than picking and choosing selected paragraphs from various agreements which you claim support IBM's position, you would be well served to read the agreements as a whole. Again, we can tell you that we disagree with your analysis and conclusions.

SCO shareholders have already been harmed by Novell's previous uninformed and unfounded claim that Novell owned the copyrights to UNIX—a claim Novell knowingly and recklessly publicly asserted on the very day SCO announced earnings. Any further unfounded attempts by Novell to harm SCO or its shareholders will be dealt with aggressively.

Sincerely,

The SCO Group, Inc.

Ryan E. Tibbitts
General Counsel

EXHIBIT 35

Joseph A. LaSala, Jr.
Senior Vice President,
General Counsel and Secretary

# Novell

*VIA FAX AND CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

October 10, 2003

Mr. Ryan Tibbitts
General Counsel
The SCO Group
355 South 520 West
Lindon, UT 84042

Mr. Ronald A. Lauderdale
Vice-President, Assistant General Counsel
International Business Machines Corporation
Maildrop 4201
Route 100
Somers, N.Y. 10589

Re: *IBM Code*

Counsel:

Reference is made to the following:

- Asset Purchase Agreement by and between The Santa Cruz Operation, Inc. and Novell, Inc. dated as of September 19, 1995, and more particularly to Section 4.16(b) of that agreement;
- Software Agreement No. SOFT-00015, *et seq.*, between AT&T Technologies, Inc. and International Business Machines Corporation, and Amendment No. X to Software Agreement No. SOFT-00015, *et seq.*, between International Business Machines Corporation, The Santa Cruz Operation, Inc., and Novell, Inc. (the "Agreements");
- Letter dated October 7, 2003 from Novell, Inc. to The SCO Group regarding IBM Code.

In its October 7 letter to The SCO Group, Novell directed "SCO to waive any purported right SCO may claim to require IBM to treat IBM Code itself as subject to the confidentiality obligations or use restrictions of the Agreements." Novell directed SCO "to take these actions by noon, MST, on October 10, 2003."

SCON0024167

Mr. Ryan Tibbitts
Mr. Ronald A. Lauderdale
Page 2
October 10, 2005

SCO has failed to take the action directed by Novell.

Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell, on behalf of The SCO Group, hereby waives any purported right SCO may claim to require IBM to treat IBM Code, that is code developed by IBM, or licensed by IBM from a third party, which IBM incorporated in AIX but which itself does not contain proprietary UNIX code supplied by AT&T under the license agreements between AT&T and IBM, itself as subject to the confidentiality obligations or use restrictions of the Agreements.

Sincerely,

Joseph A. LaSala, Jr.

cc:    Mr. Darl McBride

SCON0024168

# EXHIBIT 36



**Via Telecopy 781-464-8062 and**
**UPS Overnight Delivery**

October 13, 2003

Mr. Joseph A. LaSala, Jr.
Senior Vice President,
General Counsel and Secretary
Novell, Inc.
404 Wyman Street, Suite 500
Waltham, MA 02451

Re:    Technology License Agreement,
       Silicon Graphics, Inc.
       IBM Code Contributed to AIX

Dear Mr. LaSala,

We received your letters purporting to waive IBM and SGI's obligations under their respective Software Agreements and related documents. Please be advised that Novell is without authority to make such a waiver and thus it is of no force and effect.

Sincerely,

The SCO Group, Inc.

Ryan E. Tibbitts
General Counsel

RET/jhb

Cc:    Ronald A. Lauderdale, Esq., IBM (via telecopy 914-766-4851 & UPS Overnight)
       Sandra M. Escher, Esq., SGI  (via telecopy 650-933-6524 & UPS Overnight)

EXHIBIT 37



August 11, 2003

*Via Fed Ex*

Legal Department
Sequent Computer Systems, Inc.
15450 S.W Koll Parkway
Beaverton, OR. 97006

    Re:   Notice of Termination

To Whom It May Concern:

    Based on the facts presented in Darl McBride's letter dated May 29, 2003, and the terms of your license agreements with AT&T, you had two months in which to remedy the numerous breaches of those license agreements. You did not do so. This letter is your formal notice that the termination of the Dynix licenses, Software Agreement Number Soft-000321 and Sublicensing Agreement Number Sub-000321A, is effective as of July 30, 2003. Pursuant to paragraph 6.03 of the Software Agreement, Sequent (now IBM) **shall** discontinue use of and return or destroy all copies of the Software Products as defined in the License Agreement, which includes derivative works and methods. Please make the necessary arrangements to effectuate this termination.

