SCO Grp v. Novell Inc                                                                    Doc. 19

MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697

**Attorneys for Novell, Inc.**

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>      Plaintiff and Counterclaim-<br>      Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>      Defendant and Counterclaim-<br>      Plaintiff. | **NOVELL'S REPLY TO SCO'S OPPOSITION TO NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR PRELIMINARY INJUNCTION**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Dockets.Justia.com

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF ISSUES ...................................................................................................1

SUMMARY OF ARGUMENT ............................................................................................1

ARGUMENT.........................................................................................................................4

I.     SCO POINTS TO NO REASONABLE ALTERNATIVE
      INTERPRETATION OF THE APA THAT WOULD PRECLUDE
      SUMMARY JUDGMENT. ...........................................................................................4

      A.    The APA Is Not Susceptible to an Interpretation of SVRX
           Royalties That Excludes the Payments SCO Collected From the
           Sun and Microsoft Agreements. ...........................................................................4

           1.     SCO's "Then-Existing" Limitation Is Not Supported by the
                Plain Language of the APA. ......................................................................4

           2.     SCO's "Binary" Limitation Is Not Supported by the Plain
                Language of the APA..................................................................................5

      B.    SCO's Licensing of * **REDACTED** * Does Not Obviate SCO's Duty
           To Remit the Sun and Microsoft Payments to Novell. ...........................................7

           1.         * **REDACTED** *          , to the Sun and
                Microsoft Agreements. .............................................................................7

           2.     SCO's Focus on * **REDACTED** * Does Not Relieve Its
                Obligation to Remit SVRX Payments from the Sun and
                Microsoft Agreements. .............................................................................9

      C.    SCO Cannot Rely on Extrinsic Evidence Because the APA is not
           Reasonably Susceptible to SCO's Narrow Interpretation of "SVRX
           Royalties."...........................................................................................................11

II.    SCO'S PRELIMINARY INJUNCTION AND CONSTRUCTIVE TRUST
      ARGUMENTS LACK MERIT AND DO NOT BAR RELIEF........................................13

i

A.     Novell Has Met Its Burden of Showing That It Is Likely To
       Succeed on the Merits of Its Claims. .................................................................13

B.     Novell Will Face Irreparable Harm If the Injunction is Denied,
       Outweighing Any Harm Caused to SCO. ..........................................................15

C.     Any Delay On the Part of Novell is a Direct Result of SCO's
       Breach of Fiduciary Duty in Not Disclosing the Relevant
       Agreements. .......................................................................................................15

D.     The Court Should Not Require A Security Bond Because Novell
       Has Substantial Assets. ......................................................................................16

E.     Because SCO has Commingled the Sun and Microsoft Royalties,
       The Trust *Res* is Traceable to the Lowest Intermediate Balance
       Plus Deposits. .....................................................................................................17

CONCLUSION ...................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bionghi v. Metro. Water Dist.*,
    70 Cal. App. 4th 1358 (1999) ........................................................................11

*CHoPP Comp. Corp., Inc. v. U.S.*,
    5 F.3d 1344 (9th Cir. 1993) ..........................................................................14

*Carma Developers., Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal. 4th 342 (1992) ....................................................................................12

*Chrysler Credit Corp. v. Super. Ct.*,
    17 Cal. App. 4th 1303 (1993) ........................................................................18

*Church v. Bailey*,
    90 Cal. App. 2d 501 (1949) ......................................................................17, 18

*Cont'l Oil Co. v. Frontier Ref. Co.*,
    338 F.2d 780 (10th Cir. 1964) .......................................................................16

*Continuum Co. v. Incepts, Inc.*,
    873 F.2d 801 (5th Cir. 1989) .........................................................................17

*Dore v. Arnold Worldwide, Inc.*
    39 Cal. 4th 384 (2006) ...................................................................................12

*Evangelho v. Presoto*,
    67 Cal. App. 4th 615 (1998) .....................................................................18, 19

*Founding Members of the Newport Beach Country Club v.*
    *Newport Beach Country Club, Inc.*,
    109 Cal. App. 4th 944 (2003) ........................................................................11

*Haggard v. Kimberly Quality Care, Inc.*,
    39 Cal. App. 4th 508 (1995) ..........................................................................11

*ITT Commercial Fin. Corp. v. Tech Power, Inc.*,
    43 Cal. App. 4th 1551 (1996) ........................................................................18

*In re JD Servs., Inc.*,
   284 B.R. 292 (Bankr. D. Utah 2002) ...................................................................18

*In re Mahan & Rowsey, Inc.*,
   817 F.2d 682 (10th Cir. 1987) ...........................................................................18

*In re PKR, P.C.*,
   220 B.R. 114 (B.A.P. 10th Cir. 1998) .................................................................15

*L.G. Balfour Co. v. Drake*,
   703 F. Supp. 530 (S.D. Miss. 1988) ...................................................................14

