MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Counterclaim-Plaintiff Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant. | **DECLARATION OF ALLISON AMADIA**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

I, A. Allison Amadia declare as follows:

1. The statements made in this Declaration are based on my personal knowledge. In connection with this Declaration, I have also reviewed documents contemporaneous to the transaction discussed herein. I have attached two of these documents as Exhibits to this Declaration.

2. I am an attorney duly licensed to practice law in the state of California.

3. From 1995 through 1997, I was employed by Novell, Inc. as in-house corporate counsel. During this time, I was known by my maiden name, Allison Lisbonne.

4. In 1996, I negotiated Amendment No. 2 to the September 19, 1995 "Asset Purchase Agreement By and Between The Santa Cruz Operation, Inc. and Novell, Inc" ("Original APA"). In fact, I was the legal representative of Novell that directly interacted with Santa Cruz in negotiating Amendment No. 2. Jim Tolonen, Novell's Chief Financial Officer, was a Novell business executive assigned to Novell's Amendment No. 2 team. I kept Mr. Tolonen apprised of the negotiations and Mr. Tolonen signed Amendment No. 2 on Novell's behalf.

5. I negotiated Amendment No. 2 with Steve Sabbath, an in-house lawyer at Santa Cruz. I was acquainted with Mr. Sabbath because in 1996 I was also negotiating a dispute concerning Novell's right to enter into "buy outs" of UNIX System V license agreements.

6. During the summer of 1996, Mr. Sabbath telephoned me and raised an issue relating to the UNIX and UnixWare copyrights. He told me that the Original APA explicitly excluded copyrights to UNIX and UnixWare as assets being sold by Novell to Santa Cruz and that it shouldn't have. He wanted Novell to amend the Original APA to explicitly give Santa Cruz rights to copyrights in UNIX and UnixWare.

7. Because I was not involved in the negotiation and drafting of the Original APA, subsequent to my conversation with Mr. Sabbath, I tried to find out what the intent of the Original APA was concerning copyrights. First, I read the language in that contract and it confirmed the copyright exclusion Mr. Sabbath discussed. I saw that the Original APA had an

1

"Excluded Assets" list in Schedule 1.1(b) and that this list provided that certain "Intellectual Property" was excluded from the asset transfer, including "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare." I also saw that the Original APA had an "Assets" list in Schedule 1.1(a) that specifically identified the "Intellectual Property" included in the assets to be transferred by Novell to Santa Cruz; that list only identified certain UNIX and UnixWare trademarks. In addition, I contacted Tor Braham, a lawyer at the law firm of Wilson, Sonsini, Goodrich & Rosati and the principal drafter of the Original APA. He confirmed to me the fact that Novell had not transferred ownership of the UNIX and UnixWare copyrights to Santa Cruz in the Original APA.

8. Later in the summer of 1996, Mr. Sabbath sent me a first draft of Amendment No. 2. I copied Mr. Sabbath's initial proposal into a document that I saved on Novell's computer system, a true and correct copy of which I attach as Exhibit 1 to this Declaration. On the issue of copyrights, Mr. Sabbath proposed that Section V of Schedule 1.1(b) be "revised" from "All copyrights and trademarks, except for the trademarks UNIX and UnixWare" to read:

> All copyrights and trademarks, except for the copyrights and
> trademarks owned by Novell as of the date of this Amendment,
> which pertain to the UNIX and UnixWare technologies and which
> SCO has acquired hereunder ...

(Exhibit 1 at 1.)

9. This initial Santa Cruz proposal was quite broad. First, it proposed that copyrights owned by Novell as of the date of Amendment No. 2 and that pertained to UNIX and UnixWare technology be excised from the Original APA's list of Excluded Assets. Further, it provided that Santa Cruz "has acquired" this set of copyrights through Amendment No. 2.

10. I rejected Mr. Sabbath's proposal. I told Mr. Sabbath that while Novell was willing to affirm that Santa Cruz had a license under the Original APA to use Novell's UNIX and UnixWare copyrighted works in its business, Novell was not going to transfer ownership of any copyrights to Santa Cruz through Amendment No. 2.

