MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant Counterclaim-Plaintiff Novell, Inc.**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant. | **DECLARATION OF JAMES R. TOLONEN**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

I, James R. Tolonen, declare as follows:

1. The statements made herein are based on my personal knowledge.

2. I have a B.S. in Mechanical Engineering and an MBA in Finance and Accounting from the University of Michigan. I am also a certified public accountant. I have more than 30 years of experience in finance and financial management. I have served as a Chief Financial Officer, Chief Operating Officer, and/or President of five public companies.

3. From 1989 through 1998, I served as Novell's Chief Financial Officer. In addition, I was a member of an "Office of the President" committee of senior executives who advised Novell's President regarding key decisions in the company.

4. In early 1995, Novell decided to divest itself of certain UNIX-related assets. One of my tasks as Novell's Chief Financial Officer was to manage this divestiture.

5. Novell approached the Santa Cruz Operation ("Santa Cruz") to discuss such a deal. Though Santa Cruz was interested, it became clear in the negotiations that Santa Cruz could not afford to purchase the entirety of Novell's UNIX assets and rights.

6. Novell and Santa Cruz therefore focused on a more limited deal — one that Santa Cruz could afford — and those negotiations led eventually to the execution of the "Asset Purchase Agreement By and Between The Santa Cruz Operation, Inc. and Novell, Inc.," dated September 19, 1995 ("Asset Purchase Agreement").

7. As Novell's Chief Financial Officer and a member of its Office of the President committee, I was actively involved in the preparation of the Asset Purchase Agreement. I was in regular communication with the Novell representatives who interacted directly with Santa Cruz during the agreement negotiations. I reviewed drafts of the Asset Purchase Agreement and reviewed the final draft before its execution. Along with David Bradford, I was the most senior

2

Novell executive actively involved in the preparation of the contract between Novell and Santa Cruz.

8. During the course of the Asset Purchase Agreement negotiations, I interacted regularly with David Bradford, whom I would describe as the "point person" heading up Novell's internal negotiation team concerning the Asset Purchase Agreement. I had regular conversations about the intent and scope of the Agreement with Mr. Bradford, in an effort to ensure that the final contract reflected Novell's business interests and its intent in entering into the Agreement.

9. I also interacted with Tor Braham, who headed up Novell's outside counsel team advising us in connection with the transaction and who was the principal author of the text that became the executed version of the Asset Purchase Agreement. I read agreement drafts that Mr. Braham sent us to ensure that the agreement language he drafted and negotiated reflected Novell's business interests and its intent in entering into the Agreement.

10. Before Novell executed the Asset Purchase Agreement, I reviewed the final version of the agreement to ensure that its terms were consistent with the intent of the deal. After such review, I concluded that the terms were consistent with the intent and recommended that Novell execute the Asset Purchase Agreement.

11. As reflected in the plain language of the executed Asset Purchase Agreement, Novell intended to retain and did retain, as an "Excluded Asset," all copyrights, including all UNIX and UnixWare copyrights.

12. Novell intended to retain the UNIX and UnixWare copyrights to protect its business interests, for at least the following reasons:

(a) Because Santa Cruz could not afford to purchase the entirety of Novell's UNIX assets and rights, Novell retained all revenue from contracts relating to the software listed in Section VI of Schedule 1.1(a), defined in the Asset Purchase Agreement as "SVRX Licenses." Retaining the copyrights, as well as authority over SVRX Licenses, was important to insure Novell's entitlement to the SVRX License revenue.

(b) After Novell acquired Unix Systems Laboratories, many of its employees joined Novell. As the businesses naturally grew together, retaining the copyrights was important to ensure Novell could continue with its remaining business regardless of any continuing overlap between UNIX and Novell's other products.

(c) The sale of certain UNIX-related assets to Santa Cruz was part of a larger Novell strategy to foster a set of robust UNIX companies capable of competing with other major market players, notably Microsoft. Novell was therefore also concerned with other major UNIX players, such as Hewlett Packard and IBM, and protecting their interests. For example, at the time, Hewlett Packard and other companies expressed an interest in developing 64-bit processors, along with a revised version of UNIX capable of operating on such processors. Novell's retention of the copyrights and authority over SVRX Licenses would facilitate such projects, in that Novell retained the ability to direct Santa Cruz to grant HP the necessary rights or to do so on Santa Cruz's behalf if Santa Cruz refused.

(d) Novell had concerns about Santa Cruz's continuing viability as a company. The Asset Purchase Agreement therefore contained protection against Santa Cruz's potential bankruptcy. For example, the agreement transferred only legal title to the SVRX Royalties, with Novell retaining an equitable interest in these royalties within the meaning of the Bankruptcy

Code. In addition, retaining the UNIX and UnixWare copyrights would protect Novell's interest in the SVRX Royalties should Santa Cruz go bankrupt.

13. I was Novell's business executive assigned to Amendment No. 2 to the Asset Purchase Agreement. I signed Amendment No. 2 on behalf of Novell.

14. To the extent that SCO is now contending that Amendment No. 2 was meant to "clarify" that the parties intended to transfer the UNIX and UnixWare copyrights to Santa Cruz in the Asset Purchase Agreement, that contention is inaccurate. As I explained, Novell intended to retain the UNIX and UnixWare copyrights in the Asset Purchase Agreement. Novell and Santa Cruz so agreed. This intent is reflected in the Excluded Asset provision of that agreement.

15. To the extent that SCO is now contending that Amendment No. 2 acted to transfer the UNIX and UnixWare copyrights to Santa Cruz, that contention is also inaccurate. I would not have signed the amendment had I understood it to effect such a transfer of a significant set of Novell intellectual property assets.

16. Amendment No. 2 confirmed that Santa Cruz would be allowed to continue to use the Novell-retained copyrights — as it had been doing for the thirteen prior months — only as required to exercise its rights under the Asset Purchase Agreement. However, Novell would continue to own those copyrights.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 20th day of April, 2007 in San Jose, California.

*James R. Tolonen* (signature)

James R. Tolonen

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April, 2007, I caused a true and correct copy of the foregoing **DECLARATION OF JAMES R. TOLONEN** to be served to the following:

*Via CM/ECF*:

>Brent O. Hatch
>Mark F. James
>HATCH JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

>Stuart H. Singer
>William T. Dzurilla
>Sashi Bach Boruchow
>BOIES, SCHILLER & FLEXNER LLP
>401 East Las Olas Blvd., Suite 1200
>Fort Lauderdale, Florida 33301

>David Boies
>Edward J. Normand
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504

>Devan V. Padmanabhan
>John J. Brogan
>DORSEY & WHITNEY, LLP
>50 South Sixth Street, Suite 1500
>Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid*:

>Stephen Neal Zack
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

/s/ Heather M. Sneddon