Telephone
(415) 493-9300

FAX
(415) 493-6811

Senders' Direct Fax
(415) 496-4084

## WILSON, SONSINI, GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

ORIGINAL:

*FILE COPY*

Will Not Follow

### TELECOPY COVER SHEET

FROM: Tor Braham           EXT.: 4635       LOCATION: PC 2-BR

DATE: September 8, 1995         CLIENT NO.: 9062.000

CLIENT NAME: Novell, Inc.

TOTAL NUMBER OF PAGES *INCLUDING THIS COVER SHEET:* __

*IF YOU DO NOT RECEIVE THE ENTIRE DOCUMENT
PLEASE CONTACT THE WSGR OPERATOR AT (415) 493-9300, Ext. 7255*

| | |
|---|---|
| TO: Ed Leonard / Steve Sabbath | OFFICE #: (415) 494-0160 |
| FIRM: Brobeck Phleger & Harrison | TELECOPY #: (415) 496-2921 |
| CITY/STATE: Palo Alto, CA | WSGR OPERATOR: ___ (Initials) (Time) |

| | |
|---|---|
| TO: Lynn Schroeder | OFFICE #: |
| FIRM: | TELECOPY #: (408) 427-7456 |
| CITY/STATE: | WSGR OPERATOR: ___ (Initials) (Time) |

| | |
|---|---|
| TO: | OFFICE #: |
| FIRM: | TELECOPY #: |
| CITY/STATE: | WSGR OPERATOR: ___ (Initials) (Time) |

| | |
|---|---|
| TO: | OFFICE #: |
| FIRM: | TELECOPY #: |
| CITY/STATE: | WSGR OPERATOR: ___ (Initials) (Time) |

MESSAGE:

THE DOCUMENTS ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAIN INFORMATION FROM WILSON, SONSINI, GOODRICH & ROSATI AND ARE FOR THE SOLE USE OF THE ABOVE INDIVIDUAL OR ENTITY, AND MAY BE PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER LAW. ANY OTHER DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE IF YOU ARE NOT THE INTENDED RECIPIENT AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS. WE WILL REIMBURSE YOUR REASONABLE PHONE AND POSTAGE EXPENSES FOR DOING SO.

NOV 000031779

ASSET PURCHASE AGREEMENT

BY AND BETWEEN

THE SANTA CRUZ OPERATION, INC.

AND

NOVELL, INC.

Dated as of September __, 1995

NOV 000031780

**INDEX OF EXHIBITS**

**Exhibit**          **Description**

NOV 000031781

## INDEX OF SCHEDULES

Schedule 1.1(a)    Assets
Schedule 1.1(b)    Excluded Assets
Schedule 1.1(c)    Assumed Liabilities

NOV 000031782

SCHEDULE 1.1(a)

### ASSETS

(i)    all patents, patent applications, copyrights, trademarks, service marks, trade names, trade secrets, proprietary information, technology rights and licenses, proprietary rights and processes, know-how, research and development in progress, and any and all other intellectual property including, without limitation, all things authored, discovered, developed, made, perfected, improved, designed, engineered, devised, acquired, produced, conceived or first reduced to practice by Seller or any of its employees in the course of their employment by Seller that pertain to Unix or UnixWare, whether tangible or intangible, in any stage of development, including without limitation enhancements, designs, technology, improvements, inventions, works of authorship, formulas, processes, routines, subroutines, techniques, concepts, object code, flow charts, diagrams, coding sheets, source code, listings and annotations, programmers' notes, information, workpapers, work product and other materials of any types whatsoever, and all rights of any kind held by Seller in or to any of the foregoing used exclusively in connection with the Business

(ii)    all rights and ownership of Unix and UnixWare, including but not limited to all versions of Unix and UnixWare and all copies of Unix and UnixWare (including revisions and updates in process), and all technical, design, development, installation, operation and maintenance information concerning Unix and UnixWare, including source code, source documentation, source listings and annotations, engineering notebooks, test data and test results, as well as all reference manuals and support materials normally distributed by Seller to end-users and potential end-users in connection with the distribution of Unix and UnixWare;

(iii)    all of Seller's claims against any parties relating to any right, property or asset included in the Business;

(iv)    all of Seller's rights pertaining to Unix and UnixWare under any software development contracts, licenses and any other contracts to which Seller is a party or by which it is bound and which pertain to the Business;

(v)    all copies of Unix and UnixWare, wherever located, owned by Seller; and

(vi)    [others?]

NOV 000031783

## TABLE OF CONTENTS

Page

**ARTICLE I**

THE ACQUISITION ........................................ -1-
1.1   Purchase of Assets .................................. -1-
1.2   Consideration .... ...... .. ..................... -2-
1.3   Transfer of Customers ............................. -2-
1.4   Closing ... ... ................................ -3-

**ARTICLE II**

REPRESENTATIONS AND WARRANTIES OF SELLER ............... -3-
2.1   Organization, Standing and Power ..................... -4-
2.2   Authority ....................................... -4-
2.3   Financial Statements .............................. -5-
2.4   Compliance with Law .... ......................... -5-
2.5   No Defaults .................................... -5-
2.6   Litigation ..................................... -5-
2.7   Absence of Certain Changes ......................... -6-
2.8   Agreements .................................... -7-
2.9   Tax Returns and Reports ........................... -7-
2.10  Technology .................................... -8-
2.11  Title to Properties, Absence of Liens and Encumbrances ........ -8-
2.12  Governmental Authorizations and Licenses ............... -9-
2.13  Environmental Matters ............................. -9-
2.14  Customers ... .................................. -9-
2.15  Proprietary Information and Inventions and Confidentiality Agreements ........ -9-
2.16  No Implied Representations ......................... -9-

