3.15 **Status of Shares.** When issued to Seller at the Closing, the Shares will be duly authorized, validly issued, fully paid and nonassessable, free and clear of any and all liens and encumbrances of any kind, except as may be imposed by Seller.

3.16 **No Implied Representations.** It is the explicit intent of each party hereto that Buyer is not making any representation or warranty whatsoever, express or implied, except those representations and warranties of Buyer contained in this Agreement or in the Buyer Disclosure Schedule.

## ARTICLE IV

### CERTAIN COVENANTS

4.1 **Conduct of Business of Seller.** During the period from the date of this Agreement and continuing until the earlier of the termination of this Agreement and the Closing Date, Seller agrees (except to the extent that Buyer shall otherwise consent in writing), to carry on the Business in the usual, regular and ordinary course in substantially the same manner as heretofore conducted, to pay or perform other obligations when due, and use all reasonable efforts consistent with past practice and policies to preserve intact the Business, keep available the services of its present officers and key employees and preserve their relationships with customers, suppliers, distributors, licensors, licensees, and others having business dealings with it, all with the goal of preserving unimpaired the Business at the Closing Date. Except as contemplated by this Agreement, Seller shall not, with respect to the Business, without the prior written consent of Buyer (which shall be given, or reasonably withheld, within one business day after receipt of written request therefor) (a) enter into any commitment or transaction not in the ordinary course of business; or (b) enter into any strategic alliance or joint marketing arrangement or agreement.

4.2 **Conduct of Business of Buyer.** During the period from the date of this Agreement and continuing until the earlier of the termination of this Agreement and the Closing Date, Buyer agrees (except to the extent that Seller shall otherwise consent in writing), to carry on its business in the usual, regular and ordinary course in substantially the same manner as heretofore conducted, to pay or perform other obligations when due, and use all reasonable efforts consistent with past practice and policies to preserve intact its business, keep available the services of its present officers and key employees and preserve their relationships with customers, suppliers, distributors, licensors, licensees, and others having business dealings with it, all with the goal of preserving unimpaired its business at the Closing Date. Except as contemplated by this Agreement, Buyer shall not, without the prior written consent of Seller (which shall be given, or reasonably withheld, within one business day after receipt of written request therefor) (a) enter into any commitment or transaction not in the ordinary course of business; (b) enter into any strategic alliance or joint marketing arrangement or agreement; (c) declare or pay any dividends on or make any other distributions (whether in cash, stock or property) in respect of any of its capital stock, or split, combine or reclassify any of its capital stock or issue or authorize the issuance of any other securities in respect of, in lieu of or in substitution for shares of capital stock of Buyer, or repurchase, redeem or otherwise acquire, directly or indirectly,

MWK:ODMA\PCDOCS\SQL2\88621\1

-15-

NOV 000031801

Dockets.Justia.com

any shares of its capital stock (or options, warrants or other rights exercisable therefor), (d) except for the issuance of shares of capital stock of Buyer upon exercise or conversion of options granted to employees, issue, deliver or sell or authorize or propose the issuance, delivery or sale of, or purchase or propose the purchase of, any shares of its capital stock or securities convertible into, or subscriptions, rights, warrants or options to acquire, or other agreements or commitments of any character obligating it to issue any such shares or other convertible securities; or (e) cause or permit any amendments to its Certificate of Incorporation or Bylaws.

   4.3 No Solicitation. Until the earlier to occur of (i) the Closing Date and (ii) the date of termination of this Agreement pursuant to its terms, as the case may be, Seller will not (nor will Seller permit any of Seller's officers, directors, agents, representatives or Affiliates to) directly or indirectly, take any of the following actions with any party other than Buyer and its designees solicit, encourage, initiate or participate in any negotiations or discussions with respect to, any offer or proposal to acquire all or any portion of the Business. Until the earlier to occur of (i) the Closing Date and (ii) the date of termination of this Agreement pursuant to its terms, as the case may be, Buyer will not (nor will Buyer permit any of Buyer's officers, directors, agents, representatives or affiliates to) directly or indirectly or indirecly take any of the following actions with any party other than Seller and its designees: solicit, encourage, initiate or participate in any negotiation or discussions with respect to, any offer or proposal to acquire all or any portion of the business Buyer.

   4.4 Access to Information. Seller and Buyer shall each afford the other and its accountants, counsel and other representatives, reasonable access during normal business hours during the period prior to the Closing Date to (a) all of its properties, books, contracts, commitments and records, and (b) all other information concerning the business, properties and personnel (subject to restrictions imposed by applicable law) of it as the other may reasonably request (it being understood that access to information concerning Seller shall pertain only to the Business)

   4.5 Confidentiality. Each of the parties hereto hereby agrees to keep such information or knowledge obtained in any investigation pursuant to Sections 1.3 or 4.4, or pursuant to the negotiation and execution of this Agreement or the effectuation of the transactions contemplated hereby, confidential; provided, however, that the foregoing shall not apply to information or knowledge which (a) a party can demonstrate was already lawfully in its possession prior to the disclosure thereof by the other party, (b) is generally known to the public and did not become so known through any violation of law or this Agreement, (c) became known to the public through no fault of such party, (d) is later lawfully acquired by such party from other sources, (e) is required to be disclosed by order of court or government agency with subpoena powers or (f) which is disclosed in the course of any litigation between any of the parties hereto.

