LEXSEE 2001 U.S. DIST. LEXIS 24905

**COMPUTERIZED THERMAL IMAGING, INC., a Nevada corporation, Plaintiff,
vs. BLOOMBERG, L.P., Defendant.**

Case Number: 1:00 cv 98 K

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,
NORTHERN DIVISION

2001 U.S. Dist. LEXIS 24905

March 26, 2001, Decided
March 28, 2001, Filed; March 29, 2001, Entered on Docket

**SUBSEQUENT HISTORY:** Affirmed by Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 2002 U.S. App. LEXIS 24187.

**DISPOSITION:** [*1] Bloomberg's Motion to Dismiss granted, and CTI's Complaint dismissed.

**COUNSEL:** For COMPUTERIZED THERMAL IMAGING, plaintiff: Robert R Wallace, Lisa J Watts Baskin, PLANT WALLACE CHRISTENSEN & KANELL, SALT LAKE CITY, UT.

For COMPUTERIZED THERMAL IMAGING, plaintiff: Daniel J. Becka, Carl F. Schoeppl, Andrew H. Kayton, SCHOEPPL BURKE & KAYTON, BOCA RATON, FL.

For BLOOMBERG L.P., defendant: Randy L Dryer, PARSONS BEHLE & LATIMER, SALT LAKE CITY, UT.

For BLOOMBERG L.P., defendant: Richard L. Klein, Charles J. Glasser, Jr., Thomas H. Golden, WILLKIE FARR & GALLAGHER, NEW YORK, NY.

**JUDGES:** DALE A. KIMBALL, United States District Judge.

**OPINION BY:** DALE A. KIMBALL

**OPINION:**

### ORDER

This matter is before the court on Defendant Bloomberg, L.P.'s ("Bloomberg") Motion to Dismiss. A hearing on that motion was held on February 2, 2001. At the hearing, Randy L. Dryer represented Bloomberg, and Daniel J. Becka represented Plaintiff Computerized Thermal Imaging, Inc. ("CTI"). Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered [*2] the law and facts relating to this motion. Now being fully advised, the court renders the following Order.

### I. BACKGROUND

CTI has brought a libel action against Bloomberg n1 as the result of two news articles, which were written by David Evans, a Bloomberg reporter. The articles were published electronically by Bloomberg on June 29, 2000 and July 18, 2000 (the "Articles"). CTI claims that certain statements in the Articles were libelous *per se.* CTI claims not that Evans and Bloomberg were merely incorrect in their factual assertions, but that Evans intentionally made factual statements that he either knew to be false or recklessly disregarded whether such factual implications were true. While CTI contends that the statements constitute libel *per se,* it argues that, even if the statements are libel *per quod,* it has sufficiently pleaded special damages.

> n1 Bloomberg operates a news reporting service under the service mark "Boomberg News."

Bloomberg, however, argues that CTI's Complaint fails [*3] to state a claim upon which relief can be granted. It claims that, under Utah's "innocent construction" rule, each of the statements at issue is reasonably capable of non-defamatory meaning, and thus cannot constitute libel *per se.* In addition, Bloomberg contends that certain of the sued-upon statements are non-actionable truth, discernable from the four corners of the Complaint and the incorporated exhibits. The remainder of the sued-upon statements, Bloomberg asserts, are con-

Case 2:04-cv-00139-DAK-BCW   Document 291-6   Filed 04/25/2007   Page 2 of 4

Page 2
2001 U.S. Dist. LEXIS 24905, *

stitutionally protected opinion or privileged Fair Comment on matters of public concern. Finally, Bloomberg argues that, even if the court were to find that the statements, while not libel *per se,* may constitute libel *per quod* if proven, the Complaint fails as a matter of law to plead special damages, and CTI cannot prove special damages of the type recoverable under Utah law.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6) this court will dismiss a claim for relief only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them [*4] in the light most favorable to the plaintiff. *Cottrell v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999); *Riddle v. Mondragon,* 83 F.3d 1197, 1201 (10th Cir. 1996). The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cottrell,* 191 F.3d at 1251.

