LEXSEE 1984 U.S. DIST. LEXIS 15230

**PROFESSIONAL ASSET MANAGEMENT, INC., a California corporation, Plaintiff, vs. PENN SQUARE BANK, N.A., now known as DEPOSIT INSURANCE NATIONAL BANK OF OKLAHOMA CITY, et al., Defendants. JAX NAVY CREDIT UNION, a Federal Credit Union, and PINELLAS COUNTY TEACHERS CREDIT UNION, a Florida Credit Union, Plaintiffs, vs. PENN SQUARE BANK, N.A., a national banking association by and through its Receiver, the Federal Deposit Insurance Corporation, et al., Defendants.**

**CIV-82-1357-W, CIV-83-1583-W**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

**1984 U.S. Dist. LEXIS 15230**

**July 5, 1984, Decided**
**July 5, 1984, Filed**

**JUDGES:** [*1] WEST

**OPINION BY:** LEE R. WEST

**OPINION:**

OPINION AND ORDER

The gravamen of these two closely related actions is the liability vel non of Penn Square Bank, N.A.; certain of its officers and directors; its receiver, the Federal Deposit Insurance Corporation ["FDIC"]; its accountants, Peat, Marwick, Mitchell & Co. ["Peat, Marwick"]; and two investment advisors, Professional Asset Management, Inc. ["PAM"] and First United Fund arising out of the sale of Penn Square Bank certificates of deposit ["CD's"]. In PAM, CIV-82-1357-W, the plaintiff investment advisor alleges fraud, constructive fraud, negligence, and statutory violations in its relationship with the Bank as a broker of CD's. In Jax, CIV-83-1583-W, the plaintiff credit unions purchased CD's from PAM and First United Fund; in connection therewith, they allege violations of federal and state securities laws and common law fraud. Furthermore, in Jax the defendant PAM has filed cross-claims against the other defendants and a third party complaint against Peat, Marwick; James Blanton; and Dean York ["Peat, Marwick defendants"]. The first seven of these cross- and third party claims are identical to PAM's main complaint [*2] in CIV-82-1357-W; the eighth claim is for contribution or indemnification "in any action brought [against PAM] by any purchaser of a certificate of deposit in Penn Square Bank, including this action." Answer, Cross-claim, and Third Party Complaint 70 (Sept. 1, 1983).

Before the Court now in these two actions are a number of motions, almost all of which challenge the sufficiency of the various pleadings under Federal Rule of Civil Procedure 12(b). First, all of the defendants in PAM have moved to dismiss for failure to state a claim on which relief can be granted under Federal Rule 12(b)(6), though on various grounds. Second, all of the defendants in Jax except PAM also moved to dismiss for failure to state a claim; n1 as noted above, PAM answered and pleaded its own cross-claims and third party claims under Rules 13 and 14. The cross- and third party defendants in Jax have likewise moved to dismiss, largely on the same grounds asserted in PAM. Third, the FDIC has moved for partial summary judgment under Federal Rule 56(b),(d). Insofar as these latter motions duplicate those in PAM, they will be considered together.

n1 However, there are two exceptions. The defendant Ronald Burks first moved to dismiss for insufficiency of service of process under Rule 12(b)(5), but during the pendency of that motion he was served again. Presumably, that later service was sufficient, as he subsequently moved to dismiss for failure to state a claim. Furthermore, the defendant John Rooney moved to dismiss, arguing that he was not an officer or director of Penn Square Bank, although he was a director of the Bank's holding company, First Penn Corporation. The plaintiffs conceded the point and dis-

1984 U.S. Dist. LEXIS 15230, *

missed him. Motion to Dismiss (Oct. 10, 1983) (treated as a notice of dismissal under Rule 41(a)(1)(i), Minute Order (Oct. 14, 1983)).

[*3]

I

It is well established that a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In the context of a motion to dismiss, the Court must construe the challenged pleading in the light most favorable to the plaintiff, must accept as true all well-pleaded factual allegations and reasonable inferences therefrom, and must disregard all legal or un-supported conclusions. Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Further, the complaint should not be dismissed merely because the plaintiff's allegations do not support its stated legal theory, for the Court is obliged to determine whether the allegations support relief on any possible theory. See Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1375 n.5 (10th Cir. 1980), (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1357 (1969)).

