# EXHIBIT C

LEXSEE

BANK OF THE WEST, Plaintiff, vs. RESOLUTION TRUST CORPORATION, Defendant.

No. C 95-4708 FMS

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1997 U.S. Dist. LEXIS 1581

February 13, 1997, Decided
February 13, 1997, FILED, ENTERED IN CIVIL DOCKET

**DISPOSITION:** [*1] Defendant's motion for summary judgment GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff purchaser filed an action against defendant receiver seeking reimbursement of monies paid to defend an employment discrimination claim against the corporation that was bought by purchaser. The receiver filed a motion for summary judgment on the ground that there was no material issue of fact as to whether it was required to indemnify the purchaser for the underlying claim.

**OVERVIEW:** After the purchaser bought a corporation, it incurred expenses arising out of an underlying employment discrimination lawsuit against the corporation. The purchaser then sought indemnity from the receiver pursuant to the terms of an indemnity agreement. The receiver filed a motion for summary judgment. After considering extrinsic evidence to determine if the contract was ambiguous, the court held that summary judgment was proper because there were no genuine issues of material fact and that the receiver was entitled to judgment as a matter of law. The determination of whether the indemnity provisions were ambiguous was a question of law. After considering the extrinsic evidence offered by the purchaser, the court concluded that the indemnity provision was clear and unambiguous and that it excluded coverage for the employment discrimination claim against the corporation. The court noted that the parties dealt at arms length and were experienced in business and that the purchaser had the opportunity to make any changes to the agreement, but failed to do so.

**OUTCOME:** The court granted the receiver's motion for summary judgment and held that it was not required by contract to indemnify the purchaser for an underlying employment claim against the corporation.

**CORE TERMS:** indemnity agreement, indemnity, indemnify, personnel, summary judgment, extrinsic evidence, former employees, hire, unambiguous, proffered, transition, reasonably susceptible, intentional misconduct, course of dealing, ambiguous, gross negligence, transitional, dedicated, sophisticated, employment discrimination, exclusionary, declaration, purchasers, bid, federal district, matter of law, hired, genuine issue of material fact, evidence offered, mere existence

LexisNexis(R) Headnotes

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN1] To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed. R. Civ. P. 56(e). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, the moving party is entitled to a judgment as a matter of law.

Page 1

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN2] In opposing summary judgment, the nonmoving party is not entitled to rely on the allegations of his complaint. It must produce at least some significant probative evidence tending to support the complaint.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN3] A court does not make credibility determinations with respect to evidence offered and is required to draw all inferences in the light most favorable to the nonmoving party. Summary judgment is, therefore, not appropriate where contradictory inferences may reasonably be drawn from undisputed evidentiary facts.

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Contracts Law > Contract Conditions & Provisions > Indemnity*
*Contracts Law > Contract Interpretation > General Overview*
[HN4] The construction of a contract is controlled by state law and is a matter of law for the court to decide. An indemnity agreement is to be construed like any other contract with a view to determining the actual intention of the parties; no artificial rules of interpretation apply.

*Contracts Law > Contract Interpretation > Parol Evidence > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*
[HN5] The determination of whether a contract provision is ambiguous is a question of law. Parties to a contract in California can never draft a contract that is proof to parol evidence.

*Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*
[HN6] It is not up to the court to determine whether the language of a contract is on its face clear and unambiguous. Rather, in order to make a determination of ambiguity, the court must consider whether extrinsic evidence proffered is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. If the court determines that the language of the contract is reasonably susceptible to the meaning urged by one of the parties, the court must find that the contract is ambiguous, and summary judgment would be improper.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Contracts Law > Contract Interpretation > General Overview*
[HN7] Summary judgment is appropriate where the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. Thus, notwithstanding California's permissive approach to extrinsic evidence in contract interpretation, the mere existence of extrinsic evidence which could support one of the parties' proffered interpretation does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to that party's interpretation.

*Contracts Law > Contract Interpretation > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*
[HN8] On a motion for summary judgment regarding interpretation of a contract, California law dictates that the court must consider the evidence proffered by the nonmoving party to determine whether that language is reasonably susceptible to that party's interpretation and, thus, ambiguous.

