MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone:  (801) 534-1700
Facsimile:  (801) 364-7697

**Attorneys for Novell, Inc.**

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>     Plaintiff and Counterclaim-<br>     Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>     Defendant and Counterclaim-<br>     Plaintiff. | **NOVELL'S EVIDENTIARY OBJECTIONS TO SCO'S SUMMARY JUDGMENT EXHIBITS**<br><br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Dockets.Justia.com

**INTRODUCTION**

Defendant and Counterclaim-Plaintiff Novell, Inc. ("Novell") hereby objects to and requests the Court to strike and disregard for all purposes the following evidence presented by Plaintiff and Counterclaim-Defendant The SCO Group, Inc. ("SCO") in its Motion and Memorandum in Opposition to Novell's Motion for Partial Summary Judgment on its Fourth Claim for Relief, and in Support of SCO's Cross Motion for Partial Summary Judgment, PACER Nos. 213, 224 ("1/17/07 Cross Motion"), its Reply in Support of its 1/17/07 Cross Motion ("3/19/07 Reply"), and its Motion and Memorandum in Support of its Motion for Partial Summary Judgment on its First, Second, and Fifth Causes of Action, and for Summary Judgment on Novell's Fifth Counterclaim, PACER Nos. 258-59 ("4/9/07 Motion").  Novell's objections are based on five grounds: inadmissible parol evidence, lack of personal knowledge, hearsay, the best evidence rule, and improper authentication:

  a.   **Inadmissible Parol Evidence**.  The parol evidence rule is a substantive rule of law that functions to exclude evidence contradicting the terms of an integrated agreement.  *EPA Real Estate P'ship v. Kang*, 12 Cal. App. 4th 171, 175-76 (1992) ("extrinsic evidence is admissible only to supplement or explain the terms of the [integrated] agreement – and even then, ***only where such evidence is consistent with the terms of the integrated document***.") (emphasis added).  Under the governing California contract law, all extrinsic evidence introduced by SCO to contradict the plain language of the APA and its Amendments is legally irrelevant to the determination of this action.  *Id.* ("according to this substantive rule of law, when the parties intend a written agreement to be the final and complete

1

expression of their understanding, that writing becomes the final contract between the parties, which may not be contradicted by even the most persuasive evidence of collateral agreements. Such evidence is legally irrelevant"). This includes "testimony of intention." *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 267, 273, 278 (1987). As explained in Novell's summary judgment briefing, Novell objects to each of SCO's proffered exhibits on the grounds that it is inadmissible extrinsic evidence contrary to the express terms of an integrated contract. *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392 (2006) (affirming summary judgment on wrongful termination claim because letter agreement that employment was "at will" and could be terminated "at any time" could not reasonably be interpreted as allowing termination for cause only, and hence contrary extrinsic evidence did not create a triable issue of fact); *EPA Real Estate P'ship*, 12 Cal. App. 4th at 176-77; Memorandum in Support of Novell's Opposition to SCO's Motion for Partial Summary Judgment on SCO's First, Second, and Fifth Causes of Action and for Summary Judgment on Novell's First Counterclaim (Copyright Ownership), PACER No. 292 at 36-38; Novell's Opposition to SCO's 1/17/07 Cross Motion, PACER No. 242; Novell's Memorandum and Reply in Support of its Motion for Partial Summary Judgment on its Fourth Claim for Relief, PACER Nos. 175, 237.[1]

---

[1]Moreover, under the Federal Rules, evidence is relevant only if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Because

(Footnote continues on next page.)

b.    **Lack of Personal Knowledge**.  Admissible evidence must be based on a

witness's personal knowledge.  Fed. R. Evid. 602; Fed. R. Civ. Proc. 56(e)

("supporting and opposing affidavits shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein");

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir.

2006) (upholding trial court's refusal to consider portions of a declaration lacking

personal knowledge, stating "[u]nder the personal knowledge standard, an

affidavit is inadmissible if the witness could not have actually perceived or

observed that which he testifies to . . . Accordingly, at the summary judgment

stage, 'statements of mere belief' in an affidavit must be disregarded") (citing

*United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997), *Tavery v. United*

*States,* 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (internal quotations omitted));

*Noblett v. Gen. Elec. Credit Corp*., 400 F.2d 442, 445 (10th Cir. 1968) (pursuant

to Rule 56(e), affidavits must be made on the personal knowledge of the affiant

and must show that the affiant possess the knowledge asserted).  The same

personal knowledge requirement applies to deposition testimony and other forms

of evidence approved for use on summary judgment by Rule 56(c).  *Greyhound*

_____

(Footnote continued from previous page.)

California contract law renders the proffered extrinsic evidence of "no consequence" to the
determination of the action, such evidence should be excluded under Federal Rules of Evidence
401 and 402.

*Fin. Corp. v. Willyard*, 1989 U.S. Dist. LEXIS 16040 (D. Utah 1989).[2]  District courts should disregard a declaration that is contrary to a deposition statement "when they conclude that [the declaration] constitutes an attempt to create a sham fact issue."  *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).  In addition, a lay witness may only testify as to matters which he or she is competent to testify.  Fed. R. Evid. 701.  Thus, a lay witness may not testify as to matters which call for a legal conclusion, such as the interpretation and effect of a contract or an amendment thereto.  *See, e.g., Evangelista v. Inland Boatmen's Union of Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (in action by union member against union alleging breach of duty of fair representation, opinion of union chairman as to correct construction of collective bargaining agreement's grievance procedure was inadmissible because it was legal conclusion).

c.    **Hearsay**.  Evidence may not be considered if it contains or is based on hearsay.  Fed. R. Evid. 802; *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.  Hearsay testimony cannot be considered because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill'") (citations omitted).  The hearsay objections made throughout Novell's Evidentiary Objections to SCO's Summary Judgment Exhibits are based both on witnesses'

---

[2] Pursuant to DUCivR 7-2, a copy of *Greyhound Fin. Corp. v. Willyard* is attached hereto as Exhibit A.

4

recital of out-of-court statements, and witness testimony based on inadmissible

hearsay (including testimony based on statements in out-of-court documents and

agreements).  *See, e.g., United States v. Brown*, 548 F. 2d , 1194, 1205 (5th Cir.

