Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Facsimile:   (801) 363-6666

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone:  (914) 749-8200
Facsimile:  (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Attorneys for Plaintiff, The SCO Group, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, <br><br> Plaintiff/Counterclaim-Defendant, <br><br> vs. <br><br> NOVELL, INC., a Delaware corporation, <br><br> Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN OPPOSITION TO NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COPYRIGHT OWNERSHIP PORTIONS OF SCO'S SECOND CLAIM FOR BREACH OF CONTRACT AND FIFTH CLAIM FOR UNFAIR COMPETITION** <br><br> **Civil No.:  2:04CV00139** <br><br> Judge Dale A. Kimball <br> Magistrate Brooke C. Wells |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF UNDISPUTED FACTS ...............................................................................3

ARGUMENT ...............................................................................................................................8

I.    NOVELL'S CONDUCT CONSTITUTES UNFAIR COMPETITION UNDER
      UTAH COMMON LAW .....................................................................................................8

      A.    Utah Law Recognizes a Cause of Action for Unfair Competition Arising from
            Misappropriation................................................................................................9

      B.    Utah Law Recognizes That Unfair Competition Exists in Cases Beyond
            Palming Off or Misappropriation, Such As Novell's Purported Waiver of
            SCO's Rights to Enforce Its Copyrights.............................................................11

II.   NOVELL'S CONDUCT IS ACTIONABLE UNDER UTAH'S UNFAIR
      COMPETITION ACT ........................................................................................................14

      A.    Novell's Wrongful Claim of Ownership, in Violation of the Licensing
            Agreement, Continues Today ............................................................................16

III.  NOVELL'S FALSE, PUBLIC DENIALS OF SCO'S COPYRIGHT OWNERSHIP
      BREACHED THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR
      DEALING............................................................................................................................17

IV.   SCO HAS ADDUCED EVIDENCE THAT IT OWNS THE UNIX AND
      UNIXWARE COPYRIGHTS, AND AS SUCH NOVELL'S CLAIMS OF
      OWNERSHIP ARE FALSE ................................................................................................19

CONCLUSION...........................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                                    <u>Page</u>

Allen's Prods. Co. v. Glover,
   414 P.2d 93 (Utah 1966).................................................................................................9

Am. Airlines v. Christensen,
   967 F.2d 410 (10th Cir. 1992) ...................................................................................13

Am. Airlines v. Platinum World Travel,
   769 F. Supp. 1203 (D. Utah 1990)............................................................................11

Astroworks, Inc. v. Astroexhibit, Inc.,
   257 F. Supp. 2d 609 (S.D.N.Y. 2003).......................................................................12

Brown v. Superior Court,
   34 Cal. 2d 559 (Cal. 1949)........................................................................................17

Budget Sys. Inc v. Budget Loan & Fin. Plan,
   361 P.2d at 515 (Utah 1961) .......................................................................................9

Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,
   2 Cal. 4th 342 (Cal. 1992).........................................................................................18

Comunale v. Traders & Gen. Ins. Co.,
   50 Cal. 2d 654 (Cal. 1958)........................................................................................17

Compuware Corp. v. Int'l Bus. Machs.,
   257 F. Supp. 2d 597 (E.D. Mich. 2002)...................................................................10

Egan v. Mut. of Omaha Ins. Co.,
   24 Cal. 3d 809, 620 P.2d 141 (Cal. 1979)................................................................17

Foley v. Interactive Data Corp.,
   47 Cal. 3d 654 (1988) ...............................................................................................17

Freeman & Mills, Inc. v. Belcher Oil Co.,
   11 Cal. 4th 85 (Cal. 1995).....................................................................................18, 19

Frink Am., Inc. v. Champion Rd. Mach. Ltd.,
   961 F. Supp. 398 (N.D.N.Y. 1997)...........................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page**

McCollum v. XCare.net, Inc.,
   212 F. Supp. 2d 1142 (N.D. Cal. 2002) ........................................................17

Midwest Plastics Corp. v. Protective Closures Co.,
   285 F.2d 747 (10th Cir. 1960) ...................................................................11

Mobius Mgmt. Sys, Inc. v. Fourth Dimension Software, Inc.,
   880 F. Supp. 1005 (S.D.N.Y. 1994).............................................................12

Novell, Inc. v. Fed. Ins. Co.,
   141 F.3d 983 (10th Cir. 1998) ...................................................................11

Proctor & Gamble Co. v. Haugen,
   947 F. Supp. 1551 (D. Utah 1996)...........................................................9, 12

Proctor & Gamble Company v. Haugen,
   222 F.3d 1262 (10th Cir. 2000) ..............................................................9, 12

Reynolds & Reynolds Co. v. Norick,
   114 F.2d 278 (10th Cir. 1940) ...............................................................10, 11

Russell v. Lundberg,
   120 P.3d 541 (Utah App. 2005) .................................................................15

Ryder Truck Rental, Inc. v. Cent. Packing Co.,
   341 F.2d 321 (10th Cir. 1965) ...................................................................17

