Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br>a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC.,<br>a Delaware corporation,<br><br>Defendant/Counterclaim-Plaintiff. | **EXHIBITS A-C TO SCO'S RESPONSE IN OPPOSITION TO NOVELL'S MOTION FOR SUMMARY JUDGMENT ON SCO'S FIRST CLAIM FOR SLANDER OF TITLE BASED ON FAILURE TO ESTABLISH SPECIAL DAMAGES**<br><br>**Civil No.: 2:04CV00139**<br><br>Judge Dale A. Kimball<br>Magistrate Brooke C. Wells |

# EXHIBIT A

LEXSEE 2001 USDISTLEXIS 24905



Positive
As of: May 18, 2007

**COMPUTERIZED THERMAL IMAGING, INC., a Nevada corporation, Plaintiff, vs. BLOOMBERG, L.P., Defendant.**

**Case Number: 1:00 cv 98 K**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

*2001 U.S. Dist. LEXIS 24905*

**March 26, 2001, Decided**
**March 28, 2001, Filed; March 29, 2001, Entered on Docket**

**SUBSEQUENT HISTORY:** *Affirmed by Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 2002 U.S. App. LEXIS 24187.*

**DISPOSITION:** [*1] Bloomberg's Motion to Dismiss granted, and CTI's Complaint dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff brought a libel action against defendant as the result of two news articles, which were written by a reporter for defendant. Defendant moved to dismiss, arguing that plaintiff's complaint failed to state a claim upon which relief was able to be granted.

**OVERVIEW:** Plaintiff claimed that certain statements in the articles were libelous per se. Plaintiff claimed that the reporter intentionally made factual statements that he either knew to be false, or that he recklessly disregarded whether such factual implications were true. The court found that it was clear that the alleged libelous statements did not constitute libel per se. They did not charge criminal conduct, loathsome disease, conduct that was incompatible with the exercise of a lawful business, profession, or office, or the unchastity of a woman. The court did find that at least some of the statements could have been considered defamatory by reasonable people. However, the court's conclusion that at least some of the statements could have constituted libel per quod did not save the case. A plaintiff asserting a claim of slander per quod had to plead and prove special damages. Plaintiff failed to sufficiently plead such damages. The alleged special damages were only conjecture and did not result in the realized and liquidated losses required under Utah law.

**OUTCOME:** The motion to dismiss was granted, and plaintiff's complaint was dismissed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] Under *Fed. R. Civ. P. 12(b)(6)* the court will dismiss a claim for relief only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. The Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.

*Torts > Intentional Torts > Defamation > Defamation Per Se*
*Torts > Intentional Torts > Defamation > Elements > Libel*
[HN2] To constitute libel per se, the defamatory words must charge criminal conduct, loathsome disease, con-

Case 2:04-cv-00139-DAK-BCW    Document 303    Filed 05/18/2007    Page 4 of 20

Page 2
2001 U.S. Dist. LEXIS 24905, *

duct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman. In addition, whether the defamatory words are actionable per se is to be determined from their injurious character. The words must be of such common notoriety that damage can be presumed from the words alone.

*Torts > Intentional Torts > Defamation > Elements > Libel*
[HN3] To be defamatory under Utah law, a communication must tend to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby expose him or her to public hatred, contempt or ridicule. *Utah Code Ann. § 45-2-2(1)*. A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about a plaintiff. If no defamatory meaning from the communication can reasonably be inferred by reasonable persons, the action must be dismissed.

*Torts > Intentional Torts > Defamation > Defamation Per Quod*
*Torts > Intentional Torts > Defamation > Elements > Slander*
*Torts > Intentional Torts > Defamation > Remedies > General Overview*
[HN4] A plaintiff asserting a claim of slander per quod must plead and prove special damages.

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Governments > Courts > Authority to Adjudicate*
*Torts > Intentional Torts > Defamation > Remedies > Damages*
[HN5] It is not the province of the United States District Court for the District of Utah, Northern Division, to create new state law.

**COUNSEL:** For COMPUTERIZED THERMAL IMAGING, plaintiff: Robert R Wallace, Lisa J Watts Baskin, PLANT WALLACE CHRISTENSEN & KANELL, SALT LAKE CITY, UT.

For COMPUTERIZED THERMAL IMAGING, plaintiff: Daniel J. Becka, Carl F. Schoeppl, Andrew H. Kayton, SCHOEPPL BURKE & KAYTON, BOCA RATON, FL.

For BLOOMBERG L.P., defendant: Randy L Dryer, PARSONS BEHLE & LATIMER, SALT LAKE CITY, UT.

For BLOOMBERG L.P., defendant: Richard L. Klein, Charles J. Glasser, Jr., Thomas H. Golden, WILLKIE FARR & GALLAGHER, NEW YORK, NY.

**JUDGES:** DALE A. KIMBALL, United States District Judge.

**OPINION BY:** DALE A. KIMBALL

**OPINION:**

**ORDER**

This matter is before the court on Defendant Bloomberg, L.P.'s ("Bloomberg") Motion to Dismiss. A hearing on that motion was held on February 2, 2001. At the hearing, Randy L. Dryer represented Bloomberg, and Daniel J. Becka represented Plaintiff Computerized Thermal Imaging, Inc. ("CTI"). Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered [*2] the law and facts relating to this motion. Now being fully advised, the court renders the following Order.

**I. BACKGROUND**

CTI has brought a libel action against Bloomberg n1 as the result of two news articles, which were written by David Evans, a Bloomberg reporter. The articles were published electronically by Bloomberg on June 29, 2000 and July 18, 2000 (the "Articles"). CTI claims that certain statements in the Articles were libelous per se. CTI claims not that Evans and Bloomberg were merely incorrect in their factual assertions, but that Evans intentionally made factual statements that he either knew to be false or recklessly disregarded whether such factual implications were true. While CTI contends that the statements constitute libel per se, it argues that, even if the statements are libel per quod, it has sufficiently pleaded special damages.

n1 Bloomberg operates a news reporting service under the service mark "Boomberg News."

