Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, <br><br> Plaintiff/Counterclaim-Defendant, <br><br> vs. <br><br> NOVELL, INC., a Delaware corporation, <br><br> Defendant/Counterclaim-Plaintiff. | **DECLARATION OF G. GERVAISE DAVIS III** <br><br> **Civil No.: 2:04CV00139** <br><br> Judge Dale A. Kimball <br> Magistrate Brooke C. Wells |

I, G. GERVAISE DAVIS III, declare as follows:

1.   I was admitted to the District of Columbia Bar in 1958 and the California Bar in 1959 (CA Bar #29501).  Since then I have been admitted in nearly all the federal courts in the State of California, as well as before the U.S. Supreme Court, the U.S. Tax Court, and numerous Federal Circuit and District Court in states other than California.  I am no longer an active member of the D.C. Bar.  I have been practicing law for nearly fifty years, except for two recent years when I was inactive due to medical issues.  (My Curriculum Vitae is attached hereto as Exhibit A to this Report.)

2.   During the time I practiced law as a technology and intellectual property lawyer (over forty years),  I devoted approximately 90% of my time to the representation of computer software and hardware companies, as well as hundreds of corporate and business users of software.  The subject matter of this practice covered (among other topics) the creation and development, authorship, sale, licensing, distribution and use of computer software.  The practice involved the core issues arising under the federal and state laws relating to copyright, patent, and trade secret protection of computer software.  During that time, I participated in the negotiation of software licenses acquiring, transferring, licensing, or otherwise permitting end-user companies and individuals to use highly valuable and expensive software and other assets in these businesses.  My representation of clients also often included situations where the software package was being acquired and/or licensed for further development and the future marketing of it by a second party to third party end users.

3.   In that work, my involvement included helping clients by developing business strategies for protecting, acquiring, selling and licensing software.  Such work required that I gain a detailed understanding of the economics of software licensing and ownership, including

1

how to control and help clients derive maximum economic benefits from the high cost of developing, selling and acquiring such software, or conversely, how to keep the transaction costs associated with acquiring or licensing software to a minimum. Those goals were often in opposition, depending upon the client I was representing. Based on such experience (among other factors), I believe I have a detailed, accurate and useful understanding of the complex customs and practices of software licensing and how those practices bear on the instant dispute between The SCO Group, Inc. ("SCO") and Novell, Inc. ("Novell").

    4.    Some of the major companies I represented with respect to the foregoing issues were Sun Microsystems, Silicon Graphics, Hewlett Packard, Atari and Fujitsu, as well as my one of my primary clients, Digital Research, Inc., the developer of the first recognized, standardized microcomputer operating system called "CP/M" and later called "DR-DOS." On behalf of my clients I have written and negotiated software licenses with Apple, DEC, IBM, Intel, Control Data, NCR, Burroughs, Ashton Tate, Word Perfect, Novell, and at least a hundred or more smaller software and hardware companies, as well as for or with many other businesses using, acquiring, licensing or selling the copyrights and other rights in the software at issue.

    5.    In the course of such representation, I was often asked to advise these clients on software copyright issues and questions copyright ownership and the various rights such ownership creates, as well as the obligations it imposes upon the owners and licensors of the copyrights. In such capacities, I had to understand the relative industry customs and practices relating to ownership warranties and other necessary provisions in licenses. This also involved working on many acquisition and purchase agreements relating to software businesses and software copyrights, trade secrets, and patents. I consider myself an expert in copyright, trade secrets and trademarks as these subjects relate to software and software licensing. I do not

consider myself an expert on software patents as such, but I am quite familiar with the impact of the more recent growing influence of patent law on the foregoing subjects.

      6.      In connection with the lawsuit between SCO and Novell, I have been retained by counsel for SCO to offer expert testimony in the areas of industry customs and practices relating to copyrights and the use and manner of negotiating and drafting software acquisitions and the licensing agreements typically used in the industry. Specifically, I was asked whether it would be necessary, and expected, for the copyrights relating to the UNIX operating system to be transferred to SCO, as part of the sale of the UNIX business assets, in order for SCO to obtain the legal rights needed to use, create derivatives of, distribute and license the technology and the actual source and object code and other materials being used in the active software business purchased from Novell by SCO. My full analysis will be set forth in my expert report due on May 29, 2007. Based on the work I have completed, however, I have concluded the following.

      a.      The parties intended to transfer, and did transfer, the same UNIX and UnixWare copyrights that Novell owned and used to run those businesses, as well as those inchoate and not yet completed or registered copyrights for projects underway.

      b.      Novell obtained by a "grant back" license certain non-exclusive rights in those copyrights that continued to allow Novell to market its Netware product line of software.

      c.      Novell's argument that SCO obtained an "implied license" to use the copyrights is contrary to the relevant customs and practices regarding the sale and licensing of software and source code when sold as a business (as opposed to merely the sale of a specific program), because (among other relevant considerations) SCO could not effectively continue to run, and further develop, the UnixWare business based solely on

the unspecified implied licenses and the unidentified scope thereof that Novell claims to have created or intended to have granted SCO.

d.   There is no evidence I have seen substantiating Novell's argument that SCO received or relied upon any implied copyright licenses to run the businesses it purchased from Novell. In my experience, Amendment No. 2 to the APA does not use any language suggesting either that the APA had conferred an implied license on SCO or that the Amendment itself constituted such a license. Instead, the language of the Amendment merely confirms the intended transfer of all of the copyrights necessary for SCO to exercise its rights in the UNIX and UnixWare technology it had acquired. Those are the same copyrights that Novell had itself acquired and then owned before it sold the assets of the business using those copyrights.

e.   It would not have been logical or necessary for legal counsel to Novell to rely on some alleged unspecified concern about possible loss of its license rights under the bankruptcy laws in deciding not to transfer the actual copyrights, because Section 365(n) of the Bankruptcy Code protected licensees of intellectual property rights in such events after its addition to the laws in 1988, for that very reason.

f.   In 1995, the year of this transaction, and for many years before and for some years thereafter, there were serious reservations in the software industry about whether software could be patented. Today, patents effecting software use are becoming more important than they were in 1995 when the APA was negotiated, even though patents are still not anywhere near as significant as copyright protection, without which the software industry could not function as an industry. For those reasons and others, the question of the scope of any patents on isolated technology in UNIX and UnixWare would not have

4

been a major concern to the parties or to lawyers familiar with the software industry in the early and mid-1990s.

7. I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED AT MONTEREY, CALIFORNIA ON MAY 21, 2007:

G. Gervaise Davis III

5

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Declaration of G. Gervaise Davis III was served on this 21st day of May, 2007, via CM/ECF to the following:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
Kenneth W. Brakebill
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

/s/ Edward Normand