MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>     Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>     Defendant and Counterclaim-Plaintiff. | **REPLY IN SUPPORT OF NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COPYRIGHT OWNERSHIP PORTIONS OF SCO'S SECOND CLAIM FOR BREACH OF CONTRACT AND FIFTH CLAIM FOR UNFAIR COMPETITION**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

I.    INTRODUCTION ..................................................................................... 1

II.   SCO HAS FAILED TO STATE A CLAIM FOR UNFAIR
      COMPETITION ........................................................................................ 2

      A.    SCO Has Failed to Demonstrate that Novell's Statements Support
            a "Misappropriation" Claim under Utah Common Law. .......................... 2

            1.    Misappropriation requires more than mere words alone. ............... 2

            2.    The Court should reject SCO's invitation to expand unfair
                  competition beyond the traditional categories recognized by
                  Utah common law. ........................................................................ 4

      B.    SCO Has Failed to Demonstrate that the Utah Unfair Competition
            Act Applies. ................................................................................................ 6

            1.    SCO has conceded that the Utah Unfair Competition Act
                  does not retroactively apply to Novell's statements made
                  before the Act became effective in May 2004. ........................... 7

            2.    SCO cannot properly rely on statements that were not
                  identified in its Second Amended Complaint and that are
                  protected by the litigation privilege and/or were published
                  before the Unfair Competition Act became effective. ................ 7

            3.    Novell's statements do not constitute a "software license
                  violation" under the Unfair Competition Act. .......................... 10

            4.    The Utah Unfair Practices Act is directed at anti-
                  competitive conduct not at issue here. ...................................... 11

III.  SCO HAS FAILED TO STATE A CLAIM FOR BREACH OF THE
      IMPLIED COVENANT OF GOOD FAITH. ............................................ 12

IV.   SCO CANNOT ESTABLISH THAT NOVELL'S STATEMENTS WERE
      FALSE ....................................................................................................... 16

CONCLUSION ...................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen's Prods. Co. v. Glover*,
 414 P.2d 93 (Utah 1966)................................................................................................3

*Am. Airlines, Inc. v. Platinum World Travel*,
 769 F. Supp. 1203 (D. Utah 1990)
 *aff'd sub nom., Am. Airlines, Inc. v. Christensen*, 967 F.2d 410 (10th Cir. 1992) ...........................5

*Bloom v. Goodyear Tire & Rubber Co.*,
 No. 05-cv-01317-LTB-MJW, 2006 U.S. Dist. LEXIS 56133 (D. Colo. Aug. 10, 2006)............9, 10

*Brown v. Super. Ct.*,
 212 P.2d 878 (Cal. 1949).............................................................................................15

*Budget Sys., Inc. v. Budget Loan & Fin. Plan*,
 361 P.2d 512 (Utah 1961).............................................................................................2

*Carma Developers Inc., v. Marathon Dev. Cal., Inc.*,
 2 Cal. 4th 342 (1992) ................................................................................................14

*Compuware Corp. v. Int'l Bus. Mach.*,
 259 F. Supp. 2d 597 (E.D. Mich. 2002)............................................................................2

*Comunale v. Traders & Gen. Ins. Co.*,
 50 Cal. 2d 654 (1958) ...............................................................................................15

*Egan v. Mut. of Omaha Ins. Co.*,
 24 Cal. 3d 809 (1979) ...............................................................................................15

*Fielding v. Robertson*,
 126 S.E. 231 (Va. 1925) .............................................................................................15

*Foley v. Interactive Data Corp.*,
 47 Cal. 3d 654 (1988) ...............................................................................................12

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
 11 Cal. 4th 85 (1995) ................................................................................................16

*Frink Am., Inc. v. Champion Rd. Mach. Ltd.*,
 961 F. Supp. 398 (N.D.N.Y 1997)..................................................................................2

*James B. Berry's Sons Co. v. Monark Gasoline & Oil Co.*,
   32 F.2d 74 (8th Cir. 1929) .................................................................................................15

*Klein-Becker USA v. Home Shopping Network, Inc.*,
   No. 2:05-CV-00200 PGC, 2005 WL 2265007 (D. Utah Aug. 31, 2005) ...........................4

*McClatchy Newspapers, Inc. v. Super. Ct.*,
   189 Cal. App. 3d 961 (Cal. Ct. App. 1987) ........................................................................8

*McCollum v. XCare.net, Inc.*,
   212 F. Supp. 2d 1142 (N.D.Cal. 2002) .............................................................................15

*Midwest Plastic Corp. v. Protective Closures Co.*,
   285 F.2d 747 (10th Cir. 1960) ............................................................................................2

*Novell, Inc. v. Fed. Ins. Co.*,
   141 F.3d 983 (10th Cir. 1998) ........................................................................................4, 5

