

Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

Klein-Becker usa, LLC v. Home Shopping Network, Inc., a Delaware corporation
D.Utah,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Utah, Central Division.
KLEIN-BECKER USA, LLC, a Utah limited libaility company, Plaintiff,
v.
HOME SHOPPING NETWORK, INC., A DELAWARE CORPORATION, Flageoli, Ltd., a Nevada limited liability company, Serious Skin Care, Inc., a Nevada corporation, and John Does 1-100, Defendants.
**No. 2:05-CV-00200 PGC.**

Aug. 31, 2005.

James E. Magleby and Jason A. McNeill, Magleby & Greenwood, PC, Salt Lake City, UT, for Plaintiff.
Bryon J. Benevento, Kimberly Neville, Peter H. Donaldson, Snell & Wilmer, Brent O. Hatch, Mark R. Clements, Mark F. James, Hatch, James & Dodge, Salt Lake City, UT, for Defendants.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
CASSELL, J.
**\*1** Defendant, Home Shopping Network, Inc. ("HSN") has moved the court for an order dismissing all of plaintiff Klein-Becker, USA's ("Klein Becker") claims against it pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, HSN seeks summary judgment in its favor on all of Klein Becker's claims. Defendants Flageoli, Ltd. and Serious Skin Care, Inc., have formally joined in HSN's motion. Because the court finds that plaintiffs are entitled to further discovery to oppose any motion for summary judgment, the motion for summary judgment is denied as premature, without prejudice to refiling at a later date if appropriate. The court will thus treat the motion filed by HSN only as a motion to dismiss and accordingly will not consider any extrinsic evidence in resolving the issues raised. Based on the arguments of the parties, the court DENIES in part and GRANTS in part HSN's motion to dismiss.

BACKGROUND

Klein-Becker is a Utah company that markets a product sold under the trademark StriVectin-SD. According to Klein-Becker, StriVectin-SD is "an over-the-counter, topically-applied anti-wrinkle or anti-line cream, which was originally intended for use after pregnancy to help reduce the appearance of stretch marks." Defendant Flageoli, Ltd., is a Nevada company that manufactures a face cream called RuLinea-FX. Defendant Serious Skin Care, Inc. is also a Nevada corporation which distributes RuLinea-FX and other products through defendant HSN. HSN is a cable television network that is primarily engaged in sales of consumer products.

In January of 2005, HSN began selling RuLinea-FX on-air. In its First Amended Complaint, Klein-Becker alleges that in several of HSN's on-air sales presentations for RuLinea-FX, defendants made "false and misleading statements" so as to make consumers think that RuLinea-FX is the same or similar to Klein-Becker's product StriVectin-SD. According to Klein-Becker, this included on-air statements that both products contain the same ingredients and statements urging consumers to compare the list of RuLinea-FX's ingredients with the list of ingredients found in StriVectin-SD. Klein-Becker makes similar allegations regarding HSN's internet sales of the RuLinea product.

Klein-Becker also alleges that on-air, defendants falsely claimed that RuLinea-FX was a "version" of StriVectin-DS. Klein-Becker also claims that on-air and on the internet, defendants made false and misleading statements regarding price comparisons between the two products. According to Klein-Becker, on-air and on the internet, defendants have repeatedly asked consumers why they would pay $135 for StriVectin when they could get RuLinea for only $32.50. On-air, defendants allegedly stated that StriVectin-SD is three to four times more expensive than RuLinea and also allegedly made price comparisons between products such as "we are talking about apples to apples here." Klein-Becker alleges that all these statements are false and misleading. Finally, Klein-Becker objects to an on-air statement made by defendants to the effect that StriVectin was originally developed as a "cellulite cream." Klein-Becker argues that this statement, too, is false, because StriVectin was originally developed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:04-cv-00139-DAK-BCW   Document 332-2   Filed 05/25/2007   Page 2 of 6

Not Reported in F.Supp.2d                                                      Page 2
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

as an anti-stretch mark cream, not a cellulite cream.

**\*2** Relying on these allegedly false and misleading statements, Klein-Becker asserts claims for violation of the federal Lanham Act, including claims for both civil damages and injunctive relief. Klein-Becker has also brought claims against defendants for deceptive trade practices and unfair competition under Utah law. HSN has moved to dismiss all claims in plaintiff's complaint, or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. Defendants Flagioli and Serious Skin Care have joined in HSN's motion. Unsurprisingly, Klein-Becker opposes dismissal and seeks a continuance under Fed.R.Civ.P. 56(f) to oppose any motion for summary judgment.

