2006 U.S. Dist. LEXIS 56133, *

CHAR BLOOM, SUSANNE COCHRAN, BEN DEJULIO, GIDEON GARTNER, SARAH GARTNER, AE, INC., a Colorado corporation, LARRY LUNCEFORD, KATHY LUNCEFORD, RANGER PLUMBING & HEATING, INC., a Colorado corporation, PETER RIETZ, KATHLEEN RIETZ, RALPH WANGER, LEAH WANGER, WAYNE WILLIAMS, and ROBERTA WILLIAMS, Plaintiffs, v. THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio corporation, Defendant.

Civil Case No. 05-cv-01317-LTB-MJW

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

2006 U.S. Dist. LEXIS 56133

August 10, 2006, Decided
August 10, 2006, Filed

**SUBSEQUENT HISTORY:** Later proceeding at *Bloom v. Goodyear Tire & Rubber Co., 2006 U.S. Dist. LEXIS 87267 (D. Colo., Nov. 28, 2006)*

**COUNSEL:** [*1] For Char Bloom, Susanne Cochran, Ben DeJulio, Gideon Gartner, Sarah Gartner, AE, Inc., a Colorado corporation, Larry Lunceford, Kathy Lunceford, Ranger Plumbing & Heating, Inc., a Colorado corporation, Peter Rietz, Kathleen Rietz, Ralph Wanger, Leah Wanger, Wayne Williams, Roberta Williams, Plaintiffs: James Lee Gray, William W. Maywhort, Holland & Hart, LLP-Greenwood Village CO, Greenwood Village, CO; David L. Black, Holland & Hart, LLP-Denver CO, Denver, CO.

For Goodyear Tire & Rubber Company, an Ohio corporation, Defendant: Chad James Schmit, David L. Lenyo, Garfield & Hecht, P.C. - Aspen, Aspen, CO; Lawrence Michael Brooks, Jr., Wells, Anderson & Race LLC, Denver, CO; Roger P. Thomasch, Katherine Allison White, Ballard, Spahr, Andrews & Ingersol LLP-Colorado, Denver, CO.

**JUDGES:** Lewis T. Babcock, Chief Judge.

**OPINION BY:** Lewis T. Babcock

**OPINION:**

MEMORANDUM OPINION AND ORDER

Babcock, C.J.

The defendant, The Goodyear Tire & Rubber Company ("Goodyear"), moves for summary judgment against plaintiff Ranger Plumbing & Heating, Inc. ("Ranger") on the ground that Ranger's claims are barred by applicable statutes of limitations and laches. Ranger disputes Goodyear's characterization of its [*2] claims and moves for leave to file an amended complaint for the purpose of clarifying its allegations. The motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons stated below, I GRANT Goodyear's motion and DENY Ranger's motion as moot.

**I. History**

This suit is third in a series brought in this Court by numerous plaintiffs against Goodyear for damages allegedly resulting from the failure of hose, called "Entran II," which Goodyear manufactured. The hose was incorporated into hydronic-radiant heating systems, which Chiles Power Supply d/b/a Heatway Radiant Floors and Snowmelting ("Heatway") sold to the plaintiffs for installation in their homes.

**II. Ranger's allegations**

Ranger and the other plaintiffs in this suit allege the following. The plaintiffs, other than Ranger, own homes in which Entran II was installed and has allegedly failed. They allege that Entran II is defective and that they have suffered damages as a result of the defect.

Ranger allegedly installed Entran II hose for its customers in approximately 25 homes between 1989 and 1993. It used Entran II in purported reliance upon Goodyear's representations, [*3] which were false, concerning the product's workmanship and performance. The heating systems failed in all 25 homes, requiring repairs or, in some instances, total replacement. Homes in which Ranger installed hose other than Entran II have experienced no, or only minor, problems. Ranger also alleges that Goodyear has publicly blamed Ranger for the fail-

Case 2:04-cv-00139-DAK-BCW    Document 332-3    Filed 05/25/2007    Page 2 of 6

Page 2
2006 U.S. Dist. LEXIS 56133, *

ures of the hose, damaging Ranger's reputation and business good will.

Ranger seeks reimbursement, on theories of unjust enrichment and restitution, of expenditures it made to remedy the injuries to its customers' properties. Though it originally joined in the product-liability and negligence claims of the other plaintiffs, it now concedes dismissal of those claims on its behalf.

