MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>    Defendant and Counterclaim-Plaintiff. | **REPLY IN SUPPORT OF NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON SCO'S NON-COMPETE CLAIM IN ITS SECOND CLAIM FOR BREACH OF CONTRACT AND FIFTH CLAIM FOR UNFAIR COMPETITION**<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

I.      INTRODUCTION ....................................................................................1

II.     ARGUMENT ..........................................................................................2

        A.      Neither the APA Nor the TLA Gives Rise to an Independent
                "Non-Compete" Covenant Capable of Breach. ......................................2

                1.      The Choice Here is Between License Limitations and
                        Covenants.................................................................................3

                2.      The Choice is Not Between "Conditions" and Covenants.........................5

                3.      The TLA Provisos Are License Limitations, Not
                        Covenants, and Do Not Give Rise to a Claim for Breach of
                        Contact. ...................................................................................6

                4.      If SCO is Right That TLA Limitations are Covenants, Its
                        Copyright Infringement Action Must Be Dismissed. ..................8

        B.      Any Purported Non-Compete Obligations of Novell Terminated
                Due to SCO's Change of Control. ......................................................10

                1.      SCO Concedes the Facts That Support a Finding on
                        Summary Judgment that Any Non-Compete Obligations of
                        Novell Terminated in 2001. ......................................................10

                2.      The Later Contract Implementing the License
                        Contemplated by the APA Provides that a Change of
                        Control Occurs Upon a Sale of Substantially All Assets.........................11

                3.      Extrinsic Evidence Need Not Be Considered But Confirms
                        That Section 6.6(c) Governs SCO's Change of Control...........................14

        C.      Section 16600 Invalidates the Restrictions SCO Attempts to
                Enforce Here. ..............................................................................15

                1.      SCO Must Choose:  License Limitations or Covenants?.........................15

                2.      Franchise and Employment Cases are Inapposite.....................................16

i

3.    There is No "Partial Restraint" Exception to Section
      16600, and Even If There Were, No Such Exception
      Applies Here. ........................................................................................17

4.    Section 16601 Does Not Apply Here.........................................................18

5.    This Motion Should Not Be Stayed Because of SCO's
      "Unjust Enrichment" Defense....................................................................20

III.    CONCLUSION...............................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Adobe Sys. v. One Stop Micro, Inc.*,
  84 F. Supp. 2d 1086 (N.D. Cal. 2000) ............................................................................8

*Arya Group, Inc. v. Cher*,
  77 Cal. App. 4th 610 (2000) ......................................................................................21

*Asdourian v. Araj*,
  38 Cal. 3d 276 (1985) ...............................................................................................20

*Black v. Kos*,
  No. CIV 05-163 KBM/LCS, 2005 U.S. Dist. LEXIS 8304 (D.N.M. Mar. 29, 2005) .......................4

*Boughton v. Socony Mobil Oil Co.*,
  231 Cal. App. 2d 188 (1964) ...........................................................................17 n.11, 18

*Chamberlain v. Augustine*,
  172 Cal. 285 (1916) ............................................................................................17 n.10

*Cornish & Carey Commer. v. Guzik*,
  No. H025028, 2004 Cal. App. Unpub. LEXIS 3894 (Cal. App. April 20, 2004) ...........................12

*Davenport & Co. v. Spieker*,
  197 Cal. App. 3d 566 (1988) ......................................................................................21

*Davis v. Jointless Fire Brick Co.*,
  300 F. 1 (9th Cir. 1924) ......................................................................................17 n.10

*Dayton Time Lock Serv., Inc. v. The Silent Watchman Corp.*,
  52 Cal. App. 3d 1 (1975) ...........................................................................................16

*Dore v. Arnold Worldwide, Inc.*,
  39 Cal. 4th 384 (2006) ......................................................................................8, 14, 16

*Edwards v. Arthur Andersen LLP*,
  142 Cal. App. 4th 603 (2006) .................................................................................17, 18

*Edwards v. Arthur Andersen LLP*,
  2006 Cal. LEXIS 14181 (Cal. 2006) ..............................................................................18

*Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*,
  661 F.2d 479 (5th Cir. 1981) ..................................................................................7, 10

*Fowler v. Varian Assocs., Inc.*,
    196 Cal. App. 3d 34 (1987) ........................................................................................16

*Frangipani v. Boecker*,
    64 Cal. App. 4th 860 (1998) .....................................................................................12

*Gen. Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.*,
    126 F.3d 1131 (9th Cir. 1997) ........................................................................17 n.11, 18

*Germaine Music v. Universal Songs of Polygram*,
    No. 03-17295, 130 Fed. Appx. 153 (9th Cir. May 3, 2005) ......................................5 n.3

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998) ....................................................................................8, 9

*Great Frame Up Sys., Inc. v. Jazayeri Enters., Inc.*,
    789 F. Supp. 253 (N.D. Ill. 1992) .............................................................................16

*Grosso v. Miramax Film Corp.*,
    383 F.3d 965 (9th Cir. 2004) ......................................................................................4

*Gruber v. Fannie Mae*,
    No. B154703, 2003 Cal. App. Unpub. LEXIS 2467 (Cal. App. March 13, 2003)....................12, 13

*Guthy-Renker Corp. v. Bernstein*,
    No. CV 97-9279 MRP, Memorandum of Decision (C.D. Cal. Sept. 3, 1999) ............................5, 10

*Harris Mkt. Research, Inc. v. Marshall Mktg. & Commc'ns, Inc.*,
    No. 86-2491 S, 1990 U.S. Dist. LEXIS 7040 (D. Kan. May 1, 1990) ...............................4

*Jacob Maxwell, Inc. v. Veeck*,
    110 F.3d 749 (11th Cir. 1997) .....................................................................................7

