# EXHIBIT A

Dockets.Justia.com

LEXSEE 2005 U.S. DIST. LEXIS 8304

**D.A. BLACK, Plaintiff v. ERNIE KOS, individually, and CLOVIS/CURRY COUNTY CHAMBER OF COMMERCE, Defendants**

**CIV 05-163 KBM/LCS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO**

*2005 U.S. Dist. LEXIS 8304; Copy. L. Rep. (CCH) P28,973*

**March 28, 2005, Decided**

COUNSEL: [*1] For D A Black, Plaintiff: Stephen E. Doerr, Doerr & Knudson PA, Portales, NM

For Ernie Kos, Defendant: Barbara Ann Patterson, Robert E. Sabin, Atwood, Malone, Turner & Sabin, PA, Roswell, NM

For Clovis/Curry County Chamber of Commerce, a non-profit organization, Defendant: Barbara Ann Patterson, Atwood, Robert E. Sabin, Atwood, Malone, Turner & Sabin, PA, Roswell, NM

JUDGES: Karen B. Molzen, UNITED STATES MAGISTRATE JUDGE, Presiding by consent

OPINION BY: Karen B. Molzen

OPINION:

### MEMORANDUM OPINION AND ORDER OF REMAND

Plaintiff D.A. Black is a professional photographer. In 2000, he alleges that he sold copies of his photographs to the Defendant Clovis/Curry County Chamber of Commerce ("Chamber") and provided duplicate slides of the photos when Defendant Ernie Kos asked his permission to use the pictures at a seminar. Black gave the slides to Kos on the condition that she would not under any circumstance reproduce them in any form or fashion without Black's express written consent. *See Doc. 1* (State Court Complaint at PP 4-8 and attached exhibits). Black asserts that the parties agreed that "any reprints/reruns or unauthorized use will be billed at 100% full market price of [*2] applicable use." *Id.* at Exh.3.

Almost three years ago, Plaintiff discovered that the Chamber used his photographs for a membership directory. When Black demanded that such use cease and that it pay him for the "unauthorized use" of the images, the Chamber did so. *Id.,* PP 9-11. In January 2004, Plaintiff discovered images of his photographs displayed on two websites featuring Clovis, New Mexico. Again he demanded that the Chamber stop using the photographs and pay him for the "unauthorized use." According to Plaintiff, this time the Chamber refused. *Id.,* at PP 12-14.

Plaintiff then brought suit in state court on January 3, 2005 asking for injunctive and monetary relief. *See id.* (prayer for relief). On February 14, 2005, Defendants timely removed the case to federal court on the basis that Plaintiff's suit sounded in copyright, over which the federal courts have original and exclusive jurisdiction pursuant to *28 U.S.C. § 1338(a). See id.* (Notice of Removal PP 2-3); *see also 28 U.S.C. § 1338(a)*("The district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to [*3] . . . copyrights . . . . Such jurisdiction shall be exclusive of the court of the states in . . . copyright cases.").

In lieu of an Answer, Defendants immediately moved to dismiss the Complaint on the ground that Plaintiff never registered his photographs with the Copyright Office, a prerequisite to bringing suit under the federal *Copyright Act. See Doc. 4.* Plaintiff responded by seeking a remand to state court. Black contends that the Complaint raises only a state law breach of contract claim, and that he is not seeking to enforce a copyright. *See Doc. 6.*

Pursuant to *28 U.S.C. § 636(c)* and *FED. R. Civ. P. 73(b)*, the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3 & 10.* Because I find that this Court lacks subject matter jurisdiction, I will remand this matter pursuant to *28 U.S.C. § 1447(c)*("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

The owner of a registered copyright under the federal statute has the exclusive rights to that copyright [*4] and can sue to enforce it. *See 17 U.S.C. §§ 106, 106A,*

2005 U.S. Dist. LEXIS 8304, *; Copy. L. Rep. (CCH) P28,973

*411, 501-505.* Because Plaintiff did not copyright his photographs, he has no enforceable rights under the federal statute. n1 Defendants apparently take the position that a person who generates potentially copyrightable material but fails to do so under the federal laws, loses any right whatsoever to recover for the wrongful use of those materials.

> n1 Because Black did not intend to state a cause of action for copyright infringement under federal law, and the state contract claim is not preempted, Defendants' motion to dismiss such a claim is moot.

I have studied the authorities submitted by the Defendants, and I recognize that there is a trend toward applying the doctrine of complete preemption to the federal Copyright Act. However, the Tenth Circuit is *not* among the circuits that have revised their approach to conclude that the federal Copyright Act "completely preempts" state law. The Supreme Court has not spoken [*5] on the issue, nor has a clear consensus emerged among the circuits. n2 Therefore, I follow the terms of the federal statute and binding authority from the Tenth Circuit.

> n2 *See Ritchie v. Williams, 395 F.3d 283, 286 (6th Cir. 2005)*("Since this case involves removal of claims stated only in state law terms, we must determine whether or not the doctrine of complete preemption applies to the Copyright Act. Although this Circuit and most other Circuits have not addressed the question directly, the Second and the Fourth Circuits have held that the doctrine of complete preemption applies in copyright cases."); *see also id. at 288, n.3* ("In determining under § 301 whether or not a particular state law cause of action is 'equivalent' to a federal copyright infringement action, most circuits (including this one) have referred to the 'extra element test.' . . . Under this analytical device, if the state claim requires an 'extra element' beyond those required for copyright infringement, then it is not 'equivalent,' and therefore not preempted . . . . If there is no 'extra element,' or the 'extra elements' are merely 'illusory,' then the claim is equivalent to a copyright action, it is preempted by the Copyright Act and the federal courts have exclusive jurisdiction to hear it.").

[*6]

The federal copyright statute does preempt state common or statutory law, but only those laws that grant "legal or equitable rights *that are equivalent* to any of the exclusive rights within the general scope of [the federal Copyright Act]." *Id.* at § 301 (a)(emphasis added). Conversely, "nothing in this title annuls or limits any rights or remedies under the common law or statute of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright." *Id.* at § 301(b)(3).

New Mexico has no such "equivalent" law that creates or protects copyrights. A statute entitled "Protection of Copyrights" was repealed in 1987. *See N.M. Stat. Ann. §§ 57-4-1 to 57-4-7.* The only other New Mexico statute regarding copyrights merely provides that copyrighted materials, as defined under the federal Copyright Act, that are generated by state employees are the property of the State. *See id., §§ 57-3C-1 to 57-3C-5.* I have found no state decision that recognizes a common law remedy because the material at issue is copyrightable. Thus, New Mexico [*7] lacks a copyright law under which Plaintiff could sue in the first instance.

Nor is Black's "unauthorized use" claim - now posed as breach of contract theory - an "equivalent" within the meaning of the federal statute. Presumably Plaintiff seeks to recover under the written conditions appended to his transfer of the duplicate slides of pictures he had sold to the Chamber of Commerce. Under Tenth Circuit precedent, only if the New Mexico claim for breach of contract is "equivalent" to a federal copyright cause of action does the federal Copyright Act completely preempt this state cause of action.

