MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>     Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>     Defendant and Counterclaim-Plaintiff. | **REPLY IN SUPPORT OF NOVELL'S MOTION FOR SUMMARY JUDGMENT ON SCO'S FIRST CLAIM FOR SLANDER OF TITLE AND THIRD CLAIM FOR SPECIFIC PERFORMANCE (COPYRIGHT OWNERSHIP)**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

I.     INTRODUCTION ............................................................................... 1

II.    STATEMENT OF UNDISPUTED FACTS .......................................... 3

III.   ARGUMENT ....................................................................................... 4

      A.     Novell Is Entitled to Summary Adjudication that the APA and Amendment No. 1 Excluded "All Copyrights" from the Assets Transferred to Santa Cruz in the Bill of Sale. ......................................... 4

            1.     SCO concedes that the original APA explicitly excluded "all copyrights" from the "Assets" to be transferred to Santa Cruz. .................................................................. 4

            2.     SCO concedes that Amendment No. 1 did not change the explicit exclusion of "all copyrights" from the "Assets" to be transferred to Santa Cruz. ............................................ 6

            3.     Nothing in the Technology License Agreement Changed the Assets Transferred. ......................................................... 7

      B.     Novell Is Entitled to Summary Adjudication that the Bill of Sale Did Not Transfer the Copyrights At Issue. ......................................... 8

            1.     SCO concedes that the Bill of Sale transferred only the "Assets" as defined in the APA and Amendment No. 1 ........... 8

            2.     Amendment No. 2 did not retroactively amend the Bill of Sale. ...................................................................................... 9

      C.     Novell Is Entitled to Summary Adjudication that Amendment No. 2 Did Not Contain the Essential Terms Required to Transfer Copyright Ownership under the Copyright Act. ................................... 10

      D.     The Extrinsic Evidence Cited by SCO Is Inadmissible. ...................... 13

            1.     SCO's Extrinsic Evidence Regarding the Supposed Intent of the Original APA Is Inadmissible Under the Parol Evidence Rule. ......................................................................... 13

2.     Any Extrinsic Evidence from SCO Claiming that the Bill of
       Sale Transferred Copyrights Pursuant to Amendment No. 2
       Is Inadmissible as Well. ........................................................................14

3.     The Limited Extrinsic Evidence that SCO Submits
       Concerning the Purported Intent of Amendment No. 2 Is
       Inadmissible Too.....................................................................................15

E.     Even if this Court Were to Examine Extrinsic Evidence, that
       Evidence Confirms that the APA and Amendment No. 2 Did Not
       Transfer Any Copyrights to SCO. .......................................................................16

1.     SCO does not controvert the deliberate insertion of the "all
       copyrights" exclusion in the APA............................................................17

2.     SCO submits no admissible evidence controverting the fact
       that Amendment No. 2 was not intended to transfer
       copyrights.................................................................................................20

3.     SCO has not met its burden to show that any copyright
       ownership was "required for" Amendment No. 2. ...................................23

F.     Novell Is Entitled to Summary Judgment on SCO's Slander of
       Title and Specific Performance Claims. ..............................................................27

IV.    CONCLUSION...............................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Ins. Co. v. Freeport Cold Storage, Inc.*,
703 F. Supp. 1475 (D. Utah 1987)....................................................................................4

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ........................................................................................20

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*,
29 F.3d 1529 (11th Cir. 1994) ......................................................................................13

*Bank of the West v. Resolution Trust Corp., No. C 95-4708 FMS*,
1997 U.S. Dist. LEXIS 1581 (N.D. Cal. Feb. 13, 1997) ..............................................13

*Blumenfeld v. R.H. Macy & Co.*,
92 Cal. App. 3d 38 (1979) .............................................................................................14

*Brookwood v. Bank of America*,
45 Cal. App. 4th 1667 (1996) ........................................................................................20

*Dean v. Burrows*,
732 F. Supp. 816 (D. Tenn. 1989) .................................................................................11

*Dick Corp. v. SNC-Lavalin Constructors, Inc.*,
No. 04 C 1043, 2004 WL 2967556 (N.D. Ill. Nov. 24, 2006).......................................11

*EPA Real Estate P'ship v. Kang*,
12 Cal. App. 4th 171 (1992) ..........................................................................................17

*Effects Assocs., Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990) .........................................................................................11

*Foad Consulting Group, Inc. v. Musil Govan Azzalino*,
270 F.3d 821 (9th Cir. 2001) .........................................................................................25

*Gerdlund v. Electronic Dispensers Int'l*,
190 Cal. App. 3d 263 (1987) .........................................................................................14

*Gilbert v. Equitable Life Ins. Co. of Iowa*,
259 Cal. App. 2d 895 (1966) ...........................................................................................4

*ITOFCA, Inc. v. Mega Trans Logistics, Inc.*,
322 F.3d 928 (7th Cir. 2003) .........................................................................................11

*Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*,
   70 F.3d 96 (11th Cir. 1995) ................................................................. 13

*Jones v. Denver Post Corp.*,
   203 F.3d 748 (10th Cir. 2000) .............................................................. 26

*Kebrooke Fabrics, Inc. v. Soho Fashions, Inc.*,
   690 F. Supp. 298 (S.D.N.Y. 1988) ...................................................... 11

*King v. Larsen Realty, Inc.*,
   121 Cal. App. 3d 349 (Cal. Ct. App. 1981) .................................... 17, 18

*Konigsberg Int'l, Inc. v. Rice*,
   16 F.3d 355 (9th Cir. 1994) ................................................................. 10

*Lyrick Studios, Inc. v. Big Idea Productions, Inc.*,
   420 F.3d 388 (5th Cir. 2005) .......................................................... 12, 16

*Pamfiloff v. Giant Records, Inc.*,
   794 F. Supp. 933 (N.D. Cal. 1992) ...................................................... 16

*Playboy Enters. v. Dumas*,
   53 F.3d 549 (2d Cir. 1995) .................................................................. 12

*Relational Design & Tech., Inc. v. Brock*,
   No. 91-2452-EEO, 1993 WL 191323 (D. Kan. May 25, 1993) ................ 6

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ............................................................... 6

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
   969 F.2d 410 (7th Cir. 1992) ................................................................. 6

*Shugrue v. Cont'l Airlines, Inc.*,
   977 F. Supp. 280 (S.D.N.Y. 1997) .................................................... 5, 6

*SmithKline Beecham Consumer Healthcare L.P. v. Watson Pharms., Inc.*,
   211 F.3d 21 (2d Cir. 2000) .................................................................. 25

## STATUTES

17 U.S.C.
   § 204(a) ................................................................. 2, 10, 16, 28

## OTHER AUTHORITIES

1 Witkin, Summary of California law: Contracts § 276 (2005) .................... 19, 20

iv

*Nimmer on Copyrights* § 10.03[A][3]......................................................................................12

Merriam-Webster's Online Dictionary (2007)
  http://mw1.merriam-webster.com/dictionary/require ....................................................23

I.     INTRODUCTION

SCO has vacillated about whether it contends that the UNIX copyrights were transferred by the original Asset Purchase Agreement or, alternatively, by Amendment No. 2 to the APA.  In its opposition to Novell's summary judgment motion, though, SCO comes down squarely on the side of Amendment No. 2.  SCO asserts that the "amended APA," as revised by Amendment No. 2, provided for the transfer of UNIX copyrights to Santa Cruz.  SCO further asserts that the "APA Bill of Sale" effectuated this transfer.

