# EXHIBIT 15

EXECUTION COPY

AGREEMENT AND PLAN OF REORGANIZATION

BY AND AMONG

CALDERA SYSTEMS, INC.,
A DELAWARE CORPORATION

CALDERA HOLDING, INC.,
A DELAWARE CORPORATION

AND

THE SANTA CRUZ OPERATION, INC.
A CALIFORNIA CORPORATION

AUGUST 1, 2000



EXHIBIT
4.27.07
1067
Dancher

::ODMA\PCDOCS\DENLIB1\17279\17

CONFIDENTIAL                                    SCO1269019

# TABLE OF CONTENTS

Page

1. PLAN OF REORGANIZATION. ...................................................................................2
   1.1 The Organization of Newco and Merger Sub. .....................................................2
   1.2 The Merger............................................................................................................2
   1.3 SCO Transaction...................................................................................................3
   1.4 Contribution and Transfer of Contributed Stock and Contributed
       Assets ...................................................................................................................4
   1.5 Closing Matters.....................................................................................................7
   1.6 Dissenter's Rights .................................................................................................7
   1.7 Newco Plans..........................................................................................................7
   1.8 Registration on Form S-8......................................................................................7
   1.9 Effects of the Caldera Merger...............................................................................8
   1.10 Tax-Free Reorganization ......................................................................................8
   1.11 Tax-Free Section 351 Transaction ........................................................................8
   1.12 HSR Filings...........................................................................................................9
   1.13 Board of Directors and Officers of Newco; Newco Certificate of
        Incorporation and Bylaws ....................................................................................9
   1.14 Registration on Form S-4....................................................................................10

2. REPRESENTATIONS AND WARRANTIES OF SCO..............................................10
   2.1 Organization; Good Standing; Qualification and Power ...................................10
   2.2 Capital Structure .................................................................................................10
   2.3 Authority.............................................................................................................11
   2.4 SEC Documents..................................................................................................13
   2.5 Disclosure; Information Supplied.......................................................................14
   2.6 Compliance with Applicable Laws.....................................................................14
   2.7 Litigation.............................................................................................................15
   2.8 ERISA and Other Compliance............................................................................16
   2.9 Absence of Certain Changes or Events..............................................................19
   2.10 Full Force and Effect ..........................................................................................21
   2.11 Agreements .........................................................................................................21
   2.12 No Defaults.........................................................................................................22
   2.13 Certain Agreements ............................................................................................22
   2.14 Taxes...................................................................................................................22
   2.15 Intellectual Property............................................................................................24
   2.16 Fees and Expenses ..............................................................................................26
   2.17 Insurance.............................................................................................................26
   2.18 Ownership of Property........................................................................................26
   2.19 Environmental Matters.......................................................................................26
   2.20 Interested Party Transactions.............................................................................27
   2.21 Fairness Opinion.................................................................................................27
   2.22 Title to and Condition and Sufficiency of Group Assets...................................27
   2.23 No Restrictive Agreements.................................................................................28
   2.24 Supplier and Customer Relationships................................................................28

## TABLE OF CONTENTS (CONTINUED)

Page

| | | |
|---|---|---|
| 2.25 | Product and Inventory Status | 28 |
| 2.26 | Affirmative Vote | 29 |
| 2.27 | State Takeover Statutes | 29 |
| 2.28 | Competition and Fair Trading Laws | 29 |
| 2.29 | Grants | 29 |

3. REPRESENTATIONS AND WARRANTIES OF CALDERA AND NEWCO ............ 30
| | | |
|---|---|---|
| 3.1 | Organization; Good Standing; Qualification and Power | 30 |
| 3.2 | Capital Structure | 30 |
| 3.3 | Authority | 31 |
| 3.4 | SEC Documents | 32 |
| 3.5 | Disclosure; Information Supplied | 33 |
| 3.6 | Vote Required | 33 |
| 3.7 | Litigation | 33 |
| 3.8 | Valid Issuance | 34 |
| 3.9 | Absence of Certain Changes or Events | 34 |
| 3.10 | Taxes | 36 |
| 3.11 | Intellectual Property | 37 |
| 3.12 | Fees and Expenses | 37 |
| 3.13 | Environmental Matters | 37 |
| 3.14 | Fairness Opinion | 38 |
| 3.15 | Tax Representations | 38 |

4. SCO COVENANTS ............ 38
| | | |
|---|---|---|
| 4.1 | Advice of Changes | 38 |
| 4.2 | Maintenance of Business | 38 |
| 4.3 | Conduct of Business | 39 |
| 4.4 | SCO Corporate Approvals | 40 |
| 4.5 | Letter of SCO's Accountants | 40 |
| 4.6 | Prospectus/Proxy Statement | 40 |
| 4.7 | Regulatory Approvals | 41 |
| 4.8 | Necessary Consents | 42 |
| 4.9 | Access to Information | 42 |
| 4.10 | Satisfaction of Conditions Precedent | 42 |
| 4.11 | Voting Agreement | 42 |
| 4.12 | Sales Representative and Support Agreement | 42 |
| 4.13 | Stockholders Agreement | 42 |
| 4.14 | No Other Negotiations | 43 |
| 4.15 | Books and Records | 44 |
| 4.16 | [Intentionally Omitted.] | 44 |
| 4.17 | Modification of Joint Contributed Agreements and Shared Contributed Assets | 44 |
| 4.18 | Key Employee Employment Agreements | 45 |
| 4.19 | SCO IP Rights | 45 |

CONFIDENTIAL

SCO1269021

## TABLE OF CONTENTS (CONTINUED)

Page

|   |   |   |
|---|---|---|
| 4.20 | Directors' and Officers' Liability Insurance | 45 |
| 4.21 | Closing Group Account | 45 |
| 4.22 | SCO Retained Business | 45 |
| 4.23 | Taking of Necessary Action; Further Action | 46 |
| 4.24 | Accounting Treatments | 46 |

