2.4   SEC Documents.

(a) SEC Reports. SCO has delivered to Caldera or its counsel correct and complete copies of the final version of each report, schedule, registration statement and definitive proxy statement filed by SCO with the SEC on or after July 1, 1995 with respect to the Group Business or the Group Assets (the "*SCO SEC Documents*"), which are the material documents (other than preliminary proxy material) that SCO was required to file with the SEC on or after July 1, 1995 with respect to the Group Business or the Group Assets. As of their respective dates or, in the case of registration statements, their effective dates, none of the SCO SEC Documents (including all exhibits and schedules thereto and documents incorporated by reference therein) contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading as of such time of filing, and there is no requirement under the Securities Act or the Exchange Act, as the case may be, to have amended any such filing, except for such requirements as were fulfilled by the filing of such SCO SEC Documents, the SCO SEC Documents complied, when filed, in all material respects with the then applicable requirements of the Securities Act or the Exchange Act, as the case may be, and the rules and regulations promulgated by the SEC thereunder, and SCO has filed in all material respects all documents and agreements that were required to be filed as exhibits to the SCO SEC Documents.

(b) SCO Financial Statements; Absence of Undisclosed Liabilities. The audited consolidated financial statements dated as of and for the period ending September 30, 1999 and the unaudited consolidated financial statements dated as of and for the period ending June 30, 2000 of SCO and its consolidated subsidiaries (the "*SCO Consolidated Financial Statements*") complied as to form in all material respects with the then applicable accounting requirements and the published rules and regulations of the SEC with respect thereto, were prepared in accordance with GAAP applied on a consistent basis during the periods involved (except as may have been indicated in the notes thereto) and fairly present (subject, in the case of the unaudited statements, to normal year-end audit adjustments) the consolidated financial position of SCO and its respective consolidated subsidiaries as at the respective dates thereof and the consolidated results of its operations and cash flows for the respective periods then ended. SCO has no liabilities or obligations of any nature (matured or unmatured, fixed or contingent) which are, individually or in the aggregate, of a nature required to be disclosed on the face of a consolidated balance sheet for SCO and its consolidated subsidiaries prepared in accordance with GAAP and which would have a Material Adverse Effect on the Group Business, except for such liabilities or obligations as (i) were accrued or provided for in the consolidated balance sheet at June 30, 2000 included in the SCO Consolidated Financial Statements as of the date thereof (the "*SCO Consolidated Financial Statements Balance Sheet Date*") or (ii) are of a normally recurring nature and were incurred after the SCO Consolidated Financial Statements Balance Sheet Date in the ordinary course of business consistent with past practice. All liabilities and valuation accounts established and reflected in the SCO Consolidated Financial Statements are, to SCO's Knowledge, reasonably adequate. At the SCO Consolidated Financial Statements Balance Sheet Date, there were no material loss contingencies arising from the conduct of the business of SCO and its consolidated subsidiaries which are required to be provided for or disclosed, but are not provided for or disclosed, in the SCO Consolidated Financial Statements.

CONFIDENTIAL                                                    SCO1269038

Dockets.Justia.com

(c) <u>Group Financial Statements; Absence of Undisclosed Liabilities</u>. Attached as <u>Schedule 2.4(c)(1)</u> to the SCO Disclosure Letter are the audited combined financial statements of the Group Business dated as of and for the period ended June 30, 2000 including a combined balance sheets as of June 30, 2000 (the "*2000 Group Balance Sheet*") and a combined balance sheet for September 30, 1999 and 1998, together with combined statements of operations, cash flows, and Group Business equity for the two years and nine months in the period ended September 30, 1999 (collectively the "*Group Financial Statements*"). The Group Financial Statements comply in all material respects with the then applicable accounting requirements and rules and regulations of the SEC with respect thereto, and present fairly, in all material respects, the combined financial position of the Group Business as of September 30, 1999 and June 30, 2000, and the combined results of its operations and its cash flows for each of the two years and nine months in the period ended September 30, 1999, in conformity with GAAP. The Contributed Company Group and the Contributing Companies (with respect to the Group Business) have no Liabilities of any nature (matured or unmatured, fixed or contingent) which (i) are related to or arose in connection with the Group Business; (ii) individually or in the aggregate, are of a nature required to be recorded on the face of or disclosed in the notes to the Group Financial Statements; and (iii) are material to the Group Business taken as a whole, except for such Liabilities as (A) were accrued, provided for or disclosed in the Group Financial Statements or (B) are of a normally recurring nature and were incurred after June 30, 2000 (the "*Group Financial Statements Balance Sheet Date*"), in the ordinary course of business consistent with past practice. All liabilities and valuation accounts established and reflected in the Group Financial Statements are, to SCO's Knowledge, reasonably adequate. To SCO's Knowledge, at the Group Financial Statements Balance Sheet Date, there were no material loss contingencies which are not properly provided for or disclosed in the Group Financial Statements.

2.5 <u>Disclosure; Information Supplied</u>. No representation or warranty made by SCO in this Agreement, nor any final financial statement, certificate or exhibit prepared and furnished or to be prepared and furnished by it, or its representatives pursuant hereto or in connection with the transactions contemplated hereby, contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements or facts contained herein or therein, taken as a whole, not misleading in light of the circumstances under which they were furnished. None of the information supplied or to be supplied by SCO for inclusion or incorporation by reference in the Form S-4 and Prospectus/Proxy Statement will, at the time the information is supplied contain, after giving effect to any supplement or amendment thereto, any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein in light of the circumstances under which they are made, not materially misleading.

2.6 <u>Compliance with Applicable Laws</u>. Except as disclosed in the SCO SEC Documents filed prior to the date hereof, the Group Business is not being conducted and no Contributed Company is in violation of any law, ordinance, regulation, rule or order of any governmental entity where such violation would have a Material Adverse Effect on the Group Business. Except as disclosed in the SCO SEC Documents filed prior to the date hereof, neither SCO, any Contributing Company, nor any member of the Contributed Company Group has been notified in writing by any governmental entity that any investigation or review with respect to the Contributed Companies or any of the Contributed Subsidiaries, any of the Group Assets or the Group Business is pending or threatened, nor has any governmental entity notified any of

them in writing of its intention to conduct the same. The Group Assets include all permits, licenses and franchises from governmental entities required for the Conduct of the Group Business, except for those whose absence would not have a Material Adverse Effect on the Group Business and those which would terminate as a consequence of the SCO Transaction.

