the published rules and regulations of the SEC with respect thereto, were prepared in accordance with GAAP applied on a consistent basis during the periods involved (except as may have been indicated in the notes thereto) and fairly present (subject, in the case of the unaudited statements, to normal year-end audit adjustments) the consolidated financial position of the Caldera Group as at the respective dates thereof and the consolidated results of its operations and cash flows for the respective periods then ended. Caldera has no liabilities or obligations of any nature (matured or unmatured, fixed or contingent) which are, individually or in the aggregate, of a nature required to be disclosed on the face of a consolidated balance sheet for Caldera and its consolidated subsidiaries prepared in accordance with GAAP and which are material to the Caldera Business, except for such liabilities or obligations as (i) were accrued or were provided for in the consolidated balance sheet dated April 30, 2000 included in the Caldera Financial Statements as of the date thereof (the "*Caldera Financial Statements Balance Sheet Date*") or (ii) are of a normally recurring nature and were incurred after the Caldera Financial Statements Balance Sheet Date in the ordinary course of business consistent with past practice. All liabilities and valuation accounts established and reflected in the Caldera Financial Statements are to Caldera's Knowledge reasonably adequate. At the Caldera Financial Statements Balance Sheet Date, there were no material loss contingencies which are not adequately provided for in the Caldera Financial Statements.

3.5  <u>Disclosure; Information Supplied</u>. No representation or warranty made by Caldera in this Agreement, nor any financial statement, certificate or exhibit prepared and furnished or to be prepared and furnished by Caldera or its respective representatives pursuant hereto or in connection with the transactions contemplated hereby, when taken together, contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements or facts contained herein or therein, taken as a whole not misleading in light of the circumstances under which they were furnished. None of the information supplied or to be supplied by Caldera for inclusion or incorporation by reference in the Form S-4 and Prospectus/Proxy Statement will, at the time the information is supplied contain, after giving effect to any supplement or amendment thereto, no untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they are made, not materially misleading. The Prospectus/Proxy Statement will in all material respects comply as to form with the provisions of the Exchange Act and the rules and regulations promulgated by the SEC thereunder.

3.6  <u>Vote Required</u>. The affirmative vote of a majority of the shares of Caldera Common Stock that cast votes regarding the Merger and the SCO Transaction in person or by proxy at the Caldera Stockholders Meeting is the only vote of the holders of any class or series of Caldera's capital stock necessary to approve this Agreement and the transactions contemplated hereby.

3.7  <u>Litigation</u>. Except as disclosed in the Caldera SEC Documents filed prior to the date hereof, or as would not reasonably be expected to have a Material Adverse Effect on Caldera, there is no suit, action, arbitration, demand, claim or proceeding pending or, to Caldera's Knowledge, threatened against Caldera or the Caldera Assets; nor is there any judgment, decree, injunction, ruling or order of any governmental entity or arbitrator or settlement agreement outstanding against Caldera or any of the Caldera Assets. Caldera has delivered or made available to SCO or its counsel correct and complete copies of all material

Dockets.Justia.com

correspondence prepared by its counsel for Caldera's auditors in connection with the last two completed audits of Caldera's financial statements and any such correspondence since the date of the last such audit. No member of the Caldera Group is a party to any decree, order or arbitration award (or agreement entered into in any administrative, judicial or arbitration proceeding with any governmental authority) with respect to the Caldera Assets, Caldera Employees, or the Caldera Business that could reasonably be expected to have a Material Adverse Effect on Caldera. Except for violations as would not have a Material Adverse Effect on Caldera, none of the members of the Caldera Group is in violation of any decree, order or arbitration award that names such company, or any of such companies, as a party or that otherwise, to Caldera's Knowledge, involves such company or any of such company's assets, or of any law, ordinance, statute, or governmental authority to which the Caldera Assets are subject, including, without limitation, laws, rules and regulations relating to occupational health and safety, equal employment opportunities, fair employment practices, and sex, race, religious and age discrimination. There is no claim, action, suit, arbitration, mediation, investigation or other proceeding of any nature pending or, to Caldera's Knowledge, threatened, at law or in equity, by way of arbitration or before any court, governmental department, commission, board or agency that: (i) may adversely affect, contest or challenge any party's authority, right or ability to perform its obligations under this Agreement or any of the Ancillary Agreements; (ii) challenges or contests Caldera's right, title or ownership of any of the Caldera Assets or seeks to impose an Encumbrance (other than a Caldera Permitted Encumbrance) on, or a transfer of title or ownership of, any of the Caldera Assets; (iii) asserts that any action taken by any employee, consultant or contractor of Caldera in connection with the Group Business infringes or misappropriates any Intellectual Property Rights of any third party; (iv) seeks to enjoin, prevent or hinder operation of the Caldera Business or the consummation of any of the transactions contemplated by this Agreement or any of the Ancillary Agreements; (v) would impair or have an adverse affect on Newco's right or ability to use or exploit any of the Caldera Assets; or (vi) involves or relates to any potentially material claim against Caldera by any creditor of Caldera or involves any claim of fraudulent conveyance or any similar claim, except in cases (ii), (iii) and (v) where such proceeding could not reasonably be expected to have a Material Adverse Effect on Newco.

