customary in scope and substance for letters delivered by independent public accountants in connection with registration statements similar to the Form S-4.

      5.6    Prospectus/Proxy Statement. Caldera will mail to its stockholders in a timely manner, for the purpose of considering and voting upon the Merger and the SCO Transaction at the Caldera Stockholders Meeting, the Prospectus/Proxy Statement. SCO, Caldera and Newco will prepare and file the Prospectus/Proxy Statement with the SEC as promptly as practicable, and each will use its respective best reasonable efforts to cause the Form S-4 to become effective as soon after such filing as practicable. In this regard, SCO, Caldera and Newco will advise each other promptly as to the time at which the Form S-4 becomes effective and of the issuance by the SEC of any stop order suspending the effectiveness of the Form S-4 or the initiation of any proceedings for such purpose and each will use its respective reasonable best efforts to prevent the issuance of any stop order and to obtain as soon as possible the lifting thereof, if issued. Until the Effective Time, Caldera and Newco will advise SCO promptly of any requirement of the SEC for any amendment or supplement of the Form S-4 or for additional information, and will not at any time file any amendment of or supplement to the prospectus contained therein (or to the prospectus filled pursuant to Rule 424(b) of the SEC) which shall not have been previously submitted to SCO in reasonable time prior to the proposed filing thereof or to which SCO shall reasonably object or which is not in compliance in all material respects with the Securities Act and the rules and regulations issued by the SEC thereunder. None of the information relating to Caldera or Newco (or, to Caldera's or Newco's knowledge, any other person, contained in any document, certificate or other writing furnished or to be furnished by Caldera) included in (i) the Prospectus/Proxy Statement by Newco and/or Caldera at the time the Prospectus/Proxy Statement is mailed, at the time of the Caldera Stockholders Meeting to vote on the Merger and the SCO Transaction or at the Effective Time, as then amended or supplemented, or (ii) the Form S-4 at the time the Form S-4 becomes effective, as then amended or supplemented, will contain any untrue statement of a material fact or will omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading or necessary to correct any statement which has become false or misleading in any earlier communication with respect to the solicitation of proxies for the Caldera Stockholder Meeting. From and after the date the Form S-4 becomes effective and until the Effective Time, if any event known to Caldera or Newco occurs as a result of which the Prospectus/Proxy Statement or Form S-4 would include an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or if it is necessary at any time to amend the Form S-4 or the Prospectus/Proxy Statement to comply with the Securities Act, Caldera and Newco will promptly notify SCO and SCO, Caldera and Newco will prepare an amended or supplemented Form S-4 or Prospectus/Proxy Statement which will correct such statement or omission and will use its reasonable best efforts to cause any such amendment to become effective as promptly as possible. The Prospectus/Proxy Statement, as it relates to Caldera and Newco, will comply as to form in all material respects with the requirements of the Exchange Act and the rules and regulations thereunder in effect at the time the Prospectus/Proxy Statement is mailed.

      5.7    State Securities Law Compliance. Caldera and Newco shall use their respective reasonable best efforts to qualify the Newco Options to be granted upon cancellation of the Cancelled SCO Options to be assumed by Caldera pursuant hereto under the state

::ODMA\PCDOCS\DENLIB1\17279\17                 48

securities or "blue sky" laws of every jurisdiction of the United States in which (a) the records of Caldera or SCO as of the Effective Time, indicate that a holder of such options resides and (b) a Nasdaq Stock Market or other exemption from the qualification requirements under such laws is unavailable.

5.8   Regulatory Approvals. As promptly as reasonably practicable, Caldera and Newco will execute and file, or join in the execution and filing, of any application or other document that may be necessary in order to obtain the authorization, approval or consent of any governmental body, federal, state, provincial, local or foreign which may be reasonably required, or which SCO may reasonably request, in connection with the consummation of the transactions contemplated by this Agreement. Caldera and Newco will each use its respective reasonable efforts to promptly obtain all such authorizations, approvals and consents and will cooperate fully with the other parties in promptly seeking to obtain all such authorizations, approvals, and consents.

5.9   Necessary Consents. Caldera and Newco will each use its respective reasonable efforts to obtain the written consents under the Material Caldera Contracts and to take such other actions as may be necessary or appropriate to allow the consummation of the transactions contemplated hereby and to allow Caldera and Newco to carry on Caldera's business and the Group Business after the Effective Time.

5.10   Access to Information. From the date hereof until the Effective Time, Caldera and Newco will allow the Contributing Companies and its agents reasonable access to the files, books, records, technology and offices of Caldera or Newco reasonably requested by the Contributing Companies including, without limitation, any and all information relating to Taxes, commitments, contracts, leases, licenses and real, personal, intellectual and intangible property and financial condition. Caldera will use its reasonable efforts to cause its accountants to cooperate with the Contributing Companies and its agents in making available to such parties all financial information reasonably requested, including, without limitation, the right to examine all working papers pertaining to all Tax returns and financial statements prepared or audited by such accountants. No information or knowledge obtained by any party hereto in any investigation pursuant to this Section will affect or be deemed to modify any representation or warranty contained herein or the conditions to the obligations of the parties to consummate the Merger and the SCO Transaction. All information obtained by the Contributing Companies or its agents pursuant to this Section shall be kept confidential in accordance with the Nondisclosure Agreement.

5.11   Books and Records. If, in order properly to prepare documents required to be filed with governmental authorities (including taxing authorities) or its financial statements, it is necessary that any party hereto be furnished with additional information relating to the Group Assets, and such information is in the possession of Newco or Caldera, then Caldera and Newco on behalf of themselves and each member of the Caldera Group (including the Contributed Companies) agree to use its good faith efforts to promptly furnish such information to the party needing such information. This Section 5.11 shall survive Closing for two years except for records relating to preparation of and audit of tax returns, for which this Section 5.11 will survive until the expiration of the applicable Tax statute of limitations.

5.12 <u>Satisfaction of Conditions Precedent</u>. Caldera and Newco will each use their respective reasonable best efforts to satisfy or cause to be satisfied all the conditions precedent that are set forth in <u>Section 7</u> and to cause the Merger, the SCO Transaction and the other transactions contemplated by this Agreement to be consummated. Without limiting the foregoing, in connection with the agreements to be reached by the parties subsequent to the date hereof and prior to the Effective Time, the parties agree to negotiate in good faith to reach agreement on all matters to be included in such agreements promptly after the signing of this Agreement.

5.13 <u>Voting Agreement</u>. Caldera will use its reasonable best efforts to obtain Voting Agreements in the form attached as <u>Exhibit 4.11A</u> executed by the Caldera affiliates listed on <u>Exhibit 5.13B</u>.

5.14 <u>Sales Representative and Support Agreement</u>. The Sales Representative and Support Agreement shall be executed as of the Effective Time.

5.15 <u>Stockholders Agreement</u>. The Stockholders Agreement shall be executed as of the Effective Time.

5.16 <u>Caldera Employee Plans</u>.

