MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)
David E. Melaugh (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaimant Novell, Inc.**

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, <br><br> Plaintiff and Counterclaim-Defendant, <br><br> vs. <br><br> NOVELL, INC., a Delaware corporation, <br><br> Defendant and Counterclaim-Plaintiff. | **REPLY MEMORANDUM IN SUPPORT OF NOVELL'S MOTION FOR SUMMARY JUDGMENT ON SCO'S FIRST CLAIM FOR SLANDER OF TITLE BASED ON FAILURE TO ESTABLISH SPECIAL DAMAGES** <br><br> *[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]* <br><br> Case No. 2:04CV00139 <br><br> Judge Dale A. Kimball |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................1

    A.     SCO Has No Evidence Of Any Realized Damages................................................1

        1.     SCO provides no evidence of a "realized" loss under the correct
              legal standard. ................................................................................3

        2.     The undisputed evidence shows that SCO's rights survive intact..............6

        3.     SCO's attempt to create a factual dispute concerning its practical
              ability to pursue licenses after this suit is to no avail...............................8

            a.     Professor Pisano's testimony is irrelevant and insufficient to
                  raise a genuine factual dispute......................................................8

            b.     Mr. McBride's testimony is irrelevant and insufficient to
                  raise a genuine factual dispute....................................................10

    B.     SCO Presents No Evidence Of Specific And Particular Lost Sales ...................12

        1.     Novell is entitled to summary adjudication as to SCO's
              unidentified potential SCOsource customers...........................................12

            a.     Special damages require proof of specific lost transactions.........13

            b.     The limited exception for customers who are "impossible"
                  to identify does not apply ...........................................................15

        2.     Novell is entitled to summary adjudication with regard to potential
              SCOsource customers that SCO has named ...........................................17

        3.     Novell is entitled to summary adjudication with regard to the
              companies that signed SCOsource licenses ............................................19

    C.     SCO Has Failed To Meet Its Burden Of Showing That The Alleged
        Slander Was The Direct And Immediate Cause Of Harm ................................20

    D.     SCO's "Market Reaction" Theory Cannot Save Its Slander Of Title Claim ........25

    E.     SCO Has Failed To Provide Evidence To Sustain Its Only Legally
        Supportable Claim To Attorneys Fees And Costs...............................................25

III.   CONCLUSION ................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.,*
  432 F. Supp. 2d 1319 (S.D. Fla. 2006)........................................................................20

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)........................................................................................................14

*Annbar Assocs. v. American Express Co.,*
  565 S.W.2d 701 (Mo. Ct. App. 1978)..........................................................................16

*Bass v. Planned Mgmt. Servs., Inc.,*
  761 P.2d 566 (Utah 1988)..............................................................................................26

*Brumbaugh v. Sandoz Pharm. Corp.,*
  77 F. Supp. 2d 1153 (D. Mont. 1999) ..........................................................................10

*Bothmann v. Harrington,*
  458 So. 2d 1163 (Fla. Ct. App. 1984) ..........................................................................21

*Childers v. Commerce Mortgage Investments,*
  579 N.E.2d 219 (Ohio Ct. App. 1989) ...........................................................................7

*Clarkston Cmty. Corp. v. Asotin County Port Dist.,*
  472 P.2d 558 (Wash. Ct. App. 1970) .......................................................................17-18

*Colquhoun v. Webber,*
  684 A.2d 405 (Me. 1996) ..............................................................................................27

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.,*
  312 F.3d 1292 (10th Cir. 2002) ....................................................................................26

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.,*
  2001 U.S. Dist. LEXIS 24905 (D. Utah Mar. 28, 2001).............................................1

*Cont'l Casualty Co. v. Southwestern Bell Tel. Co.,*
  860 F.2d 970 (10th Cir. 1988) ................................................................................12, 17

*Cont'l Nut Co. v. Robert L. Berner Co.,*
  393 F.2d 283 (7th Cir. 1968) ................................................................................*passim*

*Dowse v. Doris Trust Co.*,
  208 P.2d 956 (Utah 1949) ........................................................................27

*Electric Furnace Corp. v. Deering Milliken Research Corp.*,
  383 F.2d 352 (6th Cir. 1967) ..........................................................14, 17

*Erick Bowman Remedy Co. v. Jensen Salsbery Labs., Inc.*,
  17 F.2d 255 (8th Cir. 1926) ....................................................................15

*Evers v. General Motors Corp.*,
  770 F.2d 984 (11th Cir. 1985) ...................................................................9

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  75 F. Supp. 2d 235 (S.D.N.Y. 1999),
  *aff'd by*, 314 F.3d 48 (2d Cir. N.Y. 2002) ............................................15, 17

*First Sec. Bank v. Banberry Crossing*,
  780 P.2d 1253 (Utah 1989)......................................................................26

*GKC Michigan Theaters v. Grand Mall*,
  564 N.W.2d 117 (Mich. Ct. App. 1997)..................................................24

*G.O. Reaugh v. McCollum Exploration Co.*,
  163 S.W.2d 620 (Tex. 1942) ...............................................................3, 7

*Gillmor v. Cummings*,
  904 P.2d 703 (Utah Ct. App. 1995) .........................................................27

*Herzog v. Arthrocare Corp.*,
  2003 U.S. Dist. LEXIS 5224 (D. Me. Mar. 21, 2003) ..............................10

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
  434 F. Supp. 2d 598 (N.D. Iowa 2006) ....................................................17

*Johnson v. Benson*,
  725 P.2d 21 (Colo. Ct. App. 1986) ..........................................................14

*Jones v. Rabson & Broocks*,
  2003 Tex. App. LEXIS 1443 (Tex. App. Feb. 13, 2003).........................3, 4

*Kirby v. Wildenstein*,
  784 F. Supp. 1112 (S.D.N.Y. 1992)..........................................................14

*Macia v. Microsoft*
  152 F. Supp. 2d 535 (D. Vt. 2001)............................................................27

*Maragos v. Union Oil Co.,*
  584 N.W.2d 850 (N.D. 1998) ........................................................................ 12, 17

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.,*
  2003 U.S. Dist. LEXIS 1652 (N.D. Ill. Feb. 4, 2003) .......................................... 2, 12

*McNichols v. Conejos-K Corp.,*
  482 P.2d 432 (Colo. Ct. App. 1971) ..................................................................... 19

*Mid-State Fertilizer v. Exchange Nat'l Bank,*
  877 F.2d 1333 (7th Cir. 1989) ................................................................................ 9

*Montgomery Props. Corp. v. Economy Forms Corp.,*
  305 N.W.2d 470 (Iowa 1981) ............................................................................... 20

*Norman v. Bozeman,*
  605 So. 2d 1210 (Ala. 1992) ................................................................................. 14

*Ostarly v. Johnson,*
  700 S.W.2d 643 (Tex. Ct. App. 1985) ..................................................................... 3

*Patel v. Soriano,*
  848 A.2d 803 (N.J. Super. Ct. App. Div. 2004) ................................................ 23, 24

