MORRISON & FOERSTER LLP
Michael A. Jacobs (pro hac vice)
Kenneth W. Brakebill (pro hac vice)
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Novell, Inc.**

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>    Defendant and Counterclaim-Plaintiff. | **NOVELL'S EVIDENTIARY OBJECTIONS TO SCO'S EXHIBITS SUBMITTED IN SUPPORT OF ITS SUMMARY JUDGMENT OPPOSITIONS FILED MAY 18, 2007**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

## INTRODUCTION

Defendant and Counterclaim-Plaintiff Novell, Inc. ("Novell") hereby objects to and requests the Court to strike and disregard for all purposes the following evidence presented by Plaintiff and Counterclaim-Defendant The SCO Group, Inc. ("SCO") in its May 18, 2007 Opposition Briefs.[1]  Novell's objections are based on ten grounds: relevance (including inadmissible parol evidence), lack of personal knowledge, hearsay, the best evidence rule, improper expert opinion, improper use of *SCO v. IBM* deposition testimony, improper authentication, untimeliness, improper use of settlement evidence, and improper use of withheld discovery:

**A.  Relevance (Including Inadmissible Parol Evidence)**.  Under the Federal Rules, evidence is relevant only if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The parol evidence rule is a substantive rule of law that functions to exclude evidence as legally irrelevant if it contradicts the terms of an integrated

---

[1] These include (1) SCO's Memorandum in Opposition to Novell's Motion for Summary Judgment on SCO's First and Third Claims for Relief, PACER No. 306 (SCO's "Slander of Title Opp'n" to Novell's "Slander of Title Motion"); (2) SCO's Memorandum in Opposition to Novell's Motion for Partial Summary Judgment on SCO's Non-Compete Claim in its Second and Fifth Claims for Relief, PACER No. 301 (SCO's "Non-Compete Opp'n" to Novell's "Non-Compete Motion"); (3) SCO's Memorandum in Opposition to Novell's Motion for Summary Judgment on SCO's First Claim for Slander of Title Based on Failure to Establish Special Damages, PACER No. 304 (SCO's "Damages Opp'n" to Novell's "Damages Motion"); and (4) SCO's Memorandum in Opposition to Novell's Motion for Partial Summary Judgment on the Copyright Ownership Portions of SCO's Second and Fifth Claims for Relief, PACER No. 299 (SCO's "Unfair Competition Opp'n" to Novell's "Unfair Competition Motion").  Novell refers to these memoranda collectively as SCO's "May 18, 2007 Opposition Briefs" to Novell's "April 20, 2007 Motions."

agreement. *EPA Real Estate P'ship v. Kang*, 12 Cal. App. 4th 171, 176-177 (1992) ("extrinsic evidence is admissible only to supplement or explain the terms of the [integrated] agreement – and even then, ***only where such evidence is consistent with the terms of the integrated document***.") (emphasis added). Under the governing California contract law, all extrinsic evidence introduced by SCO to contradict the plain language of the APA and its Amendments is legally irrelevant to the determination of this action. *Id.* ("according to this substantive rule of law, when the parties intend a written agreement to be the final and complete expression of their understanding, that writing becomes the final contract between the parties, which may not be contradicted by even the most persuasive evidence of collateral agreements. Such evidence is legally irrelevant"). This includes "testimony of intention." *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 267, 273, 278 (1987).

Novell objects to each of SCO's proffered exhibits on the grounds that it is inadmissible extrinsic evidence contrary to the express terms of an integrated contract. *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392 (2006) (affirming summary judgment on wrongful termination claim because letter agreement that employment was "at will" and could be terminated "at any time" could not reasonably be interpreted as allowing termination for cause only, and hence contrary extrinsic evidence did not create a triable issue of fact); *EPA Real Estate P'ship*, 12 Cal. App. 4th at 176-77.[2]  Because California contract law renders the

---

[2] Novell explained this objection in more detail its summary judgment memoranda and incorporates those arguments by reference. *See* Memorandum in Support of Novell's Opposition to SCO's Motion for Partial Summary Judgment on SCO's First, Second, and Fifth Causes of Action and for Summary Judgment on Novell's First Counterclaim (Copyright Ownership) ("Novell's Response to SCO's MSJ"), PACER No. 292 at 36-38; *see also* Novell's Opposition to

(Footnote continues on next page.)

proffered extrinsic evidence of "no consequence" to the determination of the action, such

evidence in particular should be excluded under Federal Rules of Evidence 401 and 402.

In addition, SCO has submitted at least five exhibits that it fails to cite anywhere in its

5/18/07 Opposition Briefs.  SCO has established no probative value for those exhibits.[3]  *See*

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998) (refusing to review the

entire evidentiary record on appeal, consisting of over 800 pages of text, but just those pages

specifically cited by the party to the district court).  Thus, all evidence proffered by SCO which it

does not cite in its statement of facts or briefs should be excluded as irrelevant.

**B.  Lack of Personal Knowledge**.  Admissible evidence must be based on a witness's

personal knowledge rather than mere speculation.  Fed. R. Evid. 602; Fed. R. Civ. Proc. 56(e)

("supporting and opposing affidavits shall be made on personal knowledge, shall set forth such

facts as would be admissible in evidence, and shall show affirmatively that the affiant is

competent to testify to the matters stated therein"); *Argo v. Blue Cross & Blue Shield of Kan.,*

*Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (upholding trial court's refusal to consider portions of

a declaration lacking personal knowledge, stating "[u]nder the personal knowledge standard, an

affidavit is inadmissible if the witness could not have actually perceived or observed that which

he testifies to. . . .  Accordingly, at the summary judgment stage, 'statements of mere belief' in

an affidavit must be disregarded") (citing *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th

---

(Footnote continued from previous page.)

SCO's 1/17/07 Cross Motion, PACER No. 242; Novell's Memorandum and Reply in Support of
its Motion for Partial Summary Judgment on its Fourth Claim for Relief, PACER Nos. 175, 237.

[3] Even if SCO could establish a probative value, the attempt to smuggle uncited exhibits
into the record on summary judgment serve only to waste time, prejudice Novell, confuse the
issues, and cause undue delay, making it inadmissible under Federal Rule of Evidence 403.

Cir. 1997), *Tavery v. United States,* 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (internal quotations omitted)); *Noblett v. Gen. Elec. Credit Corp.,* 400 F.2d 442, 445 (10th Cir. 1968) (pursuant to Rule 56(e), affidavits must be made on the personal knowledge of the affiant and must show that the affiant possesses the knowledge asserted).   The same personal knowledge requirement applies to deposition testimony and other forms of evidence approved for use on summary judgment by Rule 56(c).   *Greyhound Fin. Corp. v. Willyard*, No. 87-C-0911B, 1989 WL 201094, at *48 (D. Utah Dec. 26, 1989) (Exhibit A hereto).   District courts should disregard a declaration that is contrary to a deposition statement "when they conclude that [the declaration] constitutes an attempt to create a sham fact issue."   *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

In addition, a lay witness may only testify as to matters which he or she is competent to testify.   Fed. R. Evid. 701.   Thus, a lay witness may not testify as to matters which call for a legal conclusion, such as the interpretation and effect of a contract or an amendment thereto.   *See, e.g., Evangelista v. Inland Boatmen's Union of Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (in action by union member against union alleging breach of duty of fair representation, opinion of union chairman as to correct construction of collective bargaining agreement's grievance procedure was inadmissible because it was legal conclusion).

**C. Hearsay**.   Evidence may not be considered if it contains or is based on hearsay.   Fed. R. Evid. 802; *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.   Hearsay testimony cannot be considered because '[a] third party's description of [a witness's] supposed testimony is not suitable grist for the summary judgment mill'") (citations omitted.)   The hearsay objections made herein are based both on witnesses'

recitals of out-of-court statements, and witness testimony based on inadmissible hearsay (including testimony based on statements in out-of-court documents). *See, e.g., United States v. Brown*, 548 F.2d 1194, 1205 (5th Cir. 1977) (excluding as based on hearsay IRS agent's testimony that she had audited 160 tax returns prepared by defendant and that 90 or 95 percent of them contained overstated deductions, stating "a clearer case of hearsay testimony would be difficult to imagine").

   **D. Best Evidence Rule**. "To prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. *R & R Assoc v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984) ("Rule 1002 applies not when a piece of evidence sought to be introduced has been somewhere recorded in writing but when it is that written record itself that the party seeks to prove"). Here, SCO has offered testimony that purports to recite the contents of the APA, its Amendments, UNIX and SCOsource licensing agreements, and UNIX source code, but which does not accurately recite the contents of those documents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

   **E. Improper Expert Opinion**. Federal Rule of Evidence 702 restricts admissible expert testimony to knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Moreover, an expert may only testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In addition, Rule 56(e) of the Federal Rules of Civil Procedure requires that:

   [A]ffidavits supporting and opposing motions for summary judgment must do
   more than present something that will be admissible in evidence. They shall "set

> forth facts" and by implication in the case of experts (who are not "fact
> witnesses") a process of reasoning beginning from a firm foundation. It will not
> do to say that it must all be left to the skill of experts. Expertise is a rational
> process and a rational process implies expressed reasons for judgment. An
> opinion has a significance proportioned to the sources that sustain it. An expert
> who supplies nothing but a bottom line supplies nothing of value to the judicial
> process. *See Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829-32 (D.C.
> Cir. 1988), holding that an expert's declaration, full of assertion but empty of
> facts and reasons, won't get a case past a motion for summary judgment, for the
> judge must "look behind [the expert's] ultimate conclusion . . . and analyze the
> adequacy of its foundation."

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) (additional

citations and quotations omitted).  Here, the expert testimony offered by SCO's witnesses is not

based on sufficient facts or data, employs the wrong method, and does not apply the method

reliably to the facts of this case.  In addition, the expert reports of Evan Ivie and Thomas Cargill

are not even from the current litigation, but from *SCO v. IBM*, to which Novell is not a party.

They are therefore improper in this case.

     **F.  Improper Use of *SCO v. IBM* Deposition Testimony.**   Federal Rule of Civil

Procedure 32(a) provides "[a]t the trial or upon the hearing of a motion or an interlocutory

proceeding, any part or all of a deposition, so far as admissible under the rules of evidence

applied as though the witness were then present and testifying, ***may be used against any party***

***who was present or represented at the taking of the deposition or who had reasonable notice***

***thereof***."  (emphasis added.)  This rule "impliedly prohibits the use of a deposition against any

party who was not present or represented at the taking of such deposition or who had no

reasonable notice thereof."  *Hewitt v. Hutter*, 432 F. Supp. 795, 799 (W.D. Va. 1977).  Here,

SCO is attempting to use four *SCO v. IBM* deposition transcripts against Novell, who was not a

party to that litigation, was not present for those depositions, and had no notice of them.

Accordingly, SCO is prohibited from using that testimony against Novell now, and the entire transcripts must be stricken from the record.

      **G.  Improper Authentication**.  Federal Rule of Evidence 901 states that authentication must be "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Unsigned letters and agreements fail to satisfy the authentication requirements of Rule 901, or the self-authenticating provisions of Rule 902.

