# APPENDIX A

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION


THE SCO GROUP, INC.,              )
                                  )
            Plaintiff,            )
                                  )
        vs.                       )
                                  )
NOVELL, INC.,                     )   Case No:  2:04CV00139
                                  )
            Defendant,            )
_____   )
                                  )
                                  )


BEFORE THE HONORABLE DALE A. KIMBALL

May 31, 2007

MOTION HEARING
VOLUME I


KELLY BROWN HICKEN, RPR, CSR, RMR
Court Reporter
350 South Main Street, 209
Salt Lake City, Utah  84101
(801)-521-7238

1    think.  One is to patrol the evidence.  We have submitted

2    evidence through objections, and there are huge evidentiary

3    issues with SCO's damage claim.  The other thing is to make

4    the ruling as a matter of law that certain contentions even

5    after you get through the evidentiary issues survive the

6    requisite filter.

7            THE COURT:  There are motions to strike objections

8    to evidence.  I assume you would not really spend a lot of

9    time arguing those.

10           MR. JACOBS:  That's correct.

11           THE COURT:  But I should decide those on the briefs

12   as part of the decision with respect to the motions.

13           MR. JACOBS:  I'm sorry, Your Honor?

14           THE COURT:  I would decide them on the briefs as

15   I'm deciding the motion.

16           MR. JACOBS:  That is our intent, Your Honor;

17   although Mr. Brakebill is here to answer any questions on the

18   evidentiary objections, if you'd like.

19           So let's focus on HP for a minute.  And I'm going

20   to set aside the evidentiary objections because it illustrates

21   the problem SCO has.  It's the lack of concreteness on both

22   ends of the HP story.  It's the lack of concreteness at the

23   beginning.  What exactly was the value of the transaction that

24   they were contemplating doing with HP?  And how much of it

25   turned on -- how much of the value of the transaction was

                                                              12

1    different or independent test.

2              In short, SCO does not have to prove let alone show

3    on summary judgment that Novell's conduct was the only or

4    exclusive factor causing the special damages that we've

5    suffered.

6              Now, as you've heard Novell say, they argue that

7    our evidence is inadmissible or insufficient.  We think Novell

8    is wrong for several reasons on this issue of causation.

9    First, causation isn't an issue of expert analysis.  And we

10    summarize some of that expert analysis at Tabs 26 and 27.

11              Tab 26, Professor Pisano testifies that he has:

12              Concluded that Novell's conduct had a

13         substantial impact on SCO's ability to sell the

14         SCOSource Intellectual Property License for Linux.

15              And at Tab 27, University of Utah accounting

16    Professor Christine Botosan testifies that she has concluded:

17              Novell's statements reduced SCO's profits

18         from its SCOSource licensing program.

19              These opinions are well supported, non-conclusory,

20    and they're supported by the record evidence.  The cases make

21    clear that such analysis is appropriate to assess damages on

22    claims for slander of title, and the precedent also shows that

23    it would not be appropriate for the Court to exclude that

24    testimony on summary judgment.  The admissibility of the

25    testimony has to be decided after a Daubert examination, and

                                                              25

1    Novell's objections are premature and don't even begin to cite

2    or acknowledge all the relevant Daubert factors.

3          And in the reports, SCO's experts do account for

4    other potential causes for the losses and they reconcile

5    those.  It's important to note also that objecting to these

6    reports Novell takes these out of context.  It was Novell who

7    recently requested the enlargement of time to exchange the

8    initial expert reports.  That brought the exchange reports

9    after the time before briefing.  And that's what resulted in

10   reports being submitted to the Court yesterday.  And in any

11   event, you don't hear Novell to argue that they suffered any

12   prejudice by virtue of the submission of the reports this

13   week.

14         Now, in addition to this expert analysis, the other

15   evidence goes to show, and again, easily permits the inference

16   that Novell's statements were a substantial factor in causing

17   SCO's special damages.  SCO submits, for example, letters from

18   customers specifically called out the issue of copyright

19   ownership as a reason for declining to enter into the

20   SCOSource licenses.  We summarize those letters at Tab 35, and

21   I believe we have a board on that, as well.

22         As Your Honor can see, letters from big players

23   such alleges Merrill Lynch, Sherman Williams, Ford,

24   Morgan Stanley, Google and the like.  Novell argues that these

25   letters are inadmissible as hearsay, but we submit that

26

1    they're wrong.  If the Court were inclined to resolve these

2    issues on summary judgment at all, there's no reason to doubt

3    the reliability or authenticity of these letters.  And the

4    evidence is the best evidence that SCO could obtain about the

5    state of mind with such potential customers.  The letters

6    satisfy the residual hearsay exception under Rule 807.

7            Indeed, in a recent copyright case, the Federal

8    District Court applied Rule 807 and admitted evidence of

9    unsworn complaints from customers about their confusion

10   between the plaintiff's work and the allegedly infringing

11   work.  I think decisions like that, Your Honor, reflect the

12   fact that there really is no other highly probative source on

13   these customers' state of minds.  And we summarize that case

14   and a similar case, Your Honor, in Tab 46.

15           Novell's new evidentiary objections are also a

16   basis for summary judgment if the Court were inclined to

17   consider that issue.  Novell stated in its opening brief

18   actually that it was not objecting on any hearsay grounds.

