# EXHIBIT 1

## THE SCO GROUP, INC.
## INTELLECTUAL PROPERTY LICENSE

This Intellectual Property License Agreement ("Agreement") is made and entered into on the date last executed below by and between The SCO Group, Inc., a corporation of the State of Delaware, for itself and its Subsidiaries (collectively referred to herein as "SCO"), with its place of business at 355 South 520 West, Suite 100, Lindon, Utah 84042, U.S.A., and Everyones Internet, Ltd., a limited partnership of the State of Texas (referred to herein as "Licensee"), with its place of business at 2600 Southwest Freeway, Suite 500, Houston, Texas 77098.

WHEREAS, SCO owns all right, title and interest in and to the SCO IP (as hereinafter defined);

WHEREAS, Licensee is engaged in the businesses of providing, both through Licensee's direct sales or through Licensee's authorized resellers, Internet access services (the "ISP Business") and webhosting services (the "Hosting Business") through its data and hosting centers (ISP Business and Hosting Business are sometimes hereinafter collectively referred to as the "Businesses"); and

WHEREAS, SCO has alleged and asserted claims that the SCO IP is infringed by the Linux® operating system and SCO is involved in litigation and may be involved in future litigation asserting its rights against one or more companies, and

WHEREAS, Licensee is generally aware of SCO's claims and pending and potential litigation and is aware that SCO cannot and has not guaranteed the outcome of any of its pending or potential litigation, and

WHEREAS, Licensee wishes to avoid any litigation involving SCO's claims and seeks a productive and prompt resolution of any such claims, and

WHEREAS, SCO wishes to grant and Licensee wishes to obtain certain limited rights and licenses to use the SCO IP, solely in Object Code format, which rights Licensee wishes to accept, all in accordance with the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises made herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

**1.0 DEFINITIONS**

1.1 "Code" shall mean computer programming instructions.

1.2 "Customer" means those persons and entities who now or hereafter purchase, lease, license, subscribe to, or otherwise obtain ISP Business and Hosting Business services, or both, from Licensee.

1.3 "Method" means the human or machine methodology for, or approach to, design, structure, modification, upgrade, de-bugging, tuning, improvement, or adaptation of Code.

1.4 "Network Systems" means the computers and computer network systems and equipment utilized by Licensee to provide ISP Business and Hosting Business services (including, without limitation, all servers owned, leased, licensed, or utilized and controlled by Licensee to operate, conduct, and maintain the Businesses), or both, to its Customers and the computers and computer network systems and equipment utilized by Licensee in connection with its internal business operations.

1.5 "Object Code" means the Code that results when Source Code is processed by a software compiler and is directly executable by a computer.

1.6 "Operating System" means software operating system Code (or Code that substantially performs the functions of an operating system) that is a distribution, rebranding, modification or derivative work of the Linux operating system.

1.7 "SCO IP" means the SCO UNIX®-based Code alleged by SCO to be included, embodied, or otherwise utilized in the Operating System.

1.8 "Software" means the Operating System in Object Code format.

1.9 "Source Code" means the human-readable form of the Code and related system documentation, including all comments and any procedural language.

1.10 "UNIX-based Code" means any Code or Method that: (i) in its literal or non-literal expression, structure, format, use, functionality or adaptation (ii) is based on, developed in, derived from or is similar to (iii) any Code contained in or Method devised or developed in (iv) UNIX System V or

UnixWare®, or (v) any modification or derivative work based on or licensed under UNIX System V or UnixWare.

1.11 "Update" means update revisions in Object Code format of the Software that Licensee may receive. To the extent that the SCO IP includes patents, "Update" shall include all extensions, divisionals, continuations, continuations-in-part, examinations and reissue patents of such patents, as well as patent applications thereof. To the extent that the SCO IP includes copyrights, "Update" shall include any and all renewals and extensions thereof.

## 2.0 GRANT OF RIGHTS

2.1 SCO hereby grants Licensee and Licensee hereby accepts from SCO the following limited, non-exclusive, worldwide and perpetual, subject the Section 6, right and license to use the SCO IP solely in Object Code format, for or in connection with: (a) Licensee's internal business purposes; (b) the Network Systems owned, leased, licensed, or utilized and controlled by Licensee to operate, conduct, and maintain the Businesses; and (c) providing ISP Business and Hosting Business services, or both, to the Customers through Licensee's hosting center(s) identified in Exhibit A of this Agreement. Subject to the provisions included in Section 2.5 below, such changes and or additions to Licensee's hosting centers shall not require additional SCO IP license fees. Anything herein to the contrary notwithstanding, Licensee shall have the right to make a reasonable number of copies of the SCO IP so long as such copies are used in connection with the properly licensed SCO IP hereunder solely for archival, back-up and recovery purposes.

