O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 south Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Stephen N. Zack (admitted Pro Hac Vice)
BOIES SCHILLER & FLEXNER LLP
Bank of America Tower, suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S MOTION IN LIMINE REGARDING APPORTIONMENT OF 2003 MICROSOFT AND SUN AGREEMENTS**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Civil No. 2:04 CV-00139<br><br>Judge Dale A. Kimball<br>Magistrate Brooke C. Wells |

Plaintiff/Counterclaim-Defendant The SCO Group ("SCO") hereby moves the Court in limine for an order instructing Novell, Inc. ("Novell"), its representatives, and its witnesses to refrain from stating to the jury that Novell is entitled to all of the revenue associated with the April 30, 2003 agreement between SCO and Microsoft ("Microsoft Agreement"); that Novell is entitled to any revenue from the rights granted in any section of the Microsoft Agreement other than possibly Section 4; that Novell is entitled to all of the revenue associated with the February 25, 2003 agreement between Sun Microsystems ("Sun") and SCO ("Sun Agreement"); or that Novell is entitled to revenue from the rights granted in any section of the Sun Agreement other than Section 4. In support thereof, SCO states as follows:

### MICROSOFT AGREEMENT

1.  The Microsoft Agreement (attached hereto as Ex. 1) expressly allocates the value of the options granted in the Agreement, as well as the price of the licenses that were subsequently purchased by Microsoft. Because only one of the licenses (Section 4) even arguably relates to SVRX, the values set forth in the Agreement demonstrate the maximum amount of revenue that could possibly be attributable to SVRX, if any. The rights granted in the other sections, Sections 2 and 3, have no relation to SVRX.

2.  Section 2 of the Microsoft Agreement provided a **REDACTED** (Section 2.1), an **REDACTED** (Section 2.2), and a **REDACTED** (Section 2.3). As set forth in Section 1(a), these rights were valued by Microsoft and Sun at **REDACTED**

    a.  **REDACTED**

**REDACTED**

**REDACTED** is not attributable to SVRX and did not require prior approval by Novell. Therefore, Novell should be precluded from arguing that it is entitled to any portion of this revenue.

b. **REDACTED**

**REDACTED** are equally unrelated to SVRX. These sections provide **REDACTED** – not to SVRX. This license is not attributable to SVRX and did not require prior approval by Novell. Therefore, Novell should be precluded from arguing that it is entitled to any portion of this revenue.

3.  Section 3 of the Microsoft Agreement provides Microsoft with an option to purchase a UnixWare license. As set forth in Section 1(b), Microsoft purchased that option for **REDACTED**. Microsoft later exercised that option for **REDACTED** the amount set forth in Section 3.5. The UnixWare license was for the technology set forth in Exhibits A and B to the agreement. Exhibit A listed SCO UnixWare 7, Release 7.1.3 and its components, and Exhibit B listed various restrictions on that license. No part of this license is attributable to SVRX, and the option and license did not require prior approval by Novell. Therefore, Novell should be

precluded from arguing that it is entitled to any portion of the revenue from Section 3, which totals $7 million for the option and the license.

4.  Section 4 of the Microsoft Agreement provides Microsoft with an "Option to Purchase License to Other SCO Assets." As set forth in Section 1(c), Microsoft purchased that option for **REDACTED** Microsoft later exercised that option for **REDACTED** the amount set forth in Section 4.1. This license gave Microsoft broader rights to the UnixWare technology it had already licensed pursuant to Section 3, and also granted the same rights to the technology listed in Exhibit C. Certain SVRX technology is included on the list of technology in Exhibit C (along with UnixWare and OpenServer technologies, to which Novell claims no right). This inclusion of SVRX products was the basis upon which a summary judgment was entered on liability on certain claims in favor of Novell. However, all of UnixWare (including Open UNIX 8 Release 8.x, which is what UnixWare 7.1.2, MP2, MP3 and 7.1.3 were also know as for a time) and OpenServer were also included in this schedule, and Novell has no claim to the fees associated with these products.

