# EXHIBIT A

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 2156613 (D.Utah)
**(Cite as: Slip Copy)**

Board of County Commissioners of Kane County v. Department of the Interior of the U.S.
D.Utah,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Utah,Central Division.
BOARD OF COUNTY COMMISSIONERS OF KANE COUNTY, Utah, a political subdivision of the State of Utah; Ray Spencer, Mark Habbeshaw, and Daniel Hulet, in their official capacities as members of the Board of County Commissioners of Kane County, Utah; Board of County Commissioners of Garfield County, Utah, a political subdivision of the State of Utah; D. Maloy Dodds, H. Dell Lefevre, and Clare Ramsay, in their official capacities as members of the Board of County Commissioners of Garfield County, Utah, Plaintiffs,
v.
The DEPARTMENT OF THE INTERIOR OF THE UNITED STATES; and The Bureau of Land Management, an agency of the Department of the Interior of the United States, Defendants.
No. 2:06-CV-209-TC.

July 26, 2007.

Karen Budd-Falen, Brandon L. Jensen, Budd-Falen Law Offices LLC, Cheyenne, WY, Lloyd D. Rickenbach, Rickenbach Ranch, Koosharem, UT, for Plaintiffs.
Jared C. Bennett, U.S. Attorney's Office, Salt Lake City, UT, for Defendants.

**ORDER AND MEMORANDUM DECISION PARTIALLY GRANTING AND PARTIALLY DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS ARISING UNDER THE FREEDOM OF INFORMATION ACT**
TENA CAMPBELL, United States Chief District Judge.
**\*1** On May 22, 2007, this Court held a hearing on the parties' cross-motions for summary judgment as to Plaintiffs' claims brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). At the hearing, the Plaintiffs were represented by Lloyd D. Rickenbach and Brandon L. Jensen, and the United States Department of the Interior ("DOI"), Bureau of Land Management ("BLM") (collectively "Federal Defendants") were represented by Jared C. Bennett, Assistant United States Attorney.

The Plaintiffs allege that the Federal Defendants violated FOIA on three separate occasions. First, the Plaintiffs assert that BLM erred in denying the Plaintiffs' October 14, 2003 fee waiver request, submitted to the Utah State Office of the BLM (Plaintiffs' Fifth Cause of Action, Second Amended Complaint, filed October 19, 2006). Second, the Plaintiffs claim that BLM erred in withholding three documents from its response to the Plaintiffs' January 31, 2005 FOIA request, submitted to the Utah State Office of the BLM (Plaintiffs' Sixth Cause of Action). Finally, the Plaintiffs argue that DOI erred in withholding five documents from its response to the Plaintiffs' March 9, 2005 FOIA request, submitted to the Office of the Secretary of the Interior, United States Department of the Interior (Plaintiffs' Seventh Cause of Action).

The Federal Defendants filed their motion for summary judgment on January 19, 2007. The Plaintiffs filed their cross-motion for summary judgment on February 23, 2007. Both parties provided reply briefs in support of their respective motions and in response to the other party's arguments. After considering the arguments, this Court:

-GRANTS the Federal Defendants' motion for summary judgment as to Claim 5.

-GRANTS the Federal Defendants' motion for summary judgment as to Claim 6.

-PARTIALLY GRANTS the Federal Defendants' motion for summary judgment as to Claim 7 in that the DOI properly withheld Vaughn Index documents 18 and 19 pursuant to FOIA's exemption 5.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

-PARTIALLY GRANTS the Plaintiffs' cross-motion for summary judgment as to Claim 7 in that the DOI improperly withheld Vaughn Index documents 14 and 16 and ORDERS disclosure of documents 14 and 16 to the Plaintiffs.

-PARTIALLY GRANTS the Federal Defendants' motion for summary judgment and PARTIALLY GRANTS the Plaintiffs' cross-motion for summary judgment, pertaining to Vaughn Index document 20, for the reasons stated in a separate Order and Memorandum Decision, dated June 4, 2007, and incorporated herein by reference. Docket No. 100.

On September 29, 2006, this Court ordered, and the parties agreed, that Plaintiffs' Claims 1-4 (as to Plaintiffs' claims arising under the Administrative Procedures Act) and Plaintiffs' Claims 5-7 (as to Plaintiffs' claims arising under the Freedom of Information Act) of the Plaintiffs' First Amended Complaint should be severed. Docket No. 36.[FN1] Accordingly, this Court hereby certifies that this summary judgment order disposing of Plaintiffs' claims arising under the Freedom of Information Act in their entirety is a final, appealable order, under Fed.R.Civ.P. 54(b), notwithstanding the fact that Claims 1-4 remain pending before this Court. Moreover, there is no just reason to delay review of this Court's order, set forth more fully below. The claims resolved herein are clearly distinct and separable, both factually and legally, from the claims left unresolved in this case.[FN2]

> FN1. On October 19, 2006, the Plaintiffs filed their Second Amended Complaint. Docket No. 38. The Plaintiffs' Claims 5-7 were the identical to those in the First Amended Complaint.

> FN2. Consequently, for purposes of clarity and finality, the Court also determines that the Court's Order and Memorandum Decision pertaining to Document 20, dated June 4, 2007, will not constitute a final and appealable order, in and of itself, pursuant to Fed.R.Civ.P. 54(b), until the Court's summary judgment order, as set forth more fully herein, is entered of record in this matter.

