# EXHIBIT A



Not Reported in F.Supp.2d                                                                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 21293565 (D.Kan.)

**(Cite as: Not Reported in F.Supp.2d)**

Smith v. Board of County Com'rs of County of Lyon
D.Kan.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
Timothy A. SMITH, Plaintiff,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF LYON and Clifford Hacker, GAry Eichorn, Sheriff, Defendants.
**No. 01-4018-SAC.**

May 27, 2003.

Michael C. Helbert, Law Offices of Michael C. Helbert, Laura L. Miser, Law Offices of Michael C. Helbert, Emporia, KS Emporia, KS, for Plaintiff.
Jana V. Richards, Sanders Conkright & Warren LLP, Overland Park, KS, for Board of County Commissioners, Lyon County, KS.

MEMORANDUM AND ORDER
SAM A. CROW, U.S. District Senior Judge.
**\*1** This case comes before the court on motions in limine filed by both parties.[FN1]

> FN1. The court notes that ordinarily motions of this type are not filed unless the matter is contested. Filing a motion in the first instance, rather than fulfilling one's duty to communicate with opposing counsel, increases both burden on the court and the expense to the clients. The court encourages the movants not to file motions in the future unless they believe, after reasonable communication with the opposing counsel, that the matter is in fact disputed.

### GOVERNING STANDARDS

The motion in limine is a creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence. Deghand v. Wal-Mart Stores, Inc., 980 F.Supp. 1176, 1179 (D.Kan.1997). Such motions do " aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir.1996) (quoting Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc., 652 F.Supp. 1400, 1401 (D.Md.1987)). They also may save the parties time, effort and costs of preparing and presenting their cases. Pivot Point Intern., Inc. v. Charlene Products, Inc., 932 F.Supp. 220, 222 (N.D.Ill.1996). At the same time, it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. See Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir .1975), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975); Hunter v. Blair, 120 F.R.D. 667 (S.D.Ohio 1987).

The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. Plair v. E.J. Brach & Sons, Inc., 864 F.Supp. 67, 69 (N.D.Ill.1994). The court may deny a motion in limine when it " lacks the necessary specificity with respect to the evidence to be excluded." National Union Fire Ins. Co. v. L.E. Myers Co. Group, 937 F.Supp. 276, 287 (S.D.N.Y.1996). At trial, the court may alter its limine ruling based on developments at trial or its sound judicial discretion. Luce v. United States, 469 U.S. 38, 41 (1984). " Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." Hawthorne Partners v. AT & T Technologies, Inc., 831 F.Supp. 1398, 1401 (N.D.Ill.1993). Denial only means that the court cannot decide admissibility outside the context of trial. Plair v. E.J. Brach & Sons, Inc., 864 F.Supp. at 69. A ruling in limine does not " relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial." Thweatt v. Ontko, 814 F.2d 1466, 1470 (10th Cir.1987) (internal quotation omitted).

### DEFENDANT'S MOTION IN LIMINE

#### 1. ACA Standards-Plaintiff's Exh. 15

Defendant asks the court to exclude plaintiff's exhibit 15, which is a voluminous exhibit identified as the " Standards for Adult Local Detention Facilities, ACA, 3rd Edition." The court understands that ACA means American Correctional Association, and that the exhibit is a manual of standards produced by the

Case 2:04-cv-00139-DAK-BCW     Document 418-2     Filed 08/31/2007     Page 3 of 12

Not Reported in F.Supp.2d                                                                              Page 2
Not Reported in F.Supp.2d, 2003 WL 21293565 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

ACA, a voluntary association. Defendant alleges that its jail did not belong to this association, and never sought to be accredited under its auspices. Instead, defendant claims to be governed solely by the standards and guidelines of the Kansas Department of Corrections,[FN2] making any reference to the ACA standards irrelevant and misleading to the jury.

> FN2. Defendant makes no citation, however, to any DOC guideline or standard, and has not included the Kansas DOC Advisory Jail Standards and Procedures, or any other DOC standard in its exhibits.

