SCO Grp v. Novell Inc Doc. 420



Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stephen N. Zack (admitted Pro Hac Vice)
BOIES SCHILLER & FLEXNER LLP
Bank of America Tower, suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart Singer (admitted pro hac vice)
BOIES SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 south Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

*Attorneys for Plaintiff, The SCO Group, Inc.*

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR CLARIFICATION OF THE COURT'S AUGUST 10, 2007 ORDER**<br><br>Civil No. 2:04 CV-00139<br><br>Judge Dale A. Kimball<br>Magistrate Brooke C. Wells |

Dockets.Justia.com

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc.("SCO"), respectfully submits this Memorandum in support of SCO's Motion for Reconsideration or Clarification of the Court's Order dated August 10, 2007 (the "Order").

**ARGUMENT**

Although SCO respectfully disagrees with a number of the factual and legal findings in the Order, considering the approaching trial date, SCO confines this Motion to a single issue that bears on the issue of SVRX Royalties due Novell. That issue is the Court's determination (at 95) that while the Asset Purchase Agreement ("APA"), as amended by Amendment No. 1, allowed SCO to enter into new or amended licenses of SVRX "incidentally involved through its rights to sell and license UnixWare Software," such incidental licensing of SVRX components constituted an "SVRX License" on which royalties were due to Novell.

On reconsideration, relief is appropriate "where the court has misapprehended the facts, a party's position, or the controlling law." Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).

Reconsideration of this issue is appropriate because the parties' arguments and memoranda regarding SVRX Royalties centered on whether SVRX Licenses were limited to existing licenses at the time of the APA and licenses of binary code. SCO also argued that any license to SVRX products included in the Sun and Microsoft Agreements was incidental to the core UnixWare License, and that SCO was therefore entitled to the payments from those Agreements as UnixWare Royalties. (SCO Memorandum in Opposition Opp. to Novell's Motion for Partial Summary Judgment or Preliminary Injunction and in Support of SCO's Cross-Motion for Summary Judgment or Partial Summary Judgment at 40-41.) In response, Novell

principally argued that "SVRX is central, and not incidental, to the Sun and Microsoft Agreements," and that Novell was therefore entitled to the payments from those Agreements as SVRX Royalties. (Novell Reply to SCO's Opp. to Novell's Motion for Partial Summary Judgment or Preliminary Injunction at 7.) Although Novell asserted that it should receive the royalties even if the licensing of SVRX was incidental, that was not the central argument. SCO nonetheless presented evidence not only that the Sun and Microsoft Agreements' licensing of SVRX was only incidental to a UnixWare license, but also that the APA should not be construed as making such incidental licenses of SVRX subject to a separate royalty to Novell, apart from whatever royalty Novell was entitled to pursuant to the UnixWare royalty provisions.

In the discussion below, SCO points to that evidence and argument. At a minimum, a triable issue exists as to whether SVRX licensing incidental to a UnixWare license constitutes a separate "SVRX License" as to which Novell is entitled to royalties. SCO further suggests that, at a minimum, it would be appropriate for the issue of whether the Microsoft and Sun Agreements license SVRX in only an incidental manner be submitted to the jury so that if SCO's position were determined to be correct, no retrial of that issue would be required.

Insofar as SCO has misapprehended the Court's ruling on this issue, this Motion should be treated as a request for clarification.

## I. SCO IS ENTITLED TO ROYALTIES FROM UNIXWARE LICENSES THAT LICENSE SVRX INCIDENTALLY.

The plain language of the APA and the evidence in the record both support the conclusion that Novell has no interest in royalties SCO receives under UnixWare Licenses, even when an incidental license to SVRX products is included therein.

A. The Plain Reading of the APA Grants SCO the Royalties from UnixWare Licenses that License SVRX Incidentally.

In its Order, the Court (at 93) recognizes that the APA "makes a clear distinction between royalties from SVRX Licenses and UnixWare licenses." The APA further recognizes that SCO can include in a UnixWare License an "incidental" license of SVRX, where SVRX was routinely listed in a UnixWare License's list of licensed prior products.[1] (APA Section 4.16(b); Amend. No. 1 ¶ J.) The Court (at 93) found that the provision of "Section 4.16(b) regarding the incidental licensing of SVRX technology with UnixWare" was particularly relevant to Novell's claim for royalties from the Sun and Microsoft Agreements.

