MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>NOVELL, INC., a Delaware corporation,<br><br>    Defendant and Counterclaim-Plaintiff. | **NOVELL'S OPPOSITION TO SCO'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF TERRY L. MUSIKA**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Dockets.Justia.com

## INTRODUCTION

Novell's expert witness Terry L. Musika will play at least one central role at trial. In Novell's affirmative case, Mr. Musika will provide the fact-finder with calculations of the sums to which Novell is entitled — including interest — in order to prevent SCO from being unjustly enriched by its unauthorized Microsoft, Sun, and other SCOsource agreements. Mr. Musika's 33 years of damages analysis, his work on over 200 litigation and consulting engagements, and his experience and training as a CPA since 1974 will aid the fact-finder in arriving at these figures and will provide valuable context.

In addition, although SCO has denied Novell any discovery of an apportionment model other than a "SCO 100%/Novell 0%" formulation, SCO may seek to introduce evidence at trial of some other apportionment. If the Court denies Novell's Motion *in Limine* No. 3 and permits SCO to introduce such evidence, Novell may proffer further testimony by Mr. Musika in rebuttal. SCO bears the burden of proof to allocate as between SVRX Royalties and non-SVRX Royalties and — if the Court allows SCO to present new evidence on this issue — it would only be fair to allow Novell's expert to rebut it. Mr. Musika's extensive experience in intellectual property valuation would assist the trier of fact in reaching its apportionment decision.

SCO's series of attacks on Mr. Musika's qualifications and on the content of his reports are all without merit. Mr. Musika has provided testimony in over 130 cases, and no court has ever precluded him from testifying. The fact-finder in this case would benefit from his experience as well. The Court should deny SCO's motion.

## ARGUMENT

The Tenth Circuit takes a liberal approach to the admissibility of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "Doubts about whether an expert's testimony will be useful 'should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions.'" *Robinson v. Mo. Pac.*

*R.R.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quoting J. Weinstein & M. Berger, Weinstein's

Evidence § 702[02] (1988)).  Mr. Musika's testimony easily meets the admissibility standard.

## I.    MR. MUSIKA IS QUALIFIED TO CALCULATE MONIES OWED TO NOVELL AND TO OPINE ON APPORTIONMENT.

Mr. Musika is qualified to render an opinion on monies owed to Novell as part of

Novell's affirmative case.  In his report, Mr. Musika tallies the sum by which SCO has been

unjustly enriched through its approximately ████ SCOsource licenses, and calculates interest based

on the periodic payments that SCO received at different times over a four year period.  (Melaugh

Opp. Decl. Ex. 7 ¶¶ 37, 44-48 (Expert Report on Damages by Terry L. Musika); *id.* Ex. 8 at

Ex. 5 (Supplemental Expert Report on Damages by Terry L. Musika).)  Although SCO's

characterization of this task as "simple arithmetic" is hyperbole, it underscores that Mr. Musika's

experience and training as a CPA qualifies him to conduct this analysis.  Mr. Musika spent 15

years as an auditor and consultant for major accounting firms, including Peat, Marwick (the

predecessor of KPMG), and Coopers & Lybrand (the predecessor of PricewaterhouseCoopers),

where he was an audit partner.  He could hardly be more qualified as an expert in this role.[1]

To the extent that Mr. Musika opines on apportionment in rebuttal, he is also qualified on

that subject matter.  Mr. Musika has testified on damages in scores of cases before federal and

state courts, and has significant experience in intellectual property valuation in particular.  For

example, Mr. Musika's C.V. sets out the following publications and presentations that he has

authored relating to intellectual property valuation: "IP Valuation," "Strategic Valuation Issues

Related to the Sale and Purchase of IP Out of Bankruptcy," "Valuation of Intellectual Property,"

---

[1] In affirming the admission of Mr. Musika's testimony in an antitrust case, the Third Circuit described his qualifications in this manner: "he holds a master's degree in public finance, is a former partner at a major accounting firm, and at the time of trial was President and CEO of a business consulting firm.  Furthermore, Musika frequently has served as a court-appointed bankruptcy trustee, as an expert for various government agencies, including the Department of Justice and Securities and Exchange Commission, and as an expert witness in complex cases, including five antitrust cases." *LePage's Inc. v. 3M*, 324 F.3d 141, 165 n.16 (3d Cir. 2003).

