LEXSEE 2003 US DIST LEXIS 11574

**TINA VALENTINO, Plaintiff, v. PROVISO TOWNSHIP, ROBERT GRACE, JR, individually and as the Supervisor of Proviso Township, and JEFFREY ALLEN, ARNIE BRYANT, MARIANNE LASKI AND DONALD SLOAN, individually and in their capacities as PROVISO TOWNSHIP TRUSTEES, Defendants.**

No. 01 C 557

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2003 U.S. Dist. LEXIS 11574*

June 27, 2003, Decided
July 7, 2003, Docketed

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by *Valentino v. Proviso Twp., 2003 U.S. Dist. LEXIS 23215 (N.D. Ill., Dec. 24, 2003)*

**PRIOR HISTORY:** *Valentino v. Proviso Twp., 2003 U.S. Dist. LEXIS 10945 (N.D. Ill., June 26, 2003)*

**DISPOSITION:** [*1] Township's motion to strike and exclude Horstman's expert report and testimony was granted in part and denied in part.

**COUNSEL:** For TINA VALENTINO, plaintiff: Anthony Gael Scariano, Scariano, Himes and Petrarca, Chicago, IL.

For TINA VALENTINO, plaintiff: Alan M Mullins, Scariano, Ellch, Himes & Petrarca Chtd, Chicago, IL.

For TINA VALENTINO, plaintiff: Robert H. Ellch, Attorney at Law, Chicago, IL.

For PROVISO TOWNSHIP, defendant: James P. DeNardo, Kristin Dvorsky Tauras, McKenna, Storer, Rowe, White & Farrug, Chicago, IL.

For ROBERT GRACE, JR, JEFFREY ALLEN, ARNIE BRYANT, MARIANNE LASKI, DONALD SLOAN, defendants: Mark H. Sterk, Amy Elaina Coglianese, Odelson & Sterk, Ltd., Evergreen Park, IL.

**JUDGES:** James B. Zagel, United States District Judge.

**OPINION BY:** James B. Zagel

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This dispute arises out of the elimination of the Public Relations position in Defendant Proviso Township ("Township"). Plaintiff, Tina Valentino, held the eliminated position and claims that she was discharged in retaliation for filing a sexual harassment complaint against the Township. The Township responded that Valentino was discharged due to financial restraints and [*2] that the Public Relations position was eliminated to save money.

The Township has moved to bar the testimony and strike the report of Valentino's expert, Robert E. Horstman, an accountant and auditor of local governments. Horstman concluded that 1) the Township had adequate cash and investments and financial resources to conduct its affairs; 2) the Township's ability to borrow short term and long term, at will, has not been impaired; and 3) the Township's financial condition did not warrant the termination of not just Valentino, but of any staff. The Township claims that Horstman's testimony and report fails to meet the standard for admissibility of expert testimony under *Federal Rule of Evidence Rule 702* and *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*. The Township also claims that Horstman's report is biased because Horstman believed that he would only be paid his expert witness fee if Valentino prevailed.

Admission of Expert Testimony and Report

Under *Federal Rule Evidence 702*, social science expert testimony "must be tested to be sure that the per-

son possesses genuine expertise in a field and **[*3]** that her court testimony 'adheres to the same standards of intellectual rigor that are demanded in [her] professional work.'" *Tyus v. Urban Search Mgmt., 102 F.3d 256, 263 (7th Cir. 1996)* (citations omitted). The expert opinion must be more than simply a "subjective belief or unsupported speculation." *Daubert, 509 U.S. at 590*. The focus, however, "must be solely on principles and methodology, not on the conclusions that they generate." *Id. at 595*. First, I must determine whether Horstman's report and testimony is reliable. *Cummins v. Lyle Industries, 93 F.3d 362, 367 (7th Cir. 1996)*. Second, I must decide "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Id. at 368* (citations omitted).

