MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>      Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>NOVELL, INC., a Delaware corporation,<br><br>      Defendant and Counterclaim-Plaintiff. | **NOVELL'S OPPOSITION TO SCO'S MOTION *IN LIMINE* REGARDING APPORTIONMENT OF MICROSOFT AND SUN SCOSOURCE LICENSES**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

Dockets.Justia.com

## INTRODUCTION

SCO's "motion *in limine*," by which it hopes the Court will carve out, as a matter of law, portions of the Sun and Microsoft SCOsource licenses, is in fact a motion for summary judgment. Even had SCO properly brought this motion months ago, before the deadline for summary judgment motions, it would still not succeed. As Novell's fiduciary, it is *SCO's* burden to demonstrate that particular portions of the Sun and Microsoft SCOsource payments are not, in fact, SVRX Royalties. SCO has not come close to meeting such a burden in this motion, relying instead on blanket and unsupported assertions that particular parts of these licenses convey no SVRX rights when, under even cursory examination, it is apparent that the licenses do convey such rights.

## ARGUMENT

### I.    A MOTION *IN LIMINE* IS NOT A VEHICLE TO RESOLVE FACTUAL DISPUTES AS TO KEY ISSUES FOR TRIAL.

SCO seeks to carve out portions of the Sun and Microsoft SCOsource licenses and obtain rulings that, as a matter of law, such portions do not "relate to" the SVRX products listed in the APA. Such a "motion *in limine*" is in fact a motion for summary judgment.

The motion *in limine* process is not an appropriate vehicle by which to bring a tardy motion for summary judgment. "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (holding trial court erred in entering summary judgment for defendant based on motions *in limine* to preclude plaintiff's evidence).

Both Federal and state courts have consistently held attempts to use motions *in limine* as ersatz summary judgment motions to be improper.[1]  In *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246 (E.D. Mich. 1997), which concerned whether a dentist's disability benefits policy was void, cross-motions for summary judgment left only a few key issues to be litigated at trial.  In a motion *in limine*, the dentist sought to preclude the insurer from raising two additional defenses.  The court denied Dr. Adie's motion for the following reason:

> At this time, there is a factual question as to whether Provident had knowledge of these two defenses at the time it denied Dr. Adie benefits.  *Dr. Adie's motion in limine is not the appropriate vehicle for resolving such a factual question.*  Motions in limine typically involve matters which ought to be excluded from the jury's consideration due to some possibility of prejudice or as a result of previous rulings by the court.  *Surely, it cannot be disputed that it would be inappropriate to grant Dr. Adie's motion to exclude Provident from raising these two defenses at trial solely upon Dr. Adie's naked assertions in his brief* that Provident must have known of these two defenses since it had Dr. Adie's medical records at the time it denied him benefits. . . .  If Dr. Adie wanted to preclude Provident from raising these defenses at trial because there was no genuine issue of material fact as to them, then he should not have filed a motion in limine on the eve of trial, but should instead have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56.

*Id.* at 250 (italics added).

---

[1] *See, e.g., Borges v. Our Lady Of the Sea Corp.*, 935 F.2d 436, 441 (1st Cir. 1991) (trial court "acted well within its discretion" in refusing to grant motion *in limine* "that turned on evidence to be adduced at trial"); *Brobst v. Columbus Servs. Int'l.*, 761 F.2d 148, 154 (3d Cir. 1985) (trial court erred by, "in effect . . . convert[ing] the *in limine* motion into one for summary judgment, but without the procedural protections of notice which the federal rules require before judgment on the merits may be granted."); *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 871 (E.D. Mich. 2007) (denying motion *in limine* to exclude evidence concerning damages as untimely because issues should have been raised in motion for summary judgment); *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 500 (Del. 2001) (trial court properly denied motion *in limine* as untimely because it was in effect a summary judgment motion for "a determination by the court concerning . . . [an] aspect of a case made prior to trial that *obviates the need for trial of the matter*") (italics in original); *Dailey v. Multicon Dev., Inc.*, 417 So. 2d 1106, 1107-08 (Fla. Dist. Ct. App. 1982) (trial court erred in granting motion *in limine* where defendant, "by way of its motion *in limine*, attempted to summarily dismiss a portion of appellant's case . . . but without the notice provisions and other requirements" of a motion for summary judgment).

