LEXSEE 2001 US DIST LEXIS 10803

**PAGE MILL ASSET MANAGEMENT, Plaintiff, -against- CREDIT SUISSE FIRST BOSTON CORPORATION, COLLATERALIZED MORTGAGE SECURITIES TRUST II, as successor to COLLATERALIZED MORTGAGE SECURITIES CORP., and STATE STREET BANK AND TRUST COMPANY, Defendants.**

98 Civ. 6907 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2001 U.S. Dist. LEXIS 10803*

July 27, 2001, Decided
July 30, 2001, Filed

**DISPOSITION:** [*1] Page Mill's motion for summary judgment as to liability denied. State Street's cross-motion denied. State Street's motion for summary judgment as to punitive damages granted. Motion to strike Page Mill's jury demand denied.

**COUNSEL:** For Plaintiff: CHARLES R. JACOB III, ESQ., Miller & Wrubel, New York, NY.

For Credit Suisse First Boston Corporation, and Collateralized Mortgage Securities Trust II, as successor to Collateralized Mortgage Securities Corporation, Defendant: FREDERICK P. SCHAFFER, ESQ., Schulte Roth & Zabel, New York, NY.

For State Street Bank and Trust Company, Defendant: JAMES GADSDEN, ESQ., JAMES W. RAYHILL, ESQ., Carter, Ledyard & Milburn, New York, NY.

For State Street Bank and Trust Company, Defendant: DEBORAH S. GRIFFIN, ESQ., Peabody & Arnold, Boston, MA.

**JUDGES:** Michael B. Mukasey, U.S. District Judge.

**OPINION BY:** Michael B. Mukasey

**OPINION**

OPINION AND ORDER

MICHAEL B. MUKASEY, U.S.D.J.

In this diversity action, Page Mill Asset Management, the owner of bonds issued by Collateralized Mortgage Securities Corporation ("CMSC"), sued CMSC's successor, Collateralized Mortgage Securities Trust II ("CMST"), for breach of the indenture. Page Mill also sued CMST's affiliate, [*2] Credit Suisse First Boston ("CS First Boston"), for unjust enrichment, tortious interference with contract, and breach of fiduciary duty. Page Mill also sued the indenture trustee, State Street Bank and Trust Company ("State Street"), for breach of fiduciary duty. As to all its claims Page Mill sought both compensatory and punitive damages.

Pursuant to *Fed. R. Civ. P. 56*, Page Mill moved for summary judgment against CMST. CMSC, CMST, and CS First Boston (collectively, "the CS Defendants") cross-moved for summary judgment. In a previous opinion, I dismissed all of Page Mill's claims against the CS Defendants, except its claim for liability for breach of the indenture. As to that claim, I held that CMST breached the indenture by soliciting bids rather than quotes to value the collateral. *See Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., 2000 U.S. Dist. LEXIS 3941, 2000 WL 335557*, No. 98 Civ. 6907 (S.D.N.Y. Jun. 30 2000) ("Page Mill I").

State Street had also moved for summary judgment dismissing Page Mill's claim for breach of fiduciary duty. In a second opinion, I denied State Street's motion. *See Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., 2000 U.S. Dist. LEXIS 9077, 2000 WL 877004*, [*3] Nos. 84152, 98 Civ. 6907 (S.D.N.Y. Jun. 30, 2000). Now, Page Mill moves for summary judgment in its favor on that claim, and State Street cross-moves. For the reasons stated below, both motions are denied. However, State Street's motion for summary judgment dismissing Page Mill's punitive damages claim is granted. Finally, State Street moves to Strike Page Mill's jury demand as

Case 2:04-cv-00139-DAK-BCW   Document 438-2   Filed 09/04/2007   Page 2 of 4

Page 2
2001 U.S. Dist. LEXIS 10803, *

to its breach of fiduciary duty claim. That motion is denied.

I.

In Page Mill I, I held that CMST breached the indenture by soliciting bids rather than quotes because "there is a fundamental difference between bids and quotes . . . ." I concluded that a bid is an offer to buy, and a quote is a description of market price. I further explained that if CMST were "required only to solicit offers from two market makers, it would have been free to take the collateral for less than its optimum price, provided only that the issuer could identify market makers who would not be high bidders for the collateral." In contrast, if CMST were "required to solicit a price from market makers, it would have had to take the collateral for the market makers' highest estimate as to the collateral's price." *See Page Mill I*, 2000 WL 335557, **[*4]** at *7. Page Mill argues that when State Street allowed CMST to use bids rather than quotes, it also breached the indenture, and thus, its fiduciary duty. (8/29/00, Pl. Mem. at pp. 4-6)

State Street responds by offering evidence that the word "quote" as used in the indenture is synonymous with the word "bid." Page Mill argues that I should disregard this new evidence because I have already decided that bids are fundamentally different from quotes, and that under the law of the case doctrine, the court should not reconsider its prior rulings unless, *inter alia*, new evidence becomes available. Page Mill argues that State Street's new evidence is not newly available, and therefore, I should disregard it. (10/6/00, Pl. Mem. at pp. 7-9) However, the law of the case doctrine is not absolute:

> The decision whether or not to apply law-of-the-case is . . . informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine. 'Prejudice' in this context 'does not mean harm resulting from the failure to adhere to the prior decision,' but instead 'refers to the lack of' . . . sufficient 'opportunity to prepare **[*5]** armed with the knowledge that' the prior ruling is not deemed controlling.

