MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant and Counterclaim-Plaintiff. | **NOVELL'S OPPOSITION TO SCO'S MOTION FOR RECONSIDERATION OR CLARIFICATION OF THE COURT'S AUGUST 10, 2007 ORDER**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

## INTRODUCTION

In support of their Motions for Summary Judgment, Novell and SCO submitted over 1,500 pages of briefing, numerous declarations, and many hundreds of pages of exhibits. The Court heard oral argument for three days on these motions; the transcripts run over 240 pages. Following careful review of that extensive record, the Court issued a 102-page opinion that exhaustively lays out each side's position and evidence, concludes some issues in Novell's favor as a matter of law, others in SCO's, and leaves several issues open for the trier of fact. In that August 10, 2007 Memorandum Decision and Order ("Order"), the Court held that when the APA said that Novell retained title to "all . . . SVRX Royalties," it did, in fact, mean that Novell is entitled to *all* such royalties.

SCO's motion for reconsideration seeks again to avoid the plain language of the APA and secure for SCO a chunk of the SVRX Royalties. SCO's motion does not cite any intervening change in law. It does not claim that there is any new evidence that might undermine the Court's considered Order. SCO merely claims the Court was wrong. As this Court has held, that is not an appropriate basis for reconsideration: "A disagreement with the court's decision is not enough to warrant the court to amend, alter or reconsider its decision." *Whitmer v. World Fin. Network Nat'l Bank*, No. 04-00567, 2006 U.S. Dist. LEXIS 73169, at *6 (D. Utah Oct. 6, 2006) (Kimball, J.) (attached hereto as Ex. 1). The Court should therefore deny SCO's motion.

## ARGUMENT

### I. SCO HAS NOT ARTICULATED ANY LEGAL BASIS FOR RECONSIDERATION.

SCO cites only one case involving a motion for reconsideration, and even that case makes clear that there is no legal basis for reconsideration here. (Mot. at 2 (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).) *Servants* suggests that reconsideration may be appropriate "where the court has *misapprehended* the facts, a party's position, or the controlling law." *Servants*, 204 F.3d at 1012 (emphasis added).

1

But there has been no "misapprehension" here. Instead the very issue on which SCO seeks reconsideration was fully briefed, argued, and analyzed in the Court's Order. SCO admits that Novell argued "it should receive the royalties even if the licensing of SVRX was incidental." (Mot. at 3; *see, e.g.*, Novell's Reply to SCO's Opp. to Novell's Motion for Partial Summary Judgment or Preliminary Injunction, Docket No. 205, at 9-11.) SCO argued the opposite. (*See, e.g.*, SCO's Reply in Support of Its Cross Motion for Summary Judgment, Docket No. 233, at 5-7; Tr. of Jan. 23, 2007 Hearing at 30-31, 36-37, 43-44.) The Court's analysis of this issue, reviewing the same record SCO submits here, and in particular, exhaustively analyzing the relevant provisions of the APA, takes at least 32 pages of the Order itself. (Order at 3-26, 31-38.)

There is therefore no misapprehension of any "party's position." Nor does SCO identify any *fact* or *controlling law* that the Court misapprehended. SCO simply argues that the Court's consideration of the parties' positions, the facts, and the controlling law should have worked out in SCO's favor. Precedent is clear that such an argument is not a legal basis for reconsideration, and it is appropriate to deny SCO's motion on that ground alone. *Whitmer*, 2006 U.S. Dist. LEXIS 73169, at *6; *see also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (reconsideration should be granted only "to correct manifest errors of law or to present newly discovered evidence" (internal quotation marks and citation omitted)); *Monroe v. Myers*, No. 05-00351, 2006 WL 2699029, at *1 (D. Colo. Sept. 19, 2006) (same, adding that reconsideration is an "extreme remedy to be granted in rare circumstances") (attached hereto as Ex. 2).

## II. EVEN IF CONSIDERED ON THE MERITS, SCO'S MOTION FAILS — NOVELL RETAINED TITLE TO ALL SVRX ROYALTIES.

SCO's motion also fails on the merits. SCO makes three arguments it hopes will spur the Court to reconsider its holding that "even incidental licenses of SVRX are considered an SVRX License" and that Novell is entitled to all SVRX Royalties from SVRX Licenses. (Order at 95.) SCO claims that (i) the plain language of the APA supports its argument; (ii) the absence of a

calculation methodology means that no calculation is appropriate; and (iii) extrinsic evidence confirms SCO's position. (Mot. at 4-8.) None of these arguments is persuasive.

### A. The Plain Language of the APA Dictates that Novell is Entitled to All SVRX Royalties From SVRX Licenses.

As the Court has recognized, "Santa Cruz could not afford to purchase the entirety of Novell's UNIX and UnixWare assets and rights." (Order at 9.) As a consequence, "Novell and Santa Cruz focused on a more limited deal that also included a forward looking revenue stream for Novell." (*Id.*) To make the transaction affordable for SCO, Sections 1.2(b) and 4.16(a) of the APA set up a basic regime: Novell gets SVRX revenue; SCO gets UnixWare revenue. To protect Novell's continuing revenue stream, Section 4.16(b) of the APA also allowed Novell to retain various powers concerning SVRX Licenses, and prohibited SCO from entering into new SVRX Licenses — or amending them — except in very limited circumstances. Indeed, as SCO readily admitted, the APA made SCO Novell's agent with respect to collection and distribution of SVRX royalties. SCO seeks to upset this balance by retaining revenue it acknowledges is in part attributable to licensing SVRX rights.

