# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **THE SCO GROUP, INC.,**  Plaintiff,  vs.  **NOVELL, INC.,**  Defendant. | **ORDER**  Civil Case No. 2:04CV139DAK |

This matter is before the court on The SCO Group, Inc.'s ("SCO") Motion to Strike Exhibits on Novell's Revised Exhibit List Not Previously Disclosed and SCO's Sealed Motion to Exclude Testimony of Terry L. Musika. The parties waived oral argument on these motions. Having fully considered the materials submitted by the parties as well as the facts and law relevant to these motions, the court enters the following order.

### SCO's Motion to Strike Exhibits Not Previously Disclosed

Pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure, SCO seeks an order prohibiting Novell from introducing into evidence at trial 187 documents that Novell failed to designate as exhibits prior to the parties' pretrial disclosure deadline of August 2, 2007. Novell disclosed these exhibits on August 22 and 23, 2007, three weeks prior to trial. Novell argues that the designation of these exhibits is harmless because a majority of the exhibits will be used only if SCO advances a new theory of apportionment at trial and the remaining exhibits are all

1

materials that have been exchanged by the parties during discovery. Novell also claims that its supplemental disclosures were substantially justified because they were in response to the court's August 10, 2007 Memorandum Decision and Order ("August 10 Order").

Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) , , , is not, unless such failure is harmless, permitted to use as avidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Also under Rule 37, "if a party fails to obey an order entered under Rule 26(f)," the court "may make such orders in regard to the failure as are just." These orders can include an order prohibiting the disobedient party "from introducing designated matters in evidence." *Id.* 37(b)(2)(B).

SCO relies on *Geisting v. Storz Instrument Co.*, 171 F.R.D. 311, 311 (D. Kan. 1997), in which the court struck exhibits from a supplemental exhibit list when the party failed to obtain leave of court to disclose exhibits "well after the discovery deadline." *Id.* The court, however, has broad discretion in determining whether a failure to meet the disclosure requirements is substantially justified. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

The parties agree that the court should employ a four-part test to determine whether the late disclosure of exhibits is harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Id.* at 993.

Given the changes in the focus of the case as a result of the court's August 10 Order, the

court finds no willfulness or bad faith in Novell's late designation of exhibits. There is also no evidence that the exhibits would disrupt the trial. With respect to the ability of Novell to cure the prejudice, SCO alleges that the only cure for the prejudice it would sustain is to strike the exhibits entirely or to continue the trial to allow it more time to review and respond to the newly disclosed exhibits. Whereas Novell argues that there is no prejudice to cure. Therefore, the determination of harmlessness turns on whether SCO has suffered or will suffer prejudice as a result of Novell's introduction of exhibits at trial that were designated three weeks after the court-imposed deadline and three weeks before trial.

SCO's stated prejudice is that Novell's belated disclosures have substantially cut into SCO's trial preparation time. SCO asserts that "nearly 200 documents disclosed three weeks before trial in such a complex case is not a 'small amount of material.'" In this regard, the court recognizes that the timing of its August 10 Order has impacted both parties. The pretrial disclosures deadline was a week before the court issued its ruling on the primary issues in the case. Not only did the court's order significantly narrow the scope of the trial, it changed the nature of Novell's remaining counterclaims.

The *Geisting* case, relied on by SCO, is distinguishable from the instant case. In *Geisting*, the court addressed whether a party could disclose several documents on a supplemental exhibit list that had not been disclosed during discovery. 171 F.R.D. at 311. The defendant searched its files for documents in response to the plaintiff's arguments in a summary judgment motion and failed to disclose the documents until a month before trial. *Id.* In this case, the exhibits are merely being designated as exhibits. They were already exchanged during discovery. In fact, many are SCO's own documents. Furthermore, the designation in this case

was expeditiously made in response to the court's ruling regarding the factual issues remaining for trial. In *Giesting*, the defendant took two months to disclose documents responsive to theories in a motion for summary judgment. *Id.* Therefore, the court is not persuaded that a sanction is appropriate.

While relying on the complexity of the case as a basis for its prejudice with respect to timing, SCO does not recognize the limited factual questions left for trial. The questions of fact remaining for trial are so limited that SCO should be able to comprehend the relevancy of the exhibit, the use to which Novell is putting it, and formulate its response to such documents prior to trial. A majority of the documents will only be used if SCO advances a new theory, and such documents could have been used in any event for impeachment purposes without being disclosed. Many other documents are documents with which SCO is familiar. Although there are several exhibits, the court concludes that such a review could be accomplished in the time frame SCO has had between the disclosures and the trial date. SCO will have almost a month to review the documents and determine its response. Moreover, many of the documents on the list are documents with which SCO is familiar.

SCO does, however, recognize the narrowness of the issues remaining for trial when it argues that Novell's exhibit list somehow expanded while the case narrowed. SCO is correct that there are no new claims as a result of the court's order. But SCO's contentions do not recognize the change in the nature of Novell's remaining claims as a result of the court's analysis of those claims in its August 10 Order. As the parties' positions with respect to the allocation of revenues under the licenses may have been required to change, it is reasonable to expect that some of the documentary evidence relevant to apportionment would have also changed.

In connection with the potential for new theories of apportionment, Novell will use 138 of the 187 exhibits only if SCO advances a new theory of apportionment. Novell concedes that "[i]f SCO does not introduce a new theory of apportionment, Novell will not use these documents." The court denied Novell's third motion in limine seeking to preclude SCO from advancing any new theories at trial. The court ruled that SCO could advance arguments it believes are consistent with the evidence to be presented at trial. This ruling, in large part, was based on the fact that the court's August 10 Order may have affected SCO's position with respect to the appropriate allocation of revenue. Although SCO's theory appears to be only a potential shift from zero to de minimis, such a shift is likely in response to the court's August 10 Order recognizing that there was some component of SVRX technology in the 2003 Sun and Microsoft Agreements that would be considered an SVRX License under the APA.

