Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 south Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Stephen N. Zack (admitted Pro Hac Vice)
BOIES SCHILLER & FLEXNER LLP
Bank of America Tower, suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES SCHILLER & FLEXNER, LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION OR CLARIFICATION OF THE COURT'S AUGUST 10, 2007 ORDER**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Civil No. 2:04 CV-00139<br><br>Judge Dale A. Kimball<br>Magistrate Brooke C. Wells |

Dockets.Justia.com

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................... 1

I. NOVELL DOES NOT REFUTE THE EVIDENCE THAT SCO IS ENTITLED TO ROYALTIES FROM UNIXWARE LICENSES THAT LICENSE SVRX INCIDENTALLY. ........................................................................................................ 2

    A.    The Plain Reading of the APA Grants SCO the Royalties from UnixWare Licenses that License SVRX Incidentally. ............................................................ 2

    B.    The APA's Failure to Specify Any Method for Calculating an Incidental SVRX Royalty Right Demonstrates That Novell Never Received Such a Right ........................................................................................................................ 4

    C.    The Extrinsic Evidence Confirms That Novell Is Not Entitled to Royalties from UnixWare Licenses That License SVRX Incidentally ................................. 6

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Adams v. Anderson,
   12 Fed. Appx. 910 (10th Cir. 2001) ............................................................................. 2

Hernandez v. Badger Constr. Equip. Co.,
   28 Cal. App. 4th 1791 (1994) ...................................................................................... 8

Universal Sales Corn., Ltd. v. Cal. Press Mfg. Co.,
   128 P.2d 665 (Cal. 1942) ............................................................................................. 8

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc. ("SCO"), respectfully submits this Reply Memorandum in further support of SCO's Motion for Reconsideration or Clarification of the Court's Order dated August 10, 2007 (the "Order").

## ARGUMENT

SCO's motion asks the Court to reconsider or clarify a single ruling in the Order: Is the Asset Purchase Agreement ("APA"), as amended by Amendment No. 1, reasonably susceptible to the reading that the incidental licensing of SVRX in a UnixWare license does not require payment of an SVRX royalty along with a potential UnixWare royalty.

Contrary to Novell's suggestion (at 2), this question was not "fully briefed" or argued on summary judgment. The parties' arguments and memoranda regarding SVRX Royalties centered on whether SVRX Licenses were limited to existing licenses at the time of the APA or to licenses of binary code. Novell did not argue until reply that it was entitled to a portion of the payments from the Sun and Microsoft Agreements even if a factfinder determined that any SVRX license included therein was only incidental. Novell's contention (at 1) that the Court need not reconsider this question since argument on this issue was exhausted in the 1,500 pages of summary judgment briefing is therefore misleading, as at most a handful of those pages included any discussion of Novell's claim to royalties from incidental licenses of SVRX. To the contrary, the volume of summary judgment briefing – virtually none of which addressed this issue – underscores the limited attention this issue had received and the consequent basis for the instant motion.[1]

---

[1] Novell's complaint (at 5) that "this is the first time SCO has pointed to this 'missing' provision of the APA" similarly underscores the basis for the instant motion. Novell's core position with respect to the Sun and Microsoft Agreements had always been that "SVRX is central, and not incidental, to the Sun

1

As the Court recognized in its most recent Order, "the nature of Novell's remaining claims" has changed as a result of the Court's analysis of those claims in its Order. (Order (9/11/07) at 4.) Given the Court's finding that there was no binary or temporal limitation on the SVRX Royalties that Novell was entitled to, the question of incidental licensing is now central to the upcoming trial. Reconsideration is appropriate "to correct clear error or prevent manifest injustice" which could result from a misapprehension of the facts or of the parties' positions. Adams v. Anderson, 12 Fed. Appx. 910, 914 (10th Cir. 2001). The plain language of the APA and the evidence in the record are at least reasonably susceptible to the interpretation that Novell has no interest in royalties SCO receives under UnixWare licenses, even when an incidental license to prior SVRX products is included therein. SCO therefore moves for reconsideration or clarification of the Order with respect to this one issue.

## I. NOVELL DOES NOT REFUTE THE EVIDENCE THAT SCO IS ENTITLED TO ROYALTIES FROM UNIXWARE LICENSES THAT LICENSE SVRX INCIDENTALLY.

