MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ANDERSON & KARRENBERG
Thomas R. Karrenberg, #3726
John P. Mullen, #4097
Heather M. Sneddon, #9520
700 Chase Tower
50 West Broadway
Salt Lake City, UT 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Defendant and Counterclaim-Plaintiff Novell, Inc.**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>      Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>NOVELL, INC., a Delaware corporation,<br><br>      Defendant and Counterclaim-Plaintiff. | **NOVELL'S TRIAL BRIEF**<br><br>*[REDACTED pursuant to the August 2, 2006 Stipulated Protective Order]*<br><br>Case No. 2:04CV00139<br><br>Judge Dale A. Kimball |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

CLAIMS AT ISSUE ........................................................................................................... 2

    A.    Fourth Claim: Declaratory Relief ...................................................................... 2

    B.    Sixth, Seventh, and Eighth Claims: Unjust Enrichment, Breach of Fiduciary Duty, Conversion ............................................................... 3

    C.    Claims Not Set for Trial .................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I.    SCOSOURCE WAS A CAMPAIGN TO LICENSE SVRX. ................................. 3

II.    NOVELL IS ENTITLED TO THE SCOSOURCE LICENSING REVENUE. ........................................................................................................... 5

    A.    Any Doubt or Ambiguity as to Entitlement to SCOsource Revenue Must Be Resolved in Novell's Favor. ............................................... 5

    B.    Novell Is Entitled to the Microsoft SCOsource Revenue. .............................. 8

    C.    Novell Is Entitled to the Sun SCOsource Revenue. ...................................... 10

    D.    Novell Is Entitled to the Other SCOsource Revenue. ................................... 12

    E.    SCO Is Not Entitled to Keep 5% of the SVRX License Revenue. .............................................................................................................. 13

    F.    Novell Is Entitled to Prejudgment Interest at 7%. ....................................... 13

III.    SCO WAS WITHOUT AUTHORITY TO ENTER INTO THE SCOSOURCE LICENSES. ................................................................................ 14

IV.    SCO'S AFFIRMATIVE DEFENSES HAVE NO MERIT. ................................. 16

    A.    Novell Is Not Estopped from Pursuing Its Fiduciary Duty Claims Against SCO. ..................................................................................... 16

    B.    Novell Has Acted with "Clean Hands." ......................................................... 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Belling v. Croter,*
  57 Cal. App. 2d 296 (1943) ..............................................................................................19

*Bullis v. Security Pac. Nat'l Bank,*
  21 Cal. 3d 801 (1978) ..............................................................................................13-14

*Cassinos v. Union Oil Co. of Cal.,*
  14 Cal. App. 4th 1770 (1993) ...................................................................................14

*Evolution, Inc. v. Prime Rate Premium Fin. Corp.,*
  No. 03-2315-KHV, 2004 U.S. Dist. LEXIS 25017 (D. Kan. Aug. 13, 2004) ...................9

*Feduniak v. California Coastal Comm'n,*
  148 Cal. App. 4th 1346 (2007) ...................................................................................17

*Hobbs v. Bateman Eichler, Hill Richards, Inc.,*
  164 Cal. App. 3d 174 (1985) ............................................................................... 17-18

*Irwin v. Mascott,*
  112 F. Supp. 2d 937 (N.D. Cal. 2000) ......................................................................14

*Kennard v. Glick,*
  183 Cal. App. 2d 246 (1960) ........................................................................................7

*Kim v. Fujikawa,*
  871 F.2d 1427 (9th Cir. 1989) .....................................................................................7

*Leigh v. Engle,*
  727 F.2d 113 (7th Cir. 1984) .......................................................................................7

*Lentz v. McMahon,*
  49 Cal. 3d 393 (1989) ................................................................................................17

*Nordahl v. Dep't of Real Estate,*
  48 Cal. App. 3d 657 (1975) .......................................................................................14

*Reynolds v. Roll,*
  122 Cal. App. 2d 826 (1954) .....................................................................................19

*Rosenfeld, Meyer & Susman v. Cohen,*
  191 Cal. App. 3d 1035 (1987) ..................................................................................6-7

*Rosenfeld v. Zimmer,*
  116 Cal. App. 2d 719 (1953) .....................................................................................19

