LEXSEE 2000 US DIST LEXIS 22347

**IN RE UNISYS CORPORATION RETIREE MEDICAL BENEFITS LITIGATION; THIS DOCUMENT RELATES TO: ALL ACTIONS EXCEPT MERCURE**

**MDL NO. 969**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2000 U.S. Dist. LEXIS 22347*

**April 25, 2000, Decided
April 25, 2000, Filed**

**DISPOSITION:** [*1] Defendants' motion for summary judgment on breach of fiduciary duty claims of Sperry Vickers Retirees granted in part and denied in part.

**JUDGES:** BRUCE W. KAUFFMAN, J.

**OPINION BY:** BRUCE W. KAUFFMAN

**OPINION**

*MEMORANDUM & ORDER*

Kauffman, J.

**April 25, 2000**

Plaintiff retirees brought this class action against their former employer, Unisys Corporation ("Unisys"), [1] pursuant to the Employee Retirement Income Security Act of 1974, *29 U.S.C. § 1001 et seq.* ("ERISA"). Before the Court is the "Motion of Defendant Unisys Corporation for Summary Judgment on Breach of Fiduciary Duty Claims of Sperry Vickers Retirees." For the reasons set forth below, the Motion will be granted in part and denied in part. [2]

[1] Unisys is the product of a 1986 merger between the Sperry and Burroughs Corporations. The class of plaintiffs includes former employees of all three corporations. Unless otherwise stated, the term "Unisys" will be used to refer to all three companies.

[2] The motion will be granted with respect to the breach of fiduciary duty claims of Nell Armstrong, Luther Byrd, Joseph Fischer, Charles Haynie, Jean Hensley, Frank Herta, Preston Holman, John Jordan, Virgil Leming, Robert McCullough, Daniel Manion, Gordon Mitchell, Teddy Mullins, Alexander Pittman, Dennis Royston, Donald Russell, Hugh Seanard, Robert Stevens, Jack Thompson, Chugh Sun, John Shorkey, Donald Van Becelaere, and Donald Young.

The motion will be denied with respect to the breach of fiduciary duty claims of Robert McGee because those claims are not ripe for summary judgment. Unisys's motion to dismiss his claim was denied without prejudice by Order of this Court dated September 17, 1999, in order to permit him to complete discovery. Plaintiffs claim that McGee is currently in the process of answering Unisys's interrogatories. McGee shall respond to Unisys's interrogatories no later than April 30, 2000, or his claim will be dismissed.

[*2] **I. RELEVANT FACTS** [3]

[3] For a recitation of the lengthy factual background in this action, *see In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 837 F. Supp. 670, 672 (E.D. Pa. 1993), aff'd, 61 F.3d 896 (3d Cir.1995).*

In September 1986, Sperry Corporation ("Sperry") and Burroughs Corporation ("Burroughs") merged to form Unisys. Before the merger, Sperry included the following business units or divisions: Sperry Division, Sperry Univac, Sperry New Holland, Sperry Vickers, Sperry Flight Systems and Sperry Remington. In addition, Sperry maintained corporate Executive Offices. Until 1984, each Sperry division and the Executive Of-

fices maintained its own medical benefits program. Each was described in a separate summary plan description. [4]

> 4  A summary plan description is a statutorily required plan document, *see 29 U.S.C. §§ 1022, 1024(b)(1)*, the purpose of which is "to communicate to beneficiaries the essential information about the plan." *Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83, 131 L. Ed. 2d 94, 115 S. Ct. 1223 (1995)*.

[*3] Sperry Vickers ("Vickers") manufactured fluid power systems. Until March 1979, Vickers provided post-retirement medical benefits only through age 65. In February 1979, Vickers announced in a letter to its active employees that effective March 1, 1979, it was providing increased medical benefits. One of the improvements was that medical coverage would no longer cease when an individual became eligible for Medicare (*i.e.,* in most cases at age 65) but rather would cease "at death." In 1980, Vickers extended the same improvements to those who had retired before the 1979 announcement. Although members of Vickers management considered, and often communicated to employees, that these changes to post-retirement medical benefits constituted a new "plan," the new language was simply an amendment to the pre-existing plan.

