IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, Plaintiff/Counterclaim Defendant, vs. NOVELL, INC., a Delaware corporation, Defendant/Counterclaim Plaintiff. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTIONS IN LIMINE NO. 5 AND 6 Case No. 2:04-CV-139 TS |

This matter is before the Court on Defendant's Motions in Limine No. 5 and 6. In both Motions, Defendant seeks an order that certain statements cannot be a basis for Plaintiff's slander of title claim because they do not constitute factual assertions of copyright ownership. For the reasons discussed below, the Court will deny Defendant's Motions.

I. BACKGROUND

Defendant's Motion asserts that certain statements cannot be a basis for Plaintiff's slander of title claim because they do not constitute factual assertions of copyright ownership. The Court will set out each statement below.

A.  JUNE 6, 2003 LETTER

Defendant's June 6, 2003 letter was written in response to a letter by Plaintiff on that same date. Plaintiff's letter was, in turn, a response to Defendant's May 28, 2003 press release. Defendant's May 28, 2003 press release contained the following statement: "Importantly, and contrary to SCO's assertions, SCO is not the owner of the UNIX copyrights."[1] Plaintiff responded to this press release by stating that Defendant's accusation "was false and without a good faith basis for belief."[2] Plaintiff pointed to Amendment No. 2 in support of its contention that it was the owner of the UNIX copyrights.[3] Plaintiff asserted that Defendant's conduct "was either maliciously or recklessly intended to harm SCO's share value and customer relations."[4] Plaintiff further stated that Defendant may have been in violation of securities laws.[5] Plaintiff requested that Defendant: (1) affirm publicly that Novell did not retain the UNIX copyrights; (2) affirm publicly that all UNIX copyrights transferred to SCO pursuant to Amendment No. 2; (3) disclose communications between Novell and IBM concerning the copyright ownership issue; and (4) disclose any communications between Novell and IBM concerning the press release.[6]

It is in this context that Defendant issued the June 6, 2003 letter. In that letter, Defendant references a June 6, 2003 press release. The letter further states, in pertinent part:

---

[1] Docket No. 632, Ex. B.

[2] *Id*.

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*.

Your letter contains absurd and unfounded accusations against Novell and others, coupled with a veiled threat to publicly state those allegations in a SCO press call to be held today at 11:00 am EST. Novell continues to demand that SCO cease and desist its practice of making unsubstantiated allegations, including the allegations contained in your letter of June 6, 2003.[7]

Defendant's June 6, 2003 press release states, in relevant part:

In a May 28th letter to SCO, Novell challenged SCO's claims to UNIX patent and copyright ownership and demanded that SCO substantiate its allegations that Linux infringes SCO's intellectual property rights. Amendment #2 to the 1995 SCO-Novell Asset Purchase Agreement was sent to Novell last night by SCO. To Novell's knowledge, this amendment is not present in Novell's files. The amendment appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996. The amendment does not address ownership of patents, however, which clearly remain with Novell.[8]

B.     JUNE 26, 2003 LETTER

Defendant's June 26, 2003 letter states as follows:

 I write to address SCO's recent statements . . . that SCO owns all of the intellectual property rights associated with UNIX and UnixWare. . . .
 SCO's statements are simply wrong. We acknowledge, as noted in our June 6 public statement, that Amendment No. 2 to the Asset Purchase Agreement appears to support a claim that Santa Cruz Operation had the right to acquire some copyrights from Novell. Upon closer scrutiny, however, Amendment No. 2 raises as many questions about copyright transfers as it answers. Indeed, what is most certainly *not* the case is that "any question of whether UNIX copyrights were transferred to SCO as part of the Asset Purchase Agreement was clarified in Amendment No. 2" (as SCO stated in its June 6 press release). And there is no indication whatsoever that SCO owns all the *patents* with UNIX or UnixWare.
 We are still reviewing the Asset Purchase Agreement and other background materials to determine the actual scope of rights transferred to SCO. In the meantime, we wish to make clear that we do not agree with SCO's public statements on this matter.[9]

---

[7] *Id.*, Ex. A.

[8] *Id.*

[9] *Id.*, Ex. C.

