IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation, <br><br> Plaintiff/Counterclaim Defendant, <br><br><br> vs. <br><br><br> NOVELL, INC., a Delaware corporation, <br><br> Defendant/Counterclaim Plaintiff. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S *DAUBERT* MOTION TO DISQUALIFY DR. GARY PISANO <br><br><br><br><br><br> Case No. 2:04-CV-139 TS |

This matter is before the Court on Defendant's *Daubert* Motion to Disqualify Dr. Gary Pisano. Defendant seeks to disqualify Dr. Pisano from testifying as an expert witness on the grounds that (1) his opinion regarding market penetration is inadmissible under Rule 702 because it is not based on sufficient facts or data and is not the product of reliable principles and methods reliably applied to the facts of this case; and (2) his opinion regarding the size of the potential market for SCOsource licenses is inadmissible under Rules 402, 403, and 702 because it is not relevant, is likely to confuse the issues and mislead the jury, and will not assist the trier of fact. For the reasons discussed below, the Court will deny Defendant's Motion.

1

I.  BACKGROUND

Plaintiff claims that it has suffered damages as a result of the poor performance of its SCOSource Initiative.  Plaintiff alleges that the poor performance of that program was the result of Defendant's statements concerning the ownership of the UNIX and UnixWare copyrights.  To that end, Plaintiff has retained Dr. Pisano as an expert witness.  Dr. Pisano was retained "to estimate the market demand for and number of SCOsource Intellectual Property Licenses for Linux . . . that the SCO Group would have sold had that business not been damaged by Novell's alleged slander of title, breach of contract, and unfair competition."[1]

At issue in this Motion are two of Dr. Pisano's conclusions.  First, Dr. Pisano concluded that "[t]he potential license market . . . includes approximately 7.4 million Server Operating Environment Shipments."[2]  Second, Dr. Pisano concluded that "SCO would have sold its SCOsource license to between 19% and 45% of the Linux Market, but for Novell's statements regarding copyright ownership."[3]

As indicated, Dr. Pisano concluded that SCO would have sold a SCOsource license to between 19% and 45% of the Linux market.  In order to reach this conclusion, Dr. Pisano "considered a number of industry studies examining Linux users' preferences for intellectual property protection."[4]  One such study "showed that 19% of respondents were highly concerned about Linux indemnification (8% consider Linux IP indemnification a 'top priority,' while an

---

[1] Docket No. 658, Ex. A at 2.

[2] *Id*. at 4-5.

[3] *Id*. at 5.

[4] *Id*. at 29.

2

additional 11% were 'very concerned' about Linux indemnification). An additional 26% indicated that they were 'somewhat concerned' about Linux indemnification."[5] Dr. Pisano used these figures to reach his conclusion "that between 19% and 45% of the Linux market would purchase a SCOsource license in the absence of uncertainty regarding SCO's ownership of UNIX copyrights."[6] In his report, Dr. Pisano states that "[u]sers willing to obtain indemnification were those most concerned with the risks of IP litigation. This set of users would thus have been the most likely purchasers of SCOsource Right to Use licenses."[7] Dr. Pisano stated in his deposition that the survey is "an excellent proxy for those who would purchase [an SCOsource license]."[8]

## II. DISCUSSION

Fed.R.Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*[9] and *Kumho Tire Co., Ltd. v. Carmichael*,[10] the Supreme Court interpreted the requirements of Rule 702. "*Daubert* requires a

---

[5]*Id*. at 29-30 (footnote omitted).

[6]*Id*. at 31.

[7]*Id*. at 29.

[8]Docket No. 658, Ex. C at 65:1-3.

[9]509 U.S. 579 (1993).

[10]526 U.S. 137 (1999).

3

trial judge to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[11] "In applying Rule 702, the trial court has the responsibility of acting as a gatekeeper."[12] "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[13]

"The Supreme Court has provided some guidance for the task of determining scientific validity."[14] "This inquiry is 'a flexible one,' not governed by a 'definitive checklist or test.'"[15] Some factors to consider are whether the expert's theory or technique: (1) can be (and has been) tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error with standards controlling the technique's operation; and (4) enjoys widespread acceptance in the relevant scientific community.[16]

"Rule 702's second prong concerns relevancy, or 'fit.'"[17] "The trial court 'must ensure that the proposed expert testimony is 'relevant to the task at hand,' . . . i.e., that it logically

---

[11] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 589).

[12] *In re Breast Implant Litigation*, 11 F.Supp. 2d 1217, 1222 (D. Colo. 1998).

[13] *Daubert*, 509 U.S. at 592.

[14] *In re Breast Implant Litigation*, 11 F.Supp. 2d at 1223.

[15] *Atlantic Richfield*, 226 F.3d 1163 (quoting *Daubert*, 509 U.S. at 593).

[16] *Id*.

[17] *In re Breast Implant Litigation*, 11 F.Supp. 2d at 1223.

advances a material aspect of the proposing party's case.'"[18] Because of the dangers of scientific evidence, "federal judgments must exclude proffered scientific evidence under Rule 702 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury."[19]

A.  MARKET PENETRATION

Defendant takes issue with a number of portions of Dr. Pisano's conclusion concerning market penetration. First, Defendant argues that Dr. Pisano cannot offer opinion testimony based on a survey he knows nothing about. Second, Defendant takes issue with the survey relied upon by Dr. Pisano because it does not measure demand. Third, Defendant argues that Dr. Pisano's "proxy" hypothesis is unfounded.

    *1.  The Yankee Group Survey*

Defendant's first two arguments center around Dr. Pisano's reliance on the Yankee Group Survey. As set forth above, that survey showed that 19% of respondents were highly concerned about Linux indemnification (8% consider Linux IP indemnification a "top priority," while an additional 11% were "very concerned" about Linux indemnification). An additional 26% indicated that they were "somewhat concerned" about Linux indemnification. Dr. Pisano used these figures to reach his conclusion that between 19% and 45% of the Linux market would purchase a SCOsource license in the absence of uncertainty regarding SCO's ownership of UNIX copyrights.

---

[18]*Id*. (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)).

[19]*Id*.

5

Defendant first argues that Dr. Pisano cannot testify about the survey because he knows nothing about it. Defendant points to Dr. Pisano's deposition wherein he was unable to answer specific questions concerning the methodology of the Yankee Group Survey. Interestingly, Defendant does not challenge the underlying methodology of the Yankee Group Survey, only Dr. Pisano's ability to discuss the methodology in detail during his deposition.

The Court finds that Dr. Pisano has sufficient knowledge of the Yankee Group Survey. Dr. Pisano testified that he is familiar with these types of sources and regularly relies upon them.[20] While he may not have been able to recall all of the minute details of the methodology of that survey, the Court will not impose such a requirement especially where, as here, the underlying methodology is not at issue. Defendant may certainly cross examine Dr. Pisano concerning his lack of knowledge of the survey, but that goes to the weight to be given to his testimony not its admissibility.[21] Defendant may also call its own expert to refute Dr. Pisano's claims. Further, the Court will provide instruction to the jury on how to evaluate the credibility of expert witnesses. Based on these considerations, the Court must reject Defendant's argument.

Defendant next argues that Dr. Pisano's analysis is flawed because the Yankee Group Survey is insensitive to price and that demand cannot be measured without reference to price. Plaintiff counters that Dr. Pisano did consider the issue of price and that his estimate is supported by two other surveys which did consider price. Because Dr. Pisano did consider price, this argument must be rejected.

---

[20]Docket No. 658, Ex. C at 215-17.

[21]*Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (stating that "as long as a logical basis exists for an expert's opinion . . . the weaknesses in the underpinnings of the opinion[ ] go to the weight and not the admissibility of the testimony.") (quotation marks and citation omitted).

Defendant also argues that the Yankee Group Survey did not consider the need for indemnification as it did not ask respondents if they already had indemnity. However, Dr. Pisano did consider this issue and concluded that "alternative programs would not detract from SCO's realization of 19% - 45% of the Linux Market in the 'but for' world."[22]

   2.   *Proxy Theory*

Defendant next argues that Dr. Pisano's proxy hypothesis is unfounded. Defendant argues that even assuming that there are users who are willing to obtain indemnification, there is no reason to think those users would have been likely purchasers of a SCOsource license. The Court finds that Defendant's argument on this point goes to the weight, rather than the admissibility of Dr. Pisano's testimony.[23] Dr. Pisano has explained his proxy theory and given his justifications for reaching those conclusions. The Court finds that there is a logical basis for his conclusions. The proper method to attack those conclusions is through cross examination and Defendant's own expert. Therefore, the Court will deny Defendant's Motion on this ground.

   B.   SIZE OF THE POTENTIAL MARKET

Defendant also seeks to prevent Dr. Pisano from opinion as to the size of the market under Rules 402 and 403. Federal Rule of Evidence 402 provides that only relevant evidence is admissible. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[24] Of course, "[t]he standard is not stringent; it is aimed

---

[22]*Id*. Ex. A at 33.

[23]*See Compton*, 82 F.3d at 1518 (10th Cir. 1996).

[24]Fed.R.Evid. 401.

7

at each 'brick' of evidence potentially making a wall and not every witness 'mak[ing] a home run.'"[25]

Rule 403 excludes otherwise relevant evidence

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[26]

The Court finds that evidence concerning the size of the market for the SCOsource license is relevant and helpful to the jury concerning Plaintiff's damages claim. Even if the Court were to exclude Dr. Pisano's opinion concerning market penetration as requested by Defendant, his opinion concerning the size of the market would still be relevant to Dr. Botosan's analysis. Further, the Court finds that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice or confusion of the issues.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's *Daubert* Motion to Disqualify Dr. Gary Pisano (Docket No. 657) is DENIED.

DATED   March 2, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[25]*United States v. Yazzie*, 188 F.3d 1178, 1189 (10th Cir. 1999) (quoting Fed.R.Evid. 401 advisory committee's note).

[26]Fed.R.Evid. 403.

8