IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>     Plaintiff/Counterclaim Defendant,<br><br><br><br><br><br>     vs.<br><br><br>NOVELL, INC., a Delaware corporation,<br><br>     Defendant/Counterclaim Plaintiff. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DETERMINE THAT FIRST AMENDMENT DEFENSES APPLY TO SLANDER OF TITLE AND REQUIRE PROOF OF CONSTITUTIONAL MALICE<br><br><br><br><br>Case No. 2:04-CV-139 TS |

This matter is before the Court on Defendant's Motion to Determine that First

Amendment Defenses Apply to Slander of Title and Require Proof of Constitutional Malice. In

that Motion, as well as two previous motions in limine, Defendant seeks a ruling that the First

Amendment applies to slander of title claims. Defendant also seeks a ruling that Plaintiff is a

limited-purpose public figure for purposes of the First Amendment. If Defendant were to prevail

in both instances, Plaintiff would be required to prove, by clear and convincing evidence, that

Defendant acted with actual malice. Plaintiff argues that First Amendment standards should not

apply to its slander of title claim. Plaintiff also suggests that the Court could propound a

question to the jury to ask whether Defendant acted with actual malice. Plaintiff does not argue that it is not a limited-purpose public figure.

## I. DISCUSSION

### A.    SLANDER OF TITLE

As both parties recognize, the impact of the First Amendment and the Supreme Court's decision of *New York Times Co. v. Sullivan*,[1] on slander of title actions is unclear. The Supreme Court has not explored the issue.[2] As stated in Comment C to the Restatement (Second) of Torts § 623A:

> In the absence of any indications from the Supreme Court on the extent, if any, to which the elements of the tort of injurious falsehood will be affected by the free-speech and free-press provisions of the First Amendment, it is not presently feasible to make predictions with assurance.[3]

In *New York Times Co. v. Sullivan*, the Supreme Court held that the First Amendment requires a public official to prove that a defamatory falsehood relating to his official conduct was made with "actual malice," that is, with "knowledge that it was false or with reckless disregard of whether it was false or not."[4] The Court has extended this rule to include claims by private individuals who are "limited-purpose public figures."[5] The Supreme Court has also extended the

---

[1] 376 U.S. 254 (1964).

[2] Robert D. Sack, *Sack on Defamation*, § 13.1.8 (Practicing Law Institute 2008).

[3] Restatement (Second) of Torts § 623A, cmt. c (1977).

[4] *Sullivan*, 376 U.S. at 279-80.

[5] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (defining limited purpose public figure as "an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues").

rule to claims for invasion of privacy and intentional infliction of emotional distress.[6]  The Court

has held that "such a standard is necessary to give adequate 'breathing space' to the freedoms

protected by the First Amendment."[7]

Federal courts have relied on this principle in extending the First Amendment to other

claims directed against an allegedly wrongful statement.  In *Jefferson County School District No.*

*R-1 v. Moody's Investor's Services, Inc.*,[8] the Tenth Circuit applied the First Amendment's

protection of statements of opinion to claims for publication of an injurious falsehood.[9]  The

Tenth Circuit also rejected claims for intentional interference with contract and for intentional

interference with prospective business relations on First Amendment grounds, noting that lower

courts had rejected "a variety of tort claims based on speech protected by the First

Amendment."[10]  The court specifically cited to *Unleko Corp. v. Rooney*.[11]  In that case, the Ninth

Circuit stated that claims for product disparagement and tortious interference were "subject to the

same first amendment requirements that govern actions for defamation."[12]

---

[6]*See Time, Inc. v. Hill*, 385 U.S. 374, 390-91 (1967); *Hustler Magazine v. Falwell*, 485
U.S. 46, 56 (1988).

[7]*Hustler Magazine*, 485 U.S. at 56.

[8]175 F.3d 848 (10th Cir. 1999).

[9]*Id*. at 856.  The Court recognizes, as Plaintiff argues, that *Jefferson* addressed First
Amendment protection of opinions.  Despite this difference in the case before the Court, the
Court finds it significant that *Jefferson* extended First Amendment protections to a claim for an
injurious falsehood.

[10]*Id*. at 857.

[11]912 F.2d 1049, 1057 (9th Cir. 1990).

[12]*Id*. at 1058.

In *Bose Corp. v. Consumers Union of United States, Inc.*,[13] the district court addressed a product disparagement case, a tort closely related to slander of title.[14]  The court provided the following thoughtful analysis:

> An analysis of the Supreme Court's reasoning in *New York Times* also leads to the conclusion that the actual malice standard should not be limited to personal defamation actions.  In the *New York Times* line of cases the Supreme Court has attempted to strike a balance between the need for a vigorous and uninhibited press and the legitimate state interest in compensating individuals for wrongful injury to reputation.

> The nature of the balancing process changes significantly in product disparagement cases because different interests are being weighed.  In a personal defamation action one of the competing interests being balanced is an individual's interest in the protection of his reputation, which, according to Mr. Justice Stewart reflects no more than our basic concept of the essential dignity and worth of every human being a concept at the root of any decent system of ordered liberty.  On the other hand, in this product disparagement action we are concerned with a manufacturer's interest in the reputation of its product, an interest not nearly as significant as an individual's interest in his personal reputation and hardly at the root of any decent system of ordered liberty.  Damage to a product's reputation, unlike damage to the reputation of an individual, can always be measured in terms of monetary loss.  Moreover, a manufacturer almost always has access to the channels of communication that can be used to refute disparaging comments about its product.

> On the other side of the scale in this balancing process is the consumer's interest in obtaining information about the quality and characteristics of consumer products.  The public's interest in obtaining information of this type is perhaps even greater than the corresponding interest in personal defamation actions, the interest in obtaining information about other people. Information obtained from product commentators often relates to health or safety problems in consumer products.  It would be unfortunate indeed if the threat of product disparagement actions stifled the free flow of such information.

---

[13]*Bose Corp. v. Consumers Union of United States, Inc.*, 508 F.Supp. 1249, *rev'd on other grounds*, 692 F.2d 189 (1st Cir. 1982), *aff'd*, 466 U.S. 485 (1984).

[14]*See* Robert D. Sack, *Sack on Defamation*, § 13.1.1 (Practicing Law Institute 2007) (explaining that injurious falsehood describes two common law torts: slander of title and disparagement of quality); *Jack B. Parson Co. v. Nield*, 751 P.2d 1131, 1134 (Utah 1988) (stating that slander of title is also known as injurious falsehood).

On balance, the Court concludes that the factors underlying the *New York Times* privilege militate perhaps even more strongly in favor of the application of the actual malice standard in product disparagement cases than they do in personal defamation actions. Accordingly, the Court rules that the *New York Times* actual malice standard is applicable in this product disparagement case, provided, of course, that the plaintiff is a public figure for First Amendment purposes.[15]

This case was later appealed to the Supreme Court, but the applicability of the malice standard in a product disparagement case was not before the Court and, therefore, not addressed.[16]

The California Supreme Court has held that First Amendment defenses apply to "all claims whose gravamen is the alleged injurious falsehood of a statement" because "constitutional protection does not depend on the label given the stated cause of action."[17] The Utah Supreme Court has held that actual malice is required in a product disparagement action against a media defendant.[18] The Colorado Court of Appeals has stated that "[t]he constitutional protections afforded a defendant in a defamation action are applicable to a defendant in a product disparagement action."[19]

Plaintiff asserts that federal courts have never applied First Amendment defenses to a slander of title action. In support, Plaintiff cites to *Mueller v. Abdnor*.[20] One of the issues on

---

[15]*Bose Corp.*, 508 F.Supp. at 1270-71 (internal quotation marks and citations omitted).

[16]*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 513 (1984).

[17]*Blatty v. New York Times, Co.*, 728 P.2d 1177, 1182 (Cal. 1987).

[18]*Direct Import Buyer's Ass'n v. K.S.L., Inc.*, 572 P.2d 692, 696 (Utah 1977) (stating that "this case involves, not defamation of character, but defamation of a product of a business and the correct standard to be applies is that of actual malice.").

[19]*Teilhaber Mfg. Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1167 (Colo. Ct. App. 1989).

[20]972 F.2d 931 (8th Cir. 1992).

appeal in that case is whether the trial court was correct in using a preponderance standard, rather than the higher clear and convincing standard.[21]  The court noted that "[t]he higher standard . . . does not apply in the ordinary defamation case, but in an action brought by an individual, specifically a public official or a public figure."[22]  The court further noted that, under Missouri law, the "clear and convincing standard applies only in cases involving a public figure or public official."[23]  While acknowledging that the defendant in that case, the Small Business Administration, may be a public figure, because the case involved defamation to land, not defamation to an individual's reputation, the court found that the trial court applied the appropriate standard.[24]  The Court finds *Mueller* unhelpful because it does not involve a matter of public interest.  Further, the *Mueller* court seemed to recognize that the clear and convincing standard could be applicable in some circumstances not present in that case.

Plaintiff also relies on *Zacchani v. Scripps-Howard Broadcasting Co.*[25]  In that case, the Supreme Court declined to apply a First Amendment defense to a claim for misappropriation of property.  Importantly, that case did not involve an allegedly wrongful statement.  Further, the Court emphasized the distinction between the tort of misappropriation of property and the other

---

[21]*Id*. at 936.

[22]*Id*.

[23]*Id*.

[24]*Id*. at 937.

[25]433 U.S. 562 (1977).

torts to which First Amendment protections had been extended.[26]  Based on these considerations,

the Court finds *Zacchini* to be inapplicable here.

Having reviewed the relevant authority, the Court finds that slander of title claims are

subject to the First Amendment.  As one commentator aptly stated:

> There is no reason to accord lessened protection because the plaintiff's claim is
> denominated "disparagement," "trade libel," or "injurious falsehood" rather than
> "libel" or "slander" or because the injury is to economic interests rather than to
> personal reputation.  Since only economic injury and not injury to reputation and
> psyche is at issue, perhaps the balance should tip even further to the side of free
> expression.[27]

## B.    COMMERCIAL SPEECH

Plaintiff further argues that Defendant's statements are entitled to lesser protection

because they constitute commercial speech.  Plaintiff, however, does not argue that all of

Defendant's statements can be considered commercial speech.  Plaintiff only points to two

statements that it contends are commercial speech: press releases from May 28, 2003 and June 6,

2003.[28]

"The Supreme Court has not held whether the actual malice standard applies to

commercial speech . . . ."[29]  Various courts, however, have held that the actual malice standard

---

[26]*Id*. at 573-75.

[27]Robert D. Sack, *Sack on Defamation*, § 13.1.8.

[28]Plaintiff has previously stated that it does not assert that the June 6, 2003 press release
constitutes slander of title.  *See* Docket No. 682 at 2-3.

[29]*Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.*, 269 F.3d 523, 526-27
(5th Cir. 2001).

does not apply to commercial speech.[30] The Court need not reach this issue because it finds that Defendant's May 28, 2003 and June 6, 2003 press releases do not constitute commercial speech.

The Supreme Court defines commercial speech as "expression related solely to the economic interests of the speaker and its audience."[31] The Court has stated that the "core notion of commercial speech" is "speech which does no more than propose a commercial transaction."[32] "According to the Court, speech may properly be characterized as commercial speech where, among other things, (1) it is concededly an advertisement, (2) it refers to a specific product, or (3) it is motivated by an economic interest in selling the product."[33] If all three factors are present, there is strong support for the conclusion that the speech is commercial.[34]

With these principles in mind, the Court considers the two press releases which Plaintiff argues are commercial speech. Defendant's May 28, 2003 press release states:

> Defending its interests in developing services to operate on the Linux platform, Novell today issued a dual challenge to The SCO Group over its recent statements regarding its UNIX ownership and potential intellectual property rights claims over Linux.
> First, Novell challenged SCO's assertion that it owns the copyrights and patents to UNIX System V, pointing out that the asset purchase agreement entered

---

[30]*See Procter & Gamble Co. v. Amway Corp.*, 242 P.3d 539, 556 (5th Cir. 2001) ("Supreme Court precedent prevents us from importing the actual-malice standard into cases involving false commercial speech."); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 937 (3d Cir. 1990) (concluding that commercial speech "does not warrant heightened constitutional protection").

[31]*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980).

[32]*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (quotation marks and citations omitted).

[33]*United States v. Wenger*, 427 F.3d 840, 847 (10th Cir. 2005) (citing *Bolger*, 463 U.S. at 66-67).

[34]*Bolger*, 463 U.S. at 67.

into between Novell and SCO in 1995 did not transfer these rights to SCO. Second, Novell sought from SCO facts to back up its assertion that certain UNIX System V code has been copied into Linux. Novell communicated these concerns to SCO via a letter (text below) from Novell® Chairman and CEO Jack Messman in response to SCO making these claims.

> "To Novell's knowledge, the 1995 agreement governing SCO's purchase of UNIX from Novell does not convey to SCO the associated copyrights," Messman said in the letter. "We believe it unlikely that SCO can demonstrate that it has any ownership interest whatsoever in those copyrights. Apparently you share this view, since over the last few months you have repeatedly asked Novell to transfer the copyrights to SCO, requests that Novell has rejected."

> "SCO claims it has specific evidence supporting its allegations against the Linux community," Messman added. "It is time to substantiate that claim, or recant the sweeping and unsupported allegation made in your letter. Absent such action, it will be apparent to all that SCO's true intent is to sow fear, uncertainty, and doubt about Linux in order to extort payments from Linux distributors and users."

> "Novell has answered the call of the open source community," said Bruce Perens, a leading proponent of open source. "We admire what they are doing. Based on recent announcements to support Linux with NetWare services and now this revelation . . . Novell has just won the hearts and minds of developers and corporations alike."[35]

The text of the letter from Mr. Messman to SCO President and CEO Darl McBride is reprinted in the press release.[36] The press release then provides a short statement about Novell, stating that it is "a leading provider of information solutions."[37] The letter identifies certain Novell products and provides contact information.[38]

Defendant's June 6, 2003 press release states:

> In a May 28th letter to SCO, Novell challenged SCO's claims to UNIX patent and copyright ownership and demanded that SCO substantiate its allegations that Linux infringes SCO's intellectual property rights. Amendment

---

[35]Docket No. 748, Ex. 2.

[36]*Id.*

[37]*Id.*

[38]*Id.*

> #2 to the 1995 SCO-Novell Asset Purchase Agreement was sent to Novell last night by SCO. To Novell's knowledge, this amendment is not present in Novell's files. The amendment appears to support SCO's claim that ownership of certain copyrights for UNIX did transfer to SCO in 1996. The amendment does not address ownership of patents, however, which clearly remain with Novell.
>
> Novell reiterates its request to SCO to address the fundamental issue Novell raised in its May 28 letter: SCO's still unsubstantiated claims against the Linux community.[39]

That press similarly provides a brief statement about Defendant.[40]

The Court finds that these press releases do not constitute commercial speech as they do not propose a commercial transaction. Turning to the first factor set out in *Bolger*, the Court agrees with Plaintiff that, in some circumstances, a press release may constitute an advertisement. This is not such a circumstance. While, as discussed below, the press releases do mention certain of Defendant's products, they do not attempt to market those products in anyway. Rather, these press releases merely challenge Plaintiff's claims of ownership to the UNIX and UnixWare copyrights and their claims of infringement of such copyrights by Linux. Second, the press releases do mention some of Defendant's specific products. However, the mention of specific products is only in passing and in connection with boilerplate language describing Defendant. Third, there is at least some evidence to suggest that Defendant made these statements because they were motivated by an economic interest. By challenging Plaintiff on its claims of ownership and infringement Defendant could be seen as appealing to the Linux community, which may have been out of an economic interest. However, considering each of the *Bolger* factors and these press releases as a whole, the Court finds that Defendant's possible economic interest in making these statements alone does not convert these press releases into

---

[39]*Id.*, Ex. 3.

[40]*Id.*

commercial speech. Therefore, they are not entitled to lesser protection under the First Amendment as argued by Plaintiff.

C.    LIMITED-PURPOSE PUBLIC FIGURE

Defendant next argues that, if the First Amendment applies to claims for slander of title, Plaintiff is a limited-purpose public figure. Plaintiff does not argue that it is not a limited-purpose public figure. Rather, Plaintiff argues that if the First Amendment does apply to a slander of title claim and Defendant's statements qualify for heightened protection, the appropriate course would be to provide a special question on the verdict form.[41]  As a result of Plaintiff's failure to respond to Defendant's argument, the Court finds that Plaintiff is a limited-purpose public figure. Even without Plaintiff's apparent concession of this point, the Court would find Plaintiff to be a limited-purpose public figure.

"[A] limited-purpose public figure is only a public figure with respect to a specific issue."[42]  The Supreme Court has defined a limited-purpose public figure as one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."[43]

> Utah employs a two-part test to determine whether the plaintiff is a limited-purpose public figure. First, the court must isolate the specific public controversy related to the defamatory remarks. Next, the court should examine the type and extent of the plaintiff's participation in that public controversy to

---

[41]Docket No. 683 at 2.

[42]*World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1136 (10th Cir. 2006).

[43]*Gertz*, 418 U.S. at 351.

determine whether, under *Gertz*, he has "thrust [himself] to the forefront of [the] controvers[y] in order to influence the resolution of the issues involved."[44]

First, the Court finds that there is a public controversy concerning the ownership of the UNIX and UnixWare copyrights and Plaintiff's contention that Linux users infringed those copyrights. In support of its Motion in Limine No. 3, Defendant has submitted a number of news accounts of this controversy.[45] Further, thousands of companies and individuals have a direct interest in the controversy because of the impact it may have on them. Second, the Court finds that Plaintiff thrust itself to the forefront of the controversy in order to influence the resolution of those issues. Specifically, Plaintiff made a number of public statements, through press releases and other means, and actively sought media coverage to air its position on these issues. Therefore, the Court finds that Plaintiff is a limited-purpose public figure concerning its alleged UNIX rights.

## II. CONCLUSION

Based on the above, the Court finds that the First Amendment applies to slander of title claims, that Defendant's press releases are not commercial speech, and that Plaintiff is a limited-purpose public figure. As a result, Plaintiff must prove, by clear and convincing evidence, that Defendant acted with actual malice. The above reasoning is equally applicable to Defendant's slander of title claim.

---

[44]*World Wide Ass'n of Specialty Programs*, 450 F.3d at 1136-37 (quoting *Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 283 (Utah 2005)).

[45]*See* Docket No. 630.

It is therefore

ORDERED that Defendant's Motion to Determine that First Amendment Defenses Apply to Slander of Title and Require Proof of Constitutional Malice (Docket No. 748) is GRANTED. It is further

ORDERED that Defendant's Motions in Limine No. 2 and 3 (Docket Nos. 629 and 630) are GRANTED.

DATED   March 5, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge