IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim Defendant,<br><br><br><br>vs.<br><br><br>NOVELL, INC., a Delaware corporation,<br><br>Defendant/Counterclaim Plaintiff. | MEMORANDUM DECISION AND ORDER DENYING SCO'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL<br><br><br><br><br><br>Case No. 2:04-CV-139 TS |

This matter comes before the Court on SCO's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial. For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

This matter came before the Court for trial from March 8, 2010, through March 26, 2010. The sole issue before the jury was SCO's claim for slander of title.[1] After its deliberations, the jury found that the amended Asset Purchase Agreement ("APA") did not transfer the UNIX and UnixWare copyrights from Novell to SCO.[2] Because it found that SCO was not the owner of the UNIX and UnixWare copyrights, there was no need for the jury to reach SCO's slander of title claim.

In the instant Motion, SCO argues that the "jury simply got it wrong."[3] As a result, SCO argues that it is entitled to judgment as a matter of law or, in the alternative, a new trial. Novell opposes the Motion.

II. DISCUSSION

A.  JUDGMENT AS A MATTER OF LAW

Under Fed.R.Civ.P. 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[4] A party which has made a motion for

---

[1] Novell's counterclaim for slander of title was disposed of on a Rule 50 Motion and the parties remaining claims were tried to the Court and are addressed in the Court's Findings of Fact and Conclusions of law issued contemporaneously herewith.

[2] Docket No. 846.

[3] Docket No. 872 at 1.

[4] Fed. R. Civ. P. 50(a)(1).

2

judgment as a matter of law under Rule 50(a) prior to a jury verdict may renew that motion under Rule 50(b) after judgment is rendered.

"In [entertaining a motion for judgment as a matter of law], the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."[5] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[6]

The Tenth Circuit has made it clear that judgment as a matter of law is to be "cautiously and sparingly granted,"[7] and is only appropriate when there is no way to legally justify a jury verdict. Judgment as a matter of law is appropriate only "[i]f there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law,"[8] or if "the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[9] "Judgment as a matter of law is improper unless the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion."[10]

---

[5]*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555 (1990).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[7]*Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).

[8]*Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (quoting Fed. R. Civ. P. 50).

[9]*Finley v. United States*, 82 F.3d 966, 968 (10th Cir.1996).

[10]*Shaw v. AAA Eng'g & Drafting*, 213 F.3d 519, 529 (10th Cir. 2000).

SCO argues that it is entitled to judgment as a matter of law "because the verdict cannot be squared with the overwhelming evidence and the law."[11] The Court respectfully disagrees. The jury was presented with two versions of the deal between Novell and Santa Cruz, SCO's predecessor in interest. On the one hand, SCO argued that the deal was essentially an acquisition of the UNIX and UnixWare business, wherein Santa Cruz acquired all of the business, including the copyrights. Novell, on the other hand, argued that the deal was more complex and that Santa Cruz only acquired the UnixWare business and that Novell retained significant rights in the UNIX business, such as the copyrights and the right to receive SVRX royalties. Evidently, the jury found Novell's version of facts to be more persuasive. This conclusion is well supported by the evidence.

There was substantial evidence that Novell made an intentional decision to retain ownership of the copyrights. For instance, Tor Braham, outside counsel for Novell and lead drafter of the APA, testified that Novell was selling to Santa Cruz the UnixWare business and retaining the UNIX business.[12] Mr. Braham testified that the exclusion of the copyrights was agreed upon by the parties.[13] Mr. Braham stated that the purpose for excluding the copyrights was to protect Novell's interest in the UNIX business that it had retained.[14]

---

[11]Docket No. 872 at 4.

[12]Trial Tr. at 2347:2-5.

[13]*Id*. at 2363:19-23.

[14]*Id*. at 2364:3-11.

Mr. Braham's testimony is supported by James Tolonen, Novell's Chief Financial Officer at the time of the APA and Amendment No. 2, who testified that the copyrights were purposefully excluded from the assets to be transferred to Santa Cruz.[15] Mr. Tolonen explained that retaining the copyrights was: (1) "part of [Novell's] strategy and really necessary under the nature of the transaction"; (2) necessary because Santa Cruz was relatively small and could not afford the entire value; (3) necessary to avoid ownership issues with other products; and (4) necessary because of concerns with the long-term viability of Santa Cruz.[16]

That testimony is further supported by Michael Defazio, an executive vice president at Novell at the time of the APA, who testified that the intent of the APA was not to transfer the copyrights and that the copyrights were retained as a way to "bulletproof" Novell's financial asset stream.[17]

All such testimony is further supported by the minutes of Novell's Board of Directors, which resolved that "Novell will retain all of its patents, copyrights and trademarks (except for the trademarks UNIX and UnixWare)."[18]

It is true that SCO presented more witnesses who testified that it was the intent of the parties to transfer the copyrights as part of the deal but, as the jury was instructed, the number of

---

[15]*Id*. at 2021:24-2022:3.

[16]*Id*. at 2022:7-2023:18.

[17]*Id*. at 2311:7-17.

[18]Trial Ex. Z3.

witnesses is not determinative.[19]  Thus, there was more than sufficient evidence on which the jury could determine that it was not the parties intent to transfer the copyrights.

SCO nonetheless argues that the copyrights were required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies under Amendment No. 2. Again, there was testimony presented that it was not the intent of Novell, in executing Amendment No. 2, to transfer ownership of the copyrights.  Allison Amadia, who worked as in-house counsel for Novell at the time of Amendment No. 2 and was the lead negotiator and drafter of that document, testified that after reviewing the APA and consulting with Tor Braham and James Tolonen, the decision was made not to alter the APA with regard to copyright ownership.[20] In fact, Novell rejected a draft amendment from SCO which would have transferred ownership of the copyrights "which pertain to the UNIX and UnixWare technologies and which SCO has acquired hereunder. . . ."[21]  Ms. Amadia further testified that Amendment No. 2 was meant to affirm that SCO had the right to use, manufacture, and make modifications to the UNIX technology.  James Tolonen similarly testified that Amendment No. 2 was meant to address use rights, not ownership.[22]

Further, SCO witnesses acknowledged that SCO could operate its UnixWare business without the copyrights.  Mr. McBride, SCO's former CEO, admitted that SCO could run its

---

[19] Jury Instruction No. 12.

[20] Trial Tr. at 2119:25-2120:6.

[21] Trial Ex. T34.

[22] *Id*. at 2036:5-22.

UnixWare business without the copyrights.[23] Mr. Tibbitts, SCO's general counsel, similarly stated that SCO could run its UNIX product business without the UNIX and UnixWare copyrights.[24] Indeed, SCO had offered to sell its business without the copyrights.[25] Moreover, it was undisputed that SCO would own any newly developed code and could obtain copyrights to protect that code.[26] Finally, while SCO's witnesses testified that the copyrights were "required" for SCO to run its SCOsource licensing program, this was not something that SCO ever acquired from Novell.

SCO relies on Recital A in arguing that SCO acquired the "Business," which is defined as "the business of developing a line of software products currently known as Unix and UnixWare, the sale of binary and source code licenses to various versions of Unix and UnixWare, the support of such products and the sale of other products which are directly related to Unix and UnixWare."[27] SCO, however, ignores Recital B which states that Santa Cruz would only acquire "certain assets."[28] Those "certain assets" are set forth in more detail in Schedule 1.1(a) and do

---

[23]*Id*. at 1225:18-1226:10.

[24]*Id*. at 1850:11-1851:18.

[25]*Id*.

[26]*Id*. at 933:2-7; *id*. at 939:3-18; *id*. at 816:19-817:14.

[27]Trial Ex. 1, Recital A.

[28]*Id*., Recital B.

7

not include the excluded assets set out in Schedule 1.1(b).[29] Under the plain language of the original APA, the copyrights were excluded from the transaction.[30]

SCO also points to Section II of Schedule 1.1(a), which transferred "[a]ll of [Novell's] claim arising after the Closing Date against any parties relating to any right, property or asset included in the Business."[31] However, SCO provided no evidence of any such claims that it was entitled to pursue.

Based on the above, the Court finds that SCO is not entitled to judgment as a matter of law on its claim for copyright ownership.

B.   NEW TRIAL

SCO moves, in the alternative, for a new trial under Fed.R.Civ.P. 59. Rule 59(a) provides that a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[32] The Tenth Circuit has stated that "[a] motion for new trial on the grounds that the jury verdict is against the weight of the evidence . . . involve[s] the discretion of the trial court . . . . The inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."[33]

---

[29] *Id.*, § 1.1(a); *id.*, Schedule 1.1(a); *id.*, Schedule 1.1(b).

[30] *Id.*, Schedule 1.1(b), § V.

[31] Trial. Ex. 1, Schedule 1.1(a), § II.

[32] Fed. R. Civ. P. 59(a).

[33] *Black v. Heib's Enterprises, Inc.*, 805 F.2d 360, 363 (10th Cir. 1986).

8

SCO argues that the "overwhelming weight of the evidence . . . [shows] that a transfer of copyrights was intended."[34] It is certainly true that SCO presented more witnesses than Novell concerning the intent of the parties, however, the mere fact that SCO presented more witnesses does not show that the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. The jury could have rejected the testimony of SCO's witnesses for a number of reasons, including their lack of involvement in drafting the APA, the fact that there was little testimony on any actual discussions concerning the transfer of copyrights, or that many of the witnesses had a financial interest in the litigation.

SCO also relies on the "Forthright Negotiator Rule." Under that rule,

> Where the parties assign different meanings to a term,
> it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made
> (a) that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or
> (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.[35]

Here, there is no evidence to support the argument that Ms. Amadia had reason to know that SCO attached a different meaning to Amendment No. 2. Indeed, Ms. Amadia specifically testified that she informed Mr. Sabbath that Novell would not transfer the copyrights.[36]

SCO also cites to the TLA as providing support for the transfer of copyrights. The testimony concerning the TLA, however, affirmed that one of the purposes of that agreement was

---

[34]Docket No. 872 at 15.

[35]*Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 837 (10th Cir. 2005) (citing Restatement (Second) of Contracts § 201(2)).

[36]Trial Tr. at 2120:15-2121:2.

9

to allow Novell the right to use post-APA SCO-developed code.[37]  Further, the TLA licensed assets that were transferred under the APA, which did not include the copyrights.

SCO also points to various course of performance evidence in support of its argument. However, this evidence, either individually or in combination, does not support the notion that it was the intent of the parties to transfer copyright ownership.

Finally, SCO argues that the copyrights were required for it to exercise its rights with respect to the acquisition of the UNIX and UnixWare technologies.  However, as set forth above, there was evidence that SCO did not need the copyrights to operate the UnixWare business, that it could obtain copyrights to protect any newly developed code, and that the SCOsource licensing program was not something that SCO acquired from Novell.  Thus, this argument fails.

For each of these reasons, the Court finds that the verdict is not clearly, decidedly, or overwhelmingly against the weight of the evidence.  Therefore, SCO is not entitled to a new trial.

III.  CONCLUSION

It is therefore

ORDERED that SCO's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Docket No. 871) is DENIED.

DATED   June 10, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[37] *Id*. at 1964:8-22; *id*. at 1984:6-1985:21.