                          Very truly yours,

                          Chris Sontag

CS/jb

Cc: Sam Palmisano (*Via Fed Ex*)

355 South 520 West, Lindon, Utah 84042 U.S.A.   phone 801.765.4999   fax 801.765.1313   www.SCO.com

SCON0011986

# EXHIBIT 38



*Office of the Vice President*
*Assistant General Counsel*

*Route 100*
*Somers, NY 10589*

August 14, 2003

<u>VIA AIRBORNE EXPRESS</u>

Mr. Darl McBride
President and Chief Executive Officer
The SCO Group, Inc.
355 South 520 West
Lindon, Utah 84042

Re:    Software Agreement Number Soft-000321
        Sublicensing Agreement Number Sub-000321A

Dear Mr. McBride:

      This responds to your letter of May 29, 2003 and Mr. Sontag's letter of August 11, 2003, both addressed to Sequent Computer Systems, Inc. As you know, Sequent has been merged into International Business Machines Corporation.

      In Mr. Sontag's letter of August 11, SCO purports to have terminated IBM's licenses as of July 30, 2003. You stated in your May 29 letter, however, that SCO would not undertake to terminate IBM's licenses until September 2, 2003, and you have not previously notified us regarding a purported July 30 termination. In any event, contrary to your assertions, IBM does not believe that it has breached any of its obligations to SCO, either under the agreements to which you refer (the "Agreements") or under applicable law, and SCO may not terminate IBM's rights under the terms of the Agreements.

      We have investigated the allegations in your May 29 letter and the amended complaint filed by SCO in connection with its lawsuit against IBM, and we do not believe that either IBM or Sequent has breached the Agreements. Although your letter states that IBM has breached the Agreements in "numerous ways", none of the alleged breaches are identified with meaningful specifics. Thus, I write to ask that you inform IBM specifically what SCO contends IBM has done in violation of its obligations to SCO, and what you contend IBM should do to cure such violations. As you acknowledge in your letter, the provisions to which you refer would entitle IBM to a period of no less than two months, from proper notice, in which to cure any alleged breach.

SCO1328534

Mr. Darl McBride
August 14, 2003
Page 2

Please advise me as soon as possible of the specific acts or omissions by IBM that you allege constitute a breach of the Agreements. In particular, please specify:

(1) any products, code, files, trade secrets and/or confidential information that SCO believes IBM has improperly used, transferred, disposed of or disclosed;

(2) the ways and specific instances in which you allege IBM has improperly used, transferred, disposed of or disclosed any products, code, files, trade secrets and/or confidential information; and

(3) the steps that SCO believes IBM is required to take to cure the alleged breaches and injuries about which SCO complains.

Sincerely,

R Lauderdale

Ronald A. Lauderdale
Vice President and Assistant General Counsel

Copy to: Evan R. Chesler, Esq.
David Boies, Esq.

SCO1328535

EXHIBIT 39

Joseph A. LaSala, Jr.
*Senior Vice President,*
*General Counsel and Secretary*

# Novell.

*VIA FACSIMILE AND CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

February 6, 2004

Mr. Ryan E. Tibbitts
General Counsel
The SCO Group
355 South 520 West
Lindon, UT 84042

Re: *Sequent Computer Systems*

Dear Mr. Tibbitts:

On May 29, 2003, SCO sent a letter to Sequent Computer Systems providing notice that it would terminate Sequent's SVRX license agreement as of September 2, 2003 if Sequent did not remedy certain alleged breaches of the license agreement. On August 11, 2003, SCO sent another letter to Sequent purporting to terminate Sequent's SVRX license agreement. IBM, on behalf of Sequent, responded to these letters by letter of August 14, 2003.

As it has with IBM and other SVRX licensees, SCO appears to be taking the position that code developed by Sequent, or licensed by Sequent from a third party, which Sequent incorporated in its UNIX variant but which itself does not contain proprietary UNIX code supplied by AT&T under the license agreement between AT&T and Sequent ("Sequent Code"), must nevertheless be maintained as confidential and may not be contributed to Linux. As we have said before, SCO's position defies both logic and the terms of the SVRX license agreement.

SCO cites, as support for its position, section 2.01 of Sequent agreement, which, like other SVRX licenses, provides as follows:

> Such right to use includes the right to modify such SOFTWARE PRODUCT and to prepare derivative works based on such SOFTWARE PRODUCT, provided the resulting materials are treated hereunder as part of the original SOFTWARE PRODUCT.

As we have said, however, this provision merely confirms that AT&T retained ownership of its code even if it was incorporated in a derivative work, and does not purport to impose confidentiality or use restrictions on Sequent Code.

In fact, SCO's interpretation of section 2.01 is plainly contrary to the position taken by AT&T, as author of and party to the SVRX licenses. AT&T clarified the meaning of section 2.01 in its *$ echo* publication, which AT&T described as its own newsletter "to reach

Mr. Ryan E. Tibbitts
February 6, 2004
Page Two

all UNIX System V licensees through one defined medium" and "keeps them abreast of any product announcements, policy changes, company business and pricing structures."

Specifically, in an edition of *S echo* dated April 1985 (the same month that the Sequent license agreement was signed), AT&T announced that changes would be made to the SVRX license agreement "to clarify ownership of modifications or derivative works prepared by a licensee." AT&T said this and other announced changes were "in response to direct feedback from AT&T licensees and [were] intended to make the contracts more responsive to the needs of the licensees." AT&T then followed up by adding to section 2.01 a sentence clarifying that AT&T "claims no ownership interest in any portion of such a modification or derivative work that is not part of a SOFTWARE PRODUCT." Even more clearly, the August 1985 edition of *S echo* explained that this "sentence was added to assure licensees that AT&T will claim no ownership in the software that they developed - only the portion of the software developed by AT&T." Copies of the April and August 1985 editions of *S echo* are enclosed for your convenience.

For these reasons, and the reasons stated in our October 7, 2003 letter to you about IBM-developed code, SCO's position on Sequent Code is unsupportable.

Under Section 4.16(b) of the Asset Purchase Agreement, Novell retains the right, at Novell's "sole discretion and direction," to require SCO to "amend, supplement, modify or waive any rights under, or . . . assign any rights to, any SVRX License to the extent so directed in any manner or respect by [Novell]." That section further provides that to the extent SCO "shall fail to take any such action concerning the SVRX Licenses" as directed by Novell, Novell "shall be authorized, and hereby is granted, the rights to take any action on [SCO's] own behalf."

Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell hereby directs SCO to waive any purported right SCO may claim to require Sequent (or IBM as its successor) to treat Sequent Code as subject to the confidentiality obligations or use restrictions of Sequent's SVRX license.

Novell directs SCO to take these actions by noon, MDT, February 11, 2004, and to notify Novell that it has done so by that time.

Sincerely,

Joseph A. LaSala, Jr.

cc:     Mr. Darl McBride
        Mr. Ronald A. Lauderdale,
        Vice President and Assistant General Counsel, IBM

# EXHIBIT 40

LAW OFFICES

# HATCH, JAMES & DODGE
### A PROFESSIONAL CORPORATION
10 WEST BROADWAY, SUITE 400
SALT LAKE CITY, UTAH 84101
TELEPHONE (801) 363-6363
FAX (801) 363-6666

BRENT O. HATCH
bhatch@hjdlaw.com

February 11, 2004

**Via Facsimile and Regular Mail**

Thomas R. Karrenberg, Esq.
Anderson & Karrenberg
50 W. Broadway, Suite 700
Salt Lake City, Utah 84102

Dear Tom:

This letter is in response to Joseph A. LaSala, Jr.'s letter of February 6, 2004, to Ryan E. Tibbitts, General Counsel of The SCO Group, Inc. Mr. Tibbitts is out of town and asked me to provide a brief response to Mr. LaSala's letter.

We have thoroughly reviewed Mr. LaSala's letter and disagree with the analysis and conclusions therein largely for the reasons expressed to Novell on numerous prior occasions. SCO owns the copyrights to UNIX and clearly acquired all right, title, and interest to enforce the Software and Sublicensing Agreements against Sequent Computer Systems (and its successor IBM) without answering to Novell. Novell has no contractual or other right to increase Sequent Computer Systems' source code rights, or prevent SCO from exercising its rights with respect to use restrictions on SVRX source code or any derivations of the same. SCO has the full right to protect its UNIX source code. SCO also has the clear right to enforce contractual restrictions on use against Sequent Computer Systems. Novell has no rights, contractual or otherwise, to direct SCO to waive its rights and claims against Sequent Computer Systems under the Software and Sublicensing Agreements. Your client is well aware that SCO's rights with regard to Sequent Computer Systems go to the very core of protecting the UNIX source code and Software and Sublicensing Agreements that SCO acquired from Novell.

For the reasons outlined above and for other reasons, SCO has no intention of waiving its rights against Sequent Computer Systems or allowing the destruction of the value of UNIX and UnixWare by ignoring the restrictions on use, transfer, and confidentiality of source code, derivative works and methods. We demand that Novell refrain from and cease the wrongful conduct threatened in its February 6th letter.

Sincerely yours,

Brent O. Hatch

c:     Ryan E. Tibbitts, Esq.

# EXHIBIT 41

Joseph A. LaSala, Jr.
*Senior Vice President,*
*General Counsel and Secretary*

# Novell.

*VIA FACSIMILE AND CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

February 11, 2004

Mr. Ryan Tibbitts
General Counsel
The SCO Group
355 South 520 West
Lindon, UT  84042

Mr. Ronald A. Lauderdale
Vice-President, Assistant General Counsel
International Business Machines Corporation
Maildrop 4201
Route 100
Somers, N.Y.  10589

Re:  *Sequent Computer Systems*

Dear Counsel:

Reference is made to the following:

- Asset Purchase Agreement by and between The Santa Cruz Operation, Inc. and Novell, Inc. dated as of September 19, 1995, and more particularly to Section 4.16(b) of that agreement;
- Software Agreement No. SOFT-000321, *et seq.,* between AT&T Information Systems Inc. and Sequent Computer Systems, Inc. ("Sequent's SVRX license");
- Letters dated May 29, 2003 and August 11, 2003 from The SCO Group to Sequent Computer Systems, Inc.;
- Letter dated August 14, 2003 from IBM to The SCO Group;
- Letter dated October 7, 2003 from Novell, Inc. to The SCO Group regarding IBM Code; and
- Letter dated February 6, 2004 from Novell, Inc. to The SCO Group regarding Sequent Computer Systems.

In its February 6 letter to The SCO Group, Novell directed "SCO to waive any purported right SCO may claim to require Sequent (or IBM as its successor) to treat Sequent Code as subject to the confidentiality obligations or use restrictions of Sequent's

Mr. Ryan Tibbitts
February 11, 2004
Page Two

SVRX license." The letter defined Sequent Code as code developed by Sequent, or licensed by Sequent from a third party, which Sequent incorporated in its UNIX variant but which itself does not contain proprietary UNIX code supplied by AT&T under the license agreements between AT&T and Sequent. Novell directed SCO to take this action by noon, MST, February 11, 2004.

SCO has failed to take the actions directed by Novell.

Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell, on behalf of The SCO Group, hereby waives any purported right SCO may claim to require Sequent (or IBM as its successor) to treat Sequent Code as subject to the confidentiality obligations or use restrictions of Sequent's SVRX license.

Sincerely,

Joseph A. LaSala, Jr.

cc:  Mr. Darl McBride
      President and CEO