*Murray v. City of Sapulpa*,
   45 F.3d 1417 (10th Cir. 1995) ...........................................................................12

*Wells Fargo Bank Nw. N.A. v. Taca Int'l Airlines*,
   247 F. Supp. 2d 352 (S.D.N.Y. 2002) ................................................................12

## STATUTES

Cal. Civ. Code
   § 1638 ..............................................................................................................12
   § 1639 ..............................................................................................................12
   §1643 ................................................................................................................5

Federal Rules of Civil Procedure
   Rule 56(f) ..........................................................................................................12
   Rule 65(c) ..........................................................................................................16

### STATEMENT OF ISSUES

Novell's motion for partial summary judgment as to its Sixth, Seventh, Eighth, and Ninth Claims for Relief presents two issues: (1) whether SCO breached its admitted fiduciary duty to remit "all royalties, fees and other amounts due under all SVRX Licenses" (*i.e.*, "SVRX Royalties") to Novell by wrongfully converting payments SCO received from its undisputed licensing of UNIX System V (also referred to as **S**ystem **V R**elease **X**) software to Sun and Microsoft in 2003, and (2) whether Novell, as the undisputed equitable owner of "all royalties, fees and other amounts due under all SVRX Licenses," is entitled to an accounting and constructive trust of these sums.

Novell's preliminary injunction motion presents the issue of whether, if summary judgment is denied, the Court should, after an accounting, impose a constructive trust on the Sun and Microsoft payments wrongfully withheld by SCO, since SCO is hemorrhaging assets at an unsustainable rate.

### SUMMARY OF ARGUMENT

SCO concedes the major points necessary to decide this motion.  First, it does not dispute that the APA created an agency relationship between Novell and Santa Cruz, and that SCO, as Novell's agent, owes myriad fiduciary duties to Novell in connection with "all royalties, fees and other amounts due under all SVRX Licenses" (or SVRX Royalties), including the obligation to collect and pass through 100% of these amounts to Novell.[1]  (*Compare* Novell's Opening

---

[1] SCO also does not dispute its fiduciary obligations to provide Novell with detailed monthly reports and to comply with audits as to SVRX Royalties; to "manage the subject matter
(Footnote continues on next page.)

Memorandum ("Mem.") at 4-6 (¶¶5-14), *with* SCO's Opposition to Novell's Mem. ("Opp."),

App. A at 2-7 (¶¶5-16).) Second, SCO acknowledges that Novell is the equitable owner of these

SVRX Royalties. (Opp., App. A at 2-3 (¶6), 4 (¶8).) Third, SCO admits that the Sun and

Microsoft Agreements license * **REDACTED** *. (*Id.* at 2, 31.) Indeed, as SCO concedes, those

agreements license                                    * **REDACTED** *

   * **REDACTED** * .[2] (*Compare* Declaration of Michael Jacobs in Support of Novell's Mem.

("Jacobs Decl."), Ex. 1 at 059-60 (Sch. 1.1(a), Item VI), *with* Ex. 9 at 2, 11-12 (§§*REDACTED*),

*and with* Ex. 11 at 12; *see also* Ex. A to Reply Mem.) Finally, SCO does not dispute that it did

not pass through to Novell any monies it collected from the Sun and Microsoft Agreements.

(Opp., App. A at 16 (¶42).)

        To escape these concessions, SCO seeks to narrow its fiduciary remittance obligations

through confused interpretations of the APA's unambiguous language. As an initial matter, by

changing the plain meaning of SVRX License in the APA, SCO characterizes the amounts it

collected from the Sun and Microsoft Agreements as something other than the SVRX Royalties

it is required to pass through to Novell. However, the APA is not reasonably susceptible to

SCO's tortured reading of SVRX License. If, as SCO suggests, SVRX License refers only to

---

(Footnote continued from previous page.)

of the relationship (or *res*) with due care"; to "keep the beneficiary fully informed as to all
matters pertinent to the beneficiary's interest in the *res*"; to "account for profits"; and to fully
disclose "material facts concerning a transaction which might affect the principal's decision
thereon." (*Compare* Mem. at 9-22, *with* Opp.)

        [2] In characterizing the Sun and Microsoft Agreements as           * **REDACTED** *
    * **REDACTED** *    , SCO notably fails to rebut — and therefore concedes — that these
agreements license                          * **REDACTED** *
* **REDACTED** *   . (Opp., App. A at 13-14 (¶33), 15 (¶38).)

those licenses in existence at the time of the APA, the modifiers "new" and "existing" used in the APA to modify that term are rendered meaningless. If, as SCO suggests, SVRX License refers only to binary agreements, the APA's careful use of the modifiers "source" and "binary" in particular instances and its use of "all" and "any" in connection with SCO's SVRX License payment obligations are to be ignored. SCO's interpretations must be rejected as a matter of law.[3] Moreover, because the APA is not reasonably susceptible to SCO's varying interpretations, the extrinsic evidence proffered by SCO cannot be considered.

SCO also endeavors to restrict its remittance duties with respect to the Sun and Microsoft Agreements by characterizing those agreements as        * REDACTED *

     * REDACTED *        . But the licensing of * REDACTED * in the Sun and Microsoft Agreements is    * REDACTED *  .


                                   * REDACTED *


                                              . As such, SCO is not excused from its duty to remit "all royalties, fees and other amounts" due under SVRX Licenses, even if those contracts license        * REDACTED *        .

Finally, SCO's attempted injunction rebuttal fails. SCO cannot overcome Novell's strong likelihood of success by interjecting its stayed copyright infringement claim into the

_____

[3] In a summary judgment filing on December 1, 2006, Novell further addresses the meaning of SVRX License and explains the absurdities in SCO's interpretations thereof. *See* Motion for Summary Judgment on its Fourth Claim for Relief, PACER No. 175, at 3-6, 20-32.

analysis.  SCO's impending bankruptcy is a compelling reason to grant the requested injunction, and Novell has established a trust *res* over which the Court can impose a constructive trust.

**ARGUMENT**

I.      **SCO POINTS TO NO REASONABLE ALTERNATIVE INTERPRETATION OF THE APA THAT WOULD PRECLUDE SUMMARY JUDGMENT.**

SCO's Opposition presents the issue of whether the plain meaning of SVRX Royalties, which SCO is obligated to remit to Novell as its fiduciary, should be narrowed to include only a narrow subset of "<u>all</u> royalties, fees and other amounts due under <u>all</u> SVRX Licenses" — *i.e.*, <u>binary</u> royalties derived from just SVRX Licenses <u>in existence at the time of the APA</u>, as SCO argues.  This is a straightforward legal question of contract interpretation.  As discussed, the APA is not reasonably susceptible to a contract interpretation where "all" means only "then-existing" and "binary."

A.      **The APA Is Not Susceptible to an Interpretation of SVRX Royalties That Excludes the Payments SCO Collected From the Sun and Microsoft Agreements.**

1.      **SCO's "Then-Existing" Limitation Is Not Supported by the Plain Language of the APA.**

SCO places a temporal limitation on SVRX Licenses to exempt from SVRX Royalties any payments under agreements not in existence at the time of the APA.  This limitation has no basis in the APA and therefore must be rejected as a matter of law.

First, the APA specifically contemplates that SVRX Licenses are comprised of both "existing" and "new" licenses of the SVRX software listed in detail under Item VI of the APA. The APA employs "existing" and "new" to modify SVRX License where such a limitation is warranted, but not in others.  (Jacobs Decl., Ex. 2 at 3 (§E) (§1.2(e)(ii-iii) at 7 (§J).)  No

4

"existing" limitation is used to restrict the SVRX Licenses for which SCO is obligated to remit SVRX Royalties under Section 4.16(a). There is a reason, which SCO ignores: Amendment No. 1 to the APA specifically includes fees from <u>both</u> "existing" and "new" licenses of SVRX as "categories of SVRX Royalties." (*Id*. at 3 (§1.2(e)(ii-iii).)

Amendment No. 1 to the APA reinforces that there is no "existing" limitation on SVRX Licenses in another way. Although specifically using "existing" and "new" in places to modify SVRX License, Amendment No. 1 did <u>not</u> limit SVRX License to "existing" licenses when it expanded the definition of SVRX License to include contracts relating to certain Auxiliary Products. (*Id*. at 9 (§K.4).) The stand-alone use of SVRX License must necessarily encompass the subsets of both "existing" and "new" SVRX Licenses; there can be no other reasonable interpretation. *See* Cal. Civ. Code §1643.

### 2. SCO's "Binary" Limitation Is Not Supported by the Plain Language of the APA.

As a second defense, SCO asserts that the term "SVRX Royalties" should include only binary royalties. This artificial restriction is equally implausible and disproved by the plain language of the APA.

First, the APA does not limit SCO's remittance obligation to "certain" SVRX Licenses. Instead, it unambiguously extends SCO's obligations and Novell's rights to "<u>all</u> SVRX Licenses." Section 4.16(a) expressly states that "SVRX Royalties" are "<u>all</u> royalties, fees and other amounts due under <u>all</u> SVRX Licenses . . ." (Jacobs Decl., Ex. 1 at 031 (§4.16(a)) (emphasis added).) Second, the drafters of the APA knew how to specifically distinguish between matters relating to source and binary code, including agreements relating to source and binary rights. (*See, e.g.*, *id*. at 008 (Recital A), 016 (§2.8(f)), 057-59 (Sch. 1.1(a) ("Binary

Licensing Agreements" in Item III.M)), 061 (Sch. 1.1(b) ("binary only")); Ex. 2 at 3 (§E(e)(ii)-

(iv)), at 4 (§E(f)), at 6-7 (§J).)  Yet, in regard to SVRX Licenses and SCO's royalty obligations

relating thereto, the APA makes <u>no</u> distinction whatsoever.

      Moreover, directly contrary to SCO's suggestion that Section 1.2(e) of Amendment No. 1

"made clear that the term 'SVRX Royalties' refers only to the binary royalties" (Opp. at 10

(¶20)), that section <u>expressly includes</u> source code fees as a type of SVRX Royalty.  For

example, Section 1.2(e) identifies as an SVRX Royalty category "<u>source code right to use fees</u>

<u>under existing SVRX Licenses from the licensing of additional CPUs and from distribution by</u>

<u>SCO of additional source code copies.</u>"  (Jacobs Decl., Ex. 2 at 3 (§E(e)(ii).)[4]

      Further, even under SCO's binary view, it must still remit to Novell the Sun and

Microsoft payments flowing from the licensing of   * **REDACTED** *   .  The Sun and Microsoft

Agreements licensed                    * **REDACTED** *                    .  Section * **REDACTED** *   of the

Sun Agreement grants Sun the rights to

* **REDACTED** *

.  (*Id*.,

Ex. 9 at 2, 11-12 (emphasis added).)  Similarly, Microsoft, through its agreement with SCO,

* **REDACTED** *

---

[4] Section 1.2(e) directs that only certain source code fees need not be remitted to Novell.
(Jacobs Decl., Ex. 2 at 3 (§E(e)(ii-iii)).)  However, SCO is <u>not</u> entitled to keep another category
of SVRX Royalties:  source code right-to-use fees for new SVRX licenses that are not "approved
by [Novell] pursuant to Section 4.16(b) hereof."  (*Id*.)  The Sun and Microsoft Agreements were
not so approved by Novell.  (Opp., App. A at 15 (¶39).)

* **REDACTED** *

(*Compare id.*, Ex. 1 at 059-60 (Sch. 1.1(a), Item

VI), *with* Ex. 11 at 4, 12-13; Ex. 12 at 5; *see also* Ex. A to Reply Mem.)

**B.      SCO's Licensing of** * **REDACTED** * **Does Not Obviate SCO's Duty To Remit the Sun and Microsoft Payments to Novell.**

SCO also seeks to evade liability by arguing that the Sun and Microsoft Agreements are

not "SVRX Licenses" producing "SVRX Royalties," but are instead primarily licenses for

UnixWare that license SVRX only incidentally, and that therefore no monies are due to Novell

pursuant to the APA.  (Opp. at 10-12 (¶¶21-26), 33, 40-42.)  This position is unfounded.

**1.                        * REDACTED *              the Sun and Microsoft Agreements.**

SCO's        * **REDACTED** *        argument is belied by the text of the Sun and Microsoft

Agreements.  Those agreements are not simply                    * **REDACTED** *

* **REDACTED** *.  On the contrary, they                    * **REDACTED** *

* **REDACTED** *.

Microsoft, for example,

* **REDACTED** *

.[5]  (Jacobs Decl., Ex. 11 at  4;

Ex. 12 at 5.)                              * **REDACTED** *

---

[5]                                * **REDACTED** *

. (Jacobs Decl., Ex. 11 at 1, 12-13.)                      * **REDACTED** *

* **REDACTED** *                        . (*Compare id.*, Ex. 1 at 059-

60 (Sch. 1.1(a), Item VI), *with* Ex. 11 at 12-13; *see also* Ex. A to Reply Mem.)

* REDACTED *

* REDACTED *                                              :

| Subject of Microsoft License | Payments Collected By SCO |
|---|---|
| "      * REDACTED *     ," (Jacobs Decl., Ex. 11 at 2-3 (§§* **REDACTED** *), 8-9 (Ex. A ( * **REDACTED** * ) (emphasis added).) | * REDACTED * (Jacobs Decl., Ex. 11 at 1 (§**.) |
| * **REDACTED** *    ** .." (*Id.* at 2 (§§* **REDACTED** *), 8-9 (Ex. A (* **REDACTED** *)); Ex. 12 at 3 (§**) (emphasis added).) | * **REDACTED** * (*Id.*, Ex. 11 at 2 (§**).) |
| * REDACTED *  (*Id.*, Ex. 11 at 4 (§§ ** ), 12-13 ( ** ) (emphasis added).) | * REDACTED * (*Id.* at 1 (§**.) |
| * REDACTED *  ** (*Id.*, Ex. 11 at 4 (§§ ** ), 12-13 ( ** ); Ex. 12 at 5 (§**) (emphasis added).) | * REDACTED * (*Id.*, Ex. 11 at **) |
| * REDACTED *     ** " (*Id.*, Ex. 11 at 1 (§§ ** ).) | * REDACTED * (*Id.* at 1 (§**.) |

Scrutiny of the 2003 Sun Agreement also defeats SCO's attempt to create a factual issue

as to whether this agreement is                          * **REDACTED** *

            * **REDACTED** *                                              . (*See*

Opp. at 24-26 (¶¶67-68).)

* **REDACTED** *

    . (Jacobs Decl., Ex. 9 at 11-12.)                          * **REDACTED** *

8

* REDACTED *

(*Id*. at 12.)

SCO's argument that the Sun and Microsoft Agreements          * REDACTED *

is also belied by how SCO accounted for the revenue from these licenses.  SCO did

not account for the Microsoft and Sun revenue as UnixWare revenue.  Rather, SCO treated it as

SCOsource Licensing revenue.  (Jacobs Decl., Ex. 7 at 23-24.)  As SCO acknowledges,

SCOsource revenue is comprised of revenue derived from the licensing of "UNIX System V

code."  (Decl. of Heather Sneddon in Support of Novell's Mem. ("Sneddon Decl."), Ex. 1 at 32.)

**2.    SCO's Focus on * REDACTED * Does Not Relieve Its Obligation
to Remit SVRX Payments from the Sun and Microsoft
Agreements.**

SCO's focus on          * REDACTED *          of the Sun and Microsoft Agreements as an

escape-hatch fails for other reasons.  SCO improperly assumes that          * REDACTED *   obviates

its remittance obligations relating to SVRX Licenses.

SCO is correct that Section J of Amendment No. 1 to the APA provides that SCO can

enter into new SVRX Licenses in one limited situation: "as may be incidentally involved through

its rights to sell and license UnixWare software or the Merged Product."  (Jacobs Decl., Ex. 2

at 6-7.)  However, SCO confuses the question of SCO's authority to enter into new SVRX

Licenses with the question of SCO's obligation to remit "all royalties, fees and other amounts"

flowing from those Licenses.  Even if SCO had been authorized          * REDACTED *

* REDACTED *          , SCO is not excused from its obligation as Novell's

fiduciary to remit and account for the sums due under          * REDACTED *          of the

Sun and Microsoft Agreements.  This is consistent with the APA's clear direction that UnixWare

9

sales should not destroy the economic benefit of the monies Novell would be due under SVRX Licenses.[6] Nor is this remittance obligation subject to any termination date.

Moreover, no other APA exception permits SCO to keep the SVRX revenues it collected from Sun and Microsoft. As SCO concedes, the APA only permits SCO to keep SVRX monies in the narrow circumstances outlined in Section 1.2(e). (Opp., App. A at 7 (¶15).) None of them apply to the Sun and Microsoft Agreements. The only Section 1.2(e) circumstance that SCO even alludes to in its Opposition — Section 1.2(e)(ii)'s exception concerning "source code right to use fees under existing SVRX Licenses from the licensing of additional CPU's and from the distribution by Buyer of additional source code copies" — does not relieve SCO of its remittance obligation because the Sun and Microsoft Agreements grant                    * REDACTED *

* REDACTED *. (Jacobs Decl., Ex. 9 at 1-3 (§§ REDACTED); Ex. 11 at 4 (§ REDACTED); Ex. 12 at 5.) Thus, because (1) the Sun and Microsoft Agreements are not simply licensing * REDACTED *

                    * REDACTED *                    (id.), (2) the Sun and Microsoft Agreements include            * REDACTED *        (see Ex. A to this Reply Mem.; Jacobs Decl., Ex. 11 at 4, 12-13; Ex. 12 at 5; Ex. 9 at 11-12; Opp., App. A at 13-14 (¶33), 15 (¶38)), and (3) SCO did not consult Novell or get its approval (Opp., App. A at 15 (¶39)), SCO is

---

[6] Schedule 1.2(b), for example, provides that SCO's SVRX Royalties obligation to Novell shall continue even after SCO converts an SVRX customer to UnixWare, unless SCO can demonstrate to Novell's reasonable satisfaction that no SVRX code or an insignificant amount of SVRX code is included in the covered product. (Jacobs Decl., Ex. 1 at 065-66 (Sch. 1.2(b)(f)).)

obligated to remit "all royalties, fees and other amounts" for the licensed SVRX to Sun and

Microsoft to Novell.[7]

### C.    SCO Cannot Rely on Extrinsic Evidence Because the APA is not Reasonably Susceptible to SCO's Narrow Interpretation of "SVRX Royalties."

SCO's reliance on extrinsic evidence is improper and cannot be considered on this

motion.  Under California law, courts will not consider extrinsic evidence that contradicts the

meaning of an integrated writing, as here, where that contract is not reasonably susceptible to

more than one interpretation.  *See Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508,

519-20 (1995) (refusing to allow extrinsic evidence contradicting an integrated employment

contract, and noting that evidence of intent "which is contrary to a contract's express terms . . .

does not give meaning to the contract; rather it seeks to substitute a different meaning");

*Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1363-66 (1999) (affirming summary

adjudication where a contractual clause was not reasonably susceptible to more than one

meaning, and holding that a party cannot "smuggle extrinsic evidence to add a term to an

integrated contract"); *Founding Members of the Newport Beach Country Club v. Newport Beach

Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (noting "the objective intent, as evidenced

---

[7] Contrary to SCO's suggestion, Section B of APA Amendment No. 2 does not restrict the universe of royalties SCO is obligated to provide Novell.  That section, which expressly relates to prospective buy-out transactions with any SVRX licensee, merely provides that the newly prescribed procedures for managing future buy-outs (addressed in Section B) will not alter the parties' existing source code rights under the APA.  (Jacobs Decl., Ex. 3 at 1 (§B.5).)

by the words of the contract" controls interpretation) (emphasis added); *see also* Jacobs Decl., Ex. 1 at 054 (§9.5) (APA's integration clause).[8]

As demonstrated, the APA is not reasonably susceptible to an interpretation that SCO's royalty obligations to Novell are limited to binary royalties paid under existing agreements pursuant to which SVRX licensees were paying such royalties. Accordingly, the various declarations and other parol evidence proffered by SCO to contradict the plain meaning of SVRX Royalties[9] should not be considered in deciding Novell's Motion.[10] *See id*.

The plain language of the APA proves that the Sun and Microsoft Agreements produced SVRX Royalties to which Novell is entitled. *See* Cal. Civ. Code §§ 1638, 1639; *Carma Developers., Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) (the plain language of a contract governs its meaning). Section 4.16(a) expressly states that SVRX Royalties are "all

---

[8] SCO's reliance on *Dore v. Arnold Worldwide, Inc*. (Opp. at 31) actually underscores the inadmissibility of extrinsic evidence here. 39 Cal. 4th 384 (2006). In *Dore*, the Court upheld the trial court's *refusal* to examine extrinsic evidence on summary judgment where the contract was not "reasonably susceptible" to the non-movant's interpretation. *Id*. at 391-92.

[9] Much of SCO's evidence is rife with boilerplate, identical recitations. (*See* Opp. at 15-17 (¶¶40-42).) Several declarations are not based on personal knowledge at all, but on hearsay and speculation. *See, e.g.,* Opp., Ex. 11 at 2-11 (SCO's Bill Broderick    * REDACTED * * REDACTED *    ); Ex. 12 at 2 (SCO's Jean Acheson    * REDACTED * * REDACTED *    ); Ex. 17 at 2-9 (SCO's Chris Sontag * REDACTED * * REDACTED *    ). As SCO cites in its Opposition, "conclusory and self-serving affidavits are not sufficient" for purposes of summary judgment." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

[10] SCO's belated Rule 56(f) argument that insufficient discovery has been conducted to decide this motion is unfounded. Testimony on parol evidence is not necessary to evaluate a motion predicated solely on the plain language of an undisputed, integrated contract. *See Wells Fargo Bank Nw. N.A. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 362 (S.D.N.Y. 2002) (granting partial summary judgment and rejecting Rule 56(f) request for additional discovery where parol evidence not necessary to interpret a solely legal question on the terms of a lease).

royalties, fees and other amounts due under <u>all</u> SVRX Licenses (as listed in detail under item VI

of Schedule 1.1(a) . . .)" of the APA.  (Jacobs Decl., Ex. 1 at 031 (§4.16(a)) (emphasis added);

Ex. 2 at 9 (§K.4).)  Item VI of Schedule 1.1(a), in turn, provides an explicit list of UNIX

System V software Releases, including SVRX release Nos. 1.0, 1.1, 2.0, 2.1, 3.0, 3.1, 3.2, 4.0,

4.1, and 4.2.  (*Id.*, Ex. 1 at 059-60.)  Nowhere does the APA confine SCO's duties to just binary

royalties, or only to those royalties flowing from pre-existing SVRX Licenses.  SCO offers no

credible rebuttal to this plain language interpretation.

II.    **SCO'S PRELIMINARY INJUNCTION AND CONSTRUCTIVE TRUST
ARGUMENTS LACK MERIT AND DO NOT BAR RELIEF.**

A.    **Novell Has Met Its Burden of Showing That It Is Likely To Succeed
on the Merits of Its Claims.**

SCO hinges its likelihood of success argument on the existence of an ambiguity in the

APA.  Indeed, the contract interpretation cases cited by SCO to argue against Novell's likelihood

of success, unlike here, involve contracts that were found to be ambiguous; in those cases the

Court found that the extrinsic evidence did not resolve the issue in the movant's favor.  (Opp. at

49.)  In this case, Novell has demonstrated that the plain language of the APA sets forth clear and

unequivocal rights by which Novell is substantially likely to prevail on its fiduciary duty,

conversion, constructive trust, and accounting claims.

SCO next tries to skirt Novell's likelihood of success by formulating a new rule of law

that adds an element in the likelihood-of-success analysis requiring the Court to also consider the

merits and damages of its <u>stayed</u> copyright infringement claim.  (Opp. at 49-51.)  In support of

its novel theory, SCO spends two pages of its Opposition describing (1) the allegations in its

copyright infringement claim against Novell — a claim that was stayed on August 21, 2006;

(2) its expert's comparisons of Linux and SVRX version 4 from the *SCO v. IBM* litigation; and (3) a damages estimate on its stayed copyright claim.

SCO's proposition that preliminary injunctions must be denied whenever there is a counterclaim for higher money damages than the value of the injunction is unsupported by the cases it cites.  In fact, SCO's cases support Novell's position that where a fiduciary duty exists (as SCO concedes here), a constructive trust is proper notwithstanding the existence of counterclaims, and is <u>not</u> to be offset by the legal damages claimed by non-movant.  *See L.G. Balfour Co. v. Drake*, 703 F. Supp. 530, 531-33 (S.D. Miss. 1988) (cited in Opp. at 50, and holding that a preliminary injunction for a constructive trust would have been imposed if a fiduciary duty existed, and that an offset turned on the fact that only non-equitable contract claims were involved).  If SCO's position were true, a preliminary injunction could never be granted, regardless of the likelihood of success or irreparable harm, where the non-movant claims more damages than the movant.

Finally, SCO's attempts to alter the likelihood-of-success analysis by arguing that an injunction would alter the status quo misconstrues the nature of the constructive trust remedy.  A constructive trust "springs into existence at the moment a wrongful taking occurs."  *See, e.g., CHoPP Comp. Corp., Inc.* v. *U.S.*, 5 F.3d 1344, 1348 (9th Cir. 1993).  Thus, if the Court finds that SCO has committed a wrongful act, then SCO automatically holds Novell's *res* (here, the specific and identifiable Sun and Microsoft SVRX Royalties) in constructive trust.  The status quo is a constructive trust; Novell is merely seeking a judicial declaration granting it legal effect before SCO hemorrhages more of Novell's *res*.

**B.    Novell Will Face Irreparable Harm If the Injunction is Denied, Outweighing Any Harm Caused to SCO.**

Contrary to SCO's assertion that a preliminary injunction should be denied because it may accelerate SCO's bankruptcy, SCO's imminent bankruptcy is a compelling reason to <u>grant</u> Novell's motion. When SCO goes into bankruptcy, it will not be because of Novell's motion, but because of its own financial missteps. For SCO, bankruptcy is inevitable; it characterizes its assets as merely those "remaining" and does not rebut Novell's arguments that its bankruptcy is imminent. (Opp. at 53 n.8, App. A at 22-23 (¶¶55, 58-59).) Once this bankruptcy occurs, Novell will lose all ability to collect its judgment. *See In re PKR, P.C*., 220 B.R. 114, 117 (B.A.P. 10th Cir. 1998) ("constructive trusts are not recognized or imposed in bankruptcy proceedings unless the trust was imposed either statutorily or judicially prior to the bankruptcy"). Novell's rights therefore must be preserved before SCO squanders even more of Novell's trust assets.

**C.    Any Delay On the Part of Novell is a Direct Result of SCO's Breach of Fiduciary Duty in Not Disclosing the Relevant Agreements.**

SCO's argument that an injunction should not issue because Novell waited too long should be rejected. Beginning in 2003, Novell repeatedly requested information concerning the Sun and Microsoft Agreements so that Novell could verify SCO's compliance with its obligations to administer collection of SVRX Royalties under the APA. SCO refused. (Opp., App. A at 16-18 (¶¶42-46).) For almost three years, SCO hid these agreements that are the basis of Novell's Motion. Novell's motion is a timely-filed response to SCO's production of

previously-undisclosed discovery and Novell's recent amendment of its pleadings to clarify its legal theories concerning this discovery.[11]

Under SCO's view, knowledge of the "context of the Sun and Microsoft Agreements" should have been sufficient. In reality, however, Novell determined that it could not have filed a motion in good faith until reviewing and analyzing the Agreements that formed the basis of that motion. Now that Novell has been permitted to analyze the Agreements, it is apparent why SCO was hesitant to produce them: they are direct evidence of SCO's wrongdoing. SCO's breach of its fiduciary duty to fully inform Novell concerning the royalties it collected from Sun and Microsoft, when requested, can be no defense to Novell's request for preliminary relief.

### D.    The Court Should Not Require A Security Bond Because Novell Has Substantial Assets.

In arguing that Novell must post a substantial security, SCO asks this Court to ignore the Tenth Circuit's directive that a district court has the broad discretion to waive the Rule 65(c) security requirement in cases where the moving party has considerable assets. *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 783 (10th Cir. 1964) ("[t]he evidence shows that [movant] is a corporation with considerable assets and that it is able to respond in damages if [non-movant] does suffer damages by reason of the injunction."). Here, because Novell has considerable assets to cover any consequential harm that SCO might suffer from a wrongful injunction, no security is necessary. (Sneddon Decl., Ex. 2 at 3 (demonstrating Novell's significant cash position).) Even if the Court chooses not to waive security, the amount should not be set at the total costs of

---

[11] Novell briefed this issue in further detail in its October 18, 2006 Opposition to SCO's Motion for Expedited Stay or Continuance, PACER No. 159, at 3-6.

bankruptcy (which is inevitable for SCO regardless of this motion), but at the amount of the

royalties themselves. *See Continuum Co. v. Incepts, Inc*., 873 F.2d 801, 803 (5th Cir. 1989)

(staying a district court order increasing a pre-bankruptcy bond from $200,000 to $2,000,000

where movant "would be able to satisfy any judgment for damages that might be obtained

against it as a result of a wrongful issuance of the injunction").

> **E.      Because SCO has Commingled the Sun and Microsoft Royalties, The
> Trust *Res* is Traceable to the Lowest Intermediate Balance Plus
> Deposits.**

SCO does not dispute that a constructive trust is the proper remedy for Novell's Claims

for Relief.  SCO instead claims that Novell should not be granted a constructive trust because

"                    **\* REDACTED \***                    " by SCO.  (Opp. at 54.)  As SCO's lack of case

law suggests, there is no such defense to a breach of fiduciary duty, conversion, or constructive

trust remedy.  The "first-in, first-out" accounting method advocated by SCO has no basis in

modern tracing law.  Under the two recognized tracing methods, Novell is entitled to relief.

If trust funds have been commingled with other funds, courts use one of two tracing

methods to make the injured party whole: the lowest balance plus deposits, or the lowest

intermediate balance.  The most appropriate here is the lowest balance plus deposits rule, which

states "when a trust fund has been partially dissipated by the trustee, and later the trustee deposits

in the depleted account personal funds, there is a strong presumption that it was the trustee's

intention in making such deposits to make the trust fund whole."  *Church v. Bailey*, 90 Cal. App.

2d 501, 504-05 (1949); *Evangelho v. Presoto*, 67 Cal. App. 4th 615, 624 (1998).[12]  Because SCO

admits that it has depleted and subsequently deposited funds into the account where it holds the

Sun and Microsoft monies, this method should be applied.  (Opp. at 53-54.)

　　　Alternatively, some courts apply a lowest intermediate balance rule, whereby any

withdrawals are presumed to be from the trustee's own funds first, but subsequent deposits do

not inure to the benefit of the trust fund.  *See ITT Commercial Fin. Corp. v. Tech Power*, *Inc.*,

43 Cal. App. 4th 1551, 1558 (1996); *Chrysler Credit Corp. v. Super. Ct.*, 17 Cal. App. 4th 1303,

1315-16 (1993); *In re Mahan & Rowsey, Inc.*, 817 F.2d 682, 684-85 (10th Cir. 1987).  The

lowest intermediate balance method is most commonly applied, however, in the post-bankruptcy

petition context, where preservation of assets among a number of wronged creditors is

paramount.  *In re JD Servs.*, *Inc.*, 284 B.R. 292, 297 (Bankr. D. Utah 2002).

　　　Although Novell is entitled to relief under either recognized tracing method, the lowest

intermediate balance plus deposits rule governs here, given the pre-petition context and the

nature of SCO's wrongful acts (including its willful and malicious withholding of the relevant

Agreements while it dissipated the trust funds).  Thus, Novell requests that — if the Court finds

the Sun and Microsoft monies have been commingled with SCO's other assets — it apply the

---

　　　[12] In *Church*, the court cited the California Supreme Court to conclude that "where a trustee deposits in a single account in a bank trust funds and his individual funds and makes withdrawals from the account, dissipates the money so withdrawn, and subsequently makes additional deposits of his individual funds in the account, the money which the trustee has deposited becomes a trust fund and the beneficiary is entitled to hold the funds so deposited, and it is unnecessary to show an express intent upon the part of the trustee to replace the trust funds." 90 Cal. App. 2d at 505 (citing *Mitchell v. Dunn*, 211 Cal. 129, 134 (1930)).

lowest balance plus deposits rule to arrive at the constructive trust amount.  *See Evangelho*, 67 Cal. App. 4th at 624.

## CONCLUSION

For the foregoing reasons, Novell respectfully requests that this Court grant partial summary judgment or a preliminary injunction as to Novell's Sixth, Seventh, Eighth, and Ninth Claims for Relief and impose a constructive trust on the monies SCO received and improperly retained from the 2003 Sun and Microsoft Agreements.

DATED:        January 8, 2007

ANDERSON & KARRENBERG

_____

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs (*pro hac vice*)
Kenneth W. Brakebill (*pro hac vice*)

**Attorneys for Novell, Inc.**