2

11. Mr. Sabbath and I subsequently negotiated a final copyright-related provision reflecting that intent. The agreed-upon Amendment No. 2 was more narrow and restrictive than the original Santa Cruz proposal. For example, the final Amendment No. 2 did not include any provision that Santa Cruz "has acquired" any copyrights. In addition, instead of Santa Cruz's broad proposal to make an exception for copyrights "which pertain to UNIX and UnixWare technologies," the final Amendment No. 2 limited this exception to copyrights that are "required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies." A true and correct copy of the final, executed Amendment No. 2 is attached hereto as Exhibit 2.

12. In final form, Paragraph A of Amendment No. 2 provided that Section V of Schedule 1.1(b)'s Excluded Asset list would be "revised" from "All copyrights and trademarks, except for the trademarks UNIX and UnixWare" to:

> All copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the Agreement required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies ...

(Exhibit 2 at 1.)

13. As indicated on the first page of the signed Amendment No. 2, Amendment No. 2's revision of Section V of Schedule 1.1(b) was effective "as of the 16th day of October 1996." (Exhibit 2 at 1.) During the negotiations, Mr. Sabbath did not propose to me that Amendment No. 2's revision of Section V of Schedule 1.1(b) would be retroactively effective as of the date the Original APA was executed in September 1995.

14. Based on my personal involvement in the negotiations and drafting of Amendment No. 2, I am well-situated to describe the intent of Amendment No. 2. Amendment No. 2 was not intended to alter the Original APA's copyright ownership exclusion. Amendment No. 2 was not intended to transfer ownership of any UNIX or UnixWare copyrights owned by Novell. As I mentioned above, Amendment No. 2 affirmed that Santa Cruz had a license under the Original APA to use Novell's UNIX and UnixWare copyrighted works in its business.

3

15. During the negotiations, Mr. Sabbath and I did not discuss what, if any, specific copyrights might be "required" for Santa Cruz to exercise its rights. Should, after Amendment No. 2, Santa Cruz believe its license to use Novell's copyrighted works was insufficient and that it needed ownership of any particular UNIX or UnixWare copyright rights because ownership of such copyrights was "required" to run its business, I believe Santa Cruz would have to have made such a request to Novell. Indeed, as I've discussed, Novell remained the owner of the UNIX and UnixWare copyrights after Amendment No. 2.

16. To the extent that SCO is now contending that Amendment No. 2 acted to transfer ownership of the UNIX and UnixWare copyrights to Santa Cruz, that contention is inaccurate. That was not the intent during the negotiations of Amendment No. 2.

17. There was no Bill of Sale or other similar legal document executed in connection with Amendment No. 2 that transferred ownership of any UNIX or UnixWare copyrights from Novell to Santa Cruz. The reason is simple: Amendment No. 2 was not intended to transfer ownership of any copyrights to Santa Cruz.

18. To the extent that SCO is now contending that Amendment No. 2 was meant to clarify or confirm that the parties intended to transfer ownership of the UNIX and UnixWare copyrights to Santa Cruz in the Original APA, that contention is also inaccurate. That was not the intent during the negotiations of Amendment No. 2. From the outset of the Amendment No. 2 negotiations, Mr. Sabbath was not seeking a clarification that the Original APA gave copyright ownership to Santa Cruz. On the contrary, Mr. Sabbath wanted Novell to change the Original APA in 1996 to give Santa Cruz ownership of copyrights in UNIX and UnixWare because the Original APA did not so provide. I rejected his proposal and ultimately we agreed on the language that became Paragraph A of Amendment No. 2.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 18th day of April, 2007 in Santa Cruz, California.

A. Allison Amadia

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April, 2007, I caused a true and correct copy of the foregoing **DECLARATION OF ALLISON AMADIA** to be served to the following:

*Via CM/ECF*:

>Brent O. Hatch
>Mark F. James
>HATCH JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

>Stuart H. Singer
>William T. Dzurilla
>Sashi Bach Boruchow
>BOIES, SCHILLER & FLEXNER LLP
>401 East Las Olas Blvd., Suite 1200
>Fort Lauderdale, Florida 33301

>David Boies
>Edward J. Normand
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504

>Devan V. Padmanabhan
>John J. Brogan
>DORSEY & WHITNEY, LLP
>50 South Sixth Street, Suite 1500
>Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid*:

>Stephen Neal Zack
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

/s/ Heather M. Sneddon