**ARTICLE III**

REPRESENTATIONS AND WARRANTIES OF BUYER ............... -10-
3.1   Organization, Standing and Power ..................... -10-
3.2   Authority . ..................................... -11-
3.3   Capitalization .................................. -11-
3.4   SEC Documents; Buyer Financial Statements ............. -11-
3.5   Compliance with Law .............................. -11-
3.6   No Defaults .................................... -11-
3.7   Litigation . , ................................... -12-

NOV 000031784

TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| 3 8 | Absence of Certain Changes | -12- |
| 3 9 | Agreements | -12- |
| 3.10 | Tax Returns and Reports | -12- |
| 3.11 | Technology | -13- |
| 3.12 | Governmental Authorizations and Licenses | -14- |
| 3.13 | Environmental Matters | -14- |
| 3.14 | Proprietary Information and Inventions and Confidentiality Agreements | -14- |
| 3 15 | Status of Shares | -14- |
| 3 16 | No Implied Representations | -14- |

ARTICLE IV

CERTAIN COVENANTS .................................................. -14-
| 4.1 | Conduct of Business of Seller | -15- |
| 4.2 | Conduct of Business of Buyer | -15- |
| 4.3 | No Solicitation | -15- |
| 4.4 | Access to Information | -16- |
| 4.5 | Confidentiality | -16- |
| 4.6 | Expenses | -16- |
| 4.7 | Public Disclosure | -16- |
| 4.8 | Consents | -16- |
| 4.9 | Commercially Reasonable Efforts | -16- |
| 4.10 | Notification of Certain Matters | -17- |
| 4.11 | Delivery of Schedules | -17- |
| 4.12 | Additional Documents and Further Assurances | -17- |
| 4.13 | Treatment of Employees of the Business | -17- |
| 4 14 | Tax Returns | -17- |
| 4.15 | Bulk Sales | -18- |

ARTICLE V

CONDITIONS TO THE ACQUISITION ....................................... -18-
| 5.1 | Conditions to Obligations of Each Party to Effect the Acquisition | -18- |
| 5.2 | Additional Conditions to Obligations of Seller | -18- |
| 5.3 | Additional Conditions to the Obligations of Buyer | -19- |

ARTICLE VI

CERTAIN CORPORATE GOVERNANCE MATTERS ........................... -20-

-ii-

NOV 000031785

TABLE OF CONTENTS
(continued)

Page

ARTICLE VII

TERMINATION, AMENDMENT AND WAIVER . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
7.1     Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
7.2     Effect of Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-
7.3     Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-
7.4     Extension; Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

ARTICLE VIII

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-
8.1     Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-
8.2     Survival . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-
8.3     Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-
8.4     Counterparts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-
8.5     Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-
8.6     Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-
8.7     Other Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-
8.8     Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-
8.9     Rules of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

NOV 000031786

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of September __, 1995 by and between The Santa Cruz Operation, Inc., a Delaware corporation ("Buyer") and Novell, Inc., a Delaware corporation ("Seller").

### RECITALS

A.    Seller is engaged in the business of developing a line of software products currently known as Unix and UnixWare, the sale of binary and source code licenses to various versions of Unix and UnixWare, the support of such products and the sale of other products which are directly related to Unix and UnixWare (collectively, the "Business").

B.    The Boards of Directors of each of Seller and Buyer believe it is in the best interests of each company and their respective stockholders that Buyer acquire certain of the assets of, and assume certain of the liabilities of Seller comprising the Business (the "Acquisition").

C.    In connection with the Acquisition Buyer will issue to Seller _____ shares of Common Stock of Buyer (the "Shares").

D.    In connection with the acquisition by Seller of the Shares, Buyer and Seller desire to set forth certain agreements with respect to the governance of Buyer following the closing of the Acquisition.

NOW, THEREFORE, in consideration of the covenants, promises and representations set forth herein, and for other good and valuable consideration, the parties agree as follows:

### ARTICLE I

### THE ACQUISITION

1.1    Purchase of Assets.

(a)    Purchase and Sale of Assets.  On the terms and subject to the conditions set forth in this Agreement, Seller will sell, convey, transfer, assign and deliver to Buyer and Buyer will purchase and acquire from Seller on the Closing Date (as defined in Section 1.4), all of Seller's right, title and interest in and to the assets and properties of Seller relating to the Business (collectively the "Assets") identified on Schedule 1.1(a) hereto.  Notwithstanding the foregoing, the Assets to be so purchased shall not include those assets (the "Excluded Assets") set forth on Schedule 1.1(b)):

MWK:ODMA\PCDOCS\SQL2\8621\1

NOV 000031787

(b)     Assumption of Liabilities.  At the Closing Buyer shall assume those obligations and liabilities of Seller set forth in Schedule 1.1(c) hereto (collectively, the "Assumed Liabilities")

1.2     Consideration.

(a)     Consideration for Assets; Stock.  On the terms and subject to the conditions set forth in this Agreement, as full payment for the transfer of the Assets by Seller to Buyer, at the Closing Buyer shall assume the Assumed Liabilities and issue to Seller ____ shares of fully paid and nonassessable shares of Common Stock of Buyer (the "Shares" or the "Purchase Price").

(b)     Consideration for Assets; Royalties.  As additional consideration for the transfer of the Assets by Seller to Buyer, Buyer agrees to collect and immediately pass through to Seller all amounts paid by OEMs and other third party customers on account of the SVRX business, including royalties and other payments of any kind.  In addition, Buyer agrees to make payment to Seller of additional royalties on account of its sale of UnixWare products.  The amounts of payments to be made by Buyer on account of the foregoing pass-through Unix arrangement, and the amounts of additional royalties to be paid in connection with the UnixWare business are identified in detail on Schedule 1.2(b) hereto.

(c)     Allocation of Purchase Price.  Within 45 days following the Closing Buyer shall prepare and deliver to Seller (subject to Seller's approval) an allocation of the Purchase Price plus any other consideration properly allocable among the Assets (the "Allocation").  The parties agree that all tax returns and reports (including Internal Revenue Service ("IRS") Form 8594) and all financial statements shall be prepared in a manner consistent with (and the parties shall not otherwise take a position inconsistent with) the Allocation unless required by the IRS or state taxing authority.  The Allocation shall be prepared in a manner consistent with Section 1060 of the Internal Revenue Code of 1986, as amended (the "Code"), and the income tax regulations promulgated thereunder.

(d)     Transfer Taxes.  Buyer shall pay and promptly discharge when due the entire amount of any and all sales and use tax ("Sales Taxes") imposed or levied by reason of the sale of the Assets to Buyer.  The parties shall cooperate with each other to the extent reasonably requested and legally permitted to minimize any such Sales Taxes.

1.3     Transfer of Customers.

(a)     Transfer of Customers.

(i)     Intent.  It is the intent of parties hereto that all of the Business and all of Seller's backlog, if any, relating to the Business be transferred to Buyer.  Accordingly, all parties agree to facilitate the transfer of customers of the Business from Seller to Buyer following the Closing.

NOV 000031788

(ii)    Purchase Order Data.  Seller shall make available to Buyer, upon request (A) a list of all outstanding written customer orders, purchase orders and other customer commitments from the current customers of the Business, (B) the names of all such customers (the "Current Customers"), and (C) data regarding Seller's standard cost of sales for the items covered by such orders, and shall provide upon request such other information as is (AA) relevant to profitability on such items, (BB) available to Seller without incurring undue effort or expense and (CC) requested by Buyer.

(iii)    Transfer of Orders; Assignments.  Prior to the Closing, Seller and Buyer agree to cooperate with each other in conducting joint contacts with the Current Customers (as appropriate) for the purpose of attempting to obtain such customers' consent to transfer orders from Seller to Buyer (or to issue new orders to Buyer for the same or similar items) and to assign Seller's rights and benefits under the contracts included in the Assets to Buyer as of the Closing.

(iv)    Assumption of Obligation.  To the extent that an order is transferred or assigned to Buyer or that Buyer accepts a new purchase order from a Current Customer, Buyer agrees to assume and perform all obligations thereunder.

    1.4    Closing.

(a)    Closing.  Unless this Agreement is earlier terminated pursuant to Section ___, the closing of the transactions contemplated by this Agreement (the "Closing") shall be held at the offices of Wilson, Sonsini, Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304, at 10:00 a.m. on the date which is two business days following satisfaction or waiver of the last of the conditions to Closing as set forth in the Article IV hereof, or on such other time and/or date as the parties agree (the actual date on which the Closing occurs is referred to herein as the "Closing Date").

(b)    Delivery.  At the Closing:

(i)    Buyer shall deliver to Seller an instrument of assumption of liabilities by which Buyer shall assume the Assumed Liabilities as of the Closing;

(ii)    Buyer shall deliver to Seller a certificate or certificates representing the Shares;

(iii)    Seller shall deliver to Buyer all bills of sale, endorsements, assignments, consents to assignments to the extent obtained and other instruments and documents as Buyer may reasonably request to sell, convey, assign, transfer and deliver to Buyer Seller's title to all the Assets; and

(iv)    Seller and Buyer shall deliver or cause to be delivered to one another such other instruments and documents necessary or appropriate to evidence the due execution, delivery and performance of this Agreement.

MWE:ODMA\PCDOCS\SQL2\48462113

-3-

NOV 000031789

(c)    Taking of Necessary Action: Further Action.  If, at any time after the Closing Date, any further action is necessary or desirable to carry out the purposes of this Agreement the parties agree to take, and will take, all such lawful and necessary and/or desirable action

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES OF SELLER

Except as described in the Seller Disclosure Schedule delivered by Seller to Buyer simultaneously with the execution of this Agreement, as such Seller Disclosure Schedule may be updated and/or amended pursuant to Section ___ hereof (the "Seller Disclosure Schedule"), Seller represents and warrants to Buyer that-

2.1    Organization, Standing and Power.  Seller is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation, and has all requisite corporate power and authority to own, operate and lease its properties and to carry on its business as now being conducted.  Seller is duly qualified as a foreign corporation and is in good standing in each jurisdiction in which the failure to so qualify reasonably would be expected to have a material adverse effect on the Business Condition of the Business.  (As used in this Agreement, "Business Condition" with respect to any corporate entity, group of corporate entities or the Business shall mean the business, financial condition, results of operations and assets of such corporate entity, group of corporate entities or the Business, as the case may be.)  Seller has made available to Buyer complete and correct copies of the Certificate of Incorporation and Bylaws of Seller, as amended to the date hereof.

2.2    Authority.  Seller has all requisite corporate power and authority to enter into this Agreement and, to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement, the performance by Seller of its obligations hereunder and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of Seller, and have been approved by the Board of Directors of Seller.  No other corporate proceeding on the part of either Seller is necessary to authorize the execution and delivery of this Agreement Seller or the performance of Seller's obligations hereunder or the consummation of the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Seller and constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, or other similar laws affecting the enforcement of creditors' rights generally and except that the availability of equitable remedies is subject to the discretion of the court before which any proceeding therefor may be brought.  Subject to satisfaction or waiver of the conditions set forth in Article ___, the execution and delivery of this Agreement does not, and the consummation of the transactions contemplated hereby will not, conflict with or result in any violation of any statute, law, rule, regulation, judgment, order, decree, or ordinance applicable to Seller, or its properties or assets that, individually or in the aggregate, reasonably would be expected to have a material adverse effect on the Business Condition of the Business, or conflict with any provision of the Certificate of Incorporation or Bylaws of Seller

MWK: ODMA\PCDOCS\SQL\888621\1                                    -4-

NOV 000031790

or result in any breach or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a material benefit under, or result in the creation of a lien or encumbrance on any of the properties or assets of Seller pursuant to any agreement, contract, note, mortgage, indenture, lease, instrument, permit, concession, franchise or license to which Seller is a party or by which Seller or its properties or assets may be bound that would reasonably be expected, either individually or in the aggregate, to have a material adverse effect on the Business Condition of the Business. No consent, approval, order or authorization of, or registration, declaration or filing with, any court, administrative agency, commission, regulatory authority or other governmental authority or instrumentality, domestic or foreign (a "Governmental Entity"), is required by or with respect to Seller in connection with the execution and delivery of this Agreement or the consummation by Seller of the transactions contemplated hereby, except for (i) the filing of a pre-merger notification report under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), (ii) those required to be made or obtained by Buyer or any of its affiliates, (iii) such consents, approvals, orders, authorizations, registrations, declarations and filings as would not have a material adverse effect on the ability of Seller to transfer the Assets to Buyer at the Closing.

    2.3    <u>Financial Statements</u>. Seller has furnished Buyer with unaudited financial statements of the Business for each of the fiscal years ended _____, including a balance sheet of the Business as at each of the fiscal years ended _____ (the _____ balance sheet being referred to herein as the "_____ Balance Sheet"), and the related consolidated statements of income and cash flow (the foregoing financial statements are referred to collectively as the "Business Financial Statements"). The Business Financial Statements have been prepared in accordance with generally accepted accounting principles consistently applied (except as may be indicated in the notes thereto) and fairly present, in all material respects, the financial position of the Business as at the dates thereof and the results of operations and changes in financial position for the periods then ended. There has been no material change in Seller's accounting policies during such periods relating to the Business, except as described in the notes to the Business Financial Statements.

    2.4    <u>Compliance with Law</u>. Seller has conducted the Business so as to comply in all material respects with all laws, rules and regulations, judgments, decrees or orders of any Governmental Entity applicable to its operations except where the failure so to comply reasonably would not be expected to have a material adverse effect on the Business Condition of the Business. As of the date hereof, there are no judgments or orders, injunctions, decrees, stipulations or awards (whether rendered by a court or administrative agency or by arbitration) against Seller with any continuing effect that reasonably would be expected to have a material adverse affect on the Business Condition of the Business. To the knowledge of Seller, there is no investigation by any Governmental Entity with respect to Seller pending against Seller which is reasonably likely to have a material adverse effect on the Business Condition of the Business.

    2.5    <u>No Defaults</u>. To the knowledge of Seller, Seller is not, nor has it received written notice that it would be with the passage of time, (i) in violation of any provision of its Certificate of Incorporation or Bylaws or (ii) in default or violation of any term, condition or provision of (A) any judgment, decree, order, injunction or stipulation applicable to the Business or (B) any agreement, .

NOV 000031791

note, mortgage, indenture, contract, lease or instrument, permit, concession, franchise or license to which Seller is a party (with respect to the Business) or by which the Business may be bound, in any such case in a manner that reasonably would be expected to have a material adverse effect on the Business Condition of the Business.

2.6 <u>Litigation.</u> There is no action, suit, proceeding, claim or governmental investigation pending or, to the knowledge of Seller, threatened, against Seller that reasonably would be expected to have a material adverse effect on the Business Condition of the Business. There is no action, suit, proceeding, claim or governmental investigation pending against Seller as of the date hereof that in any manner challenges or seeks to prevent, enjoin, alter or materially delay any of the transactions contemplated hereby.

2.7 <u>Absence of Certain Changes.</u> Since _____, Seller has conducted the Business in the ordinary course and, except for the execution, delivery and performance of this Agreement or as required hereby, there has not occurred: (a) any material adverse change in the Business Condition of the Business; (b) any entry into any material commitment or transaction by Seller relating to the Business, other than in the ordinary course of business; (c) any damage, destruction or loss, whether covered by insurance or not, materially and adversely affecting the Business Condition of the Business; (d) any acquisition or disposition of a material amount of property or assets of Seller relating to the Business outside of the ordinary course of business; (e) any transfer or grant by Seller of a right under any Seller Intellectual Property Rights (as defined in Section ____ hereof), other than those transferred or granted in the ordinary course of business;

2.8 <u>Agreements.</u> With respect to the Business, Seller is not a party to, and the Business is not subject to:

(a) Any union contract or any employment contract or arrangement providing for future compensation, written or oral, with any officer, consultant, director or employee which is not cancelable by Seller on 30 days' notice or less without penalty or obligation to make payments related to such termination, other than (A) (in the case of employees other than executive officers of Seller) such agreements as are not materially different from standard arrangements offered to employees generally in the ordinary course of business consistent with Seller's past practices and (B) such agreements as may be imposed or implied by law;

(b) Any plan, contract or arrangement, the obligations under which exceed $_____, written or oral, providing for bonuses, pensions, deferred compensation, severance pay or benefits, retirement payments, profit-sharing, or the like;

(c) As of the date hereof, any existing OEM agreement, distribution agreement, volume purchase agreement, or other similar agreement in which the annual amount paid or received by Seller during the twelve-month period ended _____ exceeded $1,500,000 or pursuant to which Seller has granted most favored nation pricing provisions or exclusive marketing rights related to any product, group of products or territory to any person;

MWK:ODM\APCDOCS\SQLZ\886231\1                    -6-

NOV 000031792

(d)    Any lease or month-to-month tenancy for real or personal property in which the amount of payments which Seller is required to make on an annual basis exceeds $100,000;

(e)    Any contract containing covenants purporting to limit Seller's freedom to compete in any line of business in any geographic area.

Each agreement, contract, mortgage, indenture, plan, lease, instrument, permit, concession, franchise, arrangement, license and commitment listed in the Seller Disclosure Schedule pursuant to this Section is valid and binding on Seller, and is in full force and effect, and Seller has not breached any provision of, nor is it in default under the terms of, any such agreement, contract, mortgage, indenture, plan, lease, instrument, permit, concession, franchise, arrangement, license or commitment except for such failures to be valid and binding or in full force and effect and such breaches or defaults as reasonably would not be expected to have a material adverse effect on the Business Condition of the Business.

2.9    <u>Tax Returns and Reports</u>.

(a)    <u>Definition of Taxes</u>. For the purposes of this Agreement, "<u>Tax</u>" or "<u>Taxes</u>" refers to any and all federal, state, local and foreign taxes, assessments and other governmental charges, duties, impositions and liabilities relating to taxes, including taxes based upon or measured by gross receipts, income, profits, sales, use and occupation, and value added, ad valorem, transfer, franchise, withholding, payroll, recapture, employment, excise and property taxes, together with all interest, penalties and additions imposed with respect to such amounts and any obligations under any agreements or arrangements with any other person with respect to such amounts and including any liability for taxes of a predecessor entity.

(b)    <u>Tax Returns and Audits</u>. Except as reasonably would not be expected to have a material adverse effect on the Business Condition of the Business:

(i)    Seller has timely filed all federal, state, local and foreign returns, estimates, information statements and reports ("<u>Returns</u>") relating to Taxes required to be filed it, except such Returns which are not material to the Business, and has paid all Taxes shown to be due on such Returns or is contesting them in good faith.

(ii)    Seller has withheld with respect to its employees all federal and state income taxes, FICA, FUTA and other Taxes required to be withheld.

(iii)    Seller has not been delinquent in the payment of any Tax nor is there any Tax deficiency outstanding, proposed or assessed against Seller, nor has Seller executed any waiver of any statute of limitations on or extending the period for the assessment or collection of any Tax.

(iv)    No audit or other examination of any Return of Seller is presently in progress, nor has Seller been notified of any request for such an audit or other examination.

MWC\DDMAIPCDOCS\SQLT\88621\1                -7-

NOV 000031793

(v)    None of the Assets are treated as "tax-exempt use property" within the meaning of Section 168(h) of the Code.

(vi)    Seller is not, and has not been at any time, a "United States real property holding corporation" within the meaning of Section 897(c)(2) of the Code

2.10    Technology.  To the knowledge of Seller, as of the date hereof, Seller owns, co-owns or is licensed or otherwise entitled to use rights to all patents, trademarks, trade names, service marks, copyrights, mask work rights, trade secret rights, and other intellectual property rights and any applications therefor, and all maskworks, net lists, schematics, technology, source code, know-how, computer software programs and all other tangible information or material, that are used in the Business as currently conducted (the "Seller Intellectual Property Rights").

The Seller Disclosure Schedule lists, as of the date hereof, (i) all patents, registered copyrights, trademarks, service marks, mask work rights, and any applications therefor, included in the Seller Intellectual Property Rights; (ii) the jurisdictions in which each such Seller Intellectual Property Right has been issued or registered or in which an application for such issuance and registration has been filed, including the respective registration or application numbers; and (iii) which, if any, of such products have been registered for copyright protection with the United States Copyright Office and any foreign offices.  The Seller Disclosure Schedule also sets forth a list of license agreements which, to Seller's knowledge, constitutes all license agreements under which Seller licenses as licensee the intellectual property rights of third parties relating to technology or software which is incorporated in existing products of the Business for which products Seller has received revenues in excess of $2,000,000 in the twelve-month period ended _____.  To Seller's knowledge, Seller is not in material violation of any such license agreement.

With respect to the Business, Seller is not a party to nor is the Business subject to (i) any joint venture contract or arrangement or any other agreement that involves a sharing of profits with other persons other than the payment or receipt of royalties by Seller; (ii) any agreement pursuant to which Seller was obligated to make payment of royalties in the twelve-month period ended _____ of $1,000,000 or more; or (iii) any agreement pursuant to which Seller utilizes the intellectual property rights of others in any products currently marketed by Seller and which is either non-perpetual or terminable by the licensor thereunder in the event of the Acquisition and which, if terminated, reasonably would be expected to have a material adverse affect on the Business Condition of the Business.

No claims with respect to the Seller Intellectual Property Rights have been communicated in writing to Seller (i) to the effect that the manufacture, sale or use of any product of the Business as now used or offered by Seller infringes on any copyright, patent, trade secret or other intellectual property right of a third party or (ii) challenging the ownership or validity of any of the Seller Intellectual Property Rights, any or all of which claims reasonably would be expected to have a material adverse effect on the Business Condition of the Business.  To the knowledge of Seller, as of the date hereof, all patents and registered trademarks, service marks and registered copyrights held by Seller in connection with the Business are valid and subsisting except for failures to be valid and

MWK:ODMA\PCDOCS\SQL1\98462\11

-8-



NOV 000031794

subsisting that reasonably would not be expected to have a material adverse effect on the Business Condition of the Business  Seller does not know of any unauthorized use, infringement or misappropriation of any of the Seller Intellectual Property Rights by any third party that reasonably would be expected to have a material adverse effect on the Business Condition of the Business.

2.11    Title to Properties: Absence of Liens and Encumbrances.

(a)    The Seller Disclosure Schedule sets forth a list of all real property owned or, as of the date hereof, leased by Seller for use in connection with the Business and the aggregate annual rental or mortgage payment or other fees payable under any such lease or loan.

(b)    Seller has good and valid title to, or, in the case of leased properties and assets, valid leasehold interests in, all of the tangible properties and assets, real, personal and mixed, which are material to the conduct of the Business, free and clear of any liens, charges, pledges, security interests or other encumbrances, except for such of the foregoing as (A) are reflected in the Seller Financial Statements, or (B) arise out of taxes or general or special assessments not in default and payable without penalty or interest or the validity of which is being contested in good faith by appropriate proceedings, or (C) such imperfections of title and encumbrances, if any, which are not substantial in character, amount or extent, and which do not materially detract from the value, or interfere with the present use, of the property subject thereto or affected thereby.

2.12    Governmental Authorizations and Licenses.  Seller is the holder of all licenses, authorizations, permits, concessions, certificates and other franchises of any Governmental Entity required to operate the Business, the failure to hold which reasonably would be expected to have a material adverse effect on the Business Condition of the Business (collectively, the "Licenses").  The Licenses are in full force and effect.  There is not now pending, or to the knowledge of Seller is there threatened, any action, suit, investigation or proceeding against Seller before any Governmental Entity with respect to the Licenses, nor is there any issued or outstanding notice, order or complaint with respect to the violation by Seller of the terms of any License or any rule or regulation applicable thereto, except in any such case as reasonably would not be expected to have a material adverse effect on the Business Condition of the Business.

2.13    Environmental Matters.  To Seller's knowledge, Seller has at all relevant times with respect to the Business been in material compliance with all environmental laws, and has received no potentially responsible party ("PRP") notices or functionally equivalent notices from any governmental agencies or private parties concerning releases or threatened releases of any "hazardous substance" as that term is defined under 42 U.S.C. 9601(14).

2.14    Customers  The Seller Disclosure Schedule sets forth each customer of the Business that paid Seller royalties and licensee fees in an aggregate amount in excess of $1,000,000 during the twelve-month period ended _____.

NOV 000031795

2.15    Proprietary Information and Inventions and Confidentiality Agreements.  To the knowledge of Seller, each employee, consultant, and officer of Seller (exclusively with respect to the Business) has executed a proprietary information and inventions and confidentiality agreement, copies of which have been made available to counsel to Buyer, and it is Seller's policy that such agreements be executed by each new employee, consultant, officer and director of Seller in the ordinary course of Seller's business.

2.16    No Implied Representations.  It is the explicit intent of each party hereto that Seller is not making any representation or warranty whatsoever, express or implied, except those representations and warranties of Seller contained in this Agreement or in the Seller Disclosure Schedule.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF BUYER

Except as described in the Buyer Disclosure Schedule delivered by Buyer to Seller simultaneously with the execution of this Agreement, as such Buyer Disclosure Schedule may be updated and/or amended pursuant to Section __ hereof (the "Buyer Disclosure Schedule"), Buyer represents and warrants to Seller that:

3.1    Organization, Standing and Power.  Buyer is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation, and has all requisite corporate power and authority to own, operate and lease its properties and to carry on its business as now being conducted.  Buyer is duly qualified as a foreign corporation and is in good standing in each jurisdiction in which the failure to so qualify would reasonably be expected to have a material adverse effect on the Business Condition of Buyer.  Buyer has made available to Seller complete and correct copies of the Certificate of Incorporation and Bylaws of Buyer, as amended to the date hereof.

3.2    Authority.  Buyer has all requisite corporate power and authority to enter into this Agreement and, to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement, the performance by Buyer of its obligations hereunder and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of Buyer, and have been approved by the Board of Directors of Buyer.  No other corporate proceeding on the part of either Buyer is necessary to authorize the execution and delivery of this Agreement Buyer or the performance of Buyer's obligations hereunder or the consummation of the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Buyer and constitutes a legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, or other similar laws affecting the enforcement of creditors' rights generally and except that the availability of equitable remedies is subject to the discretion of the court before which any proceeding therefor may be brought.  Subject to satisfaction or waiver of the conditions set forth in Article __, the execution and delivery of this Agreement does not, and the consummation of the transactions contemplated

MVFR:ODMA\PCDOCS\SQL2\88262\11                                    -10-

NOV 000031796

hereby will not, conflict with or result in any violation of any statute, law, rule, regulation, judgment, order, decree, or ordinance applicable to Buyer, or its properties or assets that, individually or in the aggregate, reasonably would be expected to have a material adverse effect on the Business Condition of Buyer, or conflict with any provision of the Certificate of Incorporation or Bylaws of Buyer or result in any breach or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a material benefit under, or result in the creation of a lien or encumbrance on any of the properties or assets of Buyer pursuant to any agreement, contract, note, mortgage, indenture, lease, instrument, permit, concession, franchise or license to which Buyer is a party or by which Buyer or its properties or assets may be bound that would reasonably be expected to have a material adverse effect on the Business Condition of Buyer. No consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Entity is required by or with respect to Buyer in connection with the execution and delivery of this Agreement or the consummation by Buyer of the transactions contemplated hereby, except for (i) the filing of a pre-merger notification report under the HSR Act, (ii) those required to be made or obtained by Seller or any of its affiliates, (iii) filings following the Closing under federal and state securities laws relating to issuance of the Shares, and (iv) such consents, approvals, orders, authorizations, registrations, declarations and filings as would not have a material adverse effect on the ability of Buyer to issue the Shares to Seller and assume the Assumed Liabilities at the Closing.

3.3  Capitalization. [To come from Brobeck]

3.4  SEC Documents: Buyer Financial Statements. Buyer has made available to Seller a true and complete copy of each statement, annual, quarterly and other report, registration statement and definitive proxy statement filed by Buyer with the Securities and Exchange Commission ("SEC") since _____ (the "Buyer SEC Documents"), which are all the documents (other than preliminary material) that Buyer was required to file with the SEC since such date. As of their respective filing dates, the Buyer SEC Documents complied in all material respects with the requirements of the Securities Exchange Act of 1934 (the "Exchange Act") or the Securities Act of 1933 (the "Securities Act"), as the case may be, and none of the Buyer SEC Documents contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements made therein, in light of the circumstances in which they were made, not misleading. The financial statements of Buyer included in the Buyer SEC Documents (the "Buyer Financial Statements") comply as to form in all material respects with applicable accounting requirements and with the published rules and regulations of the SEC with respect thereto, have been prepared in accordance with generally accepted accounting principles (except as may be indicated in the notes thereto or, in the case of unaudited statements, as permitted by Form 10-Q of the SEC) and fairly present the consolidated financial position of Buyer and its consolidated subsidiaries at the dates thereof and the consolidated results of their operations and cash flows for the periods then ended (subject, in the case of unaudited statements, to normal, recurring audit adjustments). Since _____, there has been no material change in Buyer's accounting policies except as described in the notes to Buyer's Financial Statements.

NOV 000031797

3 5    Compliance with Law.  Buyer has conducted its business so as to comply in all material respects with all laws, rules and regulations, judgments, decrees or orders of any Governmental Entity applicable to its operations except where the failure so to comply reasonably would not be expected to have a material adverse effect on the Business Condition of Buyer  As of the date hereof, there are no judgments or orders, injunctions, decrees, stipulations or awards (whether rendered by a court or administrative agency or by arbitration) against Buyer with any continuing effect that reasonably would be expected to have a material adverse affect on the Business Condition of Buyer.  To the knowledge of Buyer, there is no investigation by any Governmental Entity with respect to Buyer pending against Buyer which is reasonably likely to have a material adverse effect on the Business Condition of Buyer.

3.6    No Defaults.  To the knowledge of Buyer, Buyer is not, nor has received written notice that it would be with the passage of time, (i) in violation of any provision of its Certificate of Incorporation or Bylaws or (ii) in default or violation of any term, condition or provision of (A) any judgment, decree, order, injunction or stipulation applicable to Buyer or (B) any agreement, note, mortgage, indenture, contract, lease or instrument, permit, concession, franchise or license to which Buyer is a party or by which Buyer may be bound, in any such case in a manner that reasonably would be expected to have a material adverse effect on the Business Condition of Buyer.

3.7    Litigation.  There is no action, suit, proceeding, claim or governmental investigation pending or, to the knowledge of Buyer, threatened, against Buyer which reasonably would be expected to have, a material adverse effect on the Business Condition of Buyer.  There is no action, suit, proceeding, claim or governmental investigation pending against Buyer as of the date hereof which in any manner challenges or seeks to prevent, enjoin, alter or materially delay any of the transactions contemplated hereby.

3.8    Absence of Certain Changes.  Since _____, Buyer has conducted its business in the ordinary course and, except for the execution, delivery and performance of this Agreement or as required hereby, there has not occurred:  (a) any material adverse change in the Business Condition of Buyer; (b) any entry into any material commitment or transaction by Buyer, other than in the ordinary course of business; (c) any damage, destruction or loss, whether covered by insurance or not, materially and adversely affecting the Business Condition of Buyer; or (d) any acquisition or disposition of a material amount of property or assets of Buyer outside of the ordinary course of business.

3 9    Agreements.  Each agreement, contract, mortgage, indenture, plan, lease, instrument, permit, concession, franchise, arrangement, license and commitment that is an Exhibit to a Buyer SEC Document is valid and binding on Buyer, and is in full force and effect, and Buyer has not breached any provision of, nor is it in default under the terms of, any such agreement, contract, mortgage, indenture, plan, lease, instrument, permit, concession, franchise, arrangement, license or commitment except for such failures to be valid and binding or in full force and effect and such breaches or defaults as reasonably would not, be expected to have a material adverse effect on the Business Condition of Buyer.

MWK..ODMA\PCDOCS\SQLT\88621\1

-12-

NOV 000031798

3.10   Tax Returns and Reports.  Except as reasonably would not be expected to have a material adverse effect on the Business Condition of Buyer:

(i)    Buyer has timely filed all federal, state, local and foreign returns, estimates, information statements and reports (Returns) relating to Taxes required to be filed it, except such Returns which are not material to Buyer, and has paid all Taxes shown to be due on such Returns or is contesting them in good faith.

(ii)   Buyer has withheld with respect to its employees all federal and state income taxes, FICA, FUTA and other Taxes required to be withheld.

(iii)  Buyer has not been delinquent in the payment of any Tax nor is there any Tax deficiency outstanding, proposed or assessed against Buyer, nor has Buyer executed any waiver of any statute of limitations on or extending the period for the assessment or collection of any Tax.

(iv)   No audit or other examination of any Return of Buyer is presently in progress, nor has Buyer been notified of any request for such an audit or other examination.

(v)    None of Buyer's assets are treated as "tax-exempt use property" within the meaning of Section 168(h) of the Code.

(vi)   Buyer is not, and has not been at any time, a "United States real property holding corporation" within the meaning of Section 897(c)(2) of the Code.

3.11   Technology.  To the knowledge of Buyer, as of the date hereof, Buyer owns, co-owns or is licensed or otherwise entitled to use rights to all patents, trademarks, trade names, service marks, copyrights, mask work rights, trade secret rights, and other intellectual property rights and any applications therefor, and all maskworks, net lists, schematics, technology, source code, know-how, computer software programs and all other tangible information or material, that are used in its business as currently conducted (the "Buyer Intellectual Property Rights").

The Buyer Disclosure Schedule lists, as of the date hereof, (i) all patents, registered copyrights, trademarks, service marks, mask work rights, and any applications therefor, included in the Buyer Intellectual Property Rights, (ii) the jurisdictions in which each such Buyer Intellectual Property Right has been issued or registered or in which an application for such issuance and registration has been filed, including the respective registration or application numbers; and (iii) which, if any, of such products have been registered for copyright protection with the United States Copyright Office and any foreign offices.  The Buyer Disclosure Schedule also sets forth a list of license agreements which, to Buyer's knowledge, constitutes all license agreements under which Buyer licenses as licensee the intellectual property rights of third parties relating to technology or software which is incorporated in existing products of Buyer for which products Buyer has received revenues in excess of $2,000,000 in the twelve-month period ended _____.  To Buyer's knowledge, Buyer is not in material violation of any such license agreement.

MWK_ODMA\PCDOCS\SQL2\88621\1

-13-

NOV 000031799

Buyer is not a party to nor is it subject to (i) any joint venture contract or arrangement or any other agreement that involves a sharing of profits with other persons other than the payment or receipt of royalties by Buyer; (ii) any agreement pursuant to which Buyer was obligated to make payment of royalties in the twelve-month period ended _____ of $1,000,000 or more; or (iii) any agreement pursuant to which Buyer utilizes the intellectual property rights of others in any products currently marketed by Buyer and which is either non-perpetual or terminable by the licensor thereunder in the event of the Acquisition and which, if terminated, reasonably would be expected to have a material adverse affect on the Business Condition of Buyer.

No claims with respect to the Buyer Intellectual Property Rights have been communicated in writing to Buyer (i) to the effect that the manufacture, sale or use of any product of Buyer as now used or offered by Buyer infringes on any copyright, patent, trade secret or other intellectual property right of a third party or (ii) challenging the ownership or validity of any of the Buyer Intellectual Property Rights, any or all of which claims reasonably would be likely to have a material adverse effect on the Business Condition of Buyer. To the knowledge of Buyer, as of the date hereof, all patents and registered trademarks, service marks and registered copyrights held by Buyer are valid and subsisting except for failures to be valid and subsisting that reasonably would not be expected to have a material adverse effect on the Business Condition of Buyer. Buyer does not know of any unauthorized use, infringement or misappropriation of any of the Buyer Intellectual Property Rights by any third party that reasonably would be expected to have a material adverse effect on the Business Condition of Buyer.

3.12  _Governmental Authorizations and Licenses_  Buyer is the holder of all licenses, authorizations, permits, concessions, certificates and other franchises of any Governmental Entity required to operate its business, the failure to hold which reasonably would be expected to have a material adverse effect on the Business Condition of Buyer (collectively, the "Buyer Licenses"). The Buyer Licenses are in full force and effect. There is not now pending, or to the knowledge of Buyer is there threatened, any action, suit, investigation or proceeding against Buyer before any Governmental Entity with respect to the Buyer Licenses, nor is there any issued or outstanding notice, order or complaint with respect to the violation by Buyer of the terms of any Buyer License or any rule or regulation applicable thereto, except in any such case as reasonably would not be expected to have a material adverse effect on the Business Condition of Buyer.

3.13  _Environmental Matters_.  To Buyer's knowledge, Buyer has at all relevant times been in material compliance with all environmental laws, and has received no PRP notices or functionally equivalent notices from any governmental agencies or private parties concerning releases or threatened releases of any "hazardous substance" as that term is defined under 42 U.S.C. 9601(14).

3.14  _Proprietary Information and Inventions and Confidentiality Agreements_.  To the knowledge of Buyer, each employee, consultant, and officer of Buyer has executed a proprietary information and inventions and confidentiality agreement, copies of which have been made available to counsel to Seller, and it is Buyer's policy that such agreements be executed by each new employee, consultant, officer and director of Buyer in the ordinary course of Buyer's business.

MWK...ODMA\PCDOCS\SQL1\68462\M1                    -14-

NOV 000031800