   4.6 Expenses. Whether or not the Acquisition is consummated, all fees and expenses incurred in connection with the Acquisition including, without limitation, all legal, accounting, financial advisory, consulting and all other fees and expenses of third parties ("Third Party Expenses") incurred by a party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective party incurring such fees and expenses.

MWK..ODMA\PCDOCS\SQL7\I\16211\1

-16-

NOV 000031802

4.7 Public Disclosure. Unless otherwise required by law including, without limitation, applicable securities laws, prior to the Closing Date, no disclosure (whether or not in response to an inquiry) of the subject matter of this Agreement shall be made by any party hereto unless approved by Buyer and Seller prior to release, provided that such approval shall not be unreasonably withheld.

4.8 Consents. Seller shall use commercially reasonably efforts to obtain all necessary consents, waivers and approvals under any of the contracts of the Business as may be required in connection with the Acquisition so as to transfer to Buyer all rights of Seller thereunder as of the Closing.

4.9 Commercially Reasonable Efforts. Subject to the terms and conditions provided in this Agreement, each of the parties hereto shall use its commercially reasonable efforts to take promptly, or cause to be taken, all actions, and to do promptly, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations: to consummate and make effective the transactions contemplated hereby, to obtain all necessary waivers, consents and approvals and to effect all necessary registrations and filings, and to remove any injunctions or other impediments or delays, legal or otherwise, in order to consummate and make effective the transactions contemplated by this Agreement.

4.10 Notification of Certain Matters. Seller shall give prompt notice to Buyer, and Buyer shall give prompt notice to Seller, of (i) the occurrence or non-occurrence of any event, the occurrence or non-occurrence of which is likely to cause any representation or warranty of Seller or Buyer, respectively, contained in this Agreement to be untrue or inaccurate at or prior to the Closing Date and (ii) any failure of Seller or Buyer, as the case may be, to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it hereunder; provided, however, that subject to Section 4.11, the delivery of any notice pursuant to this Section shall not limit or otherwise affect any remedies available to the party receiving such notice.

4.11 Delivery of Schedules. It is understood that the Seller Disclosure Schedule and the Buyer Disclosure Schedule may not be complete as of the date hereof. Because of this, the parties agree that until 5:00 California time on _____, 1995, Seller and Buyer shall each be permitted to amend its respective Disclosure Schedule so as to qualify the representations and warranties of such party contained in this Agreement (as each may be so amended, the "Subsequent Seller Disclosure Schedule" and the "Subsequent Buyer Disclosure Schedule", respectively). It is further understood that, to the extent that this Areement is not terminated pursuant to Section 7.1(d) or 7.1(f) after delivery of any such Subsequent Disclosure Schedule, the representations and warranties in this Agreement of the party delivering such Subsequent Disclosure Schedule shall be qualified in their entirety by the modified or supplemented disclosures contained therein.

4.12 Additional Documents and Further Assurances. Each party hereto, at the request of another party hereto, shall execute and deliver such other instruments and do and perform such other acts and things as may be necessary or desirable for effecting completely the consummation of this Agreement and the transactions contemplated hereby.

NOV 000031803

4.13 <u>Treatment of Employees of the Business</u>. [To be expanded.] Buyer agrees to offer employment, conditioned upon and effective upon the Closing at the current sites at which the business is operated, to all employees of the Business on the Closing Date. To the extent feasible and consistent with past practices of Buyer and to the extent not previously compensated for, the rights of Seller employees, who following the Closing are employed by Buyer ("New Employees"), to accrued vacation, sick leave and related matters shall be preserved and continued. New Employees shall be permitted to participate in all aggregate Buyer benefit, bonus, profit sharing, welfare and similar plans available to all other employees of Buyer on the terms and conditions provided in such plans.

4.14 <u>Tax Returns</u>. Seller shall be responsible for and pay when due (i) all of Seller's Taxes attributable to or levied or imposed upon the Assets relating or pertaining to the period (or that portion of any period) ending on or prior to the Closing Date and (ii) all Taxes attributable to, levied or imposed upon, or incurred in connection with the Seller's business operations, other than the Business, following the Closing Date.

4.15 <u>Bulk Sales</u>. Buyer hereby agrees to waive the requirement, if any, that Seller comply with any bulk transfer law which may be applicable to the transactions contemplated by this Agreement; provided, that Seller agrees to indemnify and hold harmless Buyer with respect to any noncompliance with such laws and Buyer's waiver with respect thereto

## ARTICLE V

## CONDITIONS TO THE ACQUISITION

5.1 <u>Conditions to Obligations of Each Party to Effect the Acquisition</u>. The respective obligations of each party to this Agreement to effect the Acquisition shall be subject to the satisfaction at or prior to the Closing Date of the following conditions:

(a) <u>No Injunctions or Restraints; Illegality</u>. No temporary restraining order, preliminary or permanent injunction or other order issued by any court of competent jurisdiction or other legal restraint or prohibition preventing the consummation of the Acquisition shall be in effect, nor shall any proceeding brought by an administrative agency or commission or other governmental authority or instrumentality, domestic or foreign, seeking any of the foregoing be pending; nor shall there be any action taken, or any statute, rule, regulation or order enacted, entered, enforced or deemed applicable to the Acquisition, which makes the consummation of the Acquisition illegal.

(b) The waiting period under the Hart-Scott-Rodino Antitrust Improvement Act shall have expired without the commencement of legal action by the U.S. Federal Trade Commission or Department of Justice.

NOV 000031804

(c)  The parties shall have entered into an Operating Agreement, substantially in the form attached hereto as Exhibit ___, concerning (i) the scope of the ongoing product relationship between Buyer and Seller; (ii) the scope of the ongoing product marketing relationship between Buyer and Seller; (iii) the ongoing business and licensing relationship between Buyer and Seller; (iv) future areas of cooperation; and (v) the transition teams which will coordinate between Buyer and Seller in effecting the foregoing matters.

5.2  Additional Conditions to Obligations of Seller. The obligations of Seller to consummate and effect this Agreement and the transactions contemplated hereby shall be subject to the satisfaction at or prior to the Closing Date of each of the following conditions, any of which may be waived, in writing, exclusively by Seller:

(a)  Representations, Warranties and Covenants. The representations and warranties of Buyer in this Agreement shall be true and correct in all material respects on and as of the Closing Date as though such representations and warranties were made on and as of such time and Buyer shall have performed and complied with all covenants, obligations and conditions of this Agreement required to be performed and complied with by it in all material respects as of the Closing Date.

(b)  Certificate of Buyer. Seller shall have been provided with a certificate duly executed on behalf of Buyer to the effect that, as of the Closing Date:

(i)  all representations and warranties made by Buyer in this Agreement are true and complete in all material respects; and

(ii)  all covenants, obligations and conditions of this Agreement to be performed by Buyer on or before such date have been so performed in all material respects.

(c)  Legal Opinion. Seller shall have received a legal opinion from legal counsel to Buyer, in form and substance reasonably satisfactory to Seller.

(d)  No Material Adverse Change. There shall not have occurred any material adverse change in the Business Condition of Buyer.

5.3  Additional Conditions to the Obligations of Buyer. The obligations of Buyer to consummate and effect this Agreement and the transactions contemplated hereby shall be subject to the satisfaction at or prior to the Closing Date of each of the following conditions, any of which may be waived, in writing, exclusively by Buyer:

(a)  Representations, Warranties and Covenants. The representations and warranties of Seller in this Agreement (as may be modified by the Subsequent Seller Disclosure Schedule) shall be true and correct in all material respects on and as of the Closing Date as though such representations and warranties were made on and as of such time and Seller shall have

NOV 000031805

performed and complied with all covenants, obligations and conditions of this Agreement required to be performed and complied with by it as of the Closing Date in all material respects.

    (b)   Certificate of Seller. Buyer shall have been provided with a certificate executed on behalf of Seller by its Chief Executive Officer to the effect that, as of the Closing Date:

        (i)   all representations and warranties made by Seller in this Agreement are true and complete in all material respects; and

        (ii)   all covenants, obligations and conditions of this Agreement to be performed by Seller on or before such date have been so performed in all material respects.

    (c)   Legal Opinion. Buyer shall have received a legal opinion from legal counsel to Seller, in form and substance reasonably satisfactory to Buyer.

    (d)   No Material Adverse Changes. There shall not have occurred any material adverse change in the Business Condition of the Business.

## ARTICLE VI

## CERTAIN CORPORATE GOVERNANCE MATTERS

    6.1   Nomination of Director to Buyer's Board of Directors. As of the Closing and thereafter until such time as Seller together with its affiliates shall cease to own less than 5% of the outstanding shares of Common Stock of Buyer (the "Threshold Date"), Buyer shall cause one individual designated as Seller (the "Seller Designee") to be nominated for election to the Board of Directors of Buyer. In the event that the Seller Designee shall be elected as a director of Buyer, but shall cease to serve as a director of Buyer prior to the Threshold Date, Seller shall have the right to designate another individual to fill the vacancy created by such cessation in order to serve as a member of the Board of Directors of Buyer.

    6.2   Right to Maintain.

    (a)   Until the Threshold Date, in the event (including a public offering), Buyer desires to sell and issue shares of its capital stock or rights, options or other securities exercisable for or convertible into shares of its capital stock (directly or indirectly) and whether or not such right or option is immediately exercisable or convertible, then Buyer shall first notify Seller of the material terms of the proposed sale and shall permit Seller to acquire, at the time of consummation such proposed issuance and sale and on such terms as are specified in Buyer's notice to Seller, such number of the shares of capital stock or other securities of Buyer proposed to be issued as would be required to enable Seller to maintain its voting and ownership rights in Buyer following such issuance, on a percentage basis, at a level maintained by it immediately prior to such proposed issuance. Seller shall

NOV 000031806

have forty-five (45) days after the date of any such notice to elect by notice to Buyer to purchase such shares or securities on such terms and at the time the proposed sale is consummated.

(b) The rights set forth in Section 6.2(a) shall not apply to the issuance of shares or grant of options to purchase shares of Common Stock representing in the aggregate up to ten percent (10%) of the fully diluted outstanding capital stock of Buyer under the Buyer's employee stock purchase and stock option plans, net of repurchases or cancellations.

6.3  Right of First Refusal on Change of Control.

(a) First Refusal Right.

(i) Until the Threshold Date, in the event Buyer proposes to merge with, sell shares representing 50% or more of the voting power of Buyer to, or sell all or substantially all of Buyer's assets to a third party or engage voluntarily in any other change of control transaction, Buyer shall deliver a notice (an "Acquisition Notice") to Seller setting forth the proposed material terms of the merger, sale or acquisition, including the structure and price terms of the merger, sale or acquisition, the name and address of the party proposed to acquire or merge with Buyer and the date on or about which such sale or merger is proposed to be made (the date of such an Acquisition Notice being an "Acquisition Notice Date"). Seller shall have the right of first refusal to acquire or merge with Buyer on the terms set forth in the Acquisition Notice (subject to the valuation provisions of Section 6.3(b) below), as provided in this Section.

(ii) Seller shall have until thirty (30) days after the later of (i) receipt of an Acquisition Notice and (ii) the date Seller receives notice of the completion of the appraisal of any items included as part of the proposed consideration specified in the Acquisition Notice that are subject to valuation pursuant to Section 6.3(b), to elect by notice to Buyer to acquire or merge with Buyer on the terms set forth in the Acquisition Notice. If Seller notifies the Buyer within such time period of its election to so acquire or merge with Buyer, a closing with respect to such acquisition or merger shall be held at the principal office of Buyer (or at such other place as may be agreed upon by Buyer and Seller) on a date and at a time which are mutually agreeable to Buyer and Seller, but in no event later than the later to occur of (i) forty-five (45) days after receipt by Buyer of such notice of Seller's election and (ii) five (5) days after the receipt of any governmental consent or approval necessary for the consummation of such transaction, including, but not limited to, any such approval or consent required under the HSR Act.

(iii) In the event Seller elects not to exercise the foregoing right of first refusal, Buyer shall have six (6) months to sell Buyer on the same material terms as are set forth in the Acquisition Notice. If Buyer proposes to sell to or merge with a party on terms more favorable to such party than those set forth in the notice, or proposes to sell to or merge with a party after the six (6) month period, it shall first notify Seller and Seller shall have another opportunity to exercise its right of first refusal.

(b) Appraisal Procedure.

NOV 000031807

(i) Whenever the terms of a proposed sale or merger include non-cash forms of consideration, Seller shall have the option to exercise its first refusal right under this section by paying the "Appraised Value" in cash of such proposed non-cash consideration. "Appraised Value" shall mean the fair saleable value of such non-cash consideration as of the Acquisition Notice Date, and shall be determined in the manner set forth in clause (ii), below.

(ii) The determination of "Appraised Value" shall be made by an investment banking firm or other qualified consultant of nationally recognized standing, in accordance with this provision. Buyer and Seller shall endeavor to mutually agree upon the investment banking firm or other qualified consultant to undertake such determination. In the event Buyer and Seller fail to so agree within five (5) business days after the Acquisition Notice Date, within two (2) business days after such failure each of Buyer and Seller shall choose one such investment banking firm or other qualified consultant and within five (5) business days after such failure, the respective chosen firms shall be required to choose a third such investment banking firm or other qualified consultant to make such determination of the Appraised Value; and the determination of such third investment banking firm or other qualified consultant of the Appraised Value shall be binding. The investment banking firm or other qualified consultant selected pursuant hereto to make the determination of the Appraised Value shall be required to make such determination within twenty (20) business days after its selection. Buyer shall pay all costs and fees of up to the three such investment banking firms or other qualified consultants, and shall cooperate fully with the investment banking firm or other qualified consultant selected to make such determination by promptly providing such information as is requested by such firm. If an item to be valued constitutes securities which are traded on a National Exchange (as defined below) the investment banking firm or other consultant selected in accordance with the above procedure shall determine the Appraised Value of such items by averaging the closing prices of such securities on such exchange during (with reference to the principal trading market if such securities are traded on more than one National Exchange) each day within the fifteen (15) trading days on such National Exchange prior to the applicable Acquisition Notice Date.

For purposes of this provision, "National Exchange" means the New York Stock Exchange, the American Stock Exchange, the Midwest Stock Exchange, the Pacific Stock Exchange or the National Market System of the National Association of Securities Dealers, Inc.

(iii) Promptly following the delivery by Buyer of any Acquisition Notice hereunder, Buyer shall use reasonable efforts under the circumstances to attempt to cause the party proposing to acquire or merge with Buyer (the "Acquiring Party") to provide such information as Seller shall reasonably request in order to enable Seller to evaluate the business and financial condition of the Acquiring Party and to establish the bona fide nature of the transaction proposed in the Acquisition Notice, provided, however, that Seller shall agree to take reasonable precautions to hold in confidence all non-public information so provided and so designated by the Acquiring Party.

6.4    Restrictive Legend. Each certificate representing Shares held by Seller shall be stamped or otherwise imprinted with a legend substantially in the following form (unless no longer required in the opinion of counsel for Buyer):

MWK:ODMA\PCDIX\SLSQL\18862\1

-22-

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE TRANSFERRED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO UNLESS AN EXEMPTION UNDER SUCH ACT IS THEN AVAILABLE.

6.5 Registration Rights.

(a) Seller Demand Rights.

(i) Request for Registration. In case at any time from and after the Closing, Buyer shall receive from Seller a written request that Buyer effect any registration with respect to all or a part of the Shares (or any securities issued or issuable in respect of the shares; collectively, the "Registrable Securities"), provided that the number of Shares (or other securities) designated by Seller to be included in such registration would result in an anticipated aggregate offering price of at least $5,000,000, Buyer will as soon as practicable, use its diligent best efforts to effect such registration (including, without limitation, the execution of an undertaking to file pre-effective and post-effective amendments and supplements, appropriate qualification under the applicable blue sky or other state securities laws and appropriate compliance with exemptive regulations issued under the Securities Act and any other governmental requirements or regulations) as may be so requested and as would permit or facilitate the sale and distribution of all or such portion of Registrable Securities as are specified in such request; provided, that Buyer shall not be obligated to take any action to effect any such registration pursuant to this Section after Buyer has effected three registrations pursuant to a request by Seller under this Section. A registration proceeding pursuant to this Section which is subsequently withdrawn prior to effectiveness of a registration statement under the Securities Act shall not be considered an effected registration, qualification or compliance for purposes of this Section.

Subject to the foregoing provisions, Buyer shall file a registration statement covering the Registrable Securities so requested or otherwise elected to be registered as soon as practicable, but in any event within sixty days, after receipt of the request of Seller, provided that Buyer shall have the right to defer such registration for a period of up to ninety (90) days following the receipt of such a request if in the opinion of the Board of Directors of Buyer, it would be seriously detrimental to Buyer for a registration statement to be filed.

(ii) Underwriting. If Seller intends to distribute the Registrable Securities covered by its request by means of an underwriting, it shall so advise Buyer as a part of its request made pursuant to Section 6.5(a)(i). Buyer shall enter into an underwriting agreement in customary form with the underwriter or underwriters selected for such underwriting by Seller.

NOV 000031809

(b) <u>Company Registration</u>.

(i) <u>Notice of Registration</u>. If at any time or from time to time after the Closing, Buyer shall determine to register any of its securities, for its own account (other than a registration relating solely to employee stock option or purchase plans or relating solely to a Rule 145 transaction), Buyer will:

(A) promptly give to Seller written notice thereof (which shall include a list of the jurisdictions in which Buyer intends to attempt to qualify such securities under the applicable blue sky or other state securities laws); and

(B) include in such registration (and any related qualification under blue sky laws or other compliance), and in any underwriting involved therein, all the Registrable Securities specified in a written request or requests, made within thirty (30) days after the date of such written notice from Buyer to Seller, except as set forth in Section 6.5(b)(ii).

(ii) <u>Underwriting</u>. If the registration of which Buyer gives notice is for a registered public offering involving an underwriting, Buyer shall so advise Seller as a part of the written notice given pursuant to Section 6.5(b)(i)(A). In such event the right of Seller to registration pursuant to Section 6.5(b) shall be conditioned upon Seller's participation in such underwriting and the inclusion of Seller's Registrable Securities in the underwriting to the extent provided herein. If Seller proposes to distribute its securities through such underwriting it shall (together with Buyer and other holders distributing their securities through such underwriting) enter into an underwriting agreement in customary form with the underwriter or underwriters selected for such underwriting by Buyer. Notwithstanding any other provision of this Section, if the managing underwriter determines that marketing factors require a limitation of the number of shares to be underwritten, the underwriter may limit the number of Registrable Securities to be included in the registration and underwriting on a pro rata basis based on the total number of Registrable Securities held by Seller and based on the total number of securities being offered by Buyer for its own account. Buyer shall advise Seller of any such limitations, and the number of Registrable Securities that may be included in the registration. If Seller disapproves of the terms of any such underwriting, it may elect to withdraw therefrom by written notice to Buyer and the underwriter. Any Registrable Securities excluded or withdrawn from such underwriting shall not be included in such registration.

(iii) Notwithstanding anything to the contrary in this Section 6.5(b), Buyer shall not be obligated to effect any registration of securities under this Section 6.5(b) pursuant to a registration statement covering any of its securities to be issued in connection with mergers, acquisitions, exchange offers, dividend reinvestment plans or stock option or other employee benefit plans.

NOV 000031810

(c) <u>Expenses of Registration</u>.

(i) Subject to Sections 6.5(c)(ii) and 6.5(c)(iii), all expenses incurred in connection with any registration pursuant to Section 6.5(a) or 6.5(b), including, without limitation, all registration, filing and qualification fees, printing expenses, fees and disbursements of counsel for Buyer, expenses of complying with state securities or Blue Sky laws (including fees of counsel for Buyer and counsel for the underwriters), accountants' fees and expenses incident to or required by any such registration, expenses incident to the listing of securities on any exchange in which the Registrable Securities are to be listed, expenses of any special audits incidental to or required by such registration and the fees and disbursements of one counsel retained by Seller shall be borne by Buyer.

(ii) Buyer shall not be required to pay for expenses of any registration proceeding begun pursuant to Section 6.5(a), the request of which has been subsequently withdrawn by Seller, in which case, such expenses shall be borne by Seller; provided that Seller shall not be required to pay (a) for the cost of normal audits of Buyer that would have been performed in any event, and (b) for the time of any executives or other personnel of Buyer involved in the preparation of the registration statement; and provided further, however, that if at the time of such withdrawal, Seller shall have learned of a material adverse change in the Business Condition of Buyer from that known to Seller at the time of its request, then Seller shall not be required to pay any of such expenses.

(iii) Notwithstanding anything to the contrary elsewhere in this Section 6.5(c), all underwriters' discounts, commissions, or applicable stock transfer and documentary stamp taxes (if any) relating to the sale of Registrable Securities shall be borne by the seller of the Registrable Securities in all cases.

(d) <u>Registration Procedures</u>.

(i) In the case of each registration effected by Buyer pursuant to Section 6.5, Buyer will keep Seller advised in writing as to the initiation of each registration and as to the completion thereof. At its expense (except as otherwise provided in Section 6.5(c) above) Buyer will:

(A) keep such registration effective for a period of six months or until Seller has completed the distribution described in the registration statement relating thereto, whichever first occurs;

(B) furnish such number of prospectuses and other documents incident thereto as Seller from time to time may reasonably request; and

MWK:\ODMA\PCDOCS\SQL2\88621\1

-25-

NOV 000031811

(C) notify Seller, (1) when a prospectus or any prospectus supplement or post-effective amendment has been filed, and, with respect to the registration statement or any post-effective amendment, when the same has become effective; (2) of any request by the SEC or any other federal or state governmental authority during the period of effectiveness of the registration statement for amendments or supplements to the registration statement or related prospectus or for additional information relating to the registration statement, (3) of the issuance by the SEC or any other federal or state governmental authority of any stop order suspending the effectiveness of the registration statement or the initiation of any proceedings for that purpose, (4) of the receipt by Buyer of any notification with respect to the suspension of the qualification or exemption from qualification of any of the Registrable Securities for sale in any jurisdiction or the initiation of any proceeding for such purpose; or (5) of the happening of any event which makes any statement made in the registration statement or related prospectus or any document incorporated or deemed to be incorporated therein by reference untrue in any material respect or which requires the making of any changes in the registration statement or prospectus so that, in the case of the registration statement, it will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, and that in the case of the prospectus, it will not contain any untrue statement of a material fact or omit to state any material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(b) Buyer may, upon the happening of any event (x) of the kind described in clauses (2), (3), (4), or (5) of Section 6.5(d)(i)(C) or (y) that, in the judgment of Buyer's Board of Directors, renders it advisable to suspend use of the prospectus due to pending corporate developments, public filings with the SEC or similar events, suspend use of the prospectus on written notice to Seller for no more than thirty days in the aggregate in any six month period of time, in which case Seller shall discontinue disposition of Registrable Securities covered by the registration statement or prospectus until copies of a supplemented or amended prospectus are distributed to Seller or until Seller is advised in writing by Buyer that the use of the applicable prospectus may be resumed. Buyer shall use its reasonable efforts to ensure that the use of the prospectus may be resumed as soon as practicable. Buyer shall use every reasonable effort to obtain the withdrawal of any order suspending the effectiveness of the registration statement, or the lifting of any suspension of the qualification (or exemption from qualification) of any of the securities for sale in any jurisdiction, at the earliest practicable moment. Buyer shall prepare as soon as practicable a supplement or post-effective amendment to the registration statement or a supplement to the related prospectus or any document incorporated therein by reference or file any other required document so that, as thereafter delivered to the purchasers of the Registrable Securities being sold thereunder, such prospectus will not contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

NOV 000031812

(e) <u>Indemnification</u>.

(i) Buyer will indemnify and hold harmless Seller, each of its officers and directors, and each person controlling Seller, with respect to which a registration has been effected pursuant to this Section 6.5 and each underwriter, if any, and each person who controls any underwriter of the Registrable Securities held by or issuable to Seller, against all claims, losses, damages, costs, expenses and liabilities whatsoever (or actions in respect thereof) arising out of or based on any untrue statement (or alleged untrue statement) of a material fact contained in any registration statement, preliminary or final prospectus contained therein or any amendment or supplement thereto, offering circular or other documents (including any related registration statement, notification or the like) incident to any such registration, or based on any omission (or alleged omission) to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, or any violation by Buyer of the Securities Act or any state securities law or of any rule or regulation promulgated under the Securities Act or any state securities law applicable to Buyer and relating to action or inaction required of Buyer in connection with any such registration, and will reimburse Seller, each of its officers and directors, and each person controlling Seller, each such underwriter and each person who controls any such underwriter, for any legal and any other expenses reasonably incurred in connection with investigating or defending any such claim, loss, damage, cost, expense, liability or action, provided that Buyer will not be liable in any such case to the extent that any such claim, loss, damage, cost, expense, or liability arises out of or is based on any untrue statement or omission based upon written information furnished to Buyer by an instrument duly executed by Seller or any underwriter and stated to be specifically for use therein.

(ii) Seller will, if Registrable Securities held by or issuable to Seller are included in the securities as to which such registration is being effected, indemnify and hold harmless Buyer, each of its directors and officers who sign such registration statement, each underwriter, if any, of Buyer's securities covered by such registration statement, each person who controls Buyer within the meaning of the Securities Act against all claims, losses, damages, costs, expenses and liabilities whatsoever (or actions in respect thereof) arising out of or based on any untrue statement of a material fact contained in any such registration statement, preliminary or final prospectus contained therein or any amendment or supplement thereto, offering circular or other documents (including any related registration statement, notification or the like) incident to any such registration, or based on any omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, and will reimburse Buyer, such directors, officers, persons or underwriters for any legal or any other expenses reasonably incurred in connection with investigating or defending any such claim, loss, damage, cost, expense, liability or action, in each case to the extent, but only to the extent, that such untrue statement or omission is made in such registration statement, prospectus, offering circular or other document in reliance upon and in conformity with written information furnished to Buyer by an instrument duly executed by Seller and stated to be specifically for use therein; provided, however, that the foregoing indemnity agreement is subject to the condition that, insofar as it relates to any such untrue statement or omission made in the preliminary prospectus but eliminated or remedied in the amended prospectus on file with the SEC at the time the registration statement becomes effective or the amended prospectus filed with the SEC pursuant to Rule 424(b) (the "Final Prospectus"), such indemnity agreement shall not inure to the benefit of Buyer, any

MWK:ODMA\PCDOCS\SQLZ\88621\1

-27-

NOV 000031813

underwriter or any Holder, if there is no underwriter, if a copy of the Final Prospectus was not furnished to the person or entity asserting the loss, liability, claim or damage at or prior to the time such action is required by the Securities Act.

(iii) Each party entitled to indemnification under this Section 6.5(e) (the "Indemnified Party") shall give notice to the party required to provide indemnification (the "Indemnifying Party") promptly after such Indemnified Party has actual knowledge of any claim as to which indemnity may be sought, and shall permit the Indemnifying Party to assume the defense of any such claim or any litigation resulting therefrom, provided that counsel for the Indemnifying Party, who shall conduct the defense of such claim or litigation, shall be approved by the Indemnified Party (whose approval shall not unreasonably be withheld), and the Indemnified Party may participate in such defense at such party's expense. No Indemnifying Party, in the defense of any such claim or litigation, shall, except with the consent of each Indemnified Party, consent to entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to such Indemnified Party of a release from all liability in respect to such claim or litigation. If any such Indemnified Party shall have been advised by counsel chosen by it that there may be one or more legal defenses available to such Indemnified Party which are different from or additional to those available to the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such action on behalf of such Indemnified Party and will promptly reimburse such Indemnified Party and any person controlling such Indemnified Party for the reasonable fees and expenses of any counsel retained by the Indemnified Party, it being understood that the Indemnifying Party shall not, in connection with any one action or separate but similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys for such Indemnified Party or controlling person, which firm shall be designated in writing by the Indemnified Party to the Indemnifying Party.

(f) Contribution. If the indemnification provided for in Section 6.5(e) is unavailable or insufficient to hold harmless an Indemnified Party thereunder, then each Indemnifying Party thereunder shall contribute to the account paid or payable by such Indemnified Party as a result of the losses, claims, damages, costs, expenses, liabilities or actions referred to in Section 6.5(e)(i) or (ii), as the case may be in such proportion as is appropriate to reflect the relative fault of the Indemnifying Party on the one hand and the Indemnified Party on the other in connection with statements or omissions which resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations. The relative fault shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Indemnifying Party or the Indemnified Party and the Parties' relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statements or omission. The Parties hereto agree that it would not be just and equitable if contributions pursuant to this Section 6.5(f) were to be determined by pro rata or per capita allocation or by any other method of allocation which does not take account of the equitable considerations referred to in the first sentence of this Section 6.5(f). The amount paid by an Indemnified Party as a result of the losses, claims, damages or liabilities referred to in the first sentence of this Section 6.5(f) shall be deemed to include any legal or other expenses reasonably

NOV 000031814

incurred by such Indemnified Party in connection with investigating or defending any action or claim which is the subject of this Section 6.5(f). Promptly after receipt by an Indemnified Party of notice of the commencement of any action against such party in respect of which a claim for contribution may be made against an Indemnifying Party under this Section 6.5(f), such Indemnified Party shall notify the Indemnifying Party in writing of the commencement thereof if the notice specified in Section 6.5(e)(iii) has not been given with respect to such action; provided that the omission so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any liability which it may have to any Indemnified Party otherwise under this Section 6.5(f), except to the extent that the Indemnifying Party is actually prejudiced by such failure to give notice. No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

(g)  Information by Holder. Seller shall furnish to Buyer such information regarding Seller and the distribution proposed by Seller as Buyer may reasonably request in writing and as shall be required in connection with any registration referred to in this Section 6.5.

(h)  Rule 144 Reporting. With a view to making available Seller the benefits of certain rules and regulations of SEC which may permit the sale of Registrable Securities to the public without registration, Buyer agrees to:

(i)  make and keep public information available, as those terms are understood and defined in Rule 144 under the Securities Act, at all times after ninety (90) days after the effective date of the first registration filed by Buyer which involves a sale of securities of Buyer to the general public,

(ii)  file with the SEC in a timely manner all reports and other documents required of Buyer under the Securities Act and the Exchange Act; and

(iii)  furnish to Seller so long as owns any Registrable Securities forthwith upon request a written statement by Buyer that it has complied with the reporting requirements of said Rule 144 (at any time after ninety (90) days after the effective date of said first registration statement filed by Buyer), and of the Securities Act and the Exchange Act (at any time after it has become subject to such reporting requirements), a copy of the most recent annual or quarterly report of Buyer, and such other reports and documents so files by Buyer as may be reasonably requested in availing Seller of any rule or regulation of the SEC permitting the selling of any such securities without registration.

(i)  Transfer of Registration Rights. Any registration rights granted by Buyer under this Section 6.5 may be assigned by Seller in connection with the sale by Seller of any Registrable Securities, and following such assignment, the assignee shall be entitled to all rights of Seller under this Section 6.5, provided that such assignee agrees in writing to be bound to the obligations of Seller under this Section 6.5.

MWK:ODMA\PCDOCS\SQL2\88862\1\1

-29-

NOV 000031815

(j) <u>Termination of Registration Rights</u>. All registration rights provided hereunder shall terminate upon the earlier to occur of (a) the tenth anniversary of the Closing and (b) such time as Seller is able to sell all of its Registrable Securities under Rule 144 during any two successive, three-month periods.

(k) <u>Future Grants of Registration Rights</u>. Buyer agrees for the benefit of Seller that it will not grant registration rights with respect to any of its securities upon terms more favorable to the holders of such securities than those contained herein.

ARTICLE VII

TERMINATION, AMENDMENT AND WAIVER

7.1 <u>Termination</u>. Except as provided in Section 7.2 below, this Agreement may be terminated and the Acquisition abandoned at any time prior to the Closing Date:

(a) by mutual consent of Seller and Buyer;

(b) by Buyer or Seller if: (i) the Closing has not occurred by _____; (ii) there shall be a final nonappealable order of a federal or state court in effect preventing consummation of the Acquisition; or (iii) there shall be any statute, rule, regulation or order enacted, promulgated or issued or deemed applicable to the Acquisition by any Governmental Entity that would make consummation of the Acquisition illegal;

(c) by Buyer if it is not in material breach of this Agreement and there has been a material breach of any representation, warranty, covenant or agreement contained in this Agreement on the part of Seller and such breach has not been cured within five (5) business days after written notice to Seller (provided that, no cure period shall be required for a breach which by its nature cannot be cured);

(d) by Buyer at any time prior to _____, if, in its good faith reasonable judgment, it is not satisfied with its due diligence review of the Business such that it concludes that consummation of the Acquisition and issuance of the Shares would not be in its best interest of its Stockholders.

(e) by Seller if it is not in material breach of this Agreement and there has been a material breach of any representation, warranty, covenant or agreement contained in this Agreement on the part of Buyer and such breach has not been cured within five (5) business days after written notice to Buyer (provided that, no cure period shall be required for a breach which by its nature cannot be cured).

NOV 000031816

(f)  by Seller at any time prior to _____, if, in its good faith reasonable judgment, it is not satisfied with its due diligence review of Buyer such that it concludes that consummation of the Acquisition and acquisition of the Shares would not be in its best interest.

7.2  Effect of Termination. In the event of termination of this Agreement as provided in Section 7.1, this Agreement shall forthwith become void and there shall be no liability or obligation on the part of Buyer or Seller, or their respective officers, directors or shareholders, provided that each party shall remain liable for any breaches of this Agreement prior to its termination; and provided further that, the provisions of Sections _____ of this Agreement shall remain in full force and effect and survive any termination of this Agreement.

7.3  Amendment. This Agreement may be amended by the parties hereto at any time by execution of an instrument in writing signed on behalf of each of the parties hereto.

7.4  Extension; Waiver. At any time prior to the Closing Date, Buyer on the one hand, and Seller, on the other, may, to the extent legally allowed, (i) extend the time for the performance of any of the obligations of the other party hereto, (ii) waive any inaccuracies in the representations and warranties made to such party contained herein or in any document delivered pursuant hereto, and (iii) waive compliance with any of the agreements or conditions for the benefit of such party contained herein. Any agreement on the part of a party hereto to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such party.

## ARTICLE VIII

## GENERAL PROVISIONS

8.1  Notices. All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by commercial delivery service, or mailed by registered or certified mail (return receipt requested) or sent via telecopy (with acknowledgment of complete transmission) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(a)  if to Buyer, to:
The Santa Cruz Operation, Inc.

_____
_____

Attention: _____
Telecopy No.: _____

with a copy to:

_____
_____
_____

Attention: _____
Telecopy No.: _____

MWZ:ODMA\PCDOCS\SLQL2\38862\1\1

-31-

NOV 000031817

(b)    if to Seller, to:

Novell, Inc.
_____
_____
_____
Attention: _____
Telecopy No : _____

with a copy to:

Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304
Attention: Larry W. Sonsini
Telecopy No.: (415) 496-4084

8.2    Survival. The representations and warranties contained in Section 2 and Section 3 hereof shall not survive the closing of the sale of assets and issuance of stock contemplated by this Agreement; provided, however, that the foregoing provision shall not eliminate the rights and remedies of the parties hereto in the case of a willful fraud by the other party provided that the agreed party shall establish all elements of the existence of such fraud by clear and convincing evidence.

8.3    Interpretation. When a reference is made in this Agreement to Schedules or Exhibits, such reference shall be to a Schedule or Exhibit to this Agreement unless otherwise indicated. The words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation." The table of contents and headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

8.4    Counterparts. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, it being understood that all parties need not sign the same counterpart.

8.5    Entire Agreement. This Agreement, and the Schedules and Exhibits hereto: (a) constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof; (b) are not intended to confer upon any other person any rights or remedies hereunder, unless expressly provided otherwise; and (c) shall not be assigned by operation of law or otherwise except as otherwise specifically provided.

MWK:ODMA\PCDOCS\SQL2\88621\1

NOV 000031818

8.6 **Severability.** In the event that any provision of this Agreement or the application thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect and the application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the parties hereto. The parties further agree to replace such void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such void or unenforceable provision.

8.7 **Other Remedies.** Except as otherwise provided herein, any and all remedies herein expressly conferred upon a party will be deemed cumulative with and not exclusive of any other remedy conferred hereby, or by law or equity upon such party, and the exercise by a party of any one remedy will not preclude the exercise of any other remedy.

8.8 **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of _____, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

8.9 **Rules of Construction.** The parties hereto agree that they have been represented by counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

NOV 000031819

IN WITNESS WHEREOF, Buyer and Seller have caused this Agreement to be signed by their duly authorized respective officers, all as of the date first written above.

THE SANTA CRUZ OPERATION, INC.

By:_____
Name:_____
Title:_____

NOVELL, INC.

By:_____
Name:_____
Title:_____

MWK:\ODMA\PCDOCS\SQL2\16162\1

-34-

NOV 000031820