## III. THE STATEMENTS AT ISSUE

The Complaint alleges that five statements are false and give rise to a cause of action for libel. The five statements are as follows:

. Statement 1 reports that CTI "sold 11.1 million shares of its stock at a 72% discount to its market price," and includes commentary from Professor John Coffee adding that "the market price is well above what more informed parties think it should be." n2

> n2 CTI does not allege that Professor Coffee's comment is itself actionable defamation. Rather, it alleges that such comment is based on the false assertion of fact that the company sold 11.1 million shares at the represented 72% discount and underscores the defamatory nature of the false assertion of fact upon which the comment is based.

[*5]

. Statement 2 reports that CTI needed to sell its stock "to fund money-losing operations."

. Statement 3 reports that the CTI had "struggled to sell its imaging systems," and had at the time sold only one to a Thai hospital.

. Statement 4 reports that a prospective buyer was given options in CTI stock as an "inducement" to purchase CTI's imaging systems.

. Statement 5 reports on a public discussion by CTI's and other medical experts and the public's discussion of the viability of CTI's experimental technology in comparison to traditional mammograms and biopsies.

## IV. DISCUSSION

To constitute libel *per se,* "the defamatory words must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman." *Baum v. Gillman,* 667 P.2d 41, 43 (Utah 1983). In addition, "whether the defamatory words are actionable *per se* is to be determined from their injurious character. The words must be of such common notoriety that damage can be presumed from the words alone." *Id.*

It is clear in this case that the alleged libelous statements do not [*6] constitute libel *per se.* They do not charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, profession, or office, or the unchastity of a woman. The question, then, is whether the statements could constitute libel *per quod.* To be defamatory under Utah law, a communication must tend to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby expose him or her to public hatred, contempt or ridicule." Utah Code Ann. § 45-2-2(1); *West,* 872 P.2d 999, 1008 (Utah 1994). "A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about a plaintiff." *Cox v. Hatch,* 761 P.2d 556, 561 (Utah 1988). If no defamatory meaning from the communication can reasonably be inferred by reasonable persons, the action must be dismissed. *Cox,* 761 P.2d at 562.

This court concludes that at least some of the statements could be considered defamatory by reasonable people, and therefore, the court declines to dismiss the case on that basis. It is possible that [*7] a jury could conclude that the statements impeached CTI's integrity or reputation and exposed it to public contempt or ridicule. Moreover, at least with regard to Statements 1 and 3, the court disagrees with Bloomberg that those statements constitute protected opinion and/ or fair comment. A reasonable factfinder could conclude that the statements imply assertions of objective fact. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990). For example, regarding Statement 1, Bloomberg's statement that it sold 11.1 million shares of its stock at a 72 percent discount from its market price, according to a filing it made with regulators last week implies two assertions of fact: (1) that CTI sold 11.1 million shares of its stock at a 72 percent discount; and (2)

2001 U.S. Dist. LEXIS 24905, *

that CTI stated this to be so in a filing made with regulators.

Accepting CTI's allegations as true, as this court must, Bloomberg's statements are false, and such falsity can be verified by simply reviewing CTI's filing referred to in the statement. CTI sold 11.1 million shares at $ 2.81 in a private placement that ended on February 29, 2000. The market price on the final day [*8] was $ 9.875. Thus, the $ 2.81 private placement price was discounted 72% from the market price on February 29. However, the private placement price was determined in December 1999, when the market price was around $ 2.50, and the market price remained in the $ 3.47-$ 4.19 dollar range until sometime in February, when CTI submitted a unit to the FDA, and the stock price rose. Clearly, not all 11.1 million shares were sold on February 29, when the market price was $ 9.875. The court also disagrees with Bloomberg's argument that CTI's Complaint concedes that this statement is true or substantially true. If CTI's allegations are true, then several of the statements contained in the Articles are patently false and/ or grossly distorted, and a jury would have to determine whether such statements are libelous under Utah law.

However, the court's conclusion that at least some of the statements could constitute libel *per quod* does not save CTI's case. A plaintiff asserting a claim of slander *per quod* must plead and prove special damages. *Allred v. Cook,* 590 P.2d 318, 320-21 (Utah 1979). CTI has failed to sufficiently plead such damages.

Bloomberg asserts that the [*9] special damages alleged by CTI-vague and overreaching loss of stock value, the holding up of several "potential" business transactions, and CTI's future listing on NASDAQ--are in fact, general and speculative and are not the type recoverable under Utah's special damages law. Specifically, Bloomberg argues that CTI's allegation that it suffered "special damages" as the result of a stock price decline caused by the Articles fails as a matter of law for a number of reasons. First, Bloomberg argues, CTI fails to show how a decline in its stock price harmed CTI, as opposed to its shareholders. n3 Second, Bloomberg contends that mere fluctuations in the closing stock price do not constitute realized, liquidated and measurable losses. Third, Bloomberg points out that CTI claims that only "a *significant portion* of this loss of market capitalization was directly and proximately caused" by the publication of the Articles. Fourth, Bloomberg asserts that CTI's claim that the Articles had a "negative impact on potential transactions with third parties" would never be provable special damages, citing *A.H. Belo Corporation v. Saunders,* 632 S.W.2d 145, 146 (Tex. 1982). Finally, [*10] Bloomberg argues that the delay in CTI's NASDAQ listing could not possibly represent the loss of a specific, quantifiable sale or transaction.

n3 Bloomberg also notes that CTI has failed to allege that number of shares of stock sold at the lower prices as a result of the Articles, the actual lower prices, if any, or the amount of money lost as a result of such specific stock sales.

CTI, on the other hand, claims that it has properly pleaded special damages, claiming that it has suffered special damages as a direct and proximate result of the publication in the form of lost market capitalization of more than $ 100 million. CTI asserts that this type of damage is recoverable in this action. If such loss of market capitalization is not recoverable, CTI seeks to amend its Complaint to add attorneys fees and costs incurred by CTI in "clearing" its name, which CTI claims are recoverable as special damages.

The court agrees with Bloomberg that the alleged special damages are not the type recoverable under Utah special [*11] damages law. The alleged special damages in this case are only conjecture and do not result in the realized and liquidated losses required under Utah law. *See Baum,* 667 P.2d at 43 (noting that plaintiffs failed to allege special damages where they did not claim that the statements at issue damaged "any current business endeavor or pursuit"); *see also Salit v. Ruden, McClosky, Smith, Schuster & Russell,* 742 So.2d 381, 388 (Fla. Ct. App. 1999) (court rejected plaintiffs' theory that a decline in stock value constituted special damages for injurious falsehood, holding that "their pleading [did] not allege any 'realized loss' that is characteristic of 'special damage' that is a crucial element of the cause of action."); *A.H. Belo Corp. v. Saunders,* 632 S.W.2d 145, 146 (Tex. 1982) (finding that the plaintiff "was required to prove the loss of a *specific* sale or sales" in order to obtain recovery for special damages in libel action).

The fact that CTI has not requested leave to amend to cure these defects, but rather has requested leave to amend to add a claim for attorneys fees and costs, only bolsters the court's conclusion that [*12] the alleged special damages are too speculative and cannot be proven. Thus, the libel claim must fail as a matter of law.

Finally, CTI has requested leave to amend to add attorneys fees and costs, which, it claims, are recoverable as special damages. The court is unaware of any Utah case law in which the attorneys fees and costs incurred in bringing a defamation action were, without more, sufficient to satisfy the "special damages" rule. Indeed, other courts have found to the contrary. *Angio-Medical Corp. v. Eli Lilly & Co.,* 720 F. Supp. 269, 274 (S.D.N.Y. 1989). It is not the province of this court to create new state law. Moreover, such a rule would eviscerate the requirement that special damages must be pleaded and

Case 2:04-cv-00139-DAK-BCW   Document 291-6   Filed 04/25/2007   Page 4 of 4

Page 4
2001 U.S. Dist. LEXIS 24905, *

proven because every plaintiff necessarily incurs attorneys fees and costs in pursuing a lawsuit. Consequently, CTI's request for leave to amend is denied.

## V. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that Bloomberg's Motion to Dismiss is GRANTED, and CTI's Complaint is DISMISSED.

DATED this 26th day of March, 2001.

BY THE COURT:

DALE A. KIMBALL

United States District Judge

**JUDGMENT IN A CIVIL** [*13] **CASE** - FILED 29 MAR 01; Entered on docket 3/30/01

This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that judgment be entered in favor of the defendant and plaintiff's cause of action is dismissed.

March 29, 2001
*Date*