II

The subject of scrutiny in PAM is the plaintiff's second amended complaint. PAM's first amended complaint was the [*4] subject of an earlier, extensive opinion and order in which the Court granted some of the numerous motions to dismiss but denied others. Order (May 31, 1983). PAM's cross- and third party claims in Jax are identical to its second amended complaint in PAM, except for its claim for contribution or indemnification, which will be considered separately.

A

By their motions to dismiss, the defendants raise two principal objections. First, they argue that the plaintiff still has not adequately pleaded damages. Cf. Order 9-11 (May 31, 1983). Second, they argue that the newly-added claim under the Racketeer Influenced and Corrupt Organizations Act ["RICO"] is legally insufficient for several reasons. Neither objection is persuasive.

In its earlier order on the defendants' motions to dismiss the first amended complaint the Court concluded that "the plaintiff's bare ad damnum allegation is neither sufficient as an allegation of general damages nor as an allegation of special damages. . . .", but the Court granted leave to amend to cure the defects. Order, supra, at 10, 24. The plaintiff did so amend. See, e.g., PAM, No. CIV-82-1357-W, Second Amended Complaint [*5] PP 36, 37 (July 11, 1983); Jax, No. CIV-83-1583-W, Answer,

Cross-Claim, and Third Party Complaint of PAM, supra, PP 34, 35. In light of the standards explicated in this Court's earlier order, these allegations are sufficient to withstand a motion to dismiss.

B

In addition, the FDIC has moved for partial summary judgment on PAM's claim of general damages in the amount of $ 47,000 for commissions due and owing to it from Penn Square Bank, arguing that this claim has already been approved and that a receiver's certificate has already been issued for it. In support of its motion, the FDIC has submitted an affidavit of one of its claims agents, Cleda Owens, and several documentary exhibits. E.g., Jax, No. CIV-83-1583-W, Motion for Partial Summary Judgment (Nov. 3, 1983). PAM has opposed the motion, contending that its pleading of $ 47,000 in damages is only an example of its general damages; however, PAM has not challenged the facts adduced by the FDIC. See, e.g., Jax, No. CIV-83-1583-W, Unified Brief of PAM in Opposition to Motion for Partial Summary Judgment of FDIC 1-2 (Dec. 22, 1983). The motion is granted, both in PAM and in Jax.

On the one [*6] hand, PAM's opposition is procedurally inadequate. Federal Rule 56(c) specifically provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set further specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed. R. Civ. P. 56(e) (emphasis added). See Casper v. Newbert, 489 F.2d 543 (10th Cir. 1973); General Beverages, Inc. v. Rogers, 216 F.2d 413 (10th Cir. 1954). PAM did not so respond, and it has not submitted an affidavit as provided under Rule 56(f) stating that it cannot at this time present facts essential to its opposition. Fed. R. Civ. P. 56(f). Furthermore, the Court has examined the evidence and is satisfied that there are no genuine issues of material fact in this aspect of these actions. Fed. R. Civ. P. 56(c). Accordingly, partial summary judgment on PAM's claim of $ 47,000 damages in unpaid commissions is hereby entered in favor of the defendant [*7] FDIC and against the claimant PAM.

1984 U.S. Dist. LEXIS 15230, *

On the other hand, PAM's argument is opposition misses the point of the FDIC's motion. PAM argues that its pleading of general damages merely includes the $ 47,000 in unpaid commissions and is not limited to that particular allegation and, therefore, that the FDIC is not entitled to summary judgment. PAM's Unified Brief in Opposition, supra. But the FDIC has not moved for full summary judgment, only partial summary judgment on this claim and prayer under Rule 56(d). Such a judgment does not preclude the claims against the FDIC for other general damages or for special damages.

C

The defendants next maintain that PAM has failed to state a claim under RICO. Specifically, they assert that PAM does not have standing because it has not suffered a commercial or competitive injury; that PAM has failed to allege any connection between the defendants and "organized crime"; that the claim is not pleaded with sufficient particularity; that PAM cannot base its RICO claim on violations of the National Bank Act, which provides an exclusive remedy; and that PAM has failed to allege that the defendants are culpable "persons" separate from the "enterprises" [*8] through which they supposedly violated RICO. None of these assertions warrant dismissal.

Most of these arguments require only brief attention. First, in a well-reasoned opinion, Chief Judge Eubanks of this Court has already rejected the arguments that to state a claim under RICO, a plaintiff must allege a competitive injury and a connection with organized crime. In re Longhorn Securities Litigation, 573 F.Supp. 255, 269-70 (W.D. Okla. 1983) (Eubanks, C.J.). Second, RICO claims per se need not be specially pleaded. To the contrary, the Federal Rules merely require a short and plain statement of a claim, Fed. R. Civ. P. 8(a); if, however, a RICO claim is predicated on acts of fraud under Section 1961(1), 18 U.S.C. § 1961(1) (1982), then the circumstances constituting those acts of fraud must be stated with particularity, Fed. R. Civ. P. 9(b). n2 In PAM, the Court has previously determined that the plaintiffs allegations of fraud are sufficiently particular. Order, supra, at 7-9 (May 31, 1983). Third, PAM probably cannot predicate a RICO claim on the defendant's alleged violations of the National Bank Act, because it provides an exclusive remedy, see id. at 12-13, [*9] but in fact PAM bases its RICO claim on violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, not on violations of the National Bank Act. E.g., PAM, No. CIV-82-1357-W, Second Amended Complaint, supra, P 82.

n2 At least some of the defendants rely on a contrary rule in Bache, Halsy, Stuart, Shields, Inc. v. Tracy Collins Bank & Trust Co., 558

F.Supp. 1042, 1045 (D. Utah 1983), in which the district court required a bill of particulars in order to plead a civil RICO claim. However, that decision is not consistent with the decisions in this District and is not binding. Primarily, the court relied exclusively on criminal cases in its reasoning. To state the obvious, a civil RICO claim is not equivalent to a criminal prosecution under RICO, and in federal civil practice the use of bills of particulars has been abolished, see Fed. R. Civ. P. 12(e), Advisory Committee Note to 1946 Amendment; 5 C Wright & A. Miller, supra, § 1375.

Finally, PAM's pleading of "persons" liable under [*10] civil RICO is also adequate, though perhaps a bit curious. As Chief Judge Eubanks reasoned in one of the Longhorn Securities cases,

RICO requires a "person", an "enterprise" involved in or affecting interstate or foreign commerce, and a "pattern of racketeering" through which the "person" conspires to or in fact acquires an interest in, conducts, or derives income that is invested in that "enterprise". 18 U.S.C. § 1962. See, e.g., United States v. Cauble, supra, 706 F.2d at 1330-33 (elements of Section 1962(a) and (c) criminal liability). "Person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), and "enterprise" is defined as "any individual, partnership, corporation, or association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In re Longhorn Securities Litigation: Michigan National Bank v. D & G Enterprises, No. CIV-82-1888-E (W.D. Okla. July 28, 1983) (order granting counter-defendant's motion to dismiss, but granting leave to amend at 7). After a compelling discussion, Judge Eubanks [*11] then concluded that "an entity cannot simultaneously be both the 'person' and the 'enterprise' under RICO." Id. at 8-10.

In PAM, the plaintiff alleges that Penn Square Bank, First Penn Corp., and Peat, Marwick are each "enterprises" and that all of the defendants are "persons" liable for conspiring to conduct and in fact conducting these enterprises' affairs through a pattern of racketeering ac-

Case 2:04-cv-00139-DAK-BCW    Document 291-7    Filed 04/25/2007    Page 4 of 8

Page 4
1984 U.S. Dist. LEXIS 15230, *

tivity in violation of 18 U.S.C. § 1962(c), (d). PAM, No. CIV-82-1357-W, Second Amended Complaint, supra, PP 84,85. This is permissible, with one set of exceptions. Neither Penn Square Bank, nor First Penn Corp., nor Peat, Marwick can at once be the "enterprise" and the potentially liable "person" under Section 1962. See Michigan National Bank, supra, at 8. In its cross- and third party claim in Jax, PAM avoids this problem by alleging that Penn Square Bank and First Penn Corp. alone are the "enterprises" and all the cross- and third party defendants except them are the potentially culpable "persons". Jax, No. CIV-83-1583-W, Answer, Cross-Claim, and Third Party Claim, supra, PP 79-84.

D

Lastly, the FDIC has moved to dismiss PAM's apparent prayers for [*12]  punitive damages and treble damages under RICO both against the failed Bank and against it as receiver. With regard to punitive damages the FDIC's motion is granted.  Professional Asset Management, Inc. v. Penn Square Bank, N.A., 566 F.Supp. 134 (W.D. Okla. 1983). However, that holding does not apply ipso facto to treble damages under RICO. Punitive damages are permitted under state law in certain actions. 23 Okla. Stat. § 9. In contrast, RICO seems to require that a prevailing civil litigant receive treble damages. 18 U.S.C. § 1964(c). Therefore, it is not clear that the Court has discretion to limit treble damages as it does punitive damages, and the FDIC has not presented argument or authority to the contrary. Accordingly, with regard to treble damages, the FDIC's motion is denied without prejudice to its renewal.

III

In Jax, two plaintiff credit unions are suing to recover the uninsured balances of their respective certificates of deposit issued by Penn Square Bank before its collapse. The plaintiffs plead four claims in their complaint, erroneously labeled first, second, fourth, and fifth. Complaint (July 6, 1983). Their first claim alleges that the disputed [*13]  CD's are "securities" within the meaning of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78a et seq. ["1934 Act"]; that they were sold without being registered pursuant to 15 U.S.C. § 78(e); and that the defendants are therefore liable as sellers of unregistered securities. n3 Complaint, supra, PP 17-20. However, the plaintiffs have now abandoned this claim, because they are convinced that the CD's are exempt from registration by section 3(a)(2) of the 1933 Securities Act, 18 U.S.C. §§ 77c(a)(2) ["1933 Act"]. Plaintiffs' Brief in Response to Defendants' Motions to Dismiss 3 (Sept. 30, 1983). In their second, fourth, and fifth claims, the plaintiffs allege that in connection with their purchases the defendants omitted to state various material facts which were necessary to make the statements made not mis-

leading, in violation of Section 10b of the 1934 Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (1983); Section 408 of the Oklahoma Securities Act, 71 Okla. Stat § 408 (1981); and Oklahoma common law, respectively. Complaint, supra, PP 22-31.

n3 Actually, the registration requirements appear not in the 1934 Securities Exchange Act, 15 U.S.C. §§ 78a-78kk (1982), but in Section 5 of the 1933 Securities Act, 15 U.S.C. § 77e. The express cause of action for violating Section 5 is provided in Section 12(1) of the 1933 Act, 15 U.S.C. § 781(1).

[*14]

All the defendants have moved to dismiss, except PAM, which has answered and pleaded its own cross-claims and third party claims. Primarily, they base their motions on two grounds: that the plaintiffs have failed to plead the alleged fraud with particularity, under Federal Rule 9(b), and that the plaintiffs have failed to state claims under the federal and state securities laws because the CD's are not "securities", pursuant to Federal Rule 12(b)(6). Each of these arguments is analyzed in turn.

A

First, the defendants urge almost unanimously that the plaintiffs have failed to plead with particularity their federal and state securities fraud claims and their common law fraud claim, as required by Federal Rule 9(b). The command of Rule 9(b) is actually rather narrow; it provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," but that "malice, intent, knowledge, or other condition of mind may be averred generally." Fed. R. Civ. P. 9(b). Rule 9(b) does not require detailed fact pleading of claims of fraud. See Garcia v. Bernabe, 289 F.2d 690, 692-93 (1st Cir. 1961). See also Official Form 13; [*15]  Fed. R. Civ. P. 84. See generally Nolan Brothers, Inc. v. United States for the Use of Fox Brothers Construction Co., 266 F.2d 143, 145-46 (10th Cir. 1959)(Rule 9(b) "merely requires that the circumstances constituting fraud shall be pleaded with particularity." [emphasis added]). Rather, Rule 9(b) must be read in conjunction with the simplified system of "notice pleading" generally contemplated by the Federal Rules, see Conley v. Gibson, 355 U.S. 41, 47-48 (1957), and specifically codified in Rule 8, Fed. R. Civ. P. 8(a), (b), (e), (f). See Tomera v. Galt, 511 F.2d 504, 508 (7th Cir. 1979); Felton v. Walston & Co., 508 F.2d 577, 581 (2nd Cir. 1974); In Re Home-Stake Production Co. Securities Litigation, 76 F.R.D. 337, 348-49 (N.D. Okla. 1975); 5 C. Wright & A. Miller, Federal Practice and Procedure §

1298 at 406-407 & n.66 (1969 & Supp. 1982). These seemingly inconsistent demands are harmonized in the leading case of Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415 (S.D. N.Y. 1978), in which the court enunciated the following test of particularity under Rule 9(b):

> The plaintiffs must specify: 1) precisely what statements were made in what [*16] documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants "obtained as a consequence of the fraud."

Id. at 420-21 (citations omitted).

Under this test, the plaintiffs' pleading of fraud is legally sufficient. The defendants are apprised of their alleged roles, and the purported omissions are enunciated. The defendants PAM and First United are alleged to have been agents and brokers of Penn Square Bank; they are further alleged to have omitted various material facts from their statements leading up to the plaintiffs' purchases in April and May, 1982, thus making these statements misleading. Complaint, supra, PP 12-15, 22. Penn Square Bank issued the CD's, and the officer and director defendants are alleged to have been control persons of the Bank. Id. P 6.

B

Second, the defendants argue that the CD's are not securities and that, in consequence, the plaintiffs' securities law claims must fail. This argument [*17] is persuasive as to both the plaintiffs' federal and state securities law claims.

In a relatively recent case, the Supreme Court unanimously held that a certificate of deposit issued by a federally regulated and federally insured bank is not a security within the meaning of the 1934 Act. Marine Bank v. Weaver, 455 U.S. 551, 559 (1982). See Comment, The Definition of Security: Marine Bank v. Weaver, 24 B.C.L. Rev. 1053 (1983). Preliminarily, the Court recognized that the statutory definition is "quite broad", but noted that it is tempered by the introductory clause "unless the context otherwise requires. . ." Id. at 555-556. The Court then reasoned that

there is an important difference between a bank certificate of deposit and other long-term debt obligations [which are covered by the 1934 Act]. This certificate of deposit was issued by a federally regulated bank which is subject to the comprehensive set of regulations governing the banking industry. Deposits in federally regulated banks are protected by the reserve, reporting, and inspection requirements of the federal banking laws; advertising relating to the interest paid on deposits is also regulated. [*18] In addition, deposits are insured by the Federal Deposit Insurance Corporation. . . . The purchaser of a certificate of deposit is virtually guaranteed payment in full, whereas the holder of an ordinary long-term debt obligation assumes the risk of the borrower's insolvency. . . . [Therefore,] it is unnecessary to subject issuers of bank certificates of deposit to liability under the antifraud provisions of the federal securities laws since the holders of bank certificates of deposit are abundantly protected under the federal banking laws.

Id. at 557-59. (footnotes omitted)

At least two lower courts have followed the Marine Bank holding that a certificate of deposit issued by a national bank is not a "security" under the federal securities acts. Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., No. 83-0478-N (D. Mass. Dec. 9, 1983)(order granting defendants' motions to dismiss); Michigan National Bank v. Peat, Marwick, Mitchell & Co., No. K-82-370 (W.D. Mich. Sept. 9, 1983)(same). n4 These decisions are well reasoned and highly persuasive. There are no published decisions to the contrary.

> n4 These decisions are attached to the Supplemental Brief of Defendant First United Fund in Support of Motion to Dismiss etc. (Dec. 16, 1983).

[*19]

In opposition, the plaintiffs attempt to distinguish Marine Bank, but that attempt is not convincing. In footnote 11 the Court stated:

> It does not follow that a certificate of deposit . . . invariably falls outside the definition of a "security" as defined by the

federal statutes. Each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole.

455 U.S. 560 n.11. This simply recognizes, correctly, that not all bank deposits are as secure as those in federally regulated and insured banks. For example, there are state banks which are neither federally regulated nor insured. Furthermore, there are foreign banks. See Wolf v. Banco Nacional de Mexico, 549 F.Supp. 841, 853 (N.D. Cal. 1982)(holding that a time deposit in a foreign bank is a "security" under federal law). However, the CD's in dispute here were issued by a national bank subject to federal regulation and insured by the FDIC. Therefore, Marine Bank is dispositive. Accord Brockton Savings Bank, supra, at 7-10; Michigan National Bank, supra, at 10-11.

After the Court's [*20] decision in Marine Bank, Congress amended the definitions of "security" in both the 1933 and 1934 Acts; however, that amendment does not affect the case at bar. The Act of October 13, 1982, added to the existing definition the following:

> The term "security" means . . . any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security". . .

Act of October 13, 1982, Pub. L. No. 97-303, §§ 1,2, 96 Stat. 1409 (1982)(codified at 15 U.S.C. §§ 77b(1) (1933 Act) and 15 U.S.C. § 78c(a)(10) (1934 Act) (1982)). This amendment simply adds options as "securities". See H.R. Rep. No. 626, 97th Cong., 2nd Sess. 9, reprinted in 1982 U.S. Code Cong. & Ad. News 2780, 2787. Significantly, it does not change the provisos to the definitional sections "unless the context otherwise requires", upon which the court based its decision in Marine Bank, supra. See generally [*21] id. at 2788.

2

Marine Bank is equally dispositive of the plaintiffs' state securities law claim under 71 Okla. Stat. § 408 (1981). The definition of "security" in the Oklahoma Securities Act, which is taken from the Uniform Securities Act, is virtually identical to its federal counterparts. See Uniform Securities Act § 401(1) Commissioners' Note (1), 7A U.L.A. 631 (1978); Arnold, Marine Bank v. Weaver: New Guidance on What is Not a Security, 59 Okla. B.J. 2199 (1982). Importantly, the definitional section of the Oklahoma Securities Act is also prefaced with the provision "unless the context otherwise requires". 71 Okla. Stat. § 2(1). Because the two sets of laws are parallel, state courts, including Oklahoma's, consider interpretations of the federal securities laws highly persuasive. See, e.g., Lowery v. Ford Hill Investment Co., 192 Colo. 125, 556 P.2d 1201, 1204 (Colo. 1976)(en banc); Valley Stream Teachers Federal Credit Union v. Commissioner of Banks, 376 Mass. 845, 384 N.E.2d 200, 208 (1978); State v. Hoephner, 574 P.2d 1079, 1081 (Okla. Crim. App. 1978) (per curiam); Payable Accounting Corp. v. McKinley, 667 P.2d 15, 19-20 [*22] (Utah 1983). But see, e.g., Kittilson v. Ford, 93 Wash.2d 223, 608 P.2d 264, 265-66 (Wash. 1980) (en banc). But see generally Long, State Securities Regulation -- An Overview, 32 Okla. L. Rev. 541, 545-47 (1979) (cautioning against unreasoned, wholesale adoption of federal decisions in interpreting state Blue Sky laws).

Moreover, one of the statutory policies of the Uniform Securities Act is "to make uniform the law of those states which enact it . . ." 71 Okla. Stat. § 501. Recently the Utah Supreme Court has adopted the reasoning in Marine Bank in holding that certain investment contracts are not securities under its version of the Uniform Securities Act. Payable Accounting Corp. v. McKinley, supra, 667 P.2d at 19-20. So far, Utah is the only Uniform Securities Act jurisdiction which has confronted the issue. It is noteworthy, though, that other states which have not enacted the Uniform Securities Act are in accord. E.g., American Mutual Reinsurance Co. v. Calvert Fire Insurance Co., 52 Ill. App.3d 922, 367 N.E.2d 104, 110 (Ill. App. Ct. 1977), cert. denied, 436 U.S. 906 (1978); Ayala v. Jamaica Savings Bank,  Misc. [*23] 2d , 468 N.Y.S.2d 306, 307-308 (N.Y. Sup. Ct. 1983); Estate of Wheaton v. Metropolitan Life Insurance Co., 119 Misc.2d 615, 463 N.Y.S.2d 727, 729 (N.Y. Sup. Ct. 1983).

IV

Finally, there is PAM's cross- and third party claim in Jax for a declaratory judgment of contribution or indemnification under Rules 13 and 14, quite apart from its own affirmative claims for relief therein which are addressed in Section II, supra. Jax, No. CIV-83-1583-W, Answer, Cross-Claim, and Third Party Complaint, supra, PP 85-88. The cross- and third party defendants have moved to dismiss. Because the plaintiff's securities law claims in Jax have either been abandoned or dismissed herein, the only theory on which PAM might be ad-

Case 2:04-cv-00139-DAK-BCW    Document 291-7    Filed 04/25/2007    Page 7 of 8

Page 7
1984 U.S. Dist. LEXIS 15230, *

judged liable is fraud under the law of Oklahoma, which can be either actual or constructive. 15 Okla. Stat. §§ 57-59 (1981). See Faulkenberry v. Kansas City Southern Railway Co., 602 P.2d 203, 206 (Okla. 1979). Consequently, the cross- and third party defendants' arguments regarding the availability of contribution or indemnification under federal law are moot; Oklahoma law controls as to the availability of contribution or indemnification in [*24] a fraud action arising under state law. See, e.g., Downriver Community Federal Credit Union v. FDIC, No. CIV-83-69-W (W.D. Okla. June 15, 1984) (order granting in part and denying in part defendant's motion to dismiss and denying cross-motions for summary judgment 2-3). When analyzed in light of the liberal rules governing a motion to dismiss, Section I, supra, this claim is sufficient, but only as to liability that may accrue in Jax.

A

At the threshold, it must be noted that the doctrines of contribution and indemnification are vastly different. On the one hand, contribution distributes a loss among joint tortfeasors by requiring each to pay its proportionate share. On the other hand, indemnity shifts the loss altogether from the tortfeasor who has been compelled to pay it to another who should do so instead. W. Prosser, Handbook of the Law of Torts § 51 at 310 (4th ed. 1971).

B

The applicable substantive law in Oklahoma is in a period of transition. The general, common law rule is that neither contribution nor indemnification is available to joint tortfeasors. E.g., United States v. Acord, 209 F.2d 709, 714 (10th Cir. 1954) (applying Oklahoma [*25] law). Cain v. Quannah Light & Ice Co., 131 Okla. 25, 267 P. 641, 644 (1928). However, like most rules this one has its exceptions; for instance, indemnity is permitted if there is a valid, enforceable contract providing for it, e.g., Broce Construction Co. v. Trader's & General Insurance Co., 465 P.2d 475 (Okla. 1970), or if the putative indemnitee is merely vicariously or derivatively liable vis-a'-vis the putative indemnitor (such as under the doctrine of respondeat superior), e.g., Porter v. Norton-Stuart Pontiac-Cadillac of Enid, 405 P.2d 109, 113-15 (Okla. 1965); see, e.g., Peak Drilling Co. v. Halliburton Oil Well Cementing Co., 215 F.2d 368, 369-70 (10th Cir. 1954) (applying Oklahoma law). See generally W. Prosser, supra, § 51 at 310-11.

Furthermore, the law of contribution has changed dramatically since the state Legislature enacted a modified comparative negligence statute, 23 Okla. Stat. § 11 (Supp. 1977) (subsequently repealed and now codified at 23 Okla. Stat. § 13, 14 (1981)), abolishing the common law rule of contributory negligence. First, in a landmark case the Oklahoma Supreme Court did away with the principle of joint [*26] and several liability in comparative negligence actions in which there are multiple tortfeasors and substituted the principle of several liability, so that each defendant is liable only for the percentage of liability attributable to it. Laubach v. Morgan, 588 P.2d 1071, 1074-75 (Okla. 1978). In this manner, the Court attempted to reconcile the comparative negligence statute, by which the Legislature intended to apportion fault, with the common law rule against contribution, which permitted a single defendant to bear the entire liability. Id. at 1075.

Then, in response to the Court's decision in Laubach, the Legislature adopted a portion of the Uniform Contribution Among Tortfeasors Act, § 1, 12 U.L.A. 57, 63-64 (1955) [the "Act"]. 12 Okla. Stat. § 832 (1981). See Roberts, Contribution Among Joint Tortfeasors -- Oklahoma Style, 60 Okla. B.J. 2193, 2195-96 (1979). The purpose of the Act is to "distribute the burden of responsibility equitably among those who are jointly liable and thus avoid the injustice often resulting under the common law. . . ." Uniform Contribution Among Tortfeasors Act, Commissioners' Prefatory Note (1955 Revision), 12 U.L.A. at 59. [*27]

The Act accomplished several things. Principally, it created a right of contribution in favor of a tortfeasor which has paid more than its pro rata share of a common liability. 12 Okla. Stat. § 832 (A),(B). Further, it expressly denied that right to intentional tortfeasors. Id. § 832(C). Lastly, it left undisturbed the law of indemnification. Id. § 832(F).

Most recently the state Supreme Court was called upon to reconsider Laubach, given the Legislature's adoption of Section 832. In Berry v. Empire Indemnity Insurance Co., 634 P.2d 718 (Okla. 1981), the plaintiff, a passenger in a city-owned garbage truck, was injured when the vehicle in which he was riding was involved in a traffic accident with another vehicle. Id. at 718. After a trial, the jury found the plaintiff free of negligence, the driver of the garbage truck 70% negligent, and the driver of the other vehicle 30% negligent. Id. at 719. Apparently applying Laubach, the trial court reduced the plaintiff's award by 70%. Id. The Supreme Court reversed. Initially, the Court restated its holding in Boyles v. Oklahoma Natural Gas Co., 619 P.2d 613, 616-17 (Okla. 1980), that Laubach [*28] does not apply "to that class of negligence litigation in which the plaintiff is not one among several negligent co-actors." Berry, supra, 634 P.2d at 719. Accordingly, in such cases judgment should be joint and several, not merely several. The Court then concluded that Section 832 did not overrule Laubach. Section 832 does not mandate joint and several liability, the Court reasoned; it merely permits contribution in such cases. Id. at 719-20.

1984 U.S. Dist. LEXIS 15230, *

Thus, the rule in Oklahoma is that in comparative negligence cases, there is only several liability, so there is no need for contribution; but in negligence cases in which the plaintiff is without fault, liability is joint and several, and contribution is available under Section 832.

C

Under these substantive rules, it is possible that PAM could prevail on a claim either for contribution or indemnification; therefore, the defendants' motions to dismiss must be denied. First, if PAM is ultimately found to be liable for negligent misrepresentation and the other defendants for intentional misrepresentation, then it may obtain contribution from the others for what it has paid in excess of its proportionate fault. n5 12 Okla. [*29] Stat. § 832(A),(B). See Uniform Contribution Among Tortfeasors Act § 1, Commissioners' Note (c), 12 U.L.A. at 65. Cf. Mitchell v. Branch, 45 Hawaii 128, 363 P.2d 969, 977-78 (1961) (ordinarily negligent tortfeasor entitled to contribution as against grossly negligent tortfeasor). Second, if the jury finds that the other defendants owed PAM a duty independent of the duties which all owed to the plaintiffs, see PAM, No. CIV-82-1357-W (W.D. Okla. May 31, 1983) (order granting in part and denying in part defendants' motion to dismiss 13-14), and that they breached that duty to PAM, then it may obtain a judgment for indemnification. See, e.g., Public Service Co. of Colorado v. District Court in and for the City and County of Denver, 638 P.2d 772, 776 (Colo. 1981) (en banc); Ringsby Truck Lines v. Bradfield, 563 P.2d 939, 942-43 (Colo. 1977) (en banc); Humble Oil & Refining Co. v. Martin, 222 S.W. 2nd 995, 1002 (Tex. 1949). See generally 42 C.J.S. Indemnity § 27b at 608 & n.37 (1944 & Supp. 1984).

n5 It is also possible that both PAM and the other defendants could be found liable for intentional misrepresentation, precluding contribution under Section 932(C), but the Court cannot dismiss a pleading on such a basis. See Section I, supra.

[*30]

D

In addition to their arguments concerning the substantive rules of contribution or indemnification, the cross- and third party defendants contend that even if successful, PAM cannot recover attorneys' fees incurred in defending this action and that any judgment rendered may only declare the rights of the parties in this action and not in "any action brought by a purchaser of a certificate of deposit in Penn Square Bank" in which PAM is adjudged liable, Jax, No. CIV 83-1583-W, Answer, Cross-Claim, and Third Party Claim, supra, P 87. With regard to the first contention, the Court reserves decision on the measure of contribution or indemnification; it is unnecessary to reach that issue until liability is determined. The second contention, though, is sound.

The Constitution only empowers the federal courts to adjudicate concrete "cases or controversies"; as such, they may not render advisory opinions. U.S. Const. art. III, § 2. E.g., Hayburn's Case 2 U.S. (2 Dall.) 409 (1796). See P. Bator, D. Shapiro, P. Mishkin, & H. Wechsler, Hart & Wechsler's The Federal Courts and The Federal System 120-49 (2d ed. 1973 & Supp. 1981); C. Wright, The Law of Federal [*31] Courts § 12 (4th ed. 1983). This principle applies with equal force to actions brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1982). E.g., Coffman v. Breeze Corp., 323 U.S. 316, 324-25 (1945). Aetna Life Insurance Co. v. Haworth, 300 U.S. 227 (1937). PAM's claim for a declaratory judgment of contribution or indemnification in this case is sufficiently definite and concrete to be justiciable, but as to "any other" case in which PAM may be found liable, its claim is manifestly hypothetical and must be dismissed. See e.g., Forty-Eight Insulations v. Johns-Manville Products, 472 F.Supp. 385 (N.D. Ill. 1979). But see, e.g., A C and S, Inc. v. Aetna Casualty and Surety Co., 666 F.2d 819, 822-23 (3d Cir. 1981) (declaratory judgment action regarding insurers' contractual duty to indemnify the plaintiff is justiciable).

V

In summary, the defendants' motions to dismiss in PAM are denied; the defendants' motions to dismiss in Jax are granted as to the plaintiffs' second and fourth claims, but denied as to their fifth claim; and the defendants' motions to dismiss PAM's cross- and third party complaints in Jax are [*32] denied, except as to the eighth claim (for contribution or indemnification), in which they are granted in part.

IT IS SO ORDERED this 5th day of July, 1984.

LEE R. WEST

United States District Judge