*Commercial Law (UCC) > Sales (Article 2) > Form, Formation & Readjustment > Parol Evidence > Gap-Filler Provisions*
*Contracts Law > Contract Interpretation > Parol Evidence > General Overview*
[HN9] A single transaction cannot constitute a course of dealing.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > General Overview*

Page 2

*Contracts Law > Contract Interpretation > Parol Evidence > General Overview*
[HN10] The mere existence of extrinsic evidence supporting an alternative meaning does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to the nonmovant's proffered interpretation.

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Contracts Law > Contract Interpretation > General Overview*
[HN11] Where a contract is not reasonably susceptible to the interpretations advanced by the nonmoving party, a court may properly decide the moving party's motion for summary judgment.

**COUNSEL:** For BANK OF THE WEST, a California banking corporation, Plaintiff: Kenneth K. Kennedy, Jr., San Jose, CA.

For RESOLUTION TRUST CORPORATION, a Government corporation, defendant: Eugene Flemate, Catherine Torres Yoshii, Eugene Flemate Law Offices, San Jose, CA.

**JUDGES:** FERN M. SMITH, United States District Judge

**OPINION BY:** FERN M. SMITH

**OPINION:**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Introduction**

Defendant Resolution Trust Corporation ("defendant" or "RTC") n1 brings this motion for summary judgment on the grounds that there is no material issue of fact as to whether it was required to indemnify plaintiff Bank of the West ("plaintiff" or "BOW") for an underlying state court employment discrimination action.

> n1 The Federal Deposit Insurance Corporation, as successor to the RTC, actually brings this motion. Because the named defendant in the action is the RTC, however, the Court will refer throughout its order to the RTC.

**Background** n2

> n2 Unless otherwise indicated, the facts laid out in the background section are taken from the Joint Statement of Undisputed Facts In Support of Motion for Summary Judgment ("J.S."). The Court is aware of the considerable dispute between the parties as to whether or not plaintiff was permitted to introduce evidence in the form of declarations in support of its opposition to defendant's summary judgment motion. Because the Court resolves this motion in defendant's favor in spite of its consideration of the declarations submitted by plaintiff, it need not resolve the parties' dispute as to the propriety of plaintiff's submission of additional declarations outside of the Joint Statement of Undisputed Facts.

[*2]

**I. The Assumption Agreement**

On February 14, 1992, the RTC held a bid conference to solicit potential purchasers of the Atlantic Federal Savings Bank ("Atlantic") which was to go into RTC receivership; BOW representatives attended the conference. BOW and the other potential purchasers at the conference were provided with copies of the RTC Standard Purchase and Assumption Terms and Conditions ("1991 P & A Agreement"), the Core Branch Purchase and Assumption Agreement ("Core Agreement"), and the Indemnity Agreement ("Indemnity Agreement" or "Atlantic Indemnity Agreement"). BOW submitted a bid to purchase Atlantic around March 10, 1992 and was notified soon thereafter that its bid had been accepted.

On April 10, 1992, the RTC and BOW executed the Core Agreement -- which incorporates by reference the terms of the 1991 P & A Agreement -- and the Indemnity Agreement. (Core Agreement, J.S. Ex. B at 1.) n3 On that same day, the RTC was appointed as receiver to Atlantic. Also on April 10, 1992, the RTC advised all Atlantic employees that their employment with Atlantic was terminated effective April 10, 1992.

> n3 On April 6, 1992, Pillsbury, Madison & Sutro, BOW's counsel in connection with the Atlantic purchase agreement, sent a letter to the RTC indicating that it had reviewed the terms of the 1991 P & A Agreement and the Indemnity Agreement. (J.S. Ex. D.)

[*3]

**II. The Transitional Employees**

On April 10, 1992 and April 13, 1992, respectively, Kara Hanks ("Hanks"), Jeanine Hansen ("Hansen"), Deane Bagnall ("Bagnall"), and Betty Chapman ("Chapman"), all executed documents entitled "transitional agreement" and "employment agreement." (J.S. Exs. E-H.) On May 8, 1992, BOW closed or consolidated nine of the 11 former Atlantic branches located in northern California. Also on May 8, 1992, BOW sent letters to Hanks, Hansen, Bagnall, and Chapman informing them that their status as transitional employees had terminated and that they would be laid off at close of business on May 8, 1992. (J.S. Ex. I.)

### III. The Underlying Actions

#### A. The Prior Northern District of California Case

On June 4, 1993, Hanks, Hansen, Bagnall, Chapman, and Kathryn Metcalfe ("Metcalfe") n4 (collectively "the underlying plaintiffs") filed a complaint in the United States District Court for the Northern District of California (the "prior federal district court action"). n5 That action was dismissed by the district court for Northern District of California for lack of subject matter jurisdiction on October 7, 1994.

   n4 Metcalfe had been on maternity leave as of April 10, 1992 and was not hired by BOW as a transitional or permanent employee.
[*4]

   n5 That case was entitled Kathryn Metcalfe, Kara Hanks, Jeanine Hansen, Deane Bagnall and Betty Chapman v. Bank of the West, Banque Nationale De Paris, Resolution Trust Corporation, John Dickey, Willard Roberts and Does 1 through 300, C-93-2122 (VRW).

#### B. The Superior Court Action

On October 13, 1994, the underlying plaintiffs filed a complaint in the Superior Court for the County of San Francisco (the "Metcalfe action" or the "Superior Court action"). That action alleged that BOW discriminated against the underlying plaintiffs in violation of the California Fair Employment and Housing Act ("FEHA") and California public policy, that BOW had breached implied employment contracts, and that BOW had wrongfully discharged the underlying plaintiffs. (J.S. Ex. O.) The Superior Court action was eventually settled for $ 110,000. (J.S. Ex. P.)

#### C. This Action

BOW then filed this action on December 29, 1995 seeking reimbursement of the $ 110,000 paid to settle the Metcalfe action plus attorneys' fees of $ 286,639 and costs of $ 49,932 which BOW incurred in defending itself in the [*5] prior federal district court action and in the Superior Court action. BOW argues that the RTC was obligated to indemnify BOW in those actions pursuant to the terms of the Indemnity Agreement executed as part of BOW's purchase of Atlantic in April 1992.

The RTC contends in this motion for summary judgment that the Court can determine as a matter of law that it is not required to indemnify BOW for any of the fees or costs BOW incurred in defending itself in or settling the underlying actions.

### Discussion

### I. Legal Standards

#### A. Summary Judgment

[HN1] To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed. R. Civ. P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled [*6] to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

[HN2] In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. It "must produce at least some 'significant probative evidence tending to support the complaint.'" T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).

[HN3] The Court does not make credibility determinations with respect to evidence offered and is required to draw all inferences in the light most favorable to the non-moving party. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts . . . ." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

1997 U.S. Dist. LEXIS 1581, *

### B. Contract Interpretation [*7]

This case requires the Court to review and interpret the terms of a contract, the Indemnity Agreement. [HN4] The construction of a contract is controlled by California law, In re Aslan, 909 F.2d 367, 369 (9th Cir. 1990), and is a matter of law for the Court to decide. United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). "An indemnity agreement is to be construed like any other contract with a view to determining the actual intention of the parties; no artificial rules of interpretation apply." Southern Cal. Gas Co. v. Ventura Pipe Line Construction Co., 150 Cal. App. 2d 253, 309 P.2d 849, 851 (Cal. Ct. App. 1957).

[HN5] The determination of whether a contract provision is ambiguous is also a question of law. Han v. Mobil Oil Corp., 73 F.3d 872, 877 (9th Cir. 1995). Both parties spend much time debating the proper standard the Court should use in determining whether the contract provisions at issue in this case are ambiguous and also whether the Court should admit extrinsic evidence in order to explain or supplement the contract terms. These questions are not easily answered under California law. As the Ninth Circuit has explained, "somewhat [*8] surprisingly," parties to a contract in California can never "draft a contract that is proof to parol evidence." Trident Center v. Connecticut Gen. Life Ins., 847 F.2d 564, 565 (9th Cir. 1988).

[HN6] It is not up to the Court to determine whether the language of the contract is on its face clear and unambiguous. Rather, in order to make a determination of ambiguity, the Court must consider whether extrinsic evidence proffered by plaintiff is relevant to "prove a meaning to which the language of the instrument is reasonably susceptible." Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 442 P.2d 641, 644, 69 Cal. Rptr. 561 (Cal. 1968). If the Court determines that the language of the contract is reasonably susceptible to the meaning urged by plaintiff, the Court must find that the contract is ambiguous, and summary judgment would be improper. See Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 856 (9th Cir.), cert. denied, 133 L. Ed. 2d 111, 116 S. Ct. 170 (1995); Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 898 (9th Cir. 1993).

If, after considering the evidence offered by plaintiff, however, the Court determines that the Indemnity Agreement [*9] is not reasonably susceptible to the interpretation urged by plaintiff, the parol evidence rule operates to exclude consideration of the evidence proffered by plaintiff. A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., 852 F.2d 493, 496 n.2 (9th Cir. 1988) (citing Trident Center, 847 F.2d at 570 n.6). At that point, having found that the contract is not ambiguous, the Court can decide the case on a motion for summary judgment. A. Kemp Fisheries, 852 F.2d at 496 n.2; see also United States v. King Features Entertainment, Inc., 843 F.2d 394, 398 (9th Cir. 1988) [HN7] ("Summary judgment is appropriate where the contract terms are clear and unambiguous, even if the parties disagree as to their meaning."). Thus, notwithstanding California's "permissive approach to extrinsic evidence in contract interpretation," the mere existence of extrinsic evidence which could support plaintiff's proffered interpretation "does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to [plaintiff's] interpretation." Barris Industries, Inc. v. Worldvision Enters., Inc., 875 F.2d 1446, 1450 (9th Cir. 1989) (citing Trident Center, [*10] 847 F.2d at 570 n.6).

## II. Analysis

### A. The Disputed Contract Provisions

Section 2.1 of the Indemnity Agreement provides, in relevant part, as follows:

> The [RTC] shall indemnify and hold harmless [BOW] against any and all Costs actually and reasonably incurred by [BOW] in connection with any and all claims based upon any of the following:
>
> (a) any liability of the Failed Institution [i.e., Atlantic] not assumed by [BOW] pursuant to the Purchase and Assumption Agreement on or after Association Closing; . . .
>
> (c) any act or omission of [BOW] on behalf of the [RTC] which is taken or omitted upon the specific written direction of the [RTC].

(J.S. Ex. C at 5.)

Section 2.3 of the Indemnity Agreement lays out the specific exclusions to the general indemnity provision quoted above and provides, in relevant part:

> Notwithstanding anything to the contrary contained in this Agreement, no indemnification shall be provided hereunder to [BOW] for any claims or potential claims

1997 U.S. Dist. LEXIS 1581, *

> based upon, arising out of or relating to any of the following:
>
> ...
>
>> (b) any gross negligence or intentional misconduct of [BOW] ... ;
>>
>> (c) any [*11] violation by [BOW] of any laws of the United States of America or any state thereof ....

(J.S. Ex. C at 8.)

### B. The Proffered Interpretations

Defendant's argument is two-fold: first, defendant argues that the exclusionary provisions in section 2.3 of the Indemnity Agreement are clear and unambiguous and apply to the claims asserted against BOW in the underlying action. Second, defendant argues that regardless of the exclusionary provisions, BOW's demand for indemnity does not fall under the general indemnity provisions laid out in section 2.1 of the Indemnity Agreement.

Plaintiff's response, in turn, is also two-fold: first, plaintiff argues that the Court should interpret the exclusionary provisions of the contract according to the parties' intentions. According to plaintiff, the parties intended that defendant would indemnify plaintiff for claims such as those at issue in this action. Second, plaintiff argues that its claims are covered by the general indemnity provisions laid out in section 2.1 of the Indemnity Agreement.

#### 1. The Exclusions

Defendant argues that the claims in the underlying federal and state court actions, for which plaintiff seeks [*12] indemnity in this action, are clearly excluded pursuant to section 2.3(b) and (c) of the Indemnity Agreement. The second amended complaint in the prior federal court action alleged claims against BOW for employment discrimination in violation of federal and state statutory law and state public policy, as well as breach of contract and wrongful termination. The underlying plaintiffs also alleged that BOW had acted with "oppression, fraud or malice, and/or . . . in conscious disregard for plaintiff's rights." (J.S. Ex. M.) The underlying plaintiffs' complaint in the Superior Court action alleged similar claims against BOW, although the underlying plaintiffs dropped the federal claims in that action. (J.S. Ex. O.)

Defendant argues that these claims were based on "intentional misconduct, or at the very least, gross negligence" on the part of BOW, both of which would be excluded by the plain language of section 2.3(b) of the Indemnity Agreement. (Def.'s Memo. at 6.) Further, argues defendant, the claims were based on violations of federal and state antidiscrimination laws and thus are specifically excluded pursuant to section 2.3(c) of the Indemnity Agreement. Were the Court guided only [*13] by the written language of the contract, the Court would agree with defendant that BOW's tendered claim falls squarely within the exclusions laid out in the Indemnity Agreement. (Def.'s Memo at 7.)

The exclusionary language is clear and unambiguous. Nonetheless, [HN8] California law dictates that the Court must consider the evidence proffered by plaintiff to determine whether that language is reasonably susceptible to plaintiff's interpretation and thus ambiguous. See Sicor Ltd., 51 F.3d at 856. Plaintiff argues that, notwithstanding the contract language, the parties intended that the RTC would indemnify BOW for just the sort of claims at issue here. In support of this argument, plaintiff asks the Court to consider evidence of a completely separate and prior contract between these two parties and their course of dealing under that contract.

The separate contract involved BOW's April 19, 1991 purchase of the Imperial Federal Savings Bank ("Imperial") from the RTC. In connection with that purchase, the RTC and BOW entered into a Purchase and Assumption Agreement (the "Imperial Agreement") and an Indemnity Agreement (the "Imperial Indemnity Agreement"), the latter of which contained [*14] different provisions from the Indemnity Agreement relevant to the Atlantic purchase. Specifically, the general indemnity section of the Imperial Indemnity Agreement provides that the RTC will indemnify BOW for "liabilities of the Failed Institution that are not assumed by [BOW], including, but not limited to,"

>> (3) any and all claims based upon the rights of any employee or former director, officer, employee or agent as such of the Failed Institution. ...
>>
>> (7) any and all claims based upon any action or inaction of BOW] which is (1) taken upon the specific written direction or approval of the [RTC].

(Imperial Indemnity Agreement, Declaration of Stephen Glenn ("Glenn Decl.") Ex. A at 4-6.) Nowhere in the Indemnity Agreement relevant to BOW's purchase of Atlantic is there any language similar to that found in section (3) quoted directly above.

Page 6

Plaintiff also claims that at an April 7, 1992 conference, Stephen Glenn, one of BOW's lawyers, asked the RTC "whether the indemnity arrangement regarding Atlantic was the same as that for Imperial" and that the RTC informed Glenn "that it was." (Glenn Decl. P 9.) Plaintiff apparently attempts to rely on this statement [*15] as evidence that the parties intended the two indemnity agreements to be interpreted in the same manner, even though the Imperial Agreement contains an express provision for indemnity in the event of any claims by former employees of Imperial, a clause not contained in the Atlantic Indemnity Agreement.

Plaintiff next argues that the Court should consider the course of dealing between BOW and the RTC surrounding a wrongful termination and employment discrimination suit brought against the RTC and BOW by one of Imperial's former employees. n6 On December 14, 1992, the RTC informed BOW that it would provide indemnity for BOW's defense of the Hylton action. (Pl.'s Memo at 12; Zillman Decl. Exs. B & C.) BOW argues that because the RTC agreed to indemnify BOW for the Hylton action, which also involved claims of intentional misconduct and violations of the law on the part of BOW, and because the language in the two relevant indemnity agreements is "virtually identical," the Court should apply the doctrine of practical construction and find that the parties intended that the RTC would indemnify BOW for the claims involved in the Metcalfe action. The Court disagrees for several [*16] reasons.

> n6 That action, Richard G. B. Hylton, et al. v. Resolution Trust Corp., et al., C 92-963 H (BTM) (the "Hylton action"), was filed on June 25, 1992 in the federal district court for the Southern District of California. (Hylton Complaint, Declaration of William L. Zillman ("Zillman Decl.") Ex. A.)

First, the language contained in the two indemnity agreements, while similar in many respects, contains several crucial differences. The Imperial Indemnity Agreement specifically provides that the RTC will indemnify BOW for any and all claims "based upon the rights of" any former employee of Imperial; the Hylton action involved such claims. The Atlantic Indemnity Agreement, in contrast, does not contain any language suggesting that the RTC will indemnify BOW for all claims based upon the right of former Atlantic employees.

Another significant difference is that the Imperial Indemnity Agreement provides that "notwithstanding anything to the contrary contained herein," the RTC will not indemnify BOW [*17] for claims based on gross negligence or intentional misconduct. (Glenn Decl. Ex. A at 7.) The "notwithstanding anything to the contrary language" does not qualify the exclusion of indemnity for claims based on BOW's violations of federal or state law in the Imperial Indemnity Agreement. Id. The "notwithstanding anything to the contrary" language in the Atlantic Indemnity Agreement, however, applies to both the exclusion for gross negligence and intentional misconduct and the exclusion for violations of law. Thus, not only does the Imperial Indemnity Agreement contain an explicit provision of indemnity for the claims in the Hylton action, but it also does not exempt from indemnity claims by former employees against BOW for BOW's alleged violations of the law.

Second, although plaintiff requests that the Court consider the RTC's conditional agreement to indemnify BOW for the Hylton action as evidence of what the parties intended the Atlantic Indemnity Agreement to cover, the RTC did not notify BOW that it would provide indemnity for the Hylton action until December 1992, seven months after BOW and the RTC executed the Atlantic Indemnity Agreement. The Court declines [*18] to find that the RTC's subsequent actions established a course of conduct relevant to the parties' understanding of the Atlantic contract at the time the parties entered into the Atlantic contract.

Third, plaintiff asks the Court to find a course of conduct based on the RTC's single conditional decision to indemnify BOW for the Hylton action. (Zillman Decl. Ex. C.) As explained by the Ninth Circuit, however, [HN9] "'[a] single transaction cannot constitute a course of dealing.'" Kern Oil and Refining Co. v. Tenneco Oil Co., 792 F.2d 1380, 1385 (9th Cir. 1986) (quoting International Therapeutics, Inc. v. McGraw-Edison Co., 721 F.2d 488, 491 (5th Cir. 1983)). Although the issue in that case involved the term "course of dealing" in the Texas Uniform Commercial Code, the Court believes that the proposition applies equally to the issue in this case: the RTC's single and subsequent decision, pursuant to a separate and differently worded contract, to indemnify BOW for claims similar to those for which BOW seeks indemnity in this case does not establish a course of dealing between these two parties as to BOW's purchase of Atlantic. n7

> n7 For similar reasons, the Court finds the documents submitted as exhibits to Kenneth K. Kennedy's Declaration ("Kennedy Decl.") irrelevant to the meaning of the indemnity provisions in the Atlantic Indemnity Agreement. Those documents refer to the RTC's indemnity agreements as revised January 23, 1992. The contract at issue in this case was the 1991 version of the RTC's indemnity agreement. Plaintiff asks the

Court to deny or continue defendant's motion so that plaintiff can engage in a fishing expedition to see if "similar policies or explanatory material may exist with respect to the proper interpretation of the 1991 Indemnity Agreement." (Kennedy Decl. at 2-3.) Plaintiff's request in denied.

[*19]

Fourth and finally, the Court is entitled to consider in its analysis of the contract provisions the circumstances surrounding the Atlantic purchase, including that both parties were sophisticated actors who dealt at arms length. See Pacific Gas & Elec., 442 P.2d at 645; Crestview Cemetery Ass'n v. Dieden, 54 Cal. 2d 744, 356 P.2d 171, 176, 8 Cal. Rptr. 427 (Cal. 1960) (noting that court must keep in mind that parties were not novices or inexperienced but were both practicing attorneys); Marani v. Jackson, 183 Cal. App. 3d 695, 228 Cal. Rptr. 518, 523 (Cal. Ct. App. 1986) (same). Additionally, BOW engaged sophisticated outside counsel to advise it on the Atlantic purchase. (J.S. Ex. D.)

Although plaintiff now claims that the need for an indemnity agreement to protect it from claims associated with the layoffs at issue here "was of paramount importance" such that plaintiff would not had entered the Atlantic contract if it intended that contract to exclude indemnity for such claims, the Court is not convinced. The Atlantic Indemnity Agreement contains substantially different language from the Imperial Indemnity Agreement. If BOW believed it was truly of such paramount importance [*20] to be protected against claims such as those at issue, BOW would likely have done more than ask the RTC one vague question about whether the two indemnity agreements were the same. See Marani, 228 Cal. Rptr. at 523 (finding that trial court erred in admitting evidence to modify the written contract where both parties were sophisticated actors and "the asserted unique nature and special importance of [the property at issue] . . . make it even more likely that the parties would have memorialized any additional or collateral understanding in the . . . Contract.").

The Court finds that the extrinsic evidence proffered by plaintiff is not relevant to prove a meaning to which the Atlantic Indemnity Agreement is reasonably susceptible. See Pacific Gas & Elec., 442 P.2d at 644. That agreement is clear and unambiguous. It specifically excludes indemnity for claims based on gross negligence and intentional misconduct and for claims based on violation of federal and state law. It specifically does not include a provision stating that the RTC will indemnify BOW for any claims based upon the rights of Atlantic's former employees.

**2. The General Indemnity Provisions**

Plaintiff [*21] puts forth two arguments that the claims involved in the Metcalfe action fall under the general indemnity provisions of the Atlantic Indemnity Agreement.

First, plaintiff argues that "it cannot reasonably be contended that claims based upon the rights of former employees of the Failed Institution do not constitute a 'liability of the Failed Institution not assumed by [BOW] pursuant to the Purchase and Assumption Agreement.'" (Pl.'s Memo. at 21.) Plaintiff argues that the claims in the Metcalfe action are covered by section 2.1(a) of the Indemnity Agreement. The Court disagrees. The claims asserted against BOW by the underlying plaintiffs are claims of employment discrimination by BOW, not by Atlantic or the RTC. (Superior Court Complaint, J.S. Ex. O.) Those claims do not constitute a liability of Atlantic and are not covered by section 2.1(a) of the Indemnity Agreement. (Indemnity Agreement, J.S. Ex. C at 5.) Nor is the Court persuaded by plaintiff's reliance on the Imperial Indemnity Agreement, which explicitly provides that the RTC will indemnify BOW for any claims based upon the rights of former Imperial employees, a provision not included in the Atlantic Indemnity Agreement. [*22]

Second, plaintiff argues that "it also cannot be denied that the P & A Agreement constituted a 'written direction of the Receiver' requiring BOW to enter into employment relationships with former employees of Atlantic, which it would not have entered into otherwise, and to terminate those employment relationships within a short period." (Pl.'s Memo at 21-22.) Plaintiff contends that, as such, the claims in the Metcalfe action are covered by section 2.1(c) of the Indemnity Agreement which provides that the RTC will indemnify BOW for any act or omission by BOW "which is taken or omitted upon the specific written direction" of the RTC. (Indemnity Agreement, J.S. Ex. C at 5.)

In support of this argument, plaintiff points the Court to a February 11, 1993 letter from the RTC's counsel to BOW's counsel which discusses the transitional or RTC-dedicated employees BOW hired during the transition period and states, in reference to section 9.3 of the 1991 P & A Agreement, that "Bank of the West was required to hire . . . certain other former employees of [Atlantic]." (Zillman Decl. Ex. E at 1.) Plaintiff implies that this letter gives new meaning to the clear language found in section [*23] 9.3 of the 1991 P & A Agreement. Section 9.3 of the 1991 P & A Agreement, however, unambiguously lays out the procedures by which BOW was to hire the dedicated and transitional employees both BOW and the RTC needed to "provide a smooth transition" to BOW's management of Atlantic. (1991 P & A Agreement, J.S. Ex. A at 53.) Section 9.3(a) discusses dedicated personnel and states that BOW "shall hire directly or contract through a temporary employment agency . . .

such employees ("Dedicated Personnel") (who may be either former employees of the Failed Institution or other personnel) as the [RTC] may require in the discharge of its functions during the Transition Period.." Id. (emphasis added). Section 9.3(b) discusses transition personnel and contains the same language as that underscored directly above. n8 Finally, plaintiff admits that at the first conference at which the RTC solicited bids from potential purchasers of Atlantic, all such purchasers were provided with a document which specifically provides that "all employees of the Failed Institution are fired by the RTC. The acquiror has no obligation to hire any employees." (Pl.'s Memo at 4; Declaration of Douglas C. [*24] Grigsby ("Grigsby Decl.") Ex. D at 4 (emphasis added).)

> n8 The Court also notes that section 9.3(c), which discusses the salary to be paid to transition or dedicated personnel, states that such personnel "shall be paid the same base salary or wage such personnel were paid by the Failed Association immediately prior to Association Closing (or, if such personnel were not employed by the Failed Association, the same base salary or wage personnel providing the same or similar services were paid by the Failed Association)." (1991 P & A Agreement, J.S. Ex. A at 54 (emphasis added).)

The Court disagrees that section 9.3 of the 1991 P & A Agreement constituted specific written direction by the RTC to hire former Atlantic personnel thus bringing BOW's hiring of such personnel within section 2.1(c) of the Indemnity Agreement. Plaintiff, a sophisticated party, was made aware throughout the 1991 P & A Agreement and the explanatory document it received at the February 14, 1992 conference that, while it may have been required [*25] to hire transition and dedicated personnel, it was not required to hire former Atlantic employees as those personnel. The February 11, 1993 letter, written a year later, does not convince the Court otherwise. An alternative explanation is that the letter merely describes, after the fact, what actually happened in this case, which was that the transition personnel hired by BOW were former Atlantic employees. [HN10] "The mere existence of extrinsic evidence supporting an alternative meaning does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to the non-movant's proffered interpretation." Barris Industries, 875 F.2d at 1450 (citing Trident Center, 847 F.2d at 570 n.6).

Plaintiff provides no relevant evidence to convince the Court that defendant gave it specific written direction to enter into an employment relationship with the underlying plaintiffs or that the RTC gave it specific written direction to fire such employees. Absent any such evidence, and presented with unambiguous language in the 1991 P & A Agreement which states that BOW may hire either former Atlantic employees or other personnel as transition and dedicated [*26] personnel, the Court does not find that the underlying plaintiffs' claims fall under section 2.1(c) of the Indemnity Agreement. n9

> n9 The Court did not find any more convincing the self-serving language contained in the settlement agreements entered into by BOW and the Metcalfe plaintiffs which suggests that those plaintiffs were mistaken and confused about "who [their] employer was." (J.S. Ex. P.)

### C. The Court's Findings

After careful consideration of the extrinsic evidence proffered by plaintiff, the Court finds that the contract terms at issue in this case are clear and unambiguous, even though the parties might disagree as to their meaning. [HN11] Because the contract is not reasonably susceptible to the interpretations advanced by plaintiff, the Court may properly decide defendant's motion for summary judgment. See A. Kemp Fisheries, 852 F.2d at 496 n.2 (citing Trident Center, 847 F.2d at 570 n.6); King Features Entertainment, 843 F.2d at 398.

The Court finds that the claims involved in [*27] the underlying federal and Superior Court actions are excluded by the clear and unambiguous exclusionary provisions in the Atlantic Indemnity Agreement. Further, the Court finds that such claims are not covered by the general indemnity provisions of the Indemnity Agreement. Because there is no genuine issue of material fact as to whether defendant has to indemnify plaintiff under the Indemnity Agreement, summary judgment in favor of defendant is proper.

Although the Court is sympathetic to BOW's equitable arguments, the time for BOW to protect itself against this outcome was at the time it contracted with the RTC to purchase Atlantic; Bow should not expect the Court to provide that protection in hindsight.

### Conclusion

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.

SO ORDERED.

Dated: February 13, 1997

FERN M. SMITH

United States District Judge

JUDGMENT

1997 U.S. Dist. LEXIS 1581, *

For the reasons stated in the accompanying order, JUDGMENT is hereby entered in favor of defendant and against plaintiff. The Clerk of the Court shall close the file.

SO ORDERED.

Dated: February 13, 1997

FERN M. SMITH

United States District Judge