1977) (excluding as based on hearsay IRS agent's testimony that she had audited

160 tax returns prepared by defendant and that 90 or 95 percent of them contained

overstated deductions, stating "a clearer case of hearsay testimony would be

difficult to imagine").

d.    **Best Evidence Rule**.  "To prove the content of a writing . . . the original

writing . . . is required, except as otherwise provided in these rules or by Act of

Congress."  Fed. R. Evid. 1002.  *R & R Assoc. v. Visual Scene, Inc.*, 726 F.2d 36,

38 (1st Cir. 1984) ("Rule 1002 applies not when a piece of evidence sought to be

introduced has been somewhere recorded in writing but when it is that written

record itself that the party seeks to prove").  Here, SCO has offered testimony that

purports to recite the contents of the APA, its Amendments, and UNIX licensing

agreements, but which does not accurately recite the contents of those

agreements.  This testimony should be excluded because the agreements

themselves are the best evidence of their contents.

e.    **Improper Authentication**.  Federal Rule of Evidence 901 states that

authentication must be "satisfied by evidence sufficient to support a finding that

the matter in question is what its proponent claims."  Unsigned, undated

declarations fail to satisfy the authentication requirements of Rule 901, or the
self-authenticating provisions of Rule 902.[3]

### OBJECTIONS

1.    **11/9/06 Declaration of R. Duff Thompson**, submitted as Exhibit 1 to the
Declaration of Brent O. Hatch, PACER No. 184 ("Hatch Decl."), and Exhibit 10 to the
Declaration of Edward Normand in Support of SCO's 4/9/07 Motion ("Normand Decl."),
PACER No. 260, and the **2/13/07 Deposition Transcript of R. Duff Thompson**, submitted as
Exhibit 3 to the Declaration of Mark F. James in Support of SCO's 3/19/07 Reply, filed in
conjunction with PACER Nos. 247, 251 ("James Decl."), and Exhibit 11 to the Normand Decl.,
on the following grounds:

      a.      Inadmissible parol evidence.  Mr. Thompson's testimony seeks to
contradict the APA's express exclusion of "all copyrights," as well as its
express inclusion of broad rights for Novell under § 4.16, and is
therefore legally irrelevant and inadmissible under the parol evidence
rule and the Federal Rules of Evidence.

---

[3] In addition, Novell objects to each of SCO's proffered deposition excerpts on the
grounds that they are improperly authenticated, and cannot be considered on summary judgment.
Specifically, SCO failed to include any reporter's certification on the deposition transcript
excerpts, and therefore has not properly authenticated those exhibits.  "A deposition or an extract
therefrom is authenticated in a motion for summary judgment when it identifies the names of the
deponent and the action and includes the reporter's certification that the deposition is a true
record of the testimony of the deponent."  *Broadband Mgmt. Solutions, LLC v. Dish Network
Serv., L.L.C.*, 2006 U.S. Dist. LEXIS 8695 (D. Colo. 2006) (citations omitted); Fed. R. Evid.
901.  Pursuant to DUCivR 7-2, a copy of *Broadband Mgmt. Solutions* is attached hereto as
Exhibit B.

b.      Lack of personal knowledge.  (Exhibit 1, ¶¶ 5-13; Exhibit 11 at 132-33).

Mr. Thompson was not involved in drafting the relevant portions of the

APA.  The individuals involved in drafting the intellectual property

provisions of the APA were Tor Braham, Aaron Alter, and Shannon

Whisenant of Wilson Sonsini Goodrich & Rosati for Novell.

(Declaration of Tor Braham ("Braham Decl."), PACER No. 281, ¶ 5;

Supplemental Declaration of Kenneth Brakebill ("Supp. Brakebill

Decl."), PACER No. 296, Ex. 28, Alter 30(b)(6) Dep. 8:2-9:15).  For

Santa Cruz, Jeff Higgins of Brobeck Phleger & Harrison was the

recipient of drafts of Schedules 1.1(a) and 1.1(b), listing intellectual

property to be included and excluded from the transfer of assets, which

were sent to Santa Cruz by Novell.  (Supp. Brakebill Decl., Ex. 29).

Braham, Alter, Whisenant, and Higgins were all on the "Project Sleigh

Ride Working Party List," which listed persons to whom drafts of the

APA were circulated.  (Supp. Brakebill Decl., Ex. 30; Supp. Brakebill

Decl., Ex. 31, Chatlos Dep. 101:10-12)  Yet throughout

Mr. Thompson's proffered testimony, and without foundation, he offers

inadmissible speculation as to the responsibilities, actions, and intentions

of various third parties regarding the APA and its Amendments,

including Ed Chatlos, Michael DeFazio, Greg Jones, Santa Cruz, and

Novell.  For example, Mr. Thompson speculates without foundation that

"I believe [the deal] included the bundle of the copyrights, at the time."

7

In reality, however, Thompson admits that he had no involvement in drafting the contract that effectuated the sale:

> Q.  By the time of the asset purchase agreement you are no longer in a legal function?
>
> A.  No.  That's correct.
>
> Q.  And so this -- and so in the -- when you were involved in the asset purchase agreement negotiations, who were you relying on for the detailed drafting of the agreement?
>
> A.  Our counsel, Wilson Sonsini.
>
> Q.  Tor Braham in particular?
>
> A.  Tor and his team . . . .  [H]e had people within his firm who were specialists in these items that were probably doing the bulk of the actual drafting.

(Supp. Brakebill Decl., Ex. 27, Thompson Dep. 30:22-31:12).  Thompson did not recall participating in "any specific discussions around copyrights" or any "discussion with SCO about the excluded asset schedule" during negotiation of the deal.  (*Id*. 86:1-20).  Tor Braham confirms that Thompson "was not involved in negotiating or drafting the APA contract language."  (Braham Decl. ¶ 24(a)).  Ty Mattingly testified that Thompson was "not really involved in the details of the Novell, Santa Cruz transaction."  (Supp. Brakebill Decl., Ex. 33, Mattingly Dep. 70:17-71:1).  Thompson was "checked out" during the drafting of the agreement and was "not in the office that often."  (*Id.* 71:2-72:19).  Accordingly, his testimony lacks personal knowledge, and must not be considered.

c.    Hearsay.  (Exhibit 1, ¶¶ 4-7, 9-13).  Mr. Thompson makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, the Declarations of Michael DeFazio and Greg Jones, and Mr. Thompson's post-hoc review of certain portions of the APA and its Amendments).

d.    Best evidence rule.  (Exhibit 1, ¶¶ 7-9).  Mr. Thompson purports to recite the contents of the relevant contracts, but misstates those contents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

2.    **11/9/06 Declaration of Doug Michels**, submitted as Exhibit 2 to the Hatch Decl., and Exhibit 17 to the Normand Decl., and the **3/28/07 Deposition Transcript of Doug Michels**, submitted as Exhibit 18 to the Normand Decl., on the following grounds:

a.    Inadmissible parol evidence.  Mr. Michels's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.    Lack of personal knowledge.  (Exhibit 2, ¶¶ 4-12, 15-23).  Mr. Michels's testimony lacks foundation as to the meaning of the intellectual property provisions of the APA.  Mr. Michels was involved in only two or three meetings with Novell after the initial discussion about the deal.  (Supp.

Brakebill Decl., Ex. 39, Michels Dep. 11:18-12:1).  Michels did not "draft any language of the Asset Purchase Agreement" or "review drafts" of it and does not recall "even vaguely" any debates in which he participated regarding the drafting of the APA.  (*Id.* at 12:14-13:7).  Michels testified that he did not recall any discussion by anyone at either Novell or SCO regarding whether UNIX copyrights were being transferred as part of the APA.  (*Id*. 50:20-52:5).  Tor Braham, the principal person responsible for drafting the APA and negotiating its contractual language on behalf of Novell, was not aware of "any involvement" by Michels in the negotiation and drafting of APA contract language.  (Braham Decl. ¶ 24(h)).  In addition, Mr. Michels testified that he had no involvement with Amendment No. 2.  (Supp. Brakebill Decl., Ex. 39, Michels Dep. 19:25-20:4).  Thus, throughout his testimony, and without foundation, Mr. Michels offers inadmissible speculation as to the responsibilities, actions, and intentions of various third parties, including IBM, Santa Cruz, and Novell (for example, stating without foundation at 134: "[a]nd so it was implicit in everything we did, everything we thought. Every single person on my team understood that. The lawyers understood. The business development people understood it. The people at Novell understood it.  I mean, it – it's just so essential").  Accordingly, his testimony lacks personal knowledge, and must not be considered.

    c.      Hearsay. (Exhibit 2, ¶¶ 4-12, 15-23). Mr. Michels makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, conversations with Santa Cruz, communications with third parties, the Declarations of Jim Wilt and Kim Madsen, and certain portions of the APA and its Amendments).

    d.      Best evidence rule. (Exhibit 2, ¶¶ 9, 11). Mr. Michels purports to recite the contents of the relevant contracts, but misstates those contents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

3.     **12/11/06 Declaration of Ed Chatlos**, submitted as Exhibit 4 to the Hatch Decl., the **10/1/04 Declaration of Ed Chatlos**, submitted as Exhibit 31 to the Hatch Decl., and Exhibit 12 to the Normand Decl., and the **3/22/07 Deposition Transcript of Ed Chatlos**, submitted as Exhibit 13 to the Normand Decl., on the following grounds:

    a.      Inadmissible parol evidence. Mr. Chatlos's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b.      Lack of personal knowledge. (Exhibit 4, ¶¶ 4-12; Exhibit 31, ¶¶ 5-13; Exhibit 13 at 39-40). Throughout his testimony, and without foundation, Mr. Chatlos offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz and Novell (stating, for example, at

¶ 8 of his 12/11/06 declaration that "it was my understanding and intent on behalf of Novell," and at ¶ 10 of his 10/4/04 declaration that "I believe I would have known if the parties had agreed that Novell would retain any UNIX copyrights").  Moreover, when asked about the basis for his speculation as to the transfer of copyrights, the only reason Mr. Chatlos could come up with was that if the copyrights were included, he as lead negotiator knew it "would have fundamentally changed the deal and changed the intent."  But Mr. Chatlos was not Novell's chief negotiator of the relevant provisions of the APA.  In fact, Tor Braham was the "primary representative of Novell in negotiating the legal terms of the contract between Novell and Santa Cruz."  (Braham Decl. ¶ 5).  Chatlos admitted that "a lawyer for Novell" "drafted the Asset Purchase Agreement itself" and that Chatlos lacked the "legal background" to do so himself.  (Supp. Brakebill Decl., Ex. 34, Chatlos IBM Dep. 82:11-83:5).  Chatlos testified that he was not involved in any negotiations concerning either including or excluding copyrights from the transaction.  (Supp. Brakebill Decl., Ex. 31, Chatlos Dep. 124:5-14).  Tor Braham confirms that Chatlos "did not draft the APA" and that Chatlos was not "the Novell business person directing the drafting of the contract."  Braham "reported to and received instructions from David Bradford [Novell's general counsel], not from Mr. Chatlos."  (Braham

Decl. 24(c)). Accordingly, Chatlos's testimony lacks personal knowledge, and must not be considered.

c.  Hearsay. (Exhibit 4, ¶¶ 4-12; Exhibit 31, ¶¶ 5-13). Mr. Chatlos makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, and his post-hoc review of certain portions of the APA and its Amendments, stating for example in ¶ 11 of his 10/1/04 declaration: "I have reviewed Schedule 1.1(b) . . . with attention to the question of whether Novell was to retain any UNIX copyrights").

d.  Best evidence rule. (Exhibit 4, ¶¶ 4, 6-10; Exhibit 31, ¶¶ 7-9, 11-12). Mr. Chatlos purports to recite the contents of the relevant contracts, but misstates those contents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

4.  **11/23/04 Declaration of Jim Wilt**, submitted as Exhibit 5 to the Hatch Decl., and Exhibit 19 to the Normand Decl., the **12/11/06 Declaration of Jim Wilt**, submitted as Exhibit 48 to the Hatch Decl., and the **1/26/07 Deposition Transcript of James Wilt**, submitted as Exhibit 6 to the James Decl., and Exhibit 20 to the Normand Decl., on the following grounds:

a.  Inadmissible parol evidence. Mr. Wilt's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally

irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.     Lack of personal knowledge.  (Exhibit 5, ¶¶ 5, 7-14, 16; Exhibit 48, ¶¶ 3-12).  Mr. Wilt's testimony lacks foundation as to the meaning of the relevant provisions of the APA.  Wilt was not involved in drafting or negotiating the language in those provisions, and has no personal knowledge as to their purpose.  In fact, Wilt does not recall drafting "any of the language of the Asset Purchase Agreement" and believes that "the lawyers" did the drafting.  (Supp. Brakebill Decl., Ex. 40, Wilt Dep. 20:19-21:7).  Ed Chatlos, on whose testimony SCO relies, testified that Wilt "dropped out" in the latter half of the negotiations for the Santa Cruz-Novell deal.  (Supp. Brakebill Decl., Ex. 34, Chatlos IBM Dep. 184:12-185:7).  Wilt concurs that he was "less active at the end of the negotiations," when the APA was being drafted.  (Supp. Brakebill Decl., Ex. 40, Wilt Dep. 20:12-15).  Wilt testified that he did not recall anyone from Novell stating that copyrights were being transferred.  (Id. 57:10-59:17).  Tor Braham, the principal person responsible for drafting the APA and negotiating its contractual language on behalf of Novell, was not aware of "any involvement" by Wilt in the negotiation and drafting of APA contract language.  (Braham Decl. ¶ 24(i)).  Wilt was not involved in drafting or negotiating Amendment No. 2.  (Supp. Brakebill Decl., Ex. 40, Wilt Dep. 40:10-17).  Wilt did participate in some internal

SCO discussions relating to Amendment No. 2 but had no memory of what was said. (*Id*. 41:13-25). Yet throughout his testimony, and without foundation, Mr. Wilt – who is not a lawyer – offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz and Novell (stating at ¶ 14, for example, "I believe I would have known if the parties had agreed or ever discussed the possibility that Novell would retain any UNIX or UnixWare copyrights").

c.    Hearsay. (Exhibit 5, ¶¶ 5-10, 12-13, 15-16; Exhibit 48, ¶¶ 3-12). Mr. Wilt makes a number of inadmissible assertions of fact that appear to be based solely on out-of-court conversations and documents (including internal meetings, communications with third parties such as his "superiors at SCO" and "Geoff Seabrook" (12/11/06 declaration at ¶ 12), and certain portions of the APA and its Amendments). Accordingly, his testimony lacks personal knowledge, and must not be considered.

d.    Best evidence rule. (Exhibit 5, ¶¶ 9-10, 15-16; Exhibit 48, ¶¶ 4, 6-11). Mr. Wilt purports to recite the contents of the relevant contracts, but misstates those contents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

5.    **12/11/06 Declaration of Kim Madsen**, submitted as Exhibit 6 to the Hatch Decl., and Exhibit 21 to the Normand Decl., the **11/4/06 Declaration of Kim Madsen**, submitted as

Exhibit 33 to the Hatch Decl., and the **2/13/07 Deposition Transcript of Kimberlee Madsen**, submitted as Exhibit 7 to the James Decl., on the following grounds:

      a.    Inadmissible parol evidence.  Ms. Madsen's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

      b.    Lack of personal knowledge.  (Exhibit 6, ¶¶ 5-14; Exhibit 33, ¶¶ 5-29).  Throughout her testimony, and without foundation, Ms. Madsen offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell, Steve Sabbath, Allison Amadia, and IBM (for example, broadly stating at ¶ 8 of her 11/4/06 declaration, without establishing her presence at all discussions regarding the APA, that "it was never agreed, or even discussed, that Novell would be retaining any copyrights to UNIX," and speculating at ¶ 20 that "if Steve Sabbath believed that it was proposed that Amendment No. X would have precluded Santa Cruz from terminating IBM's UNIX license agreement upon a breach of that agreement, he would at a minimum have raised the issue for discussion, and he did not").  In addition, Madsen's testimony lacks foundation as to the meaning of the intellectual property provisions of the APA.  Madsen was a Santa Cruz paralegal.  (Supp. Brakebill

Decl., Ex. 42, Madsen Dep. 6:24-7:2).  Madsen had no recollection of

negotiating the relevant intellectual property provisions of the APA:

> Q. Was it your testimony earlier that you did not recall
> being involved in negotiating any specific provisions of the
> asset purchase agreement?
>
> A. I don't recall negotiating specific provisions.
>
> Q. As you sit here today do you recall negotiating any
> provisions relating to the UNIX copyrights in the asset
> purchase agreement?
>
> A. No.

(*Id*. 58:7-15).  She did not recall providing feedback on "specific

provisions" either.  (*Id.*  39:16-42:19).  Madsen testified, "I don't recall

any conversations with Novell pertaining to copyrights."  (*Id*. 79:16-22).

She does not recall Santa Cruz ever asking for the copyrights.  (*Id.* 79:24-

80:5).  Rather, she believed that the Santa Cruz team was simply

"assuming" the copyrights were transferring.  (*Id.* 81:10-15).  In addition,

at ¶ 4 of her 12/11/06 declaration, Ms. Madsen states only that she

"participated" in the negotiation, and "worked with and participated in

several meetings and teleconferences with the lead negotiators and others

on both sides of the transaction."  This is insufficient foundation to testify

as to the intent of Santa Cruz and Novell.  Tor Braham, the principal

person responsible for drafting the APA and negotiating its contractual

language on behalf of Novell, does not recall any specific interactions with

Madsen regarding the APA contractual provisions at issue.  (Braham Decl.

¶ 24(j)).  Accordingly, her testimony lacks personal knowledge, and must not be considered.

c.    Hearsay.  (Exhibit 6, ¶¶ 4-14; Exhibit 33, ¶¶ 7-29).  Ms. Madsen makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings with Jim Wilt, Allison Amadia, and Steve Sabbath, among others, communications with third parties such as IBM, and her post-hoc review of certain portions of the APA and its Amendments).

d.    Best evidence rule.  (Exhibit 6, ¶¶ 6, 8-13; Exhibit 33, ¶¶ 5, 7, 9, 12-13, 21-23).  Ms. Madsen purports to recite the contents of the relevant contracts, but misstates those contents.  This testimony should be excluded because the agreements themselves are the best evidence of their contents.

6.    **11/19/04 Declaration of Steven Sabbath**, submitted as Exhibit 18 to the Hatch Decl., and the **2/12/07 Deposition Transcript of Steven Sabbath**, submitted as Exhibit 5 to the James Decl., on the following grounds:

a.    Inadmissible parol evidence.  Mr. Sabbath's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

18

b.  Lack of personal knowledge.  (Exhibit 18, ¶¶ 3-6).  Throughout his testimony, and without foundation, Mr. Sabbath offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz and Novell (stating as his foundation at ¶ 3 that he "participated with others in numerous meetings and discussions leading up to the APA").  As to the transfer of copyrights, Sabbath recently testified that he did not recall "negotiating to any extent" "Paragraph A of Amendment No. 2," the portion that refers to copyrights.  He did not recall "focusing on paragraph A to any extent."  (Supp. Brakebill Decl., Ex. 46, Sabbath Dep. 33:11-20).  Accordingly, his testimony lacks personal knowledge, and must not be considered.

c.  Hearsay.  (Exhibit 18, ¶¶ 4-6).  Mr. Sabbath makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, conversations with others about IBM's legal arguments, and certain portions of the APA and its Amendments).

d.  Best evidence rule.  (Exhibit 18, ¶¶ 3-4).  Mr. Sabbath purports to recite the contents of the relevant contracts, but misstates those contents.  This testimony should be excluded because the agreements themselves are the best evidence of their contents.

19

7.    **11/8/06 Declaration of Lawrence A. Bouffard**, submitted as Exhibit 19 to Hatch

Decl., on the following grounds:

       a.     Inadmissible parol evidence.  Mr. Bouffard's testimony seeks to

              contradict the APA's express exclusion of "all copyrights," as well as its

              express inclusion of broad rights for Novell under § 4.16, and is

              therefore legally irrelevant and inadmissible under the parol evidence

              rule and the Federal Rules of Evidence.

       b.     Lack of personal knowledge.  (Exhibit 19, ¶¶ 5-41).  Mr. Bouffard's

              declaration is rife with foundationless speculation as to the intentions,

              motivations, and conduct of third parties, including UNIX customers,

              IBM, and the negotiators of the APA and its Amendments (at ¶ 29

              Mr. Bouffard admits that he "did not negotiate the APA for Novell").

              SCO submits no foundational evidence that Mr. Bouffard participated in

              any discussion of copyrights.  In addition, Mr. Bouffard improperly

              speculates as to "common knowledge in the [UNIX] industry" and the

              "common assumption among the parties entering into the UNIX license

              agreements" (¶¶ 13, 15).  Accordingly, his testimony lacks personal

              knowledge, and must not be considered.

       c.     Hearsay.  (Exhibit 19, ¶¶ 6-41).  Mr. Bouffard makes a number of

              inadmissible assertions of fact based solely on out-of-court

              conversations and documents (including internal meetings,

communications with third parties, and his post-hoc review of certain

portions of the APA and its Amendments).

    d.    Best evidence rule.  (Exhibit 19, ¶¶ 19-20, 29-31, 34-35, 38-40).

Mr. Bouffard purports to recite the contents of the relevant contracts, but

misstates those contents.  This testimony should be excluded because the

agreements themselves are the best evidence of their contents.

8.    **11/9/06 Declaration of Alok Mohan**, submitted as Exhibit 32 to the Hatch Decl.,

and the **2/23/07 Deposition Transcript of Alok Mohan**, submitted as Exhibit 4 to the James

Decl., and Exhibit 6 to the Normand Decl., on the following grounds:

    a.    Inadmissible parol evidence.  Mr. Mohan's testimony seeks to contradict

the APA's express exclusion of "all copyrights," as well as its express

inclusion of broad rights for Novell under § 4.16, and is therefore legally

irrelevant and inadmissible under the parol evidence rule and the Federal

Rules of Evidence.

    b.    Lack of personal knowledge.  (Exhibit 32, ¶¶ 3-11; Exhibit 6 at 138).

Throughout his testimony, and without foundation, Mr. Mohan offers

inadmissible speculation as to the responsibilities, actions, and intentions

of Santa Cruz, Novell, and IBM (making clear at ¶ 3 of his declaration

that he only "was involved at a high level, including discussions with

Duff Thompson, and executive at Novell, whom I understood had

overall responsibility for the transaction on the Novell side," yet stating

without foundation, "I believe I bought the whole business").  Mohan

21

lacks the personal knowledge to testify as to the meaning of the

intellectual property provisions of the APA.  Mohan testified that he was

involved in the negotiations "only at a high level."  (Supp. Brakebill

Decl., Ex. 38, Mohan Dep. 10:17-20).  Mohan "was not involved" in

"specific drafting of the documents."  (*Id*. 16:9-17:6).  Mr. Mohan

testified that he had no involvement with Amendment No. 2.  (*Id*. 200:6-

15).  Mohan also testified that "the issue of copyrights in or out was not

discussed with me."  He testified, "[Novell] did not tell me that they'd

kept it.  They did not tell me they'd given it to us."  (*Id.* 261:7-262:2).

Tor Braham, the principal person responsible for drafting the APA and

negotiating its contractual language on behalf of Novell, has never met

Alok Mohan.  (Braham Decl. ¶ 24(e)).  In addition, SCO relies on

testimony from Alok Mohan, Santa Cruz's then-CEO, to argue that the

press release upon which SCO relies was "joint."  But Mohan testified

that he had no knowledge of whether the press release was sent to

Novell for approval.  (Supp. Brakebill Decl., Ex. 38, Mohan Dep. 249:3-

251:11).  Accordingly, his testimony lacks personal knowledge, and

must not be considered.

c.      Hearsay.  (Exhibit 32, ¶¶ 3-11).  Mr. Mohan makes a number of

inadmissible assertions of fact based solely on out-of-court

conversations and documents (including internal meetings,

communications with third parties, his review of the Declarations of Jim

Wilt and Steve Sabbath, and his post-hoc review of certain portions of the APA and its Amendments).

d.    Best evidence rule.  (Exhibit 32, ¶¶ 8-9).  Mr. Mohan purports to recite the contents of the relevant contracts, but misstates those contents.  This testimony should be excluded because the agreements themselves are the best evidence of their contents.

9.    **12/18/06 Declaration of William Murphy**, submitted as Exhibit 34 to Hatch Decl., on the following grounds:

a.    Inadmissible parol evidence.  Mr. Murphy's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.    Lack of personal knowledge.  (Exhibit 34, ¶¶ 4-33).  Throughout his testimony, and without foundation, Mr. Murphy offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell, UNIX licensees, and IBM (basing his knowledge on the mere assumption at ¶ 5 that "I would not have been able to perform my job over the years that followed had I not acquired an understanding of what Novell intended to sell to Santa Cruz under the Asset Purchase Agreement ("APA") which effectuated the sale").  SCO submits no foundational evidence that Mr. Murphy participated in any discussion of

23

copyrights.  Accordingly, his testimony lacks personal knowledge, and must not be considered.

    c.    Hearsay.  (Exhibit 34, ¶¶ 6-33).  Mr. Murphy's declaration makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, and his post-hoc review of certain portions of the APA and its Amendments).

    d.    Best evidence rule.  (Exhibit 34, ¶¶ 10-19, 21-26, 28-30, 32-33).  Because the content and meaning of the APA and its Amendments are at issue, and because those documents are available, Mr. Murphy's recent testimony reciting the contents of those documents must be excluded.

10.    **12/11/06 Declaration of William Broderick**, submitted as Exhibit 50 to the Hatch Decl., and Exhibit 15 to the Normand Decl., the **11/7/06 Declaration of William Broderick**, submitted as Exhibit 33 to the Normand Decl., and the **2/1/07 Deposition Transcript of William Broderick**, submitted as Exhibit 8 to the James Decl., and Exhibit 16 to the Normand Decl., on the following grounds:

    a.    Inadmissible parol evidence.  Mr. Broderick's testimony seeks to contradict the APA's express exclusion of "all copyrights," as well as its express inclusion of broad rights for Novell under § 4.16, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.     Lack of personal knowledge.  (Exhibit 50, ¶¶ 3, 7-8, 11-42; Exhibit 33,

¶¶ 4-27).  Throughout his testimony, and without foundation,

Mr. Broderick offers inadmissible speculation as to the responsibilities,

actions, and intentions of Santa Cruz, Novell (including its

"predecessors and successors "), Microsoft, Hewlett-Packard, Texas

Instruments, Cray, IBM, and even "all licensees who licensed UNIX

System V" (at ¶ 13 of his 12/11/06 declaration).  Broderick testified that

he did not recall any specific discussion about the transfer of copyrights

during APA transition meetings.  (Supp. Brakebill Decl., Ex. 37,

Broderick Dep. 49:15-51:16). In fact, Broderick admits he "did not"

have "any involvement at all in negotiating the APA."  (*Id.* 158:5-7).

Tor Braham has never heard of Broderick and confirms that Broderick

"was not involved in the APA negotiations or drafting."  (Braham Decl.

¶ 24(d)).  In addition, Bill Broderick testified that he had no involvement

with Amendment No. 2.  (Supp. Brakebill Decl., Ex. 37, Broderick Dep.

144:12-16).  Moreover, despite his role as a Contract Manager with no

personal knowledge of the transfer of assets in 2001, Mr. Broderick

improperly speculates at ¶ 8 of his 11/7/06 declaration that the 2001

Caldera transaction included the UNIX copyrights.  Accordingly, his

testimony lacks personal knowledge, and must not be considered.

c.     Hearsay.  (Exhibit 50, ¶¶ 11-42; Exhibit 33, ¶¶ 7-8, 10-28; Exhibit 16 at

48-51).  As SCO concedes in its 4/9/07 Motion at 12, "Mr. Broderick

25

testified that his understanding is based on (among other things)

Novell's explanation of the transaction during 'company-wide meetings'

as well as discussion in 'contracts transition team,' including discussion

about 'changing the copyright notices in the source code to Santa Cruz

Operation, Inc.'"  Indeed, Mr. Broderick makes a number of

inadmissible assertions of fact based solely on out-of-court

conversations and documents (including internal meetings,

communications with third parties, "reading the declaration of David

McCrabb," reviewing UNIX licenses, and his post-hoc review of certain

portions of the APA and its Amendments).  None of this testimony can

survive the hearsay rule.

    d.    Best evidence rule.  (Exhibit 50, ¶¶ 12-20, 22-27, 29-36; Exhibit 33,

¶¶ 14-15, 25-28).  Mr. Broderick purports to recite the contents of the

relevant contracts, but misstates those contents.  This testimony should

be excluded because the agreements themselves are the best evidence of

their contents.

11.    **12/11/06 Declaration of John Maciaszek**, submitted as Exhibit 51 to Hatch

Decl., and the **11/9/06 Declaration of John Maciaszek**, submitted as Exhibit 34 to the Normand

Decl., on the following grounds:

    a.    Inadmissible parol evidence.  Mr. Maciaszek's testimony seeks to

contradict the APA's express exclusion of "all copyrights," as well as its

express inclusion of broad rights for Novell under § 4.16, and is

therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.  Lack of personal knowledge.  (Exhibit 51, ¶¶ 1-32; Exhibit 34, ¶¶ 4-5, 7-27).  Throughout his testimony, and without foundation, Mr. Maciaszek offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell (including its "predecessors and successors "), Microsoft, IBM, and "all licensees who licensed UNIX System V" (12/11/06 declaration at ¶ 10, and testifying at ¶ 18 as to "the shared understanding of all" IBM, and other UNIX licensees).  SCO submits no foundational evidence that Mr. Maciaszek participated in any discussion of copyrights (testifying at ¶ 2 of his 11/9/06 declaration that his role was "prepar[ing] source code licenses," but testifying as to the rights, obligations, and intent of the APA and its Amendments).  Accordingly, his testimony lacks personal knowledge, and must not be considered.

c.  Hearsay.  (Exhibit 51, ¶¶ 7-32; Exhibit 34, ¶¶ 7-8, 10-27).
Mr. Maciaszek makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, the Declaration of David McCrabb, unauthenticated UNIX agreements, and his post-hoc review of certain portions of the APA and its Amendments).

d.      Best evidence rule.  (Exhibit 51, ¶¶ 9-17, 19-23, 25-28, 30-32;

Exhibit 34, ¶¶ 12-15, 25-27).  Mr. Maciaszek purports to recite the

contents of the relevant contracts, but misstates those contents.  This

testimony should be excluded because the agreements themselves are the

best evidence of their contents.

12.     **12/11/06 Declaration of Jean Acheson**, submitted as Exhibit 52 to the Hatch

Decl., on the following grounds:

a.      Inadmissible parol evidence.  Ms. Acheson's testimony seeks to

contradict the APA's express exclusion of "all copyrights," as well as its

express inclusion of broad rights for Novell under § 4.16, and is

therefore legally irrelevant and inadmissible under the parol evidence

rule and the Federal Rules of Evidence.

b.      Lack of personal knowledge.  (Exhibit 52, ¶¶ 1-15).  Throughout her

testimony, and without foundation, Ms. Acheson offers inadmissible

speculation as to the responsibilities, actions, and intentions of Santa

Cruz, Novell, and Cray (acknowledging at ¶ 5 that her understanding of

the terms of the APA stem from a company-wide meeting held after the

APA was executed, but nonetheless testifying – without any legal

training – as to the rights and obligations of the APA, and asserting

SCO's compliance with them).  SCO submits no foundational evidence

that Ms. Acheson participated in any discussion of copyrights.

Accordingly, her testimony lacks personal knowledge, and must not be considered.

    c.    Hearsay.  (Exhibit 52, ¶¶ 5-15).  Ms. Acheson makes a number of inadmissible assertions of fact that appear to be based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, and her post-hoc review of portions of the APA and its Amendments).

    d.    Best evidence rule.  (Exhibit 52, ¶¶ 6, 11, 14-15).  Ms. Acheson purports to recite the contents of the relevant contracts, but misstates those contents.  This testimony should be excluded because the agreements themselves are the best evidence of their contents.

13.    **11/10/06 Declaration of Darl McBride**, submitted as Exhibit 59 to the Hatch Decl., and Exhibit 37 to the Normand Decl., on the following grounds:

    a.    Inadmissible parol evidence.  Mr. McBride's testimony seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b.    Lack of personal knowledge.  (Exhibit 59, ¶¶ 3, 7, 10, 12, 15-29, 31-33, 35-38).  Throughout his testimony, and without foundation, Mr. McBride offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell, Baystar, and IBM.  SCO submits no foundational evidence that Mr. McBride participated in any

discussion of copyrights. Accordingly, his testimony lacks personal knowledge, and must not be considered.

c.   Hearsay. (Exhibit 59, ¶¶ 3-29, 34-37). The declaration makes a number of inadmissible assertions of fact that both directly relay out-of-court statements (to IBM's Sam Palmisano, for example, at ¶¶ 22-23), and which appear to be based solely on out-of-court conversations and documents [including communications with and statements by third parties (such as Karen Smith, Jack Messman, Greg Jones, Tony Befi, Larry Goldfarb, Kim Jenkins and Sam Palmisano) and certain portions of the APA and its Amendments).

d.   Best evidence rule. (Exhibit 59, ¶¶ 7, 16, 19-20). Mr. McBride purports to recite the contents of the relevant contracts, declarations, and correspondence, but misstates those contents. This testimony should be excluded because the documents themselves are the best evidence of their contents.

14.   **Undated, unsigned Declaration of Geoff Seabrook**, submitted as Exhibit 63 to Hatch Decl., on the following grounds:

a.   Inadmissible parol evidence. Mr. Seabrooks's purported testimony seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.      Lack of personal knowledge.  (Exhibit 63, ¶¶ 3, 5-42).  Throughout the unsigned declaration, and without foundation, the purported declarant offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell, and IBM.  SCO submits no foundational evidence that Mr. Seabrook participated in any discussion of copyrights.  Accordingly, his testimony lacks personal knowledge, and must not be considered.

c.      Hearsay.  (Exhibit 63, ¶¶ 3, 5, 7-9, 11-13, 15-42).  The unsigned declaration makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents (including internal meetings, communications with third parties, and a post-hoc review of certain portions of the APA and its Amendments).

d.      Best evidence rule.  (Exhibit 63, ¶¶ 11-12, 17-26, 28, 30-41). Mr. Seabrook purports to recite the contents of the relevant contracts, but misstates those contents.  This purported testimony should be excluded because the agreements themselves are the best evidence of their contents.

e.      Improper authentication.  Neither the drafter (Brobeck, Phleger & Harrison) nor the purported declarant has authenticated this unsigned and undated document as a declaration of Geoff Seabrook.

15.     **11/10/06 Declaration of Jay Peterson (Copyright Notices)**, submitted as Exhibit 26 to the Normand Decl., on the following grounds:

31

a.   Lack of personal knowledge.  Mr. Peterson's declaration fails to lay the proper foundation to identify each particular document examined. Accordingly, his testimony lacks personal knowledge, and must not be considered.

b.   Hearsay.  (Exhibit 26, ¶ 3).  Mr. Peterson's declaration recites out-of-court statements from a document, offered for their truth.

c.   Best evidence rule.  (Exhibit 26, ¶ 3).  Mr. Peterson purports to recite the contents of relevant documents, but misstates those contents.  This purported testimony should be excluded because the documents themselves are the best evidence of their contents.

16.   **2/10/07 Deposition Transcript of Robert Frankenberg**, submitted as Exhibit 1 to the James Decl., and Exhibit 7 to the Normand Decl., on the following grounds:

a.   Inadmissible parol evidence.  SCO offers Mr. Frankenberg's testimony to contradict the APA's express terms, making it legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.   Lack of personal knowledge.  SCO has not laid a proper foundation for admission of its Frankenberg deposition excerpts because he lacks the personal knowledge to testify as to the meaning of the intellectual property provisions of the APA.  Mr. Frankenberg is not a lawyers and did not draft the relevant provisions of the APA, but instead entrusted others with drafting a document that protected Novell's ongoing interests in UNIX:

> Q. And as a result, you <u>tasked your negotiating team</u> with making sure that the detailed draft of the Asset Purchase Agreement winded its way between the goal of selling the UNIX business to SCO but <u>retaining the rights necessary for Novell to protect its interest</u> in the ongoing UNIX revenue stream and the capitalization of that revenue stream?

> A. Yes.

(Supp. Brakebill Decl., Ex. 32, Frankenberg Dep. 64:14-21 (emphasis added). Frankenberg signed the APA "on basis of the recommendation of his team" and "did not review every item. " (*Id.* 68:12-17). Tor Braham, the principal person responsible for drafting the APA and negotiating its contractual language on behalf of Novell, confirms that Frankenberg "was not involved in the negotiation or drafting of the contract language of the APA." (Braham Decl. ¶ 24(f)). Frankberg testified that he "directed the negotiating team to make sure that [Novell's] rights to enter into buyouts after the acquisition closed were preserved." (Supp. Brakebill Decl., Ex. 32, Frankenberg Dep. 63:1-19). Frankenberg recalled "discussing" with the negotiation team the fact that "retaining the UNIX copyrights would facilitate Novell's exercise of rights with respect to capitalizing the SVRX revenue stream." (*Id.* at 65:21-66:7). Frankenberg testified that it was "possible" that the negotiation team excluded copyrights from the transfer of assets to "effectuate" his "direction to try to make sure that [Novell] could protect [its] right to do buyouts." (*Id*. at 85:8-15). In addition, Frankenberg never testified to any personal knowledge of the

press release being approved by Novell. (*Id*. at 22:20-23:5).  Accordingly,

the proffered excerpts of his testimony must not be considered for lack of

foundation.

17.    **3/23/07 Deposition Transcript of Burt Levine**, submitted as Exhibit 14 to the

Normand Decl., on the following grounds:

a.    Inadmissible parol evidence.  Mr. Levine's testimony seeks to contradict

the APA's express terms, and is therefore legally irrelevant and

inadmissible under the parol evidence rule and the Federal Rules of

Evidence.

b.    Lack of personal knowledge.  Without foundation, Mr. Levine offers

inadmissible speculation as to the intentions of Santa Cruz and Novell in

executing the APA.  Levine testified that he "may have" worked on some

"early drafts" the APA but does not remember which specific provisions,

if any.  (Supp. Brakebill Decl., Ex. 35, Levine IBM Dep. 179:3-8, 180:2-

12).  He testified that he has no "understanding as to specifically what

intellectual property, if any, was or wasn't transferred" under the APA.

(*Id.* 180:21-181:13).  Levine testified that he had no involvement with

Amendment No. 2.  (Supp. Brakebill Decl., Ex. 22, Levine Dep. 190:11-

22).  Moreover, Levine testified that the UNIX unit and its business files,

including the copyright registrations, remained in New Jersey throughout

the changes in ownership of the business.  (Supp. Brakebill Decl., Ex. 22,

Levine Dep. 19:10-20:23).  Levine further testified that during APA

negotiations, he had reviewed and marked up drafts of Schedules 1.1(a) and (b) of the APA, which listed Included and Excluded Assets.  He revised the list of included assets, but did not add copyrights.  He left the exclusion of "all copyrights" intact while making other revisions to intellectual property provision of the Excluded Assets schedule.  He then faxed his markup to Wilson Sonsini.  (*Id*. at 71:19-77:18; Supp. Brakebill Decl., Ex. 36).  Wilson Sonsini then passed on Levine's comments to Santa Cruz's outside counsel, Brobeck.  (Supp. Brakebill Decl., Ex. 29; Supp. Brakebill Decl., Ex. 22, Levine Dep. 80:19-81:12).  However, Levine recalled nothing further about his review and markup of Schedules 1.1(a) and (b).  (*Id.* at 71:13-18; 72:14-18).  Tor Braham received Levine's comments on Schedules 1.1(a) and (b), but does not recall Levine ever participating in APA negotiations with Santa Cruz.  (Braham Decl., ¶ 24(g)).  Accordingly, the proffered testimony of Burt Levine lacks personal knowledge and foundation, and must not be considered.

c.     Best evidence rule.  Mr. Levine purports to recite the contents of the relevant contracts, but misstates those contents.  This purported testimony should be excluded because the agreements themselves are the best evidence of their contents.

18.     **3/23/07 Deposition Transcript of Maureen O'Gara**, submitted as Exhibit 29 to the Normand Decl., on the following grounds:

a.    Inadmissible parol evidence.  Ms. O'Gara's testimony seeks to

contradict the APA's express terms, and is therefore legally irrelevant

and inadmissible under the parol evidence rule and the Federal Rules of

Evidence.

b.    Lack of personal knowledge.  The excerpt of Ms. O'Gara's testimony

contains speculation as to the intentions of others, including Novell and

Chris Stone.  Accordingly, her testimony lacks personal knowledge, and

must not be considered.

c.    Best evidence rule.  Ms. O'Gara purports to recite the contents of the

relevant contracts, but misstates those contents.  This purported

testimony should be excluded because the agreements themselves are the

best evidence of their contents.

DATED:    May 15, 2007

ANDERSON & KARRENBERG

/s/  Heather M. Sneddon
Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs (*pro hac vice*)
Kenneth W. Brakebill (*pro hac vice*)
Grant L. Kim *(pro hac vice)*

**Attorneys for Novell, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of May, 2007, I caused a true and correct

copy of the foregoing **NOVELL'S EVIDENTIARY OBJECTIONS TO SCO'S SUMMARY**

**JUDGMENT EXHIBITS** to be served to the following:

*Via CM/ECF*:

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55401

*Via U.S. Mail, postage prepaid*:

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131

_____ */s/  Heather M. Sneddon*_____

37