Saratoga Vichy Spring Co. v. Lehman,
   625 F.2d 1037 (2d. Cir. 1980)....................................................................12

Telecom Int'l Am., Ltd. v. AT&T Corp.,
   280 F.3d 175 (2d Cir. 2001).......................................................................12

Too, Inc. v. Kohl's Dep't Stores, Inc.,
   210 F. Supp. 2d 402 (S.D.N.Y. 2002).........................................................12

Towers Fin. Corp. v. Dun & Bradstreet, Inc.,
   803 F. Supp. 820 (S.D.N.Y 1992)..............................................................12

Universal Sales Corp. v. Cal. Press Mfg. Co.,
   20 Cal. 2d 751 (Cal. 1942).........................................................................17

**<u>Statutes</u>**

Unfair Competition Act (U.C.A. 1953 § 13-5a-101 through 104) ...............................................14

Utah Code Ann. 1953 § 13-5a-102-4(a) ................................................................................15, 16

Utah Code Ann. §13-5-2 (2006) ................................................................................................14

Utah Code Ann § 13-5-2.5 (2006) ........................................................................................14, 16

Utah Code Ann § 13-5-17 (2006) ..............................................................................................17

Utah Code Ann. §13-5-14 (2006) ..............................................................................................14

Utah Code Ann. § 13-5a-103 (2006) ..........................................................................................15

The SCO Group, Inc. ("SCO") respectfully submits this Memorandum in support of its opposition to Novell Inc.'s ("Novell") Motion for Partial Summary Judgment on the Copyright Ownership Portions of SCO's Second Claim for Breach of Contract and Fifth Claim for Unfair Competition (the "Motion"). SCO shows below that summary judgment is inappropriate because the legal bases asserted in Novell's Motion fail to support Novell's argument and the Motion is devoid of evidentiary support.

## PRELIMINARY STATEMENT

Novell, as admitted by its own most senior executives at the time, sold the entirety of its UNIX business. Having sold that business "lock stock and barrel," they proceeded to seek to undermine SCO's business.

First, they falsely denied selling the core intellectual property of UNIX – the UNIX copyrights – even though virtually all of the senior business executives of Novell at the time of the sale agree that the copyrights were naturally sold to Santa Cruz as part of the business. This was, according to one witness who reports on a conversation with a senior Novell executive, expressly timed to inflict maximum damage on SCO, which was that very day announcing its earnings. Novell succeeded; SCO's stock plummeted within hours of Novell's announcement. SCO's SCOSource licensing program was crippled by Novell's assertion that SCO did not own the intellectual property, the copyrights, that would be the *sine qua non* of any license, and as a result that program virtually collapsed.

Second, having precluded SCO from being able to sell a license, Novell sought to undermine SCO from protecting its intellectual property in court. Taking a provision intended to protect Novell's right to receive certain binary royalties in place at the time of the sale – as

confirmed by the overwhelming testimony of its own witnesses – Novell blatantly misused the provision to seek to waive SCO's rights against IBM under source code development agreements that were not subject to that provision. At the same time, IBM made a payment to Novell of $50 million.[1]

Novell's Motion is predicated on a mischaracterization of the conduct at issue, namely, Novell contends that its false claim of ownership of the UNIX and Unixware copyrights is their mere equivalent of an unflattering remark about a competitor's business or a good-faith opinion rendered about a business deal. This proposition is not supported by the facts or the law.

Novell also contends that SCO has not properly stated a claim for breach of the implied covenant of good faith under California law.[2] Neither the facts nor the law supports Novell's assertion. Novell's wrongful denial of SCO's ownership of the copyrights defeated the benefit of the bargain to SCO, and such conduct properly forms the basis of SCO's claims for breach of contract and for unfair competition.

Novell also claims that summary judgment may be granted on the ownership portion of these claims merely "because it is duplicative of SCO's slander of title claim," but Novell has not pointed to any authority for the proposition, and SCO is aware of none. At a minimum, there are disputed issues of material fact that preclude the relief that Novell seeks. The argument is

---

[1] There are additional aspects of unfair competition stayed pending arbitration in Europe: those allegations concern Novell's infringement of UNIX copyrights by selling an infringing product, Linux.

[2] While the parties have agreed that the tort claims are governed by Utah law, the Technology License Agreement ("TLA") contained a choice of law provision, and accordingly, the breach of contract claim is governed by California law.

predicated on an incorrect understanding of the law, and therefore there is no basis for summary judgment on either of Novell's claims.  The Motion should be denied.

## STATEMENT OF UNDISPUTED FACTS

Novell's Motion fails to cite any record evidence to support the requested relief.  Instead, Novell adopts as true (at 3) the "undisputed contents of SCO's Second Amended Complaint."[3] The following facts are therefore undisputed:

1.      In May 2001, SCO purchased from The Santa Cruz Operation all right, title, and interest in and to the UNIX and UnixWare business, including the copyrights, which Santa Cruz had previously acquired from Novell in 1995.  These transactions are more fully described in SCO's Memorandum in Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance ("Copyright Memo").

2.      The UNIX business was a valuable acquisition, and both Santa Cruz and then SCO paid significant amounts in their respective transactions, as had Novell when it acquired the assets a few years before.  The assets transferred from Novell, and then to SCO, included the intellectual property necessary to operate the UNIX business, including the UNIX and Unixware copyrights.  See Copyright Memo ¶¶ 1-43.

3.      SCO realized significant revenue from licensing the valuable UNIX and Unixware software code.  By 2003, however, SCO's profits and valuable intellectual property had been seriously damaged by the disclosure of copyrighted UNIX code and other protected information to Linux, and the resulting infringement of SCO's copyrights by the unauthorized use of its code via Linux.  SCO designed its SCOsource licensing program to protect its

---

[3]  SCO hereby seeks leave to respond to any further statement of facts or evidence that Novell may present, improperly, in reply.

intellectual property and address the recognized market demand for the ability to use Linux without the risk of infringing SCO's intellectual property and risking litigation. <u>See</u> SCO's Response in Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title Based on Failure to Establish Special Damages ("Damages Memo.") ¶¶ 18-20.

4.    In May 2003, SCO began in earnest to notify the industry that use of Linux infringed upon SCO's copyrights, which SCO was entitled to enforce by legal action if necessary. In the same notice, SCO advised the market of its licensing program ("SCOsource") which facilitated the lawful use of SCO proprietary materials in Linux without exposure to liability for infringement. (5/18/2007 James Decl. Exs. 42, 47.)

5.    Ownership of the UNIX copyrights, and the market perception that SCO owned the copyrights, was essential to this business. If SCO's ownership of the copyrights was in question, customers would have little or no incentive to buy a license from SCO. (5/18/2007 James Decl. Ex. 71.)

6.    With full knowledge of SCO's ownership of the to UNIX and UnixWare copyrights, Novell embarked on a malicious campaign to damage SCO's ability to protect those copyrights. In particular, Novell wrongfully asserted ownership over UNIX and UnixWare technologies by filing for copyright protection in its own name, and made numerous false and misleading public representations disparaging SCO's ownership of the copyrights and, in turn claimed that it owned the copyrights and, indeed, UNIX itself. <u>See</u> SCO's Second Amended Complaint ("Compl.") ¶ 36.

7.    Following SCO's efforts to advertise SCOsource and inform the industry of the Linux infringement problem, Novell published the following claim in an open letter:

> Importantly, and contrary to SCO's assertions, <u>SCO is not the owner of the UNIX copyrights</u>. Not only would a quick check of the U.S. Copyright Office records reveal this fact, but a review of the asset transfer agreement between Novell and SCO confirms it. To Novell's knowledge, the 1995 agreement governing SCO's purchase of UNIX from Novell <u>does not convey to SCO the associated copyrights</u>. We believe it unlikely that SCO can demonstrate that it has any ownership interest whatsoever in these copyrights.

(5/18/2007 James Decl. Ex. 36 (emphasis added).)

8.      In response to Novell's claims, SCO's CEO Darl McBride delivered to Novell a copy of Amendment No. 2, a contractual document between Santa Cruz and Novell, which confirms and clarifies that SCO owns the UNIX copyrights and that is what as both parties intended in executing the APA. In response, Novell issued a press release stating that Amendment No. 2 "appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996." (5/18/2007 James Decl. Ex. 38.)

9.      Novell's retraction was short-lived. Within weeks of its retraction, it reasserted its claim to copyright ownership. (5/18/2007 James Decl. Exs. 43, 44.)

10.     In the fall 2003, Novell began directly contacting SCO's partners and potential customers, representing to them that Novell, not SCO, owned the UNIX copyrights. (5/18/2007 James Decl. Ex. 37 ¶ 8.)

11.     In a further effort to interfere with SCO's exercise of its rights with respect to UNIX and UnixWare technologies, and in disregard of its obligations under the APA, Novell has filed for copyright registrations of the same UNIX technology covered by SCO's copyrights. <u>See</u> Compl. ¶ 7.

12.     In October 2003, Novell filed for and received UNIX copyright registrations –
which Novell knew SCO owned and had already registered.  In this process, Novell declared
under oath to the U.S. Copyright Office "that it retains all or substantially all of the ownership of
the copyrights in UNIX, including the U.S. Copyright Registration referenced above."
(5/18/2007 James Decl. Ex. 46.)

13.     In spite of Novell's campaign to misappropriate SCO's assets, SCO made its best
efforts to market the SCOsource license.  Novell responded to SCO's ongoing sales efforts on
December 22, 2003, by publicly reasserting its claim of ownership of the UNIX copyrights,
publicizing that it had also applied for and received UNIX copyright registrations, and publishing
its correspondence with SCO on the issue, which purported to show that "SCO has been well
aware that Novell continues to assert ownership of the UNIX copyrights."  (5/18/2007 James
Decl. Ex. 53.)

14.     On January 13, 2004, Novell announced that it would be offering a new
indemnification program for qualifying Novell Linux enterprise customers.  According to
Novell, this new indemnification option would provide "a measure of protection against potential
copyright infringement claims."  (5/18/2007 James Decl. Ex. 45.)  Novell also reiterated at this
time that its copyright registrations confirmed that it retained ownership of UNIX copyrights.
(Id.)

15.     Novell intended to reach as much of the market as possible with its false claims.
CEO Jack Messman testified that Novell wanted its "position out as broadly as possible."
(5/18/2007 James Decl. Ex. 41 at 56:10-16 and 56:17-20.)  He further admitted that Novell

released the letter regarding copyrights as a press release "so as many people as possible would read about it." (Id. at 56.)

16.    On March 16, 2004, Novell's Vice President Chris Stone announced to an audience of potential SCOsource customers attending the Open Source Business Conference, that Novell still owned Unix. (5/18/2007 James Decl. Ex. 51.) This plainly inaccurate statement was widely reported in the IT press. (5/18/2007 James Decl. Exs. 55, 54.)

17.    In tandem with its false claims of ownership of the copyrights, in June 2003, Novell purported to direct SCO to waive its right to terminate its Software License Agreement with IBM, and subsequently purported to waive and revoke SCO's proper termination of IBM's UNIX license agreements. See Compl. ¶ 58. Similarly, on October 10, 2003, Novell purported to waive and revoke for SCO its claims against IBM for breach of its Sequent Software License Agreement with SCO. Id. ¶ 59. Novell's false claims that it owned the Unix copyrights were made with the intent to cause customers and potential customers of SCO to refrain from doing business with SCO; to slander and impugn SCO's ownership rights in UNIX and UnixWare; and to attempt, in bad faith, to block SCO's ability to enforce the copyrights and its rights under UNIX licenses. Id. ¶¶ 9, 61, 122.

18.    Novell still claims (such as at 9-10) to own the Unix copyrights. Novell's slanderous claims have thus been clouding SCO's title to the UNIX copyrights, and undermining SCO's business, for approximately four years.

## ARGUMENT

**I.    NOVELL'S CONDUCT CONSTITUTES UNFAIR COMPETITION UNDER UTAH COMMON LAW.**

After its transfer of the UNIX and Unixware business to Santa Cruz in 1995, Novell never claimed that to own those copyrights.  When presented with an opportunity to garner a financial and strategic benefit in the market, however, Novell began publicly asserting ownership of the copyrights in the midst of SCO's efforts to protect its intellectual property.  By issuing public statements directed to SCO's customers and potential customers that it owned the UNIX and Unixware copyrights, Novell seized the goodwill of SCO's business and misappropriated its most valuable asset.  Novell intentionally took these steps so that companies wrongfully infringing SCO's intellectual property would falsely believe that Novell owned and controlled this valuable intellectual property, thereby obtaining a benefit in the market to which it was not entitled.

Novell also falsely represented that it had the legal authority to waive claims regarding the improper disclosure of this proprietary and confidential information and claims of infringement regarding the same.  This had the effect of causing additional confusion in the market and dilution of the copyrights, and it perpetuated, fostered and facilitated the continuing infringement of the copyrights by IBM.  Novell benefited directly from its wrongful assertion of ownership of the copyrights and its attendant waiver of SCO's rights to enforce the copyrights. Novell's public claims defeated SCO's ability to maintain and market its licensing program and secured the favor of IBM, whose financial support of at least $50 million to Novell facilitated Novell's acquisition of SuSe Linux.  These are the undisputed facts on which SCO's claim rests

and, at bottom, the alleged conduct is precisely the type that the tort of unfair competition was designed to remediate.[4]

    A.    Utah Law Recognizes a Cause of Action for Unfair
          Competition Arising from Misappropriation.

Under Utah law, a claim for unfair competition will lie where plaintiff alleges either palming off or misappropriation of goodwill. Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1280 (10th Cir. 2000). As this Court previously recognized, the "gravamen of a misappropriation claim is that a defendant has seized for his own benefit something of value that the plaintiff had built up through time, money, or effort, which is then generally used to compete against the plaintiff." Proctor & Gamble Co. v. Haugen, 947 F. Supp. 1551, 1554 (D. Utah 1996) (citing Budget Sys., Inc. v. Budget Loan & Fin. Plan, 361 P.2d 512 (Utah 1961)). The court in Budget recognized that a cause of action will lie for unfair competition to "protect the rights and property" of an injured party, consistent with the law and "the rule of fair play." Budget, 361 P.2d at 515; see also Allen's Prods. Co. v. Glover, 414 P.2d 93, 96 (Utah 1966) (recognizing a claim for unfair competition where one party misappropriates the goodwill, trade secrets, or distinguishing design of another.)

While Novell analogizes its undisputed conduct to that at issue in Haugen, the comparison is fair only to the extent that both cases involve the issuance of disparaging statements. The statements at issue in Haugen, while allegedly injurious to plaintiff's business, did not undermine plaintiff's claim of ownership to that business or otherwise deprive the plaintiff of any property interest. Here, Novell misappropriated SCO's copyrights by publicly

---

[4] Novell over-states the breadth of this Court's stay. The Court has not stayed all claims related to "misappropriation," but rather only that portion of SCO's claims relating to the misappropriation of technology into Linux and Novell's efforts to force SCO to compete against its own technology.

asserting ownership of those rights and filing registrations on those copyrights, and intentionally timed its public statements to exploit the greatest value from its false assertions. Novell took these steps knowing that it would detrimentally affect SCO. These facts fall squarely within the "misappropriation" component of an unfair competition claim.

Intellectual property, including copyright ownership, is susceptible of misappropriation, and actionable in the tort of unfair competition. See, e.g., Compuware Corp. v. Int'l Bus. Machs., 257 F. Supp. 2d 597, 606 (E.D. Mich. 2002) ("Because the court finds that the complaint contains sufficient allegations of copyright infringement, and misappropriation of trade secrets, these claims [for unfair competition] are also sufficient."); Frink Am., Inc. v. Champion Rd. Mach. Ltd., 961 F. Supp. 398, 402 (N.D.N.Y. 1997) (recognizing plaintiff's claims for unfair competition, misappropriation of trade secrets and conversion, and copyright infringement). The court in Frink America denied defendant's motion to dismiss on grounds not applicable to the present case, but in so doing, the court recognized that the resolution of these properly alleged claims depended on the interpretation of an agreement which alleged had transferred the contested intellectual property. While presented in a different procedural posture than here, the case is factually analogous and supports SCO's claim for unfair competition based on the misappropriation of its copyrights.

The Tenth Circuit has similarly recognized that a claim for unfair competition based on misappropriation of intellectual property depends upon the plaintiff's ability to sufficiently demonstrate dominion over the disputed concept. The court in Reynolds & Reynolds Co. v. Norick, 114 F.2d 278 (10th Cir. 1940), refused to extend the tort of unfair competition to protect intellectual property that was neither patented nor copyrighted, on the basis that such concepts

belong to the public.  Id. at 281-82; see also Midwest Plastics Corp. v. Protective Closures Co., 285 F.2d 747, 750 (10th Cir. 1960) ("Since these articles in suit are not protected by copyright, patent or the indicia or a secondary meaning, they belong to the public . . . ."). SCO's claims do not implicate the uncertainty at issue in Reynolds, but rather arise from definite, copyrighted works.  Novell's claim of ownership of SCO's intellectual property constitutes actionable misappropriation.

B.    Utah Law Recognizes That Unfair Competition Exists in Cases
      Beyond Palming Off or Misappropriation, Such As Novell's
      Purported Waiver of SCO's Rights to Enforce Its Copyrights.

Novell represents (at 4-5) that unfair competition is limited to "passing off or palming-off" and "misappropriation."  This is an overly narrow statement of the law in Utah.  See, e.g., Novell, Inc. v. Fed. Ins. Co., 141 F.3d 983, 987 (10th Cir. 1998) (examining the meaning of "unfair competition," and stating that it "can either be defined narrowly to mean the tort of 'passing off', i.e., endeavoring to substitute one's own goods or products in the markets for those of another, or broadly to include a 'whole host of loosely defined, unethical business practices'").[5]  Thus, while the "tort of unfair competition often involves the attempt by one person to represent goods or services to the public as the goods or services of another . . . unfair competition is not restricted to this type of public deception."  Am. Airlines v. Platinum World Travel, 769 F. Supp. 1203, 1207 (D. Utah 1990).

Consistent with other jurisdictions, Utah adheres to a broad interpretation of the types of conduct subsumed with unfair competition.  Indeed, this Court has noted:

---

[5]  Federal Insurance Company involved the determination of whether an insurer was required to defend Novell under the insurance policy when Novell was sued for, among other things, unfair competition.

> Unfair competition may encompass other types of conduct. According to Prosser & Keeton, *The Law of Torts*, § 130, at 1015 (1984), unfair competition "does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category into which a number of new torts may be placed when recognized by courts. The category is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values."

Haugen, 947 F. Supp. at 1554 n.4. Referencing a passage from Haugen, Novell omits the sentence leading into its quoted material; the omitted text (particularly when considered in connection with the above-quoted language) supports a more inclusive tort than that proffered by Novell. The quote appearing at page 5 of its motion actually begins with the following preamble: "Unfair competition has developed *generally* into two branches..." and then continues as quoted by Novell. Id. at 1554 (emphasis added).[6]

---

[6] This characterization was accepted by the Tenth Circuit: "P&G admits in their brief that 'the Utah Supreme Court has considered the tort of unfair competition *primarily* in the context of palming off and misappropriation of goodwill." Haugen, 222 F.3d at 1280 (emphasis added). The Tenth Circuit recognizes that it is not a rigid standard, but will be dependent upon the facts of a given case. This fact is only highlighted when considered in the context of Utah statutory law, which, as discussed below, undeniably includes conduct beyond "palming off" and "misappropriation."

Although there are only a few cases addressing the issue in Utah, other jurisdictions have had more frequent occasion to do so. In New York, by example, the essence of an unfair competition claim is that the "defendant has misappropriated the labors and expenditures of another." Saratoga Vichy Spring Co. v. Lehman, 625 F. 2d 1037, 1044 (2d Cir. 1980); see also Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001) ("There is no complete list of the activities which constitute unfair competition. The general principle, however, evolved from all of the cases is that commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or a property right belonging to another."); Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 619 (S.D.N.Y. 2003) ("[A]lthough unfair competition may take many forms, the pivotal question is always the same: whether the conduct complained of is "fair or unfair.") (internal citation and quotation marks omitted); Too, Inc. v. Kohl's Dep't Stores, Inc., 210 F. Supp. 2d 402, 405 (S.D.N.Y. 2002) ("[u]nfair competition may be based on a wide variety of illegal practices, including misappropriation or other forms of 'commercial immorality'"); Mobius Mgmt. Sys, Inc. v. Fourth Dimension Software, Inc., 880 F. Supp. 1005, 1023 n.11 (S.D.N.Y. 1994) (same); Towers Fin. Corp. v. Dun & Bradstreet, Inc., 803 F. Supp. 820, 823 (S.D.N.Y 1992) (noting that an unfair competition claim requires allegation that defendant engaged in "commercial immorality"). Novell's actions are text book examples of the types of "commercial immorality" found to constitute unfair competition.

Although in Haugen the district court declined to find that the tort of unfair competition applied, the case is factually distinguishable. In Haugen, the plaintiff was attempting to convert a garden variety defamation claim (without more) into one for unfair competition, which this Court declined to do. As is clear from the passage quoted by Novell, the opinion was limited to the facts and circumstances as plead: "*no Utah court has extended unfair competition* beyond the two established branches *to include defamation in the marketplace.*" Haugen, 947 F. Supp. at 1554 (emphasis added). The holding was thus clearly constrained to the facts presented. Id. Nor is there any language in the opinion that the holding was intended to limit the application of unfair competition in the manner suggested by Novell. To the contrary, a fair reading of the reasoning employed by this Court would be that where an unfair competition claim does offer further protection for commercial values and is not otherwise *identical* to other causes of action, such a claim exists.

Similarly, in American Airlines v. Christensen, 967 F.2d 410, 417 n.14 (10th Cir. 1992), the Tenth Circuit, in looking at the totality of the defendants' conduct, concluded that such conduct satisfied the elements of the tort of unfair competition. The allegations in Christensen involved the misuse of certain AAdvantage program benefits, where defendants would acquire from members their travel-related awards and then re-sell them. According to the member agreements with AAdvantage members, there is a strict prohibition against the sale, barter or exchange of these member benefits. It was alleged that the defendants were well aware of this prohibition but nonetheless encouraged members to sell their benefits and engaged in other fraudulent and improper conduct. The allegations in Christensen do not fall into either of the two buckets typically associated with an unfair competition claim, but such a claim was

13

nonetheless found to exist.  Utah law recognizes that unfair competition encompasses a broad

array of tortious conduct and is not limited to "palming off" and "misappropriation."

## II.    NOVELL'S CONDUCT IS ACTIONABLE UNDER UTAH'S UNFAIR COMPETITION ACT.

The Unfair Practices Act provides that "unfair methods of competition in commerce or

trade are unlawful."  Utah Code Ann. § 13-5-2.5 (2006).[7]  Although the statute was first enacted

decades ago, until recently it provided little guidance as to the types of conduct that qualified as

"unfair methods of competition."  On its face, however, the statute makes clear that it is not

restrained in the manner suggested by Novell.  See Utah Code Ann. 1953 § 13-5-14.

In May 2004, the Utah legislature enacted the Unfair Competition Act (U.C.A. 1953

§ 13-5a-101 through 104), which is a separate section of the earlier enacted Unfair Practices

Act.  Under the Unfair Competition Act, "unfair competition" is defined as:

> an unfair business practice that, i) (A) is unlawful, unfair or
> fraudulent; **and** (B) leads to a material diminution in value of
> intellectual property; **and** ii) is one of the following:  (A) cyber-
> terrorism, (B) infringement of a patent, trademark, or trade name;
> (C) a software license violation; or (D) predatory hiring practices.

---

[7] The statute states that

> [a]ny person or the State of Utah may maintain an action to enjoin a continuance of any
> act in violation of this chapter, and if the injured by the act, for the recovery of damage.
> If, in such action, the court finds that the defendant is violating or has violated any of the
> provisions of this chapter, it shall enjoin the defendant from a continuance of the
> violation.  It is not necessary that actual damages to the plaintiff be alleged or proved.  In
> addition to such injunctive relief, the plaintiff is entitled to recover from the defendant
> three times the amount of the actual damages sustained or $2,000, whichever is greater,
> plus court costs.

Utah Code Ann. § 13-5-14 (2006).  A person is defined in the statute as "an individual, a corporation, a
partnership, [or] an association."  Utah Code Ann. § 13-5-2 (2006).  A private right of action for damages
therefoe exists.

U.C.A. 1953 § 13-5a-102-4(a) (emphasis added).[8]  Under this section, an injured party may

recover actual damages, costs and attorneys fees and punitive damages.  U.C.A. 1953 §13-5a-

103.[9]  This section makes clear that the conduct alleged here – a violation of a software license

and the blatant derogation of SCO's ownership rights to such technology – constitute unfair

competition.

Here, it is undisputed that Novell and SCO entered into a TLA in conjunction with the

APA.  The two agreements established a license under which Novell would have rights to use the

"Licensed Technology" (as defined in the APA).  The TLA states that "[a]s between Novell and

SCO . . . (1) Ownership of Licensed Technology shall reside in SCO."  TLA § 3.  Novell thus

recognized that it was not the lawful owner of the Licensed Technology.  Novell violated the

TLA by asserting ownership of the UNIX and Unixware copyrights.  This conduct falls squarely

---

[8]  Because the section so clearly is limited to intellectual property type claims, SCO submits that the
Unfair Practices Act and the Unfair Competition Act co-exist.  Utah law continues to recognize claims
under the Unfair Practices Act as well as the Unfair Competition Act.  SCO did not find any cases,
advisory opinions or legislative history indicating otherwise.  In 2005, after the enactment of the Unfair
Competition Act, a Utah court upheld the application of the Unfair Practices Act, although the case itself
arose in 2002.  Russell v. Lundberg, 120 P.3d 541, 547-548 (Utah App. 2005).  The court did not
distinguish on that basis or otherwise indicate that when the claim was filed, it was relevant to its
decision.  Thus, SCO believes that claims may be pursued under both statutes.

[9]  As with the parent statute, the Unfair Competition Act also provides for a private right of action.  The
statute provides, in pertinent part:

> (1)(a) Except as provided in Subsection (2), a person injured by unfair competition may
> bring a private cause of action against a person who engages in unfair competition.

> (b)  In an action under this Subsection (1), a person injured by unfair competition may
>      recover:
> (i)  actual damages;
> (ii)  costs and attorney fees;  and
> (iii) if the court determines that the circumstances are appropriate, punitive damages.

Utah Code Ann. § 13-5a-103 (2006).

within the statutory boundaries for establishing an unfair competition claim, as it is unlawful; has

led to and continues to cause a material diminution in value of intellectual property; and includes

a software license violation.  U.C.A. 1953 § 13-5a-102-4(a).  Thus, in addition to any common-

law rights to pursue a claim of unfair competition, SCO is entitled to proceed with its unfair

competition claim under both the Unfair Competition Act and the Unfair Practices Act.

      A.     Novell's Wrongful Claim of Ownership, in Violation
              Of the Licensing Agreement, Continues Today.

      In the Motion, Novell argues that there is no statutory claim because the Unfair

Competition Act was not enacted until May of 2004.[10]  Even if that were a correct interpretation

of the statute, it is undisputed that Novell continued its false claims of ownership after May 2004

and continues to assert ownership of the copyrights.  Notably, Novell has maintained its claim

throughout this litigation that it owns the UNIX copyrights, as demonstrated by its counterclaim

for slander of title.  See Novell's Answer to Second Amended Complaint and Counterclaims,

Apr. 10, 2006, ¶¶ 94-98 (First Claim for Relief).  Novell's continued claim of ownership of the

UNIX copyrights appears on its webpage.  Novell maintains on its webpage a site entitled

"Novell's Unique Legal Rights," which lists the copyrights Novell has registered.[11]  Novell's

webpage thus perpetuates the wrongful claim.  Novell's argument that its conduct predated the

enactment of the Unfair Competition Act therefore has no merit.[12]

---

[10]  This, of course, has no bearing on any claim brought pursuant to the Unfair Practices Act, which was
enacted many, many years before.

[11]  http://www.novell.com/licensing/indemnity/legal.html (last visited on May 17, 2007).  The site also
makes available all correspondence between Novell and SCO related to this dispute.

[12]  Novell overlooks the fact that this conduct supports a claim under the Unfair Practices Act as well,
which long precedes Novell's conduct.  The UPA states that "unfair methods of competition in commerce
and trade are unlawful."  Utah Code Ann § 13-5-2.5 (2006).  The UPA seeks to protect competition by

**III.  NOVELL'S FALSE, PUBLIC DENIALS OF SCO'S COPYRIGHT OWNERSHIP BREACHED THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING.**

Novell admits (at 7) that the protection of the implied covenants of good faith and fair dealing extend "to effectuate the intentions of parties" and to "protect their reasonable expectations."  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683-84 (1988).  This is a classic case of protection of reasonable expectations, because Novell's malicious conduct deprived SCO of much of the expected value of the assets for which it has paid consideration of over $100 million dollars.

"There is an implied covenant of good faith and fair dealing in every contract that <u>neither party will do anything which will injure the right of the other to receive the benefits of the agreement</u>."  Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979) (emphasis added); accord Comunale v. Traders & Gen. Ins. Co., 50 Cal. 2d 654, 658 (1958); Brown v. Superior Court, 34 Cal. 2d 559, 564 (1949); Universal Sales Corp. v. Cal. Press Mfg. Co., 20 Cal. 2d 751, 771-72 (1942); see also McCollum v. XCare.net, Inc., 212 F. Supp. 2d 1142, 1152 (N.D. Cal. 2002).

Novell, however, has done precisely that:  it intentionally interfered with SCO's right "to the fruits of its bargain."  Ryder Truck Rental, Inc. v. Central Packing Co., 341 F.2d 321, 324 (10th Cir. 1965).  By falsely claiming to the public that SCO did not own the intellectual property that Novell sold to SCO for tens of millions of dollars, and by purporting to waive

---

prohibiting unfair and discriminatory practices. Utah Code Ann § 13-5-17 (2006).  The legislature declared that "the purpose of this act  is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented.  This act shall be liberally construed that its beneficial purposes may be subserved."  Novell's claims of ownership over SCO copyrights and bad faith business dealings certainly falls within this definition.

SCO's rights to enforce those contractual and intellectual property rights, Novell greatly impaired the expected value of that property and deprived SCO of the benefit of its bargain.

The implied covenants can be breached by any type of "objectively unreasonable conduct, regardless of the actor's motive." Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc., 2 Cal. 4th 342, 374 (1992) (the plaintiff is not required to prove dishonesty, "subjective immorality," or a "breach of a specific provision of the contract"). Carma and many other California decisions have approvingly cited § 205 of the Restatement (Second) of Contracts, which states that the implied covenants are violated "by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts." Id., comment e (emphasis added). SCO alleges and the evidence shows that Novell has asserted an interpretation of the APA and related documents contrary to its own understanding.

The Restatement also notes that it is impossible to make a "complete catalogue of types of bad faith" that constitute a breach of the implied covenants. Id., comment d. "[F]air dealing may require more than honesty," and various efforts at "evasion of the spirit of the bargain" and other duplicity have been recognized as breaches in judicial decisions. Id. Thus, despite Novell's unsupported contentions, this cause of action is broad and all-encompassing.

Contrary to Novell's assertion (at 8-9), the decision in Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 102 (1995), is not relevant, let alone "highly relevant," to the present case. Freeman disallowed a tort claim for "bad faith denial of the existence of a contract," not a

<u>contractual</u> claim for breach of implied covenants, which is what SCO has alleged and will prove.[13]  Moreover, here the existence of a contract is undisputed.

Novell's challenged conduct is squarely subject to the implied covenants of good faith and fair dealing, and its motion for summary judgment on this issue should be denied.

**IV.    SCO HAS ADDUCED EVIDENCE THAT IT OWNS THE UNIX AND UNIXWARE COPYRIGHTS, AND AS SUCH NOVELL'S CLAIMS OF OWNERSHIP ARE FALSE.**

Novell's final argument (at 10) rests on its flat assertion that SCO cannot establish that Novell's statements were false.  SCO relies upon and incorporates by reference its concurrently filed and forthcoming memoranda and the evidence cited therein, and states here that overwhelming evidence cited in those briefs establishes that Novell's statements were false and Novell knew it.

---

[13]  In California and elsewhere, tort claims for breach of implied covenants are generally limited to insurance contracts, and the case overruled by <u>Freeman</u> had created confusion because there was no principled distinction between the false denial of the existence of a contract (for which there was tort liability) and the false denial of contractual liability (for which there was no tort liability).  11 Cal. 4th at 93-102.  In contrast, there is implied covenant contractual liability in both situations if the challenged conduct deprives the plaintiff of the fruits of his bargain.  <u>Restatement</u> § 205, comment e.

## CONCLUSION

Accordingly, Novell's motion for partial summary judgment on the copyright ownership portions of SCO's Second Claim for breach of contract and Fifth Claim for unfair competition should be denied in all respects.

DATED this 18th day of May, 2007.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
David Boies
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

DORSEY & WHITNEY LLP
Devan V. Padmanabhan

*Counsel for The SCO Group, Inc.*

By:         /s/ Edward Normand

20

<u>**CERTIFICATE OF SERVICE**</u>

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing **SCO'S MEMORANDUM IN OPPOSITION TO NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COPYRIGHT OWNERSHIP PORTIONS OF SCO'S SECOND CLAIM FOR BREACH OF CONTRACT AND FIFTH CLAIM FOR UNFAIR COMPETITION** was served on Defendant, Novell, Inc., on this 18th day of May, 2007, via CM/ECF, email, and/or hand-delivery, to the following:

> Thomas R. Karrenberg
> John P. Mullen
> Heather M. Sneddon
> ANDERSON & KARRENBERG
> 700 Bank One Tower
> 50 West Broadway
> Salt Lake City, UT 84101
>
> Michael A. Jacobs
> Matthew I. Kreeger
> Kenneth W. Brakebill
> MORRISON & FOERSTER
> 425 Market Street
> San Francisco, CA 94105-248

    /s/ Edward Normand    
Edward Normand