Bloomberg, however, argues that CTI's Complaint fails [*3] to state a claim upon which relief can be granted. It claims that, under Utah's "innocent construction" rule, each of the statements at issue is reasonably capable of non-defamatory meaning, and thus cannot constitute libel per se. In addition, Bloomberg contends that certain of the sued-upon statements are nonactionable truth, discernable from the four corners of the Complaint and the incorporated exhibits. The remainder of the sued-upon statements, Bloomberg asserts, are con-

stitutionally protected opinion or privileged Fair Comment on matters of public concern. Finally, Bloomberg argues that, even if the court were to find that the statements, while not libel *per se,* may constitute libel *per quod* if proven, the Complaint fails as a matter of law to plead special damages, and CTI cannot prove special damages of the type recoverable under Utah law.

## II. STANDARD OF REVIEW

[HN1] Under *Federal Rule of Civil Procedure 12(b)(6)* this court will dismiss a claim for relief only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them [*4] in the light most favorable to the plaintiff. *Cottrell v. Biotrol Int'l, Inc., 191 F.3d 1248, 1251 (10th Cir. 1999); Riddle v. Mondragon, 83 F.3d 1197, 1201 (10th Cir. 1996).* The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cottrell, 191 F.3d at 1251.*

## III. THE STATEMENTS AT ISSUE

The Complaint alleges that five statements are false and give rise to a cause of action for libel. The five statements are as follows:

. Statement 1 reports that CTI "sold 11.1 million shares of its stock at a 72% discount to its market price," and includes commentary from Professor John Coffee adding that "the market price is well above what more informed parties think it should be." n2

> n2 CTI does not allege that Professor Coffee's comment is itself actionable defamation. Rather, it alleges that such comment is based on the false assertion of fact that the company sold 11.1 million shares at the represented 72% discount and underscores the defamatory nature of the false assertion of fact upon which the comment is based.

[*5]

. Statement 2 reports that CTI needed to sell its stock "to fund money-losing operations."

. Statement 3 reports that the CTI had "struggled to sell its imaging systems," and had at the time sold only one to a Thai hospital.

. Statement 4 reports that a prospective buyer was given options in CTI stock as an "inducement" to purchase CTI's imaging systems.

. Statement 5 reports on a public discussion by CTI's and other medical experts and the public's discussion of the viability of CTI's experimental technology in comparison to traditional mammograms and biopsies.

## IV. DISCUSSION

[HN2] To constitute libel *per se,* "the defamatory words must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman." *Baum v. Gillman, 667 P.2d 41, 43 (Utah 1983).* In addition, "whether the defamatory words are actionable *per se* is to be determined from their injurious character. The words must be of such common notoriety that damage can be presumed from the words alone." *Id.*

It is clear in this case that the alleged libelous statements do not [*6] constitute libel *per se.* They do not charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, profession, or office, or the unchastity of a woman. The question, then, is whether the statements could constitute libel *per quod.* [HN3] To be defamatory under Utah law, a communication must tend to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby expose him or her to public hatred, contempt and ridicule." *Utah Code Ann. § 45-2-2(1); West, 872 P.2d 999, 1008 (Utah 1994).* "A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about a plaintiff." *Cox v. Hatch, 761 P.2d 556, 561 (Utah 1988).* If no defamatory meaning from the communication can reasonably be inferred by reasonable persons, the action must be dismissed. *Cox, 761 P.2d at 562.*

This court concludes that at least some of the statements could be considered defamatory by reasonable people, and therefore, the court declines to dismiss the case on that basis. It is possible that [*7] a jury could conclude that the statements impeached CTI's integrity or reputation and exposed it to public contempt or ridicule. Moreover, at least with regard to Statements 1 and 3, the court disagrees with Bloomberg that those statements constitute protected opinion and/ or fair comment. A reasonable factfinder could conclude that the statements imply assertions of objective fact. *See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990).* For example, regarding Statement 1, Bloomberg's statement that it sold 11.1 million shares of its stock at a 72 percent discount from its market price, according to a filing it made with regulators last week implies two assertions of fact: (1) that CTI sold 11.1 million shares of its stock at a 72 percent discount; and (2)

2001 U.S. Dist. LEXIS 24905, *

that CTI stated this to be so in a filing made with regulators.

Accepting CTI's allegations as true, as this court must, Bloomberg's statements are false, and such falsity can be verified by simply reviewing CTI's filing referred to in the statement. CTI sold 11.1 million shares at $ 2.81 in a private placement that ended on February 29, 2000. The market price on the final day [*8] was $ 9.875. Thus, the $ 2.81 private placement price was discounted 72% from the market price on February 29. However, the private placement price was determined in December 1999, when the market price was around $ 2.50, and the market price remained in the $ 3.47-$ 4.19 dollar range until sometime in February, when CTI submitted a unit to the FDA, and the stock price rose. Clearly, not all 11.1 million shares were sold on February 29, when the market price was $ 9.875. The court also disagrees with Bloomberg's argument that CTI's Complaint concedes that this statement is true or substantially true. If CTI's allegations are true, then several of the statements contained in the Articles are patently false and/ or grossly distorted, and a jury would have to determine whether such statements are libelous under Utah law.

However, the court's conclusion that at least some of the statements could constitute libel per quod does not save CTI's case. [HN4] A plaintiff asserting a claim of slander per quod must plead and prove special damages. Allred v. Cook, 590 P.2d 318, 320-21 (Utah 1979). CTI has failed to sufficiently plead such damages.

Bloomberg asserts that the [*9] special damages alleged by CTI-vague and overreaching loss of stock value, the holding up of several "potential" business transactions, and CTI's future listing on NASDAQ--are in fact, general and speculative and are not the type recoverable under Utah's special damages law. Specifically, Bloomberg argues that CTI's allegation that it suffered "special damages" as the result of a stock price decline caused by the Articles fails as a matter of law for a number of reasons. First, Bloomberg argues, CTI fails to show how a decline in its stock price harmed CTI, as opposed to its shareholders. n3 Second, Bloomberg contends that mere fluctuations in the closing stock price do not constitute realized, liquidated and measurable losses. Third, Bloomberg points out that CTI claims that only "a significant portion of this loss of market capitalization was directly and proximately caused" by the publication of the Articles. Fourth, Bloomberg asserts that CTI's claim that the Articles had a "negative impact on potential transactions with third parties" would never be provable special damages, citing A.H. Belo Corporation v. Saunders, 632 S.W.2d 145, 146 (Tex. 1982). Finally, [*10] Bloomberg argues that the delay in CTI's NASDAQ listing could not possibly represent the loss of a specific, quantifiable sale or transaction.

n3 Bloomberg also notes that CTI has failed to allege that number of shares of stock sold at the lower prices as a result of the Articles, the actual lower prices, if any, or the amount of money lost as a result of such specific stock sales.

CTI, on the other hand, claims that it has properly pleaded special damages, claiming that it has suffered special damages as a direct and proximate result of the publication in the form of lost market capitalization of more than $ 100 million. CTI asserts that this type of damage is recoverable in this action. If such loss of market capitalization is not recoverable, CTI seeks to amend its Complaint to add attorneys fees and costs incurred by CTI in "clearing" its name, which CTI claims are recoverable as special damages.

The court agrees with Bloomberg that the alleged special damages are not the type recoverable under Utah special [*11] damages law. The alleged special damages in this case are only conjecture and do not result in the realized and liquidated losses required under Utah law. See Baum, 667 P.2d at 43 (noting that plaintiffs failed to allege special damages where they did not claim that the statements at issue damaged "any current business endeavor or pursuit"); see also Salit v. Ruden, McClosky, Smith, Schuster & Russell, 742 So.2d 381, 388 (Fla. Ct. App. 1999) (court rejected plaintiffs' theory that a decline in stock value constituted special damages for injurious falsehood, holding that "their pleading [did] not allege any 'realized loss' that is characteristic of 'special damage' that is a crucial element of the cause of action."); A.H. Belo Corp. v. Saunders, 632 S.W.2d 145, 146 (Tex. 1982) (finding that the plaintiff "was required to prove the loss of a specific sale or sales" in order to obtain recovery for special damages in libel action).

The fact that CTI has not requested leave to amend to cure these defects, but rather has requested leave to amend to add a claim for attorneys fees and costs, only bolsters the court's conclusion that [*12] the alleged special damages are too speculative and cannot be proven. Thus, the libel claim must fail as a matter of law.

Finally, CTI has requested leave to amend to add attorneys fees and costs, which, it claims, are recoverable as special damages. The court is unaware of any Utah case law in which the attorneys fees and costs incurred in bringing a defamation action were, without more, sufficient to satisfy the "special damages" rule. Indeed, other courts have found to the contrary. Angio-Medical Corp. v. Eli Lilly & Co., 720 F. Supp. 269, 274 (S.D.N.Y. 1989). [HN5] It is not the province of this court to create new state law. Moreover, such a rule would eviscerate the requirement that special damages must be pleaded

2001 U.S. Dist. LEXIS 24905, *

and proven because every plaintiff necessarily incurs attorneys fees and costs in pursuing a lawsuit. Consequently, CTI's request for leave to amend is denied.

## V. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that Bloomberg's Motion to Dismiss is GRANTED, and CTI's Complaint is DISMISSED.

DATED this 26th day of March, 2001.

BY THE COURT:

DALE A. KIMBALL

United States District Judge

**JUDGMENT IN A CIVIL** [*13] **CASE** - FILED 29 MAR 01; Entered on docket 3/30/01

This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that judgment be entered in favor of the defendant and plaintiff's cause of action is dismissed.

March 29, 2001
*Date*

# EXHIBIT B



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 670927 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

# H

Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.

D.Utah,2001.

Only the Westlaw citation is currently available.

United States District Court, D. Utah, Central Division.

COMPUTERIZED THERMAL IMAGING, INC., a Nevada corporation, Plaintiff,

v.

BLOOMBERG, L.P. Defendant.

**No. 1:00CV98K.**

March 26, 2001.

## ORDER

KIMBALL, J.

**\*1** This matter is before the court on Defendant Bloomberg, L.P.'s ("Bloomberg") Motion to Dismiss. A hearing on that motion was held on February 2, 2001. At the hearing, Randy L. Dryer represented Bloomberg, and Daniel J. Becka represented Plaintiff Computerized Thermal Imaging, Inc. ("CTI"). Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Order.

## I. BACKGROUND

CTI has brought a libel action against Bloomberg [FN1] as the result of two news articles, which were written by David Evans, a Bloomberg reporter. The articles were published electronically by Bloomberg on June 29, 2000 and July 18, 2000 (the "Articles"). CTI claims that certain statements in the Articles were libelous *per se.* CTI claims not that Evans and Bloomberg were merely incorrect in their factual assertions, but that Evans intentionally made factual statements that he either knew to be false or recklessly disregarded whether such factual implications were true. While CTI contends that the statements constitute libel *per se,* it argues that, even if the statements are libel *per quod,* it has sufficiently pleaded special damages.

FN1. Bloomberg operates a news reporting service under the service mark "Boomberg News."

Bloomberg, however, argues that CTI's Complaint fails to state a claim upon which relief can be granted. It claims that, under Utah's "innocent construction" rule, each of the statements at issue is reasonably capable of non-defamatory meaning, and thus cannot constitute libel *per se.* In addition, Bloomberg contends that certain of the sued-upon statements are non-actionable truth, discernable from the four corners of the Complaint and the incorporated exhibits. The remainder of the sued-upon statements, Bloomberg asserts, are constitutionally protected opinion or privileged Fair Comment on matters of public concern. Finally, Bloomberg argues that, even if the court were to find that the statements, while not libel *per se,* may constitute libel *per quod* if proven, the Complaint fails as a matter of law to plead special damages, and CTI cannot prove special damages of the type recoverable under Utah law.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6) this court will dismiss a claim for relief only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. *Cotrell v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10 th Cir.1999); *Riddle v. Mondragon,* 83 F.3d 1197, 1201 (10 th Cir.1996). The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cotrell,* 191 F.3d at 1251.

## III. THE STATEMENTS AT ISSUE

**\*2** The Complaint alleges that five statements are false and give rise to a cause of action for libel. The five statements are as follows:

• Statement 1 reports that CTI "sold 11.1 million shares of its stock at a 72% discount to its market price," and includes commentary from Professor John Coffee adding that "the market price is well above what more informed parties think it should be." [FN2]

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 670927 (D.Utah)
(Cite as: Not Reported in F.Supp.2d)

Page 2

FN2. CTI does not allege that Professor Coffee's comment is itself actionable defamation. Rather, it alleges that such comment is based on the false assertion of fact that the company sold 11.1 million shares at the represented 72% discount and underscores the defamatory nature of the false assertion of fact upon which the comment is based.

• Statement 2 reports that CTI needed to sell its stock "to fund money-losing operations."
• Statement 3 reports that the CTI had "struggled to sell its imaging systems," and had at the time sold only one to a Thai hospital.
• Statement 4 reports that a prospective buyer was given options in CTI stock as an "inducement" to purchase CTI's imaging systems.
• Statement 5 reports on a public discussion by CTI's and other medical experts and the public's discussion of the viability of CTI's experimental technology in comparison to traditional mammograms and biopsies.

## IV. DISCUSSION

To constitute libel *per se*, "the defamatory words must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman." *Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983). In addition, "[w]hether the defamatory words are actionable *per se* is to be determined from their injurious character. The words must be of such common notoriety that damage can be presumed from the words alone." *Id.*

It is clear in this case that the alleged libelous statements do not constitute libel *per se*. They do not charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, profession, or office, or the unchastity of a woman. The question, then, is whether the statements could constitute libel *per quod*. To be defamatory under Utah law, a communication must tend to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby expose him or her to public hatred, contempt or ridicule." Utah Code Ann. § 45-2-2(1); *West*, 872 P.2d 999, 1008 (Utah 1994). "A publication is not defamatory simply because it is nettlesome or

embarrassing to a plaintiff, or even because it makes a false statement about a plaintiff." *Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988). If no defamatory meaning from the communication can reasonably be inferred by reasonable persons, the action must be dismissed. *Cox*, 761 P.2d at 562.

This court concludes that at least some of the statements could be considered defamatory by reasonable people, and therefore, the court declines to dismiss the case on that basis. It is possible that a jury could conclude that the statements impeached CTI's integrity or reputation and exposed it to public contempt or ridicule. Moreover, at least with regard to Statements 1 and 3, the court disagrees with Bloomberg that those statements constitute protected opinion and/or fair comment. A reasonable factfinder could conclude that the statements imply assertions of objective fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). For example, regarding Statement 1, Bloomberg's statement that it sold 11.1 million shares of its stock at a 72 percent discount from its market price, according to a filing it made with regulators last week implies two assertions of fact: (1) that CTI sold 11.1 million shares of its stock at a 72 percent discount; and (2) that CTI stated this to be so in a filing made with regulators.

*3 Accepting CTI's allegations as true, as this court must, Bloomberg's statements are false, and such falsity can be verified by simply reviewing CTI's filing referred to in the statement. CTI sold 11.1 million shares at $2.81 in a private placement that ended on February 29, 2000. The market price on the final day was $9.875. Thus, the $2.81 private placement price was discounted 72% from the market price on February 29. However, the private placement price was determined in December 1999, when the market price was around $2 .50, and the market price remained in the $3.47-$4.19 dollar range until sometime in February, when CTI submitted a unit to the FDA, and the stock price rose. Clearly, not all 11.1 million shares were sold on February 29, when the market price was $9.875. The court also disagrees with Bloomberg's argument that CTI's Complaint concedes that this statement is true or substantially true. If CTI's allegations are true, then several of the statements contained in the Articles are patently false and/or grossly distorted, and a jury would have to determine whether such statements are libelous under Utah law.

However, the court's conclusion that at least some of the statements could constitute libel *per quod* does not save CTI's case. A plaintiff asserting a claim of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                         Page 3
Not Reported in F.Supp.2d, 2001 WL 670927 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

slander *per quod* must plead and prove special damages. *Allred v. Cook,* 590 P.2d 318, 320-21 (Utah 1979). CTI has failed to sufficiently plead such damages.

Bloomberg asserts that the special damages alleged by CTI-vague and overreaching loss of stock value, the holding up of several "potential" business transactions, and CTI's future listing on NASDAQ-are in fact, general and speculative and are not the type recoverable under Utah's special damages law. Specifically, Bloomberg argues that CTI's allegation that it suffered "special damages" as the result of a stock price decline caused by the Articles fails as a matter of law for a number of reasons. First, Bloomberg argues, CTI fails to show how a decline in its stock price harmed CTI, as opposed to its shareholders.[FN3] Second, Bloomberg contends that mere fluctuations in the closing stock price do not constitute realized, liquidated and measurable losses. Third, Bloomberg points out that CTI claims that only "a *significant portion* of this loss of market capitalization was directly and proximately caused" by the publication of the Articles. Fourth, Bloomberg asserts that CTI's claim that the Articles had a "negative impact on potential transactions with third parties" would never be provable special damages, citing *A.H. Belo Corporation v. Saunders,* 632 S.W.2d 145, 146 (Tex.1982). Finally, Bloomberg argues that the delay in CTI's NASDAQ listing could not possibly represent the loss of a specific, quantifiable sale or transaction.

> FN3. Bloomberg also notes that CTI has failed to allege that number of shares of stock sold at the lower prices as a result of the Articles, the actual lower prices, if any, or the amount of money lost as a result of such specific stock sales.

CTI, on the other hand, claims that it has properly pleaded special damages, claiming that it has suffered special damages as a direct and proximate result of the publication in the form of lost market capitalization of more than $100 million. CTI asserts that this type of damage is recoverable in this action. If such loss of market capitalization is not recoverable, CTI seeks to amend its Complaint to add attorneys fees and costs incurred by CTI in "clearing" its name, which CTI claims are recoverable as special damages.

**\*4** The court agrees with Bloomberg that the alleged special damages are not the type recoverable under

Utah special damages law. The alleged special damages in this case are only conjecture and do not result in the realized and liquidated losses required under Utah law. *See Baum,* 667 P.2d at 43 (noting that plaintiffs failed to allege special damages where they did not claim that the statements at issue damaged "any current business endeavor or pursuit"); *see also Salit v. Ruden, McClosky, Smith, Schuster & Russell,* 742 So.2d 381, 388 (Fla.Ct.App.1999) (court rejected plaintiffs' theory that a decline in stock value constituted special damages for injurious falsehood, holding that "their pleading [did] not allege any 'realized loss' that is characteristic of 'special damage' that is a crucial element of the cause of action."); *A.H. Belo Corp. v.. Saunders,* 632 S.W.2d 145, 146 (Tex.1982) (finding that the plaintiff "was required to prove the loss of a *specific* sale or sales" in order to obtain recovery for special damages in libel action).

The fact that CTI has not requested leave to amend to cure these defects, but rather has requested leave to amend to add a claim for attorneys fees and costs, only bolsters the court's conclusion that the alleged special damages are too speculative and cannot be proven. Thus, the libel claim must fail as a matter of law.

Finally, CTI has requested leave to amend to add attorneys fees and costs, which, it claims, are recoverable as special damages. The court is unaware of any Utah case law in which the attorneys fees and costs incurred in bringing a defamation action were, without more, sufficient to satisfy the "special damages" rule. Indeed, other courts have found to the contrary. *Angio-Medical Corp. v. Eli Lilly & Co.,* 720 F.Supp. 269, 274 (S.D.N.Y.1989). It is not the province of this court to create new state law. Moreover, such a rule would eviscerate the requirement that special damages must be pleaded and proven because every plaintiff necessarily incurs attorneys fees and costs in pursuing a lawsuit. Consequently, CTI's request for leave to amend is denied.

## V. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that Bloomberg's Motion to Dismiss is GRANTED, and CTI's Complaint is DISMISSED.

D.Utah,2001.
Computerized Thermal Imaging, Inc. v. Bloomberg,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 670927 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**


L.P.
Not Reported in F.Supp.2d, 2001 WL 670927
(D.Utah)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                           Page 1
Not Reported in F.Supp.2d, 2003 WL 259142 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Marseilles Hydro Power, LLC. v. Marseilles Land &
Water Co.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
MARSEILLES HYDRO POWER, LLC, Plaintiff,
v.
MARSEILLES LAND & WATER COMPANY,
Defendant.
**No. 00 CV 1164.**

Feb. 4, 2003.

*MEMORANDUM OPINION AND ORDER*
LEINENWEBER, J.
**\*1** This case comes before the Court pursuant to a
September 13, 2002 reassignment order following a
remand by the Seventh Circuit. Plaintiff Marseilles
Hydro Power, LLC (the "Power Company") brings
this three-count second amended complaint
("Complaint") against Marseilles Land & Water
Company (the "Canal Company"), seeking a
declaratory judgment ("Count I") and related
injunctive relief ("Count II") in connection with an
alleged breach of contract. The Power Company also
asserts a state common law claim for slander of title
("Count III"). The Canal Company has
counterclaimed for breach of contract. Presently up
for decision is the Canal Company's Motion to
Dismiss the Complaint based on Rules 9 and 12(b)(6)
of the Federal Rules of Civil Procedure. For the
following reasons, the Motion is granted in part and
denied in part.

Preliminary Procedural Matters

The Power Company filed its original complaint on
February 28, 2000, and then amended it with leave of
this Court on October 31, 2002. The Canal
Company's November 26, 2002 Motion to Dismiss
was addressed to that first amended complaint. As
part of its response to the Motion to Dismiss, the
Power Company tendered a second amended
complaint. The Canal Company appears to have no
objection to the second amended complaint being
filed; in fact, the Canal Company has assumed the
validity of the second amended complaint in its reply,

acknowledging that the basis for its Motion to
Dismiss Count I has been rendered moot.
Accordingly, pursuant to Federal Rule of Civil
Procedure 15(a), the Court accepts the second
amended complaint and shall treat it as the operative
complaint for purposes of this Motion to Dismiss.
However, as a housekeeping matter, the Court notes
that the second amended complaint does not appear
to have been formally filed with the clerk or entered
onto the docket for this case. Accordingly, the Court
hereby directs the Power Company formally to file it
within seven (7) days, along with all exhibits, with
the clerk of the United States District Court for the
Northern District of Illinois. The Canal Company's
Motion to Dismiss, although aimed at the first
amended complaint, shall stand as to any alleged
defects in the complaint that have survived the
second amendment. *Cf.* 6 Charles Alan Wright,
Arthur R. Miller & Mary Kay Kane, *Federal
Practice and Procedure,* § 1476 at 558 (2d Ed.1990)
(hereinafter, "Wright & Miller") ("[D]efendants
should not be required to file a new motion to dismiss
simply because an amended pleading was introduced
while their motion was pending. If some of the
defects raised in the original motion remain in the
new pleading, the court simply may consider the
motion as being addressed to the amended
pleading.").

BACKGROUND

The Canal Company and the Power Company are
parties to an Indenture dated June 1, 1910, as
amended on June 1, 1924 and as further amended on
November 29, 1979 (the "Indenture"). According to
the Complaint, the Indenture obligates the Canal
Company to provide the Power Company with water
power by means of a manmade race and dam
(collectively, "the power canal") constructed adjacent
to the Illinois River in the Town of Marseilles. In
return, "[p]rovided that [the Canal Company] is not
in default, the Indenture calls for [the Power
Company] to pay a minimum rent of $41,500 per
year." (Compl.¶ 35.) The Power Company is in the
process of rehabilitating a long-disused hydroelectric
power plant (the "Power Plant") which, if and when
it is finally operational, will be powered by the water
supply guaranteed under the Indenture.

**\*2** Before the Power Company can return the Power

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 259142 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Plant to service, it must clear the following obstacles: (i) it must obtain a license from the Federal Energy Regulatory Commission ("FERC"), *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co., 299 F.3d 643, 650 (7th Cir.2002)*; (ii) it must secure a license from the Illinois Department of Natural Resources, which will first require that some portion of the accumulated sediment on the floor of the power canal be removed; and (iii) one of the channel walls of the power canal has collapsed and must be repaired in accordance with certain governmental approvals, including that of the Illinois Historic Preservation Society. The Power Company maintains that, under the express terms of the Indenture, it is the Canal Company's obligation to remove the sediment load and to repair and restore the power canal channel wall. The Power Company claims that "[a]lthough requested to do so, [the Canal Company] has failed and refused to remedy these conditions" and is therefore in breach of the Indenture. (Compl.¶ 32.) The Power Company has refused to pay rent so long as the power canal remains in disrepair (Answer to Countercl. ¶ 9.); the Canal Company has counterclaimed for the withheld rent.

In Count I, the Power Company seeks a declaratory judgment that the Canal Company is in breach of its alleged obligations under the Indenture "to remove the sediment in the power canal with all reasonable diligence and dispatch" and "to repair and restore the power canal channel wall in a good and workmanlike manner." (Compl. at 7-8.) Pointing to the Canal Company's alleged financial inability to make the needed repairs to the power canal or to pay compensatory damages for its failure to do so, in Count II the Power Company seeks an injunction against the Canal Company's interfering with it entering the Canal Company's property to repair the power canal "in accordance with plans and procedures approved by this Court." (Compl.¶ ¶ 42-44.) The Power Company further argues that any such work should be carried out at the Canal Company's expense, and therefore asks this Court to grant the Power Company "a first and paramount lien on all assets of [the Canal Company] to secure the repayment of the costs and expenses incurred ... in effectuating the repairs and removal of sediment load...." (Compl.¶ 45.)

Finally, in Count III the Power Company brings a claim for slander of title, alleging that the Canal Company filed with the Recorder of Deeds of LaSalle County (the "Recorder of Deeds") on or about July 17, 2001 a document stating that the Indenture had been terminated. The Power Company

claims that in October 2000 it had recorded with the Recorder of Deeds a notice of renewal and extension of the Indenture and had served a copy of that paperwork on the Canal Company. The Power Company also notes that on November 7, 2000, Judge Conlon of this district had declared that the Power Company was a valid party to the Indenture and that the Indenture was in full force and effect. Accordingly, the Power Company maintains that the Canal Company's filing was false and malicious and that the Power Company suffered various special damages as a result. The Power Company also prays for punitive damages in connection with this count, claiming that the "recording of the instrument ... was done in a malicious manner and in an attempt to harm" the Power Company. (Compl.¶ 55.)

## STANDARD OF REVIEW

*3 A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). In ruling on a motion to dismiss, a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* A motion to dismiss will not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

## DISCUSSION

### COUNT II

As the Seventh Circuit emphasized in its opinion, this case boils down to a contract dispute. *Marseilles Hydro Power, LLC,* 299 F.3d at 651. The heart of that dispute is set out in Count I, which seeks a declaration of the rights and duties of the parties under certain provisions of the Indenture, and in the Canal Company's counterclaim for breach of the Indenture. Count II is simply a claim for a certain type of relief-an injunction (as well as specific performance, in the form of a lien on the Canal Company's assets).

The Canal Company initially argues that Count II should be dismissed because the Court "may not have

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 259142 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

authority to order the injunctive relief" requested, "as the [FERC] has primary jurisdiction with regard to such matters." (Mot. to Dismiss ¶ 6.) The Canal Company is entirely mistaken. First, as a foundational matter, the Court most certainly has the *authority* to award injunctive relief in this case. *See Califano v. Yamasaki,* 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."). The precise scope and details of any such injunction are, of course, not known at this preliminary stage (nor, for that matter, are they suggested by the Power Company, which acknowledges that an injunction would only issue "in accordance with plans and procedures to be approved by this Court" (Compl.¶ 46)), and would not become the subject of the Court's attention until and unless the Power Company prevails in this case and the Court decides to issue an injunction. At that point, the doctrine of primary jurisdiction might require the Court to *refer* certain issues to the FERC to ensure that the putative injunction properly integrates, and dovetails with, any FERC-imposed requirements related to repair of the power canal. *Marseilles Hydro Power, LLC,* 299 F.3d at 652; *cf. Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944) ( "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."). But the fact that it may be appropriate to refer select issues to FERC at a later stage of this case to ensure such a synthesis is certainly no basis for preemptively dismissing altogether the possibility of injunctive relief.

**\*4** Alternatively, the Canal Company argues that Count II should be stayed pending resolution of the FERC licensing proceeding. The Seventh Circuit suggested as much in its opinion, noting that

though there is no issue to refer to the FERC at the present time it might be a good idea for the district court to stay the lawsuit until the FERC proceeding concludes, since that proceeding may quite possibly either render the lawsuit moot (if the license is denied) except for the matter of unpaid rent, or require significant changes in the equitable relief ordered should the [P]ower [C]ompany succeed in proving its case.

*Marseilles Hydro Power, LLC,* 299 F.3d at 652. There is great sense in this suggestion; it would serve the interests of judicial economy and streamline the parties' expenditure of legal efforts. *Cf. Levya v. Certified Grocers of Calif.,* 593 F.2d 857, 863-64

(9th Cir.1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.") Accordingly, for these and all the other reasons discussed in the Seventh Circuit's opinion, the Court hereby stays Count II pending final resolution of the Power Company's licensing proceeding before the FERC.

### COUNT III

In Illinois, slander of title "is established where there has been a false and malicious publication, either oral or written, of words disparaging a person's title to property which results in special damages." *Home Invs. Fund v. Robertson,* 295 N.E.2d 85, 87 (Ill.App.1973). The Canal Company contends that Count III should be dismissed because (i) the Power Company has failed to plead "special" damages, and (ii) the damages that are alleged are not set forth with the specificity required by Federal Rule of Civil Procedure 9(g) ("Rule 9(g)"). The Canal Company also argues that, insofar as Count III seeks punitive damages, it should be dismissed because the Power Company has failed "to allege egregious conduct with the specificity required by Rule 9(g)." (Mot. to Dismiss at 3.)

#### *Special Damages*

"Special damages are usually considered to be damages that naturally, but not necessarily, flow from the wrongful conduct of another, while general damages naturally and necessarily flow from the wrongful conduct." *Moore v. Boating Indus. Ass'ns,* 754 F.2d 698, 716 (7th Cir.1985); *see also Neal v. Honeywell, Inc.,* 191 F.3d 827, 832 (7th Cir.1999) ("Whether a particular kind of injury gives rise to 'special' damages ... depends on the tort committed. The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.' "); *Moricoli v. P & S Mgmt. Co.,* 432 N.E.2d 903, 906-07 (Ill.App.1982) ("Special damages are such as have actually occurred, computable in money, which are the natural, but not the necessary, result of the alleged wrong ...." (quoting 53 C.J.S. *Libel and Slander* §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2003 WL 259142 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

240 (1948)). "Getting the distinction right might matter for pleading (see Fed.R.Civ.P. 9(g)), or it might determine whether one has a claim at all...." Neal, 191 F.3d at 832. In this case, it matters for both purposes.

**\*5** A plaintiff bringing a cause of action for slander of title must specifically allege and prove special damages. Fed.R.Civ.P. 9(g); Cont'l Nut Co. v. Robert L. Berner Co., 393 F.2d 283, 286 (1968) ("[S]uch is the nature of special damages. They are such as really took place. They are not to be implied but are to be specifically proved."). In a slander of title action, "special damages" mean specific pecuniary losses resulting from the slander. James O. Pearson, Jr., Annotation, What Constitutes Special Damages in Actions for Slander of Title, 4 A.L.R.4th 532 (1981) ("It is a well settled principle ... that the injured party can recover only for pecuniary losses resulting from the disparaging words or material, that is, recovery is limited to harm to those interests having pecuniary value."); 50 Am.Jur.2d Libel and Slander § 557 ("special damages" in slander of title action consist of "pecuniary loss"); accord Restatement (Second) of Torts § 633 (1977); cf. Bryson v. News Am. Publ'ns, Inc., 672 N.E.2d 1207, 1222 (Ill.1996) (discussing defamation per quod, noting that "special damages" mean "pecuniary loss resulting from the defamatory statement"); see generally 22 Am.Jur.2d Damages § 41 ("In tort cases, special damages are usually synonymous with pecuniary loss."). Insisting on specific allegations and proof of special damages in a slander of title action distinguishes it from defamation actions "in which the defamatory material is characterized as defamatory per se, [and in which] the plaintiff may [therefore] recover general compensatory damages without proving special damages." Brown & Williamson Tobacco Corp. v. Jacobson, 827 F.2d 1119, 1138 (7th Cir.1987); see also Bryson, 672 N.E.2d at 1214 ("If a defamatory statement does not fall within one of the limited categories of statements that are actionable per se, the plaintiff must plead and prove that she sustained actual damage of a pecuniary nature ('special damages') to recover.").

The Power Company claims to have "incurred special damages including, but not limited to, a diminution in value of its property caused by the slander and the expenditure of attorneys' fees and costs necessary to clear the slander of title, and the imposition of higher financing costs for any future development of the property." (Compl.¶ 53.) Diminution in value of the property to which the title relates, as well as attorneys' fees and costs "which directly flow from the wrongful disparagement" (i.e., fees and costs incurred in clearing the slander of title, but not those expended in the course of bringing a slander of title action), do constitute recoverable special damages in Illinois. See Robertson, 295 N.E.2d at 88. Potentially higher financing costs in the future do not, however, as such damages are both contingent and speculative. As the Illinois Supreme Court has held:
The general rule of damages in a tort action is that the wrongdoer is liable for all injuries resulting directly from the wrongful acts, provided the particular damages are the legal and natural consequences of the wrongful act imputed to the defendant, and are such as might reasonably have been anticipated. Remote, contingent, or speculative damages do not fall within this general rule.

**\*6** Haudrich v. Howmedica, Inc., 662 N.E.2d 1248, 1256 (Ill.1996); cf. Robertson, 295 N.E.2d at 88 (plaintiff is entitled to recover "those damages directly related to a slander of his title") (emphasis supplied); 50 Am.Jur.2d Libel and Slander § 557 (in slander of title action, plaintiff is restricted to attorneys' fees and costs "reasonably necessary ... to remove the doubt cast upon vendibility or value" and "pecuniary loss that results directly and immediately from the conduct of third persons") (emphasis supplied). Accordingly, Count III is dismissed to the extent that it prays for special damages related to "the imposition of higher financing costs for any future development of the property."

### Rule 9(g)

Although Illinois law determines the substantive elements making up a slander of title action, "the form in which [the action] is stated is governed by federal, not state, standards of pleading." See Wright & Miller, § 1311 at 710-11. Rule 9(g) requires that "items of special damage ... be specifically stated." Fed.R.Civ.P. 9(g); Mader v. Motorola, 1998 WL 164880, at \*7 (N.D. Ill. April 3, 1998) ("Special damages must be pled with particularity."). In significant part, the specificity requirement of Rule 9(g) exists to give defendants adequate notice of the items of special damage that a plaintiff seeks to recover. See Ores v. Willow West Condo. Ass'n, 1996 WL 111894, at \*6 (N.D.Ill. March 12, 1996). Thus, as a first observation, the Court notes that the Power Company's allegation that it has incurred special damages "including, but not limited to," those listed in the Complaint is improper under Rule 9(g). The Power Company may not withhold, or reserve for later disclosure, its alleged items of special damage,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 259142 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

but rather must reveal them in its Complaint. *See id.* (Rule 9(g) "requires that the plaintiff plead facts that adequately reveal the nature of the claimed damages to permit the defendant to respond in his answer and further delineate the claim during pretrial discovery ."). Accordingly, the Court shall not consider, nor shall the Canal Company be held to answer (during the pre-trial or trial phase of this litigation), for items of special damage that do not specifically appear in the Complaint. *Cf.* Wright and Miller, § 1312 at 713-14.

Turning now to the pleading specificity of the two items of special damage that remain-diminution of property value and attorneys' fees and costs-the Court holds that the latter passes muster under Rule 9(g), but the former does not. As a general matter, it bears emphasis that "the level of specificity that must be provided under Rule 9(g) is uncertain and not reducible to formula. It will depend upon the nature of the claim, the type of injury sustained, and the causal connection between defendant's conduct and the damage." Wright and Miller, § 1311 at 708. To be sure, "an allegation of special damages is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with as great precision as might be possible or desirable." *Cont'l Nut Co.,* 345 F.2d at 397 (internal quotation marks omitted). In particular, the Seventh Circuit has held that "an estimation of final total dollar amounts lost is unnecessary." *Action Repair, Inc. v. Am. Broad. Cos.,* 776 F.2d 143, 150 (7th Cir.1985). Nonetheless, "the pleadings must demonstrate some actual pecuniary loss." *Id.* For example, allegations that "defendants' false and malicious statements" caused plaintiff to "decrease its sales" and "threaten[ed] to destroy or nearly destroy the value of [plaintiff's] investment" in the defamed property were held not to satisfy the requirement under Rule 9(g) that a plaintiff "plead actual, realized pecuniary injury ." *Brown & Williamson Tobacco Corp.,* 713 F.2d at 270. On the other hand, in the context of a libel *per quod* case (another type of action requiring allegation and proof of special damages), the Seventh Circuit has held that itemization of "specific figures of ... gross sales before and after the [alleged defamatory] publication," as well as an averment that "the decrease in sales was the natural and proximate result" of the publication, was sufficient under Rule 9(g). *Id.* (internal quotation marks omitted); *accord Action Repair, Inc.,* 776 F.2d at 150.

*7 In this case, the Power Company must set forth with greater particularity how and to what extent the

value of its property has been irreparably diminished by the temporary cloud on title. In its present form, the Power Company's broad allegation of a "diminution in value of its property" (Compl.¶ 53) fails to demonstrate the type of "actual, realized pecuniary injury" that Rule 9(g) demands. *Brown & Williamson Tobacco Corp.,* 713 F.2d at 270; *cf. Moore,* 754 F.2d at 717 n. 30 ("[W]hen a person claims special damages, because they do not necessarily flow from the wrongful conduct, an itemized list of those damages normally must be submitted to the court."). The Complaint does not allege, for example, that the cloud on title, while it existed, deleteriously affected the final terms or conditions of, or irreversibly derailed, a transaction involving the property. Nor is there any explicit contention that, even after the cloud on title was cleared, the alleged slander had a damaging residual effect on the vendibility or market value of the property. Put simply, the Power Company has failed to "present ... the elements of injury ... allegedly suffered." Wright and Miller, § 1311 at 706. Accordingly, Count III is dismissed to the extent it rests on an allegation of special damage consisting of "diminution in value of ... property."

### Punitive Damages

The Canal Company's final objection to Count III is that the Power Company has failed to allege the type of egregious conduct that would justify the imposition of punitive damages in this case, and in any event has failed to do so "with specificity" (Mot. to Dismiss ¶ 9). Taking the second part of the objection first, the Canal Company is flatly wrong to contend that the prayer for punitive damages in this case must be set forth with specificity. *See Boykin v. Golden Rule Insurance Co.,* 1988 WL 107363, at *1 (N.D.Ill. Oct. 13, 1988); *see also Maglione v. Cottrell, Inc.,* 2001 WL 946189, at *2 (N.D.Ill. April 27, 2001). The Power Company's prayer for punitive damages must simply comport with the liberal notice-pleading requirements of Federal Rule of Civil Procedure 8, and it does so.

Turning now to the first part of the objection, the Court initially notes that punitive damages are recoverable under Illinois law in a slander of title action, *see Chicago Title & Trust Co. v. Levine,* 2002 WL 1350442, at *3-4 (Ill.App. June 19, 2002); *Van Tuyl v. Riner,* 1878 WL 10575, at *4 (Ill.App.1878), but may only be awarded if the defendant's conduct is marked by "fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 359 (Ill.1978). "While the question of whether punitive damages can be awarded for a particular cause of action is a matter of law, the question of whether a defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages is for the jury to decide." *Cirrincione v. Johnson,* 703 N.E.2d 67, 70 (Ill.1998); *West v. W. Cas. & Sur. Co.,* 846 F.2d 387, 398 (7th Cir.1988). In other words, whether the Canal Company must answer in punitive damages for its alleged conduct in Count III will ultimately depend on the resolution of myriad questions of fact. That resolution will not take place now; deciding a motion to dismiss is not a fact-based inquiry. *Homeyer v. Stanley Tulchin Assocs., Inc.,* 91 F.3d 959, 962 (7th Cir.1996). Rather, at this stage the Court is duty-bound to "construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Scheuer,* 416 U.S. at 236.

**\*8** The Complaint adequately sets forth allegations which, if true, could support an award of punitive damages. The Power Company alleges that the Canal Company "signed and recorded with the Recorder of Deeds of LaSalle County, on or about July 17, 2001, a document that states that the Indenture had been terminated." (Compl.¶ 51.) According to the Power Company, the Canal Company filed this termination document (i) with full knowledge that the Power Company had, in October 2000, "recorded with the Recorder of Deeds of LaSalle County a notice of its renewal and extension of the Indenture," and (ii) in open disregard of Judge Conlon's November 7, 2000 judgment that the Power Company was a party to, and "had properly extended the term of," the Indenture. (Id. ¶ 50.) The Power Company claims that the termination document is "false," that the Canal Company "had no authority to terminate the Indenture," and that it did so "in a malicious manner and in an attempt to harm [the Power Company] and to prevent [the Power Company] from obtaining governmental approvals necessary or helpful to the operation of the hydroelectric power plant...." (Compl.¶ ¶ 52, 55.) These allegations plainly satisfy Rule 8, and could, if proved, allow a jury to award punitive damages.

*CONCLUSION*

For the foregoing reasons, Defendant Marseilles Land & Water Company's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

Count II of the Complaint is STAYED pending final resolution of Marseilles Hydro Power, LLC's licensing proceeding before the Federal Energy Regulatory Commission. Count III of the Complaint is DISMISSED to the extent that it prays for special damages consisting of (i) "the imposition of higher financing costs for any future development of the property" and (ii) "diminution in value of ... property." Marseilles Hydro Power, LLC is ordered to file with the clerk of the United States District Court for the Northern District of Illinois, within seven (7) days of receipt of this Memorandum Opinion and Order, the Second Amended Complaint (along with all exhibits) that was included as an exhibit to its December 23, 2002 Response to the Motion to Dismiss.

IT IS SO ORDERED.

N.D.Ill.,2003.
Marseilles Hydro Power, LLC. v. Marseilles Land & Water Co.
Not Reported in F.Supp.2d, 2003 WL 259142 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant, Novell, Inc., on this 18th day of May, 2007, via CM/ECF, email, and/or hand-delivery, to the following:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
Kenneth W. Brakebill
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-248

_/s/ Edward Normand_