*Price v. Armour*,
   949 P.2d 1251 (Utah 1997) .............................................................................................8, 9

*Proctor & Gamble Co. v. Haugen*,
   947 F. Supp. 1551 (D. Utah 1996),
   *aff'd in relevant part*, 222 F.3d 1262 (10th Cir. 2000) ....................................1, 3, 4, 6, 16

*Reynolds & Reynolds Co. v. Norick et al.*,
   114 F.2d 278 (10th Cir. 1940) ............................................................................................3

*Ryder Truck Rental, Inc. v. Cent. Packing Co.*,
   341 F.2d 321 (10th Cir. (Kan.) 1965) ...............................................................................15

*Silberg v. Anderson*,
   786 P.2d 365 (Cal. 1990) ....................................................................................................8

*Taylor v. Phelan*,
   9 F.3d 882 (10th Cir. 1993) ..........................................................................................4, 16

*Universal Sales Corp. v. Cal. Press Mfg. Co.*,
   128 P.2d 665 (Cal. 1942) ..................................................................................................15

## STATUTES

Utah Code Ann. 1953
   § 13-5-1 .............................................................................................................................11
   § 13-5-2.5 ..........................................................................................................................12
   § 13-5-3 .............................................................................................................................12

§ 13-5-7 ..................................................................................................................12
§ 13-5-8 ..................................................................................................................12
§ 13-5-9 ..................................................................................................................12
§ 13-5a-101 ............................................................................................................11
§ 13-5a-102(4)(a) ...................................................................................................10

Novell submits this reply in support of its Motion for Summary Judgment on the

Copyright Ownership Portions of SCO's Second Claim for Breach of Contract and Fifth Claim

for Unfair Competition, filed April 20, 2007 ("Novell's Unfair Competition Motion").

## I.    INTRODUCTION

SCO has pled a claim for slander of title based on Novell's allegedly false statement that

SCO does not own the UNIX and UnixWare copyrights.  SCO has relied on the same statement

to plead duplicative claims for unfair competition and breach of the implied covenant of good

faith.  Novell demonstrated in its Unfair Competition Motion that SCO's duplicative claims

should be dismissed because (1) as a matter of law, Novell's allegedly false statements about

copyright ownership cannot support a claim for unfair competition or breach of the implied

covenant of good faith; and (2) SCO cannot demonstrate that Novell's statements were false.

SCO argues that its claims are proper, yet fails to cite a single case that allowed unfair

competition or implied covenant claims based on a party's allegedly false statements about

contractual rights.  In fact, this Court and the Tenth Circuit have rejected a similar attempt to

plead a defamation claim as "a new cause of action under the umbrella of unfair competition

which would essentially be identical to an already well-established cause of action and would

offer no further protection of commercial values."  *See Proctor & Gamble Co. v. Haugen*, 947 F.

Supp. 1551, 1554 (D. Utah 1996), *aff'd in relevant part*, 222 F.3d 1262, 1280 (10th Cir. 2000).

SCO makes sundry other arguments, ranging from implausible to absurd.  For example,

SCO contends that *Novell's pleadings in this litigation* constitute a "software license violation"

under the Utah Unfair Competition Act.  Novell's pleadings do not violate any software license

and are absolutely privileged in any event.  SCO's resort to such farfetched arguments

underscores the utter lack of merit to SCO's opposition.

## II.    SCO HAS FAILED TO STATE A CLAIM FOR UNFAIR COMPETITION

### A.    SCO Has Failed to Demonstrate that Novell's Statements Support a "Misappropriation" Claim under Utah Common Law.

#### 1.    Misappropriation requires more than mere words alone.

SCO asserts that Novell's statements about copyright ownership "seized" SCO's copyrights and goodwill, and thus support a claim for "misappropriation" under the Utah common law of unfair competition.  (SCO's Opposition to Novell's Unfair Competition Motion, filed May 18, 2007, Pacer No. 299 ("SCO's Opposition") at 9.)  SCO is wrong.  Novell's statements did not "seize" or "misappropriate" SCO's property in any way.  Rather, ownership of any copyrights and goodwill remained exactly where it was before Novell made these statements — whether with Novell, SCO, or someone else.

SCO has failed to cite a single case that holds that *mere words alone*, without any accompanying conduct, constitutes "misappropriation."  The cases cited by SCO all involved *affirmative conduct*, such as copying and using the plaintiff's property, or marketing products or services in a misleading and confusing manner.[1]  (SCO's Opposition at 9-10.)  No similar conduct is at issue here.

---

[1] *Compuware Corp. v. Int'l Bus. Mach.*, 259 F. Supp. 2d 597, 604 (E.D. Mich. 2002) (defendant allegedly copied plaintiff's object code, source code, and user manuals, and was illicitly using trade secrets that it had acquired in confidence from the plaintiff); *Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 961 F. Supp. 398, 401 n.2 (N.D.N.Y 1997) (defendant alleged to have wrongfully retained and/or copied intellectual property, including critical plans, drawings, blueprints, and manuals related to plaintiff's manufacturing operations); *Budget Sys., Inc. v. Budget Loan & Fin. Plan*, 361 P.2d 512, 512-15 (Utah 1961) (defendant used a confusingly similar name to plaintiff's long-established company and set up its store half a block away from plaintiff to benefit from the goodwill established by plaintiff); *Midwest Plastic Corp. v. Protective Closures Co.*, 285 F.2d 747, 749-50 (10th Cir. 1960) (allowing "palming-off" claim where defendants attempted to confuse consumers by "deliberate and studied copying" of plaintiff's catalog and marketing "substantially indistinguishable" products that lacked any identifying marks except for serial numbers that suggested a connection with plaintiff).

Strangely, SCO relies on a case that *rejected* unfair competition claims because no patents and copyrights were involved, arguing that this implicitly supports SCO's copyright-based claims.[2] (*Id.* at 10-11.) Ownership of copyrights might support a "misappropriation" claim based on *use* of copyrighted material in infringing products,[3] but none of SCO's cases support its novel theory that *making statements* about copyright ownership constitutes "misappropriation."

The only case cited by SCO that involved an unfair competition claim based on words alone squarely rejected that claim. In *Proctor & Gamble*, Judge Winder dismissed an unfair competition claim based on defendants' statements associating plaintiff with Satan, because unfair competition generally involves "misappropriation" or "palming-off," and "no Utah court has extended unfair competition beyond the two established branches to include defamation in the marketplace." 947 F. Supp. at 1554. The Tenth Circuit affirmed, emphasizing that "it is not our place to expand Utah state law beyond the bounds set by the Utah Supreme Court or, in the absence of Utah Supreme Court precedent, by the lower Utah courts." 222 F.3d at 1280, *citing,*

---

[2] *Reynolds & Reynolds Co. v. Norick et al.*, 114 F.2d 278, 281-82 (10th Cir. 1940) (rejecting palming-off claim based on defendant's use of accounting forms similar to those of plaintiff). *See also Allen's Prods. Co. v. Glover*, 414 P.2d 93, 95 (Utah 1966) (rejecting plaintiff's claim that defendant copied "the unique appearance of the plaintiff's drive-ins" to "pirate" plaintiff's goodwill, and distinguishing this claim from a separate pending suit "for the wrongful taking or conversion of the plans for the building").

[3] SCO's unfair competition claim includes a *separate* allegation that Novell's distribution of SUSE Linux constitutes misappropriation of SCO's copyrights. This motion is limited to SCO's claim based on Novell's statements about copyright ownership and does not address the "SUSE Linux" portion of SCO's claim, which has been stayed by this Court's Order of August 21, 2006 (Pacer No. 139). This motion also does not address SCO's allegation that Novell's waiver of any claims against IBM under Section 4.16 of the APA constituted unfair competition. (*See* SCO's Opposition at 1-2, 17-18.) SCO's "IBM waiver" claim fails as a matter of law for the same reasons set forth in the Memorandum and Support of Novell's Motion for Partial Summary Judgment on its Fourth Claim for Relief, filed December 1, 2006 (Pacer No. 175).

*e.g., Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993) ("As a federal court, we are generally reticent to expand state law without clear guidance from [the state's] highest court. . . .").

        2.      **The Court should reject SCO's invitation to expand unfair competition beyond the traditional categories recognized by Utah common law.**

SCO mischaracterizes several decisions of this Court and the Tenth Circuit in an effort to show that "Utah adheres to a broad interpretation of the types of conduct subsumed within unfair competition," which goes beyond "misappropriation" and "palming-off." For example, SCO cites dictum from a footnote in *Proctor & Gamble* (SCO's Opposition at 12, *citing* 947 F. Supp. at 1554 n.4), but disregards the *holding* in that case: disparaging statements cannot support an unfair competition claim because they do not constitute "misappropriation" or "palming-off." 947 F. Supp. at 1554. SCO also neglects to mention that this Court (per Judge Cassell) has relied on the Tenth Circuit's affirmance of *Proctor & Gamble* in declining "to go beyond the Utah courts to recognize other common-law unfair competition claims in addition to 'palming-off' and 'misappropriation.'" *Klein-Becker USA v. Home Shopping Network, Inc.,* No. 2:05-CV-00200 PGC, 2005 WL 2265007, at *6-7 (D. Utah Aug. 31, 2005) (Exhibit A hereto).

SCO quotes the Tenth Circuit's comment in a different case that unfair competition "can either be defined narrowly to mean the tort of 'passing off,' . . . or broadly to include a 'whole host of loosely defined, unethical business practices,'" implying that the Tenth Circuit has endorsed the broader definition. (SCO's Opposition at 11, *citing Novell, Inc. v. Fed. Ins. Co.*, 141 F.3d 983, 987 (10th Cir. 1998).) In fact, the Tenth Circuit simply noted that litigants sometimes *dispute* whether "unfair competition" should be narrowly or broadly defined, and did *not* comment on which definition was correct. 141 F.3d at 987.

SCO also asserts that the Utah District Court (per Judge Winder) has stated that while the "tort of unfair competition often involves the attempt by one person to represent goods or services to the public as the goods or services of another . . . unfair competition is not restricted to this type of public deception." (SCO's Opposition at 11, *quoting Am. Airlines, Inc. v. Platinum World Travel*, 769 F. Supp. 1203, 1207 (D. Utah 1990), *aff'd sub nom. Am. Airlines, Inc. v. Christensen*, 967 F.2d 410 (10th Cir. 1992).) This partial quote implies that Judge Winder endorsed a broad definition of unfair competition extending beyond the traditional branches of "palming-off" and "misappropriation." Yet Judge Winder referred in the very next sentence — which SCO omits — to "misappropriation of the plaintiff's confidential business information," and then concluded that the defendants had engaged in unfair competition by misappropriating both information and services. 769 F. Supp. at 1207. Thus, this decision simply affirms the principle that "misappropriation" may constitute "unfair competition."

Incredibly, SCO argues that the Tenth Circuit's affirmance of Judge Winder's decision allowed an unfair competition claim that was not based on "misappropriation" or "palming-off." (SCO's Opposition at 13-14.) Yet the Tenth Circuit agreed with Judge Winder that "Defendants had misappropriated American's services." *Am. Airlines*, 967 F.2d at 416.[4]

As in *Proctor & Gamble*, it would not be proper to expand Utah law to allow SCO to plead what is really a slander of title claim in the guise of an unfair competition claim. This is particularly so because there is a strong policy in favor of encouraging debate about significant

---

[4] SCO also argues in a footnote that courts in *other* jurisdictions have held that unfair competition may include other forms of "commercial immorality" besides "misappropriation" and "palming-off." (SCO's Opposition at 12 n.6.) Those decisions are irrelevant because SCO has expressly based its unfair competition claim on Utah law. Further, none of these out-of-state decisions allowed an unfair competition claim based on the making of statements about a party's understanding of the rights conferred by a contract, which is the claim at issue here.

controversies.  This policy mandates that strict safeguards be imposed so that vigorous debate is not unduly chilled.  In the context of slander of title and defamation claims, there is already a well-established body of law on this subject, including privileges to make statements on matters of common interest and of public concern.  However, there is no similar body of law for unfair competition and breach of contract claims.  SCO has presented absolutely no justification for creating a new unfair competition claim that is already covered by the law on slander of title.

SCO's attempt to create a new and duplicative claim is also inconsistent with its opposition to Novell's motion for summary judgment on SCO's slander of title claim.  SCO argued in that opposition that Novell's alleged *failure* to make public statements denying SCO's ownership of the UNIX copyrights before May 2003 demonstrates that Novell agreed that SCO owned the copyrights.  (SCO's Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance, filed May 18, 2007, Pacer No. 306, at 73.)  This argument implies that Novell had an obligation *to make* public statements about copyright ownership at an earlier date.  Yet SCO now contends that Novell violated an obligation *not to make* public statements about copyright ownership.  SCO cannot have it both ways.  In fact, Novell had the right to make statements about copyright ownership at any time, but had no legal obligation either to make or not to make such statements.

### B.    SCO Has Failed to Demonstrate that the Utah Unfair Competition Act Applies.

SCO has failed to state an unfair competition claim under Utah statutory law for multiple independent reasons, including (1) the Utah Unfair Competition Act does not retroactively apply to statements made before it became effective in May 2004; (2) SCO cannot properly rely on statements that were not identified in SCO's Second Amended Complaint and that are protected by the litigation privilege and/or were published before the Unfair Competition Act became

effective; (3) Novell's statements do not constitute "unfair competition" as defined in the Unfair Competition Act; and (4) the Utah Unfair Practices Act does not apply because it is limited to anti-competitive conduct such as price discrimination and tie-ins.

        **1.**       **SCO has conceded that the Utah Unfair Competition Act does not retroactively apply to Novell's statements made before the Act became effective in May 2004.**

As Novell noted previously, the Utah Unfair Competition Act does not apply because it became effective *after* the allegedly false statements identified in SCO's Second Amended Complaint were made, and Utah statutes are not retroactive absent "express authorization." (Unfair Competition Motion at 6.) SCO has not attempted to argue that the Act retroactively applies to the statements in SCO's Second Amended Complaint. Instead, SCO relies on *other* statements and statutes. (SCO's Opposition at 16.) Thus, the Act indisputably does not apply to the statements that are the subject of SCO's Second Amended Complaint.

        **2.**       **SCO cannot properly rely on statements that were not identified in its Second Amended Complaint and that are protected by the litigation privilege and/or were published before the Unfair Competition Act became effective.**

SCO asserts that even if the Unfair Competition Act does not retroactively apply to statements made before its effective date, the Act nevertheless applies because "Novell continued its false claims of ownership after May 2004." (SCO's Opposition at 16.) SCO relies on Novell's "claim throughout this litigation that it owns the UNIX copyrights, as demonstrated by its counterclaim for slander of title," citing paragraphs 94 to 98 of Novell's Answer to SCO's Second Amended Complaint and Counterclaims. (*Id.*) SCO also relies on documents posted on Novell's website before the Act became effective. (*Id.*)

SCO's argument is an improper attempt to amend its claim beyond the scope identified in its Second Amended Complaint. SCO's Second Amended Complaint included a detailed list of

Novell's allegedly false statements about copyright ownership, none of which involved Novell's statements in this litigation or the contents of Novell's website. (*See* SCO's Second Amended Complaint, filed February 3, 2006, Pacer No. 96, ¶ 37.) It is far too late for SCO to amend its complaint, with discovery already closed and the trial a few months away.

In addition, the allegations of Novell's pleadings in this litigation are absolutely privileged and hence cannot support a claim by SCO. *See, e.g., Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997) ("The doctrine of absolute privilege applies to defamatory statements made in the institution or conduct of litigation or in conferences or other communications preliminary to litigation") (quoting 50 Am. Jur. 2d Libel and Slander § 302 (1997)). This privilege also applies to the demand letter correspondence between SCO and Novell posted on Novell's website, as those were "communications preliminary to litigation." *See id.* SCO itself argued that the absolute litigation privilege should be broadly applied in its motion for summary judgment on IBM's counterclaims for unfair competition and other torts, stating that:

> "Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation," the absolute litigation privilege has been called "'the backbone to an effective and smoothly operating judicial system.'" *Silberg v. Anderson*, 786 P.2d 365, 370-71 (Cal. 1990) (quoting *McClatchy Newspapers, Inc. v. Super. Ct.*, 189 Cal. App. 3d 961, 970 (Cal. Ct. App. 1987)). The privilege applies not only to pleadings and statements in open court, but to all "communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." *Restatement (Second) of Torts* § 587. . . .
>
> Thus, for example, the sending of a demand letter, or a cease and desist letter is absolutely privileged. *Price*, 949 P.2d at 1257. . . .

(SCO's Memorandum In Support of Motion for Summary Judgment on IBM's Second, Third, Fourth and Fifth Counterclaims, filed September 27, 2007, Pacer No. 820-1, Case 2:03-cv-00294-DAK-BCW, at 5.)

Novell's website is also not subject to the Unfair Competition Act because the webpage cited by SCO merely links to demand letter correspondence and copyright registrations that pre-date the Act's effective date of May 3, 2004, and that first appeared on Novell's website before that date. (*See* Second Supplemental Declaration of Kenneth Brakebill, filed herewith, ¶¶ 10-11, Exs. 7 and 8.) Although not expressly stated, SCO seems to contend that Novell's webpage is a "continuing publication" because it remains available today. However, the current contents of the webpage relied upon by SCO are identical to the contents that were first published *before* the Unfair Competition Act became effective on May 3, 2004. (*Id.*)

Novell has not found any Utah decisions addressing whether an Internet webpage is deemed to be published on the first date that it becomes available, even if it remains on the website thereafter (the "single publication" rule). However, almost every other jurisdiction that has considered this issue has concluded that the single publication rule applies. For example, the Colorado District Court recently applied the single publication rule in rejecting the argument that a webpage constitutes a continuing publication for the purpose of the statute of limitations. *Bloom v. Goodyear Tire & Rubber Co.*, No. 05-cv-01317-LTB-MJW, 2006 U.S. Dist. LEXIS 56133 (D. Colo. Aug. 10, 2006) (Exhibit B hereto). The court stated that "[n]umerous decisions stand for the proposition that posting of statements on the Internet should be treated in the same manner as publication in traditional media, and that publication on web sites therefore is subject to the single publication rule." *Id.* at *17 (citing recent decisions of the Second and Ninth Circuits, the Western District of Kentucky, and the New York and New Jersey state courts). The

court concluded that "[b]ecause the general weight and trend of authority favors applying the single publication rule to Internet publications, I conclude that Colorado courts would do so in this case." *Id.* at *18.

Similarly, this Court should conclude that Utah courts would apply the single publication rule to Novell's webpage, and hence this webpage pre-dates, and is not subject to, the Utah Unfair Competition Act.

### 3. Novell's statements do not constitute a "software license violation" under the Unfair Competition Act.

SCO concedes, as it must, that the Unfair Competition Act applies only to conduct that constitutes "cyberterrorism," "infringement of a patent, trademark, or trade name," "a software license violation," or "predatory hiring practices." (SCO's Opposition at 14-15, *citing* Utah Code Ann. 1953 § 13-5a-102(4)(a).) SCO contends that this test is met because Novell's assertion of copyright ownership violates the Technology License Agreement ("TLA") signed by Novell and Santa Cruz in December 1995, and thus constitutes a "software license violation." (*Id.* at 15.) SCO relies on Section 3 of the TLA, which states that "[a]s between Novell and SCO . . . (1) Ownership of Licensed Technology shall reside in SCO." (*Id.* at 15.) SCO contends that Novell "recognized that it was not the lawful owner of the Licensed Technology," and that "Novell violated the TLA by asserting ownership of the UNIX and Unixware copyrights." (*Id.*)

As an initial matter, SCO's "software license violation" claim should be rejected because it was not included in SCO's Second Amended Complaint and it is too late for SCO to amend its complaint now. SCO's Second Amended Complaint alleged that Novell breached *other* provisions of the TLA (specifically, Section II.A(2)), but did not claim that Novell breached Section 3 of the TLA by making statements about copyright ownership.

Further, Novell's statements about copyright ownership do not violate the TLA. Section 3 of the TLA is merely a statement about ownership of Licensed Technology, which does not prohibit Novell or Santa Cruz from making statements about whether or not copyrights were transferred to Santa Cruz. Neither Section 3 nor any other provision of the TLA state, "neither party shall make any statements about copyright ownership," or "Novell shall not claim ownership of UNIX and UnixWare copyrights."[5]

#### 4. The Utah Unfair Practices Act is directed at anti-competitive conduct not at issue here.

SCO attempts to confuse the issue by asserting that the Unfair Competition Act is "a separate section of the earlier enacted Unfair Practices Act," and that Novell's conduct "supports a claim under the Unfair Practices Act as well." (SCO's Unfair Competition Opposition at 14, 16 n. 12.) Both statements are false. While the two Acts are both part of the same Title 13, Commerce and Trade, of the Utah Code, they belong to different Chapters and were adopted at different times. Neither Act suggests that one is a part of the other. (*See* Utah Code Ann. 1953 § 13-5-1 (defining Chapter 5 of Title 13 as "the Unfair Practices Act"); Utah Code Ann. 1953 § 13-5a-101 (defining Chapter 5a of Title 13 as "the Unfair Competition Act.") The Court should

---

[5] It should also be noted that, contrary to SCO's assertion, Novell did not "recognize" in the TLA that Santa Cruz owned the UNIX and UnixWare copyrights. The TLA refers to SCO's ownership of "Licensed Technology," which is defined by reference to the Asset Purchase Agreement ("APA"). (Declaration of Kenneth W. Brakebill, filed April 20, 2007, Pacer No. 284 ("Brakebill Decl."), Ex. 5, TLA, Section I.) The APA, in turn, defined "Licensed Technology" as "the technology included in the Assets" and "derivatives" of such technology. (*Id.*, Ex. 2, APA, Section 1.6.). These "Assets" did not include the UNIX and UnixWare copyrights, because the APA explicitly excluded "all copyrights" from the assets to be transferred. (*See* Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance, filed April 20, 2007, Pacer No. 286 ("Novell's Copyright Ownership MSJ").) Thus, Novell merely agreed that Santa Cruz owned the technology included in the "Assets" transferred to Santa Cruz, which did *not* include the copyrights.

reject SCO's attempt to raise a new claim under the Unfair Practices Act when SCO has only pled a claim for "unfair competition."

SCO's new claim also fails on substantive grounds. SCO proclaims that Novell's conduct "certainly" falls within the Unfair Practices Act, but fails to identify a specific prohibition that Novell violated. (SCO's Unfair Competition Opposition at 16 n. 12.) Instead, SCO relies on the introductory statement that "[u]nfair methods of competition in commerce or trade are unlawful," and asserts that "until recently [the Act] provided little guidance as to the types of conduct that qualified as 'unfair methods of competition." (*Id.* at 14, *citing* Utah Code Ann. 1953 § 13-5-2.5.) In fact, other provisions of the Unfair Practices Acts identify the specific prohibited conduct, which includes price discrimination (§ 13-5-3), below-cost sales (§ 13-5-7), advertising goods that the advertiser is not prepared to supply (§ 13-5-8), and illegal tie-ins (§ 13-5-9). Novell's statements about copyright ownership do not fall in any of these categories.

## III.    SCO HAS FAILED TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH.

SCO does not dispute that the implied covenant of good faith developed as "a kind of 'safety valve' to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language," so as "to effectuate the intentions of parties, or to protect their reasonable expectations." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988) (citations omitted). Instead, SCO argues that a prohibition against making statements about copyright ownership is necessary to "effectuate the intention of the parties," because Novell's statements "deprived" SCO of "much of the expected value" of the assets that Santa Cruz supposedly acquired under the APA. (SCO's Opposition at 17.)

SCO fails, however, to cite a single provision of the APA that suggests that a prohibition against commenting on whether the APA transferred copyrights is necessary to implement the

parties' intent.  In fact, the APA does not even contain a general provision requiring the parties

to keep its contents confidential, let alone a specific provision prohibiting Novell from making

statements about whether copyrights were transferred.  The only confidentiality provision in the

APA is a limited clause that applies solely to information obtained through the parties' due

diligence investigations.  (Brakebill Decl., Ex. 2, APA, Section 4.5.)  That clause has no bearing

on Novell's right to make statements about whether copyrights were transferred.

      SCO has also failed to cite any evidence that Novell's statements deprived SCO of the

benefits that Santa Cruz expected under the APA.  SCO contends that Novell's statements have

hindered the "SCOSource" campaign, which SCO began in 2003 in an effort to force users of the

Linux operating system to pay royalties to SCO.  (SCO's Opposition at 3-7.)  However, SCO has

presented no evidence — whether from the APA or from any other source — that royalties from

Linux users constituted "much of the expected value" under the APA.  On the contrary, the APA

focused on UNIX and did not even mention "Linux."  For example, Section 4.18 required Santa

Cruz to "diligently and vigorously market, sell and promote" the UNIX business, and to use

commercially reasonable efforts to complete a "Merged Product" combining Santa Cruz's and

Novell's UNIX products by the end of 1997.  (*See* Brakebill Decl., Ex. 2, APA, Section 4.18; *see

id.*, Ex. 22, Operating Agreement (further addressing Santa Cruz's development of the "Merged

Product").)  Similarly, Santa Cruz emphasized in a press release that Santa Cruz is "the world's

leader for UNIX System servers" and that the deal with Novell "extends SCO's leadership

position" by enabling Santa Cruz to expand its UNIX offerings.  (Declaration of Mark F. James,

filed May 18, 2007, Pacer No. 308, Ex. 8, Santa Cruz Press Release of September 20, 1995.)

      Thus, SCO is not using the implied covenant of good faith to "fill gaps."  Rather, SCO is

attempting to conjure, out of thin air, a "gag order" against making statements about copyright

ownership that is not suggested or even hinted at by the APA.   Further, SCO is attempting to impose this extraordinary prohibition to obtain a benefit — obtaining royalties from Linux users — that is also not suggested by the APA.

SCO asserts that *Carma Developers Inc., v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992), "approvingly cited" Section 205 of the Restatement (Second) of Contracts, which states in comment e that the implied covenant may be violated "by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts.'" (SCO's Opposition at 18.)  SCO misleadingly implies that *Carma* relied on comment e.  In fact, *Carma* cited Section 205 for the general concept of good faith only, and did not rely on or even mention comment e.  2 Cal. 4th at 374.  *Carma* actually *rejected* a claim for breach of the implied covenant, and did not suggest that the implied covenant prohibits a party from merely stating its position about a contract.  *Id.* at 374-76.

Moreover, comment e to the Restatement does not support SCO's argument.  Comment e gives two examples, both of which involved *affirmative conduct* beyond mere words alone.  The first example involves refusing to ship goods until adequate assurances are provided, and the second example involves refusing to accept goods based on grounds that were erroneous or not timely conveyed to the seller.[6]  Neither example is remotely similar to SCO's claim that merely stating a position regarding contractual rights, without more, violates the implied covenant.

---

[6] More specifically, the first example indicates that when a seller has a contractual right to demand cash or security before shipping goods if the buyer's credit becomes impaired, the seller cannot exercise this right unless it honestly believes that the prospect of payment is impaired.  Restatement (Second) of Contracts, § 205, comment e, example 8, *citing James B. Berry's Sons Co. v. Monark Gasoline & Oil Co.*, 32 F.2d 74 (8th Cir. 1929).  The second example indicates that a buyer cannot refuse to accept goods based on an erroneous ground or a ground that could have been cured if timely notice had been given.  Restatement (Second) of Contracts, § 205, comment e, example 9, *citing Fielding v. Robertson*, 126 S.E. 231 (Va. 1925).

SCO cites various other cases, none of which are close to the case at bar.  Two of SCO's cases involved the fiduciary duties of an insurance company towards an insured; those cases do not apply because there is no fiduciary relationship between Novell and SCO.[7]  SCO's other cases involved claims that the defendant had taken (or refused to take) specific action, rather than a claim based solely on the defendant's statement of its understanding of a contract.[8]

Here, in contrast, SCO is attempting to base a breach of implied covenant claim solely on the fact that Novell has stated its belief that SCO does not own the copyrights.  Neither the Restatement nor any California court has suggested that the implied covenant prohibits a party from making statements about its understanding of contractual rights.  Indeed, the California Supreme Court has cautioned against creating claims that would lead to "'an expensive and time-consuming expansion of the litigation into an inquiry as to the motives and state of mind of the breaching party,'" and would create "an undefined source of liability that will have the effect of 'deter(ring) zealous advocacy.'"  *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 97, 100 (1995) (citations omitted).  Although the California Supreme Court made these comments in the context of a tort claim for "bad faith denial of the existence of a contract," the same concerns

---

[7] *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819-20 (1979) (insurers, as "fiduciaries" in an "inherently unbalanced relationship," have the obligation to "go beyond meeting reasonable expectations of coverage," and must act with "decency" inherent in the responsibilities of a fiduciary); *Comunale v. Traders & Gen. Ins. Co.,* 50 Cal. 2d 654, 658-59 (1958) (insurer breached the implied covenant of good faith by failing to consider the insured's interest, in good faith, when rejecting a settlement offer).

[8] *McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1152-53 (N.D.Cal. 2002) (termination of at-will employee as a "mere pretext to cheat the worker" out of a large sales commission); *Brown v. Super. Ct.,* 212 P.2d 878, 881-82 (Cal. 1949) (revoking will after having received the benefits of a contract to make mutual wills); *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 128 P.2d 665, 771-72 (Cal. 1942) (defendant's failure to share information related to joint venture); *Ryder Truck Rental, Inc. v. Cent. Packing Co.*, 341 F.2d 321, 324 (10th Cir. (Kan.) 1965) (failure to use leased trucks "in the normal and ordinary conduct of its business").

apply here.  Allowing "breach of implied covenant" claims based on statements of a party's understanding of a contract would result in "expensive and time-consuming" collateral litigation and would deter "zealous advocacy" in disputes about the parties' contractual rights.

Moreover, there is no need to recognize SCO's proposed claim for breach of the implied covenant, as this would "essentially be identical to an already well-established cause of action" (slander of title), and would "offer no further protection of commercial values."  *See Proctor & Gamble*, 947 F. Supp. at 1554.  This Court should decline SCO's invitation to "expand [California] state law beyond the bounds set by the [California] Supreme Court or, in the absence of [California] Supreme Court precedent, by the lower [California] courts."  *See Proctor & Gamble*, 222 F.3d at 1280; *see also Taylor*, 9 F.3d at 887 ("As a federal court, we are generally reticent to expand state law without clear guidance from [the state's] highest court. . . .").

## IV.    SCO CANNOT ESTABLISH THAT NOVELL'S STATEMENTS WERE FALSE

Novell has moved for summary judgment on the copyright ownership portions of SCO's unfair competition and breach of contract claims on the additional ground that SCO cannot prove that Novell's statement that SCO does not own the copyrights was false.  (Novell's Unfair Competition Motion at 9-10.)  Novell incorporated its Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance ("Copyright Ownership Motion"), including the accompanying Statement of Undisputed Facts.  (*Id.* at 4, 9-10.)  SCO has replied by simply referring to its opposition to Novell's Copyright Ownership Motion.  (SCO's Opposition at 19.)  Thus, it is undisputed that if the Court rules in Novell's favor on its Copyright Ownership Motion, Novell is entitled to summary judgment on the copyright ownership portions of SCO's unfair competition and breach of contract claims.

## CONCLUSION

SCO's opposition to Novell's motion is a futile attempt to pound a square peg into a round hole. Making allegedly false statements about copyright ownership might support a slander of title claim (if all required elements were proven), but cannot support claims for unfair competition or breach of the implied covenant of good faith. In addition, SCO cannot prove that Novell's statements were false. Therefore, Novell requests that the Court grant summary judgment dismissing the copyright ownership portions of SCO's unfair competition and contract claims.

DATED:   May 25, 2007

ANDERSON & KARRENBERG

By:      /s/  Heather M. Sneddon

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2007, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COPYRIGHT OWNERSHIP PORTIONS OF SCO'S SECOND CLAIM FOR BREACH OF CONTRACT AND FIFTH CLAIM FOR UNFAIR COMPETITION** to be served to the following:

*Via CM/ECF*:

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
(*and via Hand Delivery*)

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
(*and via Overnight Mail*)

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid*:

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_/s/ Heather M. Sneddon_

18