### KLEIN-BECKER'S MOTION FOR SUMMARY JUDGMENT

In response to HSN's motion for summary judgment, Klein-Becker seeks a continuance under Fed.R.Civ.P. 56(f) to conduct discovery before being required to file an opposition brief. According to Klein-Becker, HSN's motion for summary judgment relies substantially on extrinsic evidence and facts that Klein-Becker should be allowed to have discovery on before being required to reply on summary judgment.

HSN opposes any Rule 56(f) continuance, arguing that Klein-Becker has not identified any relevant information that it hopes to discover. However, at the very least, Klein-Becker is entitled to discovery on consumer survey information in HSN's possession, as Lanham Act claims turn not just on the issue of literal falsity, but alternately on the likelihood of misleading or confusing consumers.[FN1] In addition, the fact that little if any discovery has been completed in this potentially complicated case makes the court hesitant to entertain summary judgment arguments at this early stage. For these reasons, the court denies HSN's motion for summary judgment as premature, without prejudice to refiling at a later date if appropriate. The Rule 56(f) motion is therefore denied as moot. Accordingly, the court will treat HSN's motion solely as a motion to dismiss and will not consider any materials outside the complaint in reaching its decision.

>   FN1. *See Utah Medical Products, Inc. v. Clinical Innovations Associates, Inc.,* 79 F.Supp.2d 1290, 1309 (D.Utah 1999).

### HSN'S MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(6)

*Standard of Review*

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party."[FN2] "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[FN3]

>   FN2. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997).
>
>   FN3. *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Klein-Becker's False Advertising Claims Under the Lanham Act*

HSN has moved to dismiss Klein-Becker's Lanham Act false advertising claims under Fed.R.Civ.P. 12(b)(6) on the grounds that none of the alleged statements made on-air or on the internet were literally false. Klein-Becker responds that even if not literally false, they were misleading and created a likelihood of consumer confusion.

Under the Lanham Act, to state a claim for false advertising, plainntiff "must allege **\*3** (1) that defendant made materially false or misleading representations of fact in connection with the commerical advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another; or (b) the characteristics of the goods or services; and (4) injure the plaintiff."[FN4]

>   FN4. *Cottrell, Ltd. v. Biotrol International, Inc.,* 191 F.3d 1248, 1252 (10th Cir.1999) (internal citations omitted).

Under the first element of a false advertising claim, the issue of literal falsity is not dispositive. " '[T]he Lanham Act encompasses more than literal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:04-cv-00139-DAK-BCW    Document 332-2    Filed 05/25/2007    Page 3 of 6

Not Reported in F.Supp.2d                                                                                              Page 3
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

falsehoods,' because otherwise, 'clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed." ' [FN5] Or, as this court has previously held, "[t]o satisfy the first element and prove a statement is false with the meaning of the Lanham Act, 'the plaintiff must demonstrate either that the challenged advertisement is literally false, or although literally true, that it is still likely to mislead or confuse consumers." ' [FN6]

> FN5. *Id.* (quoting *American Home Prods. Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 (2nd Cir.1978)).
>
> FN6. *Utah Medical Products,* 79 F.Supp.2d at 1308-09 (quoting *L & F Products v. Procter & Gamble,* 45 F.3d 709, 711 (2d Cir.1995)).

At issue in this case are several categories of statements made by HSN either on-air or on the internet that Klein-Becker alleges violate the Lanham Act because they are false and misleading. First are a set of statements referred to by Klein-Becker as "false ingredients claims." Statements of this type from on-air presentations include the following:
"You know that's what so unique about this product and I really invite you to compare the ingredients. Go to your store and get the other one that we're talking about and look at the ingredient deck. Look at what we have in ours and look what they have in theirs."
"[D]o some comparative shopping. When you look at our ingredient deck and compare it to [the] other company's ingredient deck, you are going to go, oh, my gosh, what am I paying extra for."
"I always want you guys to be educated consumers and I really suggest you read our ingredient deck, read the competitor's ingredient deck and compare it."
"I want you to compare apples to apples so you know the other product, the competitor's product, check out the ingredient deck and look at ours and you'll find it very, very similar. So we invite you to compare the two, be an educated consumer.... Pay for the ingredients and that's what we should all want and the result."
"We dare you to compare. Log onto the internet, compare the ingredient manifolds. Compare the ingredient list and that's what it's really all about is being a smart, it's about being an informed consumer."
"That's what I'm talking about is unveiling the secrets of cosmetics and giving you guys apples to apples comparing ingredients and giving you products at a much more affordable price."
"[RuLinea-FX] is by far the most expensive product at Serious Skin Care for us to manufacture because of the ingredient deck on the back of this box. If you read what's in here, you are going to be really shocked, and I invite you to compare apples to apples."
**\*4** "I want to provide you with the ingredient depth that you see out there in your cosmetic stores that are hundreds and hundreds of dollars and give you the same thing and you compare the apples to apples and compare the ingredients out there with other cosmetics and I'm really going to unveil and uncover the secrets of skin care and give them to you at an affordable price because I believe."

Klein-Becker also complains that HSN broadcast statements creating a perception that RuLinea-FX is a generic "version" of StriVectin. Yet a third set of statements involved are those Klein-Becker labels the "false 'why pay' statements." Examples of these statements include:"... why pay $135 when you could pay only $32.50?!"
"There is a comparable product on the market. In order to buy this comparable product you have to spend $135. Ours is $32.50."

Klein-Becker next alleges that the "false four times" statement violates the Act as it falsely suggests that a consumer has to pay three to four times as much for StriVectin as it does for RuLinea-FX. Klein-Becker also objects to all statements involving "apples to apples" comparisons between the two products, as well as to a statement made on-air by HSN that StriVectin was originally developed as a cellulite cream.

As an initial matter, the court agrees with HSN that there is nothing in the on-air or internet statements made by HSN that suggests, when read in context, that RuLinea-FX is a generic "version" of StriVectin. Because Klein-Becker cannot demonstrate that any reasonable juror could find that false statements were made to the effect that RuLinea-FX is a generic version of StriVectin or that any statements made by HSN are likely to confuse consumers on this point, Klein-Becker's claim to this effect is dismissed.

However HSN has failed to establish that Klein-Becker's remaining Lanham Act claims should be dismissed. Klein-Becker has alleged in its complaint that statements made by HSN were either false or misleading. Whether advertising messages are false

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

or misleading is a quintessential fact issue, and thus not amenable to summary dismissal on a 12(b)(6) motion.

As regards literal falsity, for example, "[w]hether an advertisement is literally false is typically an issue of fact." [FN7] Thus,

> FN7. *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir.2000) (citing *Mead Johnson & Co. v. Abbott Labs.,* 209 F.3d 1032, 1034 (7th Cir.2000).

[a]t least two factual questions must be answered in evaluating the accuracy of any particular advertisement. First, a factfinder must determine the claims conveyed by the advertisement. Once the claim made by the advertisement has been determined, the factfinder must then evaluate whether that claim is false. [FN8]

> FN8. *Id.* (internal citations omitted).

And as for claims that given advertisements are misleading and lead to consumer confusion, the court should "not conduct its own evaluation of the advertising copy because whether advertising is misleading depends on 'what message was actually conveyed to the viewing audience.'" [FN9] Hence, "[i]n deciding whether a message is 'misleading,' the message conveyed is discerned by 'public reaction,' not by judicial evaluation." [FN10] Generally, plaintiffs use consumer surveys to prove that advertisements are misleading in Lanham Act claims, although a Lanham Act plaintiff does not necessarily have to "identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss." [FN11]

> FN9. *Id.* at 37 (quoting *Johnson & Johnson\*Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 298 (2d Cir.1992).
>
> FN10. *Id.* (internal citations omitted).
>
> FN11. *Id.* at n. 11.

**\*5** As adjudication of Klein-Becker's remaining Lanham Act claims requires significant fact-finding that it would be inappropriate for the court to engage in at the 12(b)(6) stage, HSN's motion to dismiss Klein-Becker's remaining Lanham Act claims is DENIED.

*Klein-Becker's Claims under Utah's Truth in Advertising Act*

Klein-Becker has also brought claims against the defendants for violation of Utah's Truth in Advertising Act ("UTAA"). [FN12] HSN seeks dismissal of these claims arguing that Klein-Becker failed to provide the notice required under § 13-11a-4(5) of the Act. HSN also urges dismissal of these claims as premature because it contends it has voluntarily refrained from using the complained of language in any advertisements since the complaint was filed in this action.

> FN12. Utah Code Ann. § 13-11a-3 et seq.

Under Utah Code Ann. § 13-11a-4(5),  
No action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant and provides the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement. If the prospective defendant does not promulgate a correction notice within ten days of the receipt of the notice, the complaining person may file a lawsuit under this chapter.

On February 8, 2005, Klein-Becker issued a letter to defendants Serious Skin Care and Flageoli (and to someone by the name of Robert Briggs with a company called Online Shopping 101, LLC) in which Klein-Becker stated that Serious Skin Care's and Flageoli's marketing of RuLineaFX was false and misleading and violated Utah's Truth in Advertising Act. Klein-Becker copied this letter to Steve Armstrong at HSN. Specifically, the letter complained about statements made that StriVectin-SD was three to four times more expensive than RuLinea-FX and that StriVectin was originally developed as a cellulite cream. Klein-Becker also complained in the letter about a statement that use of RuLinea-FX would cause crow's feet, wrinkles, lines and enlarged pores to disappear in three minutes. The letter concluded by stating that notice was being given so that corrective notices could be promulgated. A complete copy of this letter is attached to Klein-Becker's complaint.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                Page 5
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

HSN has a persuasive argument that the Klein-Becker's letter of February 8, 2005, does not satisfy the notice requirements for injunctive actions under the UTAA, at least as regards HSN. The letter was not addressed to HSN. The letter did not deal directly with statements aired by HSN, nor did it exhort HSN to promulgate corrections. Given that the letter only referenced the advertising campaign pursued by Serious Skin Care and Flageoli, it cannot be viewed as "notice" to HSN for purposes of the UTAA. Consequently, Klein-Becker's UTAA claims for injunctive relief against HSN under the UTAA are barred by § 13-11a-4(5) and are dismissed.

The issue remains whether the claims against defendants Serious Skin Care and Flageoli should be dismissed under the Act. The letter was addressed to both defendants and did address three specific statements. Only two of the statements identified in the February letter, however, showed up in Klein-Becker's complaint and Klein-Becker's complaint contains a number of statements that it did not specifically reference in the letter. Because the notice requirement clearly contemplates that notice is to be given so that an alleged offender can promulgate corrective statements, it seems logical that notice given under the section must be specific. The court thus holds that only specific statements identified in a notice under § 13-11a-4(5) satisfy the statute and thus any claims brought by Klein-Becker for injunctive relief against Serious Skin Care and Flageoli based on statements not specifically identified in the February 8, 2005 letter are dismissed. Claims based on "why pay" statements and cellulite statements-because these statements were specifically identified in the letter-remain actionable and will not be dismissed.

*6 Finally, § 13-11a-4(5) only applies to actions for injunctive relief. The section does not apply to claims for damages brought under the Act-claims that Klein-Becker has clearly made in its complaint. Thus, any failure by Klein-Becker to comply with the notice provisions of § 13-11a-4(5) does not require dismissal of any claims brought for damages against any of the defendants under the UTAA. The motion to dismiss Klein-Becker's UTAA claims is, therefore, denied as to all claims for damages.

*Klein Becker's Claims under Utah's Unfair Competition Act*

HSN has moved for dismissal of all claims brought by Klein-Becker under Utah's Unfair Competition Act [FN13] because they have not pled sufficiently to meet all requirements for establishing unfair competition under the Act. Klein-Becker argues that it has sufficiently pled a claim under the Act and that it should be allowed to amend to cure any deficiency in their pleading if found.

FN13. Utah Code Ann. § 13-5a-101 et seq.

Under the Act, "unfair competition" is defined as "an intentional business act or practice" that:
(i)(A) is unlawful, unfair, or fraudulent; and
(B) leads to a material dimunition in value of intellectual property; and
(ii) is one of the following:
(A) cyber-terrorism;
(B) infringement of a patent, trademark, or trade name;
(C) a software license violation; or
(D) predatory hiring practices.

Klein-Becker alleges that it is enough, under the Act, to allege trademark infringement to survive a motion to dismiss. But HSN is correct in arguing that the Act requires something more-namely, allegations of a practice that is "unlawful, unfair, or fraudulent"-as the elements of a violation are set out conjunctively. And although so far there are no Utah cases construing the meaning of "unlawful, unfair or fraudulent" under the Act, HSN would have this court, based on legislative history, determine that it is a practice involving hi-tech espionage or sabotage of intellectual property.

The court need not resolve this question, however, as it is clear that Klein-Becker's straight "trademark infringement" claim does not meet all three elements of the statutory claim. Whatever "unlawful, unfair or fraudulent" means, it means that Klein-Becker must plead something to have a viable claim under the Act beyond simply "trademark infringement." Instead of dismissing the claims, however, the court will grant Klein-Becker's motion to amend its claims under the Unfair Competition Act. Klein-Becker shall have 20 days in which to file an amended pleading.

*Klein-Becker's Utah Common-Law Unfair Competition Claims*

HSN challenges Klein-Becker's unfair competition claims under Utah common law, arguing that common law claims are limited to "palming off" and "misappropriation" claims, neither of which Klein-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                  Page 6
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)
**(Cite as: Not Reported in F.Supp.2d)**

Becker has alleged here. Klein-Becker counters that HSN has overstated these limits, that other unfair competition claims may be recognized under Utah law, and that it has in any even properly alleged both palming off and misappropriation claims in its complaint.

***7** Consistent with the Tenth Circuit's opinion in *Proctor & Gamble Co. v. Haugen,*[FN14] this court is not inclined to go beyond the Utah courts to recognize other common-law unfair competition claims in addition to "palming off" and "misappropriation." Thus, the issue becomes whether Klein-Becker has stated a viable claims for "palming off" or "misappropriation" under Utah law.

FN14. 222 F.3d 1262 (10th Cir.2000).

As the Tenth Circuit noted in *Haugen,* "[b]oth 'palming off' and 'misappropriation of goodwill' involve situations in which a company attempts to profit from the reputation of its competitor by selling one of its own products as that of its competitor or misappropriating a trademark belonging to its competitor." [FN15] Klein-Becker argues, somewhat facilely, that because defendants referred to their product as a "version" of StriVectin-SD and because they made a number of statements suggesting that the ingredients of the two products were the same, that they have sufficiently pled both palming off and misappropriation claims. As noted earlier, however, a review of the advertising copy attached to Klein-Becker's complaint reveals nothing, when read in context, to suggest that defendants ever presented RuLinea-FX as a "generic" version of StriVectin, that it was trying to "palm of" RuLinea-FX as a product manufactured by Klein-Becker or that it "misappropriated" Klein-Becker's trademark. On the contrary, the copy makes clear that the parties and products were competitors. The fact that defendants may have invited consumers to compare ingredients does not imply that were trying to palm off their products as those of Klein-Becker, nor that they were appropriating Klein-Becker's goodwill. As a matter law, the court finds nothing to support Klein-Becker's "palming off" or "misappropriation" claims and thus dismisses these common-law claims under Rule 12(b)(6).

FN15. *Id.* at 1280.

## CONCLUSION

The court DENIES HSN's motion for summary judgment and therefore DENIES Klein-Becker's motion for a Rule 56(f) continuance as moot. Because it would involve inappropriate fact-finding by the court, the court DENIES HSN's motion to dismiss plaintiff's false advertising claims under the Lanham Act, with the exception of plaintiff's claims based on the theory that HSN represented RuLinea-FX as a generic "version" of StriVectin-SD. HSN's motion to dismiss Klein-Becker's claims under Utah's Truth in Advertising Act is GRANTED as to all claims for injunctive relief as Klein-Becker failed to give HSN adequate notice as required under Utah law. For the same reason, Serious Skin Care and Flageoli's motion to dismiss Klein'Becker's Utah Truth in Advertising claims is GRANTED as to all claims for injunctive relief with the exception of those relating to "why pay" and "cellulite cream" statements. The defendants' motion to dismiss the Utah Truth in Advertising claims is DENIED, however, as to all claims for damages, as the notice requirement under Utah law only applies to claims for injunctive relief. Because Klein-Becker has failed to plead all elements essential to their claims under Utah's Unfair Competition Act, the court grants leave to amend the complaint to allege all of the required elements within 20 days of this opinion. Failure to timely file the amended complaint will result in the granting of HSN's motion to dismiss these claims. And finally, because Klein-Becker has failed to aver any facts establishing a "palming off" or "misappropriation" claim under Utah law, HSN's motion to dismiss Klein-Becker's claims brought under Utah common-law is GRANTED.

D.Utah,2005.
Klein-Becker usa, LLC v. Home Shopping Network, Inc., a Delaware corporation
Not Reported in F.Supp.2d, 2005 WL 2265007 (D.Utah)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.