## III. Undisputed facts

### A. Ranger's knowledge of the alleged product deficiencies

Ranger's Vice President and co-founder, Tom Krochmal, appeared as an expert witness on the plaintiffs' behalf in the trial of the first Goodyear action, *Loughridge et al v. Goodyear Tire & Rubber Company* ("*Loughridge*"), on May 8, 2003, and the second action, *Malek et al v. Goodyear Tire & Rubber Company* ("*Malek*"), on April 27, 2004. During both trials, [*4] Mr. Krochmal, who testified without compensation, attributed to Goodyear fault for the failures of the systems.

Mr. Krochmal testified that he began installing Entran II in hydronic heating systems in 1991. Soon thereafter -- within a year -- systems incorporating Entran II began to fail. The first leak appeared on April 26, 1991. Presently, several owners suffered injuries -- compromise of drywall, stains in carpets, other water damage -- to their homes. Mr. Krochmal determined that the calamities resulted from brittle Entran II hose.

By 1995 or 1996, Ranger had stopped constructing systems with Entran II, though it mistakenly included some Entran II hose in a few structures. In 1994, Ranger built a system that included both Entran II and a successor product, Entran 3. The system presently failed and investigation revealed that the Entran II hose had disintegrated while the Entran 3 hose remained intact. Ranger replaced all of the Entran II hose in that structure in 1997.

When, in September 1996, Mr. Krochmal observed that the Entran II hose in the home of a customer, Edward O'Brien, had changed color, he predicted that Mr. O'Brien's heating system would shortly fail. True to Mr. [*5] Krochmal's premonition, leaks developed in the system before a week had passed, resulting in water damage to the home. In 1997, Heatway removed the Entran II from Mr. O'Brien's system.

In August, 2000, Ranger filed a proof of claim in a bankruptcy proceeding in which Heatway was the debtor. Ranger assessed the value of the claim, for services performed, at more than seven million dollars. In a letter accompanying the claim filing, Ranger explained that "Heatway unknowingly provided defective Goodyear Entran 2 pipe for approximately twenty-six heating installations. All these installations have failed or show signs of failure." Ranger specified five categories of damages: costs of replacing tubing; loss of income as a result of time spent on replacement work; injury to Ranger's reputation; time expended in pursuit of recovery; and "residual damages" of one million dollars.

### B. Ranger's knowledge of Goodyear's alleged calumnies

An image retrieved from Goodyear's website on March 26, 2002 captures an essay entitled, "Facts About Entran II Hose and Heatway (CPS) Radiant Heating Systems." The essay proclaims, *inter alia*,

> The hose manufactured by Goodyear was labeled [*6] as Heatway Entran II and was incorporated as a component part in an estimated 10,000 -- 15,000 radiant heating systems from 1989 to 1994.
>
> The hose in the vast majority of these systems is working well and remains fully functional. In a limited number of systems, however, the hose has been damaged as a result of improper system design, improper installation, improper operation, or improper maintenance.
>
> Prior to declaring bankruptcy [Heatway] engaged in a public relations campaign claiming that Entran II hose becomes brittle and leaks because it is somehow unfit for use in radiant heating systems.
>
> This is untrue. Here are the facts.
>
> . . .
>
> Goodyear did not design or install [Heatway] radiant heating systems. The Entran II hose made by Goodyear was only one of at least 30 separate components in the systems designed by [Heatway] and installed by local contractors.
>
> Goodyear manufactured Entran II hose according to specifications agreed upon between Goodyear and Heatway. Goodyear relied on [Heatway's] assurance that it had expertise with radiant heating systems and was using installers it had trained and approved.

In fact, 95 percent of the heating [*7] systems that used Entran II hose are working fine, some more than a decade after installation. When properly designed, installed, and maintained radiant heating systems using Entran II hose do not fail.

However, if the systems is not designed, installed, or maintained properly, or if problems occur with any of the many other components in the system, the hose could be damaged and possibly fail. As part of [Heatway's] bankruptcy settlement, approved by the Court on August 18, 2000, a $ 2.9 million fund has been set aside for homeowners with failed Heatway (CPS) systems.

This does not mean, however, that Entran II is defective. Heatway systems have failed because of the way they were designed, installed, and maintained, not because of defective hose.

For example, failure to control the level of acid in radiant heating system fluid can severely damage hoses and other components. During field inspections of failed Heatway (CPS) systems, inspectors have found leaks caused by the installation of the wrong kind of connectors and many components, including hoses, that had been damaged by highly acidic and corrosive fluid.

Heatway (CPS) let homeowners down by not carefully [*8] supervising the installation of its radiant heating systems and by not making sure that homeowners were given manuals and other information about the proper use and maintenance of their systems.

A statement identical in import -- denying all culpability for the failures and attributing blame to Heatway, manufacturers of other components, local installers, and maintenance personnel -- first appeared on Goodyear's web site on or before January 6, 2001. A variation of the essay currently appearing on Goodyear's web site does not materially differ in its imputations of fault; it attributes the failures to "design, installation, operation and maintenance problems."

In December, 2000, Gary Tompkin and Alex Dumm, Goodyear representatives, met with various realtors and inspectors in towns where affected homeowners resided. At these sessions, Messrs. Tompkin and Dumm distributed copies of the statement from Goodyear's web site and made presentations on it.

On March 29, 2001, Mr. Krochmal gave a deposition, during which he discussed Goodyear's Internet explication. He noted the claims and assertions contained in the statement and explained why he believed each was untrue or deceptive. [*9] On July 14, 2005, the plaintiffs filed the complaint in this case.

### III. Discussion

Colorado law governs this case, here on diversity jurisdiction. *Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988)*. Because the material facts are undisputed, legal questions control the outcome.

#### A. Unjust enrichment and restitution

*Colorado Revised Statutes Section 13-80-106(1)* provides,

> Notwithstanding any other statutory provisions to the contrary, all actions except those [for breach of any contract for sale] brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product shall be brought within two years after the claim for relief arises and not thereafter. [*10]

Though Ranger's unjust enrichment claim is limited by equitable laches rather than legal limitation, its aim is restitution to Ranger of sums foregone and expended in fixing failed heating systems. Absent extraordinary circumstances, laches limitations derive from analogous statutes of limitations -- "actions at law of like character." *Interbank Investments, L.L.C. v. Vail Valley Consolidated Water Dist., 12 P.3d 1224, 1229-1230 (Colo. App. 2000)*; *Shell v. Strong, 151 F.2d 909, 911 (10th Cir. 1945)*. Therefore, both Ranger's restitution and unjust enrichment claims are subject to the two-year limitations period for actions arising out of product defects.

Case 2:04-cv-00139-DAK-BCW    Document 332-3    Filed 05/25/2007    Page 4 of 6

Page 4
2006 U.S. Dist. LEXIS 56133, *

The claims accrued perhaps as early as September, 1996 and at the latest by August, 2000. On those occasions, and at times during the interim, Ranger's officers demonstrated an awareness that the Entran II hose was defective and that the defect was causing injury to its customer's buildings. Thus, Ranger had until September, 1998, or August, 2002 at the latest, to pursue in court recovery of any expenditures it made to remedy injuries to its customers' properties. Its unjust enrichment and restitution [*11] claims here are time-barred.

Ranger appears to concede that any claims premised upon defects in the Entran II hose are untimely. Attempting to save its restitution and unjust enrichment claims by tying them to Goodyear's alleged calumnies, Ranger asserts that it "has incurred much of the repair and replacement expense without charge to its customers in an attempt to maintain business in the face of Goodyear's disparagement." From this convolution, Ranger further reasons, "Because Goodyear's disparagement of Ranger's services continues to this day, Ranger's CCPA, restitution, and unjust enrichment claims are viable for all of Goodyear's wrongful conduct." Whatever Ranger intends this to mean, it does not signify that Ranger's claims are timely.

Mr. Krochmal's own affidavit belies Ranger's characterization. He avers, "Based on the defect in Entran II, I have had to repair and replace tubing in multiple homes." It is clear, then, that Ranger undertook remedial measures not in response to Goodyear's derogations but rather to fix and replace the bad hose. Though Ranger might have avoided incurring the expenses had Goodyear accepted responsibility for the purported defects, the damages [*12] for which it seeks restitution result not from commercial disparagement but rather from defects in Goodyear's product.

Ranger next asserts that Goodyear has suffered no prejudice as a result of any delay. Citing *Brooks v. Bank of Boulder, 911 F. Supp. 470, 477 (D. Colo. 1996)*, it argues that the unjust enrichment claim should not be dismissed for laches because enforcement of the right asserted will work no injustice. It disputes that Goodyear will encounter any difficulty in obtaining discovery concerning repairs and replacements it performed in the 1990's. It notes that Goodyear has had numerous opportunities to depose and cross-examine Mr. Krochmal on the subjects of defects in Entran II and repairs Ranger has performed. And it assures that it is not seeking damages for amounts recovered by other, previous plaintiffs.

Ranger misapprehends Goodyear's stated concerns. In *Loughridge, Malek*, and other actions in which Mr. Krochmal appeared as an expert witness, Ranger's entitlement to damages and the reasonableness of any damages were not directly relevant to the contested issues. Thus, any opportunity Goodyear might have had to explore the questions of Mr. Krochmal's [*13] financial interest in the results of those suits, the reasonableness of Ranger's repairs, mitigation, double recovery, and other questions bearing upon Ranger's damages was academic. The bias question is particularly nettlesome: as Goodyear points out, the juries never had the opportunity to weigh Mr. Krochmal's unremunerated expert testimony against his undisclosed intention later to sue for damages arising out of the same alleged defect about which he then testified. Though Mr. Krochmal's purported disinterest in the outcomes of the *Loughridge* and *Malek* actions is unrelated to the question whether Ranger has expended sums for which it might otherwise deserve compensation, it bears directly on the question whether any recovery here would be unjust.

Furthermore, as Goodyear points out, litigation of the unjust enrichment claim now would encounter insuperable obstacles. Witnesses, especially sixteen former Ranger employees, have disappeared, as have financial records and other important documentary evidence. And Goodyear would be disadvantaged in its attempt to ensure that prior, victorious homeowners did not recover repair costs for which Ranger now seeks restitution.

[*14] **B. Commercial disparagement**

Though Ranger did not in the Complaint designate a claim for commercial disparagement, under principles of notice pleading, it has satisfied the requirements of *Rules 8(a)* and *12(b)(6) of the Federal Rule of Civil Procedure*. It is equally clear that Ranger was aware of Goodyear's alleged disparagement at least as early as March 29, 2001, when Mr. Krochmal discussed the statements in a deposition. If brought under the Colorado Consumer Protection Act ("CCPA"), *Colo. Rev. Stat. § 6-1-105(1)(h)*, Ranger's claim is subject to a three-year statute of limitations. *Colo. Rev. Stat. § 6-1-115*. If stated under Colorado common law, the claim is limited after two years. *Colo. Rev. Stat. § 13-80-102(1)(a)*; *Full Draw Prods, v. Easton Sports, 85 F. Supp. 2d 1001, 1011(D. Colo. 2000)*.

The question, then, is whether the continuous appearance of the allegedly offending essay on Goodyear's website tolled the limitations period until July 14, 2005, when Ranger filed its complaint. Ranger points out that a CCPA claim must commence:

> within three years after the date on which the false, misleading, or deceptive act or practice occurred or the [*15] date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the

Case 2:04-cv-00139-DAK-BCW   Document 332-3   Filed 05/25/2007   Page 5 of 6

Page 5
2006 U.S. Dist. LEXIS 56133, *

exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

*Colo. Rev. Stat. § 6-1-115*. It characterizes Goodyear's web publication as a series of acts or practices continuing to the present. It cites *Full Draw Productions v. Easton Sports, Inc., 85 F. Supp. 2d 1001 (D. Colo. 2000)* for the proposition that re-publication, within three years prior to the filing of a CCPA claim, of previous misstatements renders the claim timely.

In response, Goodyear argues that the continuing tort doctrine does not salvage claims for defamation that occurred outside the period of limitation. It cites *Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002)*, in which the Ninth Circuit rejected the plaintiff's argument that sales of James Carville's book, which contained allegedly defamatory statements about her, constituted a continuing tort. The court there reasoned that the single incident of the book's publication, not its subsequent sales, could fairly and [*16] realistically be identified as the cause of any harm to the plaintiff. *Id.*

Goodyear first published as early as January, 2001 the essay allegedly disparaging Ranger and other installers. The statements continue to appear on Goodyear's web site. The parties have not cited, and I have not found, any Colorado law resolving the question when publication of an assertion on a web site occurs for the purpose of discerning accrual of a claim premised upon the assertion. "Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." *Oliveros v. Mitchell, 449 F.3d 1091, 1093 (10th Cir. 2006)*. I am to consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority. *Armijo, 843 F.2d at 407*.

Ample authority supports the conclusion that repeated defamations do not constitute a continuing tort; rather, each separate defamatory statement constitutes a distinct cause of action. *Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297, 2006 U.S. Dist. LEXIS 37173, 2006 WL 1582329, *6 (E.D. Pa. 2006)*; [*17] *Celli v. Shoell, 995 F. Supp. 1337, 1345 (D. Utah 1998)*; *Lewis v. Gupta, 54 F. Supp. 2d 611, 616 (E.D. Va. 1999)*. Goodyear's publication of its allegedly defamatory statement on its web site has been continuous, not serial. This case is thus unlike those in which a defendant repeats a defamatory statement on separate occasions.

Numerous decisions stand for the proposition that posting of statements on the Internet should be treated in the same manner as publication in traditional media, and that publication on web sites therefore is subject to the single publication rule. *Van Buskirk v. N. Y. Times Co., 325 F.3d 87, 89 (2d Cir. 2003)*; *Oja v. United States Army Corps of Eng'rs, 440 F.3d 1122, 1130-1132 (9th Cir. 2006)*; *Mitan v. Davis, 243 F. Supp. 2d 719, 724 (W.D. Ky. 2003)*; *Churchill v. State, 378 N.J. Super. 471, 876 A.2d 311, 319 (N.J. Super. App. Div. 2005)*; *Firth v. State, 98 N.Y.2d 365, 775 N.E.2d 463, 465, 747 N.Y.S.2d 69 (N.Y. 2002)*. Under that rule, "Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single [*18] publication." *Restatement (Second) of Torts § 577A(3)* (1977). The single publication rule is an exception to the general maxim that "each of several communications to a third person by the same defamer is a separate publication." *Restatement (Second) of Torts § 577A(1)* (1977).

While recognizing the distinctions between Internet publications and publications in traditional media, the preponderance of courts to consider this question have applied the single publication rule. Goodyear's publication here is unlike the publication of Mr. Carville's book: unlike books, web pages are easily altered, even erased, after their initial publication and can generally be made unavailable for public consumption at any time. *See Oja, 440 F.3d at 1131 n.7*. However, like the publication of a book, the initial posting of material on a web site constitutes a discrete act of publication. And, once the material is posted, no further act by the publisher is necessary to make the information available to the public. *Id. at 1131*. Because the general weight and trend of authority favors applying the single publication rule to Internet publications, I conclude that Colorado [*19] courts would do so in this case.

Any alterations to Goodyear's web site since the initial publication have not altered the substance of the allegedly defamatory statement, and thus do not constitute subsequent publications. As one court has explained,

> The mere addition of unrelated information to a Web site cannot be equated with the repetition of defamatory matter in a separately published edition of a book or newspaper. . . . The justification for the republication exception has no application at all to the addition of unrelated material on a Web site, for it is not reasonably inferable that the addition was made either with the intent or the result of communicating the earlier and separate defamatory information to a new audience.

2006 U.S. Dist. LEXIS 56133, *

*Firth*, 775 N.E.2d at 466. In addition, policy concerns favor application of the single publication rule in such circumstances.

> A rule applying the republication exception under the circumstances here would either discourage the placement of information on the Internet or slow the exchange of such information, reducing the Internet's unique advantages. In order not to retrigger the statute of limitations, a publisher [*20] would be forced either to avoid posting on a Web site or use a separate site for each new piece of information.

*Id.*

Goodyear's web page, then, constitutes neither a continuing tort nor a series of statements, each giving rise to a new cause of action. Instead, it constitutes a single publication, about which Mr. Krochmal was aware at least as early as March 29, 2001, more than three years before the filing of the complaint in this case.

Accordingly it is ORDERED that:

1) Goodyear's motion for summary judgment against Ranger [35] is GRANTED;

2) all claims by Ranger are dismissed, with costs; and

3) Ranger's motion for leave to amend its complaint to designate a claim for disparagement under the CCPA [48] is DENIED as moot.

Dated: August 10, 2006, in Denver, Colorado.

BY THE COURT:

s/ Lewis T. Babcock, Chief Judge