*Kabehie v. Zoland*,
    102 Cal. App. 4th 513 ...............................................................................................10

*Kashani v. Tsann Kuen China Enter. Co.*,
    118 Cal. App. 4th 531 (2004) ...............................................................................21 n.14

*Keating v. Baskin-Robbins USA, Co.*,
    No. 5:99-CV-148-BR(3), 2001 WL 407017 (E.D.N.C. Mar. 27, 2001) ........................16

*Kelton v. Stravinski*,
    138 Cal. App. 4th 941 (2006) ....................................................................................20

*King v. Gerald*,
    109 Cal. App. 2d 316 (1952) ........................................................................................18

*LGS Architects, Inc. v. Concordia Homes*,
    434 F.3d 1150 (9th Cir. 2005) ................................................................................. 5-6

*La Resolana Architects, PA v. Clay Realtors Angel Fire*,
    416 F.3d 1195 (10th Cir. 2005) ...................................................................................4

*Liu v. Price Waterhouse LLP*,
    182 F. Supp. 2d 666 (N.D. Ill. 2001) .........................................................................8

*Lucas v. Gund, Inc.*,
    450 F. Supp. 2d 1125 (C.D. Cal. 2006) ...............................................................17 n.12

*Morey v. Paladini*,
    187 Cal. 727 (1922) ............................................................................................17 n.10

*Morris v. Harris*,
    127 Cal. App. 2d 476 (1954) ..............................................................................17 n.10

*NLRB v. International Union of Operating Engineers*,
    323 F.2d 545 (9th Cir. 1963) ............................................................................. 11-12

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) .....................................................................................4

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*,
    425 F. Supp. 2d 756 (N.D. Tex. 2006) .......................................................................4

*SOS, Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ...............................................................................7, 8

*Shaklee U.S. Inc. v. Giddens*,
    934 F.2d 324 (9th Cir. May 30, 1991) ......................................................................16

*Strategix, Ltd. v. Infocrossing West, Inc.*,
    142 Cal. App. 4th 1068 (2006) .................................................................................20

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    81 F. Supp. 2d 1026 (N.D. Cal. 2000) .......................................................................7

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) ...............................................................................3, 9

*Tremayne v. Striepeke*,
  262 Cal. App. 2d 107 (1968) .............................................................................. 12

*United States Naval Inst. v. Charter Communications, Inc.*,
  936 F.2d 692 (2d Cir. 1991) ................................................................................ 9

*Zajicek v. Koolvent Metal Awning Corp. of Am.*,
  283 F.2d 127 (9th Cir. 1960) .............................................................................. 16

*Zim v. Western Pub. Co.*,
  573 F.2d 1318 (5th Cir. 1978) .............................................................................. 6

## STATUTES AND RULES

Cal. Bus. & Prof. Code
  § 16600 ...................................................................... 6, 15, 16, 17, 18, 20
  § 16601 ................................................................................. 18, 19, 20

D. Utah Civil
  Local Rule 7-2 ................................................................................ 5 n.3

Ninth Circuit
  Rule 36-3(c) ................................................................................... 5 n.3

## MISCELLANEOUS

3 Nimmer on Copyright
  § 10.15[A] ........................................................................................... 8

## I.     INTRODUCTION

Novell demonstrated in its motion, directed at SCO's claims concerning the Technology Licensing Agreement ("TLA"), that: (1) the limitations on the license retained by Novell in the TLA are merely limitations and not independently enforceable covenants; (2) these limitations terminated on SCO's Change of Control; and (3) California law and policy barring restraints on trade void any supposed covenants not to compete contained in the TLA.  Nothing SCO has said in its Opposition should convince the Court otherwise.

First, Novell has established that the relevant caselaw and the actual contractual language make plain that the terms at issue here are ordinary license limitations.  These limitations act only to curtail the rights retained by Novell and do not ground any independently enforceable covenant not to compete.  SCO has attempted to complicate this Motion by introducing new distinctions that do not apply here ("condition" vs. "covenant") and by attacking the distinctions that do apply ("license limitation" vs. "covenant").  SCO does so without the support of applicable caselaw and in the face of contrary contractual language.

Second, SCO concedes that a Change of Control has occurred.  Nevertheless, SCO contends that this Change of Control did not terminate the license limitations, despite the plain language of the TLA, because the TLA is supposedly overridden by the APA.  However, it is the TLA that overrides the APA, to the extent that there is any conflict, as the TLA is the detailed implementation of the APA and was executed several months *after* the APA.

Third, in order to evade California's strict prohibition against non-compete clauses, SCO recharacterizes the contractual language in question as "limitations on the scope of a license," not covenants — precisely what Novell argued and SCO contested in the first third of this motion.  SCO cannot have it both ways.  The language in question is either a covenant and is

therefore void under well-established California law and policy, or it is not a covenant and

therefore does not give rise to a claim for breach of an alleged covenant not to compete.

Novell asks that the Court grant this motion and dismiss the portions of SCO's Second

and Fifth claims relying on supposed "non-compete" covenants.

## II.    ARGUMENT

### A.    Neither the APA Nor the TLA Gives Rise to an Independent "Non-Compete" Covenant Capable of Breach.

Resolution of this Motion requires sorting out "conditions," "license limitations," and

"covenants."  To be clear:

- Conditions are acts that must be performed or events that must happen before the promisor's duty of performance arises.

- License limitations circumscribe the scope of a license by, for example, specifying that the license extends only to certain product categories or lasts only for a certain time.

- Covenants are promises to render some performance.

In an effort to muddy the waters, SCO contends that there is no such thing as a distinction

between "license limitations" and "covenants," and that the real question for the Court is whether

the language following "provided, however" in Section II.(A).2 of the Technology Licensing

Agreement (the "TLA Provisos") imposes "conditions" or covenants.[1]  SCO's argument finds no

support in the caselaw.  Having improperly set up this dispute as one between condition and

covenant, SCO then proceeds to argue that legal presumptions as well as intrinsic and extrinsic

---

[1] The Technology Licensing Agreement ("TLA") is attached as Exhibit 5 to Declaration of Kenneth W. Brakebill, PACER No. 284 ("Brakebill Declaration").  The Asset Purchase Agreement ("APA") is attached as Exhibit 2 to the Brakebill Declaration.

evidence support its position that the clause is a covenant. SCO is wrong on each point: the TLA Provisos are run-of-the-mill license limitations.

### 1.  The Choice Here is Between License Limitations and Covenants.

In its Opposition, SCO suggests that, in interpreting the TLA, Novell presents a "false choice" between license limitation and covenant, and that instead the choice ought to be between "conditions" and covenants. (SCO's Memorandum in Opposition to Novell's Motion for Partial Summary Judgment on SCO's Noncompete Claim in Its Second Claim for Breach of Contract and Fifth Claim for Unfair Competition, PACER No. 301 ("Opp."), at 13-16.) As a preliminary matter, the Ninth Circuit, applying California law, has definitively established that is a distinction between license limitations and covenants. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999). As explained in Novell's opening briefing, in *Sun*, the Ninth Circuit reviewed a district court ruling that "held that this case is a copyright infringement case and not a contract case . . . ." *Id.* at 1121. The Ninth Circuit held that this determination hinges on whether "the disputed terms are limitations on the scope of the license rather than independent contractual covenants," and remanded to the district court to conduct such an inquiry. *Id.* at 1122. The question presented by this motion could likewise be put as whether this is "a copyright infringement case" (stemming from a license limitation) or a "contract case" (stemming from a covenant).[2]

---

[2] SCO suggests that the *Sun* opinions do not preclude a finding that the same contractual language can be both a license limitation and a covenant. (Opp. at 14-15.) Though SCO is correct that this was not the question presented in *Sun*, it is certainly the strong implication of the ruling — why remand for determination as to whether "the disputed terms are limitations on the

(Footnote continues on next page.)

What SCO must mean is not that there aren't such things as "license limitations," as distinct from covenants, but that the breach of *both* may arise from the same set of facts — *i.e.*, that the categories are not necessarily mutually exclusive. (Opp. at 14.) SCO offers no case that so holds. SCO instead cites cases that concern only whether the Copyright Act preempts various state law causes of action, an argument Novell has not advanced and that has no relevance to whether the language at issue is simultaneously a limitation and a covenant. *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1199 n.2 (10th Cir. 2005) (merely reciting basic preemption law in dicta footnote); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967-68 (9th Cir. 2004) (holding dismissal of copyright claim does not bar pursuit of implied contract seeking compensation for script idea); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) (dicta listing, *ad seriatim*, possible alternative claims available to plaintiff where claim preempted); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 766 (N.D. Tex. 2006) (analyzing only whether claim preempted); *Black v. Kos*, No. CIV 05-163 KBM/LCS, 2005 U.S. Dist. LEXIS 8304 at *4 (D.N.M. Mar. 29, 2005) (enforcing contract not to distribute photographs, noting no claim of copyright infringement made) (Exhibit A hereto).

In other instances, SCO misleadingly cites only an appellate decision where the district court decision makes clear that the case involved the breach of what was indisputably a separate contractual obligation — that is, a covenant — not a limitation on the scope of the license. The district court opinion in *Harris Mkt. Research, Inc. v. Marshall Mktg. & Commc'ns, Inc.*, No. 86-2491 S, 1990 U.S. Dist. LEXIS 7040 (D. Kan. May 1, 1990) (Exhibit B hereto), for example, makes clear that the defendant defaulted on a payment obligation, not a limitation on the scope

---

(Footnote continued from previous page.)

scope of the license rather than independent contractual covenants" if the language could simply be both? *Id.* at 1122.

of the license. *Guthy-Renker Corp. v. Bernstein*, No. CV 97-9279 MRP, Memorandum of

Decision (C.D. Cal. Sept. 3, 1999) (Exhibit C hereto), involved an obligation to attribute

copyrighted photographs, again not a limitation on the license.[3]

### 2.    The Choice is Not Between "Conditions" and Covenants.

Having argued, without support, that Novell's distinction between license limitations and

covenants is a "false" one, SCO then argues that the real choice for the Court is between a

"condition" and a covenant. The parties agree that the TLA Provisos are not conditions, at least

not in the strict sense of that term. Conditions require perfect performance and operate to void

the duties of the opposing party if the condition is not met. That is why, as SCO explains, the

law disfavors conditions, preferring covenants instead. (Opp. at 17-18.) But there can be no

dispute that, in traditional intellectual property licenses, limitations circumscribing the

geographic, temporal, or usage scope of a license do not impose conditions (at least not in the

sense SCO intends). When a licensee obtains the right, for example, to use a photograph five

times, the sixth use of the photograph does not render the first five uses unlicensed — *i.e.*, the

_____

[3] If anything, *Guthy-Renker* supports Novell's position. (*See infra* § II.A.4.) The case involved two photographs. As to one, the defendant breached an agreement to properly attribute the photograph to the plaintiff, and the plaintiff was awarded breach of contract damages. The plaintiff also sought copyright damages on that photograph, but was *denied* such damages because he had failed to rescind his license agreement with the defendant. The plaintiff *was* awarded copyright damages on the second photograph, however, as it was never subject to a license agreement. SCO cites the appellate opinion as though these two holdings concern the same material. (Opp. at 16.)

SCO's only remaining case for this point is an unpublished Ninth Circuit opinion whose cited language is explicitly dicta and should therefore be entitled no weight. *Germaine Music v. Universal Songs of Polygram*, No. 03-17295, 130 Fed. Appx. 153 (9th Cir. May 3, 2005) (Exhibit D hereto); *see also* DUCivR 7-2 ("Citation of unpublished opinions is disfavored . . . ."); *cf.* Ninth Circuit Rule 36-3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit . . . .").

"forfeiture" that accompanies a traditional condition does not occur. *See, e.g., LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1156-57 (9th Cir. 2005) (defendant exceeded license by using copyrighted plans to build more than licensed number of homes, not by building licensed homes).[4] The same is true in other areas of intellectual property. *See, e.g., Zim v. Western Pub. Co.*, 573 F.2d 1318, 1327 (5th Cir. 1978) (where right to use plaintiff's name on one book was authorized, no action lied; when defendant exceeded scope of license for second book, defendant violated plaintiff's right of privacy). To illustrate this point, it may be helpful to recall that ownership of property affords the holder a bundle of rights. In executing a limited license, the licensor is simply parceling out one portion of that bundle. Doing so imposes no more a "condition" or "covenant" than does a decision to sell five of a set of ten widgets.

> **3.    The TLA Provisos Are License Limitations, Not Covenants, and Do Not Give Rise to a Claim for Breach of Contact.**

Relevant caselaw and the contract itself establish conclusively that the TLA Provisos are merely license limitations, not independent covenants. Indeed, when it suits SCO, it characterizes the TLA Provisos as merely "limitations on the scope of the license" — in the hope of avoiding the California Business and Professions Code section 16600 bar on covenants that restrain trade. (Opp. at 31.)[5]

---

[4] There has likewise been no claim here that Novell has forfeited the internal license contained in TLA § II.A.1.

[5] This change is quite dramatic. At every available opportunity in the first 30 pages of its Opposition, SCO refers to the license limitations at issue as the "non-compete clauses." (*See, e.g.,* Opp. at 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 30.) Once SCO begins its defense against California's bar against restraints on trade, the same contractual language then becomes "limitations on the scope of the license" (*id.* at 31) or "license restrictions" (*id.* at. 33, 34, 36, 37, 41), terms which do not occur once before.

The TLA Provisos' plain language makes clear they are not independent, bargained-for promises.  First, the TLA Provisos begin with "provided, however."  Second, the remainder of the TLA refers to this text as "provisos."  (Brakebill Decl. Ex. 5 at 2-3 (TLA § II.B).)  Third, the TLA Provisos contain no language of promise or commitment, whereby Novell promises on its own behalf to perform or forebear from some act.  Compare this with the language from *Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F. Supp. 2d 1026, 1028, 1032 (N.D. Cal. 2000), in which the court held, on remand, that contractual language imposing an affirmative obligation to ensure that licensed products were compatible with the licensor's product — an obligation contained in a separate section of contract and that survived termination of license — was an independent covenant.[6]  Instead, it is plain that the TLA Provisos merely limit the license retained — each of the three provisos circumscribe in a particular way the uses to which Novell may put the Licensed Technology.  (Brakebill Decl. Ex. 5 at 2 (TLA § II.A.(2)(i)-(iii)).)

A license is a promise by the licensor not to sue the licensee for certain conduct — here, for example, copyright infringement.  *Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 753 (11th Cir. 1997) (characterizing copyright license as promise not to sue).  License limitations such as those here set the boundaries of that promise.  The end result is that SCO's claims fundamentally sound in copyright (or perhaps trade secret) law, not contract law.  Supporting this conclusion are a litany of cases that make clear that the general rule is that the result of a licensee exceeding the scope of its license is a copyright infringement claim.  *SOS, Inc. v. Payday, Inc.*, 886 F.2d

---

[6]  In response, SCO contends that, unlike the parties in *Sun*, the parties here had a good reason for placing the supposed covenants immediately following the license — they did so because "the non-compete agreement specifically applied to the license-back arrangement." (Opp. at 21.)  That the language in question "specifically applied to the license-back arrangement" is the *very reason* it is a license limitation, though, and not a covenant.

1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license."); *Liu v. Price Waterhouse LLP*, 182 F. Supp. 2d 666, 672 (N.D. Ill. 2001) ("It is an axiomatic copyright principle that a person may exploit only such copyrighted literary material as he either owns or is licensed to use.  It is also undisputed that a 'use' of copyrighted material which exceeds the scope of the license constitutes an infringement." (internal quotation marks and citation omitted)); *Adobe Sys. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1092 (N.D. Cal. 2000) ("A common method of distribution is through licensing agreements, which permit the copyright holder to place restrictions upon the distribution of its products.  A licensee infringes the owner's copyright if its use exceeds the scope of its license." (internal quotation marks and citation omitted)).

### 4.    If SCO is Right That TLA Limitations are Covenants, Its Copyright Infringement Action Must Be Dismissed.

If, contrary to the law and evidence, SCO is correct that the choice is in fact between "condition" and "covenant" and that the TLA Provisos are covenants, SCO is in something of a pickle.

Where a license contains a covenant, the breach of that covenant does not terminate the license.  That leaves the license conveyed by the TLA intact, requiring dismissal of SCO's Fourth Claim for Relief, its copyright infringement claim.  Indeed, SCO's own cases put the point best:  "'[I]f the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] . . . and if such covenant constitutes an enforceable contractual obligation, then the [licensor] will have a cause of action for breach of contract,' not copyright infringement." *Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998) (quoting 3 Nimmer on Copyright § 10.15[A]).

In *Graham*, the plaintiff licensed software to the defendant, and the defendant agreed to pay the plaintiff for the software and to attribute it to him.  When the defendant failed to do either, the plaintiff sued and obtained damages for both breach of contract and copyright infringement.  *Graham*, 144 F.3d at 234.  The defendant appealed, claiming in part that he was protected by license.  The plaintiff claimed that the license was voided when the defendant failed to satisfy the payment and attribution conditions.  *Id.* at 236.[7]  The Court disagreed, holding that those obligations were independent covenants, not conditions (explaining the allure of this case for SCO).  *Id.* at 237.  The Court remanded to the district court, with the direction that the plaintiff be required to show that he affirmatively rescinded the license prior to the alleged infringements.  SCO has never claimed it is entitled to rescission, certainly not before any alleged infringement.

It is therefore not enough for SCO to cite cases such as *Graham* in support of its argument that the TLA Provisos are covenants.  SCO must follow that argument to its logical conclusion:  if the limitations are covenants, the full TLA license remains intact and SCO's copyright infringement claim would have to be dismissed.  *Id.* at 236-37; *see also Sun Microsystems, Inc.*, 188 F.3d at 1121 ("Generally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract." (quoting *Graham*)); *United States Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) ("[a] licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it");

---

[7] Like SCO, the plaintiff had made no claim of rescission.

*Fantastic Fakes, Inc.*, 661 F.2d at 483-84 ("breach of covenant may support a claim of damages for breach of contract but will not disturb the remaining rights and obligations under the license including the authority to use the copyrighted material"); *Kabehie v. Zoland*, 102 Cal. App. 4th 513, 528 ("breach of an independent covenant of a copyright license . . . is not a copyright infringement action, but a breach of contract action," citing *Graham*); *Guthy-Renker Corp. v. Bernstein*, No. CV 97-9279 MRP, Memorandum of Decision at 5-6 (holding breach of license covenant does not automatically terminate license, dismissing copyright claim where no evidence of rescission offered) (Exhibit C hereto).

   **B.     Any Purported Non-Compete Obligations of Novell Terminated Due to SCO's Change of Control.**

       **1.     SCO Concedes the Facts That Support a Finding on Summary Judgment that Any Non-Compete Obligations of Novell Terminated in 2001.**

   Faced with overwhelming documentary and testimonial evidence that Santa Cruz transferred substantially all of its assets to Caldera in 2001, SCO acknowledges "the undisputed fact that a change in the control of Santa Cruz occurred in 2001." (Opp. at 1.)[8]  A narrow issue thus remains for the Court:  Can SCO avoid the legal consequence of this admission by ignoring the Change of Control provision in the TLA which automatically terminates any non-compete restrictions upon a Change of Control — and instead rely on a different clause in the APA?  As discussed below, the answer is no, especially where, as here, the parties specifically

---

   [8] After Novell filed its opening brief, Santa Cruz's outside counsel on the Caldera transaction confirmed in his deposition that the Santa Cruz-Caldera transaction in 2001 "was a sale of substantially all of the assets of the business" of Santa Cruz.  (Second Suppl. Brakebill Decl., Ex. 9 at 101:15-102:1 (Danaher Dep.).)  He explained that Santa Cruz offered dissenters' rights to its shareholders for this very reason.  (*Id.*)

contemplated in the APA that the later-executed TLA would operate as the governing license agreement.

> **2.     The Later Contract Implementing the License Contemplated by the APA Provides that a Change of Control Occurs Upon a Sale of Substantially All Assets.**

SCO's effort to ignore the TLA on the applicable Change of Control provision is not supported by the relevant case law or the TLA's integration clause.  Contrary to SCO's suggestion, neither counsels that the parties' later agreement on the meaning of "Change of Control" of SCO should be ignored or overridden by language in the prior contract.

On September 19, 1995 the parties agreed that they would execute a "license agreement" "concurrent with the Closing."  (Brakebill Decl. Ex. 2 at 12 (APA § 1.6).)  Nearly three months later, the parties negotiated and executed this subsequent agreement in the form of the TLA.  (*Id.* Ex. 5 (TLA).)  As SCO concedes, the TLA implemented the agreement contemplated by the APA.  (Opp. at 48 (¶ 11).)  Though the APA and the TLA may be read together since they "constitute the entire understanding between the parties with respect to its subject matter" (Brakebill Decl. Ex. 5 at 5 (TLA integration clause)), any conflict or inconsistency between the two is governed by the later contract.

Under established California law, where the same parties enter into multiple contracts and the first contract contemplates the second, the contracts should be construed together but the later contract supersedes the earlier one wherever it is inconsistent.  For example, *NLRB v. International Union of Operating Engineers*, 323 F.2d 545, 546 (9th Cir. 1963), involved an alleged conflict between two contracts governing the manner in which workers would be hired for a construction job.  The matter was first heard by an administrative board, which gave

preference to the earlier-executed contract.  *Id.* at 547.  Applying California law, the Ninth

Circuit held:

> The provisions of these two contracts are inconsistent with each
> other and since the contracts were entered into by the same parties
> and cover the same subject matter, it is a well settled principle of
> law that the later contract supersedes the former contract as to
> inconsistent provisions.

*Id.* at 548.  The court therefore overturned the administrative decision, concluding that "*as a*

*matter of law*" the later-executed contract was entitled to precedence where there was a

purported conflict between the contracts.  *Id.* at 548 (emphasis added); *see also Frangipani v.*

*Boecker*, 64 Cal. App. 4th 860, 863 (1998) ("Where there is an inconsistency between two

agreements both of which are executed by all of the parties, the later contract supersedes the

former.").

SCO claims these cases are inapposite because they do not mention whether the contracts

at issue were to be "read together."  (Opp. at 27-28.)  SCO cites no cases in support of such a

distinction, and cases considering this argument have rejected it.  *See Tremayne v. Striepeke*, 262

Cal. App. 2d 107, 113-14 (1968) (considering defendant's argument that "the two instruments

should be read together," but nevertheless concluding that "it is also recognized that a later

instrument supersedes an earlier one whenever they are inconsistent"); *see also Cornish & Carey*

*Commer. v. Guzik*, No. H025028, 2004 Cal. App. Unpub. LEXIS 3894 (Cal. App. Apr. 20, 2004)

("The listing agreement and lease agreement must be interpreted together as one contract.  To the

extent that there is an inconsistency between the two writings, the later contract controls.")

(Exhibit E hereto); *Gruber v. Fannie Mae*, No. B154703, 2003 Cal. App. Unpub. LEXIS 2467

(Cal. App. Mar. 13, 2003) ("Several documents concerning the same subject and made as part of

the same transaction will be construed together even if the documents were not executed

contemporaneously. . . . In addition, where there is an inconsistency between two agreements, both of which are executed by all of the parties, the later contract supersedes the former." (internal quotation marks and citation omitted)) (Exhibit F hereto). Here, the original contract between the parties, as provided in Section 1.6 of the APA, refers the parties to Section 6.3(c) when considering whether a Change of Control of SCO has occurred. However, the plain language of the TLA provides otherwise. SCO does not, and cannot, contest that there exists a basic conflict between the language of the APA and the TLA .

The TLA states that the license restrictions in Section II.A.2 "shall cease to exist" "[i]n the event of a Change of Control of SCO." (Brakebill Decl. Ex. 5 at 2-3 (TLA).) The parties further agreed in the TLA that this term "Change of Control" "shall have the respective meaning[] attributed to such term[]" in the original APA. (*Id.* at 2 (TLA).) The *only* definition of "Change of Control" in the original APA contract is contained in Section 6.6(c). The plain language in that section explicitly defines the capitalized term "Change of Control" used in the TLA:

> (c)    Change of Control.  **For purposes of this Agreement, a "Change of Control" with respect to one party shall be deemed to have occurred whenever** (i) there shall be consummated . . . any sale, lease, exchange or transfer (in one transaction or a series of related transactions) of all or substantially all the assets of such party . . . .

(*Id.* Ex. 2 at 48-49 (APA § 6.6(c).) Accordingly, the parties must look to Section 6.6(c) when determining whether there is a Change of Control for SCO that would cause the license restrictions in the TLA to cease.

13

### 3.    Extrinsic Evidence Need Not Be Considered But Confirms That Section 6.6(c) Governs SCO's Change of Control.

The TLA's instruction to look to the APA definition for "Change of Control" is clear on its face. In turn, Section 6.6(c) of the APA furnishes a clear answer to the definition of "Change of Control." Thus, extrinsic evidence is neither necessary nor admissible to deviate from the express directions of the TLA. *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392 (2006) (stating California's black-letter rule that extrinsic evidence is not admissible to vary or contradict terms of an integrated agreement). The cases SCO cites do not contradict this rule, holding only, as SCO admits, that "where the relevant terms 'furnish no clear answer,'" courts may turn to extrinsic evidence. (Opp. at 28 (citing cases).)

SCO's extrinsic evidence — in the form of declarations from Ed Chatlos and Duff Thompson — serves only to contradict the express directions of the TLA and therefore is inadmissible. Both declarations ignore the TLA's plain language and fail to explain why that language should be disregarded. The only valuable extrinsic evidence comes straight from the mouth of the lead in-house lawyer at Santa Cruz at the time of the APA and TLA. After looking at the language of these agreements together, Mr. Sabbath confirmed that Section 6.6(c) is the governing Change of Control provision in the TLA:

> Q. "For purposes of this agreement, A, 'Change of Control' with respect to one party shall be deemed to have occurred whenever," and then there's a list of conditions. Do you see that?
>
> A. Yes, I do.
>
> Q. And now, if you look at the Technology License Agreement?
>
> A. Uh-huh.
>
> Q. And at the top of page 2 of the TLA?
>
> A. Term assets, change of control.

14

Q.  Yes, it says the term — to truncate the sentence, it says the term "change of control" shall [have] the respected meaning attributed to such term in the Asset Purchase Agreement?

A.  Yes.

Q.  And you see the definition of change of control in 6.6(c)?

A.  Yes.

Q.  To the best of your recollection, is the change of control in the TLA the change of control in Section 6.6(c), page 41?

A.  Sure looks like it.

(Declaration of Mark F. James, filed 5/18/07, PACER No. 320, Ex. 120 at 194:11-195:8

(Sabbath Dep.).)

### C.      Section 16600 Invalidates the Restrictions SCO Attempts to Enforce Here.

Even if the TLA and APA contain an affirmative covenant not to compete that has not been terminated by a change of control, California's powerful bar against restraints on trade — Business and Professions Code Section 16600 — voids such non-compete covenants.  SCO advances five reasons why Section 16600 does not doom its TLA claim.  None are persuasive.

### 1.      SCO Must Choose:  License Limitations or Covenants?

SCO first argues that, because the restrictions in question are just "limitations on the scope of the license," they are not subject to Section 16660.  (Opp. at 30-31.)  *Novell agrees*.  As explained above in Section II.A, the TLA Provisos are just license limitations and, as a consequence, are not independently enforceable.  A licensor is obviously able to set, for example, geographic, temporal, and usage boundaries on a license without running afoul of Section 16660.

The problem is that SCO is not attempting to enforce these restrictions as license limitations — SCO argues they are independent covenants. (Opp. at 13-22.) As such, they are subject to § 16600 and void. *See, e.g., Zajicek v. Koolvent Metal Awning Corp. of Am.*, 283 F.2d 127, 132 (9th Cir. 1960) (characterizing clause preventing defendant from marketing competing products *during life of license* as "indisputably invalid").[9]

### 2.    Franchise and Employment Cases are Inapposite.

Next, SCO contends that Section 16600 does not apply because Novell and SCO have an "existing business relationship." In support, SCO cites cases involving employment or franchise relationships, claiming these cases are "directly analogous." (Opp. at 31-34, citing *Shaklee U.S. Inc. v. Giddens*, 934 F.2d 324 (9th Cir. May 30, 1991) (unpublished franchise case); *Keating v. Baskin-Robbins USA, Co.*, No. 5:99-CV-148-BR(3), 2001 WL 407017 at *11 (E.D.N.C. Mar. 27, 2001) (unpublished franchise case) (Exhibit G hereto); *Great Frame Up Sys., Inc. v. Jazayeri Enters., Inc.*, 789 F. Supp. 253, 255-56 (N.D. Ill. 1992) (franchise); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 44 (1987) (employment); *Dayton Time Lock Serv., Inc. v. The Silent Watchman Corp.*, 52 Cal. App. 3d 1, 6-7 (1975) (franchise).) Franchise and employment relationships involve a level of day-to-day control that is simply not present in a license relationship, and these cases are therefore inapposite. And, again, SCO hopes to skirt the fact that what it attempts to impose here is not a *license limitation* but instead a purported contractual non-compete provision.

---

[9] SCO contends, erroneously, that *Zajicek* concerned only a non-compete covenant in force after the termination of the license. (Opp. at 32-33 n. 6.)

### 3.    There is No "Partial Restraint" Exception to Section 16600, and Even If There Were, No Such Exception Applies Here.

There is currently a split among the California courts regarding the existence and breadth of judge-made exceptions to the language of Section 16600.  One line permits no exception to Section 16600's straightforward edict that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600.[10]  The other line, which SCO cites, permits restraints on trade where the restraint is "narrow" or "reasonable," terms that are defined and applied on a case-by-case basis.[11]

The most recent case from either line is *Edwards v. Arthur Andersen LLP*, 142 Cal. App. 4th 603 (2006).[12]  The *Edwards* court considered and explicitly rejected the "narrow restraint" exception to Section 16600.  *Id.* at 620.  The court reached that ruling by applying the ordinary rules of statutory construction.  There is no such "narrow restraint" exception in the plain language of the statute.  *Id.* ("If the Legislature had intended section 16600 to apply only to

---

[10] *See, e.g., Chamberlain v. Augustine*, 172 Cal. 285, 289 (1916) ("The statute makes no exception in favor of contracts only in partial restraint of trade."); *see also Davis v. Jointless Fire Brick Co.*, 300 F. 1, 3 (9th Cir. 1924) (citing above *Chamberlain* quotation, voiding covenant); *Morey v. Paladini*, 187 Cal. 727, 739 (1922) (same); *Morris v. Harris*, 127 Cal. App. 2d 476 (1954) (same).

[11] *See, e.g., Boughton v. Socony Mobil Oil Co.*, 231 Cal. App. 2d 188, 190 (1964) (covenant in land deed barring sale of petroleum on property was not restraint on trade within meaning of Section 16600); *see also Gen. Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.*, 126 F.3d 1131, 1133-34 (9th Cir. 1997) (contract prohibiting providing shipping services to single customer not restraint within Section 16600).

[12] There is one subsequent case, *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1130 n.4 (C.D. Cal. 2006), which describes, in a dicta footnote, *Edwards* as "invalidating the Ninth Circuit's 'narrow restraint' exception and clarifying that all . . . noncompetition agreements except those regarding trade secrets are unenforceable in California."

restraints which were unreasonable or overbroad, it could certainly have included language to that effect."). And there are *other* explicit exceptions to the statute. *Id.* at 621 ("The Legislature has created three express statutory exceptions to Section 16600, suggesting it did not intend to create a fourth implied exception for reasonable, partial, or narrow restraints."). Edwards has been accepted for review by the California Supreme Court. *Edwards v. Arthur Andersen LLP*, 2006 Cal. LEXIS 14181 (Cal. 2006) (Exhibit H hereto). Novell submits that *Edwards* has the better of the analysis, as it is consistent with the plain language of the statute and the basic cannons of statutory interpretation.

Even were there such an exception to Section 16600, the restraint at issue here is not nearly so narrow as those in the cases that create the exception. *Boughton* involved a clause in land deed barring sale of petroleum on property; it did not bar the buyer from selling any other product on the property, nor from selling petroleum elsewhere. *General Commercial Packaging* restrained the defendant from providing standard shipping services to a *single* customer. *King v. Gerald*, 109 Cal. App. 2d 316 (1952), prohibited the defendant from using a single, licensed automotive design past the termination of the license. Had *King* been decided otherwise, California licenses would have no termination. By contrast, the restraint at issue here applies anywhere in the world. (Opp. at 41.) It remains in force in perpetuity. And it bars an entire category of products *Novell owns* — modifications to Licensed Technology. (Brakebill Decl. Ex. 5 at 3 (TLA § III.(2)).) As such, the restraint here falls well outside any potential "narrow" restraint exception to Section 16600.

### 4.    Section 16601 Does Not Apply Here.

Section 16600 provides for certain, specific statutory exceptions to its general ban on contracts that restrain trade. SCO claims that an exception permitting geographically-limited

restraints on trade that accompany the sale of a business's goodwill — Section 16601 — applies here.  It does not.

### a)     The APA Did Not Transfer Goodwill.

SCO first contends that it is entitled to a presumption that goodwill transferred.  (Opp. at 38.)  SCO does not contend that goodwill was specifically enumerated in the list of assets transferred by the APA.  The cases SCO cites each involve a contract in which assets were listed for transfer and from which goodwill was omitted, the result being that the courts elected to imply the presence of goodwill on the asset transfer list.  Here, however, APA Schedule 1.1(b) expressly *excludes* from transfer "[a]ny asset not listed on Schedule 1.1(a)."  (Brakebill Decl. Ex. 2 at 61 (APA Schedule 1.1(b)).)  That fact is present in none of SCO's cited cases, and SCO is therefore not entitled to any "presumption" that goodwill transferred.

SCO then contends that the language of the APA itself implies that goodwill was among the transferred assets.  (Opp. at 38-39.)  Again, though, SCO does not dispute that Schedule 1.1(a) does not specifically identify "goodwill" as among the assets to be transferred.  Nor does SCO dispute that Schedule 1.1(b) provides that "[a]ny asset not listed on Schedule 1.1(a)" is excluded from transfer.

Finally, SCO offers a letter of its own agent, an auditor at KPMG.  SCO provides no explanation why this self-serving statement should be admitted or entitled to any weight.  (Opp. at 39-40, citing Exhibit 70.)[13]

---

[13]  It is surprising to see SCO cite Exhibit 70 as a supposedly accurate list of the intangible assets conveyed by the APA — Exhibit 70 makes no mention at all of copyrights, and therefore constitutes an admission that the transfer of copyrights was not contemplated by the APA.  (*See, e.g.,* Ex. 70 at SCO1230555 (listing intangibles transferred, omitting copyrights).)

      b)      **The TLA Does Not Contain the Required Geographic Limitation.**

As SCO acknowledges, the "goodwill transfer" exception also requires that the buyer identify "a specified geographic area" in which the seller must refrain from carrying on a similar business.  (Opp. at 40-41.)  As SCO's own cases make clear, this limitation is required to harmonize section 16601 with the purposes and intent of section 16600:  "Otherwise, a seller could be barred from engaging in its business in places where it poses little threat of undercutting the company it sold to the buyer."  *Strategix, Ltd. v. Infocrossing West, Inc.*, 142 Cal. App. 4th 1068, 1073 (2006).

SCO acknowledges that the APA and TLA contain no such geographic limitation, instead claiming that "[t]he absence of a geographic limitation in the APA and TLA . . . complies with the purpose and rationale of section 16601."  (Opp. at 41.)  SCO does not (and cannot possibly) explain how the application of section 16601 in the absence of a statutorily-required element is consistent with that statute's "purpose and rationale."  Nor does SCO cite any case in which "the world" qualifies as "a specified geographic area."

      5.      **This Motion Should Not Be Stayed Because of SCO's "Unjust Enrichment" Defense.**

As a last gasp defense, SCO asks the Court to table this motion until such time as the arbitration-related stay is lifted and SCO can gather evidence of supposed harm SuSE Linux has done SCO.  SCO cites no case permitting a plaintiff to proceed with an unjust enrichment claim in the face of a restraint on trade voided under Section 16600.  *See, e.g., Kelton v. Stravinski*, 138 Cal. App. 4th 941, 949 (2006) (affirming refusal to enforce covenant not to compete).  The cases SCO cites instead each concern oral home improvement contracts voided under a statute requiring such contracts to be in writing.  *Asdourian v. Araj*, 38 Cal. 3d 276, 289-290 (1985)

20

(failure to put home improvement contract in writing); *Arya Group, Inc. v. Cher*, 77 Cal. App.

4th 610, 613-14 (2000) (same); *Davenport & Co. v. Spieker*, 197 Cal. App. 3d 566, 569 (1988)

(same).[14]  These cases naturally each involve labor actually expended by the plaintiff.  Here, by

contrast, the license rights in question are rights Novell *retained*.  (Brakebill Decl. Ex. 5 at 2

(TLA § II ("Novell's Retained Licenses")).)  These rights concern in substantial part, technology

*developed and owned by* Novell — Novell is explicitly granted "[o]wnership of any

modifications made to Licensed Technology."  (*Id.* at 3 (TLA § III.(2)).)

## III.    CONCLUSION

For the foregoing reasons, Novell requests that this Court grant summary judgment on the

alleged "non-compete" claim in SCO's Second and Fifth Claims for Relief, dismissing SCO's

claims that Novell has breached the express and implied terms of the APA and TLA by

purportedly competing with SCO and its claim that Novell has engaged in unfair competition by

competing with SCO.

---

[14] SCO also cites *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531 (2004), which involved illegal trade with Iran.  The Court never reached questions concerning unjust enrichment, however, because there was "no allegation that any benefit was conferred on or retained by defendants [or] that defendants have been unjustly enriched . . . ."  *Id.* at 557.

DATED:   May 25, 2007

                ANDERSON & KARRENBERG


By: _____ */s/  Heather M. Sneddon* _____

        Thomas R. Karrenberg
        John P. Mullen
        Heather M. Sneddon

        -and-

        MORRISON & FOERSTER LLP
        Michael A. Jacobs (pro hac vice)
        Kenneth W. Brakebill (pro hac vice)
        Grant L. Kim (pro hac vice)

        **Attorneys for Defendant and
        Counterclaim-Plaintiff Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2007, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF NOVELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON SCO'S NON-COMPETE CLAIM IN ITS SECOND CLAIM FOR BREACH OF CONTRACT AND FIFTH CLAIM FOR UNFAIR COMPETITION** to be served to the following:

*Via CM/ECF*:

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
(*and via Hand Delivery*)

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
(*and via Overnight Mail*)

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid*:    Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

/s/ Heather M. Sneddon

23