A court "takes the wrong approach by focusing its preemption analysis on the conduct alleged to support the two causes of action." *Harolds Stores v. Dillard Dep't Stores, 82 F.3d 1533, 1543 (10th Cir)*(internal quotations and citation omitted), *cert. denied, 519 U.S. 928, 136 L. Ed. 2d 216, 117 S. Ct. 297 (1996).* That is, I cannot focus on the fact that Plaintiff has slides of pictures that he believes Defendants improperly used without compensating him. *Id.* Rather, in determining whether Plaintiff's state breach of contract claim "asserts rights equivalent to those specified [*8] in § 106 of the Copyright Act - and is thereby preempted by § 301- *we compare the elements of the causes of action, not the facts pled to prove them.*" *Id.* (emphasis added).

"To prove a copyright infringement under the federal Copyright Act, a plaintiff must show: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"*Id.* (internal quotations and citation omitted). To prove breach of contract, Plaintiff must demonstrate that there was an agreement concerning the scope of use of the slides and that Defendants breached the agreement by failing to abide by their

2005 U.S. Dist. LEXIS 8304, *; Copy. L. Rep. (CCH) P28,973

end of the bargain. *E.g.,* N.M. Uniform Jury Instructions - Civil, § 13-822 (and Committee comment). Whether Plaintiff owns a valid copyright in the photographs, or the photographs are "original," or the photographs were "copied" has no bearing on the state law cause of action.

Even if Black did have a valid federal copyright, his state breach of contract claim could continue. Because the breach of contract claim requires proof of completely different and "extra" elements - the existence of an enforceable contract - the state cause of action is not preempted **[*9]** as a matter of federal law. *Harolds Stores, Inc., 82 F.3d at 1543* ("Because Harold's Oklahoma Antitrust Act claim requires proof of an extra element separate from that required for Harold's [federal] copyright infringement claim, we hold that *§ 301 of the Copyright Act does not preempt the Oklahoma Antitrust Act, Okla. Stat. tit. 79, § 1.*"). n3

n3 The result is the same if Plaintiff were to assert alternative bases for recovery such as promissory or equitable estoppel. *E.g., Khalsa v. Levinson, 2003 NMCA 18, 133 N.M. 206, 212, 62 P.3d 297, 303 (N.M. App. 2002)*("The elements of promissory estoppel are a promise which induced the promisee's action or forbearance, the promisee's reliance must have been reasonable, the promisee's action or forbearance must have amounted to a substantial change in position, the promisee's action or forbearance must have been actually foreseen by the promisor when making the promise, and the enforcement of the promise is required to prevent injustice."); *Lopez v. State, 1996 NMSC 71, 122 N.M. 611, 617, 930 P.2d 146, 152 (1996)*("The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and incon-

sistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.")(internal quotations and citation omitted.)

**[*10]**

In summary, this Court lacks subject matter jurisdiction over the matter because the parties are not diverse, Plaintiff's complaint raises only a state claim, and the federal Copyright Act does not preempt that state claim. I find, however, that Defendants had an arguable basis removing the matter, due in part to the lack of a clear theory of recovery in Plaintiff's Complaint. Therefore, I decline to award Plaintiff any costs or fees incurred as a result of the removal. *See 28 U.S.C. § 1447(c).*

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 6*) is GRANTED, and Defendants' Motion To Dismiss (*Doc. 4*) is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that this matter is remanded to the Ninth Judicial District Court, County of Curry, State of New Mexico. Pursuant to *28 U.S.C. § 1447(c)*, the Clerk shall certify a copy of this order of remand and mail it to the clerk of the state court, whereupon the state court may proceed with the case.

Date: 3-28-05 CAC

UNITED STATES MAGISTRATE JUDGE

Presiding by consent.

# EXHIBIT B

LEXSEE 1990 U.S. DIST. LEXIS 7040

**HARRIS MARKET RESEARCH, INC., Plaintiff, v. MARSHALL MARKET-
ING AND COMMUNICATIONS, INC., Defendant and Third-Party Plaintiff, v.
LARRY R. HARRIS, Third-Party Defendant**

**Civil Action No. 86-2491 S**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*1990 U.S. Dist. LEXIS 7040*

**May 1, 1990, Decided
May 1, 1990, Filed**

**COUNSEL:** [*1]

Paul Gurney, Holdbrook, Ellis & Heaven, P.A., Kansas City, Kansas, Robert F. Redmond, III, Jeffrey S. Bay, Van Osdol, Magruder, Erickson, and Redmond, Kansas City, Missouri.

James F. Davis, Brown, Koralchik & Fingersh, Overland Park, Kansas, Anthony F. Jeselnik/Robert V., Laubach, Fulton & Jeselnik; Mitchell, Pittsburgh, Pennsylvania.

Paul Gurney, Holbrook, Ellis & Heaven, P.C., Kansas City, Kansas, Jeffrey S. Bay, Robert F. Redmond, III, Van Osdol, Magruder, Erickson and Redmond, Kansas City, Missouri.

**JUDGES:**

Dale E. Saffels, United States District Judge.

**OPINION BY:**

SAFFELS

**OPINION:**

*MEMORANDUM AND ORDER*

This matter is before the court on the parties' various post-trial motions. In this case, the jury found for plaintiff Harris Market Research on its breach of contract claim and copyright infringement claim, and awarded plaintiff $ 220,000 in damages. The jury found for defendant Marshall Marketing and Communications, Inc. on its breach of contract, interference with other contracts, misappropriating proprietary information, and malicious prosecution claims. The jury awarded defendant $ 75,000 in actual damages and $ 500 in punitive damages. Defendant Marshall Marketing and Communi-

cations, Inc. has [*2] filed a motion for judgment notwithstanding the verdict, or alternatively, for new trial, and a motion to vacate the magistrate's order of October 18, 1989. Plaintiff Harris Market Research, Inc. and third-party defendant Larry Harris have filed a motion for judgment not withstanding the verdict, or alternatively, for new trial. Plaintiff Harris Market Research also has filed a motion to alter or amend judgment and a motion for a hearing to assess and award attorney's fees. After thoroughly reviewing these matters, the court is now prepared to rule.

*I. THE PARTIES' MOTIONS FOR JUDGMENT NOT-
WITHSTANDING THE VERDICT, OR ALTERNA-
TIVELY, FOR NEW TRIAL.*

In reviewing a motion for judgment notwithstanding the verdict, the district court may grant the motion only if the facts and inferences in the case point so strongly and overwhelmingly in favor of the moving party that the court should find that reasonable persons could not arrive at a contrary verdict. *Downie v. Abex Corp., 741 F.2d 1235, 1238 (10th Cir. 1984)*. The question is not whether there exists no evidence supporting the party against whom the motion is directed, but instead whether there is any evidence on which the jury [*3] could properly find a verdict for that party. *K-B Trucking Co. v. Riss Internat'l Corp., 763 F.2d 1148, 1163 (10th Cir. 1985)*. Furthermore, the trial judge must consider all the evidence and the reasonable inferences from the evidence in the light most favorable to the non-moving party. *Downie, 741 F.2d at 1238.*

Generally, motions for new trial are committed to the sound discretion of the trial court. *McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984); Brownlow v. Aman, 740 F.2d 1476, 1491 (10th*

1990 U.S. Dist. LEXIS 7040, *

*Cir. 1984)*. In reviewing a motion for new trial, this court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equipment, 464 U.S. at 553.* "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco Inc., 710 F.2d 1442, 1443 (10th Cir. 1983).* The alleged trial court errors must be prejudicial and clearly erroneous, rather than harmless. Also, no error in the admission or exclusion of evidence, and no error [*4] in any ruling or order of the court or anything done or omitted by the court can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties. *Rasmussen Drilling Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1148-49 (10th Cir.), cert. denied 439 U.S. 862 (1978); Fed. R. Civ. P. 61.*

A. Marshall Marketing's Motion For JNOV, or New Trial. n1

        n1 Defendant Marshall Marketing has presented some arguments in its motion which are not addressed or mentioned in the memorandum in support of the motion. Nevertheless, the court believes it has addressed each of defendant's arguments which warrant discussion.

1. Sufficiency of the Evidence of Harris Market Research's Breach of Contract Claim.

Marshall Marketing contends that Harris Market Research failed to present sufficient evidence to establish each element of a breach of contract claim. The court reasserts its earlier finding that plaintiff presented sufficient evidence to allow its breach of contract claim to [*5] go to the jury. The court further finds that sufficient evidence was presented to support the jury's finding of a breach by Marshall Marketing.

Marshall Marketing also argues that Harris Market Research failed to provide Marshall Marketing with proper and adequate curative notice and notice of termination. Marshall Marketing contends that a 30 day curative notice was required by the terms of the contract and that such notice was a condition precedent to Harris Market Research's right to enforce the contract or sue for default.

The court finds that the curative notice provision of the December 31, 1985, Agreement was not a condition precedent or an express condition to Harris Market Research's right to sue on the contract. Although Harris Market Research may have breached the curative notice term of the agreement, this did not prevent Harris Market Research from pursuing enforcement of the terms Marshall Marketing had breached. We find the authority cited by Marshall Marketing on this issue inapposite and unpersuasive.

Marshall Marketing next contends that Harris Market Research failed to provide adequate notice of its intent to terminate the December 31, 1985, Agreement, as required [*6] by para. 16.1 of that agreement. Marshall Marketing argues that Harris Market Research's July 7, 1986, letter of intent to terminate was not sent by certified mail as required by para. 18.4 of the December 31, 1985, Agreement. Also, Marshall Marketing argues that the letter did not contain a certain and unequivocal notice of termination.

First, the court finds that para. 18.4 of the December 31, 1985, Agreement does not require notice by certified or registered mail, but instead provides that notice sent by such method is "sufficient." The clear intent of para. 18.4 is to require actual receipt of the notice. There is no dispute that Marshall Marketing received the July 7 letter.

Regarding the content of the notice of intent to terminate, the July 7, 1986, letter clearly indicates that it is a notice of termination made pursuant to para. 16.1 In addition, the parties entered into a subsequent agreement, the terms of which are set out in the July 15, 1986, letter. This letter enunciated certain conditions which Marshall Marketing was to meet. Harris Market Research agreed to hold the notice of termination in abeyance, if Marshall Marketing complied with these conditions. If Marshall [*7] Marketing failed to comply with theses conditions, Harris Market Research would terminate immediately.

There was sufficient evidence presented for the jury to find that Marshall Marketing did not fulfill the conditions of the July 15 letter and that Harris Market Research was entitled to terminate the relationship between them.

Further, Marshall Marketing argues that any breach on its part was not material and thus did not warrant termination of the contract. Marshall Marketing asserts that it substantially performed the agreement by making its delinquent payments current within 30 days of the July 7, 1986, letter from Harris, and by making a good faith attempt to provide Harris Market Research with executed sublicense agreements from its station accounts.

The court finds that the contract clearly allowed Harris Market Research to terminate the agreement upon Marshall Marketing's default. There was sufficient evidence presented to justify Harris Market Research's decision to terminate the agreement. The evidence showed

1990 U.S. Dist. LEXIS 7040, *

that Marshall Marketing was at least several thousand dollars delinquent in payments due Harris Market Research and failed to provide Harris Market Research with copies [*8] of executed sublicense agreements as required by the agreement. Thus, the court finds that the jury's verdict for Harris Market Research on its breach of contract claim is clearly supported by the evidence.

Next, Marshall Marketing contends that sufficient evidence was presented to show Harris Market Research waived any right to terminate the agreement or to sue for breach. Marshall Marketing argues that by accepting payments in July and August 1986 on the delinquent license fees, Harris Market Research waived its right to terminate the agreement and, in effect, affirmed continued performance under the contract.

The court agrees with Harris Market Research that after giving its notice of intent to terminate, Harris Market Research did not accept any further benefit under the contract. Harris Market Research simply accepted payments that were past due and owing under the contract. The conditions for continued performance were set forth in the July 15, 1986, letter. The preponderance of the evidence does not show any waiver of contract rights by Harris Market Research.

2. Issues Relating to Damages.

With regard to damages, Marshall Marketing first asserts that Harris Market Research's [*9] recovery of damages for copyright infringement should have been calculated by subtracting process and service costs it saved from any amount of lost profits. Also, Marshall Marketing asserts that the damage award based on Harris Market Research's contract claim is speculative. Marshall Marketing argues that Harris Market Research failed to establish with reasonable certainty the amount of its actual loss. In addition, Marshall Marketing asserts that the calculation of damages should have been for a limited time period.

The court finds that sufficient evidence was presented to support the jury's award of damages against Marshall Marketing. Harris Market Research presented evidence of damages resulting from Marshall Marketing's breach in amounts greater than the jury's actual award. The court further finds that the jury's award is not speculative. therefore, the court will uphold the jury's award of damages against Marshall Marketing.

Finally regarding damages, Marshall Marketing challenges the adequacy of the punitive damages awarded by the jury. The jury, after finding for Marshall Marketing on its tort claims, awarded Marshall Marketing $ 500 in punitive damages. The award of such [*10] damages is within the sound discretion of the jury and this court does not find the award so woefully inadequate

to warrant disrupting the jury's award or to order a new trial.

3. Alleged Errors in the Admission of Evidence.

First, Marshall Marketing asserts that it was severely prejudiced by the introduction of evidence of another contract, the July 15, 1986 letter from Larry Harris to Marshall Marketing. This matter was raised and fully considered in Marshall Marketing's motion in limine, on which the court ruled prior to trial. Also, the court has addressed this issue in the June 17, 1988 and the April 13, 1988 Memoranda and Orders. The court finds no error in the admission of this evidence and nothing further needs to be said on this matter.

Secondly, Marshall Marketing asserts that the court improperly prevented it from presenting evidence attacking the validity of Harris Market Research's copyright. Marshall Marketing also contends that through representations of plaintiff's counsel to Marshall Marketing, Harris Market Research abandoned its copyright infringement claim. In this case, Harris Market Research alleged that Marshall Marketing's retention of the licensed programs [*11] after the termination of the agreement violated Harris Market Research's copyright to distribute copies to others. Marshall Marketing retained and used the program for one year from November 1986 through November 1987 without payment to Harris Market Research.

The court remains unconvinced that any error was committed regarding evidence of the copyright or copyright infringement. The court specifically finds that the exclusion of the April 27, 1988 letter from Harris Market Research's counsel was proper. For all the forgoing reasons, the court finds no prejudicial error in the admission or exclusion of evidence which would warrant a new trial.

4. Consistency of the Verdicts.

Finally in support of its motion for new trial, Marshall Marketing argues that the verdicts returned by the jury are clearly inconsistent. Albeit for different reasons, plaintiff Harris Market Research, in its motion for judgment notwithstanding the verdict or new trial, also argues that there is inconsistencies in the jury's verdicts. Although it is somewhat difficult to fully appreciate how the jury arrived at its verdicts, this court has "a constitutional duty to reconcile apparent inconsistencies in the jury's [*12] verdict if at all possible, . . . . " *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd., 791 F.2d 1416, 1431* (10th Cir.), cert. denied *479 U.S. 1007 (1986)*(McKay, J., concurring in part and dissenting in part). The court does not belief that the fact that the jury found for plaintiff on its claims and for defendant on its counterclaims necessarily renders the verdicts inconsis-

1990 U.S. Dist. LEXIS 7040, *

tent. See *Diamond Shamrock Corp., 791 F.2d at 1424* ("A verdict which resolves separate and distinct causes of action in favor of both parties to a lawsuit is not inconsistent on its face.") Marshall Marketing and Harris Market Research have both failed to present any argument, other than their bald allegations that the verdicts are facially inconsistent, on why the verdicts are inconsistent. The court finds that evidence was presented to support the jury's verdicts and further finds no inconsistency with the verdicts which would warrant a new trial.

B. Plaintiff Harris Market Research and Third-party Defendant Harris's Motion for JNOV, or Alternatively. for New Trial.

The court has addressed Harris Market Research's arguments that the verdicts are inconsistent, above. Also in this motion, Harris [*13] Market Research and Harris argue that the weight of the evidence was contrary to the jury's verdicts for defendant on its counterclaims. The court is convinced that sufficient evidence was presented to support the jury's verdict in favor of defendant Marshall Marketing. Additionally, Harris Market Research and Harris argue that a new trial is warranted due to certain errors in evidentiary rulings by the court. The court has not been convinced that any error, prejudicial to Harris Market Research or Harris, occurred in the evidentiary rulings challenged in the present motion. Therefore, the court will deny Harris Market Research and Harris's motion for judgment notwithstanding the verdict or for a new trial.

*II. PLAINTIFF HARRIS MARKET RESEARCH'S TO AMEND JUDGMENT.*

Plaintiff requests that the court alter or amend judgment to reflect one net judgment for plaintiff, which would entitle plaintiff to recover costs. The jury found for plaintiff on its claims and awarded plaintiff $ 220,000. The jury, however, also found for defendant on its counterclaim and awarded defendant $ 75,500. Defendant has not filed any response to this motion and thus the court will treat it as uncontested. [*14] D. Kan. Rule 206(g). Moreover, the court finds that plaintiff's motion should be granted on the merits. The Kansas Supreme Court has stated that when a plaintiff recovers a damage award in excess of damages awarded defendant on its counterclaims, one net judgment should be entered in favor of plaintiff. See *Szoboszlay v. Glessner, 233 Kan. 475, 664 P.2d 1327, 1334 (1983)* (quoting extensively from *Moss Constr. Co. v. Wulffsohn, 116 Cal. App. 2d 203, 205, 253 P.2d 483 (1953)).* For the foregoing reasons, the court will order the clerk to alter the judgment entered in this case to reflect one net judgment for plaintiff in the amount of $ 144,500.

*III. ATTORNEYS' FEES.*

Plaintiff asserts that, as the prevailing party, it is entitled to recover attorneys' fees under para. 18.8 of the Agreement. This paragraph states:

If any legal action is brought by either party to this Agreement against the other party regarding the subject matter of the Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and expenses.

Again, this motion is uncontested. Furthermore, the court finds that plaintiff is the prevailing party. [*15] See Szoboszlay, 233 Kan. at   , 664 P.2d at 1334. Under Kansas law, the prevailing party may recover attorneys' fees if such is specifically authorized by statute or contract. *Missouri Pac. R. Co. v. Kansas Gas & Electric, 862 F.2d 796, 801 (10th Cir. 1988),* cert. denied *102 L. Ed. 2d 785 (1989).* Thus, pursuant to para. 18.8 of the contract is entitled to recover reasonable attorneys' fees incurred in this litigation. Plaintiff may submit an affidavit and an itemization setting forth its reasonable attorneys' fees and expenses within ten days of this order. Defendant will be provided an opportunity to respond.

*IV. DEFENDANT MARSHALL MARKETING'S MOTION TO VACATE THE ORDER OF OCTOBER 18, 1989.*

On October 18, 1989, the magistrate issued an order permitting plaintiff to register its judgment in this case in a foreign federal district court. Before a judgment may be registered in another federal district, the judgment must be final by appeal or expiration of time to appeal. *28 U.S.C. 1963* and As long as the above discussed posttrial motions were pending, the time for notice of appeal in this case has been stayed. *Fed R. App. Proc. 4(a)(4).* Therefore, the order of [*16] October 18, 1989, was premature and should be vacated.

IT IS BY THIS COURT THEREFORE ORDERED that defendant Marshall Marketing's motion for judgment notwithstanding the verdict, or alternatively, for a new trial is denied.

IT IS FURTHER ORDERED that plaintiff Harris Market Research and third-party defendant Larry Harris's motion for judgment notwithstanding the verdict, or alternatively, for a new trial is denied.

IT IS FURTHER ORDERED that plaintiff Harris Market Research's motion to alter or amend judgment is granted. The clerk of the court is ordered to enter an amended judgment to reflect one net judgment for plaintiff Harris Market Research in the amount of $ 144,500.

IT IS FURTHER ORDERED that plaintiff Harris Market Research's motion for assessment of attorneys'

1990 U.S. Dist. LEXIS 7040, *

fees is granted. Plaintiff Harris Market Research must file an affidavit and an itemization of its reasonable attorneys' fees within ten (10) days of the date of this order. Defendant Marshall Marketing shall have ten (10) days after such filing to file any objection to the amount of attorneys' fees. Thereafter, plaintiff will have five (5) days to file its reply, if any.

*IT IS FURTHER ORDERED* that [*17] defendant Marshall Marketing's motion to vacate the magistrate's order of October 18, 1989 is granted.

DATED: This 1 day of May 1990, at Kansas City, Kansas.

# EXHIBIT C

ENTERED
CLERK, U.S. DISTRICT COURT

SEP - 3 1999

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Ent JS-6

FILED
CLERK, U.S. DISTRICT COURT

SEP 1 1999

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUTHY-RENKER CORP., et al. | CASE NO. CV 97-9279 MRP |
| Plaintiff/Counterdefendants, | |
| v. | MEMORANDUM OF DECISION |
| GARY BERNSTEIN, | |
| Defendant/Counterclaimant. | |

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL. POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 9/3/99

DEPUTY CLERK

### Background

Counterclaimant Gary Bernstein ("Bernstein") has been a professional photographer of celebrities for many years. In 1992, counterdefendant Guthy-Renker Corporation ("Guthy-Renker") contacted Bernstein concerning photographs he had taken of Victoria Principal. The photographs were to be used by Guthy-Renker as part of a marketing campaign of Victoria Principal's Principal Secret line of cosmetics and skin care products. Bernstein offered Guthy-Renker a license to use either or both of two selected photographs, and Guthy-Renker chose to use the photograph identified as image 3218-83 ("photograph one"). Guthy-Renker then signed a contract with Bernstein on November 13, 1992, paying $12,000 in exchange for the rights to unlimited use of photograph one in the Principal Secret advertising campaign. The contract included a provision requiring Guthy-Renker to provide a photo credit reading "Photograph by Gary Bernstein" whenever the image was used. SEP 0 3 1999

Guthy-Renker began using photograph one in an infomercial promoting the

Docketed
Mld copy Ptys
Mld Notice Ptys
JS-6

ENTERED ON ICMS
SEP - 3 1999
CV 306

AUG 23 1999

180

1  Principal Secret line of products. The photograph was used as the cover of a

2  videocassette given away with each cosmetics purchase. While a credit to Bernstein was

3  printed on the featured photograph on the cover of the cassette, this credit was not large

4  enough to be seen by a viewer looking at the cassette as part of the infomercial. Several

5  versions of the infomercial were produced.

6      At some point Guthy-Renker began using the second photograph, identified as

7  image 3218-91 ("photograph two"), in its infomercial. In addition, photograph two

8  appeared on the Guthy-Renker website and in an edition of the airline magazine Skymall

9  as part of the promotion of Principal Secret cosmetics. No rights in photograph two were

10  conveyed by the contract signed on November 13, 1992.

11      Guthy-Renker brought this suit asking for a declaratory judgment with respect to

12  its rights to use Bernstein's two photographs. Bernstein counterclaimed alleging breach

13  of contract and copyright infringement for Guthy-Renker's use of photograph one and

14  copyright infringement for the use of the second photograph. Bernstein also alleged that

15  Guthy-Renker's use of the photographs constitutes common law misappropriation and

16  statutory and common law unfair competition.[1] The case was tried without a jury. This

17  Memorandum of Decision sets forth the Court's findings and conclusions regarding

18  liability and damages.

19

20                                    **Analysis**

21  I.    **Photograph One**

22          a.    **Breach of Contract Claim**

23                  i. Liability

24      Counterclaimant has established by a preponderance of the evidence that

25  counterdefendant Guthy-Renker breached the contract by failing to give Bernstein photo

26  _____

27      [1]These two claims were not presented in Bernstein's trial brief, were never addressed at trial,
    and are based entirely on the contract and copyright claims. Therefore, the misappropriation and
28  unfair competition claims are not independently addressed in this decision.

                                        2

1    credit. While Guthy-Renker argued that the contract should be interpreted as requiring

2    only a credit on the photograph on the cover of the cassette, regardless of whether that

3    credit could be seen by an infomercial viewer, the Court rejects this interpretation as

4    unreasonable in light of the intentions of the parties in entering the contract. See Cal.

5    Civ. Code §1636 ("A contract must be so interpreted as to give effect to the mutual

6    intention of the parties as it existed at the time of contracting). In the present case,

7    Bernstein insisted on credit when the photograph was used and the use of the photograph

8    in infomercials was contemplated at the time of contracting. Only a credit which the

9    infomercial viewer could see would fulfill the clear intent of the parties. Guthy-Renker's

10   failure to provide such a credit was a breach of the contract.

                    ii. Damages

12       As damages for breach of contract, an injured party may recover the amount which

13   will compensate the party "for all the detriment proximately caused [by the breach], or

14   which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ.

15   Code §3300. Such damages include future profits that the breach prevented the non-

16   breaching party from earning to the extent those future profits can be estimated with

17   reasonable certainty. Postal Instant Press v. Sealy 43 Cal.App.4th 1704 (1996).

18       The burden of proof is on the claimant to prove his damages with reasonable

19   certainty. Carpenter Foundation v. Oakes 26 Cal.App.3d 784, 799-800 (1971). The law

20   requires that some credible basis of computation be used, even if the result reached is an

21   approximation. GHK Associates v. Mayer Group, Inc. 224 Cal.App.3d 856, 873 (1990).

22       In this case, counterclaimant advanced several measures of damages for the breach

23   of contract, yielding damage figures ranging from $673,000 to $18,072,000. However,

24   only one of these measures reflects an attempt to approximate the amount

25   counterclaimant lost as a result of the breach, which is the correct measure for breach of

26   contract damages. Employing this measure, entitled "Benefit of Bargain--Expectation

27   Damages," plaintiff projected a damage estimate of $3.6 million over three years.

28       There are two problems with this measure of damages. The first is that it is based

3

1   on the expectation that Bernstein would receive increased opportunities for new photo

2   shoots as a result of potential customers seeing the credit given him for the photograph of

3   Victoria Principal. Yet, there was no evidence presented at trial as to the number of new

4   photo shoots that counterclaimant could reasonably expect to procure as a result of

5   receiving the promised credit on the infomercials. Counterclaimant testified as to the

6   viewer exposure of his work in 1992 from magazines and other print media. He further

7   testified as to the approximate profit he makes from each new shoot. However, nothing

8   was presented to give the Court any reasonable basis for predicting the number of new

9   shoots counterclaimant would have obtained as a result of his being given credit for the

10   photograph used in the Principal Secret infomercial. No evidence was presented which

11   would permit the Court to determine how many clients would have sought his services as

12   a result of his having received the credit to which he was entitled.

13       The second significant problem with this measure is that the dollar estimate arrived

14   at by counterclaimant using this measure is incompatible with the facts presented at trial.

15   Counterclaimant testified that he made approximately $660,000 in 1992, and somewhat

16   less than that in subsequent years. Further, he testified that he did not notice the lack of

17   photo credit until at least 1997, approximately five years after the infomercials began

18   running. Nevertheless, counterclaimant now predicts that he could have reasonably

19   expected to earn $1.2 million per year from new shoots resulting from the photo credit, a

20   figure which would have nearly tripled his income in his highest earning year.

21   Supposedly, Bernstein knew that the photograph was being used in the marketing

22   campaign, expected to receive new photo shoots and a consequent increase in income on

23   account of the credit to be given but never questioned why his expectations were not

24   realized. The Court cannot accept this testimony as the basis for an award of damages for

25   lost profits.

26       Counterdefendant's damages expert, Jeffrey Kinrich, testified that it is a common

27   practice in the industry to pay two to three times the usage fee for omission of credit, and

28   that this would be a reasonable basis for establishing Bernstein's actual economic harm.

4

1    Bernstein argued that if this alternative were adopted such a payment should be made

2    each time the infomercial is shown without credit being given.  In answer, it was

3    Kinrich's position that the payment for credit omission should be made on the same one

4    time basis as the usage fee was paid.  In other words, because $12,000 was the fee for all

5    of counterdefendant's uses of the photograph, one payment for photo credit omission

6    should cover all of counterdefendant's omissions.  The Court finds this to be a  more

7    reasonable way to estimate the economic loss suffered by counterclaimant due to the

8    failure to give credit.

9        The Court awards Bernstein $36,000, three times the usage fee for photograph one,

10    as damages for counterdefendant's breach of contract.

11        **b.    Copyright Infringement Claim**

12        Counterclaimant next claims that the use of photograph one without proper credit

13    constitutes copyright infringement.  A licensee infringes the owner's copyright if its use

14    exceeds the scope of its license.  S.O.S. Inc. v. Payday, Inc. 886 F.2d 1081 (9th Cir. 1989).

15        The license in this case provided that Guthy-Renker could make unlimited use of

16    photograph one in connection with the promotion and advertising of the Principal Secret

17    skin care and cosmetics product lines.

18        Initially, it should be noted that the failure to give credit to a photographer does not

19    in itself amount to copyright infringement.  The generally prevailing view under

20    copyright law is that an author who sells or licenses his work does not have an inherent

21    right to be credited as author of the work. 3  Nimmer on Copyright § 8D.03[A][1], at 8D-

22    30.  Therefore, a licensee's omission of the author's name on the reproduction of a

23    copyrighted work has been held not to infringe the copyright.  Id.

24        However, counterclaimant contends that because photo credit was required under

25    the contract, use of the photograph without such credit constitutes a use outside the scope

26    of the license.  Under federal and California law a material breach of a licensing

27    agreement gives rise to a right of rescission which allows the nonbreaching party to

28    terminate the agreement, but does not automatically terminate the license.  Rano v. Sipa

5

1    Press, Inc. 987 F.2d 580, 586 (9th Cir. 1993). If the nonbreaching party then terminates

2    the agreement, any further distribution would constitute copyright infringement. Id.

3         There is no evidence that counterclaimant made any attempt to rescind the

4    licensing agreement until at least 1997. Further, even if the 1997 communication

5    between Bernstein and Guthy-Renker could be considered an effective rescission, there is

6    no evidence that photograph one was used after that date. Therefore, Guthy-Renker's

7    breaches of the credit provision did not terminate its right to use photograph one and did

8    not constitute copyright infringement.

9         To the extent that counterclaimant bases a copyright infringement claim on the

10   alleged use of photograph one in situations unconnected with the promotion and

11   advertising of the Principal Secret product line, counterclaimant had the burden to show

12   such uses and has not done so.

13

14   **II.    Photograph Two: Copyright Infringement Claim**

15       **a.    Liability**

16        There is no evidence of a written contract covering photograph two and

17   counterdefendant does not dispute that it used this photograph in connection with the

18   marketing of the Principal Secret product line. .

19        Counterdefendant argued at trial that a telephone conversation between

20   counterclaimant and Cindi Anderson, an employee of Guthy-Renker, constituted a bar to

21   the copyright infringement claim based on the use of photograph two. Counterdefendant

22   did not argue that this conversation gave way to an oral license or modification of the

23   written contract. Rather, counterdefendant contended that the conversation established

24   that counterclaimant waived or is estopped to assert any claims of infringement.

25        The elements of equitable estoppel are: (1) the party to be estopped knows the

26   facts, (2) he intends that his conduct will be acted on or must act in such a way that the

27   party invoking estoppel has the right to believe it is so intended, (3) the party invoking

28   estoppel must be ignorant of the true facts, and (4) he must detrimentally rely on the

1   former's conduct. <u>United States v. Hemmen</u> 51 F.3d 883, 892 (9th Cir. 1995).

2       Anderson testified that in a conversation in early July of 1993 she sought

3   clarification of Guthy-Renker's rights with regard to the two photographs, and that

4   Bernstein told her that Guthy-Renker had the right to use both photographs. Bernstein

5   testified that he did not recall any conversation with Anderson. However, Guthy-Renker

6   submitted a response by Bernstein to an interrogatory in which he admitted that he had at

7   least one conversation with Anderson concerning the use of his photographs.

8       Guthy-Renker also presented a letter sent from Anderson to Bernstein asking for

9   clarification regarding Guthy-Renker's rights to use the photographs. The agreement

10   clearly covering only one photograph was attached to the letter and the letter asked which

11   photograph was referred to. There is no evidence of a written reply from Bernstein.

12   Finally, Bernstein testified that all his agreements with Guthy-Renker were in writing,

13   that they were all negotiated with the principals of the company and that he did not tell

14   anyone from Guthy-Renker that they had the rights to use both photos.

15       The Court is not persuaded that Guthy-Renker was ignorant of the true facts.

16   Guthy-Renker was in possession of the contract and the contract referred to only one

17   photograph. On the evidence presented, the Court cannot conclude that Guthy-Renker

18   had a reasonable basis to believe it had obtained additional rights from Bernstein. Guthy-

19   Renker also failed to show that Bernstein intended to relinquish his rights in photograph

20   two or acted in a manner giving Guthy-Renker grounds to believe he so intended. The

21   intent element is also a requirement of the waiver defense. See <u>United States v. Reliance</u>

22   <u>Ins. Co.</u> 799 F.2d 1382, 1386 (9th Cir. 1986). Guthy-Renker has not met its burden to

23   establish these two equitable defenses, and is therefore liable for copyright infringement.

24      **b.**   **<u>Damages</u>**

25       In an action for copyright infringement, the copyright owner is entitled to recover

26   the actual damages suffered as a result of the infringement and any profits of the infringer

27   that are attributable to the infringement and are not taken into account in computing the

28   actual damages. 17 U.S.C. § 504(b).

i. Actual Damages

Actual damages are measured by the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc. 772 F.2d 505, 512 (9th Cir. 1985)(citing 4 Nimmer on Copyright § 14.02 [A], at 14-8). In the Ninth Circuit the test of market value is "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." Id.

Counterclaimant argued at trial that the parties would have entered into a royalty arrangement had negotiations taken place and that damages should be calculated based on such an arrangement. Obviously, this measure is speculative and does not purport to measure the diminution in the value of the photograph. As an alternative, Bernstein also presented a measure of damages that purported to calculate the cost of the advertising that Bernstein lost by not receiving photo credit on photograph two. Though offered as a measure for Bernstein's "actual damages" under the statute, this method has no correlation to the change in market value of the photograph caused by the infringement.

There was no evidence presented as to the effect of counterdefendant's infringement on the market value of photograph two. Counterclaimant does not say that he was prevented from licensing the photograph to others as a result of the infringement, nor did he testify to any decrease in the photograph's value. In fact, there is no indication that the market value of photograph two was diminished at all due to its use in conjunction with the Principal Secret campaign. No actual damages are awarded.

ii. Attributable Profits

In addition to actual damages, 17 U.S.C. § 504(b) provides for the award of any of the infringer's profits that are attributable to the infringement. The profits at issue are those on the sale of skin care products resulting from the infomercial marketing campaign. The portion of that profit that is attributable to the use of the infringed photograph must be awarded to Bernstein.

When an infringer's profits are attributable to factors in addition to the use of the

8

1     infringed work, an apportionment of the profits is proper. <u>Frank Music Corp.</u> 772 F.2d at

2     518. In such cases, when the evidence suggests some division which may rationally be

3     used, it is the "duty of the court to make some apportionment." <u>Cream Records Inc. v.</u>

4     <u>Schlitz Brewing Company</u> 754 F.2d 826, 829 (9th Cir. 1985)(upholding a district court's

5     finding that plaintiff was entitled to one-tenth of one percent of defendant's total profits

6     from malt liquor sales for infringing part of plaintiff's song in a commercial); see also

7     <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u> 886 F.2d 1545, 1550 (upholding an

8     award to plaintiff of less than one-fifth of one percent of all hotel and gaming profits for

9     defendant's infringing use of one act in a musical performed at the hotel). While

10     mathematical exactness is not required, the apportionment must be reasonable. <u>Abend v.</u>

11     <u>MCA, Inc.</u> 863 F.2d 1465, 1480 (9th Cir. 1988).

12         Counterclaimant presented a method for determining profits attributable to

13     photograph two. This method takes the percentage of time the photograph was on screen

14     during the infomercials, an average of 4.5%, and uses that as the percentage of the profits

15     attributable to the use of the photograph. The Ninth Circuit has warned against

16     calculating attributable profits based solely on a quantitative comparison. <u>See</u> <u>Frank</u>

17     <u>Music Corp. v. Metro-Goldwyn-Mayer Inc.</u> 886 F.2d 1545 (9th Cir. 1989)(stating that if

18     the district court relied exclusively on a quantitative comparison of each component's

19     worth to the show and failed to consider the relative quality or drawing power, it erred).

20     Therefore, the Court should not adopt a calculation based solely on the amount of time

21     that the photograph was on screen during the infomercial but should determine the

22     relative value of the photograph to the infomercial as a whole, as reasonably as is

23     possible.

24         While the parties do not dispute that photograph two was on screen for an average

25     of 4.5% of each infomercial, the photograph was only one of several things on screen at

26     any one time. Not only was the photograph shown simultaneously with the products, but

27     with Victoria Principal herself at times. The fact that Victoria Principal appears so

28     prominently in person in the infomercials tends to lessen the impact of the photograph.

1    but the Court must conclude that the photograph does add some value to the infomercial.

2    It is always difficult to calculate in a reasonable manner the profits attributable to

3    an infringing advertising campaign. Though difficult, the Court has a duty to apportion

4    the profits if it can do so reasonably and justly. A reasonable and just apportionment in

5    this case is one-half of one percent of the profits earned through the infomercial

6    campaign. This equals just over ten percent of the profit for the time the photograph was

7    on screen during the infomercial.

8        iii. <u>Computing Profits</u>

9    Finally, the Court must decide the correct computation of Guthy-Renker's profits.

10   Bernstein makes two challenges to the numbers presented by Guthy-Renker. First,

11   Bernstein objects to the general and administrative expenses Guthy-Renker deducted in

12   reporting its profit. Second, Bernstein argues that he is legally entitled to a percentage of

13   the profits computed before any deduction for amounts paid to Victoria Principal.

14   Section 504(b) of the Copyright Act provides that "the infringer is required to

15   prove his or her deductible expenses." An infringer must show that each category of

16   overhead costs actually contributed to net sales. <u>Frank Music Corp.</u> 772 F.2d at 516. The

17   introduction of evidence that total overhead costs were allocated on a reasonable basis is

18   not sufficient to meet defendant's burden. <u>Id.</u> Guthy-Renker presented evidence that the

19   general and administrative expenses for all of its projects were allocated by the

20   percentage of revenues that each project produced. As Guthy-Renker's accountant

21   admitted, this leads to a greater allocation of these expenses for successful projects such

22   as the Principal Secret campaign, because little or no expense is assigned to failed or less

23   successful projects.

24   While Guthy-Renker's practice is an approved accounting method, it unfairly

25   inflates the expenses attributed to the infomercial campaign for purposes of apportioning

26   profits. Though Guthy-Renker has not proven the exact amount of its general and

27   administrative expenditures, allowance should be made for the minimum amount spent on

28   the Principal Secret campaign. See <u>Sygma Photo News, Inc. v. High Society Magazine,</u>

10

1  Inc. 778 F.2d 89, 93 (2nd Cir. 1985). The Court agrees with Bernstein that it is reasonable

2  to limit the deduction for general and administrative expenses to three percent.

3      The second dispute in computing profits is with respect to the share paid to

4  Victoria Principal. Bernstein argues that his share should be taken out of profits before

5  the deduction of payments made to Victoria Principal. The Ninth Circuit has held that a

6  defendant was entitled to deduct any royalties paid to the producer-director of an

7  infringing musical as costs in arriving at its own profits. Frank Records 772 F.2d at 519

8  (citing Smith v. Little, Brown & Company 396 F.2d 150, 151 (2nd Cir. 1968), which held

9  that the defendant was permitted to treat royalties paid to the author of an infringing book

10  as an element of its own cost in computing the profits which plaintiff was entitled to

11  recover). Profits are properly computed as the amount retained by Guthy-Renker after

12  Victoria Principal's share was deducted.

13      Based on the figures submitted to the Court, Guthy-Renker's profits from January

14  1995 to September 1998 after deduction of Victoria Principal's share and a three percent

15  deduction for general and administrative expenses amount to $22,171,000. One-half of

16  one percent share of profits attributable to the use of the infringing photograph is

17  $110,535.50. The calculation of profits should be carried through the date of Guthy-

18  Renker's last use of photograph two.

19      **b.    Statutory Damages**

20      A copyright owner may elect at any time before final judgment to recover statutory

21  damages instead of actual damages and attributable profits. 17 U.S.C. § 504 (c). As

22  counterclaimant has not elected statutory damages, they are not a proper subject for

23  consideration here.

24

25

26

27  DATED: *August 31, 1999*                    Mariana R. Pfaelzer
                                                United States District Judge

28

11

# EXHIBIT D

LEXSEE 130 FED. APPX. 153

**GERMAINE MUSIC; GENERAL CROOK, Plaintiffs - Appellants, v. UNIVERSAL SONGS OF POLYGRAM; UMG RECORDINGS, INC.; BMI, Defendants - Appellees.**

No. 03-17295

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*130 Fed. Appx. 153; 2005 U.S. App. LEXIS 7840; Copy. L. Rep. (CCH) P28,986*

**April 14, 2005, Argued and Submitted, San Francisco, California
May 3, 2005, Filed**

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Nevada. D.C. No. CV-03-00047-PMP. Philip M. Pro, District Judge, Presiding. *Germaine Music v. Universal Songs of Polygram, 275 F. Supp. 2d 1288, 2003 U.S. Dist. LEXIS 14133 (D. Nev., 2003)*

**COUNSEL:** For GERMAINE MUSIC, GENERAL CROOK, Plaintiff - Appellants: Lisa A. Rasmussen, Esq., DIXON TRUMAM BANGERTER & FISHER, Las Vegas, NV; General Crook, North Las Vegas, NV.

For UNIVERSAL SONGS OF POLYGRAM, UMG RECORDINGS, INC., Defendant - Appellees: Jeffrey D. Goldman, Esq., Nicole L. Harris, Esq., MITCHELL SILBERBERG ET AL, LLP, Los Angeles, CA; Luke K. Rath, Esq., Mark A. Hutchison, Esq., HUTCHISON AND STEFFEN, LTD., Las Vegas, NV.

For BMI, Defendant - Appellee: Kenneth R. Myers, Esq., LIONEL, SAWYER AND COLLINS, Las Vegas, NV; Vincent C. Ferenbach, Esq., LIONEL, SAWYER & COLLINS, Las Vegas, NV.

**JUDGES:** Before: LAY,** B. FLETCHER, and HAWKINS, Circuit Judges.

    ** Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

**OPINION:**

[*154] MEMORANDUM*

    * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by *Ninth Circuit Rule 36-3*.

[**2]

Plaintiffs General Crook and his company Germaine Music, pro se before the district court but represented on appeal, appeal from the district court's grant of summary judgment on all counts. Plaintiffs brought this suit against defendants UMG Recordings, Inc. ("UMG") and Broadcast Music, Inc. ("BMI") for copyright infringement, breach of contract, and "theft by deception." All claims are generally related to an alleged failure to pay royalties on contracts allowing distribution of a song written by plaintiff Crook in the 1970s. The claims against BMI were dismissed in favor of arbitration and BMI is not a party to this appeal.

As the parties are familiar with the facts of the case, we do not recite them in detail here. Because there were issues of material fact, we reverse the district court's grant of summary judgment, and remand for further proceedings. We further conclude that the district court erred in its implicit denial of plaintiffs' "Motion to Compel." Not only did the district court fail to recognize it as a motion for continuance pursuant to *Fed. R. Civ. P. 56(f)*, it abused its discretion in denying the motion. On remand, the district [**3] court is directed to reopen discovery to allow plaintiffs to obtain answers to discovery requests propounded previously. The district court may choose, in its discretion, to allow further discovery if requested by either party.

130 Fed. Appx. 153, *; 2005 U.S. App. LEXIS 7840, **;
Copy. L. Rep. (CCH) P28,986

## I.

A district court's grant of summary judgment is reviewed de novo. *Buono v. Norton, 371 F.3d 543, 545 (9th Cir. 2004)*. A district court's decision as to whether or not to permit additional discovery and delay summary judgment pursuant to *Fed. R. Civ. P. 56(f)* is reviewed for an abuse of discretion. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Souix Tribes, 323 F.3d 767, 773 (9th Cir. 2003)*. However, if the district court fails to address a *Rule 56(f)* motion prior to granting summary judgment, the matter is reviewed de novo. *Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998)*.

## II.

In reviewing a grant of summary judgment, we must determine whether there [*155] are any genuine issues of material fact, viewing the evidence in the light most favorable to the non-moving party. *Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004)*.

As to any [**4] claim involving collusion between BMI and UMG and the "catalog transfer issue" as a basis for a copyright infringement claim, there is no issue of material fact, and plaintiffs do not seriously contend otherwise. We see no reason to disturb summary judgment on this issue.

As to the copyright infringement claim and breach of contract claims that focus on non-payment of royalties, n1 there is an issue of fact in dispute. UMG claims that all royalties owed were paid to Crook - the check for $ 940.21. During his deposition, plaintiff Crook admitted that the signature looked like his, but he did not have a recollection of receiving the check. In other papers submitted to the district court, Crook denied having ever received money from UMG (or affiliates such as Polygram records).

> n1 These theories of liability collapse into one. If UMG was using the song without paying royalties, it was likely both a breach of contract and a violation of the copyright.

Although it would appear that Crook's credibility may be at issue, [**5] it is not the place of the court on summary judgment to weigh the evidence. Unfortunately, this is what the district court did. It credited the testimony of UMG's employees, in which they asserted that all royalties had been paid to Crook, over the testimony of Crook himself, who stated that he did not recall receiving the check, had not received any royalties from any of the entities, and did not have a bank account at the time the check was cashed. In order to grant summary judgment, the district court necessarily found that the signature on the back of the check was Crook's, although

Crook denied that it was his. In any event, the amount of royalties due is in dispute. Summary judgment must be reversed.

## III.

In order to succeed on a *Rule 56(f)* motion, the movant must show diligence in pursuing discovery previously, and must show how more discovery might preclude summary judgment. *Byrd v. Guess, 137 F.3d 1126, 1135 (9th Cir. 1998)*. In this case, these requirements must be viewed against this circuit's repeated insistence that courts must construe pro se pleadings and motions liberally. *Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003)*. [**6]

Here, plaintiffs' motion to compel should have been seen as a motion for continuance under *Rule 56(f)*. Plaintiffs explained that the parties had an agreement not to proceed with discovery until the court had ruled on the pending dispositive motions, and that although they had provided discovery to UMG after the discovery deadline, they had not received responses to their requests propounded after the deadline. This explains any lack of diligence on plaintiffs' part. Plaintiffs also explain that they pursued discovery once the court had denied the pending motions, albeit well after the discovery deadline. Plaintiffs were simply taking their cue from defense counsel, who were certainly pursuing discovery (including taking Crook's deposition) well after the deadline, although the requests were made before the deadline.

Next, while most of plaintiffs' discovery requests would not have been relevant to the issues on summary judgment, plaintiffs requested documentation for the number of copies of the album at issue in this case that were sold over time.

[*156] Construing plaintiffs' pro se pleadings liberally, we hold that the standards of *Rule 56(f)* have been met. On remand, the district court [**7] is directed to reopen discovery to allow plaintiffs to obtain answers to discovery requests propounded previously. The district court may, in its discretion, allow further discovery to be propounded by either party.

## IV.

We find no error in the district court's denial of plaintiffs' motion for leave to file a second amended complaint. Any proposed amendments would have been futile. We also find no error in the district court's decision to consider UMG's opposition to plaintiffs' motion for summary judgment as a cross-motion. We therefore find no reason to disturb the district court's dismissal of the "theft by deception" claim.

Each party shall bear its own costs.

130 Fed. Appx. 153, *; 2005 U.S. App. LEXIS 7840, **;
Copy. L. Rep. (CCH) P28,986

**AFFIRMED IN PART, REVERSED IN PART,    AND REMANDED.**