Significantly, SCO does <u>not</u> argue that the original APA provided for the transfer of the UNIX copyrights.  Nor does SCO rely on any document other than the Bill of Sale as implementing this transfer.  This is not surprising, as the original APA explicitly excluded "all copyrights" from the assets to be transferred, and the Bill of Sale is the only document that transferred any assets.  Thus, SCO is forced to argue that the Bill of Sale implemented the transfer of copyrights that was supposedly contemplated by the amended APA.

SCO's argument suffers from a fatal flaw: the Bill of Sale was executed in December 1995, ten months <u>before</u> Amendment No. 2 was signed.  When it was executed, the Bill of Sale obviously could not have transferred assets based on an amendment that did not even exist.  On the contrary, the Bill of Sale expressly transferred "the Assets" as defined in the original APA and Amendment No. 1.  Because that definition excluded "all copyrights" from "the Assets" to be transferred, the Bill of Sale did not transfer any UNIX copyrights to Santa Cruz.

SCO argues in the alternative that Amendment No. 2 "retroactively effectuated the transfer by ratifying the APA."  Yet, as Novell noted in its opening brief, Amendment No. 2 amended the APA "[a]s of the 16th day of October, 1996," and not as of the date the Bill of Sale was executed ten months earlier.  SCO has presented absolutely no support for its bald assertion that Amendment No. 2 was

1

retroactive.  Moreover, SCO has failed to demonstrate that Amendment No. 2 contained the essential

terms that were required by 17 U.S.C. § 204(a) to transfer ownership of copyrights.

SCO's primary argument is that this Court should disregard the plain language of the APA, the

Bill of Sale, and Amendment No. 2 and instead rely on extrinsic evidence regarding the parties' alleged

intent.  Most of that evidence is irrelevant because it concerns the supposed intent of the original APA,

which SCO has conceded expressly excluded copyrights.  Moreover, even if SCO's evidence were

relevant to the APA as amended, upon which SCO bases its claim, SCO's argument would still fail.

Under governing California law, extrinsic evidence is not admissible to prove a meaning to which a

contract is not "reasonably susceptible."  The APA, the Bill of Sale, and Amendment No. 2 are not

"reasonably susceptible" to the meanings that SCO attempts to attribute to them.  Therefore, SCO's

proffered extrinsic evidence is inadmissible and must be excluded.

In sum, Novell is entitled to summary judgment on SCO's claims for slander of title and specific

performance because:

1.      The original APA expressly excluded "all copyrights" from the definition of the

"Assets" to be transferred by Novell to Santa Cruz.

2.      The Bill of Sale that implemented the APA adopted this definition, and hence did

not transfer any UNIX copyrights to Santa Cruz.

3.      Amendment No. 2 was signed ten months after the Bill of Sale was executed, and

hence has no relevance to the scope of assets transferred by the Bill of Sale.  Moreover,

Amendment No. 2 was not retroactive, and did not constitute the written "instrument of

conveyance" required by 17 U.S.C. § 204(a) to transfer ownership of copyrights.

4.      The extrinsic evidence cited by SCO is inadmissible because the contracts are not

reasonably susceptible to SCO's proffered interpretation.

## II.     STATEMENT OF UNDISPUTED FACTS

Novell already set forth all relevant facts in its opening brief.  (Memorandum In Support of Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim For Specific Performance, filed 4/20/07, PACER No. 286 ("Br."), at 3-16.)  Novell's motion is based on the express terms of the APA, Bill of Sale, and Amendment No. 2.  Although the parties dispute the interpretation of these terms, the content and sequence of execution of these documents is undisputed.  In particular, SCO's Memorandum in Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance, filed 5/18/07 ("Opp'n"), does not contest the following critical facts.

1.  September 19, 1995:     Novell and Santa Cruz executed the Asset Purchase Agreement, which defined the "Assets" to be transferred by reference to schedules of included and excluded assets. Schedule 1.1(b) excluded "all copyrights" from the "Assets" to be transferred.  (Opp'n, Appendix A, at Response Nos. 2-4.)

2.  December 6, 1995:     Novell and Santa Cruz executed Amendment No. 1 to the APA, which made some revisions to the schedules of included and excluded assets, but made no changes to the Schedule 1.1(b) exclusion of "all copyrights" from the "Assets" to be transferred.  (Opp'n, Appendix A, at Response Nos. 23-24.)

3.  December 6, 1995:     Novell and Santa Cruz executed a Bill of Sale that transferred "the Assets" to Santa Cruz, as defined in the APA and Amendment No. 1.  (Opp'n, Appendix A, at Response Nos. 25-26.)

4.  October 16, 1996:     Novell and Santa Cruz executed Amendment No. 2, which amended the APA "[a]s of the 16th of October, 1996." Amendment No. 2 revised the wording of Schedule 1.1(b), but did not state that it retroactively amended the Bill of Sale.  Novell and Santa Cruz did not execute a new Bill of

3

Sale or any other document transferring ownership of copyrights or other assets.  (Opp'n, Appendix A, at Response Nos. 28-30.)

The key facts summarized above are sufficient, by themselves, to compel the conclusion that Novell is entitled to summary judgment.  Contract interpretation is a matter of law for the Court and, hence, an appropriate issue for summary judgment.  *Gilbert v. Equitable Life Ins. Co. of Iowa*, 259 Cal. App. 2d 895, 898 (1966).  This Court may grant summary adjudication on specific issues of contract interpretation, even if that ruling does not dispose of an entire claim.  *Am. Ins. Co. v. Freeport Cold Storage, Inc*., 703 F. Supp. 1475, 1480-85 (D. Utah 1987).

## III.    ARGUMENT

### A.    Novell Is Entitled to Summary Adjudication that the APA and Amendment No. 1 Excluded "All Copyrights" from the Assets Transferred to Santa Cruz in the Bill of Sale.

#### 1.    SCO concedes that the original APA explicitly excluded "all copyrights" from the "Assets" to be transferred to Santa Cruz.

SCO does not dispute that the original APA expressly excluded "all copyrights" from the transfer of assets, or that the Schedule 1.1(b) exclusion overrode any contrary language in the Schedule 1.1(a) list of assets included in the transfer.  Nor does SCO contend that "all copyrights" means something less than "all copyrights."  On the contrary, SCO affirmatively admits that "Schedule 1.1(b) identifies <u>assets excluded from the transfer</u> to Santa Cruz" (Opp'n at 9), and that "[t]he parties intended for Novell to sell and for Santa Cruz to acquire 'all of Seller's right, title and interest in and to the assets and properties of Seller relating to the Business' identified on Schedule 1.1(a), <u>excluding the 'Excluded Assets' in Schedule 1.1(b)</u>." (SCO's Memorandum in Opposition to Novell's Motion for Partial Summary Judgment on

SCO's Noncompete Claim in Its Second Claim for Breach of Contract and Fifth Claim for Unfair Competition, filed 5/18/07, PACER No. 301, at 38-39 (emphasis added).)  Accordingly, SCO concedes the first issue on which Novell seeks summary adjudication: the original APA excluded "all copyrights" from the assets to be transferred to Santa Cruz, including the UNIX and UnixWare copyrights at issue in this case.

SCO's sole argument concerning the "all copyrights" exclusion is that "Amendment No. 2 expressly replaced the language that Novell invokes," so the provision is purportedly "irrelevant because it no longer exists for purposes of construing the APA." (*See* Opp'n at 55.) This argument relies solely on Amendment No. 2, which was not executed until October 16, 1996, or thirteen months *after* the original APA was signed on September 19, 1995, and ten months after the Bill of Sale was executed on December 6, 1995.  Thus, SCO has failed to rebut Novell's showing that it is entitled to summary adjudication that the original APA — as signed on September 19, 1995, and as in effect when the Bill of Sale was executed on December 6, 1995 — excluded "all copyrights" from the "Assets" to be transferred to Santa Cruz.

SCO argues that, <u>if</u> the "all copyrights" exclusion is ignored, other provisions of the original APA could be read as transferring the copyrights at issue.  In particular, SCO points to provisions of the APA stating Novell was transferring the "right, title, and interest" in UNIX and UnixWare to Santa Cruz, and claims that such provisions are generally read as transferring copyrights.  (Opp'n at 37.)  As made clear by the case law upon which SCO relies, however, such provisions can transfer copyrights only where no express provision excludes copyrights from the transaction.  SCO principally relies on *Shugrue v. Cont'l Airlines, Inc.*, 977 F. Supp. 280 (S.D.N.Y. 1997).  There, the court found that the sale of "all right, title, and interest" in all of the seller's computer software transferred the copyrights in that software because "<u>[n]o</u>

exception was carved out for copyrights" and "no rights, titles, or interests were retained." *Id.* at 285. Similarly, both of the other cases on which SCO relies specifically note the lack of any specific provisions excluding or discussing copyrights. *Relational Design & Tech., Inc. v. Brock*, No. 91-2452-EEO, 1993 WL 191323, at *6 (D. Kan. May 25, 1993) ("The original contract is devoid of any language excluding copyright law") (Exhibit B hereto); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) (noting that "the agreement does not mention the word 'copyright'").[1]

As the original APA undisputedly contained an express exclusion of copyrights, the original APA cannot have transferred the copyrights at issue. Indeed, as noted above, SCO has admitted that the Schedule 1.1(b) exclusion overrode any contrary language in the Schedule 1.1(a) list of assets included in the transfer.

> **2.      SCO concedes that Amendment No. 1 did not change the explicit exclusion of "all copyrights" from the "Assets" to be transferred to Santa Cruz.**

SCO concedes as "undisputed" that "Amendment No. 1 made several clarifying amendments, including specific revisions to the Schedule 1.1(a) and Schedule 1.1(b) lists of included and excluded assets," and that "Amendment No. 1 did not . . . change the description of the Intellectual Property that was included and excluded from the transferred assets." (Opp'n, Appendix A, at Response No. 24.) Accordingly, Amendment No. 1 left intact the exclusion of "all copyrights" from the transfer of assets.

---

[1] SCO also cites *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989), which holds that a copyright owner should not be presumed to have transferred outright ownership of the copyrights when it grants a license. *Id.* at 1088. That supports Novell's position, not SCO's. Novell retained "all copyrights," while granting a license to Santa Cruz. (Br. at 26-29.)

3.     **Nothing in the Technology License Agreement Changed the Assets Transferred.**

SCO contends that some hints about the parties' intent regarding the transfer of copyrights can be divined from the Technology License Agreement (TLA), which provided Novell with a license in technology that it had transferred to Santa Cruz under the APA.  Such hints are irrelevant, as the express language of the original APA and the TLA are clear.  As SCO has conceded, the original APA expressly excluded copyrights from the transfer.  SCO points to no language in the TLA undoing the "all copyrights" exclusion.

Even if this Court were to attempt to divine hints about Novell's intent by looking at the TLA, SCO's argument fails for the reasons set forth in Novell's opening brief.  (Br. at 31-32.) SCO contends that "had Novell retained ownership of the copyrights.  Novell would not have needed a license . . . ."  (Opp'n at 41.)  In fact, the TLA is entirely consistent with Novell's retention of copyright ownership.  Novell submitted a declaration from its outside counsel, Tor Braham, explaining that he requested that license because, although Novell would retain its copyright in the original UNIX and UnixWare code, Novell would not have a right to use other technology (such as any trade secrets or software know how) transferred in the APA and would not have a copyright to future enhancements that it anticipated Santa Cruz would be making to the SVRX and UnixWare code.  (Br. at 31-32.)  SCO submits no evidence controverting that declaration.

Instead, without citing any evidence, SCO claims that the license encompassed the copyrights to the unmodified UNIX and UnixWare code because the license covered "all of the technology," not just know-how or derivatives.  (Opp'n at 56.)  That is simply incorrect.  The license did not cover such copyrights.  The TLA gave Novell a license to use the "Licensed Technology," defined as "all of the technology <u>included in the Assets</u>" and "all derivatives of

7

such technology <u>included in the Assets</u>."  (Declaration of Kenneth Brakebill, filed 4/20/07, PACER No. 284 ("Brakebill Decl."), Ex. 2, Section 1.6, and Ex. 5, TLA, Section II.A (emphasis added).)  The "Assets" were defined in the APA through included and excluded assets schedules.  As SCO does not dispute, those schedules expressly excluded "all copyrights" from the transferred Assets.  Accordingly, the Licensed Technology did not cover copyrights, as those were never "included in the Assets."

Nothing in the TLA overrode the APA's express exclusion of "all copyrights."  Indeed, as explained in Novell's opening brief, SCO's argument that the TLA somehow transferred ownership of all UNIX-related intellectual property to Santa Cruz is unsustainable.  By SCO's argument, the TLA would have transferred ownership of Novell's UNIX-related patents because Novell would not have needed any license covering such patents if it retained ownership.  But that is clearly incorrect.  As SCO does not dispute, Novell did <u>not</u> transfer ownership of the patents to Santa Cruz.  (Br. at 32.)  SCO offers no response to this argument in its opposition.

**B.    Novell Is Entitled to Summary Adjudication that the Bill of Sale Did Not Transfer the Copyrights At Issue.**

**1.    SCO concedes that the Bill of Sale transferred only the "Assets" as defined in the APA and Amendment No. 1**

SCO argues that the exclusion of "all copyrights" in the APA, as amended by Amendment No. 1, is irrelevant because that exclusion was later changed in Amendment No. 2.  But the meaning of the original APA, as amended by Amendment No. 1, is crucial because the Bill of Sale transferred only those assets identified in the original APA and Amendment No. 1.

SCO relies upon the Bill of Sale as the document transferring copyright ownership.  SCO contends that "the Bill of Sale in fact transferred the copyrights to Santa Cruz on the Closing Date."  (Opp'n at 39.)  SCO does not claim that the APA or Amendment No. 2, standing alone,

transferred the copyrights.  Rather, SCO relies on the "APA Bill of Sale" as the instrument that "effectuates the transfer."  (Opp'n at 1; *see id.* at 44-45.)  SCO's own admissions, however, establish that the Bill of Sale cannot have transferred copyright ownership.

SCO concedes it is "undisputed" that "[t]he Bill of Sale stated that Novell 'does hereby transfer, convey, sell, assign and deliver' to Santa Cruz 'all of the Assets,'" and that the "Assets" to be transferred were defined in "the Asset Purchase Agreement . . . dated as of September 19, 1995, as amended by Amendment No. 1."  (Opp'n, Appendix A, at Response No. 26.)  As noted above, SCO concedes that the original APA, dated as of September 19, 1995, as amended by Amendment No. 1, expressly excluded "all copyrights" from the transfer of assets.  Accordingly, the Bill of Sale cannot have transferred the copyrights.

### 2.    Amendment No. 2 did not retroactively amend the Bill of Sale.

SCO attempts to get around the language of the Bill of Sale, which expressly limits its transfer of assets to those defined in the APA as amended by Amendment No. 1, by asserting that "Bill of Sale unambiguously effectuated" the "transfer" of assets pursuant to the APA as revised by Amendment No. 2. (Opp'n at 45.)  Yet SCO provides absolutely no explanation of how the Bill of Sale, which was executed ten months *before* Amendment No. 2, could "effectuate" a transfer based on an amendment that did not even exit.

Although not expressly stated, SCO seems to be contending that Amendment No. 2 retroactively amended the Bill of Sale to transfer additional assets.  Yet SCO concedes that Amendment No. 2 expressly stated that it amended the APA prospectively only "[a]s of the 16th day of October, 1996," the execution date of Amendment No. 2.  That is ten months <u>after</u> the execution of the Bill of Sale on December 6, 1995.  (Opp'n, Appendix A at Response No. 30.)  Moreover, nowhere does Amendment No. 2 even mention the Bill of Sale, let alone purport to

retroactively amend it.  SCO's argument fails as a matter of law because it is contrary to the plain language of the Bill of Sale and Amendment No. 2.

      **C.**      **Novell Is Entitled to Summary Adjudication that Amendment No. 2 Did Not Contain the Essential Terms Required to Transfer Copyright Ownership under the Copyright Act.**

The Court noted in its June 9, 2004 Order, "The court recognizes that in this case there are multiple works potentially at issue because UNIX and UnixWare had many versions and releases and that without specificity as to which copyrighted works and which rights within each copyrighted work were purportedly transferred, the purported assignment may be insufficient under Section 204(a)."  (Order Denying Motion to Dismiss, June 9, 2004, PACER No. 29, at 15.) The undisputed evidence now makes clear that Amendment No. 2 was woefully deficient in identifying any transfer and in identifying which works and which rights in those works, if any, were purportedly transferred.

As explained in Novell's opening brief, the Copyright Act requires a signed written instrument to transfer ownership of copyrights.  (Br. at 37.)  That instrument must be clear and specific enough to "force[] a party who wants to use the copyrighted work to negotiate with the creator to determine <u>precisely</u> what rights are being transferred."  *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994) (emphasis added).  The writing must be sufficiently "clear and definite" that "the property will be readily marketable" and that the "parties need only look to the writing that sets out their respective rights."  *Id.* (emphasis added).

SCO does not dispute that the instrument must be specific and unambiguous.  SCO notes only that a document transferring ownership can be brief and need not use any magic words. (Opp'n at 44-45, 56-57.)  But that does not eliminate the need for clarity.  In each of the cases on which SCO relies, the transfer clearly, if succinctly, identified the copyrights at issue and the fact

that a transfer was occurring.  *See Kebrooke Fabrics, Inc. v. Soho Fashions, Inc.*, 690 F. Supp. 298, 301 (S.D.N.Y. 1988) (copyright owner signed a "letter of authorization" stating that it was "transfer[ring] ownership of all screens" in which it held a copyright); *Dick Corp. v. SNC-Lavalin Constructors, Inc.*, No. 04 C 1043, 2004 WL 2967556, at *4 (N.D. Ill. Nov. 24, 2006) (signed agreement provided for transfer of "[a]ll documents produced for or by the Joint Venture") (Exhibit C hereto); *Dean v. Burrows*, 732 F. Supp. 816, 823 (D. Tenn. 1989) (check identifying the "mold designs" as the items being transferred was clear where the copyright was in the molds for a single sculpture); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("one-line pro forma statement" would be enough for a single copyright in special effects footage for a movie).[2]

Here, by contrast, Amendment No. 2 failed to provide any information about what, if any, specific copyrights were being transferred.  SCO does not dispute that Amendment No. 2 did not include any specific list of which copyrights to the many versions and releases of UNIX and UnixWare were "required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies."  (Opp'n, Appendix A, at Response No. 29.)

Moreover, Amendment No. 2 did not include any language of transfer (*e.g.,* copyrights are "hereby assigned" or "hereby acquired"), nor did it evince any present intent to transfer the copyrights.  Indeed, SCO does not dispute that Amendment No. 2 contains no specific provision

_____

[2] SCO also cites *ITOFCA, Inc. v. Mega Trans Logistics, Inc.*, 322 F.3d 928 (7th Cir. 2003).  But the court there did not reach the issue of whether copyright ownership was transferred.  *Id.* at 931 ("we need not decide . . . if the agreement did not transfer the copyright" because "it transferred a right to sell a modified version, which is all that matters so far as this appeal is concerned").

stating that a transfer of copyrights has occurred.  That is because Novell expressly rejected SCO's first draft of Amendment No. 2, which stated that SCO "acquired hereunder" the copyrights.  SCO offers no evidence or argument disputing that fact.  (Opp'n, Appendix A, at Response No. 33-34.)

Because Amendment No. 2 did not purport to transfer any copyrights and also did not specify what copyrights, if any, were being transferred, Amendment No. 2 cannot satisfy the Copyright Act's requirement of a clear and unambiguous written instrument transferring specific copyrights. *See Playboy Enters. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995) (affirming dismissal of claim for lack of sufficient written instrument because of "the ambiguity of the agreement").

SCO attempts to escape this problem by arguing "in the alternative" that Amendment No. 2 is a "ratifying memorandum" that ratified a supposed oral agreement to transfer the copyrights under the APA.  (Opp'n at 46.)  But, even assuming such an oral agreement, nothing in the case law that SCO cites exempts ratifying memoranda from the specificity and clarity requirements imposed by the Copyright Act.  Ratifying memoranda must be clear and unambiguous, just as any other written instrument of transfer must be.  Moreover, SCO's case law permitting a ratifying memorandum is inapplicable where, as here, the parties to the deal dispute whether a transfer occurred.  "[W]hen courts have found the post-deal writing sufficient, the party challenging the writing has been an alleged infringer who is an outsider to the deal . . . .  That situation is different from the situation here, where the parties to the alleged contract disagree about whether a valid agreement actually exists. Thus, the analysis in these cases does not apply here, and the cases themselves are not relevant." *Lyrick Studios, Inc. v. Big Idea Productions, Inc.,* 420 F.3d 388, 394 (5th Cir. 2005); *Nimmer on Copyrights* § 10.03[A][3] (postdeal writings only satisfy the Copyright Act where there is no dispute between the parties to the transfer).

Neither of the cases on which SCO relies involved any dispute between the copyright owner and the transferee regarding the status of the copyright. *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529 (11th Cir. 1994) (challenge by infringing third-party where parties to the agreement did not dispute copyright ownership); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96 (11th Cir. 1995) (same).

      **D.      The Extrinsic Evidence Cited by SCO Is Inadmissible.**

Rather than address the plain language of the APA, the Bill of Sale, and Amendment No. 2, SCO devotes the bulk of its opposition to presenting extrinsic evidence of intention and subsequent conduct in an attempt to rewrite those documents.[3]  That evidence is inadmissible.

      **1.      SCO's Extrinsic Evidence Regarding the Supposed Intent of the Original APA Is Inadmissible Under the Parol Evidence Rule.**

Most of SCO's extrinsic evidence relates to the "intent" of the original APA, when it was signed on September 19, 1995.  (*See* Statement of Facts in Opp'n, at ¶¶ 11-48.)  As explained in Novell's opening brief, this evidence is inadmissible under controlling California law, which holds that extrinsic evidence is not admissible to vary or contradict the terms of an integrated agreement.  (Br. at 19-23.)  Such evidence is admissible only to prove a meaning to which the terms are reasonably susceptible.  The same rule applies to evidence of parties' conduct after signing the contract.  *See Bank of the West v. Resolution Trust Corp.*, No. C 95-4708 FMS, 1997 U.S. Dist. LEXIS 1581, at *17-19 (N.D. Cal. Feb. 13, 1997) (excluding evidence of the parties' subsequent conduct under California law) (Exhibit D hereto).  SCO does not dispute any of that

---

[3] That extrinsic evidence is addressed in more detail on an item-by-item basis in Novell's Response to the Statement of Facts Submitted by SCO in Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance, attached hereto as Exhibit A.

case law.  Indeed, SCO quotes the same case law as Novell, affirming that extrinsic evidence is not admissible where terms of the agreement are not reasonably susceptible of the meaning for which such evidence is proffered.  (Opp'n at 35-36.)

None of SCO's extrinsic evidence concerning the original APA advances an interpretation of which the document is reasonably susceptible.  As SCO itself concedes, the original APA expressly excluded "all copyrights" from the transfer of assets.  SCO openly seeks to demonstrate a <u>contradiction</u> between that exclusion of "all copyrights" and the supposed intent of the parties.  As explained in Novell's opening brief, California courts have specifically held that extrinsic evidence may not be used for that purpose.  In *Gerdlund v. Electronic Dispensers Int'l*, 190 Cal. App. 3d 263 (1987), <u>all</u> parties testified that they intended a contract allowing termination "for <u>any</u> reason" to mean "for any <u>good</u> reason."  *Id.* at 273 (emphasis added).  The California Court of Appeal held that such evidence should have been excluded: "Testimony of intention which is contrary to a contract's express terms . . . does not give meaning to the contract: rather it seeks to substitute a different meaning."  *Id.*; *see also Blumenfeld v. R.H. Macy & Co.*, 92 Cal. App. 3d 38, 41-44, 46 (1979) (where contract assigned "all claims," extrinsic evidence was inadmissible to limit the assignment to claims against current tenants).  SCO does not discuss or distinguish any of that case law.

### 2. Any Extrinsic Evidence from SCO Claiming that the Bill of Sale Transferred Copyrights Pursuant to Amendment No. 2 Is Inadmissible as Well.

SCO makes no attempt to submit any extrinsic evidence (or even any argument) to support its assertions that the Bill of Sale transferred the copyrights referenced in Amendment No. 2.  In particular, SCO does not submit any testimony or other extrinsic evidence that when the Bill of Sale was executed in December 1995, the parties intended the Bill of Sale to transfer

14

the "Assets" as defined by the APA as amended by Amendment No. 2 (which did not even exist at that time).

In a throwaway line buried in its brief, SCO hints at a theory that the negotiation history of Amendment No. 2 somehow indicated an intent to retroactively amend the Bill of Sale.  SCO notes that during the negotiation process, Amendment No. 2 was altered to refer to copyrights owned by Novell as of the date of the APA rather than as of the date of Amendment No. 2.  From that, SCO leaps to the conclusion that "the parties intended for Amendment [No. 2] to relate back to the date and execution of the APA."  (Opp'n at 55.)

As a matter of law, the evidence that SCO cites does not support its inference that Amendment No. 2 was intended to be retroactive.  The change referred to by SCO relates to the which copyrights are at issue, and not the effective date of Amendment No. 2.  Nor does the final language of the provision cited by SCO suggest, in any way, that Amendment No. 2 was intended to retroactively amend the Bill of Sale.  Moreover, even if it were assumed that this extrinsic evidence somehow supported an inference that Amendment No. 2 was retroactive (which is does not), this extrinsic evidence would be inadmissible to alter the plain language of Amendment No. 2, which states that it applies <u>prospectively</u> only "[a]s of the 16th day of October, 1996," its signing date.  That language is not reasonably susceptible of SCO's interpretation that Amendment No. 2 operated retroactively.

### 3.     The Limited Extrinsic Evidence that SCO Submits Concerning the Purported Intent of Amendment No. 2 Is Inadmissible Too.

Almost all of SCO's extrinsic evidence concerns the intent of the original APA, which SCO has conceded excluded copyrights.  SCO has presented virtually no evidence concerning the intent or negotiation history of Amendment No. 2.  This is not surprising, as almost all of the witnesses on which SCO relies had no involvement in Amendment No. 2.  (*See* Novell's

Opposition to SCO's Motion for Partial Summary Judgment On Its First, Second, and Fifth Causes of Action and For Summary Judgment on Novell's First Counterclaim, filed 4/9/2007, PACER No. 259, at 29-30.)

To the extent that SCO does rely on extrinsic evidence concerning the "intent" of Amendment No. 2, that evidence is legally irrelevant and thus inadmissible. Evidence of intention, whether through testimonial evidence or subsequent course of conduct, does not allow a party to bypass the Copyright Act's requirement of a written conveyance. *See Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 935, 937 (N.D. Cal. 1992) (granting summary judgment for failure to satisfy the written conveyance requirement despite plaintiffs' argument that the parties "intended" to transfer copyright ownership and treated the copyrights as having transferred); *see also Lyrick*, 420 F.3d at 396 (irrelevant that "parties acted as if they had a deal for several years" because "Section 204(a) requires a writing" and there was no satisfactory writing).

Moreover, as noted above, Amendment No. 2 explicitly states that it is effective "[a]s of the 16th of October, 1996," which was the date it was signed. Nothing in Amendment No. 2 states or suggest that it was intended to apply retroactively back to the signing of the APA or of the Bill of Sale. Therefore, any extrinsic evidence that purports to prove the contrary is inadmissible.

**E.    Even if this Court Were to Examine Extrinsic Evidence, that Evidence Confirms that the APA and Amendment No. 2 Did Not Transfer Any Copyrights to SCO.**

Because SCO's extrinsic evidence is inadmissible, this Court need not examine or evaluate that evidence. However, even if this Court were to examine that evidence, it would simply confirm that SCO has identified no disputed issue of material fact.

### 1. SCO does not controvert the deliberate insertion of the "all copyrights" exclusion in the APA.

The uncontroverted evidence is that the "all copyrights" exclusion was deliberately inserted into the APA to protect Novell's interests. Novell submitted a declaration from Tor Braham, Novell's outside counsel at Wilson Sonsini whose legal team drafted the "all copyrights" exclusion and inserted it into the APA. Braham attested that the Wilson team deliberately excluded copyrights to protect Novell's ongoing interest in UNIX and UnixWare and to allow Novell to enter into buyouts, among other reasons. (Br. at 8-9.) Novell also submitted minutes from its board meeting approving the APA, which state that "Novell will retain all of its patents, copyrights, and trademarks (except for the trademarks UNIX and UnixWare)." (Declaration of David Bradford, filed 4/20/07, PACER No. 279 ("Bradford Decl."), Ex. 1.) This extrinsic evidence is consistent with the plain language of the APA, and hence may properly be considered by the Court if it wishes to do so. *EPA Real Estate P'ship v. Kang*, 12 Cal. App. 4th 171, 176-77 (1992).

SCO's sole response is to assert that (1) despite the board's authorization, the Wilson team acted outside the bounds of its authority in inserting the exclusion, and (2) Santa Cruz did not share Novell's intent to exclude copyrights from the transfer. (Opp'n at 65-66; *see also* Opp'n, Appendix A at Response Nos. 12-13, 16-20.) Both assertions are unavailing.

SCO's argument that the Wilson team acted beyond its authority is beside the point. The "all copyrights" exclusion was part of the contract signed by both parties. "[A] party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence." *King v. Larsen Realty, Inc*., 121 Cal. App. 3d 349, 358 (Cal. Ct. App. 1981).

In any event, SCO can show no disputed issue of material fact concerning whether the Wilson team acted outside its authority. SCO's only basis for claiming that the Wilson team acted outside its authority is a statement from Novell's then-CEO Robert Frankenberg that Frankenberg did not specifically direct the team to retain copyrights or specifically authorize the Novell team to tell Santa Cruz that copyrights would not be sold. (*Id.*; Opp'n at 7.) But Frankenberg testified that he gave his team broad authority to retain rights necessary to protect Novell's ongoing interest in UNIX:

> Q. And as a result, you <u>tasked your negotiating team</u> with making sure that the detailed draft of the Asset Purchase Agreement winded its way between the goal of selling the UNIX business to SCO but <u>retaining the rights necessary for Novell to protect its interest</u> in the ongoing UNIX revenue stream and the capitalization of that revenue stream?
>
> A. Yes.

(Brakebill Decl., Ex. 21, Frankenberg Dep. 64:14-21 (emphasis added).) Frankenberg testified that he "directed the negotiating team to make sure that [Novell's] rights to enter into buyouts after the acquisition closed were preserved." (*Id.* at 63:1-19.) Frankenberg recalled "discussing" with the negotiation team the fact that "retaining the UNIX copyrights would facilitate Novell's exercise of rights with respect to capitalizing the SVRX revenue stream." (Supplemental Declaration of Kenneth Brakebill, filed 5/14/07, PACER No. 296, incorporated herein ("Supp. Brakebill Decl."), Ex. 32, at 65:21-66:7.) Frankenberg testified that it was "possible" that the negotiation team excluded copyrights from the transfer of assets to "effectuate" his "direction to try to make sure that [Novell] could protect [its] right to do buyouts." (*Id.* at 85:8-15.) Frankenberg's testimony is entirely consistent Braham's declaration: both indicate that the Wilson team deliberately excluded copyrights from the transaction, pursuant to a broad authorization from Frankenberg that was later ratified by Novell's board.

SCO's other argument — that Santa Cruz was purportedly unaware of Novell's intent to exclude the copyrights — does not save their claims either.  (Opp'n at 65-66.)  SCO does not dispute that the Wilson team representing Novell sent at least two drafts containing the "all copyrights" exclusion to Santa Cruz.  (Opp'n, Appendix A, at Response No. 18; Declaration of Tor Braham, filed 4/20/07, PACER No. 281 ("Braham Decl.") ¶ 17.)  Nor does SCO dispute that the Wilson team faxed a copy of a draft of the APA containing the exclusion to Jeff Higgins, Santa Cruz's attorney, before the APA was signed.  (*Id.*, Ex. 3.)  Not only did Santa Cruz's lawyers receive notice of the "all copyrights" exclusion, but Santa Cruz's **REDACTED** did as well.  On November 16, 1995, Santa Cruz's                          **REDACTED**

**REDACTED**          SCO submitted that **REDACTED** in its opposition to Novell's other summary judgment motions.

**REDACTED**

(Declaration of Mark F. James, filed 5/18/07, Ex. 70 at SCO 1230555.)  That **REDACTED** demonstrates not only that Santa Cruz undisputedly had notice of the exclusion, but also that the intent of the parties was clear to all.

Moreover, even if SCO had any evidence that Santa Cruz was somehow unaware of the "all copyrights" exclusion in the drafts that the parties exchanged or the final version of the APA that Santa Cruz signed, Santa Cruz's unilateral mistake in failing to realize the import of the "all copyrights" exclusion could not save SCO's claim.  Unilateral mistake provides a ground only for reformation of contract, a remedy that SCO does not seek here.  *See* 1 Witkin, Summary of California law: Contracts § 276 (2005).  Moreover, under California law, unilateral mistake is grounds for reformation only if the contract was ambiguous and the mistaken interpretation was

"encouraged or fostered by other party." *See* 1 Witkin, Summary of California law: Contracts §
257(a) (2005) (citing *Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1673 (1996)).
Here, the "all copyrights" exclusion was unambiguous, and SCO has no evidence that Novell did
anything to cause Santa Cruz to ignore the exclusion.

> ## 2. SCO submits no admissible evidence controverting the fact that Amendment No. 2 was not intended to transfer copyrights.

SCO does not dispute the key facts concerning the negotiation history of Amendment
No. 2: (1) that Steve Sabbath, in-house counsel for Santa Cruz, proposed a draft of Amendment
No. 2 providing that Santa Cruz would "acquire[] hereunder" all copyrights "pertaining to"
UNIX and UnixWare, and (2) that Allison Amadia, in-house counsel for Novell, rejected that
draft. (Opp'n, Appendix A, at Response No. 33 (citing no evidence or argument disputing those
facts).) That negotiation history is critical. SCO argues that Amendment No. 2 should be
construed as transferring "all the copyrights in UNIX, UnixWare, and the Auxiliary Products."
(Opp'n, Appendix A, at Response No. 29.) That cannot be correct when Novell rejected a draft
amendment containing precisely that language. *See Apple Computer, Inc. v. Microsoft Corp.*, 35
F.3d 1435, 1440-41 (9th Cir. 1994) (where "Apple tried to limit Microsoft's license to Windows
1.0" by proposing a draft agreement to that effect, and "Microsoft . . . rejected this limitation,"
there could be "no basis for construing the Agreement to grant the narrow license that Apple
bargained for but gave up") (applying California law).

SCO first tries to dodge the negotiation history by arguing that its interpretation of
Amendment No. 2 is the only one of which the amendment is "reasonably susceptible." (Opp'n
at 52.) SCO claims that even if the negotiation history shows the parties intended for no transfer
to occur, such intent should be ignored because absent a transfer, Amendment No. 2 "would have
accomplished <u>nothing</u> for Santa Cruz." (Opp'n at 52.) That is incorrect. The intent of the

parties can be ignored only where it contradicts the plain language of Amendment No. 2, and SCO has identified no such contrary language. Moreover, Santa Cruz did not receive "nothing." Although Santa Cruz did not get everything it wanted (that is, a complete transfer of all copyrights pertaining to UNIX and UnixWare), Santa Cruz obtained the assurance that it would receive whatever rights in the copyrighted works were "required for" operating the UNIX-related business contemplated by the APA. That assurance confirmed Santa Cruz's inherent license under the APA to use, modify, and distribute the copyrighted work. Santa Cruz received that assurance without having to provide any consideration in exchange for it.

SCO then falls back on trying to suggest other interpretations of the negotiation history of Amendment No. 2. (Opp'n at 54-55.) SCO claims that the draft amendment was rejected not because Novell refused to transfer all the UNIX and UnixWare copyrights, as Amadia testified, but because broader language was necessary to cover documentation, training material, and brochures. (Opp'n at 54.) That makes no sense. The draft language referred to copyrights that "pertain to" UNIX or UnixWare, whereas the final language referred to copyrights "required for" UNIX and UnixWare. "Required for" is narrower than "pertaining to," so that change could not have been intended to broaden the scope of copyrights covered. SCO's only supporting evidence of that unusual reading is the testimony of Santa Cruz executive Doug Michels. But Michels' testimony is inadmissible for lack of foundation. Michels testified that he had no involvement in Amendment No. 2, stating "I don't even know what Amendment No. 2 is." (Supp. Brakebill Decl., Ex. 39, Michels Dep. 19:25-20:4.) Moreover, nothing in Michels' cited testimony states that the draft language was revised for the reason SCO suggests. (Declaration of Mark James, filed 5/18/07, Ex. 18, at 126-28.)

SCO then tries to introduce testimony from Steve Sabbath, in-house counsel for Santa Cruz. (Opp'n at 53-54.) Sabbath does not contradict the negotiation history described above. He does opine about his understanding of what Amendment No. 2 was intended to do, but that testimony is irrelevant, given the undisputed negotiation history. Moreover, that testimony is inadmissible because Sabbath lacks any foundation for his opinions. Sabbath testified that he did not recall "negotiating to any extent" "Paragraph A of Amendment No. 2," the portion that refers to copyrights. He did not recall "focusing on paragraph A to any extent." (Supp. Brakebill Decl., Ex. 46, Sabbath Dep. 33:11-20.) Sabbath's inability to recall anything about Paragraph A of Amendment No. 2 is further demonstrated by the fact that he has submitted inconsistent statements on the issue. His declaration in the *SCO v. IBM* litigation, for example, stated that "Novell had retained its UNIX copyrights" under the APA. (Brakebill Decl., Ex. 12, ¶ 25.) He further stated that he understood SCO in 2003 to be claiming to own "all right, title and interest in and to UNIX System V . . . together with copyrights" and that "I believe those claims are incorrect." (*Id.* ¶ 29.) Sabbath has no foundation to opine about Paragraph A of Amendment No. 2, given his demonstrated and conceded lack of memory concerning that issue.[4] SCO fails

---

[4] Significantly, SCO does not dispute that Sabbath proposed a draft of Amendment No. 2 that proposed to transfer the "copyrights and trademarks owned by Novell as of the date of this Amendment." (Opp'n at 55 (emphasis added).) That would make no sense if, as SCO now asserts, Sabbath believed that Novell had already transferred all UNIX and UnixWare copyrights to Santa Cruz ten months earlier when the deal closed in December 1995. Rather, this initial draft shows that Sabbath believed that Novell had retained ownership of the copyrights, and proposed to obtain those copyrights through Amendment No. 2. SCO makes much of the fact that this language was ultimately changed to refer to the "date of the Agreement." But that demonstrates nothing. Novell had no reason to grant a license or any other right to new copyrighted works Novell may have developed or received <u>after</u> the APA, but before Amendment No. 2.

to controvert Novell's evidence that Amendment No. 2 was never intended to effectuate a

transfer of copyright ownership.

> ### 3.     SCO has not met its burden to show that any copyright ownership was "required for" Amendment No. 2.

It is SCO's burden, as the plaintiff, to present evidence of what copyrights, if any, were

"required for" Santa Cruz to exercise its rights.  It is not enough for SCO to show that the

copyrights at issue pertain to its rights under the APA, or that ownership of those copyrights

would be helpful or useful to Santa Cruz's business.  Rather, SCO must show that Santa Cruz

had a "compelling need for" outright ownership of all of the copyrights, and that such ownership

was "necessary or essential" to operate UNIX-related business contemplated by the APA.

Merriam-Webster's Online Dictionary (2007) (definition of "require") (http://mw1.merriam-

webster.com/dictionary/require) (Exhibit E hereto).  Moreover, as the Court noted in its June 9,

2004 Order, "in this case there are multiple works potentially at issue because UNIX and

UnixWare had many versions and releases."  (Order Denying Motion to Dismiss, June 9, 2004,

PACER No. 29, at 15.)  SCO bears a heavy burden to show (1) which copyrights as to which

releases of UNIX were "required for" the exercise of Santa Cruz's rights under the APA, and (2)

which rights within the bundle of rights that are encompassed in copyright ownership were

"required for" Santa Cruz to exercise its rights.  SCO has made no showing as to either.

SCO does not dispute that companies routinely operate businesses selling, licensing, or

modifying software without having ownership of the underlying rights.  (Supp. Brakebill Decl.,

Ex. 18, Stone Dep. 72:18-73:6, 217:15-218:15.)  BEA purchased assets relating to Novell's

TUXEDO software business without purchasing the copyrights.  (Bradford Decl., ¶ 18.)  SCO's

complaint in the *SCO v. IBM* case expressly notes that IBM operates a large and profitable

business selling a variant of UNIX, called AIX, even though IBM does not own the copyrights to

the original unmodified UNIX code incorporated in AIX.  (Declaration of Edward Normand, filed 4/9/07, PACER No. 260, Ex. 35, ¶¶ 175-76.)

Santa Cruz was no exception to that rule.  As SCO does not dispute, Santa Cruz operated the business contemplated by the APA for <u>ten months</u>, between the execution of the Bill of Sale and the execution of Amendment No. 2, without ownership of the copyrights.  SCO offers no explanation as to why copyright ownership was unnecessary in those ten months, but is now suddenly "required for" the operation of the business.  Moreover, SCO does not explain why Santa Cruz required <u>all</u> the copyrights to exercise its rights under the APA.  For example, the APA expressly precluded Santa Cruz from entering into new SVRX licenses, with minor exceptions.  (Brakebill Decl., Ex. 2, § 4.16(b).)  SCO offers no evidence as to why Santa Cruz required outright ownership of the SVRX copyrights to exercise its rights under the APA.

As explained in Novell's opening brief, ownership of the copyrights was not "required for" Santa Cruz to exercise its rights under the APA because SCO already had a license under the original APA to use, modify, or distribute copyrighted works as required to exercise its rights.  (Br. at 26-29.)  SCO appears to offer two somewhat contradictory responses to this point.

First, SCO argues that it had <u>more</u> than an implied license under the APA, and in fact obtained the transfer of copyrights.  (Opp'n at 47-50.)  That argument fails for the reasons explained above:  it is undisputed that the APA expressly and deliberately excluded "all copyrights" from the transfer of assets.  Moreover, SCO's argument is beside the point.  So long as Santa Cruz obtained <u>at the very least</u> a license to exercise its rights under the APA, Santa Cruz did not need outright ownership of the copyrights to accomplish its goals.

Second, SCO hints that, absent the copyrights, Santa Cruz did not have <u>any</u> license at all to carry out the UNIX-related business contemplated by the APA.  (Opp'n at 49-50.)  Santa

Cruz's own conduct belies any such argument. Santa Cruz operated its UNIX-related business for ten months between the execution of the Bill of Sale and the signing of Amendment No. 2, during which time it undisputedly did not have ownership of the copyrights. Unless SCO believes that Santa Cruz was acting illegally during that period, Santa Cruz must have had an inherent license under the APA. That conclusion is confirmed by the case law cited by Novell in its opening brief. (Br. at 27-28.) Although SCO notes that those cases involved different fact patterns than here, SCO does not distinguish the rule laid down in those cases: that where the "[c]entral purpose of the contract" would be defeated without a license, the courts treat such a license as inherent in the agreement. *Foad Consulting Group, Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 828 (9th Cir. 2001). The cases SCO cites do not undercut that rule. *See, e.g.*, *SmithKline Beecham Consumer Healthcare L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000) (refusing to imply a license for an infringer that never had an agreement of any kind with the copyright owner). Here, the APA not only contemplated but actually <u>required</u> Santa Cruz to develop UnixWare (Br. at 7; Brakebill Decl., Ex. 2, § 4.18), which could not be done without a license.

The issue, then, is whether Santa Cruz required outright ownership of all copyrights pertaining to UNIX and UnixWare when it already had a license to use those copyrights as necessary to operate the UNIX-related business contemplated by the APA. SCO identifies only one right that a license would not provide: the ability to sue to prevent piracy of the original, unmodified UNIX or UnixWare code provided to Santa Cruz by Novell. (Opp'n at 43-44, 58-60.) But the ability to sue is not "required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies." Santa Cruz did not obtain any right under the APA to sue to enforce copyrights. The APA did give Santa Cruz Novell's "claims arising after

the Closing Date against any parties relating to <u>any right, property or asset included</u> in the Business." (Brakebill Decl., Ex. 3, § II (emphasis added).) But copyrights were not part of the "assets included" in the sale of the business; rather, copyrights were expressly excluded. Accordingly, Santa Cruz obtained no claims regarding copyrights.

Moreover, SCO offers no evidence that it has a "compelling need for" the ability to sue. SCO has not submitted any evidence that, in the <u>eight years</u> between the execution of the APA and its suit against IBM, it ever needed to sue or threaten a copyright infringement suit against any party concerning the original, unmodified UNIX or UnixWare code provided to Santa Cruz by Novell. Indeed, until the summer of 2003, SCO did not even register the UNIX copyrights that it purportedly believed it owned, even though SCO's own press release describes registration as a "jurisdictional pre-requisite" for bringing any copyright infringement suit. (*See* Second Supplemental Declaration of Kenneth Brakebill, filed herewith, Exs. 1-6.) SCO cannot have had a compelling need for to bring suits regarding those copyrights to operate its business, if it was willing to wait eight years before seeking the registration that it understood to be required to bring such suits.

The only evidence that SCO has presented regarding its need for the copyrights are conclusory statements from various witnesses that "you need all of the copyrights." (Opp'n at 58-61.) Such "generic and conclusory testimony," "wholly devoid of any specific instances" in which ownership of the copyrights was in fact required to exercise Santa Cruz's rights under the APA, is insufficient to create a disputed issue of material fact. *Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000).

**F.    Novell Is Entitled to Summary Judgment on SCO's Slander of Title
and Specific Performance Claims.**

SCO does not contest that summary judgment is proper on its slander of title claim if the
Court finds that the APA, Bill of Sale, and Amendment No. 2 did not transfer ownership of the
copyrights to Santa Cruz.

SCO, however, contends that its specific performance claim could still survive such a
finding.  SCO argues that if "the parties intended, but somehow failed, to transfer the copyrights
under the APA," Novell should still be required to transfer the copyrights.  (Opp'n at 74-75.)
SCO bases this argument on provisions of the APA requiring the parties to take "any further
action . . . necessary or desirable to carry out the purposes of this Agreement" and to
"consummate and make effective the transactions contemplated hereby."  (*See id.*; Brakebill
Decl., Ex. 2, §§ 1.7(c), 4.9, 4.12.)

The "transactions contemplated" and the "purposes of the Agreement," however, are
those upon which the parties have agreed.  The purpose of the APA and the transactions
contemplated by the APA cannot be something contrary to the APA itself.  The APA's
integration clause expressly forbids such a result: "This Agreement, and the Schedules and
Exhibits hereto: (a) constitute the entire agreement among the parties with respect to the subject
matter hereof and supersede all prior agreements and understanding, both written and oral,
among the parties."  (Brakebill Decl., Ex. 2, § 9.5)  If the parties' agreement provides that Novell
should retain the copyrights, then it would not effectuate either the agreement's purpose or the
transaction contemplated by the agreement to transfer those copyrights to SCO.

## IV.    CONCLUSION

Despite its length, SCO's 76-page opposition completely fails to rebut Novell's showing that it is entitled to summary judgment that ownership of the UNIX copyrights was not transferred to Santa Cruz by the original APA, the Bill of Sale, or the APA as revised by Amendment No. 2.  The reason for this failure is that SCO cannot rewrite these documents to say something that they simply do not say.  The original APA explicitly excluded "all copyrights" from the "Assets" to be transferred.  The Bill of Sale relied on this definition, and hence did not transfer any copyrights.  Amendment No. 2 was not executed until ten months later, and did not retroactively change the scope of assets transferred by the Bill of Sale.  Further, Amendment No. 2 lacked the essential terms required to transfer ownership of copyrights under 17 U.S.C. § 204(a).

SCO has attempted to rewrite the APA, the Bill of Sale, and Amendment No. 2 by relying on extrinsic evidence of the parties' alleged intent.  This evidence is inadmissible because the plain language of the parties' integrated agreements is not reasonably susceptible to SCO's proffered interpretation.  The original APA cannot reasonably be interpreting as including copyrights in the assets to be transferred, as it explicitly excluded "all copyrights" from the transfer.  The Bill of Sale cannot reasonably be interpreted as transferred the "Assets" as defined in Amendment No. 2, because it was executed long before Amendment No. 2 and was explicitly based on the definition in the original APA.  And Amendment No. 2 cannot reasonably be interpreted as retroactively amending the Bill of Sale to transfer copyrights, because it specifically stated that it was effective as of its date of signing and did not include any provision transferring copyrights.

For all of these reasons, Novell requests the Court to enter summary judgment that Novell did not transfer ownership of any copyrights to Santa Cruz, and that SCO's slander of title and specific performance claims fail as a matter of law.

DATED:   May 25, 2007

ANDERSON & KARRENBERG

By: _____*/s/  Heather M. Sneddon*_____

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)

**Attorneys for Defendant and
Counterclaim-Plaintiff Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2007, I caused a true and correct

copy of the foregoing **REPLY IN SUPPORT OF NOVELL'S MOTION FOR SUMMARY**

**JUDGMENT ON SCO'S FIRST CLAIM FOR SLANDER OF TITLE AND THIRD**

**CLAIM FOR SPECIFIC PERFORMANCE (COPYRIGHT OWNERSHIP)** *[REDACTED*

*pursuant to the August 2, 2006 Stipulated Protective Order]* to be served to the following:

*Via CM/ECF:*

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida  33301

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55401

*Via U.S. Mail, postage prepaid*:

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida  33131

_____/s/  Heather M. Sneddon_____