5. CALDERA AND NEWCO COVENANTS .............................................................. 46
   5.1 Advice of Changes ........................................................................................ 46
   5.2 Maintenance of Business ............................................................................. 46
   5.3 Conduct of Business ..................................................................................... 47
   5.4 Stockholder Approval .................................................................................. 47
   5.5 Letter of Caldera's Accountants ................................................................. 47
   5.6 Prospectus/Proxy Statement ....................................................................... 48
   5.7 State Securities Law Compliance ............................................................... 48
   5.8 Regulatory Approvals .................................................................................. 49
   5.9 Necessary Consents ..................................................................................... 49
   5.10 Access to Information .................................................................................. 49
   5.11 Books and Records ....................................................................................... 49
   5.12 Satisfaction of Conditions Precedent ......................................................... 50
   5.13 Voting Agreement ........................................................................................ 50
   5.14 Sales Representative and Support Agreement ......................................... 50
   5.15 Stockholders Agreement ............................................................................. 50
   5.16 Caldera Employee Plans ............................................................................. 50
   5.17 Indemnification and Insurance — Caldera ............................................... 51
   5.18 Indemnification and Insurance — Employees ......................................... 52
   5.19 Distribution to SCO Shareholders ............................................................. 54

6. CONDITIONS PRECEDENT TO OBLIGATIONS OF SCO ................................. 54
   6.1 Accuracy of Representations and Warranties .......................................... 54
   6.2 Covenants ..................................................................................................... 54
   6.3 Compliance with Law .................................................................................. 55
   6.4 Form S-4 ........................................................................................................ 55
   6.5 Opinion of Caldera and Newco's Counsel ................................................ 55
   6.6 Stockholder Approval .................................................................................. 55
   6.7 Tax Opinion .................................................................................................. 55
   6.8 Designees to the Board of Directors of Newco ......................................... 55
   6.9 Nasdaq Listing ............................................................................................. 55
   6.10 HSR Act ......................................................................................................... 55
   6.11 Ancillary Agreements ................................................................................. 55
   6.12 Delivery of Newco Shares .......................................................................... 56

7. CONDITIONS PRECEDENT TO OBLIGATIONS OF CALDERA AND
   NEWCO ...................................................................................................................... 56
   7.1 Accuracy of Representations and Warranties .......................................... 56

## TABLE OF CONTENTS (CONTINUED)

Page

| | | |
|---|---|---|
| 7.2 | Covenants | 56 |
| 7.3 | Compliance with Law | 56 |
| 7.4 | Consents | 56 |
| 7.5 | Form S-4 | 56 |
| 7.6 | Opinion of Counsel to SCO | 56 |
| 7.7 | Caldera Stockholder Approval | 56 |
| 7.8 | Tax Opinion | 57 |
| 7.9 | HSR Act | 57 |
| 7.10 | Ancillary Agreements | 57 |
| 7.11 | Key Employee Term Sheets | 57 |

8. TERMINATION OF AGREEMENT .......... 57
   8.1  Termination .......... 57
   8.2  Notice of Termination .......... 59
   8.3  Liability .......... 59
   8.4  Termination Fee .......... 59

9. SURVIVAL OF REPRESENTATIONS .......... 60
   9.1  Survival of Representations .......... 60

10. ESCROW AND INDEMNIFICATION .......... 60
    10.1  Escrow Fund .......... 60
    10.2  Indemnification by SCO .......... 60
    10.4  Limitations on Indemnification .......... 61
    10.5  Indemnification Procedures .......... 61

11. EMPLOYEE MATTERS .......... 63
    11.1  Right to Offer Employment .......... 63
    11.2  Termination of Employment .......... 65
    11.3  Cooperation .......... 65

12. TAX MATTERS .......... 66
    12.1  Transaction Taxes; Representation; Transaction Tax Indemnity .......... 66
    12.2  Treatment of Indemnity Payments .......... 66
    12.3  Indemnity for Taxes .......... 66
    12.4  Other Tax Matters .......... 68
    12.5  Tax Representations .......... 71

13. MISCELLANEOUS .......... 72
    13.1  Governing Law; Venue .......... 72
    13.2  Assignment; Binding upon Successors and Assigns .......... 72
    13.3  Severability .......... 72
    13.4  Counterparts .......... 72
    13.5  Other Remedies .......... 72

CONFIDENTIAL    SCO1269023

## TABLE OF CONTENTS (CONTINUED)

Page

13.6   Amendment and Waivers...................................................................................73
13.7   Expenses ..............................................................................................................73
13.8   Attorneys' Fees ...................................................................................................73
13.9   Notices ................................................................................................................73
13.10  Construction of Agreement................................................................................74
13.11  No Joint Venture ................................................................................................74
13.12  Further Assurances.............................................................................................74
13.13  Absence of Third Party Beneficiary Rights ......................................................74
13.14  Public Announcement........................................................................................75
13.15  Certain Defined Terms.......................................................................................75
13.16  Entire Agreement................................................................................................87

## TABLE OF CONTENTS (CONTINUED)

**Exhibits**

| | | |
|---|---|---|
| Exhibit A | — | Certificate of Merger |
| Exhibit A-1 | — | Certificate of Incorporation |
| Exhibit 1.4(b) | — | Excluded Assets |
| Exhibit 1.4(c)(i)(B) | — | Assumed Liabilities |
| Exhibit 1.3(b) | — | Escrow Agreement |
| Exhibit 1.13(b) | — | Officers |
| Exhibit 1.13(c)A | — | Form of Newco Amended and Restated Certificate of Incorporation |
| Exhibit 1.13(c)B | — | Form of Newco Amended and Restated Bylaws |
| Exhibit 1.4(a)(i) | — | Non US-Contributed Companies and Contributed Assets |
| Exhibit 4.11A | — | Form of Voting Agreement |
| Exhibit 4.11B | — | SCO Affiliates Who Executed Voting Agreements |
| Exhibit 4.12 | — | Sales Representative and Support Agreement |
| Exhibit 4.13B | — | Stockholder Agreement |
| Exhibit 4.18A | — | SCO Key Employees |
| Exhibit 4.18B | — | Form of Key Employee Term Sheet |
| Exhibit 5.13B | — | Caldera Affiliates Who Executed Voting Agreements |
| Exhibit 6.5 | — | Opinion of Counsel of Caldera and Newco |
| Exhibit 7.6 | — | Opinion of Counsel of SCO and Contributing Companies |
| Exhibit 13.15A | — | Contributed Assets |
| Exhibit 13.15B | — | Contributed Contracts |
| Exhibit 13.15C | — | Contributed Subsidiaries |
| Exhibit 13.15D | — | Group Products |
| Exhibit 13.15E | — | Permitted Encumbrances |

**Schedules**

| | | |
|---|---|---|
| | — | Caldera Disclosure Letter |
| | — | SCO Disclosure Letter |

# AGREEMENT AND PLAN OF REORGANIZATION

THIS AGREEMENT AND PLAN OF REORGANIZATION (this "*Agreement*") is entered into as of August 1, 2000, by and among Caldera Systems, Inc., a Delaware corporation including for all purposes Caldera Surviving Corporation, ("*Caldera*"), Caldera Holding, Inc., a Delaware corporation ("*Newco*") and The Santa Cruz Operation, Inc., a California corporation ("*SCO*"). The terms defined in Section 13.15 of this Agreement shall have the meanings therein specified in this Agreement.

## RECITALS

A.  The parties intend that, subject to the terms and conditions of this Agreement: (i) a new Delaware corporation referred to herein as Newco has been formed by Caldera solely for the purpose of the transactions contemplated hereunder; (ii) a newly formed, wholly owned subsidiary of Newco ("*Merger Sub*") will be merged with and into Caldera, with Caldera being the surviving corporation of such merger (the "*Merger*"), and all outstanding Caldera securities will be converted, on a share for share basis, into Newco securities having identical rights, preferences and privileges, with Newco assuming any and all outstanding options and other rights to purchase shares of capital stock of Caldera (with all such Newco securities issued to former Caldera security holders initially representing the Caldera Percentage Interest in Newco), all on the terms set out in this Agreement and in the Certificate of Merger substantially in the form of Exhibit A hereto (the "*Certificate of Merger*") and the applicable provisions of Delaware Law; (iii) SCO and certain of its subsidiaries as herein specified will contribute to Newco, all on the terms herein specified, all of the Contributed Stock of the Contributed Companies (with each of the Contributed Companies thereby becoming a wholly owned subsidiary of Newco) and the Contributed Assets in consideration for the issuance by Newco to SCO of shares of Common Stock of Newco, $0.001 par value ("*Newco Common Stock*"); and (iv) Newco will assume all options to acquire common stock of SCO held by the Employees (other than David McCrabb, Jack Moyer and Jim Wilt) hired or retained by Caldera (the "*Optionees*") and such options will be converted into options to purchase Newco Common Stock ("*Newco Options*") as set forth herein, which Newco Common Stock issued to SCO and Newco Options will represent in the aggregate a fully diluted equity interest in Newco equal to the difference between 100% and the Caldera Percentage Interest. The transactions described in subpart (iii) and (iv) of the foregoing sentence are collectively the "*SCO Transaction*."

B.  The Newco Common Stock and the Newco Options issued in the Merger and in the SCO Transaction will be registered under the Securities Act, pursuant to a Newco registration statement on Form S-4 or Form S-8, as set forth herein.

C.  For federal income tax purposes, it is intended that (i) the Merger qualify as a reorganization under the provisions of Section 368(a) of the Internal Revenue Code and (ii) that the Merger and the portion of the SCO Transaction described in Recital A (iii) above qualify as an exchange under the provisions of Section 351 of the Internal Revenue Code.

NOW, THEREFORE, the parties hereto hereby agree as follows:

::ODMA\PCDOCS\DENLIB1\17279\7

CONFIDENTIAL

SCO1269026

1. Plan of Reorganization.

    1.1    The Organization of Newco and Merger Sub. Caldera has formed Newco under the laws of the State of Delaware for the purposes of the transactions contemplated by the Merger and in accordance with the terms of this Agreement. Newco currently has no outstanding securities and has conducted no business and, prior to the Effective Time, will not issue any securities, will conduct no business or operations, will have no assets and will enter into no agreements nor incur any obligations or Liabilities, except as required or contemplated by this Agreement or necessary to perform its obligations hereunder. As soon as practicable after the date hereof, Newco shall form the Merger Sub as a wholly owned subsidiary, which will conduct no business prior to Closing except as expressly contemplated hereunder.

    1.2    The Merger. At the Closing, subject to the terms and conditions of this Agreement, Caldera will execute and deliver and will file with the Secretary of State of the State of Delaware in accordance with relevant provisions of the Delaware Law, a Certificate of Merger providing for the Merger of Merger Sub with and into Caldera, with Caldera being the surviving corporation upon the effectiveness of the Merger and thereby becoming a wholly owned subsidiary of Newco, pursuant to this Agreement, the Certificate of Merger and in accordance with applicable provisions of the Delaware Law as follows:

    (a)    Conversion of Caldera Common Stock. Each share of the Common Stock of Caldera ("*Caldera Common Stock*") that is issued and outstanding immediately prior to the Effective Time will by virtue of the Merger and at the Effective Time, and without any further action on the part of Caldera, Newco or any holder of Caldera Common Stock, be converted into one share (the "*Caldera Ratio*") of validly issued, fully paid and nonassessable Newco Common Stock.

    (b)    Conversion of Caldera Options.

    (i)    Conversion. At the Effective Time, each of the then outstanding options to purchase shares of Caldera Common Stock (collectively, the "*Caldera Options*") (consisting of all outstanding options granted under the stock option plans of Caldera or the Caldera Subsidiaries, including but not limited to its 1998 Stock Option Plan and its 1999 Omnibus Stock Incentive Plan (collectively, the "*Caldera Plans*"), and any individual non-Plan options), will, by virtue of the Merger, and without any further action on the part of any holder thereof, be assumed by Newco and converted into an option to purchase an equivalent number of shares of Newco Common Stock, at an exercise price per share equal to the per share exercise price of such Caldera Option in effect at the Effective Time. The term, exercisability, vesting schedule, status as an "incentive stock option" under Section 422 of the Internal Revenue Code, if applicable, and all other terms and conditions of the Caldera Options will be unchanged and all references in any option agreement governing such option to Caldera shall be deemed to refer to Newco, where appropriate. Continuous service as an employee or consultant with Caldera or any of the Caldera Subsidiaries will be credited to an optionee of Caldera for purposes of determining the number of shares of Newco Common Stock vested and exercisable under the assumed Caldera Option after the Closing.

(ii) <u>Stock Rights</u>. At the Effective Time, Newco will assume all of Caldera's obligations under Caldera's 2000 Employee Stock Purchase Plan (the "*Caldera Stock Purchase Plan*") and each of the then outstanding rights to purchase shares of Caldera Common Stock under such plan (collectively, the "*Caldera Stock Purchase Plan Rights*"), will by virtue of the Merger, and without any further action on the part of any holder thereof, be assumed and converted into a right to purchase the same number of shares of Newco Common Stock on the next "purchase date" (as such term is defined in the Caldera Stock Purchase Plan) following the Effective Time at a purchase price per share determined in accordance with the Caldera Stock Purchase Plan.

(c) <u>Cancellation of Caldera-Owned Shares</u>. Each share of Caldera Common Stock held in the treasury of Caldera or any of which are owned by Newco, Caldera, or any direct or indirect wholly owned subsidiary of Newco or Caldera immediately prior to the Effective Time shall be cancelled and extinguished without any conversion thereof.

1.3 <u>SCO Transaction</u>.

(a) <u>Issuance of Newco Common Stock</u>. At the Effective Time and subject to the terms and conditions of this Agreement, Newco will, in consideration for the contribution and transfer of the Contributed Stock and Contributed Assets to Newco as contemplated by this Agreement, perform the following:

(i) <u>Consideration</u>. Issue to SCO that number of issued, fully paid and nonassessable shares of Newco Common Stock equal to The SCO Percentage Interest, less (a) the number of shares of Newco Common Stock issuable upon exercise of the Newco Options pursuant to <u>Section 1.3(a)(iii)</u> below and (b) the Escrow Shares issued to SCO and placed directly into escrow by Caldera pursuant to <u>Section 1.3(b)</u> below, with such number of shares to be appropriately adjusted in the event of any Caldera stock split, stock combination, reclassification or other similar capital change (the "*First SCO Certificate*") and pay SCO cash consideration equal to seven million dollars ($7,000,000) (the "*Cash Consideration*"), by wire transfer of immediately available funds or upon the cancellation of SCO's outstanding indebtedness to Caldera.

(ii) [Intentionally Omitted.]

(iii) <u>Assumption and Conversion of SCO Options</u>. At the Effective Time, each of the then outstanding options to purchase shares of SCO Common Stock held by the Optionees (collectively, the "SCO Options") (consisting of all outstanding options granted under the stock option plans of SCO or the SCO Subsidiaries, and any individual non-plan options held by the Optionees), will, by virtue of the Merger, and without any further action on the part of any holder thereof, be assumed by Newco and converted into an option to purchase one share of Newco Common Stock for each two shares of SCO Common Stock subject to a SCO Option at the Effective Time (the "*SCO Ratio*") at an exercise price per share of Newco Common Stock equal to the exercise price per share of such assumed SCO Option immediately prior to the Effective Time divided by the SCO Ratio, rounded up to the nearest cent. Except as set forth in the preceding sentence, the term, exercisability, vesting schedule, and all other terms and conditions of the SCO Options will be unchanged and all references in any option agreement

::ODMA\PCDOCS\DENLIB1\17279\17              3

governing such option to SCO shall be deemed to refer to Newco, where appropriate; provided, however, that the outstanding SCO Options previously designated as "incentive stock options" under Section 422 of the Internal Revenue Code may, as a result of the foregoing adjustments, be converted into non-statutory stock options. Continuous service as an employee or consultant with SCO or any of the SCO Subsidiaries will be credited to the Optionee for purposes of determining the number of shares of Newco Common Stock vested and exercisable under the assumed SCO Option after the Closing. If the foregoing calculation results in a Newco Option, which is issued for a SCO Option, being exercisable for a fraction of a share of Newco Common Stock, then the number of shares of Newco Common Stock subject to such option will be rounded down to the nearest whole number of shares, with no cash being payable for such resulting fractional share.

(b) <u>Escrow</u>. As soon as practicable after the Effective Time, and subject to and in accordance with the provisions of <u>Section 10</u> and the Escrow Agreement, a form of which is attached as <u>Exhibit 1.3(b)</u> (the "*Escrow Agreement*"), Caldera shall deliver to the Escrow Agent on behalf of SCO a certificate representing ten percent (10%) of the SCO Percentage Interest (the "*Escrow Shares*"). The Escrow Shares distributed to the Escrow Agent shall be held in escrow and shall be available to transfer to Caldera for certain damages as provided in <u>Section 10</u>. To the extent not transferred to Caldera for such damages, the Escrow Shares shall be released to SCO, all as provided in <u>Section 10</u> and the Escrow Agreement.

(c) <u>Termination of Newco Options</u>. All shares of Common Stock underlying Newco Options assumed pursuant to <u>Section 1.3(a)(iii)</u> which terminate without being exercised by the Optionees shall be issued by Caldera to SCO on a quarterly basis.

1.4   <u>Contribution and Transfer of Contributed Stock and Contributed Assets</u>.

(a) <u>Contribution and Transfer</u>. Subject to the terms and conditions of this Agreement and in consideration for the issuance by Newco of Newco Common Stock as provided above, the Contributing Companies shall at the Effective Time, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged on behalf of each of the Contributing Companies, contribute and transfer and deliver to Newco or cause to be contributed, transferred and delivered to Newco, and at the Effective Time Newco shall accept the contribution and transfer from the Contributing Companies of all right, title and interest in and to the Contributed Stock and Contributed Assets. Notwithstanding the preceding, the Contributed Assets and Contributed Companies which are located outside of the United States shall be purchased and sold by and among the Newco and SCO entities located in such countries in exchange for stock or cash consideration as the parties shall agree before the Effective Time. Such payment shall be included within and shall not change the total amount of The SCO Percentage Interest and the Cash Consideration. The parties shall execute, or cause to be executed, Bills of Transfer relevant to their particular jurisdiction reflecting the transfer of any such Contributed Assets which shall reflect the purchase price allocation as agreed. Such amounts shall be reported as the purchase price for all foreign Tax reporting purposes in each relevant jurisdiction and no party shall have a position inconsistent therewith.

(b) <u>Excluded Assets</u>.

(i) *Excluded Assets*. SCO is not selling and Caldera shall not acquire from SCO any of the following assets or any interest therein (collectively, the "*Excluded Assets*"):

(A) any assets related solely to the SCO Retained Business;

(B) any cash and cash equivalents and any accounts receivable (the "*Cash Equivalents*") of the Contributing Companies and the Contributed Companies;

(C) those assets set forth on Exhibit 1.4(b).

(ii) *Net Cash Equivalents*. "Net Cash Equivalent" shall mean the net book value of any cash and cash equivalents held by any of the Contributed Companies, including but not limited to accounts receivable, accounts payable and third party debt obligations. To the extent the Net Cash Equivalents of any Contributed Company are or are expected to be positive as of the Effective Time, either SCO will withdraw that value from the Contributed Company at or before the Effective Time or Caldera will cause that value to be paid or credited to SCO at or promptly after the Effective Time. To the extent the Net Cash Equivalents of any Contributed Company are negative as of the Effective Time, SCO will pay or credit such amount to Caldera at or promptly after the Effective Time. The payment or credits will be treated as either a dividend by the Contributed Company or as an adjustment to the Cash Consideration as the parties may agree.

(c) *Assumption and Exclusion of Liabilities*.

(i) *Assumed Liabilities*. As a result of the transfer to Newco of the Contributed Stock, Newco will as a matter of law own all of the outstanding equity capital of the Contributed Companies, which Contributed Companies and their respective Contributed Subsidiaries (collectively, the "*Contributed Company Group*") in turn shall remain liable for their respective Liabilities. In addition, subject to the terms and conditions of this Agreement, Newco (or a subsidiary of Newco designated by Newco and acceptable to SCO) shall, at the Effective Time, assume, and thereafter pay, perform and discharge when due those (and only those) Liabilities of the Contributing Companies and/or their direct and indirect subsidiaries (excluding the Liabilities of the Contributed Company Group, which are governed by the first sentence of this Section 1.4(c)(i)) that are expressly listed in the following subparagraphs of this Section 1.4(c)(i) (collectively, the "*Assumed Liabilities*") and no other Liabilities of the Contributing Companies whatsoever:

(A) all Liabilities of the Contributing Companies under all Contributed Contracts;

(B) all Liabilities of the Contributing Companies that are included in the Closing Group Account or that are listed on Exhibit 1.4(c)(i)(B) attached hereto; and

(C) those Tax liabilities for which Newco is responsible pursuant to Section 12 below.

(ii) *Excluded Liabilities Not Assumed*. Except for the Liabilities of the Contributed Company Group (which will remain the sole responsibility of the applicable member of the Contributed Company Group) and except for the Assumed Liabilities expressly described above in Section 1.4(c), Newco shall not assume, pay, perform or discharge, or otherwise have any obligation, responsibility or liability whatsoever for, any and all Liabilities of SCO or its direct and indirect subsidiaries (whether now existing or hereafter arising), and said companies shall retain, and shall be solely responsible and liable for paying, performing and discharging when due, all such Liabilities (collectively, the "*Excluded Liabilities*").

(iii) *Intercompany Accounts*. One or more Contributed Companies is likely to owe intercompany debt to SCO. The amount of any such intercompany debt remaining after payment by Newco to SCO of any Net Cash Equivalents will be treated as an Excluded Liability and will be cancelled by SCO.

(d) *Asset Contribution*. The SCO will, and will cause each of the other Contributing Companies to, take all actions and sign and deliver any and all instruments and documents (including Bills of Transfer for each relevant jurisdiction) reasonably necessary or appropriate to fully effect and perfect the transfer to Newco of any and all of the Contributed Stock and Contributed Assets held by either of them and any Contributed Contracts to which they are a party.

(e) *Unassignable Assets*. Notwithstanding any other provision of this Agreement or any of the Ancillary Agreements, to the extent that any of the Contributed Assets are not assignable or otherwise transferable by the Contributing Companies to Newco without the consent, approval or waiver of another party thereto or any third party (including any governmental agency), or if such assignment or transfer would constitute a breach thereof or of any other material contract binding upon the transferor or any of its Affiliates, or a violation of any applicable law, then neither this Agreement nor such Ancillary Agreements shall constitute an assignment or transfer (or an attempted assignment or transfer) thereof until such consent, approval or waiver of such party or parties has been duly obtained.

With respect to each such Contributed Asset whose assignment or transfer to Newco requires the consent, approval or waiver of another party thereto or any third party, Newco and SCO shall cooperate and use their mutual reasonable, commercial efforts to obtain such consent, approval or waiver of such other party or parties or such third party to such assignment or transfer as promptly as practicable prior to the Effective Time; and each agrees to supply relevant information to such party or parties or such third party in order to facilitate such objective. Notwithstanding the foregoing, nothing contained herein shall obligate Newco or any Contributing Company to expend or pay any amount to third parties to obtain any consents, approvals or waivers, or to make alternative arrangements available; provided that where the Contributing Companies are unable to effectively assign or otherwise transfer to Newco nor any Contributed Asset without constituting a breach due to such lack of third party consent, the Contributing Companies shall make available to Newco the net economic benefits (such as inbound royalty payments, net of actual costs), if any, received by the Contributing Companies from and after the Effective Time with respect to any such Contributed Asset.

(f) *No Fraudulent Conveyance*. The Contributing Companies are not entering into this Agreement or any Ancillary Agreement with the intent to defraud, delay or hinder their respective creditors and the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements referenced in this Agreement will not have any such effect. Except for the Assumed Liabilities, the transfer of the Contributed Stock and Contributed Assets pursuant hereto will not give rise to any right of any creditor of the Contributing Companies to assert any claim whatsoever against Newco or any of the Contributed Stock and Contributed Assets in the hands of Newco or any of Newco's respective successors and assigns following the Effective Time which would have a Material Adverse Effect on Newco. SCO and its consolidated subsidiaries, taken as a group, are Solvent, and will continue to be Solvent immediately following the transfer of the Contributed Stock and Contributed Assets pursuant to this Agreement. Neither SCO nor any of its consolidated subsidiaries nor any of the Contributed Stock and Contributed Assets is subject to, or the subject of, any Insolvency Proceeding or Insolvency Action. No writ of attachment, execution or similar process has been ordered, executed or filed against any of the Contributed Stock and Contributed Assets. There is not any reason to expect that any of the aforementioned actions, or any similar action, will take place or be taken, and there are no grounds for any of the aforementioned actions or like action. The parties agree that the securities issued by Newco to SCO and the Optionees and the other obligations on Newco's part to be performed under the terms of this Agreement and the Ancillary Agreements constitute full and fair equivalent consideration for the Contributed Stock and Contributing Assets exchanged therefor and the covenants, agreements and performances of the Contributing Companies under this Agreement and the Ancillary Agreements.

1.5 *Closing Matters*. Unless this Agreement has been terminated as provided in Section 8 below, the closing of the transactions contemplated by this Agreement (the "*Closing*") (i) will take place at the offices of Brobeck, Phleger & Harrison LLP at Two Embarcadero Place, 2200 Geng Road, Palo Alto, California 94303 on a date (the "*Closing Date*") and at a time to be mutually agreed upon by the parties, which date shall be as soon as practicable after the Caldera Stockholders Meeting and SCO Stockholders Meeting and, in any event, no later than the third business day after all conditions to Closing set forth herein shall have been satisfied or waived, unless another place, time and date is mutually selected by SCO and Caldera and (ii) will take place concurrently with the Effective Time.

1.6 *Dissenter's Rights*. It shall be the sole responsibility of SCO to disclose any dissenter's rights which SCO stockholders have with respect to the SCO Transaction; these rights shall be disclosed to Caldera in writing no later than the date of filing the Proxy/Prospectus.

1.7 *Newco Plans*. Newco shall assume, effective as of the Closing, the Caldera Plans, Caldera Stock Purchase Plan and non-plan grants and awards, as amended through the Effective Time (collectively, the "*Newco Plans*"). Newco shall also reserve a sufficient number of shares of Newco Common Stock for issuance pursuant to the SCO Options assumed by Newco pursuant to Section 1.3(a)(ii) herein.

1.8 *Registration on Form S-8*. Newco will cause the Newco Common Stock issuable upon exercise of outstanding awards under the Newco Plans or upon exercise of the SCO Options assumed by Newco (collectively, the "*Stock Rights*") and the shares reserved for

issuance pursuant to future awards under the Newco Plans to be registered on Form S-8 (the "*Form S-8*") promulgated by the SEC prior to, but in no event later than, 10 days after the Effective Time and Newco will use its reasonable best efforts to maintain the effectiveness of such registration statement or registration statements for so long as any such Stock Rights shall remain outstanding.

1.9   Effects of the Caldera Merger.  At the Effective Time: (a) the separate existence of Merger Sub will cease and Merger Sub will be merged with and into Caldera, with Caldera being the surviving corporation of the Merger (the "*Caldera Surviving Corporation*") pursuant to the terms of this Agreement and the Certificate of Merger; (b) the Certificate of Incorporation of the Caldera Surviving Corporation shall be in the form attached as Exhibit A-1 to the Certificate of Merger; (c) the Bylaws of Caldera immediately prior to the Effective Time will be the Bylaws of the Caldera Surviving Corporation; (d) the directors and officers of Caldera immediately prior to the Effective Time will be the directors and officers of the Caldera Surviving Corporation; (e) each share of the Common Stock of Merger Sub outstanding immediately prior to the Effective Time will be converted into one share of Common Stock of the Caldera Surviving Corporation; (f) each share of Caldera Common Stock, each Caldera Option, and each Caldera Stock Purchase Plan Right outstanding immediately prior to the Effective Time will be converted, as provided above in this Section 1.2(b).  The Merger will, from and after the Effective Time, have all of the effects provided by applicable law, including, without limitation, the Delaware Law.

1.10   Tax-Free Reorganization.  The parties adopt this Agreement (to the extent it relates to the Merger) as a plan of reorganization and intend the Merger to be a tax-free reorganization under Section 368(a)(1)(A) of the Internal Revenue Code by virtue of the provisions of Section 368(a)(2)(E) of the Internal Revenue Code.  The Newco Common Stock issued in the Merger will be issued solely in exchange for the Caldera Common Stock, and no other transaction other than the Merger represents, provides for or is intended to be an adjustment to the consideration paid for the Caldera Common Stock.  No consideration that could constitute "other property" within the meaning of Section 356(b) of the Internal Revenue Code is being transferred by Newco for the Caldera Common Stock in the Merger.  The parties shall not take a position on any tax return inconsistent with this Section 1.10.  In addition, Newco hereby represents, and will represent as of the Effective Time, that it intends to continue Caldera's historic businesses or use a significant portion of Caldera's business assets in a trade or business.  None of the parties shall cause a transaction, without offsetting compensation to the other party, that would result in income to SCO under the Subpart F provisions of the Internal Revenue Code.

1.11   Tax-Free Section 351 Transaction.  The contribution and transfer of the Contributed Stock and Contributed Assets to Newco in exchange for Newco Common Stock, together with the Merger, are intended to constitute an exchange within the meaning of Section 351 of the Internal Revenue Code.  The Newco Common Stock issued to SCO therein will be issued solely in exchange for the Contributed Stock and Contributed Assets transferred in the SCO Transaction and no consideration (other than the cash consideration) that could constitute other property within the meaning of Internal Revenue Code Section 351(b) is being transferred by Newco to SCO.  The parties shall not take a position on any tax return inconsistent with this Section 1.11.

CONFIDENTIAL                                                          SCO1269033

1.12 **HSR Filings.** Caldera, SCO and Newco will as promptly as practicable prepare and file the applicable notices and forms (if any) required to be filed by them under the HSR Act or comparable laws of non-U.S. governmental entities, and comply promptly with any appropriate requests from the Federal Trade Commission, the United States Department of Justice or any other Governmental Antitrust Authority for additional information and documentary material. The parties hereto will not take any action that will have the effect of delaying, impairing or impeding the termination of any waiting period or the receipt of any required approvals of a Government Antitrust Authority. Without limiting the generality of the parties' undertakings pursuant to this Section 1.12, the parties shall use their reasonable best efforts to prevent the entry in a judicial or administrative proceeding brought under any antitrust law by any Governmental Antitrust Authority or any other party of any permanent or preliminary injunction or other order that would make consummation of the SCO Transaction or the Merger in accordance with the terms of this Agreement unlawful under appropriate anti-trust laws or that would prevent or delay such consummation as a consequence of such laws. Each party hereto shall promptly inform the other of any material communication between such party and the Federal Trade Commission, the Department of Justice or any other Governmental Antitrust Authority regarding any of the transactions contemplated hereby. If any party or any Affiliate of such party receives a request for additional information or for documents or any material from any such Governmental Antitrust Authority with respect to the transactions contemplated hereby, then such party shall endeavor in good faith to make or cause to be made, as soon as reasonably practicable and after consultation with the other parties, an appropriate response in compliance with such request. Further, no written materials shall be submitted by any party to the Federal Trade Commission, the Department of Justice or any other Governmental Antitrust Authority in connection with HSR Act compliance or the merger control regulations of any other state or country, nor shall any oral communications be initiated with such governmental entities by any party, without prior disclosure to and coordination with the other parties and its counsel. Each party hereto will cooperate in connection with reaching any understandings, undertakings or agreements (oral or written) involving the Federal Trade Commission, the Department of Justice or any other Governmental Antitrust Authority in connection with the transactions contemplated hereby.

1.13 **Board of Directors and Officers of Newco; Newco Certificate of Incorporation and Bylaws.**

(a) **Board of Directors.** At the Effective Time, Newco will have a Board of Directors consisting of nine directors. At the Effective Time, the directors of Newco shall consist of the current Caldera directors plus Doug Michels and one other individual to be named by SCO, nominees of SCO. At the Effective Time, Ralph J. Yarro shall be the Chairman of the Board of Newco.

(b) **Officers.** At the Effective Time, the officers of Newco shall be as set forth on Exhibit 1.13(b).

(c) **Certificate of Incorporation and Bylaws.** Attached hereto as Exhibits 1.13(c)A and 1.13(c)B are the respective forms of Amended and Restated Certificate of Incorporation and Bylaws of Newco to be in effect at the Effective Time.

CONFIDENTIAL

SCO1269034

1.14    Registration on Form S-4.  The Newco Common Stock to be issued in the Merger to Caldera stockholders and the Newco Common Stock to be issued in the SCO Transaction to SCO and pursuant to the assumption of SCO Options shall be registered under the Securities Act on Form S-4.  As promptly as practicable after the date hereof, Newco, with the cooperation of Caldera and SCO, shall prepare and file with the SEC a Form S-4 registration statement (the "*Form S-4*") together with the prospectus/joint proxy statement to be included therein (the "*Prospectus/Proxy Statement*"), and any other documents required by the Securities Act or the Exchange Act in connection with the Merger and the SCO Transaction.

2.    Representations and Warranties of SCO.

Except as set forth in the respectively referenced provisions of the SCO Disclosure Letter delivered by SCO on behalf of itself and any other Contributing Companies (collectively, "*Representing SCO Entities*") to Caldera concurrently herewith and certified by an officer of SCO, on behalf of all of the Representing SCO Entities, respectively, to be true, accurate and complete to the best of his/her knowledge (the "*SCO Disclosure Letter*"), SCO on behalf of each and all of the Representing SCO Entities, hereby represents and warrants to Caldera that as of the date hereof:

2.1    Organization; Good Standing; Qualification and Power.  The Contributed Subsidiaries are all of the subsidiaries of the Contributed Companies or any of their direct or indirect subsidiaries.  Each of the Contributed Companies, and the Contributed Subsidiaries and each of the Contributing Companies is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, has all requisite corporate power and authority to own, lease and operate any and all of the Group Assets held by such company and for the conduct of the Group Business as now being conducted by such company, and is duly qualified and in good standing to do business in each jurisdiction in which the nature of its business or the ownership or leasing of its properties makes such qualification necessary, other than in such jurisdictions where the failure so to qualify would not have a Material Adverse Effect on the Group Business.  SCO has delivered to Caldera or its counsel complete and correct copies of the charter documents of the Contributed Companies and the Contributed Subsidiaries.  Except for the Contributed Subsidiaries, none of the Contributed Companies nor any of the Contributed Subsidiaries owns, directly or indirectly, any capital stock or other equity interest of any corporation or has any direct or indirect equity or ownership interest in any other business, whether organized as a corporation, partnership, joint venture or otherwise.

2.2    Capital Structure.

(a)    Stock and Options.  The authorized, issued and as of the date of July 28, 2000, the outstanding capital stock of the Contributed Companies and the Contributed Subsidiaries is set forth in Section 2.2(a) of the SCO Disclosure Letter.  Except as specified in Section 2.2(a) of the SCO Disclosure Letter, no shares of the capital stock of the Contributed Companies or of any of the Contributed Subsidiaries are held by any of them in its treasury or reserved for issuance upon the exercise of options or warrants.  Except as specified in Section 2.2(a) of the SCO Disclosure Letter, all outstanding shares of the capital stock of the Contributed Companies on July 28, 2000 are set forth in Section 2.2(a) of the SCO Disclosure Letter and are validly issued, fully paid and nonassessable and free and clear of any

CONFIDENTIAL

SCO1269035

Encumbrances and not subject to preemptive rights under any statute, pursuant to the Certificate of Incorporation or Bylaws or Memorandum and Articles of Incorporation (or similar governing documents in each relevant jurisdiction) of the Contributed Companies, or pursuant to any agreement or document to which any of them is a party or by which any of them is bound. All outstanding shares of the capital stock of each of the Contributed Subsidiaries are validly issued, fully paid and nonassessable and are owned by a Contributed Company, or one of the Contributed Subsidiaries, free and clear of any Encumbrances. SCO has provided Caldera with a correct and complete list of each of the SCO Options as of July 28, 2000, including the name of the Optionees, the plan pursuant to which such SCO Options were issued (if applicable), the number of shares covered by such SCO Options, the per share exercise price of such SCO Options, and the vesting schedule applicable to such SCO Options, including the number of shares vested as of such date and will provide a final list of such information on the Closing Date. All the outstanding SCO Options have been issued in compliance with all applicable federal and state securities laws. Doug Michels owns and has the right to vote shares representing approximately 10% of the capital stock of SCO as of the date of this Agreement.

(b) No Other Commitments. Except as set forth in Section 2.2(b) of the SCO Disclosure Letter there are no options, warrants, calls, rights, commitments, conversion rights or agreements of any character to which the Contributed Companies is a party or by which any of them is bound obligating them to issue, deliver or sell, or cause to be issued, delivered or sold, any shares of its capital stock, or securities convertible into or exchangeable for shares of its capital stock, or obligating any of them to grant, extend or enter into any such option, warrant, call, right, commitment, conversion right or agreement. There is no voting trust, proxy or other agreement or understanding to which SCO or any of its respective direct or indirect subsidiaries is a party with respect to the voting of the capital stock of any member of the Contributed Company Group. All shares of capital stock of any member of the Contributed Company Group are held free and clear of any Encumbrances.

(c) Registration Rights. Neither the Contributed Companies nor the Contributing Companies is under any obligation to register under the Securities Act (or equivalent or similar legislation in each relevant jurisdiction) any of the presently outstanding securities of the Contributed Companies or any securities of the Contributed Companies that may be subsequently issued.

(d) Caldera Ownership. Except as set forth in Section 2.2(d) of the SCO Disclosure Letter, none of SCO or any of its direct or indirect subsidiaries owns, or will own immediately prior to the Effective Time, any Caldera Common Stock.

2.3    Authority.

(a) Corporate Action. Subject to approval of this Agreement and the Ancillary Agreements by SCO's stockholders, SCO and each of the Contributing Companies have all requisite corporate power and authority to enter into this Agreement and the Ancillary Agreements, to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated by this Agreement and the Ancillary Agreements. The Board of Directors of SCO has, as of the date of this Agreement, unanimously (i) approved and declared advisable this Agreement and the Ancillary Agreements and has approved the SCO Transaction

and the other transactions contemplated hereby, (ii) determined that the SCO Transaction is consistent with and in furtherance of the long-term business strategy of SCO and fair to, and in the best interests of, SCO and its stockholders and (iii) determined to recommend that the stockholders of SCO adopt and approve this Agreement and approve the SCO Transaction. Prior to the Effective Time, this Agreement and the Ancillary Agreements will be approved by the Board of Directors of each of the other Contributing Companies. This Agreement has been and, prior to the Effective Time, the Ancillary Agreements will be, duly executed and delivered by the Contributing Company party to such agreement. Subject to receiving such stockholder approval, this Agreement is, or, in the case of each of the Ancillary Agreements will be, a valid and binding obligation of the Contributing Company party to such agreement, each enforceable against the Contributing Company party to such agreement in accordance with its terms, except as enforceability may be limited by bankruptcy and other similar laws and general principles of equity.

(b) <u>No Conflict</u>. Neither the execution, delivery and performance of this Agreement and the Ancillary Agreements nor the consummation of the transactions contemplated hereby or thereby, nor compliance with the provisions hereof, will (i) conflict with, or result in any violations of, or cause a default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, amendment, cancellation or acceleration of any obligation contained in, or the loss of any material benefit under, or result in the creation of any Encumbrance upon any of the Group Assets or Contributed Stock under, any term, condition or provision of (x) the Certificate of Incorporation or Bylaws or equivalent organizational documents of any of the Contributing Companies or the Contributed Companies or any of the Contributed Subsidiaries or (y) any of the Contributed Contracts or any other loan or credit agreement, note, bond, mortgage, indenture, lease or other material agreement, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to the Contributed Companies, the Contributed Companies' Property, the Contributed Stock or the Contributed Assets, other than any such conflicts, violations, defaults, rights or Encumbrances which, individually or in the aggregate, would not have a Material Adverse Effect on the Group Business; or (ii) require the affirmative vote of the holders of greater than a majority of the issued and outstanding capital stock of any member of the Contributing Companies or any member of the Contributed Company Group.

(c) <u>Governmental Consents</u>. Except (i) as set forth in <u>Section 2.3(c)</u> of the SCO Disclosure Letter; (ii) such filings, authorizations, orders and approvals as may be required under state takeover laws; (iii) such filings and notifications as may be necessary under the HSR Act; (iv) the filings, authorizations, orders, notifications, and approvals contemplated by this Agreement or the Ancillary Agreements; and (v) such other governmental or third party consents, filings, authorizations, orders and approvals which, if not obtained or made, would not have a Material Adverse Effect on Newco or have a material adverse effect on the ability of the Contributing Companies to consummate the transactions contemplated by this Agreement or the Ancillary Agreements, no consent, approval, order or authorization of, or registration, declaration or filing with, any governmental entity is required to be obtained by the Contributing Companies or any member of the Contributed Company Group in connection with the execution and delivery of this Agreement or the Ancillary Agreements by SCO or the performance of the Contributing Companies and the Contributed Companies of the respective obligations herein pertaining to such company.