2.7    Litigation. Except as would not reasonably be expected to have a Material Adverse Effect on the Group Business or as set forth in Section 2.7 of the SCO Disclosure Letter or as disclosed in the SCO SEC Documents, there is no suit, action, arbitration, demand, investigation, claim or proceeding pending or, to SCO's Knowledge, threatened against the Contributed Company Group, any of the Contributing Companies or the Group Assets, nor is there any judgment, decree, injunction, ruling or order of any governmental entity, statutory body or arbitrator or settlement or compromise agreement outstanding against the Contributed Company Group or any of the Contributing Companies or the Group Assets. SCO has delivered or made available to Caldera or its counsel correct and complete copies of all material correspondence prepared by its counsel for SCO auditors in connection with the last two completed audits of SCO's Financial Statements and the audit of the Group Financial Statements and any such correspondence since the date of the last such audit. No member of the Contributed Company Group and none of the Contributing Companies is a party to any decree, judgment, order or arbitration award (or agreement entered into in any administrative, judicial, investigative or arbitration proceeding with any governmental authority) with respect to the Group Assets, Employees, or Group Business that could reasonably be expected to have a Material Adverse Effect on the Group Business. Except for violations as would not have a Material Adverse Effect on the Group Business, none of the Contributing Companies nor any member of the Contributed Company Group is in violation of any decree, judgement, order or arbitration award that names such company, or any of such companies, as a party or that otherwise, to SCO's Knowledge, involves such company or any of the Group Assets, or in violation of any law, ordinance, statute, regulation or EU directive or decree, order, judgment or ruling of any governmental authority to which the Group Assets or the Contributed Stock are subject, including, without limitation, laws, rules and regulations relating to occupational health and safety, equal employment opportunities, fair employment practices, and sex, race, religious, disability and age discrimination. To SCO's Knowledge, there is no claim, action, suit, arbitration, mediation, investigation or other proceeding of any nature pending or threatened, at law or in equity, by way of arbitration or before any court, tribunal, governmental department, statutory body, commission, board or agency that: (i) may adversely affect, contest or challenge any party's authority, right or ability to perform its obligations under this Agreement or any of the Ancillary Agreements; (ii) challenges or contests the Contributing Companies' or the Contributed Companies' right, title or ownership of any of the Group Assets or the Contributed Stock or seeks to impose an Encumbrance (other than a Group Permitted Encumbrance) on, or a transfer of title or ownership of, any of the Group Assets or the Contributed Stock; (iii) asserts that any action taken by any employee, consultant or contractor of the Contributed Companies or Contributing Companies in connection with the Group Business infringes or misappropriates any Intellectual Property Rights of any third party; (iv) seeks to enjoin, prevent or hinder operation of the Group Business; (v) seeks to enjoin, prevent, or hinder the consummation of any of the transactions contemplated by this Agreement or any of the Ancillary Agreements; (vi) would impair or have an adverse affect on Newco's right or ability to use or exploit any of the Group Assets; (vii) involves or relates to any potentially material claim against Contributing Companies or the Group Assets by any creditor thereof; or (viii) involves any claim of fraudulent

::ODMA\PCDOCS\DENLIB1\17279\17       15

conveyance or any similar claim, except in cases (ii), (iii), (iv), (vi) and (vii) where such proceeding could not reasonably be expected to have a Material Adverse Effect on Newco.

2.8   ERISA and Other Compliance.

(a) Section 2.8 of the SCO Disclosure Letter lists each employment, severance, compensation or other similar contract, arrangement or policy and each plan or arrangement (written or oral, contractual or discretionary) providing for insurance coverage (including any self-insured arrangements), workers' benefits, vacation benefits, severance benefits, disability or permanent health insurance benefits, death benefits, hospitalization or other medical benefits, retirement benefits, deferred compensation, profit-sharing, bonuses, commissions, stock options, stock purchase, phantom stock, stock appreciation, save as you earn or other forms of incentive compensation or post-retirement insurance, compensation or benefits for employees, consultants or directors (other than workers compensation, unemployment compensation and other government mandated programs) which both (A) is entered into, maintained or contributed to, as the case may be, by any member of the Contributed Company Group or any of the Contributing Companies, and (B) covers any Employee (collectively as the "*Group Benefit Arrangements*"). Each Group Benefit Arrangement maintained by any member of the Contributed Company Group has been maintained in compliance with its terms and with the requirements prescribed by any and all statutes, orders, rules and regulations which are applicable to such Group Benefit Arrangement except as would not have a Material Adverse Effect on the Group Business. Section 2.8(a) of the SCO Disclosure Letter also identifies each "employee benefit plan," as defined in Section 3(3) of ERISA ("*Employee Benefit Plan*"), in which any of the Employees participate (collectively, the "*Group Employee Plans*"). Copies of all Group Benefit Arrangements have been made available to Caldera or its counsel. All contributions or premiums currently due and payable with respect to any of the Group Employee Plans have been made as required under ERISA or have been accrued on the 2000 Group Balance Sheet or will be made prior to the Effective Time. Any Contributed Company Employee Plan intended to be qualified under Section 401(a) of the Code has either obtained from the Internal Revenue Service a favorable determination letter as to its qualified status under the Code, including all amendments to the Code effected by the Tax Reform Act of 1986, or has applied to the Internal Revenue Service for such a determination letter prior to the expiration of the requisite period under applicable Treasury Regulations or Internal Revenue Service pronouncements in which to apply for such determination letter and to make any amendments necessary to obtain a favorable determination or has been established under a standardized prototype plan for which an Internal Revenue Service opinion letter has been obtained by the plan sponsor and is valid as to the adopting employer. Each Contributed Company has made available upon Newco's request the most recent Internal Revenue Service determination or opinion letter issued with respect to each such Contributed Company Employee Plan, and nothing has occurred since the issuance of each such letter which could reasonably be expected to cause the loss of the tax-qualified status of any Contributed Company Employee Plan subject to Code Section 401(a).

(b) None of the Group Employee Plans maintained by any of the Contributing Companies or any member of the Contributed Company Group (i) is a multiemployer plan, within the meaning of Section 3(37) or 4001(a)(3) of ERISA (a "*Multiemployer Plan*"), or a single employer pension plan, within the meaning of

Section 4001(a)(15) of ERISA, for which Newco could incur liability under Section 4063 or 4064 of ERISA (a "*Multiple Employer Plan*"), or (ii) provides or promises to provide retiree medical or life insurance benefits except in connection with (a) benefit coverage mandated by applicable law, including without limitation, coverage provided pursuant to Section 4980B of the Code; (b) death or disability benefits under any of the Group Benefit Arrangements; (c) benefits arising in connection with a separation or severance program, plan or arrangement; and (d) life insurance benefits for any employee who dies while in service with any of the Contributing Companies or any member of the Contributed Company Group. None of the Contributing Companies or any member of the Contributed Company Group has incurred or will incur prior to or as of the Effective Time any material liability under, arising out of or by operation of Title IV of ERISA (other than liability for premiums to the Pension Benefit Guaranty Corporation arising in the ordinary course), including any liability in connection with (i) the termination or reorganization of any employee pension benefit plan subject to Title IV of ERISA or (ii) with withdrawal from any Multiemployer Plan or Multiple Employer Plan.

(c) The appropriate Contributing Company or Contributed Company has timely provided, or will have provided prior to the Effective Time, to Employees entitled thereto all required notices and made coverage available pursuant to Section 4980B of the Internal Revenue Code and the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("*COBRA*"), with respect to any "qualifying event" (as defined in Section 4980B(f)(3) of the Internal Revenue Code). The appropriate Contributing Company or Contributed Company will timely provide to Employees entitled thereto all required notices and make coverage available pursuant to Internal Revenue Code Section 4980B and COBRA with respect to any "qualifying event" (as defined in Section 4980B(f)(3) of the Internal Revenue Code) occurring prior to and including the Effective Time. No material Tax payable on account of Section 4980B of the Internal Revenue Code has been incurred by the Contributing Companies or any of the Contributed Companies with respect to any current Employees (or its beneficiaries).

(d) The consummation of the transactions contemplated by this Agreement will not (i) entitle any current or former employee or other service provider of the Contributed Companies or the Contributing Companies to severance benefits or any other payment or (ii) accelerate the time of payment or vesting (including any SCO Option or unvested shares of SCO Common Stock), or increase the amount of compensation due any such employee or other service provider. No payment or benefit payable or which may become payable by any of the Contributed Companies or by any of the Contributing Companies with respect to any current or former employee, or other current or former service provider shall constitute a "parachute payment" (as defined in Section 280G(b)(2) of the Internal Revenue Code). Within five (5) business days following the date of this Agreement, SCO shall identify in Section 2.8 of the SCO Disclosure Letter all persons on the Section 11.1 Schedule who SCO reasonably believes are, as of the date of this Agreement, "disqualified individuals" (within the meaning of Section 280G of the Code and the regulations promulgated thereunder) with respect to the Contributing Companies or the Contributed Companies. Within five (5) business days prior to the expected Closing Date, SCO shall revise Section 2.8 of the SCO Disclosure Letter to reflect any additional information which SCO reasonably believes would impact the determination of persons who are of such date "disqualified individuals" (within the meaning of Section 280G of the Code and the regulations promulgated thereunder).

CONFIDENTIAL                                          SCO1269042

(e) To SCO's Knowledge, no Employee who is a key developer of a Group Product is subject to any agreement, obligation, order or other legal hindrance that impedes or might impede such Employee from devoting his or her full business time to the affairs of Newco after the Effective Time.

(f) None of the Contributed Companies are indebted to any executive officer or director of any such Contributed Company, whether by loan, advance or otherwise, other than for salaries accrued but not yet payable and reimbursable out-of-pocket expenses incurred in the ordinary course of business consistent with past practice and not yet payable, nor, except as described in Section 2.8(f) to the SCO Disclosure Letter or except as disclosed in the 2000 Group Balance Sheet or the SCO SEC Documents, is any officer, director, employee or shareholder so indebted to any of SCO or any of the Contributed Companies, nor does any Employee have any right to force SCO or any Contributing Company to repurchase any stock.

(g) The Contributed Company Group and the Contributing Companies are in compliance in all material respects with all currently applicable laws and regulations, domestic or foreign, respecting employment, discrimination in employment, terms and conditions of employment, wages, hours, governmental and administrative contribution requirements and occupational safety and health and employment practices, and is not engaged in any unfair labor practice with respect to the Employees in each of the countries where the Contributed Company Group and the Contributing Companies have employees. The Contributed Company Group and the Contributing Companies have withheld all amounts required by law or by agreement to be withheld from the wages, salaries, and other payments to Employees; and is not liable for any arrears of wages or any taxes or any penalty for failure to comply with any of the foregoing. The Contributing Company Group and the Contributing Companies are not liable for any payment to any trust or other fund or to any governmental or administrative authority, with respect to unemployment compensation benefits, social security or other benefits or obligations for Employees (other than routine payments to be made in the normal course of business and consistent with past practice). There are no pending claims against the Contributed Company Group and the Contributing Companies under any workers compensation plan, policy, statute or regulation or any other plan or policy to which the Contributed Company Group and/or any Contributing Company are parties or for long term disability. There are no controversies or disputes pending or, to the knowledge of the Contributed Company Group and the Contributing Companies, threatened, between the Contributed Company Group and the Contributing Companies and any of their respective employees, which controversies have or could reasonably be expected to result in an action, suit, proceeding, claim, arbitration or investigation before any agency, court or tribunal, foreign or domestic. None of the Contributed Company Group or the Contributing Companies is a party to any collective bargaining agreement or other labor union contract nor does the Contributed Company Group and the Contributing Companies know of any activities or proceedings of any labor union to organize any such Employees. To SCO's knowledge, no Employees of the Contributed Company Group and the Contributing Companies are in violation of any term of any employment contract, patent disclosure agreement, enforceable noncompetition agreement, or any enforceable restrictive covenant to a former employer relating to the right of any such Employee to be employed by SCO because of the nature of the business conducted or presently proposed to be conducted by SCO or to the use of trade secrets or proprietary information of others.

(h)     Section 2.8(h) of the SCO Disclosure Letter lists, with respect to any member of the Contributed Company Group or any of the Contributing Companies, all employee benefit plans, programs or arrangements for employees who work outside the United States ("*Foreign Employee Plans*"). Except as disclosed in Section 2.8(h) of the SCO Disclosure Letter, no member of the Contributed Company Group or any of the Contributing Companies maintains any Foreign Employee Plans other than those required by applicable law. SCO has furnished or made available to Caldera a copy of each of the Foreign Employee Plans. Each Foreign Employee Plan has been operated and administered in accordance with its terms and applicable laws, rules and regulations.

2.9     Absence of Certain Changes or Events. Except as disclosed in Section 2.9 of the SCO Disclosure Letter, since the Group Financial Statements Balance Sheet Date there has not occurred:

(a) any change or event which could reasonably be expected to have a Material Adverse Effect on the Group Business;

(b) any amendments or changes in the Certificate of Incorporation or Bylaws (or similar or equivalent governing documents on each relevant jurisdiction) of any member of the Contributed Company Group;

(c) any damage, destruction or loss to or of the Group Assets not covered by insurance, which would have a Material Adverse Effect on the Group Business;

(d) any redemption, repurchase or other acquisition of shares of any member of the Contributed Company Group, or any declaration, setting aside or payment of any dividend or other distribution by any Contributing Company or any member of the Contributed Company Group to any entity other than a member of the Contributed Company Group (whether in cash, stock or property) of the Group Assets or any proceeds generated by the conduct of the Group Business;

(e) any material increase in or modification of the compensation or benefits payable, or to become payable, by the Contributed Companies to the Employees, except in the ordinary course of the business, consistent with past practice or except as necessary to respond to third party solicitation of Employees,

(f) other than as required by applicable statute or governmental regulation, any material increase in or modification of any Group Benefit Arrangement (including, but not limited to, the granting of stock options, the acceleration of the vesting schedules in effect for outstanding stock options, restricted stock awards or stock appreciation rights) that will become binding upon Newco upon consummation of the transactions contemplated herein, for or with respect to any of the Employees, other than increases or modifications occurring after the date hereof, which are authorized pursuant to Section 4.3 below;

(g) any sale of a material amount of the Group Assets, or any acquisition by any member of the Contributed Company Group of a material amount of assets;

CONFIDENTIAL                                                                              SCO1269044

(h) any stock/share capital being allotted or issued or agreed to be allotted or issued or any alteration in any term of any outstanding capital stock or rights to acquire capital stock, share or loan capital of any member of the Contributed Company Group, including, but not limited to, acceleration of the vesting or any change in the terms of any outstanding stock options;

(i) (A) any incurrence, assumption or guarantee by any member of the Contributed Company Group of any debt of any person, other than any member of the Contributed Company Group, for borrowed money in an amount exceeding $250,000 in the aggregate; (B) issuance or sale by any member of the Contributed Company Group of any securities convertible into or exchangeable for their respective debt securities; or (C) issuance or sale of options or other rights to acquire from SCO or the Contributed Company Group, directly or indirectly, debt securities of any member of the Contributed Company Group, or any securities convertible into or exchangeable for any such debt securities;

(j) any creation or assumption by a Contributing Company or a member of the Contributed Company Group of any Encumbrance (other than Group Permitted Encumbrances) on any Group Asset in excess of $250,000 individually or in the aggregate, other than to refinance a liability reflected in the SCO Financial Statements or the Group Financial Statements in the ordinary course of business;

(k) any making by any member of the Contributed Company Group of any loan, advance or capital contribution to or investment in any person other than to refinance a liability reflected in the SCO Financial Statements or the Group Financial Statements and other than (i) loans, advances or capital contributions made in the ordinary course of the business, and (ii) other loans and advances, where the aggregate amount of any such items outstanding at any time does not exceed $250,000;

(l) any amendment of, relinquishment, termination or non-renewal by the Contributing Companies or the Contributed Company Group of any Contributed Contract, other than in the ordinary course of business consistent with past practice;

(m) any transfer or grant of a right under Intellectual Property Rights included in the Group Assets, except in the ordinary course of business, consistent with past practice,

(n) any labor dispute with, or charge of unfair labor practice by, SCO (relating to Employees) or any member of the Contributed Company Group (other than routine individual grievances), any activity or proceeding by a labor union or representative thereof to organize any Employees or, to SCO's Knowledge, any campaign being conducted to solicit authorization from Employees to be represented by such labor union, where such dispute, practice, activity, proceeding, or campaign would have a Material Adverse Effect on the Group Business;

(o) any change in accounting methods;

CONFIDENTIAL                                      SCO1269045

(p) any agreement by any member of the Contributed Company Group to take any of the actions described in the preceding clauses (a) through (o) (other than the transactions contemplated by this Agreement or the Ancillary Agreements).

2.10 *Full Force and Effect*. Each of the Contributed Contracts and Group Governmental Permits is in full force and effect and is not subject to any breach or default thereunder by any Contributing Company or any member of the Contributed Company Group or, to SCO's Knowledge, any other party thereto, except for those Contributed Contracts and Group Governmental Permits, the absence of which would not have a Material Adverse Effect on the Group Business.

2.11 *Agreements*. Section 2.11 of the SCO Disclosure Letter lists all the contracts as of the date hereof of the type described below to which any member of the Contributed Company Group is a party and which is material to the Group Business (herein, the *"Material Contributed Contracts"*) (and copies of all such Material Contributed Contracts have been identified to and made available for review by Caldera or its counsel):

(a) contract with or commitment to any labor union which would have a Material Adverse Effect on the Group Business;

(b) continuing contract for the future purchase, sale or manufacture of products, material, supplies, equipment or services requiring payment to or from any member of the Contributed Company Group or any Contributing Company, the non-continuance of which would have a Material Adverse Effect on the Group Business, or in which any member of the Contributed Company Group or any Contributing Company has granted or received manufacturing rights, most favored nations pricing provisions or exclusive marketing rights relating to the Group Products, other than purchase contracts with vendors who are not the top ten (10) vendors of any member of the Contributed Company Group or of any Contributing Companies (as measured by purchases from them in the most recently ended fiscal year);

(c) contract providing for the development of technology used or incorporated in any Group Products currently distributed in connection with the Group Business or which requires any member of the Contributed Company Group to perform specified development work for a third party, the non-continuance of which would have a Material Adverse Effect on the Group Business;

(d) joint venture contract or agreement or other agreement which is reasonably expected to involve a sharing of profits or losses in any one year in excess of $100,000 individually or in the aggregate from any joint enterprise with any party (other than any member of the Contributed Company Group);

(e) indenture, mortgage, promissory note, loan agreement, guarantee or other agreement or commitment for the borrowing of money, for a line of credit or for a leasing transaction of a type required to be capitalized (other than those reflected in the SCO Financial Statements or the Group Financial Statements, or those pursuant to which payments by any member of the Contributed Company Group will not exceed $50,000 individually or $250,000 in the aggregate);

CONFIDENTIAL                                                                   SCO1269046

(f) agreement or arrangement for the sale of any Group Assets having a value individually or in the aggregate exceeding $100,000 (other than those entered into in the ordinary course of business consistent with past practice);

(g) agreement which would restrict Newco from engaging in any material aspect of the Group Business or from selling any of the material Group Products in any material geographic area (including any agreement pursuant to which any of them has granted exclusive rights in the Group Products to a third party);

(h) SCO IP Rights Agreement (as defined in Section 2.15 below), other than agreements entered into with customers in the ordinary course of business; or

(i) agreement between or among SCO and any member of the Contributed Company Group regarding inter-company loans, revenue or cost or Tax sharing, ownership or license of SCO IP Rights for Group Products, or intercompany royalties or dividends.

2.12   No Defaults. Notwithstanding Section 1.4(c), there exists no event (including closing of the transactions contemplated by this Agreement), condition or occurrence which, after notice or lapse of time, or both, would constitute a default by the Contributing Companies who are parties thereto under any Contributed Contract in any manner which would have a Material Adverse Effect on the Group Business.

2.13   Certain Agreements. Neither the execution and delivery of this Agreement or the Ancillary Agreements, nor the consummation of the transactions contemplated hereby and thereby, will, (i) result in any payment in an amount exceeding $50,000 individually or $250,000 in the aggregate (including, without limitation, severance, unemployment compensation, golden parachute, bonus or otherwise) becoming due by any member of the Contributed Company Group (or by any Contributing Company, with respect to the Group Business) or to any Employee(s) or other current or former service provider under any Group Benefit Arrangement or otherwise, (ii) increase any benefits otherwise payable by Newco under any Group Benefit Arrangement by more than $50,000 individually or $250,000 in the aggregate, or (iii) result in the acceleration of the time of payment or vesting of any such benefits.

2.14   Taxes. SCO and each of its subsidiaries have properly completed and timely filed, or caused to be properly completed and timely filed, all Tax returns required to be filed by them and have paid, or caused to be paid, all Taxes that are shown on such Tax returns as due and payable. All Taxes of SCO and its subsidiaries for all periods through June 30, 2000, have been fully paid (except for Taxes that are adequately provided for or reflected in the SCO Consolidated Financial Statements). Since June 30, 2000, no material Tax liability has been assessed, or is, to SCO's Knowledge, proposed to be assessed, incurred or accrued (other than liabilities for Taxes arising in the ordinary course of business) against SCO or any of its subsidiaries. To SCO's Knowledge, neither SCO nor any of its subsidiaries has received any notification that any material issues have been raised (or are currently pending) by the Internal Revenue Service or any other taxing authority, including, without limitation, any sales tax authority, in connection with any of the Tax returns referred to in the first sentence of this Section 2.14, and no unexpired waivers of statutes of limitations have been given or requested

CONFIDENTIAL                                SCO1269047

with respect to Tax returns or Taxes of SCO and its consolidated subsidiaries. No taxing authority is currently conducting an audit or investigation of any of the aforesaid Tax returns or to SCO's Knowledge is about to conduct such an audit or investigation with respect to such Tax returns. Any deficiencies asserted or assessments (including interest and penalties) made as a result of any examination by the Internal Revenue Service or by appropriate national, state, provincial or departmental authorities of the Tax returns with respect to SCO and any of its subsidiaries have been paid or adequately provided for in the SCO Consolidated Financial Statements, and, to SCO's Knowledge, no proposed (but unassessed) additional Taxes have been asserted and no Tax liens have been filed against SCO or any of its subsidiaries other than for Taxes not yet due and payable. Neither SCO nor any member of the Contributed Company Group (i) has made an election to be treated as a "consenting corporation" under Section 341(f) of the Internal Revenue Code or (ii) is a "personal holding company" within the meaning of Section 542 of the Internal Revenue Code;

(b)  If any of the capital assets of the UK Contributed Companies were disposed of for a consideration equal to the book value of that asset in or adopted for the purposes of the SCO Consolidated Financial Statements, no liability to corporation tax on chargeable gains or balancing charge under the Capital Allowances Act 1990 would arise (for this purpose there shall be disregarded any relief or allowance available to the UK Contributed Companies (other than amounts falling to be deducted from the consideration receivable under section 38 of the TCGA)). No chargeable gain or balancing charge would arise on the disposal by the Contributing Company of any asset acquired since the SCO Consolidated Financial Statements Date for a consideration equal to the consideration actually given for the acquisition of such asset (disregarding any indexation relief);

(c)  The UK Contributed Companies have not entered into any transaction, contract or arrangement, whether verbal or written and whether made within or outside the UK, under which it has or may become liable to pay or to account for stamp duty or stamp duty reserve tax and which liability remains unsatisfied;

(d)  The UK Contributed Companies have not entered into any indemnity, guarantee, covenant, charge or other agreement under which they have agreed to, or can be procured to pay a sum equivalent to or by reference to another person's liability to Tax, nor do any other circumstances exist whereby the Contributed Companies would have to make such a payment;

(e)  All reliefs assumed as an asset or otherwise taken into account in the SCO Consolidated Financial Statements are available to be utilized by the UK Contributed Companies at Closing;

(f)  The UK Contributing Companies have never been members of a group of companies for UK tax purposes other than a group comprising only the UK Contributing Companies;

(g)  The provisions of Part XV of the UK Value Added Tax Regulations 1995 (capital goods scheme) do not apply to any of the UK Contributed Assets;

CONFIDENTIAL                    SCO1269048

(h) No election has been nor will before Closing be made pursuant to paragraph 2 of Schedule 10 to the Value Added Tax Act 1994 ("*VATA 1994*") in relation to any of the UK Properties or any part of any of them;

(i) All UK value added tax payable upon the importation of goods, and all excise duties payable to HM Customs and Excise payable in respect of the UK Contributed Assets have been paid in full, and none of the UK Contributed Assets is liable to confiscation, forfeiture or distress;

(j) All documents (other than those which have ceased to have any legal effect) to which the UK Contributed Companies or any member of the UK Contributed Companies group of companies is a party and which are material to the title of the UK Contributed Assets have been duly stamped and no such documents which are outside the UK would attract stamp duty if they were bought into the UK;

(k) All National Insurance and sums payable by the UK Contributed Companies to the UK Inland Revenue under the PAYE system have been duly and properly paid. Proper records have been maintained in respect of all such matters.

(l) There is no unsatisfied liability to capital transfer tax or inheritance tax attached or attributable to any of the UK Contributed Assets and none of the UK Contributed Assets are, or are likely to be, subject to an Inland Revenue charge as mentioned in Section 237 of the Inheritance Tax Act 1984; and

(m) No person is liable to capital transfer tax or inheritance tax attributable to the value of any of the UK Contributed Assets in consequence no person has the power under Section 212 of the Inheritance Tax Act 1984 to raise the amount of such tax by the sale or mortgage of or by a charge on any of the UK Contributed Assets.

2.15 Intellectual Property.

(a) The Contributed Companies and, insofar as it relates to the Group Business, the Contributing Companies own, or have the right to use, sell or license such Intellectual Property Rights as are necessary or required for the Conduct of the Group Business (such Intellectual Property Rights being hereinafter collectively referred to as the "*SCO IP Rights*") and such ownership or rights to use, sell or license are reasonably sufficient for the Conduct of the Group Business, except for any failure to own or have the right to use, sell or license that would not have a Material Adverse Effect on the Group Business.

(b) All SCO IP Rights are owned free and clear of any Encumbrances (other than Group Permitted Encumbrances).

(c) The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby will not constitute a material breach of any material instrument or material agreement in respect of any SCO IP Rights licensed by or to any Contributing Company or Contributed Company (the "*SCO IP Rights Agreements*"), will not cause the forfeiture or termination or give rise to a right of forfeiture or termination of any SCO IP Right or materially impair the right of Newco to use, sell or license any SCO IP Right or

CONFIDENTIAL       SCO1269049

portion thereof (except where such breach, forfeiture, termination or impairment would not have a Material Adverse Effect on the Group Business).

(d) There are no royalties, honoraria, fees or other payments payable by any member of the Contributed Company Group or any Contributing Company to any person by reason of the ownership, use, license, purchase, sale or disposition or acquisition of any of the SCO IP Rights in an amount exceeding $100,000 in any one year.

(e) To SCO's Knowledge, no third party is infringing or misappropriating any of the SCO IP Rights.

(f) To SCO's Knowledge, (i) neither the manufacture, marketing, license, sale or intended use of any Group Product violates any license or agreement relating thereto or infringes any Intellectual Property Right of any other party, (ii) there is no pending or threatened claim or litigation contesting the validity, ownership or right to use, sell, license or dispose of any SCO IP Right, and (iii) no third party has notified the Contributing Companies or the Contributed Company Group that any SCO IP Right, or the proposed use, sale, license or disposition thereof, conflicts or will conflict with the rights of any other party, nor is there any basis therefor, except for any violations, infringements, claims or litigation that would not have a Material Adverse Effect on the Group Business.

(g) The Contributing Companies and the Contributed Company Group have taken reasonable and practicable steps designed to safeguard and maintain the secrecy and confidentiality of, and its proprietary rights in, all material trade secrets or other confidential information constituting SCO IP Rights. To SCO's Knowledge, no current or prior officers, employees or consultants of the Contributing Companies or the Contributed Company Group claim an ownership interest in or have a lien on any SCO IP Rights or any form of compensation out of the ordinary course of business as a result of having been involved in the development of such property while so employed, or retained, or otherwise. To SCO's Knowledge, all development employees of the SCO IP Rights, and all other officers, employees and consultants of the Contributed Company Group have executed and delivered an agreement regarding the protection of proprietary information and the assignment to his/her employer or principal of the SCO IP Rights arising from the services performed by such persons, except where this absence of such agreement would not have a Material Adverse Effect on the Group Business.

(h) Section 2.15(h) of the SCO Disclosure Letter lists each license, sublicense, agreement or other permission pursuant to which SCO or the Contributed Business Group is entitled to use third party IP Rights (excluding shrink wrap licenses to commercially available software sold at retail) as of the date hereof, the absence of which would have a Material Adverse Effect on the Group Business that a third party owns and that SCO or the Contributed Business Group uses pursuant to a license, sublicense, agreement or other permission, and describes and identifies such license, sublicense, agreement or other permission (excluding shrink wrap licenses to commercially available software sold at retail). Such license, sublicense, agreement or permission covering the item is legal, valid, binding, enforceable and in full force and effect and will continue to be legal, valid, binding, enforceable and in full force and effect on identical terms to Newco's benefit immediately following the Effective Time, except where it would not have a Material Adverse Effect on Newco, and such license,

sublicense, agreement or permission does not restrict the ability to market any material Group Product in any material jurisdiction or with respect to any material market or industry, and neither SCO nor the Contributed Company Group is in breach or default of any such license, sublicense, agreement or permission in a manner which would have a Material Adverse Effect on the Group Business. No person other than the Contributing Companies holds any license or other right to manufacture, modify, or create derivative works of any of the Group Products, other than OEM agreements that would not have a Material Adverse Effect on the Group Business. No person (other than Newco) will be or become entitled to receive a copy of source code of any software included among the Group Assets as a result of this Agreement, any Ancillary Agreement or any other agreement or transaction contemplated by this Agreement. Except as disclosed in Section 2.15(h) of the SCO Disclosure Letter, to SCO's Knowledge, no person holds or has been granted access to any copy of source code of any software included among the Group Assets unless such person has agreed in writing (i) to hold such source code in confidence and take reasonable steps to preserve the secrecy of such source code, and (ii) not to use such source code for any purpose except (A) to support such person's internal use of such source code or (B) to modify such source code solely for the purpose of internally using such modifications. None of SCO or the Contributed Companies have knowingly taken or knowingly failed to take any action that, directly or indirectly, has caused any Intellectual Property Rights in source code of material Group Products to enter the public domain, such as would have a Material Adverse Effect on the Group Business.

2.16  **Fees and Expenses.** Except for the fees and expenses set forth in SCO's engagement letter with Chase HQ, a copy of which has been provided to Caldera, no member of the Contributed Company Group and none of the Contributing Companies has paid or become obligated to pay any fee or commission to any broker, finder or intermediary in connection with the transactions contemplated by this Agreement and the Ancillary Agreements.

2.17  **Insurance.** The members of the Contributed Company Group maintain fire and casualty, general liability, business interruption, directors and officers, product liability and sprinkler and water damage insurance that they believe to be reasonable for its respective businesses.

2.18  **Ownership of Property.** Except for Group Permitted Encumbrances, the Contributed Company Group and the Contributing Companies own, or at the Effective Time will own, the Contributed Company Assets, free and clear of all Encumbrances. All real and personal property included in the Group Assets is in good working condition and suitable for its intended use, subject to ordinary wear and tear. To SCO's Knowledge, no member of the Contributed Company Group is in violation in any material respect with any zoning, building or safety ordinance, regulation or requirement or other law or regulation applicable to the operation of its respective owned or leased properties.

2.19  **Environmental Matters.**

(a) During the period that the Contributed Companies and the Contributing Companies (with respect to the Group Assets or any real estate leased thereunder) have leased or owned its respective properties or owned or operated its respective facilities, there have been, to SCO's Knowledge, no disposals, releases or threatened releases of Hazardous

Materials on, from, under or about such properties or facilities which would cause a Material Adverse Effect on Newco. To SCO's Knowledge there is no presence, disposals, releases or threatened releases of Hazardous Materials on, from, under or about any of such properties or facilities which may have occurred prior to said Member of the Contributed Company Group or the Contributing Companies (with respect to the Group Assets or any real estate leased thereunder) having taken possession of any of such properties or facilities, where such Hazardous Materials would cause a Material Adverse Effect on Newco.

(b) None of the properties or facilities which are Group Assets is or has been the subject of an Environmental Violation, which would cause a Material Adverse Effect on Newco. During the time that a Member of the Contributed Company Group or the Contributing Companies (with respect to the Group Assets or any real estate leased thereunder) owned or leased its respective properties and facilities, none of said companies and, to SCO's Knowledge, no third party, used, generated, manufactured or stored on, under or about such properties or facilities or transported to or from such properties or facilities any Hazardous Materials (except those Hazardous Materials associated with general office use or janitorial supplies) in a manner which would result in a Material Adverse Effect on Newco.

(c) During the time that any member of the Contributed Company Group and the Contributing Companies (with respect to the Group Assets or any real estate leased thereunder) owned or leased its respective properties and facilities, to SCO's Knowledge, there has been no litigation brought or threatened against any such Company, or any settlement reached by any such Company with, any party or parties concerning the presence, disposal, release or threatened release of any Hazardous Materials on, from or under any of such properties or facilities or relating to any alleged Environmental Violation, except for litigation or settlement which would not have a Material Adverse Effect on Newco.

2.20 Interested Party Transactions. Except as disclosed in the SCO SEC Documents, no officer or director of a Contributing Company, or any "affiliate" or "associate" (as those terms are defined in Rule 405 promulgated under the Securities Act) of a Contributing Company has, either directly or indirectly, a material interest in: (i) any person or entity which purchases from or sells, licenses or furnishes to the Contributed Company Group in connection with the Group Business, any goods, property, technology or intellectual or other property rights or services; or (ii) any Contributed Contract; which, in the case of either subpart (i) or (ii) would have a Material Adverse Effect on the Group Business.

2.21 Fairness Opinion. SCO's Board of Directors has received an opinion dated as of the date hereof from Chase HQ to the effect that, as of the date hereof, the terms of the transactions contemplated by this Agreement and the Ancillary Agreements are fair to SCO from a financial point of view.

2.22 Title to and Condition and Sufficiency of Group Assets. A member of the Contributed Company Group and/or a Contributing Company owns or at the Closing will own the Group Assets and have good and marketable title thereto, free and clear of all Encumbrances whatsoever, other than the Group Permitted Encumbrances. The Group Assets transferred to Newco constitute all assets, properties, rights, contracts and Intellectual Property Rights that are necessary or required for the Conduct of the Group Business as currently conducted, without

(i) the need to purchase, license or acquire any other material asset or property; (ii) violating any contractual rights of any third party; or (iii) infringing, misappropriating or misusing any software or Intellectual Property Rights of any third party, except for such assets, properties, rights, contracts, software and Intellectual Property Rights, the absence of which, individually or in the aggregate, would not have a Material Adverse Effect on the Group Business. Title to all Group Assets is freely transferable to and, with respect to the Contributed Assets and Contributed Stock, will be transferred to Newco free and clear of all Encumbrances, other than Group Permitted Encumbrances. Such transfer of the Contributed Assets and Contributed Stock can occur without obtaining the consent or approval of any person, except where the failure to transfer the Group Asset would not have a Material Adverse Effect on Newco. At the Closing, the Contributing Companies will contribute, transfer and deliver to Newco all right, title and interest in and to all Contributed Assets and Contributed Stock, free and clear of all Encumbrances, other than Group Permitted Encumbrances.

2.23 <u>No Restrictive Agreements</u>. Other than this Agreement and the Ancillary Agreements, neither any Member of the Contributed Company Group nor SCO nor any of the Group Assets is bound, or materially and adversely affected by, any judgment, injunction, order, decree, contract, covenant of agreement (noncompete or otherwise) that restricts or prohibits (or purports to restrict or prohibit) the Conduct of the Group Business or from competing for the sale of the Group Products anywhere in the world (including without limitation any contracts, covenants or agreements restricting the geographic area in which the Group Business may sell, license, market, distribute or support any Group Products) or restricting the markets, customers or industries that Newco may address after the Closing in the Conduct of the Group Business (collectively, "*Group Restrictive Agreements*"), in a manner, in any of the foregoing cases, which will have a Material Adverse Effect on Newco.

2.24 <u>Supplier and Customer Relationships</u>. To SCO's Knowledge, (i) the Contributed Company Group has good commercial working relationships with the customers for the Group Business, and (ii) since January 1, 2000 no customer of, or supplier to the Group Business has cancelled or otherwise terminated any material relationship concerning the Group Business with the Contributed Company Group or SCO (with respect to the Group), or materially decreased or limited its purchases or provision of materials supplied to the Group Business or under any Material Contributed Contract from the corresponding period in 1999, where any of the foregoing actions would cause a Material Adverse Effect on the Group Business, and to SCO's Knowledge, no such customer or supplier has threatened to take any such action.

2.25 <u>Product and Inventory Status</u>.

(a) <u>Product Quality, Warranty Claims</u>. All Group Products manufactured, sold, licensed, leased or delivered in connection with the Group Business conform in all material respects to applicable contractual commitments, express and implied warranties, and, to SCO's Knowledge, there is no material Liability (nor any basis for any present or future action, suit, proceeding, hearing, investigation, charge, complaint, claim or demand giving rise to any material Liability) for replacement or repair thereof or other damages in connection therewith, except for such conformance as would not have a Material Adverse Effect on Newco.

::ODMA\PCDOCS\DENLIB1\17279\17         28

CONFIDENTIAL                                            SCO1269053

(b) <u>Inventory</u>. To SCO's Knowledge, its inventories recorded on the 2000 Group Balance Sheet consist primarily of materials used in operating system software products, related supplies and packaging materials, all of which are merchantable, fit for the purpose for which they were procured or manufactured, and are in a condition and quantity usable in the ordinary course of business and to SCO's Knowledge, none of these inventories are obsolete, damaged or defective, except in each case where the failure of these inventories to be so would not have a Material Adverse Effect on Newco or where a sufficient provision with respect to the possibility of such failure is included in the 2000 Group Balance Sheet.

2.26 <u>Affirmative Vote</u>.

The affirmative vote of a majority of the votes that holders of the outstanding shares of SCO's common stock are entitled to vote with respect to the SCO Transaction is the only vote of the holders of any class or series of SCO's capital stock necessary to approve this Agreement and the transactions contemplated hereby.

2.27 <u>State Takeover Statutes</u>.

To SCO's knowledge, no state takeover statute or similar statute or regulation applies to or purports to apply to the SCO Transaction, the Agreement, the Ancillary Agreements, or the transactions contemplated hereby and thereby.

2.28 <u>Competition and Fair Trading Laws</u>. No Contributed Company or, in relation to the Group Business, Contributing Company is a party to (or concerned in) any agreement, arrangement, concerted practice or course of conduct which: (i) is registrable under applicable laws in any relevant jurisdictions; or (ii) contravenes any such laws; or (iii) falls within Article 81 and/or Articles 82 of the EC Treaty; or (iv) falls within Article 53 and/or Article 54 of the Agreement on the European Economic Area; or (v) contravenes, or is likely to contravene, the prohibitions of the Competition Act 1998; or (vi) otherwise infringes the competition legislation or practice of any other jurisdiction.

No Contributed Company and, in relation to the Group Business, no Contributing Company has received or is likely to receive any process, notice or other communication (formal or informal) by or on behalf of the Commission of the European Communities, the EFTA Surveillance Authority or any other authority having jurisdiction in competition matters in relation to any aspect of the Group Business or any agreement, arrangement, concerted practice or course of conduct to which any of them is, or is alleged to be, a party in relation to the Group Business.

No Contributed Company and, in relation to the Group Business, no Contributing Company is subject to any order or judgment given by any court or governmental or regulatory authority, or party to any undertaking or assurance given to any such court or authority, in relation to competition matters which is still in force.

2.29 <u>Grants</u>. None of the Contributed Companies have taken any action, agreed to take any action or failed to take any action as a result of which any investment or other grant paid for use in the Contributed Companies is liable to be refunded in whole or in part

(whether as a result of the transaction contemplated by this Agreement or the Ancillary Agreements).

3. Representations and Warranties of Caldera and Newco.

Except as set forth in the respectively referenced provisions of the Caldera Disclosure Letter, delivered by Caldera on behalf of Caldera and each Caldera Subsidiary (collectively, the "*Caldera Group*"), to SCO concurrently herewith and certified by an officer of Caldera, on behalf of the Caldera Group, respectively, to be true, accurate and complete to the best of his knowledge (the "*Caldera Disclosure Letter*"), Caldera, on behalf of the Caldera Group, hereby represents and warrants to SCO that as of the date hereof:

3.1   Organization; Good Standing; Qualification and Power. The Caldera Subsidiaries are all of the subsidiaries of Caldera or any of its direct or indirect subsidiaries. Caldera and each of the Caldera Subsidiaries is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, has all requisite corporate power and authority to own, lease and operate any and all of the Caldera Assets held by such company and for the conduct of the Caldera Business as now being conducted, and is duly qualified and in good standing to do business in each jurisdiction in which the nature of its business or the ownership or leasing of its properties makes such qualification necessary, other than in such jurisdictions where the failure so to qualify would not have a Material Adverse Effect on Caldera. Caldera has delivered to SCO or its counsel complete and correct copies of the Certificate of Incorporation and Bylaws of Caldera as amended to the date hereof and will deliver to SCO or its counsel prior to the Effective Time the equivalent charter documents of Caldera and each of its Subsidiaries as amended to the Closing. Except for the Caldera Subsidiaries, neither Caldera nor any of the Caldera Subsidiaries owns, directly or indirectly, any capital stock or other equity interest of any corporation or has any direct or indirect equity or ownership interest in any other business, whether organized as a corporation, partnership, joint venture or otherwise.

3.2   Capital Structure.

(a) Stock and Options. The authorized and issued and as of the date of July 28, 2000 the outstanding capital stock of Caldera, the Caldera Subsidiaries and Newco is set forth in Section 3.2(a) of the Caldera Disclosure Letter. Except as specified in Section 3.2(a) of the Caldera Disclosure Letter, no shares of the capital stock of Caldera or of any of the Caldera Subsidiaries are held by any of them in its treasury or reserved for issuance upon the exercise of options or warrants. All outstanding shares of the capital stock of Caldera on July 28, 2000 are set forth in Section 3.2(a) of the Caldera Disclosure Letter and are validly issued, fully paid and nonassessable free and clear of any Encumbrances and not subject to preemptive rights pursuant to any statute, pursuant to the Certificate of Incorporation or Bylaws of Caldera, or pursuant to any agreement or document to which any of them is a party or by which any of them is bound. All outstanding shares of the capital stock of each of the Caldera Subsidiaries are validly issued, fully paid and nonassessable and are owned by Caldera, or one of the Caldera Subsidiaries, free and clear of any Encumbrances. The Caldera Significant Stockholders who will execute Voting

CONFIDENTIAL    SCO1269055

Agreements collectively own and have the right to vote shares representing approximately 70% of the capital stock of Caldera as of the date of this Agreement.

(b) <u>No Other Commitments</u>. Except as set forth in <u>Section 3.2(b)</u> of the Caldera Disclosure Letter, there are no options, warrants, calls, rights, commitments, conversion rights or agreements of any character to which Caldera or any of its respective direct and indirect subsidiaries, is a party or by which any of them is bound obligating them to issue, deliver or sell, or cause to be issued, delivered or sold, any shares of its capital stock, or securities convertible into or exchangeable for shares of its capital stock, or obligating any of them to grant, extend or enter into any such option, warrant, call, right, commitment, conversion right or agreement. There is no voting trust, proxy or other agreement or understanding to which Caldera or any of its respective direct or indirect subsidiaries is a party with respect to the voting of the capital stock of any member of the Caldera Group. All shares of capital stock of any member of the Caldera Group are held free and clear of any Encumbrances.

(c) <u>Registration Rights</u>. Except as disclosed in the Caldera SEC Documents, neither Caldera nor any of its respective subsidiaries is under any obligation to register under the Securities Act any of its presently outstanding securities or any securities that may be subsequently issued which offering would have a Material Adverse Effect on Newco.

3.3    <u>Authority</u>.

(a) <u>Corporate Action</u>. Subject to approval of this Agreement and the Ancillary Agreements by the stockholders of Caldera, Caldera has all requisite corporate power and authority to enter into this Agreement and the Ancillary Agreements, to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated by this Agreement and the Ancillary Agreements. The Board of Directors of Newco and Caldera have, as of the date of this Agreement, unanimously (i) determined that the Merger is consistent with and in furtherance of the long-term business strategy of Caldera and is fair to, and in the best interests of, Caldera and its stockholders; (ii) has approved this Agreement, the Ancillary Agreements, the Merger, the SCO Transactions and other transactions contemplated hereby and thereby; and (iii) has determined to recommend that the stockholders of Caldera approve the SCO Transaction. This Agreement and the Voting Agreements have been, and prior to the Effective Time, the other Ancillary Agreements will be, duly executed and delivered by Newco and Caldera. Subject to receiving such stockholder approval, this Agreement and the Voting Agreements are, and at the Closing the other Ancillary Agreements will be, valid and binding obligations of Newco and Caldera, enforceable against Newco and Caldera in accordance with their respective terms, except as enforceability may be limited by bankruptcy and other similar laws and general principles of equity.

(b) <u>No Conflict</u>. Neither the execution, delivery and performance of this Agreement and the Ancillary Agreements nor the consummation of the transactions contemplated hereby or thereby nor compliance with the provisions hereof will (i) conflict with, or result in any violations of, or cause a default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, amendment, cancellation or acceleration of any obligation contained in, or the loss of any material benefit under, or result in the creation of any Encumbrance upon the any of the Caldera Assets under, any term, condition or provision of

CONFIDENTIAL                                                                                      SCO1269056

(x) the Certificate of Incorporation or Bylaws of Caldera or the equivalent organizational documents of any of the Caldera Subsidiaries or (y) any loan or credit agreement, note, bond, mortgage, indenture, lease or other material agreement, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Caldera, Caldera's property or the Caldera Assets, other than any such conflicts, violations, defaults, rights or Encumbrances which, individually or in the aggregate, would not have a Material Adverse Effect on Caldera; or (ii) require the affirmative vote of the holders of greater than a majority of the issued and outstanding capital stock of Caldera.

(c) <u>Governmental Consents</u>. Except (i) as set forth in Section 3.3(c) of the Caldera Disclosure Letter, (ii) such filings, authorizations, orders and approvals as may be required under state takeover laws; (iii) such filings and notifications as may be necessary under the HSR Act; (iv) the filings, authorizations, orders, notifications, and approvals contemplated by this Agreement or the Ancillary Agreements; and (v) such other governmental or third party consents, filings, authorizations, orders and approvals which, if not obtained or made, would not have a Material Adverse Effect on Newco or have a material adverse effect on the ability of Caldera to consummate the transactions contemplated by this Agreement or the Ancillary Agreements, no consent, approval, order or authorization of, or registration, declaration or filing with, any governmental entity is required to be obtained by the Caldera Group in connection with the execution and delivery of this Agreement or the Ancillary Agreements by Caldera, Newco, and the Merger Sub or the performance by them of its respective obligations hereunder or thereunder.

3.4  <u>SEC Documents</u>.

(a) <u>SEC Reports</u>. Caldera has delivered to SCO or its counsel correct and complete copies of the final version of each report, schedule, registration statement and definitive proxy statement filed by Caldera with the SEC on or after March 20, 2000 (the "*Caldera SEC Documents*"), which are the material documents (other than preliminary material) that Caldera was required to file with the SEC on or after March 20, 2000 with respect, in whole or in part, to Caldera or the Caldera Assets. As of their respective dates or, in the case of registration statements, their effective dates, none of the Caldera SEC Documents (including all exhibits and schedules thereto and documents incorporated by reference therein) contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, and there is no requirement under the Securities Act or the Exchange Act, as the case may be, to have amended any such filing. The Caldera SEC Documents complied, when filed, in all material respects with the then applicable requirements of the Securities Act or the Exchange Act, as the case may be, and the rules and regulations promulgated by the SEC thereunder. Caldera has filed all documents and agreements that were required to be filed as exhibits to the Caldera SEC Documents.

(b) <u>Caldera Financial Statements; Absence of Undisclosed Liabilities</u>. The audited consolidated financial statements, dated as of and for the period ended, October 31, 1999, and the unaudited consolidated financial statements, dated as of and for the period ending April 30, 2000, of Caldera and its consolidated subsidiaries ("*Caldera Financial Statements*") complied as to form in all material respects with the then applicable accounting requirements and

CONFIDENTIAL                                       SCO1269057