3.8     Valid Issuance. The Newco Common Stock that is being issued hereunder in connection with the SCO Transaction, when issued and delivered in accordance with the terms of this Agreement for the consideration expressed herein, will be duly authorized and validly issued, fully paid, and nonassessable.

3.9     Absence of Certain Changes or Events. Except as disclosed on Section 3.9 of the Caldera Disclosure Letter, since the Caldera Financial Statements Balance Sheet Date there has not occurred:

(a) any change or event which could reasonably be expected to have a Material Adverse Effect on Caldera; provided, however, that in no event will a change in the trading price of Caldera Common Stock be deemed a Material Adverse Effect on Caldera;

(b) any amendments or changes in the Certificate of Incorporation or Bylaws (or equivalent governing documents in each relevant jurisdiction) of any member of the Caldera Group;

::ODMA\PCDOCS\DENLIB1\17279\17

34

(c) any damage, destruction to or loss of Caldera assets not covered by insurance, which would have a Material Adverse Effect on Caldera;

(d) any redemption, repurchase or other acquisition of shares of any member of the Caldera Group (other than pursuant to arrangements with terminated employees or consultants in the ordinary course of business, consistent with past practice), or any declaration, setting aside or payment of any dividend or other distribution (whether in cash, stock or property) with respect to the capital stock of any member of the Caldera Group or, with respect to dividends or other distributions of cash or property arising from the Caldera Business;

(e) any material increase in or modification of the compensation or benefits payable or to become payable by Caldera to the Caldera employees, except in the ordinary course of the business, consistent with past practice and except as necessary to respond to third party solicitation of Caldera employees;

(f) other than as required by applicable statute or governmental regulation, any material increase in or modification of any Caldera Group Benefit Arrangement (including, but not limited to, the granting of stock options, the acceleration of the vesting schedule in effect for any outstanding stock options, restricted stock awards or stock appreciation rights) that will become binding upon Newco upon consummation of the transactions contemplated herein, for or with respect to any of the Caldera Employees, other than (i) in the ordinary course of the business, consistent with past practice, or to respond to third party solicitation of Caldera Employees, and (ii) if occurring after the date hereof, which is authorized pursuant to Section 5.3 below;

(g) any sale of a material amount of the Caldera Assets, or any acquisition by any member of the Caldera Group of a material amount of assets, other than in the ordinary course of the business, consistent with past practice;

(h) any alteration in any term of any outstanding capital stock or rights to acquire capital stock of any member of the Caldera Group, including, but not limited to, acceleration of the vesting or any change in the terms of any outstanding stock options;

(i) other than in the ordinary course of business, consistent with past practice, (A) any incurrence, assumption or guarantee by any member of the Caldera Group of any debt of any person, other than any member of the Caldera Group, for borrowed money in an amount exceeding $250,000 in the aggregate; (B) issuance or sale by any member of the Caldera Group of any securities convertible into or exchangeable for its respective debt securities; or (C) issuance or sale of options or other rights to acquire from the Caldera Group, directly or indirectly, debt securities of any member of the Caldera Group, or any securities convertible into or exchangeable for any such debt securities;

(j) any creation or assumption by any member of the Caldera Group of any Encumbrance (other than Caldera Permitted Encumbrances) on any Caldera Asset in excess of $250,000 individually or in the aggregate, other than to refinance a liability reflected in the Caldera Financial Statements in the ordinary course of business;

CONFIDENTIAL

SCO1269060

(k) any making by any member of the Caldera Group of any loan, advance or capital contribution to or investment in any person other than to refinance a liability reflected in the Caldera Financial Statements and other than (i) loans, advances or capital contributions made in the ordinary course of the business, and (ii) other loans and advances, where the aggregate amount of all such items outstanding at any time does not exceed $250,000;

(l) any amendment of, relinquishment, termination or non-renewal by Caldera of any of the Caldera Contracts, other than in the ordinary course of business consistent with past practice;

(m) any transfer or grant of a right under the Caldera IP Rights, other than those transferred or granted in the ordinary course of business, consistent with past practice;

(n) any labor dispute with, or charge of unfair labor practice by, any member of the Caldera Group (other than routine individual grievances), any activity or proceeding by a labor union or representative thereof to organize any Caldera employees or, to Caldera's Knowledge, any campaign being conducted to solicit authorization from Caldera employees to be represented by such labor union, where such dispute, practice, activity, proceeding, or campaign would have a Material Adverse Effect on Caldera;

(o) any change to accounting methods; or

(p) any agreement by any member of the Caldera Group to take any of the actions described in the preceding clauses (a) through (o) (other than the transactions contemplated by this Agreement or the Ancillary Agreements).

3.10   Taxes. The Caldera Group has properly completed and filed, or caused to be properly completed and filed, all Tax returns required to be filed by the Caldera Group and has paid, or caused to be paid, all Taxes that are shown on such Tax returns as due and payable. All Taxes of the Caldera Group for all periods through June 30, 2000, have been fully paid (except for Taxes that are adequately provided for or reflected in the Caldera Financial Statements). Since June 30, 2000, no material Tax liability has been assessed, or is, to Caldera's Knowledge, proposed to be assessed, incurred or accrued (other than liabilities for Taxes arising in the ordinary course of business) against any member of the Caldera Group. To Caldera's Knowledge, no member of the Caldera Group has received notification that any material issues have been raised (or are currently pending) by the Internal Revenue Service or any other taxing authority, including, without limitation, any sales tax authority, in connection with any of the Tax returns referred to in the first sentence of this Section 3.10, and no unexpired waivers of statutes of limitations have been given or requested with respect to Tax returns or Taxes of any member of the Caldera Group. No taxing authority is currently conducting an audit or investigation of any of the aforesaid Tax returns or, to Caldera's Knowledge, is about to conduct such an audit with respect to such Tax returns. Any deficiencies asserted or assessments (including interest and penalties) made as a result of any examination by the Internal Revenue Service or by appropriate national, state or departmental authorities of the Tax returns with respect to SCO and any of its subsidiaries have been paid or adequately provided for in the Caldera Financial Statements, and to Caldera's Knowledge no proposed (but unassessed) additional Taxes have been asserted and no Tax liens have been filed against Caldera or any of

the Caldera Assets other than for Taxes not yet due and payable. Neither Caldera, nor any member of the Caldera Group (i) has made an election to be treated as a "consenting corporation" under Section 341(f) of the Internal Revenue Code or (ii) is a "personal holding company" within the meaning of Section 542 of the Internal Revenue Code.

    3.11    Intellectual Property.

(a) Caldera owns, or has the right to use, sell or license such Intellectual Property Rights as are necessary or required for the Conduct of the Caldera Business (such Intellectual Property Rights being hereinafter collectively referred to as the "*Caldera IP Rights*") and such ownership or rights to use, sell or license are reasonably sufficient for the Conduct of the Caldera Business, except for any failure to own or have the right to use, sell or license that would not have a Material Adverse Effect on Caldera.

(b) All Caldera IP Rights are owned free and clear of any Encumbrances.

(c) To Caldera's Knowledge, (i) neither the manufacture, marketing, license, sale or intended use of any product currently licensed or sold by Caldera or any of the Caldera Subsidiaries or currently under development by Caldera or any of the Caldera Subsidiaries violates any license or agreement relating thereto or infringes any Intellectual Property Right of any other party, (ii) there is no pending or threatened claim or litigation contesting the validity, ownership or right to use, sell, license or dispose of any Caldera IP Right and (iii) no third party has notified Caldera that any Caldera IP Right or the proposed use, sale, license or disposition thereof, conflicts or will conflict with the rights of any other party, nor is there any basis therefor except for any violations, infringements, claims or litigation that would not have a Material Adverse Effect on Caldera.

    3.12    Fees and Expenses. Except for the fees and expenses set forth in Caldera's engagement letter with Broadview, a copy of which has been provided to SCO, neither Caldera, Newco nor any of the Caldera Subsidiaries has paid or become obligated to pay any fee or commission to any broker, finder or intermediary in connection with the transactions contemplated by this Agreement and the Ancillary Agreements.

    3.13    Environmental Matters.

(a) During the period that Caldera has leased or owned its respective properties or owned or operated its respective facilities, there have been, to Caldera's Knowledge, no disposals, releases or threatened releases of Hazardous Materials on, from, under or about such properties or facilities which would cause a Material Adverse Effect on Newco. To Caldera's Knowledge there is no presence, disposals, releases or threatened releases of Hazardous Materials on, from, under or about any of such properties or facilities, which may have occurred prior to Caldera having taken possession of any of such properties or facilities where such Hazardous Materials would cause a Material Adverse Effect on Newco.

(b) None of the properties or facilities of Caldera is or has been the subject of an Environmental Damage, which would cause a Material Adverse Effect on Newco. During the time that Caldera has owned or leased its respective properties and facilities, none of Caldera nor, to Caldera's Knowledge, any third party, has used, generated, manufactured or stored on,

CONFIDENTIAL    SCO1269062

under or about such properties or facilities or transported to or from such properties or facilities any Hazardous Materials (except those Hazardous Materials associated with general office use or janitorial supplies) in a manner which would result in a Material Adverse Effect on Newco.

(c) During the time that any members of the Caldera Group have owned or leased its respective properties and facilities, to Caldera's Knowledge, there has been no litigation brought or threatened against any of them by, or any settlement reached by any of them with, any party or parties concerning the presence, disposal, release or threatened release of any Hazardous Materials on, from or under any of such properties or facilities or relating to any alleged Environmental Violation, except for litigation or settlement which would not have a Material Adverse Effect on Newco.

3.14 Fairness Opinion. Caldera's Board of Directors has received an opinion dated as of the date hereof from Broadview to the effect that, as of the date hereof, the Caldera Ratio is fair to Caldera from a financial point of view.

3.15 Tax Representations. Caldera, Newco and the Caldera Significant Stockholders are aware of no plan or intention by Caldera or Newco or any corporation related to Caldera immediately after the Effective Time to repurchase any Newco capital stock issued pursuant to this Agreement from any person or entity that is or will become a Newco stockholder by reason of the transactions contemplated by this Agreement. Caldera has not redeemed any shares of its capital stock or paid any extraordinary dividend in contemplation of the Merger.

4. SCO Covenants.

4.1 Advice of Changes.

During the period from the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, SCO will promptly advise Caldera in writing, (i) of any event occurring subsequent to the date hereof that would reasonably be likely to render any representation or warranty contained in Section 2 of this Agreement, if made on or as of the date of such event or the Effective Time, untrue or inaccurate, (ii) of any event that would reasonably be likely to have a Material Adverse Effect on the Group Business, and (iii) of any material breach by SCO of any covenant or agreement contained in this Agreement; provided, however, that the delivery of, or failure to deliver, any notice pursuant to this Section 4.1 shall not limit or otherwise affect the remedies available hereunder. Prior to the Effective Date, the SCO Board of Directors shall take all requisite action under each of the SCO stock plans to preclude the accelerated vesting of any outstanding SCO Options or unvested shares of SCO Common Stock for all Designated Employees; provided, however that such actions shall not be required with respect to SCO Options granted to Employees whose options are subject to acceleration pursuant to existing severance or change of control agreements.

4.2 Maintenance of Business. During the period from the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, the Contributed Company Group and the Contributing Companies will use reasonable efforts to carry on and preserve the Group Business and relationships with customers, suppliers, employees

and others related to Group Business in substantially the same manner as it has prior to the date hereof.

4.3     Conduct of Business. During the period from the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, the Contributed Company Group and SCO will continue to conduct the Group Business and maintain business relationships related to the Group Business in the ordinary and usual course consistent with past practice and, except as otherwise disclosed herein or in the SCO Disclosure Letter, they will not, without the prior written consent of Caldera, which consent shall not be unreasonably withheld, take any of the following actions where it would cause a Material Adverse Effect on the Group Business:

(a)     cause any of the Contributed Companies to borrow any money except for amounts that are not in the aggregate material to the financial condition of the Group Business, taken as a whole;

(b)     cause any of the Group Assets to become subject to any Encumbrance, except for Group Permitted Encumbrances;

(c)     dispose of any of Group Assets except immaterial amounts of Group Assets in the ordinary course of business, consistent with past practice;

(d)     grant any exclusive license to any of the SCO IP Rights or grant any other license to SCO IP Rights except in the ordinary course of business, consistent with past practice;

(e)     materially amend or terminate any of the Material Contributed Contracts;

(f)     cause any of the Contributed Companies to declare, set aside or pay any cash or stock dividend or other distribution in respect of capital stock, or redeem or otherwise acquire any of its capital stock;

(g)     permit any of the Contributed Companies to issue or allot or agree to issue or allot capital stock, shares or loan capital;

(h)     cause any of the Contributed Companies to make any loans or grant any guarantees, except (A) advances that are not material in amount or (B) loans pursuant to any Section 401(a) Plan;

(i)     waive or release any material claim against a third party;

(j)     cause any member of the Contributed Company Group to merge, consolidate or reorganize with or acquire any entity that is not a member of the Contributed Company Group, except as set forth in the SCO Disclosure Letter and except as otherwise set forth in the last sentence of Section 4.14(a) or Section 1.4(a) hereof;

CONFIDENTIAL                                      SCO1269064

(k) amend the Certificate of Incorporation or Bylaws (or equivalent governing documents in each relevant jurisdiction) of any of the Contributed Companies;

(l) implement any layoffs or reductions in the work force;

(m) fail to pay or withhold any material Tax related to the Group Business when due to be paid or withheld;

(n) change accounting methods;

(o) agree to take, or permit any of its subsidiaries to take or agree to take, or enter into negotiations with respect to, any of the actions described in the preceding clauses in this Section 4.3.

Notwithstanding the foregoing, nothing in this Section 4.3 hereof shall restrict or limit the conduct of any business of SCO or its direct or indirect subsidiaries other than the Group Business and other than with respect to the Group Assets and nothing herein shall restrict or limit the conduct of any business of the Contributed Company Group or with respect to the Group Assets other than as set forth in this Section 4.3.

4.4  SCO Corporate Approvals. SCO will call the SCO Stockholders Meeting to be held within 40 days after the Form S-4 shall have been declared effective by the SEC, to submit the SCO Transaction and related matters for the consideration and approval of the SCO stockholders. Subject to Section 8.1(i) and (j), the Prospectus/Proxy Statement will include a statement to the effect that SCO's Board of Directors is recommending that SCO stockholders vote in favor of the SCO Transaction. The Board of Directors of SCO shall submit this Agreement and the SCO Transaction to SCO's stockholders whether or not at any time subsequent to the date hereof such Board determines that it can no longer make such recommendation. Such meeting will be called, held and conducted, and any proxies will be solicited, in compliance with applicable law. SCO agrees to vote in favor of the contribution to Newco of the Contributed Stock and Contributing Assets at each meeting of stockholders, or written consent in lieu thereof, of the Contributing Companies. Without limiting the foregoing, SCO shall vote in favor of the SCO Transaction at each and every stockholders meeting, or with respect to any written consent in lieu thereof, at which any proposal regarding any such transactions, including the contribution and transfer of the Contributed Stock and Contributed Assets, is considered. The Boards of Directors of each the Contributing Companies (including SCO) and the Contributed Company Group have approved the SCO Transaction and this Agreement.

4.5  Letter of SCO's Accountants. SCO shall use its reasonable best efforts to cause to be delivered to Caldera a letter of PriceWaterhouseCoopers LLP, dated a date within two business days before the date on which the Form S-4 shall become effective and addressed to Caldera, in form and substance reasonably satisfactory to Caldera and customary in scope and substance for letters delivered by independent public accountants in connection with registration statements similar to the Form S-4.

4.6  Prospectus/Proxy Statement. SCO will mail to its stockholders in a timely manner, for the purpose of considering and voting upon the SCO Transaction at the SCO

Stockholders Meeting, the Prospectus/Proxy Statement. SCO, Caldera and Newco will prepare and file the Prospectus/Proxy Statement with the SEC as promptly as practicable, and each will use its respective best reasonable efforts to cause the Form S-4 to become effective as soon after such filing as practicable. In this regard, SCO, Caldera and Newco will advise each other promptly as to the time at which the Form S-4 becomes effective and of the issuance by the SEC of any stop order suspending the effectiveness of the Form S-4 or the initiation of any proceedings for such purpose and each will use its respective reasonable best efforts to prevent the issuance of any stop order and to obtain as soon as possible the lifting thereof, if issued. Until the Effective Time, SCO will advise Caldera and Newco promptly of any requirement of the SEC for any amendment or supplement of the Form S-4 or for additional information, and will not at any time file any amendment of or supplement to the prospectus contained therein (or to the prospectus filed pursuant to Rule 424(b) of the SEC) (the "*Prospectus*") which shall not have been previously submitted to Caldera in reasonable time prior to the proposed filing thereof or to which Caldera shall reasonably object or which is not in compliance in all material respects with the Securities Act and the rules and regulations issued by the SEC thereunder. None of the information relating to SCO (or, to SCO's Knowledge, any other person, contained in any document, certificate or other writing furnished or to be furnished by SCO) included in (i) the Prospectus/Proxy Statement at the time the Prospectus/Proxy Statement is mailed, at the time of the SCO Stockholders Meeting or at the Effective Time, as then amended or supplemented, or (ii) the Form S-4 at the time the Form S-4 becomes effective or at the Effective Time, as then amended or supplemented, will contain any untrue statement of a material fact or will omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading or necessary to correct any statement which has become false or misleading in any earlier communication. From and after the date the Form S-4 becomes effective and until the Effective Time, if any event known to SCO occurs as a result of which the Prospectus/Proxy Statement or Form S-4 would include an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or if it is necessary at any time to amend the Form S-4 or the Prospectus/Proxy Statement to comply with the Securities Act, SCO will promptly notify Caldera and Newco and an amended or supplemented Form S-4 or Prospectus/Proxy Statement will be prepared by SCO, Caldera and Newco which will correct such statement or omission and will use its reasonable best efforts to cause any such amendment to become effective as promptly as possible. The Prospectus/ Proxy Statement, as it relates to SCO and information relating to the Group Business, will comply as to form in all material respects with the requirements of the Exchange Act and the rules and regulations thereunder in effect at the time the Prospectus/Proxy Statement is mailed.

    4.7    <u>Regulatory Approvals</u>. As promptly as reasonably practicable, SCO will itself, and will cause each member of the Contributed Company Group, to execute and file, or join in the execution and filing, of any application or other document that may be necessary in order to obtain the authorization, approval or consent of any governmental body, federal, state, provincial, local or foreign, which may be reasonably required, or which Caldera or Newco may reasonably request, in connection with the consummation of the transactions contemplated by this Agreement. SCO will itself, and will cause each member of the Contributed Company Group, to use its reasonable efforts to promptly obtain all such authorizations, approvals and consents and will cooperate fully with the other parties in promptly seeking to obtain such authorizations, approvals and consents.

4.8   Necessary Consents.  SCO will itself, and will cause each Contributing Company and each member of the Contributed Company Group to, use its reasonable efforts to obtain the consents required in connection with the Material Contributed Contracts, and to take such other actions as may be necessary or appropriate for the consummation of the transactions contemplated hereby and to allow Newco to conduct the Group Business after the Effective Time.

4.9   Access to Information.  From the date hereof until the Effective Time, SCO will itself, and will cause the Contributed Company Group, to allow Caldera and its agents reasonable access to the files, books, records, technology and offices of SCO and the Contributed Company Group reasonably requested by Caldera, but only to the extent necessary and relating to the Group Business, including, without limitation, any and all information relating to Contributed Company Group's Taxes, commitments, contracts, leases, licenses and real, personal, intellectual and intangible property and financial condition.  SCO shall use its reasonable efforts to cause its accountants to cooperate with Caldera and its agents in making available to Caldera all financial information reasonably requested, including, without limitation, the right to examine all working papers pertaining to all Tax returns and financial statements prepared or audited by such accountants.  No information or knowledge obtained by any party hereto in any investigation pursuant to this Section 4.9 will affect or be deemed to modify any representation or warranty contained herein or the conditions to the obligations of the parties to consummate the Merger and the SCO Transaction.  All information obtained by Caldera and its agents pursuant to this Section 4.9 shall be kept confidential in accordance with the confidentiality agreement between Caldera and SCO (the "*Nondisclosure Agreement*").

4.10   Satisfaction of Conditions Precedent.  SCO will itself, and will cause the Contributing Companies and the Contributed Company Group, to use reasonable efforts to satisfy or cause to be satisfied all the conditions precedent that are set forth in Section 8 and to cause the Merger, the SCO Transaction and the other transactions contemplated by this Agreement to be consummated.  Without limiting the foregoing, in connection with the agreements to be reached by the parties subsequent to the date hereof and prior to the Effective Time, the parties agree to negotiate in good faith to reach agreement on all matters to be included in such agreements promptly after the signing of this Agreement.

4.11   Voting Agreement.  SCO will use its reasonable best efforts to obtain Voting Agreements in the form attached as Exhibit 4.11A (the "*Voting Agreement*"), executed by the SCO affiliates listed on Exhibit 4.11B.

4.12   Sales Representative and Support Agreement.  The Sales Representative and Support Agreement in the form attached as Exhibit 4.12 (the "*Sales Representative and Support Agreement*") shall be executed as of the Effective Time.

4.13   Stockholders Agreement.  The Stockholders Agreement in the form attached as Exhibit 4.13 (the "*Stockholders Agreement*") shall be executed as of the Effective Time.

4.14 <u>No Other Negotiations</u>.

(a) SCO shall, and shall cause each Contributing Company and each member of the Contributed Company Group and their respective officers, directors or employees and any investment bankers, attorneys or other advisors and representatives retained by any of them to, cease any and all existing activities, discussions and negotiations with any parties conducted heretofore with respect to any SCO Alternative Proposal (as defined below). From and after the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, SCO shall not authorize or permit any Contributing Company or any member of the Contributed Company Group (or any of their respective officers, directors or employees or any investment bankers, attorneys or other advisors or representatives retained by any of them), directly or indirectly, (i) to solicit, initiate or encourage the submission of any SCO Alternative Proposal, (ii) to engage in discussions or negotiations regarding, provide non-public information with respect to, or to take any other action intended, designed or reasonably likely to facilitate any inquiries or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, any SCO Alternative Proposal, (iii) to enter into any letter of intent, agreement in principle, agreement involving a business combination or other similar agreement with any person with respect to any SCO Alternative Proposal, or (iv) to make or authorize any statement, recommendation or solicitation in support of any SCO Alternative Proposal. For purposes of this Agreement, "*SCO Alternative Proposal*" means any proposal or offer from any person or "group" (as defined under Section 13(d) of the Exchange Act and the rules and regulations thereunder) for any direct or indirect (a) acquisition, purchase, sale or other disposition of a material amount of the Group Assets (other than in the ordinary course and disposal of worn or obsolete items consistent with past practice), (b) acquisition, purchase, sale or other disposition of any of the outstanding voting securities of any member of the Contributed Company Group (other than pursuant to the exercise of outstanding stock options), or (c) merger, consolidation, business combination, sale of any of the assets, recapitalization, liquidation, dissolution or similar transaction involving any member of the Contributed Company Group, other than the transactions contemplated by this Agreement. Notwithstanding the foregoing or any other provision of this Agreement, other than actions relating to the Contributed Company Group, the Group Assets or the Group Business, SCO shall not be restricted or limited in any way from entering into discussions, negotiations or agreements of any kind or from taking any other actions of any kind, including, without limitation, transactions relating to the sale of any of its or its direct or indirect subsidiaries (other than any member(s) of the Contributed Company Group), equity securities (other than the Contributed Stock), or assets (other than Group Assets), or the merger, consolidation, business combination, recapitalization, liquidation, dissolution or similar transaction involving the Retained SCO Business.

(b) Notwithstanding <u>Section 4.14(a)</u>, prior to obtaining the approval of the stockholders of SCO of this Agreement and the SCO Transaction by the requisite vote under applicable law (the "*SCO Stockholder Approval*"), SCO may in response to an unsolicited bona fide SCO Alternative Proposal, participate in discussions or negotiations with, furnish information to a third party making such proposal (provided that SCO shall have entered into a confidentiality agreement with such third party with terms no less favorable than in the letter with Caldera), make or authorize a statement or recommendation in support of such proposal, if all of the following events shall have occurred: (i) such third party has made a bona fide written

offer or proposal to the Board of Directors of SCO to consummate a SCO Alternative Proposal, which offer or proposal identifies a price or range of values to be paid for the outstanding securities or assets of SCO, the Contributing Companies or the Contributed Company Group, (ii) if consummated, based on the written advice of investment bankers of nationally recognized reputation, such Board of Directors has determined that it is financially more favorable to the stockholders of SCO than the terms of the transactions contemplated by this Agreement, (iii) such Board of Directors has determined, after consultation with investment bankers of nationally recognized reputation, that such third party is financially capable of consummating such SCO Alternative Proposal (if the SCO Alternative Proposal is for cash); (iv) such Board of Directors has determined, after consultation with outside legal counsel, that failure to take such action would be inconsistent with the fiduciary duties of the Board of Directors to SCO stockholders under applicable law; and (v) Caldera shall have been notified by SCO in writing of such SCO Alternative Proposal, including its principal financial and other material terms and conditions, including the identity of the person making such proposal (it being understood that any amendment to the price, exchange ratio, identity or principal financial or other material terms shall require an additional notice).

(c) In addition to the obligations set forth in Section 4.14(a), SCO, as promptly as practicable, shall advise Caldera orally and in writing of any request for non-public information which SCO reasonably believes could lead to a SCO Alternative Proposal, or of any SCO Alternative Proposal, the principal financial and other material terms and conditions of such SCO Alternative Proposal, and the identity of the person making any such request or SCO Alternative Proposal. SCO will keep Caldera informed in all material respects of the status and details (including material amendments) of any such SCO Alternative Proposal.

4.15   Books and Records. If, in order to properly prepare documents required to be filed with governmental authorities (including taxing authorities) or its financial statements, it is necessary that any party hereto be furnished with additional information relating to the Group Assets or any member of the Contributed Company Group, and such information is in the possession of a Contributing Company, then SCO, for itself and the other Contributing Companies, agree to use its good faith efforts to promptly furnish such information to the party needing such information. This Section 4.15 shall survive Closing for two years except for records relating to preparation or audit of tax returns, for which this Section 4.15 will survive until the expiration of the applicable Tax statute of limitations.

4.16   [Intentionally Omitted.]

4.17   Modification of Joint Contributed Agreements and Shared Contributed Assets. SCO will provide to Caldera a list of the Contributed Contracts and the contracts to which the Contributed Companies are a party which create rights or obligations of both the Group Business and the SCO Retained Business (the "*Joint Contributed Agreements*"). As soon as feasible after the date hereof, SCO and Caldera will negotiate to agree upon a mutually acceptable arrangement between SCO and Newco and, if required, other parties with respect to the treatment of such contracts. SCO will provide a list of the Contributed Assets which would be impracticable to operate separately by either SCO or Caldera (the "*Shared Contributed Assets*"). As soon as feasible after the date hereof, SCO and Caldera will negotiate

to agree upon a mutually acceptable arrangement, which shall allocate costs in proportion to the benefits received, between SCO and Newco with respect to such Shared Contributed Contracts.

4.18  Key Employee Employment Agreements. SCO will use its best efforts to cause (without having to incur any cost) each of the Key Employees listed on Exhibit 4.18A to execute employment agreements which reflect the terms set forth in the Key Employee Term Sheet, a form of which is attached hereto as Exhibit 4.18B.

4.19  SCO IP Rights. As soon as feasible after the date hereof SCO and Caldera shall confirm whether the Intellectual Property Rights and Intangible Assets required for the production, development, marketing and support of the Group Products are included in the Intellectual Property Rights included in the Group Assets duly transferred to Newco pursuant hereto. If additional items not so transferred are discovered, then the Group Assets shall be expanded to include, and there shall be duly assigned to Newco by the appropriate Contributing Company, all such additional Intellectual Property Rights and Intangible Assets required for the production of the Group Products. If the Intellectual Property Rights and Intangible Assets included or added to the Group Assets are also required for the production of the products produced by SCO and its subsidiaries (other than the Group Products) then Newco (or its subsidiary, which receives said Intellectual Property Rights and Intangible Assets constituting Group Assets) shall provide SCO, or its designated subsidiary, with a fully paid, non-exclusive, perpetual, irrevocable license to use such Intellectual Property Rights and Intangible Assets for the purpose of producing such other products. SCO agrees that if Caldera determines, in its sole judgment to register the copyrights assigned to it pursuant to the Copyright Assignments, then SCO shall take all reasonable actions to assist Caldera to register such copyrights.

4.20  Directors' and Officers' Liability Insurance. SCO shall use its commercially reasonable efforts to maintain directors' and officers' liability insurance as SCO shall have in effect from time to time, covering the acts or omissions on or before the Effective Time of those Employees who are or have been directors and officers of SCO or its subsidiaries and who become employees of Newco as of the Effective Time. SCO will not voluntarily seek to increase the deductible nor decrease the limits under such insurance, provided however such action shall be governed by the insurance marketplace on commercially reasonable and available terms, and SCO will endeavor to give written notice to Caldera prior to any cancellation or non-renewal of the SCO coverage.

4.21  Closing Group Account. SCO shall deliver to Newco the assets and liabilities section of a balance sheet of the Group Business as of the Closing Date (the "*Closing Group Account*") within thirty days following the Closing Date. Newco shall cooperate by providing access to data and personnel, as reasonably required by SCO to prepare the Closing Group Account. The Closing Group Account shall be prepared in the same manner as the 2000 Group Balance Sheet and in compliance with the representations and warranties contained in Section 2.4(c) hereof.

4.22  SCO Retained Business. SCO shall use its reasonable best efforts to transfer or sell all of the Excluded Assets from the Contributed Companies prior to the Effective Time or as soon as practicable thereafter; provided, however, that to the extent that any Excluded Assets pursuant to Section 1.4(b)(ii) are included as assets on the Closing Group Account,

CONFIDENTIAL                                SCO1269070

Caldera shall pay to SCO an amount, in cash, equal to amount of such assets or transfer the assets after the Effective Time, as the parties may agree.

4.23   **Taking of Necessary Action; Further Action.** If, at any time after the Closing Date, any further action is necessary or desirable to carry out the purposes of this Agreement and to vest Caldera with full right, title and possession to the Contributed Assets and Contributed Companies, the officers and directors of SCO are fully authorized in the name SCO or otherwise to take, and will take, all such lawful and necessary and/or desirable action.

4.24   **Accounting Treatment.** SCO and Caldera shall use their reasonable best efforts to gain favorable accounting treatment for the Sales Representative and Support Agreement, including, if necessary, revising the terms of such agreement set forth in Exhibit 4.12.

5. **Caldera and Newco Covenants.**

   5.1   **Advice of Changes.**

   (a) During the period from the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, Caldera will promptly advise SCO in writing (i) of any event occurring subsequent to the date hereof that would reasonably be likely to render any representation or warranty of Caldera or Newco contained in Section 3 of this Agreement, if made on or as of the date of such event or the Effective Time, untrue or inaccurate, (ii) of any event that would reasonably be likely to have a Material Adverse Effect on Caldera, and (iii) of any material breach by Caldera or Newco of any covenant or agreement contained in this Agreement; provided, however, that the delivery of, or failure to deliver, any notice pursuant to this Section 5.1(a) shall not limit or otherwise affect the remedies available hereunder.

   (b) Ten days prior to the Effective Time, Caldera will deliver to SCO a certificate from Caldera's transfer agent indicating the number of shares of Common Stock outstanding at the end of business on the eleventh day preceding the Effective Time and a certificate from Caldera's Secretary indicating the number of shares of Caldera Common Stock issuable upon exercise or conversion of any outstanding options, warrants or convertible debentures outstanding on such date. Caldera will deliver to SCO by the fifteenth business day after the Effective Time a certificate from Caldera's transfer agent indicating the number of shares of Common Stock outstanding at the end of business on the day of the Closing (calculated without regard to the shares of Common Stock issued with respect to the First SCO Certificate) and a certificate from Caldera's Secretary indicating the number of shares of Caldera Common Stock issuable upon exercise or conversion of any outstanding options at the end of business on the day of the Closing.

   5.2   **Maintenance of Business.** During the period from the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, Caldera will use its best efforts to carry on and preserve its business and its relationships with customers, suppliers, employees and others in substantially the same manner as it has prior to the date hereof.

::ODMA\PCDOCS\DENLIB1\17279\17                             46

CONFIDENTIAL                                    SCO1269071

5.3  **Conduct of Business.** During the period from the date hereof until the earlier of the Effective Time or the termination of this Agreement in accordance with its terms, Caldera will continue to conduct its business and maintain its business relationships in the ordinary and usual course and consistent with past practice and, except as otherwise disclosed herein or in the Caldera Disclosure Letter, it will not, without the prior written consent of SCO, which consent shall not be unreasonably withheld or delayed, take any of the following actions where it would cause a Material Adverse Effect on Caldera:

(a) borrow any money except for (A) amounts that are not in the aggregate material to the financial condition of Caldera and its subsidiaries, taken as a whole or (B) pursuant to existing credit facilities;

(b) cause any of the material Caldera Assets to become subject to any Encumbrance, except for Caldera Permitted Encumbrances and except for Caldera Encumbrances arising under credit facilities existing as of the date hereof;

(c) dispose of any of Caldera Assets which are material to the Caldera Business;

(d) issue capital stock representing more than a 10% interest in the total outstanding securities of Caldera;

(e) merge, consolidate or reorganize with, or acquire any entity, except for transactions in which the aggregate consideration is below $15 million;

(f) amend the Certificate of Incorporation or Bylaws of Caldera or any of its subsidiaries or as otherwise expressly contemplated by this Agreement);

(g) agree to take, or permit any Caldera entity to take or agree to take, or enter into negotiations with respect to, any of the actions described in the preceding clauses in this Section 5.3(g).

Notwithstanding the foregoing, nothing in this Section 5.3 shall restrict or limit the conduct of any business of Caldera or its direct or indirect subsidiaries or the use or disposition of the Caldera Assets, other than as set forth in this Section 5.3.

5.4  **Stockholder Approval.** Caldera will call the Caldera Stockholders Meeting, to be held within 40 days after the Form S-4 shall have been declared effective by the SEC, to submit the Merger, the SCO Transaction and any related matters for the consideration and approval of the Caldera stockholders. The Prospectus/Proxy Statement will include a statement to the effect that Caldera's Board of Directors is recommending that Caldera stockholders vote in favor of the Merger and the SCO Transaction. Such meeting will be called, held and conducted, and any proxies will be solicited, in compliance with applicable law.

5.5  **Letter of Caldera's Accountants.** Caldera shall use its reasonable best efforts to cause to be delivered to SCO a letter of Arthur Andersen LLP, dated a date within two business days before the date on which the Form S-4 shall become effective and addressed to each of the Contributing Companies, in form and substance reasonably satisfactory to SCO and