(a) Newco will adopt the employee benefit plans maintained by Caldera (the "*Caldera Employee Plans*") and will use reasonable efforts to provide the Caldera Employee Plans to the transferring Employees as is provided to Caldera's employees who are similarly situated as soon as practicable. To the extent that Newco does not have Caldera Employee Plans in effect in a jurisdiction where there are transferring Employees, Newco shall adopt plans providing comparable benefits to the Caldera Employee Plans for said transferring Employees. From and after the Effective Time Newco shall provide all transferring Employees with the opportunity to participate in any employee stock option or other incentive compensation plan of Newco and its affiliates on substantially the same terms and subject to substantially the same conditions as are available to similarly situated employees of Caldera or Newco. Prior to the Effective Time, Caldera, Newco and SCO shall mutually agree upon an integration plan relating to the Merger and the SCO Transaction which shall include, among other things, provisions relating to compensation and other equity incentives for Employees. In addition, at the Effective Time, Newco shall use its best efforts to enter into employment agreements which reflect the terms set forth in the Key Employee Term Sheets (the form of which is attached hereto as <u>Exhibit 4.18B</u>) with the Key Employees who are identified on <u>Exhibit 4.18A</u> attached hereto.

(b) <u>Waiting Periods, Premiums and Deductibles</u>. Newco shall take all steps necessary to cause each Caldera Employee Plan to waive any "waiting period" or other requirement with respect to duration of employment with Newco which would prevent a transferring Employee or beneficiary thereof who is otherwise eligible to participate in such Caldera Employee Plan from participating in such Caldera Employee Plan immediately following the Effective Time. Newco shall credit each transferring Employee with all deductible payments and co-payments paid by such transferring Employee under any Group Employee Plan prior to the Effective Time during the current plan year for purposes of determining the extent to

which any such transferring Employee has satisfied any deductible or maximum out-of-pocket limitation under any Caldera Employee Plan for such plan year.

(c) <u>Recognition of Prior Service</u>. Newco shall take all steps necessary to cause each Caldera Employee Plan to recognize each transferring Employee's length of service under comparable employee benefit plans maintained by SCO for purposes of eligibility, participation, vesting and benefit accrual in such Caldera Employee Plan as if such transferring Employee had been employed by Newco for such period.

(d) <u>Waiver of Restrictions</u>. Newco shall take all steps necessary to cause each Caldera Employee Plan which is an "employee welfare benefit plan" under Section 3(1) of ERISA to waive any restrictions or limitations with respect to "pre-existing conditions" or prior medical history which would apply to transferring Employee or beneficiary thereof who is otherwise eligible to participate in such Caldera Employee Plan from participating in such Caldera Employee Plan without restriction or limitation.

5.17   <u>Indemnification and Insurance — Caldera</u>.

(a) The Certificate of Incorporation and Bylaws of Newco and Caldera shall contain the provisions with respect to indemnification and limitation of liability for monetary damages set forth in the Certificate of Incorporation and Bylaws of Caldera on the date hereof.

(b) From and after the Effective Time, Newco and Caldera shall honor, in all respects, all of the indemnity agreements entered into prior to the date hereof by Caldera, with its respective officers and directors, whether or not such persons continue in their positions with Newco or Caldera following the Effective Time. Following the Effective Time, Caldera's form of indemnification agreement shall be adopted as the form of indemnification agreement for Newco and the Caldera Surviving Corporation shall be afforded the opportunity to enter into such indemnification agreement, and shall be covered by such directors' and officers' liability insurance policies as Newco shall have in effect from time to time.

(c) After the Effective Time, Newco and Caldera will, jointly and severally, to the fullest extent permitted under applicable law, indemnify and hold harmless, each present and former director or officer of Caldera or any of its subsidiaries (collectively, the "<i>Indemnified Parties</i>") against any costs or expenses (including attorneys' fees), judgments, fines, losses, claims, damages, liabilities and amounts paid in settlement in connection with any claim, action, suit, proceeding or investigation, whether civil, criminal administrative or investigative, to the extent arising out of or pertaining to any action or omission in his or her capacity as a director or officer of Caldera arising out of or pertaining to the transactions contemplated by this Agreement or the transactions contemplated hereby for a period of six years after the date of this Agreement. In the event of any such claim, action, suit, proceeding or investigation (whether arising before or after the Effective Time), (a) any counsel retained for the defense of the Indemnified Parties for any period after the Effective Time will be reasonably satisfactory to the Indemnified Parties, (b) after the Effective Time, Caldera will pay the reasonable fees and expenses of such counsel, promptly after statements therefor are received, and (c) Caldera will cooperate in the defense of any such matter; provided, however, that Caldera

will not be liable for any settlement effected without its written consent (which consent will not be unreasonably withheld); and provided, further, that, in the event that any claim or claims for indemnification are asserted or made within such six-year period, all rights to indemnification in respect of any such claim or claims will continue until the disposition of any and all such claims. The Indemnified Parties as a group may be defended by only one law firm (in addition to local counsel) with respect to any single action, unless there is, under applicable standards of professional conduct, a conflict on any significant issue between the positions of any two or more Indemnified Parties.

(d) For the entire period from and after the Effective Time until at least six years after the Effective Time, Newco will cause Caldera to use its commercially reasonable efforts to maintain in effect directors' and officers' liability insurance covering those persons who are currently covered by Caldera's directors' and officers' liability insurance policy (a copy of which has been heretofore delivered or made available to SCO) of at least the same coverage and amounts, containing terms that are no less advantageous with respect to claims arising at or before the Effective Time than Caldera's policies in effect immediately prior to the Effective Time to those applicable to the then current directors and officers of Newco and Caldera; provided, however, that in no event shall Newco or Caldera be required to expend in excess of 150% of the annual premium currently paid by Caldera for such coverage in which event Newco shall purchase such coverage as is available for such 150% of such annual premium.

(e) Newco and Caldera shall pay all expenses, including attorneys' fees, that may be incurred by any Indemnified Parties in enforcing the indemnity and other obligations provided for in this Section 5.17.

(f) In the event Newco or Caldera or any of its respective successors or assigns (a) consolidates with or merges into any other person or entity and shall not be the continuing or surviving corporation or entity of such consolidation or merger, or (b) transfers or conveys all or a substantial portion of its properties or assets to any person or entity, then, and in each such case, to the extent necessary to effectuate the purposes of this Section 5.17, proper provision shall be made so that the successors and the assigns of Newco and Caldera assume the obligations set forth in this Section 5.17.

(g) The provisions of this Section 5.17 shall survive the Effective Time and are intended to be for the benefit of, and shall be enforceable by, each officer and director of Caldera SCO and the Contributed Company Group described in Sections 5.17 and his or her heirs and representatives.

5.18  Indemnification and Insurance — Employees.

(a) The Certificate of Incorporation and Bylaws of Newco shall contain the provisions with respect to indemnification and limitation of liability for monetary damages set forth in the Certificate of Incorporation and Bylaws of Caldera as of the date hereof which provisions shall not be amended, repealed or otherwise modified for a period of ten years from the Effective Time in any manner that would adversely affect the rights thereunder of individuals who at the Effective Time were directors, officers, employees or agents of (i) the Contributed Companies or (ii) of SCO (A) to the extent involved in the Group Business and (B) provided

they become Employees, officers or directors of Newco ("*Group Persons*"), unless such modification is required by law.

(b) From and after the Effective Time, Newco shall honor, in all respects, all of the indemnity agreements entered into prior to the date hereof by SCO or any member of the Contributed Company Group with any Group Persons, whether or not such persons continue in its positions with Newco following the Effective Time. Following the Effective Time, Caldera's form of indemnification agreement shall be adopted as the form of indemnification agreement for Newco and all continuing officers and directors of Newco shall be afforded the opportunity to enter into such indemnification agreement, and shall be covered by such directors' and officers' liability insurance policies as Newco shall have in effect from time to time.

(c) After the Effective Time, Newco will, jointly and severally, to the fullest extent permitted under applicable law, indemnify and hold harmless, subject to Section 5.18(g), each of the Group Persons against any costs or expenses (including attorneys' fees), judgments, fines, losses, claims, damages, liabilities and amounts paid in settlement in connection with any claim, action, suit, proceeding or investigation, whether civil, criminal administrative or investigative, to the extent arising out of or pertaining to any action or omission in his or her capacity as a director or officer of SCO or any of the Contributed Companies arising out of or pertaining to the transactions contemplated by this Agreement for a period of six years after the Closing Date. Notwithstanding the foregoing, the parties agree that claims against the Group Persons shall first be made against any directors' and officers' liability insurance, if any, then maintained by SCO or any of the Contributed Companies that provides coverage for such Group Persons. In the event of any such claim, action, suit, proceeding or investigation (whether arising before or after the Effective Time), (a) any counsel retained for the defense of the Group Persons for any period after the Effective Time will be reasonably satisfactory to the Group Persons, (b) after the Effective Time, Newco will, subject to Section 5.18(g), pay the reasonable fees and expenses of such counsel, promptly after statements therefor are received, and (c) Newco will cooperate in the defense of any such matter; provided, however, that Newco will not be liable for any settlement effected without its written consent (which consent will not be unreasonably withheld); and provided, further, that, in the event that any claim or claims for indemnification are asserted or made within such six-year period, all rights to indemnification in respect of any such claim or claims will continue until the disposition of any and all such claims. The Group Persons as a group may be defended by only one law firm (in addition to local counsel) with respect to any single action unless there is, under applicable standards of professional conduct, a conflict on any significant issue between the positions of any two or more Group Persons.

(d) Newco shall pay all expenses, including attorneys' fees, that may be incurred by any Group Persons in enforcing the indemnity and other obligations provided for its benefit in this Section 5.18.

(e) In the event Newco or any of its respective successors or assigns (i) consolidates with or merges into any other person or entity and shall not be the continuing or surviving corporation or entity of such consolidation or merger, or (ii) transfers or conveys all or a substantial portion of its properties or assets to any person or entity, then, and in each such case, to the extent necessary to effectuate the purposes of this Section 5.18 proper provision shall

be made so that the successors and the assigns of Newco assume the obligations set forth in this Section 5.18.

(f) The provisions of this Section 5.18 shall survive the Effective Time and are intended to be for the benefit of, and shall be enforceable by, each of the Group Persons and his or her heirs and representatives.

(g) Notwithstanding any provision of this Section 5.18 to the contrary, Newco shall not assume and shall have no Liability relating to claims made by SCO optionees arising out of the repurchase, sale, exchange or cancellation of SCO capital stock or options in connection with the SCO Transaction (other than its obligations under Section 1.3(a)(ii)) or specifically relating to matters arising out of the SCO Retained Business.

5.19 Distribution to SCO Shareholders.

Caldera and Newco acknowledge that SCO may wish to distribute to the shareholders of SCO all or part of its Newco Common Stock. Six (6) months from the Closing Date, SCO shall be entitled to make such a distribution; provided, however, that after such six (6) month period, SCO will not distribute to its shareholders more than 25% of the shares of Newco Common Stock acquired by SCO pursuant to this agreement during a six (6) month period. Newco will facilitate such distribution by using its reasonable best efforts to take such actions as may be required under the federal securities laws and regulations in order for such shares of Newco Common Stock being distributed to the SCO Shareholders to be registered with the Securities and Exchange Commission. At the time of such registrations, Newco and SCO will enter into an agreement containing customary indemnification provisions which shall be substantially equivalent to the indemnification provisions in the promissory note issued by SCO to Caldera as of the date hereof.

6. Conditions Precedent to Obligations of SCO.

The obligations of SCO and the other Contributing Companies hereunder are subject to the fulfillment or satisfaction on or before the Closing of each of the following conditions (any one or more of which may be waived by SCO on behalf of all said entities, but only in a writing signed by SCO):

6.1 Accuracy of Representations and Warranties. The representations and warranties of Caldera and Newco contained in this Agreement (i) shall have been true and correct as of the date of this Agreement and (ii) on and as of the Closing Date with the same force and effect as if they had been made on the Closing Date, except (A) in each case and in the aggregate does not constitute a Material Adverse Effect on Caldera and (B) for those representations and warranties that address matters only as of a particular date (which shall remain true and correct as of such particular date), and SCO shall receive a certificate to such effect executed on behalf of Caldera and Newco by a duly authorized officer of Caldera and of Newco.

6.2 Covenants. Caldera and Newco shall have performed and complied in all material respects with all of its respective covenants in this Agreement required to be complied

with prior to the Effective Time, and SCO shall receive a certificate to such effect executed by a duly authorized officer of Caldera and of Newco at the Effective Time.

6.3     Compliance with Law.  There shall be no order, decree or ruling by any governmental agency which would prohibit or render illegal the transactions contemplated by this Agreement.

6.4     Form S-4.  The Form S-4 shall have become effective under the Securities Act and shall not be the subject of any stop-order and the Prospectus/Proxy Statement shall on the Effective Time not be subject to any proceedings commenced seeking a stop-order or overtly threatened by the SEC.

6.5     Opinion of Caldera and Newco's Counsel.  SCO shall have received from Brobeck, Phleger & Harrison LLP, counsel to Caldera and Newco, an opinion in the form of Exhibit 6.5 attached hereto, with such assumptions and qualifications as are customary for such opinions.

6.6     Stockholder Approval.  The principal terms of this Agreement, the Merger and the SCO Transaction shall have been approved and adopted by the Caldera stockholders and the principal terms of this Agreement and the SCO Transaction shall have been approved and adopted by the SCO stockholders, in accordance with California law and its Articles of Incorporation and Bylaws.

6.7     Tax Opinion.  SCO shall have received an opinion in form and substance satisfactory to SCO, from its counsel, to the effect that the SCO Transaction will be treated as a transfer of property to Newco by the Contributing Companies governed by Section 351 of the Internal Revenue Code. In rendering such opinion, counsel shall be entitled to rely on representations of the parties and of Caldera stockholders as reasonably requested by counsel in connection with such tax opinion, and the opinion may contain such assumptions and qualifications as are customary for such opinions. The parties agree to cooperate with counsel by providing the representations referred to above and Caldera shall use its best efforts to obtain the requested stockholder representations.

6.8     Designees to the Board of Directors of Newco.  The Board of Directors of Newco shall have taken appropriate action to elect Doug Michels and another individual designated by SCO to the Board of Directors of Newco, effective upon the Effective Time.

6.9     Nasdaq Listing.  The Newco Common Stock to be issued in the Merger and in the SCO Transaction shall have been approved for quotation on the Nasdaq Stock Market, subject to notice of issuance.

6.10    HSR Act.  All waiting periods (and any extensions thereof) under the HSR Act applicable to transactions contemplated hereby shall have expired or shall have been terminated.

6.11    Ancillary Agreements.  Caldera and Newco shall have executed and delivered counterparts of each of the Ancillary Agreements to which they are a party.

6.12 <u>Delivery of Newco Shares</u>. Newco shall have delivered the First SCO Certificate to SCO.

7. <u>Conditions Precedent to Obligations of Caldera and Newco</u>.

The obligations of Caldera, Merger Sub and Newco hereunder are subject to the fulfillment or satisfaction on or before the Closing of each of the following conditions (any one or more of which may be waived by Caldera on behalf of all such parties, but only in a writing signed by Caldera):

7.1 <u>Accuracy of Representations and Warranties</u>. The representations and warranties of SCO contained in this Agreement (i) shall have been true and correct as of the date of this Agreement and (ii) shall be true and correct as of the Closing Date with the same force and effect as if they had been made on the Closing Date, except (A) in each case and in the aggregate as does not constitute a Material Adverse Effect on the Group Business and (B) for those representations and warranties that address matters only as of a particular date (which shall remain true and correct as of such particular date), and Caldera shall receive a certificate to such effect executed on behalf of SCO by a duly authorized officer of SCO.

7.2 <u>Covenants</u>. SCO and the Contributing Companies shall have performed and complied in all material respects with all of its respective covenants in this Agreement required to be complied with prior to the Effective Time; and Caldera shall receive a certificate to such effect signed on behalf of SCO by a duly authorized officer of SCO.

7.3 <u>Compliance with Law</u>. There shall be no order, decree or ruling by any court or governmental agency which would prohibit or render illegal the transactions contemplated by this Agreement.

7.4 <u>Consents</u>. There shall have been obtained on or before the Effective Time all permits, consents and authorizations as set forth on Section 7.4 of the SCO Disclosure Letter, where the failure to obtain same has resulted, or reasonably would be expected to result, in a Material Adverse Effect on the Group Business.

7.5 <u>Form S-4</u>. The Form S-4 shall have become effective under the Securities Act and shall not be the subject of any stop-order or proceedings seeking a stop-order and the Prospectus/Proxy Statement shall at the Effective Time not be subject to any proceedings seeking a stop-order commenced or overtly threatened by the SEC.

7.6 <u>Opinion of Counsel to SCO</u>. Caldera shall have received from Wilson Sonsini Goodrich & Rosati, Professional Corporation, counsel to SCO and the Contributing Companies, an opinion in the form of <u>Exhibit 7.6</u> attached hereto, with such assumptions and qualifications as are customary for such opinions.

7.7 <u>Caldera Stockholder Approval</u>. The principal terms of this Agreement, the Merger and the SCO Transaction shall have been approved and adopted by the Caldera stockholders and the principal terms of this Agreement and the SCO Transaction (including the contribution and transfer of the Contributed Assets) shall have been approved and adopted by the

CONFIDENTIAL                                                                SCO1269081

SCO Stockholders each in accordance with Delaware Law and their respective Certificates of Incorporation and Bylaws.

7.8  Tax Opinion. Caldera and Newco shall have received an opinion in form and substance satisfactory to them from their counsel, to the effect that the Merger will be treated for federal income tax purposes as a tax-free reorganization within the meaning of Section 368 of the Internal Revenue Code. In rendering such opinion, counsel shall be entitled to rely on representations of the parties and of Caldera stockholders as reasonably requested by counsel in connection with such tax opinion, and the opinion may contain such assumptions and qualifications as are customary for such opinions. The parties agree to cooperate with counsel by providing the representations referred to above and Caldera shall use its best efforts to obtain the requested stockholder representations.

7.9  HSR Act. All waiting periods (and any extensions thereof) under the HSR Act applicable to the transactions contemplated hereby shall have expired or shall have been terminated.

7.10  Ancillary Agreements. The Contributing Companies shall have executed and delivered counterparts of each of the Ancillary Agreements to which they are a party.

7.11  Key Employee Term Sheets. Each of the Key Employees set forth on Exhibit 4.18A shall have executed their respective Key Employee Term Sheet.

8. Termination of Agreement.

8.1  Termination. This Agreement may be terminated at any time prior to the Effective Time, whether before or after approval of the Merger by the stockholders of Caldera or SCO:

(a) by mutual written agreement of SCO and Caldera;

(b) by SCO, if there has been a material breach by Caldera or Newco of any representation or warranty set forth in this Agreement on the part of Caldera or Newco, and, as a result of such breach the conditions set forth in Section 6.1 would not then be satisfied and such breach is not cured within thirty (30) days after notice thereof from SCO to Caldera (except that no cure period shall be provided for a breach by Caldera or Newco which by its nature cannot be cured);

(c) by SCO, if there has been a material breach by Caldera or Newco of any covenant or agreement set forth in this Agreement to be performed by Caldera or Newco or a material breach by the Caldera Significant Stockholders of any covenant or agreement set forth in the Voting Agreement and as a result of such breach, the conditions set forth in Section 6.2 would not then be satisfied and such breach is not cured within thirty (30) days after written notice thereof from SCO to Caldera (except that no cure period shall be provided for a breach by Caldera or Newco which by its nature cannot be cured);

(d) by Caldera, if there has been a material breach by SCO of any representation or warranty set forth in this Agreement on its part, and as a result of such breach

the conditions set forth in Section 7.1 would not then be satisfied and such breach is not cured within thirty (30) days after written notice thereof from Caldera to SCO (except that no cure period shall be provided for a breach by SCO which by its nature cannot be cured);

(e) by Caldera, if there has been a material breach by SCO of any covenant or agreement set forth in this Agreement to be performed by SCO, and as a result of such breach, the conditions set forth in Section 7.2 would not then be satisfied and such breach is not cured within thirty (30) days after written notice thereof from Caldera to SCO (except that no cure period shall be provided for a breach by SCO or SCO which by its nature cannot be cured);

(f) by Caldera or SCO, if the Merger and the SCO Transaction shall not have been consummated on or before the Final Date for any reason, provided that, the right to terminate this Agreement under this Section 8.1(f) shall not be available to any party whose wrongful action or failure to act or whose breach of this Agreement or any Ancillary Document, is the cause of such non-consummation;

(g) by Caldera or SCO, if a permanent injunction or other order by any federal or state court would make illegal or otherwise restrain or prohibit the consummation of the Merger and/or the SCO Transaction shall have been issued and shall have become final and nonappealable;

(h) by Caldera or SCO, if the stockholders of SCO do not approve the SCO Transaction at a duly convened SCO Stockholders Meeting or any adjournment thereof by reason of the failure to obtain the required vote (a "*SCO Stockholder Rejection*"); provided, that the right to terminate this Agreement under this Subsection (h) shall not be available to SCO where the failure to obtain SCO stockholder approval shall have been caused by any breach of this Agreement or any Ancillary Document by SCO;

(i) by Caldera, if (a) the Board of Directors of SCO shall have withdrawn (or modified in a manner adverse to the SCO Stockholder Approval or the consummation of the SCO Transaction) its approval or recommendation of the SCO Transaction or this Agreement, (b) SCO shall have failed to include in the Proxy Statement/Prospectus the recommendation of the Board of Directors of SCO in favor of approval of the SCO Transaction or this Agreement, (c) the Board of Directors of SCO shall have recommended any SCO Alternative Proposal, which meets the criteria of 4.14(b)(i)-(v), or (d) the Board of Directors of SCO shall have resolved to do any of the foregoing (collectively, a "*Change in SCO Board Recommendation*");

(j) by Caldera or SCO at any time prior to the SCO Stockholder Approval, if the Board of Directors of SCO shall have recommended or accepted a SCO Alternative Proposal provided that SCO is not in breach of Section 4.14;

(k) by Caldera or SCO, if the stockholders of Caldera do not approve the SCO Transaction at a duly convened Caldera Stockholders Meeting or any adjournment thereof by reason of the failure to obtain the required vote; provided, that the right to terminate this Agreement under this Subsection (k) shall not be available to Caldera where the failure to obtain Caldera Stockholder Approval shall have been caused by any breach of this Agreement or any Ancillary Document by Caldera; or

::ODMA\PCDOCS\DENLIB1\17279\17                  58

CONFIDENTIAL                                                              SCO1269083

CONFIDENTIAL                                                              SCO1269083

(i) by SCO, if (a) the Board of Directors of Caldera shall have withdrawn (or modified in a manner adverse to the Caldera Stockholder Approval) its approval or recommendation of the SCO Transaction, the Merger or this Agreement, (b) Caldera shall have failed to include in the Proxy Statement/Prospectus the recommendation of the Board of Directors of Caldera in favor of approval of the SCO Transaction, the Merger or this Agreement, (c) the Board of Directors of SCO shall have resolved to do any of the foregoing.

As used herein, the "*Final Date*" shall be February 28, 2001; and except that if a temporary, preliminary or permanent injunction or other order by any Federal or state court which would prohibit or otherwise restrain consummation of the Merger and/or the SCO Transaction shall have been issued and shall remain in effect on February 28, 2001, and such injunction shall not have become final and non-appealable, either party, by giving the other written notice thereof on or prior to February 28, 2001, may extend the time for consummation of the Merger and/or the SCO Transaction up to and including the earlier of the date such injunction shall become final and non-appealable or March 31, 2001, so long as such party shall, at its own expense, use its reasonable best efforts to have such injunction dissolved.

8.2  Notice of Termination. Any termination of this Agreement under Section 8.1 above will be effected by the delivery of notice of the terminating party to the other party hereto of such termination, specifying the grounds therefore.

8.3  Liability. If this Agreement is terminated pursuant to Section 8.1, the parties shall have no further obligation or liability to each other except that the parties will remain liable for: (i) the payment of the Termination Fee, if any, payable under Section 8.4 below; (ii) damages resulting from their intentional fraud or willful breach of this Agreement (which will not be limited by Section 8.4); and (iii) obligations under the parties' nondisclosure agreement. Sections 13.1 – 13.13 of this Agreement will survive any termination of this Agreement.

8.4  Termination Fee.

(a) Termination Fee.

(i) If this Agreement is terminated by Caldera pursuant to Section 8.1(i), then SCO shall promptly pay to Caldera (by wire transfer or cashier's check) a nonrefundable fee equal to 3 1/2% of the number of shares of Newco Common Stock equal to the SCO Percentage Interest multiplied by the average closing price of the Caldera Common Stock for the ten (10) days following the public announcement of this Agreement (the "*Termination Fee*") within two (2) business days following delivery of the notice of termination by Caldera pursuant to Section 8.2;

(ii) If this Agreement is terminated by SCO pursuant to Section 8.1(l), then Caldera shall promptly pay to SCO (by wire transfer or cashier's check) the Termination Fee within two (2) business days following delivery of the notice of termination by SCO pursuant to Section 8.2; and

(iii) If (A) this Agreement is terminated by SCO or Caldera pursuant to Section 8.1(h) after a SCO Alternative Proposal has been publicly disclosed or by

::ODMA\PCDOCS\DENLIB1\17279\17            59

Caldera pursuant to Section 8.1(e) as the result of a breach by SCO of Section 4.14 and (B) within 6 months of termination of this Agreement SCO shall enter into an agreement for a SCO Alternative Proposal which is subsequently consummated or within 12 months of termination of this Agreement SCO shall consummate a SCO Alternative Proposal, then SCO shall pay to Caldera (by wire transfer or cashier's check) the Termination Fee within two (2) business days upon the consummation of such SCO Alternative Proposal.

(b) SCO and Caldera acknowledge that the agreements contained in this Section 8.4 are an integral part of the transactions contemplated by this Agreement, and that, without these agreements, neither SCO nor Caldera would enter into this Agreement; accordingly, if either Caldera or SCO fail to timely pay the amounts due pursuant to this Section 8.4, and, in order to obtain such payment, the other party commences a suit which results in a judgment against SCO or Caldera, as the case may be, for the amounts set forth in this Section 8.4 and such judgment is not set aside or reversed, such party shall pay the other party's reasonable costs and expenses (including attorneys' fees and expenses) in connection with such suit, together with interest on the amounts set forth in this Section 8.4 at the prime rate as published in *The Wall Street Journal* on the date such payment was required to be made.

9. Survival of Representations.

9.1   Survival of Representations. Except as otherwise expressly provided herein, all representations, warranties and covenants of the parties contained in this Agreement will remain operative and in full force and effect, regardless of any investigation made by or on behalf of the parties to this Agreement, until the second anniversary of the Effective Time, whereupon such representations, warranties and covenants will expire (except for covenants and other provisions hereof that by its express terms survive for a longer period); provided however that all representations and warranties and covenants relating to Tax matters shall survive for the period of the applicable statute of limitations.

10. Escrow and Indemnification.

10.1   Escrow Fund. In accordance with Section 1.3(b) hereof, Caldera shall deliver to the Escrow Agent Shares of Newco Common Stock equal to an aggregate of ten percent (10%) of the SCO Percentage Interest (the "*Escrow Fund*"). The Escrow Fund shall be held by the Escrow Agent for a period of one year from the Effective Time pursuant to the terms set forth in the Escrow Agreement. The Escrow Fund shall be available to compensate Caldera Surviving Corporation and Newco pursuant to the Indemnification obligations of SCO.

10.2   Indemnification by SCO. SCO agrees, notwithstanding any provision of Section 1.4 hereof to the contrary, to indemnify Newco and Caldera against, and to hold Newco and Caldera harmless from, all Loss arising out of any of the following (even if included in the Assumed Liabilities as otherwise being or allegedly being a Liability of one of the Contributed Companies or of the Contributed Subsidiaries):

(a) any of the Excluded Liabilities, except as may be provided in Section 12;

CONFIDENTIAL                                                                                    SCO1269085

(b) any demand, claim, debt, suit, cause of action, arbitration, investigation or other proceeding made or asserted by any Contributing Company or any stockholder, creditor, or Affiliate of any Contributing Company or by any receiver or trustee in bankruptcy of any Contributing Company of the property or assets of any Contributing Company, asserting that the transfer of the Contributed Stock and Contributed Assets to Newco hereunder constitutes a fraudulent conveyance, fraudulent transfer or a preference under any applicable foreign, state or federal law, including but not limited to the United States Bankruptcy Code, or any breach by any Contributing Company of its representations and covenants in Section 1.4(e) hereof or any Liabilities related to non-compliance with bulk transfer laws in connection with the SCO Transaction;

(c) the SCO Retained Business;

(d) any material Liability omitted from the Group Financial Statements that was required by GAAP to be included or reflected therein (collectively, the "*Omitted Balance Sheet Liabilities*");

(e) any claim or cause of action brought by any SCO employee relating in any way to the terms and conditions of the employee's employment with SCO or the termination thereof, which arises prior to the Closing Date, regardless of when such claim or cause of action may be discovered or brought;

(f) any breach of the representations and warranties in Section 2 hereof.

10.3  Notwithstanding Section 10.2, all liabilities for Taxes shall be subject only to the separate tax indemnification provisions of Section 12.

10.4  Limitations on Indemnification. SCO shall not have any liability under this Section 10 unless the aggregate amount of Loss attributable exceeds $1,000,000, and, in such event, SCO shall be required to pay the entire amount of such Loss from the first dollar thereof. SCO shall not have liability for any Loss in excess of the amount determined by multiplying (i) the number of shares of Newco Common Stock equal to ten percent (10%) of the SCO Percentage Interest by (ii) the Caldera Closing Price, except that as such Losses relate to the SCO IP Rights, SCO shall not have liability for any Loss in excess of the amount determined by multiplying (i) the number of Shares of Newco Common Stock equal to fifty percent (50%) of the SCO Percentage Interest by (ii) the Caldera Closing Price. Notwithstanding the preceding sentence, there shall be no limitations on liability pursuant to this Section 10 relating to intentional fraud or misrepresentation by SCO.

10.5  Indemnification Procedures.

(a) Claim Procedure. If Caldera or Newco has or claims to have incurred or suffered Losses for which it is or may be entitled to indemnification, compensation or reimbursement under this Section 10 (the "*Indemnitee*"), such Indemnitee may, on or prior to the first anniversary of the Effective Time, deliver a claim notice (a "*Claim Notice*") to SCO. Each Claim Notice shall (i) state that such Indemnitee believes that it is entitled to indemnification, compensation or reimbursement under this Section 10, (ii) contain a brief description of the circumstances supporting such Indemnitee's belief that such Indemnitee is so entitled to

::ODMA\PCDOCS\DENLIB1\17279\17         61

CONFIDENTIAL                                       SCO1269086

indemnification, compensation or reimbursement and (iii) contain a non-binding, preliminary estimate of the amount of Loss such Indemnitee claims to have so incurred or suffered (the "*Claimed Amount*").

(b)  *Response Notice*.  Within twenty (20) business days after receipt by SCO of a Claim Notice, SCO may deliver to the Indemnitee who delivered the Claim Notice a written response (the "*Response Notice*") in which SCO:  (i) agrees that the full Claimed Amount is to be paid to the Indemnitee; (ii) agrees that a part, but not all, of the Claimed Amount is to be paid to the Indemnitee; or (iii) indicates that no part of the Claimed Amount is to be paid to the Indemnitee.  Any part of the Claimed Amount that SCO does not agree should be paid to the Indemnitee shall be the "*Contested Amount*."  If a Response Notice is not delivered to Caldera within such twenty (20) business day period, then SCO shall be deemed to have agreed that the full Claimed Amount is to be paid to the Indemnitee.

(c)  Payment of Claimed Amount.  If SCO delivers a Response Notice agreeing that some or all of the Claimed Amount is to be paid to the Indemnitee (the "*Agreed Amount*"), SCO shall pay the Indemnitee in cash, within twenty (20) business days from the date of the Response Notice, any portion of the Agreed Amount that is not satisfied by delivery of Escrow Shares pursuant to the terms of the Escrow Agreement.  Such payment shall be deemed to be made in full satisfaction of the claim described in such Claim Notice, provided, however, that if such claim involves ongoing Losses, then such payment shall be deemed to be made in full satisfaction only of the Losses incurred as of the date specified in such Claim Notice.

(d)  Settlement.  If SCO delivers a Response Notice indicating that there is a Contested Amount, SCO and the Indemnitee shall attempt in good faith for a period of thirty (30) days from the date of the Response Notice to resolve the dispute related to the Contested Amount.  If the Indemnitee and SCO resolve such dispute, such resolution shall be binding on SCO and all of the Indemnitees and a settlement agreement shall be signed by the Indemnitee and SCO containing the terms of such resolution.

(e)  Third Party Claims.

(i)  Within fifteen (15) days after receipt of notice of commencement of any action by any third party evidenced by service of process or other legal pleading, or with reasonable promptness after the assertion in writing of any claim by a third party, Caldera shall give SCO written notice thereof together with a copy of such claim, process or other legal pleading, and SCO shall have the right to undertake the defense, thereof through a legal representative of SCO's own choosing.

(ii)  In the event that SCO, by the thirtieth day after receipt of notice of any such claim (or, if earlier, by the tenth day preceding the day on which an answer or other pleading must be served in order to prevent judgment by default in favor of the person asserting such claim), does not elect to defend against such claim, Caldera (upon further notice to SCO) will have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk of SCO subject to the right of SCO to assume the defense of such claims at any time prior to settlement, compromise or final determination thereof.  The

reasonable costs of defense of any third party action or claim by Caldera shall be paid from the Escrow Shares.

(iii) Notwithstanding Sections 11.5(e)(i) and (ii), Caldera shall have the right to retain control of the defense of any third party action or claim described in Section 11.5(e)(i) which involves potential Losses in excess of the value of the Escrow Shares remaining in the Escrow Account or could reasonably be expected to materially affect Caldera's on-going operations. In such event, SCO shall have the right to be present at the negotiation, defense and settlement of such action or claim. Caldera shall not agree to any settlement of any such action or claim without the consent of SCO, which shall not be unreasonably withheld.

(f) Satisfaction. In the event SCO incurs liability for Losses which is not satisfied by delivery of shares from the Escrow Fund, SCO may elect to pay the amount due either in cash or by delivering shares of Newco Common Stock. For this purpose, the Newco Common Stock will be valued at the average closing price of the Caldera Common Stock for the ten days following the public announcement of this Agreement, as adjusted for stock splits, stock dividends, changes in the Caldera Ratio and other recapitalizations.

11. Employee Matters.

   11.1 Right to Offer Employment.

   (a) Employees. Schedule 11.1 of the SCO Disclosure Letter contains a preliminary list (the "*Preliminary List*") of each Contributed Company employee or consultant and each other employee or consultant of SCO or the Group Business who works in, or provides services in connection with or is assigned to the Group Business or any of the Group Assets (each a "*Potential Employee*"). Within five (5) days after the date hereof, SCO shall deliver to Newco a final list of the Potential Employees (the "*Final List*"), which list shall identify those Potential Employees who are active employees of the Group Business as of that date, including those on vacation, sick leave, maternity or parental leave, disability leave, family leave or personal leave of absence, who work full or part time, and which shall separately identify those employees who are on a workers' compensation-related or disability leave or long-term sick leave. The Final List shall contain, with respect to each Potential Employee, a true and accurate list of all locations at which Potential Employees are working as of such date, together with the date of hire, location of employment, years of employment or service, current annual base salary or base wage, and of all other compensation arrangements for such Potential Employees, including bonuses, commissions or other compensation arrangements or benefit plans whether oral or written, contractual or discretionary. Within sixteen (16) days of receipt of the Final List, Caldera shall deliver to SCO a list that identifies: (i) those Potential Employees of the Group Business to whom it shall make offers of employment and (ii) those Potential Employees of the Contributed Companies that it expects to retain, each pursuant to Section 11.1(e) (the "*Designated Employees*"). For purposes of this Agreement, "*Employees*" means only those Designated Employees given offers of employment or retained by Newco pursuant to Section 11.1(e). For a period of two years from the Closing Date, neither Newco, any of its subsidiaries nor their employees (including former employees of SCO) may employ, make offers of employment to or otherwise solicit any employees of SCO as of the date hereof who are not Designated Employees.

CONFIDENTIAL                                         SCO1269088

(b) The parties acknowledge and agree that in those jurisdictions in which the EC Directive 77/187 (the Acquired Rights Directive) (the "*Employment Regulations*") apply, the contracts of employment of the Designated Employees designated as "Employees" pursuant to Section 11.1(e) will have effect from the Effective Time (which shall be the "time of transfer" for the purposes of the Employment Regulations) as if originally made between Newco and each such Employee. If any contract of employment is not disclosed by SCO in the Final List or any other contract of employment of any employee other than an Employee is in effect as if originally made between Newco and the employee concerned as a result of the Employment Regulations: (i) Newco may, upon becoming aware of any such contract, terminate it forthwith; and (ii) SCO and each Group Business shall indemnify and hold harmless Newco against any costs, claims, liabilities and expenses of any nature (including legal expenses on an indemnity basis) arising out of such termination and against sums payable to or on behalf of such employee in respect of his employment whether arising before or after the Closing.

(c) Newco shall credit Employees with their then current accrued vacation with SCO or the Contributed Companies. All other emoluments and outgoings (including and without limitation, wages, salaries, bonuses, commissions, withholding taxes, social security contributions, pension contributions) and other costs and expenses of, and all other obligations in respect of, the Employees in respect of the period to, and including, the Closing shall be discharged by SCO and any relevant Group Business. SCO and each Group Business shall indemnify and keep indemnified Newco against all liabilities arising from any failure by SCO and any Group Business so to discharge.

(d) SCO and each Group Business shall indemnify and hold harmless Newco from and against all losses, costs, claims, demands, actions, fines, penalties, awards, liabilities and expenses (including legal expenses on an indemnity basis) (i) which are attributable to any act, omission, breach or default by SCO or any Group Business prior to the Closing in respect of any of the obligations of SCO or any Group Business (in either case, whether arising under common law, statute, custom or otherwise) to or in relation to any of its employees or former employees (including but not limited to any liability arising out of the termination or dismissal of any Potential Employee or former employee and which Newco may incur or suffer as a result of succeeding to SCO or any Group Business as the employer of any Potential Employee); or (ii) in connection or as a result of any claim or demand by a Potential Employee on the grounds that the Potential Employee has suffered any loss, harm or damage in relation to pension rights caused by the transactions set forth in this Agreement (including without limitation the calculation of any transfer value of accrued rights on transfer) to the Potential Employees; or (iii) in connection or as a result of any claim or demand by a Potential Employee that the identity of Newco is to the Potential Employee's detriment, whether or not such claim or claims arises or arise prior to, on or after the Closing.

(e) Offers of Employment. Effective at the Effective Time, Newco shall offer to employ any of the Designated Employees of the Group Business (other than Designated Employees of the Contributed Companies) subject to Newco's standard terms, conditions and policies of employment and the terms of this Agreement, and shall offer such Designated Employees as it determines, in its sole discretion, to hire (i) salary consistent with the salary earned by such Potential Employees prior to the Effective Time but only to the extent such salary is not in excess of industry norms (taking into account the geographic location of the

::ODMA\PCDOCS\DENLIB1\17279\17                                64

Employees); and (ii) participation in incentive compensation arrangements consistent with the incentive compensation arrangements of employees of Caldera in comparable positions. This Section 11.1(b) shall not be construed to create any third party beneficiary rights or any other rights of any kind in any Designated Employee and no Designated Employee shall have any cause of action as a third party beneficiary. Such offers of employment that will be extended by Newco to Employees will be on the same basis of time commitment (full or part time) as such Employee was employed immediately prior to the Effective Time. In addition, SCO shall cause the termination of any Potential Employees of the Contributed Companies who are not Designated Employees prior to the Effective Time. Unless the parties otherwise agree, on the date of the Closing, SCO shall notify each Employee who accepts an offer of employment extended by Newco as of the Effective Time, in a writing reasonably satisfactory to Newco, that such Employee's employment with SCO or any of its direct or indirect subsidiaries is then terminated. For a period of two years from the Closing Date, neither SCO nor any of its subsidiaries nor any of its employees may employ, make offers of employment to or otherwise solicit any of the employees of Newco or any of its subsidiaries as of the date hereof or any of the Designated Employees.

(f) Severance. SCO shall be responsible for any and all severance that may become due as a result of the transaction contemplated by this Agreement for all employees except for those Employees hired by Newco pursuant to Section 11.1(b); provided, however, that if Caldera does not make a reasonable offer of employment to a Designated Employee then Caldera shall be responsible for any and all severance that may become due as a result of the transaction or the termination of such employee.

11.2 Termination of Employment.

(a) SCO agrees to comply with the provisions of the WARN Act and any other federal, state, provincial or local or foreign statute or regulation or EU Directive regulation regarding termination of employment, plant closing or layoffs and to perform all obligations required of SCO with respect to the cessation of any operations of the Group Business or any other business of SCO or its subsidiaries, or the termination, re-assignment, re-location or change in position as terms and conditions of employment of any Employee (or other employee of them) who does not accept Newco's offer of employment.

(b) In the United States, SCO shall (i) provide continuation health care coverage to all employees of the Group Business and their qualified beneficiaries who incur a qualifying event prior to the Effective Time, who are not given offers of employment by Newco or who do not accept Newco's offer of employment pursuant to Section 11.1(b) in accordance with the continuation health care coverage requirements of COBRA and (ii) provide COBRA continuation coverage to any former employee of the Contributed Company Group who was previously employed in the Group Business (collectively, the "*Former Employees*") and its qualified beneficiaries to whom, at the Effective Time, such continuation coverage was being provided or to whom SCO was under an obligation to provide such continuation coverage at the election of such Former Employee or qualified beneficiary.

11.3 Cooperation. SCO, Caldera and Newco agree, for themselves and its affected subsidiaries, to cooperate fully with respect to the actions which are necessary or

CONFIDENTIAL

SCO1269090

reasonably desirable to accomplish the transactions contemplated hereunder, including, without limitation, the provision of records and information as each may reasonably request and in order to meet the notification and consultation requirements of the Acquired Rights Directive in accordance with the relevant regulations or laws adopting such directive in all relevant jurisdictions, or any other similar notification and consultation obligation the making of all appropriate filings under ERISA and the Internal Revenue Code.

## 12. Tax Matters

12.1 <u>Transaction Taxes; Representation; Transaction Tax Indemnity</u>. SCO and Caldera shall bear equally any and all sales, use, excise, value added, registration, stamp, property, documentary, transfer, withholding and similar taxes, levies and duties (including all real estate transfer taxes, but not any real estate transfer taxes that would be triggered as a result of a change in control of a corporation) incurred, or that may be payable to any taxing authority, with respect to the sale, transfer, or delivery of the Contributed Stock and Assets and the assumption of the Assumed Liabilities, including any such taxes, levies and duties imposed in connection with such transactions (collectively, "*Transaction Taxes*"); provided, however, that Caldera shall not be responsible for any Transaction Taxes in excess of $300,000. Newco and SCO agree to cooperate in minimizing the amount of any Transaction Taxes and in the filing of all necessary documentation and all Tax returns, reports and forms ("*Returns*") with respect to all Transaction Taxes, including any available pre-sale filing procedures.

Notwithstanding any other provision of this Agreement, the Unixware source code, object code and related documentation ("*Unixware Software*") or other software shall remain the property of SCO until (i) expeditiously delivered to Newco at SCO's facility in Murray Hill, New Jersey, (ii) transferred by remote telecommunication from SCO's place of business, to or through Newco's computer with no tangible personal property transferred to Newco, such as storage media, except for user manuals, or (iii) installed by SCO on Newco's computer without the transfer of title or possession of storage media or any tangible personal property other than user manuals. Newco agrees that it will not transfer the Unixware Software or other software on tangible media into California.

12.2 <u>Treatment of Indemnity Payments</u>. All payments made by SCO or Newco, as the case may be, to or for the benefit of the other party pursuant to any indemnification obligations under this Agreement shall, to the extent appropriate under applicable Tax law, be treated for Tax purposes as adjustments to the value of the Contributed Stock and Contributed Assets.

12.3 <u>Indemnity for Taxes</u>.

(a) Except as otherwise provided in this <u>Section 12.3</u>, from and after the Closing, SCO shall timely pay and indemnify and save Newco and its Affiliates and Caldera harmless from any liability for, or arising out of or based upon, or relating to any Tax (including, without limitation, any obligation to contribute to the payment of a Tax determined on a consolidated basis or otherwise with respect to a group of corporations that includes or included SCO) (i) of SCO or any member of the affiliated group of corporation (as defined in Section 1504 of the Code or otherwise) of which SCO is a member (other than any member of

the Contributed Company Group or with respect to any Tax relating to the income, business, assets, property or operations of the Group Business) for any taxable period; (ii) relating to the income, business, assets, property or operations of the Group Business or of the Contributed Company Group to the extent that such liability for Tax is not reflected in the SCO Disclosure Letter or the Group Financial Statements and is either (A) in respect of any taxable period that ends prior to the Closing Date or in respect of any taxable period that includes, but does not end, on the Closing Date, the portion of such period ending on the Closing Date or (B) with respect to an excess loss account in the stock of any Contributed Company or from a deferred intercompany transaction (including any such transaction resulting from a distribution or deemed distribution of Newco Common Stock by any Contributing Company) entered into on or prior to the Closing Date and is triggered as a result of the Contributed Company Group ceasing to be affiliated with SCO; (iii) under Subpart F of the Code attributable to transactions undertaken by SCO or any of its affiliates before or after the Effective Time; or (iv) as a result of a breach of any representation, warranty, covenant or agreement made herein by SCO.

(b) Notwithstanding anything contained in this Section 12.3(b), SCO shall not be obligated to indemnify Newco for any Tax (including, without limitation, any obligation to contribute to the payment of a Tax determined on a consolidated basis with respect to a group of corporations that includes or included SCO) by reason of an election or deemed election (including any protective election) with respect to transactions described in this Agreement made or filed post-Closing by Newco or any member of the Contributed Companies under Section 338 of the Internal Revenue Code. Further, no Section 338 election shall be made with respect to any of the transactions described in this Agreement.

(c) Except to the extent otherwise provided in this Section 12.3(c), Newco shall timely pay and indemnify and save SCO and its Affiliates harmless from any liability for, or arising out of or based upon or relating to any Tax (including, without limitation, any obligation to contribute to the payment of a Tax determined on a consolidated basis with respect to a group of corporations that includes or included SCO) (i) relating to the income, business, assets, property or operations of the Group Business by Newco and its Affiliates or any member of the Contributed Company Group in respect of all taxable periods beginning after the Closing Date, or, in the case of any taxable period that includes but does not end on the Closing Date, the portion of such period commencing on the day following the Closing Date; (ii) to the extent such liability for Tax is reflected in the Group Financial Statements or the SCO Disclosure Letter and such liability is for Tax relating to the income, business, assets, property or operations of the Group Business or of any member of the Contributed Company Group; (iii) under Subpart F of the Code attributable to transactions undertaken by Newco or Caldera or any of their Affiliates after the Effective Time; or (iv) as a result of a breach of any representation, warranty, covenant or agreement made herein by Newco, Caldera or Merger Sub.

(d) If, as a result of any action, suit, investigation, audit, claim, assessment or amended Tax Return, there is any change after the Closing Date in an item of income, gain, loss, deduction or credit that results in an increase in a Tax liability for which SCO would otherwise be liable pursuant to paragraph (a) of this Section 12.3, and such change results in a decrease in the Tax liability of Newco or any Affiliate or successor thereof for any taxable year or period beginning after the Closing Date or for the portion of any Straddle Period beginning after the Closing Date (assuming for purposes of this sentence that Newco and its

CONFIDENTIAL    SCO1269092