*Shenefield v. Axtel,*
  545 P.2d 876 (Ore. 1976) ...................................................................................... 17

*TXO Prod. Corp. v. Alliance Res. Corp.,*
  419 S.E.2d 870 (W. Va. 1992) ............................................................................... 27

*Teilhaber Mfg. Co. v. Unarco Materials Storage,*
  791 P.2d 1164 (Colo. Ct. App. 1989) .......................................................... 16, 17, 23

*Valley Colour, Inc. v. Beuchert Builders, Inc.,*
  944 P.2d 361 (Utah 1997) ....................................................................................... 1

## MISCELLANEOUS

Restatement (Second) of Torts
  § 632 ................................................................................................................ 20, 21
  § 633 .................................................................................................. 15, 20, 21, 22, 23

## I.     INTRODUCTION

After three years of litigation, SCO seeks more than $100 million in "special damages" based on nothing but some hearsay accounts of what mostly unidentified third parties supposedly said about unspecified potential licenses.  SCO offers no declaration or deposition testimony from any entity that can confirm it declined a license because of Novell's statements, offers no admissible evidence as to the specifics of the transactions that Novell allegedly frustrated, and does not advance a single fact to show that the UNIX copyrights at issue would be worth a penny less today than they were worth when Novell asserted its claim to own them in 2003.  If anything, the record shows that the Linux market over which SCO would like to assert the copyrights has grown dramatically since then, and that the value of the copyrights – assuming for purposes of argument that there is any copyrighted UNIX code in Linux – has increased.

Establishing the "special damages" that are an essential element of SCO's slander of title claim requires far more.  SCO must show that it has suffered out-of-pocket losses that were: (1) realized; (2) actual and specific; and (3) the direct and immediate result of Novell's statements.  As described below, SCO has not established a genuine issue of material fact on any of these requirements for special damages.  Novell is therefore entitled to summary judgment.

## II.     ARGUMENT

### A.     SCO Has No Evidence Of Any Realized Damages.

SCO does not dispute that legally cognizable special damages must be based on a "realized" loss.  *See Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.* (*"CTI- I"*), No. 1:00 CV 98 K, 2001 U.S. Dist. LEXIS 24905, at *11 (D. Utah Mar. 28, 2001) (Exhibit A hereto), *aff'd* 312 F.3d 1292 (10th Cir. 2002); *Valley Colour, Inc. v. Beuchert Builders, Inc.*, 944

P.2d 361, 364 (Utah 1997). The "realized" loss requirement precludes claims that seek recovery

for a sale or business opportunity that has only been delayed and not "irreparably diminished."

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, No. 00 CV 1164, 2003 U.S.

Dist. LEXIS 1652, at * 20 (N.D. Ill. Feb. 4, 2003) (special damages for loss of property value

requires that slander caused actual lost sale or "had a damaging residual effect on the

vendibility . . . of the property") (Exhibit B hereto). Although SCO contends that unspecified

SCOsource profits "have been irreparably lost, not deferred temporarily" (SCO's Response in

Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title

Based on Failure to Establish Special Damages ("Opp'n") (PACER No. 307), at 2), SCO cannot

point to any <u>evidence</u> that it has actually realized a single irrevocable loss.

 To the contrary, SCO's witnesses conceded throughout discovery that the potential

customers who mentioned Novell's statements about copyright ownership also told SCO they

were merely <u>deferring</u> licensing discussions until SCO resolved its dispute with Novell.

(Memorandum in Support of Novell's Motion for Summary Judgment on SCO's First Claim for

Slander of Title Based on Failure to Establish Special Damages ("Opening Br.") (PACER

No. 288), at 16-18.) Furthermore, SCO does not dispute that, if it prevails here and establishes

copyright ownership, it will have the right to seek <u>the same amounts</u> from these and other

potential licensees that it could have sought in 2003. Nor does SCO dispute that, to the extent

these licensing targets remain recalcitrant and decline licenses after it clears the alleged cloud on

its title, SCO will have the <u>same right to enforce</u> the copyrights through litigation.[1] At most, the

---

[1] Novell does not, of course, concede that Linux in fact infringes any of the copyrights at
issue. Novell merely maintains that, if SCO establishes title to the copyrights here, SCO will

(Footnote continues on next page.)

evidence demonstrates that some vague licensing opportunities may have been *deferred*.  This is not a "realized" loss and SCO's slander of title claim fails as a matter of law.

> **1.    SCO provides no evidence of a "realized" loss under the correct legal standard.**

Where allegedly slandered property remains "vendible" after the cloud is removed, the plaintiff cannot establish a claim for special damages based on "lost sales" if the property's value did not decrease as a result of the temporary cloud on title.  *See G.O. Reaugh v. McCollum Exploration Co.*, 163 S.W.2d 620, 622 (Tex. 1942).  Relying on this principle, courts hold that proof of special damages does not end with the showing of a lost sale:  the plaintiff also must show the difference – if any – between the price that would have been realized had the sale not been frustrated and the market value of the property at the time of trial with the cloud removed. *Ostarly v. Johnson*, 700 S.W.2d 643, 644 (Tex. Ct. App. 1985).  A cause of action only lies where there is affirmative proof that the property is worth less after trial than it was prior to the slander.  *Id.*; *Reaugh*, 163 S.W.2d at 622.  Absent such proof, there is no "realized" loss.

SCO's opposition charges that, in setting out this rule, Novell is seeking to impose upon SCO a duty to mitigate.  (Opp'n at 35.)  This complaint mischaracterizes the issue.  The requirement of a "realized" loss is an affirmative element of the "special damages" that are part of any slander of title claim, and the failure to provide any evidence of a realized loss renders the claim deficient as a matter of law.

SCO's failure to present sufficient evidence of a realized loss is well illustrated by the recent decision in *Jones v. Rabson & Broocks*, No. 01-01-01210-CV, 2003 Tex. App. Lexis 1443

---

(Footnote continued from previous page.)

have the opportunity to try to prove infringement in licensing negotiations or in litigation.  SCO does not dispute this.

(Tex. App. Feb. 13, 2003) (Exhibit C hereto). In *Jones*, the plaintiff brought a slander of title claim alleging that the defendant's recording of a deed on plaintiff's property frustrated a sale that plaintiff had been negotiating. Plaintiff presented evidence that the potential purchaser would have paid $25,000 for his property if not for the cloud created by defendant's actions. But the trial judge granted summary judgment for the defendant on the ground, among others, that there was no evidence of special damages.

The problem was that plaintiff had not provided any evidence of the market value of his property at the time of the summary judgment motion with the cloud on title removed. In affirming the grant of summary judgment, the appellate court explained:

> A plaintiff may recover the amount he would have realized from the lost sale minus the amount for which he could have sold the land at the time of trial with the cloud removed . . . . The time of trial here was March 26, 2001 -- the date of the summary judgment hearing . . . . Although Jones provided evidence that he was unable to complete the sale for $ 25,000, <u>he provided no evidence of the market value of the property at the time of trial. Without such evidence, the trial court could not calculate special damages, even if it determined the Rabson defendants had slandered Jones's title. Accordingly, we hold the trial court did not err in rendering summary judgment on this claim.</u>

*Id.* at *13 (emphasis added).

Like the plaintiff in *Jones*, SCO has not put forth any evidence of the current value of its supposed copyrights, nor even for a single one of its supposedly lost licensing opportunities. As just one example, in the context of the alleged loss SCO suffered when     **REDACTED**

(*see* Declaration of Mark James ("James Decl.") (PACER Nos. 308-320), filed May 18,

2007, Ex. 80 ¶¶ 13-14 (Sontag Decl.)), SCO has not offered any evidence of what this opportunity would be worth if SCO prevails in establishing ownership of the copyrights.[2]

SCO fares no better with its other putative licensees. There is no evidence that SCO realized any loss in the context of any licensing opportunity with Dell, Google, Merrill Lynch, the Department of Defense, *etc.* For these entities, SCO never puts forth any evidence of what the opportunity was worth at the time prior to Novell's statements **or** of what it would be worth if SCO prevails on copyright ownership. SCO has not offered any testimony from any of these potential customers and, with no evidence on either end of the spectrum, SCO cannot show a realized loss. The same holds, of course, for the licensing targets that SCO fails to even name.

For the companies that did take SCOsource licenses, there is still no realized loss, although the problem is in reverse. SCO argues that it was "forced to ask for and accept lower prices [for these licenses] than it would have had there not been a cloud over its title [because] [c]ustomers used the cloud over SCO's title as bargaining leverage in their negotiations with SCO." (Opp'n at 20.) But there is nothing in the record to show what these licensees would have paid prior to Novell's statements. Given the lack of evidence that even one of SCO's licensees would have paid more, there is no basis for finding that SCO suffered a realized loss when it chose to accept the payments it negotiated with these licensees.

---

[2] Obvious questions arise: Would HP be willing to pay SCO <u>exactly</u> what it sought in 2003? Might HP be willing to pay SCO <u>more</u> now, given that SCO would have established in a court of law its ownership of the UNIX copyrights? Or, would HP now – for some unexplained reason – only be willing to pay <u>less</u>? If so, couldn't SCO recover what it seeks by suing HP for copyright infringement? SCO never entertains these questions and so has not shown any realized loss.

SCO's complete failure of proof as to any realized loss dooms its slander of title claim.[3]

> **2.    The undisputed evidence shows that SCO's rights survive intact.**

Because SCO bears the burden to show it suffered some "realized" loss, Novell is entitled to summary judgment as long as there is an absence of evidence that SCO can meet its burden. As discussed above, the record is devoid of any such evidence.

More than that, however, the record is replete with evidence to the contrary. The only evidence in the record about the value of SCO's supposed copyrights is that potential licensees told SCO they would revisit SCO's offer to license if SCO establishes title to the UNIX copyrights. At pages 16-18 of its opening brief, Novell catalogued some of the testimony from SCO's own executives admitting to this. SCO's opposition brief confirms it, with almost a dozen references to evidence that licensees were only temporarily declining licenses and that SCO decided to shut down the SCOsource program only until SCO resolved its litigation with Novell. (*See, e.g.*, Opp'n, ¶¶ 23, 24, 26, 30, 35, 37, 41, 42.)

SCO admits this in its 10-K for fiscal year 2006. SCO stated there that its minimal SCOsource revenues were "in part, attributable to Novell's claim of UNIX copyright ownership." But SCO characterized the situation as a temporary one – it declared that Novell's assertions "may have caused potential customers to <u>delay or forego licensing until an outcome in this legal</u>

---

[3] SCO's experts Christine Botosan and Gary Pisano do not provide relevant testimony on this issue.

**REDACTED**

(James Decl., Ex. 87 ¶ 6 (Botosan Decl.).)

**REDACTED**

(James Decl., Ex. 71 ¶ 6 (Pisano Decl.).) Neither of them takes the required step of comparing what SCO would have received absent Novell's statements to what SCO would receive in the marketplace if it prevails here.

matter has been reached."  (Second Supplemental Declaration of Kenneth Brakebill ("2nd Supp.

Brakebill Decl."), Ex. 13 at 26 [SCO 10-K for 2006] (emphasis added).)

In addition, as Novell explained in its opening papers (at 27-28), the assets allegedly

slandered here – the UNIX copyrights – are not wasting assets that have lost value since Novell

made its statements.  Instead, the intellectual property at issue gives its owner the rights to

demand royalties or bring lawsuits against those who infringe.  It is undisputed that these rights

still exist, and it is undisputed that whoever establishes ownership in this Court will have the

legal ability to enforce them.  As a result, to award SCO damages for its unrealized and

temporary losses here would amount to a double recovery that enables SCO to "have its cake and

eat it too."  The law does not allow this.  *Reaugh,* 163 S.W.2d at 622; *Childers v. Commerce*

*Mortgage Investments*, 579 N.E.2d 219, 222 (Ohio Ct. App. 1989).

SCO tries to distinguish Novell's authorities by arguing that real property is different

from intellectual property.  (Opp'n at 36-37.)  The two are indeed different, but with exactly the

opposite effect SCO requires.  As noted, if SCO prevails here on its copyright ownership claim,

it will be able to pursue licenses with – or copyright infringement suits against – HP, Google,

Dell, and its other prospective licensees.  Allowing SCO to obtain damages from Novell here

based on the hypothetical licenses SCO might have entered into with them, while SCO retains its

full unencumbered rights to seek licenses or infringement damages, would amount to a

quintessential double recovery.

SCO's response is that losses from the sale of real property become "'realized or

liquidated' under very different circumstances" than losses from frustrated licensing transactions.

(*Id.* at 36.)  SCO emphasizes that a seller of real property transfers title to the property, while

SCO's licensees would "obtain[ ] a right-to-use the intellectual property, not title to the

7

intellectual property" itself.  (*Id.*)  In this context, the distinction is meaningless.  The crux of the

matter is not whether SCO (or Novell) can retain title to the UNIX copyrights when licensing

them out.  <u>What matters is that SCO seeks compensation for an allegedly frustrated transaction</u>

<u>while – if it prevails here – it will have the right to enter into that same transaction, and that the</u>

<u>value of the property in question – the UNIX copyrights – is therefore undiminished</u>.  There is no

evidence that SCO's rights to license or litigate have been extinguished or reduced, and the

temporary rebuffs SCO received have not caused it to lose anything irrevocably.[4]

> **3.    SCO's attempt to create a factual dispute concerning its**
> **practical ability to pursue licenses after this suit is to no avail.**

Because SCO cannot dispute that the intellectual property rights at stake persist in full,

SCO is left to offer conclusory and speculative testimony about whether licensing targets <u>might</u>

take licenses after a judgment in this litigation, and about SCO's <u>practical ability</u> to sue infringers

who continue to reject its overtures.  SCO's evidence on these topics is legally irrelevant, and too

general and conclusory to give rise to a genuine issue of material fact.

> **a.    Professor Pisano's testimony is irrelevant and**
> **insufficient to raise a genuine factual dispute.**

**REDACTED**

(James Decl., Ex. 71 ¶ 11 (Pisano Decl.).)  He offers no facts to support his

---

[4] SCO makes no effort to distinguish the *Pisano*, *Dent*, and *Stiles* cases cited by Novell in its opening brief (at 30).  These cases establish that a plaintiff cannot substitute a slander of title claim for an action to enforce the obligations of third parties.  If SCO declines to pursue alleged third party infringers – assuming it establishes that it has a legitimate right to do so – then that loss will be a result of SCO's acts rather than Novell's previous statements.

conclusion.  Pisano merely relies on his                **REDACTED**

                    **REDACTED**                                (*Id.*)  Even if

considered by the Court, this testimony does not raise a genuine dispute as to whether SCO has

established a "realized" loss.

    First, Dr. Pisano does not explain his basis for contending there has been  **REDACTED**

          **REDACTED**          Platitudes about          **REDACTED**

  – absent any real analysis or facts – do not create a genuine issue of material fact.

*Mid-State Fertilizer v. Exchange Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989);

*Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).  Indeed, the only evidence

in the record on this point is SCOsource head Chris Sontag's testimony that the

                    **REDACTED**

                    (2nd Supp. Brakebill Decl., Ex. 14 at 90-91 (Sontag 3/07 Dep.).)

Assuming *arguendo* that there is copyrighted UNIX code in Linux, therefore, the value of the

UNIX copyrights has only increased in the interim.

    Second, Dr. Pisano offers no facts to support his conclusion about the

                    **REDACTED**

                    His unsupported, uncorroborated bare opinion

cannot raise a genuine factual issue.  *Mid-State,* 877 F.2d at 1339; *Evers,* 770 F.2d at 986.

    Third, Pisano never says that

                    **REDACTED**

                    (James Decl., Ex. 71 ¶ 11 (Pisano Decl.).)  This

9

inappropriately flips onto Novell the burden of proving that SCO <u>would not fail</u>, when SCO

bears the burden of proving a "realized" loss.  This cannot defeat summary judgment.  *See*

*Herzog v. Arthrocare Corp.*, No. 02-76-P-C, 2003 U.S. Dist. LEXIS 5224, at **34-37, n.13

(D. Me. Mar. 21, 2003) (Exhibit D hereto); *Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d

1153, 1155-1156 (D. Mont. 1999) ("plaintiff criticizes certain aspects of these studies, but she

produced no epidemiological study . . . that does make the causal link between Parlodel and her

condition;" "[s]he must come forward with reliable scientific evidence of her own to defeat a

summary judgment motion when her case is based on the expert's proof").

> **b.      Mr. McBride's testimony is irrelevant and insufficient
> to raise a genuine factual dispute.**

SCO's Darl McBride goes further and opines that it is

**REDACTED**

(James Decl., Ex. 81 ¶¶ 10-14 (McBride Decl.).)  His testimony is also legally irrelevant and

factually unsupported.

As a legal matter, Mr. McBride's testimony misses the point.  What matters here is the

value of the UNIX copyrights that Novell allegedly slandered.  SCO admits this at page 1 of its

Opposition:  "<u>it was the copyrights that were being licensed</u>."  (Opp'n at 1 (emphasis added).)

But Mr. McBride and SCO have simply not proffered any evidence of

**REDACTED**

**REDACTED**     But it is the value of the allegedly slandered intellectual property that is at issue – **REDACTED** –               **REDACTED**

There are evidentiary defects in Mr. McBride's testimony as well.

**REDACTED**

His testimony is unspecific, speculative, vague, and not tied to the issue at hand – *i.e.*, whether the copyrights at issue have irreparably lost their value.[5]

**REDACTED**

(James Decl., Ex. 81 ¶ 13 (McBride Decl.).)

**REDACTED**

[6]

**REDACTED**

---

[5]

**REDACTED**

(2nd Supp. Brakebill Decl., Ex. 14 (Sontag Dep. at 14-15).)  There is no basis for assuming that resurrecting the program would be an insurmountable task.

[6] During the briefing on Novell's motion to dismiss SCO's slander of title claim in 2004, Novell invited SCO to bring a declaratory judgment action to resolve the parties' ownership dispute.  (Reply in Support of Novell's Motion to Dismiss Amended Complaint (11/8/04) (PACER No. 56) at 24.)  If SCO had done so, it could have had its ownership claim adjudicated without having to plead and prove tort elements like malice, causation, and special damages.  In addition, if SCO prevailed, it could have tested its ability to license in the crucible of the

(Footnote continues on next page.)

## B.    SCO Presents No Evidence Of Specific And Particular Lost Sales.

The hallmark of a claim for special damages is evidence of specific and particular losses. Special damages are "out-of-pocket losses" that must be "proven by specific evidence as to the time, cause and amount." *Cont'l Casualty Co. v. Southwestern Bell Tel. Co.,* 860 F.2d 970, 976 (10th Cir. 1988). "[T]he nature of 'special damages' [is] such as [that they] really took place. They are not to be implied but are to be specifically proved." *Cont'l Nut Co. v. Robert L. Berner Co.,* 393 F.2d 283, 286 (7th Cir. 1968). *Accord Marseilles,* 2003 U.S. Dist LEXIS 1652, at **13-14. Alleged transactions that lack "a reasonable degree of certainty . . . are not recoverable" as special damages because they are "too remote." *Maragos v. Union Oil Co.,* 584 N.W. 2d 850, 852 (N.D. 1998).

SCO's opposition posits several categories of lost profits. But SCO has not presented evidence of any actual out-of-pocket losses for any of those categories. This failure is another reason that SCO's slander of title claim cannot survive.

### 1.    Novell is entitled to summary adjudication as to SCO's unidentified potential SCOsource customers.

SCO contends that "many potential licensees never contacted SCO at all because of Novell's false claims, or did not identify Novell even though they were deterred by Novell's false claims." (Opp'n at 2.) SCO does not identify these putative customers by name, does not explain its bases for assuming that any of them would have agreed to accept a license, does not proffer any evidence of how much each or any of these entities would have supposedly paid, and

(Footnote continued from previous page.)

marketplace. Rather than speculating now about what might happen if SCO prevails and why, SCO could have actually gone to the Linux end-users and vendors it believes infringe, and – were it successful, with a judgment establishing title in hand – demanded licenses. SCO declined Novell's invitation and, as a result, SCO now has to prove "special damages" by establishing a "realized loss." Summary judgment is the result.

does not show how much profit SCO would have supposedly realized from any of the transactions. Given this <u>complete absence of any identifying evidence</u> on the more than one thousand entities who never responded to its licensing solicitation letters, SCO cannot prove it suffered any "special damages" for this category of potential customers.

      **a.**      **Special damages require proof of specific lost transactions.**

When a cause of action requires a showing of special damages, the plaintiff must provide specific information about the customers and the transactions that it supposedly lost. SCO's attempt to recover for these unidentified, speculative, and contingent licenses are precisely what the safeguards associated with "special damages" are designed to avoid.

The Seventh Circuit's decision in *Continental Nut*, 393 F.2d 283, is instructive. The plaintiff in *Continental Nut* alleged that defendant's letter impugning the quality of its nuts caused it to suffer special damages in the form of lost customer sales. The plaintiff named three customers who stopped purchasing from it, and also pointed to its loss of 140 other customers over two years that it did not identify by name. *Id.* at 285. But the plaintiff provided no specific evidence on its supposedly lost sales. The court explained that "the record [was] barren with respect to evidence of the sales and profit figures concerning the three customers" plaintiff identified, and that there was "no evidence with respect to sales and profit figures relating to the other 140 previous customers, who did not reorder from the plaintiff . . . ." *Id.* Based on this failure of evidence on the subject transactions, the court held that plaintiff could not make out a case for special damages:

> [S]pecial damages in the form of profits lost because of the withdrawal of patronage by such customers, to be recoverable, <u>must be proved with that specificity which shows the loss of profit attributable to patronage withheld by the particular customer</u> and

> that such withholding was the result of the publication.  This the
> plaintiff failed to do.  And, such is the nature of 'special damages'.
> They are such as really took place.  <u>They are not to be implied but
> are to be specifically proved.</u>

*Id.* at 286 (emphasis added).[7]

The Supreme Court of Alabama applied the same rule in *Norman v. Bozeman*, 605 So. 2d

1210 (Ala. 1992).  There, the plaintiffs brought a slander of title claim alleging that the

defendants' filing of an erroneous certificate of judgment rendered them incapable of selling their

real property.  *Id.* at 1212.  The court affirmed the judgment in favor of defendants because

plaintiffs failed to prove special damages with the requisite detail.  The court emphasized:

> [T]he Normans presented . . . no evidence to substantiate their
> claim for special damages, i.e., they presented <u>no evidence of any
> proposed real estate transactions with outside buyers for any
> specific real estate, no evidence of any specific sales price, and no
> evidence of any specific profit they might have made</u>; nor did they
> present any testimony from a potential buyer that he would have
> purchased a particular piece of property but for the recordation of
> the original erroneous certificate of judgment.  <u>The Normans'
> claims were unsubstantiated and their testimony was speculative.</u>

*Id.* at 1214 (emphasis added).  *See also Electric Furnace Corp. v. Deering Milliken Research

Corp.*, 383 F.2d 352, 354-55 (6th Cir. 1967); *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1117

(S.D.N.Y. 1992) (granting summary judgment for lack of special damages; "[t]he rule . . . that

lost customers must be named . . . is well-entrenched and has been consistently followed");

*Johnson v. Benson*, 725 P.2d 21, 26 (Colo. Ct. App. 1986) (dismissing claim where "[t]here was

--------------------------------------------------

[7] The procedural posture of *Continental Nut* was the review of the trial court's grant of
defendant's JNOV motion.  The case was thus in a setting that is analogous to this motion for
summary judgment, *i.e.*, if there was any genuine evidence in support of plaintiff's claim for
special damages, the appellate court would have reversed the grant of the JNOV motion.  *See
Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

14

no evidence that any actual sale had been frustrated . . . [and] no evidence of the identity of persons failing to purchase nor any explanation why it was not possible to name them").

SCO's claim as to its unidentified lost customers and its unspecified transactions suffers from the same fatal flaw.  Without any record evidence of name, licensing revenue, or profits, SCO's claim for special damages based upon unidentified companies who would have taken licenses for unspecified amounts – including the unnamed "New Mexico utility company" and the anonymous lawyer calling on behalf of an unknown client – is likewise legally insufficient.

> **b.    The limited exception for customers who are "impossible" to identify does not apply.**

The only exception to this rule is for when the allegedly slanderous statement was widely disseminated, and it is <u>impossible</u> for the plaintiff to identify its lost sales with particularity.  *See* Restatement (Second) of Torts § 633 (1977).  Then, and only then, does the law permit the plaintiff to establish special damages through circumstantial evidence of lost market share.  But this relaxed standard applies only when it is <u>impossible</u> to identify the lost customers.  *See Erick Bowman Remedy Co. v. Jensen Salsbery Labs., Inc.*, 17 F.2d 255, 262 (8th Cir. 1926) (complaint inadequate where it "did not allege . . . that it was impossible for plaintiff to allege and prove the loss of particular customers"), *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235, 240 (S.D.N.Y. 1999), *aff'd by*, 314 F.3d 48 (2d Cir. N.Y. 2002) (plaintiff cannot rely on impossibility doctrine where it "maintained a customer list with the names and addresses of more than 8,000 customers").

Although SCO relies on this exception (Opp'n at 25-26), it offers no evidence to suggest that it would have been impossible for it to identify the entities who supposedly declined licenses because of Novell.  The fact is that SCO should be able to identify any customers it lost, for it

has an identifiable base of potential licensing customers.  It is undisputed that SCO affirmatively targeted its potential customers, compiled lists of them, and sent mass mailings to them.  (*See* Opp'n at 9; James Decl. Exs. 42, **; Novell, Inc.'s Answer and Counterclaims (PACER No. 78), ¶¶ 52-55; SCO's Answer to Novell's Counterclaims (PACER No. 81), ¶¶ 52-55.)  Specifically, SCO created a Global 1500 list of "the largest potential commercials users of [ ] Linux who would most likely have the greatest concern about issues related to . . . . our possible intellectual property issues" and sent demand letters to each of them.  (2nd Supp. Brakebill Decl., Ex. 15 at 16-19 (Sontag Dep.).)  The SCOsource salespeople then maintained "a spreadsheet of contacts made with various parties by the various team members, or letters that were sent out, [to] follow-up [and] basically to track our contacts with various parties."  (James Decl., Ex. 64 at 66-69 (Sontag 4/30/07 30(b)(6) Dep.) (discussing Brakebill Ex. 46).)

Accordingly, if there were any cognizable evidence of lost transactions here for these unidentified lost licensees, SCO would know where to go to find it.  This case is nothing like the exceptional cases in which courts have applied the impossibility doctrine to allow plaintiffs to establish special damages without identifying particular transactions and lost customers.  *Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1168 (Colo. Ct. App. 1989) (sales were made only through independent distributors over whom Teilhaber had no control); *Annbar Assocs. v. American Express Co.*, 565 S.W.2d 701, 702, 708 (Mo. Ct. App. 1978) (impossible to identify potential customers who might call into a third-party reservation system asking about hotel reservations).

After over three years of litigation, SCO could have – and should have – sought out these potential customers, and provided declaration or deposition testimony from them.  But it didn't.  This evidentiary gap is fatal to SCO's claim.  *See Cont'l Nut*, 393 F.2d at 286 ("the striking fact

about the record in this case is that plaintiff has not produced the testimony of a single customer

or former customer on these questions"); *Electric Furnace*, 383 F.2d at 354-55 ("Our suggestion

of a method of providing the 'missing link' in the proofs was not followed: no relevant testimony

by any customer was provided at the third trial."); *Fashion Boutique*, 75 F. Supp. 2d at 240.[8]

### 2. Novell is entitled to summary adjudication with regard to potential SCOsource customers that SCO has named.

SCO's claim also fails as a matter of law to the extent that it names a handful of potential

customers who allegedly did not take licenses because of Novell.  For these named entities, SCO

still fails to provide any particularized evidence of actual "out-of-pocket losses" that are "proven

by specific evidence as to the time, cause and amount."  *Cont'l Casualty,* 860 F.2d at 976.

For example, SCO claims that Merrill Lynch, Sherwin Williams, Ford, Morgan Stanley,

Google, Raytheon, the Department of Defense, Cisco, and Just Sports USA "mentioned" Novell

when they declined SCOsource licenses.  (Opp'n at 27.)  But SCO still presents no evidence of

the revenues or profits it supposedly lost, or the license terms that it would have supposedly

obtained.  This failure of proof means that SCO has not proven the specific out-of-pocket losses

required to sustain a claim for special damages.  *See Cont'l Nut*, 393 F.2d at 285 (no evidence of

"buying requirements" of lost customers, or of the "estimated profit plaintiff would have realized

from purchases"); *Maragos*, 584 N.W.2d at 852 (correspondence with potential purchaser was

"insufficient to show the requisite degree of certainty or proximity of loss required"); *Clarkston*

---

[8] The cases SCO cites at pgs. 25-26 of its Opposition have no application here.
*Teilhaber,* 791 P.2d at 1168, concerned a plaintiff who made sales only through independent
distributors over whom it had no control.  The decisions in *Shenefield v. Axtel*, 545 P.2d 876, 878
n.3 (Ore. 1976), and *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598,
625-26 (N.D. Iowa 2006), were at the pleading stage and have no bearing on whether SCO has
produced evidence of impossibility or special damages.  *See Cont'l Nut*, 393 F.2d at 284.

*Cmty. Corp. v. Asotin County Port Dist.*, 472 P.2d 558, 559-60 (Wash. Ct. App. 1970) (affirming summary judgment for failure to show special damages; correspondence with potential purchaser did not evidence a potential sale, but merely "[a]n expectation or anticipation that [it] . . . would begin negotiating").

The potential transaction for which SCO provides the most detail was with

**REDACTED**                    (James

Decl., Ex. 80 ¶¶ 10-13 (Sontag Decl.))

**REDACTED**

(*Id.* ¶ 13.)                    **REDACTED**

**REDACTED**                    (*Id.*)                    **REDACTED**

**REDACTED**

- Mr. Sontag's recitation of his back-and-forth with    **REDACTED**    is inadmissible hearsay.    **REDACTED** **REDACTED**.[9]  Further, SCO has provided the Court with no documentary evidence to corroborate Sontag's account of this purported **REDACTED** transaction.  In view of its hearsay nature and lack of any corroboration, Mr. Sontag's testimony does not raise a genuine dispute of fact.

- **REDACTED** was far from certain and, with a gulf of this magnitude, the putative transaction does not represent an "out-of-pocket" loss

---

[9] For purposes of this motion only, Novell agreed in its opening brief not to object on hearsay grounds to a few specific statements by SCO witnesses in deposition about what third parties allegedly said. (*See* Opening Br. at 23 n.5.)  As set forth fully in Novell's objections that accompany its reply briefs, however, Novell does object to certain additional evidence submitted by SCO in its opposition papers, such as **REDACTED** **REDACTED** (James Decl., Ex. 80 ¶¶ 6-15 (Sontag Decl.)), **REDACTED** (James Decl., Ex. 81 ¶¶ 6-9 (McBride Decl.).)

18

for SCO that is specific enough to qualify as special damages. There is no evidence that any damage "really took place." *See Cont'l Nut*, 393 F.2d at 286; *McNichols v. Conejos-K Corp.*, 482 P.2d 432, 434-35 (Colo. Ct. App. 1971) (where plaintiff and potential buyer were $25,000 apart in their negotiations at time of slander, "[n]o contract was frustrated").

- Finally, Mr. Sontag's account is inconsistent with his deposition testimony from the IBM case. There, Mr. Sontag said that

**REDACTED**

SCO cannot point to any out-of-pocket loss that "really took place" with even a modicum of specificity.

Finally, SCO's only evidence about any potential transaction with Regal Entertainment is the testimony of its salesman Phil Langer from his deposition in the IBM case. (Opp'n at 14.) Novell was not present at that deposition in a separate litigation, and Mr. Langer's testimony is inadmissible double hearsay – both because he gave the testimony in another case, and because he is purporting to recount a third-party's out-of-court statements. SCO is thus without any admissible evidence to show any actual specific loss as to Regal.

### 3. Novell is entitled to summary adjudication with regard to the companies that signed SCOsource licenses.

SCO also maintains that it suffered losses due to SCOsource licensees paying less than they would have paid if not for the cloud cast upon SCO's title to the copyrights by Novell's assertions. But SCO's only evidence of this is the unsupported and conclusory deposition testimony of Mr. Sontag (Opp'n at 20-21), and SCO never proffers any evidence whatsoever about what these actual licensees would otherwise have paid. SCO has again completely failed

to provide any evidence of an actual and specific loss in any amount as to these licensees.

Summary adjudication is appropriate on this record.[10]

### C.     SCO Has Failed To Meet Its Burden Of Showing That The Alleged Slander Was The Direct And Immediate Cause Of Harm.

SCO spends a great deal of its brief establishing a point that is largely undisputed:  that

slander of title cases, like most tort (and even contract) actions follow the "substantial factor"

causation rule of Restatement Section 632.  (*See* Opp'n at 29-34, as well as 26 n.3 (citing

neligence, contract and patent cases in support of viability of "substantial factor" test).)   Whether

intentionally or not, SCO's focus on a non-issue leads it to ignore or avoid the third requirement

it must meet for establishing harm to its SCOsource program as special damages – establishing

that the alleged slander was the "direct and immediate" cause of the particular damages alleged.

SCO cannot meet this burden, and this provides yet another ground for dismissing its slander of

title claim. [11]

---

[10] SCO's argument that there is no minimum amount of damages that are necessary to satisfy the special damages requirement (Opp'n at 27-28) misses the mark.  SCO's cases stand only for the proposition that "[i]f it is speculative and uncertain whether damages have been sustained, recovery is denied. . . .  If uncertainty lies only in the amount of damages, recovery may be had if there is a reasonable basis in the evidence from which the amount can be inferred or approximated."  *Montgomery Props. Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 478 (Iowa 1981).  This is uncontroversial.  *See, e.g., AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1342-43 (S.D. Fla. 2006).  The key here is that, for SCO, the *existence* of *any* damages remains "speculative and uncertain."  It is not merely the amount that is in question – it is whether or not any real damages were sustained.

[11] There should not have been any confusion about Novell's argument.  Novell acknowledged the "substantial factor" requirement of Section 632 of the Restatement in its opening brief and distinguished it from the "direct and immediate" requirement of Section 633. (*See* Opening Br. at 25.)

Section 632 of the Second Restatement of Torts ("Restatement"), on which SCO relies, sets forth the standard for "legal cause of pecuniary loss" in injurious falsehood cases. Section 632's "substantial factor" test states the general rule that a statement must actually cause harm to give rise to liability. As SCO's opposition makes clear, moreover, the "substantial factor" test of legal causation applies to many different branches of tort and contract law. (*See, e.g.,* Opp'n at 26, n.3 (citing various Restatement of Torts sections and various Utah negligence cases applying substantial factor test), and at 32 (citing contract cases applying substantial factor test).)

Novell's motion does not turn on whether there is evidence of legal causation in this general sense. Instead, this motion turns on whether SCO can meet its burden of establishing that Novell's assertion of ownership resulted in special damages. Section 633 of the Restatement describes this requirement (albeit without using the term "special damages"):

> the pecuniary loss for which a publisher of injurious falsehood is subject to liability is *restricted to* (a) the pecuniary loss that results *directly and immediately* from the effect of the conduct of third persons.

*Id.* (emphasis added). Section 633, in other words, does not change the substantial factor test for legal causation, it adds to it, placing an additional burden on plaintiffs in slander of title cases. *See, e.g., Bothmann v. Harrington,* 458 So. 2d 1163 (Fla. Ct. App. 1984) (plaintiff would have to establish legal causation under substantial factor test for each cause of action, but on slander of title claim, plaintiff would also have to establish that loss resulted "directly and immediately" from false statements).

The issue, then, is whether SCO has introduced a triable issue of fact on whether Novell's ownership claim has resulted in direct and immediate harm. SCO can meet this burden in one of

two ways – by "proof of the conduct of specific persons," or by "proof that the loss has resulted

from the conduct of a number of persons whom it is impossible to identify."  Restatement

§ 633(2)(b).  In the latter case, according to the Restatement, "*if the possibility that other factors

may have caused the loss is satisfactorily excluded by sufficient evidence,* recovery may be based

upon proof of a general decline in business."  Restatement § 633 (emphasis added); *see also id.,*

comment h (when harm to plaintiff's market share can be shown "with reasonable certainty,"

requirement of identifying specific transactions is relaxed and as in other lost profits situations

"this may be proved by circumstantial evidence showing that the loss has in fact occurred, and

eliminating other causes").  In sum, to establish that the harm it alleges was the "direct and

immediate" result of Novell's statements, SCO must either prove that it lost specific identifiable

license opportunities as a result of the alleged slander *or* be able to "eliminate other causes"

leading to its lost sales.

It still is not entirely clear from SCO's response which test it seeks to apply.  Before its

opposition to this motion, SCO's April 6, 2007 response to Novell's interrogatory on damages

contentions did not                                    **REDACTED**

                      **REDACTED**                                  (Declaration of

Kenneth W. Brakebill (PACER No. 284) ("Brakebill Decl."), Ex. 60 at 11 ¶¶ 22-23.)  In its

opposition to this motion, SCO now attempts to identify specific licensees who purportedly

"mentioned" Novell's claim as a reason for declining to take a SCOsource license.  (Opp'n at 27,

and Fact ¶¶ 30-41.)  However SCO also claims that Novell's statement prevented sales to

"unknown purchasers."  *Id.*  Whichever test SCO is seeking to apply, it is clear that it cannot

show "direct and immediate" harm, any more than it can show damages that are "realized" or

"liquidated and actual" (*see supra* Sections A and B).

22

First, to the extent that SCO is seeking special damages based on general market decline and unknown potential licensees, its claim must fail.  SCO has not presented sufficient evidence to show that it will be able to meet its burden to "eliminate other causes" for the pecuniary losses of its SCOsource business.  Restatement § 633, comment h; *see also Teilhaber*, 791 P.2d at 1168 (if plaintiff cannot identify specific lost sales, then a plaintiff must "present sufficient evidence, using detailed statistical and expert proof, to *exclude the possibility* that other facts caused the loss of general business" to permit recovery) (emphasis added); *Patel v. Soriano*, 848 A.2d 803, 835-36 (N.J. Super. Ct. App. Div. 2004) (plaintiff may establish special damages without identifying specific lost customers "where the loss is shown with reasonable certainty *and where the possibility that other factors caused the loss is satisfactorily excluded*") (emphasis added). To the contrary, the evidence that the losses were the result of multiple causes is so overwhelming that no reasonable fact-finder could find that the failure of SCO's licensing business was the direct and immediate result of Novell's actions alone.

Second, to the extent that SCO is seeking special damages based on the loss of specific license targets, SCO does not dispute what the written record so plainly shows:  few if any proposed licensees even "mentioned" Novell as a reason for delaying their license agreement without also "mentioning" other reasons, including skepticism about whether SCO's infringement claims were tenable.  (Opening Br. at 23-24.)  SCO proposes that once it has met its burden of showing that Novell's statement was a "substantial factor" in the decision not to license, it is the fact-finder's job to sort out whether or to what extent Novell's statements were

responsible for any loss.  This argument simply ignores SCO's additional burden: to show

specific pecuniary harm that resulted directly and immediately from Novell's statements.[12]

Neither of the cases cited by SCO precludes summary judgment on this issue.  In *GKC*

*Michigan Theaters v. Grand Mall,* 564 N.W.2d 117 (Mich. Ct. App. 1997), the question was

whether the alleged slander was the cause of the harm in the first instance; if it was, then there

was no dispute that the particular pecuniary loss was the result.  In *Patel v. Soriano, supra,* the

court applied the very standard that SCO dismisses, noting that the necessary showing for special

damages is "specific: plaintiff must establish pecuniary loss that has been realized or liquidated,

such as lost sales or the loss of prospective contracts with customers" and if that cannot be

reasonably accomplished, proof of lost profits resulting from breach of contract may suffice,

especially where the loss is shown with reasonable certainty *and where the possibility that other*

*factors caused the loss is satisfactorily excluded.*"  *Id.* at 835-36.  The court affirmed an award of

special damages resulting directly from loss of surgical patients at the hospital where defendant

had propagated the slander, but denied it at another hospital which had reacted to the

investigation at the first hospital.  *Id.* at 838-39.  Significantly, the court noted that the slanderous

---

[12] Although this portion of Novell's motion turns on whether SCO has shown harm
directly and immediately caused by Novell's statements, there is a serious question about
whether it can show that Novell's statements were a substantial factor in causing the loss of
specific licenses as alleged in SCO's opposition.  (*See, e.g.*, Brakebill Decl., Ex. 53 at
SCO1512015-240 (          **REDACTED**          ), SCOR 7680-81 (          **REDACTED**
**REDACTED**          ); 2nd Supp. Brakebill Decl., Ex. 16 (SCO 1512011-240 (          **REDACTED**
**REDACTED**          )), Exs. 17 and 18 (HPNOV 000130-31 and HP 012631-32 (**REDACTED**
                              **REDACTED**                              ));
James Decl., Ex. 48 (                              **REDACTED**
                    **REDACTED**                              ).)

statements had in some sense *caused* the drop in referrals at the second hospital, but was not convinced that these losses were the direct and immediate result of the slander. *Id.*

SCO has not come forward with evidence of a specific license sale directly and immediately harmed by Novell's statements.  Nor can it meet its burden of showing that any pecuniary losses its licensing program has suffered were the result of Novell's statements alone. SCO thus cannot support its special damages claim.

### D.     SCO's "Market Reaction" Theory Cannot Save Its Slander Of Title Claim.

Novell understands that, notwithstanding its interrogatory response (and complaint) alluding to harm to its stock value, SCO now concedes that it is not seeking to include the drop in its market capitalization as a measure of special damages.  (Opp'n at 37-38.)  SCO offers no authority – and we are aware of none – that would treat an item of loss that is concededly not special damages as "evidence" of special damages.

### E.     SCO Has Failed To Provide Evidence To Sustain Its Only Legally Supportable Claim To Attorneys Fees And Costs.

Novell acknowledged in its opening brief that SCO's costs and attorneys fees incurred in researching and reviewing copyright registrations and responding to Novell's statements to third parties could be recoverable special damages if SCO were able to prevail on the other elements of its slander of title claim.  (Opening Br. at 34.)  We noted, however, that SCO had not adduced a shred of evidence to support a realized or liquidated amount of such damages. (*Id*).  In opposing this motion, SCO still has not done so.

Instead, SCO continues to claim that "even if no SCOsource lost profits had been shown, SCO has satisfied the special damages requirement because it has incurred legal fees and other

costs bringing this slander of title action." (Opp'n at 38.) SCO's analysis is faulty. The Supreme Court of Utah, the Court of Appeal for the Tenth Circuit, and this court have each affirmed that attorneys fees "are permitted as special damages in a slander of title action *if incurred 'to clear title or to undo any harm* created by whatever slander of title occurred.'" *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.,* 312 F.3d 1292, 1300 n.15 (10th Cir. 2002) ("CTI-II"), quoting *Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988), affirming *CTI-I*, 2001 U.S. Dist. LEXIS 24905, at *12. As these and other cases make clear, and contrary to SCO's assertion, a case brought to remedy the tort of slander of title itself is not "incurred to clear title" or "undo harm."

Rather, as this Court observed in *CTI-I*, permitting a party to bootstrap a slander of title claim by relying solely on the attorneys fees incurred to bring the claim itself "would eviscerate the requirement that special damages must be pleaded and proven because every plaintiff necessarily incurs fees [ ] in pursuing a lawsuit." 2001 U.S. Dist. LEXIS 24905, at *12 (dismissing claim for libel *per quod* without leave to amend where plaintiff sought to amend to add claim for attorneys fees and costs as special damages). Put another way, if attorneys fees in a slander of title action could be claimed as special damages, then no slander of title action would ever be dismissed for failure to prove special damages.

This is demonstrably not the law in Utah. In *Bass* itself, for example, the Utah Supreme Court *reversed* a slander of title judgment because the attorneys' fees awarded "were not incurred to remove a cloud from plaintiffs' title." 761 P.2d at 569; *see also, e.g.*, *First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253, 1258 (Utah 1989) (affirming directed verdict against slander of title plaintiff because attorneys' fees in the action did not constitute special damages). Meanwhile, the Utah cases SCO relies on cannot help it: those cases, too, permit an award of

attorneys' fees to quiet title, not to litigate the slander claim. *Dowse v. Doris Trust Co.* 208 P.2d 956, 959 (Utah 1949) (attorneys fees available as special damages where plaintiff "brought the suit to quiet title"); *Gillmor v. Cummings*, 904 P.2d 703, 708-09 (Utah Ct. App. 1995) (remanding an award of attorneys' fees because it could not determine what portion of the fees was attributable specifically to "clear[ing]" title and "undo[ing] harm" as opposed to general litigation costs).

The law is the same in other jurisdictions. SCO cites *TXO Prod. Corp. v. Alliance Res. Corp.*, 419 S.E.2d 870 (W. Va. 1992), as stating "the clear majority rule" permitting attorneys fees as special damages. (Opp'n at 39 n. 14). *TXO,* however, holds only that "attorneys' fees incurred in removing spurious clouds from a title qualify as special damages." 419 S.E.2d at 881. *Macia v. Microsoft,* cited in Novell's opening brief, states almost the same "majority view, special damages may also include 'expenses incurred in removing the effects of the slander' (although not the costs of litigation in the action for slander of title itself)." 152 F. Supp. 2d 535, 542 (D. Vt. 2001); *see also Colquhoun v. Webber*, 684 A.2d 405, 410 (Me. 1996) (same).


**REDACTED**


(*See* 5/18/07 James Decl., Ex. 72 ¶ 8.d (Moxley Decl.).) SCO's strategic decision to bring a slander of title action (and then allow it to multiply into myriad business tort claims) rather than seek to quiet title in the first instance cannot overcome the principles expressed by this Court and by the courts of Utah. Those authorities make it clear that a slander of title action is not the equivalent of an action to "clear

title" and attorneys fees incurred in the tort action are not allowable special damages. SCO's claim for attorneys fees cannot rescue its slander of title action.

## III.    CONCLUSION

SCO filed this suit in early 2004 and has had over three years to make a case for the essential element of "special damages" in its slander of title claim. After all this time, there is still no admissible evidence that SCO has suffered a "realized" loss, that it has actually lost any identifiable out-of-pocket liquidated sum, or that Novell's statements were the direct and immediate cause of any entity's decision to defer a decision about whether to take a SCOsource license. SCO's failure to provide proof on any of these items would be fatal to its claim. That it has failed on all three makes the result here all the more clear. Summary judgment should be entered.

DATED:   June 7, 2007

ANDERSON & KARRENBERG


By: _____ /s/ Heather M. Sneddon _____

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
Grant L. Kim (pro hac vice)
David E. Melaugh (pro hac vice)

**Attorneys for Defendant and
Counterclaimant Novell, Inc.**

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, 2007, I caused a true and correct copy

of the foregoing **REPLY MEMORANDUM IN SUPPORT OF NOVELL'S MOTION FOR**

**SUMMARY JUDGMENT ON SCO'S FIRST CLAIM FOR SLANDER OF TITLE**

**BASED ON FAILURE TO ESTABLISH SPECIAL DAMAGES** *[REDACTED pursuant to*

*the August 2, 2006 Stipulated Protective Order]* to be served to the following:

*Via CM/ECF:*

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid:*

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_____
*/s/ Heather M. Sneddon*

29