      **H.  Untimeliness**.  Evidence submitted after a court-imposed filing deadline must not be considered absent a showing of good cause.  *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 895-97 (1990) (excluding untimely affidavits submitted in support of a response to a summary judgment motion where cause for the late submission was not shown); *Leviton Mfg. Co., Inc. v. Nicor, Inc.,* No. CIV 04-0424 JB/LFG, 2007 WL 1306759, at *8 (D.N.M. Apr. 20, 2007) (excluding supplemental expert declaration filed after court-imposed deadlines in motion for partial summary judgment where party did not seek or obtain leave of the court to do so) (Exhibit B hereto).

      **I.  Improper Use of Settlement Evidence**.  Federal Rule of Evidence 408 makes inadmissible any "evidence of conduct or statements made in compromise negotiations." Similarly, all evidence of "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount" is not admissible to prove liability for or invalidity of the claim.  Here, SCO improperly offers

**REDACTED**

**REDACTED**   *See, e.g., Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 655 (4th Cir.

1988) (holding "it is the general practice of the federal courts to hold inadmissible '. . . the

attempted use of a completed compromise of a claim arising out of the same transaction

between a third person and a party to the suit being litigated'") (citation omitted).  Thus, any

evidence of the              **REDACTED**              is inadmissible against Novell.

 **J.  Improper Use of Withheld Discovery**.  Federal Rule of Civil Procedure 37 bars

the use of certain withheld evidence at trial or on summary judgment.  Specifically, Rule 37(d)

states that if a party fails "to serve answers or objections to interrogatories submitted under

Rule 33 after proper service of the interrogatories . . . the court . . . may make such orders in

regard to the failure as are just," including excluding that evidence at trial.  Novell asked SCO

in its Interrogatories to "state all facts, evidence, and bases" in support of their allegation that

the parties intended the APA to transfer the copyrights, for example.  (Second Supplemental

Declaration of Kenneth Brakebill ("2nd Supp. Brakebill Decl."), filed 5/25/07, Ex. 10,

Interrogatory No. 9.)  SCO's response did not identify certain documents which it has included

as Exhibits to the James Declaration here and relied upon as evidence of the parties' intention

in the APA.  Accordingly, under Rule 37, SCO should not be permitted to rely upon those

documents now.  *Bowers v. NCAA*, 475 F.3d 524, 540-41 (3d Cir. 2007) (upholding trial

court's preclusion of relevant evidence at summary judgment, where that evidence was not

disclosed in a party's response to a "state all facts" interrogatory).

 In addition, under Federal Rule of Civil Procedure 30(b)(6), SCO had a duty to

designate persons to testify on its behalf "as to matters known or reasonably available to the

organization." For example, SCO designated Erik Hughes as its witness on the topic of

damages, including potential lost SCOsource customers, who testified at page 30 of Exhibit 65:

> Q: Does SCO know of any other companies that it contends declined a SCOsource license and cited Novell as a reason?
>
> Ms. BACH BORUCHOW:  Objection.
>
> THE WITNESS:  I don't know of any other companies that SCO is aware of that they haven't made available.

Nowhere in that deposition does the witness identify Dell as a potential SCOsource customer,

much less one that declined a license because of Novell. Yet a subsequent (and recent)

declaration of SCO's CEO, Darl McBride, is replete with statements regarding SCO's

knowledge of Dell's SCOsource intentions. This improperly withheld information should

therefore be excluded as well.

## OBJECTIONS

Novell objects to each of the following exhibits to the James Decl., for the reasons stated

in Novell's Objections to SCO's Summary Judgment Exhibits, PACER No. 298, incorporated

herein by reference:

- **11/9/06 Declaration of R. Duff Thompson (James Ex. 10)**
- **2/13/07 Deposition Transcript of R. Duff Thompson (James Ex. 11)**
- **11/9/06 Declaration of Doug Michels (James Ex. 17)**
- **3/28/07 Deposition Transcript of Doug Michels (James Ex. 18)**
- **10/1/04 Declaration of Ed Chatlos (James Ex. 12)**
- **3/22/07 Deposition Transcript of Ed Chatlos (James Ex. 13)**
- **11/23/04 Declaration of Jim Wilt (James Ex. 19)**
- **1/26/07 Deposition Transcript of James Wilt (James Ex. 20)**
- **12/11/06 Declaration of Kim Madsen (James Ex. 21)**
- **2/13/07 Deposition Transcript of Kim Madsen (James Ex. 22)**
- **2/23/07 Deposition Transcript of Alok Mohan (James Ex. 6)**
- **12/11/06 Declaration of William Broderick (James Ex. 15)**
- **11/7/06 Declaration of William Broderick (James Ex. 33)**

- **11/9/06 Declaration of John Maciaszek (James Ex. 34)**
- **11/10/06 Declaration of Darl McBride (James Ex. 37)**
- **2/10/07 Deposition Transcript of Robert Frankenberg (James Ex. 7)**
- **3/23/07 Deposition Transcript of Burt Levine (James Ex. 14)**
- **11/10/06 Declaration of Jay Petersen (Copyright Notices) (James Ex. 26)[4]**
- **3/23/07 Deposition Transcript of Maureen O'Gara (James Ex. 66)**

In addition, Novell objects to each of the following newly-cited exhibits, to the extent

they are offered or cited in support of SCO's Opposition to Novell's 4/20/07 Motions:

1.        **REDACTED**            , cited as Exhibit 30 to the James Decl., on the

following grounds:

    a.    **Relevance (including inadmissible parol evidence)**.  (Ex. 30, cited in Slander of

Title Opp'n, p. 24 ¶ 46, p. 30 ¶ 63.)  This exhibit seeks to contradict the APA's

express terms, and is therefore legally irrelevant and inadmissible under the parol

evidence rule and the Federal Rules of Evidence.

    b.    **Improper use of settlement evidence.**  (Ex. 30 at 1, 3, cited in Slander of Title

Opp'n, p. 24 ¶ 46, p. 30 ¶ 63.)  Exhibit 30                    **REDACTED**

---

[4] Novell further objects to this exhibit on the grounds that it is improperly withheld discovery.  Specifically, Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights, including "the identification of all witnesses whom SCO believes have knowledge of such facts and bases."  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also requested that SCO "state all facts, evidence, and bases" in support of SCO's contention that 'the parties' dealings and course of conduct evidenced their understanding that the APA had transferred the . . . copyrights," including "the identification of all witnesses whom SCO believes have knowledge of such facts and bases.  (*Id.*, Interrogatory No. 10.)  SCO did not identify this document, or Mr. Petersen as a witness, in response to either interrogatory, even though his declaration was executed on a date (November 10, 2006) prior to the date that SCO served its interrogatory responses upon Novell (December 28, 2006).  Thus, SCO should not be permitted to rely on Mr. Petersen or his declaration now.  (*Id.*, Response Nos. 9-10.)

**REDACTED**

(Ex. 30 at 1, cited in Slander of Title

Opp'n, p. 24 ¶ 46.)


**REDACTED**


Thus, pursuant to

Federal Rule of Evidence 408 and the parties' agreement, SCO is barred from using

Exhibit 30 against Novell as an                     **REDACTED**

**REDACTED**

    c.  **Improper use of withheld discovery.**  (Ex. 30, cited in Slander of Title Opp'n, p. 24

¶ 46, p. 30 ¶ 63.)  Novell asked SCO in an interrogatory to "state all facts, evidence,

and bases" in support of its allegation that the parties intended the APA to transfer the

copyrights.  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also

requested that SCO "state all facts, evidence, and bases" that the parties' "course of

conduct evidenced their understanding that the APA had transferred the . . .

copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in

response to either interrogatory.  (*Id.*, Response Nos. 9-10.)  SCO should not be

permitted to rely upon this document now.

  2.  **Santa Cruz Operation EU Microsoft Complaint**, cited as Exhibit 32 to the James

Decl., on the following grounds:

11

a. **Relevance (including inadmissible parol evidence).** (Ex. 32, cited in Slander of Title Opp'n, p. 25 ¶ 49, p. 26 ¶ 53, p. 30 ¶ 63.) This exhibit seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b. **Hearsay.** (Ex. 32, cited in Slander of Title Opp'n, p. 25 ¶ 49, p. 26 ¶ 53, p. 30 ¶ 63.) This document is an out of court statement offered to prove that SCO is the copyright holder to UNIX.

c. **Best evidence rule.** (Ex. 32, cited in Slander of Title Opp'n, p. 25 ¶ 49, p. 26 ¶ 53, p. 30 ¶ 63.) This document purports to recite the contents of the relevant contracts, but the documents themselves are the best evidence of their contents.

d. **Improper authentication.** (Ex. 32, cited in Slander of Title Opp'n, p. 25 ¶ 49, p. 26 ¶ 53, p. 30 ¶ 63.) SCO has failed to establish any foundation for admitting this unsigned, unauthenticated document.

e. **Improper use of withheld discovery.** (Ex. 32, cited in Slander of Title Opp'n, p. 25 ¶ 49, p. 26 ¶ 53, p. 30 ¶ 63.) Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights. (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) Novell also requested that SCO "state all facts, evidence, and bases" that the parties' "course of conduct evidenced their understanding that the APA had transferred the . . . copyrights." (*Id.*, Interrogatory No. 10.) SCO did not identify this document in response to either interrogatory. (*Id.*, Response Nos. 9-10.) SCO should not be permitted to rely upon this document now.

12

3. **2/8/07 Deposition Transcript of Joseph LaSala**, cited as Exhibit 40 to the James Decl., on the following grounds:

    a. **Relevance (including inadmissible parol evidence).** (Ex. 40 at 95, cited in Slander of Title Opp'n, p. 17 ¶ 25, p. 31 ¶ 68.) This exhibit seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b. **Lack of personal knowledge.** (Ex. 40 at 95, cited in Slander of Title Opp'n, p. 17 ¶ 25, p. 31 ¶ 68.) The cited testimony is inadmissible because Mr. LaSala has no foundation to opine on the meaning of the APA or TLA. LaSala was not involved in any way with the negotiation or drafting of the APA or the TLA. (5/18/07 James Decl. Ex. 40 at 8:5-7 (noting that LaSala first read the APA in 2003).)

4. **Unsigned December 2003 Letter to Linux Users**, cited as Exhibit 47 to the James Decl., on the following grounds:

    a. **Hearsay.** (Ex. 47 at 1-3, cited in Unfair Competition Opp'n, p. 4 ¶ 4.) The letter itself is an out-of-court statement offered for its truth, and contains hearsay statements from **REDACTED**, offered for their truth. Accordingly, it must be excluded as containing double hearsay.

    b. **Best evidence rule.** (Ex. 47 at 1-3, cited in Unfair Competition Opp'n, p. 4 ¶ 4.) The letter purports to recite the contents of relevant documents, but misstates those contents. This letter should be excluded because the documents themselves are the best evidence of their contents.

13

    c.  **Improper authentication.**  (Ex. 47 at 3, cited in Unfair Competition Opp'n, p. 4

¶ 4.)  The letter is unsigned, and lacks the requisite foundation for authentication

under the Federal Rules of Evidence.

5.  **Merrill Lynch Correspondence,** submitted as Exhibit 48 to the James Decl., on the

following grounds:

    a.  **Hearsay.**  (Ex. 48, cited in Damages Opp'n, p. 13 ¶ 30.)  The correspondence

consists of out-of-court statements offered for their truth:    **REDACTED**

**REDACTED**

Accordingly, the letter and emails must be excluded.

6.  **10/6/04 Deposition Transcript of Lawrence Gasparro,** submitted as Exhibit 56 to the

James Decl., on the following grounds:

    a.  **Lack of personal knowledge.**  (Ex. 56 at 330, cited in Damages Opp'n, p. 11 ¶ 27.)

Mr. Gasparro offers inadmissible speculation as to    **REDACTED**

    **REDACTED**    Mr. Gasparro's  **REDACTED**

    **REDACTED**    (*id.* at 212-13, 249-56), and

there is no foundation for him to make a sweeping, overbroad assertion as to

    **REDACTED**    In his deposition, he could not

remember with which    **REDACTED**

(*Id.*)  His overbroad, unspecific, and vague testimony lacks personal knowledge,

and must not be considered.

    b.  **Hearsay.**  (Ex. 56 at 330, cited in Damages Opp'n, p. 11 ¶ 27.)  Mr. Gasparro's

assertion about the alleged effect of Novell's statements on    **REDACTED**

is based on inadmissible double hearsay.  Mr. Gasparro purports to relay out-of-court statements made by                **REDACTED**                which in turn communicate out-of-court statements made                **REDACTED**

  **REDACTED**      (*Id.* at 329.)  This is inadmissible double hearsay.

 c. **Improper Use of *SCO v. IBM* Deposition Testimony.**  (Ex. 56 at 330, cited in Damages Opp'n, p. 11 ¶ 27.)  This testimony is from a deposition in *SCO v. IBM*, a lawsuit to which Novell is not a party.  Because Novell had no notice of Mr. Gasparro's deposition, and no opportunity to object or cross-examine him, the transcript may not be used against Novell, and must be stricken.

7. **10/7/04 Deposition Transcript of Gregory Pettit**, submitted as Exhibit 57 to the James Decl., on the following grounds:

 a. **Lack of personal knowledge.**  (Ex. 57 at 131-32, 167-68, cited in Damages Opp'n, p. 13 ¶ 30, p. 15 ¶ 36.)  Without any foundation, Mr. Pettit offers inadmissible speculation as to why potential SCOsource licensees Merrill Lynch and Raytheon did not sign licenses.  (*Id.*)  There is no evidence cited by SCO that Mr. Pettit communicated with Merrill Lynch or Raytheon directly about their reasons for not pursuing a SCOsource license.  (*Id.*)  Instead Mr. Pettit broadly blames Novell for the problems of the SCOsource program, without indicating what the potential licensees said directly to him or how he otherwise purports to have gotten his information.  (*Id.*)  Accordingly, his testimony lacks personal knowledge, and must not be considered.

    b. **Hearsay**.  (Ex. 57 at 131-32, 167-68, cited in Damages Opp'n, p. 13 ¶ 30, p. 15 ¶ 36.)  Mr. Pettit's assertions about the alleged effect of Novell's statements on potential SCOsource licensees are based on inadmissible hearsay to the extent they were communicated to him directly, and double hearsay to the extent communicated to him by other SCO employees or any other persons.  As just one example, in the case of Raytheon, it was Mr. Gasparro who communicated to Mr. Pettit that the Raytheon meeting was being put "on hold."  (*Id.* at 126.)  This is inadmissible double hearsay.

    c. **Improper Use of *SCO v. IBM* Deposition Testimony.**  (Ex. 57 at 131-32, 167-68, cited in Damages Opp'n, p. 13 ¶ 30, p. 15 ¶ 36.)  This testimony is from a deposition in *SCO v. IBM*, a lawsuit to which Novell is not a party.  Because Novell had no notice of Mr. Pettit's deposition, and no opportunity to object or cross-examine him, the transcript may not be used against Novell, and must be stricken.

8. **11/5/04 Deposition Transcript of Philip Langer**, submitted as Exhibit 58 to the James Decl., on the following grounds:

    a. **Lack of personal knowledge.**  (Ex. 58 at 135-37, 140-41, cited in Damages Opp'n, p. 6 ¶ 12, p. 12 ¶ 28, p.14 ¶ 34.)  Without any foundation, Mr. Langer offers inadmissible speculation as to the actions of "all" potential SCOsource licensees (*id.* at 135) and about the SCO "pipeline" being "killed."  (*Id.* at 137.)  SCO points to no foundational evidence that would enable Mr. Langer to make such broad, sweeping statements on the basis of personal knowledge.  Accordingly, his testimony on this topic must not be considered.

16

b. **Hearsay.**  (Ex. 58 at 135-37, 140-41, cited in Damages Opp'n, p. 6 ¶ 12, p. 12 ¶ 28, p.14 ¶ 34.)  Mr. Langer's assertions about the alleged effect of Novell's statements on potential SCOsource licensees are based on inadmissible hearsay to the extent they were communicated to him directly, and double hearsay to the extent communicated to him by other SCO employees or any other persons.  (*Id.* at 135-37 (relaying statements by "all" potential SCOsource licensees); 140-41 (relaying statements by Regal Entertainment Group).)

c. **Improper Use of *SCO v. IBM* Deposition Testimony.**  (Ex. 58 at 135-37, 140-41, cited in Damages Opp'n, p. 6 ¶ 12, p. 12 ¶ 28, p.14 ¶ 34.)  This testimony is from a deposition in *SCO v. IBM*, a lawsuit to which Novell is not a party.  Because Novell had no notice of Mr. Langer's deposition, and no opportunity to object or cross-examine him, the transcript may not be used against Novell, and must be stricken.

9. **12/16/05 Deposition Transcript of Ryan Tibbitts**, submitted as Exhibit 59 to the James Decl., and the **4/24/07 Deposition Transcript of Ryan Tibbitts**, submitted as Exhibit 63 to the James Decl., on the following grounds:

a. **Lack of personal knowledge.**  (Ex. 59 at 113, cited in Damages Opp'n, p. 11 ¶ 25; Ex. 63 at 20-21, 26-28, 32-33, 37-40, cited in Damages Opp'n, p. 14-16 ¶¶ 35, 37-38.)  Without any foundation, SCO cites Mr. Tibbitts' speculative testimony as to certain potential SCOsource licensees such as Google and an unnamed New Mexico utility company.  Mr. Tibbitts concedes that potential licensees did not specifically cite Novell as the reason for refusing a license, but only that they raised the Novell copyright issue.  (Ex. 63 at 26 (testifying as to a New Mexico utility company), 30

(unknown lawyer for unknown entity), 39-40 (Google).)  Because Mr. Tibbitts lacks

personal knowledge of why any        REDACTED        , his testimony

on this topic must be excluded.  Mr. Tibbitts also asserts        REDACTED

REDACTED

(Ex. 59 at 113.)  SCO has adduced no evidence indicating that Mr.

Tibbitts had the personal knowledge of        REDACTED        that would allow

him to make such a sweeping assertion.  Accordingly, his testimony must be

stricken for lack of personal knowledge.

b.  **Hearsay.**  (Ex. 59 at 113, cited in Damages Opp'n, p. 11 ¶ 25; Ex. 63 at 20-21, 26-

28, 32-33, 37-40, cited in Damages Opp'n, p. 14-16 ¶¶ 35, 37-38.)  Mr. Tibbitts

makes a number of inadmissible assertions of fact that purport to directly relay out-

of-court statements by potential SCOsource licensees.  These include discussions

regarding Google (Ex. 63 at 37-40), discussions regarding the Department of

Defense (Ex. 63 at 20-21), discussions with an unknown lawyer for an unknown

entity (*id.* at 29-30), and discussions with a New Mexico power utility (*id.* at 26-

28).

c.  **Improper Use of *SCO v. IBM* Deposition Testimony.**  (Ex. 59 at 113, cited in

Damages Opp'n, p. 11 ¶ 25.)  Exhibit 59 is testimony from a deposition in *SCO v.*

*IBM*, a lawsuit to which Novell is not a party.  Because Novell had no notice of Mr.

Tibbitt's 12/16/05 deposition, and no opportunity to object or cross-examine him,

the transcript may not be used against Novell, and must be stricken.

10. **3/14/07 Deposition Transcript of Chris Sontag**, submitted as Exhibit 60 to the James Decl., the **4/30/07 30(b)(6) Deposition Transcript of Chris Sontag**, submitted as Exhibit 64 to the James Decl., and the **5/18/07 Declaration of Chris Sontag**, submitted as Exhibit 80 to the James Decl., on the following grounds:

   a. **Relevance (including inadmissible parol evidence).** (Ex. 64 at 126-29, cited in Slander of Title Opp'n, p. 58.) Mr. Sontag's testimony seeks to contradict the express terms of the APA and relevant UNIX licenses, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

   b. **Lack of personal knowledge.** (Ex. 60 at 114-15, cited in Damages Opp'n, p. 10-11 ¶ 24; Ex. 64 at 73-74, 90-93, 103, cited in Damages Opp'n, p. 17-18 ¶¶ 42-43, p. 20-21 ¶ 46; Ex. 64 at 126-29, cited in Slander of Title Opp'n, p. 58; Ex. 80 ¶¶ 4-6, 7-8, 10-11, 13, 15, cited in Damages Opp'n, p. 6-7 ¶ 12, p. 8 ¶¶ 18-19, p. 18-20 ¶ 44.) Throughout his testimony, and without foundation, Mr. Sontag offers inadmissible speculation as to the responsibilities, actions, and intentions of his SCO coworkers, UNIX licensees, Novell, Hewlett Packard, and other actual and potential SCOsource licensees (speculating without foundation at ¶ 5 of Ex. 80, for example, as to                    REDACTED                    , opining without foundation as to the reasons certain customers did not take SCOsource licenses at 73-74 and 103 of Ex. 64, and speculating at 114-15 of Ex. 60

                    REDACTED                    ). SCO submits no foundational evidence that Mr. Sontag had any actual knowledge as to anyone's

actions or statements except his own.  In addition, Mr. Sontag gives no foundational

support for his speculation about SCO's future business opportunities, thus offering

improper testimony as a witness on the issue of special damages.  He does so with

no analysis based on reliable or accepted facts and methods, and with no foundation

for speculating as to future losses in the Linux market.  Accordingly, his testimony

lacks personal knowledge, and must not be considered.

c.   **Hearsay.**  (Ex. 60 at 117, cited in Damages Opp'n, p. 10-11 ¶ 24; Ex. 64 at 73-74,

90-93, cited in Damages Opp'n, p. 17-18 ¶ 42, p. 20-21 ¶ 46; Ex. 64 at 126-29,

cited in Slander of Title Opp'n, p. 58; Ex. 80, ¶¶ 6-15, cited in Damages Opp'n, p.

6-7 ¶ 12, p. 8 ¶¶ 18-19, p. 18-20 ¶ 44.)  Mr. Sontag makes a number of inadmissible

assertions of fact that directly relay out-of-court statements, such as, for instance,

the contents of discussions with   **REDACTED**  , offered for their truth at ¶¶ 9-15

of Ex. 80, and "oral communications with those customers and amongst ourselves"

at 103 of Ex. 64.  These are inadmissible as either hearsay or double hearsay.  At 73

of Ex. 64, he offers as his sole basis for his speculation as to SCOsource licensees'

reasons for declining licenses "conversations with a number of companies in terms

of follow-ups."  At 122 of Ex. 60, Sontag admits that his knowledge stems from

conversations with others at SCO,                **REDACTED**               , rather than

first-hand knowledge.  He also cites as the basis for his knowledge (at Ex. 60

at 117)                                **REDACTED**

                              **REDACTED**                              This is again

either hearsay or double hearsay.

As stated in its opening memorandum on its motion for summary judgment on special damages, for purposes of that motion only, Novell does not object on hearsay grounds to a few specific statements by certain SCO witnesses in deposition – including Mr. Sontag – about what third party potential licensees allegedly said. (*See* Opening Br. on Special Damages Motion at 23 n.5.)  However, as set forth herein, Novell does object to certain additional evidence submitted by SCO in its opposition papers, such as Mr. Sontag's account of           **REDACTED**

        **REDACTED**               (*see, e.g.*, James Decl., Ex. 80 ¶¶ 6-15 (Sontag Decl.)).  Novell also objects where, for example, Mr. Sontag is testifying about what other SCO personnel told him.  The statements made by   **REDACTED**

        **REDACTED**          to Mr. Sontag are an additional layer of hearsay to which Novell objects.  Novell further objects to any additional out-of-court statements by Mr. Sontag, SCO personnel, potential licensees, and others as inadmissible hearsay.

d.  **Best evidence rule.**  (Ex. 64 at 73-74, 90-93, cited in Damages Opp'n, p. 17-18 ¶ 42, p. 20-21 ¶ 46; Ex. 64 at 126-29,  cited in Slander of Title Opp'n, p. 58; Ex. 80, ¶¶ 4, 7, 11-12, cited in Damages Opp'n, p. 6-7 ¶ 12, p. 8 ¶¶ 18-19, p. 18-20 ¶ 44.) Mr. Sontag purports to recite the contents of the relevant contracts and correspondence, but misstates those contents.  This testimony should be excluded because the documents themselves are the best evidence of their contents.

11. **3/27/07 Deposition Transcript of Darl McBride**, submitted as Exhibit 61 to the James Decl., and the **5/18/07 Declaration of Darl McBride**, submitted as Exhibit 81 to the James Decl., on the following grounds:

a. **Relevance (including inadmissible parol evidence).** (Ex. 81, ¶¶ 4, 7, 10-14, cited in Damages Opp'n, p. 6-7 ¶ 12, p. 14 ¶ 19, p. 20 ¶ 45, p. 23 ¶ 51.) Mr. McBride's declaration seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence. In addition, ¶¶ 10-14 of Mr. McBride's declaration is of no probative value because it evades the key question of the value of the intellectual property at issue in the case after a trial. Accordingly, his testimony should be excluded.

b. **Lack of personal knowledge.** (Ex. 61 at 219-20, cited in Damages Opp'n, p. 9-10 ¶ 23; Ex. 81, ¶¶ 3, 5-6, 8-14, cited in Damages Opp'n 6-7 ¶ 12, p. 14, p. 20 ¶ 45.) Throughout his testimony and declaration, and without foundation, Mr. McBride offers inadmissible speculation as to

**REDACTED**

For example, Mr. McBride speculates that it was Novell's statements that made potential licensees unable to "understand[]" SCO's ownership claims. (Ex. 61 at 219-20.) Yet SCO submits no foundational evidence showing that Mr. McBride has any personal knowledge of any specific customer's understandings or statements or future business needs.

**REDACTED**

(Ex. 81 ¶¶ 3, 9.) In addition, Mr. McBride gives no

foundational support for his speculation about SCO's future business opportunities, thus offering improper testimony as a witness on the issue of special damages. He does so with no analysis based on reliable or accepted facts and methods, and with no foundation for speculating as to future losses in the Linux market or SCO's ability to execute further SCOsource business if it prevails on its argument that it owns the UNIX copyrights. Accordingly, his testimony lacks personal knowledge, and must not be considered.

c.  **Hearsay.**  (Ex. 61 at 219-20, cited in Damages Opp'n, p. 9-10 ¶ 23; Ex. 81, ¶¶ 6-9, 11, cited in Damages Opp'n, p. 6-7 ¶ 12, p. 14, p. 20 ¶ 45.)  Mr. McBride makes a number of inadmissible assertions of fact that directly relay out-of-court statements (                          **REDACTED**                          at ¶ 9 of Ex. 81, and the content of SCO's internal discussions regarding SCOsource at 219-20 of Ex. 61).  Although Novell does not – for the purposes of this briefing – object to the specific statements in pages 130-37 of Ex. 61 where Mr. McBride relays the statements allegedly made by potential licensees (Novell's Damages Motion, p. 23, n.5), all other out-of-court statements by McBride, SCO personnel, and others are objectionable and inadmissible.

d.  **Best evidence rule.**  (Ex. 81, ¶¶ 4, 6-8, cited in Damages Opp'n, p. 6-7 ¶ 12, p. 14 ¶ 19.)  Mr. McBride purports to recite the contents of the relevant contracts and correspondence, but misstates those contents.  This testimony should be excluded because the documents themselves are the best evidence of their contents.

e.  **Improper Use of Withheld Discovery.**  (Ex. 81, ¶ 9, cited in Damages Opp'n, p. 20 ¶ 45.)  Mr. McBride's declaration shows that SCO knew of the information it withheld during its 30(b)(6) deposition at the time of that deposition.  Accordingly, Mr. McBride's improper testimony should be stricken.

12. **3/30/07 Deposition Transcript of Jeff Hunsaker**, submitted as Exhibit 62 to the James Decl., on the following grounds:

a.  **Lack of personal knowledge.**  (Ex. 62 at 107, 162-63, 174, 229-31, cited in Damages Opp'n, p. 9-10 ¶ 23, p. 11 ¶ 26., p. 14-16 ¶¶ 35, 37, 40, p. 18 ¶ 44.)  Without any foundation, Mr. Hunsaker offers inadmissible speculation as to the

REDACTED

REDACTED                        at 162-63 of Ex. 62 without any foundation that he has any knowledge as to what these unidentified parties said,

REDACTED        (at 230-31 of Ex. 62), **REDACTED** (at 229 of Ex. 62),

***  (at 229 of Ex. 62) ***  even though there is no foundation establishing that he was present for any communications with these potential licensees).  Moreover, Mr. Hunsaker's speculation as to the                        REDACTED

REDACTED        (cited at Damages Opp'n, p. 9-10 ¶ 23) was the subject of a proper and timely objection and motion to strike at the deposition.  (Ex. 62. at 107.)  In addition, Mr. Hunsaker gives no foundational support for his speculation about

REDACTED                , thus offering improper testimony as a witness on the issue of special damages.  He does so with no analysis based on reliable or accepted facts and methods, and with no foundation for speculating as to   ***

24

**REDACTED**  Accordingly, his testimony lacks personal knowledge, and must not be considered.  Finally, SCO cites Mr. Hunsaker's deposition transcript to support the contention that                                         **REDACTED**

**REDACTED**                    (Damages Opp'n, p. 16 ¶ 40.)  The transcript contains no references to  **\*\*\***  whatsoever.  Accordingly, each of the proffered excerpts lacks personal knowledge and foundation, and must not be considered.

b. **Hearsay.**  (Ex. 62 at 107, 162-63, 174, 229-33, cited in Damages Opp'n, p. 9-10 ¶ 23, p. 11 ¶¶ 26-27, p. 14-16 ¶¶ 35, 37, 40, p. 18 ¶ 44.)  Mr. Hunsaker makes a number of inadmissible assertions of fact that both purport to directly relay out-of-court statements, and that are based on such statements.  (*E.g.*, Ex. 62 at 162-63

(                                        **REDACTED**                                    ),

230-31 (                          **REDACTED**                          ).)

Although Novell does not – for the purposes of this briefing – object to those specific statements in pages 150-51, 162-63, 205-06, 229-31, and 236-37 of Ex. 62 wherein Mr. Hunsaker relays                    **REDACTED**

(Novell's Damages Motion, p. 23 n.5), all other out-of-court statements referenced by Mr. Hunsaker are objectionable and inadmissible, including the double hearsay at 229-33 of Ex. 62 regarding statements made to Hunsaker **REDACTED** and the testimony at 162-63 to the extent it is based upon double hearsay statements made to him by                    **REDACTED**

13. **5/2/07 30(b)(6) Deposition Transcript of Erik Hughes**, submitted as Exhibit 65 to the James Decl., on the following grounds:

    a. **Lack of personal knowledge.** (Ex. 65 at 86-87, cited in Damages Opp'n, p. 12 ¶ 22, p. 19 ¶ 43.) Though SCO asserts his speculation as fact, Mr. Hughes's testimony is replete with inadmissible opinions regarding the statements of a document. Even Mr. Hughes concedes (at Ex. 65 at 86-87) "looking at this document – and [sic] it's difficult to tell exactly what it is because of the way its printed and numbered." When asked "have you seen this document before?" Hughes replied "I have not." When asked "Do you know what it is?" Hughes replied "I don't." Accordingly, his testimony lacks personal knowledge, and must not be considered.

    b. **Best evidence rule.** (Ex. 65 at 86-87, cited in Damages Opp'n, p. 12 ¶ 22, p. 19 ¶ 43.) Mr. Hughes purports to recite the contents of relevant documents, but misstates those contents. This testimony should be excluded because the documents themselves are the best evidence of their contents.

14. **1/24/07 Deposition Transcript of Blake Stowell**, submitted as Exhibit 67 to the James Decl., on the following grounds:

    a. **Relevance (including inadmissible parol evidence).** (Ex. 67.) Because Mr. Stowell's deposition is not cited in SCO's 5/18/07 Opposition Briefs, it is not relevant, but instead is cumulative, confuses the issues, prejudices Novell, causes undue delay, and wastes time.

15. **5/17/07 Declaration of Ed Chatlos**, submitted as Exhibit 68 to the James Decl., on the following grounds:

    a. **Relevance (including inadmissible parol evidence).** Mr. Chatlos's testimony seeks to contradict the APA and the TLA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b. **Lack of personal knowledge.** (Ex. 68 at ¶¶ 2-4, cited in Unfair Competition Opp'n, p. 6-7, p. 9-10 ¶ 21, p. 29, p. 41.) Throughout his testimony, and without foundation, Mr. Chatlos offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz and Novell (speculating, for example, at ¶ 4 that "if Novell had been permitted to sell or market" certain operating systems, "Novell's conduct would threaten to impact Santa Cruz's success in the UnixWare business"). As explained in Novell's Objections to SCO's Summary Judgment Exhibits, PACER No. 298, Mr. Chatlos was not Novell's chief negotiator of the relevant provisions of the APA, and there is no foundation for him to opine on Novell's intent for all purposes, as he does at ¶¶ 3-4. In fact, Tor Braham was the "primary representative of Novell in negotiating the legal terms of the contract between Novell and Santa Cruz." (Declaration of Tor Braham ("Braham Decl."), filed 4/20/07, PACER No. 281, ¶ 5.) Accordingly, Chatlos's testimony lacks personal knowledge, and must not be considered.

    c. **Hearsay.** (Ex. 68 at ¶ 3, cited in Unfair Competition Opp'n, p. 6-7.) Mr. Chatlos makes a number of inadmissible assertions of fact based solely on out-of-court

conversations and documents (stating, for example, "I do not recall anyone on either side of the contracts saying or suggesting that anyone possessed any contrary intent").

d. **Best evidence rule.**  (Ex. 68 at ¶¶ 3-4, cited in Unfair Competition Opp'n, p. 6-7, p. 9-10 ¶ 21, p. 29, p. 41.)  Mr. Chatlos purports to recite the contents of the relevant contracts, but misstates those contents.  This testimony should be excluded because the agreements themselves are the best evidence of their contents.

16. **5/18/07 Declaration of Duff Thompson**, submitted as Exhibit 69 to the James Decl., on the following grounds:

a. **Relevance (including inadmissible parol evidence).**  (Ex. 69, cited in Unfair Competition Opp'n, p. 7 ¶ 17, p. 9-10 ¶ 21, p. 29-30, p. 41.)  Mr. Thompson's testimony seeks to contradict the APA and the TLA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b. **Lack of personal knowledge.**  (Ex. 69, ¶¶ 2-6, cited in Unfair Competition Opp'n, p. 7 ¶ 17, p. 9-10 ¶ 21, p. 29-30, p. 41.)  Throughout his testimony, and without foundation, Mr. Thompson offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell, and the "worldwide" sales and marketing of companies in the industry (*see, e.g.*, ¶ 6).  As explained in Novell's Objections to SCO's Summary Judgment Exhibits, PACER No. 298, and contrary to his implication at ¶ 4, Mr. Thompson was not heavily involved in the TLA negotiations.  Ty Mattingly testified that Thompson was "not really involved in the

details of the Novell, Santa Cruz transaction." Supplemental Declaration of Ken Brakebill ("Supp. Brakebill Decl."), filed 5/14/07, PACER 296, Ex. 33, Mattingly Dep. 70:17-71:1.) Thompson was "checked out" during the drafting of the agreement and was "not in the office that often." (*Id.* 71:2-72:19.) Accordingly, Thompson's testimony lacks personal knowledge, and must not be considered.

    c. **Hearsay.** (Ex. 69, ¶¶ 2-3, 5-6, cited in Unfair Competition Opp'n, p. 7 ¶ 17, p. 9-10 ¶ 21, p. 29-30, p. 41.) Mr. Thompson makes a number of inadmissible assertions of fact based solely on out-of-court conversations and documents. For example, he frequently relays the contents of discussions regarding the TLA and APA, not just with party-opponent Novell, but apparently internally at Santa Cruz as well (stating at ¶ 5, "I do not recall anyone on either side of the contracts saying or suggesting. . . .").

    d. **Best evidence rule.** (Ex. 69, ¶¶ 2-6, cited in Unfair Competition Opp'n, p. 7 ¶ 17, p. 9-10 ¶ 21, p. 29-30, p. 41.) Mr. Thompson purports to recite the contents of the relevant contracts, but misstates those contents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

17. **5/17/07 Declaration of Gary Pisano**, submitted as Exhibit 71 to the James Decl., on the following grounds:

    a. **Late Submitted Evidence.** To the extent SCO seeks to submit to the Court any expert report by Dr. Pisano for consideration on these summary judgment motions, Novell objects that such submission would be untimely, unfair, and inappropriate. SCO should have included any evidence it wanted to have considered in the

summary judgment record with service of its May 18, 2007 Opposition Briefs, or
sought relief under Rule 56(f) of the Federal Rules of Civil Procedure. However,
SCO included no expert reports with its opposition papers, and made no Rule 56(f)
motion. As a result, any such expert report should be excluded and not considered
by the Court.

b. **Relevance (including inadmissible parol evidence).** (Ex. 71, cited in Damages
   Opp'n, p. 9 ¶ 21, p. 17 ¶ 42, p. 22-23 ¶¶ 49-51; Ex. 71, cited in Unfair Competition
   Opp'n, p. 4 ¶ 5.) Mr. Pisano's declaration is of no probative value because it evades
   the key question of                                **REDACTED**

        Accordingly, his testimony should be excluded.

c. **Hearsay.** (Ex. 71, ¶ 6-11, cited in Damages Opp'n, p. 17 ¶ 42, p. 22 ¶ 49; Ex. 71,
   cited in Unfair Competition Opp'n, p. 4 ¶ 5.) Mr. Pisano bases his testimony on
        **REDACTED**      which appears to consist of out-of-court statements offered
   by SCO and Mr. Pisano for their truth. Because Mr. Pisano is not qualified as an
   expert in this matter, his testimony is inadmissible hearsay.

d. **Improper expert opinion.** (Ex. 71, ¶¶ 6-11, cited in Damages Opp'n, p. 17 ¶ 42, p.
   22 ¶ 49.) Mr. Pisano is not qualified as an expert, and his proffered testimony lacks
   the requisite foundation for admissibility on summary judgment. At ¶ 6, Mr. Pisano
   bases his testimony solely on

                              **REDACTED**

                                   He offers broad speculation at ¶ 11
regarding                              **REDACTED**

30

**REDACTED**

In addition, Mr. Pisano fails to take the key step of

**REDACTED**

(¶ 11.)  His testimony therefore fails to
satisfy Federal Rules of Evidence 701 or 702 or Federal Rule of Civil
Procedure 56(e).  *Mid-State Fertilizer v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339
(7th Cir. 1989); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985);
*Zarecki v. National RR. Passenger Corp.*, 914 F. Supp. 1566, 1574-75 (N.D. Ill.
1996).

18.  **5/17/07 Declaration of Paul T. Moxley**, submitted as Exhibit 72 to the James Decl., on
the following grounds:

a.  **Hearsay.**  (Ex. 72, ¶ 3-8, cited in Damages Opp'n, p. 23-24 ¶ 52.)  Mr. Moxley
bases his testimony on selected excerpts from                    **REDACTED**
                         **REDACTED**                                      These are
inadmissible out of court statements offered and relied on by SCO and Mr. Moxley
for their truth.  Because Mr. Moxley is not qualified as an expert in this matter, his
testimony is inadmissible hearsay.

b.  **Best evidence rule.**  (Ex. 72, ¶¶ 3-4, 6, cited in Damages Opp'n, p. 23-24 ¶ 52.)
Mr. Moxley purports to recite the contents of                    **REDACTED**

        \*\*\*    This testimony should be excluded because those documents themselves, and not Mr. Moxley's recitals, are the best evidence of their contents.

c.    **Improper expert opinion.**  (Ex. 72, ¶¶ 3-8, cited in Damages Opp'n, p. 23-24 ¶ 52.)  Mr. Moxley is not qualified as an expert in this case, and his proffered testimony lacks the requisite foundation for admissibility on summary judgment (at ¶ 6, Mr. Moxley admits he is basing his testimony on

REDACTED

Accordingly, his testimony is improper legal opinion, and fails to satisfy Federal Rule of Evidence 701, 702, or Federal Rule of Civil Procedure 56(e).

d.    **Late Submitted Evidence.**  To the extent SCO seeks to submit to the Court any expert report by Mr. Moxley for consideration on these summary judgment motions, Novell objects that such submission would be untimely, unfair, and inappropriate. SCO should have included any evidence it wanted to have considered in the summary judgment record with service of its May 18, 2007 Opposition Briefs, or sought relief under Rule 56(f) of the Federal Rules of Civil Procedure. However, SCO included no expert reports with its opposition papers, and made no Rule 56(f) motion.  As a result, any such expert report should be excluded and not considered by the Court.

19. **Report of Evan Ivie**, submitted as Exhibit 73 to the James Decl., on the following grounds:

    a. **Relevance (including inadmissible parol evidence).** (Ex. 73.) Because Mr. Ivie's report is not cited in SCO's 5/18/07 Opposition Briefs, it is not relevant, but instead is cumulative, confuses the issues, prejudices Novell, causes undue delay, and wastes time.

    b. **Improper expert opinion.** (Ex. 73.) Mr. Ivie is not qualified as an expert in *SCO v. Novell*, and SCO lays no foundation as to his ability to testify as to the current case.

20. **Report of Thomas Cargill**, submitted as Exhibit 74 to the James Decl., on the following grounds:

    a. **Relevance (including inadmissible parol evidence).** (Ex. 74.) Because Mr. Cargill's report is not cited in SCO's 5/18/07 Opposition Briefs, it is not relevant, but instead is cumulative, confuses the issues, prejudices Novell, causes undue delay, and wastes time.

    b. **Improper expert opinion.** (Ex. 74.) Mr. Cargill is not qualified as an expert in *SCO v. Novell*, and SCO lays no foundation as to his ability to testify as to the current case.

21. **1996 SCO Annual Report**, submitted as Exhibit 82 to the James Decl., on the following grounds:

    a. **Relevance (including improper parol evidence).** (Ex. 82, cited in Slander of Title Opp'n, p. 20 ¶ 35.) The document is inadmissible under the parol evidence rule

because SCO seeks to use it to contradict the plain language of the APA, which
excludes "all copyrights" from the transfer of assets.

    b.  **Improper use of withheld discovery.**  (Ex. 82, cited in Slander of Title Opp'n, p. 20
¶ 35.)  Novell asked SCO in an interrogatory to "state all facts, evidence, and bases"
in support of its allegation that the parties intended the APA to transfer the
copyrights.  (2nd Supp. Brakebill Decl., Ex.10, Interrogatory No. 9.)  Novell also
requested that SCO "state all facts, evidence, and bases" that the parties' "course of
conduct evidenced their understanding that the APA had transferred the . . .
copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in
response to either interrogatory. (*Id.*, Response Nos. 9-10.)  SCO should not be
permitted to rely upon this document now.

22.  **FTC Form and Notification**, submitted as Exhibit 84 to the James Decl., on the
following grounds:

    a.  **Relevance (including improper parol evidence).**  (Ex. 84, cited in Slander of Title
Opp'n, p. 19 ¶ 31.)  The document is inadmissible under the parol evidence rule
because SCO seeks to use it to contradict the plain language of the APA, which
excludes "all copyrights" from the transfer of assets.

    b.  **Improper use of withheld discovery.**  (Ex. 84, cited in Slander of Title Opp'n, p. 19
¶ 31.)  Novell asked SCO in an interrogatory to "state all facts, evidence, and bases"
in support of its allegation that the parties intended the APA to transfer the
copyrights.  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also
requested that SCO "state all facts, evidence, and bases" that the parties' "course of

conduct evidenced their understanding that the APA had transferred the . . . copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in response to either interrogatory.  (*Id.*, Response Nos. 9-10.)  SCO should not be permitted to rely upon this document now.

23. **1987 MS Agreement Memorandum,** submitted as Exhibit 83 to the James Decl., on the following grounds:

    a.    **Relevance (including improper parol evidence).**  (Ex. 83, cited in Slander of Title Opp'n, p. 26 ¶ 53.)  The document is inadmissible under the parol evidence rule because SCO seeks to use it to contradict the plain language of the APA, which excludes "all copyrights" from the transfer of assets.

    b.    **Improper use of withheld discovery.**  (Ex. 83, cited in Slander of Title Opp'n, p. 26 ¶ 53.)  Given the representations that SCO has made in discovery.  Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights.  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also requested that SCO "state all facts, evidence, and bases" that the parties' "course of conduct evidenced their understanding that the APA had transferred the . . . copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in response to either interrogatory.  (*Id.*, Response Nos. 9-10.)  SCO should not be permitted to rely upon this document now.

24. **Notification and Report Form**, submitted as Exhibit 84 to the James Decl., on the following grounds:

a. **Relevance (including improper parol evidence).** (Ex. 84, cited in Slander of Title Opp'n, p. 19 ¶ 31.) The document is inadmissible under the parol evidence rule because SCO seeks to use it to contradict the plain language of the APA, which excludes "all copyrights" from the transfer of assets.

b. **Improper use of withheld discovery.** (Ex. 84, cited in Slander of Title Opp'n, p. 19 ¶ 31.) SCO should not be permitted to rely on this document, given the representations that it has made in discovery. Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of their allegation that the parties intended the APA to transfer the copyrights. (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) SCO's response did not identify this document. (*Id.*, Response No. 9.) SCO should not be permitted to rely upon it now.

25. **Project Sleigh Ride Presentation**, submitted as Exhibit 85 to the James Decl., on the following grounds:

a. **Relevance (including improper parol evidence).** (Ex. 85, cited in Slander of Title Opp'n, p. 18 ¶ 27-28.) The quoted language is inadmissible under the parol evidence rule because SCO seeks to use it to contradict the plain language of the APA, which excludes "all copyrights" from the transfer of assets.

b. **Lack of personal knowledge.** (Ex. 85, cited in Slander of Title Opp'n, p. 18 ¶ 27-28.) The cited excerpt lacks foundation, since SCO submits no evidence that Hambrecht & Quist had any personal knowledge of the negotiation of the contractual provisions of the APA.

    c. **Improper use of withheld discovery.** (Ex. 86, cited in Damages Opp'n, p. 17 ¶ 41, Damages Opp'n Addendum A, p. 12 ¶ 29.) SCO should not be permitted to rely on this document, given the representations that it has made in discovery. Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of their allegation that the parties intended the APA to transfer the copyrights. (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) SCO's response did not identify this document. (*Id.*, Response No. 9.) SCO should not be permitted to rely upon it now.

26. **Just Sports Letter**, submitted as Exhibit 86 to the James Decl., on the following grounds:

    a. **Hearsay.** (Ex. 86, cited at Damages Opposition, p. 17 ¶ 41, Damages Opp'n Addendum A, p. 12 ¶ 29.) The letter from Just Sports is an out of court statement offered for its truth, and must be excluded.

27. **5/18/07 Declaration of Christine Botosan**, submitted as Exhibit 87 to the James Decl., on the following grounds:

    a. **Late Submitted Evidence.** To the extent SCO seeks to submit to the Court any expert report by Ms. Botosan for consideration on these summary judgment motions, Novell objects that such submission would be untimely, unfair, and inappropriate. SCO should have included any evidence it wanted to have considered in the summary judgment record with service of its May 18, 2007 Opposition Briefs, or sought relief under Rule 56(f) of the Federal Rules of Civil Procedure. However, SCO included no expert reports with its opposition papers,

and made no Rule 56(f) motion.  As a result, any such expert report should be excluded and not considered by the Court.

b. **Relevance (including inadmissible parol evidence).**  (Ex. 87, ¶¶ 5-11, cited in Damages Opp'n, p. 21-22 ¶ 47-48.)  Ms. Botosan's declaration is of no probative value because it evades the key question of                **REDACTED**

**REDACTED**          Accordingly, her testimony should be excluded.

c. **Hearsay.**  (Ex. 87 at ¶¶ 5-11, cited in Damages Opp'n, p. 21-22 ¶ 48.)  In offering her opinion, Ms. Botosan relies on out-of-court

**REDACTED**

Because Ms. Botosan is not qualified as an expert in this matter, her testimony is inadmissible hearsay.

d. **Improper expert opinion.**  (Ex. 87, ¶¶ 5-11, cited in Damages Opp'n, p. 21-22 ¶ 48.)  Ms. Botosan is not qualified as an expert, and her proffered testimony lacks the requisite foundation for admissibility on summary judgment.  Without identifying them, she bases her opinion on a laundry list of

**REDACTED**

**REDACTED**

her testimony fails to satisfy

Federal Rules of Evidence 701 or 702, or Federal Rule of Civil Procedure 56(e).

*Mid-State Fertilizer v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989);

*Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *Zarecki v.*

*National RR. Passenger Corp.*, 914 F. Supp. 1566, 1574-75 (N.D. Ill. 1996).

28. **5/18/07 Declaration of Sandeep Gupta**, submitted as Exhibit 89 to the James Decl., on

the following grounds:

    a. **Relevance (including inadmissible parol evidence).** (Ex. 89 at ¶¶ 3, 5-6, cited in

      Slander of Title Opp'n, p. 20, p. 70.) Mr. Gupta's testimony seeks to contradict the

      terms of the APA and related agreements, and is therefore legally irrelevant and

      inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b. **Lack of personal knowledge.** (Ex. 89 at ¶¶ 3, 5-9, cited in Slander of Title Opp'n, p.

      70.) Throughout his declaration, and without foundation, Mr. Gupta offers

      inadmissible speculation as to the actions and intents of Novell's engineers, Dean

      Flamberg, and the UnixWare MR Review Board regarding alleged changes in

      copyright notices and source trees. Accordingly, the cited portions of his testimony

      lack personal knowledge.

    c. **Hearsay.** (Ex. 89, ¶¶ 3-9, cited in Slander of Title Opp'n, p. 20, p. 70.) Mr. Gupta's

      testimony is based on the out-of-court statements of Dean Flamberg, Novell, and the

      UnixWare MR Review Board, offered for their truth.

d. **Best Evidence Rule.** (Ex. 89, ¶¶ 5-9, cited in Slander of Title Opp'n, p. 70.)

   Mr. Gupta purports to recite the contents of the modification report, but
   mischaracterizes those contents. This testimony should be excluded because the
   documents themselves are the best evidence of their contents.

e. **Improper expert opinion.** (Ex. 89, ¶¶ 3-8, cited in Slander of Title Opp'n, p. 20, p.
   70.) Mr. Gupta is not qualified as an expert in this case, but purports to offer expert
   testimony as to changes in source code and copyright notices.

f. **Improper use of withheld discovery.** (Ex. 89, cited in Slander of Title Opp'n, p.
   20.) Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in
   support of its allegation that the parties intended the APA to transfer the copyrights,
   including "the identification of all witnesses whom SCO believes have knowledge of
   such facts and bases." (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)
   Novell also requested that SCO "state all facts, evidence, and bases" that the parties'
   "course of conduct evidenced their understanding that the APA had transferred . . .
   the copyrights," including "the identification of all witnesses whom SCO believes
   have knowledge of such facts and bases." (*Id.*, Interrogatory No. 10.) SCO did not
   identify the declarant, Sandeep Gupta, as a knowledgeable witness in response to
   either interrogatory. (*Id.*, Response Nos. 5, 9-10; 2nd Supp. Brakebill Decl., Ex. 11.)
   Nor did SCO identify the exhibits to Gupta's declaration as evidence upon which it
   planned to rely. Indeed, SCO has never produced the exhibits attached to Gupta's
   declaration, as shown by the lack of any Bates label on the exhibits. SCO should not
   be permitted to rely upon this evidence now.

29. **5/17/07 Declaration of Ralph Yarro**, submitted as Exhibit 90 to the James Decl., on the following grounds:

    a.  **Relevance (including inadmissible parol evidence).** Mr. Yarro's testimony seeks to contradict the 2001 asset transfer's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence. In addition, because Mr. Yarro's declaration is not cited in SCO's 5/18/07 Opposition Briefs, it is not relevant, but instead is cumulative, confuses the issues, prejudices Novell, causes undue delay, and wastes time.

    b.  **Lack of personal knowledge.** (Ex. 90, ¶¶ 3.) Mr. Yarro testifies "as Chairman of the Board," but without further foundation, as to the intellectual property rights transferred in 2001 between Santa Cruz and SCO. Such speculation is inadmissible, and should be excluded.

    c.  **Hearsay.** (Ex. 90, ¶¶ 2-3.) Mr. Yarro's testimony consists largely of his recitation of inadmissible out-of-court statements, which SCO offers for their truth.

    d.  **Best Evidence Rule.** (Ex. 90, ¶ 3.) Mr. Yarro purports to recite the contents of the 2001 asset transfer, but misstates those contents. His testimony should be excluded because the agreements themselves are the best evidence of their contents.

30. **Statement of Work**, cited as Exhibit 91 to the James Decl., on the following grounds:

    a.  **Relevance (including inadmissible parol evidence).** (Ex. 91, cited in Slander of Title Opp'n, p. 21 ¶ 38.) This exhibit seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b. **Improper use of withheld discovery.** (Ex. 91, cited in Slander of Title Opp'n, p. 21 ¶ 38.) Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights. (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) Novell also requested that SCO "state all facts, evidence, and bases" that the parties' "course of conduct evidenced their understanding that the APA had transferred the . . . copyrights." (*Id.*, Interrogatory No. 10.) SCO did not identify this document in response to either interrogatory. (*Id.*, Response Nos. 9-10.) SCO should not be permitted to rely upon this document now.

31. **Skip Jonas Email**, cited as Exhibit 92 to the James Decl., on the following grounds:

a. **Relevance (including inadmissible parol evidence).** (Ex. 92, cited in Slander of Title Opp'n, p. 21 ¶ 39.) This exhibit seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence. In addition, Jonas's statement has no foundation to the extent SCO attempts to use it to demonstrate the intent of the APA because SCO has submitted no evidence that Jonas was involved in any way in the negotiation or drafting of contractual provisions of the APA.

b. **Improper use of withheld discovery.** (Ex. 92, cited in Slander of Title Opp'n, p. 21 ¶ 39.) Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights. (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) Novell also requested that SCO "state all facts, evidence, and bases" that the parties' "course of

conduct evidenced their understanding that the APA had transferred the . . .
copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in
response to either interrogatory.  (*Id.*, Response Nos. 9-10.)  SCO should not be
permitted to rely upon this document now.

32. **Larry Bouffard Email**, submitted as Exhibit 93 to the James Decl., on the following
grounds:

    a.  **Relevance (including improper parol evidence).**  (Ex. 93, cited in Slander of Title
        Opp'n, p. 21-22 ¶ 40.)  The document is inadmissible under the parol evidence rule
        because SCO seeks to use it to contradict the plain language of the APA, which
        excludes "all copyrights" from the transfer of assets.

    b.  **Lack of personal knowledge.**  (Ex. 93, cited in Slander of Title Opp'n, p. 21-22
        ¶ 40.)  Bouffard's statement has no foundation to the extent SCO attempts to use it to
        demonstrate the intent of the APA.  Bouffard testified that      **REDACTED**
                             **REDACTED**          (2nd Supp. Brakebill Decl.,
        Ex. 12, Bouffard Dep. at 27:13-18.)

33. **Ackerman and Jonas Emails**, submitted as Exhibit 94 to the James Decl., on the
following grounds:

    a.  **Relevance (including improper parol evidence).**  (Ex. 93 at SCO1299982,
        SCO1299952, cited in Slander of Title Opp'n, p. 22 ¶¶ 41-42.)  The document is
        inadmissible under the parol evidence rule because SCO seeks to use it to contradict
        the plain language of the APA, which excludes "all copyrights" from the transfer of
        assets.

b. **Lacks personal knowledge.**  (Ex. 93 at SCO1299982, SCO1299952, cited in Slander of Title Opp'n, p. 22 ¶¶ 41-42.)  The cited statements by Ackerman and Jonas statements have no foundation to the extent SCO attempts to use it to demonstrate the intent of the APA.  SCO submits no evidence that either was involved in any way in the negotiation of the contractual provisions of the APA.  Accordingly, the emails lack personal knowledge, and must not be considered.

34. **Department of Justice Letter**, submitted as Exhibit 103 to the James Decl., on the following grounds:

a. **Relevance (including improper parol evidence).**  (Ex. 103, cited in Slander of Title Opp'n, p. 26 ¶ 48.)  The document is inadmissible under the parol evidence rule because SCO seeks to use it to contradict the plain language of the APA, which excludes "all copyrights" from the transfer of assets.  In addition, to the extent that SCO seeks to use this evidence to argue that Amendment No. 2 effectuated a transfer of copyrights, the evidence is not relevant.  The Copyright Act requires a written instrument of conveyance to transfer copyright ownership, and Amendment No. 2 does not satisfy that requirement.  (Novell's Reply in Support of Its Motion for Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance ("Reply Br."), filed 5/25/07, at 9-12.)  Evidence of intention, whether through testimonial evidence or subsequent course of conduct, does not allow a party to bypass the Copyright Act's requirement of a written conveyance.  (*Id.* at 14-15.)

    b.  **Improper use of withheld discovery.**  (Ex. 103, cited in Slander of Title Opp'n, p.

26 ¶ 48.)  Novell asked SCO in an interrogatory to "state all facts, evidence, and

bases" in support of its allegation that the parties intended the APA to transfer the

copyrights.  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also

requested that SCO "state all facts, evidence, and bases" that the parties' "course of

conduct evidenced their understanding that the APA had transferred the . . .

copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in

response to either interrogatory.  (*Id.*, Response Nos. 9-10.)  SCO should not be

permitted to rely upon this document now.

35. **IP Assignment**, submitted as Exhibit 104 to the James Decl., on the following grounds:

    a.  **Relevance (including improper parol evidence).**  (Ex. 104, cited in Slander of Title

Opp'n, p. 27 ¶¶ 54-55.)  The document is inadmissible under the parol evidence rule

because SCO seeks to use it to contradict the plain language of the APA, which

excludes "all copyrights" from the transfer of assets.

    b.  **Improper use of withheld discovery.**  (Ex. 104, cited in Slander of Title Opp'n, p.

27 ¶¶ 54-55.)  Novell asked SCO in an interrogatory to "state all facts, evidence, and

bases" in support of its allegation that the parties intended the APA to transfer the

copyrights.  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also

requested that SCO "state all facts, evidence, and bases" that the parties' "course of

conduct evidenced their understanding that the APA had transferred the . . .

copyrights." (*Id.*, Interrogatory No. 10.)  SCO did not identify this document in

response to either interrogatory. (*Id.*, Response Nos. 9-10.) SCO should not be permitted to rely upon this document now.

36. **5/18/07 Declaration of Troy Keller**, submitted as Exhibit 106 to the James Decl., on the following grounds:

    a. **Relevance (including inadmissible parol evidence).** (Ex. 106, Slander of Title Opp'n, p. 28-30 ¶ 60-62.) Mr. Keller's testimony seeks to contradict the Intellectual Property Assignment Agreement's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b. **Lack of personal knowledge.** (Ex. 106 at ¶¶ 3-4, 6, 8-12, cited in Slander of Title Opp'n, p. 28-30 ¶ 60-62.) Throughout his testimony, and without foundation, Mr. Keller offers inadmissible speculation as to the responsibilities, actions, and intentions of Santa Cruz, Novell, three different law firms, and Caldera. (*Id.*, ¶ 6, cited in Slander of Title Opp'n, p. 29 ¶ 61.) For example, he testifies as to what Wilson attorneys reviewed, even though he worked for Brobeck. (*Id.*, ¶ 9.) But even he admits that his testimony is not based entirely on first-hand knowledge, stating at ¶ 3 that he "did not have primary responsibility for intellectual property issues in the transaction" between Santa Cruz and Caldera, citing "discussions . . . with IP specialists" as the source of his knowledge (though none of these specialists are disclosed by SCO). Notably, Keller omits any statement that he was present at the conversation he describes in the section quoted above. (*Id.*, ¶¶ 3, 6, cited in Slander of Title Opp'n, p. 29 ¶ 61.) Furthermore, even if Keller had been present,

SCO submits no evidence that the lawyers involved in opining on the meaning of the APA and Amendment No. 2 were in any way involved in the negotiation of those original documents. To the contrary, Wilson Sonsini deliberately excluded any lawyers involved in the APA from participating in the Santa Cruz - Caldera deal. (*See* Supp. Brakebill Decl., Exs. 2, 4.) Accordingly, Mr. Keller's testimony lacks personal knowledge, and must not be considered.

c. **Hearsay.** (Ex. 106, ¶¶ 3, 6, 8-12, cited in Slander of Title Opp'n, p. 28-30 ¶ 60-62.) Mr. Keller makes a number of inadmissible assertions of fact based on out-of-court conversations and documents, which SCO offers for their truth (including representations by Santa Cruz, at ¶ 10, and conversations among and purported conclusion by the parties and lawyers in the Santa Cruz-Caldera transaction, at ¶ 8).

d. **Best evidence rule.** (Ex. 106, ¶¶ 4, 6, 9-12, cited in Slander of Title Opp'n, p. 29-30 ¶¶ 61-64.) Mr. Keller purports to recite the contents of the relevant contracts, but misstates those contents. This testimony should be excluded because the agreements themselves are the best evidence of their contents.

e. **Improper use of withheld discovery.** Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights, including "the identification of all witnesses whom SCO believes have knowledge of such facts and bases." (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) Novell also requested that SCO "state all facts, evidence, and bases" that the parties' "course of conduct evidenced their understanding that the APA had transferred . . . the copyrights," including "the

identification of all witnesses whom SCO believes have knowledge of such facts

and bases." (*Id.*, Interrogatory No. 10.)  SCO did not identify Keller as a relevant

witness in response to either of those interrogatories.  (*Id.*, Response Nos. 5, 9-10;

2nd Supp. Brakebill Decl., Ex. 11.)  SCO should not be permitted to rely upon

Keller's testimony now.

In addition, SCO should also be barred from offering Keller's testimony because

SCO asserted privilege over the subject matter of his declaration.  In Novell's

30(b)(6) deposition of SCO, SCO repeatedly instructed its witness not to answer

questions concerning the views of Caldera's attorneys concerning the Caldera-Santa

Cruz intellectual property assignment, on grounds of privilege.  (5/18/07 James

Decl., Ex. 64, Sontag Dep. at 108:13-110:24, 189:10-190:14.)  Having prevented

Novell's discovery on those issues based on assertions of privilege, SCO cannot

now offer those attorneys' views in support of its own position.

37. **5/16/07 30(b)(6) Deposition Transcript of Joseph LaSala**, submitted as Exhibit 109 to

the James Decl., on the following grounds:

    a.   **Relevance (including inadmissible parol evidence).**  Because Mr. LaSala's

        30(b)(6) deposition is not cited in SCO's 5/18/07 Opposition Briefs, it is not

        relevant, but is instead cumulative, confuses the issues, prejudices Novell, causes

        undue delay, and wastes time.

38. **1996 Novell Letters**, cited as Exhibits 110-112 and 119 to the James Decl., on the

following grounds:

a.  **Relevance (including inadmissible parol evidence).** (Exs. 110-12, 119, cited in Slander of Title Opp'n, p. 23 ¶ 43.) These exhibits seek to contradict the APA's express terms, and are therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b.  **Lack of personal knowledge.** (Exs. 110-12, 119, cited in Slander of Title Opp'n, p. 23 ¶ 43.) The statements in the letters have no foundation to the extent SCO attempts to use those statements to demonstrate the intent of the APA. SCO submits no evidence that the authors of the letters were involved in any way in the negotiation of the contractual provisions of the APA. Accordingly, they must be excluded.

c.  **Improper use of withheld discovery.** (Exs. 110-12, 119, cited in Slander of Title Opp'n, p. 23 ¶ 43.) Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights. (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.) Novell also requested that SCO "state all facts, evidence, and bases" that the parties' "course of conduct evidenced their understanding that the APA had transferred the . . . copyrights." (*Id.*, Interrogatory No. 10.) SCO did not identify these documents in response to either interrogatory. (*Id.*, Response Nos. 9-10.) SCO should not be permitted to rely upon these documents now.

39. **5/18/07 Declaration of Lee Johnson**, submitted as Exhibit 113 to the James Decl., on the following grounds:

a. **Relevance (including inadmissible parol evidence).** (Ex. 113, cited in Slander of Title Opp'n, p. 8, p. 10 ¶ 9.) Mr. Johnson's testimony seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

b. **Lack of personal knowledge.** (Ex. 113 at ¶¶ 6-11, cited in Slander of Title Opp'n, p. 66-67.) Mr. Johnson's testimony is replete with inadmissible speculation as to the actions, thoughts, and motivations of David Bradford (for example, liberally paraphrasing at ¶ 9 "in other words . . .."). In addition, Mr. Johnson admits that he is not a lawyer, but instead a "businessman and investor" who has held SCO stock (*id.* at ¶ 4); accordingly, his inferences about the legal effect of Mr. Bradford's alleged statements are without foundation.

c. **Hearsay.** (Ex. 113, ¶¶ 6-11, cited in Slander of Title Opp'n, p. 66-67.) Mr. Johnson's testimony consists almost entirely of out-of-court statements, offered as truth, of both himself and Mr. Bradford. These statements, and all statements based on them, are therefore inadmissible.

40. **5/18/07 Declaration of Jay Petersen**, submitted as Exhibit 114 to the James Decl., on the following grounds:

a. **Lack of personal knowledge.** (Ex. 114 at ¶ 3, 5-8, cited in Slander of Title Opp'n, p. 70.) Mr. Petersen's testimony is based largely on the testimony of James McKenna rather than his own. In addition, Mr. Petersen improperly speculates as to the actions and intentions of SCO, Novell, and Mr. McKenna (stating without foundation at ¶ 6, for example, that "SCO did not add 'Novell' copyright notices to

50

any of its source products," and at ¶ 8 "Mr. McKenna offers no view on the reasons

for the Novell copyright notices, but I can comment on that issue.")  In addition,

Mr. Petersen does not state any basis for his testimony as to the copyright notices,

merely stating that he was "intimately involved in the operation of SCO," and has

"become familiar with the process by which SCO has added its copyright notices to

its source code products."  Thus, Mr. Petersen has no personal knowledge to opine

on the rationale behind the Novell copyright notices.  Mr. Petersen's lack of

personal knowledge is confirmed by the fact that his account of the supposed

rationale behind the continued presence of Novell on the copyright notices — that

Novell appeared on the copyright notices because Novell's NetWare code, to which

Novell owned the copyrights, appeared in some subdirectories on the CDs

containing the new releases of UnixWare — does not make sense.  The NetWare

directories already contained copyright notices listing only Novell.  (Reply

Declaration of James McKenna, filed 5/25/07, ¶¶ 5-6.)  Moreover, Santa Cruz's

UnixWare Release 2.1 and 2.1.3 contained copyright notices for numerous third

parties other than Santa Cruz or Novell in various subdirectories.  (*Id.*  ¶¶ 7-8.)  Yet,

none of those third parties were listed in the copyright notice for the main

installation directory; only Novell and Santa Cruz were listed.  (Declaration of

James McKenna, filed 5/14/07, PACER No. 293, ¶¶ 5-6.)  Accordingly,

Mr. Peterson's declaration should be stricken in its entirety.

b.  **Best evidence rule.**  (Ex. 114, ¶ 3, 5-8, cited in Slander of Title Opp'n, p. 70.)

Mr. Petersen purports to recite the contents of the relevant documents, but misstates

those contents.  This testimony should be excluded because the documents themselves are the best evidence of their contents.

c. **Improper use of withheld discovery**.  (Ex. 114, cited in Slander of Title Opp'n, p. 70.)  Novell further objects to this exhibit on the grounds that it is improperly withheld discovery.  Specifically, Novell asked SCO in an interrogatory to "state all facts, evidence, and bases" in support of its allegation that the parties intended the APA to transfer the copyrights, including "the identification of all witnesses whom SCO believes have knowledge of such facts and bases."  (2nd Supp. Brakebill Decl., Ex. 10, Interrogatory No. 9.)  Novell also requested that SCO "state all facts, evidence, and bases" in support of SCO's contention that 'the parties' dealings and course of conduct evidenced their understanding that the APA had transferred the . . . copyrights," including "the identification of all witnesses whom SCO believes have knowledge of such facts and bases.  (*Id.*, Interrogatory No. 10.)  SCO did not identify this document, or Mr. Petersen as a witness, in response to either interrogatory, and should not be permitted to rely on either now.  (*Id.*, Response Nos. 9-10.)

41. **2/12/07 Deposition Transcript of Steve Sabbath**, submitted as Exhibit 120 to the James Decl., on the following grounds:

a. **Relevance (including inadmissible parol evidence).**  (Ex. 120 at 24-25, 34-35, 98-100, 211-12, 220-22, 226-27, cited in Slander of Title Opp'n, p. 14, p. 16, p. 58-59.)  Mr. Sabbath's testimony seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the

Federal Rules of Evidence.  In addition, Mr. Sabbath's testimony as to the

negotiation history of Amendment No. 2 is undisputed, and therefore irrelevant to

this motion.

b.  **Lack of personal knowledge.**  (Ex. 120 at 24-25, 34-35, 98-100, 211-12, 220-22,

226-27, cited in Slander of Title Opp'n, p. 14, p. 16, p. 58-59.)  Throughout his

testimony, and without foundation, Mr. Sabbath offers inadmissible speculation as

to the responsibilities, actions, and intentions of Santa Cruz and Novell.  But

Mr. Sabbath testified that he did not recall "negotiating to any extent" "Paragraph A

of Amendment No. 2," the portion that refers to copyrights.  He did not recall

"focusing on paragraph A to any extent."  (Supp. Brakebill Decl., Ex. 46 at 33.)

Mr. Sabbath's inability to recall anything about Paragraph A of Amendment No. 2

is further demonstrated by the fact that he has testified inconsistently on the issue.

His declaration in the *SCO v. IBM* litigation, for example, stated that "Novell had

retained its UNIX copyrights" under the APA.  (Declaration of Ken Brakebill

("Brakebill Decl."), filed 4/20/07, PACER No. 284, Ex. 12, ¶ 25.)  He further stated

that he understood SCO in 2003 to be claiming to own "all right, title and interest in

and to UNIX System V . . . together with copyrights" and that "I believe those

claims are incorrect."  (*Id.* ¶ 29.)  Mr. Sabbath has no foundation to opine about

Paragraph A of Amendment No. 2, given his demonstrated and conceded lack of

memory concerning that issue.  Accordingly, Mr. Sabbath's testimony lacks

personal knowledge, and must not be considered.

    c.  **Hearsay.**  (Ex. 120 at 24-25, 34-35, 98-100, 211-12, 220-22, 226-27, cited in Slander of Title Opp'n, p. 14, p. 16, p. 58-59.)  As demonstrated by his lack of memory, Mr. Sabbath's testimony is based solely on the inadmissible out-of-court statements of those who were actually involved with the negotiations.

    d.  **Best evidence rule.**  (Ex. 120 at 24-25, 34-35, 98-100, 211-12, 220-22, 226-27, cited in Slander of Title Opp'n, p. 14, p. 16, p. 58-59.)  Mr. Sabbath purports to recite the contents of the relevant agreements, but misstates those contents.  This testimony should be excluded because the documents themselves are the best evidence of their contents.

42.  **Declaration of G. Gervaise Davis III**, PACER No. 324 ("Davis Decl."), on the following grounds:

    a.  **Relevance (including inadmissible parol evidence).**  (Davis Decl., ¶¶ 1-7.) Mr. Davis's declaration seeks to contradict the APA's express terms, and is therefore legally irrelevant and inadmissible under the parol evidence rule and the Federal Rules of Evidence.

    b.  **Hearsay.**  (Davis Decl., ¶ 6.) Mr. Davis relies solely on out-of-court statements for his opinion.  Accordingly, his testimony is based on inadmissible hearsay, and must be excluded.

    c.  **Best Evidence Rule.**  (Davis Decl., ¶ 6.)  Mr. Davis's declaration is replete with statements of what existing, available documents actually say (stating at ¶ 6(d), for example, that "Amendment No. 2 to the APA does not use any language suggesting either that the APA had conferred an implied license on SCO or that the

Amendment itself constituted such a license").  He purports to recite the contents of

the relevant agreements, but misstates those contents.  This testimony should be

excluded because the documents themselves are the best evidence of their contents.

d.  **Improper expert opinion.**  (Davis Decl., ¶ 6.)  Mr. Davis is not qualified as an

expert on any matter in this case, including bankruptcy or 365(n) issues, and his

proffered testimony lacks the requisite foundation for admissibility on summary

judgment.  Specifically, Mr. Davis fails to cite any documents he reviewed, or any

familiarity with the issues on which he is opining.  As a result, his declaration is

filled with speculation (stating without foundation at ¶ 6(e), for example, that "it

would not have been logical or necessary for legal counsel to Novell to rely on"

certain concerns).  Not only can Mr. Davis have no knowledge as to Novell's state

of mind, it is unclear that he even reviewed relevant evidence.  Accordingly,

Mr. Davis's testimony fails to satisfy the admissibility requirements of Federal Rule

of Evidence 701, 702, or Federal Rule of Civil Procedure 56(e), and must be

stricken entirely.

e.  **Untimeliness.**  Mr. Davis's declaration was filed and served three days after SCO's

May 18, 2007 deadline for submitting evidence in Opposition to Novell's Summary

Judgment Motions, and with no good cause shown.  Accordingly, it should not be

considered, pursuant to the Federal Rules of Civil Procedure 6 and 16.  In addition,

to the extent SCO seeks to submit to the Court any expert report by Mr. Davis for

consideration on these summary judgment motions, Novell objects that such

submission would be untimely, unfair, and inappropriate. SCO should have

included any evidence it wanted to have considered in the summary judgment

record with service of its May 18, 2007 Opposition Briefs, or sought relief under

Rule 56(f) of the Federal Rules of Civil Procedure.  However, SCO included no

expert reports with its opposition papers, and made no Rule 56(f) motion.  As a

result, any such expert report should be excluded and not considered by the Court.


DATED:        June 7, 2007

ANDERSON & KARRENBERG


_____/s/  Heather M. Sneddon_____
Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs (*pro hac vice*)
Kenneth W. Brakebill (*pro hac vice*)

**Attorneys for Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, 2007, I caused a true and correct copy

of **NOVELL'S EVIDENTIARY OBJECTIONS TO SCO'S EXHIBITS SUBMITTED IN**

**SUPPORT OF ITS SUMMARY JUDGMENT OPPOSITIONS FILED MAY 18, 2007**

*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]* to be served to the

following:

*Via CM/ECF:*          Brent O. Hatch
                       Mark F. James
                 HATCH JAMES & DODGE, P.C.
                   10 West Broadway, Suite 400
                   Salt Lake City, Utah 84101


                       Stuart H. Singer
                       William T. Dzurilla
                      Sashi Bach Boruchow
                 BOIES, SCHILLER & FLEXNER LLP
                 401 East Las Olas Blvd., Suite 1200
                   Fort Lauderdale, Florida 33301


                        David Boies
                      Edward J. Normand
                 BOIES, SCHILLER & FLEXNER LLP
                        333 Main Street
                    Armonk, New York 10504


                     Devan V. Padmanabhan
                       John J. Brogan
                   DORSEY & WHITNEY, LLP
                   50 South Sixth Street, Suite 1500
                   Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid:*
                       Stephen Neal Zack
                 BOIES, SCHILLER & FLEXNER LLP
                 100 Southeast Second Street, Suite 2800
                     Miami, Florida 33131

                          _____ */s/  Heather M. Sneddon* _____