19   They decided that they wanted to object to SCO's hearsay

20   evidence.  Novell itself relied on hearsay evidence in their

21   opening brief.  On that basis alone, we submit the objections

22   are no basis for summary judgment.

23           It's also undisputed with respect to the facts that

24   the SCOSource was part of SCO's business as of May 2003, and

25   that after Novell made its initial statement, SCO stock price

27

1    undisputed facts such as the drop in SCO's stock price since

2    that time, an undisputed fact, and questions raised about

3    SCO's viability in the recent past, an undisputed fact, and,

4    in fact, the subject of Novell's pending motion for

5    preliminary injunction.

6            It is undisputed, for example, with respect to HP

7    that Mr. Jacobs brought up that since Novell began making

8    these statements, HP launched its own indemnification loan.

9    That fact alone shows that the clock can't be unwound.  SCO

10   could not now enter into a deal with HP whereby HP would sell

11   SCOSource with HP hardware to customers who have since taken

12   the HP indemnification.  That opportunity is lost.  And on

13   that basis alone, the jury could conclude the market

14   conditions are not as favorable.

15           Novell's evidentiary objections, and this one also

16   is a basis for summary judgment, Mr. McBride's testimony, for

17   example, is based on his personal knowledge.

18           And finally, Novell cites no relevant precedent for

19   the proposition that the Court can resolve on summary judgment

20   the question of whether SCO's losses are realized.

21           In closing, Your Honor, the undisputed facts, the

22   well-established precedent will show that SCO is entitled to

23   bring this claim to the jury.  We think that Novell cites no

24   cases to support its argument to resolve these issues on

25   summary judgment.  And we also think that Novell is wrong on

                                                              33

1    happen once the cloud on title were removed.  Had they

2    litigated it differently, had they sought to remove the cloud

3    on title and then go back and relaunch SCOSource, then at

4    least we would have the after condition.  I think we would

5    still have a lot of uncertainty about the before condition.

6    But we would have the after condition clearly teed up before

7    the Court.  But that's not Novell's problem.  That's SCO's

8    problem for the way they sought to tee up the issues for

9    adjudication.

10          And importantly, direct and immediate does not

11    allow the unique SCO circumstances, drop in stock price, lack

12    of resources, maybe no motivation to pursue SCOSource anymore,

13    those factors are irrelevant to the special damages equation.

14    And that is very clear from the direct and immediate cases.

15          In sum, Your Honor, we actually think the issue is

16    a legal one here.  There are some evidentiary issues.

17    Mr. Normand's recitation about the back and forth is not quite

18    right between us.  And in any case, we had it scheduled for

19    summary judgment.  All the evidence in opposition should have

20    been in with their oppositions.  But at the end of the day, I

21    think what we're asking you to do is take a look at the cases

22    and decide what the legal standard is for proving slander of

23    title and special damages.  Thank you.

24          THE COURT:  Thank you, Mr. Jacobs.

25          Do you want to take a short break between each

37

1    cases.  But from a cursory glance at them -- therefore, we

2    object to them.  But a cursory glance at them indicates

3    they're really kind of product disparagement type cases.  From

4    their brief description I can't tell.  They say it's

5    procedurally different than what is involved in the discovery

6    dispute.  They don't seem -- there's nothing in there that

7    suggests that the words in this case, a statement about a

8    legal position on the interpretation of a contract would

9    trigger a claim of any sort.

10          The Unfair Practices Act, just to be clear, we have

11   two positions.  One, we're not clear that it was on notice,

12   but even if it were, the Unfair Practices Act has a list of

13   probative practices, such as price discrimination and tie-ins,

14   and we're not close to any of those.  So it just wouldn't help

15   them, anyway.

16          So I think I'd just like to begin where -- end

17   where I began, I'm sorry, it's the end of the day, which is

18   this is a claim that no court has ever recognized, this kind

19   of claim.  There are strong policy arguments why the parties

20   should be able in this kind of dispute to say what their

21   position is.  Slander of title could apply if they can prove

22   everything.  But there is absolutely no reason to go beyond

23   that.  Thank you, Your Honor.

24          THE COURT:  Thank you, Mr. Kim.

25          Thank you all.  I'll take these motions under

                                                              115

1    advisement.  We'll be in recess.  I look forward to seeing you

2    all on Monday.

3         (Whereupon, the court proceedings were concluded.)

4                         *   *   *   *   *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

116

1    STATE OF UTAH          )

2                           ) ss.

3    COUNTY OF SALT LAKE    )

4              I, KELLY BROWN HICKEN, do hereby certify that I am

5    a certified court reporter for the State of Utah;

6              That as such reporter, I attended the hearing of

7    the foregoing matter on May 31, 2007, and thereat reported in

8    Stenotype all of the testimony and proceedings had, and caused

9    said notes to be transcribed into typewriting; and the

10   foregoing pages number from 3 through 116 constitute a full,

11   true and correct report of the same.

12             That I am not of kin to any of the parties and have

13   no interest in the outcome of the matter;

14             And hereby set my hand and seal, this _____ day of

15   _____ 2007.

16

17

18

19

20             _____
                 KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25

                                                        117