2.2 Except as otherwise expressly provided in Section 2.1 above, no right to copy, modify, distribute, transfer or alter any part of the SCO IP is granted under this Agreement.

2.3 No right to create derivative works or modifications of the SCO IP, or any other software owned or licensed by SCO is granted under this Agreement.

2.4 This Agreement does not grant Licensee the right to receive any distribution of Software or Updates, in Source Code or Object Code format, from SCO.

2.5 This Agreement does not extend to contractors or joint venture partners of Licensee. No third party shall acquire any additional rights under this Agreement by acquisition of the assets or stock of Licensee or the merger with or acquisition of a third party. Specifically but without limitation, an acquiring company shall not and is not intended to receive for itself any benefit of the SCO waiver of claims and covenant that is extended to Licensee under the Covenant and Waiver of Certain Claims provisions of this Agreement. Conversely, Licensee shall not acquire any additional rights under this Agreement by acquisition of the assets or stock of a third party. In any stock or asset acquisition of a third party, the release of claims and covenant shall not extend to or benefit Licensee with respect to any infringing use of SCO IP by such third party. Anything herein to the contrary notwithstanding, Licensee may request additional licenses at mutually agreed upon licensing terms to cover any acquired third party and such request shall not be unreasonably denied by SCO.

Notwithstanding anything contained herein to the contrary, should Licensee decide to sell its interest in either, or both, of the Businesses, SCO grants Licensee a one-time right to assign this license, with the exception of Section 9.2 which is hereby excluded from any such assignemnt, to a third party (hereinafter referred to as a "Purchaser") who purchases either or both Businesses. In such case Purchaser shall, provided such Purchaser agrees, in writing to SCO, to be bound by the terms and conditions of this Agreement, have the limited rights granted to Licensee pursuant to this Agreement, with the exception of Section 9.2, solely for the Network Systems covered by this Agreement at the time of transfer to the extent, and only to the extent, the limited rights transferred relate to those assets of the Business purchased.. The limited assignment right granted in this Section shall further extend to a Purchaser of the Hosting Business, for said Purchaser's organic growth of the Hosting Business only through the addition of Customers and the resulting additional Network Systems required to service such additional Customers directly related to the Hosting Business so acquired from Licensee. The extension of the limited assignment right to such growth specifically excludes additions or growth by Purchaser through joint ventures, mergers, acquisitions of the assets or stock of a third party, and shall not apply to any other assets, businesses, including the ISP Business or uses owned or controlled by such Purchaser or any other prior or concurrent uses of the SCO IP by Purchaser either before or after the transaction with Licensee. Furthermore, and notwithstanding anything contained herein to the contrary, in the event Licensee spins-off either the ISP Business or Hosting Business into a new entity under majority ownership control of Licensee, then provided such spin-off entity agrees, in writing to

NOV-PLA-00452

SCO, to be bound by the terms and conditions of this Agreement, such spin-off entity shall be entitled to the benefits of the waivers, releases, and indemnities contained herein to the extent, and only to the extent, as such rights, uses, waivers, releases and indemnities relate to those assets, businesses, and uses covered by this Agreement and shall not extend to any other assets, businesses or uses owned or controlled by such spin-off entity or any other prior or concurrent uses of the SCO IP by such spin-off entity.

Licensee shall keep full, clear and accurate records with respect to all servers owned, leased, licensed, or utilized and controlled by Licensee to operate, conduct, and maintain the Businesses. Such records shall contain all information necessary to determine compliance with this Section 2.5.

2.6 No right may be implied beyond those expressly granted hereunder. Any ambiguity in this Grant of Rights or Agreement will be resolved against the grant of any additional right not specifically and expressly granted hereunder.

3.0 SCO COVENANT, RELEASE AND WAIVER OF CERTAIN CLAIMS

Upon full payment of the one-time licensing fee described in Exhibit A of this Agreement, SCO will not consider any prior use of the SCO IP or future use of the SCO IP and Updates licensed by Licensee under the rights granted under this Agreement (provided Licensee does not exceed the Grant of Rights under this Agreement) to be in violation of SCO's IP ownership rights and SCO shall not bring any legal action alleging infringement of the SCO IP by Licensee or Licensee's Customers for usage of SCO IP solely in connection with Licensee's Businesses. In that regard, upon full payment of the license fee described in Exhibit A of this Agreement, Licensee and its Customers shall be forever released and discharged from any and all claims, liabilities, suits, demands, or obligations arising from any authorized use of the SCO IP in connection with: (a) Licensee's internal business purposes; (b) the Network Systems owned, leased, licensed, or utilized and controlled by Licensee to operate, conduct, and maintain the Businesses; and (c) providing ISP Business and Hosting Business services by Licensee to its Customers through the date of the final payment of the one-time licensing fee. Nothing contained herein shall be deemed, interpreted or construed as an admission of liability on the part of Licensee for any unauthorized use of the SCO IP prior to the date hereof.

4.0 ORDERS, PRICE AND PAYMENT

4.1 Licensee will pay the applicable one-time licensing fee included in Exhibit A of this Agreement to SCO.

4.2 Licensee's order for licenses under this Agreement is included in Exhibit A of this Agreement. SCO shall invoice Licensee, at the time of execution of this Agreement, pursuant to the information provided for in Exhibit A.

4.3 License Fees are exclusive of all applicable taxes. Licensee agrees to pay all taxes associated with right-to-use licenses ordered under this Agreement, including but not limited to sales, use, excise, added value and similar taxes and all customs, duties or governmental impositions, but excluding taxes on SCO's net income.

4.4 All fees, costs and charges shall be due and payable thirty (30) days from date of receipt of invoice. SCO may charge Licensee interest at the rate of 1 1/2 percent per month, or such maximum rate as may be permitted by law, whichever shall be less, with respect to any sum that is not paid when due.

4.5 Licensee shall make all payments in United States Dollars or as agreed to in writing by the parties.

5.0 TERM OF AGREEMENT; OBLIGATIONS UPON TERMINATION

This Agreement shall remain in effect until terminated as set forth herein. Licensee may terminate this Agreement, without any right to refund or reimbursement by notifying SCO of such termination. SCO may terminate this Agreement, upon thirty (30) days notice and without judicial or administrative resolution, if Licensee or any of Licensee's employees, consultants or Customers breach any material term or condition hereof and such breach is not cured within such thirty (30) day period.

Upon the termination of this Agreement for any reason, all rights granted to Licensee hereunder will cease; PROVIDED, however, that Licensee's rights of indemnity for Licensee claims arising during the term hereof shall survive the termination of this Agreement..

6.0 PROPRIETARY NATURE OF SCO PRODUCTS AND OWNERSHIP

NOV-PLA-00453

SCO represents and warrants that it has full right and title to grant the rights hereunder to the SCO IP and related materials, and all copyrights, trade secret and other intellectual and proprietary rights therein, are and remain the valuable property of SCO and its suppliers. SCO makes no representations or guarantees concerning the outcome of any pending or potential litigation, as outlined above, regarding SCO's claims of violations of its IP or contractual rights in the Operating System. Licensee acknowledges that SCO's claims regarding its IP as it relates to the Operating System are being litigated in one or more cases, with possibly more litigation to follow, and that SCO has not guaranteed that it will ultimately prevail in any of this litigation. Licensee, to avoid any such litigation and to effectuate a productive and prompt resolution of any and all issues relating to use of SCO's IP, desires to obtain this license.

7.0   LIMITATION OF WARRANTY

SCO MAKES NO WARRANTIES OF ANY KIND EXPRESS OR IMPLIED WITH RESPECT TO ANY RIGHTS OTHER THAN TO THE SCO IP DEFINED BY THIS AGREEMENT.

SCO WARRANTS THAT IT IS EMPOWERED TO AND HAS THE FULL RIGHT AND AUTHORITY TO GRANT THE RIGHTS AND LICENSES GRANTED HEREIN SUBJECT TO THE QUALIFICATIONS SET FORTH IN SECTION 6.0.

EXCEPT AS SET EXPLICITLY FORTH IN THE PRECEDING SENTENCE, ALL WARRANTIES, TERMS, CONDITIONS, REPRESENTATIONS, INDEMNITIES AND GUARANTEES WITH RESPECT TO THE RIGHTS, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, CUSTOM, PRIOR ORAL OR WRITTEN STATEMENTS BY ANY PARTY OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY IMPLIED WARRANTY OF NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY RIGHTS) ARE HEREBY OVERRIDDEN, EXCLUDED AND DISCLAIMED. SOME STATES OR COUNTRIES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSION MAY NOT APPLY.. THIS WARRANTY GIVES SPECIFIC LEGAL RIGHTS AND LICENSEE MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE OR COUNTRY TO COUNTRY.

8.0   LIMITATION OF LIABILITY

UNDER NO CIRCUMSTANCES WILL SCO OR ITS REPRESENTATIVES BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON LICENSEE'S CLAIMS OR THOSE OF ITS CUSTOMERS (INCLUDING BUT NOT LIMITED TO, CLAIMS FOR LOSS OF DATA, GOODWILL, PROFITS, USE OF MONEY OR USE OF THE SCO PRODUCTS, INTERRUPTION IN USE OR AVAILABILITY OF DATA, STOPPAGE OF OTHER WORK OR IMPAIRMENT OF OTHER ASSETS, TRADEMARK, PATENT OR COPYRIGHT INFRINGEMENT), ARISING OUT OF BREACH OR FAILURE OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, EXCEPT ONLY IN THE CASE OF PERSONAL INJURY WHERE AND TO THE EXTENT THAT APPLICABLE LAW REQUIRES SUCH LIABILITY OR IN THE CASE OF ANY THIRD PARTY INFRINGEMENT CLAIMS. IN NO EVENT WILL THE AGGREGATE LIABILITY WHICH SCO MAY INCUR IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT OR OTHERWISE EXCEED THE TOTAL AMOUNT ACTUALLY PAID BY LICENSEE TO SCO FOR THE LICENSE OF THE SCO PRODUCT THAT DIRECTLY CAUSED THE DAMAGE.

SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OF EXCLUSION OF LIABILITY FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES SO THE ABOVE LIMITATION MAY NOT APPLY IN CERTAIN CIRCUMSTANCES.

9.   INDEMNIFICATION

9.1   Licensee will defend, indemnify and hold harmless SCO, its parents and subsidiaries, against any third party claim against it for loss, damage, liability or expense (including but not limited to attorneys' fees) arising out of any unauthorized representations, warranties, or willful acts or omissions of Licensee in connection with its activities under this Agreement.

9.2   SCO shall indemnify and hold Licensee harmless from and against and defend any claim, suit or proceeding, and pay any settlement amounts or damages awarded by a court of final jurisdiction, for claims filed by a third party against Licensee claiming damages caused by a breach of SCO's representations and warranties set forth in this Agreement and claims that the SCO IP infringes any

NOV-PLA-00454

copyright, patent, trade mark or other intellectual property right, provided Licensee promptly notifies SCO in writing of any such claim, suit or proceeding, and permits SCO to control the settlement or defense thereof. Licensee has the option to be represented by Counsel at its own expense.

If, pursuant to any such claim, a court of competent jurisdiction removes or restricts Licensee's right to continue to exercise it rights granted hereunder to the SCO IP, SCO shall, at its sole option (i) procure for Licensee the right to continue to exercise it rights granted hereunder to the SCO IP; (ii) modify the SCO IP, provided the functionality thereof is not substantially affected, so as to make it non-infringing; or (iii) refund the Net License Fees paid SCO discounted over a three (3) year period, subject to a pro rata adjustment for prior usage of the SCO IP. In addition, SCO shall have the right to exercise any of options (i) through (iii) at any time following receipt of notice of a claim of infringement of copyright or other proprietary right.

SCO shall have no obligation under this section with respect to any claim of infringement of a proprietary right based upon any modification of the SCO IP by Licensee or any other entity or the combination, operation or use of SCO IP with materials not supplied by SCO provided that it is such modification, combination, operation or use which caused the claimed infringement.

THE ABOVE STATES THE ENTIRE LIABILITY OF SCO WITH RESPECT TO INFRINGEMENT OF PATENTS, COPYRIGHTS, TRADEMARKS OR ANY OTHER FORM OF INTELLECTUAL PROPERTY RIGHT BY ANY PRODUCT SUPPLIED BY SCO.

**10.0 MISCELLANEOUS**

10.1 Neither party shall be liable for any delay or failure in its performance hereunder due to any cause beyond its control provided, however, that this provision shall not be construed to relieve Licensee of its obligation to make any payments pursuant to this Agreement.

10.2 Except as otherwise provided for Section 2.5, Licensee may not assign, sublicense, rent, lend, lease, pledge or otherwise transfer or encumber this Agreement or the rights granted under this Agreement, the SCO IP or Licensee's rights or obligations hereunder without SCO prior written consent which shall not be unreasonably withheld. Any purported assignment shall be null and void. Change of control is deemed an assignment and not effective without SCO's express written consent.

10.3 All notices and requests in connection with this Agreement may be sent or delivered to the addresses above by hand, by certified mail return receipt requested, by fax, or by courier.

10.4 Support and maintenance are not available under this Agreement.

10.5 This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah and the United States of America, specifically excluding the United Nations Convention on Contracts for the International Sale of Goods, and without giving effect to conflict of laws. Any litigation or arbitration between the Parties shall be conducted exclusively in the State of Utah. Licensee expressly consents to the jurisdiction of such courts. Process may be served by U.S. mail, postage prepaid, certified or registered, return receipt requested, by express courier such as DHL or Federal Express, or by such other method as is authorized by law. Nothing in this Section will prevent SCO from seeking injunctive relief against Licensee or filing legal actions for payment of outstanding and past due debts in the courts.

10.6 If any provision or provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. The Parties will seek in good faith to agree on replacing an invalid, illegal, or unenforceable provision with a valid, legal, and enforceable provision that, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid, illegal, or unenforceable provision.

10.7 Each Party acknowledges that the parties to this Agreement are independent contractors and that it will not, except in accordance with this Agreement, represent itself as an agent or legal representative of the other. This Agreement does not create a joint venture or fiduciary relationship of any kind between the Parties.

10.8 SCO and Licensee represent and warrant that all consents of governmental officials necessary for this Agreement to become effective have been obtained, or will be obtained, before the parties execute this Agreement. Each party will comply, at its own expense, with all statutes, regulations, rules,

NOV-PLA-00455

ordinances, and orders of any governmental body, department or agency that apply to or result from such party's obligations under this Agreement.

10.9 No High Risk Activities: The SCO IP is NOT fault-tolerant and are not designed, manufactured or intended for use or resale as on-line control equipment in hazardous environments requiring fail-safe performance, such as in the operation of nuclear facilities, aircraft navigation or communication systems, air traffic control, direct life support machines, or weapons systems, in which the failure of the Product could lead to death, personal injury, or severe physical or environmental damage ("High Risk Activities"). SCO specifically disclaims any express or implied warranty of fitness for High Risk Activities.

10.10 This Agreement (including all Exhibits) sets forth the entire understanding and supersedes and merges all prior and contemporaneous agreements, statements, representations oral or written of any kind whatsoever between the parties relating to the subject matter contained herein, including but not limited to SCO's pending or potential litigation and its claims, statements or representations relating to the Operating System. Neither Party shall be bound by any provision, amendment or modification other than as expressly stated in or contemplated by this Agreement or as subsequently shall be set forth in writing and executed by a duly authorized representative of the Party to be bound thereby.

10.11 This Agreement may be executed in any number of counterparts and via facsimile, each of which shall be deemed an original instrument, but all of which together shall constitute only one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, effective as of the last date properly executed by both parties. All signed copies of this Agreement shall be deemed originals.

| THE SCO GROUP, INC. | EVERYONES INTERNET, LTD. |
|---|---|
| | By Its Sole General Partner, E. I. MANAGEMENT, LLC: |
| By: _____ | By _____ |
| Name: _____ | Name: Robert Marsh |
| Title: _____ | Title: President |
| Date: _____ | Date: 3/1/04 |

® Linux is a registered trademark of Linus Torvalds in the US and other countries.
® UNIX and UnixWare are a registered trademarks of The Open Group in the US and other countries.

MAR-01-2004  08:50                                                                                                              P.07

SCO from seeking injunctive relief against Licensee or filing legal actions for payment of outstanding and past due debts in the courts.

10.6 If any provision or provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. The Parties will seek in good faith to agree on replacing an invalid, illegal, or unenforceable provision with a valid, legal, and enforceable provision that, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid, illegal, or unenforceable provision.

10.7 Each Party acknowledges that the parties to this Agreement are independent contractors and that it will not, except in accordance with this Agreement, represent itself as an agent or legal representative of the other. This Agreement does not create a joint venture or fiduciary relationship of any kind between the Parties.

10.8 SCO and Licensee represent and warrant that all consents of governmental officials necessary for this Agreement to become effective have been obtained, or will be obtained, before the parties execute this Agreement. Each party will comply, at its own expense, with all statutes, regulations, rules, ordinances, and orders of any governmental body, department or agency that apply to or result from such party's obligations under this Agreement.

10.9 No High Risk Activities: The SCO IP is NOT fault-tolerant and are not designed, manufactured or intended for use or resale as on-line control equipment in hazardous environments requiring fail-safe performance, such as in the operation of nuclear facilities, aircraft navigation or communication systems, air traffic control, direct life support machines, or weapons systems, in which the failure of the Product could lead to death, personal injury, or severe physical or environmental damage ("High Risk Activities"). SCO specifically disclaims any express or implied warranty of fitness for High Risk Activities.

10.10 This Agreement (including all Exhibits) sets forth the entire understanding and supersedes and merges all prior and contemporaneous agreements, statements, representations oral or written of any kind whatsoever between the parties relating to the subject matter contained herein, including but not limited to SCO's pending or potential litigation and its claims, statements or representations relating to the Operating System. Neither Party shall be bound by any provision, amendment or modification other than as expressly stated in or contemplated by this Agreement or as subsequently shall be set forth in writing and executed by a duly authorized representative of the Party to be bound thereby.

10.11 This Agreement may be executed in any number of counterparts and via facsimile, each of which shall be deemed an original instrument, but all of which together shall constitute only one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, effective as of the last date properly executed by both parties. All signed copies of this Agreement shall be deemed originals.

| THE SCO GROUP, INC. | EVERYONES INTERNET, LTD. |
|---|---|
|  | By Its Sole General Partner: E. I. MANAGEMENT, LLC: |
| By: [signature] | By: |
| Name: Christopher S. Sontag | Name: |
| Title: Sr. VP & GM, SCOsource | Title: |
| Date: 3/1/2004 | Date: |

® Linux is a registered trademark of Linus Torvalds in the US and other countries.
® UNIX and UnixWare are a registered trademarks of The Open Group in the US and other countries.

Page 6 of 8
SCO Intellectual Property License
Contract No. EV12004IP

NOV-PLA-00457

# EXHIBIT A
## LICENSE FEES AND ADDITIONAL TERMS AND CONDITIONS

SCO's standard unit quantity discount applicable to SCO's US Price List for one thousand (1,000) licenses is fifty percent (50%) for standard corporate licensees and is applied to the cumulative unit purchases made by a licensee under a Corporate Agreement.

In consideration for the estimated number of SCO IP Licenses to be granted and the unique nature of the internet access services and webhosting services business, including but not limited to the ongoing changes to computer systems configurations, and Licensee's cooperation and commitments agreed to below, including the fact that Licensee is the first such company to seek such a license from SCO, SCO is agreeing to the following License Fees.

LICENSE FEES:

The following one-time License Fee is not subject to any additional discounts and may not be used for purposes of aggregating to any other SCO discounts.

In consideration for the rights, licenses waivers and releases contained in the Agreement, Licensee agrees to pay SCO the following one-time License Fees:

| | | |
|---|---|---|
| Total License Fee | US$ 1,400,000 | *(total fee payable including advertising)* |
| Less:  Licensee Promotional Allowance | US$ 600,000 | *(less promotional allocation)* |
| Net License Fee | US$ 800,000 | *(payable to SCO per below)* |

Net License Fee will be paid pursuant to the following schedule:

| Date | Payment | Date | Payment |
|---|---|---|---|
| Upon Execution | US$ 100,000 | June 30, 2004 | US$ 100,000 |
| March 31, 2004 | US$ 100,000 | July 31, 2004 | US$ 100,000 |
| April 30, 2004 | US$ 100,000 | August 31, 2004 | US$ 100,000 |
| May 31, 2004 | US$ 100,000 | September 30, 2004 | US$ 100,000 |

Promotional Allowance:

In consideration of Licensee's commitment ($600,000 Promotional Allowance) to participate in a mutually agreed upon advertising campaign related to this Agreement, specifically excluding any pricing related information, SCO is granting Licensee a reduction in Licensee Fees payable. Should Licensee fail to comply with this commitment, the Net License Fee shall be adjusted accordingly. SCO and Licensee will mutually agree upon the costs to be applied by Licensee toward satisfaction of its Promotional Allowance.

Both parties will work together to complete a joint press release by the parties to be issued upon execution of this Agreement. Licensee further agrees to favorably discuss the benefits of this Agreement in mutually agreed to interviews including providing an executive quote/endorsement that SCO can use in press releases, allow SCO to write up a success story for its web site and press usage and, Licensee agrees to talk with the press about SCO's Intellectual Property License.

Licensee agrees to commence an advertising campaign for national/international publications within the first thirty (30) days of this Agreement. SCO and Licensee reserve the right to mutually approve final advertising copy prior to distribution. Other advertising initiatives may include, but not to be limited to advertising and press release opportunities, joint participation at events, or other venues, etc.

SCO and Licensee will jointly agree on press releases and other publicity related to this Agreement. SCO will be free to reference Licensee as a licensee of the SCO Intellectual Property License subject to Licensee's prior approval of the content. This includes but is not limited to references with industry and financial analysts.

Each party will be free to reference the other as the licensor/licensee of the SCO Intellectual Property License subject to the other party's prior approval of the content. This includes but is not limited to references with industry and financial analysts.

Page 7 of 8
SCO Intellectual Property License
Contract No: EV12004IP

NOV-PLA-00458

It is expressly agreed that wherever the prior approval or consent of any party hereto is required under the terms hereof that the party from whom such consent or approval is required (the "Receiving Party") agrees not to unreasonably condition, withhold or delay such consent or approval. Furthermore, the Receiving Party shall have five (5) days from written request for same by the requesting party (the "Requesting Party") to consent to or disapprove of such request, press release, advertising, or any other item requiring consent or approval hereunder (an "Advertisement") and, if the Receiving Party disapproves of such Advertisement it shall provide the Requesting Party with written notice thereof within such five (5) day period along with the particular reasons for such disapproval and written editorial comments or suggestions to the Advertisement which if incorporated therein by the Requesting Party the Receiving Party would then be deemed to have approved or consented to such Advertisement as modified.

Any notice, request, approval, consent or other communication required or contemplated by this Agreement must be in writing, and may, unless otherwise in this Agreement expressly provided, be given or be served by depositing the same in the United States Postal Service, post-paid and certified and addressed to the party to be notified, with return receipt requested; or by delivering the same in person to such party (or, in case of a corporate party, to an officer of such party), or by prepaid telegram or express overnight mail service, when appropriate, addressed to the party to be notified, or by facsimile to the facsimile numbers below with confirmation of receipt. Notice deposited in the mail in the manner hereinabove described shall be effective from and after three (3) days (exclusive of Saturdays, Sundays and postal holidays) after such deposit. Notice given in any other manner shall be effective only if and when delivered to the party to be notified or at such party's address for purposes of notice as set forth herein. For purposes of notice the addresses of the parties shall, until changed as herein provided, be as follows:

NOTICE AND APPROVALS:

For SCO:    Chris Sontag
            355 South 520 West, Suite 100
            Lindon, Utah 84042
Facsimile Number: (801) 765-1313

For EV1:    Robert Marsh
            2600 Southwest Freeway, Suite 500
            Houston, Texas 77098
Facsimile Number: (888) 761-8564

LICENSEE'S HOSTING SITES:

Licensee is required to notify SCO in writing related to any changes or additions to its hosting sites prior to any such change or addition.

855 Greens Parkway
Houston, Texas
390 Benmar
Houston, Texas

Page 8 of 8
SCO Intellectual Property License
Contract No. EV12004IP

NOV-PLA-00459

AMENDMENT NO. ONE
TO
INTELLECTUAL PROPERTY LICENSE AGREEMENT
(EVI2004IP)

This Amendment No. One (this "Amendment") is made as of June ___, 2004 by and between The SCO Group, Inc., a corporation of the State of Delaware, for itself and its Subsidiaries (collectively referred to herein as "SCO"), with its place of business at 355 South 520 West, Suite 100, Lindon, Utah 84042, U.S.A., and Everyones Internet, Ltd., a limited partnership of the State of Texas (referred to herein as "Licensee"), with its place of business at 2600 Southwest Freeway, Suite 500, Houston, Texas 77098.

WHEREAS, SCO and Licensee entered into an Intellectual Property License Agreement ("Agreement") wherein SCO granted and Licensee obtained certain limited rights and licenses to use the SCO IP in accordance with the terms and conditions set forth in the Agreement.

WHEREAS, SCO and Licensee wish to amend certain terms and conditions included in the Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the parties hereby agree as follows:

1. EXHIBIT A SUBSECTION LICENSE FEES is modified to replace the payment schedule with the following:

   Net License Fee                              US$ 800,000   *(payable to SCO per below)*

   Net License Fee will be paid pursuant to the following schedule:

   US$100,000.00 to be paid to SCO upon execution of this Amendment (net 10), the remaining US$700,000.00 shall be paid to SCO in eighteen (18) equal and consecutive monthly payment installments of US$38,888.89 each, commencing June 1, 2004.

   Payments shall be by wire transfer pursuant to instructions provided by SCO.

   Licensor agrees that one of the ways that Licensee may satisfy all of its remaining obligations entitling it to full credit for the $600,000 Promotional Allowance is to include an Intellectual Property compliant message (such as the phrase "IP Compliant") in all of Licensee's EV1servers.net newly submitted or newly authorized print advertisements promoting dedicated servers and/or dedicated server hosting for so long as Licensee is obligated to make payments of the Net License Fee.

2. GENERAL

   Except as modified by this Amendment, all terms, conditions and provisions of the Agreement shall continue in full force and effect as set forth in the Agreement. Except as otherwise modified or defined herein, all capitalized terms in this Amendment have the same meanings as set forth in the Agreement. In the event of a conflict between the terms and conditions of the Agreement and the terms and conditions of this AMENDMENT, the terms and conditions of this Amendment shall prevail. Each party agrees that the AGREEMENT, as amended by this Amendment, constitutes the complete and exclusive statement of the agreement between the parties, and supersedes all prior proposals and understandings, oral and written, relating to the subject matter contained herein.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by their duly authorized representatives:

| THE SCO GROUP, INC. | EVERYONES INTERNET, LTD |
|---|---|
|  | By Its Sole General Partner |
|  | E.I. MANAGEMENT, LLC |
| By: *[signature]* | By: *[signature]* |
| Name: Darl C. McBride | Name: Robo Marc |
| Title: President & CEO | Title: Presid5 |

NOV-PLA-00460

Jun. 8. 2004 7:16AM                                     No.4292  P. 3/3

Date: 6-8-04              Date: 6/7/2004

NOV-PLA-00461

AMENDMENT NO: TWO
TO
INTELLECTUAL PROPERTY LICENSE AGREEMENT
(EV12004IP)

This Amendment No. Two (this "Amendment") is made as of December 1, 2004 by and between The SCO Group, Inc., a corporation of the State of Delaware, for itself and its Subsidiaries (collectively referred to herein as "SCO"), with its place of business at 355 South 520 West, Suite 100, Lindon, Utah 84042, U.S.A., and Everyones Internet, Ltd., a limited partnership of the State of Texas (referred to herein as "Licensee"), with its place of business at 2600 Southwest Freeway, Suite 500, Houston, Texas 77098.

WHEREAS, SCO and Licensee entered into an Intellectual Property License Agreement as amended by that certain and Amendment No: One (collectively, the "Agreement") wherein SCO granted and Licensee obtained certain limited rights and licenses to use the SCO IP in accordance with the terms and conditions set forth in the Agreement.

WHEREAS, SCO and Licensee wish to amend certain terms and conditions included in the Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the parties hereby agree as follows:

1. EXHIBIT A SUBSECTION LICENSE FEES is modified to replace the payment schedule with the following:

   The remaining License Fee balance shall be paid to SCO in equal and consecutive monthly payment installments of US$10,000.00 each, commencing December 1, 2004 through December 1, 2006 and at such time, Licensee shall make a final true-up pay to satisfy the total License Fee due SCO..

   Payments shall be by wire transfer pursuant to instructions provided by SCO.

2. GENERAL

   Except as modified by this Amendment, all terms, conditions and provisions of the Agreement shall continue in full force and effect as set forth in the Agreement. Except as otherwise modified or defined herein, all capitalized terms in this Amendment have the same meanings as set forth in the Agreement. In the event of a conflict between the terms and conditions of the Agreement and the terms and conditions of this AMENDMENT, the terms and conditions of this Amendment shall prevail. Each party agrees that the AGREEMENT, as amended by this Amendment, constitutes the complete and exclusive statement of the agreement between the parties, and supersedes all prior proposals and understandings, oral and written, relating to the subject matter contained herein.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by their duly authorized representatives:

| THE SCO GROUP, INC. | EVERYONES INTERNET, LTD |
| --- | --- |
| | By Its Sole General Partner |
| | E.I. MANAGEMENT, LLC |
| By: *[signature]* | By: *[signature]* |
| Name: Christopher S. Sontag | Name: Robert Marsh |
| Title: Sr. VP & GM | Title: President & CEO |
| Date: 12/13/2004 | Date: 12/9/04 |

NOV-PLA-00462

# EXHIBIT 2



## SCO Announces Intellectual Property License for Linux

### SCO Provides Commercial Linux Users With Run-Time, Binary License to Run SCO's Intellectual Property in Linux

LINDON, Utah, Aug 5, 2003 —

The SCO Group, Inc. (Nasdaq: SCOX), the owner and licensor of the core UNIX® operating system source code, today announced the availability of the SCO Intellectual Property License for Linux®. The run-time license permits the use of SCO's intellectual property, in binary form only, as contained in Linux distributions. By purchasing a SCO Intellectual Property License, customers avoid infringement of SCO's intellectual property rights in Linux 2.4 and Linux 2.5 kernels. Because the SCO license authorizes run-time use only, customers also comply with the General Public License, under which Linux is distributed.

SCO announced in July that it had registered the copyrights to its software releases of UNIX System V and UnixWare® with the U.S. Copyright office and that it would offer licenses to cure the SCO IP infringement issues for Linux operating systems. Beginning this week, SCO will start meeting with commercial Linux customers to present the details of this right to use SCO intellectual property binary licensing program.

"We have identified numerous files of unlicensed UNIX System V code and UNIX System V derivative code in the Linux 2.4 and 2.5 kernels," said Chris Sontag, senior vice president and general manager of SCOsource, the intellectual property licensing division of SCO. "We believe it is necessary for Linux customers to properly license SCO's IP if they are running Linux 2.4 kernel and later versions for commercial purposes. The license insures that customers can continue their use of binary deployments of Linux without violating SCO's intellectual property rights."

Pricing and Availability

SCO will be offering an introductory license price of $699 for a single CPU system through October 15th, 2003. Pricing for multiple CPU systems, single CPU add-ons, desktop systems and embedded systems will also be available. Linux users who are interested in additional information or purchasing an IP License for Linux should contact their local SCO sales representative or call SCO at 1-800-726-8649 or visit our web site at http://www.sco.com/scosource.

About The SCO Group

The SCO Group (Nasdaq: SCOX) helps millions of customers in more than 82 countries to grow their businesses with UNIX business solutions. Headquartered in Lindon, Utah, SCO has a worldwide network of more than 11,000 resellers and 4,000 developers. SCO Global Services provides reliable localized support and services to all partners and customers. For more information on SCO products and services visit http://www.sco.com.

SCO and the associated SCO logo are trademarks or registered trademarks of The SCO Group, Inc., in the U.S. and other countries. UNIX and UnixWare are registered trademarks of The Open Group in the United States and other countries. All other brand or product names are or may be trademarks of, and are used to identify products or services of, their respective owners.

SOURCE The SCO Group

EXHIBIT 13
WIT: B. Stowell
DATE: 1-24-07
CitiCourt, LLC