5.  Novell should be precluded from suggesting that it is entitled to any amount greater than **REDACTED**. This is the <u>maximum</u> amount that is attributable to SVRX, and the <u>maximum</u> value of the SVRX license that was unauthorized by Novell. As set forth above, the other rights and licenses granted – which are valued separately under the express terms of the agreement – are not SVRX Licenses, no portion of their revenue is attributable to SVRX, and SCO was not obligated to obtain approval from Novell before granting those rights and licenses.

6.  Accordingly, any evidence or argument suggesting that Novell is entitled to the revenue from sections of the agreement other than Section 4, or any amount greater than

3

**REDACTED**, would confuse the issues and be misleading to the jury, and should be excluded. Fed. R. Civ. P. 403; <u>Telum, Inc. v. E.F. Hutton Credit Corp.</u>, 859 F.2d 835 (10th Cir. 1988).

### SUN AGREEMENT

7. The Sun Agreement (attached hereto as Ex. 2) also includes a wide array of rights with no relation to SVRX. Novell should be precluded from suggesting to the jury that it is entitled to the entire value of the Sun Agreement, or that it is entitled to revenue from the rights granted in any section of the Sun Agreement other than Section 4.

8. The total value of the Sun Agreement was **REDACTED**. The rights granted for this payment include: the license grant (Section 4), an **REDACTED** right (Section 10), a **REDACTED** **REDACTED** (Section 12), and **REDACTED** (Section 13). Only the license grant in Section 4 has any arguable connection to SVRX. It should be recognized that the 2003 Sun Agreement followed a 1994 Sun Agreement which constituted a buyout of SVRX license rights, and Novell received the entire $82 million price associated with that transaction.

9. Section 10.1,

**REDACTED**

**REDACTED** is not attributable to SVRX, and did not require Novell's prior approval. Therefore, Novell should be precluded from arguing that it is entitled to any value for the rights granted in this section of the Agreement.

10. In Section 12, **REDACTED**

4

**REDACTED**




**REDACTED**      not attributable to

SVRX, and SCO was not obligated to obtain Novell's approval before granting that release.

Therefore, Novell should be precluded from arguing that it is entitled to any value for the

granted in this section of the Agreement.

11.  Section 13,




**REDACTED**




**REDACTED**      Thus, the revenue from this

provision is not attributable to SVRX and this right did not require Novell's prior approval.

12.  Novell should be precluded from suggesting that it is entitled to revenue from the

rights granted in any section of the Sun Agreement other than Section 4, or that it is entitled to

the full value of the Sun Agreement. Such an argument would confuse the issues and be

misleading to the jury, and should be excluded. Fed. R. Civ. P. 403; Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835 (10th Cir. 1988).

Wherefore, SCO prays that the Court exercise its inherent power over the conduct of trials and issue an order instructing Novell, Inc. ("Novell"), its representatives, and its witnesses to refrain from referencing the matters set forth above.

DATED this 24th day of August, 2007.

        HATCH, JAMES & DODGE, P.C.
        Brent O. Hatch
        Mark F. James

        BOIES, SCHILLER & FLEXNER LLP
        David Boies
        Robert Silver
        Stuart H. Singer
        Stephen N. Zack
        Edward Normand

        DORSEY & WHITNEY LLP
        Devan V. Padmanabhan

By: *[signature: Mark F. James]*

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that on this 27th day of August, 2007 a true and correct copy of the foregoing **SCO'S MOTION IN LIMINE REGARDING APPORTIONMENT OF 2003 MICROSOFT AND SUN AGREEMENTS,** in redacted form, was served via CM/ECF to the following:

>Thomas R. Karrenberg
>John P. Mullen
>Heather M. Sneddon
>ANDERSON & KARRENBERG
>700 Bank One Tower
>50 West Broadway
>Salt Lake City, UT 84101
>
>Michael A. Jacobs
>Matthew I. Kreeger
>MORRISON & FOERSTER
>425 Market Street
>San Francisco, CA 94105-2482

By: /s/ Edward Normand