## BACKGROUND

### I. THE PLAINTIFFS' OCTOBER 14, 2003 FEE WAIVER REQUEST (Plaintiffs' Fifth Cause of Action).

*2 On December 31, 2001, the Plaintiffs submitted a FOIA request to the BLM, Grand Staircase Escalante National Monument Field Office ("GSENM") seeking: "Any and all correspondence, communication, e-mail, facsimiles, hand written letters, telephone confirmations, notes, minutes of meetings, or notes on meetings, relating to grazing and/or resource issues between the Grand Canyon Trust and the BLM from September 16, 1996 to date." (Docket No. 74, Exhibit 2.)

BLM responded to the Plaintiffs' December 31, 2001 FOIA request. On April 11, 2002, the Plaintiffs sent another FOIA request to GSENM, in which the Plaintiffs voiced concern that BLM's response to the December 31, 2001 FOIA request was inadequate. In addition, the Plaintiffs requested copies of all e-mail and other correspondence between BLM and the Grand Canyon Trust and other environmental groups related to grazing and other resource issues. (Docket 74, Exhibit 2.) The Plaintiffs also requested BLM to provide all e-mail messages between specific BLM employees and any environmental groups. (*Id.*)

On May 7, 2002, GSENM responded to the April 11, 2002 FOIA request by providing 44 pages of correspondence responsive to the request between BLM and the Grand Canyon Trust and other environmental groups related to grazing and other resource issues. GSENM stated that it could not provide e-mail messages from the specific BLM employees mentioned in the April 11, 2002 FOIA request, but that the Utah State Office of BLM ("Utah State Office") would provide those responses. (Docket No. 74, Ex. 3.) The Plaintiffs never sought and do not seek in this action judicial review of the adequacy of BLM's responses to the December 31, 2001 and April 11, 2002 FOIA re-

quests.

On January 31, 2003, the Plaintiffs submitted a third FOIA request to GSENM seeking "all documents, notes, memoranda and correspondence regarding the retirement of any grazing permits and/or the transfer of grazing privileges to the Grand Canyon Trust on the Clark Bench, Willow Gulch, Last Chance, Big Bowns, Drip Tank Springs, and Moody allotments." (Docket No. 63, Appeal No.2004-033, Jan. 31, 2003 letter.) On February 18, 2003, the Plaintiffs submitted a fourth FOIA request to the GSENM that was identical to the Plaintiffs' third FOIA request. (Docket No. 63, Appeal No.2004-033, Feb. 18, 2003 letter.) On March 5, 2003, the Plaintiffs submitted a fifth FOIA request seeking copies of the "operator file" for both Grand Canyon Trust and Canyonlands Grazing Corporation. (Docket No. 63, Appeal No.2004-33, March 5, 2003 letter.) On March 11, 2003, the Plaintiffs made a sixth FOIA request to GSENM seeking copies of all e-mail between BLM employees and the Grand Canyon Trust and its employees from June 1999 through the date that the GSENM answered the request. (Docket No. 63, Appeal No.2004-033, March 11, 2003 letter.)

On March 21, 2003, the GSENM sent a preliminary response to the Plaintiffs' March 11, 2003 FOIA request stating in relevant part:

*3 Please note that Kane County requested this same information last year. This office can provide these records for e-mail currently residing on staff computers or any printed copies of e-mail that may be in our files. However, this office does not maintain files of older e-mail records as you have requested. E-mail backup files are maintained at the Utah State Office so you should contact that office for potential records responsive to this request.

(Docket No. 63, Appeal No.2004-033, March 21, 2003 letter.) Consequently, on April 1, 2003, the Plaintiffs sent their seventh FOIA request to the Utah State Office seeking copies of all e-mail between BLM employees and the Grand Canyon Trust and its employees from June 1999 through the date that the Utah State Office answered the request. (Docket No. 63, Appeal No.2004-33, April 1, 2003 letter.)

On April 11, 2003, the State Office provided the following initial response to the Plaintiffs' April 1, 2003 FOIA request:

As of the date of your request, we had more than 600 backup e-mail tapes that would need to be searched. These tapes date back to November 30, 2001. There are no tapes prior to that date. In your letter, you have not stated your willingness to pay the fees associated with processing your request, nor have you asked for a fee waiver. Searching backup e-mail tapes is extremely time consuming and cost prohibitive. For item 1 only of your request, the estimated cost for 72 employees (the current number of employees at the Grand Staircase Escalante National Monument) to search over 600 tapes is in excess of $800,000.

(Docket No. 63, Appeal No.2004-033, April 11, 2003 letter.) Subsequently, on May 23, 2003, BLM lowered its initial estimate of $800,000 to search through the computer back-up tapes to $280,430.70 and stated that it would not begin processing the request to search the computer back-up tapes unless the Plaintiffs agreed to pay the costs or unless the Plaintiffs applied for and obtained a fee waiver. (Docket No. 63, Appeal No.2004-033, May 23, 2003 letter.)

On October 14, 2003, the Plaintiffs filed an application for a fee waiver with the Utah State Office. (Docket No. 63, Appeal No.2004-033, October 14, 2003 letter.) This fee waiver application requested that BLM waive the fees for the Plaintiffs' January 31, February 18, March 5, March 11, and April 1, 2003 FOIA requests, including the fees for searching through the computer back-up tapes.

On November 13, 2003, the GSENM provided the Plaintiffs with responses to the January 31, February 18, March 5, March 11, and April 1, 2003 FOIA requests from agency files and staff computers and waived the fees for those documents. (Docket No. 74, Ex. 1.) However, the Utah State Office refused to grant a fee waiver to search the 600 computer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

back-up tapes. Specifically, the Utah State Office stated:

Copies of some of the e-mails responsive to your request have previously been printed and are included with the documents you have requested from the GSENM. These documents may contribute to public understanding of the operations or activities of the Government. We do not believe, however, that the remaining e-mails on the backup tapes would be of such a nature as to make a significant contribution to public understanding of the operations and activities of the Government. For this reason your request for a fee waiver is denied.

**\*4** (Docket No. 63, Appeal No.2004-033, November 6, 2003 letter.)

On November 24, 2003, the DOI's FOIA Appeals Office received the Plaintiffs' November 19, 2003 appeal challenging the denial of the fee waiver request. (Docket No. 63, Appeal No.2004-033, November 19, 2003 letter.) The DOI did not resolve the appeal administratively and on December 22, 2003, notified the Plaintiffs that a response to the appeal would be delayed and that the Plaintiffs had the right to seek judicial review. (Docket No. 63, Appeal No.2004-033, December 22, 2003 letter at 1.)

### II. THE PLAINTIFFS' JANUARY 31, 2005 FOIA REQUEST (Plaintiffs' Sixth Cause of Action).

On January 31, 2005, the Plaintiffs submitted a FOIA request to the Utah State Office. The January 31, 2005 request solicited BLM documents, correspondence, and other records generally relating to livestock grazing permits administered by BLM and the retirement or elimination of livestock grazing allotments, specifically those on the GSENM. (Docket No. 63, Appeal No.2005-108, January 31, 2005 letter at 1-2.) Pursuant to this request, the Utah State Office determined which of its employees were most likely to have documents responsive to the request and forwarded copies of the January 31, 2005 FOIA Request to those individuals. In this search, BLM located approximately 85 pages of documents responsive to the request. (Docket No. 63, Dowdy Decl., ¶ 5.)

On March 18, 2005, BLM replied to the January 31, 2005 request. BLM released 15 pages determined to be not exempt from FOIA and withheld approximately 70 pages under the deliberative process privilege of FOIA exemption 5. (*Id.* ¶ 6.)

On March 22, 2005, the Plaintiffs challenged BLM's decision claiming that BLM "failed to itemize and index the withheld documentation...." (Docket No. 63, Appeal No.2005-108, March 22, 2005 letter at 3.) On September 13, 2005, the DOI denied the Plaintiffs' FOIA appeal. (Docket No. 63, Appeal No.2005-108, September 13, 2005 letter at 1-2.)

On May 3, 2006, the Plaintiffs sought judicial review of the DOI's denial of the Plaintiffs' administrative appeal in Claim 6 of their First Amended Complaint. (Docket No. 3.) In Claim 6, the Plaintiffs alleged that BLM unlawfully withheld approximately 70 pages of material under FOIA exemption 5. However, in their cross-motion for summary judgment, the Plaintiffs limited the scope of Claim 6 to challenge only BLM's decision to withhold redacted portions of Vaughn Index document numbers 10, 11, and 12.

### III. THE PLAINTIFFS' MARCH 9, 2005 FOIA REQUEST (Plaintiffs' Seventh Cause of Action).

On March 9, 2005, the Plaintiffs submitted a FOIA request to the Office of the Secretary ("OS") in the DOI seeking "documents, notes, memoranda and correspondence" generally relating to livestock grazing permits administered by the Grand Staircase-Escalante National Monument and/or BLM and the retirement or elimination of livestock grazing allotments, specifically those on the GSENM. (Docket No. 63, Thomas Decl., ¶ 2; Appeal No.2005-165, March 9, 2005 letter at 1-2.) The OS determined that the following offices were likely to hold responsive documents: the Secretary's Immediate Office ("SIO") and the Office of the Assistant Secretary for Land and Minerals Management. (Docket No. 63, Thomas Decl., ¶ 3.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*5** The SIO received the March 9, 2005 FOIA request on March 21, 2005, and immediately began searching for responsive records. The electronic and paper files of the SIO and the Office of the Assistant Secretary for Land and Minerals Management were searched. (*Id.*) The OS reviewed the documents that were found as a result of the aforementioned search and determined that portions of the responsive documents are exempt from disclosure under FOIA. Approximately 79 documents (270 pages) that were not exempt under FOIA were released, either in full or in part, in electronic format on July 12, 2005, to the Plaintiffs. The OS explained to the Plaintiffs that some documents were withheld or redacted pursuant to FOIA exemptions 5 and 6. The OS asserted exemption 5 to withhold information to which the deliberative process and attorney client privileges applied. The OS applied exemption 6 to protect the personal privacy of individuals. (*Id.* ¶ 4; Appeal No.2005-165, July 12, 2005 letter at 1-4.)

On August 23, 2005, the Department's FOIA Appeals Office received the Plaintiffs' administrative appeal of the OS's FOIA response. (Docket No. 63, Appeal No.2005-165, Aug. 17, 2005 letter.) On August 24, 2005, the DOI's FOIA Appeals Office directed the OS to provide additional information regarding the search for documents responsive to the Plaintiffs' request. The Department's FOIA Appeals Office also directed the OS to confirm that its component offices that were most likely to possess responsive documents had searched for responsive documents and that none were located. Alternatively, if the offices within OS that were most likely to possess responsive documents had not been searched, then OS was directed to search and process any documents responsive to the request. (Docket No. 63, Thomas Decl., ¶ 6.)

Accordingly, the OS conducted an additional search for documents responsive to the March 9, 2005 request. From approximately August 30 through September 9, 2005, the electronic and paper files of the SIO and the Office of the Assistant Secretary for Land and Minerals Management were searched again. (*Id.* ¶ 7.) On April 6, 2006, the OS informed the Plaintiffs that the OS had conducted a second file search for records responsive to the March 9, 2005 request and found 20 documents (121 pages) responsive to the request. The OS reviewed the documents resulting from the supplemental search and, on April 6, 2006, released all 20 documents (*i.e.,* 121 pages) to the Plaintiffs. Portions of some documents were withheld under Exemptions 5 and 6 of the FOIA. The OS asserted exemption 5 to withhold information to which the deliberative process and attorney client privileges applied. The OS applied exemption 6 to protect the personal privacy of individuals. (*Id.* ¶ 8; Appeal No.2005-165, April 6, 2006 letter at 1-4.) FN3 However, this additional release of documents did not alter the OS's July 12, 2005 FOIA response, in which the OS withheld portions of certain documents under exemption 5 of FOIA.

> FN3. On May 23, 2006, the DOI FOIA Appeals Officer received the Plaintiffs' second administrative appeal regarding the OS's second FOIA response, which appealed "the redaction or non-disclosure of information relating to five documents." However, the Plaintiffs have not yet sought judicial review of the May 23, 2006 FOIA appeal.

**\*6** The Plaintiffs then sought judicial review of the OS's decision to withhold information in certain documents in its July 12, 2005 FOIA response. (Docket No. 3.) Specifically, the Plaintiffs sought disclosure of approximately eight documents that the OS decided to withhold in full or in part from its July 12, 2005 response. However, in their cross-motion for summary judgment, the Plaintiffs seek disclosure of only Vaughn Index documents numbered 14, 16, 18, 19, and 20. FN4

> FN4. Given that the issues surrounding Vaughn Index document 20 are resolved in this Court's June 4, 2007 Order and Memorandum Decision, it is not discussed further herein. Docket No. 100.

***STANDARD OF REVIEW***

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                                                          Page 6
Slip Copy, 2007 WL 2156613 (D.Utah)
**(Cite as: Slip Copy)**

Fed.R.Civ.P. 56(c) permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). Almost all FOIA cases are resolved by summary judgment procedure. *See* Wickwire Gavin P.C. v. U.S. Postal Serv., 356 F.3d 588, 591 (4th Cir.2004).

This Court exercises *de novo* review over BLM's decision to deny the Plaintiffs' fee waiver request. *See* 5 U.S.C. § 552(a)(4)(A)(vii); *see also Elec.* Privacy Info. Ctr. v. Dep't of Def., 241 F.Supp.2d 5, 8-9 (D.D.C.2003). The Plaintiffs bear the burden of showing that they are entitled to a fee waiver. *See* Larson v. CIA, 843 F.2d 1481, 1483 (D.C.Cir.1988). Further, judicial review of a FOIA fee waiver decision is "limited to the record before the agency." *See* 5 U.S.C. § 552(a)(4)(A)(vii); *see also* Forest Guardians v. U.S. Dep't of the Interior, 416 F.3d 1173, 1177 (10th Cir.2005). The record before the agency consists of, among other things, "the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal." *See* Forest Guardians, 416 F.3d at 1177.

This Court also exercises *de novo* review over BLM's decision to withhold or redact documents in its responses to the Plaintiffs' FOIA requests, and the agency bears the burden to justify all nondisclosures. *See* 5 U.S.C. 552(a)(4)(B); *see also* Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). To carry this burden, the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *See* Goland v. CIA, 607 F.2d 339, 352 (D.C.Cir.1978). This Court may award summary judgment in a FOIA case solely on the basis of information provided by the agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *See* Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C.Cir.1981). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *See* SafeCard Servs. v.. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C.Cir.1991) (quotations and citations omitted). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *See id.* (quotations and citations omitted).

### ANALYSIS

### I. BLM APPROPRIATELY DENIED THE PLAINTIFFS' FEE WAIVER REQUEST TO SEARCH THE COMPUTER BACK-UP TAPES.

***7** BLM appropriately denied the Plaintiffs' request that BLM waive fees for searching through 600 computer back-up tapes for e-mails between BLM and the Grand Canyon Trust. BLM's denial is appropriate for two reasons. First, searching for e-mail on the computer back-up tapes is not "likely to significantly contribute to public understanding of the operations and activities of the government," because in its responses to the Plaintiffs' seven prior FOIA requests relating to BLM's interactions with the Grand Canyon Trust, BLM had already provided the Plaintiffs with responsive e-mails. Second, the Plaintiffs' request that BLM search through its computer back-up tapes for e-mail that may have already been disclosed in prior responses is unduly burdensome. Each reason for denying the fee waiver request is discussed in order below.

**A.** *The E-mail on the Computer Back-up Tapes Would Not Significantly Contribute to Public Understanding.*

Generally, a FOIA requester must pay a reasonable fee for "document search, duplication, and review...." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(I) to (III).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

However, fees are to be reduced or waived if disclosure of the records is "in the public interest because [they] are likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester." *See* 5 U.S.C. § 552(a)(4)(A)(iii); 43 C.F.R. § 2.19(b) & Appendix D to Title 43 C.F.R. Part 2. To establish that the requested records will "contribute significantly to public understanding," the requester must show that the requested records are not already available. *See* 43 C.F.R. Part 2, Appendix D(b)(3)(iv). Where the agency has already made the requested information available to the public, further requests for that information will not warrant a fee waiver. *See Judicial Watch, Inc. v. Dep't of Justice,* 365 F.3d 1108, 1127 (D.C.Cir.2004) ("Absent some indication of why it was not reasonable for the district court to have relied on the documents already released by the Department and its supplemental declaration as to the remaining non-exempt documents, there is no basis to conclude that Judicial Watch is entitled to a blanket waiver of FOIA processing fees."); *VoteHemp, Inc. v. Drug Enforcement Agency,* 237 F.Supp.2d 55, 60 (D.D.C.2002) (declining to grant fee waiver because requested documents already in public domain); *Sloman v. U.S. Dep't of Justice,* 832 F.Supp. 63, 68 (S.D.N.Y.1993) (declining to grant fee waiver request because some documents already released and others were available in agency public room). If disclosure of documents to the general public is a sufficient basis on which to deny a fee waiver request, then, a fortiori, denying a fee waiver request for documents that the agency has already given directly to the requester in prior FOIA responses is more than a sufficient basis on which to deny the requester's fee waiver.

**\*8** The e-mail on the computer back-up tapes would not likely contribute significantly to public understanding because those e-mails showing BLM's interactions with Grand Canyon Trust that merit a fee waiver have already been disclosed to the Plaintiffs in BLM's responses to the Plaintiffs' seven FOIA requests dated December 31, 2001, April 11, 2002, January 31, 2003, February 18, 2003, March 5, 2003, March 11, 2003, and April 1, 2003. In reaching this conclusion, this Court presumes, as it must, that the government complied with its regulations pertaining to FOIA and the preservation of records. *See Am-Pro Protective Agency v. United States,* 281 F.3d 1234, 1240 (Fed.Cir.2002) ("It logically follows that showing a government official acted in bad faith is intended to be very difficult, and that something stronger than a 'preponderance of evidence' is necessary to overcome *the presumption that he acted in good faith, i.e., properly.* This is especially so when, as in this case, years have passed between the occurrence of the underlying facts and the allegation of bad faith.") (emphasis added).

Pursuant to regulation and BLM policy:
The bureau will make a reasonable effort to search for records responsive to your request. In determining which records are responsive to your request, the bureau will include any records in its possession and control as of the date it begins its search. This will including searching for records in an electronic form/format[.]

43 C.F.R. § 2.21; *see also* 1996 BLM Instruction Memorandum No. 97-46 (Dec. 27, 1996) (distributed at oral argument). Furthermore, under the Federal Records Act, an agency "shall make and preserve *records* containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *See* 44 U.S.C. § 3101 (emphasis added). The term "record"[i]ncludes all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 U.S.C. § 3301.

According to the DOI's departmental manual, e-mail messages that meet the definition of a record must be preserved pursuant to 44 U.S .C. § 3101. 385 Department Manual 7.8. Specifically, the DOI has a well-known policy that requires e-mails that meet the definition of a "record" to be printed before being deleted. *See* Memorandum from the Department's Chief Information Officer dated Sept. 10, 1999, *http://www.doi.gov/ocio/records/news/ emailguidrev2.htm* (stating "Federal agencies can delete electronic records from their computers as long as they have filed a paper copy of the records in their official recordkeeping system.") (emphasis in original omitted). Given that this Court must presume that BLM complied with these policies and regulations, BLM reasonably searched for relevant e-mail showing the interaction between it and Grand Canyon Trust and adequately disclosed those e-mail messages in its responses to the Plaintiffs' seven FOIA requests.

**\*9** The Plaintiffs have not provided any persuasive evidence from the record showing that BLM failed to comply with its well-established policies. Instead, the Plaintiffs' fee waiver request was based on speculation that a search through the backup tapes by the BLM would yield new material that is meaningfully informative. The Plaintiffs' justification is speculation and not borne out by the record. Therefore, since these e-mails have already been provided to the Plaintiffs, the e-mails on the computer back-up tapes would not likely "contribute significantly to public understanding." *See* 43 C.F.R. Part 2, Appendix D(b)(3). Accordingly, BLM appropriately denied the Plaintiffs' fee waiver request.

### B. *The Plaintiffs' Request that BLM Search Through 600 Computer Back-up Tapes For E-mail that was Previously Disclosed was Unduly Burdensome.*

Given that e-mail regarding BLM's interaction with the Grand Canyon Trust was already disclosed to the Plaintiffs in response to their seven FOIA requests, the Plaintiffs' request that BLM search through 600 computer back-up tapes is unduly burdensome. "An agency need not honor a request that requires 'an unreasonably burdensome search.' " *See Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce, 907 F.2d 203, 209 (D.C.Cir.1990)* (citation omitted). An agency's authority to refuse to perform unduly burdensome searches is at its acme when the agency must expend vast amounts of resources with only a suspicion that the search may yield responsive documents. *See Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 664 (D.C.Cir.2003)* (holding that request that would require agency to research nonresponsive records to find requester's social security number "require[s] the Government to shoulder such a potentially onerous task-with dubious prospects of success-goes well beyond the 'reasonable effort' demanded in this context."); *Goland, 607 F.2d at 352-53* (finding unduly burdensome a request that would require agency to search through 84,000 cubic feet of documents where it was not clear that the additional search would turn up any responsive documents).

Viewing the record as a whole, *Forest Guardians, 416 F.3d at 1177,* the Plaintiffs' request that BLM search through 600 computer back-up tapes with little more than a suspicion that BLM may find an e-mail that merits a fee waiver and was not previously disclosed is the type of speculative request that unduly burdens both the agency and the public. First, the record shows that BLM notified the Plaintiffs that searching through the back-up tapes would require the agency to expend approximately $800,000. (Docket No. 63, Appeal No.2004-033, March 23, 2003 letter.) Second, after further review, BLM notified the Plaintiffs that searching the 600 computer back-up tapes would cost approximately $280,430.70. (Docket No. 63, Appeal No.2004-033, May 23, 2003 letter.) Given the exorbitant expenditure of costs and resources with only a speculative prospect of success, the Plaintiffs' request that BLM search through 600 computer back-up tapes is unduly burdensome.[FN5] Therefore, BLM appropriately denied a fee waiver for the Plaintiffs' unduly burdensome FOIA request.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. The Federal Defendants attached a declaration from a BLM employee, Stewart A. Nelson, who provided further explanation of the costs and resource burdens associated with searching the computer back-up tapes. However, since this declaration was not part of the record before the agency and the Plaintiffs object to its inclusion in the record, this Court did not consider Mr. Nelson's declaration.

## II. BLM APPROPRIATELY WITHHELD VAUGHN INDEX DOCUMENTS 10, 11, AND 12.

**\*10** BLM appropriately withheld Vaughn Index documents 10, 11, and 12 pursuant to exemption 5 of FOIA. Exemption 5 of FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has interpreted this language to mean that a document must "fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." See Dep't of the Interior v. Klamath Water Users, 532 U.S. 1, 8 (2001). Among other privileges encompassed within exemption 5 is the "deliberative process privilege." See id.

An agency's use of exemption 5 is analyzed under a two-stage process. First, the agency must show that the documents in question qualify as "inter-agency or intra-agency." Second, the agency must show that the documents are covered by a civil discovery privilege such as deliberative process. See Nat'l Inst. of Military Justice v. Dep't of Def., 404 F.Supp.2d 325, 342 & n. 10 (D.D.C.2005). Based on these standards, BLM appropriately withheld Vaughn Index documents 10, 11, and 12.

As to Vaughn Index document 12, the Federal Defendants demonstrated at oral argument and the Plaintiffs agreed that they already possessed document 12 in its un-redacted form. Therefore, any dispute over the disclosure of document 12 is moot.

As to Vaughn Index document 11, the Plaintiffs do not dispute that it is an intra-agency document. Instead, the Plaintiffs contend that document 11 is neither deliberative nor pre-decisional. However, at oral argument, the Plaintiffs agreed that document 11 is a draft of document 10 and, therefore, was predecisional and deliberative. See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C.Cir.1980) (stating the deliberative process privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). Consequently, BLM appropriately withheld portions of document 11.

However, as to Vaughn Index document 10, the parties do not agree. In its memorandum in support of summary judgment, BLM argued that the redacted portions of document 10 were protected from disclosure under the deliberative process privilege, because the document was intra-agency, deliberative, and predecisional. The Plaintiffs do not challenge that the document was intra-agency, but rather claim that the document was neither deliberative nor predecisional. Specifically, the Plaintiffs claim that since document 10 was authored after proposed amendments to the GSENM management plan were disclosed to the public, document 10 could not have been deliberative or predecisional, because there was no longer a decision to be made. (Docket No. 74, at 17.) However, the Vaughn Index shows otherwise.

**\*11** The Vaughn Index shows that document 10 involves discussions between a subordinate, the Utah State Director of BLM, and her superior, the National Director of BLM, regarding how to proceed in "potential courses" of action for grazing policies within the National Monument. Even though the Vaughn Index does not state whether BLM arrived at a decision as a result of these discussions between the Utah State Director of BLM and her supervisor, the law does not so require. See Nat'l Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132, 151 n. 18 (1975) (stating that the deliberative process privilege does not "turn[ ] on the

*ability of an agency to identify a specific decision in connection with which a memorandum is prepared,*" because agencies should be engaged in a continuing process of examining their policies, which will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process) (emphasis added). Instead, the Vaughn Index states that BLM was working within its "ongoing process" of policy determinations regarding retirement of grazing within the GSENM. Indeed, there was an ongoing decision-making process regarding grazing within the GSENM, because BLM determined to prepare an Environmental Impact Statement addressing grazing issues within the GSENM. Given the foregoing, the Federal Defendants have carried their burden to show that the redacted portions of document 10 were properly withheld under the deliberative process privilege of exemption 5.

### III. BLM SHOULD HAVE DISCLOSED DOCUMENTS 14 AND 16, BUT PROPERLY WITHHELD DOCUMENTS 18 AND 19.

BLM erred in withholding documents 14 and 16, because they are not intra-agency, as required by exemption 5 of the FOIA. These documents were authored by Mr. Karl Hess who was a consultant outside of the government that DOI hired to advise it regarding potential policy alternatives for retiring grazing in the GSENM. Although the views of a consultant can be deemed "intra-agency" for purposes of FOIA, *see CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1162 (D.C.Cir.1987),* a non-governmental consultant's views are not entitled to "intra-agency" status when the consultant is "communicating with the Government in [his] own interest or on behalf of any person or group whose interests might be affected by the Government action addressed by the consultant." *Dep't of the Interior v. Klamath Water Users, 532 U.S. 1, 12 (2001).* Although the Federal Defendants correctly point out that Mr. Hess was neither competing for a grazing permit nor representing any party competing for a grazing permit within the GSENM, that fact alone does not show that Mr. Hess was sufficiently disinterested for his communications with the DOI to qualify for "intra-agency" status. To the contrary, Mr. Hess has authored several articles and has advocated extensively for a market-based approach to retiring grazing permits on public lands. Even though he may not have been competing with others for grazing permits within GSENM, his deep-seated views regarding the retirement of grazing permits through market-based principles shows that he is communicating with the DOI in the interest of his deep-seated views, not as a disinterested expert. Consequently, Mr. Hess's communications with DOI do not qualify for "intra-agency" status and, therefore, cannot be withheld under the deliberative process privilege of exemption 5.[FN6]

> [FN6.] The foregoing analysis also applies to document 20, also written by Mr. Karl Hess. However, in a separate order and decision, this Court previously determined, after in camera inspection, that portions of document 20 contain attorney-client privileged communications. (Docket No. 100.) The Court hereby orders that the non-attorney-client privileged portions of document 20 must be disclosed to the Plaintiffs. Given that documents 14, 16, and 20 do not qualify for "intra-agency" status, this Court does not reach the question of whether those documents are deliberative or pre-decisional in nature.

**\*12** Given that Vaughn Index document 10 is the same as Vaughn Index document 18, BLM appropriately withheld document 18 under exemption 5 of FOIA.

As for document 19, the Federal Defendants appropriately withheld it under the deliberative process privilege of exemption 5. The Plaintiffs do not contest that document 19 is "intra-agency." Instead, the Plaintiffs claim that document 19 is neither deliberative nor predecisional. The Federal Defendants have established otherwise.

The Vaughn Index establishes that this briefing paper was from the National Director of BLM to her

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2156613 (D.Utah)
**(Cite as: Slip Copy)**

superior, the Secretary of the Interior, in which the Director of BLM conveyed to the Secretary a bullet-point list discussing potential courses of action available to BLM for developing grazing policies in the Monument. Communications of potential grazing policies between the Director of BLM and the Secretary of the Interior are predecisional and deliberative discussions. Furthermore, given that these discussions about potential grazing policy concerned an area as controversial as the National Monument, this communication requires protection from disclosure to ensure that future discussions between chief policy makers are not stifled by the fear of public release. Indeed, "human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon,* 418 U.S. 683, 705 (1974). Therefore, the Federal Defendants appropriately withheld document 19 under the deliberative process privilege of exemption 5.

SO ORDERED.

D.Utah,2007.
Board of County Commissioners of Kane County v. Department of the Interior of the U.S.
Slip Copy, 2007 WL 2156613 (D.Utah)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Slip Copy                                                                                                               Page 1
Slip Copy, 2007 WL 2177904 (W.D.Okla.)
**(Cite as: Slip Copy)**

**H**

**Shelter Mut** . **Ins**. **Co**. v. Dennis Clark
W.D.Okla.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. Oklahoma.
**SHELTER** MUTUAL INSURANCE COMPANY, Plaintiff,
v.
Shane DENNIS CLARK and Elaine Wheat, Defendants.
No. CIV-06-753-F.

July 27, 2007.

Larry G. Cassil, Jr., Stephen L. Olson, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, OK, for Plaintiff.
Paul D. Kouri, Rex K. Travis, Travis Law Office, Oklahoma City, OK, for Defendants.

*ORDER*
STEPHEN P. FRIOT, United States District Judge.
**\*1** This case is before the court on Plaintiff, Shelter Mutual Insurance Company (Shelter) and Defendant, Elaine Wheat's (Ms. Wheat) Joint Motion for Final Judgment Under Fed.R.Civ.P. 54(b) (Doc. 55). The Tenth Circuit tolled Ms. Wheat's appeal on July 16, 2007 because this Court's judgment for plaintiff did not constitute a final appealable decision. The Tenth Circuit granted Ms. Wheat thirty days to serve and file a copy of a district court order containing a final judgment under Fed.R.Civ.P. 54(b) (or to file an order explicitly adjudicating the claims against Defendant Clark or dismissing Clark with prejudice).

Rule 54(b) provides that when multiple claims or parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. Fed.R.Civ.P. 54(b). Because sound judicial administration does not require that Rule 54(b) requests be granted routinely, the power to grant such a request rests with the sole discretion of a district court. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 10 (1980).

"In analyzing a Rule 54(b) motion, [a] district court must first determine that it is dealing with a 'final judgment.' " Id. at 7. "The court's disposition must have been a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " Id. (citation omitted).

The court finds that its Order dated February 5, 2007 constituted a "final judgment" for purposes of Rule 54(b) because it was an ultimate disposition of all claims between Shelter and Elaine Wheat. Livesay v. Shollenbarger, 19 F.3d 1443, 1994 WL 56923 (10th Cir.)(Unpublished); X v. Fremont County School District No.25, 162 F.3d 1175, 1998 WL 704692, 2 (10th Cir.) (Unpublished).

After determining finality, the court must examine whether there is just reason for delay. Fed.R.Civ.P. 54(b); Curtiss-Wright Corp ., 446 U.S. at 8. "In deciding whether there are no just reasons to delay the appeal of individual final judgments ... a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' " Curtiss-Wright Corp., 446 U.S. at 8 (citation omitted).

This declaratory judgment action concerns only the interpretation of the Shelter policy. If the February 5, 2007 Order is affirmed, Ms. Wheat will have no recourse against the insurance policy and, since she has restricted her recovery to the proceeds of the Shelter policy, any lingering controversy between Clark and Shelter will be moot.

**\*2** If, on the other hand, the Tenth Circuit reverses the February 5, 2007 Order and renders judgment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for Ms. Wheat, Shelter will be bound by that determination to defend and indemnify Clark, but only to the extent of the proceeds of the Shelter policy as agreed by Ms. Wheat, and no further appeals will occur, except possibly as to damages but only between Shelter and Ms. Wheat-which would necessarily not include non-party Clark.

If the Tenth Circuit reverses the February 5, 2007 Order and remands for further proceedings, there is no possibility that Mr. Clark will ever be implicated, since Ms. Wheat has restricted any recovery she may receive to the Shelter Policy's limit of liability, and while there may be another appeal between Ms. Wheat and Shelter, there can be none involving Mr. Clark and no danger that he will claim the decisions in this case are not *res judicata* as to him. Accordingly, because of the procedural posture that brings us to this point, the issues before the Court on summary judgment between Shelter and Wheat effectively decide this matter because there is no danger that the Tenth Circuit's decision in this case will result in future appeals involving Clark, who is dismissed from the case. Also there is no likelihood of multiple appeals on the issues in this appeal.

Thus, the Court finds that there is no indication that entering an individual final judgment would facilitate piecemeal appeals in this instance and the equities weigh in favor of allowing the appeal to proceed. The Court finds no just reason for delaying the appeal on the claims between Shelter and Ms. Wheat; the Court directs entry of judgment against Ms. Wheat and in favor of Shelter.

For all of these reasons, and having expressly found that its earlier order and judgment were final and that there is no just reason for delay of entry of judgment, the parties' joint motion for final judgment and certification under Rule 54(b) is **GRANTED.**

W.D.Okla.,2007.
Shelter Mut. Ins. Co. v. Dennis Clark
Slip Copy, 2007 WL 2177904 (W.D.Okla.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Slip Copy                                                                                                                               Page 1
Slip Copy, 2007 WL 1747479 (D.Kan.)
**(Cite as: Slip Copy)**

Directv, Inc. v. Turner
D.Kan.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
DIRECTV, INC., Plaintiff,
v.
William TURNER, Defendant.
**Civil Action No. 03-2287-CM.**

June 18, 2007.

Joseph A.C. Fulcher, Joseph Raymond Russo, Jr., Greer, Herz & Adams, LLP, League City, TX, Robert P. Numrich, Todd M. Johnson, John J. Gates, Baty, Holm & Numrich, PC, Kansas City, MO, for Plaintiff.

### ORDER

CARLOS MURGUIA, United States District Judge.

**\*1** This case is before the court on defendant's Motion for Final Judgment Under Fed.R.Civ.P. 54(b) (Doc. 506). The Tenth Circuit abated defendant's appeal on May 24, 2007 because this court's judgment for plaintiff did not constitute a final appealable decision. The Tenth Circuit granted defendant thirty days to serve and file a copy of a district court order containing a final judgment under Fed.R.Civ.P. 54(b).

Rule 54(b) provides that when multiple claims or parties are involved in an action, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). Because "sound judicial administration does not require that Rule 54(b) requests be granted routinely," the power to grant such a request rests with the sole discretion of a district court. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 10 (1980).

In analyzing a Rule 54(b) motion, "[a] district court must first determine that it is dealing with a 'final judgment.' " Id. at 7. The court's disposition must have been a " 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " Id. (citation omitted). The court finds that its Memorandum and Order dated July 14, 2006 constituted a "final judgment" for purposes of Rule 54(b) because it was an ultimate disposition of plaintiff's claims against defendant William Turner. Plaintiff's claims against defendant Turner are separable from its claims against defendant Bill Strauss, the only remaining defendant when the court entered judgment against defendant Turner. While the claims involved the same statutes, the claims against each defendant were fact-specific. Furthermore, the claims were such that it is unlikely that the Tenth Circuit would have to decide the same issues more than once if there were a subsequent appeal regarding defendant Strauss.

After determining finality, the court must examine whether there is any just reason for delay. Fed.R.Civ.P. 54(b); Curtiss-Wright Corp., 446 U.S. at 8. "In deciding whether there are no just reasons to delay the appeal of individual final judgments ... a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' " Curtiss-Wright Corp., 446 U.S. at 8 (citation omitted). Here, although the court dismissed plaintiff's claims against defendant Strauss without prejudice, such dismissal occurred over ten months ago, and plaintiff has not refiled its action against that defendant. There is no indication that entering an individual final judgment would facilitate piecemeal appeals in this instance. The court finds no just reason for delaying an appeal on the claims against defendant Turner. A Rule 54(b) certificate is appropriate, and the parties may proceed with the appellate process.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Slip Copy** Page 2
Slip Copy, 2007 WL 1747479 (D.Kan.)
**(Cite as: Slip Copy)**

***2 IT IS THEREFORE ORDERED** that defendant's Motion for Final Judgment Under [Fed.R.Civ.P. 54(b)](#) (Doc. 506) is granted.

D.Kan.,2007.
Directv, Inc. v. Turner
Slip Copy, 2007 WL 1747479 (D.Kan.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.