**\*2** Plaintiff responds that the head jailer, Anstey, will testify that the jail used the ACA guidelines and standards regarding medical needs, that Sheriff Hacker will testify that he had received training in how to operate a correctional facility from the ACA, and that the jail and the Lyon County Sheriff's Office was an unaccredited member of the ACA which paid dues and received ACA publications. (Dk.97). From this plaintiff contends that the jail used the ACA standards as its own standards.

From these assertions, the court understands that neither party intends to call an expert witness to establish the standard of care for the jail regarding any of plaintiff's negligence claims. In the absence of expert testimony, the parties apparently intend to establish the standard of care by lay testimony, supported by the ACA or DOC standards. The common practice is for an expert to testify as to the impact of ACA or other standards. *See e.g.,* Finklestein v. District of Columbia, 593 A.2d 591, 593 (D.C.1991) (expert testified that the standards promulgated by the ACA are not mandatory, but are used as the basis for a voluntary accreditation program around the country.) For the reasons set forth below, the parties' attempts to establish a standard of care by the proffered testimony of lay persons with reference to the ACA's standards appears to be quite problematic.

ACA standards set forth goals, often go beyond case law and the statutes of many jurisdictions, and do not establish constitutional minimums. Vazquez v. Carver, 1987 WL 14847 \*21 (E.D.Pa.1987). As the Supreme Court has stated regarding the ACA and other jail standards, " while the recommendations of these various groups may be instructive ..., they simply do not establish the constitutional minima; rather they establish goals recommended by the organization in question." Bell v. Wolfish, 441 U.S. 520, 543 n. 27 (1979). *See* Valentine v. Englehardt, 474 F.Supp. 294, 302 (D.N.J.1979). Governmental action does not have to be the best alternative for it to be reasonable. *See* Vance v. Bradley, 440 U.S. 93 (1979); Dandridge v. Williams, 397 U.S. 471, 485 (1970).

The parties disagree as to whether the jail was or was not a member of the ACA. Nonetheless, the court does not find membership in the voluntary association to be controlling as to the standard of care. Even assuming, *arguendo,* that defendant was a member of the ACA, this fact would not mean that each standard set forth in plaintiff's Exh. 15 establishes the duty of care for a reasonable person in defendant's position. Plaintiff proffers no testimony that mere membership in the ACA constitutes adoption of its standards or that this defendant otherwise adopted all ACA standards as its own, or that the standards establish the duty of care for the entire jail industry. Plaintiff fails to specify any particular standard relating to medical care which defendant adopted or otherwise agreed would govern its conduct.

**\*3** The court will take defendant's motion under advisement.

The court additionally recalls its discussion of the ACA standards in its summary judgment order. There, defendants alleged that plaintiff's claim that defendants failed to comply with national standards of care for inmates in adult correctional facilities failed to state a claim upon which relief can be granted. At that time, plaintiff responded that it did not make any separate claim based upon defendants' failure to comply with national standards of care, and that any evidence of non-compliance with national standards of care was merely " an allegation for the jury to consider when determining if actions taken by Sheriff Hacker ... were reasonable." (Dk. 57, 11th unnumbered page).

Plaintiff is bound by this assertion, and will not be permitted to present to the jury any claim that defendant was negligent in failing to comply with national standards for the care of inmates in adult correctional facilities. No other negligence claim regarding failure to comply with standards is included in the pretrial order or shall be permitted at trial.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 3

Not Reported in F.Supp.2d, 2003 WL 21293565 (D.Kan.)

**(Cite as: Not Reported in F.Supp.2d)**

### 2. Defendant's charges for housing inmates from out of county

Defendant's second motion in limine asks the court to exclude testimony regarding money received by the jail for housing inmates from other counties and how that money was budgeted or used by the county. Defendant alleges that such testimony is irrelevant, but has neither produced the deposition containing the challenged testimony, nor cited the court to a page reference at which it appears.

Plaintiff responds that the budget issue is relevant to show that defendant operated the jail for a profit, that defendant had sufficient funds to provide appropriate medical staff, and that defendant put profits before people and was thus deliberately indifferent to their needs.

The court finds that whether the jail operated at a profit or had sufficient funds to hire medical staff in house, rather than by other means permitted by Kansas statutes, is irrelevant to any issue in this case. Similarly, Sheriff Hacker's decisions, or those of anyone else, about how and where to allocate funds plays no part in this case. The pretrial order includes no allegation that defendant was negligent in failing to have medical professionals on staff or in its budget allocations. Further, the budget/financial issues are irrelevant to the only 8th Amendment issue in this case: whether defendant was deliberately indifferent to the known serious medical needs of this plaintiff.

This motion is granted.

### PLAINTIFF'S MOTION IN LIMINE

Plaintiff's motion in limine consists of eleven separate sections, some of which contain multiple subparts.

### 1. Prior accidents

Plaintiff asks the court to exclude " any evidence or reference to any prior motor vehicle accidents on the part of plaintiff." No reason for exclusion is stated, thus this motion is denied.

### 2. Evidence of prior unrelated injuries or medical treatment

**\*4** Plaintiff seeks to exclude evidence of plaintiff's prior physical health and injuries not symptomatic at the time of the injury indicated in plaintiff's petition. No reason for exclusion is stated, thus this motion is denied.

### 3. Prior rulings concerning plaintiff

Plaintiff seeks to exclude evidence of the comments, findings or rulings made by this or any other court concerning plaintiff or any of the claims in this case. This motion is granted as uncontested.

### 4. Alcohol use

Plaintiff seeks to exclude evidence that plaintiff used alcohol prior to or after the date of his injury, as irrelevant.

Defendant responds that " Dr. Lynn Curtis, plaintiff's expert, has acknowledged that neurologic symptoms can develop in someone who has undergone long-term substance abuse." Defendant further asserts that plaintiff has undergone long-term substance abuse, making such testimony relevant to plaintiff's current symptoms, in support of defendant's theory that at least some of plaintiff's current symptoms were not caused by his injury in the jail kitchen or subsequent medical care and treatment.

The court will take this motion under advisement.

### 5. Dismissal of plaintiff's claims

Plaintiff seeks to exclude reference to the fact that this court granted summary judgment on some of plaintiff's constitutional claims. This motion is granted as uncontested.

### 6. Divorce/Marital problems

Plaintiff seeks to exclude evidence of the fact that he is divorced, and any reference to the number of marriages he has had, alleging that it is " unrelated" to his claims. From this the court assumes that plaintiff objects to relevance. This motion is granted as uncontested.

### 7. Collateral source payments

Plaintiff seeks to exclude reference to the fact that he received payments from various sources, including Social Security, invoking the collateral source rule. The collateral source rule provides " that benefits

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4

Not Reported in F.Supp.2d, 2003 WL 21293565 (D.Kan.)

**(Cite as: Not Reported in F.Supp.2d)**

received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer."

*Gregory v. Carey,* 246 Kan. 504, 507 (1990) (citing *Farley v.. Engelken,* 241 Kan. 663, 665-66 (1987)). Thus, an injured party is entitled to recover full compensatory damages from a tortfeasor regardless of the payment of any portion of those damages by a source independent of the tortfeasor. *Wendtling v. Medical Anesthesia Servs.,* 237 Kan., 503, 515(1985). In addition, the collateral source rule " precludes admission of evidence of benefits paid by a collateral source." *Id.*

However, collateral source benefits are limited to those paid " for expenses incurred or reasonably certain to be incurred as a result of the occurrence upon which the personal injury action is based." K.S.A. § 60-3801. Defendant asserts that plaintiff's social security claim predates the incident in this case, rendering any payments he received from social security not " collateral sources." Accordingly, the court finds that evidence of payments to plaintiff before May of 1999,[FN3] or otherwise shown to be unrelated to payments to plaintiff as a result of the occurrence upon which this suit is based, is not barred by the collateral source rule. Defendant concedes that social security documents generated after 1999 " may" involve collateral source issues. Social security or other documents which reflect payments to plaintiff for expenses incurred or reasonably certain to be incurred as a result of the occurrence upon which this suit is based, shall not be admitted.

> FN3. This is the earliest date plaintiff's injury is alleged to have occurred.

*5 Because the parties have not specified which documents in this voluminous exhibit may fall within this prohibition, the court cannot make a more specific ruling at this time, but expects the parties to remove those documents which fall within this ruling from the exhibit prior to trial so that the trial will not be delayed.

### 8. Defendant's Exh. 46

Plaintiff seeks to exclude admission of defendant's exhibit 46, plaintiff's social security file, claiming it is irrelevant, and would violate the collateral source rule. To the extent exhibit 46 contains evidence of payments made by collateral sources relative to plaintiff's injuries alleged in this case, it is governed by the court's ruling above barring admission of such evidence.

Plaintiff alleges that numerous matters included in this voluminous file are irrelevant, including plaintiff's prior physical condition and administrative decisions relative thereto, plaintiff's divorce and child support issues, convictions of other crimes, and other allegedly unrelated matters.

In response, defendant alleges only that the file contains unspecified documents showing that plaintiff claimed to be totally " disabled" and unable to work. Defendant offers no date for the court to determine whether defendant's representation of disability predated May of 1999. If so, it would be relevant to claims including plaintiff's claim of lost future income.

The court lacks sufficient evidence to rule upon this motion as it relates to plaintiff's representations of disability, so will take the motion under advisement. The court grants the motion as unopposed as to all documents unrelated to plaintiff's claim of disability, including those relating to plaintiff's divorce and child support issues and convictions of other crimes, which have not been shown to be admissible under the federal rules.

### 9. Defendant's Exh. 47

Plaintiff seeks to exclude admission of defendant's exhibit 47, plaintiff's deposition and deposition exhibits, claiming it contains irrelevant and cumulative evidence including plaintiff's marital history, criminal history, incarceration history, previous car accidents, tax return history, etc. In response, defendant has indicated its intent not to use plaintiff's deposition for purposes other than impeachment. The court thus grants this motion as uncontested and will, of course, permit use of the deposition for purposes of impeachment.

### 10. Various exhibits

Plaintiff seeks to exclude a host of exhibits listed by defendant, for the stated reason that they are irrelevant " due to the dates of injuries indicated ..." or " the injuries or conditions indicated do not relate to the injuries alleged by plaintiff." They are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 21293565 (D.Kan.)

**(Cite as: Not Reported in F.Supp.2d)**

defendant's exhibits 1, 2, 3, 7, 8, 11, 14, 15, 16, 22, 27, 28, 29, 30, 35, 36, and 40.

In response, defendant agrees that D-40 is " probably not relevant." Plaintiff's motion is therefore granted as to that exhibit. As to all other challenged exhibits, defendant has detailed for the court in its response why each such document is relevant to the case. Based upon defendant's response, the court finds that plaintiff has not sustained its burden to show that the documents should be excluded, thus plaintiff's motion is denied as to defendant's exhibits 1, 2, 3, 7, 8, 11, 14, 15, 16, 22, 27, 28, 29, 30, 35, and 36.

### 11. Workers' compensation

**\*6** Plaintiff seeks to exclude " two documents pertaining to worker's compensation." [FN4]

> FN4. The court notes the exclusive remedy provision of Kansas law which provides that no employer shall be liable for any injury for which compensation is recoverable under the workers compensation act, Kan. Stat. Ann. § 44-501(b). The court shall ask the parties at the status conference to state their positions whether plaintiff's negligence claims are barred by this statute.

Plaintiff alleges solely that the documents do not provide the jury with any information which will help them in making their deliberations. Plaintiff has not identified which two documents he is challenging, thus plaintiff's motion could be denied for lack of the requisite specificity.

Defendant responds that the two documents at issue are D-42 and D-24. Defendant agrees not to offer D-42 (a letter from plaintiff's attorney Helbert to the Lyon County Sheriff's Office dated September 27, 1999).

Defendant states that D-24 is a " Lyon County Employee's Accident Report," which is not part of plaintiff's worker's compensation file, but is part of defendant's jail file, and it contains no reference to worker's compensation. Defendant adequately shows the court the relevance of the document, in that it states the date of the incident as June 2, 1999, contradicting plaintiff's claims of a May incident and delayed medical treatment. Accordingly, plaintiff's motion is granted as to D-42 and denied as to D-24.

The parties shall not refer to any evidence as to which the court has granted a motion in limine during voir dire, opening statements, or otherwise and shall approach the bench before offering any evidence the court has taken under advisement.

IT IS THEREFORE ORDERED that plaintiff's motion in limine (Dk.94) is granted in part and denied in part in accordance with the terms of this memorandum.

IT IS FURTHER ORDERED that defendant's motion in limine (Dk.91) is granted in part and denied in part in accordance with the terms of this memorandum.

D.Kan.,2003.
Smith v. Board of County Com'rs of County of Lyon
Not Reported in F.Supp.2d, 2003 WL 21293565 (D.Kan.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 1419270 (N.D.Iowa)
**(Cite as: Not Reported in F.Supp.2d)**

Western Reserve Life Assur. Co. of Ohio v. Bratton
N.D.Iowa,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Iowa,Cedar Rapids Division.
WESTERN RESERVE LIFE ASSURANCE COMPANY OF OHIO, Plaintiff/Counterclaim Defendant,
v.
G. Randall BRATTON, Gary G. Bratton, Bratton Financial Services Corporation and Bratton International, Inc., Defendants/Counterclaim Plaintiffs.
No. C-04-81-LRR.

May 19, 2006.

Amy L. Reasner, Wilford H. Stone, Jason M. Craig, Lynch, Dallas, PC, Cedar Rapids, IA, for Plaintiff/Counterclaim Defendant.
Bruce S. Kramer, Jason Gregory Wolfkill, Kramer, Horne, Wells & Sheng, PLC, Howard B. Manis, Borod & Kramer, PC, Memphis, TN, Stephen R. Eckley, Belin, Lamson, McCormick, Zumbach & Flynn, PC, Des Moines, IA, for Defendants/Counterclaim Plaintiffs.

**ORDER REGARDING WRL'S MOTION IN LIMINE**
LINDA R. READE, District Judge.

*TABLE OF CONTENTS*

| | | |
|---|---|---|
| I. INTRODUCTION | | 2 |
| II. PROCEDURAL BACKGROUND | | 2 |
| III. TIMELINESS | | 3 |
| IV. MERITS OF THE MOTION IN LIMINE | | 3 |
| | A. Uncontested Issues | 4 |
| | B. Contested Issues | 4 |
| |     1. Equitable estoppel | 5 |
| |     2. Information not revealed in discovery | 6 |
| |     3. | 7 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 2006 WL 1419270 (N.D.Iowa)
**(Cite as: Not Reported in F.Supp.2d)**

| | Relevancy | |
| --- | --- | --- |
| | 4. Limiting future damages | 8 |
| V. CONCLUSION | | 10 |

### I. INTRODUCTION

***1** The matters before the court are the Motion in Limine (docket no. 119) and the Motion to Strike Defendants' Resistance to Plaintiff's Motion in Limine (" Motion to Strike " ) (docket no. 123) filed by Western Reserve Life Assurance Company of Ohio (" WRL ").FN1

> FN1. The Motion in Limine was a joint motion by WRL and AEGON USA, Inc. The court only refers to WRL because the counterclaims against AEGON USA, Inc. were dismissed by the court in a May 10, 2006 summary judgment order (docket no. 133).

### II. PROCEDURAL BACKGROUND

On June 26, 2004, WRL filed a Complaint for Declaratory Judgment against G. Randall Bratton, Gary G. Bratton, Bratton Financial Services Corporation and Bratton International, Inc. (collectively referred to as " the Brattons" ). The parties then filed numerous pleadings and motions which are not relevant here and, on April 14, 2005, the Brattons filed an Amended Answer, Counterclaims/Third-Party Complaint and Jury Demand (" Answer" ). The Brattons' counterclaims which survived summary judgment include claims for breach of contract, quantum meruit, unjust enrichment and promissory estoppel.

On April 21, 2006, WRL filed the instant Motion in Limine. On May 3, 2006, the Brattons filed their Resistance to the Motion in Limine (" Resistance" ) (docket no. 121). On May 4, 2006, WRL filed the instant Motion to Strike. On May 18, 2006, the parties waived a jury trial.FN2

> FN2. Given the jury waiver, several of the issues raised in the Motion in Limine are now moot.

### III. TIMELINESS

In its Motion to Strike, WRL argues that the Brattons filed their Resistance six days after it was due. WRL correctly notes that the February 15, 2005 Trial Scheduling Order requires that motions in limine be filed at least fourteen days prior to the final pretrial conference and that resistances be filed within one week after service of the motion. *See* docket no. 59 at Section XII. Because the Final Pretrial Conference was scheduled for May 5, 2006, the motions in limine were due by April 21, 2006, and the resistances to such motions were due no later than April 28, 2006. The Brattons' Resistance is, therefore, untimely.

WRL asks that the Resistance be stricken because WRL did not have time to prepare a reply prior to the May 5, 2006 Final Pretrial Conference. WRL claims it is prejudiced for this reason. The court finds that WRL has not been prejudiced by the Brattons' untimely Resistance, because the Motion in Limine was neither discussed nor resolved at the Final Pretrial Conference. In fact, despite being informed by Chief Magistrate Judge John A. Jarvey that the court would resolve the motions in limine at a later time, WRL still did not file a reply to the Resistance. Now, the five-day reply period has expired. *See* LR 7.1(g). Therefore, the court finds WRL has not been prejudiced by the Brattons' failure to abide by the court's deadlines and the court declines to strike the Resistance because it is untimely.

### IV. MERITS OF THE MOTION IN LIMINE

As an initial matter, the court notes that many of the issues raised by WRL in its Motion in Limine are not the appropriate subject matter of such a motion. This includes several of the uncontested issues listed in Subsection IV(A) below. A motion in limine should be used by the parties to seek to exclude limited and specific items of evidence which the moving party expects the other party to introduce at trial and which the moving party believes are inadmissible under a certain Federal Rule of Evidence. The parties should not ask the court to determine substantive or factual issues in a motion in limine, but rather, the parties should seek only to resolve limited evidentiary issues.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d   Page 3
Not Reported in F.Supp.2d, 2006 WL 1419270 (N.D.Iowa)
**(Cite as: Not Reported in F.Supp.2d)**

*A. Uncontested Issues*

**\*2** Due to the Brattons' concessions, the court hereby orders [FN3] that the following matters shall not be raised at trial through reference by the attorneys, through the introduction of evidence or through witness testimony:

> FN3. In ruling on the Motion in Limine, the court assumes that the offering party is able to comply with the other Federal Rules of Evidence for admissibility of evidence. The rulings in this order go to the specific evidentiary issues raised by the parties.

(1) Prior settlement offers and conduct or statements made during settlement negotiations (WRL's Motion in Limine ¶ 1);
(2) WRL's and AEGON's financial or corporate status (WRL's Motion in Limine ¶ 6);
(3) The Brattons' Expert Witness Testimony (WRL's Motion in Limine ¶ 7);
(4) Disposition of Pretrial Motions (WRL's Motion in Limine ¶ 8); and
(5) Comments on the Assertion of Privilege (WRL's Motion in Limine ¶ 9). The issues raised in paragraphs 10, 11 and 12 of the Motion in Limine shall be denied as moot, given the jury waiver.

*B. Contested Issues*

The Brattons contest the following issues raised by WRL in its Motion in Limine:
(1) Equitable estoppel (WRL's Motion in Limine ¶ 2);
(2) Information not revealed in discovery (WRL's Motion in Limine ¶ 3);
(3) Relevance (WRL's Motion in Limine ¶ 4); and
(4) Limiting future damages (WRL's Motion in Limine ¶ 5).

*1. Equitable estoppel*

WRL first argues that the Brattons should be equitably estopped from seeking recovery of the expenses they allegedly paid in marketing WRL fixed life insurance products and in recruiting agents and agencies to sell those products. They argue that the Brattons should be prohibited from offering any evidence regarding their claimed marketing expenses for 2002, 2003 and 2004. The Brattons respond that equitable estoppel is an affirmative defense which is not the appropriate subject matter of a motion in limine. The Brattons further argue that WRL waived the affirmative defense by failing to raise it in its answer to the counterclaims.

The court agrees that equitable estoppel is a waivable affirmative defense. See Fed.R.Civ.P. 8(c) (listing " estoppel" as one of several affirmative defenses); see also Markey v. Carney, 705 N.W.2d 13, 21 (Iowa 2005) (" Equitable estoppel is a common-law affirmative defense preventing one party who has made certain representations from taking unfair advantage of another when the party making the representations changes its position to the prejudice of the party who relied upon the representations." (citations omitted)). WRL did not raise this affirmative defense in its answer *(see* Reply to Defendants' Counterclaims at docket no. 84) and, therefore, waived it. See Jacobs Mfg. Co. v. Sam Brown Co., 19 F.3d 1259, 1266 (8th Cir.1994) (explaining that, " [b]ecause [the defendant] failed to plead the affirmative defense of estoppel, [the defendant] waived it ." ); see also Bissett v. Burlington N. R.R. Co., 969 F.2d 727, 731 (8th Cir.1992) (determining that failure to plead an affirmative defense results in waiver of the defense and its exclusion from the case); 28 Am.Jur.2d *Estoppel and Waiver* § 162 (2005) (" Whether at law or in equity, the affirmative defense of estoppel generally cannot be proved under a general denial or an objection to the evidence, but must be pleaded affirmatively or the defense is waived." (citations omitted)).

**\*3** The court shall deny WRL's Motion in Limine regarding equitable estoppel, because equitable estoppel is an affirmative defense that WRL waived.

*2. Information not revealed in discovery*

Next, WRL seeks to exclude any evidence that was not revealed in discovery. Specifically, WRL seeks to exclude Defendants' Exhibits B, C, D, T, U, V and W. WRL argues that these items of evidence should be excluded from evidence because they were " not identified in [the Brattons'] responses to WRL/AEGON's discovery to the Brattons, or [they were] not properly supplemented by the Brattons...." In response, the Brattons assert that Defendants' Exhibits C, D, U, V and W were produced in discovery in a response to a request for documents dated July 28, 2005, and Defendants' Exhibit T was produced in response to a January 4, 2006 request. The Brattons further assert that Defendants' Exhibit B was provided to WRL on April 26, 2004, during pre-litigation discussions between the parties.

The court finds that WRL had access to Defendants' Exhibits B, C and D by at least September 6, 2005, as

Not Reported in F.Supp.2d                                                                                                         Page 4
Not Reported in F.Supp.2d, 2006 WL 1419270 (N.D.Iowa)
**(Cite as: Not Reported in F.Supp.2d)**

evidenced by the fact that WRL's attorneys questioned Gary G. Bratton about these exhibits (then marked as Deposition Exhibits 14.5, 14.6 and 14.7) during his deposition on September 6, 2005, and September 7, 2005. Therefore, these three exhibits shall not be excluded from evidence due to the Brattons' alleged failure to disclose them during discovery.

Moreover, the court finds that WRL had access to Defendants' Exhibits T, U, V and W well in advance of the trial date. The Brattons' filed their Resistance on May 3, 2006, and then WRL filed its Motion to Strike on May 4, 2006. WRL did not make any substantive objections or otherwise respond to the Brattons' assertion that these documents were produced in response to WRL's discovery requests. The court shall take the Brattons at their word that the documents were produced.[FN4] The court finds that the Brattons produced these exhibits during discovery and that, even if they were not disclosed in a timely fashion, WRL has suffered no prejudice. Defendants' Exhibits T, U, V and W shall not be excluded due to an untimely disclosure.

> FN4. The court notes that counsel for WRL provided the court with copies of Defendants' Exhibits T, U, V and W at the Final Pretrial Conference on May 5, 2006. These four exhibits are not voluminous-they consist of a total of only eighty-five pages.

WRL's Motion in Limine shall be denied as to paragraph 3.

### 3. Relevancy

WRL seeks to exclude Defendants' Exhibits B, C and D on relevancy grounds. WRL argues that expenses incurred by the Brattons prior to November 1, 2002, when Randall G. Bratton signed his appointment agreement, and expenses incurred after March 18, 2004, when the appointment agreements were terminated, are not relevant expenses. The Brattons respond that these three exhibits only contain information regarding expenses the Brattons incurred during the time period they worked with WRL, that is: from November 2002 through March 18, 2004. They argue that Gary G. Bratton so testified in his deposition.

" ' Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. In order to prevail on their counterclaims, the Brattons will have to prove they incurred damages or suffered a detriment. *See, e.g., Wagner Enters., Inc. v. John Deere Shared Servs., Inc.,* 397 F.Supp.2d 1097, 1104-05 (N.D.Iowa 2005) (applying Iowa's breach of contract law and noting that the plaintiff must prove that he or she has suffered damages as a result of defendant's breach); *Kolkman v. Roth,* 656 N. W.2d 148, 152 (Iowa 2003) (examining a promissory estoppel claim and noting that an element of the claim is that the " promisee acted to his or her substantial detriment in reasonable reliance on the promise" ); *Iowa Waste Sys., Inc. v. Buchanan County,* 617 N.W.2d 23, 28-29 (Iowa 2000) (explaining that the plaintiff must prove it suffered a detriment as an element of unjust enrichment). The court finds that the evidence contained in Defendants' Exhibits B, C and D-namely, the expenses the Brattons incurred as a result of its relationship with WRL-is relevant because it makes it more probable that the Brattons suffered damages, a detriment or a substantial detriment due to WRL's actions.

**\*4** Given the deposition testimony and Federal Rule of Evidence 401, the court finds that Defendants' Exhibits B, C and D are relevant and shall not be excluded on relevancy grounds. Paragraph 4 of WRL's Motion in Limine shall be denied.

### 4. Limiting future damages

WRL argues that Defendants' Exhibit A and related testimony regarding future damages should be prohibited at trial because they are speculative. They argue that the Brattons' attempt to project millions of dollars in lost income over the next twenty years is far too speculative to be admissible. WRL further argues that, if such evidence is allowed, the dollar amounts should be reduced to present value and must be reduced by the expenses the Brattons incurred in obtaining the commissions. The Brattons respond that a ruling on this issue should be deferred until the time of trial and that it is not properly posed in a motion in limine. They argue that it is a substantive issue, not an evidentiary one. The Brattons also argue that Defendants' Exhibit A merely provides information regarding the *amount* of future losses, not the existence of them, so the exhibit should not be excluded based on the cases cited by WRL.

Because the Brattons allege that WRL breached an oral contract, they are entitled to prove damages which " place [them] in the position [they] would have occupied if the contract had been performed." *Flom v. Stahly,* 569 N.W.2d 135, 142 (Iowa 1997). Such damages may include lost future profits based upon lost commissions. "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 5
Not Reported in F.Supp.2d, 2006 WL 1419270 (N.D.Iowa)
**(Cite as: Not Reported in F.Supp.2d)**

Lost profits are recoverable under Iowa law, provided: (1) there is proof that some loss occurred, (2) that such loss flowed directly from the agreement breached and was foreseeable, and (3) there is proof of a rational basis from which the amount can be inferred or approximated." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.,* 519 F.2d 634, 639-40 (8th Cir.1975). The lost profits cannot be " based on conjecture and speculation." *Yost v. City of Council Bluffs,* 471 N.W.2d 836, 840 (Iowa 1991). Moreover, " [i]t is well established ... that ' while recovery will be denied if it is speculative and uncertain whether damage has been sustained, recovery will not be denied merely because the amount of damages is difficult to ascertain.' " *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 688 (Iowa 1990) (discussing future damages of a terminated at-will employee) (citing *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562 (Iowa 1987)).

The court finds that Defendants' Exhibit A and the expected foundation testimony will take the determination about future lost commissions out of the realm of speculation. If the testimony proceeds as the Brattons expect, the court will be able to find a rational basis from which the amount of the future commission loss can be approximated. *See Lakota Girl Scout Council,* 519 F.2d at 639-40. WRL's attorneys will have the opportunity to make objections and cross-examine the Brattons' witnesses to highlight how WRL believes the testimony and exhibit are speculative. The court, as the fact-finder, will then be able to weigh the evidence.

**\*5** Accordingly, paragraph 5 of WRL's Motion in Limine shall be denied.

### V. CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED:**
(1) WRL's Motion in Limine (docket no. 119) is **DENIED IN PART** and **GRANTED IN PART;**
(2) WRL's Motion to Strike Resistance to Motion in Limine (docket no. 123) is **DENIED;** and
(3) The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited subjects. Each party is charged with the responsibility of cautioning its witnesses of this order on this Motion in Limine.

IT IS SO ORDERED.

N.D.Iowa,2006.
Western Reserve Life Assur. Co. of Ohio v. Bratton
Not Reported in F.Supp.2d, 2006 WL 1419270 (N.D.Iowa)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.