Section 4.16(b) of the APA, as amended by amendment No. 1, ¶ J, provides that SCO "shall have the right to enter into amendments of the SVRX Licenses (i) as may be incidentally involved through its rights to sell and license UnixWare software." That provision, as amended, also allows SCO to enter into "new SVRX Licenses" in the same situation. That provision does not indicate that the inclusion of such an incidental license to SVRX in a UnixWare License alters that license's status as a UnixWare License or changes the royalty rights of either party. Nowhere in the APA is there any statement that a license of SVRX incidental to a UnixWare License triggers not only whatever royalty obligation exists as a UnixWare License, but also a royalty as an SVRX License.[2]

The APA, as amended, is therefore at least "reasonably susceptible" to the interpretation

[1] In fact, UnixWare is not a separate system, but rather is just the latest version of SVRX; much of the code in UnixWare previously appeared in previous SVRX releases or is based on code from previous SVRX releases.

[2] The issue is not resolved by the use of the capitalized term "SVRX License" in Amendment No. 1, as it would make sense for the agreement to use that as the identified term to designate that products may be incidentally licensed whether or not a separate royalty on such incidental licensing as intended.

that the only royalty due from a UnixWare license that incidentally licensed SVRX is enumerated in Section 1.2(b) and Schedule 1.2(b), which govern the parties' royalty rights and obligations under UnixWare Licenses. Those provisions state that "no royalties shall be payable in connection with any of the UW [UnixWare] Products" unless certain specified conditions are satisfied; Novell does not dispute that it has not satisfied those conditions.

B. The APA's Failure to Specify Any Method for Calculating an Incidental SVRX Royalty Right Demonstrates That Novell Never Received Such a Right.

The absence of any provision delineating a different royalty provision for UnixWare Licenses that license SVRX incidentally demonstrates the parties' intent to have those licenses treated like all UnixWare Licenses under the terms of Schedule 1.2(b). The APA is silent on what amount of a royalty would be paid to Novell if the only licensing of SVRX is incidental to a UnixWare License. If the APA had intended to subject that incidental piece to SVRX Royalty obligations, it would have explained how such an additional royalty was to be calculated. Being incidental to a UnixWare license, the SVRX component of such a license would not have a separate price. The absence of such a mechanism for calculating a royalty amount is proof that no separate royalty on the SVRX aspect of a UnixWare License was contemplated.[3]

To the extent that the Court finds that the APA is ambiguous regarding the treatment of UnixWare Licenses that include incidental licenses to SVRX products, the only permissible

[3] Cf. In re Mason, 46 B.R. 119, 121-22 (Bankr. Mich. 1985) (declining to develop an apportionment formula when the parties failed to expressly delineate a formula in the underlying contract, and denying creditor's claim for purchase-money security interest in debtor's stereo because "a regard for workable guidelines in transactions of this sort suggests that in the absence of a clear contractual or statutory basis for determining the extent of a creditor's remaining purchase-money interest, the entire transaction should be declared to be nonpurchase-money").

inferences on summary judgment must be made in SCO's favor.[4]

C. The Extrinsic Evidence Confirms That Novell Is Not Entitled to Royalties from UnixWare Licenses That License SVRX Incidentally.

The record also contains evidence that the parties' intent and course of performance was to treat UnixWare Licenses that licensed SVRX incidentally as subject only to the contingent interest Novell retained in UnixWare Royalties, which expired in 2002.

First, the record demonstrates that UnixWare Licenses routinely included incidental licenses to SVRX, and the SVRX components of UnixWare were listed in a manner similar to what was done in the Sun and Microsoft agreements. Before selling the UNIX and UnixWare business to SCO in 1995, for example, Novell itself included incidental licenses to SVRX in its own UnixWare Licenses. (SCO Reply (1/31/07) at 6.) Similarly, Santa Cruz included incidental licenses to SVRX in UnixWare Licenses that it entered into after it acquired the UNIX and UnixWare business from Novell in 1995. (Id.)

The evidence shows that, despite that standard practice, Novell has never sought SVRX royalties from any UnixWare Licenses that licensed SVRX incidentally until this litigation. The evidence in the record also demonstrates that Novell was aware of many such licenses through audits of SCO's royalty reports. (SCO Opp. Mem. (12/12/06) ¶ 60.) Moreover, during several of these years, in which SCO publicly filed financial statements, Novell was a significant shareholder of SCO and held a board seat where it was privy to all aspects of SCO's business. Novell nevertheless failed to proffer any evidence that it had requested (or was entitled to request) SVRX royalties from UnixWare Licenses that Santa Cruz or SCO entered into since the

[4] See, e.g., Williams v. Tim Dahle Imports, Inc., No. 2:03CV46 DAK, 2007 WL 752170, at *1 (D. Utah Mar. 7, 2007) (Ex. A) (all inferences drawn in favor of non-moving party); McReynolds v. Wynn, No. 2:05CV122 DAK, 2006 WL 456256, at *2 (D. Utah Feb. 23, 2006) (Ex. B.) (same).

transfer of the business in 1995. Such course of performance evidence is recognized as the best evidence of the parties' intentions.[5] The Order does not address such evidence.

Second, the uncontroverted testimony demonstrates that the parties always treated revenues from UnixWare Licenses that included incidental licenses to SVRX as UnixWare revenues under Schedule 1.2(b) of the APA, not as SVRX Royalties.

Jean Acheson served as former Novell Contract Administrator, SCO Revenue Manager, and currently serves as SCO Director of Revenue. (Acheson Decl. (12/11/06) ¶ 2.) In those capacities, Ms. Acheson was "responsible for tracking and transmitting the royalty payments that SCO collects on behalf of Novell and that are due to Novell." (Id.) Ms. Acheson testified that "the fact that a license to current technology included an incidental license to old technology in no way entitled Novell to revenue from that license," and that accordingly, Santa Cruz and SCO "never included such revenues when transmitting royalty payments to Novell, and Novell never requested them, until 2003." (Id. ¶ 12.)

John Maciaszek has been involved in the UNIX business for almost two decades. (Maciaszek Decl. (12/11/06) ¶ 2.) He testified that Novell's interest in UnixWare Licenses that included an incidental license for prior SVRX products was always treated under the UnixWare Royalty provisions of Schedule 1.2(b), and that interest "expired in 2002." (Id. ¶ 27.)

Bill Broderick has also been involved in the UNIX business for almost two decades, working for USL, Novell, Santa Cruz, and SCO. (Broderick Decl. (12/11/06) ¶ 2.) He similarly testified that Novell's interest in UnixWare Licenses that included an incidental license for prior

[5] See, e.g., Universal Sales Corp., Ltd. v. Cal. Press Mfg. Co., 128 P.2d 665, 672 (Cal. 1942) (stating that "a practical construction placed by the parties upon the instrument is the best evidence of their intention."); accord Hernandez v. Badger Constr. Equip. Co., 28 Cal. App. 4th 1791, 1814-15 (1994).

SVRX products was the UnixWare royalty interest that "expired in 2002" under Schedule 1.2(b). (Id. ¶ 31.) This evidence is accepted as true on summary judgment.

**CONCLUSION**

SCO respectfully submits, for the reasons set forth above, that the Court should reconsider and clarify that if the jury finds that if SCO has licensed SVRX technology as incidental to a UnixWare license, that there is no separate royalty payable, or at a minimum, should leave this issue open for trial.

DATED this 31st day of August, 2007.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
David Boies
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

DORSEY & WHITNEY LLP
Devan V. Padmanabhan

*Counsel for The SCO Group, Inc.*

By: ___/s/ Edward Normand___________

**CERTIFICATE OF SERVICE**

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of **SCO'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR CLARIFICATION OF THE COURT'S AUGUST 10, 2007 ORDER** was served on this 31st day of August, 2007, via CM/ECF to the following:

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon
ANDERSON & KARRENBERG
700 Bank One Tower
50 West Broadway
Salt Lake City, UT 84101

Michael A. Jacobs
Matthew I. Kreeger
Kenneth W. Brakebill
David E. Melaugh

MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

/s/ Edward Normand