"Valuation of Intellectual Properties — Case Studies," and "Valuation of Intellectual Property Assets." (Melaugh Opp. Decl. Ex. 7 at Ex. 1 pp. 2-3.)  Mr. Musika has also served as a faculty member for an ALI and ABA course entitled "Trial of a Patent Case."

Further, Mr. Musika's experience includes the following intellectual property valuation efforts:

- The valuation of patent pools on behalf of banks to determine their adequacy as security for loans;

- Consultations with government contractors in structuring the form and value of the intellectual property elements of their government contracts;

- The negotiation of licenses to intellectual property including trade secrets, trademarks, and patents on behalf of licensors and licensees; and

- As a former audit partner of the international accounting firm Coopers & Lybrand, the review and signing of audit opinions in which Mr. Musika agreed to the valuation of intangibles including intellectual property.

SCO's contention that Mr. Musika is not qualified because he lacks experience in calculating "the value of technology components," (Mot. at 4), is therefore mistaken.

## II.    MR. MUSIKA'S ANALYSIS WILL ASSIST THE TRIER OF FACT.

SCO also contends that Mr. Musika's "purported opinion is nothing more than simple arithmetic," (Mot. at 1), and that all he has done is "to add up the numbers Novell counsel instructed him to add as almost any lay person would have been [able to do]," (*Id.* at 4 (parentheses omitted)).  SCO misconstrues the legal standard governing the admissibility of expert testimony and portrays Mr. Musika's expected testimony in a misleading manner.

"[T]he 'ultimate touchstone' in evaluating admissibility under Rule 702, is 'helpfulness to the trier of fact.'"  *Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004).  "Thus, expert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context."  4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 702.03[1] (2006).  "[T]he subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend."  *Phoenix Renovation*

*Corp. v. Rodriguez*, 439 F. Supp. 2d 510, 523 (E.D. Va. 2006) (citation omitted) (denying motion *in limine* where expert's "conclusions regarding the revenues stemming from the allegedly wrongful acts and [a] summation of these revenues may prove helpful to the Court").

For example, in *Total Control*, 338 F. Supp. 2d at 568-69, the court denied defendant's motion to exclude an expert report that "calculate[d], tabulate[d], and summarize[d] the unpaid commissions" that plaintiff alleged it was owed. The court emphasized that although only "basic skills of arithmetic" were involved, the expert's presentation of a large number of calculations "in an understandable format will assist the jury." *Id.* at 569. Other courts have reached similar conclusions. *See, e.g.*, *Valentino v. Proviso Twp.*, No. 01-C-557, 2003 U.S. Dist. LEXIS 11574, at *5-*7 (N.D. Ill. June 27, 2003) (CPA's report helpful where it contained "simple math calculations") (Exhibit A hereto); *Wrench LLC v. Taco Bell Corp.*, No. 1:98-CV-45, 2003 U.S. Dist. LEXIS 7608, at *26-*28 (W.D. Mich. May 2, 2003) (admitting expert testimony on lost revenues where mathematics were simple but "sifting through [defendant's] numbers [was] not an easy task . . . and it would be helpful to the jury to have this information in summary testimony") (Exhibit B hereto).

Here, the calculation that SCO deems "simple arithmetic" in actuality involves ▮ separate payments to SCO attributable to ▮ different entities during each quarter of approximately four years. (Melaugh Opp. Decl. Ex. 8 at Ex. 5.) The payments range from ▮ to ▮ (*Id.*) Each payment came at a different time, and Mr. Musika's report thus calculates a running total of the principal amount for each quarter as well as the quarterly interest on the principal. (*Id.* at Exs. 5, 9A-B.) Mr. Musika also used his accounting expertise to reconcile the SCOsource revenues SCO disclosed in its discovery responses with those reported in SCO's public S.E.C. filings. (Melaugh Opp. Decl. Ex. 7 ¶ 46.) His testimony will assist the trier of fact in making sense of complex calculations on very large numbers. Indeed, even if SCO were correct that Mr. Musika's calculations are "simple," any risk of misleading the jury by

4

admitting his testimony would be correspondingly lower. *See Total Control*, 338 F. Supp. 2d at 570.[2]

## III.   MR. MUSIKA MAKES ASSUMPTIONS THAT ARE PROPER AND THAT SCO CAN SCRUTINIZE AT TRIAL.

SCO argues that Mr. Musika's testimony should also be excluded because he "simply assumes, based on an instruction from counsel, the ultimate question the jury must resolve" — *i.e.*, the proper apportionment of SCOsource revenues. (Mot. at 4-5.) Further, SCO complains that Mr. Musika "performs no analysis of the rights granted . . . that could possibly justify [apportioning] the entirety of the [SCOsource] revenue" to Novell. (*Id.* at 1-2.) SCO again misstates the applicable legal standard and attempts to resolve by motion *in limine* what should be left for the trier of fact.

First, it is true that Mr. Musika assumes that 100% of the SCOsource revenues are SVRX Royalties, and that he calculates SCO's unjust enrichment based on this assumption. This is unremarkable. Most expert opinions — especially those relating to damages — contain certain underlying assumptions, which the fact-finder remains free to reject.

Second, SCO cannot exclude Mr. Musika simply because it believes the correct apportionment is somewhere below 100%.[3] Attacks on the validity of an expert's assumptions go to the weight of the expert's testimony rather than its admissibility. *U.S. v. Cavely*, 318 F.3d 987, 997-998 (10th Cir. 2003) ("Appellant was able to fully cross-examine the [expert] witness

---

[2] Of course, if SCO is permitted to offer evidence as to an alternative apportionment theory and Mr. Musika testifies in rebuttal, his testimony may require explication of concepts that are even further beyond the ken of typical lay jurors.

[3] To be clear, there is more than adequate factual justification for Mr. Musika's assumption. The Court has already determined that the Microsoft and Sun licenses are at least partially SVRX Licenses. (Aug. 10, 2007 Memorandum Decision and Order, Docket No. 377, at 96), and there is substantial evidence that the other SCOsource licenses are SVRX Licenses. Moreover, as noted above, it is SCO's burden to prove any offsets from a 100% SVRX allocation.

about these assumptions, however, and we agree with the district court that these questions went to the weight of the evidence and not its admissibility."); *Talmage v. Harris*, 354 F. Supp. 2d 860, 867-868 (W.D. Wis. 2005) (while questioning expert's assumptions "might have been a basis on which defendants could have brought a motion for summary judgment . . . it is not a proper basis for excluding [expert]'s testimony now"). SCO can challenge the factual validity of Mr. Musika's allocation assumption at trial, whether on cross-examination or by direct witness testimony.[4] That, and not a motion *in limine*, is the proper way for SCO to assert its challenges.

Finally, SCO's contention that Mr. Musika's report is objectionable because it embraces the ultimate jury question is beside the point. An expert is specifically authorized by the Rules of Evidence to express an opinion on an ultimate issue. Fed. R. Evid. 704 ("[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.").

## CONCLUSION

Mr. Musika is well qualified to opine on the magnitude of SCO's unjust enrichment in this matter. His testimony will assist the Court or the jury in calculating any award and, to the extent SCO feels he has made unwarranted assumptions, SCO can attack those assumptions at trial. For these reasons, SCO's Motion to Exclude Testimony of Terry L. Musika should be denied.

---

[4] In fact, SCO's lay witnesses have made their own allocation assumptions, which according to SCO would award 0% of SCOsource revenues to Novell. *See* Dec. 11, 2006 Decl. of Jean Acheson ¶ 14 (asserting Sun and Microsoft licenses are not SVRX licenses); Dec. 11, 2006 Decl. of Christopher Sontag ¶¶ 7, 23 (asserting grants of UNIX rights in Sun and Microsoft licenses are "incidental" to UnixWare rights provided in the agreements).

DATED:   August 31, 2007

ANDERSON & KARRENBERG

By: _____ /s/ Heather M. Sneddon _____

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*

**Attorneys for Defendant and
Counterclaim-Plaintiff Novell, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of August, 2007, I caused a true and correct copy of **NOVELL'S OPPOSITION TO SCO'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF TERRY L. MUSIKA** *[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]* to be served to the following:

*Via CM/ECF:*

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid:*

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_____/s/ Heather M. Sneddon_____