The Township claims Horstman's report and testimony do not meet the *Daubert* standards because Horstman used no accounting theory or technique, his conclusions are not based on his expertise, and his conclusions will not assist the trier of fact.

*First Expert Conclusion*

Horstman based his *first* conclusion, that the township had **[*4]** adequate cash and investments and financial resources to conduct its affairs, on (1) his experience as an auditor of local governments for 25 years; (2) on a cash to expenditure ratio analysis; and (3) on a review of the consistency and quality of the Township's revenue stream. The cash to expenditure ratio is simply the ratio of cash on hand to expenditures. The review of the consistency and quality of the revenue stream analysis evaluates the Township's revenue stream, such as real estate taxes, to determine if it is consistent and if the Township can rely on this revenue to meet its expenditures.

Horstman's report contains no mention of any outside sources. However, Horstman's affidavit explained he did not need to consult any accounting books or publications when preparing the report because the two techniques he used were elementary accounting techniques that he had used often over the past 25 years and thus, he did not need to refer to any accounting publications. Horstman also claims familiarity with *What you Should Know About Your Local Government's Finances. A Guide to Financial Statements*, published by the Governmental Accounting Standards Board, and which discusses **[*5]** cash ratio analyses. Valentino argues that the Township has not presented any evidence that these principles are *not* generally accepted; however, the party seeking to admit the evidence bears the burden to establish its admissibility. *In re Bridgestone/Firestone, Inc.*, 2002 U.S. Dist. LEXIS 24954, 2002 WL 31907241, at *2 (S.D. Ind. Dec. 19, 2002) (citing *Daubert, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*; *Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999))*.

Valentino claims that Horstman's conclusions are easily verifiable as Horstman only condensed the information that was already in the Township's own audit reports and then performed simple math calculations to reach his conclusions. The math calculations themselves are accounting, not science. *Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000)* (holding that an accountant's calculation of the discounted present value of lost future earnings, based on financial information and assumptions given by counsel, was accounting, not science, and was a calculation within the competence of a CPA). However, **[*6]** it is the methods which need to be reliable. *Daubert, 509 U.S. at 595*. Horstman stated he has used the cash to expenditure ratio and the consistency of revenue stream techniques for the past 25 years when working for local governments, thus his methods "adhere to the same standards of intellectual rigor that are demanded in [his] professional work." *Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 318 (7th Cir. 1996)*. Taking data from an audit, identifying the revenue sources, and calculating the cash to expenditure ratio appears to be a reliable method to determine if an organization can meet its expenses.

Horstman's report and testimony regarding the financial condition of the Township will also assist the trier of fact in understanding the evidence and determining a fact at issue. The Township claims that Valentino's position was eliminated due to financial restraints; Valentino alleges she was terminated in retaliation for filing a sexual harassment claim. Thus, the financial condition of the Township is a fact at issue. As a CPA and auditor of local governments, Horstman's calculations, analysis, and conclusion that the Township had adequate cash and **[*7]** investments and financial resources to conduct its affairs will assist the trier of fact. Therefore, Horstman's first conclusion meets the *Daubert* standards.

*Second Expert Conclusion*

In coming to Horstman's *second* conclusion that the Township's ability to borrow short-term and long term, at will, has not been impaired, Horstman analyzed the borrowing history of the Township. Horstman's report included a timeline of the loan activity of the Township including when each loan was borrowed and paid off and the loan balance over time. From the loan activity, Horstman concluded the Township could still borrow using assets and collections on real estate taxes as collateral. Horstman stated he thought this analysis was widespread knowledge; however, neither Valentino's response to the motion nor Horstman's subsequent affidavit makes mention of anything to support his assertion that this borrowing history analysis is widespread knowledge or a

reliable method to determine the borrowing ability of a Township. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse* [*8] *dixit* of the expert." *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) (quoting *GE v. Joiner*, 522 U.S. 136, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997)). Because Valentino has not met the burden required by *Daubert* to prove the analysis is reliable, Horstman's second conclusion is stricken.

*Third Expert Conclusion*

Valentino claims Horstman's *third* conclusion, that the Township's financial condition did not warrant the termination of any staff, is within his field of expertise. Valentino relies on the fact that Horstman has advised local governments for 25 years on whether or not their finances allow them to support all of their employment positions by using general accounting techniques. Horstman's experience alone is not necessarily enough; I must determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen, 78 F.3d at 318*. Horstman stated his third conclusion "hinges on those other two opinions." Because his third conclusion is at least partly based on his second conclusion that I found unreliable above, [*9] the third conclusion is also unreliable and therefore stricken.

*Allegation of Bias*

The Township claims that Horstman's report is biased because Horstman believed that the method of payment for his services was, in effect, a contingent fee. The Township relies upon *First National Bank of Springfield v. Malpractice Research, Inc.*, where the Illinois Supreme Court held that a contingent fee contract with an expert witness finder was void against public policy. *179 Ill. 2d 353, 688 N.E.2d 1179, 1182-83, 228 Ill. Dec. 202 (Ill. 1997)*. However, *Malpractice Research* only "involved the invalidation of a contract as against public policy, not the disqualification of a witness for bias . . . ." *People v. McNeill, 316 Ill. App. 3d 304, 736 N.E.2d 703, 705, 249 Ill. Dec. 509 (Ill. App. Ct. 2000)*.

The Township also relies on Rule 3.3(a)(15) of the Rules of Professional Conduct which states that while a lawyer may pay a reasonable fee for an expert witness, "a lawyer shall not . . . pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness' testimony or the outcome of the case . . . ." [*10] IL CS S Ct Rules of Prof. Conduct, RPC Rule 3.3(a)(15). However, the Seventh Circuit held that the "rule against employing expert witnesses on a contingent-fee basis . . . . is a rule of professional conduct rather than of admissibility of evidence . . . . [and] it does not follow that evidence obtained in violation of the rule is inadmissible." *Tagatz v. Marquette Univ., 861 F.2d 1040, 1042 (7th Cir. 1988)*. While the Rules of Professional Conduct have been promulgated by the Northern District of Illinois, a local rule may not require the exclusion of evidence. *United States v. Condon, 170 F.3d 687, 690 (7th Cir. 1999)*. Thus, the issue of Horstman's compensation and his beliefs about his compensation only affect Horstman's credibility as a witness, not the admissibility of his report and testimony.

The Township also argues that Horstman's report is biased because Valentino's attorneys wrote a letter with comments regarding Horstman's report. After responding to the comments, Horstman "changed or clarified" his report. The Township does not identify how the letter or Horstman's responses biased his report. A review of the letter shows that the attorneys' comments and questions only asked [*11] for clarification. The comments included such things as suggesting the identification of the dates of the Township's fiscal year and asking what caused the Township's $ 467,517 increase in expenditures. Nothing in the letter or Horstman's response suggests any bias.

The Township's motion to strike and exclude Horstman's expert report and testimony is GRANTED in part and DENIED in part. [1] The report and testimony referring to Horstman's *first* conclusion, that the township had adequate cash and investments and financial resources to conduct its affairs, is allowed. Any portion of the report or testimony referring to Horstman's *second* conclusion, that the Township's ability to borrow short-term and long term, at will, has not been impaired, or *third* conclusion, that the Township's financial condition did not warrant the termination of any staff, is barred.

> 1   This ruling hinges on the assumption that the Township's defense is based on its *financial inability* to spend money (*i.e.*, that it had inadequate funding at the time Valentino's position was eliminated) and not based on the Township's *unwillingness* to spend money (*i.e.*, that the Township changed its policies to build a rainy-day fund or to reduce taxes).

[*12] ENTERED:

James B. Zagel

United States District Judge

DATE: 27 June 2003