Similarly, here, it is improper to rely on SCO's "naked assertions" about the correct apportionment of Sun and Microsoft royalties to Novell when that is a key issue to be litigated at trial. If SCO believed the parsing of SVRX and non-SVRX revenue under the Sun and Microsoft agreements was so cut-and-dried as to be beyond dispute, it should have argued as much in a motion for summary judgment.

## II. THE MICROSOFT AND SUN SCOSOURCE LICENSES CONVEY SVRX RIGHTS, AND SCO BEARS THE BURDEN TO APPORTION EACH LICENSE'S REVENUE, WITH ANY DOUBTS DECIDED AGAINST SCO.

Even were it appropriate to consider this dispute by motion *in limine*, SCO has not come close to shouldering the burden it bears. As Novell's fiduciary, it is SCO's obligation to prove that any payments it seeks to retain from the Microsoft and Sun SCOsource licenses *do not* relate to the SVRX products listed in the APA. As to each element of those licenses SCO seeks to carve out by this motion, there are legitimate factual disputes as to whether the element relates to SVRX products.

### A. Any Doubt as to Novell's Entitlement to Particular Payments Must Be Resolved in Novell's Favor.

It has now been decided, as a matter of law, that SCO took for itself money that SCO had a fiduciary duty to hold in trust for Novell. (August 10, 2007 Memorandum Decision and Order, Docket No. 377, at 97 ("SCO's conduct also amounts to a breach of fiduciary duty, conversion, unjust enrichment, and breach of express contract").) That SCO may have commingled Novell's money with other funds to which Novell has no entitlement is *not Novell's fault*. Novell is not the author of the Sun and Microsoft SCOsource licenses that are the subject of this *in limine* motion, and if it is difficult to separate out what is SCO's from what is Novell's in those licenses, that is SCO's fault *alone*.[2] The law is clear that, as Novell's fiduciary, SCO bears the burden of

---

[2] Indeed, the purpose of the Section 4.16 approval requirement was to avoid this very problem, guaranteeing Novell the right to review licenses to ensure that revenue was apportioned properly.

sorting this out, and that SCO must accept that any doubts as to entitlement to a particular subset of payments are decided against SCO.

For example, *Rosenfeld, Meyer & Susman v. Cohen*, 191 Cal. App. 3d 1035 (1987), involved the dissolution of a law firm. The court held that, in breach of their fiduciary duties, one set of partners (the "RMS" partners) withheld partnership revenue from a second set (the "C&R" partners).[3] Separation of the monies involved was complicated by the fact that some revenue stemmed from post-dissolution work (to which, like SCO, only the RMS partners were entitled) and pre-dissolution work (to which, like Novell, the C&R partners were entitled). Given the fiduciary relationships involved, the trial court placed the burden of apportionment on the RMS partners, with doubts decided against them. The appellate court affirmed:

> The position of RMS was not unlike that of other trustees who fail to keep proper records of the dates and amounts of receipts and expenses; such fiduciaries have the burden of establishing that data and, upon their failure to do so, a computation may be made on the basis of gross receipts, even though that approach is unfavorable to them.
>
> . . .
>
> Surely, where a fiduciary has a legal duty to allocate receipts between those in which its beneficiary has some interest and those in which the beneficiary has none, and is fully and singularly capable of making that allocation but fails to do so, a court is justified in calling upon the fiduciary to bear the burden of differentiation at trial . . . .
>
> Except for a few accounts, for which RMS did prove that percentage fee receipts were the product of post dissolution work, RMS failed to bear its burden at trial. As a result, the trial court correctly used the balance of the percentage fee income as the base for allocating the partners' shares.

---

[3] Even the procedural posture of the *Rosenfeld* case is the same as that here. The RMS partners began as plaintiffs but lost, finding themselves, like SCO, defendants against the C&R partners' counterclaims. *Id.* at 1043-44.

*Id.* at 1051-52; *see also Leigh v. Engle*, 727 F.2d 113, 138-39 (7th Cir. 1984) ("the burden is on the defendants who are found to have breached their fiduciary duties to show which profits are attributable to their own investments apart from their control of the Reliable Trust assets . . . . [W]hile the district court may be able to make only a rough approximation, it should resolve doubts in favor of the plaintiffs"); *Kennard v. Glick*, 183 Cal. App. 2d 246, 250-51 (1960) ("An agent who fails to keep an account raises thereby a suspicion of infidelity or neglect, creates a presumption against himself, and brings upon himself the burden of accounting to the utmost for all that has come into his hands; and in such case every doubt will be resolved against the agent, and in favor of the principal . . . .").

**B.    Each Section of the Microsoft License Conveys SVRX Rights.**

REDACTED

---

[4] SCO has repeatedly acknowledged that the Microsoft license is part of that SCOsource campaign. (Declaration of David Melaugh in Support of Novell's Motions In Limine Nos. 1-3, filed August 24, 2007 (Docket No. 398), Ex. 3 (SCO June 14, 2004 10-Q ) at NOV 45970 (describing Sun and Microsoft licenses as part of SCOsource program).)

REDACTED

C.      The Sun License Conveys SVRX Rights.

REDACTED



REDACTED

Darl McBride, SCO's CEO, confirmed that SCO believes the license conveyed the right to Sun to open source Solaris. (Melaugh Opp. Decl. Ex. 4 at SCO1761056; *see also id.* Ex. 5 ("Among Sun's privileges is the right to show Solaris's underlying source code to customers, SCO said.")) Sun's CEO, Scott McNealy, describes the license in the same way:

> There were hundreds of encumbrances to open sourcing Solaris. Some of them we had to buy out, others we had to eliminate. We had to pay SCO more money so we could open the code — I couldn't say anything about that at the time, but now I can tell you that we paid them that license fee to expand our rights to the code," McNealy said, referring to the February 2003 expanded Unix SVR4 license rights purchase from the SCO Group.

(*Id.* Ex. 5.)

Sun went on to open source significant portions of the SVRX code in Solaris under the product name "OpenSolaris," and OpenSolaris now contain a substantial body of code that is explicitly copied from Novell's SVRX code.

## 2. The Remaining Sections Each "Relate To" SVRX Rights.

REDACTED

The factfinder should therefore be permitted to evaluate each of these license rights when considering what portion of the Sun SCOsource license revenue to apportion to Novell.

## 3. SCO Presents No Reason Why Novell is Not Entitled to "the Full Value of the Sun Agreement."

Even if the Court were to conclude that portions of the Sun SCOsource license do not "relate to" SVRX rights, SCO attaches no value to any of those particular portions. SCO presents nothing to distinguish these clauses from, for example, the license's integration or choice of law clauses. SCO has therefore articulated no possible basis upon which the Court

REDACTED

might preclude Novell "from suggesting that . . . it is entitled to the full value of the Sun

Agreement." (Mot. at ¶ 12.)

## III.   SCO SHOULD BE PRECLUDED FROM MAKING PRECISELY THE SORT OF ARGUMENT IT DOES IN THIS MOTION *IN LIMINE*.

As discussed in Novell's Motion *In Limine* No. 3 to Preclude SCO From Introducing

New Evidence or Argument Regarding Apportionment of SCOsource Revenue (Docket No.

395), Novell has demanded that SCO apportion the Sun and Microsoft SCOsource revenue in

audits, letters, and explicit interrogatory requests.  At every turn, SCO has met Novell with

stonewalling, breaches of fiduciary duties, and violations of the Federal discovery rules.  SCO

should not be rewarded now for this behavior by, of all things, the exclusion of evidence and

argument *from Novell*.  Rather, as argued in Novell's third motion *in limine*, it is SCO that

should be precluded from advancing undisclosed arguments such as those that ground this

motion *in limine*.

### CONCLUSION

For the reasons stated above, Novell requests that the Court deny SCO's Motion *In*

*Limine* Regarding Apportionment of 2003 Microsoft and Sun Agreements.

DATED:       August 31, 2007

ANDERSON & KARRENBERG

By:  _____ /s/ Heather M. Sneddon _____

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*

**Attorneys for Defendant and
Counterclaim-Plaintiff Novell, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of August, 2007, I caused a true and correct

copy of **NOVELL'S OPPOSITION TO SCO'S MOTION *IN LIMINE* REGARDING**

**APPORTIONMENT OF MICROSOFT AND SUN SCOSOURCE LICENSES**

*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]* to be served to the

following:

    *Via CM/ECF:*

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55401

    *Via U.S. Mail, postage prepaid:*

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

                                         */s/ Heather M. Sneddon*