*Prisco v. A & D Carting Corp., 168 F.3d 593, 607 (2d Cir. 1999)* (quoting *United States v. Uccio, 940 F.2d 753, 757-58 (2d Cir. 1991)*) Here, I will consider State Street's new evidence. As I will explain, Page Mill will get the opportunity to respond by conducting further discovery and submitting evidence.

Page Mill argues also that State Street should be estopped to introduce new evidence because at a conference prior to the previous opinions, I asked counsel whether any of the parties would offer further evidence relating to the meaning of bids and quotes, and they all said no. Page Mill explains that it relied on State Street's representation in not offering additional evidence on that issue, and that I relied on State Street's representation in deciding the motions treated in the two prior opinions. (10/6/00, Pl. Mem. at pp. 10-12) However, to establish an estoppel, Page Mill must show that it relied to its detriment on State Street's representation. *See e.g. Meyerson v. Werner, 683 F.2d 723, 728 (2d Cir. 1982)*. Regardless of whether Page Mill relied **[*6]** on State Street's representation in choosing not to conduct additional discovery and submit additional evidence either prior to the previous opinions or in preparation for this motion, I will ensure that Page Mill does not suffer any detriment from that reliance because Page Mill will get the opportunity to respond to State Street's new evidence.

The first new item of evidence is the American Heritage Dictionary's definition of "quote" as a "quotation," which is defined as "4a. the quoting of current prices and bids for securities and goods. b. The prices or bids cited." Am. Heritage Dictionary 1439 (4th ed. 2000). Webster's Third New International Dictionary also defines quotation as referring either to bids or prices. *See* Webster's Third New Int'l Dictionary 1868 (1993) ("the naming . . . of current bids and offers of current prices of securities . . . ."). In contrast, the Oxford English Dictionary and Black's Law Dictionary define quotation as referring to prices only. *See* 13 Oxford English Dictionary 52 (2d ed. 1991) ("The amount stated as the price of stocks . . . for sale."); Black's Law Dictionary 1263 (7th ed. 1999) ("The amount stated as a stock's . . . current price. **[*7]** ") Nevertheless, the definitions in the American Heritage and Webster's dictionary create at least some uncertainty as to whether the term quote can refer not only to prices but also to bids.

In addition, State Street submits Robert Landau's affidavit. From 1960 to 1991, he "led the worldwide corporate trust group at Bankers Trust Company," and from 1992 to 1996, he supervised the corporate trust functions at NationsBank in Atlanta. He is the author of Corporate Trust Administration and Management, which, he says, has been the basic industry text for 24 years. (Landau Aff., P 1) He avers [1]:

> in my opinion and experience, the word "quotes" as used in the Indenture . . . would be clearly understood by trustees to be synonymous with the word "bids," or any other specific indication of what price a potential purchaser was willing to pay . .

> . . I base this opinion of my familiarity with the reason for this type of provision being put into an indenture and my experience and understanding of our business as to what we understand words like this to mean and what this type of provision is for."

*Id.* at P 3. Landaus's affidavit does create a genuine issue as to the correct **[*8]** meaning of "quote." [2] Accordingly, Page Mill's motion for summary judgment is denied. [3]

> [1] Page Mill argues that Landau's expert opinion is inadmissible because he does not provide a reliable foundation for it. (10/6/00, Pl. Mem. at p. 14) However, experience alone may provide a sufficient foundation for expert testimony. *See Fed. R. Evid. 702* advisory committee's note) Page Mill cites *Roniger v. McCall, 2000 U.S. Dist. LEXIS 11999, 2000 WL 1191078*, No. 97 Civ. 8009 (Aug. 22, 2000), for the proposition that an "expert has an obligation to do more than aver conclusively that his experience led to his opinion." (10/6/00, Pl. Mem. at p. 13) The court in *Roniger* stated that "although it is permissible for [the expert] to base his opinion on his own experience . . ., he must do more than aver conclusively that his experience led to his opinion." *Roniger*, 2000 WL 1191078, at *4. Here, Landau did a lot more. He cited a long list of specific transactions involving corporate trust indentures. (Landau Aff., Ex. A)

> [2] Because State Street has submitted evidence creating a genuine issue as to the merits, I do not reach State Street's affirmative defenses.

**[*9]**

> [3] The other new item of evidence is the Desktop Guide's definition of quotation as "a price (bid and/or offer) in a subject market. A quotation is not necessarily the price at which a security can be bought or sold; it is an indication of market levels." (Barry Decl., Ex. A) However, this is consistent with my previous definition of quote as a "description of market price."

II.

State Street cross-moves for summary judgment on the same claim on the ground that State Street's new evidence establishes that the term quotes should be read as synonymous with bids, as well as on the ground of several affirmative defenses, which State Street failed to raise in its first motion on this claim. The motion is in effect an improper motion for reconsideration. Local Civil Rule 6.3 requires that such a motion be served within 10 days of the court's determination of the original motion. I decided State Street's prior motion for summary judgment on this claim on June 30, 2000. State Street did not serve its second motion on this claim until September 7, 2000. Accordingly, State Street's cross-motion for summary **[*10]** judgment is denied.

Now that both parties' motions for summary judgment on this issue have been denied, the issue of whether the word quote is synonymous with bid, and thus, whether State Street permitted CMST to use the wrong procedure in valuing the collateral, will be tried. I will, therefore, also withdraw my previous ruling that CMST breached the indenture by soliciting quotes rather than bids.

III.

State Street moves also for summary judgment dismissing Page Mill's request for punitive damages. "Punitive damages are allowable in tort cases . . . so long as the very high threshold of moral culpability is satisfied." The defendant's conduct should be "willful, wanton, or reckless." *Giblin v. Murphy, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 532 N.E.2d 1282 (1988)*. Page Mill fails to submit any evidence that State Street knew or consciously disregarded knowing that using bids rather than quotes breached the indenture.

Instead, Page Mill's evidence suggests that State Street knew or should have known that the bids it used were below market. For example, Page Mill cites a letter it sent State Street warning that using below market bids would violate the indenture. **[*11]** Page Mill also cites Paine Webber's unsolicited bid for nearly $ 1 million more than the bids Page Mill used, and Page Mill cites evidence that the bids used were well below the Issuer's internal pricing for similar collateral. (9/22/00, Pl. Mem., at pp. 5-7, & 10) However, none of this evidence supports a finding that State Street should have known that bids are not quotes. Thus, Page Mill fails to create a genuine issue as to whether the alleged breach was willful, wanton, or reckless. Accordingly, State Street's motion for summary judgment dismissing Page Mill's claim for punitive damages is granted.

IV.

Finally, State Street moves to strike Page Mill's jury demand. The general rule is that "actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity' -- carrying with them no right to trial by jury." *In re Evangelist, 760 F.2d 27, 29 (1st Cir. 1985)*. However, at least two circuits have stated that when a breach of fiduciary duty claim is predicated upon underlying conduct "which is actionable in a direct

suit at common law," the jury should decide whether there has been a breach of fiduciary duty. *DePinto v. Provident Sec. Life Insur. Co., 323 F.2d 826, 837 (9th Cir. 1963)* **[*12]** ("Having in mind the necessity of scrutinizing, with utmost care, any seeming curtailment of the right to a jury trial, we hold that where a claim of breach of fiduciary duty is predicated upon underlying conduct, such as negligence, which is actionable in a direct suit at common law, the issue of whether there has been such a breach is . . . a jury question."); *Halladay v. Verschoor, 381 F.2d 100, 109 (8th Cir. 1967)* ("Ordinarily, enforcement of administration of trusts and proceedings involving trusts are subjects for equity jurisdiction, but where the basic nature of the claims present only legal issues, it is entirely proper . . . to treat the case as one belonging on the law docket."); *see also In re Evangelist, 760 F.2d at 31* ("Conduct that breaches a fiduciary duty might also violate other legal rules; it might constitute a tort (such as fraud) or breach of contract. In each of the cases cited by petitioner, the relevant conduct was alleged to violate some such other legal principle, so it is not surprising that the courts viewed the complaint at issue as setting forth a claim for damages at law."); *cf. Moore's Federal Practice § 38.31[11]* **[*13]** ("The remedies of trust beneficiaries . . . are generally considered equitable rather than legal, and there is no right to jury trial, although a breach of fiduciary duty predicated upon negligence or based on fraudulent conduct and seeking damages gives rise to a jury trial right."). Here, State Street's alleged breach of fiduciary duty is predicated upon an alleged breach of indenture, a legal claim. Therefore, State Street's motion to strike Page Mill's jury demand is denied.

For the reasons stated, Page Mill's motion for summary judgment as to liability is denied. State Street's cross-motion is denied. State Street's motion for summary judgment as to punitive damages is granted. Its motion to strike Page Mill's jury demand is denied.

SO ORDERED:

Dated: New York, New York

July 27, 2001

Michael B. Mukasey,

U.S. District Judge