In that quest, SCO introduces two new terms that the APA does not even use: "UnixWare License" and "UnixWare Royalties." (Mot. at 4.) In SCO's account, if a so-called UnixWare License includes "an incidental license to SVRX," this does not "alter[] that license's status as a UnixWare License or change[] the royalty rights of either party." (*Id.*) That concept, however, is found nowhere in the APA. Instead, as this Court has held, Sections 1.2(b) and 4.16(a) of the APA use the term "SVRX License," define that term to refer to "all licenses related to the SVRX products listed in Item VI of Schedule 1.1(a) to the APA," and make clear that Novell is entitled to <u>all</u> SVRX Royalties from such licenses. (Order at 100.)

Indeed, SCO's supposedly "plain reading" of Section 4.16(b) is nothing of the sort. SCO attaches significance to Section 4.16(b)'s failure to "indicate that the inclusion of . . . an incidental license to SVRX . . . changes the royalty rights of either party" (Mot. at 4), but there is

3

no reason to attribute significance to Section 4.16(b)'s silence on this subject. As the Court recognized, Section 4.16(b) addresses only SCO's *authority* to enter into new or amended licenses — it has nothing to do with SCO's "obligation to remit 'all royalties, fees, and other amounts due' under [ ] SVRX Licenses." (Order at 95.) These "royalty rights" are governed unambiguously by Sections 1.2(b) and 4.16(a). Under those provisions, Novell is always due revenue attributable to the license of SVRX rights.

### B. The APA's Supposed Failure to Specify How to Calculate Incidental Royalties is of No Consequence.

SCO would have the Court overlook the plain language of the APA because the APA does not provide an explicit method for calculating Novell's revenue entitlement where a license provides only incidental SVRX rights. (Mot. at 5.) But the lack of specific apportionment methodology has not prevented the parties from apportioning revenue. In fact, situations arose during the course of the parties' relationship in which — despite the APA's failure to specify an apportionment formula — SCO proposed an apportionment for products that contained both SVRX and UnixWare components. For example, [REDACTED] The absence of an explicit APA apportionment methodology did not stand in SCO's way then, and it provides no basis for reconsideration now.

In addition, SCO's argument proves too much. If SCO entered into a contract that licensed *UnixWare* only incidentally to SVRX — say, a SCOsource license, for example — the

4

APA does not contain a methodology for apportioning revenue in that circumstance, either. Presumably SCO would not claim that it need only add a trivial UnixWare right to an SVRX License to erase any Novell revenue entitlement. Entitlement to revenue therefore cannot turn on whether the APA provides a specific calculation methodology.[1] Instead, the APA entrusts apportionment of revenue from mixed licenses to SCO, acting as Novell's agent and fiduciary. (Order at 96.)

Moreover, this is the first time SCO has pointed to this "missing" provision of the APA in support of its argument that it does not owe royalties for an incidental SVRX license, and it should therefore be barred from doing so now. "A party should not use a motion for reconsideration to . . . present evidence that should have been raised before." *Whitmer*, 2006 U.S. Dist. LEXIS 73169, at *3 (citation and internal quotation marks omitted); *see also Servants*, 204 F.3d at 1012 ("supporting facts which were available at the time of the original motion" cannot be offered up as "new" evidence); *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (holding that evidentiary materials available before party filed its opposition are not newly discovered evidence); *Brinkman v. Kansas Dep't of Corrs.*, 869 F. Supp. 902, 904 (D. Kan. 1994) (holding that evidence that could have been discovered and offered to the court if plaintiff were diligent is not newly discovered); *Atl. States Legal Found. v. Karg Bros. Inc.*, 841 F. Supp. 51, 55-56 (N.D.N.Y. 1993) ("newly discovered evidence" must in fact be newly discovered, or could not have been discovered by due diligence).

---

[1] In support, SCO cites a Michigan Bankruptcy Court case. (Mot. at 5 n.3, citing *In re Mason*, 46 B.R. 119 (Bankr. Mich. 1985).) *Mason* turns on whether, under the Bankruptcy Code, a creditor retains a security interest in financed property when the original loan for the property was paid off and replaced with a loan that has no explicit connection to such property. It is unclear what relevance such a case could possibly have here, especially as *Mason* does not purport to recite principles of general application to contract disputes.

### C. The Extrinsic Evidence Does Not Support SCO.

SCO contends that the extrinsic evidence "demonstrates that UnixWare Licenses routinely included incidental licenses to SVRX," and that the SVRX components were automatically "listed in a manner similar to what was done in the Sun and Microsoft agreements." (Mot. at 6.) Even were the evidence as SCO suggests, it is inadmissible. The Court has held that, because the plain language of the APA is not reasonably susceptible to the meaning SCO would give it, extrinsic evidence in support of SCO's argument is inadmissible. (Order at 86.) SCO's motion for reconsideration does nothing to undermine that holding. If the Court were to consider SCO's evidence, the extrinsic record is not as SCO suggests; in fact, it is the opposite.

First, in marked contrast to the Microsoft and Sun agreements, SCO's UnixWare licenses often did not include any grants of SVRX rights. (Melaugh Decl. Exs. 2 § 4.7; 3 § 4.7; 4 § 4.7.) SCO admitted in the briefing on the underlying motions that — far from routinely and automatically granting SVRX rights when entering into UnixWare agreements — it "adapted" its UnixWare licenses based on customer "interest." (SCO's Reply in Support of Its Cross Motion for Summary Judgment, Docket No. 233, at 6.) SCO had a UnixWare license "template prepared [ ] for use with a variety of licensees, including those who were not interested in . . . the old SVRX technology" and those who were "interested in SVRX technology." (*Id.*) SCO did not have a uniform practice of issuing UnixWare licenses with SVRX rights.

SCO then cites testimony it claims establishes that Novell, Unix Systems Laboratories, and AT&T included licenses to old UNIX versions when licensing a new UNIX version. (Mot. at 7-8.) Whether or not that is true, SCO ignores the fact that Novell and its predecessors were never laboring under any obligation to split revenue attributable to various versions. They could therefore include prior versions without any concern. SCO, on the other hand, accepted a fiduciary obligation to properly apportion mixed revenue when it agreed to the APA, and if changes to typical practices were necessary, it was SCO's obligation to make those changes.

6

Further, SCO's contention that "Novell was aware of many" SCO UnixWare licenses that also granted SVRX rights "through [Novell's] audits of SCO's royalty reports" (Mot. at 6) is not true. SCO has presented no evidence that Novell or its auditors were aware of the terms of even one such license. The record instead shows that Novell's auditors reviewed royalty reports prepared by SCO, royalty reports from third-party licensees, and other payment and financial records. (Melaugh Decl. Exs. 5 (deposition of J. Acheson); 6 (March 2, 1999 Audit Report)

[REDACTED]

Novell is not aware of any evidence — including the evidence cited by SCO (Mot. at 6-8) — that Novell's auditors saw any of SCO's UnixWare licenses that conveyed SVRX rights. SCO's briefing is to the same effect.[2]

It is true that a Novell representative sat on SCO's board for a time, but that director owed fiduciary duties to SCO, and was not sitting on the Board as Novell's auditor. SCO has not offered, moreover, any board minutes reflecting that any mixed licenses were reviewed at the board of directors level.

In sum, even were the Court to consider extrinsic evidence — which the Court has already ruled inadmissible — the evidence aligns against SCO, confirming again that Novell is entitled to "all . . . SVRX Royalties."

## CONCLUSION

At every step, this Motion falters. SCO has not made out any threshold legal basis for reconsideration. Even if it had, the plain language of the APA provides that Novell is entitled to "all" SVRX Royalties, as this Court held. The absence of an apportionment methodology in the

---

[2] SCO's Memorandum in Opposition to Novell's Motion for Partial Summary Judgment or Preliminary Injunction and in Support of SCO's Cross Motion for Summary Judgment or Partial Summary Judgment, Docket No. 183, at ¶ 60 (noting that Novell representatives received only reports of binary royalties from SVRX licenses).

APA has not stopped the parties from engaging in apportionment. And the extrinsic record, which is inadmissible here, only serves to confirm the APA's plain language. For the foregoing reasons, Novell respectfully requests that this Court deny SCO's motion for reconsideration.

DATED: September 10, 2007

        ANDERSON & KARRENBERG

        By:   /s/ Heather M. Sneddon

        Thomas R. Karrenberg
        John P. Mullen
        Heather M. Sneddon

        -and-

        MORRISON & FOERSTER LLP
        Michael A. Jacobs, *pro hac vice*
        Eric M. Acker, *pro hac vice*
        Kenneth W. Brakebill, *pro hac vice*
        Marc J. Pernick, *pro hac vice*
        David E. Melaugh, *pro hac vice*

        **Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2007, I caused a true and correct copy of **NOVELL'S OPPOSITION TO SCO'S MOTION FOR RECONSIDERATION OR CLARIFICATION OF THE COURT'S AUGUST 10, 2007 ORDER** *[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]* to be served to the following:

*Via CM/ECF:*

> Brent O. Hatch
> Mark F. James
> HATCH JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stuart H. Singer
> William T. Dzurilla
> Sashi Bach Boruchow
> BOIES, SCHILLER & FLEXNER LLP
> 401 East Las Olas Blvd., Suite 1200
> Fort Lauderdale, Florida 33301
>
> David Boies
> Edward J. Normand
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, New York 10504
>
> Devan V. Padmanabhan
> John J. Brogan
> DORSEY & WHITNEY, LLP
> 50 South Sixth Street, Suite 1500
> Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid:*

> Stephen Neal Zack
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

/s/ Heather M. Sneddon