Similarly, SCO must recognize that Novell's position on apportionment may have also been affected by the court's August 10 Order finding that there was a question of fact as to the value of the SVRX portion of the licenses. It appears from the pretrial documents submitted to the court that Novell's position prior to the court's August 10 Order was that 100% of the revenues from the 2003 Sun and Microsoft Agreements constitute SVRX Royalties. Just as SCO's position may have changed based on the court's ruling, Novell's position may have changed given the court's finding that there was a question of fact as to how much of the revenues from the agreements were attributable to the licensing of SVRX technology. It would be unfair to allow SCO the opportunity to revise its position in light of the court's ruling and not allow Novell that same opportunity.

Although the court would have preferred for Novell to seek leave of court prior to

supplementing its disclosures, it concludes that the supplemental disclosures were substantially justified as a result of the court's August 10 Order. Because the parties were equally affected by the court's August 10 Order, there is no fundamental unfairness that will result in the trial of the case. The court will hold Novell to its assertion, however, that 138 of the documents will not be used unless SCO introduces a new theory of apportionment. Accordingly, SCO's Motion to Strike Exhibits on Novell's Revised Exhibit List Not Previously Disclosed is denied.

### SCO's Motion to Exclude Testimony of Terry L. Musika

SCO seeks an order excluding the testimony of Novell's expert Terry Musika as set forth in his May 29, 2007 Expert Report on Damages and his July 31, 2007 Supplemental Expert Report on Damages. SCO contends that Novell has not met its burden of establishing the admissibility of Musika's testimony.

Under Rule 702 of the Federal Rules of Evidence, Novell must demonstrate that Musika is "qualified as an expert by knowledge, skill, experience, training, or education." SCO claims that Musika is not qualified to offer any opinion on the allocation of revenue attributable to the SVRX technology. There is no question that Musika, as an experienced CPA, is clearly qualified to perform the calculations in his report. Novell claims that to the extent that Musika opines on apportionment in rebuttal, he is qualified based on his experience in intellectual property valuation. Based on the materials provided, the court agrees that Musika's background and experience demonstrate that he is qualified to opine on the valuation of intellectual property.

In addition to establishing his qualifications, Novell must demonstrate that his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R.

Evid. 702.  The testimony must be based on sufficient facts or data, be the product of reliable principles and methods, and be reliably applied to the facts of the case.  *Id.*

SCO objects to Musika's testimony because it involves only simple arithmetic and assumes the ultimate question the trier of fact must resolve.  Musika's testimony compiles several payments made and calculates quarterly interest on the principal.  While SCO is correct that this type of calculation is conducted routinely by courts, it is also true that courts routinely allow expert testimony for similar types of calculations.  Moreover, the rules of evidence allow experts to express opinions that embrace the ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704.

SCO further contends that Musika's testimony fails Rule 702's reliability requirement because he employs no theory or technique other than following Novell's counsel's instructions to include all revenue from all SCOsource licenses.  But the validity of an expert's assumptions go to the weight of the expert's testimony rather than its admissibility.  *United States v. Cavely*, 318 F.3d 987, 997-98 (10th Cir. 2003).  SCO can challenge the validity of his assumption that all of the SCOsource revenues are SVRX Royalties, and the court, as the trier of fact, can choose to accept or reject it.  There is enough of a basis in the agreements for finding that any incidental license of SVRX creates an SVRX License generating SVRX Royalties for Musika's testimony and assumptions to meet the underlying reliability standards for expert testimony.  SCO does not cite to anything in the courts' prior orders that would preclude a finding that all revenue under the Sun and Microsoft Agreements should be considered SVRX Royalties. And while SCO may have a differing interpretation of the contracts, its interpretation does not make Musika's assumptions unreliable.

Finally, SCO argues that Musika has not adequately applied any principles or methods to the facts of the case because he conducts no analysis or evaluation of what portion of the revenue from the agreements are attributable to SVRX. Again, many of these arguments can be made on cross-examination at trial. SCO's argument also fails to recognize that Novell may establish its apportionment analysis through other means. If other evidence supports such an apportionment and Musika is simply asked to provide the calculations resulting from such apportionment, there are no grounds for attacking Musika for failing to conduct the apportionment analysis.

SCO also argues that Musika should not be permitted to offer any testimony on allocation of the SCOsource agreements because he has never offered any such opinion in discovery or his expert report. Although SCO dismisses Novell's concerns about SCO's presentation of a new apportionment model at trial, the court does not find such concerns unfounded. The court's August 10 Order necessarily required the parties to reevaluate their positions regarding apportionment and neither party is more prejudiced than the other with respect to proceeding to trial. In addition, Novell's opposition states that Musika will testify on apportionment only in rebuttal. Expert reports under Rule 26(a) are to set forth the substance of direct examination. Therefore, the presentation of rebuttal testimony on apportionment does not run afoul of Rule 26's expert report requirements.

The court concludes that Novell has met its initial burden with respect to the admissibility of Musika's testimony. Accordingly, the court denies SCO's Motion to Exclude Testimony of Terry L. Musika.

## CONCLUSION

For the reasons stated above, SCO's Motion to Strike Exhibits on Novell's Revised Exhibit List Not Previously Disclosed is denied.  However, the 138 documents Novell has agreed to use only if SCO advances new theories of apportionment may only be used in those circumstances.  SCO's Sealed Motion to Exclude Testimony of Terry L. Musika is denied.

DATED this 11th day of September, 2007.

                                                      BY THE COURT:

                                                _____
                                                DALE A. KIMBALL
                                                United States District Judge