### A. The Plain Reading of the APA Grants SCO the Royalties from UnixWare Licenses that License SVRX Incidentally.

As Novell concedes (at 3), the APA provides that "Novell gets SVRX revenue; SCO gets UnixWare revenue." Specifically, the APA provides that "no royalties shall be payable in connection with any of the UW [UnixWare] Products" to Novell, unless Novell satisfies certain specified conditions. (APA Schedule 1.2(b) § (b)(i)(a).) Novell does not dispute that it has not

---

and Microsoft Agreements," and that Novell was therefore entitled to the payments from those Agreements as SVRX Royalties. (Novell Reply to SCO's Opp. to Novell's Motion for Partial Summary Judgment or Preliminary Injunction at 7.) Only on reply did Novell suggest that it was entitled to a portion of the Sun and Microsoft payments even if SVRX was determined to be incidental to the UnixWare licenses.

satisfied those conditions. The implication of the plain language of the APA, then, is that "no royalties shall be payable" to Novell in connection with an agreement that licenses a UnixWare product, even if that agreement includes the incidental licensing of SVRX products, which is permitted by the APA. Thus, to the extent that the Court determines at trial that the Sun and Microsoft Agreements are UnixWare licenses that include incidental licenses to SVRX prior products, the payments SCO received are "UnixWare revenues" that belong to SCO under the plain language of the APA. This provision of the APA – combined with the absence of any statement in the APA that incidental licensing of SVRX must pay a royalty as an SVRX License – at minimum renders the APA "reasonably susceptible" to the interpretation SCO advocates, such that extrinsic evidence should be considered.

In response, Novell contends (at 3) that SCO's position upsets the APA's division of royalties by "retaining revenue [SCO] acknowledges is in part attributable to SVRX rights." Novell argues (at 3) that Section 4.16(b) of the APA evidences the degree of protection Novell secured for its SVRX revenue stream, by giving Novell the right to prohibit SCO from entering into new or amended SVRX licenses.

But if Novell's right to prohibit SCO from entering into SVRX licenses is a true indication of the parties' respective royalty rights, as Novell suggests, then, by the same logic, the Court cannot ignore Section 4.16(b)'s express exception granting SCO the unfettered right "to enter into amendments of the SVRX Licenses (i) as may be incidentally involved through its rights to sell and license UnixWare software." (APA § 4.16(b), as amended by Amendment No. 1 ¶ J.) If Novell's SVRX royalty rights were protected by retaining the right to prevent SCO from entering into SVRX licenses, then it follows that there were no SVRX royalty rights to

3

protect in the case of incidental licenses of SVRX, because SCO was granted express authority to enter into such licenses without Novell's approval. Novell's own argument thus demonstrates that the APA is at least reasonably susceptible to the reading that royalties paid for UnixWare licenses that licensed SVRX incidentally were not due to Novell.

      B.      The APA's Failure to Specify Any Method for Calculating an Incidental SVRX Royalty Right Demonstrates That Novell Never Received Such a Right.

SCO further argues that, if the APA had intended to subject an incidental SVRX license to SVRX royalty obligations, the APA would have specified how such an additional royalty was to be calculated. In opposing this argument, Novell does not dispute that the APA fails to specify any mechanism for calculating such an apportionment. Novell also fails to explain how the parties could have overlooked such a critical and pervasive issue in crafting the APA, had they indeed intended to apportion royalties every time SCO licensed UnixWare and included therein an incidental license to prior SVRX.

Sidestepping SCO's core argument, Novell contends (at 4) that the Court should not draw any inferences from the APA's failure to specify any such mechanism because the parties are able to apportion royalties even without a formula in the APA. In support of its position, Novell (at 4) cites one example, in which Santa Cruz purportedly proposed an apportionment for its licensee Unisys "for products that contained both UnixWare and SVRX components" even absent a provision in the APA. Novell's reference to the Unisys licenses is both misleading and misplaced.

First, contrary to Novell's suggestion, the Unisys example that it cites did not involve the apportionment of royalties from a UnixWare license that licensed SVRX incidentally. Instead,

REDACTED

4

REDACTED

That is, Unisys had licensed SVRX independently – and not incidental to a UnixWare license – in 1991 (before UnixWare was even released). (Ex. 1.) Under that standalone SVRX license, Unisys had created an SVRX-based operating system on which it was required to pay per-copy fees to Novell each time Unisys sold hardware that included that operating system. Since Unisys continued to ship that SVRX binary operating system even after it licensed UnixWare, Unisys was never relieved of its obligation to pay binary per-copy distribution fees on each shipment of that SVRX operating system.

REDACTED

(Ex. 2.) In marked contrast to the Unisys license, neither party here contends that the Sun or Microsoft payments were made for pre-existing, separate SVRX products on which either licensee had been paying SVRX royalty payments.

In fact, the Unisys example that Novell cites actually underscores SCO's position that it is entitled to all of the royalties being paid under UnixWare licenses.

REDACTED

(Id.) That UnixWare license included a list of prior SVRX products similar to the Sun and Microsoft Agreements. (Ex. 3 at SCO1040491.) Nevertheless, Novell never asked Santa Cruz for any royalties corresponding to the SVRX prior products listed in the UnixWare license. Instead, Santa Cruz kept all the payments under that

UnixWare license, without any apportionment for the SVRX prior products to Novell. Even the lone example Novell cites in response to SCO's argument thus demonstrates that the parties have always treated <u>all</u> royalties from UnixWare licenses as belonging to SCO, even when there was also an incidental license of SVRX included in a UnixWare license. It is telling that Novell did not cite to or submit as an exhibit the Unisys UnixWare 2.1 license referenced in the letter that Novell did submit.[2]

Second, Novell's argument misses the point. Regardless of whether the parties are able to propose apportionment formulae without relying on a specific provision in the APA, the Court can (and should on summary judgment) infer from the APA's failure to specify the mechanism for such a calculation that the parties did not contemplate apportioning royalties from UnixWare licenses into a UnixWare portion (that SCO would keep) and an incidental SVRX portion (that SCO would remit to Novell). Had the parties actually intended to remit to Novell a portion of every UnixWare royalty SCO received simply because the UnixWare license incidentally licensed prior SVRX, it would have made little sense for the parties to have ignored the inevitable apportionment question in drafting the APA.

### C. The Extrinsic Evidence Confirms That Novell Is Not Entitled to Royalties from UnixWare Licenses That License SVRX Incidentally.

The record also contains evidence that the parties' intent and course of performance was to treat UnixWare licenses that licensed SVRX incidentally as subject only to the contingent interest Novell retained in UnixWare royalties, which expired in 2002.

Novell's principle response to this extrinsic evidence is to avoid it by arguing that the

---

[2] Novell also did not reference or submit the Unisys SVR 4.0 MP license also discussed in the letter Novell cited. That SVRX license also lists prior SVRX products licensed incidentally in the agreement. (Ex. 1 at SCO1062370.)

Court need not consider such evidence, since it found that "the plain language of the APA is not reasonably susceptible to the meaning SCO would give it." (Opp. at 6 (citing Order at 86).) But Novell's citation to the Order is misplaced. That excerpt from the Order concerns a different issue, on which the Court held that the language of the agreement was unambiguous. The Court made no such finding with respect to the question of incidental licensing of SVRX, which it analyzed ten pages later. To be sure, there is no express provision in the APA that resolves this question, and thus consideration of extrinsic evidence is appropriate.

The only reasonable conclusion that the extrinsic evidence supports is that Novell is not entitled to a portion of royalties from a UnixWare license that licenses SVRX incidentally. The parties' course of performance and the testimony in the record confirm that, in the years following the closing of the APA, Novell did not audit or request the SVRX royalties that licensees such as Unisys would continue to pay after the APA under the UnixWare licenses that Novell itself had granted such licensees and that included rights to the prior SVRX products. (See Ex. 4 at SCO1039921.) Novell cannot deny that it knew about such licenses, yet Novell never audited or asked for the binary royalties that such licensees continued to pay after the APA or the source fees for additional CPUs or distributions that those licensees could have paid under the APA.

In addition, Novell does not dispute that it never once sought a portion of royalties Santa Cruz received under new UnixWare licenses – even though those licenses included incidental licenses to SVRX consistent with the prior licensing of UnixWare by Novell itself. The evidence further demonstrates that Novell was aware that the UnixWare licenses granted by Santa Cruz contained such incidental licensing, from (1) Novell's comprehensive audit of Santa Cruz's

royalty reporting in 1998; (2) Novell's own prior practice of including incidental SVRX prior product licenses in its own UnixWare licenses and its instructions to Santa Cruz to use those same license forms for new UnixWare licenses; and (3) Novell's own representative sitting on Santa Cruz's Board. Such course of performance conduct is recognized as the best sort of extrinsic evidence of the parties' intent regarding these royalties and simply cannot be ignored. See, e.g., Universal Sales Corp., Ltd. v. Cal. Press Mfg. Co., 128 P.2d 665, 672 (Cal. 1942) (stating that "a practical construction placed by the parties upon the instrument is the best evidence of their intention"); accord Hernandez v. Badger Constr. Equip. Co., 28 Cal. App. 4th 1791, 1814-15 (1994).

Novell's only substantive response (at 7) is to suggest that there is no conclusive proof that Novell was aware of specific incidental licenses of SVRX. That conclusory contention does not bear scrutiny. Novell does not – and cannot – dispute that UnixWare licenses often included a list of prior SVRX products being licensed incidentally; Novell can only say that some UnixWare licenses did not include prior products lists. Novell does not – and cannot – dispute that it had included those incidental licenses to prior SVRX in its own UnixWare licenses before selling the UnixWare business to Santa Cruz. Novell's implicit admission that at least some UnixWare licenses licensed SVRX incidentally underscores its failure to explain why it never asked for a portion of UnixWare royalties until this litigation.[3] Similarly, Novell does not – and cannot – dispute the testimony in the record from Jean Acheson, Bill Broderick, and John Maciaszek, all of whom confirm the standard practice of including SVRX prior product lists in

---

[3] Indeed, while Novell seeks an apportionment of the Sun and Microsoft Agreements, it has decided not to pursue a similar apportionment for other UnixWare licenses that, like the Sun and Microsoft Agreements, also granted incidental rights to a list of prior SVRX products.

UnixWare licenses, including during the time that Novell entered into such licenses.

Finally, Novell's contention that its auditors might not have reviewed these UnixWare licenses during the 1998 audit fares no better. The auditors were charged with reviewing all of the royalties Santa Cruz had received to determine precisely this issue: Were there any royalties Santa Cruz was improperly withholding from Novell. Novell proffers no evidence that the auditors failed to properly fulfill their duties and did not review the royalties Santa Cruz collected under UnixWare licenses that licensed SVRX incidentally. Novell admits that during several of these years, in which Santa Cruz publicly filed financial statements, Novell was a significant shareholder of Santa Cruz and held a board seat where it was privy to all aspects of Santa Cruz's business. Novell thus fails to undermine the overwhelming extrinsic evidence in the record that supports the conclusion that the parties never apportioned any part of UnixWare royalties to Novell, even where – as is the case with the Sun and Microsoft Agreements – SVRX prior products were licensed incidentally in such UnixWare licenses.

## **CONCLUSION**

SCO respectfully submits, for the reasons set forth above, that the Court should reconsider and clarify that no SVRX royalty payments are due to Novell where SCO has licensed SVRX incidentally to UnixWare, or at minimum the Court should clarify that this issue will be resolved at trial.

DATED this 12th day of September, 2007.

        HATCH, JAMES & DODGE, P.C.
        Brent O. Hatch
        Mark F. James

        BOIES, SCHILLER & FLEXNER LLP
        David Boies
        Robert Silver
        Stuart H. Singer
        Stephen N. Zack
        Edward Normand

        DORSEY & WHITNEY LLP
        Devan V. Padmanabhan

        *Counsel for The SCO Group, Inc.*

        By: ___/s/ Edward Normand___

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of SCO'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION OR CLARIFICATION OF THE COURT'S AUGUST 10, 2007 ORDER was served on this 12th day of September, 2007, via CM/ECF to the following:

> Thomas R. Karrenberg
> John P. Mullen
> Heather M. Sneddon
> ANDERSON & KARRENBERG
> 700 Bank One Tower
> 50 West Broadway
> Salt Lake City, UT 84101
>
> Michael A. Jacobs
> Matthew I. Kreeger
> Kenneth W. Brakebill
> David E. Melaugh
>
> MORRISON & FOERSTER
> 425 Market Street
> San Francisco, CA 94105-2482

/s/ Edward Normand