*Sheldon v. Metro-Goldwyn Pictures, Corp.,*
    106 F.2d 45 (2d Cir. 1939) ..................................................................................... 6

*Stan Lee Trading, Inc. v. Holtz,*
    649 F. Supp. 577 (C.D. Cal. 1986) ...................................................................... 14

*Unisys Corp. Retiree Med. Benefits Litig.,*
    MDL NO. 969, 2000 U.S. Dist. LEXIS 22347 (E.D. Pa. Apr. 25, 2000) ............ 7

*Watson v. Poore,*
    18 Cal. 2d 302 (1941) .......................................................................................... 19

## STATUTES

Cal. Civ. Code
    § 3287 ................................................................................................................... 13
    § 3288 ................................................................................................................... 13
    § 3336 ................................................................................................................... 14
    § 3517 ................................................................................................................... 18

Cal. Evid. Code
    § 623 ..................................................................................................................... 16

## INTRODUCTION

This Court has held that any contract "relating to" the SVRX releases listed in the APA is an SVRX License, that the Sun and Microsoft SCOsource licenses are SVRX Licenses, and that SCO breached its fiduciary duties by failing to disclose those licenses and by failing to remit appropriate revenue from those licenses. The principal questions that remain for trial are:

- What portion of the revenue from the Sun and Microsoft SCOsource licenses has SCO wrongly retained?

- Are SCO's other SCOsource licenses SVRX Licenses and, if so, what portion of the revenue from those SCOsource licenses has SCO wrongly retained?

- Did SCO have the authority to enter into the SCOsource licenses, including those with Sun and Microsoft?

As the Court may have surmised from the motion *in limine* briefing, neither Novell nor SCO intends to come into court and argue, *e.g.*, "The evidence definitively establishes Novell is entitled to precisely 98% of this license's revenue, 88% from this license, etc." Instead, SCO intends to argue that it is entitled to most, if not all, of the SCOsource licensing revenue, and Novell intends to argue the opposite. Novell believes the evidence presented at trial will paint Novell's position as *considerably* more credible.

At trial, the evidence will show that:

- SCO approached Novell before beginning the SCOsource licensing campaign and asked Novell to join in that effort;

- Novell refused to join the SCOsource campaign but SCO went ahead anyway;

- The SCOsource campaign was based entirely on claims that Linux infringed SVRX copyrights;

- SCO has never claimed that any party infringed SCO's UnixWare rights;

1

- The focus of the specific SCOsource licenses SCO executed is SVRX rights, not UnixWare rights; and
- SCO never remitted to Novell any portion of the SCOsource revenue — to the contrary, in violation of its fiduciary duties, SCO consistently refused to disclose the SCOsource contracts.

Novell acknowledges there is ambiguity in this picture. The law is clear, however, that as Novell's fiduciary and as the party at fault for introducing any apportionment ambiguity into the SCOsource licenses, SCO must bear the burden of apportionment and any doubts as to entitlement to particular licensing revenue must be decided against SCO.

In the face of such evidence, SCO persists in arguing that SVRX played only an incidental role in SCOsource and that it was therefore authorized to enter into the SCOsource licenses, notwithstanding the APA's general prohibition against SCO entering into new SVRX Licenses. Because the evidence will demonstrate that SVRX was at the heart of SCOsource, it cannot be that SVRX played only an "incidental" role in SCOsource licenses. Novell is therefore entitled to a declaration that SCO was without authority to enter into the SCOsource licenses.

## CLAIMS AT ISSUE

### A.    Fourth Claim:  Declaratory Relief

At trial, Novell will seek a declaration that SCO had no authority to enter into the Sun, Microsoft, and other SCOsource licenses. The Court has already held that the Sun and Microsoft SCOsource licenses are SVRX Licenses. At trial, Novell will prove that the other SCOsource licenses are also SVRX Licenses. Novell will then prove that none of the exceptions to the APA's prohibition against SCO entering into or modifying SVRX Licenses apply — *i.e.,* that Novell did not consent, that these licenses were not merely "incidental" to SCO's right to enter into UnixWare licenses, and that the licenses are not "additional CPU" licenses.

In addition, Novell will demonstrate it is entitled to a declaration that SCO had no authority to enter into the Sun SCOsource license because that agreement "concerned" a buy-out and SCO did not seek Novell's approval before entering into the Sun SCOsource license.

### B.    Sixth, Seventh, and Eighth Claims:  Unjust Enrichment, Breach of Fiduciary Duty, Conversion

The Court has resolved any question as to SCO's liability for unjust enrichment, breach of fiduciary duty, and conversion as to the Sun and Microsoft SCOsource licenses. (Memorandum Decision and Order, Docket No. 377 ("Order"), at 97 ("SCO's conduct also amounts to a breach of fiduciary duty, conversion, unjust enrichment, and breach of express contract").)  As to the Sixth, Seventh, and Eighth Claims, the only issue left for trial on the Sun and Microsoft SCOsource licenses is therefore the proper apportionment of the license revenue. The trial will also address whether SCO's remaining SCOsource agreements licensed SVRX and, if so, the amount of revenue that should be apportioned to Novell from those agreements. As discussed below, Novell need only prove up the total amount of revenue SCO received from the SCOsource licenses, and the burden then shifts to SCO to prove what amount is not Novell's. The evidence will show that the majority of the SCOsource revenue is in fact SVRX Royalties.

### C.    Claims Not Set for Trial

Pursuant to agreement or Court order, Novell's First, Second, Third, Fifth, and Ninth Claims are not set for trial.  Novell will also not seek punitive damages.

ARGUMENT

## I.    SCOSOURCE WAS A CAMPAIGN TO LICENSE SVRX.

SCOsource was, fundamentally, a campaign to extract licensing revenue based on SCO's now-rejected claim to own the SVRX copyrights.  (Order at 29 ("SCOsource . . . was an effort to obtain license fees from Linux users based on claims to Unix System V intellectual property.").) From start to finish, SCO never claimed SCOsource had anything to do with SCO's UnixWare derivative rights, and any attempt by SCO to recast SCOsource at trial should fail.

3

In late 2002, SCO approached Novell and asked Novell to be part of a campaign to extract licenses from the Linux community based on supposed infringement of the SVRX copyrights. Novell refused to cooperate in the scheme. In early 2003, just before SCOsource was formally launched, SCO's intellectual property consultant Michael Anderer reviewed the APA and warned Darl McBride, "We really need to be clear on what we can license. It may be a lot less than we think." (Order at 28, citing NOV-EX-166.) As a consequence, Mr. Anderer counseled further negotiations with Novell, in the hopes that SCO could convince Novell that revenue sharing from SCOsource would be a "win-win" proposition with "upside" for Novell. (NOV-EX-167.)

In January 2003, SCO nevertheless launched SCOsource without Novell's consent. From the start, it was clear that SCOsource was an SVRX licensing campaign. Indeed, the name for the first iteration of the SCOsource program was "SCO System V for Linux." (NOV-EX-162, -163, -183.) One of the first major acts SCO undertook as part of SCOsource was to send a letter to every Fortune 1000 company. (NOV-EX-192, -193, -194, -195.) In that letter, SCO asserted:

> We have evidence that portions of UNIX System V software code have been copied into Linux and that additional other portions of UNIX System V software code have been modified and copied into Linux, seemingly for the purposes of obfuscating their original source.

(NOV-EX-194.) SCO later followed up on that correspondence with another, more specific letter identifying particular SVRX files, claiming:

> [A]ny distribution of Linux by a software vendor or a re-distribution of Linux by an end user that contains any of the identified System V code violates SCO's rights under the DMCA, insofar as the distributor knows of these violations.

(NOV-EX-346.)

SCO rarely, if ever, used the phrase "UnixWare" when describing the intellectual property involved in the SCOsource campaign, and never used that phrase when describing Linux's supposed infringement of the UNIX copyrights.[1]

## II.    NOVELL IS ENTITLED TO THE SCOSOURCE LICENSING REVENUE.

The evidence presented at trial will show that the bulk of the money SCO collected in its SCOsource campaign was in fact SVRX Royalties and that Novell is entitled to restitution of this money.

### A.    Any Doubt or Ambiguity as to Entitlement to SCOsource Revenue Must Be Resolved in Novell's Favor.

As the plaintiff, Novell bears the burden to make out its *prima facie* case — to show that SCO entered into SVRX Licenses, that SCO received SVRX Royalties, and that SCO did not remit those SVRX Royalties. The evidence presented at trial will establish such a case. The law is clear, however, that where a fiduciary commingles its own funds with those of its agent, it is the fiduciary's obligation to untangle the funds. Novell need only prove up the *total* amount of revenue SCO received, and the burden then shifts to SCO to show what amount is *not* Novell's.

Any other result would be manifestly unfair. Novell is not the author of the SCOsource licenses — instead, SCO did its best to keep the terms of those licenses secret from Novell. If it is difficult to separate out what is SCO's from what is Novell's in those licenses, that is SCO's fault *alone*. To place the burden of doubts on Novell would reward SCO for its breach of

REDACTED

5

fiduciary duty and encourage fiduciaries to convert agents' funds in ways that make apportionment difficult. Indeed, this is one of the primary benefits of the APA's requirement for Novell's prior approval of SVRX Licenses — it allows the parties to work out a fair apportionment of licensing revenue ahead of time and structure licenses to make clear each party's rights.

Faced with similar questions in the context of a copyright infringement accounting, Judge Learned Hand held:

> [T]he defendants must be content to accept much of the embarrassment resulting from mingling the plaintiff's property with their own. We will not accept the expert's testimony at its face value; we must make an award which by no possibility shall be too small. It is not our best guess that must prevail, but a figure which will favor the plaintiffs in every reasonable chance of error.

*Sheldon v. Metro-Goldwyn Pictures, Corp.*, 106 F.2d 45, 51 (2d Cir. 1939). Similarly, *Rosenfeld, Meyer & Susman v. Cohen*, 191 Cal. App. 3d 1035 (1987), involved the dissolution of a law firm. The court held that, in breach of their fiduciary duties, one set of partners (the "RMS" partners) withheld partnership revenue from a second set (the "C&R" partners). Separation of the monies involved was complicated by the fact that some revenue stemmed from post-dissolution work (to which, like SCO, only the RMS partners were entitled) and pre-dissolution work (to which, like Novell, the C&R partners were entitled). Given the fiduciary relationships involved, the trial court placed the burden of apportionment on the RMS partners, with doubts decided against them. The appellate court affirmed:

> The position of RMS was not unlike that of other trustees who fail to keep proper records of the dates and amounts of receipts and expenses; such fiduciaries have the burden of establishing that data and, upon their failure to do so, a computation may be made on the basis of gross receipts, even though that approach is unfavorable to them.
>
> . . .
>
> Surely, where a fiduciary has a legal duty to allocate receipts between those in which its beneficiary has some interest and those

6

> in which the beneficiary has none, and is fully and singularly capable of making that allocation but fails to do so, a court is justified in calling upon the fiduciary to bear the burden of differentiation at trial . . . .
>
> Except for a few accounts, for which RMS did prove that percentage fee receipts were the product of post dissolution work, RMS failed to bear its burden at trial. As a result, the trial court correctly used the balance of the percentage fee income as the base for allocating the partners' shares.

*Id.* at 1051-52; *see also Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir. 1989) ("In determining the amount that a breaching fiduciary must restore to the Funds as a result of a prohibited transaction, the court should resolve doubts in favor of the plaintiffs." (internal quotation and citation omitted)); *Leigh v. Engle*, 727 F.2d 113, 138-39 (7th Cir. 1984) ("the burden is on the defendants who are found to have breached their fiduciary duties to show which profits are attributable to their own investments apart from their control of the Reliable Trust assets . . . . [W]hile the district court may be able to make only a rough approximation, it should resolve doubts in favor of the plaintiffs"); *In re Unisys Corp. Retiree Med. Benefits Litig.*, MDL NO. 969, 2000 U.S. Dist. LEXIS 22347, at *15 (E.D. Pa. Apr. 25, 2000) ("[O]nce a plaintiff has established breach and resulting harm, the breaching fiduciary has the burden of resolving any uncertainty pertaining to the extent of that harm.") (attached hereto as Ex. 1); *Kennard v. Glick*, 183 Cal. App. 2d 246, 250-51 (1960) ("An agent who fails to keep an account raises thereby a suspicion of infidelity or neglect, creates a presumption against himself, and brings upon himself the burden of accounting to the utmost for all that has come into his hands; and in such case every doubt will be resolved against the agent, and in favor of the principal . . . .").

SCO has attempted to distinguish these cases by inventing a distinction between uncertainty caused by the mingling of revenue from multiple sources (*e.g.*, the new and old business in *RMS*) and uncertainty caused by the mingling of revenue within one source (*e.g.*, the Microsoft SCOsource license). (SCO's Reply Memo. in Further Support of SCO's Motion *In Limine* Regarding Apportionment of 2003 Microsoft and Sun Agreements, Docket No. 449, at

3.) Nothing in these cases supports such a distinction, however, and SCO cited no cases of its own in support. It would be surprising if a fiduciary could force its principal to pay the price for the uncertainty caused by its own wrongdoing by simply commingling multiple revenue streams in one agreement.

**B.      Novell Is Entitled to the Microsoft SCOsource Revenue.**

SCO has consistently described the license with Microsoft as part of its SCOsource campaign, and has never classified any portion of the revenue it collected from Microsoft as "UnixWare revenue" in its SEC filings. (NOV-EX-304.) Microsoft paid SCO REDACTED for its SCOsource license, as follows:

REDACTED

REDACTED

REDACTED

C.    Novell Is Entitled to the Sun SCOsource Revenue.

REDACTED

REDACTED

(NOV-EX-327.) Darl McBride, SCO's CEO, was asked about this aspect of Sun's SCOsource license, and confirmed that SCO believes the license conveyed the right to Sun to open source Solaris. (NOV-EX-327, -341.) Sun's CEO, Scott McNealy, describes the license in the same way:

> There were hundreds of encumbrances to open sourcing Solaris.
> Some of them we had to buy out, others we had to eliminate. We
> had to pay SCO more money so we could open the code — I
> couldn't say anything about that at the time, but now I can tell you
> that we paid them that license fee to expand our rights to the code,"
> McNealy said, referring to the February 2003 expanded Unix
> SVR4 license rights purchase from the SCO Group.

(NOV-EX-341.)

REDACTED

**D.    Novell Is Entitled to the Other SCOsource Revenue.**

As noted above, SCO sent letters to thousands of Linux users threatening suit over the

SVRX code supposedly in Linux. [REDACTED] such users took a SCOsource license, each under

similar terms.  These licenses grant, with certain limitations, the "right and license to use . . .

SCO IP."  (NOV-EX-346.)  The definition of "SCO IP" makes clear that these licenses convey

SVRX rights:

> **"SCO IP" means the SCO UNIX®-based Code** alleged by SCO
> to be included, embodied, or otherwise utilized in the Operating
> System.
>
> . . .
>
> **"UNIX-based Code"** means any Code or Method that:  (i) in its
> literal or non-literal expression, structure, format, use, functionality
> or adaptation (ii) is based on, developed in, derived from or is
> similar to (iii) any Code contained in or Method devised or
> developed in (iv) <u>**UNIX System V**</u> or UnixWare®, or (v) any
> modification or derivative work based on or licensed under <u>**UNIX
> System V**</u> or UnixWare.

(NOV-EX-346 (emphasis added).)

In total, SCO entered into the following additional SCOsource licenses:

REDACTED



(NOV-EX-365, -391, -411.)

As SCO itself admits "[t]he central feature of the other SCOsource agreements is the covenant not to sue and the waiver of claims by SCO for the companies' internal Linux usage." (SCO's Memo. in Opp. to Novell's Motion *In Limine* to Preclude SCO from Contesting Licenses Conveying SVRX Rights are "SVRX Licenses," Docket No. 421, at 3.)  Because SCO has never contended UnixWare is in Linux, that "covenant not to sue" and "waiver of claims" must concern only SVRX.  Novell is therefore entitled to the entirety of this SCOsource revenue.

**E.    SCO Is Not Entitled to Keep 5% of the SVRX License Revenue.**

As the Court is aware, under the APA, SCO undertook a fiduciary duty to collect and remit 100% of the SVRX Royalties. "In consideration of" SCO's exercise of its fiduciary duties, SCO is ordinarily entitled to "an administrative fee equal to 5% of such SVRX Royalties." (NOV-EX-1 (APA) at § 4.16(a).)  Here, the Court has found that, as a matter of law, SCO breached its fiduciary duties and converted revenue meant for Novell.  (Order at 97.)  Given that breach, SCO is not entitled to any percentage of the SVRX Royalties and the Court should therefore make no 5% deduction from any restitution granted Novell.

**F.    Novell Is Entitled to Prejudgment Interest at 7%.**

California law permits the award of 7% prejudgment interest at the discretion of the Court.  Cal. Civ. Code §§ 3287, 3288; *Bullis v. Security Pac. Nat'l Bank*, 21 Cal. 3d 801, 814

13

n.16 (1978) ("While section 3288 only grants such authority to the 'jury,' the trial court, when

acting as the trier of fact, may award prejudgment interest under this section."). California law

*mandates* prejudgment interest where the defendant is found to have converted funds. Cal. Civ.

Code § 3336; *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 582-83 (C.D. Cal. 1986).

Whether pursuant to Section 3336's mandate or pursuant to the Court's discretion, an award of

prejudgment interest is appropriate here to ensure that SCO does not reap the benefit of the time

value of the SVRX Royalties that it wrongfully withheld from Novell. *See, e.g., Cassinos v.

Union Oil Co. of Cal.*, 14 Cal. App. 4th 1770, 1788-90 (1993) (awarding interest pursuant to Civ.

Code § 3288 on claim seeking disgorgement of defendant's unjust enrichment); *Irwin v. Mascott*,

112 F. Supp. 2d 937, 955-56 (N.D. Cal. 2000) ("prejudgment interest is also due on money paid

as restitution" under Civ. Code § 3287(a)); *Nordahl v. Dep't of Real Estate*, 48 Cal. App. 3d 657,

665 (1975).

Novell provided SCO with calculations of prejudgment interest as part of Mr. Terry

Musika's expert report. Novell will provide the Court with a calculation of the appropriate

prejudgment interest with its proposed final verdict once it is known what recovery the Court

finds appropriate following trial.

## III.     SCO WAS WITHOUT AUTHORITY TO ENTER INTO THE SCOSOURCE LICENSES.

In addition to the return of SCOsource revenue wrongfully withheld, Novell seeks a

declaration that SCO was without authority to enter into the SCOsource licenses. Novell's

entitlement to such a remedy is straightforward. This Court has already held that the Microsoft

and Sun SCOsource licenses are SVRX Licenses, and has barred SCO from contesting that

ruling at trial. (Order at 95; September 9, 2007 Order ("MIL Order"), Docket No. 453, at 16-17.)

The evidence will show that SCO's other SCOsource licenses also conveyed SVRX rights and

that they are therefore SVRX Licenses.

SCO is generally barred from modifying existing SVRX Licenses and from entering into new SVRX Licenses.  (Order at 92.)  As amended, the APA permits only three exceptions:

SCO may enter into SVRX Licenses with Novell's written permission.  Novell never consented to the SCOsource licenses, and SCO has not suggested otherwise.  (Order at 41.)

SCO may enter into SVRX Licenses "incidentally involved through [SCO's] rights to sell and license" UnixWare.  The evidence cited and discussed above amply demonstrates that SVRX played more than an "incidental" role in the SCOsource licenses — it was the very heart of SCOsource.

And SCO may enter into SVRX Licenses "to allow a licensee under a particular SVRX License to use the source code of the relevant SVRX product(s) on additional CPU's or to receive an additional distribution, from [SCO], of such source code."  The SCOsource licenses are not such "additional CPU" licenses.  In the case of Sun and Microsoft, the SCOsource licenses convey broad rights to use, distribute, sublicense, etc. SVRX in both binary and source form, and contain no mention of CPU limitations.  The other SCOsource licenses permit the licensee to use SVRX in Linux and, again, contain no CPU limitations.  With no applicable exception, the APA's general bar applies and SCO was therefore without authority to enter into the SCOsource licenses.

SCO was without authority to enter into the Sun SCOsource license for an additional, independent reason.  Before entering into "any potential transaction with an SVRX licensee which concerns a buy-out of any such licensee's royalty obligations," SCO must notify Novell in writing and obtain Novell's consent.  (NOV-EX-40 (Am. 2) at § B.)  There is no dispute that Sun's 1994 agreement with Novell was a "buy-out," as that term is used in Amendment No. 2.  Sun's 2003 SCOsource license explicitly acknowledges that it is intended to "amend and restate" the 1994 buy-out agreement.  (Order at 94.)  By definition, Sun's SCOsource license therefore "concerns" a buy-out, and SCO was required to follow the additional restrictions imposed by

Amendment No. 2 on transactions that concern buy-outs. The evidence will establish that SCO did not inform Novell in writing of its intention to enter into the Sun SCOsource agreement and did not obtain Novell's consent to that agreement. For this additional reason, SCO was without authority to enter into the Sun SCOsource agreement.

## IV.    SCO'S AFFIRMATIVE DEFENSES HAVE NO MERIT.

During meet and confer on the pretrial order, SCO articulated two affirmative defenses it intends to raise at trial: estoppel and unclean hands. Neither has any application here.

As a preliminary matter, both defenses would appear to concern Novell's *entitlement* to equitable relief, not the precise amount of that relief. As that entitlement has already been determined as a matter of law, it is unclear what application these defenses could have now. Put otherwise, if SCO wanted to raise these defenses, it should have done so in the motion for summary judgment briefing.

### A.    Novell Is Not Estopped from Pursuing Its Fiduciary Duty Claims Against SCO.

SCO's draft pretrial order suggested that SCO will assert that Novell is estopped from seeking the SVRX Royalties withheld by SCO. SCO has, in the past, asserted that Novell's purported failure to ask for SVRX Royalties from licenses that also license UnixWare is evidence that Novell is not entitled to such revenue. SCO made that argument in an effort to graft "existing at the time of the APA" into the definition of "SVRX License," which the Court rejected as a matter of law. (Order at 90-93.) SCO bears an even greater burden to show that the same supposed facts make out a case for estoppel — a burden that SCO cannot hope to carry.

Estoppel arises out of the rule that "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid. Code § 623. To make out estoppel, "four elements must be present . . . (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct

shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Lentz v. McMahon*, 49 Cal. 3d 393, 399 (1989). SCO would therefore have to show that Novell knew whether and to what extent SCO collected but did not remit SVRX Royalties, that Novell failed to seek such Royalties and intended for that failure to be taken by SCO as indication it could keep the money, and that SCO relied on Novell to its injury.

It is obviously impossible for SCO to make out those elements as to the SCOsource revenue — as soon as Novell found out about that, it sent repeated letters to SCO demanding Novell's proper share. (NOV-EX-220, -267, -280, -293, -297, -303, -317.) What SCO must intend to argue, instead, is that Novell's purported conduct concerning earlier licenses, not at issue in this trial, waived Novell's right to insist on apportionment of the SCOsource revenue. If that is not the very argument this Court has already rejected as a matter of law, it certainly bears a striking resemblance.

Assuming the law of the case does not bar estoppel here, though, SCO still cannot succeed. It cannot point to any affirmative conduct by Novell waiving its right to SVRX Royalties. SCO is therefore confined to arguing that Novell's *silence* when supposedly presented with evidence that SCO withheld SVRX Royalties estops Novell now. "Estoppel by silence" is especially difficult to show. Courts typically require a duty to speak before imparting preclusive effect to silence. *See, e.g., Feduniak v. California Coastal Comm'n*, 148 Cal. App. 4th 1346, 1362 (2007) ("It is settled that when the party to be estopped does not say or do anything, its silence and inaction may support estoppel only if it had a duty to speak or act under the particular circumstances."). That is especially true in fiduciary relationships, where the presumption is that the principal need *not* investigate the activities of its agent and can instead rely on the agent to fulfill its duties faithfully. *Hobbs v. Bateman Eichler, Hill Richards, Inc.*,

17

164 Cal. App. 3d 174, 201-202 (1985) ("Where there is a fiduciary relationship, the usual duty of diligence to discover facts does not exist."). As Novell has no "duty to speak" here, it cannot be estopped by its supposed silence.

Even if SCO surmounted all these obstacles, the facts simply do not show Novell silence in the face of knowledge that SCO retained SVRX Royalties from mixed licenses. SCO has presented no evidence that Novell was aware of even one such circumstance. The record instead shows that Novell's auditors reviewed royalty reports prepared by SCO, royalty reports from third-party licensees, and other payment and financial records, and not the terms of the actual SCO UnixWare licenses. (NOV-EX-84 (Mar. 2, 1999 Audit Report) ("[t]he audit included a review of royalty reports, third party royalty reports, summary reports, Novell cash deposit reports, cash reconciliations, accounts receivable reports, customer lists, other financial records and SCO's customer audits").) Novell is not aware of any evidence that Novell saw any of SCO's UnixWare licenses that conveyed SVRX rights. SCO's briefing is to the same effect.[2]

## B.    Novell Has Acted with "Clean Hands."

SCO's draft pretrial order also suggested that SCO intends to assert that the equitable remedies Novell seeks are barred under the doctrine of unclean hands. As partially codified in California Civil Code section 3517, this doctrine provides that "[n]o one can take advantage of his own wrong." Aside from listing "unclean hands" in its Answer, SCO has never mentioned this defense and has therefore never articulated what conduct by Novell SCO claims bars the recovery of equitable remedies. If SCO had a meritorious unclean hands defense, it is surprising that SCO did not raise it in the motion for summary judgment briefing.

---

[2] SCO's Memorandum in Opposition to Novell's Motion for Partial Summary Judgment or Preliminary Injunction and in Support of SCO's Cross Motion for Summary Judgment or Partial Summary Judgment, Docket No. 183, at ¶ 60 (noting that Novell representatives received only reports of binary royalties from SVRX licenses).

In any event, Novell has always acted with good faith toward SCO (*see, e.g.,* Order at 65), and the cases actually granting such a defense make clear that no conduct by Novell rises to the level of unclean hands. *See, e.g., Rosenfeld v. Zimmer*, 116 Cal. App. 2d 719, 722 (1953) ("A court of equity will not assist a party to a fraudulent scheme to secure the objective of such plan."); *Reynolds v. Roll*, 122 Cal. App. 2d 826, 836 (1954) ("courts will not lend assistance to persons whose claim for relief rests on an illegal transaction" (internal quotation marks and citation omitted)). Even where such conduct is shown, it must be part of the same transaction at issue, and the nature of the plaintiff's conduct must be *worse* than that of the defendant. *See, e.g., Watson v. Poore*, 18 Cal. 2d 302, 313 (1941) ("[I]mproper conduct not necessarily connected with the transaction particularly involved . . . is not a reason for denying equitable relief on the ground of unclean hands."); *Belling v. Croter*, 57 Cal. App. 2d 296, 304 (1943) (Unclean hands does not apply "if it be shown that [the plaintiff] is the one 'least at fault,' and that the party against whom relief is sought was guilty of wrongdoing in respect to the same matters and is 'most in fault.'").

It is therefore clear that no affirmative defenses protect SCO's conduct here.

## CONCLUSION

For the reasons stated above, Novell is entitled to:

- Apportionment of the SCOsource revenue in an amount to be determined by the Court, without any 5% administrative fee deduction;

- Prejudgment interest at 7%; and

- A declaration that SCO exceeded its authority in entering into the SCOsource licenses.

Based on that recovery, Novell anticipates seeking additional relief in its post-trial briefing, such as a constructive trust. Consideration of such relief is not necessary at trial, which

per the Court's direction will focus on the proper apportionment of the SCOsource revenue and on Novell's entitlement to declaratory relief.

DATED:    September 14, 2007

ANDERSON & KARRENBERG

By:    _____/s/ Heather M. Sneddon_____

Thomas R. Karrenberg
John P. Mullen
Heather M. Sneddon

-and-

MORRISON & FOERSTER LLP
Michael A. Jacobs, *pro hac vice*
Eric M. Acker, *pro hac vice*
Kenneth W. Brakebill, *pro hac vice*
Marc J. Pernick, *pro hac vice*
David E. Melaugh, *pro hac vice*

**Attorneys for Defendant and
Counterclaim-Plaintiff Novell, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of September, 2007, I caused a true and

correct copy of **NOVELL'S TRIAL BRIEF** *[REDACTED pursuant to the August 2, 2006*

*Stipulated Protective Order]* to be served to the following:

*Via CM/ECF:*

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stuart H. Singer
William T. Dzurilla
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301

David Boies
Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Devan V. Padmanabhan
John J. Brogan
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55401

*Via U.S. Mail, postage prepaid:*

Stephen Neal Zack
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

_____/s/  Heather M. Sneddon_____