The signatory of the 1979 announcement letter sent to active employees was Lawrence Lyng ("Lyng"), Vice President of Personnel for Vickers. Lyng worked for Vickers from 1978 to January 1, 1984, when Vickers was sold by Sperry to Libbey Owens Ford. He retired from Vickers in 1991. Lyng was a member of the Sperry Corporation Personnel Council from 1979 to 1983. At the time [*4] of the sale of Vickers to Libbey Owens Ford, Lyng was Vice President and General Manager of North American Commercial Operations for Vickers. Before assuming this position, from 1975 through 1982, Lyng was Vice President of Personnel for Vickers. The signatory of the 1980 announcement letter sent to retirees was John T. Burns ("Burns"), then President of Vickers.

The last summary plan description, published for Vickers in 1977, contained a standard reservation of rights clause. The clause read in relevant part: "Sperry Rand Corporation hopes to be able to continue the Plan indefinitely, but reserves the right to modify or discontinue it at any time." Vickers apparently ceased distributing the 1977 summary plan description after March 1, 1979, but all Vickers retirees that are class members in this litigation would have been provided with the 1977 summary plan description at some time during their active employment. This would be true even if an employee was last provided with the summary plan description in 1977, because an employee was only eligible to receive retiree medical benefits under the 1979-80 amendments if he or she had ten years of service.

To enroll in the Sperry Vickers [*5] Post Retirement Medical Plan, Vickers employees were required to sign a "Sperry Vickers Post Retirement Medical Insurance Card" at the time of retirement. The card, which authorized Unisys to deduct premiums from the retiree's pension payments, read:

> I desire to be insured as indicated by my signature below for post retirement group medical insurance and hereby authorize Sperry to deduct my contribution to the cost thereof from my retirement benefit payments. This request and authorization applies to any such plan of insurance *as presently constituted or hereafter changed* for which I am eligible and shall continue in force until rescinded by me in writing or until I and my designated dependents are no longer eligible for the insurance.

(emphasis added.)

Sperry sold Vickers to Libbey Owens Ford effective January 1, 1984, but retained liability for retiree medical benefits for those employees who were eligible to retire at the time of the sale, that is, those employees who had reached age 55 and had worked for Sperry for at least ten years.

In 1984, in an attempt to streamline the medical benefits plans and in response to rising medical costs, Sperry implemented [*6] Medflex, a corporate-wide medical benefits plan that applied to the entire Sperry Corporation. Medflex applied to all Sperry business units by January 1, 1984, with the exception of one sub-group of the Sperry Division, which commenced participation in Medflex on January 1, 1985.

Medflex, which was less generous than previous plans, applied to future retirees only. Existing retirees continued to receive coverage under the pre-Medflex plans. The prospective application of Medflex was consistent with Sperry's practice of not changing a retiree's medical plan. Once an employee retired, Sperry generally did not reduce his or her medical benefits.

After the 1986 merger, Unisys continued the Medflex plan for active employees and for those who retired after its implementation but before April 2, 1989. Unisys also continued all of the pre-Medflex plans for those who retired before Medflex's implementation. In the spring of 1989, Unisys created the Unisys Post-Retirement and Extended Disability Plan, which applied only to employees who retired on or after April 2, 1989. In December

Case 2:04-cv-00139-DAK-BCW   Document 467-2   Filed 09/14/2007   Page 3 of 7

Page 3
2000 U.S. Dist. LEXIS 22347, *

1990, the Financial Accounting Standards Board ("FASB") issued FASB Statement No. 106 ("FAS 106"). For fiscal **[*7]** years beginning after December 15, 1992, FAS 106 requires an employer to accrue an expense against current income for the expected future costs of post-retirement benefit obligations and to recognize on its balance sheet a liability for unfunded benefit costs. Under this new standard, an employer could no longer follow the common practice of accounting for post-retirement benefits on a "pay-as-you-go" basis. The issuance of FAS 106 was a precipitating factor in Unisys's decision to terminate all existing plans.

On November 3, 1992, Unisys publicly announced that effective January 1, 1993, it was terminating all existing medical benefits plans and replacing those plans with the new Unisys Post-Retirement and Extended Medical Plan ("the new plan"). Under the new plan, retirees were responsible for increasing levels of contribution until January 1, 1995, after which they would have to pay the full cost of their own premiums.

Since the January 1, 1993 termination of the retiree medical benefit plan, the Vickers retirees have been eligible to participate in the new plan. Some have chosen to participate and some have elected to receive coverage from another source, such as Blue Cross/ **[*8]** Blue Shield supplemental coverage. All of the Vickers retirees, but not all of their spouses, are eligible for Medicare.

## II. RELEVANT PROCEDURAL HISTORY

Nine cases challenging Unisys's decision to terminate its retiree medical benefit plans were filed in several different jurisdictions in 1992 and 1993. The Judicial Panel on Multidistrict Litigation assigned these cases to Judge Edward N. Cahn for consolidated pretrial proceedings. The parties subsequently stipulated to the transfer of the cases to Judge Cahn for all purposes.

On June 9, 1993, the Court (Cahn, C.J.) certified three classes consisting of Sperry retirees, Burroughs retirees, and Unisys retirees. Within each class, the parties identified two subgroups: "regular retirees" and retirees who retired pursuant to voluntary retirement incentive plans. The class members in each of these six subgroups asserted three claims: breach of contract; breach of fiduciary duty; and estoppel. Many of these claims have been settled or dismissed. Still outstanding, however, are the breach of fiduciary duty claims of a small Sperry "regular retiree" subgroup comprising certain former employees of the Vickers division who retired **[*9]** after Sperry sold that division to Libbey Owens Ford. [5] On August 9, 1999, Unisys filed the "Motion for Summary Judgment on Breach of Fiduciary Duty Claims of Sperry Vickers Retirees" now pending before the Court.

5 On January 5, 1999, these cases were reassigned from the Calendar of Chief Judge Cahn to the calendar of this Court.

## III. LEGAL DISCUSSION

Plaintiffs do not dispute that the medical benefit plans permitted the Company to terminate the benefits provided to retired employees. [6] Their breach of fiduciary duty claim, however, arises from alleged misrepresentations that retiree benefits were vested and therefore would never be modified or eliminated. The Vickers retirees contend that these misrepresentations led them to believe that by retiring early, they would "lock in" the lifetime coverage that they had under the then current plan. They claim that this belief caused them to retire earlier than they otherwise would have, and thus to forego future salary and pension accruals.

6 The Third Circuit has held that because the Company unambiguously reserved its right to terminate retirement benefits in reservations of rights clauses, the Sperry retirees do not have a claim for relief based on breach of contract. *See In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896 (3d Cir.1995).

## [*10] A. ELEMENTS OF PLAINTIFFS' CLAIM

To establish a claim for breach of fiduciary duty under ERISA, a plaintiff must show four elements:

> (1) the company was acting in a fiduciary capacity; (2) the company made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the company knew of the confusion generated by its misrepresentations or its silence; and (4) there was resulting harm to employees.

*International Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999) (citing *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 57 F.3d 1255, 1265 (3d Cir. 1995)).

## B. UNISYS'S ARGUMENTS REGARDING ELEMENT OF "RESULTING HARM"

Unisys argues that even if the first three elements were present in this case, the fourth element, "resulting harm," is absent because the "Sperry Vickers Post Retirement Medical Insurance Card" warned the Vickers retirees immediately before their retirements that retiree

medical benefits were subject to change. Alternatively, Unisys argues that several Vickers retirees cannot show [*11] "resulting harm" because they were either laid off, discharged, or disabled and thus ended their employment involuntarily. In addition, Unisys argues that several Vickers retirees have admitted either that any misunderstanding about retiree medical benefits did not affect the timing of their retirements or that they were aware at the time of their retirements that Unisys had reserved the right to eliminate or modify their medical benefits at any time.

**1. Burden of Proof**

At the outset, the Court must address the Vickers retirees' argument that "it is the defendant's burden, not the plaintiffs,' to 'clearly disestablish the causal connection between the fault and loss to the beneficiary.'" (Pls.' Br. at 7 (citing *Nedd v. United Mineworkers of Am., 556 F.2d 190 (3d Cir.1977)* (action brought by pensioners under § 301 of the Labor-Management Relations Act against trustees of pension plan and union for failure to pursue delinquent contributions from employers)). In support of this argument, Plaintiffs cite only two ERISA cases, *Donovan v. Bierwirth, 754 F.2d 1049 (2d Cir.1985)*, and *Leigh v. Engle, 727 F.2d 113 (7th Cir.1984)*, both [*12] of which involved the measurement of losses resulting from the improper investment of plan assets.

In *Donovan v. Bierwirth,* trustees breached a duty of loyalty to an employee stock ownership plan by making a stock purchase at prevailing prices averaging $ 38.34 per share when fair market value as determined by an expert was $ 23 per share. *754 F.2d at 1051*. Each share yielded dividends of $ 2.20 and was later sold for $ 47.55, resulting in a net profit of $ 11.41 per share. *Id.* The district court initially concluded that the plan had not sustained a loss, but the Second Circuit reversed and remanded for further consideration of damages, stating that the loss must be measured by what the plan would have earned but for the trustees' wrongful stock purchase. *Id. at 1056*. The Second Circuit further stated that if

> several alternative investment strategies were equally plausible, the [district] court should presume that the funds would have been used in the most profitable of these. The burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty. Any doubt or ambiguity [*13] should be resolved against them .... This is nothing more than application of the principle that, once a breach of trust is established, *uncertainties in fixing damages* will be resolved against the wrongdoer.

*Id. at 1057* (emphasis added) (citing *Leigh v. Engle, 727 F.2d 113, 138 (7th Cir. 1984)*; *McMerty v. Herzog, 710 F.2d 429, 431 (8th Cir.1983))*.

In *Leigh v. Engle,* beneficiaries of an employee benefit plan alleged that plan administrators and others had used plan assets to purchase stocks of companies that were targets of the defendants' investment program. *727 F.2d at 115*. The beneficiaries did not claim that money was lost through the disputed investments; indeed, the investments were profitable. *Id. at 119*. Rather, the beneficiaries claimed that their assets were put at risk to benefit the defendants. *Id.* The district court granted summary judgment for the defendants, holding, *inter alia,* that ERISA does not create a cause of action where the plan does not suffer a financial loss. *Id. at 121*. The Seventh Circuit reversed, stating, "the nature of the breach [*14] of the fiduciary duty alleged here is not the *loss* of plan assets but instead the *risking* of the trust's assets at least in part to aid the defendants in their acquisition program." *Id. at 122*. With respect to finding an appropriate measure of damages, the Seventh Circuit directed the district court to "determine whether the profits made by each defendant found to have breached his or its fiduciary duties are attributable, in whole or in part, to ... the use of the trust and its assets." *Id. at 138*. The court recognized that this would be "exceedingly difficult," and likened the problem to one in which "a trustee commingles trust assets with his or her own so that it is difficult to discern which property and profits belong to whom." *Id. at 138*. The court observed that "in a suit against the trustee, the trustee has the burden of showing which property and profits are his. The trustee is responsible both for the difficulty and for resolving it." *Id. at 138*. Based on this and other analogous problems of apportionment, the court concluded that "the burden is on the defendants who are found to have breached their [*15] fiduciary duties to show which profits are attributable to their own investments apart from their control of the [trust] assets." *Id. at 138*.

*Donovan* and *Leigh* thus hold that once a plaintiff has established breach and resulting harm, the breaching fiduciary has the burden of resolving any uncertainty pertaining to the *extent* of that harm. *See Leigh, 727 F.2d at 137-38* (discussing burdens of proof when ascertaining "an appropriate measure of damages, if any, with regard to all defendants *found to be liable as fiduciaries*" (emphasis added)). Accordingly, the Court concludes that to prevail at trial, the Vickers retirees have the burden of proving that the alleged misrepresentations were "a cause-in-fact, as well as a substantial contributing

factor in" causing them to retire prematurely. *See In re Unisys Sav. Plan Litigation, 74 F.3d 420, 445 (3d Cir. 1996)* (citing *Willett v. Blue Cross & Blue Shield of Alabama, 953 F.2d 1335, 1342 (11th Cir. 1992)* (finding that 29 U.S.C. § 1109 requires "that the breach of the fiduciary duty be the proximate cause of the losses claimed by [*16] plaintiffs-appellees."); *Brandt v. Grounds, 687 F.2d 895, 898 (7th Cir. 1982)* (finding that 29 U.S.C. § 1109 requires "a causal connection" between the breach of the fiduciary duty and the losses alleged)).

**2. The "Sperry Vickers Post Retirement Medical Insurance Card"**

Unisys does not, for purposes of the pending motion, dispute that plan administrators materially misrepresented the terms of the retiree medical benefit plan. Rather, as noted above, Unisys contends that no harm could have resulted from the alleged misrepresentations because the "Sperry Vickers Post Retirement Medical Insurance Card" warned the Vickers retirees immediately before their retirements that retiree medical benefits were subject to change. In other words, the Company contends that the card clarified the limits of coverage, and, consequently, that a rational trier of fact could not find, by a preponderance of the evidence, that Plaintiffs retired with the belief that the medical benefit coverage was guaranteed to continue without change for the duration of their lifetimes.

The giving of accurate, nonmisleading information countering earlier misrepresentations [*17] about retirement benefits is relevant in determining whether Plaintiffs can establish the element of "resulting harm." *See Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997)* (citing *Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1097, 115 L. Ed. 2d 929, 111 S. Ct. 2749 (1991)* ("While a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil.") (proxy statements)). With regard to the terminable nature of medical benefits, however, the language of the "Sperry Vickers Post Retirement Medical Insurance Card" is ambiguous and therefore would not compel a reasonable trier of fact to find the earlier misleading statements neutralized. The card did not appear specifically tailored to Plaintiffs' medical benefit plan, but rather applied to "any such plan of insurance." Moreover, the crux of the card was not an explanation of the nature of retirement benefits, but rather the obtainment of permission to deduct money for the payment of premiums. Accordingly, the Court rejects Unisys's argument [*18] that the "Sperry Vickers Post Retirement Medical Insurance Card" precludes Plaintiffs from showing that they decided when to retire based on a mistaken belief that by retiring, they would secure a nonterminable right to lifetime medical benefits. [7]

[7] Having rejected Unisys's argument about the "Sperry Vickers Post Retirement Medical Insurance Card," the Court will deny Unisys's Motion for Summary Judgment as it pertains to the following Vickers retirees: Melba Abney, William Armstrong, James Barta, Olga Bogucki, Paul Churchman, Charlie Crockett, Joseph Dean, Robert Ewer, Mary Fraser, William Frazier, Grandon Gates, Theodore Herberth, Russell Herekamp, Carl Huebner, Donald Jacobsen, James Jones, Dorothy V. La Doceur, John Landry, Arthur Lang, Lawrence Lyng, Margaret McCarry, Robert Mendrick, Cale Merrill, Richard Paul Miller, Anthony Millett, Harry Moon, Jr., Catherine Nick, George Nordenholt, Donald Olmstead, Richard Peterson, Hyman Ratner, John Ryberg, John Schmid, Edwin Shaffer, Philip Shanline, Richard Sinclair, Douglas Snow, Clifford Statler, Robert Stewart, Watson Stites, Jr., John Sullivan, Robert Totte, Norman Warren, Thomas Warren, and Walter Zoya. Because Robert McGee is still in the process of answering interrogatories, his claim is not ripe for summary judgment.

[*19] **3. Involuntary Termination**

Most of the Vickers retirees who left Unisys's employment involuntarily (because of layoffs, disability, or other reasons) cannot prove that the alleged misrepresentations about medical benefits influenced the timing of their retirements and therefore cannot show "resulting harm." *See In re Unisys Corp. Retiree Med. Benefits Litig., 957 F. Supp. 628, 642-45, 646 (E.D. Pa. 1997).* The Vickers retirees therefore concede that the Court should grant summary judgement against Plaintiffs John Jordan, Gordon Mitchell, Donald Russell, and Donald Van Becelaere, who were laid off by Unisys, and against Plaintiff Robert Stephens, would have been laid off had he not retired. Likewise, they concede that the Court should grant summary judgment against Virgil Leming, Theodore Mullins, and Alexander Pittman, who acknowledge that their employment ended involuntarily because of a disability. [8]

[8] In addition, Pittman (through his wife) and Leming admit in their interrogatory responses that misrepresentations about medical benefits did not affect the timing of their retirements. (Pittman Interrog. Resp. at 6; Leming Interrog. Resp. at 8.)

**[*20]** The Vickers retirees do not concede the claims of Plaintiff Dean Morrison ("Morrison"), Russell Herekamp ("Herekamp"), and Anthony Millett ("Millett"), however. Although Morrison's employment ended involuntarily because of a layoff, Unisys allowed him to choose between taking a reduced pension immediately (at age 60) or delaying the commencement of his pension until normal retirement age. [9] (Pl. Facts at P 110.) According to Morrison, he chose the former option because Unisys's misrepresentations had led him to believe that by accepting the reduced pension immediately, he would "lock in" the lifetime coverage that he had under the then current plan. Morrison thus has created a genuine issue of material fact regarding "resulting harm." Accordingly, the Court will deny summary judgement with respect to his claim.

> 9  Morrison was laid off by Vickers on July 25, 1986. (Morrison Dep. at 8-9, 14.) Despite being laid off, he was entitled to a pension.

Similarly, Herekamp and Millett, although disabled, were allowed **[*21]** to choose between retiring or taking other positions within Unisys that they were capable of performing. Both men have presented evidence that they chose the former option because Unisys's misrepresentations led them to believe that by retiring they would "lock in" the lifetime coverage that they had under the then current plan. (*See* Herekamp Dep. at 55; Millett Interrog. Resp. at 3.) Herekamp and Millett thus have created a genuine issue of material fact regarding "resulting harm." Accordingly, the Court will deny summary judgement with respect to their claims.

**4. Retirees Whose Positions Were Eliminated**

When their positions were eliminated by Unisys, Roy Burgess, Donald Woznick, Frank Blumenau, Elizabeth Bland and Peter Mandalis were given the option of taking alternative positions in different locations. Unisys argues that these Plaintiffs took early retirement in order to avoid moving to different Unisys locations. Plaintiffs contend that these retirees chose to accelerate retirement because of their understanding of their medical benefits, and not in order to avoid moving. The record as it pertains to these retirees thus reveals a material issue of fact regarding their **[*22]** claims for breach of fiduciary duty. Accordingly, Unisys's motion will be denied as it pertains to these plaintiffs.

**5. Employees with Knowledge of the Reservation of Rights Clause**

Nell Armstrong, Charles Haynie, Daniel Manion, Dennis Royston, Hugh Seanard, Robert Stevens, Jack Thompson and Donald Young have admitted that they understood that Unisys had reserved the right to modify their benefits even after their retirement. Plaintiffs therefore do not dispute that these retirees cannot show the element of resulting harm. Accordingly, summary judgment in favor of Unisys with respect to the claims of these retirees will be granted.

Unisys argues that like these plaintiffs, Harlan Houghtby had knowledge of the reservation of rights clause and that he, too, therefore is unable to show the element of resulting harm. In a letter to Houghtby dated April 1, 1986 and entitled "Benefits after Age 65," Unisys detailed certain changes to the Vickers Incorporated Retirement Pension Plan. Toward the end of the letter, Unisys wrote, "All other benefits to which you are presently entitled, and except as specifically modified in this letter, shall continue. The Company, however, specifically **[*23]** reserves the right to modify, reduce or eliminate such benefits in any manner permitted by law or regulation at any time in the future ...." (Ex. 13 to Houghtby Dep.) The letter was accompanied by an acknowledgment form, also entitled "Benefits after Age 65," which Houghtby signed. (Ex. 12 to Houghtby Dep.) The form stated, "I have received and read the attached letter and have had an opportunity to discuss it with you ...." (Ex. 12 to Houghtby Dep.)

Plaintiffs argue that the April 1, 1986 letter does not cure Unisys's contemporaneous oral misrepresentations and that a reasonable trier of fact might find that those misrepresentations led Houghtby to believe that, despite the language of the letter, Unisys could not modify his medical benefits once he had retired. Indeed, Houghtby testified that had he understood that Unisys had reserved the right to modify his medical benefits at any time, he would not have retired when he did, (Houghtby Dep. at 34), thus creating an issue of fact which must be decided by the trier of fact. *See In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995) (holding that presence of unambiguous language in **[*24]** reservation of rights clauses in ERISA plans did not foreclose retirees' breach of fiduciary duty claims where retirees alleged that fiduciary had misinformed employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures). Accordingly, Unisys's motion with respect to Houghtby will be denied.

An Order follows.

### ORDER

**AND NOW,** this 24th day of April, 2000, for the reasons set forth in the accompanying Memorandum, it is **ORDERED** that Defendants' Motion for Summary Judgment on Breach of Fiduciary Duty Claims of Sperry Vickers Retirees, is **GRANTED** in part and **DENIED** in part as follows:

(1) The Motion for Summary Judgment is **GRANTED** in favor of Unisys with respect to the breach of fiduciary duty claims of Nell Armstrong, Luther Byrd, Joseph Fischer, Charles Haynie, Jean Hensley, Frank Herta, Preston Holman, John Jordan, Virgil Leming, Robert McCullough, Daniel Manion, Gordon Mitchell, Teddy Mullins, Alexander Pittman, Dennis Royston, Donald Russell, Hugh Seanard, Robert Stevens, Jack Thompson, Chugh Sun, John Shorkey, Donald Van Becelaere, and Donald Young;

(2) The Motion for Summary Judgment is **DENIED** with [*25] respect to the breach of fiduciary duty claims of Melba Abney, William Armstrong, James Barta, Elizabeth Bland, Frank Blumenau, Olga Bogucki, Roy Burgess, Paul Churchman, Charlie Crockett, Joseph Dean, Robert Ewer, Mary Fraser, William Frazier, Grandon Gates, Theodore Herberth, Russell Herekamp, Harlan Houghtby, Carl Huebner, Donald Jacobsen, James Jones, Dorothy V. La Doceur, John Landry, Arthur Lang, Lawrence Lyng, Peter Mandalis, Margaret McCarry, Robert Mendrick, Cale Merrill, Richard Paul Miller, Anthony Millett, Harry Moon, Jr., Dean Morrison, Catherine Nick, George Nordenholt, Donald Olmstead, Richard Peterson, Hyman Ratner, John Ryberg, John Schmid, Edwin Shaffer, Philip Shanline, Richard Sinclair, Douglas Snow, Clifford Statler, Robert Stewart, Watson Stites, Jr., John Sullivan, Robert Totte, Norman Warren, Thomas Warren, Donald Woznick, and Walter Zoya;.

(3) The Motion for Summary Judgment is **DENIED** without prejudice with respect to the claim for breach of fiduciary duty of Robert McGee. McGee shall have until April 30, 2000, to respond to Unisys's Interrogatories. Failure to respond by April 30, 2000 will result in dismissal of McGee's claim.

**BY THE COURT:**

**BRUCE [*26] W. KAUFFMAN, J.**