C.   AUGUST 4, 2003 LETTER

In its August 4, 2003 letter, Defendant "dispute[s] SCO's claim to ownership of these copyrights."[10] After reviewing the language contained in Amendment No. 2, the letter states:

> In other words, under the Asset Purchase Agreement and Amendment No. 2, copyrights were not transferred to Santa Cruz Operation unless SCO could demonstrate that such a right was "required for [Santa Cruz Operation]" to exercise the rights granted to it in the APA. Santa Cruz Operation has never made such a demonstration, and we certainly see no reason why Santa Cruz Operation would have needed ownership of copyrights in UNIX System V in order to exercise the limited rights granted SCO under the APA. Nor is there any reason to think that a transfer of the copyrights required for SCO to exercise its APA rights necessarily entails transfer of the entire set of exclusive rights associated with a particular copyrighted computer program.
> Unless and until SCO is able to establish that some particular copyright right is "required" for SCO to exercise its rights under the APA, SCO's claim to ownership of any copyrights in UNIX technologies must be rejected, and ownership of such rights instead remains with Novell.[11]

D.   DECEMBER 22, 2003 PRESS RELEASE

Defendant's December 22, 2003 press release states:

> Novell believes it owns the copyrights in UNIX, and has applied for and received copyright registrations pertaining to UNIX consistent with that position. Novell detailed the basis for its ownership position in correspondence with SCO. . . . Contrary to SCO's public statements, as demonstrated by this correspondence, SCO has been well aware that Novell continues to assert ownership of the UNIX copyrights.[12]

E.   MARCH 2004 TRADE SHOW REMARKS

In March 2004, Chris Stone, Novell's Vice Chairman, gave the keynote address at the Open Source Business Conference. In that address, Mr. Stone stated:

---

[10]*Id.*, Ex. D.

[11]*Id.*

[12]Docket No. 651, Ex. A.

> Sorry Darl, again. Al Gore didn't invent the Internet and you didn't invent Linux
> or intellectual property law. We still own Unix. And we believe that Unix is not
> in Linux, and that Linux is a free (sic), and is an open distribution, and should be.
> And always will be.[13]

## II. DISCUSSION

The Court would note, at the outset, that Defendant's Motions are essentially motions for partial summary judgment, seeking a ruling that certain statements are not actionable. To the extent that Defendant's Motion seeks such relief, it is untimely. Turning to the merits of Defendant's Motions, the Court finds that they must be denied.

"To prove slander of title, a claimant must prove that (1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages."[14] "A slanderous statement is one that is derogatory or injurious to the legal validity of an owner's title or to his right to sell or hypothecate the property."[15]

In an action for slander of title, the Court must determine whether the statement is capable of a disparaging or other injurious meaning and the jury is to determine whether the statement complained of was understood by the recipient as disparaging or otherwise injurious.[16]

---

[13]*Id.*, Ex. C at 5.

[14]*First Sec. Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256-57 (Utah 1989).

[15]*Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988).

[16]*See West v. Thompson Newspapers*, 872 P.2d 999, 1008 (Utah 1994). *West* involved defamation, not slander of title. Thus, the question there was whether a statement was capable of sustaining a defamatory meaning, not whether a statement disparaged another's title. *Id.* However, the court relied on the Restatement (Second) of Torts § 614. Restatement (Second) of Torts § 652 addresses the function of the court and jury in slander of title actions and notes that "[t]he respective functions of court and jury in an action for injurious falsehood are similar to

In making this determination, the Court should not view "individual words in isolation; rather, it must carefully examine the context in which the statement was made, giving the words their most common and accepted meaning."[17] "A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."[18]

Having carefully reviewed each statement set forth above, the Court finds that each statement is capable of a disparaging or other injurious meaning. It will be for the jury to determine whether the statement complained of was understood by the recipient as disparaging or otherwise injurious.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant Motion in Limine No. 5 to Preclude SCO from Relying on Novell's June and August 2003 Statements as Factual Assertions of Copyright Ownership (Docket No. 632) is DENIED. It is further

---

their function in an action for defamation." Restatement (Second) of Torts § 652, comment a. Though it does not appear that the Utah Supreme Court has addressed this precise issue, the Court believes that it would follow the same approach set out in *West* when determining the role of the court and the jury in slander of title actions. *See Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."). For this reason, the Court will follow the approach set out in *West*.

[17] *West*, 872 P.2d at 1009.

[18] *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

ORDERED that Defendant's Motion in Limine No. 6 to Preclude Reliance on Statements in December 2003 and March 2004 that do not Constitute Factual Assertions of Copyright Ownership (Docket No. 651) is DENIED.

DATED   February 22, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge